**Exhibits to Defendants' Response to Plaintiffs' Motion to Enforce the Stipulation and Amend the Order to Show Cause (Dkt. 3490)**

Exhibit 1 Defendants' Response to Plaintiffs' May 20, 2019 Notice of Substantial Noncompliance

Exhibit 2 Declaration of N. Taylor

**EXHIBIT 1**

**EXHIBIT 1**



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

June 19, 2019

***VIA EMAIL ONLY***
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

Re:   **Parsons v. Ryan**
Defendants' Response to Plaintiffs' 05-20-2019 Notice of Noncompliance
regarding PM 74 – ASPC-Perryville

Dear David:

We are in receipt of your May 20, 2019 Notice of Noncompliance regarding PM 74 at ASPC-Perryville.  In your correspondence, you allege that the correct compliance score for PM 74 at Perryville in February 2019 is 75% (not 100% as reported) because of the four encounters Defendants counted as compliant in February 2019, one (inmate Acosta #332345) took place in the presence of another inmate.  You claim inmate Acosta's file should have been counted noncompliant because it did not take place in a confidential setting.  Based on this, you allege PM 74 at Perryville has been noncompliant for three consecutive months and therefore meets the Court's definition of substantial noncompliance.

As we explained in our June 5, 2019 response to your May 6, 2019 Notice of Noncompliance (where you raised this same issue), inmate Acosta's file was appropriately counted compliant in February 2019.  Following her C-section, inmate Acosta was seen by psychologist, Dr. Velez, in the IPC.  Because there was another inmate approximately thirty feet away, to maintain confidentiality, Dr. Velez spoke to inmate Acosta quietly and in Spanish.  There is no evidence that the other inmate could hear or understand their conversation.  This encounter allowed for a confidential exchange of information and did not violate PM 74.  Moreover, it was not possible to move inmate Acosta from the IPC as she was still having post-procedure pain.  It was also not possible to remove the other inmate, as she was receiving IV antibiotic therapy.  Indeed, Dr. Stern reviewed this encounter and determined Dr. Velez's actions

David C. Fathi
June 19, 2019
Page 2

were proper.  The appropriate compliance score for PM 74 at Perryville in February 2019 is 100%, as Defendants reported.  This measure is not in substantial noncompliance.

Sincerely,

Ashlee B. Hesman

ABF/eap
cc:     Counsel of record

**EXHIBIT 2**

**EXHIBIT 2**

1  Daniel P. Struck, Bar No. 012377
2  Rachel Love, Bar No. 019881
   Timothy J. Bojanowski, Bar No. 022126
3  Nicholas D. Acedo, Bar No. 021644
   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
4  3100 West Ray Road, Suite 300
   Chandler, Arizona  85226
5  Telephone: (480) 420-1600
   Fax: (480) 420-1696
6  dstruck@strucklove.com
   rlove@strucklove.com
7  tbojanowski@strucklove.com
   nacedo@strucklove.com

8  *Attorneys for Defendants*

9                **UNITED STATES DISTRICT COURT**
10                     **DISTRICT OF ARIZONA**

11 | Victor Parsons, *et al.*, on behalf of themselves | NO. 2:12-cv-00601-ROS
   | and all others similarly situated; and Arizona |
12 | Center for Disability Law, | **DECLARATION OF NICOLE**
   | | **TAYLOR, Ph.D., CCHP-MH**
13 |                          Plaintiffs, |
   |      v. |
14 |
15 | David Shinn, Director, Arizona Department of |
   | Corrections; and Richard Pratt, Interim |
16 | Division Director, Division of Health Services, |
   | Arizona Department of Corrections, in their |
   | official capacities, |
17 |
   |                          Defendants. |

18        I, **NICOLE TAYLOR**, make the following Declaration:

19        1.      I am over the age of 18 years and have personal knowledge of and am

20 competent to testify to the matters set forth in this Declaration.

21        2.      I am a licensed psychologist.  I have earned a Doctor of Philosophy in Clinical

22 Psychology (Ph.D.).

23        3.      From September 2005 through June 2012 and April 2013 through December

24 2019 I was employed by the Arizona Department of Corrections.  I began my career as a

25 Psychology Associate, and then moved into a Psychologist position in October 2006 when

26 I became licensed.  I then promoted to a Psychologist III, and oversaw the mental health

27 services at the Florence Prison.  When health services were privatized in 2012, I began

28

working for the contracted vendor as the Regional Mental Health Director.  Most recently, from April 2013 until December 2019, I served as ADC's statewide Mental Health Director. In this role, my duties and responsibilities included the monitoring of mental health measures, including PM 74.

4.     I have reviewed Plaintiffs' May 20, 2019 Notice of Substantial Noncompliance (Dkt. 3493-1), Defendants' Response (Exhibit 1 to Dkt. 3515), and Plaintiffs' February 6, 2020 Motion to Enforce (Dkt. 3492).

5.     Based on my review of these documents, I understand Plaintiffs argue that Perryville should have received a 75% (instead of a 100%) compliance score for PM 74 in February 2019.

6.     Specifically, Plaintiffs argue that one of the four patient files reviewed should have been marked noncompliant because, during the encounter, "there was another inmate in the area." (Dkt 3492 at 5.)

7.     Plaintiffs' analysis is incorrect and the file was correctly marked compliant.

8.     PM 74 requires that, "All female prisoners shall be seen by a licensed mental health clinician within five working days of return from a hospital post-partum."  (Dkt. 1185-1 at 13.)

9.     The details of the patient encounter Plaintiffs take issue with is described below.

10.     Following a C-section, as required by PM 74, the inmate was seen by a psychologist while she recovered in the facility's IPC.

11.     Another inmate, who was receiving IV antibiotic therapy, was approximately thirty feet away.

12.     Because the inmates' medical needs precluded their removal from the IPC, in order to maintain confidentiality, she spoke in Spanish and in a low voice.

13.     Even if the psychologist had the authority to move either inmate, it would have been inappropriate as one was attached to an IV and one had just returned from the hospital that day and was experiencing post-partum pain following major surgery.

14.     There is no evidence that the other inmate understood Spanish or that she was able to hear the psychologist's low voice.

15.     Based upon my monitoring experience, extensive review of the inmate's file, discussions with individuals who interviewed the psychologist that interacted with the inmate, and after conferring with Dr. Stern, the file was marked compliant.

16.     This was the appropriate determination as the encounter allowed for the confidential exchange of information in accordance with PM 74's requirements.

17.     Therefore, the correct score for PM 74 at Perryville in February 2019 is 100%.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of March, 2020.


_____
NICOLE TAYLOR