HADOUS|CO. PLLC
Nemer N. Hadous, AZ #027529
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (602) 492-4432
E-mail: nhadous@hadousco.com
Attorneys for Intervenor

CHAMI LAW FIRM, PLLC
David A. Chami, AZ #027585
8245 N. 85th Way
Scottsdale, Arizona 85258
Telephone: (818) 600-5564
E-mail: david@pricelawgroup.com
Attorneys for Intervenor

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al.,<br><br>Plaintiff,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>Defendants. | No. 2:12-cv-00601-ROS-DKD<br><br>**MOTION TO INTERVENE FOR LIMITED PURPOSE OF MODIFICATION OF PROTECTIVE ORDER AND/OR ORDERS TO SEAL FILED DOCUMENTS**<br><br>Assigned to the Honorable Roslyn O. Silver<br>Magistrate Judge David K. Duncan |

Plaintiff-Intervenor De'Vonne Gonzales ("Intervenor"), by counsel, and pursuant to Fed. R. Civ. P. 24(b), respectfully submits this Motion to Intervene for the limited purpose of presenting this Motion and to modify applicable Protective Orders and Orders to Seal entered in this action, to allow Intervenor to seek discovery of materials subject to this Court's Orders in collateral litigation. In support of this Motion, Intervenor relies upon the below Memorandum of Points and Authorities.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

**Preliminary Note**: Intervenor is the plaintiff in collateral litigation in this Court. See Gonzales v. Corizon Health, Inc. et al., No. 2:19-cv-02190-JJT-CDB (D. Ariz. 2018) (the "Collateral Action").

Intervenor does not seek "cloned" or "piggyback" discovery. Intervenor does not seek blanket discovery of all materials produced in this action or filed under seal. The requested materials for which Intervenor seeks modification of applicable Orders pertains to specific documents and electronically stored information that were deemed discoverable in prior actions against Corizon and/or the Arizona Department of Corrections ("ADC") where Intervenor's undersigned counsel represented the plaintiffs in those actions.

Intervenor has been unable to obtain discovery of many of these same categories of documents and electronically stored information in the Collateral Action by virtue of these materials being produced or filed under seal in this action pursuant to Court Order.

### I.     PERTINENT BACKGROUND

Intervenor filed a civil action against Corizon Health, Inc. ("Corizon") and individual Corizon medical providers alleging deliberate indifference arising from the death of Intervenor's son. During discovery in the Collateral Action, which remains ongoing, Intervenor sought discovery of various materials from the ADC through subpoena served January 29, 2020. The categories of requested materials include documents either produced in discovery or filed under seal in this action subject to Court Order.

Accordingly, the ADC objected to production of the requested materials; asserting that documents filed under seal in this action could not be produced without an Order of this Court permitting the same.  The ADC also objected on the basis that some of the requested materials might be available from Corizon.

On February 28, 2020, the court in the Collateral Action held a discovery hearing and denied Intervenor's motion to compel the ADC to produce the requested materials. See Order, Gonzales, No. 2:19-cv-02190-JJT-CDB (D. Ariz. February 28, 2020) (Doc. 106); see also Id., Minute Entry, (Doc. 107). In a subsequent Minute Entry pertaining to Parsons materials sought from Corizon (which mirrored many requests to the ADC), the Court noted that for these categories of materials, Intervenor would intervene in Parsons action to seek the requested materials. See Minute Entry re: RFP 12, Gonzales, No. 2:19-cv-02190-JJT-CDB (D. Ariz. February 28, 2020) (Doc. 107).

This Motion follows.

## II.    PERTINENT STANDARD OF LAW

**A.    Permissive Intervention.  Fed. R. Civ. P. 24(b).**

Permissive intervention is permitted where there is a conditional right to intervene by federal statute; or the intervenor has a claim or defense that shares with the main action a common question of law or fact. See Fed. R. Civ. P. 24(b).

Rule 24 also provides, a motion to intervene must be served on the parties, must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought. See Fed. R. Civ. P. 24(c).

Commonality is satisfied where there is a sufficient nexus; however, the same legal theory is not required when intervenors are not becoming parties to the litigation, but instead seeks to intervene only for the purpose of discovery.

> Further specificity, e.g., that the claim involve the same clause of the policy, or the same legal theory, is not required when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order.

Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470 (9th Cir. 1992) (citing cases).

### B.   Permissive Intervention for Modification of Protective Order

The Ninth Circuit **"'strongly favors'** access to discovery materials to meet the needs of parties engaged in collateral litigation." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1131 (9th Cir. 2003) (citing Beckman, at 475).

Allowing one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery. Foltz, at 1131.

Requests for modifying a protective order to permit access to relevant discovery should generally be granted where an intervenor demonstrates relevance of the protected discovery to the collateral proceedings and its general discoverability:

> Where **reasonable restrictions** on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted.
>
> Nonetheless, a court should not grant a collateral litigant's request for such modification automatically. As an initial matter, the collateral litigant must demonstrate the **relevance** of the protected discovery to the collateral proceedings and its **general discoverability** therein. Requiring a showing

4

>of relevance prevents collateral litigants from gaining access to discovery materials merely to subvert limitations on discovery in another proceeding

Foltz at 1132 (citing cases).

[R]elevance hinges on the degree of overlap in **facts**, **parties**, and **issues** between the suit covered by the protective order and the collateral proceedings." Foltz at 1132. However, when an intervenor only seeks discovery, as opposed to joining

>The court that issued the order is in the best position to make the relevance assessment for it presumably is the only court familiar with the contents of the protected discovery. Foltz at 1132.

>However, the district court that issued the protective order only determines whether the protective order will bar the collateral litigants from gaining access to the discovery already conducted. Foltz at 1133. Thus, if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials. Id. The ultimate discoverability of the specific materials covered by the protective order is to be resolved by the collateral court. Id.

>"[A]ny legitimate interest . . . in continued secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." Id. (citation omitted).[1]

---

[1] There is also a Protective Order in the Collateral Action, which includes confidentiality provisions, as well as a procedure for filing motions to seal documents in accordance with the Local Rules of this Court. The parties can stipulate to deem confidential any materials so produced. Intervenor will also agree to be bound by the terms of any applicable Protective Order in this action.

5

## III.  ARGUMENT

### A.  INTERVENOR'S REQUESTED DISCOVERY IS RELEVANT TO THE CLAIMS AND DEFENSES IN THE COLLATERAL ACTION AND GENERALLY DISCOVERABLE THEREIN.

Intervenor has asserted, inter alia, claims against Corizon in the Collateral Action alleging deliberate indifference. Intervenor sought materials from the Arizona Department of Corrections ("ADC") by subpoena regarding Corizon's performance under the (now terminated) state contract for Corizon to provide prisoner healthcare to the ADC.

Intervenor's ability to seek discovery by subpoena is well settled. See Fed. R. Civ. P. 34(c); Fed. R. Civ. P. 45.

"The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." Hausauer v. City of Mesa, No. CV-15-01796-PHX-ROS, 2017 WL 6515963, at *1 (D. Ariz. Apr. 5, 2017)

Rule 26(b) permits discovery where the discovery is non-privileged, relevant, and proportional to the needs of the case. See Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. Id.

A "relevant matter" is any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, (1978). It is well-established law discovery rules are to be accorded a broad and liberal treatment. Hickman v. Taylor, 529 U.S. 495, 67 S. Ct. 385, 392 (1947).

1. **Relevance and Proportionality—Importance of the Issues at Stake**
   - **Corizon Customs, Policies, and Practices**
   - **Prior Acts; Organizational Practice**

Intervenor asserts claims against Corizon in the Collateral Action arising from the wrongful death of her son Aaron Salter, who died at age 31, following Corizon's failure to treat him for testicular cancer for nearly a year culminating in his premature death.

In sum, Intervenor's deliberate indifference claims against Corizon include claims brought pursuant to 42. U.S.C. § 1983 alleging unconstitutional customs, policies, and practices that resulted in deliberate indifference to Aaron's serious medical needs resulting in death in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.  See Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1138-39 (9th Cir. 2014); Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).

Deliberate indifference by Corizon can be shown by, inter alia, evidence of a deliberate choice to follow a course of action, a custom/widespread practice, policies of action or inaction, widespread practices or evidence of repeated constitutional violations, or a series of bad acts or patterns of behavior toward one or more individuals.  See, e.g., St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Ulrich v. City and County of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002); Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005) (custom, policy, or practice may be inferred from widespread practices or evidence of repeated constitutional violations); Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Oyenik v. Corizon Health Inc., No. 15-16850, 2017 WL 2628901, at *2 (9th Cir. June 19, 2017).

