**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| David Shinn, | |
| Defendant. | |

Consistent with this Court's discovery disputes procedures, Plaintiffs filed a Statement of Discovery Dispute on March 27, 2020. (Doc. 3552.) Defendants refused to submit a statement for inclusion as they believed the disagreement is not a discovery issue. Instead, they filed a response three days later. (Doc. 3554.) The issue presented is discrete: whether Plaintiffs are entitled to the names of individuals tested for COVID-19 so that counsel can review those prisoners' medical records to ensure compliance with the Stipulation's performance measures.

The Court must begin with disabusing Defendants of the belief that they alone can decide what constitutes a discovery dispute and independently choose whether to participate in the Court's process. To summarize, Plaintiffs requested information material to this litigation; Defendants do not believe they are entitled to it. This is a quintessential discovery dispute. Pursuant to the Stipulation, when the parties "fail to agree" regarding access to information, "either party may submit the dispute for binding resolution by [the Court]." (Doc. 1185 at 12.) Defendants' refusal to engage in the Court-ordered discovery

dispute process by unilaterally declaring that Plaintiffs' request is not a discovery issue is not well-taken. Simply because Defendants may disagree with Plaintiffs' position and trust they may have a meritorious objection to the request does not obviate their obligation to participate in this process—the process they agreed to—in good faith. The Court will not be diverted from the substance of this dispute, but both sides are advised they *must* cooperate in the submission of future disputes.

As to the substance of the discovery dispute, Paragraph 29 of the Stipulation provides, in relevant part: "Plaintiffs' counsel and their experts shall have reasonable access to the . . . documents necessary to properly evaluate whether Defendants are complying with the performance measure and other provisions of this Stipulation." (Doc. 1185 at 12 ¶ 29.) As Plaintiffs note, their access to particular medical information is not new; they have had access to *all* prisoners' complete medical records since the ADC developed and adopted electronic medical records in 2016. Plaintiffs have used that access and have routinely sent advocacy letters on specific prisoners' behalf to urge Defendants to take specific action in particular instances. The present request is not outside the mainstream of what Plaintiffs have been doing all along. In fact, Plaintiffs could manually review the medical records of every prisoner to extract the information they seek. Alternatively, Plaintiffs have merely requested Defendants provide the information instead of Plaintiffs having to undertake the time-consuming task of locating it themselves.

Three days after Plaintiffs filed the discovery dispute statement, Defendants responded, arguing that Plaintiffs' request was outside the scope of the monitoring activities outlined in the Stipulation. (Doc. 3554.) They also attached the letter they sent to Plaintiffs detailing their reasoning. The Court will address Defendants' concerns.

They first contend that the Court has already effectively denied Plaintiffs' request for information when it denied their request for a particular COVID-19 plan. (Doc. 3540.) While Defendants are correct that the Court determined that the Stipulation does not require particular advance planning to address potential issues, they are wrong on everything else. Certainly, there is no mention of COVID-19 in the Stipulation—nor could there have

been—but there is also no mention of other specific diseases like cancer or diabetes in the performance measures. So while the Stipulation does not require the creation of plans to prepare for any particular disease, Defendants' response gives the impression that they are willfully blind to the Stipulation's raison d'etre—which is to provide for prisoners' health care through diagnostic testing and treatment. And, contrary to Defendants' second argument, PMs 39-41 (timely access to providers), PMs 45-47 (provision of diagnostic services), PMs 48-52 (provision of specialty care), and PM 55 (disease management) unquestionably require compliance with particular treatment benchmarks regardless of the precise underlying condition, be it cancer or COVID-19.

Further, Defendants not only argue that the health care performance measures cited above do not relate to COVID-19, but that infectious disease control management performance measures do not apply as there is no vaccination for COVID-19. This narrow focus on the infectious disease performance measures is troubling and may reflect Defendants' failure to accept what may be a grave threat facing the prisoner population. Contrary to their belief, the COVID-19 pandemic is not outside the Stipulation and Defendants' obligations simply because there is no vaccine to prevent it. As noted in the Court's March 23, 2020 Order, Defendants remain required to provide treatment to prisoners who are ill, whether it be influenza, diabetes, cancer, or COVID-19. Consequently, Plaintiffs are entitled to the names of prisoners who are tested for COVID-19 so that their evaluation and treatment can be meaningfully monitored for compliance with the Stipulation's performance measures.[1]

The question that remains is whether Plaintiffs are entitled to that information on a real-time basis. They are. In 2018, Magistrate Judge Duncan ordered Defendants to provide real-time comprehensive reporting data as a part of the efforts to monitor chronically substantially noncompliant performance measures. Defendants appealed that order, arguing that such comprehensive reporting was not allowed under the Stipulation.

---

[1] This does not mean that, in the future, Defendants must provide such information on a condition-by-condition basis. But as evidenced by the crisis existing for the general public, COVID-19 presents a unique situation.

The Ninth Circuit rejected that argument because the Stipulation allows for the Court "to remedy 'deficiencies' via 'all remedies provided by law.'" *Parsons v. Ryan*, 949 F.3d 443, 459 (9th Cir. 2020). And, in the Ninth Circuit's view, the submission of real-time reports "to ascertain compliance" was a "remedy at law." *Id.* So too here.

The reporting of weekly information regarding COVID-19 testing and treatment is relevant to ascertaining Defendants' performance on a number of PMs that are presently before the Court for enforcement.[2] This is consistent with the Court's authority under the Stipulation because it is attempting to remedy PMs that are chronically substantially noncompliant. And because the Court has the authority to exercise "all remedies provided by law" regarding compliance with those PMs, the Court has the authority to require weekly reporting. Defendants will therefore be required to report on a weekly basis, the names and identification numbers of prisoners who are tested for COVID-19. Defendants' objection that collecting this data is overly burdensome is belied by the fact that they provided up-to-date information in response to Plaintiffs' request as well as Defendants' April 1, 2020, press release containing such information.

Accordingly,

**IT IS ORDERED** Defendants are required to provide Plaintiffs the names and identification numbers of prisoners tested for COVID-19 and the results, on a weekly basis, pursuant to Paragraph 29 of the Stipulation and as part of the effort to ensure compliance with Performance Measures PMs 39-41, PMs 45-47, PMs 48-52, and PM 55.

Dated this 2nd day of April, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[2] Specifically, the Court issued its third Order to Show Cause on January 31, 2020, where it directed Defendants to bring certain performance measures into compliance no later than March 1, 2020 (Doc. 3490). Those performance measures include PM 39, PM 40, PM 45, PM 46, PM 47, PM 49, PM 50, PM 51, PM 52, PM 55.

- 4 -