Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:  jkeenan@acluaz.org
          carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia
Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy
Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,
Joseph Hefner, Joshua Polson, and Charlotte Wells, on
behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE
PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE
PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br>     v. <br><br> David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' RESPONSE TO COURT ORDER (DOC. 3518)** |

The Court's March 11, 2020 Order directed Plaintiffs to address two items in particular, in response to Defendants' positions on Dr. Stern's systemic recommendations:

1) "Defendants request the Court use the $1.445 million in prior sanctions, as well as any future monetary sanctions, to fund 'a root cause analysis for non-performing HCPMs as well as a system-wide staffing analysis.' (Doc. 3512 at 10). Would that be a proper use of the monetary sanctions?"

2) "An overarching theme in recent filings by Defendants is their position that recent numbers show they have been 'in compliance with nearly 93% of the remaining 852 Stipulation Performance Measures.' (Doc. 3512 at 3). Defendants seem to believe a 93% compliance rate means their performance is acceptable. Could the Court conclude the Stipulation should be rescinded if the 93% compliance rate is accurate?"

[Doc. 3518 at 6-7]

**Question 1:  Use of Contempt Fines and Any Future Sanctions**

Plaintiffs agree that a good use of the sanction fines would be to have a system-wide staffing analysis performed and implemented as soon as possible.  This would effectuate Dr. Stern's critical systemic recommendation that Defendants "conduct a staffing analysis and then implement staffing changes accordingly." Doc. 3379 at 98.  A staffing analysis also would help to implement Dr. Stern's related recommendation, that the Defendants reconfigure their "mix" of staff, by identifying not only how many additional health care staff are needed, but also the types of staff.  [*Id*. at 98-100]

However, given Defendants' chronic inability to remedy their noncompliance, and given that now a *third* private contractor is unable to fill the health care staff positions contracted, the contempt fine money should not just be handed back to Defendants, nor should they or their contractor be the ones doing the analysis.  Rather, as noted in Plaintiffs' February 4, 2020 Motion asking the Court to appoint an expert to conduct such an analysis (Doc. 3491), this should be done by a court-appointed, independent expert.

In addition to a staffing analysis, Plaintiffs believe that the sanctions money also

should be used to pay for a Court-appointed expert (or experts) to provide the critical

analysis that Dr. Stern's report left undone. Specifically, Dr. Stern noted that his report did

*not* provide a systemic analysis of the adequacy of the health care provided to class

members:

> I was not charged by the court to evaluate, did not design my methodology
> to, and therefore with rare exception do not offer an opinion on, whether,
> overall, the systems of care in place to deliver health care at the ADC pose
> a significant risk of serious harm to its residents.

Doc. 3379 at 4; *see also id*. at 113.

The Court should appoint an expert (or experts), pursuant to Rule 706 of the

Federal Rules of Evidence, to (a) conduct a rigorous staffing analysis of the health care

staff needed to address the chronic failure to comply with critical performance measures

and to ensure that each ASPC will sustainably comply with the Stipulation's requirements

and provide constitutionally adequate health care, as the Court has been expressly

authorized to do by the Ninth Circuit;[1] and (b) undertake a system-wide evaluation of the

adequacy of health care provided to class members.  *See id*. at 113.  Plaintiffs previously

suggested the Court appoint an expert to conduct a staffing analysis and to analyze the

adequacy of the health care provided to class members, in their December 2, 2019

response to the Court's direction that the parties file briefs detailing all mechanisms

available to enforce the Stipulation.  *See* Doc. 3430 at 5-7.[2]

---

[1]  *See Parsons v. Ryan*, 912 F.3d 486, 498-99 (9th Cir. 2018), *cert denied sub nom. Ryan v. Jensen*, 589 U.S. ___ (Oct. 7, 2019) ("Paragraph 36 does not, by its plain language, preclude the district court from ordering Defendants to develop and implement a plan to increase staff in general. [. . . and therefore] the district court may, in future proceedings, consider whether a general staffing order that does not require Defendants to hire a specific number or type of staff is an appropriate remedy for Defendants' non-compliance.")

