FILED

UNITED STATES COURT OF APPEALS

APR 27 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| VICTOR ANTONIO PARSONS; SHAWN JENSEN; STEPHEN SWARTZ; SONIA RODRIGUEZ; CHRISTINA VERDUZCO; JACKIE THOMAS; JEREMY SMITH; ROBERT CARRASCO GAMEZ, JR.; MARYANNE CHISHOLM; DESIREE LICCI; JOSEPH HEFNER; JOSHUA POLSON; CHARLOTTE WELLS; ARIZONA CENTER FOR DISABILITY LAW, <br><br>           Plaintiffs-Appellees, <br><br> v. <br><br> CHARLES L. RYAN, Director, Arizona Department of Corrections; RICHARD PRATT, Interim Division Director, Division of Health Services, Arizona Department of Corrections, <br><br>           Defendants-Appellants. | Nos.  16-17282, <br>         17-15352 <br><br> D.C. No. 2:12-cv-00601-DKD <br> District of Arizona, <br> Phoenix <br><br><br> ORDER |

MH/Appellate Commissioner

| | |
|---|---|
| VICTOR ANTONIO PARSONS; SHAWN JENSEN; STEPHEN SWARTZ; SONIA RODRIGUEZ; CHRISTINA VERDUZCO; JACKIE THOMAS; JEREMY SMITH; ROBERT CARRASCO GAMEZ, JR.; MARYANNE CHISHOLM; DESIREE LICCI; JOSEPH HEFNER; JOSHUA POLSON; CHARLOTTE WELLS; ARIZONA CENTER FOR DISABILITY LAW, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> CHARLES L. RYAN, Director, Arizona Department of Corrections; RICHARD PRATT, Interim Division Director, Division of Health Services, Arizona Department of Corrections, <br><br> Defendants-Appellees. | No.  17-15302 <br><br> D.C. No. 2:12-cv-00601-DKD District of Arizona, Phoenix |

Before: Peter L. Shaw, Appellate Commissioner.

I
Background

Arizona prisoners and the Arizona Center for Disability Law (together, "Plaintiffs") brought this 42 U.S.C. § 1983 class action challenging prison conditions and health care against the Arizona Department of Corrections and its officials (together, "Defendants").  *See Parsons v. Ryan*, 912 F.3d 486, 493 (9th

Cir. 2018) ("*Parsons I*"). The parties entered into a stipulation, Plaintiffs alleged Defendants did not comply, and the district court issued several orders. *Id*.

Defendants filed appeal number 16-17282 from the district court's order requiring Defendants to use all available community health care services to meet their obligations under the stipulation, and this court affirmed that order. *Id*. at 494-95. Plaintiffs filed appeal number 17-15302 from the district court's ruling that the stipulation precludes the district court from ordering Defendants to develop a general staffing plan, and this court reversed that ruling. *Id*. Defendants filed appeal number 17-15352 from the district court's ruling that the stipulation subclass includes "close custody" inmates, and this court reversed that ruling. *Id*. The court denied the parties' petitions for panel rehearing and rehearing en banc. The United States Supreme Court denied Defendants' petition for a writ of certiorari.

Pursuant to 42 U.S.C. § 1988, Plaintiffs filed a motion for an award of attorneys' fees as prevailing parties in the first two appeals, numbers 16-17282 and 17-15302. Defendants filed an objection challenging Plaintiffs' requested fee amount, but not Plaintiffs' entitlement to fees. Plaintiffs filed a reply. The court awarded attorneys' fees and referred the fee amount determination to the Appellate Commissioner. *See* 9th Cir. R. 39-1.6.

The Appellate Commissioner stayed the fee amount determination pending this court's disposition of the parties' appeals from the district court's award of $1,259,991.98 in attorneys' fees and costs, numbers 18-16358, 18-16365, 18-16368, and 18-16424, because those appeals involved some of the issues presented here.  The court has decided those appeals, and has denied Defendants' petition for rehearing en banc of the court's decision.  *See Parsons v. Ryan*, 949 F.3d 443, 451, 474 (9th Cir. 2020) ("*Parsons II*").

## II
## Analysis

Under § 1988, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Plaintiffs request $177,414.30 in attorneys' fees for 804.6 hours of work on appeal numbers 16-17282 and 17-15302 at $220.50 per hour by six attorneys and two paralegals from the Prison Law Office ("PLO") in Berkeley, California.

