MICHAEL FUQUA  215717
ASPC LEWIS  RAST
PO BOX 3600
BUCKEYE, AZ. 85326

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

☒ FILED   ☐ LODGED

**Apr 27 2020**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

Victor Antonio Parsons, et al.,

Plaintiffs,

v.

Charles L. Ryan, et al.,

Defendants.

No. CV-12-0601-PHX-DKD

CV-12-00601-PHX-ROS

*Plaintiff's Motion For Injunction - Covid-19 Preventitive Measures (Expidited Ruling Requested)*

Plaintiff requests this Court grant an Injunction for ADC to impliment preventitive measures against the spread of the Covid-19 virus in ADC Prisons in order to prevent violations of Plaintiffs 1st Amendment right to Petition the government for redress of grievances; 14th Amendment right to equal protection of the law; and Access to the courts under the 8th Amendment right to be free from Cruel and Unusual Punishment.

In *Helling v. McKinney*, 509 U.S. 25, 35, 113 S. Ct. 2475 (1993) the Supreme Court stated that "Eigth Amendment bars exposure, with deliberate indifference, to conditions "that pose an unreasonable risk of serious damage to [the plaintiffs] future health." This Court has already made orders concerning Covid-19 (Docs # 139 and #191) *Fuqua v. Ryan CV-15-0286* see also (*Martinez v Ryan*, No. CV-19-04449-PHX-DLR (Docs #76 and #78)) due to Defendants, in both cases, motions. Covid-19 is a serious danger to Plaintiffs future health as stated in *Helling* (id) that will prevent him from litigating this case, which will violate his 1st Amendment right to Petition the Court for Redress of Grievances, 14th Amendment Right to Equal Protection and Access to Courts if ADC's refusal to take preventitive measure to prevent to spread of Covid-19 in ADC prisons, and 8th Amend. Cruel and Unusual Punishment.

1/6

## A. The Plaintiff is Threatened with Irreparable Harm

For months, Director Shinn Ordered ADC employees and contractors not to wear Personal Protective Equipment (PPE) as it would "scare the inmate population" (see ABC 15 News reports) when it is the exact opposite that is true. Not wearing PPE, in light of the Covid-19 pandemic is scaring the inmate population (PSOF at 1). Furthermore, Correctional Officers have been making "jokes" about infecting the inmate population purposely, coughing at inmates and their food (PSOF at 2), not changing gloves, not changing clothing upon entrance to the facility, not sterilizing handcuffs and phones between inmate contact and legal library cells, not utilizing pre-packaged food that can be heated and wiped down prior to or at delivery, and not supplying ADC employees and inmates with PPE or allowing home-made PPE to be worn. (PSOF at 3)

The CDC has recently (4/3/20) recommended home-made PPE to the civilian population. Estelle v. Gamble, 429 U.S. 97, 105, 97, S.Ct. 285 (1976) (noting that "intentionally interfering with treatment once prescribed" is a form of unlawful deliberate indifference")

It was also noted by ABC 15 News that over half of the ADC inmate population has underling conditions that put them at more risk of serious issues if Covid-19 breaks out in ADC prisons. (PSOF at 4)

As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm. Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976); American Trucking Association, Inc. v. City of Los Angeles, 559 F.3d 1046, 1058-59 (9th Cir. 2009). This principle has been applied in prison litigation generally, see Jolly v. Coughlin, 76 F.3d 468, 482 (2nd Cir. 1996); Newsom v. Norris, 888 F.2d 371, 378 (6th Cir. 1989);

Mitchell v. Cuomo, 748 F. 2d 804, 806 (2nd Cir. 1984); McClendon v. City of Albuquerque, 272 F. Supp. 2d 1250, 1259 (D.N.M. 2003), and specifically in prison medical care cases. Phillips v. Mich. Dept of Corrections, 731 F. Supp. 792, 801 (W.D. Mich. 1990), aff'd, 932 F. 3d 969 (6th Cir. 1991).

B. The Balance of Hardships Favors the Plaintiff

In deciding whether to grant injunctions, courts ask whether the suffering of the moving party, if the motion is denied, will outweigh the suffering of the non-moving party if the motion is granted. See eg., Mitchell v. Cuomo, 748 F. 2d 804, 808 (2nd Cir. 1984)(holding that dangers posed by prison crowding outweighed state's financial and administrative concerns); Duran v. Anaya, 642 F. Supp. 510, 527 (D.N.M. 1986)(holding that prisoners' interest in safety and medical care outweighed state's interest in saving money by cutting staff).

