# EXHIBIT 11

1   Jared Keenan (Bar No. 027068)
    Casey Arellano (Bar No. 031242)
2   **ACLU FOUNDATION OF ARIZONA**
    3707 North 7th Street, Suite 235
3   Phoenix, Arizona 85013
    Telephone: (602) 650-1854
4   Email: jkeenan@acluaz.org
            carellano@acluaz.org
5
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
    *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
7   *Polson, and Charlotte Wells, on behalf of themselves and all others*
    *similarly situated*
8   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
9   5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
10  Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
11
    *Attorneys for Plaintiff Arizona Center for Disability Law*
12
13              UNITED STATES DISTRICT COURT

14                  DISTRICT OF ARIZONA

15  Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
16  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **DECLARATION OF**
17  Hefner; Joshua Polson; and Charlotte Wells, on       Damasso Aguilar
    behalf of themselves and all others similarly
18  situated; and Arizona Center for Disability Law,
                                                         # 305687
19                          Plaintiffs,

20               v.

21  David Shinn, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
22  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
23  capacities,

                            Defendants.

I, _Damasso Aguilar_ , DECLARE:

1.    I am a prisoner in the custody of the Arizona Department of Corrections, ADC# _305687_. I am currently housed in _Florence - Kasson_. I have been in this unit for _9 months_ . I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I am currently housed in Pod 2B. I have been housed in Pod 2B since July 2019. I am currently a Step 3. I have been Step 3 for about one month.

3. I have been classified as SMI since I was 14 years old. At the time, I was diagnosed with Bipolar disorder, schizophrenia with psychotic hallucinations, and depression. I am not sure what my diagnosis is currently at Florence - Kasson.

4. When I was a Step 2, officers would come up with excuses to cancel Saturday recreation or switch us to small cage recreation because they were short staffed. Since I've been a Step 3, they have cancelled "big" recreation (on the larger recreation yard) at least twice.

5. When I was a Step 2, recreation was offered in small 9 x 10' cages that are dirty and have no access to water

or a restroom. I would often refuse to participate in recreation because of these conditions. I would also refuse small cage recreation if when offered, as a Step 2 or 3. I also noticed "big" recreation is cancelled more often on weekends and holidays. If given the opportunity to do "big" recreation, I always go.

6. In addition, recreation was offered at 6:00 am when most people are asleep. It has recently been offered at 7:00 am or 7:30 am. This time works better because I am more likely to be awake.

7. Some officers will make the announcement for recreation by going cell-by-cell. However, on some shifts about half of the officers will whisper or speak at a volume we cannot hear.

8. Showers are done on the same day as recreation and typically offered at 6:00 am. I believe the officers offer showers early in the morning to get people to refuse. Also, it is not uncommon for people

to be locked in the shower for one to two hours. This has happened to me personally. The showers themselves are also not cleaned thoroughly. It is common to have soap & trash in the showers. I am a pod porter and try to clean but do not have access to cleaning supplies.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed ___March___ __12__, 2020 in __Florence__, AZ.
        (Month)        (Day)

_Damasso Aguilar_

# EXHIBIT 12

1   Jared Keenan (Bar No. 027068)
     Casey Arellano (Bar No. 031242)
2   **ACLU FOUNDATION OF ARIZONA**
     3707 North 7th Street, Suite 235
3   Phoenix, Arizona 85013
     Telephone: (602) 650-1854
4   Email:  jkeenan@acluaz.org
           carellano@acluaz.org

5

     *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
     *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
7   *Polson, and Charlotte Wells, on behalf of themselves and all others*
     *similarly situated*

8   Asim Dietrich (Bar No. 027927)
     **ARIZONA CENTER FOR DISABILITY LAW**
9   5025 East Washington Street, Suite 202
     Phoenix, Arizona 85034
10   Telephone: (602) 274-6287
     Email:  adietrich@azdisabilitylaw.org
11   *Attorneys for Plaintiff Arizona Center for Disability Law*

12

13               UNITED STATES DISTRICT COURT

14                  DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS |
| | **DECLARATION OF** Tyson Anderson |
| Plaintiffs, | |
| v. | # 221513 |
| David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, Tyson Anderson____ , DECLARE:

1.     I am a prisoner in the custody of the Arizona Department of Corrections.

ADC# 221513 . I am currently housed in Kasson Cell block I have been in this

unit for about 3 months I am over 18 years of age. If called as a witness, I could and

would testify competently to the facts stated herein, all of which are within my personal

knowledge.

2. I have been diagnosed with schizoaffective disorder and designated as SMI. My mental health code is MH4.

3. Before I came to Kasson, I was in Rast Max in the Watch Pod on continuous watch for 53 days. I cut myself daily while on continuous watch and the watchers did not stop me.

4. When I was transferred to Kasson, I was on continuous watch for 1 day. In continuous watch at Kasson, staff told me that "if I continued" playing games," they would spray me. I understood playing games to mean cutting myself. I was then moved to the watch pod to 10-minute and then 30-minute watches.

5. About a week after I got to Kasson, I was moved to the Behavior Management Unit or BMU.

6. I'm offered recreation usually three times a week. On Thursday and Sunday, recreation is offered at about 6:30 a.m. I don't go on those days because my medicine

2 of 4

1  makes it hard for me to wake up and
2  because it's cold.
3      7. On Tuesdays, recreation is offered
4  after group, at 9:00 a.m. I go on Tuesdays.
5  I'm step II so I should be allowed
6  to go to the big recreation yards, but
7  nearly every Tuesday we're taken to the
8  10'x10' cages because they say they
9  are short staffed.
10      8. I have side effects from my
11  medication that make it hard for me
12  to sit still. Because I have to be
13  chained to the table during group, it
14  is very hard for me to attend group.
15      9. I saw officers use pepper spray on
16  an old man who was very mentally ill and
17  frail, every day for months. Sometimes they
18  sprayed him multiple times in a day.
19  They would spray him for not coming out
20  of his cell for a cell integrity check.
21  The old man has now been transferred
22  to Baker Ward.
23      10. I've ~~been~~ had about three 1:1 counseling
24  sessions since I've been here.
25
26
27
28

3 of 4



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing

25  is true and correct.

26      Executed March     12 , 2020 in Florence , AZ.

              (Month)      (Day)

27

28                        Lyson Anderson

# EXHIBIT 13

1  Molly Brizgys (Bar No. 029216)
   **ACLU FOUNDATION OF ARIZONA**
2  3707 North 7th Street, Suite 235
   Phoenix, Arizona 85013
3  Telephone: (602) 650-1854
   Email:mbrizgys@acluaz.org
4
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
5  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
   *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
6  *Polson, and Charlotte Wells, on behalf of themselves and all others*
   *similarly situated*
7
   Asim Dietrich (Bar No. 027927)
8  **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
9  Phoenix, Arizona 85034
   Telephone: (602) 274-6287
10 Email:  adietrich@azdisabilitylaw.org

   *Attorneys for Plaintiff Arizona Center for Disability Law*
11
12                    UNITED STATES DISTRICT COURT
13                          DISTRICT OF ARIZONA

14 Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
   Dustin Brislan; Sonia Rodriguez; Christina
15 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph     **DECLARATION OF**
16 Hefner; Joshua Polson; and Charlotte Wells, on       Leonard  Medina
   behalf of themselves and all others similarly
17 situated; and Arizona Center for Disability Law,
                                                        #   115119
18                         Plaintiffs,

19          v.

20 David Shinn, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
21 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
22 capacities,

23                         Defendants.

24
25
26
27
28

1   I, Leonard Medina                , DECLARE:

2      1.   I am a prisoner in the custody of the Arizona Department of Corrections,

3   ADC# 115119    . I am currently housed in Browning 4 Ida 39 . I have been in this

4   unit for ~~15~~ 17 years    . I am over 18 years of age. If called as a witness, I could and

5   would testify competently to the facts stated herein, all of which are within my personal

6   knowledge.

7

8   2. I am currently at Step level 3 under DO #812 and

9   have been at this level for 5 years, during which time I have

10  not received any disciplinary tickets or infractions.

