Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO COURT ORDER (DOC. 3518)** |

Pursuant to this Court's Orders at Docs. 3495, 3518, and 3588, Defendants Reply to Plaintiffs' Response to Court Order (Doc. 3518).  Specifically, Defendants request this Court permit Defendants to utilize the already paid sanctions money to fund a system-wide medical personnel staffing study and root cause analysis for underperforming Stipulation Health Care Performance Measures (HCPMs). (Doc. 3512 at 10-11.)  Defendants do not seek rescission of the Stipulation based upon overall Stipulation compliance at this time (which as of February 2020 was 95.43%[1]).  (Docs. 3582, 3583.)  Rather, Defendants seek to focus resources on gaining substantial compliance with those HCPMs that have not yet

---

[1] This overall compliance figure also includes maximum custody performance measures.

reached substantial compliance – which will ultimately result in termination of monitoring and reporting on those HCPMs pursuant to Paragraph 10 of the Stipulation. (Doc. 1185 at 3-5; Doc. 3512 at 3-4.)

## I. DEFENDANTS SHOULD BE PERMITTED TO UTILIZE SANCTIONS MONIES TO RETAIN NCCHC RESOURCES, INC. TO PERFORM STAFFING AND HCPM ROOT CAUSE ANALYSIS

In their Response, Plaintiffs agree "that a good use of the sanction fines would be to have a system-wide staffing analysis performed and implemented as soon as possible" in order to "effectuate Dr. Stern's critical systemic recommendation that Defendants 'conduct a staffing analysis and then implement staffing changes accordingly.'" (Doc. 3564 at 2, Doc. 3379 at 98.) Plaintiffs further agree that performing this analysis would help implement Dr. Stern's general staffing concerns. (Doc. 3564 at 2.) Plaintiffs object, however, to either Defendants or Centurion performing the analysis.

While Defendants disagree with Plaintiffs' characterization of Defendants' "chronic inability to remedy noncompliance" (where by December 2019 CGAR reports reflected 93% compliance and February 2020 CGAR reports reflect 95.43% compliance across 852 Stipulation Performance Measures - including 36 maximum custody measures), Defendants agree that it is appropriate for a third party to perform both a staffing study and root cause analysis.[2] (Docs. 3512 at 3-4, 9, 3582, 3583.) Defendants therefore request they be permitted to use the already paid sanctions money totaling $1.445 million towards retaining the National Commission on Correctional Health Care's ("NCCHC") NCCHC Resource, Inc. division to: (1) perform a complex-specific staffing analysis for all ten ADCRR-operated prison complexes that account for unique hiring and retention factors, physical plant, and security staffing requirements that must be contemplated at each location; (2)

---

[2] Defendants disagree that this Court should order an analysis of the overall adequacy of health care as requested by Plaintiffs. (Doc. 3564 at 3.) Plaintiffs' request exceeds the scope of the Stipulation and the Court's enforcement powers. (Doc. 3379 at 4, 113.) Nonetheless, the performance of a root cause analysis of underperforming HCPMs necessarily improves the delivery of health care as to the subject matter addressed by the attendant HCPMs.

identify root causes that impede CGAR compliance; and (3) determine necessary revision/modification of certain HCPMs to ensure that the measures are outcome-based and measure the actual delivery of healthcare. (Docs. 2898, 3235, 3490.)

Appointment of a Rule 706 expert, as requested by Plaintiffs, is unnecessary where Defendants seek an expert third party to perform the studies.[3] The reasonableness of this approach is highlighted by NCCHC's subject matter team versus one individual attempting to conduct studies of ten unique prison complexes. NCCHC Resources, Inc.'s subject matter expert teams are uniquely positioned to traverse the panoply of issues at play in analyzing staffing needs, identifying HCPM root cause challenges, and devising recommended remedies for ten distinct prison complexes located throughout the state.[4] Each complex presents its own unique prison security operations, facility plant design, staffing challenges, staffing market availability, and level of inmate healthcare needs. NCCHC Resources, Inc.'s team of subject matter experts is uniquely equipped to accomplish this.

NCCHC is a recognized leader in establishing standards for corrections healthcare. (https://www.ncchc.org/about, last visited May 8, 2020.) In addition to accreditation and auditing services provided by NCCHC, the NCCHC Resources, Inc. division provides customized technical and consulting services for "developing policies and procedures, and assessing alternative solutions to problems." (*Id*.; *see also* https://www.ncchc.org/NCCHC-

---

[3] Defendants maintain their objections to the Court appointing a Rule 706 expert to perform the studies Defendants proactively seek on their own to conduct through a third party for the reasons set forth in Doc. 2067.

