Index of Exhibits to Joint Discovery Dispute Statement

| Exhibit | Description |
|---|---|
| 1 | 4/21/20 Letter from C. Kendrick to T. Bojanowski re: Defendants' Failure to Provide Requested Documents |
| 2 | 5/19/20 Letter from T. Bojanowski to C. Kendrick re: Plaintiffs' 04-21-2020 letter re: Defendants' document production |
| 3 | 11/8/19 Letter from R. Valenti to C. Kendrick re: Plaintiffs' September 13, 2019 Monthly Request for Documents – Supplemental Document Requests 56,66, 75, 113, and 116-124 |
| 4 | 11/18/19 Letter from C. Kendrick to R. Valenti re: Defendants' Document Production |
| 5 | 12/16/19 Letter from C. Kendrick to R. Valenti re: Defendants' Document Production |
| 6 | 12/19/19 Letter from R. Valenti to C. Kendrick re: Supplemental requests for production 1, 48, 55, 107; Defendants' 11-01-19 and 11-08-19 letters concerning document production |
| 7 | 1/15/20 Letter from T. Bojanowski to C. Kendrick re: Plaintiffs' 12-16-19 Monthly request for Documents – Supplemental Requests 132-134 |
| 8 | 8/15/17 Letter from L. Rand to D. Fathi re: July 17, 2017 Monthly Request for Production (RFP #46) |

# Exhibit 1



# PRISON LAW OFFICE

General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Patrick Booth
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson

VIA EMAIL ONLY

April 21, 2020

Mr. Timothy Bojanowski
Struck, Love, Bojanowski, & Acedo, PLC
3100 W. Ray Rd., Ste. 300
Chandler, AZ 85226
tbojanowski@strucklove.com

RE:   *Parsons v. Shinn*
       Defendants' Failure to Provide Requested Documents

Dear Tim:

I write regarding Defendants' continuing failure to provide responsive documents requested by Plaintiffs' counsel.

**RFP 1 (Standing Request, 10/15/15):  The monthly [health care] staffing reports and weekly staffing schedules for each prison for the month.**

The last staffing report we received is dated February 3, 2020.  See ADCM1607095-1607125.  Please provide the March and April 2020 health care staffing reports.

**RFP 55 (Standing Request, 7/17/17): All agendas and minutes for Director's Meetings. (Reiterated at RFP 135 (Standing Request, 1/17/20): All agendas and minutes for Director's Meetings held between Centurion and ADC.)**

As noted in my November 18, 2019, and December 16, 2019 letters, Defendants have not provided any minutes of these biweekly meetings held since the June 20, 2019 Director's Meeting.  You asserted in your January 15, 2020 letter, and Mr. Valenti in his December 16, 2019 letter, that "Centurion, not Corizon, held those meetings" when we requested the agendas and minutes from meetings held since June 20, 2019.  RFP 55 did not specify Corizon, but given your frivolous and meritless objection, we reiterated the request on January 17, 2020, this time with the word "Centurion."  Defendants have only produced a one page-agenda for meetings held through February 7, 2020 (ADCM1607083).  We

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva • Jean Lu
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris • Vishal Shah

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 2

request that you produce all agendas and minutes, *including the minutes taken during the meetings*, from the Director's Meetings held since June 20, 2019, to the present.

**RFP 56 (7/17/17):  All versions, whether final or in draft form, of the Mental Health Technical Manual or equivalent document dated June 19, 2015 or later.**

As noted in my November 18, 2019 letter, we reiterated this request on September 13, 2019.  In Mr. Valenti's November 8, 2019 letter, he asserts that "Plaintiffs have the most recent version of the manual." (11/8/19 letter at 1).  The most recent Bates-stamped version that we have is dated June 19, 2015.

In your January 15, 2020 response, you assert that the most recent version of the manual is now available on the ADC website at https://corrections.az.gov/sites/default/files/documents/PDFs/tech manuals/adc-mentalservicestechnicalmanual12.24.19.pdf.  (1/15/20 letter at 1-2).

However, as we noted in the document request that we sent you on January 17, 2020, the URL returns a message of "Page Not Found."  Please provide a Bates-stamped version so that in the future the parties are using and referring to the same version.

**RFP 66 (7/17/17):  Documents showing the number of ADC prisoners (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI (Reiterated 9/13/19: Plaintiffs request the most recent data available).**

As noted in my November 18, 2019 letter, Mr. Valenti responded on November 8, 2019, to our September 2019 request of the most recent data, that "Defendants produced the October 7, 2019 MH Statistical Summary on October 22, 2019.  *See* ADCM1588561-1588566" (11/8/19 letter at 1).  But as noted in my December 16, 2019 letter, that document does not include the information requested.  It does not include the number of patients classified as MH-3A, MH-3B, MH-3C, MH-3D, or MH-3E; the number of patients classified as SMI; or the number of patients prescribed psychotropic medications.  This information is important in assessing the adequacy of Defendants' mental health staffing. *See* American Psychiatric Association, *Psychiatric Services in Correctional Facilities* (3d ed. 2016) at 9 (stating that prisons should employ "one FTE psychiatrist for every 150-200 SMI inmates receiving psychotropic medication").

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 3

In Mr. Valenti's December 19, 2019 response, he asserts that "Centurion and ADC do not have documents that show the number of ADC inmates in each of the listed mental health categories and the number within each category prescribed psychotropic medications." (12/19/19 letter at 3).

This assertion, if true, is a shocking admission of ADC and Centurion's failure to track the most basic of information regarding class members' mental health. It is inconceivable that the department and its contractor do not track the number of people in each mental health category; the number prescribed psychotropic medications; or the number classified as SMI. But in fact this assertion is false, as Defendants have previously produced this information in this litigation.

We request that you either (1) have Defendant Pratt affirmatively state under oath that ADC and Centurion do not track the number of people in each mental health category, the number classified as SMI, or the number prescribed psychotropic medications, or (2) produce the requested information without further delay.

**RFP 74: All documents reflecting any planned or implemented changes in policy governing suicide or other mental health watches from April 1, 2017 to the present.**

We reiterated this request on September 13, 2019, and in my letters of November 18, 2019 and December 16, 2019. In Mr. Valenti's December 19, 2019 response, he again asserts that the only responsive documents are DI 357, DI 366, DI 358, and DO1103, and that "ADC has no additional responsive documents. Centurion does not have any responsive documents." (12/19/19 letter at 3). We reiterate our request from December 19, 2019, to describe all efforts that ADC, Corizon, and Centurion have taken to identify responsive information since we first made this request in November 2017.

**RFP 116 (9/13/19): Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error. See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").**

As noted in my December 16, 2019 letter, in addition to Defendants' boilerplate objections, Mr. Valenti asserted that "[s]ince Plaintiffs have a roster of mental health staff and their licensure status (ADCM1585548-1585553), as well as access to eOMIS, Plaintiffs

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 4

have the ability to determine who, if any staff, have their licensure status incorrectly identified in eOMIS." (11/8/19 letter at 3).

As noted in our December 16, 2019 letter, this is false. While Plaintiffs' counsel has read-only access to eOMIS, we can only search medical records by the patient's name or ADC number. We have no way of searching eOMIS by staff name.

Mr. Valenti's December 19, 2019 response simply referred back to his previous statement in his November 8, 2019 letter, and your January 15, 2020 letter cited to Mr. Valenti's December 19, 2019 letter.

We reiterate our request that Defendants provide a list of all mental health staff whose licensure status is incorrectly listed in eOMIS. <u>If Defendants and their vendor(s) do not conduct any quality assurance checks as to the accuracy of the licensure status recorded in eOMIS, then please have Defendant Pratt affirmatively state this under oath.</u>

**Request 117 (9/13/19): All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25-31; June 8-14; July 20-26; August 3-9; and September 7-13[, 2019].**

In addition to asserting objections, Mr. Valenti asserted that the request is duplicative of Defendants' production of monthly max custody notebooks, that Plaintiffs did not request the documents during the July 31-August 1, 2019 Lewis tour, and contradictorily, then asserted that the request is premature. (11/8/19 letter at 3). We raised this point in our December 16, 2019 letter, and in response Mr. Valenti further objected on the basis that the request exceeds the scope of production of underlying data that supports July-September 2019 CGARs.

On August 27, 2019 Plaintiffs sent Defendants a Notice of Substantial Non-Compliance related to the provision of out-of-cell time and programming for persons in maximum custody who have an SMI Diagnosis (MC PM 8). In this notice Plaintiffs notified Defendants of the widespread consensus among SMI prisoners at Lewis Rast living in multiple different housing units that they were no longer being offered the unstructured time required by the Stipulation and were largely only receiving two hours of out-of-cell programming rather than the required three hours. Defendants' counsel responded to the Notice of Non-Compliance on September 26, 2019. This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 5

that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  Further, given the small population of SMI prisoners at Lewis Rast this request is not overly burdensome.  <u>Please provide the tracking forms without any further delays.</u>

**Request 122: Any and all documents, including email and text communications, to or from ADC's Director), Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters.  If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.**

Defendants objected to this request on the basis that it is outside the scope of the Stipulation and Performance Measures, is broad, vague, and ambiguous.  (11/18/19 Valenti letter).  The recitation of objections is meritless.

