1
Jared Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
2
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
3
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
4
Email: jkeenan@acluaz.org
        carellano@acluaz.org
5
*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz,*
6
*Sonia Rodriguez, Christina Verduzco, Jackie Thomas,*
*Jeremy Smith, Robert Gamez, Maryanne Chisholm,*
7
*Desiree Licci, Joseph Hefner, Joshua Polson, and*
*Charlotte Wells, on behalf of themselves and all others*
8
*similarly situated*
**[ADDITIONAL COUNSEL LISTED BELOW]**
9

10
Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
11
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
12
Telephone:  (602) 274-6287
Email: adietrich@azdisabilitylaw.org
13
*Attorneys for Plaintiff Arizona Center for Disability Law*
**[ADDITIONAL COUNSEL LISTED BELOW]**
14

15
UNITED STATES DISTRICT COURT
16
DISTRICT OF ARIZONA

| | |
|---|---|
| 17  Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina 18  Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph 19  Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly 20  situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS **DECLARATION OF CORENE T. KENDRICK IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE PARAGRAPH 14 OF THE STIPULATION** |

Plaintiffs,
21
v.
22
David Shinn, Director, Arizona Department of
Corrections; and Larry Gann, Division Director,
23
Health Care Services Monitoring Bureau, Arizona
Department of Corrections, in their official
24
capacities,
25
Defendants.

26

27

28

1    I, Corene T. Kendrick, declare:

2        1.      I am an attorney licensed to practice before the courts of the State of

3    California, and admitted to this Court *pro hac vice*.  I am a staff attorney at the Prison Law

4    Office, and an attorney of record to the plaintiff class in this litigation.  If called as a

5    witness, I could and would testify competently to the facts stated herein, all of which are

6    within my personal knowledge.

7        2.      I have been counsel of record in this case since its filing in March 2012.  In

8    July 2015, Plaintiffs' counsel notified Counsel for Defendants that Defendants were using

9    a flawed methodology to measure compliance with the requirements of Paragraph 14 of

10   the Stipulation, which requires that for incarcerated people "who are not fluent in English,

11   language interpretation for healthcare encounters shall be provided by a qualified health

12   care practitioner who is proficient in the prisoner's language, or by a language line

13   interpretation service."  [*See* Doc. 1561-1 at 6-7]  Specifically, Defendants' practice was

14   to review the log of all appointments at which the language line was actually utilized,

15   which unsurprisingly resulted in findings of 100% compliance, and failed to capture the

16   universe of health care encounters when the line was ***not*** used, including when d/Deaf

17   patients had health care encounters.  [*Id.* at 6]  When Plaintiffs' counsel spot-checked

18   medical records of nine non-English speaking individuals listed in the ASPC-Florence

19   language logs, we found numerous other health care encounters for those same patients in

20   which there were no records of interpretation (and which were not recorded on the

21   language line log); depending upon which way the nine class members' health care

22   records were analyzed, Defendants' rate of compliance with Paragraph 14 was either 11%

23   (using the method of finding the entire patient record noncompliant if there is one or more

24   encounters during the period without an interpreter) or 31% (adding up all health care

25   encounters of the nine class members and calculating what percentage of those encounters

26   had interpretation).  [Doc. 1561-2 at 19-20, 62-66]  Only one of the nine class members in

27   fact had interpretation at all of his encounters.

28

3.     Rather than address our concerns, Defendants instead unilaterally decided to stop monitoring compliance with Paragraph 14 and took the position that the Stipulation's requirement "does not require the use of language interpreters to be measured or reported." [*See* Doc. 1626-1 at Ex. 2 at 8-9 (filed under seal at Doc. 1629); *see also* Doc. 1626-1 at 13 (12/1/15 Letter from Assistant Attorney General stating that "Defendants' [sic] disagree and take the position that items not expressly required to be monitored by one of the 112 performance measures are not required to be monitored.")]

4.     On October 15, 2015, I sent Defendants' Counsel a Notice of Noncompliance that, among other things, reiterated our concern that Defendants were using an invalid methodology to measure compliance with Paragraph 14, and explained how this interpretation requirement could be measured and quantified accurately. [Doc. 1561-2 at 19-20, 62-66]  Defendants' counsel asserted in response in a letter dated December 1, 2015, that "some inmates are dishonest about the languages they speak," and reiterated their position that Defendants "are not required to monitor items not contained in the performance measures."  [Doc. 1626-1 at 13]

