**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| David Shinn, et al., | |
| Defendants. | |

Pursuant to the parties' Stipulation, "Plaintiffs' counsel and their experts shall have reasonable access to the institutions, staff, contractors, prisoners and documents necessary to properly evaluate whether Defendants are complying with the performance measures and other provisions of this Stipulation." (Doc. 1185 at 12). That provision allows Plaintiffs to pursue information and materials during the remedial phase of this action. The parties recently filed a Statement of Discovery Dispute outlining their disagreements regarding Defendants' response to seven requests for production of documents (RFP). (Doc. 3613). The Court will address each request and will require Defendants to respond to RFPs 66, 74, 122, 133, 134, and 138.

    **1. RFP 66 – The number of class members in each mental health category and within each category, the number prescribed psychotropic medications: MH-1, MH-2, MH-3A, MH-3B, MH-3C, MH-3D, MH-3E, MH-4, MH-5, and SMI.**

Upon preparation of the parties' joint submission, Defendants agreed to produce documents responsive to this request. If not already disclosed, the Court will require that

the documents be produced within seven days of this Order. This portion of the dispute, however, should not have been presented to the Court. In the future, if one side abandons its position in a dispute only after the other side prepares a discovery dispute submission, the party forced to prepare the dispute will be entitled to its fees in preparing to present or defend the abandoned dispute.

### 2. RFP 74 – Any planned or implemented changes in policy governing suicide or other mental health watches.

As to this request, Defendants maintain that no responsive documents exist and point to existing ADC policies, specifically Director's Instructions 357 and 366. Plaintiffs, however, describe a September 1, 2019 memorandum titled "MH [Mental Health] Watches and ISO [Isolation] Assignments" that was observed during the October 17-18, 2019 Yuma Complex tour. Plaintiffs requested that a photograph be taken of the memorandum, but it was not produced with the other tour photographs. The memorandum was eventually produced by Defendants, but they maintain it contained an error and did not reflect a change in policy. Plaintiffs also aver that Warden Hetmer reported a transition from periodic watches to "constant watches" at the Dakota Unit, reflecting a modification of the policy governing mental health watches.

Defendants do not explain the obvious discrepancy between their categorical denial of any policy changes and the existence of modifications to existing policies. One possible explanation is that Defendants believe only system-wide amendments to policies are responsive to Plaintiffs' request. The Court does not view Plaintiffs' request so narrowly and the adaptation of policies even at single locations must be disclosed. The Yuma Complex Warden plainly modified DI 357 to meet the complex's needs. Those types of adjustments must be disclosed to Plaintiffs and any policy modifications or adaptations must be disclosed within seven days of this Order.

### 3. RFP 116 – All mental health staff whose licensure status is incorrectly listed in eOMIS, and the nature of the error.

Certain Performance Measures require that a licensed mental health care provider

- 2 -

perform specific functions.  For example, PM 73 requires that all MH-3 minor prisoners be seen by a licensed mental health clinician a minimum of every thirty days.  If the health care provider's licensure status is incorrect in the medical records, it is more difficult to assess compliance.  Plaintiffs therefore seek a comprehensive list of mental health staff whose licensure status may not be properly identified in eOMIS, the electronic medical records system.  Defendants object to the request because it would require them to create a document and not simply disclose one.  Further, Defendants point out that Plaintiffs have a current roster of mental health staff and their licensure status, and so they can identify whether any errors exist.

It is unclear why Plaintiffs are not able to verify licensure status with the information they possess or whether licensure status errors are replete within prisoners' medical records that a complete review is necessary to document them.  Plaintiffs have not established that Defendants should be required to prepare the document they seek nor have Plaintiffs established Defendant Pratt should be required to affirm under oath that ADC does not verify licensure status.

4. **RFP 122 – Documents and communications regarding the unavailability of custody staff at any ASPC and the impact upon medication administration and/or health care services.**
5. **RFP 133 – Documents regarding staffing vacancies in the maximum custody units.**

Compliance with any of the Stipulation's performance measures, both health care and maximum custody, requires the support of and coordination with corrections officers to facilitate the movement of prisoners.  Critical staffing shortages, therefore, impede Defendants' ability to perform these obligations under the Stipulation.  Plaintiffs seek documents addressing the impact critical staffing shortages are having on Defendants' performance.

Defendants object to production of any documents responsive to this request because the Stipulation does not mandate specific staffing levels.  Defendants are correct but it would be impossible for Defendants to achieve compliance with the Stipulation

without necessary corrections officers. Plaintiffs correctly observe that the severe staffing shortages have a cascading effect on the provision of out-of-cell time as required by the maximum custody performance measures and the administration of medication and escorting prisoners to health care appointments as required by the health care performance measures. Defendants must produce documents responsive to this request. The parties are required to confer within seven days to identify search terms to identify responsive documents.

> **6. RFP 134 – Documents sufficient to show average length of stay for prisoners in maximum custody units, including the average length of stay in Step 1, Step 2, and Step 3 under DI 326/DO 812.**
> **7. RFP 138 – A list of all prisoners held in maximum custody units at the Florence, Eyman, and Lewis complexes including date classified to maximum custody and current step level under DI 326/DO 802.**

The maximum custody performance measures mandate minimum levels of out-of-cell time for prisoners. The Stipulation also requires Defendants "implement DI 326 and the Step Program Matrix for all eligible prisoners." (Doc. 1185 at 9). DI 326 and the "Step Program Matrix" refer to a program that allowed prisoners in maximum custody to move between "Steps" whereby if the prisoner engaged in positive behavior, he would advance through the "Steps" and receive additional recreational opportunities. Thus, prisoners could earn extra out-of-cell time and access to additional privileges with good behavior. DI 326 was later reenacted as DO 812, which remains in effect today. Under DO 812, prisoners must remain at a particular Step for a minimum amount of time but there is no maximum time specified. Plaintiffs seek documents showing the length of time prisoners remain at each Step, obviously to ascertain whether prisoners are progressing through the Step Matrix.

Defendants contend the Stipulation does not have any parameters on the length of time a prisoner must remain in each Step, thus, Plaintiffs' request is irrelevant. Further, Defendants maintain that producing the requested material would require a manual review of all maximum custody files to synthesize the information.

Theoretically, Defendants' position may have merit. But a review of DO 812's

- 4 -

requirements reflects that prisoners are eligible to move between Steps every 30 days. If the data reflects that prisoners remain stagnant within the Step Matrix for extended periods of time, the Court may be forced to decide whether that stagnation is contrary to the Stipulation. In essence, if prisoners are not actually able to advance through the Steps, Defendants may be in violation of the Stipulation. But the Court need not resolve this issue now. Because Plaintiffs are entitled to monitor compliance, they need to review the data regarding Step progression. Defendants claim this would require that they manually compile straightforward data about maximum custody prisoners, which would be troubling. Plainly how it is possible for Defendants to comply to ensure prisoners are moved through the Step Matrix unless the data is readily available? Defendants will be required to produce the requested information within seven days.

Accordingly,

**IT IS ORDERED** Defendants are required to respond to RFPs 66, 74, 122, 133, 134, and 138 as detailed herein within seven days of this Order. Defendants are not required to respond to RFP 116.

Dated this 19th day of June, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge