1 | Jared G. Keenan (Bar No. 027068)
2 | Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3 | 3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
4 | Email: jkeenan@acluaz.org
         carellano@acluaz.org

5

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6 | *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
*Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
7 | *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
*behalf of themselves and all others similarly situated*

8 | **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

9

10 | Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
11 | 5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
12 | Email: adietrich@azdisabilitylaw.org

13 | *Attorneys for Plaintiff Arizona Center for Disability Law*

14 | **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

15 | UNITED STATES DISTRICT COURT

16 | DISTRICT OF ARIZONA

17 | Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | No. CV 12-00601-PHX-ROS

**PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDERS AND FOR FURTHER RELIEF (DOC. 3495, 3518)**

21 | Plaintiffs,

22 | v.

23 | David Shinn, Director, Arizona Department of Corrections; and Larry Gann, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities,

26 | Defendants.

27

28

LEGAL23774493.1

**INTRODUCTION**

This Court has established minimum durations for mental health encounters required by the Stipulation.  Doc. 3518 at 3, 4.  The Court also provided a carefully circumscribed exception:  a visit that was shorter than the required minimum duration could nevertheless be counted as compliant with the Stipulation, if it was evaluated by a mental health clinician and found to be "meaningful and appropriate in the context of the patient's overall care." *Id*. at 4.

Defendants have abused this exception to such an extent as to completely nullify the Court's order.  An analysis of Defendants' CGAR reports since the Court's order shows that the vast majority of mental health encounters reviewed by Defendants' auditors fall short of the required duration, with some as brief as one minute.  And *every single one* of these fleeting encounters has nevertheless been found to be "meaningful and appropriate" and counted as compliant with the Stipulation, leading Defendants to repeatedly award themselves compliance scores of 100%.  *See infra* at 3-9.

The Court has observed that "[h]istory has shown that Defendants appear to believe they are empowered to modify the Stipulation to accommodate their own preferences . . . Defendants' view of interpreting the Stipulation as they wish is plainly unreasonable." Doc. 3495 at 5 n. 1.  It is clear that Defendants take the same flippant approach to the orders of this Court.  Accordingly, Plaintiffs now move for an order enforcing the Court's orders and granting further relief to enforce the Stipulation.

**FACTUAL BACKGROUND**

**I.      Drive-by mental health encounters and Dr. Stern's recommendations**

In the spring of 2019, Plaintiffs discovered that Defendants were conducting very short mental health encounters – many as brief as two minutes.  *See* Doc. 3255-1 at 4-6 (Florence); *id*. at 22-24 (Phoenix); *id*. at 56-58 (Eyman); *id*. at 60-62 (Perryville); Doc. 3404-1 at 61-63 (Lewis); *id*. at 65-66 (Yuma).  Plaintiffs brought this to the attention of the Court's expert, Dr. Marc Stern.  With the assistance of Dr. Bart Abplanalp, Chief Psychologist for the Washington Department of Corrections, Dr. Stern reviewed the

1  monitoring process and mental health records and concluded that "the quality of care

2  delivered during *short visits did, in some cases, pose a significant risk of serious harm*."

3  Doc. 3379 at 33 (emphasis in original); *see also id.* at 32 n. 24 ("care delivered during many

4  of these short visits was not safe").[1]  Dr. Stern recommended a presumptive minimum

5  duration of ten minutes for watch-related PMs (PM 91, 94, and 95).  *Id*. at 33-34.  He added

6  that "I would expect encounters in the non-acute setting when chronic care is being provided

7  to generally be longer (in the range of 30-60 minutes) than those in the acute watch-related

8  setting[.]"  *Id*. at 32 n. 25.

