1  Jared G. Keenan (Bar No. 027068)
   Casey Arellano (Bar No. 031242)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: jkeenan@acluaz.org
              carellano@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
   *Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
7  *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
   *behalf of themselves and all others similarly situated*

8  **[ADDITIONAL COUNSEL LISTED BELOW]**

10 Asim Dietrich (Bar No. 027927)
   **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
12 Email: adietrich@azdisabilitylaw.org

13 *Attorneys for Plaintiff Arizona Center for Disability Law*

   **[ADDITIONAL COUNSEL LISTED BELOW]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections; and Larry Gann, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **DECLARATION OF PABLO STEWART, M.D.** |

LEGAL23774493.1

I, PABLO STEWART, M.D., DECLARE:

1. I am a physician licensed to practice in California and Hawaii and a board-certified psychiatrist, with a specialty in clinical and forensic psychiatry. I have served as an expert witness and consultant in this case since 2013. My background and experience as relevant to my expert testimony in this proceeding have previously been provided to the Court (see Doc. 1538-1 at 3-6) and an updated *curriculum vitae* was recently filed at Doc. 3626-1.

2. I have previously provided a declaration to the Court regarding Defendants' practice of providing mental health encounters that are as brief as two minutes. See Doc. 3511.

3. I have been asked by Plaintiffs' counsel to express an opinion regarding Defendants' implementation of the Court's order of March 11, 2020 (Doc. 3518), as it relates to the duration of mental health encounters.

4. I have reviewed the following documents:

   a. The Court's orders of February 12, 2020 (Doc. 3495) and March 11, 2020 (Doc. 3518).

   b. Letters from Plaintiffs' counsel to Defendants' counsel regarding very brief mental health encounters (redacted versions of these letters are filed at Doc. 3255-1 at pp. 4-6, 22-24, 56-58, and 60-62, and Doc. 3404-1 at pp. 61-66).

   c. Report of Marc Stern, M.D., M.P.H. (Doc. 3379).

   d. Deposition of Leonel Urdaneta, M.D., December 10, 2019 (Doc. 3476-1).

   e. Defendants' CGAR reports for the following Performance Measures (PMs): (1) PM 85, April 2020, Florence; (2) PM 80, April 2020, Perryville; (3) PM 80, May 2020, Yuma; (4) PM 94, April 2020, Phoenix.

   f. Spreadsheets showing the duration of mental health encounters reflected in each of the following CGAR reports: (1) PM 85, April 2020, Florence; (2) PM 80, April 2020, Perryville; (3) PM 80, May 2020, Yuma; (4) PM 94, April 2020, Phoenix.

LEGAL23774493.1

g. Entries in patients' ADC medical records reflecting the mental health encounters listed in these spreadsheets (see 4.f. above).

h. March 30, 2020 letter from David Fathi to Tim Bojanowski.

i. April 14, 2020 letter from Ashlee Hesman to David Fathi.

j. April 22, 2020 letter from Ashlee Hesman to David Fathi (attaching resumes).

k. April 27, 2020 letter from David Fathi to Ashlee Hesman.

l. May 12, 2020 letter from Ashlee Hesman to David Fathi.

m. June 1, 2020 letter from David Fathi to Ashlee Hesman.

n. June 18, 2020 letter from Ashlee Hesman to David Fathi

o. August 7, 2020 letter from Tim Ray to Corene Kendrick.

5. In its March 11, 2020 order, the Court established a presumptive minimum length of ten minutes for mental health encounters pursuant to what it called "watch-related PMs:" PMs 91, 94, and 95. The Court further established a presumptive minimum length of thirty minutes for mental health encounters pursuant to what it called "non-watch-related PMs:" PMs 73, 74, 76, 78, and 80-90. The Court stated that if the encounter was shorter than the prescribed minimum, or if no duration was recorded in the patient's record, the encounter must "be evaluated by a mental health clinician to determine whether the length was meaningful and appropriate in the context of the patient's overall care." Doc. 3518 at 4.

