**Index of Exhibits to the Declaration of David C. Fathi**

| Exhibit # | Description |
|---|---|
| 1 | March 30, 2020 letter from David Fathi to Tim Bojanowski |
| 2 | April 14, 2020 letter from Ashlee Hesman to David Fathi |
| 3 | April 22, 2020 letter from Ashlee Hesman to David Fathi, attaching resumes |
| 4 | April 27, 2020 letter from David Fathi to Ashlee Hesman |
| 5 | May 12, 2020 letter from Ashlee Hesman to David Fathi |
| 6 | June 1, 2020 letter from David Fathi to Ashlee Hesman |
| 7 | June 18, 2020 letter from Ashlee Hesman to David Fathi |
| 8 | August 7, 2020 letter from Tim Ray to Corene Kendrick |

# EXHIBIT 1

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



March 30, 2020

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

   Re: *Parsons v. Shinn*
     **Order of March 11, 2020 (Doc. 3518)**

Dear Tim:

In its order of March 11, 2020 (Doc. 3518), the Court addressed the Performance Measures requiring that a patient be "seen" by mental health staff -- both the "watch-related PMs" (91, 94, and 95) and the "non-watch-related PMs" (73, 74, 76, 78, and 80-90). *Id*. at 2. The Court set forth requirements both for future monitoring of these PMs, and for any re-auditing of past scores.

In light of the Court's order, Plaintiffs have the following questions:

**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
*DIRECTOR*
*ATTORNEY AT LAW\**

*\*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS*

1. The Court's order established a minimum encounter duration of ten minutes for the watch-related PMs and 30 minutes for the non-watch-related PMs. *Id*. at 3, 4. In light of the fact that in the past these encounters have been as brief as two minutes (*id*. at 2), please state whether Defendants plan to increase mental health staffing to enable them to comply with these requirements. If so, please state the number of FTEs of each mental health staff category (*e.g.*, psychologists, psych associates) Defendants plan to add; at which institutions these additional staff will be deployed; and when these additional staff will assume their duties.

2. The Court's order requires that, for any encounter shorter than ten minutes for the watch-related PMs and shorter than 30 minutes for the non-watch-related PMs, the encounter shall "be evaluated by a mental health clinician to determine whether the length was meaningful and appropriate in the context of the patient's overall care. The mental health clinician who evaluates these visits [must] not be the same individual who conducted the visits." Doc. 3518 at 4 & n. 1 (internal quotation marks omitted). The same requirement applies to any re-auditing of past results for these PMs. *Id*. at 2, 5.

Please identify the individuals who, both for any re-auditing and for future monitoring, will be evaluating these encounters "to determine whether the length was meaningful and appropriate in the context of the patient's overall care." Please also produce these persons' resumes or similar documentation showing their

qualifications to make this determination, and produce the written instructions that will be provided to these persons regarding how this determination is to be made.


Very truly yours,

David Fathi

cc:     All counsel


**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**

# EXHIBIT 2



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

April 14, 2020

***VIA EMAIL ONLY***
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

Re:   ***Parsons v. Shinn***
      **March 11, 2020 Order (Dkt. 3518)**

Dear David:

We are in receipt of your March 30, 2020 correspondence regarding the Court's March 11, 2020 Order.  The Stipulation defines Mental Health Clinician as a Psychologist or Psychology Associate.  (Dkt. 1185-1 at 4.)  Any individual who evaluates an encounter to determine whether the length was meaningful and appropriate in the contact of the patient's overall care, as described in the Court's Order (Dkt. 3518 at 2–5), will meet this definition.  We will provide you with these individuals' names and resumes.

The March 13, 2020 Monitor Guide, which was provided to Plaintiffs on March 25, 2020, reflects the methodology changes in the Court's March 11, 2020 Order.  As such, you are already in possession of the "written instructions" you request in your correspondence.  With respect to your request for staffing information, we refer you to the staffing reports Defendants produce each month.

Sincerely,

*Ashlee Hesman*

Ashlee B. Hesman

ABF/eap
cc:   Counsel of record

# EXHIBIT 3

 STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

April 22, 2020

**<u>VIA EMAIL ONLY</u>**
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

      **Re:**    ***Parsons v. Shinn***
               **March 11, 2020 Order (Dkt. 3518)**

Dear David:

      As requested, attached are the resumes for the two mental health clinicians who evaluate whether the length of an encounter was meaningful and appropriate in the context of the patient's overall care, as described and ordered by the Court in its March 11, 2020 Order. (Dkt. 3518 at 3–5.)

                     Sincerely,

                     *Ashlee Hesman*

                     Ashlee B. Hesman

ABF/eap

Attachments as stated

cc:      Counsel of record

KENYA McCRAY

████████████████████
██████████████  ██  ██████████
███████████  ███████████
████████████████

**SKILLS**
Licensed  Independent Substance Abuse Counselor in the state of Arizona
Excellent clinical judgment.
Over 15 years of mental health experience with RBHAs and correctional
systems.
Proven ability to develop extensive professional relationships with
local behavioral health providers.
Reputation as a dependable and accountable employee.
Experience as a strong and effective leader and supervisor in a high-
stress work environment.
Skilled and experienced at positive interactions with supervisors,
supervisees, patients, clients and management staff.
Experienced in clinical practice and program development with SMI,
children, SA and GMH populations.
Extensive knowledge of RBHA policies and practice.

