# EXHIBIT 1

# [REDACTED]

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, <br><br> Defendants. | NO. 2:12-cv-00601-ROS <br><br> **DECLARATION OF HARRY MICHAEL DOLNY, JR., PhD** |

I, Harry Michael Dolny, Jr., PhD, make the following Declaration:

1.      I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2.      I am employed by Arizona Department of Corrections, Rehabilitation and Correction (ADCRR).

3.      I started my employment with ADCRR (formerly Arizona Department of Corrections) in 2004 as Deputy Research Manager.

4.      In 2007, I was elevated to the position of Research Unit Manager (my official title is Administrative Services Officer V).

5.      In this capacity, I supervise and assign tasks to the rest of the Research Unit which is comprised of two individuals in addition to myself (one additional Research Unit Manager and one Programmer/Analyst).

6.      The Research Unit tracks inmate data, such as admissions to ADCRR and releases into the community; recidivism rates; inmate behavior statistics (such as inmate assault rates, inmate transfers, and risk assessments, etc.). We also answer data questions from internal and external stakeholders, such as the media, the Governor's Office, the State Legislature, and other state agencies. Furthermore, we produce required or requested data to the federal government, including provision of data for the Bureau of Justice Statistics.

7.      I received a Bachelor of Arts degree in Sociology from California State University, Fullerton in 1986 and a Masters of Arts degree in Sociology from University of California, Santa Barbara in 1987.

8.      I received a PhD in Sociology from the University of California, Santa Barbara in 1995. I have taught Sociology, Statistics, Research Methods and Criminal Justice at the following universities: University of California, Santa Barbara; University of California, Riverside; California State University, San Bernardino; Arizona State University; Montclair State University; Kansas State University; Montana State University; and California State University-Stanislaus.

9.      I understand that in early June 2020, the Court in this case ordered ADCRR to produce documents sufficient to show: (1) the average length of stay for inmates in maximum custody units, including length of stay in Step 1, Step 2, and Step 3 under DI326/DO812; and (2) a list of all maximum custody inmates in the ASPC-Eyman, Florence, and Lewis maximum custody units including date classified as maximum custody and current DI 326/DO 812 Step Levels.

10.     ADCRR does not track average length of inmate stays in the maximum custody classification in the normal course of operations.  Nor does ADCRR track average length of maximum custody stays in DI 326/DO 812 Step Levels 1, 2, and 3.  The Step

Levels are pro-social behavioral modification program designations within the maximum custody classification, and progression through the Step Levels is governed by Director's Order 812 ("DO812") (and previously Director's Instruction 326 ("DI326")).

11.     In conjunction with the Court's June Order referenced in Paragraph 9 above, Stacey Crabtree, Regional Operations Administrator (over Classification, Protective Custody, Time Computation, and Inmate Records divisions), tasked the Research Unit with the complex and challenging project of extracting data from ADCRR's current electronic inmate data management system ("ACIS") in order to compile the data ordered by the Court to be produced.

12.     Specifically, the ACIS system (Arizona Correctional Information System) is a host-based electronic data processing system containing the primary inmate database applications used in inmate management systems.

13.     ACIS does not include functionality to run batch reports to derive the maximum custody and Step Level average length of stay data ordered produced by the Court.

14.     ADCRR's ACIS system replaced ADCRR's former electronic Arizona Inmate Management System ("AIMS") in December 2019.[1]  As ADCRR is not yet even one year into utilization of ACIS, challenges arise at times as to functionality and interface.

