Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: jkeenan@acluaz.org
carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, Plaintiffs, v. David Shinn, Director, Arizona Department of Corrections; and Larry Gann, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities, Defendants. | No. CV 12-00601-PHX-ROS **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE COURT'S ORDER [Dkt. 3635]** |

LEGAL23774493.1

On June 19, 2020, this Court ordered Defendants to produce by June 26 documents responsive to RFP 134: "Documents sufficient to show average length of stay for prisoners in maximum custody units, including the average length of stay in Step 1, Step 2, and Step 3 under DI 326/DO 812." Doc. 3635. Defendants did not do so. *See generally*, Doc. 3686.

Defendants acknowledge that their production is neither complete nor accurate. *See generally*, Doc. 3701. Defendants' explanation for their failure to comply with the Court's order is the same one that they asked the Court to consider when the discovery dispute was before it: They do not bother to track the time they keep people locked in the extreme restrictions of maximum custody, and to start to do so now would be hard. Doc. 3613 at 4-5; Doc. 3701 at 4-5; Doc. 3701-1 at ¶¶ 10-25.

The Court must not accept Defendants' failure to comply with its Order. The Court should require complete production by a date certain, and should sanction Defendants for their disregard of the Court's Order.

**I.     IF DEFEENDANTS OBJECTED TO THE COURT'S RULING, THEY SHOULD HAVE BROUGHT THEIR CONCERNS TO THE COURT**

Two months ago, Defendants were ordered to produce within seven days documents that would show the average length of stay in maximum custody and the average length of stay at each step in maximum custody. These documents were first requested in December 2019, as Plaintiffs planned to include this information with Plaintiffs' Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) (Doc. 3599). Defendants had been administering the Step Program Matrix in Maximum Custody under the Stipulation for nearly six years, but Plaintiffs had (and continue to have) profound concerns about whether Defendants' monthly monitoring reports accurately report their compliance with the Stipulation's Maximum Custody requirements. Yet, as Defendants argued to the Court in the context of the discovery dispute, they did not have the information Plaintiffs had requested and the Court ordered them to produce. Doc. 3613, 3613-1 Exs. 2, 7. The Court held that "Plaintiffs are entitled to monitor compliance, they need to review the data regarding Step progression," and ordered Defendants to produce

the data that would make that possible. Doc. 3635 at 5.

Defendants now complain that producing the information is burdensome. Doc. 3701 at 3-10. Defendants could have quantified the burden of production prior to the Court's consideration of this issue; they chose not to do so. They also complain that they should not have been ordered to produce the documentation. *Id*. at 3. They could have asked the Court to reconsider or for an extension of the time to produce. Again, they chose not to do so. Instead, they waited for Plaintiffs to move the Court regarding their failure to comply with the Court's June 19 Order.

Defendants' belated assertion of their own inability and failure to track subclass members' advancement through the Steps does not excuse their failure to comply with the Court's order. They should, again, be ordered to produce the relevant documents.

**II. DEFENDANTS' FAILURE TO TRACK SUBCLASS MEMBERS' MOVEMENT THROUGH THE STEP PROGRAM MATRIX DEMONSTRATES THEIR INABILITY TO MONITOR COMPLIANCE WITH THE STIPULATION**

As recognized by this Court, "[t]he Stipulation explicitly requires Defendants to implement and administer the Step Program Matrix. (Doc. 1185 at 9)." Doc. 3691 at 1. The Step Program Matrix set out in DI 326/DO812 is central to the Maximum Custody Performance Measures in the Stipulation. *See* Doc. 1185-1, Ex. E. As described in DO 812, the Maximum Custody Management and Incentive System "is a system that requires inmates in Maximum Custody to work *through* a program." Doc. 3600-2 at 36, § 1.0 (emphasis added).

In ordering the production of this information, the Court recognized that "if prisoners are not actually able to advance through the Steps, Defendants may be in violation of the Stipulation." Doc. 3635 at 5. The Court also noted that the information sought through RFP 134 and that it had ordered produced "is crucial for determining whether prisoners can progress through ADC's Maximum Custody Step Program Matrix and earn additional out-of-cell time." Doc. 3691 at 1. The Court further recognized that "[t]he Stipulation grants Plaintiffs access to the documents 'necessary to properly evaluate whether Defendants are

1  complying' with their obligations. (Doc. 1185 at 12)." *Id.* at 1. Moreover, Defendants have
2  the primary burden of measuring and reporting on their compliance with the Stipulation.
3  Doc. 1185 at ¶ 19.

