Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' MOTION FOR CLARIFICATION RE: ORDER TO SHOW CAUSE (Dkt. 3490)** |

Defendants move for clarification of the Court's January 31, 2020 Order to Show Cause ("OSC"). In the course of briefing the OSC, it became apparent that the parties disagree about its scope. Defendants contend that they were required to show cause for the 20 noncompliant Performance Measures ("PM") in February 2020, a total sanction exposure of $2 million. Plaintiffs contend that Defendants were required to show cause for the 41 noncompliant PMs in March, April, and May 2020 as well, an additional sanction exposure of $4.1 million, for a total of $6.1 million.[1] The parties also dispute whether a PM

---

[1] Plaintiffs' math does not add up. In their response, they assert that noncompliance in February, March, April, and May "amounts to $ 6.4 million in contempt fines." (Dkt. 3683 at 12.) Table 1 in their Response, however, highlights 65 noncompliant PMs and includes noncompliant scores for PM 44-Tucson in all four months. (*Id.* at 3–4.) PM 44-

that was compliant in or after February 2020 is subject to sanctions in subsequent months. Defendants contend that, once a PM is compliant, the recurring monthly sanction terminates. Plaintiffs interpret the OSC to say that a PM is subject to a sanction every month regardless of whether it achieved compliance in a prior month. If so, for the months of March, April, and May, the total sanction exposure is $2.9 million.[2]

Defendants seek clarification of these issues. If the Court rules that the OSC required Defendants to show cause now for noncompliance in any month after February, they respectfully request the opportunity to do so.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Background.**

On January 31, 2020, the Court issued the following OSC:

> Defendants must bring every Performance Measure identified above into immediate compliance. Defendants will be required to pay $100,000 for each instance of future non-compliance with this Order. For the Performance Measures identified above that were compliant in the most recent numbers, Defendants must ensure those Performance Measures remain compliant. If Defendants do not bring every Performance Measure into compliance, or if Defendants allow any previously-compliant Performance Measure to become non-compliant, the Court will impose contempt sanctions unless Defendants can establish they took all reasonable steps to achieve compliance but still fell short. If Defendants are found in contempt, the Court will impose a fine of $100,000 per Performance Measure per location to coerce compliance with this Order. The fines will recur on a monthly basis until Defendants bring each Performance Measure and location into compliance. For example, if Defendants do not bring

---

Tucson, however, was not listed in the OSC (Dkt. 3490), and therefore Defendants are not subject to sanctions for those four noncompliant scores (a total of $400,000). Properly tabulated, Defendants were noncompliant with 20 OSC PMs in February, 14 OSC PMs in March, 7 OSC PMs in April, and 20 OSC PMs in May, for a total of 61 noncompliant OSC PMs in that four-month timeframe. A $100,000-per-noncompliance sanction equates to a total possible sanction of $6.1 million. For the months of March, April, and May, the total possible sanction is $4.1 million.

[2] *See* March [PM 11-Eyman, PM 47-Florence, PM 51-Perryville, PM 52-Eyman, PM 52-Florence, PM 52-Perryville], April [PM 11-Lewis, PM 37-Yuma, PM 85-Eyman, PM 44-Lewis, PM 47-Phoenix], and May [PM 11-Eyman, PM 35-Florence, PM 37-Yuma, PM 39-Eyman, PM 40-Tucson, PM 44-Lewis, PM 47-Phoenix, PM 50-Florence, PM 50-Tucson, PM 51-Eyman, PM 51-Tucson, PM 55-Eyman, PM 66-Florence, PM 66-Lewis, PM 66-Tucson, PM 67-Lewis, PM 67-Tucson, PM 98-Eyman].

Performance Measure 6 at Eyman into compliance by March 1, 2020, Defendants will be held in contempt and will be required to deposit $100,000 with the Clerk of Court absent a showing that Defendants took all reasonable steps to come into compliance. Defendants will then be required to deposit an additional $100,000 if Performance Measure 6 at Eyman is not brought into compliance by April 1, 2020.

