Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:  jkeenan@acluaz.org
          carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Larry Gann, Division Director, Division of Health Services Contract Monitoring Bureau, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-ROS<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |

1

**TABLE OF CONTENTS**

2

I.  Introduction ...................................................................................................1

II.  Plaintiffs are Entitled to Recover Fees .......................................................4

3

A.  Plaintiffs are Entitled to Recover Fees Under the Stipulation.......................4

B.  Plaintiffs Are Entitled to an Award of Fees Under 42 U.S.C. § 1988 ...........5

4

C.  Plaintiffs are Entitled to Recover Fees and Costs as a Remedy for

5

Contempt .........................................................................................................7

6

D.  Plaintiffs Are Entitled to Recover Fees for Their Successful Fee Motion.....8

E.  Plaintiffs Are Entitled to Recover Fees for Work Performed by Law

7

Students ...........................................................................................................8

8

III.  Plaintiffs Are Entitled to Recover All of Their Requested Fees and Costs

9

and a 2.0 Multiplier ..............................................................................................10

10

A.  Calculation of Reasonable Attorneys' Fees ................................................10

11

1.  Documentation Supporting Reasonableness ...............................................11

2.  Determination of the Hourly Rate ...............................................................12

12

3.  Calculation of the Lodestar .........................................................................14

13

a. The Time and Labor Required ..............................................................16

14

b.  The Novelty and Difficulty of the Issues .............................................16

c.  The Skill Required to Perform the Legal Services ...............................17

15

d.  The Preclusion of Other Employment by the Attorneys Involved

16

in the Case ............................................................................................17

17

4.  The Remaining *Kerr* Factors Support an Award of a 2.0 Fee

18

Enhancement ................................................................................................18

a.  The Customary Fee in Similar Litigation .............................................19

19

b.  Time Limitations Imposed by the Clients or Circumstances ...............19

20

c.  The Results Obtained by the Lawsuit....................................................20

d.  The Experience, Reputation, and Ability of the Attorneys ..................20

21

e.  The Undesirability of the Case ..............................................................21

22

f.  The Nature and Length of the Professional Relationship

23

With the Clients....................................................................................22

g.  Awards in Similar Cases .......................................................................22

24

5.  An Enhancement is Justified by Plaintiffs' Counsels' Superior Performance,

25

Extraordinary Results, and the Need to Attract Competent Counsel ..........23

a. Superior Performance and Excellent Results ........................................24

26

b. Attracting Competent Counsel ..............................................................26

27

6.  Plaintiffs are Entitled to Recover Litigation Expenses and Costs...............27

IV.  Conclusion ..................................................................................................27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3
*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................... 16, 20

4
*Carruthers v. Israel*,
   274 F. Supp. 3d 1345 (S.D. Fla. 2017) ................................................. 14, 23

5
*City of Burlington v. Dague*,
   505 U.S. 557 (1992) ...................................................................................... 15

6

7
*Clark v. City of Los Angeles*,
   803 F.2d 987 (9th Cir. 1986) ......................................................................... 8

8
*Daniels–Hall v. National Education Association*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................... 13

9
*Dunn v. Dunn*,
   318 F.R.D. 652 (M.D. Ala. 2016) ................................................................ 23

10
*Ellsworth v. Prison Health Services, Inc.*,
   No. CV-11-8070-PCT-RCB, 2013 WL 6587876 (D. Ariz. Dec. 12, 2013) ................ 26

11
*Farrar v. Hobby*,
   506 U.S. 103 (1992) ................................................................................... 6, 10

12

13
*Fischer v. SJF-P.D. Inc.*,
   214 F.3d 1115 (9th Cir. 2000) ................................................................ 10, 18

14
*Gates v. Deukmejian*,
   987 F.2d 1392 (9th Cir. 1992) ................................................................ 12, 13

15
*Gerritsen v. Warner Bros. Entm't Inc.*,
   112 F. Supp. 3d 1011 (C.D. Cal. 2015) ....................................................... 13

16

17
*Graves v. Arpaio*,
   633 F. Supp. 2d 834 (D. Ariz. 2009) ..................................................... passim

18
*Graves v. Penzone*,
   No. CV-77-00479, 2020 WL 1984022 at *6 (D.Ariz. Apr. 27, 2020) .......... 13

19
*Guerrero v. Cummings*,
   70 F.3d 1111 (9th Cir. 1995) ......................................................................... 8

20
*Hansen Beverage Co. v. Innovation Ventures, LLC*,
   No. 08–CV–1166–IEG, 2009 WL 6597891 (S.D.Cal. Dec. 23, 2009) ......... 13

21
*Hart v. Agnos*,
   No. CV-77-0479-PHX-NVW, 2008 WL 2008366 (D. Ariz. Apr. 25, 2008) ............... 26

22
*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................ 10, 11

23

24
*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*,
   774 F.3d 935 (9th Cir. 2014) ......................................................................... 7

25
*Johnson v. Georgia Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ................................................................. passim

26
*Kelly v. Wengler*,
   7 F. Supp. 3d 1069 (D. Idaho 2014) ......................................................... 7, 18

27

28
*Kelly v. Wengler*,
   822 F.3d 1085 (9th Cir. 2016) ............................................................... passim

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ............................................................................. passim

*Klein v. City of Laguna Beach*,
  810 F.3d 693 (9th Cir. 2016) (same) ........................................................................ 10

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*,
  305 F. Supp. 3d 1156 (D. Or. 2018) ......................................................................... 9

*Medina v. Buther*,
  No. 15-CV-1955(LAP), 2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019) .................. 7

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989) .............................................................................................. 8, 13

*Moore v. James H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) .................................................................................. 22

*Morales v. City of San Rafael*,
  96 F.3d 359, n.8 (9th Cir. 1996) ....................................................................... 15, 16

*Oviatt v. Pearce*,
  954 F.2d 1470 (9th Cir. 1992) ............................................................................... 15

*Padgett v. Loventhal*,
  706 F.3d 1205 (9th Cir. 2013) ............................................................................... 11

*Parsons v. Ryan*,
  949 F.3d 443 (9th Cir. 2020) ............................................................................. passim

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986) .................................................................................... 16, 17, 20

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ........................................................................................ 23, 24

*Perez v. Cate*,
  632 F.3d 553 (9th Cir. 2011) ................................................................................. 14

*Perry v. O'Donnell*,
  759 F.2d 702 (9th Cir. 1985) ................................................................................... 7

*Planned Parenthood of Cent. & N. Ariz. v. State of Ariz.*,
  789 F.2d 1348 (9th Cir. 1986) ............................................................................... 21

*Ramos v. Lammy*,
  713 F.2d 546 (10th Cir. 1983) ................................................................................. 9

*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012, (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018) .......... 22, 23

*Rosenfeld v. U.S. Dep't of Justice*,
  904 F. Supp. 2d 988 (N.D. Cal. 2012) ...................................................................... 9

*Skinner v. Uphoff*,
  324 F. Supp. 2d 1278 (D. Wyo. 2004) ................................................................. 9, 13

*Stivers v. Pierce*,
  71 F.3d 732 (9th Cir. 1995) ..................................................................................... 7

*Texas State Teachers Ass'n v. Garland Ind. School Dist.*,
  489 U.S. 782 (1989) ............................................................................................. 6, 7

*Trueblood v. Wash. State Dep't of Social & Health Svcs.*,
  Case No. C14-1178MJP, 2015 WL 12030114 ....................................................... 23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Webb v. Ada County*,
    285 F.3d 829 (9th Cir. 2002) ........................................................................... 7

*Woods v. Carey*,
    722 F.3d 1177 (9th Cir. 2013) ........................................................................ 27

**Statutes**

42 U.S.C. § 1988 ........................................................................................... 6, 30

42 U.S.C. § 1997e(d) ........................................................................................ 5, 6

**Rules**

Fed. R. Civ. P. 23(h) ............................................................................................ 5

Fed. R. Civ. P. 53 ................................................................................................. 3

Fed. R. Evid. 201 ............................................................................................... 15

Fed. R. Evid. 706 ......................................................................................... passim

