1   Daniel P. Struck, Bar No. 012377
    Rachel Love, Bar No. 019881
2   Timothy J. Bojanowski, Bar No. 022126
    Nicholas D. Acedo, Bar No. 021644
3   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
    3100 West Ray Road, Suite 300
4   Chandler, Arizona 85226
    Telephone: (480) 420-1600
5   Fax: (480) 420-1695
    dstruck@strucklove.com
6   rlove@strucklove.com
    tbojanowski@strucklove.com
7   nacedo@strucklove.com

8   *Attorneys for Defendants*

9

10              **UNITED STATES DISTRICT COURT**

11                   **DISTRICT OF ARIZONA**

12   Victor Parsons, *et al.*, on behalf of themselves      NO. 2:12-cv-00601-ROS
     and all others similarly situated; and Arizona
     Center for Disability Law,
13
                                                            **DEFENDANTS' RULE 60 MOTION**
                                        Plaintiffs,          **FOR RELIEF FROM COURT**
14                                                              **ORDER (DOC. 3734)**
                 v.
15   David Shinn, Director, Arizona Department of
     Corrections; and Richard Pratt, Interim
16   Division Director, Division of Health Services,
     Arizona Department of Corrections, in their
17   official capacities,

18                                      Defendants.

19          Pursuant to Fed.R.Civ.P. 60(b)(6), Defendants move this Court for relief from the

20   Order requiring Defendants to produce remaining maximum custody and step level average

21   length of stay data calculations and pay Plaintiffs' attorneys' fees incurred in bringing their

22   Motion to Enforce Court's Order (Docs. 3734, 3686.)

23          Plaintiffs demanded Defendants produce "documents sufficient to show average

24   length of stay for prisoners in maximum custody units, including the average length of stay

25   in Step 1, Step 2, and Step 3 under DI 326/DO 812." (Doc. 3613 at 2-3.)  Subsequently, the

26   parties filed a Statement of Discovery Dispute outlining the parties' opposing positions

27   regarding the same.  (Doc. 3613.)  Thereafter, the Court ordered Defendants to produce the

28   requested data within 7 days of the Court's June 19, 2020 Order.  (Doc. 3635 at 4-5.) Despite

1  Defendants' good faith efforts to comply with the Order and conduct complex data analysis

2  to determine average length of stay calculations that are not performed or reported in the

3  normal course of ADCRR's operations, Plaintiffs moved to enforce the Court's Order, and

4  the Court granted Plaintiffs' Motion, ordering Defendants to produce remaining average

5  length of stay data by September 18, 2020, and pay Plaintiffs' attorneys' fees incurred in

6  bringing the enforcement motion.  (Docs. 3686, 3734.)  The errors underlying that ruling

7  require relief under Rule 60(b)(6) where the Court expanded the four corners of the

8  Stipulation (overlooking the premise and intent of the maximum custody provisions),

9  created new compliance and monitoring components, and overlooked Defendants' good

10  faith efforts to comply with the Court's Order.

11  **MEMORANDUM OF POINTS AND AUTHORITIES**

12  **I.     BACKGROUND**

13  On the eve of trial, the parties entered into a private settlement agreement.  (Doc.

14  1185.)  At no time has there been any finding, verdict, or judgment that Defendants had

15  committed any constitutional violation or otherwise subjected the maximum custody

16  subclass members to unconstitutional conditions of confinement with respect to offered out-

17  of-cell time, programming, and privileges.  Under the terms of the Stipulation, Defendants

18  agreed to comply with ten maximum custody Performance measures ("MCPMs") that

19  measure Stipulation compliance based upon offers of out-of-cell time, programming, and

20  privileges offered to the maximum custody population pursuant to DI 326 (now DO 812).

