Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF RULE 60 MOTION FOR RELIEF FROM COURT ORDER (Doc. 3734)** |

For the reasons previously briefed and set forth below, this Court should find that Defendants are entitled to relief and should not be required to track, monitor, and report on maximum custody length of stay and step level data or pay Plaintiffs' attorneys' fees incurred in bringing their Motion to Enforce Court Order (or responding to Defendants' instant Motion).  Nor should maximum custody or step level length of stay progression data be the basis for Stipulation compliance as to the maximum custody provisions of the Stipulation. While the constructs of Stipulation-predecessor DI-326 provided a mechanism to reduce the maximum custody population, affording eligible maximum custody inmates the opportunity to engage in pro-social behavior and progress through the DI 326 step levels and maximum custody classification, no aspect of the Stipulation or Maximum Custody

Performance Measures ("MCPMs") dictate, analyze, monitor, or track the speed or ultimate success of such progression. Instead of engaging Defendants on the overlooked material facts related to the scope of the Stipulation or Defendants' justifiable technology-based inability to produce reliable average length of stay calculations for nearly six years of data, Plaintiffs resort to unproductive ad hominem attacks and arguments. This and the reasons below entitle Defendants to relief.

**I.   THE COURT'S ORDER IS SUBJECT TO RULE 60(B) RELIEF.**

Plaintiffs assert that Defendants cannot employ Fed.R.Civ.P. 60(b) to challenge the Court's Order because: (1) the Order is non-final as a post-judgment discovery order; and (2) Defendants' Motion is a motion for reconsideration that does not meet the terms of Local Rule of Civil Procedure 7.2(g)(1). (Doc. 3766 at 4-5.) Defendants' Motion is appropriately brought pursuant to Rule 60(b)(6) for the following reasons.

In determining whether an order is final, the Ninth Circuit has rejected Plaintiffs' literal argument that it must be the last and final order possible to be made in a case, instead" adopting instead a practical approach versus a technical construction. *United States v. Washington*, 761 F.2d 1404, 1406 (9th Cir. 1985). The need for a practical approach to the finality rule is "particularly true when post-judgment orders are involved" because "[t]he policy against and the probability of piecemeal review is not as decisive a consideration after judgment as before judgment since the underlying dispute is already settled." *Id.* "Moreover, unless [post-judgment] orders are found final, there is often little prospect that further proceedings will occur to make them final." *Id.*; *accord United States v. One 1986 Ford Pickup*, 56 F.3d 1181, 1185 (9th Cir. 1995) (stating a contrary result would eliminate opportunity for review); Wright, A. Miller & E. Cooper, Finality-Post-Judgment Orders, 15B Fed. Prac. & Proc. Juris. § 3916 (2d ed.). The Ninth Circuit has also consistently held that post-judgment enforcement orders are final for purposes of appeal. *See*, *e.g.*, *Natural Res. Def. Council, Inc. v. S.W. Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001) (post-judgment order modifying injunction and lifting stay was final and appealable); *Kittitas Reclamation District v. Sunnyside Valley Irrigation District*, 626 F.2d 95, 98-99 (9th Cir.

1980) (appellate review of final order issued pursuant to district court's continuing jurisdiction over consent decree in water rights case); *Washington*, 761 F.2d at 1406 (post-judgment remedial order issued pursuant to a district court's continuing jurisdiction over injunction was a final order for purposes of appeal under § 1291 instead of an interlocutory order under § 1292 and Rule 54(b)).

