Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (DKT. 3753)** |

Plaintiffs request a total award of $386,858.61—$7,141.41 in costs; $189,858.60 in fees; and a $189,858.60 fee enhancement—for work performed between July 1, 2018 through June 30, 2019. Defendants do not dispute the amount of earned fees ($189,858.60) or costs ($7,141.41), but oppose Plaintiffs' request for a 2.0 fee multiplier ($189,858.60) because they have not established that their counsel's performance during that time period was so "rare" and "exceptional" as to warrant a departure from a "reasonable" fee award. Rather, as Plaintiffs' counsel's billing records confirm, they performed ordinary and routine work common in any civil litigation. Therefore, the Court should deny their request for a fee enhancement.

## I. Plaintiffs Are Not Entitled to a Fee Enhancement.

Plaintiffs request $7,141.41 in costs and $189,858.60 in fees. (Dkt. 3753.) Defendants do not dispute these amounts. Plaintiffs, however, have not met their burden to establish that a fee enhancement is warranted for the work performed during the requested time period.[1]

Enhancement of the lodestar figure in PLRA cases is only permitted in appropriate circumstances. *See Kelly v. Wengler*, 822 F.3d 1085, 1100 (9th Cir. 2016). As Plaintiffs acknowledge, "[t]here is a strong presumption that the lodestar figure is reasonable." *Oviatt v. Pearce*, 954 F.2d 1470, 1482 (9th Cir. 1992). The fee applicant bears the burden of proving—with "specific evidence"—that a fee enhancement is warranted. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). In determining whether an enhancement is appropriate, a court must consider only those *Kerr* factors that are not subsumed in the lodestar figure. *Cunningham v. Cty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). The Ninth Circuit recently held that the PLRA rate "already 'subsumes the *Kerr* factors relevant to the determination of a reasonable attorney's fee, including the novelty and complexity of the case and the quality of the attorney's performance.'" *Parsons*, 949 F.3d at 467 (quoting *Kelly*, 822 F.3d at 1103). Thus, Plaintiffs' discussion of the four subsumed factors on pages 16–18 of their Motion (Dkt. 3753) is irrelevant. The PLRA rate already takes those factors into account and they cannot be "double-counted." *Id*.

The only factors that can be considered are:

> (5) the customary fee, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

---

[1] The Ninth Circuit affirmed that the PLRA authorizes a fee enhancement, *Parsons v. Ryan*, 949 F.3d 443, 466 (9th Cir. 2020), but Defendants have filed a Petition for Writ of Certiorari challenging that holding. *See Shinn v. Jensen*, No. 20-360 (U.S.), filed Sept. 14, 2020. Defendants maintain—for preservation purposes—that the PLRA does not authorize a fee enhancement but understand that the Court is bound by the Ninth Circuit's holding.

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Defendants do not dispute factors (9) or (11). But the remaining factors do not justify doubling the presumptively reasonable fee amount.[2]

### A. The Customary Fee in Similar Litigation.

Plaintiffs argue that the "market hourly rates for their attorneys and other staff" are markedly higher in San Francisco and Washington D.C., where they reside. (Dkt. 3403 at ¶8; Dkt. 3406 at ¶¶12, 13.) But as they even concede, those rates are not for similar (PLRA) litigation. (*See* Dkt. 3403 at ¶8 [listing rates for "non-PLRA cases"]; Dkt. 3406 at ¶¶ 13-16 [admitting that Lafferty "market rates" are higher than PLRA rates].) Here, the statutory PLRA rate is the only rate that matters, no matter the jurisdiction. *See Kelly*, 822 F.3d at 1103 (noting that "the PLRA rate virtually always replaces the prevailing market rate as the presumptively reasonable rate in the court's determination of the lodestar figure because actual prevailing rates are very unlikely to be as low as the PLRA rate," and further noting that "[l]ike the prevailing rate in a non-PLRA case, the PLRA rate generally subsumes the factors relevant to the determination of a reasonable attorney's fee"). Plaintiffs are already getting the PLRA rate. Notably, defense counsel in Arizona bills at a rate **lower** than the PLRA rate: $210 for partners and $195 for associates. (Dkt. 2394-2 at 5.) This factor weighs against a multiplier. (*See* Dkt. 2902 at 6 [noting that the former PLRA rate of $219/hour "is comparable to private practice rates for a first year lawyer [and] comparable to what Defendants' RFP authorized to outside counsel").

