# EXHIBIT 1

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | NO. 2:12-cv-00601-ROS |
| Plaintiffs, | **DECLARATION OF LARRY GANN** |
| v. | |
| David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities, | |
| Defendants. | |

I, Larry Gann, Jr., make the following Declaration:

1.      I am over the age of 18 years and have personal knowledge of and am competent to testify to the matters set forth in this Declaration.

2.      I am the Assistant Director of the Medical Services Contract Monitoring Bureau ("MSCMB") for the Arizona Department of Corrections, Rehabilitation and Reentry ("ADCRR").  My credentials, experience, and responsibilities are outlined in my Declaration filed on July 10, 2020.  (Dkt. 3656-2.)

3.      I reviewed Plaintiffs' Motion to Enforce (Dkt. 3805) and their allegation that MSCMB improperly monitored PMs 50, 51, and 102 during the COVID-19 pandemic.

1   Specifically, Plaintiffs allege that files were improperly excluded from the audit sample, or

2   were counted compliant, due to COVID-19 delays or cancellations.  (*Id*.)

3       4.      On March 19, 2020, Governor Ducey issued Executive Order 2020-10, which

4   prohibited the performance of elective procedures (including dental), to conserve personal

5   protective equipment necessary to test and treat patients with COVID-19.  *See* Attachment

6   A (Executive Order 2020-10).  This Order remained in effect from March 21 through May

7   1, 2020.

8       5.      On April 22, 2020, Governor Ducey issued Executive Order 2020-32, which

9   permitted elective surgeries to proceed, beginning May 1, 2020, if certain criteria (such as

10  adequate PPE supplies and staffing percentages) were met.  *See* Attachment B (Executive

11  Order 2020-32).  This Order remains in effect.

12      6.      PM 50 monitors whether urgent specialty consultations and urgent specialty

13  diagnostic services are scheduled and completed within 30 calendar days of the consultation

14  being requested by the provider.  (Dkt. 1185-1 at 11.)

15      7.      PM 51 monitors whether routine specialty consultations were scheduled and

16  completed within 60 calendar days of the consultation being requested by the provider.  (*Id*.)

17      8.      PM 102 monitors whether routine dental wait times exceed 90 days from the

18  date the HNR was received.  (*Id*. at 15.)

19      9.      Because PMs 50, 51, and 102 monitor whether a variety of elective

20  procedures occurred within a certain timeframe, the above-referenced Executive Orders

21  severely hampered (and often prevented) these procedures from being scheduled or

22  occurring.  This remains true today.  Many outside specialty offices remain closed or are

23  seeing patients on a very limited basis.

24      10.     Upon receipt of Plaintiffs' Motion, I reviewed and analyzed the CGAR results

25  (from February through August 2020) for PMs 50, 51, and 102.

26      11.     My investigation revealed that these PMs were inaccurately monitored during

27  this time.  This was not intentional, and instead was the result of uncertainty given the

28  unique and unprecedented circumstances associated with the COVID-19 pandemic.

12.     MSCMB is in the process of re-auditing PM 102 and determining whether to undertake the great burden of re-auditing PMs 50 and 51.  If the decision is made not to re-audit, Defendants will agree to receive a noncompliant finding (0%) for these months.

13.     To ensure no additional oversights were made, I conferred with each of the monitors and analyzed CGAR findings from the relevant time period.  Based upon my investigation and discussions, I can confirm that no other PM's methodology was altered (e.g., excluding or marking files compliant due to a delay or cancellation) as the result of COVID-19.  Rather, MSCMB monitored (and continues to monitor) every PM pursuant to the Monitor Guide.

I declare under penalty of perjury that the foregoing is true and correct.
Executed this _____ day of December, 2020.

Larry Gann