1   Jared G. Keenan (Bar No. 027068)
    Casey Arellano (Bar No. 031242)
2   **ACLU FOUNDATION OF ARIZONA**
    3707 North 7th Street, Suite 235
3   Phoenix, Arizona 85013
    Telephone: (602) 650-1854
4   Email: jkeenan@acluaz.org
             carellano@acluaz.org
5
    *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6   *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
    *Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
7   *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
    *behalf of themselves and all others similarly situated*
8   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
    Asim Dietrich (Bar No. 027927)
10  **ARIZONA CENTER FOR DISABILITY LAW**
    5025 East Washington Street, Suite 202
11  Phoenix, Arizona 85034
    Telephone: (602) 274-6287
12  Email: adietrich@azdisabilitylaw.org
13  *Attorneys for Plaintiff Arizona Center for Disability Law*
    **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
14

15              UNITED STATES DISTRICT COURT

16                  DISTRICT OF ARIZONA

17  Victor Parsons; Shawn Jensen; Stephen Swartz;          No. CV 12-00601-PHX-ROS
    Dustin Brislan; Sonia Rodriguez; Christina
18  Verduzco; Jackie Thomas; Jeremy Smith; Robert
    Gamez; Maryanne Chisholm; Desiree Licci; Joseph        **PLAINTIFFS' RESPONSE TO**
19  Hefner; Joshua Polson; and Charlotte Wells, on         **DEFENDANTS' MOTION TO**
    behalf of themselves and all others similarly          **TERMINATE CERTAIN**
20  situated; and Arizona Center for Disability Law,       **HEALTH CARE**
                                                           **PERFORMANCE MEASURES**
21                 Plaintiffs,                             **(Doc. 3840)**

22         v.

23  David Shinn, Director, Arizona Department of
    Corrections, Rehabilitation and Reentry; and Larry
24  Gann, Assistant Director, Medical Services Contract
    Monitoring Bureau, Arizona Department of
25  Corrections, Rehabilitation and Reentry, in their
    official capacities,
26
                   Defendants.
27

28

LEGAL23774493.1

1    Defendants ask the Court to terminate their obligation to measure, monitor, and

2    report compliance with 23 separate health care performance measures ("PMs") at multiple

3    prisons, for a total of 142 PMs across specified institutions.  Doc. 3840.  For the reasons

4    set forth below, Defendants' motion should be denied.

5    Defendants bear the burden of proving that they are entitled to the termination of

6    monitoring.  *See Parsons v. Ryan*, 949 F.3d 443, 471 (9th Cir. 2020), *cert. denied sub*

7    *nom. Shinn v. Jensen*, No. 20-360, 2021 WL 78109 (U.S. Jan. 11, 2021) (citing "the

8    general axiom that the burden of proof rests with the moving party") (citation, internal

9    quotation marks omitted); *Graves v. Arpaio*, 623 F.3d 1043, 1048-49, 1051 (9th Cir.

10   2010); *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 1007 (9th Cir. 2000).  This

11   includes providing detailed, credible evidence of their compliance.  *See Lew v. Moss*, 797

12   F.2d 747, 751 (9th Cir. 1986) (holding that "[t]he burden in a civil case involves not one

13   but two elements: the burden of going forward with proof (the burden of production) and

14   the burden of persuading the trier of fact (the burden of proof).") (internal quotation marks

15   omitted).  Defendants have failed to carry this burden.

16   In seeking termination of these measures, Defendants rely solely upon the

17   conclusory statements of Defendant Gann that "ADCRR's duty to monitor and report on

18   the following HCPMs and complexes terminated as of the end of September 2020."

19   Doc. 3840-1 at 4.  They do not provide the actual compliance scores for a single month, or

20   measure, or prison, instead citing generally to the monthly reports provided to the Court –

21   leaving the Court to shuffle through thousands of pages, spanning a period of two years,

22   to locate the information upon which Defendants rely.  *See* Doc. 3840 at 3, citing to Doc.