Additionally, the Federal Rules of Evidence foresee the admissibility of similar prior acts at trial. Although evidence of prior similar acts is not admissible/relevant for use as "character evidence," the evidence may be relevant and **admissible** at trial to prove "**motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident**." See Fed. R. Evid. 404(b). Such evidence may also be relevant and admissible to show organizational **"routine practice**." See Fed. R. Evid. 406.

The requested materials pertain to Corizon's systemic inadequate care, and repetitive notice from the ADC and demands to cure/perform in accordance with constitutionally mandated standards of care, including ADC Final Mortality Reviews and periodic reports prepared in the course of regularly conducted activities by the ADC and Corizon.[2]

### 2.  Materials Requested by Intervenor

Intervenor discusses the requested categories below, and also includes a cite reference to the requested materials filed under seal.

> **Category 1.**  All Final Mortality Reviews for all ADC inmate/patients while the Corizon contract was in effect January 1, 2014 until the of Corizon contract. This request also includes Final Mortality Reviews prepared after the end/termination date of Corizon's contract for patients whose care occurred during the contract term.

---

[2] Although Corizon was not an originally named party in Parsons (its contract commended thereafter), Corizon was the ADC's contracted prisoner healthcare provider from 2013-2019. The requested materials pertain to Corizon's performance under the ADC contract. Corizon has intervened as a Defendant in this action for limited purposes, and numerous Corizon employees and medical providers testified during the evidentiary hearings regarding Corizon customs, policies, and practices concerning prisoner healthcare within the ADC, including Rodney Stewart, who prepared Aaron's first and second Mortality Reviews.

The ADC prepares Mortality Review Committee Final Reports ("Final Mortality Review") for prisoners who die during their incarceration. The Final Mortality Reviews are performed by ADC doctors who also serve as contract monitors overseeing the individual Arizona State Prison Complexes. The Final Mortality Reviews discuss the cause of death, and manner of death, and contain pointed queries regarding the adequacy of prisoner medical care such as:

- Was the death preventable?
- Could the patient's death have been prevented or delayed by more timely intervention?

The Final Mortality Reviews also contain a "Contributing Cause Analysis" which contains the following (on-exhaustive) queries:

- Failure to recognize symptoms or signs
- Delay in access to care
- Failure of provider-to-provider communication
- Failure to supervise midlevel care
- Failure to follow clinical guidelines
- Failure to follow-up/identify abnormal test results
- Failure of provider to assume responsibility for patient
- Practicing outside the scope of one's capabilities
- Failure to communicate effectively with patient

The Contributing Cause Analysis also asks whether, "It is likely that the patient's death was caused or affected in a negative manner by health care personnel."

These Final Mortality Reviews are relevant to Intervenor's deliberate indifference claim against Corizon, as these Reviews are evidence of Corizon customs, policies, and practices concerning patient care, as well as continuing notice to Corizon of inadequate

medical care culminating in unnecessary and preventable prisoner deaths. These are also relevant to demonstrate lack of accident/mistake, knowledge and state of mind.

Indeed, out of the 18 Final Mortality Reviews submitted into evidence during the 2018 evidentiary hearings, the Court found that the ADC checked "Yes" to whether the patient's death could have been prevented or delayed in 6 of these Reviews, and checked "Yes" to whether the patient's death was caused or affected in a negative manner by health care personnel in 8 of these Reviews. See Parsons at Doc. 2671 (Exhibits 30, 33, 35, 36, 37, 40, 46, and 47). These are **harrowing** percentages, to say the least.

Similarly, the ADC Final Mortality Review prepared by David Robertson, MD (who testified in during the evidentiary hearings in this case), also determined Aaron's death was preventable, could have been prevented or delayed by more timely intervention, and was caused or affected in a negative manner by health care personnel.

In considering the "disturbing findings" concerning Aaron's death, the Arizona Medical Board described Corizon's healthcare as "total system failure," and members independently inquired about reporting Corizon to an appropriate authority (DHS).[3]

Intervenor notes Final Mortality Reviews are not privileged in federal civil rights cases alleging deliberate indifference to prisoners' serious medical needs. See Agster v. Maricopa County, 422 F.3d 836, 837 (9th Cir. 2005).