[2]  Plaintiffs' request for this analysis of the adequacy of the health care is perhaps the same as what Defendants seek when they ask for a "root cause analysis" of noncompliance.  However, the "root cause analysis" that they and their contractors have provided to the Court regarding chronically noncompliant PMs has often been quite superficial or simply restates the problem, which again points to the need for a neutral, court-appointed expert who actually figures out why these problems persist.  [*See, e.g*., Doc. 3542-1 at 108 (PM 37 at Eyman: "Continued low RN staffing caused multiple delays for some HNRs to be processed"); id. at 279 (PM 50 at Florence: "Certain specialties have been difficult to obtain")]

1    Given his past work for the Court in this case and his familiarity with the ADC

2    system, Dr. Stern is the logical person to perform these two tasks, and Plaintiffs do not

3    object to him being so appointed by the Court.  If Dr. Stern is unable or unavailable to

4    conduct either or both of these tasks, Plaintiffs request that the Court appoint different

5    independent experts or entities, based upon input and suggestions of Dr. Stern, Plaintiffs,

6    and Defendants.

7    Once these expert reports are received, the Court will be better informed as to the

8    future path of this case and what additional orders may be needed.  Additionally, since

9    these tasks are unlikely to exhaust the $1.445 million in contempt fines already imposed

10   by this Court and affirmed by the Ninth Circuit, let alone any additional contempt fines

11   the Court may impose, the Court should order this expert (or experts) to provide

12   continuing monitoring of the delivery of health care using qualitative metrics and clinical

13   judgment rather than the Stipulation's quantitative performance measures, and to provide

14   continuing guidance to Defendants if proposed reforms to not ensure adequate care.  *See

15   also* Doc. 3430 at 7.

16   **Question 2:  The Stipulation Should Not (and Cannot) Be Rescinded.**

17   As to the Court's second question, Plaintiffs do not agree that the Stipulation may

18   be "rescinded" simply because Defendants claim that they are in compliance with 93% of

19   the 852 Stipulation Performance Measures.

20   Defendants may not unilaterally replace the parties' agreed-upon mechanism for

21   measuring compliance and terminating portions of the Stipulation.  *Parsons v. Ryan*, 912

22   F.3d 486, 497 (9th Cir. 2018) ("To determine the parties' intent, we 'look to the plain

23   meaning of the words as viewed in the context of the contract as a whole.'") (quoting

24   *Earle Invs., LLC v. S. Desert Med. Ctr. Partners*, 394 P.3d 1089 (Ariz. Ct. App. 2017));

25   *see also* Doc. 3495 at 5 (Order) ("Defendants previously determined they were free to

26   unilaterally undercut the Stipulation by abandoning the HNR-Box system and

27   manipulating their compliance. . ."); *see also* Doc. 3518 at 5 (Order) ("For years

28   Defendants have insisted that the Court must remain focused on the precise language of

the Stipulation and can only enforce that specific language… Now, however, Defendants propose the Court either 'retire' an inconvenient PM or unilaterally alter the language of the PM to better suit Defendants' current practices.").

Here, the parties agreed to a system where "particular performance measures at particular complexes" would be evaluated separately for substantial compliance. (Doc. 1185 ¶ 10). Under the terms of the Stipulation, a performance measure may be terminated if, and only if:

> i. The particular performance measure that applies to a specific complex is in compliance, as defined in sub-paragraph A of this Paragraph, for eighteen months out of a twenty-four month period; and
> ii. The particular performance measure has not been out of compliance, as defined in sub-paragraph A of this Paragraph, for three or more consecutive months within the past 18- month period.

*Id*. There is nothing in the Stipulation that supports Defendants' contention that the Court can now disregard the plain language of the Stipulation and evaluate compliance in gross, aggregating all of the performance measures together at a single moment in time. [*See, e.g*., Doc. 3495 at 5 n. 1 ("History has shown that Defendants appear to believe they are empowered to modify the Stipulation to accommodate their own preferences . . . Defendants' view of interpreting the Stipulation as they wish is plainly unreasonable.")] This should be the end of the matter.

The Stipulation was structured this way for a reason. This structure ensured that Defendants needed to comply with all facets of a functional health care system at all prisons. Defendants agreed to abide to these measures and termination structure, and must be held to that agreement.

Moreover, many of Defendants' self-reported scores of compliance have already been invalidated by this Court. The Court has ruled as follows:

> Defendants are under no obligation to apply the Final Monitoring Guide's procedures retroactively. However, if Defendants want to persuade the Court that a given Performance Measure[] at a given facility is compliant with the Stipulation, then *Defendants will have to show that this PM/facility was compliant under the Final Monitoring Guide's procedures.* The Court

expects that this situation would arise for Defendants in at least three contexts: in response to a Motion to Enforce, when moving to terminate a finding of noncompliance under a remediation plan, *and when moving to terminate the Court's oversight.* (Doc. 1185 at ¶¶ 10, 20)

Doc. 1951 at 1-2 (emphasis added, footnote omitted).