A.  Reasonable Hourly Rates

   1.  Applicable Hourly Rates

In the parties' stipulation, they agreed to an hourly rate governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d).  Under the PLRA,

the maximum hourly rate is "150 percent of the hourly rate established under 18 U.S.C. § 3006A for payment of court-appointed counsel." Section 3006A of the Criminal Justice Act ("CJA") provides that court appointed counsel shall "be compensated at a rate not exceeding $60 per hour for time expended in court or before a United States magistrate judge and $40 per hour for time reasonably expended out of court, unless the Judicial Conference determines that a higher rate of not in excess of $75 per hour is justified for a circuit or for particular districts within a circuit." Plaintiffs calculated the requested $220.50 hourly rate using the Fiscal Year 2019 Congressional Budget Summary prepared by the Judicial Conference of the United States, in particular, the statement at page 38.II.1 that "the maximum rate authorized in statute is $147 per hour."

Defendants argue that the hourly rate instead should be calculated using the Guide to Judiciary Policy, Vol. 7 Defender Services, Part A Guidelines for Administering the CJA and Related Statutes, Chapter 2: Appointment and Payment of Counsel § 230.16, which states the hourly rates that were actually appropriated and paid to court-appointed counsel under § 3006A. Defendants also assert that the Plaintiffs' attorneys' time should be awarded based on the actual CJA hourly rates in effect for the time periods when their work was performed, rather than at the Fiscal Year 2019 hourly rate as requested.

      a. Congressional Budget Summary Applies

The district court awarded Plaintiffs' fees based on the hourly rates proposed in the Congressional Budget Summary, following *Webb v. Ada Cnty.*, 285 F.3d 829, 839 (9th Cir. 2002), which holds that courts must apply the hourly rate that the Judicial Conference determined was justified, not the hourly rate that was actually appropriated by Congress to compensate court-appointed counsel.

The parties filed cross-appeals numbers 18-16365 and 18-16424 from the district court's fee order, and this court held that the district court did not err by consulting the Congressional Budget Summary to determine the hourly rates. *See Parsons II*, 949 F.3d at 463. The court relied on *Perez v. Cate*, 632 F.3d 553, 555 (9th Cir. 2011), which "instructs us that the relevant rate under Section 3006A is the one that the Judicial Conference authorized and requested as evidenced by the Congressional Budget Summary and the Report of the Proceedings of the Judicial Conference of the United States -- not what Congress ultimately allocated as evidenced by the Guide," noting that the Report of the Proceedings was silent as to what hourly rate the Judicial Conference authorized and requested for Fiscal Year 2017. *Id*. at 464. The court noted that "[t]his instruction is consistent with our conclusion in *Webb* . . . that 'the amount actually paid to CJA counsel' due to 'lack

of congressional funding' is irrelevant to the rate determination under Section 3006A." *Id*.

### b. Relevant Hourly Rates Within Congressional Budget Summary

This court also held that the district court incorrectly used $146 as the base hourly rate, relying on the statement in the Fiscal Year 2017 Congressional Budget Summary that "the maximum hourly rate authorized in statute is $146 per hour." *Id*. at 465. Because the Fiscal Year 2017 Congressional Budget Summary states that the requested funding supports an increase to $137 per hour, the court held that the correct base hourly rate instead is $137 per hour for Fiscal Year 2017, 150 percent of which is $205.50 per hour. *Id*. Accordingly, the court vacated the fee order and remanded to the district court with instructions to recalculate the fee award consistent with the opinion by determining the correct hourly rates for each year and applying these hourly rates to Plaintiffs' time entries. *Id*.

Applying the same approach, Plaintiffs' calculation of the requested $220.50 hourly rate for Fiscal Year 2019 by using a $147 base hourly rate, in reliance on the statement that "the maximum rate authorized in statute is $147 per hour" in the Fiscal Year 2019 Congressional Budget Summary, is incorrect. Because the Fiscal Year 2019 Congressional Budget Summary states that the requested funding

supports an increase to $140 per hour, the correct base hourly rate is $140 per hour, 150 percent of which is $210 per hour. *Id.*

          c. Fiscal Year 2019 Hourly Rate Applies To All Time Awarded

Plaintiffs filed the fee application on March 28, 2019, and request that all hours expended litigating this appeal from 2016 through 2019 be compensated at the Fiscal Year 2019 hourly rate. Plaintiffs point out that "most of the work on these appeals was completed almost two years ago." They cite *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989) and *Gates v. Deukmejian*, 987 F.2d 1392, 1406-07 (9th Cir. 1992), for the proposition that the court has discretion to award current rather than historic hourly rates to compensate for delay in payment. In the opposition to the fee application, Defendants did not address the applicability of these cases, but asserted that the actual CJA hourly rates in effect for the time periods when the work was performed should be awarded.