In this case, it is nothing but insane for all parties involved and the public interest, financial benifits and health benefits to prisoners, ADC employees and their families, not to require PPE to be worn by all ADC employees, not to require sanitation of handcuffs, meal trays, CO. Clothing prior to unit/Facility entrance, sanitation of legal library cells, etc... Prisoners can not practice Social Distancing. In Max units, CDU's and Transferes, it is ADC Policy to have the CO have their "hands-on" the inmates at all times not secured. If Plaintiff catches Covid-19 he will not be able to litigate this case or his Criminal Appeals in the State Courts.

C. The Plaintiff is Likely to Succeed on the Merits

The plaintiff has a great likelihood of success on the merits. What ADC is doing, showing deliberate indifference to the Covid-19 pandemic and its future risk to plaintiff by not requiring ADC

employees to take preventative measures once recommended by the CDC was specifically singled out by the Supreme Court as an example of unconstitutional behavior of "deliberate indifference" to prisoners medical needs. *Estell v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285 (1976). It should be noted that Plaintiff is not sentenced to the Death Penalty and that ADC has suspended all visits and any inmate who goes to "off-facility medical or Court" will be quarantined for 21 days, so any outbreak of Covid-19 will be due to ADC employee contamination due to direct contact, cross-contamination, or deliberate infection.

It is well documented that ADC employees are willing to go to extream lengths to *not* provide proper medical care to ADC Inmates (*Parsons v. Ryan*, CV-12-0601 (Dist. of Az) orders holding ADC Director in Contempt of Court) and their willingness to misuse funds (Ex 4) and their attempt to cover up these issues with misdirection, excuses, and out-right perjury.

## D. The Relief Sought Will Serve the Public Interest

In this case, the injunction sought, if granted, will serve the public interest because; it is always in the public interest for prison officials to obey the law, especially the Constitution, *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir 2008); *Duran v. Anaya*, 642 F.Supp. 510, 527 (D.N.M. 1986) ("Respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest."); *Llewelyn v. Oakland County Prosecutor's Office*, 402 F.Supp. 1379, 2393 (E.D. Mich. 1975) (Stating that "the Constitution is the ultimate expression of the public interest."); [2] The Covid-19 pandemic, when it breaks-out in prison, will cost the public a lot of money compared to the requested preventitive measures.

These costs include isolation areas, medical personnel, treatments for the infected, ADC staff overtime (and private contractors) as well as future litigation costs and damages if ADC continues to refuse to protect its Inmates and there are sick inmates and deaths; 3) It is also in the public interest for ADC employees (and their children) not to pass Covid-19 from one to another. There is no "Social Distancing" in prison for inmates or employees. ADC employees and contractors live in all different areas of Arizona (and Mexico). For instance, we have C.O.'s that work in Lewis Complex from Florence, Scottsdale, Tucson, Phoenix, Mexico, Litchfield Park, ect... and CO's who do overtime from as far away as Yuma Prison Complex, routinely. Any Covid-19 contamination here, starts a new outbreak in the community. If a Yuma ADC employee comes to work at Lewis Complex and catches Covid-19 from a Phoenix address employee, there is a transfer from Phoenix to Yuma (where there are few cases so far) via Lewis Prison Complex.

Plaintiff requests this Court to grant the following Preventative Measures (PM):

PM#1: Require All ADC employees and contractors to wear PPE while on State Facility property;

PM#2: Require All ADC employees to change into newly washed clothing when entering ADC facilities and transfering from Unit to Unit;

PM#3 Requiring ADC to release all inmates sentenced to a Non-Dangerous (ND) felony by the court;

PM#3 Requiring ADC to sterilize handcuffs, phones, and general use areas between each inmate usage;

PM#4 Requiring ADC to utilize pre-packaged food.

PM #5 Requiring ADC supply ADC employees and Inmates with face masks, or bandannas if masks are unavailable, to protect others and themselves.

Furthermore, Plaintiff is aware that this issue has been brought before Judge Rosylin Silver. However, plaintiff has no way to ascertain which court, the case name or number, etc... as plaintiff only saw Judge Silver's name and quote from a ruling she issued on an ADC Covid-19 issue on ABC 15 News. Plaintiff request this motion be filed in that case as well

Submitted this 27th day of April 2020 for E-Filing

Michael Fuqua
Plaintiff, Pro Se