11

12  3. My exercise, shower, and CO III programming opportunities

13  are consistently cancelled due to staff shortages. Often,

14  these opportunities are not made up.

15

16  4. On average, my CO III programming is cancelled three

17  times per month. In keeping with this trend, I have only

18  been offered one opportunity to participate in CO III program-

19  ming during the past month.

20

21  5. Typically, I am only offered the opportunity to shower once

22  per week. At all other times, I have had to resort to doing

23  bird baths in my cell. Due to cancellations, I have gone as

24  long as two weeks without being offered the opportunity to shower.

25

26  6. For exercise, I am typically offered only one opportunity every

27  two weeks. Due to cancellations, I have gone as long as one

28  month without being offered the opportunity to exercise.

7. I take advantage of every opportunity to exercise, shower, and participate in CO III programming when offered.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed ___December___ ___12___, 2019 in ___Florence___, AZ.
          (Month)         (Day)

Leonard Medina

EXHIBIT 14

1   Molly Brizgys (Bar No. 029216)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email:mbrizgys@acluaz.org
4
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
5   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
    *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
6   *Polson, and Charlotte Wells, on behalf of themselves and all others*
    *similarly situated*
7   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
8   5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
9   Telephone: (602) 274-6287
    Email:  adietrich@azdisabilitylaw.org
10
    *Attorneys for Plaintiff Arizona Center for Disability Law*
11
                    UNITED STATES DISTRICT COURT
12
                        DISTRICT OF ARIZONA
13
    Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
14  Dustin Brislan; Sonia Rodriguez; Christina
    Verduzco; Jackie Thomas; Jeremy Smith; Robert
15  Gamez; Maryanne Chisholm; Desiree Licci; Joseph      **DECLARATION OF**
    Hefner; Joshua Polson; and Charlotte Wells, on       Zach Eggers
16  behalf of themselves and all others similarly
    situated; and Arizona Center for Disability Law,
17
                         Plaintiffs,                      # 198846
18          v.
19  David Shinn, Director, Arizona Department of
    Corrections; and Richard Pratt, Interim Division
20  Director, Division of Health Services, Arizona
    Department of Corrections, in their official
21  capacities,
                         Defendants.
22
23
24
25
26
27
28

1    I, Zach Eggers                , DECLARE:

2        1.    I am a prisoner in the custody of the Arizona Department of Corrections,

3    ADC# 198846   . I am currently housed in Browning - Dog Cluster. I have been in this

4    unit for 8 ½ years  . I am over 18 years of age. If called as a witness, I could and

5    would testify competently to the facts stated herein, all of which are within my personal

6    knowledge.

7

8        2. I am currently at Step level 1 under OO #812 and

9    have been at this level since September, 31, 2019.

10

11       3. From the end of 2016 to March 2019, I was at

12   Step level 2, during which time I received zero disciplinary

13   tickets or infractions. During that period, I was not offered

14   any opportunity to participate in CO III programming. Sim-

15   ilarly during my time as a Step level 3 from March 2019

16   to September 31, 2019, I was not offered any opportunity to

17   participate in CO III programming. And, despite the fact

18   that I didn't receive any disciplinary tickets or infractions as a

19   Step 3, I was demoted to Step level 1 with no explanation on

20   September 31, 2019. To my knowledge, everyone else in my clu-

21   ster was subjected to a blanket demotion to Step level 1 on

22   or about September 31, 2019.

23

24       4. Since being demoted to Step level 1, I have not received

25   any disciplinary tickets or infractions, but nonetheless have not

26   been provided with any concrete steps with which to progress

27   to Step level 2.

28

1  5. I take advantage of every opportunity to exercise and

2  shower when given the opportunity to do so. However, my

3  opportunities to exercise and shower are consistently denied due

4  to staff shortages. On average, I am offered only two

5  opportunities to exercise and shower per week. Some weeks,

6  I am only offered one opportunity to exercise and shower, and

7  at all other times I am not offered any opportunity to leave

8  my cell.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing
is true and correct.

Executed _December_ _12_, 2019 in _Florence_, AZ.
                (Month)        (Day)

Zach Eggers

# EXHIBIT 15

1    Jared Keenan (Bar No. 027068)
     Casey Arellano (Bar No. 031242)
2    **ACLU FOUNDATION OF ARIZONA**
     3707 North 7th Street, Suite 235
3    Phoenix, Arizona 85013
     Telephone: (602) 650-1854
4    Email:  jkeenan@acluaz.org
              carellano@acluaz.org
5
     *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6    *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
     *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
7    *Polson, and Charlotte Wells, on behalf of themselves and all others*
     *similarly situated*
8    Asim Dietrich (Bar No. 027927)
     **ARIZONA CENTER FOR DISABILITY LAW**
9    5025 East Washington Street, Suite 202
     Phoenix, Arizona 85034
10   Telephone: (602) 274-6287
     Email:  adietrich@azdisabilitylaw.org
11
     *Attorneys for Plaintiff Arizona Center for Disability Law*
12

13                    UNITED STATES DISTRICT COURT

14                        DISTRICT OF ARIZONA

15   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
     Dustin Brislan; Sonia Rodriguez; Christina
16   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph     **DECLARATION OF**
17   Hefner; Joshua Polson; and Charlotte Wells, on
     behalf of themselves and all others similarly        Jason
18   situated; and Arizona Center for Disability Law,     Johnson
19                       Plaintiffs,                       # 161509
20           v.

21   David Shinn, Director, Arizona Department of
     Corrections; and Richard Pratt, Interim Division
22   Director, Division of Health Services, Arizona
     Department of Corrections, in their official
     capacities,
23                       Defendants.

24

25

26

27

28

I, _Jason Johnson_, DECLARE:

1.    I am a prisoner in the custody of the Arizona Department of Corrections ADC# 161509 I am currently housed in _Kasson_. I have been in this unit for _about 10 months_. I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I am currently a Step 1. I was previously a Step 3 for about 7 months. Before coming to Kasson I was at Rincon Mental Health Unit.

3. I am seriously mentally ill (smi). And I've been diagnosed as a paranoid schizophrenic. I currently take Welbutrin.

4. I go to the mental health programming when it is offered.

5. Table time and outside exercise are generally offered on my unit but are cancelled several times a month. I've been told that this is due to staff shortages. Cancellations are not made-up.

6. When outside exercise is cancelled it's usually the Step 2 and 3 exercise enclosures that people want to go to. Instead the 10x10 cages will be offered which most people don't like.

I think this is done deliberately to discourage guys from going outside.

7. I also think that Step 1 guys are discouraged by the officers in taking table time. The restraints make people not want to go out or leave their cells.

8. If you are pretty high functioning you can manage the Kasson program. But many people here are too low functioning and need a higher level of help. There are guys on my pod who never leave their cells and live in filth. There is one guy in my pod who hasn't shaved in 10 months. And another guy who never talks. He lives in a filthy cell and seems gone. The whole pod stinks as a result.

9. I am very concerned that officers use too much spray on this unit. I've heard them brag about spraying the inmates and getting spray that is extra powerful. I think the use of spray is abusive here and much, much worse than other units I've been on.

10. It seems like officers use spray to retaliate against prisoners they don't like. This seems inappropriate for people who are supposed to be trained to work with folks who are mentally ill.

11. I've witnessed guys be sprayed before any cool down period or any mental health staff arrive. I think this abusive use of force is partially due to the fact that there are no cameras in Wing 2 and 3 of Kasson.