[4] Plaintiffs also request that once any staffing/root cause study is performed, the Court should order the expert(s) "to provide continuing monitoring of the delivery of health care using qualitative metrics and clinical judgment rather than the Stipulation's quantitative performance measures . . ." (Doc. 3564 at 4.) Plaintiffs' request puts the cart before the horse and concludes in advance, and without analysis or evidence, that the Stipulation HCPMs that Plaintiffs bargained for and agreed to are ineffective, inappropriate and/or obsolete. This position also contradicts Plaintiffs' argument that the Stipulation cannot be rescinded because "Defendants may not unilaterally replace the parties' agreed-upon mechanism for measuring compliance and terminating portions of the Stipulation." (Doc 3564 at 4.) By asking for a new method of monitoring, Plaintiffs are asking for the Stipulation to be unilaterally and improperly modified. By their own admission, however, this should not and cannot occur. (Doc. 3564 at 4-6.)

Resources, last visited May 8, 2020.) NCCHC Resources, Inc.'s consulting and technical services are provided "completely separate from accreditation" by NCCHC. (https://www.ncchc.org/origin, last visited May 8, 2020.) Consulting services include staffing analysis as well as review and recommendations for delivery of health care services, along with health system assessments, performance improvement and technical assistance. (https://www.ncchc.org/case-studies; https://www.ncchc.org/NCCHC-Resources, last visited May 8, 2020.) NCCHC Resources Inc.'s clients include Delaware Department of Corrections, Idaho Department of Corrections, Illinois Department of Corrections, and Department of Youth Rehabilitation Services (Washington, DC), along with jail systems across the United States. The consulting teams are made up of subject matter experts in the field of corrections healthcare and address specified categories of delivery of healthcare to focus on categories of care to include, but not be limited to, nursing, mental health, clinical operations, provider operations, etc. – all specific areas of expertise that must be considered in both a staffing study and root cause analysis.

Defendants' request to retain NCCHC Resources, Inc. is well researched, vetted, and is in no way reactionary to Plaintiffs' April 17, 2020, request to appoint a Rule 706 expert to proceed with staffing study and root cause analysis. (Doc. 3564.) Rather, Defendants obtained a written proposal from NCCHC Resources, Inc. in February 2020. The proposal sets forth a robust statement of work to include a staffing analysis, on-site assessment of delivery of health care associated with the HCPMs to identify root causes of performance issues, and detailed recommendation/implementation plans. Based upon the "Confidential and Proprietary" designation of the proposal by NCCHC Resources, Inc. as to its statement of work, identification/qualification of the proposed subject matter team members, terms, and cost, Defendants request permission to submit the Proposal for in camera review at this juncture.[5]

---

[5] If requested, Defendants are prepared to seek permission from NCCHC Resources, Inc. to provide its Proposal to Plaintiffs' counsel under confidentiality agreement after in camera review by the Court.

4

Defendants anticipate that Dr. Stern will agree with Defendants' request to retain NCCHC Resources, Inc. to perform staffing study and root cause analysis utilizing current data, and considering Dr. Stern's prior report.  Indeed, Dr. Stern's pedigree includes co-developing and teaching for NCCHC's Medical Director's Leadership and contributing to NCCHC's 2014 editions of Standards for Health Services. (https://www.ncchc.org/excellence-in-communication-2019, last visited May 8, 2020.)  Dr. Stern has likewise provided lectures and workshops for NCCHC educational events, and is the recipient of NCCHC's 2019 B. Jaye Anno Award of Excellence in Communication. (*Id.*)  Dr. Stern's CV has long highlighted his historical involvement with NCCHC as an instructor, a co-contributor for NCCHC Jail and Prison Standards, and participation as a clinical expert on an NCCHC comprehensive assessment team:

- Co-teacher, with Jaye Anno, Ph.D., for the National Commission on Correctional Health Care, of the Commission's standing course, *An In-Depth Look at NCCHC's 2008 Standards for Health Services in Prisons and Jails* taught at its national meetings. (2010 - 2013);

- Contributor to 2014 Editions of Standards for Health Services in Jails and Standards for Health Services in Prisons, National Commission on Correctional Health Care. (2013);

- Participated as a clinical expert in comprehensive assessment of Michigan Department of Corrections as part of a team from the National Commission on Correctional Health Care. (2007);

- Member, Education Committee, National Commission on Correctional Health Care;

- Stern MF, Barboza S. Patient Safety: Raising the Bar in Correctional Health Care. National Commission on Correctional Health Care Mid-Year Meeting, Nashville, Tennessee, 2010;

- *What Would YOU Do? Navigating Medical Ethical Dilemmas*. Spring Conference. National Commission on Correctional Health Care. Nashville, Tennessee, 2016;

- *Turning Sick Call Upside Down.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas, 2015;

- *Diagnostic Maneuvers You May Have Missed in Nursing School.* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas, 2015;

- *The Challenges of Hunger Strikes: What Should We Do? What Shouldn't We Do?* Annual Conference. National Commission on Correctional Health Care. Dallas, Texas, 2015;

- *Achieving Quality Care in a Tough Economy*. National Commission on Correctional He lth Care Mid-Year Meeting, Nashville, Tennessee, 2010 (Co-presented with Rick Morse and Helena Kim, PharmD.);