In my December 16, 2019 letter, in response to Defendants' complaint that the request is burdensome, we propose the following search terms:
- "cancel" [w/in sentence] ("pill line" or "pill call")
- "cancel" [w/in sentence] "nurse's line"
- "cancel" [w/in sentence] "provider line"
- "cancel" [w/in sentence] "mental health appointment"
- "cancel" [w/in sentence] "dental appointment"

Both Mr. Valenti's December 9, 2019 letter, and your January 15, 2020 letter, cite back to his December 18, 2019 objections, and do not respond to the proposed narrowing of search terms.  <u>Please provide your proposed search terms.</u>

//

//

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 6

**RFP 123 (Standing Request, 9/13/19): List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month.**

During the August 2019 mediation with Judge Fine on our notice of noncompliance regarding OB/GYN care at ASPC-Perryville, Defendants assured the Court and Plaintiffs' counsel that they would produce a monthly report of all women in ADC custody who were pregnant during all or part of the previous month.  Plaintiffs subsequently memorialized this agreement in the monthly document request on September 13, 2019, as RFP # 123, and a standing monthly request.  Defendants have not produced any reports for any months since November 2019.  We request that you immediately provide the Pregnant Patient reports for December 2019, January 2020, February 2020, and March 2020.[1]

**RFP 133 (12/16/19): All documents regarding staffing and staffing vacancies in the maximum custody units, including but not limited to post charts, staffing charts, prioritized posting charts, staffing rosters in each maximum custody unit.**

Your January 15, 2020 letter recites meritless boilerplate objections that the request is irrelevant, overly broad, and outside the scope of the Stipulation and the Performance Measures.  (1/15/20 letter at 1).

This is false.  ADC's staffing (or lack thereof) is critical to whether Defendants can comply with the Max Custody Performance Measures.  As detailed in our report regarding the December 2019 monitoring tour to ASPC-Eyman, there is a documented shortage of custody staff at the institution, and Defendants' Max Custody Notebooks show repeated cancellations of out-of-cell time due to "staff shortage."  *See* Doc. 3508-1 at 36-40.  Please provide the requested information without further delay.

//

//

---

[1] Defendants have unilaterally decided with other requests to only provide them on a quarterly basis, for example RFP 82 (pending specialty care requests).  We object to any unilateral move to do that with this request, given Defendant Pratt's and your representation to Judge Fine that you would provide the information monthly, and the urgency of the need to monitor these class members' medical care as close to "real time" as possible.

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 7

**RFP 134 (12/16/19): Documents sufficient to show the average length of stay for prisoners in each of the maximum custody units, including the average length of stay in Step 1, Step 2 and Step 3 of the DO 812/DI 326 step program.**

Your January 15, 2020 letter recites meritless boilerplate objections that the request is irrelevant, overly broad, and outside the scope of the Stipulation and the Performance Measures. (1/15/20 letter at 2). This information, again, is critical to whether Defendants are complying with their own max custody program that was developed as part of the settlement of the case. <u>Please provide the requested information without further delay</u>.

**RFP 136 (2/13/20):  Roster listing the names and ADC numbers of all female class members incarcerated at ASPC-Douglas as of 2/20/2020, or the date the report is run, whichever is more recent.**

We have not received a response to this request made more than two months ago. We need these class members' names so that we can monitor and ensure that they are receiving adequate health care at the remote facility that has had a vacant Medical Director position for months, and has only 1.0 of 1.5 FTE midlevel provider positions filled. [ADCM1607096]  We are concerned that if Centurion does not increase health care staffing to account for the influx of women, that the ability to meet the Stipulation's requirements and to provide adequate care to all people at ASPC-Douglas will suffer. <u>Please provide a list of the women incarcerated at ASPC-Douglas as of the date the report is run</u>.

**RFP 137 (2/13/20):  Roster listing the names, ADC numbers, and location (ASPC and unit) of all insulin-dependent diabetic class members as of 2/20/2020, or the date the report is run, whichever is more recent.**

We have not received a response to this request made more than two months ago. We need these class members' names so that we can monitor and ensure that they are receiving care in compliance with many of the Stipulation's performance measures, including those related to mediation administration and chronic care. <u>Please provide a report listing the names, ADC numbers, and location (ASPC and Unit) of all insulin-dependent diabetics in ADC custody as of the date the report is run</u>.

Mr. Timothy Bojanowski
RE: *Parsons v. Shinn*
Defendants' Failure to
Provide Requested Documents
April 21, 2020
Page 8

**RFP 138 (2/21/20): A list of all prisoners held in maximum custody, as of the response date, at the Florence, Eyman, and Lewis complexes including date classified to maximum custody and current step level under DI 326/DO 812.**

      We have not received a response to this request made almost two months ago.  We are entitled to a list of the names of our clients in the subclass, so that we can analyze and track whether they are progressing through the max custody step program in the timely manner as designed. <u>Please provide this list of the subclass members as of the date the report is run</u>.

      We look forward to your prompt production of the outstanding documents.  Feel free to reach out if you have any questions.

Sincerely yours,

Corene Kendrick
Staff Attorney

# Exhibit 2



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy J. Bojanowski
480.420.1604
tbojanowski@strucklove.com

May 19, 2020

***VIA EMAIL ONLY***
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

     Re:    *Parsons v. Shinn*
            **Plaintiffs' 04-21-2020 letter re: Defendants' document production**

Dear Corene:

     This is a response to your April 21, 2020 letter regarding documents requested by Plaintiffs.

**Request 1:**  The monthly [health care] staffing reports and weekly staffing schedules for each prison for the month.

**Defendants' Response:**  *See* Staffing Variance Reports produced on April 22, 2020 at ADCM1609358-1609379 and on May 12, 2020 at ADCM1611148-1611158.

**Request 55:** (Standing Request, 7/17/17):  All agendas and minutes for Director's Meetings. Reiterated at RFP 135 (Standing Request, 1/17/20):  All agendas and minutes for Director's Meetings held between Centurion and ADC.

**Defendants' Response:** *See* Director's Meeting Agendas for February 21, 2020, March 6, 2020, March 20, 2020, and April 17, 2020 produced at ADCM1609354-1609357.  Defendants have confirmed with Centurion and ADCRR that there are no minutes of these meetings.

**Request No. 56:** All versions, whether final or in draft form, of the **Mental Health Technical Manual** or equivalent document dated June 19, 2015 or later.

**Defendants' Response:** *See* ADCRR Mental Health Technical Manual – Rev. 12-24-2019 – produced on May 1, 2020 at ADCM1610068-1610161, which manual is publically available at: https://corrections.az.gov/health-services

Corene Kendrick
May 19, 2020
Page 2

**Request No. 66**:  Documents showing the number of ADC prisoners (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH- 3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI.

**Defendants' Response:**  Defendants will supplement their response to this request.

**Request 74:** All documents reflecting any planned or implemented changes in policy governing suicide or other mental health watches from April 1, 2017 to the present.

**Defendants' Response:**
There are no additional responsive documents.

**Request 116:** Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error. See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").

**Defendants' Response:**
Defendants object to this request as it is overbroad and exceeds the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the phrase "nature of the error." As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Since Plaintiffs have a roster of mental health staff and their licensure status (ADCM1585548-1585553), as well as access to eOMIS, Plaintiffs have the ability to determine who, if any staff, have their licensure status incorrectly identified in eOMIS. In addition, the request would require the creation of documents, which pursuant to Fed.R.Civ.P. 34, Defendants are not required to do. *See Goolsby v. Carrasco*, No. 1:09–cv–01650 JLT (PC), 2011 WL 2636099, at *8 (E.D. Cal. July 5, 2011)(document request that would require the defendant to create a roster of employees is not a proper request under Fed. R. Civ. P. 34(a)); *Robinson v. Adams*, No. 1:08–cv–01380–AWI–SMS PC, 2011 WL 2118753, at *20 (E.D. Cal. May 27, 2011) (defendant is not required to create a document in response to a request for production). Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendant**s.") (emphasis added).

**Request 117:** All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25 – 31; June 8 – 14; July 20-26; August 3-9; and September 7-13.

**Defendants' Response:**  *See* OOC tracking forms for the week of May 25-31, 2019 produced herewith at ADCM1615086-1615091 and August 3-9, 2019 OOC tracking forms produced at ADCM1615092-1615109.  Defendants will supplement this response.

Corene Kendrick
May 19, 2020
Page 3

**Request 122:** Any and all documents, including email and text communications to or from ADC's Director, Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters. If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.

**Defendants' Response:**  Defendants object to this request as overly broad and outside the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the terms "encounters" and "health care services", and the phrases "any and all documents" and "unavailability of custody staff". As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly burdensome.  By way of example and not limitation, as drafted, this request would require a broad and burdensome ESI search to produce all responsive documents. Defendants also object to this request to the extent that it requests information that is attorney-work product and/or privileged attorney-client communications.

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access **to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants.**") (emphasis added).