5.     In an attempt to avoid litigation and Court involvement in the matter, the parties began a process in March 2016 to develop and revise Defendants' Monitoring Guide designed to assist ADC monitors who evaluate compliance with the Stipulation's requirements and Performance Measures.  Unfortunately, in mid-April after a series of weekly telephonic meet-and-confers, Defendants unilaterally announced that they would no longer participate in these meetings.  At that time, the parties had not yet addressed how Paragraph 14 should be monitored, and it was not in the draft of the Monitoring Guide.  [*See* Doc. 1626-1 at 77]

6.     On July 12, 2016, Plaintiffs moved to enforce the Stipulation regarding the numerous deficiencies in monitoring methodology across the board, including in monitoring compliance with Paragraph 14.  [Doc. 1625 at 11-12]  After briefing, the Court ordered Defendants to "propose a reporting procedure to demonstrate compliance" for Paragraph 14 within thirty days of its September 6, 2016 order.  [Doc. 1673 at 2, 8]

7.     In October 2016, Defendants indicated that they would add a "hard-stop" feature to eOMIS so that health care staff would have to indicate whether interpreter services were needed, and if so, how they were provided.  [Doc. 1703 at 2]  "Hard-stop" apparently meant that the mental health staff would have to enter whether interpreter services were needed before entering additional information in a specific encounter record.  Defendants indicated that they would "generate a report of all inmates who required interpreter services to be seen and the type of interpretation," and the "report will then be produced to Plaintiffs on a monthly basis."  [Doc. 1703 at 2]  Defendants ultimately added this "hard-stop" feature to eOMIS in February 2017.  [Doc. 1927 at 2]

8.     Despite their representation to the Court in 2017 that they would provide the monthly interpretation compliance report to Plaintiffs' counsel, Defendants have never done so.  And in fact, as detailed below in paragraphs 11 and 18, below, when we requested this compliance report (RFP 110), Defendants asserted that no responsive reports or documents existed.

9.     For a year and a half, Plaintiffs' counsel has asked for documents associated with monitoring of Paragraph 14, and Defendants have refused to provide them, or have asserted that these documents do not exist.

10.    On January 17, 2019, as part of our monthly request for documents to monitor compliance with the Stipulation,[1] Plaintiffs' counsel requested reports and documents related to Paragraph 14 and people who are d/Deaf.  Specifically, we requested the following documents, and that if no such documents existed, that Defendants so indicate:

     **RFP 99:** List of all class members who are deaf and their ADC numbers.

---

[1] The parties agreed in March 2015, after the Court's approval of the Stipulation, that our practice would be that Plaintiffs' counsel submit the monthly request in the middle of the month, and Defendants produce responsive documents within 30 days, at the same time the CGAR reports are supposed to be ready on the 15th of each month. Defendants more often than not do not comply with the agreed-upon 30-day production schedule.

**RFP 100:**  List of all class members whose primary form of communication is American Sign Language (ASL) or another sign language and their ADC numbers.

**RFP 101:**  All documents regarding provision of sign language interpretation during medical, dental, and mental health encounters at all ASPCs, including (1) policies, procedures, and orders regarding the use of sign language interpreters at such encounters; (2) contract(s) for in-person and video remote interpretation; (3) location of computers used for video remote interpretation; and (4) log of use of sign language interpretation for the past three years.

11.    On February 14, 2019, we requested the following reports and documents related to Defendants' compliance with Paragraph 14, and again for each request, asked that if there were no responsive documents, that Defendants so indicate:

**RFP 104:**  List of all qualified health care practitioners who are proficient in American Sign Language, and, for each, (1) all documentation establishing proficiency, and (2) work schedule(s) and location(s).

**RFP 105:**  List of all qualified health care practitioners who are proficient in any non-English language (other than American Sign Language), and, for each, (1) all documentation establishing proficiency, and (2) work schedule(s) and location(s).

**RFP 106:**  All HNRs and grievances in which a class member requested an interpreter for a healthcare encounter and the responses to the HNRs and grievances since January 1, 2018.

**RFP 107:**  All Form 108-1s for all deaf people who were in ADC custody at any time since January 1, 2017.[2]

**RFP 108:**  List of all class members who are not fluent in English and their ADC numbers and primary language.

---

[2] Section 5.3.3 of Department Order 108:  Americans with Disabilities Act Compliance (May 9, 2014), makes reference to a provider or Nursing Supervisor completing a "Functional Assessment, Form 108-1," but it is not clear whether this form contains information regarding necessary accommodations for effective communication, including sign language interpretation.  We have not seen the form in the electronic medical record of deaf class members.

**RFP 109:** All documents regarding provision of language interpretation during healthcare encounters at all ASPCs, including policies, procedures, and orders regarding assessment of language fluency and the use of interpreters at such encounters.