9  **II.    The Court's orders**

10  In a February 12, 2020 order, the Court "reject[ed] the notion that a visit of *any*

11  length, no matter how short, is contemplated by these PMs."  Doc. 3495 at 8 (emphasis in

12  original).  The Court concluded "[t]he only rational reading of the Stipulation is that to be

13  'seen' requires a meaningful interaction between the prisoner and the mental health

14  professional."    *Id*. The parties were directed to submit proposals for the correct

15  interpretation of "seen."  *Id.*

16  In an order dated March 11, 2020, the Court ruled on Dr. Stern's recommendations

17  and the parties' proposals.  Doc. 3518.  For PMs 91, 94, and 95, the Court adopted Dr.

18  Stern's recommendation of a ten-minute minimum duration, and for PMs 73, 74, 76, 78,

19  and 80-90, the Court imposed a 30-minute minimum duration.  *Id*. at 3, 4.  If a mental health

20  encounter is shorter than these minima, or if the duration is not recorded, "a mental health

21  clinician shall exercise clinical judgment to determine if the [encounter] length was

22  meaningful and appropriate in the context of the patient's overall care."  *Id*. at 3 (internal

23  quotation marks omitted).[2]

---

[1] Dr. Leonel Urdaneta, who served as Corizon's Director of Psychiatry for the ADC contract from 2017 to 2019, similarly testified that it is not possible to adequately assess a patient's suicide risk in a cell-front encounter lasting five, three, or two minutes.  Doc. 3476-1 at 18:25-19:6; 69:2-13.

[2] The Court specified that "[t]he mental health clinician who evaluates these visits [must] not be the same individual who conducted the visits."  *Id.* at 4 n. 1.

## III.   Defendants' evasion of the Court's orders

### A. Defendants count *all* mental health encounters, regardless of length, as "meaningful and appropriate"

The Court gave Defendants a loophole, and they have enthusiastically exploited it to nullify the Court's orders.  Review of Defendants' CGAR reports since the Court's order shows that the large majority of encounters fall short of the Court's presumptive minimum durations.   And *every single one* of these short encounters is nevertheless counted as compliant.

### April 2020, PM 80, Perryville[3]

Because PM 80 is not watch-related, the presumptive minimum duration is 30 minutes.  Fifty-nine out of 69 of the encounters sampled were shorter than 30 minutes, including one encounter that was *one minute* in duration, giving Defendants a presumptive compliance score of **14%.**  Declaration of Jessica Carns ("Carns Decl."), Exh. 5.  However, Defendants counted all but one of these fleeting encounters as compliant, and gave themselves a score of **98.55**%.  *Id.*, Exh. 6.[4]

| Perryville - PM 80 - April 2020 | | |
|---|---|---|
| Patient's ADC number | Date of encounter | Duration of encounter (minutes) |
| | 4/9/2020 | 15 |
| | 4/16/2020 | 35 |
| | 4/22/2020 | 10 |
| | 4/17/2020 | 10 |
| | 4/2/2020 | 30 |
| | 4/17/2020 | 15 |
| | 4/30/2020 | 10 |
| | 4/15/2020 | 35 |

[3] PM 80 requires that "MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician."  Doc. 1185-1 at 13.  A person who is classified as MH-3A is defined by ADC as a patient who is "in acute distress who may require substantial intervention in order to remain stable."  *Id.* at 4.  A "mental health clinician" is defined as a psychologist or psychology associate ("mental health clinician who has a master's or doctoral-level degree in a mental health discipline, but is not a licensed psychologist").  *Id.* at 4, 5.

[4] One encounter was counted as noncompliant not because of its duration but because it did not meet the 30-day requirement of PM 80.  *Id.*