6. There are a number of significant problems with Defendants' response to the Court's order. The first involve the qualifications of the persons designated by Defendants to make the evaluation required by the Court. The Arizona Department of Corrections houses some of the most severely and intractably mentally ill persons in the state. In my numerous visits to multiple ADC facilities in connection with this litigation since 2013, I have encountered some of the most desperately sick patients I have seen in my 38-year career as a psychiatrist. Determining whether these patients are receiving care that is meaningful and appropriate requires a mental health professional with substantial training and experience.

7. Compliance with the Court's March 11 order requires the evaluator to examine patient encounters with doctoral-level psychologists, psychiatric nurse practitioners, and psychiatrists, and "determine whether the length was meaningful and appropriate in the context of the patient's overall care." Many of the encounters with psychiatric nurse practitioners and psychiatrists will involve the prescription, adjustment, or discontinuation of psychotropic medications. See, for example, PM 81 ("MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider"); PM 85 ("MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications"); PM 90 ("MH-5 prisoners who are prescribed psychotropic medications, shall be seen by a mental health provider a minimum of every 30 days").  (The Stipulation defines "mental health provider" as "Psychiatrist [or] Psychiatry Nurse Practitioner").

8. The two persons ADC has designated to make this "meaningful and appropriate" determination are master's-level clinicians.  April 22, 2020 letter from Ashlee Hesman to David Fathi, attaching the resumes of Kenya McCray and Chy A. M. Porter.  Ms. McCray is licensed as an Independent Substance Abuse Counselor; Ms. Porter as a Licensed Professional Counselor. Based on the resumes that have been provided, neither has a doctoral-level degree, a medical degree, or a license to prescribe medication. Accordingly, they are not qualified to evaluate patient encounters with doctoral-level psychologists, or with psychiatric nurse practitioners or psychiatrists.  These non-physician evaluators are not able to assess the efficacy of a particular medication regimen so their evaluations whether a given encounter is "meaningful and appropriate" would be extremely incomplete.

9. Instead, this determination should be made by a psychiatrist. A psychiatrist is the most highly trained member of the mental health team. Only a psychiatrist is able to properly assess the psychotherapeutic, medical and psychotropic medication needs of a given patient.  However, I recognize that the Court has ordered that this determination be made by a "mental health clinician." Doc. 3518 at 4.  The Stipulation defines "Mental

Health Clinician" as "Psychologist [or] Psychology Associate."  If the Court determines that its previous order does not permit this determination to be made by a psychiatrist, it should, at a minimum, be made by a doctoral-level psychologist, although this is still inadequate.

10. The lack of qualifications of the evaluators is compounded by the fact that they are provided no written instruction regarding *how* to determine whether a given mental health encounter is "meaningful and appropriate in the context of the patient's overall care." August 7, 2020 letter from Tim Ray to Corene Kendrick.  That phrase is not self-explanatory; in the absence of any instructions, there are any number of ways a person might try to make such a determination, such as only focusing on a patient's risk factors of self-harm, harm to others, or being gravely disabled. Different evaluators will almost certainly use different, idiosyncratic methods.  Defendants' decision not to provide the evaluators with any guidance ensures that these determinations will be made arbitrarily and will be essentially meaningless.

11. An additional problem is that the evaluators are apparently not required to document or explain their conclusion in any way.  A requirement that a clinician document her conclusion, and the reasons she reached that conclusion, is essential for multiple reasons.  First, it ensures that the clinician did, in fact, make the required determination.  Second, it is essential for accountability and quality control, because it shows that the clinician has considered appropriate factors and criteria.  Absent a requirement to document the reasons for her conclusion, a clinician could simply conclude that *all* mental health encounters, regardless of duration, are "meaningful and appropriate," without engaging in any individualized analysis of those encounters.