**EDUCATION**
B.A., May 1999, Psychology, University of Maryland.

M.Ed., December 2000, Counseling, Northern Arizona University.

**WORK EXPERIENCE**
*December 2016 to present. Mental Health Auditor.  Arizona Department of
Corrections.  Complete monthly audits of 900-1000 inmate mental health
records to ensure compliance with current orders from the courts. Report
monthly findings to the courts, ACLU, and medical contractors.  Provide
feedback to medical contractors on monthly findings to increase
compliance.*

*April 2016 to December 2016. Network Coordinator.  Mercy Maricopa.
Developed and implemented new process for Single Case Agreements (SCA)
to include outpatient behavioral health SCAs, higher level behavioral
health SCAs and physical health SCAs.  Completed desktop procedures for
each type of SCA and wrote policy for SCAs.  Staffed SCA requests with
medical director for approval or denial of services and coordinated the
NOA process for SCAs.  Served as the point of contact for all SCAs
including but not limited to contracting issues, claims issues, and
utilization management issues.*

*August 2013 to April 2016. Psychology Associate.  Corizon Health
Services.  Assessed, identified and followed up with mental health*
problems of inmates at the Arizona Department of Corrections- Yuma
Complex as determined by review of intake screenings, medical requests,
and nursing/provider referrals.  Provided case management, individual
counseling, group therapy, and group therapy. Assessed, evaluated,
diagnosed, select approach to be used for individual treatment program

and maintain client record as well as other data.  Ensured all documentation supported diagnoses and services provided and developed individualized treatment plans to reflect each client's needs, goals, and services. Completed risk assessments on inmates on suicide and mental health watches. Provided crisis interventions/debriefing with inmates.

*January 2011 to August 2013. Treatment Services Director.  Mountain Health & Wellness.*  Provided clinical supervision to all clinical staff. Directly supervise 17 staff and ensure clinical integrity over area of responsibility.  Ensure the complete, timely, thorough, and quality documentation including; intake, assessment and evaluation of client needs, diagnostic impression, development and implementation of treatment plan, discharge planning and summary and follow-up.  Review and sign all clinical documentation requiring a clinical supervisor's signature.  Managed budget and financial performance of the site including tracking of daily encounters and production for clinical and operational staff per contractual obligations.  Developed and submitted weekly, monthly and quarterly reports (contract deliverables) to corporate office for submission to the client.  Directed and delegated special projects and activities of supervised staff.  Additionally responsible for maintaining a caseload of 40 clients as a Managing Clinician.

*July 2010 to December 2010. Managing Clinician.  Mountain Health & Wellness.*  Assessed, evaluated, diagnosed, select approaches to be used for individual treatment program and maintained client records as well as other data.  Provided therapy to individuals from all age groups in the community and assist with maintaining their level of functioning. Coordinated care with families/significant others, PCP, CPS, JPO/APO, etc.  Ensured all documentation supported diagnoses and services provided and developed individualized treatment plans to reflect each client's needs, goals, and services.

*July 2007 to June 2010. Mental Health Counselor.  Correctional Healthcare Management.*  Assessed and identified mental health problems of inmates at the Yuma County Adult Detention Center as determined by review of intake screenings, medical requests, and nursing referrals. Assisted psychiatric providers in review of psychiatric services with inmates. Completed suicide risk assessments on inmates on suicide watch and initial mental health screenings for inmates on behavior watch. Provided crisis interventions/debriefing with inmates and staff if needed.

*October 2006 to July 2007. Behavioral Health Case Manager.  Bridgeway Health Solutions.*  Authorized and reviewed utilization of mental health and substance abuse services provided in inpatient, outpatient, and intermediate care settings. Served as a resource person for and liaison between behavioral health providers, facilities, and involved families. Monitored quality of care as well as facilitated care with Clinical Liaisons and Child & Family Teams.  Assisted with discharge planning and

care coordination, arranging transportation, and providing member assistance.  Identified opportunities of system and network enhancement, supported the recovery philosophy of least restrictive settings and greater consumer autonomy, and participated in special utilization projects.

**July 2005 to October 2006. Rapid Response Specialist.  Cenpatico Behavioral Health of Arizona.**  Ensured provider agency rapid response intakes occur in accordance with guidelines.  Troubleshooting coordinate care issues and facilitate resolution with the crisis staff, intake staff, emergency room staff, police, fire, and emergency medical technicians.  Processed and tracked referrals to ensure responses are timely. Participated in cross functional teams and quality improvement initiatives to problem solve system issues.  Completed quarterly and annual clinical/administrative provider audits. Provided formal training to staff and agencies as necessary.