15.     In response to the Court's June Order, the Research Unit embarked on the arduous task of determining relevant ACIS data sets and determining how to extract data and combine multiple ACIS data sets for thirteen (13) Curlocs (housing unit locator codes) in order to run MSACESS_SQL queries to attempt to calculate average length of

---

[1] ADCRR's prior electronic inmate data management system (AIMS) also did not track custody level length of stay or maximum custody Step Level length of stay data. Nor did AIMS have the ability to run batch reports to derive such data, just like the present ACIS inmate data management system.

maximum custody classification and maximum custody Step Level stays for nearly 2,000 ADCRR inmates.[2]

16.     After determining the above, June 30, 2020 was selected as the data set point for determining average length of stay after data for most recent data set and length of stay calculations produced August 7, 2020.  (See Attachment 1, ADCRR Max Custody Analysis – Data as of 6/30/20).  June 30, 2020, was merely selected as the date of the end of the fiscal year and thus a designated date.  No other significance was attached to this particular date.

17.     The time period leading up to June 30, 2020 was required to determine the multiple locations within the ACIS system where relevant data was located, to account for variables and duplication of entries in individual inmate records, and to write formulas to calculate extracted data tables, and to start calculation of data sets and average length of stay determinations.

18.     Multiple data tables existing in multiple locations within ACIS were required to be joined and formulas derived to separately determine both maximum custody and Step Level length of stay.

19.     The data is processed through an MSACESS database, using Excel spreadsheets for data display and summary information only. Currently, the MSACESS database uses over twenty temporary tables and over 40 MSACESS_SQL queries against approximately 20,000,000 records.

20.     Progression through classification custody level and Step Level is not uniform as to time (or Step Level) and is based upon individual inmate behavior.  Step Level stays may change often for some inmates and may remain relatively steady for others.  For instance, an inmate may achieve Step Level 2, revert back to Step Level 1,

---

[2] Current Curlocs (housing unit locator codes) identifying maximum custody housing units are:  A08, A21, A27, A30, A38, A48, A50, A51, A52, A73, A74, A76, and L21.  The Curloc query identified inmates currently in maximum custody as the query date and calculated the present time in maximum custody.  Thus, the calculations pertain to averages based upon the maximum custody populations' current maximum custody stay and does not identify or calculate previous maximum custody classification periods.

progress again to Step Level 2 and then Step Level 3, then revert to Step Level 2, progress to Step Level 3, and revert to Step Level 1, all based upon the individualized assessment of that inmate's behavior over time, and the resulting classification and Step Level assessment.

21.   Accounting for application of queries/formulas to consistently identify and synthesize such instances of fluid and changing data proved challenging, problematic, and account for the variances in data provided to Plaintiffs in ADCRR's July production and continuing August production.

22.   Upon notification of variances in data identified by Plaintiffs on August 10, 2020, we re-ran the data test cases identified by Plaintiffs as well as other test cases and found that query formulas did not consistently apply to calculate maximum custody and Step Level length of stay data due to the complicated nature of the data merge and formula application necessary to attempt to derive statistics not previously tracked by ADCRR.  In some instances, the formulas did not attach to correct Step Level data sets and thus counted time in steps incorrectly.  In other cases, the merged data and formula application did not correctly calculate maximum custody length of stay.

23.   Essentially, in order to derive the statistics demanded, MSACESS_SQL must search through a complex matrix of intertwined data and data locations, as well as identify and include or exclude numerous variables and/or duplication of entry of data within the existing ACIS system.  The Excel spreadsheets were then used for summarizing data, only.  Accordingly, the Research Unit continues to re-verify data sets and formula application to reduce errors and consistently apply formulations.  However, the inherent nature of this unique and complicated data will likely continue to prevent complete accuracy unless manual human review is conducted of each and every maximum custody inmate classification and Step Level history using a variety and combination of ACIS records and ACIS screens.  Even manual human review and calculation is fraught with likelihood of inadvertent human error in analysing and calculating complex and intertwined data sets.

24.    Because of the critical response time requirement, the Research Unit did not have the luxury or benefit of employing critical testing to run numerous data accuracy and formula application tests; thus errors in data merges, time calculations, and average calculations were inadvertent.