4  However, Defendants proclaim that they do not have this information. *See* Doc.
5  3701 at 3 ("**I. DEFENDANTS DO NOT TRACK MAXIMUM CUSTODY AND**
6  **MAXIMUM CUSTODY STEP LEVEL LENGTH OF STAY STATISTICS**"). They
7  further admit that they recently obtained a new information management system, and
8  neither the old system nor the new system has any means of determining how long people
9  remain locked up in the most restrictive housing units in the Arizona prison system. Doc.
10 3701 at 4-5 and n.4; 3701-1 at ¶¶ 12-14. Although they claim the time frame for developing
11 a way to track such information is "months" (Doc. 3701 at 7, 3701-1 at ¶ 25), they have not
12 done so in the nearly six years they have been monitoring – and asserting compliance with
13 – the Stipulation. Without this information, they cannot evaluate their implementation of
14 DI 326/DO812, which is central to whether Defendants are in compliance with the
15 Stipulation's Maximum Custody requirements.

16 Additionally, as the Court noted, the information Defendants have produced to date
17 demonstrates that their record keeping is unreliable. Doc. 3691 at 2. In addition to the
18 errors identified in Plaintiffs' Motion and exhibits thereto, there appears to be a troubling
19 undercounting of the time people have been housed in maximum custody. For example,
20 the person with ADC#          is reported in the final spreadsheet produced on August 7
21 as having been in maximum custody since March 2, 2018. Declaration of Maria Morris
22 ("Morris Decl."), Ex. 1 at ADCM1629063. But the spreadsheet produced as a .pdf on June
23 26 shows that this person has actually been in maximum custody since September 17, 2014.
24 *Id.*, Ex. 2 at ADCM1620822-23.

25 Another example is the person whose ADC # is          The final spreadsheet
26 produced on August 7, 2020, reports that he has been in maximum custody since October
27 28, 2014, but that he has been in the Step Program Matrix only since April 22, 2020 or just
28 69 days. Morris Decl., Ex. 1 at ADCM1629064. The June 26, 2020, spreadsheet shows

1  that, as of July 9, 2014, he was at Step 3 in the maximum custody Step Program Matrix,
2  and has received one or more step level reviews each year, remaining at Step 3 for six
3  years. *Id*., Ex. 2 at ADCM1620699-700.

4  Yet another example is the person with ADC #█████. The August 7 spreadsheet
5  shows that he has been in maximum custody since January 24, 2019. *Id*., Ex. 1 at
6  ADCM1629060. The June 26 spreadsheet shows him in maximum custody since August
7  24, 2014, having one or more step level reviews each year. *Id*., Ex. 2 at ADCM1620737-
8  38.  He was a Step 1 when he had a review on December 24, 2018, and when he had a
9  review on January 31, 2019, and when he had a review February 1, 2019. *Id*.  Even if he
10 left maximum custody at some point since 2014, he did not come back into maximum
11 custody on January 24, 2019.

12 Similarly, the person whose ADC # is █████ was reported on the August 7
13 spreadsheet as having been in maximum custody since October 31, 2018. *Id*., Ex. 1 at
14 ADCM1629067.  The June 26 spreadsheet shows him in maximum custody, with many
15 step level reviews, since September 22, 2014. *Id*., Ex. 2 at ADCM1620741-42. It further
16 shows him being a Step 1 at step level reviews on October 3 and November 7, 2018, making
17 it very clear that if, at some point he left maximum custody, he did not come back on
18 October 31, 2018. *Id*.

19 None of Defendants' descriptions of the challenges in sorting the data explain these
20 discrepancies and errors from one spreadsheet to the next.

21 As noted in Plaintiffs' enforcement motion, Defendants claim to be monitoring their
22 own compliance with the requirement that they implement DI 326/DO812, and finding
23 themselves to be nearly 100% compliant universally at all applicable housing units.  Their
24 inability to track even the most basic question of how long people are in maximum custody,
25 their failure to track how subclass members progress through the Step Program Matrix, and
26 the profound discrepancies in the data provided to date make clear that they are unable to
27 accurately measure and report on their compliance.

28

**III. DEFENDANTS SHOULD PAY PLAINTIFFS' ATTORNEYS FEES RELATING TO THE ENFORCEMENT OF THE COURT'S JUNE 19 DISCOVERY ORDER**

The Court ruled on a discovery dispute on June 19, 2020, ordering Defendants to produce documents responsive to RFPs 66, 74, 134 and 138 within seven days. Doc. 3635.