Accordingly,

**IT IS ORDERED** Defendants shall come into compliance regarding every Performance Measure and location identified above no later than **March 1, 2020**.

**IT IS FURTHER ORDERED** that no later than **June 15, 2020**, Defendants shall show cause as to why the Court should not impose a civil contempt sanction of $100,000 per Performance Measure per complex.

(Dkt. 3490 at 3, emphasis in original.)

Defendants filed their Response on July 10, 2020. (Dkt. 3649.) In that brief, Defendants explained in detail the extensive measures taken by ADCRR and Centurion to comply with the Stipulation and OSC, dating back to July 2019. (*Id*. at 3–26.) They also exhaustively examined each noncompliant PM in February and explained the reason for the noncompliance. (Dkt. 3649 at 30–49; Dkt. 3649-4, ¶¶ 15–121.) Although Defendants were noncompliant with 20 PMs in February (out of 146 PMs), they argued that they took all reasonable steps to comply with the OSC and substantially complied with it, and therefore should not be held in contempt or sanctioned.

Plaintiffs filed their response on August 7, 2020. (Dkt. 3683.) Their response went beyond February and pointed out Defendants' noncompliance in March, April, *and* May. (Dkt. 3683, Table 1.) There were 41 noncompliant PMs during that timeframe. Plaintiffs urged the Court to hold Defendants in contempt—and sanction them—for not only the 20 noncompliant PMs in February but also the noncompliant PMs in March, April, and May. (*Id*.) To support their contention, Plaintiffs pointed to the OSC's statement that "[t]he fines will recur on a monthly basis." (*Id*. at 2 n.2, quoting Dkt. 3649 at 3.) They further urged the Court to "assess additional fines" for future noncompliance. (*Id*. at 12.)

3

## II. Defendants Request That the Court Clarify the Scope of the OSC.

A party can only be held in civil contempt if it fails to comply with "a specific and definite court order." *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466 (9th Cir. 1989). "[P]rinciples of 'basic fairness requir[e] that those enjoined receive explicit notice' of 'what conduct is outlawed' before being held in civil contempt." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). A party must "know what the court intends to require and what it means to forbid." *Id.* (quoting *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)); *see also In re Hercules Enterprises, Inc.*, 387 F.3d 1024, 1028 (9th Cir. 2004) (a party facing contempt must have "sufficient notice of [the order's] terms and the fact that he would be sanctioned if he did not comply").

A party "should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (alterations in original).

### A. The OSC Did Not Expressly Require Defendants to Show Cause Now for Noncompliance In Months After February.

The OSC is clear that Defendants must bring each listed PM into compliance, and that the Court "will impose contempt sanctions unless Defendants can establish they took all reasonable steps to achieve compliance but still fell short." (Dkt. 3490 at 3.) The OSC is also clear that the "fines will recur on a monthly basis until Defendants bring each Performance Measure and location into compliance." (*Id.*) But the OSC does not explicitly state *when* or at *what frequency* Defendants must show cause—i.e., all reasonable steps and/or substantial compliance—for noncompliant PMs. Nor does it explicitly state that Defendants must show cause for any particular month's noncompliance.

Defendants interpreted the OSC as requiring them to show cause for noncompliant PMs in *February* no later than June 15, 2020. (*See* Dkt. 3490 at 4 ["**IT IS ORDERED** Defendants shall come into compliance regarding every Performance Measure and location

identified above no later than **March 1, 2020**. **IT IS FURTHER ORDERED** that no later than **June 15, 2020**, Defendants shall show cause as to why the Court should not impose a civil contempt sanction of $100,000 per Performance Measure per complex."], emphasis in original.) Defendants reasonably believed they were not required to show cause for noncompliance in April or May because the data was not available by June 15, 2020. (*See* Dkt. 3637 [April data filed on June 23, 2020]; Dkt. 3670 [May data filed on July 23, 2020].) Defendants respectfully submit that the Court did not intend them to show cause for those months or for March, as there would be no basis to show cause for any month after February, particularly when it expressly set a compliance cut-off date of March 1, 2020. Without a specific directive ordering Defendants to show cause for noncompliance in a particular month, or a rolling order requiring Defendants to show cause, e.g., within 30 days after Defendants file the compliance data with the Court, Defendants do not have specific and definite guidance to know when they are required to show cause for subsequent months (including June). The OSC does not provide that guidance.