Plaintiffs move for an order awarding their attorneys' fees and costs, including expert costs, incurred in enforcing the provisions of the Stipulation (Doc. 1185) from July 1, 2018, through June 30, 2019 (the "2018-19 Enforcement Period"), and incurred in successfully obtaining enforcement fees for work done through June 30, 2018. [Doc. 3232][1] Plaintiffs previously submitted this motion for fees on October 31, 2019. [Doc. 3401] At the time, the Court instructed Plaintiffs to re-file their motion following issuance of the Ninth Circuit's mandate in Appeal No. 18-16358. [Doc. 3495] That mandate issued on April 27, 2020.[2]

## I.    Introduction

In October 2014, the parties reached a settlement agreement ("the Stipulation") in this class action filed on behalf of approximately 34,000 Arizona Department of Corrections ("ADC") prisoners, as well as the Arizona Center for Disability Law ("Plaintiffs").  The Court found the Stipulation to be "fair, adequate, and reasonable," and it went into effect on February 18, 2015. [Doc. 1458 at 1]  Under the Stipulation, Defendants are obliged to comply with the Stipulation's terms as well as monitor and report on their compliance with 103 health care performance measures.  [Doc. 1185 ¶¶ 8-10]

Since then, Plaintiffs have engaged in extensive and sustained efforts to enforce the terms of the Stipulation, serving upon Defendants multiple notices of non-compliance with the health care performance measures, opposing Defendants' efforts to terminate monitoring of the performance measures, and highlighting deficiencies in Defendants' monitoring practices, as well as ongoing enforcement documentation requested by the Court.[3]  Because of Plaintiffs' ongoing enforcement efforts and Defendants' continuing

---

[1] This motion for fees and costs is for the enforcement of the Heath Care Performance Measures only.  Fees for enforcement of the Maximum Custody Measures will be sought separately.  Fees in this motion are only sought for work performed by the ACLU National Prison Project ("NPP") and the Prison Law Office ("PLO").  Plaintiffs do not seek fees for work performed on this case by the ACLU of Arizona, Perkins Coie, LLP, or the Arizona Center for Disability Law.  This motion follows the "Second Fee Decision" for enforcement work from July 1, 2017 through June 30, 2018 (Doc. 3232) and the "First Fee Decision" for enforcement work from 2015 through June 30, 2017 (Doc. 2902).

[2] This motion is supported by the Declaration of Corene Kendrick (Doc. 3403, 3403-1) and the Declaration of David C. Fathi (Doc. 3406, 3406-1).

[3] [See, e.g., Pls.' Proposed Rule 706 Experts (Doc. 2940); Pls.' Proposal for Use of Contempt Fines (Doc. 2941); Pls.' Response to Defs.' "Implementation Plan" (Doc. 2961);

1   recalcitrance and failure to comply with the Stipulation, the Court has issued multiple orders

2   finding a host of performance measures noncompliant, appointed two Rule 706 experts,

3   ordered Defendants to develop remedial plans for noncompliant performance measures, and

4   ordered Defendants to bring myriad performance measures into compliance or face a civil

5   contempt sanction of $50,000 per performance measure per complex.[4]

6       Defendants' sustained, intractable non-compliance and their dilatory litigation

7   tactics have forced Plaintiffs' counsel to engage in over five years of ongoing enforcement

8   and litigation activities. Plaintiffs' efforts led to the Court's orders on December 11, 2018,

9   and May 30, 2019, appointing Dr. Marc Stern and Dr. Bart Abplanalp as FRE 706 experts.

10  [Doc. 3089; Doc. 3269] Plaintiffs' efforts led the Court to hold Defendants in contempt

11  during the last enforcement period. [Doc 2898][5] Yet during the 2018-2019 Enforcement

12  Period, Defendants' non-compliance continued, forcing the Court to order them to develop

---

Pls. Supp. to Proposed Rule 706 Experts (Doc. 2962); Pls.' Reply in Support of Proposal for Use of Contempt Fines (Doc. 2976); Pls.' Proposed Agenda for December 6, 2018 Status Hr'g (Doc. 3070); Pls.' Notice to Ct. Pursuant to Local Rule 7.2(n) (Doc. 3184); Pls.' Response to Ct.'s Order of May 13, 2019 (Doc. 3249); Pls.' Response to Defs.' Objections to Dr. Bart Abplanalp (Doc. 3258)] Plaintiffs also had to respond to many motions filed by Defendants. [*See, e.g.*, Defs.' Mot. to Stay June 22, 2018 Orders (Doc. 2971); Defs.' Mot. for Recon. of Ct. Order (Doc. 3261); and Defs.' Mot. to Stay and Objection to this Ct.'s Order Dated May 6, 2019 (Doc. 3265)]

[4] [*See, e.g.*, Doc. 2958 (ordering Defendants to submit updated Performance Measure Charts regarding May 2018 compliance); Doc. 3020 (granting in part Plaintiffs' Motion to Enforce and finding Performance Measures 19, 44, 48, 52, 67, 95, 96, and 98 substantially noncompliant at various facilities; ordering Defendants to develop remedial plans for certain Performance Measures); Doc. 3051 (ordering mediation regarding Performance Measure #3); Doc. 3057 (denying Defendants' Mot. for relief from Denial of Termination of Monitoring; denying Defendants' Mot. for Relief from Court Order for HNR Boxes; denying Defendants' Mot. to Stay Court Orders; granting Plaintiffs' Mot. for a Status Hearing); Doc. 3077 (order confirming Magistrate Judge Duncan had jurisdiction and that his previous rulings will remain in place); Doc. 3089 (appointing Dr. Marc Stern as Rule 706 expert); Doc. 3127 (clarifying the terms of Dr. Stern's engagement); Doc. 3231 (ordering Dr. Stern to include evidence in his report of how any failure to successfully perform on Performance Measures poses a significant risk of serious harm to patients due to substandard health care and whether the Performance Measures accurately reflect the adequacy of care being provided to prisoners); Doc. 3232 (awarding Plaintiffs $1.6 million in attorneys' fees and costs); Doc. 3234 (ordering Defendants to produce a Health Care Transition Plan); Doc. 3235 (ordering Defendants to be in substantial compliance or face civil contempt sanction); Doc. 3260 (ordering appointment of Magistrate Judge as mediator); Doc. 3269 (appointing Dr. Bart Abplanalp as Rule 706 expert)]

[5] The Ninth Circuit affirmed the finding of contempt, and dismissed Defendants' appeals of the expert appointment orders. *Parsons v. Ryan*, 949 F.3d 443, 459, 472 (9th Cir. 2020).

1   remedial plans for noncompliance again (Doc. 3020), and to bring a host of Performance

2   Measures into compliance or face a civil contempt sanction of $50,000 per Performance

3   Measure per complex (Doc. 3235).[6]

4       Additionally, the Court granted Plaintiffs $1.63 million in attorneys' fees and costs

5   for enforcement work performed through June 30, 2018.   [Doc. 3232 ("Second Fee

6   Decision"); Doc. 3245 (amending award)]  The $1.63 million fee award was based upon a

7   2.0 multiplier for exceptional work.

8       Throughout the 2018-19 Enforcement Period, the Court again issued multiple orders

9   due to Plaintiffs' enforcement work, including:

10      1.  Granting in part Plaintiffs' Motion to Enforce. [Doc. 2520]  In that order,
            the Court found noncompliance with numerous performance measures at
11          multiple prison complexes and ordered Defendants to file remedial plans
            tailored to each noncompliant performance measure and location.
12          [Doc. 3020]

13      2.  Appointing Dr. Marc Stern as an FRE 706 expert to review Defendants'
            monitoring process.  [Doc. 3089]  In the same order, the Court noted it
14          was appointing Dr. Stern because of "irregularities and errors in the
            monitoring process" and "substantial noncompliance with critical aspects
15          of health care delivery including access to prescription medications,
            diagnostic testing, routine and specialty physician consultations, treatment
16          for chronic care problems, and emergency care."[7]  [Id. at 1]