21  (Docs. 1185, 1185-1 at 41-45.)  MCPM compliance is determined primarily upon review

22  of out-of-cell tracking forms, programming sign-in sheets, unit activity/programming

23  schedules, and individual inmate records for 10 maximum custody and 10 seriously

24  mentally ill maximum custody inmates from designated maximum custody units to

25  determine whether required offers were made.  (Doc. 1185-1 at 41-45; Doc. 3177-2 Max

26  Custody Monitor Guide (July 2017).)

27  Neither the Stipulation nor any of the MCPMs address or refer to monitoring

28  maximum custody or step level length of stay data to determine Stipulation or MCPM

2

1    compliance. Demonstrated custody and/or step level progression is not a component of

2    Stipulation compliance whatsoever.  Tellingly, Plaintiffs' Complaint is silent as to any

3    challenge to maximum custody length of stay. (Doc. 1.)  As such there is no evidence that

4    "the obvious purpose and intent of the Stipulation" was to require that inmates progress

5    through the maximum custody DI 326/DO 812 step level matrix. (Doc. 3734 at 3.)  Because

6    the Court's "obvious purpose" premise is in error and Defendants acted in good faith to

7    comply with the Court's production order despite this error, the Order should be vacated.

8         The intent of the maximum custody portion of the Stipulation was to offer out-of-

9    cell time, programming, and incentives consistent with DI 326 and its three-step level

10   matrix (now governed by DO 812). (Doc. 1185 at 9, ¶ 9.)  The Stipulation, however, did

11   not create DI 326.  The Stipulation was signed on October 9, 2014.  (Doc. 1185 at 16.)

12   DI 326 was in development independent of this litigation and went into effect approximately

13   six months prior to the negotiation of the Stipulation, on March 27, 2014.  (Doc. 1775-3.)

14   As such, the Stipulation did not create the step level matrix – it already existed – and the

15   Stipulation does not mandate prescribed and guaranteed progression through the step

16   program – nor was that the intent of the parties in negotiating the Stipulation.  The purpose

17   of DI 326/DO 812 was and is to facilitate an incentive-based process that allows maximum

18   custody inmates to positively change their behavior to a level that they may promote to a

19   lower custody level or a less restrictive maximum custody step level.  Such progression is

20   facilitated by offering inmates the opportunity to participate in out-of-cell activities,

21   programs, and jobs that teach and reinforce pro-social behavior. (Id. at 1; Doc. 3126-01 at

22   ¶¶39, 3201-1 at ¶¶ 7, 21.)  Individual inmate behavior drives progression through the step

23   level matrix and custody level. (Id., generally.)  Neither the Stipulation nor DI 326/DO 812

24   require ADCRR to advance inmates through the step matrix at prescribed rates – this is

25   because individual inmate behavior drives progression. Some inmates, due to the

26   dangerousness of their behavior, simply may not progress. The Stipulation and attendant

27   MCPMs address Plaintiffs' concerns regarding the alleged negative effects of time spent

28   in-cell; thus, the MCPMs primarily measure out-of-cell time/programming. (Compare, Doc.

1.)  The positive effect of DI 326/DO 812 has resulted in significant reduction in ADCRR's maximum custody population. However, neither the Stipulation nor the MCPMs require either population reduction or step level progression to determine compliance.

## II.  LEGAL ARGUMENT

A court may relieve a party from a final order for any "reason that justifies." Fed.R.Civ.P. 60(b)(6). Rule 60(b)(6) "provides courts with authority adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005) (internal quotations omitted); *accord Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009). Relief is warranted under this rule upon a timely motion showing exceptional circumstances. *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010). "In determining whether extraordinary circumstances are present, a court may consider a wide range of factors." *Buck v. Davis*, 137 S. Ct. 759, 778 (2017). Among those factors are "the risk of injustice to the parties" and "the risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-864 (1988).

### A.  The Order Exceeds the Scope of the Stipulation.

The Court's authority in this matter is restricted to "enforcement of the performance measures." (R.T. 7/13/2017 at 6:22-25.)  Here, MCPM compliance is not predicated in any way upon inmate progression through the maximum custody classification or step (whether analyzed on an aggregate or individual basis). To the contrary, the plain terms of MCPMs simply require Defendants to offer certain levels of out-of-cell time, programming, and incentives to maximum custody inmates dependent on their step level and whether they are classified as seriously mentally ill, and to follow specified protocols when utilizing chemical agents on seriously mentally ill maximum custody inmates.  (Doc. 1185 at 6-12; 1185-1 at 41-45.)  Where neither the Stipulation nor the MCPMs require any maximum custody inmate to progress through custody or step levels at any monitored time interval, and because progression is based upon individual inmate history and behavior not measured by the MCPMs, the Court's Order exceeds the scope of the Stipulation by ordering that

Defendants compile, analyze, monitor, and report new custody data nearly six years post-settlement. The Court's Order creates a new category of compliance and monitoring not contemplated by the parties at the time the Stipulation was entered. The Order, therefore, is in error to the extent it requires Defendants to continue to calculate length of stay data; monitor and report on the same going forward; or demonstrate undefined rates of progression in order to demonstrate Stipulation compliance.