This approach translates to the unique post-settlement posture of this case. Although a judgment was never entered, the Stipulation is the congruent marker. As part of that Stipulation, the Court has authority to enforce its terms. When the Court exercises that authority, as it did in its September 4, 2020 Order regarding production of maximum custody/step level length of stay data <u>to be produced as necessary to determine</u> Defendants' Stipulation compliance, there is no subsequent event (like a judgment) that will render that order any more final. The Court's Order was not just an order to produce data – or a discovery order - as Plaintiffs now argue. Rather, the Court also found that the Stipulation requires inmates to meaningfully progress through the step program (and thus progress through custody level). Specifically, the Court found that "the Stipulation requires a meaningful implementation of the Step Matrix, [such that] Plaintiffs are entitled to monitor and assess Defendants' performance on that issue." (Doc. 3734 at 3.) Because the Court's Order has expanded the Stipulation to require new (yet undefined and unmeasured) performance mandating custody/step level progression in order to determine Stipulation compliance, the parties should have the opportunity to challenge that Order under Rule 60, like any other post-judgment order, before it decides whether to proceed on appeal.[1] By creating new maximum custody Stipulation performance and compliance terms, the Order effectively constitutes enforcement and thus Rule 60(b) is an appropriate vehicle to challenge it.[2] *See Juanes v. Lyzwinski*, No. 8:10-CV-459 ATB, 2013 WL 3713419, at *3

---

[1] Out of an abundance of timing caution, Defendants filed a Notice of Appeal on October 5, 2020. (Doc. 3773.)

[2] Plaintiffs rely upon *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1471 n. 1 (9th Cir. 1992) for the position that post-judgment discovery orders are not final until after issuance of a contempt order for failure to comply with the discovery order. (Doc. 3766 at 5.) Although *Richmark* noted another panel had determined it lacked jurisdiction

(N.D. N.Y. July 12, 2013) (acknowledging that Rule 60(b) is appropriate motion to challenge order enforcing settlement agreement); *see also Gastile v. Virga*, No. 15-16294, 2016 WL 6520090, at *1 (9th Cir. Nov. 3, 2016) (order granting motion to enforce settlement agreement is a "final decision" for purposes of jurisdiction under 28 U.S.C. § 1291).

Alternatively, even if Defendants' Motion is considered a motion for reconsideration, they did not run afoul of Local Rule 7.2(g)(1) where Defendants' Motion addresses both manifest error (expansion of Stipulation compliance, monitoring and reporting requirements) and misapprehension of Defendants' efforts to reasonably comply with the Order, as well as data that establishes that, even if average length of stay data were tied to Stipulation compliance, from January 1, 2016 to September 18, 2020 alone, ADCRR reduced the number of inmates classified as maximum custody by nearly 1100 (from 2961 to 1888). (Doc. 3756 at 6.) Thus, maximum custody inmates are indeed progressing through the maximum custody classification and DI 326/ DO 812 step level program.

## II. DEFENDANTS DID NOT IGNORE PRIOR NINTH CIRCUIT RULINGS IN BRINGING THE MOTION.

Plaintiffs tout Rule 11 and ask for attorneys' fees and sanctions against counsel, arguing that Defendants failed to "acknowledge and adhere" to two Ninth Circuit decisions that control this case, thus entitling them to attorneys' fees incurred in responding to the Rule 60(b) Motion and sanctions against counsel.[3] Plaintiffs' arguments and request for Rule 11 relief are misplaced.

First, Plaintiffs argue that Defendants failed to acknowledge that the Ninth Circuit has found that this Court has authority to issue further orders in this case "under its Article

---

in an earlier appeal for that reason, the Ninth Circuit declined to follow that earlier panel decision, explaining that it contradicted another decision that "seems to hold that civil contempt sanctions are *not* appealable, although the underlying order is." *Id.* (citing *Hughes v. Sharp*, 476 F.2d 975, 975 (9th Cir. 1973).

[3] Plaintiffs' reference to Fed.R.Civ.P. 11 is inappropriate where Plaintiffs have not complied with the Rule's mandatory safe harbor provisions. As such, Plaintiffs cannot request Rule 11 relief.