---

[2] This is the Court's first opportunity since the Ninth Circuit's holding to consider only the appropriate factors. In awarding a multiplier on Plaintiffs' first fees application, Magistrate Judge Duncan considered all the *Kerr* factors. (Dkt. 2902 at 5–8.) In awarding a multiplier on Plaintiffs' second fees application, the Court relied on Magistrate Judge Duncan's erroneous order. (*See* Dkt. 3245 at 2 ["For the reasons cited in the Court's prior order, the Court also affirms its payment rate and multiplier. To the extent Defendants' response is an invitation to revisit those rulings, the Court declines."].) That ruling is pending on appeal. *See Jensen v. Ryan*, No. 19-16128 (9th Cir.). The parties have agreed to a resolution of both fee applications pending a determination of Defendants' Petition for Writ of Certiorari on the underlying issue of whether a multiplier is available under the PLRA. *See Shinn v. Jensen*, No. 20-360 (U.S.).

3

**B.     Time Limitations Imposed by the Client or the Circumstances.**

While the Court previously found that this case "does not allow counsel to pause this case and work on other matters" due to the Court's insistence on monthly status conferences, this is no longer true. (Dkt. 2902 at 7.) During the 12-month time period at issue here, the Court held only one status conference, which lasted less than one hour. Further, Plaintiffs' counsel's billing records reveal they had significant time to work on other matters. During the 12-month timeframe, Attorney Kendrick (who billed more than any timekeeper) billed 196.5 hours on this case (Dkt. 3753 at 19), which is less than 10% of a 40-hour-per-week work year (196.5 / 40 x 52). A case that requires only 10% of an attorney's time does not hamper the attorney's ability to take on additional work or impose unduly time limitations.[3] *See Fortson v. Marriott Intern., Inc.*, 2013 WL 1832411, at *10 (N.D. Cal. May 1, 2013) (denying multiplier where the number of hours spent on the litigation was not enough to foreclose other work). The same is true for Attorney Fathi, who billed 153.60 hours during the requested period, representing 8% of a 40-hour-per-week work year. (Dkt. 3753 at 20.) This factor weighs against a multiplier.

**C.     The Results Obtained.**

Plaintiffs conclude "there can be no dispute that Plaintiffs' counsel obtained excellent results." (Dkt. 3753 at 25.) But in reviewing the filings and orders Plaintiffs cite to support that conclusion, these results are difficult (if not impossible) to find.

Plaintiffs' Motion requests fees for "enforcing the provisions of the Stipulation." (Dkt. 3753 at 6.) Plaintiffs, however, did not file any motions to enforce during the year they requests fees for. While they cite to the Court's September 28, 2018 Order granting in part a motion to enforce, their reliance on this Order is misplaced. Plaintiffs' motion was filed on January 4, 2018 and was fully briefed on February 8, 2018—four months before the timeframe at issue in Plaintiffs' fees Motion. Thus, none of the fees associated with briefing that motion were incurred during the timeframe requested here. Moreover, of the

---

[3] Plaintiffs provide no declarations from other timekeepers alleging they were prevented from taking on additional work.

4

15 PMs/facilities Plaintiffs moved to enforce in that motion, the Court only required remedial plans for four.[4] For the remaining 11, it determined six were substantially *compliant* and five were recently compliant, making remediation plans unnecessary. (Dkt. 3020 at 1–2.)

Relying on this Order and the Court's May 6, 2019 Order to Show Cause, Plaintiffs claim the Court found "major deficiencies" with multiple PMs, but do not explain what work they performed during the timeframe that allegedly resulted in these orders. (Dkt. 3753 at 29.) But as discussed above, the Court did not require a remediation plan for each of these PMs (95, 96–98) and some have since been terminated (PMs 6, 12, 19, 96). (Dkt. 3575-1.) Moreover, the Court's May 6, 2019 Order was issued sua sponte, based on the Court's own monitoring and observation of Defendants' compliance with the Stipulation. (Dkt. 3235 at 1.) Importantly, there was no contempt finding during the relevant time period.