23   3840-1, and to Docs. 3099, 3113, 3154, 3193, 3225, 3264, 3294, 3331, 3346, 3375, 3397,

24   3443, 3459, 3473, 3503, 3546, 3582, 3606, 3645, 3680, 3732, 3762, 3800, 3823.  But

25   "judges are not like pigs, hunting for truffles buried in briefs."  *Indep. Towers of Wash. v.*

26   *Washington*, 350 F.3d 925, 929 (9th Cir. 2003).  Defendants' failure to provide the

27   compliance scores for the PMs they seek to terminate requires denial of their motion.

28

LEGAL23774493.1

And indeed, Defendants' conclusory statements of compliance are not accurate. For example, two measures that Defendants assert are "eligible for termination" despite being in the Court's Orders to Show Cause ("OSCs") are PM 11 and PM 14 at Eyman. Doc. 3840 at 2 n. 1.[1]  A spot check of these PMs shows that Defendants' assertion is false:

**PM 11: Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days – Eyman.**

|      | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|------|------|-----|------|-----|-----|-----|
| 2018 |     |     |     |     |     |      |      |     | 90   | 80  | 93  | 88  |
| 2019 | 84  | 84  | 68  | 78  | 86  | 82   | 78   | 86  | 88   | 80  | 82  | 88  |
| 2020 | 80  | 86  | 82  | 86  | 82  | 88   | 86   | 94  | 82   | 92  |     |     |

**PM 14: Any refill for a chronic care or psychotropic medication that is requested by a prisoner between three and seven business days prior to the prescription running out will be completed in a manner such that there is no interruption or lapse in medication – Eyman.**

|      | Jan | Feb   | Mar   | Apr | May   | June | July | Aug | Sept | Oct  | Nov | Dec |
|------|-----|-------|-------|-----|-------|------|------|-----|------|------|-----|-----|
| 2018 |     |       |       |     |       |      |      |     | 90   | 97   | 100 | 100 |
| 2019 | 54  | 84.38 | 84.62 | 86  | 85.11 | 0    | 70   | 86  | 92   | 74   | 97  | 90  |
| 2020 | 81  | 95    | 96    | 92  | 100   | 97   | 97   | 97  | 95   | 92.5 |     |     |

These PMs are ineligible for termination because they have been noncompliant for seven or more months during the relevant 24-month period.  *See* Doc. 1185 at 4-5, ¶ 10(b).[2]

There are additional reasons why Defendants' motion must be denied.  As articulated in Plaintiffs' December 7, 2020 Separate Statement in Response to the Court's

---

[1] Plaintiffs' position is that the Court cannot terminate PMs in the pending OSCs without first ruling on the OSCs themselves.  *See infra* at page 5.

[2] Defendants misstate the standard for termination of PMs.  Subsequent to the order they quote at Doc. 3840 at 3 n.2 and in the Gann Declaration at Paragraph 9 (citing Doc. 2030), the parties filed a Joint Motion for Clarification regarding the standard set forth in Doc. 2030, because it conflicted with the plain language of the Stipulation.  *See* Doc. 2561 at 3-4 (Plaintiffs' Position, citing to the Stipulation).  The Court subsequently issued an order noting that in order to avoid the unintentional situation of a "purgatory category of PM/locations," that "the logical answer must be that *either* a violation of Section (b)(i) *or* a violation of Section b(ii) [of the Stipulation] is necessary and sufficient to establish a finding of non-compliance."  Doc. 2644 at 2 (emphasis in the original).

1    Order (Doc. 3821), [Doc. 3825], there are outstanding motions and orders that require

2    resolution by this Court before additional PMs can be terminated.  Doc. 3825 at 2-3.

3         ***First***, in a motion that could affect the recent compliance scores for many if not all

4    of the outstanding PMs, Plaintiffs have asked the Court to have Dr. Stern determine if

5    Defendants' practice of falsely marking as compliant, or excluding from the audit pool,

6    actions required by the PM that were in fact cancelled or delayed (ostensibly due to the

7    COVID-19 pandemic) extends beyond the three PMs where the false data was facially

8    obvious in the CGAR reports.  Doc. 3805.  Defendants conceded the inaccuracy of their

9    compliance scores for these three PMs.  Doc. 3822 at 2.  Accordingly, this Court should