---

[3] See https://azmd.granicus.com/MediaPlayer.php?view_id=4&clip_id=404

**Category 2**.  All documents and electronically stored information from the State of Arizona/ADC to Corizon re: contract performance, including, without limitation, all correspondence regarding:

    (i)     Non-compliance with the OSC Order;[4]

    (ii)    Demanding performance;[5]

    (iii)   Detailing sanctions;[6] and

    (iv)   Staffing offset penalty letters.[7]

**Category 4**.  All Order to Show Cause Performance Measures Letters regarding the Parsons litigation [to the extent not encompassed by category 2].

**Category 5.**  All Order to Show Cause Lists regarding the Parsons litigation.[8]

These materials are also relevant to Intervenor's deliberate indifference claim against Corizon, as these materials also constitute evidence of Corizon's customs, policies, and practices, as well as continuing notice to Corizon from the ADC of inadequate prisoner health care.  This resulted in progressively worse care and a jarring increase in prisoner deaths during Corizon's tenure. See Ex. 1, ADC Inmate Mortality Statistics (**67%** increase in inmate deaths by "natural causes" in fiscal year 2012 compared to fiscal year 2018).

Intervenor also notes that much of the requested correspondence regarding Corizon's inadequate provision of medical care, demands for performance, and subsequent sanctions imposed by the ADC is already **publicly available** despite being filed under seal.[9]

---

[4] See Parsons Doc. 2770 Exhibits 18, 30, 35, 36, 87, and 193.

[5] See Parsons Doc. 2770, Exhibits 20, 30, 31, 33, and 97.

[6] See Parsons Doc. 2770 at Exhibits 7, and 9-95.

[7] See Parsons Doc. 2770 at Exhibits 7, 9, 13-15, 103, and 205.

[8] See Parsons Doc. 2898 (internal citations to record omitted).

**Category 6**. All Code Green Amber Red (CGAR) Reports for ASPC-Tucson from January 1, 2014 until the end of Corizon's contract term.

Intervenor seeks discovery of CGAR Reports for ASPC-Tucson. CGAR Reports contain various assessments and corresponding color-coded findings regarding Corizon's performance at each ASPC complex during a periodic basis. These categories include the accuracy and completeness of patient medical records, whether urgent consultations timely occur, whether consultation reports are timely reviewed, and development of treatment plans.

CGAR Reports for ASPC-Tucson are relevant to Intervenor's deliberate indifference claim against Corizon in the Collateral Action, as these evidence Corizon's customs, policies, and practices, as well as absence of mistake, and lack of accident. These reports also evidence Corizon's continuing knowledge and routine practice of delaying or outright denying medically necessary care for inmates with urgent medical needs like Aaron, including delays in scheduling medically necessary specialty consultations, and denials of specialty consultations in favor of ineffective and otherwise medically unreasonable alternative treatment plans.

Intervenor's counsel has obtained these reports (formerly termed "MGAR" for "Monthly Green-Amber-Red") in a prior civil action involving alleging deliberate indifference. See Order, (Doc. 167), <u>Larsgard v. Ryan, et al.</u>, No. 2:12-cv-02149-SRB-JFM (D. Ariz. January 27, 2014). However, these have not been produced in the Collateral Action because CGAR Reports have been filed under seal in this case.

---

[9] See https://procure.az.gov/bso/external/purchaseorder/poSummary.sdo?docId=ADOC13-041943&releaseNbr=0&parentUrl=contract (last accessed March 5, 2020).

The CGAR Reports for ASPC-Tucson are highly relevant to Corizon's customs, policies, and practices of prisoner healthcare, as well as Corizon's knowledge, absence of mistake, or lack of accident, and routine practice.

> **Category 7.** All monthly and quarterly prisoner Medical Grievance Reports and Summary Reports of Grievances for ASPC-Tucson from January 1, 2014 until the end of Corizon's contract term.
>
> **Category 8.** All monthly Health Services Reports for ASPC-Tucson from January 1, 2014 until the end of Corizon's contract term.
>
> **Category 9.** All monthly Dashboard Reports for ASPC-Tucson from January 1, 2014 until the end of Corizon's contract term.

For the same reasons discussed in the preceding category, these reports are also relevant and proportional to Intervenor's deliberate indifference claim against Corizon.