This ruling is compelled by Circuit precedent.  In *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 2512 (2016), the Ninth Circuit held that a judicial interpretation of a contract term is effective from the date of the contract's inception.   "[A] contract provision has only one true meaning – what it meant when written – even though the parties may later dispute the correct interpretation."  *Id.* at 1165.  Therefore, "[o]nce a court has interpreted an ambiguous contract provision that is and has *always been* the correct interpretation from its formation." *Id.* (emphasis in original).

Here, in the wake of Dr. Stern's report, this Court has issued orders instructing Defendants to retroactively re-audit multiple PMs using his methodology to address inaccuracies.  Many of these PMs are ones with which Defendants now claim compliance. [*See, e.g*., Doc. 3518 at 2-5 (the temporal definition of "seen" impacting 18 mental health performance measures), *id*. at 5-6 (PM 25), *id*. at 6 (PM 67); *see also* Doc. 3495 at 3 (PMs 48, 50, 51), *id.* at 4 (PM 36), *id.* at 6-7 (PMs 39, 40, 41, 98), *id*. at 10 (PMs 54, 61, 66, 73, 77, 80-84, 87-90, 92), *id*. at 11 (PM 44), *id.* at 11-12 (PM 46), *id*. at 12-13 (PM 55), *id*. at 13 (PMs 85 and 86), *id*. at 15-16 (PM 35), *id*. at 18 (PM 72), *id*. at 19-20 (changing the approach to PMs for which there is no data)]  Because Defendants do not even claim to have performed this re-audit, their claims of compliance with these PMs are invalid.

It also should be noted that Defendants fail to explain how they have calculated their purported overall compliance percentage.  When they have made similar claims in the past, they have counted "N/A" scores as compliant, (Doc. 1863 at 9 n.10; Doc. 1900 at 5 n.2; Doc. 2338 at 13-16), in violation of the Court's order that "N/A" scores are to be counted as neither compliant or noncompliant.  [*See* 2/8/17 Tr. at 45:18-20 ("I should also, I think, address what it means to have an N/A, and I think that those just don't get

1  counted. It's not for or against, it's just pulled out."); Doc. 2900 at 6 ("The Court
2  informed the parties that the months with "N/A" results would not count either for or
3  against termination")]

4  **Updated Spreadsheet of Terminated and Non-Terminated Performance Measures**

5      Finally, pursuant to the Court's Order, (Doc. 3518 at 6), attached as Exhibit 1 to
6  the Declaration of Corene Kendrick is an updated spreadsheet of the Performance
7  Measures, showing all measures that the Court has ordered monitoring terminated.  [Docs.
8  2900, 3495, 3518]

9      This spreadsheet was reviewed by Counsel for Defendants, who agreed that it is
10 accurate.  Kendrick Decl. ¶ 3.

11      If the Court wishes to have an Excel version of this spreadsheet sent to chambers, it
12 can either issue a minute order instructing counsel to do so, or the Court's clerk can
13 contact the undersigned counsel via email, as counsel's office is closed until further notice
14 under the State of California's shelter in place order.

15
16 Dated:  April 17, 2020                    **PRISON LAW OFFICE**

17                                           By:   s/ Corene T. Kendrick
18                                               Donald Specter (Cal. 83925)*
                                                 Alison Hardy (Cal. 135966)*
19                                               Sara Norman (Cal. 189536)*
                                                 Corene T. Kendrick (Cal. 226642)*
20                                               Rita K. Lomio (Cal. 254501)*
                                                 1917 Fifth Street
21                                               Berkeley, California 94710
                                                 Telephone:  (510) 280-2621
22                                               Email:    dspecter@prisonlaw.com
                                                           ahardy@prisonlaw.com
23                                                         snorman@prisonlaw.com
                                                           ckendrick@prisonlaw.com
24                                                         rlomio@prisonlaw.com

25                                               *Admitted *pro hac vice*
26
27
28

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Eunice Hyunhye Cho (Wash. 53711)*
Maria V. Morris (Cal. 223903)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@aclu.org
          afettig@aclu.org
          echo@aclu.org
          mmorris@aclu.org

*Admitted *pro hac vice*.  Not admitted
 in DC; practice limited to federal
 courts.
**Admitted *pro hac vice*

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    jkeenan@acluaz.org
          carellano@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

2

**ARIZONA CENTER FOR DISABILITY LAW**

3

By:  s/ Maya Abela

4

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    adietrich@azdisabilitylaw.org

5

6

7

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

8

9

10

11

12

13

*Attorneys for Arizona Center for Disability Law*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2020, I electronically transmitted the above

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

C. Kendrick