Plaintiffs made the same argument in the district court -- seeking the Fiscal Year 2017 hourly rate for all work performed in preceding years. The district court rejected Plaintiffs' request because Plaintiffs themselves caused any delay in the receipt of fees by waiting about nine months to file their fee application. The district court instead awarded the Fiscal Year 2015, 2016, and 2017 hourly rates in effect when the work was performed.

Unlike in the district court, however, where Plaintiffs delayed in filing the fee application, the appellate fee application was timely filed after Plaintiffs became prevailing parties on appeal, and could not have been filed earlier. Moreover, the fee award has been further delayed by the time needed for the United States Supreme Court to rule on Defendants' petition for a writ of certiorari, and by the stay of these fee proceedings pending the disposition of the appeals from the district court's fee award, which were decided on January 29, 2020, and as to which the petition for rehearing en banc was denied on April 17, 2020.

In these circumstances, it is appropriate for the court to exercise its discretion to apply the Fiscal Year 2019 hourly rate of $210 to all time awarded to compensate for delay in payment. In light of the incremental increases in the Fiscal Year 2017 through 2019 hourly rates that would otherwise be awarded, applying the Fiscal Year 2019 hourly rate has a modest effect, increasing the fee award by roughly $3,000.

2.  Paralegal Hourly Rates

Defendants object to awarding the PLRA maximum hourly rates for the paralegals' work, arguing that those hourly rates exceed the $50 to $75 prevailing market hourly rates for paralegals in the Phoenix forum district. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) (Reasonable hourly rate is "in line with

those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."). Defendants' objection lacks merit.

The district court awarded the PLRA maximum hourly rate for these paralegals, who work in the San Francisco Bay Area. Plaintiffs provided evidence of a $250 prevailing market rate for paralegals in the San Francisco Bay Area. (Plaintiffs' counsel states that the prevailing market rate is now $275.) Plaintiffs also provided declarations stating that qualified local counsel willing to bring this complicated, resource-intensive case were unavailable. *See Barjon*, 132 F.3d at 500 (citing *Gates*, 987 F.2d 1392, 1405 (9th Cir. 1992)) ("[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.").

Defendants appealed, and this court rejected Defendant's challenge to the district court's assignment of the PLRA maximum hourly rate to the paralegal work performed in the San Francisco Bay Area. *See Parsons II*, 949 F.3d at 465- 66. The court stated that paralegals are entitled to the PLRA's maximum hourly

rate if the prevailing market hourly rate for paralegals exceeds that cap. *Id*. at 466 (citing *Perez*, 632 F.3d at 557). Because Defendants did not contest Plaintiffs' evidence showing that the prevailing market rate for paralegal work was $250 per hour in the Bay Area, the district court did not err in applying the PLRA maximum hourly rate to the paralegal work performed in the San Francisco Bay Area. *Id*.

As explained above, the correct maximum hourly rate based on the amount the Judicial Conference authorized and requested in the Congressional Budget Summary for Fiscal Year 2017 is $205.50, not $219. *Id*. Therefore, the court reversed and remanded with instructions for the district court to re-calculate the fees awarded for paralegal work in light of the correct hourly rates. *Id*. Accordingly, the correct Fiscal Year 2019 hourly rate of $210 is awarded for the paralegals here.

B.  Reasonably Expended Hours

On Ninth Circuit Form 9, Plaintiffs claim that the attorneys and paralegals spent the requested 804.6 hours in various service categories, as follows:

|                    | AH   | CK   | DS   | MAB   | RL    | TN   | ES   | SH   | Total |
|--------------------|------|------|------|-------|-------|------|------|------|-------|
| Int. & Confs.      | 1.1  | 2.4  | 2.1  | 2.8   | 5.3   | 0    | 0    | 0    | 13.7  |
| Obt. & Rev. Records| 9.2  | 0    | 0    | 5.7   | 1.0   | 0    | 0    | 1.8  | 17.7  |
| Legal Research     | 1.3  | 1.6  | 0.3  | 64.1  | 52.2  | 0    | 0    | 0    | 119.5 |
| Preparing Briefs   | 38.4 | 11.2 | 46.9 | 133.2 | 313.7 | 12.6 | 16.0 | 10.4 | 582.4 |
| Oral Argument      | 4.7  | 5.7  | 24.3 | 2.4   | 8.2   | 0    | 0    | 0    | 45.3  |
| Fee Appl. & Reply  | 0    | 3.8  | 2.0  | 0     | 0.2   | 20.0 | 0    | 0    | 26.0  |
| Total              | 54.7 | 24.7 | 75.6 | 208.2 | 380.6 | 32.6 | 16.0 | 12.2 | 804.6 |