12. I hope that something can be done to truly help the lower functioning guys here. They need a higher level of help with staff who are trained to deal with lower functioning people.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed ___March___   ___12___ , 2020 in ___Florence___, AZ.
     (Month)        (Day)

# EXHIBIT 16

1  Jared Keenan (Bar No. 027068)
   Casey Arellano (Bar No. 031242)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: jkeenan@acluaz.org
           carellano@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
   *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
7  *Polson, and Charlotte Wells, on behalf of themselves and all others*
   *similarly situated*
8  Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
9  5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
10 Telephone: (602) 274-6287
   Email:  adietrich@azdisabilitylaw.org
11
   *Attorneys for Plaintiff Arizona Center for Disability Law*
12

13                    UNITED STATES DISTRICT COURT

14                        DISTRICT OF ARIZONA

15 Victor Parsons; Shawn Jensen; Stephen Swartz;      No. CV 12-00601-PHX-ROS
   Dustin Brislan; Sonia Rodriguez; Christina
16 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph   **DECLARATION OF**
17 Hefner; Joshua Polson; and Charlotte Wells, on     _Jonathan_
   behalf of themselves and all others similarly       _Gonzalez_
18 situated; and Arizona Center for Disability Law,   # _247947_
                       Plaintiffs,
19              v.
20 David Shinn, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
21 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
22 capacities,
                      Defendants.
23

24

25

26

27

28

1   I, _Jonathon Gonzales_ DECLARE:

2   1.   I am a prisoner in the custody of the Arizona Department of Corrections

3   ADC# _247947_. I am currently housed in _Kasson_. I have been in this

4   unit for _8 months_. I am over 18 years of age. If called as a witness, I could and

5   would testify competently to the facts stated herein, all of which are within my personal

6   knowledge.

7   2. I am seriously mentally ill/smc)

8   and have been diagnosed with

9   bipolar disorder. I am given a

10   Haldol shot every 4 weeks.

11   3. Right now I'm a Step 1.

12   Previously, I was a Step 3. It's

13   very hard to remain a Step 3

14   because it lasts so long and any

15   mistakes set us back and there's

16   no support and flexibility from staff

17   despite the fact that we're all SMI.

18   There's no mercy here.

19   4. I try to go to my mental

20   health programming, table time,

21   and outdoor recreation. Sometimes

22   these are cancelled. We are told

23   this is due to staff shortages or

24   other excuses. This will happen a

25   couple time a month at least.

26   5. Since coming to Kasson I've

27   been on suicide watch several

28   times. Since I've been at Kasson

I've also been sprayed with pepper spray many times. This is a very painful and difficult experience.

6. Last month I was sprayed in my cell because I was cutting myself. When you are sprayed like that it gets in your lungs and on your skin and keeps burning. This is a terrifying experience. These types of use of force happen all the time. It seems like it happens daily, several times a day. In my experience there are a lot more excessive uses of force here than other units.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing

25  is true and correct.

26     Executed _March_ _12_, 2020 in _Florence_, AZ.
       (Month)        (Day)

27

28



# EXHIBIT 17

1  Jared Keenan (Bar No. 027068)
   Casey Arellano (Bar No. 031242)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: jkeenan@acluaz.org
          carellano@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
   *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
7  *Polson, and Charlotte Wells, on behalf of themselves and all others*
   *similarly situated*
8  Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
9  5025 East Washington Street, Suite 202
   Phoenix, Arizona 85034
10 Telephone: (602) 274-6287
   Email: adietrich@azdisabilitylaw.org
11
   *Attorneys for Plaintiff Arizona Center for Disability Law*
12
13              UNITED STATES DISTRICT COURT
14                  DISTRICT OF ARIZONA

15 Victor Parsons; Shawn Jensen; Stephen Swartz;    No. CV 12-00601-PHX-ROS
   Dustin Brislan; Sonia Rodriguez; Christina
16 Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph  **DECLARATION OF**
17 Hefner; Joshua Polson; and Charlotte Wells, on   Jesus Murieta
   behalf of themselves and all others similarly
18 situated; and Arizona Center for Disability Law,
                                                    # 276175
19              Plaintiffs,
20         v.
21 David Shinn, Director, Arizona Department of
   Corrections; and Richard Pratt, Interim Division
22 Director, Division of Health Services, Arizona
   Department of Corrections, in their official
23 capacities,
              Defendants.

1    I, _Jesus Murieta_____, DECLARE:

2    1.    I am a prisoner in the custody of the Arizona Department of Corrections

3    ADC# _276175_. I am currently housed in _3-Baker-18  Kasson_. I have been in this

4    unit for _4 months_. I am over 18 years of age. If called as a witness, I could and

5    would testify competently to the facts stated herein, all of which are within my personal

6    knowledge.

7

8    2. I am classified as SMI. I am currently at Step

9    level 1 and have been at this level for the entire time that I

10   have been housed at my unit.

11

12   3. I have never participated in the SMI group classes.

13   No one has every talked to me about the problems from going

14   to the classes. I have never participated in recreation for

15   the entire time that I have been housed at this unit. I have

16   never taken a shower for the entire time that I have been housed

17   at this unit; I have instead resorted to bird bathing in my cell.

18

19   4. Other than for the purpose of preparing this declaration,

20   I have never left my cell for the entire time that I have been

21   housed at this unit.

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing

25  is true and correct.

26     Executed _March_ _12_, 2020 in _Florence_, AZ.
            (Month)        (Day)

27

28

EXHIBIT 18

**CHAPTER: 800**

**Inmate Management**

<u>DEPARTMENT ORDER:</u>

**812 – Inmate Maximum Custody Management and Incentive System**

<u>OFFICE OF PRIMARY RESPONSIBILITY:</u>

**OPS**

<u>Effective Date:</u>

**July 24, 2019**

<u>Amendment:</u>

**December 13, 2019**

<u>Supersedes:</u>

**DI 326 (3/27/14)**

<u>Scheduled Review Date:</u>

**TBD**

<u>ACCESS</u>

☐ **Contains Restricted Section(s)**

# Arizona Department of Corrections

## Department Order Manual



David Shinn, Director

# TABLE OF CONTENTS

**PURPOSE** ......................................................................................................................1

**RESPONSIBILITY** ..........................................................................................................1

**PROCEDURES** ...............................................................................................................1

**1.0    MAXIMUM CUSTODY MANAGEMENT OVERVIEW** ............................................1

**2.0    MAXIMUM CUSTODY MANAGEMENT - INTAKE AND ASSESSMENT** .............1

**3.0    MAXIMUM CUSTODY MANAGEMENT - SUBSEQUENT REVIEWS**..................2

**4.0    STEP LEVELS – ALL MAXIMUM CUSTODY UNITS** ..........................................3

**5.0    STEP PROGRAM – MAXIMUM CUSTODY POPULATION** .................................3

**6.0    RESTRICTIVE STATUS HOUSING PROGRAM (RSHP)** ...................................4

**7.0    ENHANCED MANAGEMENT HOUSING STATUS (EMHS)** ...............................5

**8.0    DOCUMENTING MOVEMENT/EVENTS IN MAXIMUM CUSTODY** ...................7

**DEFINITIONS/GLOSSARY** ............................................................................................7

**FORMS LIST** ..................................................................................................................7

**ATTACHMENTS** .............................................................................................................7

# PURPOSE

This Department Order establishes procedures governing the Maximum Custody Management, and modifies the concept of programming Maximum Custody inmates and the Guiding Principles developed by the Association of State Correctional Administrators (ASCA).

# RESPONSIBILITY

The Director has delegated the authority to revise the Program Matrices (Attachments B through I) to the Division Director for Prison Operations.

# PROCEDURES

1.0 **MAXIMUM CUSTODY MANAGEMENT OVERVIEW** - Maximum Custody Management is a system that requires inmates in Maximum Custody to work through a program, utilizing a step incentive system, providing the opportunity to participate in jobs, programs, and other out of cell activities. Based on behavior and programming, inmates may progress from controlled based housing to open privilege based housing where movement outside a cell is without restraint equipment. Inmates shall be assigned to Maximum Custody in accordance with Department Order #801, Inmate Classification.

2.0 **MAXIMUM CUSTODY MANAGEMENT - INTAKE AND ASSESSMENT**

2.1 Upon arrival at Maximum Custody, inmates shall initially be assigned to the intake and assessment area at the Arizona State Prison Complex (ASPC)–Eyman, Browning Unit, except the population groups that require specialty housing (Sex Offender/Protective Custody/Serious Mentally Ill (SMI)).

2.1.1 The Sex Offender/Protective Custody inmate population shall complete intake and assessment at the ASPC-Eyman, SMU I Unit.