- *Balancing Patient Advocacy with Fiscal Restraint and Patient Litigation.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington, 2009;

- *Staff Management.* National Commission on Correctional Health Care and American College of Correctional Physicians "Medical Directors Boot Camp," Seattle, Washington, 2009;

- *Evidence Based Medicine in Correctional Health Care.* 2003 Annual Meeting, National Commission on Correctional Health Care, Austin, Texas;

- **Stern MF**. *Patient Safety (White Paper)*. Guidelines, Management Tools, White Papers, National Commission on Correctional Health Care. http://www.ncchc.org/filebin/Resources/Patient-Safety-2016.pdf. June, 2016;

- Strick LB, Saucerman G, Schlatter C, Newsom L, **Stern MF**. *Implementation of Opt-Out HIV testing in the Washington State Department of Corrections*. Poster Presentation, National Commission on Correctional Health Care Annual Meeting, Orlando, Florida, October, 2009.

(Exh. 1, 2016 CV of Dr. Marc Stern.)

Based upon Dr. Stern's longtime involvement with NCCHC, Defendants anticipate Dr. Stern supporting Defendants' request to seek NCCHC Resources Inc.'s consulting services to expound upon the review that Dr. Stern has already performed. To the extent Dr. Stern continues to serve as a court-appointed expert, Defendants anticipate that the Court may invite Dr. Stern's review and comment on NCCHC's Resources Inc.'s ultimate conclusions and recommendations. Further, Defendants will provide NCCHC Resources, Inc. with Dr. Stern's Report as background regarding previously performed studies and resulting recommendations.

Accordingly, Defendants request this Court to permit ADCRR to use the sanction money to fund this comprehensive NCCHC Resources, Inc. study.

## II.   **DEFENDANTS DO NOT SEEK RESCISSION OF THE STIPULATION**

In its Order at Doc. 3518, this Court asked whether the Stipulation could be "rescinded" if Defendants can demonstrate that their overall Stipulation compliance rate is 93%. (Doc. 3518 at 7.)  To be clear, rescission is a legal remedy for a material breach of contract. (Doc. 3410, 3435, 3456.)  Defendants have not previously asked the Court to

1  rescind the Stipulation because of any non-compliance. Rather, they have argued that, if
2  the Court finds a material breach of the Stipulation, rescission, not reinstatement of
3  proceedings pursuant to Rule 60(b)(5), is the appropriate remedy. (*Id*.) They have also
4  argued that Defendants' overall (and recent) compliance numbers do not justify
5  reinstatement of proceedings, rescission of the Stipulation, *or* adoption of certain
6  recommendations by Dr. Stern, and that, given that compliance, resources should instead
7  be directed to improve those individual HCPMs that are not in substantial compliance.

8       This is a common sense approach – allocate resources where resources are needed
9  and where dedicated increased resources will make significant and measurable
10 improvement. Although nothing precludes the Court from terminating the Stipulation
11 pursuant to Paragraph 37 based on overall compliance with the Stipulation, at this juncture,
12 Defendants request that the Court terminate those individual HCPMs identified for
13 termination/retirement by Dr. Stern; those HCPMs Dr. Stern contends are not applicable to
14 a complex; those HCPMs Plaintiffs agreed to terminate after a February 25, 2020 meet and
15 confer; and those HCPMs that should be terminated as there is insufficient data at the
16 respective facility necessary to monitor/report. (Doc. 3508-1.) These categories affect 82
17 out of 103 HCPMs at between one to ten prison complex locations for each HCPM.[6] (*Id*.)
18 Defendants likewise intend to seek future termination of specified HCPMs at specified
19 locations pursuant to Paragraph 10 of the Stipulation and seek cooperation from Plaintiffs
20 to reasonably evaluate and agree to the same. The parties should work to allocate resources
21 to achieve substantial compliance rather than to unnecessarily prolong monitoring of
22 compliant HCPMs.

---

[6] Dr. Stern's original report (prior to the final draft submitted for filing with the Court) described 508 HCPMs recommended for termination; 19 HCPMs recommended for retirement/termination contingent on the Court's acceptance of certain recommendations; and 61 HCPMs recommended for retirement/termination contingent upon the Court's acceptance of certain recommendations and demonstrated success upon re-audit. (Doc. 3382, 3382-1.)

### III. CONCLUSION

Based upon the foregoing, Defendants respectfully request this Court to permit Defendants to use the already paid sanctions money to fund a staffing analysis and HCPM root cause study as provided in NCCHC Resource Inc.'s February 2020 Proposal.

DATED this 11th day of May, 2020.

        STRUCK LOVE BOJANOWSKI & ACEDO, PLC

        By /s/Rachel Love
           Daniel P. Struck
           Rachel Love
           Timothy J. Bojanowski
           Nicholas D. Acedo
           3100 West Ray Road, Suite 300
           Chandler, Arizona 85226

           *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 11, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Amy B. Fettig: | afettig@npp-aclu.org |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |
| Maria V. Morris | mmorris@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Rachel Love