**Request 123:** List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month. (See 8/30/19 ltr. from R. Lomio to T. Bojanowski)

**Defendants' Response:**  *See* responsive documents produced on May 8, 2020 at ADCM1611143.

**Request 133**: (12/16/19):  All documents regarding staffing and staffing vacancies in the maximum custody units, including but not limited to post charts, staffing charts, prioritized posting charts, staffing rosters in each maximum custody unit.

**Defendants' Response:**  Defendants object to this request as irrelevant, overly broad, and outside the scope of the Stipulation and Performance Measures. Neither the Stipulation nor any of the Performance Measures impose any staffing requirements on Defendants as it relates to custody staff at the maximum custody units. The request is vague and ambiguous as to the phrase "All documents regarding" and the terms "staffing" and "staffing vacancies"; it also fails to specify a timeframe. As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly burdensome as it would require Defendants to review an indeterminable number of documents that relate to "staffing" and "staffing vacancies".

Corene Kendrick
May 19, 2020
Page 4

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

**Request 134:**  Documents sufficient to show the average length of stay for prisoners in each of the maximum custody units, including the average length of stay in Step 1, Step 2 and Step 3 of the DO 812/DI 326 step program.

**Defendants' Response:**  Defendants object to this request as irrelevant, overly broad, and outside the scope of the Stipulation and Performance Measures. Neither the Stipulation nor any of the Performance Measures impose any requirements on Defendants regarding the length of time an inmate is assigned to a maximum custody unit or how long an inmate is in Steps 1, 2, and 3 of the DO812/DI326 step program. The request is vague and ambiguous as to the phrase "Documents sufficient to show" and the terms "average" and "length of stay"; it also fails to specify a timeframe. As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly burdensome, as it would require Defendants to perform a manual review of an indeterminable number of documents related to an unknown number of maximum custody inmates (thousands or more) for an unspecified period of time.

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

Notwithstanding the above objections, DI326 does not have timeframes associated with the length of time an inmate will remain in a particular step.

**Request 136**:  Roster listing the names and ADC numbers of all female class members incarcerated at ASPC-Douglas as of 2/20/2020, or the date the report is run, whichever is more recent.

**Defendants' Response:**  *See* responsive document produced on May 15, 2020 at ADCM1614241.

**Request 137:**  (2/13/20):  Roster listing the names, ADC numbers, and location (ASPC and unit) of all insulin-dependent diabetic class members as of 2/20/2020, or the date the report is run, whichever is more recent.

**Defendants' Response:**  *See* responsive document produced on May 15, 2020 at ADCM1614242-1614255.

Corene Kendrick
May 19, 2020
Page 5

**Request 138:** (2/21/20): A list of all prisoners held in maximum custody, as of the response date, at the Florence, Eyman, and Lewis complexes including date classified to maximum custody and current step level under DI 326/DO 812.

**Defendants' Response:** Defendants object to this request as irrelevant, overly broad, and outside the scope of the Stipulation and Performance Measures. Neither the Stipulation nor any of the Performance Measures impose any requirements on Defendants to create **a list of all prisoners held in maximum custody to include the date classified to maximum custody and current step level under** DI 326/DO 812. The request is also unduly burdensome, as it would require Defendants to perform a manual review of an indeterminable number of documents related to an unknown number of maximum custody inmates (thousands or more) and from that review create a document for production to Plaintiffs.

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

Should you have any questions or concerns, please do not hesitate to contact me.

Regards,

Timothy J. Bojanowski

TJB/eap

cc:     Counsel of record

Attachments: As stated

# Exhibit 3



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Richard M. Valenti
480.420.1615
rvalenti@strucklove.com

November 8, 2019

*VIA EMAIL ONLY*
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

      Re:    *Parsons v. Ryan*
            **Plaintiffs' September 13, 2019 Monthly Request for Documents –**
            **Supplemental Document Requests 56, 66, 74, 113, and 116-124**

Dear Corene:

Below is Defendants' response to Plaintiffs' Supplemental Document Requests 56, 66, 74, 113, and 116-124, identified in Plaintiffs' September 13, 2019 Monthly Request for Documents.

**Request 56:** All versions, whether final or in draft form, of the **Mental Health Technical Manual** or equivalent document dated June 19, 2015 or later. (**9/13/19: Plaintiffs request the most recent version available**)

**Defendants' response:**
Plaintiffs have the most recent version of the manual.

**Request 66:** Documents showing the **number of ADC prisoners** (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI (**9/13/19: Plaintiffs request the most recent data available**)

**Defendants' response:**
Defendants produced the October 7, 2019 MH Statistical Summary on October 22, 2019. *See* ADCM1588561-1588566.

Corene Kendrick
November 8, 2019
Page 2

**Request 74:** All documents reflecting any planned or implemented changes in policy governing suicide or other mental health watches from April 1, 2017 to the present. **(9/13/19: Plaintiffs request the most recent changes/policy available)**

**Defendants' response:**
There are no additional responsive documents at this time.

**Request 113:** All use of force/ICS videos for Tonatihu Aguilar (ADC 164186) from the last two (2) months. (9/13/19 Plaintiffs reiterate this request - requesting March and April 2019 use of force/ ICS videos)

**Defendants' response:**
Defendants object to this request. The request exceeds the scope of the Stipulation and MCPM 9. Pursuant to MCPM 9, Defendants produce videos that depict the use of chemical agents on maximum custody SMI inmates. *See* Doc. 1185 at ¶27 and 1185-1 at 45. Accordingly, uses of force that do not involve the use of chemical agents on maximum custody SMI inmates are not required to be monitored or produced per the terms of the Stipulation and/or under the maximum custody or health care performance measures. *See* Doc. 1185 at ¶29 **(**"The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**."**)** (emphasis added). Inmate Aguilar is not an SMI inmate.

**Request 116:** Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error.  See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").

**Defendants' response:**
Defendants object to this request as it is overbroad and exceeds the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the phrase "nature of the error." As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Since Plaintiffs have a roster of mental health staff and their licensure status (ADCM1585548-1585553), as well as access to eOMIS, Plaintiffs have the ability to determine who, if any staff, have their licensure status incorrectly identified in eOMIS. In addition, the request would require the creation of documents, which pursuant to Fed.R.Civ.P. 34, Defendants are not required to do. *See Goolsby v. Carrasco*, No. 1:09–cv–01650 JLT (PC), 2011 WL 2636099, at *8 (E.D. Cal. July 5, 2011)(document request that would require the defendant to create a roster of employees is not a proper request under Fed. R. Civ. P. 34(a)); *Robinson v.*

Corene Kendrick
November 8, 2019
Page 3

*Adams*, No. 1:08–cv–01380–AWI–SMS PC, 2011 WL 2118753, at *20 (E.D. Cal. May 27, 2011) (defendant is not required to create a document in response to a request for production). Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendant**s.") (emphasis added).

**Request 117:** All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25 – 31; June 8 – 14; July 20-26; August 3-9; and September 7-13.

**Defendants' response:**
Defendants object to this request as overly broad and outside the scope of the Stipulation, Paragraphs 1-29, 32, and the accompanying Performance Measures. The request is duplicative of Defendants' production of Monthly Max Custody Notebooks regarding MCPM 1-9 as to the ten or more SMI inmates selected for monitoring. It requests, in part, documents available to Plaintiffs during the monitoring tour of ASPC-Lewis on July 31-August 1, 2019, which were requested prior to the tour, available during the tour, and Plaintiffs did not ask to review while touring. Finally, the request is premature as to the request for Out-of-Cell Tracking Forms for the selected 10 or more SMI inmates subject to monitoring for all MCPMs in August and September, as the August and September 2019 Max Custody Notebooks are not yet due.

**Request 118:** With regard to Defendants' response to Request No. 106, please provide any logs or lists tracking HNRs and grievances in which class members requested an interpreter. If no such responsive tracking logs or documents exist, please so indicate. (See Request 106.)

**Defendants' response:**
Defendants object to this request as outside the scope of the Stipulation and the Performance Measures. The request fails to specify a timeframe. The request is also vague and ambiguous as to the terms "grievances" and "interpreter". As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their**

Corene Kendrick
November 8, 2019
Page 4

**responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

Without waiving any objections, there are no responsive documents to this request.

**Request 119:** All Form 108-1s for all persons listed in ADCM1561791 (Defendants' response to RFP 99) and the following class members: ███████████████ ████████████████████████████████████████████. (See Requests 99 and 107.)

**Defendants' response:**
Defendants object to this request as irrelevant and outside the scope of the Stipulation and the Performance Measures. Defendants further object to the extent that it requests information related to inmates who are not in ADC custody. Per an AZ ADC website check on November 7, 2019, several inmates on the list Plaintiffs cite, as well as inmates ████████████████████████████████████████ are no longer in ADC custody. Under the Stipulation, class members are limited to "[a]ll prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and practices of the ADC." *See* Doc. 1185 at ¶3. Inmates who are not in ADC custody are not class members, and any information related to those inmates is irrelevant and beyond the scope of the Stipulation. As explained in Defendants' response to Request No. 107, 108-1 forms can be found in eOMIS, to which Plaintiffs have access. To the extent there may not be a 108-1 form scanned into eOMIS for a particular inmate, Defendants are under no obligation to conduct a search for documents in response to a request that is irrelevant and outside the scope of the Stipulation and the Performance Measures. Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

**Request 120:** Any and all contract(s) for in-person sign language and video remote interpretation during medical, dental, and mental health encounters at all ASPCs since July 1, 2019. If no such document(s) exist, please so indicate. If Centurion objects to producing any contract(s), please state with specificity the legal justification for refusing to produce such contracts. (See Request 101.)