**RFP 110:** All documents related to Defendants' monitoring of compliance with Paragraph 14 of the Stipulation at all ASPCs, including instructions to monitoring staff and compliance reports.

**RFP 111:** All ADA requests for sign language interpreters during healthcare encounters submitted by a class member or another person on behalf of a class member and the responses to the ADA requests since January 1, 2018.

12.    Attached hereto as **Exhibit 1** is a true and correct copy of a letter from Richard M. Valenti, Counsel for Defendants, addressed to me, dated March 6, 2019.

13.    With regard to ***RFP 99*** ("List of all class members who are deaf and their ADC numbers"), he produced a list of class members classified as "Deaf nonspeaking, not elsewhere classified." [Ex. 1 at 6, citing to ADCM1561791]   After receiving this document, I reviewed it and found that it was woefully incomplete, as it failed to list several d/Deaf class members with whom my office and co-counsel from the Arizona Center for Disability Law had been communicating.

14.    In his March 6, 2019 letter, in addition to asserting boilerplate objections, Mr. Valenti asserts that there are no responsive documents to ***RFP 100*** ("List of all class members whose primary form of communication is American Sign Language (ASL) or another sign language and their ADC numbers"), and subparts (3) and (4) of ***RFP 101***. [*Id.* at 6-7]   With regard to ***RFP 101***, subpart (1) ("policies, procedures, and orders regarding the use of sign language interpreters at such encounters"), he indicated that Department Order 108 (Americans With Disabilities Act Compliance) was the only responsive document, and for RFP 101, subpart (2) ("contract(s) for in-person and video remote interpretation"), he asserted that Corizon's national contract with Language Line included American Sign Language.  [*Id.* at 7]

-5-

15.     On March 6, 2019, shortly after receiving Mr. Valenti's letter, I had a previously scheduled telephonic meet-and-confer with Timothy Bojanowski, counsel for Defendants, regarding their ongoing failure to produce documents.  Attached hereto as **Exhibit 2** is a true and correct copy of a letter that I sent Mr. Bojanowski on March 7, 2019, memorializing our discussion.  With regard to *RFP 99*, we discussed that Corizon used more than one diagnosis code for people who are deaf / hard of hearing.  My letter provided Defendants with additional ICD-10 codes commonly used in audiology, so that they could provide an updated list by March 13, 2019.[3]  [Ex. 2 at 2]  With regard to *RFP 101 (2)*, we requested a copy of the Corizon/Language Line contract to confirm that it included American Sign Language.  [*Id.*]

16.     On March 13, 2019, Plaintiffs' counsel submitted another request for documents related to Paragraph 14:

> **RFP 112:** All billing documents from Language Line to Corizon for interpreter services rendered at all ASPCs from January 1, 2018 to the present.

17.     Attached hereto as **Exhibit 3** is a letter from Mr. Valenti, addressed to me, dated March 20, 2019.  He provided an updated list responsive to *RFP 99* with his letter.  [Ex. 3 at 2, citing to ADCM1564103-107]  In addition to boilerplate objections, he asserted that no responsive lists existed in response to *RFP 104* ("List of all qualified health care practitioners who are proficient in American Sign Language, and, for each, (1) all documentation establishing proficiency, and (2) work schedule(s) and location(s)"); *RFP 105* ("List of all qualified health care practitioners who are proficient in any non-English language (other than American Sign Language), and, for each, (1) all documentation establishing proficiency, and (2) work schedule(s) and location(s)"); and

---

[3] ICD-10 stands for International Classification of Diseases, 10th Revision, and is provided by the Centers for Medicare and Medicaid Services and the National Center for Health Statistics, for medical coding and reporting in the United States.  *See generally* U.S. Centers for Disease Control & Prevention, National Center for Health Statistics, *Int'l Classification of Diseases-Tenth Revision, Clinical Modification*, at https://www.cdc.gov/nchs/icd/icd10cm.htm (last checked June 4, 2020).

1   **RFP 108** ("List of all class members who are not fluent in English and their ADC

2   numbers and primary language"). [*Id*. at 3-4, 5]

3       18.    Mr. Valenti also asserted that there were no responsive documents to

4   **RFP 110** ("All documents related to Defendants' monitoring of compliance with

5   Paragraph 14 of the Stipulation at all ASPCs, including instructions to monitoring staff

6   and compliance reports"), which related to the monthly report that Defendants had

7   represented to the Court would be used to monitor compliance and provided monthly to

8   Plaintiffs' counsel (*see* ¶ 7 above). [Ex. 3 at 6]  He simply asserted boilerplate objections

9   to **RFP 106** ("All HNRs and grievances in which a class member requested an interpreter

10  for a healthcare encounter and the responses to the HNRs and grievances since January 1,