| | | Date | Value |
|---|---|---|---|
| | ▓ | 4/14/2020 | 30 |
| | | 4/2/2020 | 20 |
| | | 4/1/2020 | 15 |
| | | 4/30/2020 | 8 |
| | | 4/2/2020 | 15 |
| | | 4/14/2020 | 13 |
| | | 4/6/2020 | 8 |
| | | 4/15/2020 | 10 |
| | | 4/30/2020 | 10 |
| | | 4/16/2020 | 11 |
| | | 4/10/2020 | 8 |
| | | 4/7/2020 | 5 |
| | | 4/15/2020 | 5 |
| | | 4/8/2020 | 7 |
| | | 4/20/2020 | 2 |
| | | 4/9/2020 | 1 |
| | | 4/7/2020 | 30 |
| | | 4/23/2020 | 15 |
| | | 4/30/2020 | 23 |
| | | 4/29/2020 | 4 |
| | | 3/23/2020 | 25 |
| | | 4/21/2020 | 3 |
| | | 4/28/2020 | 11 |
| | | 4/17/2020 | 7 |
| | | 4/8/2020 | 8 |
| | | 4/29/2020 | 10 |
| | | 4/14/2020 | 11 |
| | | 4/30/2020 | 15 |
| | | 4/27/2020 | 60 |
| | | 4/8/2020 | 15 |
| | | 4/13/2020 | 18 |
| | | 4/6/2020 | 15 |
| | | 4/15/2020 | 10 |
| | | 4/29/2020 | 17 |
| | | 4/27/2020 | 10 |
| | | 4/9/2020 | 15 |
| | | 4/15/2020 | 5 |
| | | 4/27/2020 | 10 |
| | | 4/20/2020 | 6 |
| | | 4/27/2020 | 12 |
| | | 4/16/2020 | 11 |
| | | 4/23/2020 | 8 |
| | | 4/16/2020 | 10 |
| | | 4/7/2020 | 7 |

| | | Date | Duration |
|---|---|---|---|
| | | 4/20/2020 | 15 |
| | | 4/7/2020 | 15 |
| | | 4/30/2020 | 7 |
| | | 4/9/2020 | 14 |
| | | 4/23/2020 | 11 |
| | | 4/27/2020 | 20 |
| | | 4/8/2020 | 30 |
| | | 4/9/2020 | 10 |
| | | 4/29/2020 | 25 |
| | | 4/8/2020 | 35 |
| | | 4/27/2020 | 15 |
| | | 4/8/2020 | 30 |
| | | 4/27/2020 | 30 |
| | | 4/15/2020 | 22 |
| | | 4/29/2020 | 28 |
| | | 4/10/2020 | 25 |
| | | 4/23/2020 | 5 |

**May 2020, PM 80, Yuma**

Thirty-seven out of the 50 encounters sampled were shorter than 30 minutes, giving Defendants a presumptive score of **26%**.  Carns Decl., Exh. 3.  However, Defendants counted every one of these brief encounters as compliant and awarded themselves a score of **100%**.  *Id.,* Exh. 4.

| Yuma - PM 80 - May 2020 | | |
|---|---|---|
| Patient's ADC number | Date of encounter | Duration of encounter (minutes) |
| | 5/19/2020 | 21 |
| | 5/15/2020 | 44 |
| | 5/28/2020 | 25 |
| | 5/12/2020 | 11 |
| | 5/8/2020 | 30 |
| | 5/6/2020 | 20 |
| | 5/1/2020 | 15 |
| | 5/22/2020 | 17 |
| | 5/21/2020 | 8 |
| | 5/6/2020 | 21 |
| | 5/5/2020 | 30 |
| | 5/5/2020 | 40 |
| | 5/19/2020 | 30 |
| | 5/27/2020 | 15 |
| | 5/12/2020 | 30 |