12. In fact, that appears to be what has happened here. Of the mental health encounters I reviewed, every single encounter that fell below the Court's minimum durations was found to be "meaningful and appropriate."  Some of these encounters were shockingly deficient and created a serious risk of harm to the patient:

a. ▮▮▮▮ (PM 80, Perryville, April 2020 CGAR, April 7, 2020): This was a five-minute meeting. The documentation was extremely terse with a majority of it being computer generated. The patient was currently being prescribed two psychotropic medications, Fluoxetine and Clonidine. No mention was ever made about these medications. There was also no mention about the patient's depression and anxiety. The plan was "continue medications." No mention of psychotherapy, psycho-education, or any other types of therapeutic interventions.

b. ▮▮▮▮ (PM 80, Perryville, April 2020 CGAR, April 20, 2020): This was a two-minute meeting due to the patient allegedly not wanting to stay longer. The documentation regarding the visit was extremely terse with no meaningful interactions occurring. Certainly, no counseling occurred. Again, most of the documentation was computer generated.

c. ▮▮▮▮ (PM 80, Perryville, April 2020 CGAR, April 9, 2020): This was a one-minute interview because the patient allegedly refused a longer session. During this one-minute interview a computer-generated mental status exam was completed. The assessment portion of this 1-minute interview stated "IM denies SI/HI/command AVH [suicidal ideation/homicidal ideation/command auditory-visual hallucinations]. IM guarded but was observed pleasant with other staff and generally stable." The patient is actually prescribed an antipsychotic, an antidepressant and a mood stabilizing medication. No mention was made about the three psychotropic medications she was prescribed. The fact that the patient was noted to be "guarded" could be due to paranoia, an insidious onset of a serious mood episode or the fact that she actually was psychotic. This is an example of a completely inadequate mental health visit and left the patient at risk for serious harm.  If a patient refuses to talk, or wishes to terminate the interview after one or two minutes, it is not

acceptable for the clinician to simply walk away.  The clinician should make repeated efforts to engage with the patient and encourage her to talk.  And even if the patient refuses to talk, the clinician is still required to assess her, including evaluating the patient's risk for self-harm or suicide.  This can be accomplished in a number of ways, including observing the patient's hygiene; the cleanliness of the cell; and the patient's demeanor, such as whether she is displaying overt signs of mental illness such as posturing or responding to internal stimuli.  These essential steps cannot be performed in a visit lasting one or two minutes.

d. ███ (PM 80, Perryville, April 2020 CGAR, April 21, 2020): This was a three-minute meeting that was as vacuous as the encounters described above. Of note, this patient was prescribed the antipsychotic Geodon. This medication requires that it be administered with food in order to ensure proper absorption. This is not an esoteric fact, but rather a commonly known issue surrounding the use of Geodon in correctional settings. No questions were brought up about the patient taking this medication with food. This fact alone places the patient at serious risk of harm.

e. ███ (PM 80, Perryville, April 2020 CGAR, April 23, 2020): This was a five-minute interview. Of note, the patient is a 70-year-old female, housed in the infirmary, with a stated complaint of "patient is experiencing psychiatric destabilization to the extent **she is unable to respond" (emphasis added.)** The clinician documented that the patient was communicating with non-verbal responses. Even with the patient unable to give verbal responses, the clinician somehow divined that the patient was not experiencing psychotic symptoms or suicidal/homicidal ideations. The patient was also being prescribed the antipsychotic Olanzapine 15mg every morning. She was also receiving opiate pain relievers. No mention was made of the possibility that

these very powerful medications could be contributing to the patient's inability to respond. This clinical visit is completely inadequate and places the 70-year-old patient at serious risk of harm. Of note, this patient should be seen regularly by a psychiatrist, preferably a neuro-psychiatrist.

f. ▆▆▆ (PM 80, Yuma, May 2020 CGAR, May 7, 2020): This was a four-minute interview. The patient suffers from a mood and psychotic disorder for which he is prescribed an antipsychotic and an antidepressant. The overall visit was very superficial given the severity of the patient's psychiatric issues. The writer stated that the patient denies S/H ideations, hallucinations, issues with depression and anxiety, and issues with eating and sleeping. No inquiry was made about the patient's medications including efficacy, side effects or compliance. The superficial nature of this encounter places the patient at risk of harm, especially medication-related problems.