**March 2004 to July 2005.  Clinician.  The EXCEL group.**  Ensured that all program activities and interventions are clinically appropriate, provided clinical support and guidance to programs and staff, monitored program acuity, coordinated interagency referrals and services. Administered cognitive, achievement, personality, behavioral and projective tests when requested under the supervision of a licensed psychologist.  Was responsible for clinical assessment, treatment planning, and all documentation for own caseload of SMI adults and that of those supervised.  Completed clinical assessment for intakes; provided individual group and family counseling to assigned populations; and provided supervision to subordinate clinical staff as assigned.

**December 2003 to May 2004.  Contract Therapist.  Arizona Baptist Children's Services.**  Completed evaluations of adolescents with Juvenile Probation and provided individual and family therapy to address their issues which included aggressiveness, substance abuse, and sex offenses. Developed monthly reports of progress to Juvenile Probation Department and staffed cases with team when needed.

**August 2003 to December 2003.  Child Protective Services Specialist II. State of Arizona, Department for Children, Youth, and Families.** Received extensive training on child abuse and domestic violence identification and interventions.  Received training on Arizona laws pertaining to child abuse, domestic violence, and discipline.

**March 2001 to June 2003.  Children's Case Manager.  The Excel Group.** Acquired extensive knowledge of community programs and resources. Monitored customers' progress/lack of progress in treatment services. Arranged and facilitated residential treatment center placements for severely emotionally disturbed children.  Contributed with multiple agencies including Child Protective Services, Juvenile Probation, Department of Developmental Disabilities, and Yuma area School Districts.  Formulated treatment plans with specific goals, objectives, and interventions to aid in child's treatment.  Assisted in the

exploration of less restrictive treatment environments for customers. Identified providers and arranged for providers to render behavioral health services and assist customers with the coordination of clinical and support services, such as psychiatric and medical appointments, counseling and other treatment programs.  Provided support in seeking assistance from necessary social service agencies.

**January 2000 to March 2001.  Child & Family Therapist.  Arizona's Children Association.**  Counseled individuals and families with psychological or emotional problems, such as stress, substance abuse, or family situations.  Used evaluative techniques, and developed and implemented therapeutic treatment plans for each client.  Interviewed clients to obtain information concerning medical history and background information to be used in a psychosocial assessment.  Observed clients to detect indications of abnormal physical or mental behavior. Administered psychological tests, personality inventories, and questionnaires, to identify behavioral or personality traits and high risk indicators, and recorded results.  Reviewed results of tests to evaluate client needs.  Planed and administered therapeutic treatment, such as behavior modification and stress management therapy, using Family Systems Therapy and Rational Emotive Behavioral Therapy, to assist patients in controlling disorders and other problems.  Discussed progress toward goals with client, such as controlling weight, stress, or substance abuse.  Consulted with medical doctors and other specialists concerning treatment plan and amended plans as directed. Referred clients to supportive services to supplement treatment and counseling.

# Chy A.M. Porter, MA, LPC, NCC

## PROFESSIONAL SUMMARY

Current abilities to review utilization aspects and clinical components of mental health charts for the management of member benefits. Ability to provide clinical supervision to those attempting to get licensed as a licensed professional counselor. Current teaching professional to allow for personal and professional growth opportunities. Experienced counselor in the case management and treatment of adults and adolescents in mental health and correctional facilities. Able to facilitate individual and group therapy.  Expertise in providing counseling services to populations dealing with substance abuse, mental health, and co-occurring disorders. Proven ability to assist clients through the change process.

## EDUCATION

Certificate in Professional Substance Abuse Counseling, Rio Salado College, 2008
M. A. in Clinical Psychology, Argosy University, 2006
B. A. in Psychology, Minor in Spanish, Northern Arizona University, 2004
B. S. in Criminal Justice, Northern Arizona University, 2004
Universidad de Granada, 2003

## QUALIFICATIONS & CERTIFICATIONS

Approved Supervisor on Supervisor Registry in State of Oregon since September 2017
Approved Supervisor for State of Arizona since July 2015
Licensed Professional Counselor in State of Oregon #C2649 - May 2011 - January 2020 <Inactive as of Jan 2018>
Licensed Professional Counselor in State of Arizona #LPC-13572 - October 2010 - September 2020
    Licensed Associate Counselor in State of Arizona #LAC-12569 - February 2007 - September 2010
National Certified Counselor - 2009-2025
Cardio Pulmonary Resuscitation Certified
Crisis Prevention Institute and Crisis to Care Nonviolent Crisis Intervention Training
Dialectic Behavior Therapy Skills Trainer and Individual Counselor
Certified Substitute Teacher in State of Arizona - 2004-2016

## PROFESSIONAL EXPERIENCE

**Program Evaluation Specialist, Mental Health Auditor**
 - Arizona Department of Corrections                                                                Sept 2018 – Present
Ensure excellence and accuracy in compliance with court stipulations regarding mental health components for the Health Services Contract Monitoring Bureau. Summarize data and provide for review. Present information to correctional staff and vendor compromising of various health staff. Recommend improvements to meet inmates' mental health needs.