25.    Based upon my training and experience, it would have reasonably taken IT specialists months to write and critically test data and formulas necessary to create complex programming to run maximum custody average length of stay and Step Level length of stay data within the existing ACIS system.  The ACIS system employs 600 plus data tables from which a multitude of individual inmate data can be derived to include demographic, property, discipline, classification, STG/gang management, assessment, programs, work program, and scheduling information to just name some categories.

26.    However, even under these circumstances, the Research Unit employed good faith, best efforts and worked diligently to derive and join multi-ACIS data sets in order to derive average length of stay data.

27.    Specifically, the Research Unit started with migration of individual inmate data tables as to maximum custody length of stay for all inmates identified as assigned to one of the thirteen (13) maximum custody Curlocs as of June 30, 2020, from the ACIS Inmate Traffic History data set  to calculate for each individual inmate, his current length of stay in maximum custody, tracking movement history and Curloc locator codes backwards from June 30, 2020, until a location and stop date identified a move to a maximum custody locator code, which indicates placement in a maximum custody unit at either ASPC-Eyman, Florence, or Lewis.[3]  Each maximum custody unit location bears its own unique locator code as identified in footnote 2.  Movement history data and time in maximum custody is complicated by not only data indicating an inmate moves to a different custody level, but also by interval events such as movement to the hospital, to

---

[3] Formulas capture current length of stay in maximum custody during the inmate's current "episode" which indicates the inmate's current incarceration (as opposed to an inmate who has been incarcerated any number of separate times over the course of time).

court, or a detention unit that moves an inmate out of a maximum custody unit but does not change custody level.

28.    Creation of formulas to identify and extract maximum custody unit locator codes was required because inmates may remain maximum custody over time but move complex locations or unit locations.   (See Exemplar Inmate Traffic Screen data at Attachment 2.)   In sum, the locator code formulas tracked maximum custody length of stay for each individual maximum custody inmate in his Inmate Traffic History Screen tracking locator codes backwards in time from June 30, 2020, to the earliest date the inmate traffic history did not list the inmate in maximum custody locator code.

29.    For example, for exemplar inmate ADC#███████, formulas were necessarily created to capture and identify maximum custody inmate movement locator codes backwards in time from 5/21/2020 (the last entry) to identify locator codes A08 and A50 which identified movement/assignment to ASPC-Eyman SMU I and Browning maximum custody units, but to exclude locator code attached to ASPC-Winslow, Winslow Kaibab unit which is not a maximum custody location which served in the data analysis as the "stop point" for this inmate's current maximum custody stay.  (See Attach. 2.)

30.    To derive Step Level length of stay data for exemplar inmate ADC#███████, EIP Compliance Screen data for this particular inmate as of June 30, 2020 was used and formulas written to identify and calculate time in Step Levels 1, 2, and 3, but exclude time frames indicated as time in a Phase as inapplicable (because this data does not denote Step Level time).  (See Exemplar EIP Compliance Screen data at Attachment 3.)

31.    As illustrated, with exemplar inmate ADC#███████'s history, Step Level reviews occur on nearly a monthly basis and thus Excel formulas were written to calculate total time in Step Levels, identifying and distinguishing where necessary, either duplication of entries in a particular Step Level, or movement up or down through Step Levels.  (See Attach. 2.)

32.    Where an inmate such as this exemplar inmate was in Step Level 3 as of 1/31/2019, then changed to Step Level 1 on 1/31/19, then Step Level 2 on 5/2/19, then

back to Step Level 2 on 6/6/19, then to Step Level 1 on 6/25/19, the formulas to identify and calculate total historical time in each Step Level for the particular inmate became complicated and upon review did not correctly or consistently apply.  The Research Unit continues to revise the work product as a result of extracting data from the data table.