Defendants failed to produce documents responsive to RFPs 66, 134, or 138 within seven days. On July 13, 2020, not having received documents responsive to RFP 66, Plaintiffs moved to enforce the court's order with regard to that RFP – an RFP to which Defendants had agreed to produce responsive documents prior to the filing of the statement of the discovery dispute. Doc. 3652. Defendants subsequently produced the documents and Plaintiffs withdrew the motion. Doc. 3660. On August 7, 2020, Defendants completed production responsive to RFP 138. But they still did not complete production of RFP 134, as detailed in Plaintiffs' Motion to Enforce Court's Order. *See* Doc. 3686.

Where a party fails to comply with a discovery order, Federal Rule of Civil Procedure 37 sets out a range of discretionary sanctions, and the nondiscretionary sanction of paying the other party's attorneys' fees: "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(B), (C). Sanctions pursuant to Rule 37 are intended to secure compliance with court orders and to deter "flagrant disobedience and callous disregard of court discovery orders." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369-70 (9th Cir. 1980). The importance of discovery sanctions is "particularly evident when the disobedient party is the government," as "[t]he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." *Id*. at 1370. Ordering a party to pay the other party's reasonable expenses, including attorney's fees, incurred as a result of the failure to obey an order is the least harsh of all the Rule 37 sanctions. *Id*. The intent behind the failure to comply – whether the party acted in good faith or in bad faith – is relevant

only when a court is considering severe penalties, such as dismissal. *Id*. at 1369; *see also United Artists Corp. v. United Artist Studios LLC*, No. 219CV00828MWFMAA, 2019 WL 4640403, at *5-9 (C.D. Cal. Aug. 28, 2019) (ordering the payment of attorneys' fees for the failure to comply with a discovery order, but declining to make a finding of contempt because there was not a sufficient showing of bad faith).

Here, Defendants acknowledge that they have not complied with the Court's Order. Sanctions are warranted, as their failure to produce the information the Court ordered them to produce is not substantially justified. As discussed above, Defendants have been monitoring their own compliance with the Stipulation, including the implementation of the Maximum Custody Management and Incentive System, for nearly six years. They have claimed to have been measuring its implementation and have claimed to been highly successful at implementing it. But now they say they cannot determine how long people have been in this system, how long they stay at any given step, and thus whether they can in fact progress through the system. As the Court itself expressed: "how it is possible for Defendants to comply to ensure prisoners are moved through the Step Matrix unless the data is readily available?" Doc. 3635 at 5.

Further, Plaintiffs waited nearly two months, repeatedly asking Defendants to comply with the Court's order to produce the relevant documents, before bringing the motion. This is now the second motion Plaintiffs have had to bring to enforce this Court's discovery order. *See* Doc. 3652. Defendants should not be permitted to continue to flout the Court's orders.

Defendants argue that they should not be required to pay Plaintiffs' attorneys' fees because they have acted in good faith. Their argument is unpersuasive for two reasons. First, Defendants fail to acknowledge the sanctions set forth in Rule 37, which, as discussed above, do not require a finding of bad faith. Second, as described below, Defendants' actions do not demonstrate good faith.

The information the Court ordered them to produce is information they should have had all along. The assertion that they are now trying to gather it does not excuse their failure

to maintain it during the last six years, and sadly confirms many of Plaintiffs' concerns that the near-universal perfect compliance records Defendants have reported for the maximum custody performance measures are not rooted in reality.

Also, Defendants put together much of the underlying data within the first seven days after the order. *See* Doc. 3686-2 at 3. At that point, they had created a spreadsheet that included the ADC #, the step levels, and the dates of step level review for the people housed in the three largest maximum custody units. Doc. 3686-2 at 5-7. They had only the smallest unit, Florence-Kasson, left to add.[1] Morris Decl., ¶ 2. But then the progress largely stopped. It took just seven days to create the spreadsheet containing Eyman-Browning, Eyman SMU I, and Lewis-Rast, but another month and a half — until August 7, 2020 — before Defendants provided a spreadsheet that included information about the dates people in Florence-Kasson were in maximum custody, and this came only after Plaintiffs' counsel repeatedly prodded them for the information. *See* Doc. 3686-2 at 9-13, 27.