### B. The OSC's Recurring Fines Terminate Once a PM Comes Into Compliance.

The OSC states that PMs that were compliant before February must "remain compliant" and that if a "previously-compliant" PM "become[s] non-compliant" a fine will be imposed and recur "until Defendants bring each Performance Measure and location into compliance." (Dkt. 3490 at 3.) By example, a PM that was compliant in January but noncompliant in February is subject to a sanction in February. That same PM is subject to a sanction in subsequent, consecutive noncompliant months. But what is not explicitly ordered is that Defendants can be sanctioned for a noncompliant PM in March if that PM was *compliant* in January and *remained compliant* in February; Defendants can be sanctioned for a noncompliant PM in April if that PM was *compliant* in both February and March; Defendants can be sanctioned for a noncompliant PM in May if that PM was *compliant* in February, March, and April; or Defendants can be sanctioned for a

5

noncompliant PM in *any* month after it was *compliant* (e.g., noncompliant in February, *compliant* in March, noncompliant in April and/or May).

To the contrary, the OSC states that "[t]he fines will recur on a monthly basis *until Defendants bring each Performance Measure and location into compliance*." (*Id.*, emphasis added.) In other words, once a PM is compliant, the recurring fine terminates. Although the OSC begins by stating, "[f]or the Performance Measures identified above that were compliant in *the most recent numbers*, Defendants must ensure *those* Performance Measures *remain compliant*" (*id.*, emphasis added), this suggests only that PMs that were compliant in January must remain compliant in February. At a minimum, the OSC is unclear and indefinite in this regard, and Defendants cannot be eligible for contempt or sanctions for noncompliance with the 29 PMs identified in footnote 2, *supra*. *See In re Dual-Deck*, 10 F.3d at 695.

### III. If the Court Disagrees, Defendants Request an Opportunity to Show Cause for Any Noncompliance in the Additional Months.

If the Court concludes that Defendants were required to show cause in their response for months after February, Defendants request the opportunity to show cause now. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions … may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard."). Similar to the Declaration of Jennine Gahris detailing the reasons for noncompliance in February (Dkt. 3649-4), Defendants can show, for example, that 18 PMs fell short of compliance by just one or two inmate files; and several PMs were noncompliant because of documentation issues, changes in methodologies, or other reasons beyond Defendants' control. For example, the Governor declared a state of emergency on March 11, 2020, because of COVID-19 and issued several corresponding executive orders to mitigate its spread.[3] COVID-19 cases in Arizona increased in April and May.[4] To

---

[3] https://azgovernor.gov/sites/default/files/declaraton_0.pdf.

[4] https://www.azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/.

mitigate the spread of COVID-19 in correctional facilities, the Centers for Disease Control and Prevention has also issued recommendations over the last several months.[5] Defendants can explain how these events impacted compliance with certain PMs, e.g., the cancellation of outside provider appointments. Indeed, Plaintiffs focus largely on noncompliance in May, which Defendants were unable to explain at the time they filed their response.

**IV.    Conclusion.**

For these reasons, Defendants respectfully request the Court to clarify the scope of the OSC and, if necessary, set a briefing schedule for Defendants to show cause for any noncompliance in months subsequent to February 2020.

DATED this 28th day of August 2020.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Daniel P. Struck
  Daniel P. Struck
  Rachel Love
  Timothy J. Bojanowski
  Nicholas D. Acedo
  3100 West Ray Road, Suite 300
  Chandler, Arizona 85226

  *Attorneys for Defendants*

---

[5] *See* Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities.

# CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |
| Maria V. Morris | mmorris@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck

8