17

18      ──────────────────────────

        [6] More recently, the Court issued a second order to show cause why the Court should
        not impose a civil contempt sanction of $100,000 per Performance Measure per complex
19      (Doc. 3490).
        [7] The appointment of the FRE 706 experts during this period is the culmination of
20      several years of enforcement work by Plaintiffs and the Court's ongoing efforts to find
        solutions for Defendants' persistent noncompliance with the Stipulation. [See, e.g., Pls.'
21      Statement re: Appointment of Special Master or Court Expert (Doc. 2043) (responding to
        Court's notice to parties under Rule 53(b)(1) of the Federal Rules of Civil Procedure that it
22      was contemplating appointment of Special Master to evaluate Defendants' monitoring
        program and provide guidance to the Court on potential remedial measures; arguing for the
        appointment of an FRE 706 expert rather than a Special Master); Pls.' Statement Regarding
23      the Appointment of a Rule 706 Expert (Doc. 2133) (identifying potential FRE 706 experts
        as directed by the Court who can assist the Court in identifying additional remedies the
24      Court can order so that Defendants can operate a constitutional health care system and
        achieve compliance with the Stipulation); Transcript of Evidentiary Hearing and Status
25      Hearing, Aug. 8, 2017 at 175:1-15; 179:1-17 (discussing the Court's query regarding the
        appointment of a Master or FRE 706 expert to assist with compliance); Pls.' Statement
26      Regarding Court Authority to Appoint a Rule 706 Expert (Doc. 2250) (responding to
        Court's request for PLRA cases in which a court appointed an FRE 706 expert); Transcript
27      of Status Hearing, Nov. 7, 2017 at 18:1-17 (Court discusses the need to engage an FRE 706
        expert with respect to evaluating the quality of the monitoring program); Transcript of
28      Status Hearing, Dec. 20, 2017 (amended) at 12:22-16:3 (discussing possibility of appointing

3. Ordering Defendants to bring 34 performance measures/complex pairs into compliance no later than July 1, 2019, and requiring Defendants to show cause why the Court should not impose a civil contempt sanction of $50,000 per Performance Measure per complex by July 26, 2019. [Doc. 3235]

4. Appointing Dr. Bart Abplanalp as an FRE 706 expert to review mental health files at the request of Dr. Stern.  [Doc. 3269]

In light of their extraordinary success in vindicating the rights of the Plaintiff class, Plaintiffs' counsel are entitled to a fully compensatory fee.  Moreover, a 2.0 multiplier is appropriate for the work performed and results obtained during the 2018-19 Enforcement Period.  This includes work performed in obtaining fees, which is separately compensable in this Circuit.  The tremendous amount of work, time, effort, and costs expended by Plaintiffs to enforce the Stipulation has continued unabated, and this work must now be compensated by the plain terms of the Stipulation.  Plaintiffs therefore request an award of attorneys' fees in the amount of $189,858.60 as compensation for enforcement work during the 2018-19 Enforcement Period.  A 2.0 multiplier would bring Plaintiffs' fees to a total of $379,717.20.  For costs, Plaintiffs seek $7,141.41.  In total, Plaintiffs seek $386,858.61 in fees, costs, and enhancements.

## II.    Plaintiffs are Entitled to Recover Fees

### A.    Plaintiffs are Entitled to Recover Fees Under the Stipulation

Under Rule 23 of the Federal Rules of Civil Procedure, a court may award attorneys' fees and costs "that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In the Stipulation approved by the Court on February 18, 2015, the parties agreed:

---

FRE 706 expert to evaluate monitoring process); Transcript of Status Hearing, Jan. 18, 2018 at 149:9-150:7 (discussing the need to appoint a FRE 706 expert on monitoring due to Defendants' noncompliance and the Court's request for additional information on the process); Transcript of Evidentiary Hearing/Order to Show Cause, April 10, 2018 at 1232:22-1235:5 (Plaintiffs request appointment of FRE 706 expert after six days of hearings); Transcript of Status Hearing, May 5, 2018 at 26:5-23 (Plaintiffs reiterate request for FRE 706 expert to oversee and supervise Defendants' monitoring of Stipulation); Order, June 22, 2018 (Doc. 2900) (denying in part and granting in part Defendants' motion to terminate monitoring; ordering the parties to submit the names of two proposed experts to conduct review of monitoring process); and Pls.' Proposed Rule 706 Expert to Review Defs.' Monitoring Process (Doc. 2940) (proffering names and CVs for proposed FRE 706 experts)]

> In the event that Plaintiffs move to enforce any aspect of this Stipulation and the Plaintiffs are the prevailing party with respect to the dispute, the Defendants agree that they will pay reasonable attorneys' fees and costs, including expert costs, to be determined by the Court. The parties agree that the hourly rate of attorneys' fees is governed by 42 U.S.C. § 1997e(d).

[Doc. 1185 ¶ 43][8]

The Ninth Circuit recently confirmed that Plaintiffs are entitled to fees for all of their enforcement work under this provision of the Stipulation. *Parsons v. Ryan*, 949 F.3d 443, 460 (9th Cir. 2020). The Court "reject[ed] Defendants' contention that Paragraph 43 only applies to time spent related to documents bearing the title 'Motion to Enforce.'" *Id.* The Court similarly rejected Defendants' argument that Plaintiffs may only receive fees for enforcement of "'provision[s] in the Stipulation that expressly require[] Defendants to do some act.'" *Id.* The Court concluded that the "plain language of the Stipulation supports an award of fees for enforcement of '*any aspect*' of the Stipulation" in which Plaintiffs are the prevailing party. *Id.* (emphasis in original).

As a result of the Court's straightforward interpretation of the Stipulation, an award of attorneys' fees here is again appropriate for all work performed enforcing the Stipulation during the 2018-19 Enforcement Period. All the fees sought result from Plaintiffs' successful efforts to require Defendants to satisfy their obligations under the Stipulation.[9] Accordingly, a fully compensatory award of fees is appropriate.[10]

## B. Plaintiffs Are Entitled to an Award of Fees Under 42 U.S.C. § 1988

While the award of attorneys' fees and costs for work done to enforce the Stipulation is authorized by the Stipulation itself (Doc. 1185 ¶¶ 43, 44), the Stipulation uses the phrases

---

[8] [*See also id.* ¶ 44 (stating the annual cap on monitoring fees "shall not apply to any work performed in mediating disputes before the Magistrate pursuant to paragraphs 22, 29, and 31 above, or to any work performed before the District Court to enforce or defend this Stipulation.")]

[9] Plaintiffs' counsel has also spent considerable time responding to Defendants' frivolous motions. *See supra* note 4.

[10] Because the Stipulation specifically authorizes fees, the availability of fees is not contingent upon any findings made pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d) *et seq.* Pursuant to the plain terms of the Stipulation, the PLRA governs the award of attorneys' fees only as to the hourly rate established under that statute. *See* section III(A)(2), *infra*.

"prevailing party" and "reasonable attorney's fees," terms borrowed from 42 U.S.C. § 1988. Section 1988 provides that a court may grant "a reasonable attorney's fee as part of the costs" to the "prevailing party" in a civil rights suit. *See* 42 U.S.C. § 1988(b). Analysis of attorneys' fees under Section 1988 begins with a determination of "prevailing party."

A prevailing party is one who has "succeeded on **any** significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (emphasis added) (internal quotations omitted); *see also Farrar v. Hobby*, 506 U.S. 103, 111 (1992) ("Therefore, to qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim.").

Here, Plaintiffs have continuously and repeatedly prevailed in their efforts to enforce the Stipulation. As a result of Plaintiffs' efforts during the 2018-19 Enforcement Period, this Court: (1) ordered Defendants to bring a host of performance measures into compliance; (2) ordered Defendants to show cause why the Court should not impose a civil contempt sanction of $50,000 per noncompliant performance measure per complex; (3) took the extraordinary step of appointing two FRE 706 experts to review Defendants' monitoring process and medical and mental health care; (4) found Defendants substantially noncompliant with a multitude of performance measures at multiple institutions; and (5) ordered Defendants to develop remedial plans. [*See, e.g.*, Docs. 3020, 3235, 3089, 3269]

That Plaintiffs did not obtain every single aspect of relief they sought during the 2018-19 Enforcement Period is irrelevant to the prevailing party determination. Likewise, the fact that the Court's ultimate findings of substantial noncompliance do not encompass every performance measure at every institution originally identified in a Notice of Substantial Noncompliance does not negate the fact that Plaintiffs are the prevailing party. To be considered the prevailing party "[i]t is enough that [the plaintiff] succeed 'on any significant claim affording some of the relief sought, either *pendente lite* or at the conclusion

of the litigation.'"  *Stivers v. Pierce*, 71 F.3d 732, 751 (9th Cir. 1995) (quoting *Tex. State Teachers Ass'n*, 489 U.S. at 791); *see also* Doc. 2902 at 2-3; Doc. 3232 at 2.