**B.    The Order Creates New Monitoring and Reporting Requirements.**

The Court's Order creates monitoring and reporting requirements not mandated by the Stipulation or MCPMs. None of the MCPMs require Defendants to statistically analyze or monitor length of custody/step level stay data for ADCRR's maximum custody population. (Doc. 1185-1 at 41-45.) Likewise, none of the methodologies for measuring MCPM compliance require such data to be tracked, reported, or analyzed to determine any manner of MCPM compliance. (Doc. 3177-2, Maximum Custody Monitor Guide (July 2017) (approved by Plaintiffs and the Court).) A finding that length of stay data is a triggering event that determines any MCPM compliance is clearly erroneous. Nowhere in the Stipulation is there any language that can be construed as requiring Defendants to monitor progression through the DI 326/DO 812 maximum custody step program or maximum custody classification. MCPM compliance is not based upon individual inmate progression through custody or step levels.

Next, the Order is not otherwise supported by evidence that at the time the parties negotiated the Stipulation, there was an understanding that the maximum custody inmates would progress through the step levels or custody classifications at any required measurable rate. The purpose of the maximum custody provisions of the Stipulation was to require Defendants to *offer* out-of-cell time, programming, and incentives to maximum custody inmates to mitigate time spent in-cell. Whether maximum custody inmates take advantage of the opportunities afforded is dependent on their behavior, not pre-fixed length-of-time mandates never contemplated by the Stipulation.

Furthermore, Plaintiffs' allegation (and the Court's concern) that Defendants are keeping subclass members at a particular step level in perpetuity (and not progressing inmates through step levels so they do not have to facilitate more out-of-cell time/programming) is not supported by any actual evidence that would justify Defendants having to defend length of stay data.  Plaintiffs are in possession of 5.5 years of monthly maximum custody source documents that set forth the step level of each monitored inmate. Strikingly absent, however, is any evidence that maximum custody inmates are disproportionately kept in more restrictive step levels so that Defendants need not comply with offering progressing levels of out-of-cell time, programming, and incentives.[1]  The hypothesis also flies in the face of undisputed publicly available information that demonstrates that during the pendency of the Stipulation, the maximum custody population has been significantly reduced – thus inmates are progressing through step levels and custody classification.  From January 1, 2016 to the present alone, the maximum custody population has reduced by more than 1000 inmates – a 36% reduction in total population. (Compare January 1, 2016, total maximum custody inmate population of 2961, with September 18, 2020, total maximum custody inmate population of 1888.) (https://corrections.az.gov/sites/default/files/ DAILY_COUNT/Jan2016/january_01st_2016.pdf; https://corrections.az.gov/sites/default/files/DAILY_COUNT/Sep2020/09182020_count_s heet.pdf, last visited 9/18/2020.)   Not requiring Plaintiffs to provide any evidentiary basis to justify expanding Stipulation monitoring, reporting, and compliance requirements beyond the plain language of the Stipulation and MCPMs is erroneous.  *See, e.g., G. v.*

---

[1] Step level 1 inmates must be offered 7.5 hours of out-of-cell time per monitored week; step level 2 inmate are offered 8.5 hours of out-of-cell time per monitored week; step level  3 inmates are offered 9.5 hours of out-of-cell time per monitored week; and serious mentally ill maximum custody inmates are offered an additional 10 hours of unstructured out-of-cell time per week.  Step level 2 and 3 inmates are also provided one hour of out-of-cell group programming a week, and seriously mentally ill inmates are offered one additional hour of out-of-cell programming per week; one hour of out-of-cell mental health programming per week, and one hour of out-of-cell psychoeducational programming  per week.  (Doc. 1185 at 9; 3701.)