1  III power and the Stipulation's plain language" and thus Defendants cannot argue that the
2  Court's authority is restricted to enforcement of performance measures.  (Doc. 3766 at 3;
3  Doc. 3756 at 4.)  Plaintiffs rely on *Parsons v. Ryan* ("*Parsons III*"), 949 F.3d 443, 454-55
4  (9th Cir. 2020) and *Parsons v. Ryan* ("*Parsons II*"), 912 F.3d 486, 497-503 (9th Cir. 2018),
5  *cert denied sub nom. Ryan v. Jensen*, 140 S.Ct. 142 (2019).  While *Parsons III* found that
6  the District Court acted within its Stipulation enforcement authority by issuing an Order to
7  Show Cause ("OSC") and subsequent Contempt Order for noncompliance with the OSC,
8  the subject OSC was predicated on Stipulation noncompliance issues.  *Parsons III*, 949 F.3d
9  at 451-52, 454-55.  The Ninth Circuit also found that the District Court may order an
10 injunction requiring specific performance to comply with performance measures governed
11 by the Stipulation.  *See id*. at 454.  While the Ninth Circuit has found that the Court may
12 "'enforce this Stipulation through all remedies provided by the law,' subject to a few
13 limitations", these powers still derive from authority to enforce the Stipulation and thus
14 specific performance measures.  *See id*.  Thus, Defendants were not incorrect or deliberately
15 misleading the Court by arguing that the Court's authority is restricted to performance
16 measure (Stipulation) performance.  (Doc. 3756 at 4.)

17     Here, Defendants assert that the Court's Order exceeds the scope of both the
18 Stipulation and performance measures and creates new Stipulation compliance and MCPM
19 monitoring/reporting requirements. For that reason, the Order exceeds the Court's authority
20 to enforce the performance measures. This position is not unlike Defendants' previous
21 argument that the District Court exceeded the scope of the Stipulation in requiring
22 monitoring and compliance for out-of-cell time afforded to close custody inmates, thereby
23 not only expanding the scope of the Stipulation Subclass but rather requiring
24 monitoring/reporting on close custody conditions of confinement not addressed by the
25 Stipulation.  This Ninth Circuit accepted that argument when if found that close custody
26 inmates offered 15.5 hours or more out-of-cell time per week were not properly included in
27 the Stipulation's maximum custody subclass (and thus the District Court's Order regarding
28 the same exceeded the scope of the Stipulation). *Parsons* II, 912 F.3d at 503-505. Likewise,

5

1  here, Defendants' arguments that the Court's Order exceeds the scope of its authority to
2  enforce the existing Stipulation and MCPMs are valid and do not misrepresent the law or
3  prior rulings in this case.
4    Second, Plaintiffs argue that Defendants should not call the Stipulation a "private
5  settlement agreement" and cannot assert that there has never been a finding of a
6  constitutional violation in this case. (Doc. 3766 at 3.) However, the Ninth Circuit has never
7  expressly found that the Stipulation is not a settlement agreement. Nor has it found that the
8  Stipulation is a consent decree. Indeed, in deciding that close custody inmates who are
9  offered 15.5 hours or more out-of-cell time per week were not properly included in the
10  maximum custody subclass, the Ninth Circuit interpreted the Stipulation language as
11  governed by Arizona contract law. *Parsons II*, 912 F.3d at 503-505. Plaintiffs likewise
12  rely upon contract law in addressing Stipulation interpretation. (Docs. 1625 at 7; 1755 at
13  8-9; 1790 at 6-7.) And in the most recent appeal, the Ninth Circuit applied the standard of
14  review for "enforcement of a settlement agreement." *Parsons III*, 949 F.3d at 453.
15  Accordingly, Defendants are not wrong in calling the Stipulation a private settlement
16  agreement.
17    Additionally, while the Ninth Circuit held that the District Court's approval of the
18  Stipulation "necessarily required a finding of a constitutional violation", Defendants did not
19  disregard any "law of the case" in asserting that there has never been an express finding by
20  the District Court of a constitutional violation regarding maximum custody conditions of
21  confinement "with respect to offered out-of-cell time, programming, and privileges" which
22  is what Defendants explicitly stated. (Doc. 3756 at 2.) This argument is not incorrect and
23  was made in the context of asserting that neither the Complaint nor the Stipulation address,
24  prescribe, or direct any component or measure of maximum custody/step level length of
25  stay calculations to determine Stipulation/MCPM compliance – but is focused on
26  monitoring offered out-of-cell time and programming. Indeed, maximum custody/step level
27  length of stay data demands by Plaintiffs have never been before this Court prior to the
28  subject 2020 orders. (Docs. 3635, 3734.) Defendants' positions, while Plaintiffs may

disagree, are reasonable interpretations and arguments based upon the history and context of this case and the subject matter of the Court's instant Order.