Plaintiffs also claim success in the appointment of two Rule 706 experts, but do not explain why they should be credited for that appointment or how it was the result of action they took during the requested timeframe. (Dkt. 3753 at 31.) Indeed, it was the Court that ordered the parties to submit names of proposed experts "to review the entire monitoring process." (Dkt. 2900 at 12.) While Plaintiffs cite to their submission (Dkt. 2940), and one-paragraph supplement, as evidence of their success (Dkt. 2962), neither of the candidates Plaintiffs proposed were selected by the Court.

Plaintiffs also did not engage in substantive enforcement work during the timeframe. This is evidenced by the run-of-the-mill filings they cite in support of their extraordinary request for a fee enhancement. For example, they cite to an agenda they voluntarily prepared in advance of the December 6, 2018 status hearing. (Dkt. 3070.) At the conclusion of the hearing, Plaintiffs' counsel requested the Court address the items listed in his agenda, but it declined to do so:

---

[4] Significantly, no other remedial plans were ordered during the timeframe Plaintiffs request fees for.

> The Court: All right. We're adjourned.
>
> Mr. Fathi: Your Honor, I beg your pardon. Plaintiffs had submitted an agenda with a number of items.
>
> The Court: Yeah. We're not getting into the agenda, but thank you for that.

*See* Exhibit 1 (December 6, 2018 Status Hearing, 35:8-12.)

The other filings Plaintiffs rely upon also do not support "excellent" results:

> Dkt. 2941: Plaintiffs' proposal for use of contempt fines. The Court never accepted their proposal.
>
> Dkt. 3184: Plaintiffs' Notice to the Court regarding matters that had been pending before the Court for more than 180 days.
>
> Dkt. 3249: Plaintiffs' one-sentence filing indicating they do not object to Dr. Stern's proposal.
>
> Dkt. 3258: Plaintiffs' Response (which was less than a page and a half) to Defendants' Objections to Dr. Abplanalp).
>
> Dkt. 2961: Plaintiffs' three-page Response to Defendants' Implementation Plan, which Defendants filed at Plaintiffs' request. The filing requested the Court order Defendants to file a new plan. The Court never did.

Plaintiffs also cite to an opposition they filed to Defendants' extension request—an unnecessary filing resulting from Plaintiffs' counsel's refusal to provide Defendants the professional courtesy of agreeing to an extension.[5] (Dkt. 3261.) The Court granted Defendants' Motion for Reconsideration, in part.

None of these filings represent successes, and Plaintiffs' counsel should not recover enhanced fees for work which relate only to unsuccessful claims or where Plaintiffs achieved only limited success. *See Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983) ("[T]he hours spent on [an] unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court

---

[5] Plaintiffs opposed Defendants request for an extension, arguing "[Defendants] do not explain why it will take their attorneys four weeks" to provide the information. (Dkt. 3286 at 3.) Defendants would be remiss not to note that, when Plaintiffs recently requested a four-week extension to file their Reply in support of their Motion to Enforce, Defendants did not object. (Dkt. 3750 at 2.)

6

did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.").

The Orders Plaintiffs rely upon are similarly uneventful or were unprompted by Plaintiffs' counsel's action:

> Dkt. 2958: Ordering Defendants to submit updated PM charts for May 2018.
>
> Dkt. 3077: Ordering parties to be prepared to discuss the Court's jurisdiction and noting "Although there is no pending motion regarding jurisdiction, the Court has an obligation to confirm jurisdiction exists."
>
> Dkt. 3089; Dkt. 3127; Dkt. 3231: Orders pertaining to Dr. Stern's appointment, including a joint submission by the parties regarding the terms of Dr. Stern's engagement and an order requiring Dr. Stern to include additional evidence in his report.
>
> Dkt. 3234: Ordering Defendants to produce a health care transition plan for the transition from Corizon to Centurion.
>
> Dkt. 3260: Ordering that the case is randomly referred to Magistrate Fine due to Judge Bade's confirmation to the Ninth Circuit Court of Appeals.
>
> Dkt. 3269: Appointing Dr. Abplanalp at Dr. Stern's recommendation.