10   hold in abeyance any decision to terminate *any* additional PMs until after ruling on

11   Plaintiffs' pending motion regarding the accuracy of Defendants' monitoring.[3]

12        This is far from the only time Defendants' asserted compliance scores have turned

13   out to be false.  Plaintiffs recently submitted supplemental evidence regarding the

14   monitoring of maximum custody performance measures (MCPMs) that were falsely

15   reported as compliant, when Defendants' own documents showed that the required

16   activities were not occurring.  *See, e.g*., Docs. 3833, 3834, and exhibits.  And a recent

17   review of Defendants' latest revised Monitoring Guide shows that Defendants failed to

18   properly incorporate the Court's orders of February 12, 2020 (Doc. 3495) and March 11,

19   2020 (Doc. 3518) to adopt Dr. Marc Stern's recommended methodological changes

20   outlined in his report.  *See* Declaration of Tania Amarillas Diaz, filed herewith, ¶ 2, Exs. 1

21   and 2.

22        In this review, Plaintiffs' counsel found that Defendants have unilaterally changed

23   the methodology for measuring compliance with certain performance measures that were

24   not addressed in the Court's orders.  For example, the change that Defendants made to

25   their monitoring of PM 4 ("Infirmary staffing will be maintained with a minimum staffing

26   level of 2 RNs on duty in the infirmary at all times at Tucson and Florence, and a

27   _____

28        [3] Plaintiffs also have filed a motion to enforce the court's order regarding the
     length of mental health encounters.  Doc. 3694.

minimum of one RN on duty at Perryville and Lewis,") from a binary methodology where one noncompliant day made the month noncompliant, to a methodology where they now calculate compliance based on the number of compliant days in a given month divided by the number of days in the month resulted in this measure at Tucson appearing to be in compliance when in reality it is not.  This is in turn a violation of a court order issued by Judge Duncan in 2017 ordering that "there will be no partial credit for PMs 1, 2, and 4." *See* Doc. 2474 at 1 ("IT IS ORDERED there will be no partial credit" for PMs 1, 2, and 4); 11/21/17 Hearing Tr. at 8:13-23.[4]

**PM 4 – Tucson: ADC's Self-Reported Scores Using Unilaterally Changed Methodology from June 2020 Monitoring Guide**

|      | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct  | Nov | Dec |
|------|-----|-----|-----|-----|-----|------|------|-----|------|------|-----|-----|
| 2018 |     |     |     |     |     |      |      |     | 100  | 100  | 100 | 100 |
| 2019 | 100 | 0   | 100 | 100 | 100 | 0    | 0    | 100 | 100  | 100  | 100 | 100 |
| 2020 | 100 | 100 | 100 | 93  | 81  | 87   | 97   | 94  | 100  | 96.8 |     |     |

**PM 4 – Tucson: ADC's Actual Scores Using Court-Ordered Methodology**

|      | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
|------|-----|-----|-----|-----|-----|------|------|-----|------|-----|-----|-----|
| 2018 |     |     |     |     |     |      |      |     | 100  | 100 | 100 | 100 |
| 2019 | 100 | 0   | 100 | 100 | 100 | 0    | 0    | 100 | 100  | 100 | 100 | 100 |
| 2020 | 100 | 100 | 100 | 0   | 0   | 0    | 0    | 0   | 100  | 0   |     |     |

*See* Amarillas Diaz Dec. ¶¶ 4-5, Ex. 1 at 18 (Bates No. ADCM1618100), at 19 (Bates No. ADCM1618101), and 21 (Bates No. ADCM1618103).