### D. ASPC-Tucson Contract Monitor Correspondence

> **Category 10.** All correspondence and emails by and between any ADC agent/employee, including without limitation, David Robertson, MD, and Corizon's Western Regional Director for all cancer patients at ASPC-Tucson since January 1, 2014, including all email updates of "high acuity inmates," and "Escalation Meetings."

Intervenor incorporates the relevance and proportionality discussions from above. The ADC produced emails between David Robertson, MD and Corizon personnel at ASPC-Tucson concerning Aaron Salter (a cancer patient). These emails demonstrate repeated efforts by the ADC in futility to achieve medically necessary (in this case lifesaving) care for prisoners. Emails concerning other cancer patients at ASPC-Tucson where similar (futile) efforts by ADC Monitors to compel Corizon to provide lifesaving treatment is

highly relevant to Corizon's customs, policies, practices, and continuing knowledge**. As one such email confirms, this is "Corizon culture."**

**Category 11.** All monthly reports by Jason Reese regarding Mortality Reviews.

See Parsons, Evidentiary Hearing on February 28, 2018 (Day 2)(Doc. 2671) at 334:8-335:3.

Dr. Robertson testified that Jason Reese prepared monthly statistical reports based on Final Mortality Reviews prepared by the ADC, which tracks whether prisoner deaths were avoidable. For the reasons discussed in the foregoing sections, this is likewise relevant to the deliberate indifference claim against Corizon in the Collateral Action, as Aaron is one such prisoner whose death was entirely unnecessary and preventable.

**Category 12. Sanction Tracking 2004-2017.[10]**

See Parsons, Evidentiary Hearing on March 26, 2018 (Day 4) (Doc. 2770), Exhibit 103.

For the reasons discussed above, Intervenor also contends the Sanction Tracking spreadsheet (Doc. 2770 at Ex. 103) is also relevant and proportional to Intervenor's deliberate indifference claim against Corizon. The Sanctions Tracking spreadsheet tracks the ADC's sanctions to Corizon, which arose from continuing demands for performance by the ADC concerning Corizon's grossly inadequate prisoner healthcare.

**B.  REASONABLE RESTRICTIONS PROTECT ANY LEGITIMATE PRIVACY INTERESTS BY AFFECTED PARTIES.**

Intervenor does not seek a blanket unsealing of materials filed in the docket, and will otherwise agree to be bound by the terms of the Protective Order in this action affording the same protection to affected parties.

---

[10] Although the record reference is to 2004, this appears to pertain to 2014-2017.

Further, the court entered a similar Protective Order in the Collateral Action that contains confidentiality provisions, and provisions concerning motions to seal confidential information. Although the obligations are redundant, Intervenor does not object to materials produced being subject to that Order either.

Thus, reasonable restrictions to protect any legitimate privacy interests by affected parties already exist.

### IV.   CONCLUSION

For the foregoing reasons, Intervenor respectfully requests that this Honorable Court grant this Motion to Intervene and modify the Protective Order as well as applicable Orders to Seal to permit Intervenor to seek discovery of the requested materials in the Collateral Action subject to the terms of the Protective Order in both this action and the Collateral Action.

A proposed form of Order is submitted herewith.

RESPECTFULLY SUBMITTED this 13th day of March 2020,

          HADOUS|CO. PLLC

          By: /s/Nemer N. Hadous
          Nemer N. Hadous, AZ #027529
          8245 N. 85th Way
          Scottsdale, Arizona 85258
          Telephone: (602) 492-4432
          E-mail: nhadous@hadousco.com
          Attorneys for Intervenor

**CERTIFICATE OF SERVICE**

I hereby certify on March 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notice of filing to all attorneys of record in this matter. Hard copies have not been provided via personal delivery or mail to these recipients.

Additionally, Intervenor will serve copies of this Motion and all Exhibits upon counsel of record for the parties in the Collateral Actions at their respective addresses disclosed on the pleadings.

RESPECTFULLY SUBMITTED this 13th day of March 2020,

                HADOUS|CO. PLLC

                By: /s/Nemer N. Hadous
                Nemer N. Hadous, AZ #027529
                8245 N. 85th Way
                Scottsdale, Arizona 85258
                Telephone: (602) 492-4432
                E-mail: nhadous@hadousco.com
                Attorneys for Intervenor