The three appeals were consolidated, separately briefed, and argued together. The PLO briefed appeal numbers 16-17282 and 17-15302, in which Plaintiffs prevailed and were awarded fees. The American Civil Liberties Union ("ACLU") National Prison Project briefed unsuccessful appeal number 17-15352. Attorneys Donald Specter of the PLO and Amy Fettig of the ACLU shared the oral argument in San Francisco.

Plaintiffs' PLO attorneys and paralegals prepared a 12,780-word answering brief for appeal number 16-17282, and a 12,701-word opening brief and 6,744-word reply brief for appeal number 17-15302. They also prepared two mediation questionnaires; a motion to consolidate and expedite; a notice of appeal; initial, supplemental, and further excerpts of record; a notice of intent to unseal; a motion and a joinder in a motion for an extension; a motion for judicial notice and reply; a

hearing acknowledgment notice; three notices of district court matters; a response to Defendants' motion to dismiss; and a motion for attorneys' fees and reply.

Plaintiffs state that their attorneys exercised careful billing judgment to reduce the total amount requested.

Defendants argue that certain hours may not be awarded, and that the requested hours are grossly excessive.

1. Level Of Success

Defendants argue that Plaintiffs' hours for appealing the district court's denial of their motion to modify the stipulation, or approximately 58 percent of the requested hours for appeal number 17-15302, may not be awarded. This argument lacks merit.

In appeal number 17-15302, Plaintiffs appealed a district court order denying their motion to require Defendants to develop a general staffing plan on the ground that the stipulation precluded the relief, and denying their motion in the alternative to modify the stipulation to allow such relief. This court agreed with Plaintiffs that the district court could order the relief, and did not address the stipulation modification question. *See Parsons I*, 912 F.3d at 497-99.

"Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not

sufficient reason for reducing a fee.  The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983); *see Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1173 (2019).  Thus, when a party prevails on only some claims, the court must consider whether: (1) the party failed to prevail on claims that were unrelated to the claims on which the party succeeded, and (2) the party achieved a level of success that makes the hours reasonably expended a satisfactory basis for the fee award.  *See Hensley*, 461 U.S. at 434; *Ibrahim*, 912 F.3d at 1172.

Plaintiffs' arguments were related because they involved a common core of facts or were based on related legal theories.  *See Hensley*, 461 U.S. at 435; *Ibrahim*, 912 F.3d at 1172, 1174.  The arguments to require a general staffing plan and, in the alternative, to modify the stipulation arose from a common course of conduct -- Defendants' non-compliance with the stipulation.  *See Ibrahim*, 912 F.3d at 1174-78 & n.23; *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995).  Plaintiffs' motion to modify the stipulation was an alternative method of pursuing the requirement of a general staffing plan and compliance with the stipulation.  *See O'Neal*, 66 F.3d at 1069.

Plaintiffs obtained full relief on the first argument -- a reversal of the district court's ruling that the stipulation precluded requiring a general staffing plan -- rendering it unnecessary for the court to reach the alternative argument to modify

the stipulation. Because Plaintiffs achieved excellent results, they may be awarded all hours reasonably expended on appeal number 17-15302. *See Ibrahim*, 912 F.3d at 1172-80; *see also Hensley*, 461 U.S. at 434-35.

2. Brief Preparation Hours

Defendants object to Plaintiffs' request for 582.4 hours for preparing three briefs totalling 32,335 words for appeal numbers 16-17282 and 17-15302, particularly in light of Plaintiffs' request for an additional 119.5 hours for legal research. Defendants assert that the community health care and staffing plan issues were briefed in the district court, and that this court's opinion devoted only 10 pages to them. *See Parsons I*, 912 F.3d at 495-501. Defendants argue that Plaintiffs should be awarded no more than 204 hours for preparing the briefing, noting that this is twice the time that Defendants spent on the same work and that Plaintiffs requested only 117.7 hours for preparing a 13,854-word brief in *Plata v. Schwarzenegger*, 603 F.3d 1088 (9th Cir. 2010).