2.1.2 The SMI inmate population shall complete intake and assessment at the ASPC-Eyman, Browning Unit.

2.2 The contract Mental Health Lead at each Complex shall be notified, by the Count/Movement Officer, of all movement into the intake area within 24 hours of inmates' arrival.

2.2.1 Within three calendar days of placement at intake, all Maximum Custody male inmates shall be evaluated by a contract mental health clinician for program/treatment needs. The mental health clinician shall provide any recommendations to the Chief of Security or shift commander for alternative placement into an appropriate program when clinically indicated.

2.3 Within five business days of an inmate's arrival at Maximum Custody, the Assessment Team, consisting of a Deputy Warden, Chief of Security, Correctional Officer (CO) IV, Correctional Sergeant, and CO III shall:

2.3.1 Orient new arrivals on the expectations of Maximum Custody utilizing orientation materials.

2.3.2 Conduct a face-to-face interview with the inmate.

    2.3.3    Conduct a review to place inmates in the appropriate Maximum Custody housing location. The review shall include:

        2.3.3.1    The Maximum Custody Placement Checklist, which requires the following screenings to be completed:

            2.3.3.1.1    Do Not House With (DNHW) Restriction

            2.3.3.1.2    Prior Protective Custody history

            2.3.3.1.3    Relevant Security Threat Group (STG) information

            2.3.3.1.4    Adult Information Management System (AIMS), to include hard copy file review and housing restriction comments information

            2.3.3.1.5    Verification of Classification and Population type status

            2.3.3.1.6    Medical and Mental health needs status

            2.3.3.1.7    Additional information that may affect the safe, orderly, and secure operation of the institution upon placement

            2.3.3.1.8    Escape history

            2.3.3.1.9    Seriousness of the incident(s) resulting in placement in Maximum Custody

            2.3.3.1.10    Inmate's demeanor and attitude during the interview process

            2.3.3.1.11    Any special security concerns

    2.3.4    Document on the appropriate AIMS screen the recommended housing (unit) location and step level.

2.4    Inmates classified to Maximum Custody Units shall be assigned to specific housing areas, using a system of steps for managing inmates in the least restrictive way necessary to carry out the Department's mission.

    2.4.1    This applies to all Maximum Custody groups, including all specialty population groups.

2.5    The CO IV or designee shall notify Central Office Movement to schedule all inmates requiring external movement from the intake area to other Maximum Custody Units.

    2.5.1    Assignments to specific housing areas within Maximum Custody and the step level assigned are not subject to the grievance or appeal process.

## 3.0    MAXIMUM CUSTODY MANAGEMENT - SUBSEQUENT REVIEWS

3.1    The purpose of the Program Team is to review inmates monthly to decide step movement, housing, and review program needs and completion.  Any decision concerning the inmate's mental health well-being is chaired by the senior clinical staff member present (within the scope of their authority).

3.1.1    The Program Team shall be comprised of Correctional Series staff (i.e., Unit Administrator, Captain, CO IV, Correctional Lieutenant, Correctional Sergeant, CO III, and CO II that are assigned to the unit/housing area), and may include support services personnel (i.e., teachers, chaplains and treatment counselors) and contract Mental Health professionals (i.e., Psychologist, Psychology Associate, and Behavioral Health Technician).

3.2    During subsequent reviews, the Program Team shall determine the inmate's step level. Inmates begin the program in Step I, with Step I being the most restrictive, and Step III being the least. Advancement through step levels and/or movement to a less restrictive housing location requires completion of all mandatory programs (as assigned) and compliance with rules.

3.2.1    Inmates may receive additional programming as available in the Department's menu of programs.

3.2.2    The step system is suspended while the inmate is on mental health or security watch or temporarily absent (e.g., hospital, court, etc.).

## 4.0    STEP LEVELS – ALL MAXIMUM CUSTODY UNITS

4.1    General Requirements - Maximum Custody inmates are housed, as assigned by the locator code, at ASPC-Eyman (SMU I Unit), ASPC-Eyman (Browning Unit), ASPC-Florence (Central/Kasson Unit), ASPC-Lewis (Rast Unit), and ASPC-Phoenix.

4.1.1    ASPC-Florence (Kasson Unit) houses inmates admitted to the Residential Program by the contract mental health staff.

4.1.2    ASPC-Phoenix (Baker Ward) houses inmates admitted to the Inpatient Program by the contract mental health staff.

4.2    The step level incentives and requirements vary in out-of-cell activities based on the unit where the inmate is housed, as outlined in the Program Matrices, Attachments B through I.

## 5.0    STEP PROGRAM – MAXIMUM CUSTODY POPULATION, EXCEPT RESTRICTIVE/ENHANCED STATUS HOUSING PROGRAM

5.1    To qualify for advancement in steps and incentives, inmates must follow all program requirements on a daily basis. Step advancements shall be determined by the Program Team.

5.2    Inmates must comply with the following requirements, unless otherwise documented in an individual program plan:

5.2.1    Grooming and Hygiene - In accordance with the standards outlined in Department Order #704, Inmate Regulations.

5.2.2    Shower - Required to shower regularly.

5.2.3    Education and/or Program Classes – Are required to participate in designated classes/programs.

5.2.4    Refrain from creating excessive banging, noise, or yelling.

5.2.5   Refrain from being disrespectful.

5.2.6   Throwing any substance out of cell at staff or inmate(s) may result in disciplinary placement in alternative housing and prolonged stay in Step I.

5.2.7   Cell Cleanliness - In accordance with the standards outlined in Department Order #704, Inmate Regulations.

5.2.8   Refrain from participating or communicating with Validated STGs.

5.3   Specific actions including, but not limited to, those referenced below may result in immediate forfeiture of time within the inmate's current step and may result in placement back to a lower Step.  Program non-compliance and/or any disciplinary resulting in a Class A or B rule violation may result in reversion to Step I or removal from their current program or housing assignment.

5.3.1   Failure to comply with Department Order #704, Inmate Regulations

5.3.2   Assault of any type

5.3.3   Destruction of property

5.4   Upon the commission of a serious rule violation or significant negative behavior, the Program Team may convene prior to the scheduled meetings to determine step level regression or removal from the program.

5.5   Inmates who have maintained Step III for a minimum of 30 consecutive days, without incident, are eligible for consideration for placement in a Close Custody housing location.

**6.0   RESTRICTIVE STATUS HOUSING PROGRAM (RSHP)** - The purpose of the Restrictive Status Housing Program (RSHP) addresses the Forbidden Three (serious assaults on staff, a serious inmate on inmate assault(s) with a weapon, or multiple inmates assaulting an inmate with a serious injury) offenses and give inmates an opportunity to modify behavior in a positive way so they can return to the general population.

6.1   The placement decision is made by the sending Complex Warden and the Regional Operations Director (ROD), in consultation with the receiving Complex Warden, based on the seriousness of the act and security concerns.

6.1.1   Inmates approved for RSHP shall be housed in the following designated units:

6.1.1.1   General Population:  ASPC-Eyman, Browning Unit

6.1.1.2   Protective Custody:  ASPC-Lewis, Rast Unit

6.2   Within three calendar days of placement, the contract mental health staff shall complete a face-to-face interview and provide immediate notification to the appropriate staff of any concerns or special needs.

6.3   Within three business days of an inmate being placed into the program, the Assessment Team shall conduct a face-to-face interview with the inmate. The Assessment Team shall:

6.3.1   Explain the reason for placement.

     6.3.2    Develop a program plan and discuss the plan with the inmate.

     6.3.3    Explain requirements for the return to general population.

     6.3.4    Document decisions on the program plan database form and in AIMS.

6.4    Within five business days of an inmate's program placement, a RSHP Independent Review Committee (RSHP Committee) shall review the initial placement decision to determine if the placement meets program criteria based on supporting documentation.

     6.4.1    The RSHP Committee shall include, at a minimum, three Correctional Series staff (Deputy Warden, Chief of Security, and Classification CO IV), who do not work in the unit where the RSHP is located.

     6.4.2    If the RSHP Committee has a conflicting assessment with the program placement decision, the final decision shall be made by the Division Director for Prison Operations or designee within the five business days.