Corene Kendrick
November 8, 2019
Page 5

**Defendants' response:**
Defendants object to this request as irrelevant and outside the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the term "encounters". As a result the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.") (emphasis added).

Without waiving any objections, Centurion has a contract with LanguageLine. For the reasons stated above, Defendants object to producing the contract and will not produce it.

**Request 121:** All billing documents from in-person, telephonic, or video remote interpretation services to Centurion for all interpreter services rendered in health encounters from July 1, 2019 to the present. If no such billing document(s) exist, please so indicate. If Centurion objects to producing any responsive document(s), please state with specificity the legal justification for refusing to produce such documents. (See Request 112.)

**Defendants' response:**
Defendants object to this request as irrelevant and outside the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the terms "billing documents" and "health encounters", and the phrase "interpreter services rendered". As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.") (emphasis added.)

**Request 122:** Any and all documents, including email and text communications to or from ADC's Director, Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such

Corene Kendrick
November 8, 2019
Page 6

unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters. If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.

**Defendants' response:**
Defendants object to this request as overly broad and outside the scope of the Stipulation and the Performance Measures. The request is also vague and ambiguous as to the terms "encounters" and "health care services", and the phrases "any and all documents" and "unavailability of custody staff". As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly burdensome. By way of example and not limitation, as drafted, this request would require a broad and burdensome ESI search to produce all responsive documents. Defendants also object to this request to the extent that it requests information that is attorney-work product and/or privileged attorney-client communications.

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.") (emphasis added).

**Request 123:** List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month. (See 8/30/19 ltr. from R. Lomio to T. Bojanowski)

**Defendants' response:**
Defendants produced responsive documents on October 22, 2019. *See* ADCM1588567.

**Request 124:** All billing statements or other documents showing all fees and expenses paid to outside counsel for legal services related to Parsons v. Ryan, from February 18, 2015 to present.

**Defendants' response:**
Defendants object to this request as irrelevant and outside the scope of the Stipulation and the Performance Measures. Defendants also object to this request as it seeks information that is attorney-work product and/or privileged attorney-client communications. Based on the foregoing, the burden of identifying and producing documents responsive to this

Corene Kendrick
November 8, 2019
Page 7

request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶29 ("The parties shall cooperate so that plaintiffs' counsel has reasonable access to **information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.") (emphasis added).

Sincerely,

Richard M. Valenti

RMV/eap
cc:     Counsel of record

# Exhibit 4



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson
Thomas Nosewicz
Shira Tevah

VIA EMAIL ONLY

November 18, 2019

Mr. Richard Valenti
Struck, Love, Bojanowski, & Acedo, PLC
3100 W. Ray Rd., Ste. 300
Chandler, AZ 85226
rvalenti@strucklove.com

      RE:   *Parsons v. Shinn*
             Defendants' Document Production

Dear Richie,

       I write in response to your letters of November 1 and 8, 2019, regarding Defendants' document productions in response to our monthly requests for documents. In addition, I write to highlight incomplete responses.

**Standing Request 1:  The monthly staffing reports and weekly staffing schedules for each prison . . .**

       The last monthly staffing report we received was dated September 25, 2019, which Defendants produced on September 27, 2019 (ADCM1584907-18).  **Please provide all reports through the present.**

**Standing Request 48: For each ADC complex, a list of prisoners who within the previous month reported heat intolerance while on medication prescribed by a psychiatric provider.**

       Defendants produced the February and March 2019 logs on May 10, 2019 (ADCM1570722-23), and the June-August 2019 logs on October 9, 2019 (ADCM1585567-69).  However, we have not received logs for the months of April, May, September, or October 2019.  **Please provide the April, May, September, and October 2019 logs.**

//

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva • Jean Lu
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris • Vishal Shah

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
November 18, 2019
Page 2

**Standing Request 55: All agendas and minutes for Director's Meetings . . .**

Defendants have not produced any agendas or minutes of these biweekly meetings since producing the agenda for the 6/20/19 meeting, which was provided to us on July 22, 2019 (ADCM1578188).  **We request that you produce all agendas and minutes from the Directors meetings held since June 20, 2019, to the present.**

**Request 56:  All versions, whether final or in draft form, of the Mental Health Technical Manual or equivalent document dated June 19, 2015 or later.**

We reiterated this request on September 13, 2019.  In your November 8, 2019 letter, you assert that "Plaintiffs have the most recent version of the manual." (11/8/19 letter at 1). The most recent version that we have is dated June 19, 2015.  **Please confirm that there have been no changes or modifications made to any of the policies and procedures contained in that version of the MHTM, since June 2015.  To the extent that any policy or procedure contained within the manual has been modified or changed, please provide the current version of the relevant section of the manual**.

**Standing Request 64: Temperature logs from 6/1/2017 to present**

Defendants have not produced any logs for any month after July 2019.  In your November 1, 2019 letter you state "Defendants aim to produce the logs for a particular month 45 to 60 days after the last day of that monitored month."  (11/1/19 letter at 2). **Please provide the August and September 2019 logs**.

**Request 66:  Documents showing the number of ADC prisoners (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI (9/13/19: Plaintiffs request the most recent data available)**

You responded on November 8 that "Defendants produced the October 7, 2019 MH Statistical Summary on October 22, 2019.  *See* ADCM1588561-1588566" (11/8/19 letter at 1).  But that document does not include the information requested.  It does not include the number of patients classified as MH-3A, MH-3B, MH-3C, MH-3D, or MH-3E; the number of patients classified as SMI; or the number of patients prescribed psychotropic medications.

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
November 18, 2019
Page 3

This information is important in assessing the adequacy of Defendants' mental health staffing. *See* American Psychiatric Association, *Psychiatric Services in Correctional Facilities* (3d ed. 2016) at 9 (stating that prisons should employ "one FTE psychiatrist for every 150-200 SMI inmates receiving psychotropic medication"). **Please produce the information requested.**

**Request 74:  All documents reflecting any planned or implemented changes in policy governing suicide or other mental health watches from April 1, 2017 to the present.**

We reiterated this request on September 13, 2019.  In your November 8, 2019 letter, you assert that "There are no additional responsive documents at this time." (11/8/19 letter at 2).  However, Defendants have not produced any responsive documents to this request at any time; rather Defendants have only directed us to DI 357 and DI 366.  (See Valenti 4/13/18 letter: "Without waiving any previous objections (see Defendants' January 12, 2018 correspondence to Plaintiffs), refer to DI 357 and 366, which are available on ADC's website. Defendants will supplement this response if additional responsive documents are identified;" *see also* R. Love letter dated 7/18/18: "Corizon is determining whether it has documents responsive to this request.")

The statement that there are no responsive documents is incorrect.  During our October 17-18, 2019 monitoring visit to Yuma, we were told by Warden Hetmer of a recent policy change pursuant to which all watches at Dakota are now constant watches.  We also saw a memorandum dated September 1, 2019, from Captain Rosas to Dakota staff, regarding "MH Watches and ISO Assignments."  We asked for a photograph to be taken of this memorandum, but the photo was not included among those Defendants produced from the Yuma tour.  **Please produce this document and all other responsive documents. Please also describe all efforts that ADC, Corizon, and Centurion have taken to identify responsive documents since we first made this request in November 2017.**

**Request 107:  All form 108-1s for all deaf people who were in ADC custody any time since January 1, 2017.**

Plaintiffs first requested this information on February 14, 2019.  In your March 20, 2019 letter, you object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome.

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
November 18, 2019
Page 4

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the form 108-1s without further delay.  If Defendants do not compile or maintain the form 108-1s due to their failure to track the class members who rely upon sign language and/or who are not fluent in English, (see 3/6/19, 3/14/19 R. Valenti letters), then so state that.**

**Request 114:  All agendas, minutes, attendee lists, and all other documents pertaining to the 'mental health team meetings' referred to in Tim Bojanowski's letter to Ryan Kendall dated August 9, 2019, from January 1, 2019, to the present.**

As noted in David Fathi's October 9, 2019 letter to you regarding this request, "It seems highly implausible that all of the mental health team meetings that have occurred in ADC in the last nine months have collectively generated not a single document.  Please confirm that this is in fact Defendants' position."  In response, you assert in your November 1, 2019 letter that "It is Defendants' position that there are no responsive documents to this request."  **Please describe all efforts that ADC has taken to identify responsive documents to this request.**

**Request 116: Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error. See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").**

In addition to your objections, you assert that "[s]ince Plaintiffs have a roster of mental health staff and their licensure status (ADCM1585548-1585553), as well as access to eOMIS, Plaintiffs have the ability to determine who, if any staff, have their licensure status incorrectly identified in eOMIS."  (11/8/19 letter at 3).