11  2018"); **RFP 107** ("All Form 108-1s for all deaf people who were in ADC custody at any

12  time since January 1, 2017"); and **RFP 111** ("All ADA requests for sign language

13  interpreters during healthcare encounters submitted by a class member or another person

14  on behalf of a class member and the responses to the ADA requests since January 1,

15  2018"). [*Id.* at 4-5, 7]

16      19.    Attached hereto as **Exhibit 4** is a letter from Mr. Valenti to me, dated

17  April 19, 2019.  With regard to **RFP 101**, Mr. Valenti stated that Corizon would not

18  provide the Language Line contract, and with regard to **RFP 112**, they would not provide

19  any interpreter billing documents. [*Id*. at 1]  Mr. Valenti confirmed that Corizon did not

20  have any responsive documents to **RFP 104** and **RFP 105**.

21      I declare under penalty of perjury that the foregoing is true and correct.

22      Executed June 8, 2020, in San Francisco, California.

23                              s/ Corene T. Kendrick
24                          Corene T. Kendrick

-7-

| | | |
|---|---|---|
| 1 | **ADDITIONAL COUNSEL:** | Donald Specter (Cal. 83925)* |
| | | Alison Hardy (Cal. 135966)* |
| 2 | | Sara Norman (Cal. 189536)* |
| | | Corene Kendrick (Cal. 226642)* |
| 3 | | Rita K. Lomio (Cal. 254501)* |
| | | **PRISON LAW OFFICE** |
| 4 | | 1917 Fifth Street |
| | | Berkeley, California 94710 |
| 5 | | Telephone:  (510) 280-2621 |
| | | Email:    dspecter@prisonlaw.com |
| 6 | | ahardy@prisonlaw.com |
| | | snorman@prisonlaw.com |
| 7 | | ckendrick@prisonlaw.com |
| | | rlomio@prisonlaw.com |
| 8 | | |
| | | *Admitted *pro hac vice* |
| 9 | | |
| | | David C. Fathi (Wash. 24893)* |
| 10 | | Amy Fettig (D.C. 484883)** |
| | | Eunice Hyunhye Cho (Wash. 53711)* |
| 11 | | Maria V. Morris (Cal. 223903)* |
| | | **ACLU NATIONAL PRISON** |
| 12 | | **PROJECT** |
| | | 915 15th Street N.W., 7th Floor |
| 13 | | Washington, D.C. 20005 |
| | | Telephone:  (202) 548-6603 |
| 14 | | Email:    dfathi@aclu.org |
| | | afettig@aclu.org |
| 15 | | echo@aclu.org |
| | | mmorris@aclu.org |
| 16 | | |
| | | *Admitted *pro hac vice*.  Not admitted |
| 17 | | in DC; practice limited to federal |
| | | courts. |
| 18 | | **Admitted *pro hac vice* |
| 19 | | Daniel C. Barr (Bar No. 010149) |
| | | Amelia M. Gerlicher (Bar No. 023966) |
| 20 | | John H. Gray (Bar No. 028107) |
| | | **PERKINS COIE LLP** |
| 21 | | 2901 N. Central Avenue, Suite 2000 |
| | | Phoenix, Arizona 85012 |
| 22 | | Telephone:  (602) 351-8000 |
| | | Email:    dbarr@perkinscoie.com |
| 23 | | agerlicher@perkinscoie.com |
| | | jhgray@perkinscoie.com |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF
ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    jkeenan@acluaz.org
              carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR
DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:
    rdalyrooney@azdisabilitylaw.org
        jrico@azdisabilitylaw.org
        mabela@azdisabilitylaw.org

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR
DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    adietrich@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on June 12, 2020, I electronically transmitted the above

3 document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4 Notice of Electronic Filing to the following CM/ECF registrants:

5

6                          Michael E. Gottfried
                               Lucy M. Rand
7                   Assistant Arizona Attorneys General
                         Michael.Gottfried@azag.gov
8                          Lucy.Rand@azag.gov

9                          Daniel P. Struck
                               Rachel Love
10                        Timothy J. Bojanowski
                            Nicholas D. Acedo
11                          Ashlee B. Hesman
                               Jacob B. Lee
12                           Timothy M. Ray
               STRUCK LOVE BOJANOWSKI & ACEDO, PLC
13                        dstruck@strucklove.com
                           rlove@strucklove.com
14                     tbojanowski@strucklove.com
                          nacedo@strucklove.com
15                        ahesman@strucklove.com
                           jlee@strucklove.com
16                          tray@strucklove.com

17                    *Attorneys for Defendants*

18

19                              s/ D. Freouf

20

21

22

23

24

25

26

27

28

-10-