| | | | |
|---|---|---|---|
| | | 5/21/2020 | 30 |
| | | 5/27/2020 | 20 |
| | | 5/18/2020 | 40 |
| | | 5/28/2020 | 20 |
| | | 5/26/2020 | 30 |
| | | 5/19/2020 | 46 |
| | | 5/7/2020 | 4 |
| | | 5/18/2020 | 24 |
| | | 5/28/2020 | 10 |
| | | 5/5/2020 | 15 |
| | | 5/29/2020 | 19 |
| | | 5/11/2020 | 24 |
| | | 5/6/2020 | 5 |
| | | 5/8/2020 | 7 |
| | | 5/28/2020 | 25 |
| | | 5/21/2020 | 23 |
| | | 5/7/2020 | 20 |
| | | 5/7/2020 | 15 |
| | | 5/15/2020 | 28 |
| | | 5/14/2020 | 35 |
| | | 5/20/2020 | 19 |
| | | 5/7/2020 | 6 |
| | | 5/11/2020 | 20 |
| | | 5/7/2020 | 39 |
| | | 5/27/2020 | 4 |
| | | 5/26/2020 | 18 |
| | | 5/21/2020 | 14 |
| | | 5/28/2020 | 19 |
| | | 5/31/2020 | 15 |
| | | 5/12/2020 | 3 |
| | | 5/26/2020 | 14 |
| | | 5/20/2020 | 15 |
| | | 5/19/2020 | 14 |
| | | 5/19/2020 | 46 |
| | | 5/26/2020 | 12 |

**April 2020, PM 85, Florence[5]**

---

[5] PM 85 requires that "MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications." Doc. 1185-1 at 14.  Patients classified as MH-3D "have been recently taken off of psychotropic medications and require follow up to ensure stability over time." *Id*. at 5.  A mental health provider is a psychiatrist or psychiatric nurse practitioner, in other words, someone who is trained in and licensed to prescribe psychotropic medications. *Id*. at 4.

Because PM 85 is not watch-related, the presumptive minimum duration is 30 minutes.  Eight out of ten of the encounters sampled did not satisfy this minimum (six were shorter than 30 minutes and two had no duration recorded), giving Defendants a presumptive compliance score of **20%.**  Carns Decl., Exh. 7.  However, Defendants counted all eight of these encounters as compliant, and gave themselves a score of **100%.**  *Id*., Exh. 8.

| Florence - PM 85 - April 2020 | | |
|---|---|---|
| Patient's ADC number | Date of encounter | Duration of encounter (minutes) |
| | 3/18/2020 | no duration noted |
| | 4/9/2020 | 20 |
| | 4/14/2020 | 20 |
| | 4/3/2020 | 43 |
| | 4/15/2020 | 9 |
| | 4/7/2020 | 27 |
| | 4/3/2020 | 21 |
| | 4/22/2020 | 20 |
| | 3/24/2020 | no duration noted |
| | 4/1/2020 | 30 |

**April 2020, PM 94, Phoenix[6]**

PM 94 is a watch-related encounter; the presumptive minimum duration is therefore 10 minutes.  Twenty-six of the 62 encounters sampled were shorter than 10 minutes, including several that lasted one minute, giving Defendants a presumptive score of **58%.**  Carns Decl., Exh. 1.  But once again, Defendants counted every one of these brief encounters as compliant and awarded themselves a score of **100%.**  *Id*., Exh. 2.

| Phoenix - PM 94 - April 2020 | | |
|---|---|---|
| Patient's ADC number | Date of encounter | Duration of encounter (minutes) |
| | 4/11/2020 | 10 |
| | 4/12/2020 | 12 |
| | 4/13/2020 | 10 |
| | 4/29/2020 | 3 |
| | 4/30/2020 | 10 |

---

[6] PM 94 requires that "All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse." Doc. 1185-1 at 14.