g. ▆▆▆ (PM 80, Yuma, May 2020 CGAR, May 12, 2020): This was a three-minute encounter with a patient who is diagnosed with Bipolar Disorder and is prescribed an antidepressant and antipsychotic. The clinician documented the patient denies S/H ideation and hallucinations. A computer-generated mental status exam was completed even though the patient "refused services." No documentation about the status of the patient's Bipolar Disorder was present. Also, there was no mention about the medications. It is possible that the refusal to be seen reflects undertreated Bipolar Disorder. Lastly, the stated plan was "will be seen W/I 30 days or HNR request." This is an extremely inadequate clinical encounter.

h. ▆▆▆ (PM 94, Phoenix, April 2020 CGAR, April 12, 2020): This is a three-minute encounter with a patient on suicide watch who is diagnosed with PTSD and unspecified Schizophrenia spectrum and other psychotic disorder. The patient is also prescribed high doses of a mood stabilizer and an

antipsychotic. The clinician only documented that the patient "denied DTS/DTO/AVH;" was "not reacting to any internal stimuli;" and was "eating ok." A computer-generated mental status exam was not completed due to lack of time. No mention of the patient's medication was found in this encounter. This is another example of a very inadequate clinical encounter which places the patient at risk of harm.

13. In conclusion, it is my opinion that the Court should:

1. Require that the determination whether "whether the [encounter] length was meaningful and appropriate in the context of the patient's overall care" be made by a psychiatrist or, at minimum, by a doctoral-level psychologist.

2. Require that Defendants provide written instructions to the evaluators on how to make this determination. The Court should further require that an evaluator who concludes that an encounter that fell short of the Court's minimum durations was nevertheless "meaningful and appropriate" must document that conclusion, and the reasons for that conclusion, in writing. I recommend instructions substantially similar to the following:

> "The evaluator shall review in their entirety the eOMIS records for the patient's last five mental health encounters (not including the weekly rounds required by PM 93), as well as the eOMIS records for any ICS involving the patient in the previous six months. The evaluator shall also review the patient's currently operative mental health treatment plan. The evaluator shall then document in writing his or her reasons for determining that the encounter length was, or was not, meaningful and appropriate in the context of the patient's overall care."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 14th day of August, 2020, at Honolulu, Hawaii.

_____
PABLO STEWART, M.D.

**ADDITIONAL COUNSEL:**

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene T. Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         ckendrick@prisonlaw.com
         rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Amy Fettig (D.C. 484883)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@aclu.org
         afettig@aclu.org
         echo@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.
**Admitted *pro hac vice*

Jared Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   jkeenan@acluaz.org
         carellano@acluaz.org

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         jhgray@perkinscoie.com

| | |
|---|---|
| 1 | *Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated* |
| 2 | |
| 3 | |
| 4 | |
| 5 | Rose A. Daly-Rooney (Bar No. 015690)<br>J.J. Rico (Bar No. 021292)<br>Maya Abela (Bar No. 027232) |
| 6 | **ARIZONA CENTER FOR DISABILITY LAW**<br>177 North Church Avenue, Suite 800<br>Tucson, Arizona 85701 |
| 7 | |
| 8 | Telephone:  (520) 327-9547<br>Email:    rdalyrooney@azdisabilitylaw.org |
| 9 |                jrico@azdisabilitylaw.org<br>               mabela@azdisabilitylaw.org |
| 10 | |
| 11 | Asim Dietrich (Bar No. 027927)<br>5025 East Washington St., Ste. 202 |
| 12 | Phoenix, Arizona 85034<br>Telephone: (602) 274-6287 |
| 13 | Email:    adietrich@azdisabilitylaw.com |
| 14 | *Attorneys for Arizona Center for Disability Law* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Richard M. Valenti
Jamie D. Guzman
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
rvalenti@strucklove.com
jguzman@strucklove.com

*Attorneys for Defendants*

        s/ Jessica Carns