- Provide clinical expertise to training department regarding suicide and assistance in online training sent to correctional professionals in the department.
- Completed community presentation regarding mental health treatment within the department (November 2019).
- Assist in multiple projects as assigned by Director of Behavioral Health Services within the department that includes restraint handling reviews, discontinuance of medications policy, gender dysphoria policy, mental health technical manual updates, and detailed compilation of data for court via written reports.

**Contracted Therapist** - Sonoran Life Solutions                                                    April 2017 – Aug 2018
Provided therapy counseling to referred clients and clinical supervision to those acquiring hours for licensure in established agency in Peoria, Arizona.

**Quality Mental Health Professional II, Quality Assurance Reviewer**
 - Jackson County Health & Human Services                                                          Nov 2014 - Feb 2017
Ensured services were performed with a high level of clinical expertise and professionalism. Ensured appropriate training of staff and made recommendations related to disciplinary and termination actions. Monitored compliance with various State and Federal rules, regulations and laws. Summarized data and prepared written and oral reports; presented information about the program, data and results to appropriate groups. Reviewed policies and procedures to ensure programs met applicable eligibility criteria. Assessed client needs; recommended and implemented program improvement on treatment approaches/modality to meet those needs.

- Provided technical assistance training to providers in the community regarding clinical state standards of documentation.
- Provided clinical supervision for those that are getting licensed as LPCs in State of Oregon (supervisees assigned in quality assurance, therapy, and probation departments).
- Developed and maintained the QA/QI audit tools, calendars, and training of new auditor based on national standards of quality assurance.
- Created mock adult audit chart for community contract providers that included paper and video presentations.

**Mental Health Specialist III** - Jackson County Health & Human Services                    Feb 2011 - Oct 2014
Provided comprehensive screening, evaluation and eligibility determination, crisis
interventions, case management services. Developed and coordinated client treatment plans and services; assessed client problems and make referrals. Provided complex and specialized individual and group counseling and therapy, education, skills training, outreach, and support to clients and families as necessary. Assisted with program planning activities, designing program services and coordinating activities with assigned staff. Provided consultation, education, information and resource advocacy to agencies in the community which come in contact with individuals.

- Provided training and leadership role on the DBT team "Still Point" program in developing and instituting change for efficiency while providing DBT treatment in agency.
- Facilitated community awareness in presentation of suicide prevention materials to other agencies and police centers.
- Assisted agency in applying and receiving National Health Service Corps site approval.
- Completed two year commitment with National Health Service Corps for student loan repayment in low-income, high mental health need area.
- Provided assistance with company software for new hires.
- Assisted in coordination of triage management for assessments.
- Provided clinical overview and signature of treatment plans for unlicensed professionals on adult team.

**Psychology Associate II** - Arizona Department of Corrections                    Aug 2008 - Jan 2011
Performed variety of technical, psychology assignments to include administration and scoring of a variety of intelligence, aptitude, interest, and personality tests to incarcerated population. Performed psychotherapy to incarcerated population that includes written diagnostic, planning, progress, and evaluations. Served as part of multi-disciplinary team in coordination of various services to facilitate change process with population. Completed psychological evaluation of new admissions to the institution. Carried out individual, group, or crisis therapy programs with residents of correctional facility under supervision of a licensed psychologist. Participated in training, attends professional staff meetings, prepares reports, and maintains clinical records.

- Facilitated and led an audit of all facility records for upcoming Mental Health re-certification for Perryville.

**Psychology Associate II** - Arizona Department of Juvenile Corrections                    Aug 2007 - Aug 2008
Provided and monitored psycho educational and counseling groups. Implemented and facilitated individual and group counseling using cognitive restructuring approaches. Wrote detailed case notes and reports as well as any additional clinical documentation on delinquent co-occurring adolescents. Created and managed individual case plans and behavioral plans. Provided emergency and crisis interventions and clinical assessments for adolescents, under supervision of a licensed psychologist.

- Developed and taught adolescent development theory, role modeling, behavior modification, substance abuse and mental health as lead trainer for Probation Officer Cadet Academy.
- Provided supervision and leadership as the clinical lead for "Seven Challenges" substance abuse program and core programming on several teams.

**Clinician III** - Terros, Inc.                    2006-2007
**Practicum Intern**                    2005-2006
Provided direct management of assigned clients and program activities, facilitated client teamwork for outpatient services, conducted individual and group therapy with mental health and substance abuse concerns as well as co-occurring disorders, participated in program evaluation procedures and professional record keeping, made appropriate referrals, under supervision of licensed professional. Conducted intake assessments and case plans.

- As part of a research team, developed criteria for intake procedures to provide more effective psychiatric services.
- Assisted and provided feedback and support in audit procedures.
- Facilitated group activities to increase community resource awareness.

## <u>RELATED EXPERIENCE</u>

Owner of Sage Therapy & Consulting, LLC                    Aug 2015 - Present
Own private business to offer counseling to clients and supervision to supervisees in the Southern Oregon and Arizona communities. Experience with auditing and practice monitoring approval from Arizona Board of Behavioral Health Examiners.