33.    The second data set produced in August likewise re-ran Step Level calculation formulas to remove extraneous data (multiple entries denoting successive identical Step Level entries) and thus accounts in part for examples provided by Plaintiffs in August 10, 2020 email showing less entries for a particular inmate in Step Levels, this second data set deleting duplicative Step Level entries. (See Attachment 4, Exemplar for inmate ADC#███████ illustrating removal of extraneous data and conversion logic to determine Step Level length of stay.)  The August data set also attempted to address periods of time where a Step Level was unassigned or there were gaps in entries in the ACIS system, thus further complicating calculations.

34.    In sum, in order to build a database of tables combining multiple data tables to drill down to derive identification of ADCRR's maximum custody inmate population, identification of current episode most recent maximum custody classification, and identification of individual inmate length of stay in three maximum custody Step Levels history in order to then derive total average maximum custody classification and Step Level length of stay calculations through Excel formulations, the process required search through all of the following variables in the ACIS system:

- 40,149 records were drawn to identify the total active ADCRR inmate population as of June 30, 2020;

- 2,112,633 records were drawn to link to incarceration episode tables;

- 468,177 records were used to identify inmate current episode (only those data elements related to current incarceration);

- 16,820,585 records were used to track inmate movement from location at intake to location at release;

- 866 records were used to describe numerical variables as text to identify maximum custody unit locator codes;
- 178,056 records were used to identify maximum custody current Step Levels;
- 852,306 records were used to identify movement of maximum custody Step Levels prior to the current maximum custody Step Level;
- 84,825 records were used to fill blank current Step Levels or to afford for imbedded gaps in Step Level entries that were calculated as "unassigned" as to data collection dates;
- 17,842 records were used to describe numerical variables as text, i.e., location, Step Level, etc.

35.     Lengthy, good faith, and complicated efforts undertaken by ADCRR's Research Unit to derive maximum custody length of stay averages and maximum custody Step Level length of stay averages were and continue to be a priority, undertaken against the backdrop of non-existing data sets or presence of batch report functions, requiring creation of background merging of ACIS data tables, and combining of multi-location database information without the benefit of sufficient time for critical testing of standard formula application or IT specialist rewrite of the ACIS system.

/ / /

/ / /

/ / /

/ / /

/ / /

1

2        I declare under penalty of perjury that the foregoing is true and correct.

3        Executed this 17th day of August 2020.

4

5                                          *electronically approved this same date*
                                           Harry Michael Dolny, Jr., PhD
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT 1

# [UNDER SEAL]

# ATTACHMENT 2

# [REDACTED]



# ATTACHMENT 3

# [REDACTED]





# ATTACHMENT 4

# [REDACTED]

**Inmate ID**

**For ease of explanation all phases and extrenous data has been removed**

| ID number | Step Date Change or Review | Currrent Step |
|---|---|---|
| | 05/01/20 | STEP 3 |
| | 02/28/20 | STEP 3 |
| | 01/28/20 | STEP 3 |
| | 12/06/19 | STEP 2 |
| | 11/07/19 | STEP 2 |
| | 10/03/19 | STEP 1 |

**Conversion Logic to determine LOS**

| | As of Date | Step Date Change or Review | 1st Date in Max Custody Group | Total Days | |
|---|---|---|---|---|---|
| Days in Step 3 | 6/30/2020 | 01/28/20 | | 154 | Last Date As Step 3 minus  As of Date |
| Days in Step 2 | | 11/07/19 | | 82 | Last Date As Step 3 minus Last Date As Step 2 |
| Days in Step 1 | | 10/03/19 | | 35 | Last Date As Step 1 minus Last Date As Step 2 |
| | | **Total Days in Step** | | 271 | |
| | | 08/22/19 | | 42 | * Last Date As Step 1 minus 1st date in max group |
| | | **Days in Max** | | 313 | * This calculation can only be used when the last date prior to the Max Move Date is the 1st step dat |

If the inmate were in a step prior to 1st max move date then the 42 days would be counted
in Total Days in Step from 271 to 313

**Aditional issue**
**ACIS shows Iniital Step Date as of 08/28/2019 but the date is not supported by the data in the ACIS Tables**