When Defendants finally produced the spreadsheets that included some data about Florence-Kasson, they stripped out much of the data that would make it possible to review and verify the information presented. *See* Doc. 3682-2 at 32-33. The spreadsheet produced on June 26, 2020 included steps and all the dates people had step level reviews, and thus the dates they moved from step to step. *See* Doc. 3686-2 at 5-7. The spreadsheet produced on August 7 took much of that information out, reducing it to the dates Defendants asserted people entered maximum custody and first had a step level, and a statement of the number of days people spent at each level, without providing the dates. *See* Doc. 3682-2 at 31-33. The removal of this information from the production makes the spreadsheet far less comprehensible, and less capable of verification – verification that is critical in light of the admitted inconsistencies in the data.

---

[1] The size of each of the four maximum custody units is set forth in Ex. 5 to Defendants' Response to Plaintiffs' Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) (Doc. 3599). As of August 2019, Eyman Browning had about five times as many people as Florence-Kasson; Eyman SMU I had about three and a half times as many people as Florence-Kasson, and Lewis Rast was about twice the size of Florence-Kasson.

Additionally, throughout this process, even as the problems with the production were highlighted by Plaintiffs, Defendants declined to engage in a manner that would avoid or resolve the problems:

- Plaintiffs requested that the spreadsheet be provided as a spreadsheet in its original format, after it was produced as a .pdf on June 26. *See* Doc. 3682-2 at 12-13. Defendants did not produce it as a spreadsheet until mid-July. Morris Decl., ¶ 3.
- When Defendants first produced some data about Florence-Kasson, it included only the ADC numbers of people there, not any information about dates or steps. *See* Doc. 3686-2 at 18. Plaintiffs had to request that Defendants provide the complete information. *Id.* at 27.
- Defendants produced what purported to be the final spreadsheet on the evening of August 7, 2020. Morris Decl., ¶ 4. According to the name of the spreadsheet file, Max_Moves_by_Curloc_Final_08052020, it had been finalized two days earlier. On a fairly quick review of the spreadsheet the morning of August 10, 2020, Plaintiffs identified errors and inconsistencies in the spreadsheet, and informed Defendants of the problem. *Id.* Only then did Defendants run data tests on the spreadsheet. Doc. 3701-1 at ¶ 22.

Finally, in a footnote at the end of their brief, Defendants try to avoid the requirement of determining the average length of stay in each step in maximum custody. Defendants now assert, for the first time, that all they are required to calculate is the total amount of time people spend at each step level in maximum custody. Doc. 3701 at 12 n.8. This does not make any sense. As noted by Defendants, "an inmate may achieve Step Level 2, revert back to Step Level 1, progress again to Step Level 2 and then Step Level 3, then revert to Step Level 2, progress to Step Level 3, and revert to Step Level 1." *Id.* at 6. The purpose of the requested data, as the Court noted, is to monitor step progression and whether prisoners are able to move through the Step Program Matrix. Doc. 3635 at 5. If Defendants were to provide the information as they now seek to do, showing only the average total

amount of time in each step, rather than the average length of stay at each step, the information will not serve the purpose for which it was requested, and for which the Court ordered its production.

None of these actions indicate good faith in complying with the Court's order.

Therefore, the sanction of paying Plaintiffs' attorneys fees in their efforts to enforce the Court's June 19 Order is abundantly warranted.[2]

## CONCLUSION

For all the reasons stated in the Motion to Enforce Court's Order (Doc. 3635) and herein, this Court should order Defendants to respond fully to RFPs 134 by a date certain, with daily coercive fines if production is not made by that date. Further, the Court should order Defendants to pay the reasonable costs, including attorneys' fees, incurred by Plaintiffs in attempting to enforce the Court's order.

Respectfully submitted,

---

[2] As noted above, this is the second time Defendants' defiance of the Court's order (Doc. 3635) has required Plaintiffs to bring a motion to enforce. *See* Doc. 3652.

| | |
|---|---|
| 1 | |
| 2 | Dated:  August 19, 2020 |
| 3 | |
| 4 | |
| ... | |

Dated:  August 19, 2020

**ACLU NATIONAL PRISON PROJECT**

By:  s/ Maria V. Morris
David C. Fathi (Wash. 24893)*
Eunice Hyunhye Cho (Wash. 53711)*
Maria V. Morris (Cal. 223903)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
              echo@aclu.org
              mmorris@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
              agerlicher@perkinscoie.com
              jhgray@perkinscoie.com

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    jkeenan@acluaz.org
              carellano@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
ckendrick@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

By:  s/ Maya Abela
Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# **CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2020, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ Jessica Carns