## C.   Plaintiffs are Entitled to Recover Fees and Costs as a Remedy for Contempt

Even if the Stipulation did not provide for an award of fees and costs, a court's finding of contempt constitutes an independent ground for a fully compensatory award. *See, e.g.*, *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014) ("We hold that the Plaintiffs are entitled to recover attorney's fees and costs incurred in bringing and prosecuting these contempt proceedings."); *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) ("Attorneys' fees frequently must be expended to bring a violation of an order to the court's attention. . . . We therefore conclude that the trial court should have the discretion [in contempt proceedings] to . . . decide whether an award of fees and expenses is appropriate"); *Webb v. Ada Cty.*, 285 F.3d 829, 834-35 (9th Cir. 2002) (affirming award of attorneys' fees as a remedy for contempt in jail conditions case).

In *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1075 (D. Idaho 2014), the district court held defendant prison officials in contempt and imposed relief, including monetary sanctions and the appointment of an independent monitor.  The court also awarded plaintiffs their attorneys' fees and costs associated with the contempt proceedings, and the Ninth Circuit affirmed the fee award.  *Kelly v. Wengler*, 822 F.3d 1085 (9th Cir. 2016).  Likewise, in *Medina v. Buther*, No. 15-CV-1955(LAP), 2019 WL 4370239 (S.D.N.Y. Sept. 12, 2019), the district court held defendant prison officials in contempt and awarded plaintiffs their attorneys' fees and costs associated with the contempt proceedings in addition to monetary damages.

As in *Kelly* and *Medina*, this Court is poised to hold Defendants in contempt and impose monetary sanctions.  Here, the Court ordered Defendants to bring 34 performance measures/complex pairs into compliance no later than July 1, 2019, and required Defendants to show cause why the Court should not impose a civil contempt sanction of

$50,000 per Performance Measure per complex by July 26, 2019.  [Doc. 3235]  After Defendants filed a Motion for Reconsideration (Doc. 3261) the Court granted them additional time in which to provide compliance data and to show cause why the Court should not impose civil contempt sanctions. [Doc. 3306 at 2]  The matter was fully briefed under the Court's revised schedule as of September 20, 2019 (*id.*) and awaits decision. [*See* Doc. 3727][11]

All of Plaintiffs' time and expenses during the 2018-19 Enforcement Period were directed toward demonstrating Defendants' noncompliance with the Stipulation, upon which any contempt finding will rest.  Accordingly, in addition to the explicit attorneys' fee provisions of the Stipulation, a contempt finding by this Court would furnish an independent ground on which to award Plaintiffs a fully compensatory fee.

**D.     Plaintiffs Are Entitled to Recover Fees for Their Successful Fee Motion**

A portion of the time expended during the 2018-19 Enforcement Period was devoted to Plaintiffs' successful motion for attorneys' fees and costs incurred through June 30, 2018. [*See* Doc. 3232 (awarding Plaintiffs approximately $1.63 million in fees and costs)]  As a general matter, "time spent in establishing entitlement to an amount of fees awardable under section 1988 is compensable."  *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986) (citations omitted); *see also Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th Cir. 1995) (same).  Thus, Plaintiffs are entitled to recover attorneys' fees for the work performed in securing the Second Fee Decision.

**E.     Plaintiffs Are Entitled to Recover Fees for Work Performed by Law Students**

The law is clear that nonprofit organizations may recover fees for time expended by unpaid volunteer attorneys and law students.  *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 286-87 (1989) (noting the "'increasingly widespread custom of separately billing for

---

[11] The Court subsequently issued another order to show cause why the Court should not impose a civil contempt sanction of $100,000 per Performance Measure per complex (Doc. 3490 at 4).

the services of paralegals and law students who serve as clerks'"(citing *Ramos v. Lamm*, 713 F.2d 546, 558 (10th Cir. 1983) and approving such fees as long as they are "consistent with market rates and practices" regardless of actual pay received)); *Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 1006 (N.D. Cal. 2012) (approving fees for unpaid law students); *Skinner v. Uphoff*, 324 F. Supp. 2d 1278, 1285-86 (D. Wyo. 2004) (volunteer attorneys); *see also League of Wilderness Defs./Blue Mountains Biodiversity Project v. Turner*, 305 F. Supp. 3d 1156, 1170 (D. Or. 2018) (finding law clerk and paralegal time compensable and rejecting government's argument that proof of payment for law clerks was necessary for the award of fees).

The Court's First Fee Decision stated that Plaintiffs' counsel should not be awarded fees for the time expended on the case by law students because the Court thought that they were unpaid.  [*See* Doc. 2902 at 9]  However, in the instant case, some of the law students employed by the ACLU National Prison Project, and all of those employed by the Prison Law Office, are paid for their work.  [*See* Doc. 3406 ¶ 9 (Declaration of David C. Fathi, October 29, 2019); Doc 3403 ¶ 6 (Declaration of Corene Kendrick, October 29, 2019) (noting that all four of the law students who worked on this case during the relevant period were paid)]  Those who are not paid receive credit from their law schools.  [Doc. 3406 ¶ 9]

As the Ninth Circuit has recognized, "Plaintiffs are correct that compensation for unpaid law clerks is permissible under 42 U.S.C. §1988."  *Parsons*, 949 F.3d at 467 (citing cases).  Plaintiffs thus request that the Court award fees for all time spent by law students during the 2018-19 Enforcement Period.  However, in light of the Court's previous ruling, Plaintiffs have separately calculated fees with and without the amounts attributable to the work of unpaid law students.  [Doc. 3406 ¶ 9][12]  If the time of unpaid law students is excluded, the lodestar is reduced from $189,858.60 to $187,829.10.

---

[12] Law students receiving only course credit worked a total of 12.3 hours amounting to $2,029.50 in fees.

### III.   Plaintiffs Are Entitled to Recover All of Their Requested Fees and Costs and a 2.0 Multiplier

Having determined that Plaintiffs are the prevailing party, calculating the fee award is a two-step process.  First, the Court calculates the "lodestar figure by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJF-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (internal quotations marks omitted); *see also Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (same).

Second, the court must "decide whether to enhance or reduce the lodestar figure." *Fischer*, 214 F.3d at 1119.  In *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), the Ninth Circuit adopted as appropriate factors in determining a reasonable attorneys' fee the twelve guidelines originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  In *Fischer*, the Court explained that the adjustment of the lodestar is "based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."  214 F.3d at 1119; *see also Graves v. Arpaio*, 633 F. Supp. 2d 834, 842 (D. Ariz. 2009) (citing an evaluation of the *Kerr* factors as the basis for enhancing or reducing the lodestar).

#### A.   Calculation of Reasonable Attorneys' Fees

The "most critical factor" in determining the reasonableness of a fee award in a civil rights suit "is the degree of success obtained."  *Farrar*, 506 U.S. at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).  In *Hensley*, the Supreme Court considered whether the district court could grant attorneys' fees for time expended on claims on which plaintiffs did not prevail.  The Court held that even though a plaintiff was not entitled to an award of fees for time spent on unsuccessful claims that were unrelated to successful claims, 461 U.S. at 434-35, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."  *Id.* at 440.  Thus, a court's duty in a complex case is not to parse out and determine fees on a claim-by-claim basis, since "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the

hours expended on a claim-by-claim basis." *Id.* at 435.  Rather, where the plaintiff presents different claims for relief that "involve a common core of facts" or are based on "related legal theories," the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*; *see also Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir. 2013) ("Often, attorney work will bear on multiple claims, only some of which are successful.  Fees for work which relates only to unsuccessful claims should not be awarded.  But where attorney work proves beneficial to a successful claim, district courts should generally award these fees in full, even if the work is also useful to an unsuccessful claim.") (citing *Hensley*, 461 U.S. at 436)).