*Hawaii*, 794 F.Supp. 2d 1119, 1152 (D. Haw. 2011) ("Isolated, anecdotal evidence of a relatively few individual members . . . experiencing issues in obtaining services would not mean that an organization is generally not making such services available.") Simply put, Plaintiffs' unsubstantiated and speculative allegation of restriction on custody/step level progression is insufficient as a matter of law to support an Order that Defendants must compile, track, report, and monitor maximum custody/step level length of stay data not contemplated by the Stipulation or MCPMs.  The Court's Order prejudices Defendants by requiring that they extract data, compile, and calculate data that ADCRR's inmate data management system is incapable of doing to a reasonably reliable degree of accuracy – data that does not affect Stipulation or MCPM compliance. The prejudice is compounded not only by the cost associated to develop expensive programming capabilities if the information is required to be tracked and reported in the future, but also by the  Court's Order that Defendants must pay Plaintiffs' their attorneys' fees incurred in bringing the Motion to Enforce Court's Order.  (Doc. 3701-1 at ¶¶ 25-26.)

      **C.**      **The Order Erroneously Grants Plaintiffs an Award of Attorneys' Fees.**

The Court incorrectly assumed that Defendants "must have this data to comply with the Stipulation" and found that the "obvious purpose and intent of the Stipulation" was to progress inmates through the maximum custody step level matrix.  (Doc. 3734 at 3.)  As argued herein, there is no Stipulation or MCPM language that evidences any such obligation by Defendants to advance inmates through custody or step levels at a prescribed rate.  Progression is dependent on inmate behavior, and the Stipulation provides no matrix or requirement to advance inmates through the custody classification or step levels.  Moreover, contrary to the Court's Order, neither the Stipulation, MCPMs, nor the Maximum Custody Monitor Guide (which designates source documents upon which MCPM compliance is determined) requires Defendants to generate any "variety" of documents to track maximum custody/step level average length of stay data.  (Doc. 3177-2, Maximum Custody Monitor Guide (July 2017), "Source of Records/Review" and "Methodology" categories at 3-24.)

7

The Court's assumption that Defendants already have maximum custody/step level average length of stay data is incorrect. ADCRR has never compiled, reported, or monitored aggregate maximum custody/step level average length of stay data.  Moreover, it does not have the software capable of tracking this information.  Thus, calculating the same to a reasonable degree of reliability would require manual review of volumes of individual inmate data for nearly 2,000 inmates.  Indeed, Defendants informed the Court and Plaintiffs in the Statement of Discovery Dispute that in addition to objections that the request exceeds the scope of the Stipulation and MCPMs, the "request is unduly burdensome as it would require Defendants to perform a manual review of an indeterminable number of documents related to an unknown number of maximum custody inmates (thousands or more) for an unspecified period of time."  (Doc. 3613 at 3-4.)  Defendants should therefore not be sanctioned for the inability to calculate nearly six years of aggregate data in a seven-day time period.

Against this backdrop, it should not be overlooked that in responding to Plaintiffs' Motion to Enforce Court's Order, and because of the difficulty in compiling and calculating length of stay data from ACIS[2], Defendants offered to provide Plaintiffs with hard copy printouts of each maximum custody inmate's ACIS Traffic History and Earned Incentive Program Summary  (step level) screens which show housing movement history and step level history for each individual inmate. These ACIS data screens provide Plaintiffs with source data to calculate length of stay data to their own degree of acceptable reliability. This information is the only source that contains the data sought by Plaintiffs.  Despite the fact that length of stay data does not exist in any other format, Plaintiffs rejected the offer to provide individual inmate source data.[3]

---

[2] Specifically, the ACIS system (Arizona Correctional Information System) is a host-based electronic data processing system containing the primary inmate database applications used in inmate management systems. ACIS does not include functionality to run batch reports to derive the maximum custody and Step Level average length of stay data. ADCRR's ACIS system replaced ADCRR's former electronic Arizona Inmate Management System ("AIMS") in December 2019.  (Doc. 3701 at 4-5.)