### III. THE COURT OVERLOOKED EVIDENCE THAT CUSTODY AND STEP LEVEL PROGRESSION IS NOT A STIPULATION REQUIREMENT AND THUS DATA IS NOT REQUIRED TO BE GATHERED, MAINTAINED, MONITORED, OR REPORTED FOR STIPULATION COMPLIANCE.

Expansion of the terms of the Stipulation and imposition of new and presently undoable tracking and production of average maximum custody/step level length of stay data constitute extraordinary circumstances, unique to this litigation, that should result in reversal of the Court's Order to prevent manifest injustice to Defendants. Defendants acknowledge that Rule 60(b)(6) relief is used sparingly but assert that extraordinary circumstances exist here to provide such remedy. *See, e.g., Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) (setting forth the Rule 60(b)(6) extraordinary circumstances requirement and noting such circumstances rarely exist in a habeas action); *see also Lal. v. California*, 610 F.3d 518, 524 (9th Cir. 2020) (analyzing Rule 60(b)(6) extraordinary circumstances requirement requesting relief from judge after dismissal for failure to prosecute).[4]

Here, however, the Court should not have required Defendants to provide calculation statistics for (and thus retroactively and prospectively track and monitor) maximum custody

---

[4] Plaintiffs argue that Defendants' reliance upon *Buck v. Davis*, 137 S.Ct. 759, 778 (2017) and *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988) for the general proposition that Rule 60(b) should be decided on a wide range of factors including risk of injustice or undermining the public's confidence in the judicial process were cherry picked and are misplaced where the facts of these cases are not analogous to the circumstances at issue in the Order. (Doc. 3766 at 7-8.) Defendants do not dispute that underlying facts of the cited cases are not analogous to facts surrounding the subject Order. Plaintiffs assert that the cases cited by Defendants are not "run-of-the-mill" cases – but neither is this case. Defendants appropriately rely on the cited cases for examples of how "extraordinary circumstances" may be analyzed in the context of unique cases. Indeed, *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) instructs that the decision to grant Rule 60(b)(6) relief is a "case-by-case inquiry that requires the trial court to intensively balance numerous factors, including the competing policies of the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." As Plaintiffs point out, Defendants inadvertently failed to cite that the quotation of *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005), was to Justice Stevens' dissenting opinion. However, the quoted text comes from *Liljeberg*, 486 U.S. at 864 (*quoting Klapprott v. United States*, 335 U.S. 601, 614-15 (1949)), and *Liljeberg* remains good law.

1 and DI 326/DO 812 step level length of stay data). The Stipulation requires that specified out-of-cell time and programming be *offered* to maximum custody inmates housed at enumerated maximum custody facilities. (Doc. 1186, ¶ 22.) ADCRR cannot require an inmate to participate in offered out-of-cell time or programs. Nor can ADCRR require or force pro-social inmate behavior and program participation that would make maximum custody inmates eligible to progress through the step level program and promote to a lower custody level.

As the litigation history unequivocally shows, specified rates of custody and step level progression were never contemplated or required by the Stipulation and therefore Defendants were under no obligation to monitor, track, or report maximum custody or step level progression in the first place.[5] (Doc. 1186, ¶¶ 17-28.) Once the Court ordered production of length of stay statistics (for nearly six years), Defendants attempted in good faith to provide Plaintiffs with average calculations by attempting to extract data from ADCRR's new inmate database. However, the ACIS[6] database was not designed to extract, track, or calculate such data and insurmountable technology challenges impeded providing reliable Court ordered statistics. (Doc. 3701, 3701-1 generally for detailed account of ADCRR's attempt to calculate average historical average length of stay statistics back to mid-2014 against the backdrop of technology limitations.) The Court erred in expanding the scope of the Stipulation's maximum custody compliance terms (and attendant information production, tracking and monitoring requirements) and ordering Defendants to produce complex custody/step level data never required before to be tracked or produced before in order to monitor or determine Stipulation compliance. The ruling thus imposes an uncontemplated and unprecedented remedy that carries unanticipated and prejudicial financial ramifications and moreover, necessarily restarts the monitoring and compliance