Plaintiffs even cite to Dkt. 3051, which ordered the parties to mediate PM 3. At Plaintiffs' request, Defendants agreed to waive the mediation and allowed Plaintiffs to proceed to the enforcement stage. They never filed their motion.

Finally, Plaintiffs assert that "[t]he overwhelming majority of the hours spent by Plaintiffs related to . . . baseless motions to disqualify the Court and motions for reconsideration . . . ." (Dkt. 3753 at 16.) Defendants filed one motion to disqualify (Dkt. 2641, Dkt. 2642), in February 2018, months prior to the timeframe relevant to Plaintiffs' Motion.[6] Plaintiffs' counsel have already been compensated for time spent briefing that motion. With respect to motions for reconsideration, Defendants only filed two. According

---

[6] There are two docket numbers associated with Defendants' motion because one requested that the Chief Judge rule on it. The filings, however, were part and parcel of the same motion.

to Plaintiffs' billing records only 8% of their hours were spent responding to them.[7] Despite Plaintiffs' claims, as discussed above, the "overwhelming majority of [their] hours" were actually spent engaging in the routine litigation they agreed to engage in when they signed the Stipulation.

### D. "Undesirability" of the Case.

Plaintiffs' counsel avows that class actions on behalf of inmates are undesirable because they are time-consuming and expensive. (Dkt. 3753 at 26; Dkt. 3406 at ¶ 18.) They do not explain how this post-settlement case is more time-consuming or expensive than other civil litigation, they just conclude that it is. This argument is unpersuasive where Plaintiffs' counsel specialize in and choose to exclusively handle inmate litigation. Unlike cases where counsel is appointed or required to take a case, these cases are *desirable* to Plaintiffs' counsel. *See Guam Society of Obstetricians and Gynecologists v. Ada*, 100 F.3d 691, 698-99 (9th Cir. 1996) (affirming multiplier for local counsel because client's position was unpopular and counsel faced reputational consequences for accepted representation). Nor can the PLRA rate be said to be a deterrent. As detailed above, defense counsel also specialize in defending correctional institutions in inmate litigation. They bill at a rate lower than the PLRA rate. This factor weighs against a multiplier.

### E. Awards in Similar Cases.

The cases Plaintiffs cite as evidence of awards in "similar cases" are distinguishable and involved vastly different circumstances. In *Carruthers v. Israel*, the ACLU was seeking fees for work performed on a prison overcrowding case that spanned over a **fifteen-year time period**. 274 F. Supp. 3d 1345, 1349 (S.D. Fla. 2017). The total fee amount was $757,840 for 15 years of work. *Id*. at 1355. To illustrate the unreasonableness of Plaintiffs' enhancement request, they request $189,858.60 for work performed in a **one-year** time period. *Graves v. Arpaio* is also distinguishable. There, plaintiffs sought fees for their work

---

[7] This is a liberal estimate, as Defendants counted each time entry that contained any of the following terms: "Rule 60," "reconsider," "Rule 7.2," including a **6.3-hour** time entry to research Rule 7.2(g). (Dkt. 3403-1 at 7.)

8

in opposing defendants' efforts to terminate a procedurally complicated consent decree that was in existence since 1995. 633 F. Supp. 2d 834 (D. Ariz. 2009). The work performed involved a "substantial amount of discovery, including tours of five jail facilities with experts, review of medical records at each facility, and numerous depositions of fact and expert witnesses," as well as evidentiary hearings and arguments spanning 13 days. *Id*. at 840. Similarly, *Trueblood v. Washington State Department of Social and Health Services* is distinguishable because the fee award was for both pre-trial and trial work. 2015 WL 12030114, *2 (W.D. Wash. June 22, 2015). Finally, unlike in *Rodriguez v. County of Los Angeles*, which Plaintiffs cite for the proposition that a multiplier is appropriate where counsel was at serious risk of receiving no payment for their performance, Plaintiffs assumed no such risk. 96 F. Supp. 3d 1012, 1025-26 (C.D. Cal. 2014) *aff'd*, 891 F.3d 776 (9th Cir. 2018). Here, Plaintiffs *ensured* the recovery of fees (and agreed to the PLRA rate) by entering into the Stipulation which provides several avenues (including an annual $250,000 monitoring fee award) for Plaintiffs to recover their fees.