*Second*, another of the many outstanding matters that need to be addressed by the Court before ruling on Defendant's termination motion is Plaintiffs' June 2020 enforcement motion detailing Defendants' noncompliance with Paragraph 14's language interpretation requirements.  Doc. 3623.  This motion implicates all PMs that involve patient/staff interactions; if the Court finds that Defendants have not complied with the interpretation requirements of Paragraph 14, Defendants' compliance scores will be

---

[4] Plaintiffs had previously stipulated to the termination of PMs 1 and 2. [Doc. 3824 at 2] In light of the discovery of Defendants' unilateral change to the monitoring methodology for PMs 1 and 2, Plaintiffs hereby withdraw their stipulation to termination pending a further detailed review of Defendants' compliance numbers.

invalid.[5]  Thus, the Court should not rule on Defendants' termination motion until it has resolved Plaintiffs' motion to enforce Paragraph 14.[6]

*Finally*, the Court has also not resolved its two outstanding Orders to Show Cause ("OSCs") or Plaintiffs' motion to find the Defendants in contempt of the May 2019 OSC for PM 50 at Florence.  [Docs. 3235, 3490, 3584]  The Court should issue a final order on these matters prior to terminating the PMs that are within the OSCs.  [Doc. 3840 at 2 n.1][7]

## CONCLUSION

This Court can have no confidence in Defendants' unsupported claims of compliance.  And even if Defendants' compliance scores were accurate, these scores may need to be recalculated depending upon the Court's ruling on Plaintiffs' pending motions and the Court's Orders to Show Cause.  Accordingly, Plaintiffs respectfully request that the Court deny Defendants' motion, without prejudice to refiling upon the Court's resolution of the outstanding motions and Orders to Show Cause, and the resolution of any appeals of those orders.

---

[5] Defendants' claim that the PMs that they seek to terminate "are not subject to pending notices of noncompliance or motions to enforce" (Doc. 3840 at 2) is therefore false.

[6] The following PMs in Defendants' motion implicate interactions between class member patients and health care staff: PM 14, 21, 33, 34, 42, 43, 47, 49, 63, 64, 93, 103.

[7] The Court also has not issued a final order on the use of the June 2018 contempt fine that was affirmed by the Ninth Circuit.  [*See* Docs. 3385, 3402, 3410, 3416, 3430, 3435, 3469]

Respectfully submitted,

Dated:  January 20, 2021

**ACLU NATIONAL PRISON PROJECT**

By:  s/ Corene T. Kendrick
David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:     dfathi@aclu.org
                 mmorris@aclu.org
                 echo@aclu.org

*Admitted *pro hac vice*. Not admitted in
   DC; practice limited to federal courts.

**Admitted *pro hac vice*

Corene T. Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON
PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone:  (202) 393-4930
Email:     ckendrick@aclu.org

*Admitted *pro hac vice*

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:     dspecter@prisonlaw.com
                 ahardy@prisonlaw.com
                 snorman@prisonlaw.com
                 rlomio@prisonlaw.com

*Admitted *pro hac vice*

---

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    jkeenan@acluaz.org
          carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm; Desiree
Licci; Joseph Hefner; Joshua Polson; and
Charlotte Wells, on behalf of themselves and
all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
      Asim Dietrich (Bar No. 027927)
      5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
      Telephone: (602) 274-6287
      Email:    adietrich@azdisabilitylaw.org

      Rose A. Daly-Rooney (Bar No. 015690)
      J.J. Rico (Bar No. 021292)
      Maya Abela (Bar No. 027232)
      **ARIZONA CENTER FOR
      DISABILITY LAW**
      177 North Church Avenue, Suite 800
      Tucson, Arizona 85701
      Telephone: (520) 327-9547
      Email:
        rdalyrooney@azdisabilitylaw.org
              jrico@azdisabilitylaw.org
              mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

1

**<ins>CERTIFICATE OF SERVICE</ins>**

2
     I hereby certify that on January 20, 2021, I electronically transmitted the above

3
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4
Notice of Electronic Filing to the following CM/ECF registrants:

5

6
Michael E. Gottfried
Lucy M. Rand

7
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov

8
Lucy.Rand@azag.gov

9
Daniel P. Struck
Rachel Love

10
Timothy J. Bojanowski
Nicholas D. Acedo

11
Ashlee B. Hesman
Jacob B. Lee

12
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC

13
dstruck@strucklove.com
rlove@strucklove.com

14
tbojanowski@strucklove.com
nacedo@strucklove.com

15
ahesman@strucklove.com
jlee@strucklove.com

16
tray@strucklove.com

17
*Attorneys for Defendants*

18
               s/ C. Kendrick

19

20

21

22

23

24

25

26

27

28