Defendants acknowledge, however, that "[a]lthough opposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case, those records are not dispositive" and "the . . . court has the discretion not to rely on them." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013) (citing *Dem. Party of Wash. State*

*v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001)). "[S]uch a comparison is a useful guide in evaluating the appropriateness of the time claimed. If the time claimed by the prevailing party is of a substantially greater magnitude than what the other side spent, that often indicates that too much time is claimed." *Dem. Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004).

Yet, "opposing parties do not always have the same responsibilities under the applicable rules, nor are they necessarily similarly situated with respect to their access to necessary facts, the need to do original legal research to make out their case, and so on." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001). Plaintiffs contend correctly that they had a higher persuasive burden because of the "measure of judicial deference owed to corrections officials" in reviewing prisoners' claims. *Turner v. Safley*, 482 U.S. 78, 90 (1987). Plaintiffs also contend that their work was difficult because, as the district court noted, Defendants had a history of "rais[ing] spurious legal arguments."

"Comparison of the hours spent in particular tasks by the attorney for the party seeking fees and by the attorney for the opposing party, therefore, does not necessarily indicate whether the hours expended by the party seeking fees were excessive." *Ferland*, 244 F.3d at 1151. "Rather, any such comparison must

carefully control for factors such as those mentioned, as well as for the possibility that the prevailing party's attorney -- who, after all, did prevail -- spent more time because she did better work." *Id*. "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Regarding Plaintiffs' previous briefing of the issues, "[w]hen a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research:  Cases are decided; statutes are enacted; regulations are promulgated and amended.  A lawyer also needs to get up to speed with the research previously performed.  All this is duplication, of course, but it's *necessary* duplication; it is inherent in the process of litigating over time." *Id*.  Moreover, "preparing [district court] motions and appeals are not commensurate tasks, though they have some elements in common.  What matters is whether spending . . . time winning on appeal . . . was an imprudent use of hours." *Id*. at 1113.

A review of the billing records, briefs, oral argument, and opinion shows that Plaintiffs' attorneys' and paralegals' time spent preparing three appellate briefs in two important and complex appeals to a great extent was not imprudent or

unreasonable. *Id*. at 1112-13.  The community health care and staffing plan issues affected a large prisoner class and involved complex facts, and the court's opinion devoted several pages to the facts in addition to the 10 pages spent on the community health care and staffing plan issues. *See Parsons I*, 912 F.3d at 493-95. Fourteen months elapsed between oral argument and issuance of the court's opinion, and two judges wrote partial concurrences and partial dissents. *Id*. at 486, 492.  Given the complexity of the appeals, Plaintiffs' attorneys and paralegals reasonably spent substantial time presenting the facts and legal issues effectively in the briefs. *See also Blum*, 465 U.S. at 893 (Congress considered civil rights cases equally complex as antitrust cases).

Defendants cite *Plata*, 603 F.3d 1088, where 117.7 hours were sought for a single appeal, but Plaintiffs succeeded in two appeals here.  Also, this court has awarded 501.1 hours for a single civil rights appeal. *See Dem. Party of Wash. State*, 388 F.3d at 1287.  In any event, the court has questioned the usefulness of reviewing the amount of time spent in other cases to decide how much time an attorney could reasonably spend on the particular case before the court. *See Costa v. Comm'r of SSA*, 690 F.3d 1132, 1136 (9th Cir. 2012).

Nonetheless, a review of the representation as a whole reveals that the number of hours requested is somewhat excessive.  In large part, it is appropriate

for the court to defer to the Plaintiffs' professional judgment concerning the number of hours reasonably spent. *See Moreno*, 534 F.3d at 1112. But it is also appropriate for the court to impose a reduction of up to 10 percent -- a "haircut" -- based on the exercise of its discretion and without a more specific explanation. *Id*. Here, a "haircut" is appropriate, and Plaintiffs' requested hours are reduced by 10 percent to 724.14 hours.

## III
## Conclusion

Pursuant to 42 U.S.C. § 1988, attorneys' fees in the amount of $152,069.40 are awarded in favor of Victor Antonio Parsons; Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Carrasco Gamez, Jr.; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; Charlotte Wells; and Arizona Center for Disability Law; and against Charles L. Ryan and Richard Pratt. This order served on the district court shall amend this court's mandate.