     6.4.3    Inmates classified as SMI shall not be placed in RSHP without review by the Health Services Contract Monitoring Bureau Mental Health Director and contract Mental Health Director.

6.5    The Assessment Team shall review inmates in RSHP for program participation and step progression a minimum of every 30 calendar days.

     6.5.1    Contract mental health staff shall participate in all reviews by the Assessment Team for inmates that remain in the program longer than 180 calendar days.

     6.5.2    The reviews shall be documented in the appropriate AIMS screens.

6.6    Property and privileges are limited during housing in this program as identified in Attachment D, Restricted Status Housing Program Step Matrix - Browning and Rast Units.

6.7    All inmates shall enter the program at Step I, with Step I being the most restrictive and Step III being the least restrictive.

     6.7.1    Restraints are used at all steps in the RSHP.

## 7.0  ENHANCED MANAGEMENT HOUSING STATUS (EMHS)

7.1    Inmates who present exceptional security concerns, continued violations of the Forbidden Three acts, or are removed from RSHP may be placed in the Enhanced Management Housing Status (EMHS). Assigned EMHS inmates shall be housed within an area located in ASPC-Eyman, Browning Unit.

     7.1.1    The inmate has demonstrated actions indicating a serious escape risk or physically assaultive behavior resulting in: *[Revision – December 13, 2019:  Sections 7.1.1 thru 7.1.1.4]*

          7.1.1.1    Assaulted, or attempted to assault, another with a deadly weapon.

          7.1.1.2    Serious physical injury.

          7.1.1.3    Death of any person.

7.1.1.4    The nature of the criminal offense committed prior to incarceration constitutes a current threat to the security and orderly operation of the institution and to the safety of others.  For example, serious assaults against law enforcement, participation in organized criminal activity or 1st degree Murder.

7.2    The decision for placement in EMHS is made by the ROD and the sending Complex Warden, in consultation with the receiving Complex Warden, based on the seriousness of the act and security concerns.

7.3    Within three calendar days of placement into EMHS housing, the contract mental health staff shall complete a face-to-face interview and provide immediate notification to the appropriate staff of any concerns or special needs.

7.4    Within five business days of an inmate's placement, the unit Deputy Warden shall send a synopsis to the ROD (not involved in placement), who shall conduct an independent review of the initial placement decision to determine if the placement meets criteria based on supporting documentation.

7.4.1    If there is a conflicting assessment with the placement decision, the final decision shall be made by the Division Director for Prison Operations or designee within the five business days.

7.4.2    Inmates classified as SMI shall not be placed in EMHS without review by the Health Services Contract Monitoring Bureau Mental Health Director and contract Mental Health Director.

7.4.3    Once the final decision has been made to keep the inmate in EMHS, the unit CO IV shall advise the inmate in writing of the decision. *[Revision – December 13, 2019: Sections 7.4.3. thru 7.4.3.2.1]*

7.4.3.1    The inmate shall have 10 calendar days from the date of advisement to file an appeal. The appeal shall be on an Inmate Letter, Form 916-1, consisting of no more than two pages.

7.4.3.2    The appeal shall be reviewed by the Contract Beds Operations Director, and the Security Operations Administrator with 10 business days of receipt.

7.4.3.2.1    In the case they cannot agree, the Division Director for Prison Operations shall have the final authority on whether the appeal is approved or denied.

7.5    The ROD, Complex Warden and unit Deputy Warden shall review inmates in EMHS for program participation and step progression a minimum of every 30 calendar days. *[Revision – December 13, 2019]*

7.6    The decision to remove an inmate from EMHS is made by the ROD and Complex Warden, in consultation with the Division Director for Prison Operations.

7.7    Full restraints, to include a lead chain and camera shall be used during all out of cell movement, at all steps in the EMHS. *[Revision – December 13, 2019:  Sections 7.7 and 7.7.1]*

7.7.1    Additional security measures may be implemented based on unit needs and the inmate's demonstrated behavior.

**8.0    DOCUMENTING MOVEMENT/EVENTS IN MAXIMUM CUSTODY**

8.1    Movement of inmates from their assigned cell shall be documented on the Maximum Custody Out of Cell, Form 812-01.

8.2    When utilizing the Maximum Custody Out of Cell form, staff shall record an inmate's time out of cell. A refusal by the inmate for any movement will require the appropriate "refusal" entry on the form. To verify the refusal, either the inmate or a second staff member who witnessed the refusal should, where feasible considering safety/security/operations concerns, sign the Comments section on the back of the Maximum Custody Out of Cell form.

## DEFINITIONS/GLOSSARY

Refer to the Glossary of Terms

## FORMS LIST

812-1, Maximum Custody Out of Cell

## ATTACHMENTS

Attachment A - Guiding Principles – Restrictive Housing
Attachment B – Browning Unit (GP / STG / Condemned Row)
Attachment C – SMU I / Rast Maximum Custody - Step Program Matrix
Attachment D – Restricted Status Housing Program Step Matrix - Browning and Rast Units
Attachment E – Mental Health Program Matrix – Baker Ward and Kasson Mental Health Unit
Attachment F – Enhanced Management Step Status Matrix
Attachment G – Browning Mandatory Programs
Attachment H – Central / SMU I / Rast Maximum - Mandatory Programs
Attachment I – Restrictive Housing Mandatory Programs

# ATTACHMENT A

## GUIDING PRINCIPLES – RESTRICTIVE HOUSING

1.      Provide a process, a separate review for decisions to place an inmate in Maximum Custody;

2.      Provide periodic classification reviews of inmates in Maximum Custody every 180 calendar days or less;

3.      Provide in-person mental health assessments, by trained contract personnel within three calendar days of an inmate being placed in Maximum Custody and periodic mental health assessments thereafter including an appropriate mental health treatment plan;

4.      Provide structured and progressive levels that include increased privileges as an incentive for positive behavior and/or program participation;

5.      Determine an inmate's assignment to Maximum Custody based on the nature and level of threat to the safe and orderly operation of general population as well as program participation, rule compliance and the recommendation of the person(s) assigned to conduct the classification review;

6.      Provide appropriate access to contract health and mental health staff and services;

7.      Provide access to visiting opportunities;

8.      Provide appropriate exercise opportunities;

9.      Provide the ability to maintain proper hygiene;

10.     Provide program opportunities appropriate to support transition back to a general population setting or to the community;

11.     Collect sufficient data to assess the effectiveness of implementation of these guiding principles;

12.     Initiate a review of all inmates in Maximum Custody by persons independent of the placement authority to recommend the inmates' need for continued placement in Maximum Custody;

13.     Require all staff assigned to work in Maximum Custody Units receive appropriate training in managing inmates on Maximum Custody status.

## ATTACHMENT B

| BROWNING UNIT (GP / STG / Condemned Row (**)) | | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Intake | Orientation and sign Memo of Expectations for Maximum Custody Step Plan | N/A | N/A |
| Expectations | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual in-cell study groups as per program plan (Attachment G)<br>• Participate in the Reentry Program for all those within 18 months of release | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan (Attachment G)<br>• Demonstrate positive social interaction skills | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan (Attachment G)<br>• Maintain "meets expectation" on all work evaluations<br>• Consistently demonstrate positive social interaction skills<br>• Demonstrate good work ethic |
| Step Level Advancement<br><br>(recommended by Program Team) | To Step II:<br>• Minimum of 30 calendar days in Step I<br>• Display behavior that is cooperative and respectful<br>• No discipline in previous 30 calendar days | To Step III:<br>• Minimum of 30 calendar days in Step II<br>• Display behavior that is cooperative and respectful<br>• Must complete or actively participating in all programs as per program plan | N/A |
| Step Level Reduction<br><br>(decision by Program Team on a case-by-case basis) | N/A | To Step I:<br>• Found guilty of a Class A or B rule violation<br>• Two or more Class C rule violations within 90 calendar days while in Step II<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior | To Step II:<br>• Found guilty of a Class C disciplinary violation<br>• Repeated demonstration of poor behavior<br><br>To Step I:<br>• Found guilty of a Class A or B rule violation<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior |
| Store | $60/week - $80/Holiday | $80/week - $120/ Holiday | $100/week - $160/ Holiday |
| Phone | 1 per week/15 minutes in duration | 2 per week/15 minutes in duration | 3 per week/15 minutes in duration |
| Visitation | One, 2-hour non-contact visit block per week | Two, 2-hour non-contact visit blocks per week | Three, 2-hour non-contact visit blocks per week |