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
November 18, 2019
Page 5

This is incorrect.  While Plaintiffs' counsel has read-only access to eOMIS, we can only search medical records by the patient's name or ADC number.  We have no way of searching eOMIS by staff name.  We reiterate our request that Defendants provide a list of all mental health staff whose licensure status is incorrectly listed in eOMIS.  **If Defendants and their vendor(s) do not conduct any quality assurance checks as to the accuracy of the licensure status in eOMIS, then so state this.**

**Request 117: All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25-31; June 8-14; July 20-26; August 3-9; and September 7-13[, 2019].**

In addition to asserting objections, you assert that the request is duplicative of Defendants' production of monthly max custody notebooks, that Plaintiffs did not request the documents during the July 31-August 1, 2019 Lewis tour, and that the request is premature.  (11/8/19 letter at 3).

On August 27, 2019 Plaintiffs sent Defendants a Notice of Substantial Non-Compliance related to the provision of out-of-cell time and programming for persons in maximum custody who have an SMI Diagnosis (MC PM 8).  In this notice Plaintiffs notified Defendants of the widespread consensus among SMI prisoners at Lewis Rast living in multiple different housing units that they were no longer being offered the unstructured time required by the Stipulation and were largely only receiving two hours of out-of-cell programming rather than the required three hours.  Defendants' counsel responded to the Notice of Non-Compliance on September 26, 2019.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  Further, given the small population of SMI prisoners at Lewis Rast this request is not overly burdensome.  **Please provide the tracking forms without any further delays.**

**Request 119:  All Form 108-1s for all persons listed in ADCM1561791 (Defendants' response to RFP 99) and the following class members:** ███████████████
████████████████████████████████████████████████

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome.  (11/8/19 letter

at 4).  You also object to the production of these documents on the basis that three of the individuals currently are not within ADC custody.  Finally, you object on the basis that Plaintiffs' counsel has access to eOMIS.

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  Furthermore, the fact that three of the people are currently out of ADC custody has no impact on whether the documents should be produced.  The ADA accommodations that were (not) provided to class members in recent months are relevant to the determination of whether Defendants are in substantial noncompliance with Paragraph 14.  Finally, the fact that Plaintiffs' counsel has access to eOMIS does not resolve the matter unless it is Defendants' position that there is no other location besides a prisoner's medical record where his or her Form 108-1 can be found.

**Therefore, please provide the requested form 108-1s without further delay.  If ADC does not maintain Form 108-1s in any other location besides eOMIS (for example, in the prisoner's Master Record File), then so state this.**

**Request 120: Any and all contract(s) for in-person sign language and video remote interpretation during medical, dental, and mental health encounters at all ASPCs since July 1, 2019. If no such document(s) exist, please so indicate. If Centurion objects to producing any contract(s), please state with specificity the legal justification for refusing to produce such contracts.**

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome, and for those reasons, refuse to provide a copy of Centurion's contract with LanguageLine.  (11/8/19 letter at 5).

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
November 18, 2019
Page 7

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the contract, or state with specificity the legal basis for refusing to provide the contract. The recitation of evidentiary objections is not a legal basis for refusing to provide the contract.**

**Request No. 121:  All billing documents from in-person, telephonic, or video remote interpretation services to Centurion for all interpreter services rendered in health encounters from July 1, 2019 to the present. If no such billing document(s) exist, please so indicate. If Centurion objects to producing any responsive document(s), please state with specificity the legal justification for refusing to produce such documents.**

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome, and for those reasons, refuse to provide a copy of these billing documents.  (11/8/19 letter at 5).

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the billing documents, or state with specificity the legal basis for refusing to provide them. The recitation of evidentiary objections is not a legal basis for refusing to provide them.  If no such billing documents exist, please so indicate.**

**Request 122: Any and all documents, including email and text communications, to or from ADC's Director), Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters.  If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.**

You object to this request on the basis that it is outside the scope of the Stipulation and Performance Measures, is broad, vague, and ambiguous.  Again, your recitation of objections is meritless.  With regard to Defendants' complaint that the request is burdensome, we propose the following search terms:

- "cancel" [w/in sentence] ("pill line" or "pill call")
- "cancel" [w/in sentence] "nurse's line"
- "cancel" [w/in sentence] "provider line"
- "cancel" [w/in sentence] "mental health appointment"
- "cancel" [w/in sentence] "dental appointment"

**Standing Request 123: List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month.**

As noted in my November 7, 2019 letter to Mr. Bojanowski, the document Defendants produced that purported to list all pregnant class members in ADC custody in August or September 2019 was woefully incomplete, as it omitting many women whose files were reviewed in August 2019 for the relevant prenatal performance measures.  **We reiterate our request that Defendants provide a complete list, and indicate what steps ADC/Centurion took to compile the list.**

//

//

**Request 124: All billing statements or other documents showing all fees and expenses paid to outside counsel for legal services related to Parsons v. Ryan, from February 18, 2015 to present.**

Defendants object to the production of these documents on the basis that it is outside the scope of the Stipulation, and seeks attorney work product or privileged communications. (11/8/19 letter at 6-7).  But Defendants themselves have affirmatively put their billing records in issue, using them in an attempt to defeat Plaintiffs' claim for attorney fees.  *See* Ninth Circuit No. 16-17282, Dkt. 124-1, at ECF 14-15 (arguing that attorney fees sought by Plaintiffs are "grossly excessive" because Plaintiffs billed more time than Defendants). Defendants may not selectively and strategically use their billing records in this way and then argue that those records are nondiscoverable.

Thank you for your prompt attention to these matters.

Sincerely yours,

Corene Kendrick
Staff Attorney

Exhibit 5



**PRISON LAW OFFICE**
General Delivery, San Quentin, CA 94964
Telephone (510) 280-2621 • Fax (510) 280-2704
www.prisonlaw.com

*Director:*
Donald Specter

*Managing Attorney:*
Sara Norman

*Staff Attorneys:*
Rana Anabtawi
Steven Fama
Alison Hardy
Sophie Hart
Corene Kendrick
Rita Lomio
Margot Mendelson
Thomas Nosewicz
Shira Tevah

VIA EMAIL ONLY

December 16, 2019

Mr. Richard Valenti
Struck, Love, Bojanowski, & Acedo, PLC
3100 W. Ray Rd., Ste. 300
Chandler, AZ 85226
rvalenti@strucklove.com

 

RE:    *Parsons v. Shinn*
          Defendants' Document Production

Dear Richie,

I write in response to your letter of December 9, 2019, regarding Defendants' document productions in response to our monthly requests for documents. In addition, I write to reiterate the requests made in my letter of November 18, 2019, and Defendants' failure to provide responsive documents.

**Standing Request 55:** All agendas and minutes for Director's Meetings . . .

As noted in my November 18, 2019 letter, Defendants have not provided any minutes of these biweekly meetings since 6/20/19.  Defendants have only produced a one page-agenda for meetings held through August 26, 2019.  **We request that you produce all agendas and minutes,** *including the minutes taken during the meetings***, from the Director's meetings held since June 20, 2019, to the present.**

**Request 56:**  All versions, whether final or in draft form, of the Mental Health Technical Manual or equivalent document dated June 19, 2015 or later.

As noted in my November 18, 2019 letter, we reiterated this request on September 13, 2019.  In your November 8, 2019 letter, you assert that "Plaintiffs have the most recent version of the manual." (11/8/19 letter at 1).  The most recent version that we have is dated June 19, 2015.  **Please confirm that there have been no changes or modifications made to any of the policies and procedures contained in that version of the MHTM, since June 2015.  To the extent that any policy or procedure contained within the manual**

**Board of Directors**
Penelope Cooper, President • Michele WalkinHawk, Vice President • Marshall Krause, Treasurer
Harlan Grossman • Christiane Hipps • Margaret Johns • Cesar Lagleva • Jean Lu
Laura Magnani • Michael Marcum • Ruth Morgan • Seth Morris • Vishal Shah

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
December 16, 2019
Page 2

**has been modified or changed, please provide the current version of the relevant
section of the manual**.


**Request 66:**  Documents showing the number of ADC prisoners (excluding those at
private prisons) in each of the following mental health categories and, within each
category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B,
MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI (9/13/19: Plaintiffs request the most recent
data available).

      As noted in my November 18, 2019 letter, you responded on November 8 that
"Defendants produced the October 7, 2019 MH Statistical Summary on October 22, 2019.
*See* ADCM1588561-1588566" (11/8/19 letter at 1).  But that document does not include the
information requested.  It does not include the number of patients classified as MH-3A,
MH-3B, MH-3C, MH-3D, or MH-3E; the number of patients classified as SMI; or the
number of patients prescribed psychotropic medications.

      This information is important in assessing the adequacy of Defendants' mental health
staffing. *See* American Psychiatric Association, *Psychiatric Services in Correctional
Facilities* (3d ed. 2016) at 9 (stating that prisons should employ "one FTE psychiatrist for
every 150-200 SMI inmates receiving psychotropic medication").  **Please produce the
information requested.**


**Request 74:**  All documents reflecting any planned or implemented changes in policy
governing suicide or other mental health watches from April 1, 2017 to the present.