| | | |
|---|---|---|
| ▮ | 4/28/2020 | 10 |
| | 4/29/2020 | 8 |
| | 4/30/2020 | 13 |
| ▮ | 4/5/2020 | 1 |
| | 4/6/2020 | 12 |
| | 4/7/2020 | 10 |
| | 4/11/2020 | 12 |
| | 4/12/2020 | 3 |
| | 4/13/2020 | 10 |
| ▮ | 4/18/2020 | 3 |
| | 4/19/2020 | 3 |
| | 4/20/2020 | 19 |
| | 4/21/2020 | 9 |
| | 4/22/2020 | 5 |
| | 4/23/2020 | 3 |
| | 4/24/2020 | 3 |
| | 4/25/2020 | 3 |
| | 4/26/2020 | 3 |
| | 4/27/2020 | 3 |
| | 4/28/2020 | 5 |
| | 4/29/2020 | 10 |
| ▮ | 4/18/2020 | 4 |
| | 4/19/2020 | 14 |
| | 4/20/2020 | 12 |
| ▮ | 4/22/2020 | 10 |
| | 4/23/2020 | 16 |
| ▮ | 4/1/2020 | 10 |
| | 4/2/2020 | 12 |
| ▮ | 4/20/2020 | 11 |
| | 4/21/2020 | 10 |
| | 4/22/2020 | 10 |
| | 4/23/2020 | 6 |
| ▮ | 4/26/2020 | 3 |
| | 4/27/2020 | 10 |
| ▮ | 4/11/2020 | 3 |
| | 4/12/2020 | 11 |
| | 4/13/2020 | 10 |
| ▮ | 4/11/2020 | 5 |
| | 4/12/2020 | 3 |
| | 4/13/2020 | 35 |
| | 4/14/2020 | 10 |
| | 4/15/2020 | 20 |
| | 4/16/2020 | 3 |
| | 4/17/2020 | 3 |

| | | 4/18/2020 | 15 |
|---|---|---|---|
| | | 4/19/2020 | 6 |
| | | 4/20/2020 | 20 |
| | ■ | 4/25/2020 | 3 |
| | | 4/26/2020 | 10 |
| | | 4/27/2020 | 10 |
| | | 4/28/2020 | 10 |
| | ■ | 4/3/2020 | 1 |
| | | 4/4/2020 | 1 |
| | | 4/5/2020 | 13 |
| | | 4/6/2020 | 10 |
| | | 4/7/2020 | 15 |
| | | 4/8/2020 | 15 |

\* \* \*

In short, it is abundantly clear that, contrary to the Court's order, Defendants' evaluators are not "exercis[ing] clinical judgment" to determine whether an individual encounter is "meaningful and appropriate." Doc. 3518 at 3. Rather, they are simply rubber-stamping *every single encounter*, no matter how brief and superficial, as compliant, leading Defendants to repeatedly award themselves compliance scores of 100%.

Dr. Pablo Stewart, a board-certified psychiatrist with a specialty in clinical and forensic psychiatry, has reviewed these fleeting encounters and concluded that "Some of these encounters were shockingly deficient and created a serious risk of harm to the patient." Declaration of Pablo Stewart, M.D., ¶ 12; *see*, *e.g.*, *id.*, ¶ 12.c. (one-minute interview "is an example of a completely inadequate mental health visit and left the patient at risk for serious harm"); *id.*, ¶ 12.d. ("This was a three-minute meeting that was as vacuous as the encounters described above"); *id.*, ¶ 12.e. ("This [five-minute] clinical visit is completely inadequate and places the 70-year-old patient at serious risk of harm").

## B. Unqualified evaluators

Compliance with the Court's March 11 order requires the evaluator to examine patient encounters with doctoral-level psychologists, psychiatric nurse practitioners, and psychiatrists, and "determine whether the length was meaningful and appropriate in the context of the patient's overall care." Doc. 3518 at 3. Many of the encounters with

psychiatric nurse practitioners and psychiatrists will involve the prescription, adjustment, or discontinuation of psychotropic medications.[7]

The two persons ADC has designated to make this "meaningful and appropriate" determination are master's-level clinicians.  *See* Fathi Decl., Exh. 3 (April 22, 2020 letter from Ashlee Hesman to David Fathi, attaching the resumes of Kenya McCray and Chy A. M. Porter).  As explained by Dr. Stewart, these master's level clinicians are not qualified to make the determinations ordered by the Court:

> The Arizona Department of Corrections houses some of the most severely and intractably mentally ill persons in the state.  In my numerous visits to multiple ADC facilities in connection with this litigation since 2013, I have encountered some of the most desperately sick patients I have seen in my 38-year career as a psychiatrist.  Determining whether these patients are receiving care that is meaningful and appropriate requires a mental health professional with substantial training and experience.
>
> * * *
>
> Ms. McCray is licensed as an Independent Substance Abuse Counselor; Ms. Porter as a Licensed Professional Counselor. Based on the resumes that have been provided, neither has a doctoral-level degree, a medical degree, or a license to prescribe medication. Accordingly, they are not qualified to evaluate patient encounters with doctoral-level psychologists, or with psychiatric nurse practitioners or psychiatrists.
>
> * * *
>
> Instead, this determination should be made by a psychiatrist. A psychiatrist is the most highly trained member of the mental health team. Only a psychiatrist is able to properly assess the psychotherapeutic, medical and psychotropic medication needs of a given patient.

Declaration of Pablo Stewart, M.D., ¶¶ 6, 8-9.  Accordingly, the Court should order that the determination whether a mental health encounter that falls below the required minimum duration was nevertheless "meaningful and appropriate in the context of the patient's overall care" must be made by a psychiatrist.[8]

---

[7] *See, e.g.,* PM 81 ("MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider"); PM 85 ("MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications"); PM 90 ("MH-5 prisoners who are prescribed psychotropic medications, shall be seen by a mental health provider a minimum of every 30 days").  The Stipulation defines "mental health provider" as "Psychiatrist [or] Psychiatry Nurse Practitioner."  Doc. 1185-1 at 4.

[8] The Court's previous order requires this determination to be made by a "mental health clinician."  Doc. 3518 at 3.  The Stipulation defines "mental health clinician" as psychologist or psychology associate ("mental health clinician who has a master's or

**C. No instructions to evaluators and no documentation of their analysis of encounters**

In response to Plaintiffs' inquiry, Defendants confirmed that the evaluators are provided no instruction whatsoever as to how they are to determine whether a given encounter was "meaningful and appropriate in the context of the patient's overall care." Fathi Decl. Exh. 8 at 2 (August 7, 2020 letter from Tim Ray to Corene Kendrick, at 2 (Request 141)).[9] There is also no requirement that the evaluators document their determinations in any way. *Id.* (Request 142). As Dr. Stewart explains, this is a recipe for arbitrary and meaningless results:

> The lack of qualifications of the evaluators is compounded by the fact that they are provided no written instruction regarding *how* to determine whether a given mental health encounter is "meaningful and appropriate in the context of the patient's overall care." May 12, 2020 letter from Ashlee Hesman to David Fathi. That phrase is not self-explanatory; in the absence of any instructions, there are any number of ways a person might try to make such a determination, such as only focusing on a patient's risk factors of self-harm, harm to others, or being gravely disabled. Different evaluators will almost certainly use different, idiosyncratic methods. Defendants' decision not to provide the evaluators with any guidance ensures that these determinations will be made arbitrarily and will be essentially meaningless.

> An additional problem is that the evaluators are apparently not required to document or explain their conclusion in any way. A requirement that a clinician document her conclusion, and the reasons she reached that conclusion, is essential for multiple reasons. First, it ensures that the clinician did, in fact, make the required determination. Second, it is essential for accountability and quality control, because it shows that the clinician has considered appropriate factors and criteria. Absent a requirement to document the reasons for her conclusion, a clinician could simply conclude that *all* mental health encounters, regardless of duration, are "meaningful and appropriate," without engaging in any individualized analysis of those encounters.

---

doctoral-level degree in a mental health discipline, but is not a licensed psychologist"). Doc. 1185-1 at 4, 5. As set forth *infra* at 12-13, the Court has the power to grant additional relief in light of Defendants' evasion of its prior orders. The Court should accordingly order that this determination be made by a psychiatrist, for the reasons set forth in Dr. Stewart's declaration. In the alternative, if the Court adheres to its prior order that the determination be made by a "mental health clinician," it should order that that clinician be a doctoral-level psychologist. *See* Stewart Decl., ¶ 9.