███████████████████

Part-time Faculty - University of Phoenix                    2010-Present
Taught for area of psychology, particularly health and wellness and human sexuality.

Adjunct Faculty - Rio Salado College                    2006-2010
Pool assignment for area of psychology to teach higher learning and share expertise to students.

Behavioral Health Technician - Privileged - Marc Center                                    2005-2006
Counseled and assessed intakes for seriously mentally ill clients. Provided clinical supervision to line staff.

Behavioral Health Technician - Florence Crittenton                                          2004-2005
Mentored and supervised adolescent girls to create a safe and healthy environment. Provided client care and medical supervision in a residential group home.

Behavioral Health Intake Specialist - The Alternatives Center                               2004-2004
Performed intake assessments with child and adolescent clients. Provided support and services for children and adolescents in a shelter environment.

Substitute Teacher - Glendale Unified School District                                       2004
Taught math and Spanish with Glendale high schools and supervised adolescents in the classroom setting.

Psychiatric Acute Care Unit Clerk /Practicum - The Guidance Center                          2003-2004
Assisted and interacted on a multi-disciplinary team consisting of social workers, nurses, and behavioral health technicians in a locked down psychiatric care hospital. Registered seriously mentally ill clients for comprehensive behavioral health services. Provided continual audit of charts for compliance in agency policies and procedures.

Office Manager - Northern Arizona University                                                2000-2003
Hired and trained office employees. Provided supervision for desk staff including payroll, scheduling, incorporated disciplinary actions, filing, answering phones, and customer service.

## COMMUNITY INVOLVEMENT

American Kyokushin Karate Organization                                                      2006-2011
~~Brown Belt Kyokushin Karate, Green Belt Aiki-Jujitsu~~
Practiced and trained martial arts. Assisted in extending communication to other schools, managerial responsibility for annual newsletter. Assistant teacher in charge of education, mentoring, and training of fellow students' ages young children to older adults.

Volunteer-International Friends Program                                                      2003
Worked with international exchange students, organized events, off-campus excursions, and numerous hours spent in multi-cultural exposure.

Intern -Flagstaff Police Department                                                         2001
Shadowed detectives and police officers to gain knowledge, experience, and further develop skills necessary to work in a criminal justice environment. Worked with dual-diagnosis clients in multi-cultural setting in urban and rural areas.

## COMPUTER SKILLS

Microsoft Word/Works, Excel, Access, Power Point, GroupWise, Outlook, Quickbooks,
Claimtrack, Youthbase, AIMS, ACIS, Profiler, Camtasia, eOMIS

# EXHIBIT 4

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



April 27, 2020

**BY ELECTRONIC MAIL ONLY**

Ashlee Hesman
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
ahesman@strucklove.com

   **Re:**   *Parsons v. Shinn*

Dear Ashlee:

Thank you for your letters of April 14 and 22, 2020, responding to mine of March 30.

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

My March 30 letter concerned the Court's order of March 11, 2020 (Doc. 3518), in which the Court addressed the Performance Measures requiring that a patient be "seen" by mental health staff -- both the "watch-related PMs" (91, 94, and 95) and the "non-watch-related PMs" (73, 74, 76, 78, and 80-90). *Id.* at 2. The Court set forth requirements both for future monitoring of these PMs, and for any re-auditing of past scores. My letter posed the following questions:

1. The Court's order established a minimum encounter duration of ten minutes for the watch-related PMs and 30 minutes for the non-watch-related PMs. [Doc. 3518] at 3, 4. In light of the fact that in the past these encounters have been as brief as two minutes (*id.* at 2), please state whether Defendants plan to increase mental health staffing to enable them to comply with these requirements. If so, please state the number of FTEs of each mental health staff category (e.g., psychologists, psych associates) Defendants plan to add; at which institutions these additional staff will be deployed; and when these additional staff will assume their duties.

3/30/20 letter at 1. Your only response to this question was "we refer you to the staffing reports Defendants produce each month." 4/14/20 letter. Because these staffing reports reflect no increase in mental health staffing, it is our understanding that Defendants have no plans to increase mental health staffing to enable them to comply with the Court's March 11, 2020 order. **If that understanding is incorrect, please so notify us in writing.**

2. The Court's order requires that, for any encounter shorter than ten minutes for the watch-related PMs and shorter than 30 minutes for the non-watch related PMs, the encounter shall "be evaluated by a mental health clinician to determine whether the length was meaningful and appropriate in the context of the patient's overall care. The mental health clinician who evaluates these visits [must] not be the same individual

who conducted the visits." Doc. 3518 at 4 & n. 1 (internal quotation marks omitted). *The same requirement applies to any re-auditing of past results for these PMs. Id.* at 2, 5.

Please identify the individuals who, *both for any re-auditing and for future monitoring*, will be evaluating these encounters "to determine whether the length was meaningful and appropriate in the context of the patient's overall care." Please also produce these persons' resumes or similar documentation showing their qualifications to make this determination, and produce the written instructions that will be provided to these persons regarding how this determination is to be made.