The overwhelming majority of the hours spent by Plaintiffs related to their successful attempts to enforce the Stipulation in the face of Defendants' substantial and ongoing noncompliance and their successful efforts responding to Defendants' baseless motions to disqualify the Court and motions for reconsideration.  All of Plaintiffs' claims of noncompliance involved a common core of facts and were based on related legal theories.  Accordingly, Plaintiffs' counsel should recover a fully compensatory fee.  The hours spent prosecuting the motions to enforce, evaluating Defendants' efforts to comply, and informing the Court of Defendants' continuing noncompliance are essentially indistinguishable; all involved the common issue of Defendants' failure to comply with the Stipulation and their resulting failure to provide class members the health care to which they are legally entitled.  Accordingly, the hours spent on these enforcement activities, including responding to Defendants' frivolous motions, are fully compensable.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435.

### 1. Documentation Supporting Reasonableness

Counsel has previously filed documentation indicating the identity of the biller, time spent on the activity, specific description of the activity, and hourly rate charged by the

biller.  [Doc. 3406 ¶ 6, Ex. A; Doc. 3403 ¶ 5, Ex. A]  Billers kept contemporaneous records of their time and entered it in their organization's respective billing system.  [Doc. 3406 ¶ 10; Doc. 3403 ¶ 5]  As appropriate, billing judgment was exercised to reduce the total number of hours for which compensation is sought.  [Doc. 3406 ¶ 6; Doc. 3403 ¶ 5]

### 2.  Determination of the Hourly Rate

Having determined the number of hours reasonably spent on various activities, the next step is to determine appropriate hourly rates for the attorneys, paralegals, and law clerks who billed time.

Given the lack of available counsel, *see infra* Section III(A)(4)(e), this case falls under an exception to the "local forum" rule for attorneys' fees.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) ("[R]ates, other than those of the forum, may be employed if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.").  Accordingly, Washington, D.C. and San Francisco Bay Area rates should be used as a starting point for calculating NPP and PLO's lodestar. *See Parsons*, 949 F.3d at 466 ("Plaintiffs have submitted uncontroverted evidence regarding the unavailability of local counsel to handle complicated and low-paying prison cases such as this one. There is thus a factual and legal basis for the district court to award fees based on rates outside Phoenix.").

However, because the Stipulation adopts the PLRA limit on the hourly rate for attorneys' fees—150 percent of the hourly rate established for payment of court-appointed counsel (Doc. 1185 ¶ 43; 42 U.S.C. § 1997e(d)(3); Doc. 2902 at 3)—the rate here is already pre-determined.

The Ninth Circuit recently clarified that the baseline for the PLRA hourly rate is the rate that the "Judicial Conference authorized and requested from Congress" which is found in the "Congressional Budget Summary and the Report of the Proceedings of the Judicial Conference of the United States[.]" *Parsons*, 949 F.3d at 464-65. The current rate authorized by the Judicial Conference for the payment of court-appointed counsel is $149

per hour for FY 2020,[13] and accordingly, 150 percent of that rate is $223.50 per hour for federal FY 2020, which began on October 1, 2019. *See Graves v. Penzone*, No. CV-77-00479-PHX-NVW, 2020 WL 1984022 at *6 (D. Ariz. Apr. 27, 2020) (applying the 2020 PLRA rate of $223.50 per hour). Thus, even if the Court were to award fees at Arizona rates rather than Washington, D.C. or San Francisco Bay Area rates, the result would be the same, as $223.50 is below the Arizona market rate even for first-year attorneys. [*See* Doc. 2279 ¶ 7 (Decl. of Kathy Brody); *see also* Doc. 2902 at 6 (finding that the PLRA rate "is comparable to private practice rates for a first year lawyer")]

Supreme Court and Circuit precedent establish that attorneys' fees are to be paid at current rates. See *Jenkins by Agyei*, 491 U.S. at 282 (Compensation for fees over time is made "either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value."); *Gates*, 987 F.2d at 1406 ("[P]laintiffs' counsel began preparing this lawsuit over three years ago. Since that time, they have expended an enormous amount of time and money without compensation. An award based on current rates is reasonable to adjust for this delay"). This holds true in the context of fees under the PLRA as well. "[N]othing in the PLRA establishes that historical PLRA rates should be employed in lieu of the current rate as the cap for when fees were awarded." *Graves*, 2020 WL 1984022, at * 7 (awarding the NPP attorney fees at an hourly rate of $223.50 in 2020 for work done from 2014 to 2019, and law clerk fees at the requested rates of $165 and $150). *See also Skinner*, 324 F. Supp. 2d at 1283 ("[T]he hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed. The language of the

---

[13] https://www.uscourts.gov/sites/default/files/fy_2020_congressional_budget_summary_0.pdf at 37. Plaintiffs request the Court take judicial notice of this government document pursuant to Federal Rule of Evidence 201(c)(2). Under Federal Rule of Evidence 201, the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033–34 (C.D. Cal. 2015) (citing *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08–CV–1166–IEG, 2009 WL 6597891, *1 (S.D. Cal. Dec. 23, 2009); *see also Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts because they were government entities).

PLRA does not indicate any intention of changing this long-standing policy.")  (internal quotation marks and citations omitted); *Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1355 (S.D. Fla. 2017) (awarding the NPP attorney fees at an hourly rate of $219 in 2017 for work done from 2001 to 2016, and law clerk fees at the requested rate of $160).

Like attorney fees under the PLRA, the hourly rate for paralegals is also capped by the PLRA at 150% of the hourly rate determined by the Judicial Conference.  *See Perez v. Cate*, 632 F.3d 553, 556-58 (9th Cir. 2011) (paralegal fees awarded to prevailing plaintiffs in prison civil rights litigation are subject to same hourly cap under the PLRA as attorney fees where award is below paralegal market rate in relevant area); *Parsons*, 949 F.3d at 466 ("[P]aralegals are entitled to the PLRA's maximum hourly rate if the paralegal market rate exceeds that cap."); *see also* Doc. 3403 ¶ 8 (the hourly market billing rate for paralegals/investigators in the San Francisco Bay Area is $300-335); Doc. 3406 ¶ 16 (hourly billing rate for paralegals in the Washington, D.C. area is $165).

### 3.  Calculation of the Lodestar

Plaintiffs' counsel spent a total of 862.20 hours enforcing the Stipulation between July 1, 2018 and June 30, 2019. Multiplying these hours by the hourly rate of each biller yields a total of $189,858.60:

**Prison Law Office**

| Attorney/Staff | Hours Billable | Hourly Rate | Total Billable |
|---|---|---|---|
| Donald Specter | 51.30 | $223.50 | $11,465.55 |
| Corene Kendrick | 196.50 | $223.50 | $43,917.75 |
| Alison Hardy | 15.70 | $223.50 | $ 3,508.95 |
| Rita Lomio | 134.70 | $223.50 | $30,105.45 |
| Sara Norman | 4.30 | $223.50 | $    961.05 |
| Thomas Nosewicz | 4.40 | $223.50 | $    983.40 |
| Law Clerks | 44.60 | $223.50 | $ 9,968.10 |
| Paralegals | 10.20 | $223.50 | $ 2,279.70 |
|  |  |  |  |
| **Total** | **461.70** |  | **$103,189.95** |

**ACLU National Prison Project**

| Attorney/Staff | Hours Billable | Hourly Rate | Total Billable |
|---|---|---|---|
| David Fathi | 153.60 | $223.50 | $34,329.60 |
| Amy Fettig | 75.20 | $223.50 | $16,807.20 |
| Ryan Kendall | 65.20 | $223.50 | $14,572.20 |
| Justin Sadowsky | 44.50 | $223.50 | $ 9,945.75 |
| Stephanie Wylie | 1.20 | $223.50 | $    268.20 |
| Law Clerks | 12.30 | $165.00 | $ 2,029.50 |
| Paralegals | 36.30 | $165.00 | $ 5,989.50 |
|  |  |  |  |
| Total | 388.30 |  | $83,941.95 |

The lodestar method of calculating fees is strongly presumed to be reasonable. *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992) ("There is a strong presumption that the lodestar figure is reasonable"); *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996) (same). However, courts may also consider the *Kerr* factors that are subsumed in the lodestar calculation when determining reasonableness.[14] *See Graves*, 633 F. Supp. 2d at 846. Specifically, *Kerr* factors 1 through 4 are used by the court to determine the reasonableness of the award. *See id.* Factor 6 was also used to determine reasonableness, but the Supreme Court has turned away from considering the fixed or contingent nature of the fee being charged. *City of Burlington v. Dague*, 505 U.S. 557, 566 (1992) ("Contingency enhancement is therefore not consistent with our general rejection of the