[3] Defendants acknowledge that manual review and calculation of individual inmate

Defendants' good faith efforts to comply with the Court's Order and provide Rule 34 compliant alternative means of production weighs against an award of attorneys' fees. Fed.R.Civ.P. 34(a)(1)(A). Despite Plaintiffs' disinterest in the production of underlying individual inmate custody/step level history data, Defendants produced the same for ADCRR's maximum custody inmate population. (Doc. 3755.)  The ACIS database screen shots for nearly 2,000 ADCRR maximum security inmates totals more than 6,400 pages of underlying source data from which Plaintiffs may calculate maximum custody/step level average length of stay data, eliminating concerns they have regarding Defendants' stated challenges in attempting to derive reports from the ACIS database. In addition, Defendants have also produced to Plaintiffs their most current attempt to derive average length of stay calculations from ACIS.  (Id.)  However, concerns remain regarding the reliability of the calculations due to insurmountable technology challenges in mining, compiling, and calculating electronic data; this despite continued efforts to extract, combine, and calculate multiple ACIS data sets for thousands of inmates going back to July 2014.  (Doc. 3701 at 4-10; 3701-1.)

Finally, contrary to the Court's assertion that Defendants did not keep Plaintiffs informed of the progress of the production or the challenges inherent in doing so, the Court overlooked evidence of Defendants' efforts illustrated in Plaintiffs' Motion to Enforce Court's Order. For example, the Court noted that Defendants did not respond to Plaintiffs' July 27, 2020 request for an update on Florence-Kasson data, intimating that Defendants ignored the Court's Order.  (Doc. 3734 at 2.)  However, Plaintiffs' Exhibit 3 to their Motion to Enforce Court's Order shows that Plaintiffs' counsel Corene Kendrick requested an update on July 27, 2020, at 11:38 a.m., and Defendants' counsel Rachel Love responded that same date at 3:56 p.m.  (Doc. 3686-2 at 2, 1.)  Defendants supplemented their production that same week, on Friday, July 31st.  (Doc. 3686-2 at 1, 8:17 p.m. email correspondence from Rachel Love to Maria Morris, et al.)  The parties conferred as

data to derive average length of stay statistics would likely take many months to complete.

Defendants attempted to derive average length of stay data from ACIS.  Indeed Exhibit 3 illustrates the parties ongoing communications regarding status and supplementation of the calculation data.  Moreover, when conflicting data was discovered by Plaintiffs, Defendants attempted to address the same.  (Doc. 3701-1 at ¶¶ 22-35.)  There is no evidence that Defendants attempted to conceal or ignore conflicting data, and Plaintiffs have never alleged the same. (Doc. 3701 at 6-10; 3701-1.) Because the Court predicated the attorneys' fees award on the mistaken conclusion that Defendants produced inconsistent data without alerting Plaintiffs and the Court that it was doing so, this Court should vacate the attorneys' fees award.  (Doc. 3734 at 4.)  Defendants' good faith efforts to create reports that do not exist within ADCRR's ACIS system should not be a basis for attorneys' fees sanctions where, simply put, burdensome technological limitations hamper Defendants' efforts at compliance.

## III.    CONCLUSION

For these reasons, Defendants respectfully request that the Court vacate its Order granting Plaintiffs' Motion to Enforce Court's Order (Doc. 3686) insofar as the Order requires Defendants to continue to calculate, report, and monitor average length of maximum custody/step level data to determine Stipulation compliance. Defendants also request the Court vacate its Order that Defendants pay Plaintiffs' reasonable attorneys' fees in bringing their Motion to Enforce Court's Order.

DATED this 18th day of September 2020.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Rachel Love
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    *Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2

3

     I hereby certify that on September 18, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

Alison Hardy:                  ahardy@prisonlaw.com

5

Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com

6

7

Asim Dietrich:             adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

8

Corene T. Kendrick:      ckendrick@prisonlaw.com; edegraff@prisonlaw.com

9

Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

10

11

David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

12

Donald Specter:            dspecter@prisonlaw.com

13

John Howard Gray:       jhgray@perkinscoie.com; slawson@perkinscoie.com

Jose de Jesus Rico:       jrico@azdisabilitylaw.org

14

15

Maya Abela                mabela@azdisabilitylaw.org

16

Rose Daly-Rooney:       rdalyrooney@azdisabilitylaw.org

17

Sara Norman:              snorman@prisonlaw.com

18

Rita K. Lomio:             rlomio@prisonlaw.com

19

Eunice Cho                 ECho@aclu.org

20

Jared G. Keenan          jkeenan@acluaz.org

21

Casey Arellano           carellano@acluaz.org

22

Maria V. Morris           mmorris@aclu.org

23

24

     I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

25

     N/A

26

                       /s/Rachel Love

27

28