---

[5] Neither the Stipulation nor the MCPMs speak to custody or step level progression, either explicitly or impliedly. (Doc. 1185 at ¶¶ 17-28, 1185-1 at 41-45.)

[6] ACIS stands for Arizona Correctional Information System.

8

clock.[7]  These are extraordinary circumstances, resulting in injustice to Defendants, that require relief from the Order.

### IV.  THE COURT REDEFINED STIPULATION COMPLIANCE AS WELL AS MONITORING/REPORTING REQUIREMENTS.

Instead of relying on the plain language of the Stipulation and MCPMs, the Court erred by redefining and greatly expanding the maximum custody Stipulation compliance terms and analysis.  The Court's expansion of the Stipulation essentially results in providing Plaintiffs with prospective injunctive relief that will entail not only requiring ADCRR to incur the great expense of database redesign to track and monitor custody/step level length of stay data going forward (and possibly retroactively), but will necessarily result in never ending Stipulation compliance challenges by Plaintiffs as to inmate custody/step level progression.

The duty to measure and report on MCPMs currently terminates when a particular facility (on a particular performance measure) achieves 85% compliance for eighteen months out of a twenty-four month period of time (and there has not been three or more consecutive months of non-compliance in the last eighteen months).  (Doc. 1185 ¶ 20 (a), (b).)  The MCPMs do not measure or track custody/step level progression.  More importantly, custody/step level progression is an analysis incapable of objective factor-based statistical review for "compliance" determinations.  Inherently, maximum custody/step level progression cannot be analyzed, justified, or even monitored based upon application of class-wide objective factors. Rather, custody/step level progression is analyzed based upon individual inmate behavior and participation – not Defendants' conduct beyond providing for the *opportunity* for out-of-cell time and programming required by the Stipulation, MCPMs, and DO 812.  Not only does the Court's ruling

---

[7] Defendants have also provided Plaintiffs with over 6,400 pages of hard copy printouts from the ACIS database for each individual current maximum custody inmate that provide classification and step level progression history. These printouts from the ACIS database provide the underlying data by which complicated average length of stay calculations can be manually made by Plaintiffs, tested to their own degree of satisfactory reliability.  (Doc. 3755 at 3.)

9

inexplicably expand the maximum custody terms of the Stipulation, it overlooks the reduction of the maximum custody population over the last six years which illustrates that, indeed, maximum custody inmates are progressing through their step levels and promoting to lower custody levels. (Doc. 3756 at 6.) Any small sample of inmate declarations from the thousands of maximum custody inmates incarcerated since 2014 that attest to personal opinion regarding custody/step level progression, fails to provide either actual evidence or sufficient legal basis for greatly expanding the scope of the Stipulation six years into the Stipulation.

In effect, the Court's Order has redefined maximum custody Stipulation compliance terms as well as monitoring and reporting duties, adding a layer of custody/step level progression never contemplated by the Stipulation or MCPMs. The Order has now essentially granted Plaintiffs prospective injunctive relief, requiring monitoring of a new complex category of maximum custody information never measured or monitored before, incapable of objective factor review. The Order likewise effectively requires "restart" of the entirety of the Stipulation as to MCPM monitoring and compliance determinations. Not only will the Court's ruling require Defendants to incur unknown financial expense to redesign the ACIS database to calculate and track data that Defendants were under no obligation to monitor for the last six years, the Court's ruling necessarily imposes length of stay compliance terms that are undefined and more importantly, not reasonably measurable where inmate progression through custody/step levels is based primarily upon inmate criminal history, behavior, and program participation - which can neither be controlled nor forced by Defendants. The resulting consequences of the Order constitute extraordinary circumstances resulting in injustice to Defendants.