As discussed *infra* in Section II(F), comparable cases have refused to apply a multiplier where, as is the case here, Plaintiffs agreed to the PLRA rate and the work performed during the requisite time period was not complex.

**F.     *Kelly* Factors—Rare and Exceptional Work.**

Plaintiffs' counsel's performance "is already factored into the PLRA rate," *Ashker v. Cate*, 2018 WL 3108924, at *21 (N.D. Cal. June 25, 2018), *order amended on reconsideration sub nom. Ashker v. Governor of California*, 2018 WL 3777168 (N.D. Cal. Aug. 9, 2018), but can justify an enhancement where the work performed was "rare" and "exceptional." *Kelly*, F.3d at 1102. In *Kelly*, the court found superior performance where:

> Plaintiffs' counsel had only twenty-six days to conduct discovery in preparation for the contempt hearing. During that period, Plaintiffs' two attorneys not only engaged in extensive motions practice, writing numerous pre-trial briefs; they also conducted an extraordinary amount of discovery. They interviewed, deposed, and prepared numerous witnesses in three states and obtained and reviewed roughly 7,000 pages of discovery. Most of the documents were produced for their review only five days before the beginning of the hearing. Some

9

> were even produced for review on the first evening of the hearing. Despite these constraints, Plaintiffs' counsel uncovered substantial evidence of noncompliance with the settlement agreement. Based on this evidence, they obtained a contempt finding and secured significant remedies for their clients.

*Id*. at 1103.

In contrast to the work performed in *Kelly*, the work performed by Plaintiffs' counsel during the relevant timeframe was neither exceptional nor rare.  As detailed in Section I(C) *supra*, there was one status conference, limited motion practice, Plaintiffs did not file any motions to enforce, and many of their filings were prompted by the Court or insignificant to enforcement of the Stipulation.  While the Court issued an order on a motion to enforce, the work was not completed in the time period Plaintiffs seek fees for.  Even if it was, the motion was largely denied.  There is nothing rare or exceptional about obtaining 27% (remedial plans for 4 of the 15 PMs/facilities requested) of the relief Plaintiffs sought. (Dkt. 3020.)

Other than concluding they achieved "extraordinary success" and "excellent results," Plaintiffs' Motion is silent with respect to what those successes were.  The work performed by Plaintiffs' counsel during the 12-month timeframe was more akin to the work performed in cases where the party's request for a multiplier was denied.  *See Heilman v. Cherniss*, 2019 WL 265108, at *5 (E.D. Cal. Jan. 18, 2019) (refusing to apply a multiplier to Plaintiffs' fee award where the issues "were not complex and the results were not 'extraordinary' or 'exceptional' insofar as they were pre-ordained"); *Ashker,* 2018 WL 3108924, at *23 (denying multiplier for plaintiffs' counsel for settlement monitoring work where plaintiffs had limited success in motion practice); *Nordstrom v. Ryan*, 2018 WL 1586754, at *5 (D. Ariz. Apr. 2, 2018) (denying multiplier despite the fact that plaintiffs' counsel obtained prison reform because the circumstances did not rise to the level described in *Kelly*); *Shakman v. City of Chicago*, 2008 WL 754124, at *7 (N.D. Ill. Mar. 18, 2008) (denying plaintiffs' request for fee enhancement for work that included monitoring and enforcing a consent decree despite counsels' "exemplary" performance).

1   While Defendants do not disagree that Plaintiffs have actively litigated on behalf of their clients, "this is what they, as advocates, are supposed to do." *Ashker*, 2018 WL 3108924, at *22.

## II. CONCLUSION

For these reasons, Plaintiffs' request for a 2.0 multiplier for fees incurred from July 1, 2018 through June 30, 2019 should be denied.

DATED this 15th day of October 2020.

          STRUCK LOVE BOJANOWSKI & ACEDO, PLC

          By /s/Daniel P. Struck
              Daniel P. Struck
              Rachel Love
              Timothy J. Bojanowski
              Nicholas D. Acedo
              3100 West Ray Road, Suite 300
              Chandler, Arizona 85226

          *Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com; docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@prisonlaw.com; edegraff@prisonlaw.com |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org; hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |
| Maria V. Morris | mmorris@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Daniel P. Struck