| BROWNING UNIT (GP / STG / Condemned Row (**)) | | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Recreation | Three, 2.5-hour blocks per week in the standard enclosure | Three, 2.5-hour blocks per week, one of which can be in the 10x10 interactive enclosure | <ul><li>Recreational Activities:<ul><li>For GP – One, 2.5-hour block per month in 20x40 basketball enclosure (up to eight inmates)</li><li>For GP and STG - Three, 2.5-hour blocks per week, to include one-time per week, in the 10x10 enclosures</li><li>For Condemned Row – Four, 2.5-hour blocks per week of outdoor recreation - All can be in the 10x10 interactive enclosures</li></ul></li><li>In pod recreation</li><li>Recreation with another inmate in accordance with Department Order #704, <u>Inmate Regulations</u></li></ul> |
| Hobby Craft | None | Origami and pencil drawing supplies | Origami and pencil drawing supplies |
| Resource Center/Library Access | Yes | Yes | Yes |
| TV (*) | Yes | Yes | Yes |
| Securepak | Once per quarter within security limitations on certain items | Once every other month within security limitations on certain items | Once every month within security limitations on certain items |
| Other | None | Participate in fundraisers | <ul><li>Participate in fundraisers</li><li>WIPP - Jobs as pod porter</li><li>Unrestrained escorts – may be eligible</li></ul> |

(*)  Loaner televisions (TV) are issued upon availability with an emphasis on delivery of programing content.  Priority is given to inmates in Mental Health Programs and Restrictive Housing. Inmates who are no longer indigent or in the Maximum Custody Steps process shall forfeit access to the loaner TV program.

(**) Condemned Row program requirement is voluntary.

# ATTACHMENT C

| | | | |
|---|---|---|---|
| **SMU I / RAST MAXIMUM CUSTODY - STEP PROGRAM MATRIX** | | | |
| **Item** | **Step I** | **Step II** | **Step III** |
| Intake | Orientation and sign Memo of Expectations for Maximum Custody Step Plan | N/A | N/A |
| Expectations | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan<br>• Participate in the Reentry Program for all those within 18 months of release | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan<br>• Demonstrate positive social interaction skills | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan<br>• Maintain "meets expectation" on all work evaluations<br>• Consistently demonstrate positive social interaction skills<br>• Demonstrate good work ethic |
| Step Level Advancement<br><br>(recommended by Program Team) | To Step II:<br>• Minimum of 30 calendar days in Step I<br>• Display behavior that is cooperative and respectful<br>• No discipline in previous 30 calendar days | To Step III:<br>• Minimum of 30 calendar days in Step II<br>• Display behavior that is cooperative and respectful<br>• Must complete or actively participate in all programs as per program plan | N/A |
| Step Level Reduction<br><br>(decision by Program Team on a case-by-case basis) | N/A | To Step I:<br>• Found guilty of a Class A or B rule violations<br>• Two or more Class C rule violations within 90 calendar days while in Step II<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior | To Step II:<br>• Found guilty of a Class C disciplinary violation<br>• Repeatedly demonstrating poor social interaction skills<br><br>To Step I:<br>• Found guilty of Class A or select B disciplinary violations<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior |
| Store | $60/week  -  $80/ Holiday | $80/week  -  $120/Holiday | $100/week  -   $160/Holiday |
| Phone | 1 per week/15 minutes in duration | 2 per week/15 minutes in duration | 3 per week/15 minutes in duration |
| Visitation | One, 2-hour non-contact visit block per week | Two, 2-hour non-contact visit blocks per week (Dependent upon space and scheduling) | • Three, 2-hour non-contact visit blocks per week (Dependent upon space and scheduling) (SMU)<br>• One, 4-hour contact visit block per week (Dependent upon space and scheduling) (Rast) |

| SMU I / RAST MAXIMUM CUSTODY - STEP PROGRAM MATRIX | | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Recreation | Three, 2.5-hour blocks per week to include 10x10 enclosure (two inmates) | • Three, 2.5-hour blocks per week 10x10 enclosure (two inmates), and;<br>• One, 2.5-hour block per month in 20x40 basketball enclosure (up to eight inmates) | • Three, 2.5-hour blocks per week to include one-time per month in 10x10 enclosure (two inmates), and;<br>• One, 2.5-hour block per month in 20x40 basketball enclosure (up to eight inmates), and;<br>• One, 2.5-hour block per month in 50x90 (up to 32 inmates) |
| Hobby Craft | N/A | Origami and pencil drawing supplies | Origami and pencil drawing supplies |
| Resource Center/Library Access | Yes | Yes | Yes |
| TV (*) | Yes | Yes | Yes |
| Securepak | Once per quarter within security limitations on certain items | Once every other month within security limitations on certain items | Once every other month within security limitations on certain items |
| Other | N/A | Participate in fundraisers | • Participate in fundraisers<br>• WIPP – Eligible for porter<br>• Unrestrained escorts - may be eligible |

(*) Loaner televisions (TV) are issued upon availability with an emphasis on delivery of programing content.  Priority is given to inmates in Mental Health Programs and Restrictive Housing.  Inmates who are no longer indigent or in the Maximum Custody Steps process shall forfeit access to the loaner TV program.

## ATTACHMENT D

| RESTRICTED STATUS HOUSING PROGRAM STEP MATRIX - BROWNING AND RAST UNITS | | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Intake | Orientation and sign Memo of Expectations | N/A | N/A |
| Expectations | • Follow Rules and Regulations including Department Order #704, Inmate Regulations<br>• Mandatory participation in recreation/programs/classes/individual groups as per program plan<br>• Maintain Personal Hygiene – Mandatory shower three times a week | • Follow Rules and Regulations including Department Order #704, Inmate Regulations<br>• Mandatory participation in recreation/programs/classes/individual groups as per program plan<br>• Demonstrate positive social interaction skills<br>• Must not have received any discipline in previous 30 calendar days<br>• Maintain Personal Hygiene – Mandatory shower three times a week | • Follow Rules and Regulations including Department Order #704, Inmate Regulations<br>• Mandatory participation in recreation/programs/classes/individual groups as per program plan<br>• Consistently demonstrate positive social interaction skills<br>• Prepare for reentry to the General Population<br>• Maintain Personal Hygiene – Mandatory shower three times a week |
| Step Level Advancement<br><br>(recommended by RSHP Committee) | To Step II:<br>• Minimum of 30 calendar days in Step I<br>• Display behavior that is cooperative and respectful<br>• Must have completed programs designated by the RSHP Committee | To Step III:<br>• Minimum of 60 calendar days in Step II<br>• Must have continued to display behavior that is cooperative and respectful<br>• Must have completed all Prescribed Programs as per the Program Plan | Minimum of 30 calendar days in Step III |
| Step Level Reduction<br><br>(decision by RSHP Committee on a case-by-case basis) | N/A | To Step I:<br>• Found guilty of any discipline violation<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior | To Step II:<br>• Found guilty of any disciplinary violation<br>• Repeatedly demonstrating poor behavior<br><br>To Step I:<br>• Found guilty of Class A or select B disciplinary violations<br>• Refusal to program |
| Store | $10/week – hygiene and stationary only | $15/week ($10/hygiene, $5/limited store menu) | $20/week ($10/hygiene, $10/limited store menu) |
| Phone | None | None | 1 per week/15 minutes in duration |
| Visitation | None | One, 2-hour non-contact visit block per month | Two, 2-hour non-contact visit blocks per month |

### RESTRICTED STATUS HOUSING PROGRAM STEP MATRIX - BROWNING AND RAST UNITS

| Item | Step I | Step II | Step III |
|---|---|---|---|
| Recreation | Three, 2.5-hour blocks per week in the standard enclosure | Three, 2.5-hour blocks per week in the standard enclosure | Three, 2.5-hour blocks per week in the standard enclosure |
| Hobby Craft | None | None | None |
| Resource Center/Library Access | Yes only for active legal cases | Yes only for active legal cases | Yes only for active legal cases |
| TV (*) | Yes | Yes | Yes |
| Securepak | N/A | Once every other month within security limitations on certain items | Once every other month within security limitations on certain items |
| Other | Allowable personal property:<br><br>• 1 box of verified legal material (current active cases only)<br>• Religious material consistent with detention placement<br>• 1 each of hygiene items (shampoo, soap, etc.)<br>• 1 book (from books kept by the RSHP, not the Resource Center/library) (**)<br><br>Clothing and hygiene:<br>• 2 jumpsuits<br>• 2 t-shirts<br>• 2 boxers<br>• 2 pair of socks<br>• Deck shoes and/or shower shoes<br>• 1 towel, and washcloth | Same as Step I | Personal property allowance as determined by the RSHP Committee. (**) |

(*) Loaner televisions (TV) for those that do not currently have a TV for use with ETV programming as determined by the RSHP Committee.