      We reiterated this request on September 13, 2019 and November 18, 2019.  In your
November 8, 2019 letter, you assert that "There are no additional responsive documents at
this time." (11/8/19 letter at 2).  However, Defendants have not produced any responsive
documents to this request at any time; rather Defendants have only directed us to DI 357 and
DI 366.  (See Valenti 4/13/18 letter: "Without waiving any previous objections (see
Defendants' January 12, 2018 correspondence to Plaintiffs), refer to DI 357 and 366, which
are available on ADC's website. Defendants will supplement this response if additional
responsive documents are identified;" *see also* R. Love letter dated 7/18/18: "Corizon is
determining whether it has documents responsive to this request.")

      The statement that there are no responsive documents is incorrect.  During our
October 17-18, 2019 monitoring visit to Yuma, we were told by Warden Hetmer of a recent

policy change pursuant to which all watches at Dakota are now constant watches.  We also saw a memorandum dated September 1, 2019, from Captain Rosas to Dakota staff, regarding "MH Watches and ISO Assignments."  We asked for a photograph to be taken of this memorandum, but the photo was not included among those Defendants produced from the Yuma tour.  **Please produce this document and all other responsive documents. Please also describe all efforts that ADC, Corizon, and Centurion have taken to identify responsive documents since we first made this request in November 2017.**

**Request 107:**  All form 108-1s for all deaf people who were in ADC custody any time since January 1, 2017.

Plaintiffs first requested this information on February 14, 2019.  In your March 20, 2019 letter, you object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome.

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the form 108-1s without further delay.  If Defendants do not compile or maintain the form 108-1s due to their failure to track the class members who rely upon sign language and/or who are not fluent in English, (see 3/6/19, 3/14/19 R. Valenti letters), then so state that.**

**Request 114:**  All agendas, minutes, attendee lists, and all other documents pertaining to the 'mental health team meetings' referred to in Tim Bojanowski's letter to Ryan Kendall dated August 9, 2019, from January 1, 2019, to the present.

As noted in David Fathi's October 9, 2019 letter to you regarding this request, "It seems highly implausible that all of the mental health team meetings that have occurred in ADC in the last nine months have collectively generated not a single document.  Please

confirm that this is in fact Defendants' position."  In response, you assert in your November 1, 2019 letter that "It is Defendants' position that there are no responsive documents to this request."  **Please describe all efforts that ADC has taken to identify responsive documents to this request, and confirm that none of the mental health team meetings held from January 1, 2019 to the present have resulted in the creation of any agendas, minutes, attendee lists, or any other documents.**

**Request 116:** Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error. See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").

In addition to your objections, you assert that "[s]ince Plaintiffs have a roster of mental health staff and their licensure status (ADCM1585548-1585553), as well as access to eOMIS, Plaintiffs have the ability to determine who, if any staff, have their licensure status incorrectly identified in eOMIS."  (11/8/19 letter at 3).

This is incorrect.  While Plaintiffs' counsel has read-only access to eOMIS, we can only search medical records by the patient's name or ADC number.  We have no way of searching eOMIS by staff name.  We reiterate our request that Defendants provide a list of all mental health staff whose licensure status is incorrectly listed in eOMIS.  **If Defendants and their vendor(s) do not conduct any quality assurance checks as to the accuracy of the licensure status in eOMIS, then so state this.**

**Request 117:** All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25-31; June 8-14; July 20-26; August 3-9; and September 7-13[, 2019].

In addition to asserting objections, you assert that the request is duplicative of Defendants' production of monthly max custody notebooks, that Plaintiffs did not request the documents during the July 31-August 1, 2019 Lewis tour, and that the request is premature.  (11/8/19 letter at 3).

On August 27, 2019 Plaintiffs sent Defendants a Notice of Substantial Non-Compliance related to the provision of out-of-cell time and programming for persons in maximum custody who have an SMI Diagnosis (MC PM 8).  In this notice Plaintiffs notified Defendants of the widespread consensus among SMI prisoners at Lewis Rast living in multiple different housing units that they were no longer being offered the unstructured

time required by the Stipulation and were largely only receiving two hours of out-of-cell programming rather than the required three hours.  Defendants' counsel responded to the Notice of Non-Compliance on September 26, 2019.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  Further, given the small population of SMI prisoners at Lewis Rast this request is not overly burdensome.  **Please provide the tracking forms without any further delays.**


**Request 119:**  All Form 108-1s for all persons listed in ADCM1561791 (Defendants' response to RFP 99) and the following class members: ██████████████████
██████████████████████████████

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome.  (11/8/19 letter at 4).  You also object to the production of these documents on the basis that three of the individuals currently are not within ADC custody.  Finally, you object on the basis that Plaintiffs' counsel has access to eOMIS.

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  Furthermore, the fact that three of the people are currently out of ADC custody has no impact on whether the documents should be produced.  The ADA accommodations that were (not) provided to class members in recent months are relevant to the determination of whether Defendants are in substantial noncompliance with Paragraph 14.  Finally, the fact that Plaintiffs' counsel has access to eOMIS does not resolve the matter unless it is Defendants' position that there is no other location besides a prisoner's medical record where his or her Form 108-1 can be found.

**Therefore, please provide the requested form 108-1s without further delay.  If ADC does not maintain Form 108-1s in any other location besides eOMIS (for example, in the prisoner's Master Record File), then so state this.**

**Request 120:** Any and all contract(s) for in-person sign language and video remote interpretation during medical, dental, and mental health encounters at all ASPCs since July 1, 2019. If no such document(s) exist, please so indicate. If Centurion objects to producing any contract(s), please state with specificity the legal justification for refusing to produce such contracts.

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome, and for those reasons, refuse to provide a copy of Centurion's contract with LanguageLine.  (11/8/19 letter at 5).

Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the contract, or state with specificity the legal basis for refusing to provide the contract. The recitation of evidentiary objections is not a legal basis for refusing to provide the contract.**

**Request No. 121:**  All billing documents from in-person, telephonic, or video remote interpretation services to Centurion for all interpreter services rendered in health encounters from July 1, 2019 to the present. If no such billing document(s) exist, please so indicate. If Centurion objects to producing any responsive document(s), please state with specificity the legal justification for refusing to produce such documents.

You object to this request on the basis that it is outside of the scope of the Performance Measures and Stipulation, vague, ambiguous, and burdensome, and for those

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
December 16, 2019
Page 7

reasons, refuse to provide a copy of these billing documents.  (11/8/19 letter at 5).  Your objections are meritless.  First, the request falls squarely within the Stipulation, as Paragraph 14 of the Stipulation states that "For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation service."  Doc. 1185 ¶ 14.  On February 7, 2019, Plaintiffs sent Defendants a Notice of Noncompliance related to this provision of the Stipulation.  Doc. 3255-1 at 108-113.  The parties met and conferred about this dispute on August 28, 2019.  Doc. 3348.  This dispute is still pending and therefore falls squarely within the ambit of the Stipulation's requirement in paragraph 29 that "[t]he parties shall cooperate so that plaintiffs' counsel has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants."  **Please provide the billing documents, or state with specificity the legal basis for refusing to provide them. The recitation of evidentiary objections is not a legal basis for refusing to provide them.  If no such billing documents exist, please so indicate.**

**Request 122:** Any and all documents, including email and text communications, to or from ADC's Director), Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters.  If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.

You object to this request on the basis that it is outside the scope of the Stipulation and Performance Measures, is broad, vague, and ambiguous.  Again, your recitation of objections is meritless.  With regard to Defendants' complaint that the request is burdensome, we propose the following search terms:
- "cancel" [w/in sentence] ("pill line" or "pill call")
- "cancel" [w/in sentence] "nurse's line"
- "cancel" [w/in sentence] "provider line"
- "cancel" [w/in sentence] "mental health appointment"
- "cancel" [w/in sentence] "dental appointment"

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
December 16, 2019
Page 8

**Standing Request 123:** List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month.

      As noted in my November 7, 2019 letter to Mr. Bojanowski, and my November 18, 2019 letter to you, the document Defendants produced that purported to list all pregnant class members in ADC custody in August or September 2019 was woefully incomplete, as it omitted many women whose files were reviewed by ADC monitors in August 2019 for the relevant prenatal performance measures.  **We reiterate our request that Defendants provide a complete list for August and September, and indicate what steps you and Centurion took to compile the list.  We request that Defendants provide the monthly list for October and November, 2019.**

**Request 124:** All billing statements or other documents showing all fees and expenses paid to outside counsel for legal services related to *Parsons v. Ryan*, from February 18, 2015 to present.

      Defendants object to the production of these documents on the basis that it is outside the scope of the Stipulation, and seeks attorney work product or privileged communications. (11/8/19 letter at 6-7).  But Defendants themselves have affirmatively put their billing records in issue, using them in an attempt to defeat Plaintiffs' claim for attorney fees.  *See* Ninth Circuit No. 16-17282, Dkt. 124-1, at ECF 14-15 (arguing that attorney fees sought by Plaintiffs are "grossly excessive" because Plaintiffs billed more time than Defendants). Defendants may not selectively and strategically use their billing records in this way and then argue that those records are nondiscoverable.  **Please produce the requested documents.**

**Request 125:** All directives, instruction, and any other documents modifying in any way the monitoring methodology set forth in the Monitor Guide, dated February 7, 2018.