[9] When Plaintiffs protested the absence of written instructions, Defendants invited Plaintiffs to submit proposed instructions. When Plaintiffs did so, Defendants rejected their proposal out of hand, without making any counter-proposal. *See* Fathi decl., Exh. 4 at 3; Exh. 5 at 2; Exh. 6 at 1-2; Exh. 7 at 1-2.

1   Stewart Decl., ¶¶ 10-11.  As set forth above, that is exactly what has occurred.  *All*
2   encounters that fall below the required minimum duration are found to be "meaningful and
3   appropriate," with no documentation provided as to how the evaluator reached that
4   conclusion, and *every one* of these encounters is counted as compliant with the Stipulation.

5   **D. No additional mental health staff**

6   Before the Court's order, mental health encounters were routinely as short as five,
7   three, or two minutes.  *See supra* at 1-2.  If Defendants had any intention of complying in
8   good faith with the Court's order setting presumptive minimum durations of ten minutes
9   for watch-related PMs and thirty minutes for non-watch-related PMs, they would have
10  recognized an obvious need for additional mental health staff.  However, consistent with
11  Defendants' wholesale evasion of the Court's order, as of May 12, 2020, Defendants
12  confirmed that "mental health staffing has not been increased."  Fathi Decl. Exh. 5 at 2.

13  **ARGUMENT**

14  **The Court should grant further relief to enforce the Stipulation**

15  The Court has previously "reject[ed] the notion that a visit of *any* length, no matter
16  how short, is contemplated by these PMs."  Doc. 3495 at 8 (emphasis in original).  However,
17  as demonstrated above, Defendants continue to count *all* visits, however fleeting, as
18  compliant.  Therefore, the Court must order further relief to enforce the Stipulation.

19  The Court has ample power to do so.  "Federal courts are not reduced to approving
20  consent decrees and hoping for compliance. Once entered, a consent decree may be
21  enforced."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004); *see also Brown v.*
22  *Plata*, 563 U.S. 493, 542 (2011) ("[a] court that invokes equity's power to remedy a
23  constitutional violation by an injunction mandating systemic changes to an institution has
24  the continuing duty and responsibility to assess the efficacy and consequences of its
25  order").   If any doubt remained as to the Court's power to enforce the Stipulation, the
26  Stipulation itself provides that "the Court shall retain the power to enforce this
27  Stipulation through all remedies provided by law," with two exceptions not relevant
28  here.  Doc. 1185 at ¶ 36.  The Ninth Circuit has twice confirmed that this language
    means what it says; the Court's enforcement

1    power is plenary. *Parsons v. Ryan*, 912 F.3d 486, 497-99 (9th Cir. 2018) ("Parsons

2    II"), *cert. denied sub nom. Ryan v. Jensen,* 140 S. Ct. 142, 205 L. Ed. 2d 42 (2019); *Parsons*

3    *v. Ryan*, 949 F.3d 443, 454-55 (9th Cir. 2020) ("Parsons III").

4           When a previous order has failed to bring about compliance, the Court has the power

5    – and indeed the duty – to enter further relief. *Armstrong v. Brown*, 768 F.3d 975, 986 (9th

6    Cir. 2014) ("Because the district court has previously tried to correct the deficiencies in

7    California's prisons' compliance with the [Americans with Disabilities Act] and

8    [Rehabilitation Act] through less intrusive means, and those attempts have failed, relief

9    prescribing more specific mechanisms of compliance is appropriate").  In *Parsons II*, the

10   Ninth Circuit affirmed this Court's order requiring Defendants to "use all available

11   community healthcare services" to ensure compliance with certain Performance Measures

12   in the Stipulation, after Defendants' own remedial plans had failed to bring about

13   compliance.  *Parsons II*, 912 F.3d at 499 (noting that the Court entered the order only

14   "[a]fter giving Defendants an opportunity to remedy their non-compliance under

15   their own remediation plan").  This Court therefore has abundant authority to order

16   further relief to ensure that Defendants' abuse of the exception this Court has provided

17   does not swallow the rule established by the Court.