3/30/20 letter at 1-2 (emphasis added).  Your April 22 letter stated, "attached are the resumes for the two mental health clinicians who evaluate whether the length of an encounter was meaningful and appropriate in the context of the patient's overall care," and attached the resumes of Kenya McCray and Chy A. M. Porter.

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

Compliance with the Court's March 11 order requires the evaluator to examine patient encounters with doctoral-level psychologists, psychiatric nurse practitioners, and psychiatrists, and "determine whether the length was meaningful and appropriate in the context of the patient's overall care."  Many of the encounters with psychiatric nurse practitioners and psychiatrists will involve the prescription, adjustment, or discontinuation of psychotropic medications.  *See, e.g.,* PM 81 ("MH-3A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider"); PM 85 ("MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications"); PM 90 ("MH-5 prisoners who are prescribed psychotropic medications, shall be seen by a mental health provider a minimum of every 30 days").[1]

Ms. McCray is licensed as an Independent Substance Abuse Counselor; Ms. Porter as a Licensed Professional Counselor.  Neither has a doctoral-level degree, a medical degree, or a license to prescribe medication.  Accordingly, they are not qualified to evaluate patient encounters with doctoral-level psychologists, or with psychiatric nurse practitioners or psychiatrists.

When Dr. Stern required assistance to assess the adequacy of very short mental health encounters, he requested the assistance of a doctoral-level psychologist, Dr. Bart Abplanalp.  Doc. 3269-1.  Over Defendants' objection, the Court granted that request.  Doc. 3269.  So too here, evaluation of patient encounters must be done by a doctoral-level psychologist.  **Please let us know if Defendants will agree that the determination "whether the length [of the encounter] was meaningful and appropriate in the context of the patient's overall care," both for any re-**

---

[1] The Stipulation defines "mental health provider" as "Psychiatrist [or] Psychiatry Nurse Practitioner."

2

**auditing and for future monitoring, will be made by a doctoral-level psychologist.**

As for my request for the written instructions that are provided to the evaluators, you responded that all such instructions are included in the March 13, 2020 Monitor Guide. 4/14/20 letter. But the Monitor Guide provides no instruction whatsoever; it simply restates the requirement of a determination whether "the visit was meaningful and appropriate in the context of the patient's overall care." *See, e.g.*, 3/13/20 Monitor Guide at 115. The Court's order requires consideration of "the patient's overall care," but the Monitor Guide is entirely silent as to *how* the evaluator is to consider the patient's overall care. This is a recipe for arbitrary and meaningless results.

In addition, as noted above, the Court's March 11 order requires that visits be evaluated as part of a re-audit for past months if Defendants wish to claim those months as compliant. Doc. 3518 at 2, 5. The Monitor Guide includes no instructions whatsoever on re-auditing past CGAR scores for the mental health PMs at issue here (PM 73, 74, 76, 78, 80-90, 91, 94, and 95).[2]

In light of your April 14 letter, it is our understanding that, other than the March 13, 2020 Monitor Guide, the evaluators are provided no written instructions as to how they are to determine "whether the [encounter] length was meaningful and appropriate in the context of the patient's overall care." **If that understanding is incorrect, please so notify us in writing.**

We look forward to your response.


Very truly yours,


David Fathi

cc:     All counsel

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

---

[2] We will write separately with additional comments regarding the 3/13/20 Monitor Guide. We ask that you promptly provide us with any subsequent revisions to the Monitor Guide.

# EXHIBIT 5



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

May 12, 2020

<u>**VIA EMAIL ONLY**</u>
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

　　　**Re:**　　*Parsons v. Shinn*
　　　　　　**March 11, 2020 Order (Dkt. 3518)**

Dear David:

　　　We are in receipt of your April 27, 2020 correspondence in response to mine of April 14 and 22, 2020 regarding the Court's March 11, 2020 Order.

### Mental Health Clinician vs. Mental Health Provider

　　　Citing to Defendants' proposal for watch-related PMs, the Court's March 11, 2020 Order requires that for visits of less than ten minutes, "a mental health *clinician* shall exercise clinical judgment to determine if the length was meaningful and appropriate in the context of the patient's overall care."  (Dkt. 3518 at 3.) (emphasis added).  Similarly, for non-watch-related-PMs, the Court's Order requires "visits of less than 30 minutes be evaluated by a mental health *clinician* to determine whether 'the length was meaningful and appropriate in the context of the patient's overall care.'"  (*Id.* at 4.) (emphasis added).