---

[14] The *Kerr* factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee."). Plaintiffs set forth each of the factors relevant to the reasonableness of the lodestar:

### a. The Time and Labor Required

The first *Kerr* factor, the time and labor required, is included in the calculation of the lodestar.  *Morales*, 96 F.3d at 364 n.9.  NPP relies upon paralegals (under attorney supervision) to conduct document review and analysis.  Doc. 3406 ¶ 11.  NPP also uses lower-billing law students to perform legal research and related tasks.  *Id.*  Similarly, PLO endeavors to staff the case as efficiently as possible, and utilizes paid law clerks to perform basic legal research and document review and analysis.  [Doc. 3403 ¶ 6]

### b. The Novelty and Difficulty of the Issues

The second *Kerr* factor, the novelty and difficulty of the issues presented, is presumably reflected in the calculation of the lodestar.  *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–65 (1986) (citing *Blum v. Stenson*, 465 U.S. 886, 898-900 (1984)).  However, it is important to note that, in determining fees, Congress considered civil rights cases to be as complex as antitrust cases.  *See Blum*, 465 U.S. at 893. Indeed, the issues presented in enforcing compliance with the Stipulation were uncommonly difficult.  While it is not unusual for pre-judgment cases to be hard fought, in most cases once there is agreement on a remedy there is much more cooperation and much less rancor between the parties.  As the Court noted in its First Fee Decision:

> [Enforcement] could have been simple if Defendants had been able to comply with the Stipulation's requirements, had timely responded to document requests, had promptly developed a final version of the Monitor Guide, and had not raised spurious legal arguments.  However, **the last two years have not been simple** and so the court concludes that this prong has been met.

[Doc. 2902 at 5 (footnote omitted) (emphasis added)]  This is not a run-of-the-mill case for other reasons as well.  It requires enormous amounts of time and expense enforcing the Stipulation in the face of the constant obstacles erected by the ADC, Corizon, and Defendants' counsel.  Compared to the many other judgments and settlements in Plaintiffs'

counsel's experience, this case stands out for Defendants' failure to acknowledge that there are problems in the delivery of health care, failure to cooperate in any meaningful way, and seeming unwillingness or inability to comply with the Court's orders or the remedies that they agreed to implement.  [Doc. 3403 ¶ 4]

### c.  The Skill Required to Perform the Legal Services

The third *Kerr* factor, the skill required to perform the legal services provided, likewise is presumably reflected in the calculation of the lodestar.  *Del. Valley Citizens' Council*, 478 U.S. at 565.  Nevertheless, "the trial judge should closely observe the attorney's work product, his preparation, and general ability before the court.  The trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important in this consideration."  *Johnson*, 488 F.2d at 718.  This complex case required highly skilled lawyers and advocates. As the Court noted in its First Fee Decision:

> Defendants have been unable to comply with multiple performance measures and so the post-Stipulation enforcement work has required a deep dive into the minutiae of prison health care operations, from refilling prescriptions to informing patients of test results.  Any suggestion that skill is not required to solve the problem of compliance is belied by the fact that, notwithstanding their various proposed remediation plans, the problem remains. Based on their experience, Plaintiffs' counsel has brought ideas from other jurisdictions to this matter and this has assisted the Court (and Defendants) with solutions.

[Doc. 2902 at 6]  Defendants' conduct in this litigation remains sadly unchanged from the time of the First Fee Decision.  And Plaintiffs' attorneys have again met this standard.

### d.  The Preclusion of Other Employment by the Attorneys Involved in the Case

The fourth *Kerr* factor, the preclusion of other employment, is also already included in the lodestar analysis. *Graves*, 633 F. Supp. 2d at 846.  Nevertheless, Plaintiffs note that this "guideline involves the dual consideration of otherwise available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact

that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." *Johnson*, 488 F.2d at 718; *see also Kerr*, 526 F.2d at 70. As the Court previously observed, "[t]here are only so many hours in a day and working on one case necessarily precludes work on another." [Doc. 2902 at 6]

Plaintiffs' counsel already represented the certified class of ADC prisoners at the beginning of the period for which fees are now sought. Nevertheless, all of the work performed for which compensation is requested came with a significant opportunity cost. David Fathi, Director of NPP, is a senior litigator who devoted the largest share of NPP's total hours on this portion of the case. He was precluded from accepting new, potentially fee-generating work while he labored on this case both prior to and during the 2018-19 Enforcement Period. [Doc. 3406 ¶ 17] Attorneys at the PLO were likewise limited in the new work that they could take on during the period covered by this motion. [Doc. 3403 ¶ 4].

### 4. The Remaining *Kerr* Factors Support an Award of a 2.0 Fee Enhancement

The Ninth Circuit has endorsed an enhancement to the lodestar figure, in appropriate circumstances, in prisoner rights cases for declaratory and injunctive relief. *See Kelly*, 822 F.3d at 1093, 1102-06 (affirming 2.0 enhancement in prisoner rights class action where attorneys demonstrated superior performance and the need to attract competent counsel). Such enhancements are determined based on an evaluation of the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Parsons*, 949 F.3d at 467 (quoting *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 & n.4 (9th Cir. 2000)). Any decision to adjust the initial lodestar figure is therefore informed by *Kerr* factors 5 and 7 through 12. *See Kerr*, 526 F.2d at 70; *Graves*, 633 F. Supp. 2d at 847. *See also Parsons*, 949 F.3d at 466 (holding that the district court abused its discretion by "effectively double-count[ing] certain factors" when the district court considered those factors already subsumed in the lodestar determination).

Plaintiffs set forth here each of the *Kerr* factors relevant to determining whether to enhance the lodestar figure:

1

### a. The Customary Fee in Similar Litigation

2       The fifth *Kerr* factor is the customary fee in similar litigation. *Kerr,* 526 F.2d at 70.

3   In the declarations filed herewith, Plaintiffs have indicated the market hourly rates for their

4   attorneys and other staff.  The rates charged by the PLO are set based on prevailing market

5   rates in the San Francisco Bay Area.  [Doc. 3403 ¶ 8]  The rates charged by NPP were set

6   with reference to the "Laffey Matrix," which is intended by the U.S. Department of Justice

7   to be used to determine rates in the Washington, D.C. area in cases in which a fee-shifting

8   statute permits the prevailing party to recover reasonable attorneys' fees.  [Doc. 3406 ¶¶ 13-

9   15; Ex. C]  These rates would ordinarily be the "customary fees" charged in similar

10  litigation.  However, because the Stipulation adopts the PLRA's cap on hourly rates, the

11  customary fee becomes the PLRA rate cap of $223.50 per hour.  This is orders of magnitude

12  less than would be recovered in litigation not governed by the PLRA.  [*See* Doc. 2280 ¶ 12

13  (Decl. of Larry A. Hammond); *see also* Doc. 2902 at 6 (PLRA cap "is comparable to private

14  practice rates for a first-year lawyer; comparable to what Defendants' RFP authorized to

15  outside counsel; and less than half the hourly rate for an experienced private sector

16  attorney.")