**V.  DEFENDANTS REASONABLY COMPLIED WITH THE PRODUCTION ORDER IN GOOD FAITH.**

Plaintiffs argue that the Order's attorneys' fees sanction is appropriate because Defendants refused to produce the ordered average length of stay reports and admittedly chose not to track the information for the last nearly six years. (Doc. 3766 at 10.) As set

1    forth in Defendants' Motion, Defendants did not "refuse" to produce the ordered reports.
2    (Doc. 3756 at 8-10.)  Rather, Defendants repeatedly and in good faith attempted to extract,
3    calculate, and generate average length of stay calculations from the ACIS database – a
4    database not designed to extract and calculate such data.  (Doc. 3701 at 4-10; 3701-1.)
5    Defendants' efforts and obstacles were communicated to Plaintiffs and Defendants
6    continued attempts to correct data and supplement.  Initial productions were provided within
7    the timelines initially ordered by the Court and supplementation was provided.  Attempts at
8    correction and recalculation of data were performed when Plaintiffs pointed out data
9    inconsistency.  (*Id*.)  In retrospect, Defendants' counsel should have alerted the Court to
10   ongoing obstacles faced in supplementing the calculations and ongoing attempts to correct
11   data inconsistencies and calculations.  Defendants unfortunately mistakenly relied upon
12   what counsel believed to be ongoing communication with and understanding by Plaintiffs
13   of the obstacles faced by attempting to calculate data never-before-tracked or required by
14   the Stipulation.  (Docs. 3756 at 9, 3734 at 2, 3686-2 at 1-2.)  Defendants' conduct should
15   not be sanctioned because they made good faith efforts to comply with the Court's Order.

16   Next, Defendants should not be sanctioned for failing to maintain data that the Court
17   assumed Defendants already tracked, calculated, and monitored – a fact that Defendants
18   advised the Court of at the initial discovery dispute stage.  (Doc. 3613 at 3-4.)  The Court
19   erred in overlooking this fact in issuing its Order.  Plaintiffs' characterization of Defendants
20   admitting that they "chose" not to track average length of stay data is misplaced where
21   Plaintiffs knew that the data was not subject to the Stipulation provisions or MCPM
22   monitoring and reporting requirements, and Plaintiffs never asked for it until five years into
23   the Stipulation. If Plaintiffs believed that custody/step level progression was required to be
24   tracked, calculated, and monitored to determine Stipulation compliance, Plaintiffs would
25   have demanded tracking, reporting, monitoring, and compliance from the start.

26   Finally, Defendants offered to provide Plaintiffs with hard copy printouts of each
27   current maximum custody inmate's classification and step level progression history from
28   the ACIS database, as such information/printouts provide the underlying source data by

which average length of stay information can be manually calculated. (Doc. 3701 at 12.) The Court did not order that this data be provided, and Plaintiffs did not request the same. While ADCRR's efforts to calculate reasonably reliable average length of stay data through the ACIS database proved futile, Defendants provided the underlying source data to Plaintiffs on the Court ordered deadline to produce supplemental data. Defendants' also produced ADCRR's best efforts at average length of stay calculations, specifying the continuing challenges faced in producing reasonably reliable data sets. (Doc. 3755 at 1-3.) Defendants' good faith efforts to comply with the production orders should not be sanctioned. Defendants' attempt to create reports that do not otherwise exist within ADCRR's ACIS database, which ultimately proved unreliable due to technology challenges, should not be the basis for attorneys' fees award and/or sanctions, especially where Defendants have produced the underlying source data for Plaintiffs to analyze the source data and perform own calculations.

## VI.    CONCLUSION

For the reasons stated above and in the Motion and prior briefings, Defendants respectfully request relief from the Court's Order that Defendants must provide average length of stay/step level historical average length of stay calculations or calculate, monitor, and report the same going forward.

DATED this 9th day of October 2020.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Rachel Love
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |
| Maria V. Morris | mmorris@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Rachel Love