(**) RSHP personal property can be issued upon graduation, pending movement.

## ATTACHMENT E

| MENTAL HEALTH PROGRAM MATRIX – BAKER WARD AND KASSON MENTAL HEALTH UNIT | | | |
|---|---|---|---|
| Item | Step I | Step II | Step III |
| Intake | • Orientation and sign Memo of Expectations | N/A | N/A |
| Expectations | Participate in prescribed programs/classes/individual groups as per program plan as defined by the Program Team | Participate in prescribed programs/classes/individual groups as per program plan as defined by the Program Team | Participate in prescribed programs/classes/individual groups as per program plan as defined by the Program Team |
| Step Level Advancement | To Step II:<br><br>Minimum of 30 calendar days in Step I or as determined on a case by case basis by the Program Team | To Step III:<br><br>Minimum of 60 calendar days in Step II or as determined on a case by case basis by the Program Team | N/A |
| Step Level Reduction | N/A | To Step I:<br><br>Decision made by the Program Team as defined in the Program Plan | To Step I and II:<br><br>Decision made by the Program Team as defined in the Program Plan |
| Store | $60/week - $80/Holiday Limited items specialized mental health store list with Program Team authorization | $80/week - $120/ Holiday Limited items specialized mental health store list with Program Team authorization | $100/week - $160/ Holiday Limited items specialized mental health store list with Program Team authorization |
| Phone | 1 per week/15 minutes in duration | 2 per week/15 minutes in duration | 3 per week/15 minutes in duration |
| Visitation | One, 2-hour non-contact visit block per week, subject to scheduling and availability, with approval of the Program Team per week | • One, 2-hour non-contact visit block with approval of the Program Team per week<br>• One, 3-hour contact visit block per week (Kasson), subject to scheduling and availability, with the approval of the Program Team | • One, 2-hour non-contact visit block with approval of the Program Team per week<br>• One, 4-hour contact visit block and utilize vending machine (Kasson), subject to scheduling and availability, with the approval of the Program Team |
| Recreation | • Seven days per week, 1-hour block (Phoenix)<br>• Three, 3-hour blocks per week in the 10x10 (Kasson) | • Seven days per week, 1-hour block (Phoenix)<br>• Three, 3-hour blocks per week in a combination of 20x20 and 20x40 (Kasson) | • Seven days per week,1-hour block (Phoenix)<br>• Three, 3-hour blocks per week in a combination of 20x20 and 40x40 (Kasson) |
| Hobby Craft | Origami and pencil drawing supplies as determined by Program Team | Origami and pencil drawing supplies as determined by Program Team | Origami and pencil drawing supplies as determined by Program Team |
| Resource Center/Library Access | See "other" for reference to Resource Center/library | Yes | Yes |

| MENTAL HEALTH PROGRAM MATRIX –<br>BAKER WARD AND KASSON MENTAL HEALTH UNIT | | | |
|---|---|---|---|
| Item | Step I | Step II | Step III |
| TV (*) | Yes | Yes | Yes |
| Securepak | Once per quarter within security limitations on certain items | Once every other month within security limitations on certain items | Once every other month within security limitations on certain items |
| Other | • Meals served in house<br>• Access to Token Program which allows additional incentives with approval from the Program Team | • Dinner meal offered in Dining area (Phoenix)<br>• Fundraisers<br>• WIPP - Eligible for a job<br>• Access to Token Program which allows additional incentives with approval from the Program Team | • Fundraisers<br>• Photos per Department Order #911, Inmate Visitation<br>• Access to Token Program which allows additional incentives with approval from the Program Team<br>• WIPP – Eligible for a job |

(*)Loaner televisions (TV) for those that do not currently have a TV for use with ETV programming with mental health treatment team approval.

## ATTACHMENT F

| | ENHANCED MANAGEMENT STEP STATUS MATRIX | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Intake | Orientation and sign Memo of Expectations for Maximum Custody Step Plan | N/A | N/A |
| Expectations | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in self-study programs as per program plan<br>• Participate in the Reentry Program for all those within 18 months of release<br>• Remain disciplinary free | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in self-study programs as per program plan<br>• Demonstrate positive social interaction skills<br>• Participate in the Reentry Program for all those within 18 months of release<br>• Remain disciplinary free | • Follow Rules and Regulations including Department Order #704, <u>Inmate Regulations</u><br>• Participate in prescribed programs/classes/individual groups as per program plan<br>• Consistently demonstrate positive social interaction skills<br>• Participate in the Reentry Program for all those within 18 months of release |
| Step Level Advancement<br><br>(recommended by ROD and Complex Warden) | • Minimum of 90 calendar days in Step I<br>• Display behavior that is cooperative and respectful<br>• Be discipline free | • Minimum of 90 calendar days in Step II<br>• Display behavior that is cooperative and respectful<br>• Must complete or actively participating in all programs as per program plan<br>• Be disciplinary free | N/A |
| Step Level Reduction<br><br>(decision by ROD and Complex Warden on a case-by-case basis) | N/A | • Found guilty of a Class A or B violation<br>• Two or more Class C rule violations within 90 calendar days while in Step II<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative or violent behavior | <u>Reduction to Step II:</u><br>• Found guilty of a Class C disciplinary violation<br>• Repeated demonstration of poor behavior<br><br><u>Reduction to Step I:</u><br>• Found guilty of a Class A or B violation<br>• Refusal to program<br>• Consistently demonstrate poor socialization skills, and/or non-cooperative behavior |
| Store | $60/week - $80/ Holiday | $60/week - $80/ Holiday | $60/week - $80/ Holiday |
| Phone | 1 per week/15 minutes in duration | 1 per week/15 minutes in duration | 1 per week/15 minutes in duration |
| Visitation | One, 2-hour non-contact visit block per week | One,2-hour non-contact visit block per week | One,2-hour non-contact visit block per week |
| Recreation | Three, 2.5-hour blocks each week | Three, 2.5-hour blocks each week | Three, 2.5-hour blocks each week |

| ENHANCED MANAGEMENT STEP STATUS MATRIX | | | |
|---|---|---|---|
| **Item** | **Step I** | **Step II** | **Step III** |
| Hobby Craft | None | None | None |
| Resource Center/Library Access | Yes | Yes | Yes |
| Securepak | Once per quarter within security limitations on certain items | Once per quarter within security limitations on certain items | Once per quarter within security limitations on certain items |
| Other | TV and personal property in accordance with Department Order #909, Inmate Property | TV and personal property in accordance with Department Order #909, Inmate Property | TV and personal property in accordance with Department Order #909, Inmate Property |