      In your December 9, 2019 letter, you reference your November 1, 2019 letter's objections.  However, that was in response to Request 115, which was requesting the current version of the Guide, and any and all previous versions dated later than February 7, 2018. Request 125 is different from Request 115.  **Please provide all responsive documents.**

Mr. Richard Valenti
RE: *Parsons v. Shinn*
Defendants' Document Production
December 16, 2019
Page 9

**Request 128:**  List of all class members for whom a PMRB meeting was held at ASPC-Yuma since Jan. 1, 2019 through Oct. 15, 2019, including class member name, ADC number, and date of PMRB.

**Request 129:**  List of all class members for whom a SMI determination was held at ASPC-Yuma since Jan. 1, 2019 through Oct. 15, 2019, including class member name, ADC number, and date of determination.

Your December 9, 2019 letter states that there are no responsive documents to these requests.  This is incorrect.  During the October 2019 monitoring tour of ASPC-Yuma (which you did not attend), Centurion staff (facility and regional office) and ADC staff told us that these records are maintained and kept in the normal course of business, and that they could provide them.  **Please provide these documents without further delay.  If no such documents exist because no PMRB meetings or SMI determinations were held at Yuma between January 1, 2019 and October 15, 2019, please so state.  If no such documents exist or are kept, please explain how multiple Centurion and ADC staff could have "misspoken" and stated that this information is tracked and maintained.**

**Request 130:** Staffing report for September 2019 for each unit of ASPC-Yuma showing name, position, and days/hours actually worked.

Your December 9, 2019 letter objects that this is a burdensome request.  Again, on the Yuma tour, Centurion facility staff stated that these reports exist and are easily producible.  **Please provide the requested documents without further delay.**

We hope that you will provide these documents immediately, and that we do not have to get the Court involved in order for you to provide them.  *See* Doc. 3450 at 2 (Judge Silver stated that she "will determine whether sanctions should be imposed because Defendants will have engaged in a needless consumption of time.")  Thank you for your prompt attention to these matters.

Sincerely yours,

Corene Kendrick
Staff Attorney

# Exhibit 6



## STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Richard M. Valenti
480.420.1615
rvalenti@strucklove.com

December 19, 2019

**_VIA EMAIL ONLY_**
Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

> Re:    *Parsons v. Ryan*
> **Supplemental requests for production 1, 48, 55, 107; Defendants' 11-01-19 and 11-08-19 letters concerning document production**

Dear Corene:

This is a response to your November 18, 2019 letter regarding Defendants' document production.

**Request No. 1:** The monthly staffing reports and weekly staffing schedules for each prison for the month of [ ] used to monitor compliance with Stipulation Performance Measures # 1-4 (Staffing Measures # 1-4 in the CGAR).

**Defendants' Response:**
On December 6, 2019, Defendants produced Variance Reports for October 7, 2019, October 21, 2019, October 31, 2019, and November 26, 2019. *See* ADCM1595647-1595688.

**Request No. 48:** For each ADC complex, a list of prisoners who within the previous month reported heat intolerance while on medication prescribed by a psychiatric provider. See Doc. 1927 at 2.

**Defendants' Response:**
On November 25, 2019, Defendants produced the April and May 2019 Statewide Heat Intolerance Logs. *See* ADCM1589599 (April 2019) and ADCM1589600 (May 2019). On

Corene Kendrick
December 19, 2019
Page 2

November 29, 2019, Defendants produced the Statewide September to October 2019 Heat Intolerance Log. *See* ADCM1591243-1591244.

**Request No. 55:** All agendas and minutes for Director's Meetings (also known as ADC & Corizon Bi-Weekly Meetings) from January 1, 2017 to the present (agendas for 5/2/17, 5/15/17, and 6/6/17 have been produced and need not be re-produced).

**Defendants' Response:**
Your assertion that Defendants have not produced any responsive documents since July 22, 2019 is incorrect. On October 9, 2019, Defendants produced responsive documents for the July 15, 2019, July 29, 2019, August 12, 2019, and August 26, 2019 meetings. *See* ADCM1585864-1585867.

On November 25, 2019, Defendants produced responsive documents for the September 9, 2019, September 27, 2019, October 7, 2019, and November 4, 2019 meetings. *See* ADCM1589825-1589828.

**Request No. 56:** All versions, whether final or in draft form, of the **Mental Health Technical Manual** or equivalent document dated June 19, 2015 or later. **(9/13/19: Plaintiffs request the most recent version available).**

**Defendants' Response:**
The June 2015 version Plaintiffs have is the most recent version available, and it has not been updated.

**Request No. 64:** Temperature Logs from 06/01/2017 to present for all prison complexes. [07/14/17]

**Defendants' Response:**
Defendants first produced the August 2019 temperature logs on November 25, 2019. They were reproduced on November 29, 2019. *See* ADCM1589829-1590683. The September 2019 temperature logs were produced on December 3, 2019. *See* ADCM1593476-1594311.

**Request No. 66**: Documents showing the **number of ADC prisoners** (excluding those at private prisons) in each of the following mental health categories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, SMI **(9/13/19: Plaintiffs request the most recent data available)**

Corene Kendrick
December 19, 2019
Page 3

**Defendants' response:**
The MH Statistical Summary (*see* ADCM1588561-1588566) is the only document Defendants can provide Plaintiffs. Centurion and ADC do not have documents that show the number of ADC inmates in each of the listed mental health categories and the number within each category prescribed psychotropic medications. To the extent that Plaintiffs request Defendants to create documents, Defendants object as Defendants are not required to create documents pursuant to Fed.R.Civ.P. 34. *See Goolsby v. Carrasco*, No. 1:09–cv–01650 JLT (PC), 2011 WL 2636099, at *8 (E.D. Cal. July 5, 2011)(document request that would require the defendant to create a roster of employees is not a proper request under Fed. R. Civ. P. 34(a)); *Robinson v. Adams*, No. 1:08–cv–01380–AWI–SMS PC, 2011 WL 2118753, at *20 (E.D. Cal. May 27, 2011) (defendant is not required to create a document in response to a request for production). Finally, your citation to a 2016 American Psychiatric Association report is irrelevant as neither the Stipulation nor the Performance Measures require Defendants to employ a specific ratio of psychiatrists to SMI inmates.

**Request 74:** All documents reflecting any planned or implemented changes in policy governing suicide or other mental health watches from April 1, 2017 to the present. **(9/13/19: Plaintiffs request the most recent changes/policy available**)

**Defendants' response:**
Your assertion that Defendants have not produced any responsive documents is incorrect. On May 13, 2019, Defendants produced several documents in response to Request 74. *See* ADCM1572569-1572581. In addition to DI357 and DI366, Defendants have also referred Plaintiffs to DI358 and DO1103. *See* 01/12/2018 email from Elaine Percevecz regarding Defendants' responses to Requests 74-78.

Following your November 18 letter, there was additional follow up with ADC and Centurion. ADC has no additional responsive documents. Centurion does not have additional responsive documents.

Without waiving any objections, produced herewith is the September 1, 2019 Memorandum from Captain Rosas to Dakota Staff. *See* ADCM1595853. However, your assertion that this memorandum is responsive to Request 74 is incorrect. The memorandum does not reflect planned or implemented changes in policy governing suicide or other mental health watches. The statement that "all MH inmates are monitored as a continuous watch" was a miscommunication as it does not reflect policy. There was no such change in policy.

Corene Kendrick
December 19, 2019
Page 4

**Request 107:** All form 108-1s for all deaf people who were in ADC custody at any time since January 1, 2017.

**Defendants' Response:**
Defendants reiterate the objections set forth in their March 20, 2019 letter. *See* 3/20/2019 letter from Richard Valenti to Corene Kendrick at 4-5.

**Request 114:** All agendas, minutes, attendee lists, and all other documents pertaining to the "mental health team meetings" referred to in Tim Bojanowski's letter to Ryan Kendall dated August 9, 2019, from January 1 2019 to present.

**Defendants' Response:**
ADC and Centurion were contacted regarding the existence of documents responsive to this request and both confirmed there were no responsive documents.

**Request 116:** Identify all mental health staff whose licensure status is incorrectly listed in eOMIS, and state the nature of the error. See, e.g., 9/3/19 letter from Bojanowski to Fathi ("Russell Prause was incorrectly titled in eOMIS as unlicensed").

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 2-3.

**Request 117:** All weekly out-of-cell tracking forms for all seriously mentally ill (SMI) prisoners housed in maximum custody at the Lewis Rast Unit for the week of May 25 – 31; June 8 – 14; July 20-26; August 3-9; and September 7-13.

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 3.  Additionally, the request exceeds the scope of production of the underlying data that supports the July through September 2019 CGAR findings for MCPM 8 as to weeks and/or inmates not subject to random selection for monitoring and reporting.

**Request 119:** All Form 108-1s for all persons listed in ADCM1561791 (Defendants' response to RFP 99) and the following class members: ███████████████ ████████████████████████████████ (See Requests 99 and 107.)