## CONCLUSION

19          This Court should not countenance Defendants' brazen evasion of its orders.  For the

20   reasons set forth above and in the Declaration of Pablo Stewart, M.D., the Court should

21   grant the following relief:

22          1.  Require that the determination "whether the [encounter] length was meaningful

23              and appropriate in the context of the patient's overall care" be made by a

24              psychiatrist.

25          2.  Require that Defendants provide the following written instructions to the

26              evaluators on how to make, and document, this determination.

27                  "The evaluator shall review in their entirety the eOMIS records for the
                    patient's last five mental health encounters (not including the weekly
28                  rounds required by PM 93), as well as the eOMIS records for any ICS

1             involving the patient in the previous six months. The evaluator shall
also review the patient's currently operative mental health treatment
2             plan. The evaluator shall then document in writing his or her reasons
for determining that the encounter length was, or was not, meaningful
3             and appropriate in the context of the patient's overall care."

4        *See* Stewart decl., ¶ 13.

5      3.  Require that Defendants report monthly to the Court the percentage of mental

6           health encounters sampled for the CGARs that fell short of the minimum

7           durations established by the Court, and of those encounters, the percentage that

8           were nevertheless counted as compliant with the Stipulation.

9   A proposed order is filed herewith.

10
      Dated:  August 14, 2020                  **ACLU NATIONAL PRISON PROJECT**
11

12                                 By:    s/ David C. Fathi
                                      David C. Fathi (Wash. 24893)*
13                                       Eunice Hyunhye Cho (Wash. 53711)*
                                      Maria V. Morris (Cal. 223903)*
14                                       915 15th Street N.W., 7th Floor
                                      Washington, D.C. 20005
15                                       Telephone:  (202) 548-6603
                                      Email:     dfathi@aclu.org
16                                             echo@aclu.org
                                            mmorris@aclu.org
17
                                    *Admitted *pro hac vice*.  Not admitted
18                                        in DC; practice limited to federal
                                       courts.
19
                                    Jared G. Keenan (Bar No. 027068)
20                                     Casey Arellano (Bar No. 031242)
                                    **ACLU FOUNDATION OF**
21                                     **ARIZONA**
                                    3707 North 7th Street, Suite 235
22                                     Phoenix, Arizona 85013
                                    Telephone:  (602) 650-1854
23                                     Email:     jkeenan@acluaz.org
24                                              carellano@acluaz.org

25

26

27

28

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
           ahardy@prisonlaw.com
           snorman@prisonlaw.com
           ckendrick@prisonlaw.com
           rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
        Asim Dietrich (Bar No. 027927)
        5025 East Washington Street, Suite 202
        Phoenix, Arizona 85034
        Telephone:  (602) 274-6287
        Email:     adietrich@azdisabilitylaw.org

        Rose A. Daly-Rooney (Bar No. 015690)
        J.J. Rico (Bar No. 021292)
        Maya Abela (Bar No. 027232)
        **ARIZONA CENTER FOR DISABILITY LAW**
        177 North Church Avenue, Suite 800
        Tucson, Arizona 85701
        Telephone:  (520) 327-9547
        Email:
           rdalyrooney@azdisabilitylaw.org
                jrico@azdisabilitylaw.org
                mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on August 14, 2020, I electronically transmitted the above

3

document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4

Notice of Electronic Filing to the following CM/ECF registrants:

5

6

Michael E. Gottfried
Lucy M. Rand

7

Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

8

9

Daniel P. Struck
Rachel Love

10

Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman

11

Jacob B. Lee
Timothy M. Ray

12

STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com

13

rlove@strucklove.com
tbojanowski@strucklove.com

14

nacedo@strucklove.com
ahesman@strucklove.com

15

jlee@strucklove.com
tray@strucklove.com

16

17

*Attorneys for Defendants*

18

19

s/ Jessica Carns

20

21

22

23

24

25

26

27

28

LEGAL23774493.1

-17-