　　　The Stipulation defines Mental Health Clinician as a "psychologist or psychology associate" (Dkt 1185-1 at 4), and Defendants' proposal specifically cited to the Stipulation's definition.  (Dkt. 3507 at 8, n. 5.)  Instead of objecting to Mental Health Clinicians conducting the reviews, Plaintiffs (and their expert, Dr. Stewart) also utilized this term in their proposals and supporting declarations.  This is not surprising as it was the term used by Dr. Stern in his report.  (Dkt. 3379 at 30–31, 34.)  We are therefore confused why you now take the position that the above-referenced reviews must be conducted by a Mental Health *Provider*.  Indeed, both Plaintiffs' proposal and Dr. Stewart's declaration are devoid of any reference to the term Mental Health Provider.  Instead, they are replete with references to "clinicians."  (Dkt. 3507 at 6; Dkt.

David C. Fathi
May 12, 2020
Page 2

3511 at ¶¶7, 9, 12–14.)  If Plaintiffs wanted these reviews to be conducted by Mental Health Providers, they could have requested it in their position.  They did not.  Therefore, Defendants will not agree to your demand that these reviews be conducted by a "doctoral-level psychologist," as the Court's Order does not require it.

### Monitor Guide

The Monitor Guide correctly instructs the Mental Health Clinicians who conduct the evaluations described above, to determine whether the visit was meaningful and appropriate in the context of the patient's overall care.  Your correspondence claims this instruction (which is taken word-for-word from the Court's Order) is "a receipt for arbitrary and meaningless results" because it is "silent as to *how* the evaluator is to consider the patient's overall care."   But you provide no suggestion for how you believe the instruction should be improved.  We will certainly consider any proposal you provide, but believe the Court's instruction is self-explanatory.

### Mental Health Staffing

If Defendants determine additional staff is needed, for any reason, the details of any increase (including the position type and which facility they will be deployed at) will be reflected in the monthly staffing reports Defendants produce to Plaintiffs.  At this time, mental health staffing has not been increased.

Sincerely,

Ashlee Hesman

Ashlee B. Hesman

ABF/eap

cc:    Counsel of record

# EXHIBIT 6

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



June 1, 2020

**BY ELECTRONIC MAIL ONLY**

Ashlee Hesman
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
ahesman@strucklove.com

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC;
PRACTICE LIMITED TO
FEDERAL COURTS

> Re: ***Parsons v. Shinn***
> **Court order on minimum length of mental health encounters
> (Doc. 3518)**

Dear Ashlee:

Thank you for your letter of May 12, 2020, regarding the Court's order prescribing minimum lengths for mental health encounters.

1. The Court's order requires that if a mental health encounter does not satisfy the minimum duration established by the Court (either 10 minutes or 30 minutes), the encounter shall "be evaluated by a mental health clinician to determine whether the length was meaningful and appropriate in the context of the patient's overall care." Doc. 3518 at 4 (internal quotation marks omitted). My April 27 letter set forth Plaintiffs' position that the clinician making this determination must be a doctoral-level psychologist.

   Your May 12 letter states, "We are … confused why you now take the position that the above-referenced reviews must be conducted by a Mental Health *Provider*" (emphasis yours). We are puzzled by this statement. As you are aware, the Stipulation defines "Mental Health Provider" as "Psychiatrist [or] Psychiatry Nurse Practitioner," and "Mental Health Clinician" as "Psychologist [or] Psychology Associate." Doc. 1185-1 at 4. Our position that these evaluations must be performed by a doctoral-level psychologist is therefore entirely consistent with the Court's order.

2. Your May 12 letter confirms that the master's-level counselors who are currently performing these evaluations have been given no written instructions on how to determine "whether the [encounter] length was meaningful and appropriate in the context of the patient's overall care." We repeat our position that Defendants' failure to provide instructions is a recipe for arbitrary and meaningless results. We urge that the Monitor Guide be revised to include the following instruction for clinicians making this determination:

   > "The clinician shall review in their entirety the eOMIS records for the patient's last five mental health encounters, as well as the eOMIS records for any ICS involving the patient in the previous six

months.  The clinician shall also review the patient's currently
operative mental health treatment plan.  The clinician shall then
document in writing his or her reasons for determining that the
encounter length was, or was not, meaningful and appropriate in the
context of the patient's overall care."

**Please let us know if Defendants will agree to include these instructions
in the Monitor Guide.**

3. Finally, the Court's March 11, 2020 order requires that "[i]n the future …
   visits without a length recorded should be deemed non-compliant with the
   minimum length requirement and proceed to the clinical evaluation step."
   Doc. 3518 at 5.  We assume that Defendants complied promptly with this
   order, and that any mental health encounter occurring on March 12, 2020 or
   later for which no duration was recorded was deemed noncompliant and was
   then evaluated to determine "whether the length was meaningful and
   appropriate in the context of the patient's overall care."  **If Defendants did
   not comply with the Court's order (Doc. 3518) beginning on March 12,
   2020, please so notify us in writing, and specify the date on which
   Defendants began complying with the order.**

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

Very truly yours,

David Fathi

cc:      All counsel

2

# EXHIBIT 7



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Ashlee B. Hesman
480.420.1631
ahesman@strucklove.com

June 18, 2020

**_VIA EMAIL ONLY_**
David C. Fathi
NATIONAL PRISON PROJECT
915 15TH Street, NW - 7th Floor
Washington, DC  20005-2112

      Re:    _Parsons v. Shinn_
              **Court Order on minimum length of mental health encounters (Dkt. 3518)**

Dear David:

Thank you for your June 1, 2020 correspondence.