17

### b. Time Limitations Imposed by the Clients or Circumstances

18      *Kerr* factor seven considers the limitations imposed by the client or the

19  circumstances.  *Kerr*, 526 F.2d at 70. "Priority work that delays the lawyer's other legal

20  work is entitled to some premium." *Johnson*, 488 F.2d at 718; *see also Kerr*, 526 F.2d at

21  70 (listing preclusion of other employment opportunities due to attorneys' acceptance of

22  case as one of the factors courts must consider); *see also* Doc. 2902 at 7 ("[T]he pace of this

23  matter is on-going and does not allow counsel to pause this case and work on other

24  matters."). Here, Plaintiffs' counsel have prioritized the ongoing and extensive work

25  required in this case during 2018-19 Enforcement Period, frequently to the exclusion of

26  other work. [*See* Doc. 3406 ¶ 17; Doc. 3403 ¶ 4]

27

28

### c.  The Results Obtained by the Lawsuit

The eighth *Kerr* factor requires courts to consider the results obtained by the lawsuit. *Kerr*, 526 F.2d at 70.  As discussed above, there can be no dispute that Plaintiffs' counsel obtained excellent results for the class, vigorously and repeatedly enforcing terms of the Stipulation in the face of Defendants' sustained intransigence, and ultimately securing the appointment of two FRE 706 experts to review Defendants' monitoring process, medical and mental health care.  *See supra,* Section I.  As the Court noted in the First Fee Decision, "Defendants argue that Plaintiffs' fee application should be limited to discreet [sic] 'successes.' . . . Again, this is too narrow an understanding of the enforcement phase of this Stipulation and does not reflect the reality of [enforcement work undertaken by Plaintiffs in this case]." [Doc. 2902 at 7]  The Ninth Circuit agreed.  *Parsons*, 949 F.3d at 460.  Notably, the exceptional results obtained by Plaintiffs' counsel are not reflected in a surcharge in the hourly billing rates. [Doc. 3406 ¶ 19; Doc. 3403 ¶ 8]

### d.  The Experience, Reputation, and Ability of the Attorneys

The use of the ninth *Kerr* factor, the experience, reputation and ability of the attorneys, has been limited since *Kerr* was decided. *Del. Valley Citizens' Council*, 478 U.S. at 565 ("'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award") (quoting *Blum*, 465 U.S. at 898-900).  It is nonetheless true that class counsel in this matter are leading national experts in prisoners' rights litigation.  The NPP, founded in 1972, is one of the most experienced groups of prisoners' rights litigators in the nation.  It has almost fifty years of experience litigating prison conditions class actions such as this case.  [Doc. 3406 ¶ 3]  Federal courts have repeatedly recognized the special expertise of NPP staff.  [Doc. 3406 ¶ 4]  Similarly, the PLO has decades of experience bringing successful system-wide class action prisoner rights suits, including seminal cases in the Ninth Circuit and the U.S. Supreme Court.  [Doc. 3403

¶ 2]  In the First Fee Decision, the Court noted that counsel have "deep experience in prison litigation and have used that experience to accelerate the Court's focus on issues." [Doc. 2902 at 7]

### e.  The Undesirability of the Case

The tenth *Kerr* factor considers the undesirability of the case. *Kerr*, 526 F.2d at 70. Class action cases on behalf of prisoners are generally considered "undesirable" even by the civil rights bar, in part because they are so time-consuming and expensive to litigate. *See* Doc. 3406 ¶ 18; *see also Planned Parenthood of Cent. & N. Ariz. v. State of Ariz.*, 789 F.2d 1348, 1354 (9th Cir. 1986) ("We recognize that the 'undesirable' nature of a case is an appropriate factor in determining attorneys' fees.").  The PLRA's fee cap serves to make such cases even more undesirable by cutting market rates substantially.  *See, e.g.*, *Graves*, 633 F. Supp. 2d at 847 ("This case is considered 'undesirable' because § 1983 class actions on behalf of prisoners involving the conditions of confinement are exceedingly fact-intensive, time consuming, and expensive to litigate, and the PLRA restricts the hourly rate for attorneys' fees below market.").

In the present case, finding counsel to represent the class was difficult.  There are no offices in Arizona like the PLO and the NPP.  [*See* Doc. 2279 ¶ 5 (Decl. of Kathy Brody)] No lawyers in Arizona have the degree of experience in prisoner rights litigation or the expertise to litigate a complex, statewide, prisoner rights class action, and as a result it was necessary to bring in outside legal expertise to conduct this case.  [*Id.*]  It is also the case that no qualified lawyers in Arizona would have been willing to bring this case and others like it for the low fee rate set by the PLRA.  [*Id.*; Doc. 2280 ¶¶ 11-12] Moreover, if the NPP and the PLO had not joined the *Parsons v. Ryan* legal team, this case would not have been brought by the ACLU of Arizona or other local counsel.  [*See* Doc. 2279 ¶ 6; Doc. 2280 ¶ 10]

1

### f.  The Nature and Length of the Professional Relationship With the Clients

2

The eleventh factor regards the professional relationship between counsel and the

3

plaintiffs. *Kerr*, 526 F.2d at 70. Plaintiffs' counsel began their relationship with the plaintiff

4

class more than nine years ago, when the NPP and the PLO began investigating conditions

5

in the Arizona Department of Corrections.  [Doc. 3406 ¶ 5; Doc. 3403 ¶ 3]  Since then,

6

counsel has maintained close contact with individual prisoners, and the class as a whole,

7

through regular visits, tours, and interviews.  [Doc. 3406 ¶ 5; Doc. 3403 ¶ 3]  Therefore, as

8

the Court noted in the First Fee Decision, this *Kerr* factor weighs in favor of an

9

enhancement.  [Doc. 2902 at 8]

10

### g.  Awards in Similar Cases

11

The final *Kerr* factor instructs courts to consider awards in similar cases. *Kerr*, 526

12

F.2d at 70.  "The reasonableness of a fee may also be considered in the light of awards made

13

in similar litigation within and without the court's circuit."  *Johnson*, 488 F.2d at 719; *see*

14

*also Moore v. James H. Matthews & Co.*, 682 F.2d 830, 838 (9th Cir. 1982).  Other than

15

the previous fee awards in this case—both of which included a 2.0 multiplier—it is difficult,

16

if not impossible, for the sake of comparison, to identify cases with identical fact patterns,

17

procedural histories, or time necessary to obtain relief.  Nevertheless, the cases discussed

18

below may be instructive.

19

In *Graves*, a case decided in 2008, the attorneys representing a plaintiff class of

20

people detained in the Maricopa County Jail successfully defeated, in part, a motion to

21

terminate a judgment involving conditions of confinement, although some provisions of the

22

judgment were terminated.  As a result of the litigation in *Graves*, the Court issued an

23

amended, enforceable judgment.  633 F. Supp. 2d at 841.  The Court also awarded the NPP

24

the full amount of attorneys' fees requested, even though some provisions of the original

25

judgment were terminated.  *Id.* at 856 (awarding attorneys' fees in the amount of

26

$1,239,491.63).  Similarly, in *Rodriguez v. Cty. of Los Angeles*, the court noted the excellent

27

work of the plaintiffs' attorneys and the "aggressive opposition" they faced as well as the

28

"serious risk of receiving no payment for their performance of thousands of hours of work" as justification for a lodestar multiplier of 2.0 and a total attorneys' fee award of $5,378.174.66 for a case involving excessive force claims by prisoners against the county brought under both federal and California state law. 96 F. Supp. 3d 1012, 1025–26 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018); *see also Carruthers v. Israel*, 274 F. Supp. 3d 1345, 1350-51 (S.D. Fla. 2017) (finding that the NPP's work on behalf of prisoners was "directly and reasonably incurred in enforcing the relief ordered for the violation" and awarding Plaintiffs $757,840.00 in attorneys' fees); *Dunn v. Dunn*, 318 F.R.D. 652, 681 (M.D. Ala. 2016) (awarding lodestar figure of $989,000.00 for attorneys' fees in class action by prisoners); and *Trueblood v. Wash. State Dep't of Social & Health Svcs.*, Case No. C14-1178MJP, 2015 WL 12030114, at *1-2 (W.D. Wash. 2015) (awarding $1,267,769.10 in fees for 3,232.77 hours of class action enforcement work on behalf of prisoners).

### 5. An Enhancement is Justified by Plaintiffs' Counsels' Superior Performance, Extraordinary Results, and the Need to Attract Competent Counsel

Taken together, the *Kerr* factors support both the reasonableness of the fees requested and the addition of a 2.0 enhancement. In *Kelly v. Wengler*, a class action involving prison conditions, the Ninth Circuit held that in both PLRA and non-PLRA cases, "the district court may enhance the lodestar when plaintiffs' counsel's 'superior performance and commitment of resources' is 'rare' and 'exceptional' as compared to run-of-the-mill representation in such cases." 822 F.3d at 1103 (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010) (internal citations omitted)). The Ninth Circuit further noted that the district court had appropriately justified an enhancement to the lodestar in finding that "[p]laintiffs' counsel provided 'extraordinary performance yielding extraordinary results,' and that 'the quality of the work that produced these results [was] underrepresented in the hourly fee.'" *Id.* (citing *Perdue*). The district court had enhanced the lodestar because it found that "the limited fees available in prisoner civil rights cases, without enhancement, are insufficient to induce private attorneys…" *Id.* at 1104. The Ninth

Circuit affirmed the district court's enhancement, holding that "[w]hen the lodestar figure based on the PLRA rate is insufficient to induce competent attorneys to accept appointment in meritorious civil rights cases, it is by definition not a reasonable fee." *Id.* (citing *Perdue*, 559 U.S. at 552).