## ATTACHMENT G

| BROWNING MANDATORY PROGRAMS | | | |
|---|---|---|---|
| **Step Level** | **Mandatory Move to Next Level** | **Addictive Behaviors** | **If Releasing Within 6 Months - Mandatory** |
| Step Level 1 Initial Placement | • Self-Control - self study<br><br>• Responsible Thinking - self study | N/A | Merging two Worlds - self study |
| Step Level 1 Step Down | Hazelden - Socialization Workbook - Part 1 - *Where Have I Been?* – self study | N/A | Merging two Worlds - self study |
| Step Level 2 Initial Placement | • Self-Control - classroom<br><br>• Hazelden - Socialization Workbook - Parts 1 & 2 - *Where Have I Been?* and *What Works, What Doesn't* - classroom | • Substance Abuse - classroom<br><br>• Only if inmate has an SA problem! (SA Intervention Level >2) | Merging two Worlds – classroom |
| Step Level 2 Step Down | • Self-Control - classroom<br><br>• Hazelden - Socialization Workbook - Part 2 - *What Works, What Doesn't* - classroom | • Substance Abuse - classroom<br><br>• *Only if inmate has an SA problem! (SA Intervention Level >2)* | Merging two Worlds - classroom |
| Step Level 3 Initial Placement | • Responsible Thinking - classroom<br><br>• Hazelden - Socialization Workbook - Part 3 - *How Do I Change?* - classroom | N/A | Merging two Worlds - classroom |
| Step Level 3 Step Down | • Responsible Thinking - classroom<br><br>• Hazelden - Socialization Workbook - Part 3 - *How Do I Change?* - classroom | N/A | Merging two Worlds - classroom |

NOTE: SA class is not voluntary if the Program Team determines the inmate needs it (SA Intervention Level >2:  see AIMS Needs Score Information).

• Programs classes may be selected by the RSHP Committee drawn from a menu of an approved menu of Department programs.

# ATTACHMENT H

| CENTRAL / SMU I / RAST MAXIMUM - MANDATORY PROGRAMS | | | | |
|---|---|---|---|---|
| **Level** | **Mandatory Move to Next Level** | **Addictive Behaviors** | **Additional Options** | **If Releasing Within 6 Months - Mandatory** |
| Level 1 Initial Placement | • Self-Control - self study <br><br> • Responsible Thinking – self study | N/A | Social Values – self study | Merging two Worlds - self study |
| Level 1 Step Down | Core Skills – self study | N/A | N/A | Merging two Worlds - self study |
| Level 2 Initial Placement | • *Self-Control - classroom <br><br> • *Responsible Thinking – classroom | • *Substance Abuse - classroom <br><br> • *Only if inmate has an SA problem! (SA Intervention Level >2)* | • Hazelden - Socialization Workbook <br><br> • *Money Management - classroom <br><br> • *Social values - classroom | Merging two Worlds – classroom |
| Level 2 Step Down | *Core Skills –classroom | N/A | N/A | Merging two Worlds - classroom |
| Level 3 Initial Placement | • *Feelings - classroom <br><br> • Changing Offender Behavior (may start in Level 2) <br><br> • *Money Management - classroom | N/A | • Hazelden - Socialization Workbook <br><br> • *Money Management - classroom <br><br> • *Social values - classroom <br><br> • *Core Skills – classroom | Merging two Worlds - classroom |
| Level 3 Step Down | • *Feelings - classroom <br><br> • Changing Offender Behavior (may start in Level 2) | N/A | N/A | Merging two Worlds - classroom |

(*) Not applicable to Close Custody/Condemned Row inmates housed at Central Unit. Structured mandatory controlled groups may be assigned as determined by the RSHP Committee.

NOTE:  SA class is not voluntary if the Program Team determines the inmate needs it (SA Intervention Level >2:  see AIMS Needs Score Information). Once first course of programming is completed, the RSHP Committee may assign additional programs to complete.

## ATTACHMENT I

| RESTRICTIVE HOUSING MANDATORY PROGRAMS | | | |
|---|---|---|---|
| **Level** | **Mandatory Move to Next Level** | **Addictive Behaviors** | **If Releasing Within 6 Months - Mandatory** |
| Level 1 | Self-Control - self study | N/A | • Merging two Worlds - self study<br><br>• Responsible Thinking - self study |
| Level 2 | • Social Values – classroom<br><br>• Responsible Thinking - classroom<br><br>• Core Skills - classroom | • Substance Abuse - classroom<br><br>• *Only if inmate has an SA problem! (SA Intervention Level >2)* | Merging two Worlds - classroom |
| Level 3 | Feelings - classroom | N/A | Merging two Worlds - classroom |

Please note that 12 Step Meetings are voluntary.  However, the SA class is not voluntary if the Program Team determines the inmate needs it (SA Intervention Level >2:  see AIMS Needs Score Information).

EXHIBIT 19

1   Molly Brizgys (Bar No. 029216)
    **ACLU FOUNDATION OF ARIZONA**
2   3707 North 7th Street, Suite 235
    Phoenix, Arizona 85013
3   Telephone: (602) 650-1854
    Email: mbrizgys@acluaz.org
4
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
5   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert*
    *Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua*
6   *Polson, and Charlotte Wells, on behalf of themselves and all others*
    *similarly situated*
7   Asim Dietrich (Bar No. 027927)
    **ARIZONA CENTER FOR DISABILITY LAW**
8   5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
9   Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org
10
    *Attorneys for Plaintiff Arizona Center for Disability Law*

11

12                    UNITED STATES DISTRICT COURT

13                         DISTRICT OF ARIZONA

14   Victor Parsons; Shawn Jensen; Stephen Swartz;        No. CV 12-00601-PHX-ROS
     Dustin Brislan; Sonia Rodriguez; Christina
15   Verduzco; Jackie Thomas; Jeremy Smith; Robert
     Gamez; Maryanne Chisholm; Desiree Licci; Joseph     DECLARATION OF
16   Hefner; Joshua Polson; and Charlotte Wells, on      Stonney Biddings,
     behalf of themselves and all others similarly       247152
17   situated; and Arizona Center for Disability Law,
                                                          #
18                         Plaintiffs,

19          v.

20   David Shinn, Director, Arizona Department of
     Corrections; and Richard Pratt, Interim Division
21   Director, Division of Health Services, Arizona
     Department of Corrections, in their official
22   capacities,

                           Defendants.

23

24

25

26

27

28

I, Stonney Marvelous Biddings, DECLARE:

1.   I am a prisoner in the custody of the Arizona Department of Corrections, ADC# 247152 I am currently housed in Browning Unit I have been in this unit for almost 4 months. I am over 18 years of age. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2. I came to Browning Unit on August 17, 2019 because I punched a door and the glass broke. I was very suprised when this happened because security glass doesn't usually break.

3. I'm a Step 1, Phase 1 currently. I enquired about my Step 2 because I've completed the requirements in the policy and I was told I am not eligible, "continue to wait." I wasn't told why.

4. We are supposed to get outdoor recreation (rec.) 3 times a week. But rec. gets cancelled about 50% of the time. When I ask about why rec. is cancelled staff often tell me it's because of staff shortages. Other times I'm told it's none of my business or there are "security reasons."

5. Most recently rec. was cancelled on monday. During thanksgiving week from November 27 to the 30th all rec and showers

1  were cancelled.

2

3  6. Staff have told me that the staff
4  shortages are so bad that there's often
5  only one officer to work the bubble for
6  two different clusters. Because of this
7  staff responses to emergencies are often
8  delayed. This happened in my pod when
9  an inmate downstairs fell off his bunk and
10 hit his head. His cellie yelled "man down"
11 and then the pod yelled "man down"
12 because it was a medical emergency, and
13 then the other pods yelled "man down" to
14 get an officer's attention. It took about
15 45 minutes for an officer to arrive and
16 then another 30 minutes for a nurse to
17 arrive.

18

19 7. These staff shortages also affect the
20 showers. If you go to a shower you will be
21 stuck there for an hour or more.
22 Because of this myself and the other
23 men rarely use the showers. We are
24 forced to clean ourselves in the sinks
25 in our cells. This makes me feel angry
26 because it feels like I'm being treated
27 like an animal.

28

8. I believe that the staffing shortages are creating a toxic environment for both the officers and the prisoners who live here. This environment is made worse because we're not even getting the minimal out-of-cell time we're entitled to under policy. This is very frustrating for all of us.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed _December_ _12_, 2019 in _Florence_, AZ.
         (Month)        (Day)

_Stonney Marvellous Biddings Sr._
Stonney Marvellous Biddings Jr.