Corene Kendrick
December 19, 2019
Page 5

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 4.

**Request 120:** Any and all contract(s) for in-person sign language and video remote interpretation during medical, dental, and mental health encounters at all ASPCs since July 1, 2019. If no such document(s) exist, please so indicate. If Centurion objects to producing any contract(s), please state with specificity the legal justification for refusing to produce such contracts. (See Request 101.)

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 5.

**Request 121:** All billing documents from in-person, telephonic, or video remote interpretation services to Centurion for all interpreter services rendered in health encounters from July 1, 2019 to the present. If no such billing document(s) exist, please so indicate. If Centurion objects to producing any responsive document(s), please state with specificity the legal justification for refusing to produce such documents. (See Request 112.)

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 5.

**Request 122:** Any and all documents, including email and text communications to or from ADC's Director, Acting Director, Deputy Director of Operations, Northern Regional Operations Director, Southern Regional Operations Director, Assistant Director, Health Services Contract Monitoring Bureau (Richard Pratt), and/or Mental Health Director, Health Services Contract Monitoring Bureau (Nicole Taylor), from June 1, 2019 to the present, regarding the unavailability of custody staff at any ASPC and the impact of such unavailability upon medication administration ("pill call") and/or health care services, including but not limited to nurse's line, provider's line, mental health encounters, and/or dental encounters. If no such responsive documents exist, please so indicate and describe all steps taken to search for and confirm they do not exist.

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 6.

Corene Kendrick
December 19, 2019
Page 6

**Request 123:** List of names and ADC numbers of all women in ADC custody who were pregnant during all or part of the previous month. (See 8/30/19 ltr. from R. Lomio to T. Bojanowski)

**Defendants' Response:**
Produced herewith is the August through November 2019 Pregnancy Tracker. *See* ADCM1595854-1595857.

**Request 124:** All billing statements or other documents showing all fees and expenses paid to outside counsel for legal services related to Parsons v. Ryan, from February 18, 2015 to present.

**Defendants' Response:**
Defendants reiterate the objections set forth in their November 8, 2019 letter. *See* 11/8/2019 letter from Richard Valenti to Corene Kendrick at 6-7. The Declaration filed in No. 16-17282, which states the number of hours spent preparing Defendants' briefs, did not put our billing records—for the entire litigation going back to February 2015—"in issue" or otherwise make them discoverable under the terms of the Stipulation.

Sincerely,

Richard M. Valenti

RMV/eap
cc:     Counsel of record

Exhibit 7



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy J. Bojanowski
480.420.1604
tbojanowski@strucklove.com

January 15, 2020

*VIA EMAIL ONLY*

Corene Kendrick
PRISON LAW OFFICE
General Delivery
San Quentin, CA  94964

    Re:   *Parsons v. Ryan*
          **Plaintiffs' 12-16-2019 Monthly Request for Documents –**
          **Supplemental Requests 132-134**

Dear Corene:

This is a response to Plaintiffs' Supplemental Document Requests 132-134, identified in Plaintiffs' December 16, 2019 Monthly Request for Documents.

**Request No. 132:** Current version of list of ADC Locator Codes for all ten ASPCs.

**Defendants' Response:**
Defendants object to this request as irrelevant and outside the scope of the Stipulation and Performance Measures**.** Furthermore, this request seeks security-sensitive information. Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

**Request No. 133:** All documents regarding staffing and staffing vacancies in the maximum custody units, including but not limited to post charts, staffing charts, prioritized posting charts, staffing rosters in each maximum custody unit.

**Defendants' Response:**
Defendants object to this request as irrelevant, overly broad, and outside the scope of the Stipulation and Performance Measures. Neither the Stipulation nor any of the Performance Measures impose any staffing requirements on Defendants as it relates to custody staff at the maximum custody units. The request is vague and ambiguous as to the phrase "All documents regarding" and the terms "staffing" and "staffing vacancies"; it also fails to specify a timeframe. As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly

Corene Kendrick
January 15, 2020
Page 2

burdensome as it would require Defendants to review an indeterminable number of documents that relate to "staffing" and "staffing vacancies".

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

**Request No. 134:** Documents sufficient to show the average length of stay for prisoners in each of the maximum custody units, including the average length of stay in Step 1, Step 2 and Step 3 of the DO 812/DI 326 step program.

**Defendants' Response:**
Defendants object to this request as irrelevant, overly broad, and outside the scope of the Stipulation and Performance Measures. Neither the Stipulation nor any of the Performance Measures impose any requirements on Defendants regarding the length of time an inmate is assigned to a maximum custody unit or how long an inmate is in Steps 1, 2, and 3 of the DO812/DI326 step program. The request is vague and ambiguous as to the phrase "Documents sufficient to show" and the terms "average" and "length of stay"; it also fails to specify a timeframe. As a result, the request fails to describe the documents sought with requisite particularity. *See* Fed. R. Civ. P. 34(b)(1)(A). The request is also unduly burdensome, as it would require Defendants to perform a manual review of an indeterminable number of documents related to an unknown number of maximum custody inmates (thousands or more) for an unspecified period of time.

Based on the foregoing, the burden of identifying and producing documents responsive to this request substantially outweighs any likely benefit of production. *See* Fed. R. Civ. P. 26(b)(1); Doc. 1185 at ¶ 29 ("The parties shall cooperate so that plaintiffs' counsel **has reasonable access to information reasonably necessary to perform their responsibilities required by this Stipulation without unduly burdening defendants**.")(emphasis added).

Regards,

Timothy J. Bojanowski

TJB/eap

cc:    Counsel of record

# Exhibit 8



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

**STATE GOVERNMENT DIVISION**
**LIABILITY MANAGEMENT SECTION**

**MARK BRNOVICH**
**ATTORNEY GENERAL**

**LUCY M. RAND**
**ASSISTANT ATTORNEY GENERAL**
DIRECT LINE: (602) 542-7683
LUCY.RAND@AZAG.GOV

August 15, 2017

**VIA ELECTRONIC MAIL ONLY:**

David C. Fathi
American Civil Liberties Union-National Prison Project
915 15th Street, NW
Washington, DC 20005-2112
dfathi@aclu.org

     Re:   **July 17, 2017 Monthly Request for Production (RFP #46)**
             *PARSONS, et al. v. RYAN, et al., USDC CV12-00601-DKD*

Dear Mr. Fathi:

     This letter addresses Plaintiffs' July 17, 2017, monthly request for documentation RFP #66:

          Documents showing the num    ber of ADC prisoners (excluding
those at p  rivate prisons ) in each of   the following m  ental h ealth
categories and, within     each category, the num      ber prescribed
psychotropic medications:

          MH-1
          MH-2
          MH-3A
          MH-3B
          MH-3C
          MH-3D
          MH-3E
          MH-4
          MH-5
          SMI

     **Defendants reitera te their objections to    similar r equests for  this information
because it is unduly burdensome.  (11/22/16     Rand LTR to Fat   hi; 10/17/16 RSP   to PLS'
09/15/16 Monthly Request for Production; 02/  15/16 RSP to PLS' 01/15/16 Monthly Request
for Production.)**

#6143724

David Fathi
*PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD
August 15, 2017
Page 2 of 3

     No single report provides this informat ion and Defendants do no t track the requested information in this ma nner. An i ndividualized review of every inmate's medical records w ould need to be performed to rep ort th e info rmation as requested. Plaintiffs are requesting Defendants create and produce d ocumentation in vio lation of the Fed. R. Civ. P. 36.

     Defendants also object because this re quest is amb iguous as to the term "psychotropic medications". Plaintiffs have not defined "psychotropic medications", and many mental health medications h ave multiple purposes medical and me ntal health purposes, and these p urposes are not reco rded in a field a llowing the specific selection o f certain da ta. Additionally, inmates prescribed more than one psychiatric medication would need to be "de-duped".

     Defendants will provide responses similar to those provided on March 22, 2016. (See Rand Letter to Fathi dated 03/22/16.)

     Documents showing t he number of ADC pr isoners (excluding those at private prisons) in  each of th e follow ing mental he alth cate gories and, within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3 A, MH-3B, MH-3C, MH -3D, MH-3E, MH-4, MH-5, SMI.

As of June 26, 2017:

MH1: 13,768

MH2: 9,875

MH3A: 1,520

MH3B: 4,648

MH3C: 1,211

MH3D: 1,147

MH3E: 1,180

MH4: 368

MH5: 91

No score: 4

Of the 33,812 inmates listed above, 1,673 are SMI.

As always, please contact me should you have questions or comments.

#6143724

1275 W. WASHINGTON, PHOENIX, ARIZONA 85007-2926 ● PHONE: 602-542-1610 ● FAX: 602-542-7670

David Fathi
***PARSONS, et al. v. RYAN, et al.*, USDC CV12-00601-DKD**
August 15, 2017
Page 3 of 3


Sincerely,


Lucy M. Rand,
Assistant Attorney General


cc: Brad      Keogh
       Richard Pratt
       Dr. Nicole Taylor
       Michael Gottfried
       Tim Bojanowski
       Dan Struck


#6143724