The Court's March 11, 2020 Order requires the clinical judgment evaluation for watch and non-watch PMs be conducted by a Mental Health Clinician.  The Stipulation defines Mental Health Clinician as a "psychologist or psychology associate."  As we have explained, the monitors who conduct the clinical judgment evaluation for these measures meet this criteria.

Your claim that the Monitor Guide contains no written instruction for these measures is wrong.  As detailed in our May 12, 2020 correspondence, the Monitor Guide instructs the Mental Health Clinicians who conduct the evaluations described above, to determine whether the visit was meaningful and appropriate in the context of the overall care.  Indeed, this language is taken word-for-word from the Court's Order.  We cannot agree to revise the Monitor Guide to restrict the type of records the Mental Health Clinicians look to in conducting their review, as your correspondence suggests.  The Court's Order makes clear that the Mental Health Clinicians must look to the patient's overall care—not just the specific records contained in your correspondence.

David C. Fathi
June 18, 2020
Page 2


       Finally, Defendants promptly complied with the Court's March 11, 2020 Order beginning March 12, 2020.

                                        Sincerely,

                                        Ashlee B. Hesman

ABF/eap

cc:     Counsel of record

# EXHIBIT 8



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy M. Ray
480.420.1607
tray@strucklove.com

August 7, 2020

**_VIA EMAIL ONLY_**
Corene Kendrick
Prison Law Office
General Delivery
San Quentin, CA  94964

Re:    ***Parsons v. Ryan***
       **Outstanding Document Production –**
       **RFP 83, 140, 141, 142, 143-161, 162**

Dear Corene:

This is a response to Request Nos. 83, 140, 141, 142, 143-161, and 162 as identified in your July 20, 2020 correspondence.

**Request 83:** All source documents used by monitors to evaluate compliance with PM 25 for the most recent month's CGAR report. See Docs. 2368-1 at 5-6; Doc. 2426-1 at 5, 10.

**Defendants' Response:**   The Court's March 11, 2020 Order drastically changed the methodology utilized to monitor PM 25.  By defining the term "emergency" to include "every Incident Command System (ICS) alert where medical attention was provided or should have been provided" (Dkt. 3518 at pp. 5-6), the number of potentially applicable files enlarged exponentially.  For example, in March 2020, there were five applicable files audited for all 10 state facilities.  In April 2020, however, there were 355 for all 10 state facilities.  The increase has made producing responsive documents problematic due to the volume and technology limitations.

Despite these challenges, we are working with the Monitoring Bureau on how to efficiently produce source documents without creating an undue burden so that the documents can be produced on a monthly basis.  We anticipate that we can begin a rolling production on the outstanding PM 25 documents in the next 1-2 weeks.

Corene Kendrick
August 7, 2020
Page 2

**Request 140:** All ADC and Centurion policies, procedures, and/or directives regarding prevention and management of COVID-19.

**Defendants' Response:** *See* Centurion Clinical Guidelines for COVID-19 (ADCM1629151-1629170).  *See also* Defendants' Response to Plaintiffs' Emergency Motion re COVID-19 (Dkt. 3527) and Defendants' May 29, 2020 correspondence.

**Request 141**: All written instructions provided to evaluators or monitors to guide their determination "whether the length [of the mental health encounter] was meaningful and appropriate in the context of the patient's overall care."

**Defendants' Response**:  There are no responsive documents.  As set forth in our May 12, 2020 and June 18, 2020 correspondence to David Fathi, the Monitor Guide instructs the Mental Health Clinicians who conduct the evaluations for watch and non-watch PMs to determine whether the visit was meaningful and appropriate in the context of the overall care.

**Request 142**: All documents reflecting evaluators' or monitors' determination "whether the length [of the mental health encounter] was meaningful and appropriate in the context of the patient's overall care," as required by the Court's order (Doc. 3518), and the reasoning supporting that determination.

**Defendants' Response**:  There are no responsive documents.  The Mental Health Clinicians who conduct the reviews utilize their education and clinical field experience to evaluate those entries for meaningful and appropriate content.

**Requests 143-161:** Lists of class members, ADC number, and housing location with chronic medical diseases, as defined in the Stipulation.

**Defendants' Response:** *See* attached list (ADCM1629171-1629749).

**Request 162:** Disease management guidelines for all chronic diseases, as defined in the Stipulation at 1185-1 at 3.

**Defendants' Request:** *See* ADCRR's Health Services Contract Monitoring Bureau Medical Technical Manual, which is available at: https://corrections.az.gov/sites/default/files/documents/PDFs/tech_manuals/adcrr-healthservicestechnicalmanual_07152020.pdf

Corene Kendrick
August 7, 2020
Page 3

      If you have any questions, please feel free to contact me.

              Sincerely,

              Tim M. Ray

TMR/eap

cc:     Counsel of Record

Attachments:  As stated