### a. Superior Performance and Excellent Results

Like the attorneys in *Kelly*, Plaintiffs' counsel here demonstrated superior performance, extraordinary commitment of resources, and excellent results for their clients, justifying an enhancement to the lodestar.  822 F.3d at 1102-04.  In the face of sustained intransigence by Defendants, Plaintiffs' counsel have vigorously, repeatedly, and successfully moved to enforce the terms of the Stipulation, producing excellent results for the class.  This work has taken an enormous amount of resources to achieve.  The outlay of resources and continuous work required in this case are largely a product of Defendants' conduct and litigation strategy.

Despite agreeing to the terms of the Stipulation, Defendants have persistently and pervasively failed to comply with them.  As this Court noted in the Second Fee Decision, Defendants are engaged in "a seemingly unending march toward compliance" which requires Plaintiffs to engage in work "uniformly geared toward enforcing the Stipulation, which was only necessary because of Defendants' failure to comply with the Stipulation in the first instance (or second or third)." [Doc. 3232 at 2]  During the 2018-19 Enforcement Period, Plaintiffs' counsel has again been forced by Defendants' noncompliance to work tirelessly to enforce their compliance with the obligations they voluntarily assumed nearly six years ago.  During the 2018-19 Enforcement Period alone, the Court found major deficiencies with multiple performance measures across multiple facilities, including Performance Measures 6, 11, 12, 14, 15, 19, 24, 35, 37, 39, 42, 44, 47, 49, 50, 51, 52, 66, 67, 72, 95, 96, and 98.  [*See* Docs. 3020, 3235]  It also ordered Defendants to show cause why the Court should not impose yet another civil contempt sanction of $50,000 per substantially noncompliant performance measure per complex.  [Doc. 3235]

Throughout the 2018-19 Enforcement Period, the Court faulted Defendants for their scorched-earth litigation tactics and noncompliance, noting that "[w]hile Defendants are free to utilize the State's resources as they wish, at some point their continued insistence that taxpayer money is better spent on assiduously defending their noncompliance with the Stipulation than on efforts towards remedying the fundamental underlying cause of that noncompliance is likely ill-conceived and ill-advised." [Doc. 3057 at 9]  The Court further noted that "**Defendants' actions** raise the distinct miserable possibility that the Stipulation will have to be set aside and the parties instructed to litigate again." [*Id.* (emphasis added)] The Court exhorted Defendants to engage in "good-faith" efforts at achieving compliance with the Stipulation [*Id.*], and rebuffed Defendants' objections to the appointment of a Rule 706 expert, noting that "they raise concerns about Defendants' candor to the Court." [*Id.*; Doc. 3269 at 1-2]  The Court also noted "the potential of further contempt sanctions . . . because of Defendants' failure to honor its obligations under the Stipulation and to the prisoners in their charge." [Doc. 3235 at 5]

Defendants' scorched-earth litigation tactics are typified by two meritless motions filed with the Court.  [*See* Doc. 2931 (seeking relief from the Court's denial of a previous motion to terminate); Doc. 2932 (seeking relief from the Court's order to reinstall HNR boxes)]  In denying Defendants' motions, the Court noted that Rule 60(b)(6) is reserved for "extraordinary circumstances" . . . . but that "Defendants' motions for relief rely entirely on arguments that were presented, considered, and rejected," and that "reassignment of this matter with the Court is not an opportunity for a second bite at the apple." [Doc. 3057 at 7 (internal citations and quotation mark omitted)]

In the face of Defendants' obstructionist litigation tactics, Plaintiffs have achieved exceptional success for their clients, warranting a fee enhancement.  These successes include the Court's appointment of two Rule 706 experts.  [Doc. 3089; Doc. 3269]  "Courts do not commonly appoint an expert pursuant to Rule 706 and usually do so only in exceptional cases in which the ordinary adversary process does not suffice or when a case presents compelling circumstances warranting appointment of an expert." *Hart v. Agnos*,

No. CV-77-0479-PHX-NVW, 2008 WL 2008366 (D. Ariz. Apr. 25, 2008) (internal citations and quotation marks omitted); *see also Ellsworth v. Prison Health Servs., Inc.*, No. CV-11-8070-PCT-RCB, 2013 WL 6587876, at *8 (D. Ariz. Dec. 12, 2013) (same).

In addition to the appointment of two Rule 706 experts, the Court issued orders finding a host of Performance measures noncompliant (Doc. 3020; Doc. 3235), ordering Defendants to develop remedial plans (Doc. 3020), ordering Defendants to bring a myriad of Performance Measure into compliance or face contempt fines (Doc. 3235), and ordering Defendants to produce a Health Care Transition Plan as they moved their medical and mental health care from Corizon to Centurion (Doc. 3234).  These excellent results and the unrelenting work necessary to achieve them by Plaintiffs' counsel justify a lodestar enhancement.  *See Kelly*, 822 F.3d at 1093, 1102-1105 (affirming a 2.0 enhancement where attorneys demonstrated superior performance).

### b.  Attracting Competent Counsel

Like the plaintiffs' counsel in *Kelly*, counsel here have also demonstrated the need to attract competent counsel to difficult and important cases, such as this one, as a justification for lodestar enhancement.  *See* 822 F.3d at 1104-05.  Attracting competent counsel to this critically important case brought on behalf of 34,000 prisoners was extremely difficult due to the absence of lawyers in Arizona willing and able to bring such a complicated, time-intensive case, with the prospect of compensation (if any) only at the severely reduced rates set by the PLRA.  *See supra*, Section III(A)(4)(e).  In Plaintiffs' prior enforcement fee application, experienced Arizona practitioner Larry A. Hammond stated that the low rates available to attorneys under the PLRA fee cap prevent qualified lawyers in Arizona from taking this important case, despite the great need in the state for such representation.  [Doc. 2280 ¶ 9-14]  As in *Kelly*, an enhancement here is justified by the evidence demonstrating that an increased attorneys' fees award is necessary to ensure competent counsel.  822 F.3d at 1105.

### 6. Plaintiffs are Entitled to Recover Litigation Expenses and Costs

A reasonable attorneys' fee includes reimbursement for expenses incurred in the litigation. *See Woods v. Carey*, 722 F.3d 1177, 1179 n.1 (9th Cir. 2013) (§ 1988 "allows for recovery of reasonable out-of-pocket expenses that would normally be charged to a fee paying client," including "photocopying, paralegal expenses, and travel and telephone costs") (internal quotation marks, citations omitted). Moreover, the Stipulation specifically allows Plaintiffs to seek costs, including expert costs. [Doc. 1185 ¶ 43]

Itemized lists of expenses are appended to the Kendrick and Fathi Declarations. [*See* Doc. 3406, Ex. B; Doc. 3403, Ex. B] Expenses for which reimbursement is sought include, but are not limited to, photocopying, out-of-town travel (e.g., airfare, taxis, meals, and hotel), long-distance telephone charges, postage and courier fees, transcripts, and other expenses that would typically be billed to clients. [*See generally* Doc. 3406 ¶¶ 20-25; Doc. 3403 ¶ 7]

### IV. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court award them $189,858.60 in attorneys' fees, a $189,858.60 enhancement to those fees under the relevant *Kerr* factors, and $7,141.41 in expenses. In total, Plaintiffs seek $386,858.61 in fees, costs, and enhancements.

Dated: September 14, 2020

**ACLU NATIONAL PRISON PROJECT**

By:   s/ David C. Fathi
    David C. Fathi (Wash. 24893)*
    Eunice Hyunhye Cho (Wash. 53711)*
    Maria V. Morris (Cal. 223903)*
    915 15th Street N.W., 7th Floor
    Washington, D.C. 20005
    Telephone:  (202) 548-6603
    Email:    dfathi@aclu.org
           echo@aclu.org
           mmorris@aclu.org

*Admitted *pro hac vice*.  Not admitted in DC; practice limited to federal courts.

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    jkeenan@acluaz.org
          carellano@acluaz.org

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Corene Kendrick (Cal. 226642)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          ckendrick@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

### CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2020, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

s/ Jessica Carns