Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: jkeenan@acluaz.org
carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,

Defendants.

No. CV 12-00601-PHX-ROS

**DECLARATION OF TANIA AMARILLAS DIAZ IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO TERMINATE CERTAIN HEALTH CARE PERFORMANCE MEASURES (Doc. 3840)**

I, Tania Amarillas Diaz, declare:

1. I am an investigator at the Prison Law Office ("PLO") assigned to work on the *Parsons* case. I am over the age of 18 and if called as a witness, I could and would testify competently to the facts stated below, all of which are within my personal knowledge.

2. At the direction of attorneys of record in this matter, I reviewed the Arizona Department of Corrections Medical Services Contract Monitoring Bureau's Monitor Guide (rev. June 1, 2020) and compared recent edits made to the Monitor Guide in track changes mode to the Court's orders from February 12 and March 11, 2020 (Doc. 3495 and 3518, respectively) that ordered Defendants to adopt many of Dr. Marc Stern's recommended methodological changes outlined in his report (Doc. 3379). I was instructed to confirm that all of the Court-ordered changes in methodology had been incorporated into the Monitoring Guide. Attached as Exhibit 1 is the most recent version of the Monitor Guide provided by Defendants in June 2020, Bates stamped ADCM1618083-ADCM1618259. My analysis resulted in the document attached as Exhibit 2 that summarizes where ordered changes were not made.

3. In the course of reviewing the Monitor Guide, I discovered changes had been made to the instructions to Performance Measures 1, 2, and 4, although these changes did not appear to have been ordered by the Court in the two orders.

4. The methodology for Performance Measures 1, 2, and 4 had been edited to calculate compliance based on the number of compliant days divided by the number of days in a given month to determine the compliance percentage. *See* Exhibit 1 at 18 (Bates No. ADCM1618100), at 19 (Bates No. ADCM1618101), and 21 (Bates No. ADCM1618103). Prior to this change, for example, compliance for Performance Measure1 was calculated as 0% if an RN was not onsite for 24 hours during one or more days in a given month or 100% if an RN was onsite for 24 hours every day on a given month. This binary methodology had been ordered by Judge Duncan. Doc. 2474.

5. Because of the change in the methodology for PM 4 ("Infirmary staffing will be maintained with a minimum staffing level of 2 RNs on duty in the infirmary oat all times at Tucson and Florence, and a minimum of one RN on duty at Perryville and Lewis,") the scores for this measure were inflated in recent months. Specifically, the Tucson prison would have been substantially noncompliant with the measure as detailed below:[1]

**PM 4 – Tucson: ADC's Reported Scores Using Changed Methodology from June 2020 Monitoring Guide**

| | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | | | | 100 | 100 | 100 | 100 |
| 2019 | 100 | 0 | 100 | 100 | 100 | 0 | 0 | 100 | 100 | 100 | 100 | 100 |
| 2020 | 100 | 100 | 100 | 93 | 81 | 87 | 97 | 94 | 100 | 96.8 | | |

**PM 4 – Tucson: ADC's Actual Scores Using Previous Methodology**

| | Jan | Feb | Mar | Apr | May | June | July | Aug | Sept | Oct | Nov | Dec |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2018 | | | | | | | | | 100 | 100 | 100 | 100 |
| 2019 | 100 | 0 | 100 | 100 | 100 | 0 | 0 | 100 | 100 | 100 | 100 | 100 |
| 2020 | 100 | 100 | 100 | 0 | 0 | 0 | 0 | 0 | 100 | 0 | | |

I declare under penalty of perjury of the laws of the State of Arizona, and the United States of America that the foregoing is true and correct, and that this declaration was executed on January 20, 2021, in Oakland, California.

Dated: January 20, 2021

/s/ *Tania Amarillas Diaz*

Tania Amarillas Diaz

[1] Perryville had a score of 97% compliance with PM 4 in May 2020. This should have been 0%.

Dated: January 20, 2021

Respectfully submitted,

**ACLU NATIONAL PRISON PROJECT**

By: s/ Corene T. Kendrick

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.

**Admitted *pro hac vice*

Corene T. Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice*

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:     dbarr@perkinscoie.com
           agerlicher@perkinscoie.com
           jhgray@perkinscoie.com

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:     jkeenan@acluaz.org
           carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm; Desiree
Licci; Joseph Hefner; Joshua Polson; and
Charlotte Wells, on behalf of themselves and
all others similarly situated*

**ARIZONA CENTER FOR DISABILITY
LAW**

By:   s/ Maya Abela
      Asim Dietrich (Bar No. 027927)
      5025 East Washington Street, Suite 202
      Phoenix, Arizona 85034
      Telephone: (602) 274-6287
      Email:    adietrich@azdisabilitylaw.org

      Rose A. Daly-Rooney (Bar No. 015690)
      J.J. Rico (Bar No. 021292)
      Maya Abela (Bar No. 027232)
      **ARIZONA CENTER FOR
      DISABILITY LAW**
      177 North Church Avenue, Suite 800
      Tucson, Arizona 85701
      Telephone: (520) 327-9547
      Email:
        rdalyrooney@azdisabilitylaw.org
                jrico@azdisabilitylaw.org
                mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability
Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ C. Kendrick

# Exhibit 1



CORRECTIONS
ADC
Arizona Department
of Corrections

ARIZONA DEPARTMENT OF CORRECTIONS

~~Health~~ Medical Services Contract Monitoring Bureau

# Monitor Guide

# Duties & Responsibilities

DRAFT REVISED 06/01/2020

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618083

ARIZONA DEPARTMENT OF CORRECTIONS
HEALTH SERVICES CONTRACT MONITORING BUREAU

# Monitor Guide

Arizona Department of Corrections
1831 W. Jefferson
Phoenix, AZ 85007
Phone 602.255.2468

i

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618084

# Table of Contents

Introduction / Purpose ........ 1
The CGAR Monitoring Tool ........ 2
History ........ 3
Monitor Responsibilities ........ 6
The Monitor Cycle ........ 7
Performance Measures ........ 9
Methodology ........ 910
Source of Records ........ 10
Random Sampling ........ 10
Addressing Deficiencies ........ 110
Unavailable Inmates ........ 11
Ethics for Excellence ........ 12
Glossary ........ 13
Performance Measure Monitoring Methodology ........ 14

Appendix A: Definitions ........ 1661

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

## Introduction

The Arizona Department of Corrections (ADC) contracts with a correctional health services vendor to provide full service medical, dental, and mental health care to inmates housed at the following Arizona State Prison Complexes (ASPC): Douglas, Eyman, Florence, Lewis, Perryville, Phoenix, Safford, Tucson, Winslow, and Yuma. The ADC created the Health Services Contract Monitoring Bureau (HSCMB) in July 2012 to monitor the healthcare and treatment provided to inmates when the State privatized health services. In 2020, the Bureau's name was changed to the Medical Services Contract Monitoring Bureau.

## Purpose

The purpose of this Monitor Guide is to provide specific methods by which to determine compliance with the CGAR standards as set out in the *Parsons v. Ryan, et al.* Stipulation agreement. It endeavors to reinforce and clarify the expectations ADC has of its contracted healthcare vendor and its monitors. The Monitor Guide is designed to help ensure consistency and reduce variations in the application of facts to the CGAR standards. It provides instructions and directions for the day-to-day operation of CGAR monitoring.

As its title implies, this document is a guide. It is not meant to cover every aspect of monitoring the performance of the contract vendor. It does not address every possible scenario applicable to the CGAR performance measures or the contract. Monitors are expected to use their professional judgment while being fair and consistent in the application of these standards.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

## The CGAR Monitoring Tool

The "GAR" system of monitoring has been utilized by the ADC's security personnel for a number of years with beneficial monitoring outcomes noted. The initials G, A, and R indicate the general level of compliance with a specific performance measure. Security has used the following interpretation:

**G** = Green means the performance measure is in substantial compliance with the applicable indicators in a reporting period (85% or greater).

**A** = Amber means some elements of the performance measure are noncompliant with the applicable indicators in a reporting period. This designation is no longer used.

**R** = Red means a substantial number of elements of the performance measure are noncompliant with the applicable indicators in a reporting period, (84% or below) or repeated Amber findings have been reported for prior periods.

Following the privatization of health services at the ADC, health care performance measures were developed based primarily on National Commission on Correctional Health Care (NCCHC) Standards and codified into the **M**edical **G**reen, **A**mber, **R**ed (MGAR) monitoring tool.

This system evolved into the **C**ompliance **G**reen, **A**mber, **R**ed (CGAR) monitoring tool to adapt to the February 18, 2015 Stipulation in the *Parsons v. Ryan, et al.* litigation ("Stipulation").

This is a user-friendly, web-based application that reliably measures compliance against established healthcare standards, using a defined format. It is the mechanism through which performance results and corrective actions are shared between the ADC Health Services Contract Monitoring Bureau and the private contract vendor. Although the color system is maintained (G, A, R), the focus is placed on the actual percentage of compliance for each performance measure to determine a score. A score of 85% or above received a green designation. A score below of 8485% or below receives a red designation. Amber is no longer used as part of the CGAR scoring.

The CGAR is a cyclical process repeated every month. Each monthly review looks at data from a specific period of time to determine if the specific performance measures are in compliance during that reporting period. Each monitor measures performance specific to each prison complex, compares results of compliance to established performance thresholds, and quantifies the need to make improvements.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

## History

The following chronology of events provides a brief history of the ADC's Health Services Contract Monitoring Bureau:

- **September 3, 2009:** State of Arizona, Laws 2009, 3rd Special Session, Chapter 6, HB 2010, Section 26, parts B, C, and D, required privatization of all ADC correctional health services, in all ten (10) state-owned/operated prisons, at a cost below the fiscal year (FY) 2007-2008 total cost to the State for these services.

- **February 19, 2010:** The ADC issued a Request for Proposal (RFP) to privatize all correctional health services, in all state-owned/operated ADC prison facilities, at a cost below the FY 2007-2008 costs for these services.

- **May 24, 2010:** Six acceptable correctional health services proposals were submitted.

- **December 14, 2010:** After evaluating the proposals, the ADC presented its findings to the Arizona Joint Legislative Budget Committee (JLBC) in Executive Session.

- **March 25, 2011:** Prior to award, the ADC canceled the RFP in anticipation of new legislation related to privatization of correctional health services.

- **April 27, 2011:** State of Arizona, Laws 2011, 1st Regular Session, Chapter 278 (HB 2154) required a new correctional health services Request for Information (RFI) and RFP and removed the original requirement that required the ADC to award a contract at a cost below the ADC FY 2007-2008 total cost.

- **May 27, 2011:** An RFI was released. The purpose of the new RFI was to identify the availability and cost of implementing a comprehensive correctional health services program under a single contract and to enable the development of a comprehensive RFP.

- **June 27, 2011:** Responses were received from ten (10) vendors.

- **July 22, 2011:** The ADC's proposal evaluation team met and evaluated the responses to the RFI.

- **July 28, 2011:** After evaluating the responses, the ADC presented its findings to JLBC in Executive Session. JLBC gave the matter a favorable review, allowing the ADC to proceed with the RFP.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618088

- **October 25, 2011:** The ADC issued a new RFP with responses due December 21, 2011, which was later extended to January 3, 2012.
- **January 3, 2012:** Three acceptable proposals were submitted to the ADC.
- **January 10, 2012**: The ADC's contract monitoring and oversight program planning team met to begin framing the organizational structure, roles, and responsibilities for the monitoring function over privatized health services.
- **January 18, 2012:** The ADC's proposal evaluation team convened and initiated review of the responses to the RFP.
- **March 1, 2012:** The ADC's contract oversight and monitoring organizational structure was completed and approved.
- **March – June 2012:** The ADC developed a monitoring system and procedures, including the MGAR monitoring tool.
- **March 16, 2012:** The ADC's proposal evaluation team completed its review of the RFP responses and recommended that the award be made to Wexford Health Sources, Inc. ("Wexford").
- **March 22, 2012:** Plaintiffs filed a class action complaint (Dkt. 1) in *Victor Antonio Parsons, et al. v. Charles L. Ryan, et al.* in the United States District Court, District of Arizona, Case No. CV12-00601-PHX-NVW, which is known as "*Parsons v. Ryan, et al.*"
- **April 1, 2012:** The ADC awarded the contract to Wexford and a 90-day transition period began.
- **July 1, 2012:** All services officially transitioned to privatized healthcare, and Wexford began providing inmate healthcare services. The ADC began monitoring activities using the MGAR.
- **November 2012:** Wexford requested to terminate the health services contract.
- **January 30, 2013:** The ADC announced the agreement to terminate its contract with Wexford. The contract was awarded to a new vendor, Corizon Health Services ("Corizon"), with a 30-day transition. The contract was awarded via a Competition Impracticable Procurement.
- **March 3, 2013:** Termination of Wexford contract.
- **March 4, 2013:** Corizon began providing inmate healthcare services.

- **March 6, 2013:** In *Parsons v. Ryan, et al.*, the Court certified a Class and a Subclass. (Dkt. 372.)
- **October 9, 2014:** The ADC entered into a Stipulation in the *Parsons v. Ryan, et al.* litigation and asked the district court to vacate the trial which was scheduled to commence on October 21, 2014.
- **October 14, 2014:** The Stipulation was filed. (Dkt. 1185.) This is the operative Stipulation document.
- **October 2014 – February 2015:** The ADC made adjustments to the MGAR, which evolved into the CGAR, based upon performance measures identified in the Stipulation.
- **February 18, 2015:** The Court held a Fairness Hearing and made the Stipulation effective as of February 18, 2015.
- **February 24, 2015:** The District Court approved the terms of the Stipulation and memorialized that the Stipulation is effective as of February 18, 2015.
- **July 1, 2018:** The contract between ADC and Corizon was extended through June 30, 2019.
- **July 1, 2019:** A new contract between ADC and Centurion of Arizona begins.
- October 7, 2019: David Shinn appointed ADC Director; *Parsons v Ryan* is now *Parsons v Shinn.*

Formatted: Font: Italic

## Monitor Responsibilities

~~Health~~ Medical Services Contract Monitoring Bureau (~~HSCMB~~MSCMB) is responsible for monitoring the correctional health services vendor's ADC contract compliance and the Stipulation in the *Parsons v. ~~Ryan~~Shinn, et al.* litigation. Monitors approach their job as a neutral fact-finder with the goal to ensure health and safety of the institution, the inmates, and the public. Monitors conduct regular on-site tours, as necessary, and regularly review electronic and paper health records and reports. Monitors also complete monthly CGAR reports, documenting their findings, and follow-up on the implementation of any corrective action plans (CAPs). The purpose of monthly reviews is to ensure the vendor is delivering comprehensive healthcare to ADC inmates that meets or exceeds thresholds established in the Stipulation and the contract.

The Monitors' responsibilities include:

- **Compliance**: ensuring compliance with all contract provisions and applicable ADC written instructions, Administrative Rules, guidelines, policies, technical manuals, specifications, court orders, Department Orders (DOs), Director's Instructions (DIs) and the Stipulation. Monitors review all records of the contract vendor and its subcontractors, including financial books and records, employee records, training records, inmate medical records (electronic health records), reports and any other documents necessary to evaluate and ensure contract compliance. The vendor must employ sufficient staffing in accordance with the Stipulation, provide necessary reports and source documents, and accurately document the services provided to achieve compliance.

- **Understanding**: being familiar with the provisions and terms of the ADC's contract with the vendor, the Stipulation in the *Parsons v. ~~Ryan~~Shinn, et al.* litigation, and all applicable ADC written instructions, Administrative Rules, guidelines, policies, specifications, and Department Orders (DOs).

- **Reporting**: documenting deficiencies using the CGAR monitoring tool and report to ensure the requirements specified in the contract and Stipulation are met. Monitors must communicate with the vendor and its health services staff to address all deficiencies. The CGAR results are provided to the vendor in a monthly report. When entering findings into the CGAR, a description/explanation of failed records including the inmate number and a brief reason for the failure should be given.

- **Evaluating**: evaluating the vendor's compliance and requesting CAPs to ensure noted deficiencies are addressed through continuous follow-up and communication. If noncompliance issues are noted, the vendor must submit appropriate CAPs. Noncompliance issues can result in financial penalties or monetary offsets.

Communication and follow-up are keys to effective monitoring. Monitors provide continuous communication and feedback between the health services vendor and ADC both verbally and in writing. Monitors attend meetings and conduct announced and unannounced tours and inspections. Whenever possible, the Contract Monitoring team should participate in all meetings/briefings in which inmate health services are discussed and be a visible source at the facilities.

It is important to remember that Monitors are **not** responsible for directing the operations of the facility. Monitors capture information as to whether the vendor is following policies and complying with the terms of the contract and the Stipulation. Monitors observe and consult with health services staff and supervisors. Monitors assess by observing, listening, reading, and asking and answering relevant questions. Accurate assessments require critically reviewing varied sources of information, drawing reliable inferences, and assembling the information logically for others to review.

Collaboration is essential. Monitors may provide guidance by explaining the reason and nature of the problem or issues of noncompliance, so the vendor can understand why its performance is deficient. The best way to address an issue is not to tell the contract vendor what to do, or have the contract vendor tell you what it will do, but to work with the contract vendor to develop a solution and an agreed upon action plan.

Monitors work as a team with the other Monitors and staff in the Health Services Contract Monitoring Bureau. As a team, Monitors need to plan how to monitor all areas of each complex and how to follow up on previous deficiencies. Monitors must also plan for the week, month, and quarter and prioritize tasks daily. Monitors participate in monthly (telephonic or in-person) meetings to coordinate and discuss monitoring efforts.

## The Monitoring Cycle

Generally, a monitoring cycle consists of multiple stages:

**Stage 1:** Select and Understand Areas or Topics to be monitored

Contract Monitors currently review the Performance Measures set forth in the *Parsons v. Ryan, et al.* Stipulation. The areas that are monitored include mental health, dental and medical care. Performance measures are facility specific, and not every performance measure is measured at every facility. These are predetermined.

**Stage 2**: Identify and Understand Performance Measures or Best Practices

Identify what information should be measured. While every aspect of the vendor's performance requires review, the focus of the CGAR review is the Performance Measures (and acceptable thresholds) as determined by the Stipulation. These are predetermined.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618092

Criteria: The criteria are the standards used to measure the activity. They define what should be happening (the Performance Measures or best practices) and must be specific and measureable. Criteria are based upon applicable ADC written instructions, Administrative Rules, guidelines, policies, technical manuals, specifications, court orders, Director Orders (DOs), and the Stipulation. These are predetermined.

**Stage 3:** Data Collection

By the 5th day of each month, the ~~HSCMB~~MSCMB is to receive records applicable to each performance measure. In most cases, ~~HSCMB~~MSCMB uses the Microsoft Excel randomization function to produce randomized lists for the monitoring staff, unless the entire population of applicable records is used to evaluate compliance with the performance measure. Random sampling reduces bias and increases the chances that every inmate's medical record with relevance to the specific performance measure may be selected in the monitoring cycle. The records selected from the randomized logs must be relevant to the specified Performance Measure and material to the month being monitored. In most cases, the data needed to determine compliance with the performance measure will be identified in this Monitor Guide and will come from the electronic health records. Data placed in the medical record after the Monitor provides preliminary findings to the contractor will not be considered for compliance purposes.

A careful review is necessary to ensure that the record being reviewed contains data that is relevant to the performance measure and within the month being monitored.

Data is collected in a retrospective manner, allowing for monitoring periods to be consistent and complete. Data reporting periods are generally the prior completed month, but will vary depending on timeframes required by individual performance measures.

When determining compliance, time frames may be specific to calendar months, days, or hours, based upon order from the court in *Parsons v. Ryan, et al.*, Dkt. 1673 at 3. As orders are made, details may change and Monitors must be aware of current orders.

**Stage 4:** Data Analysis

Analysis involves interpreting the data collected to discover how the current practices compare to the agreed criteria (Performance Measures) and standards set in the Stipulation. Proper analysis will clearly identify either underperformance or compliance with accepted thresholds. This Monitor Guide provides a standard format for reviewing and analyzing results. The CGAR monitoring tool is the standard form for reporting those results. For ~~HSCMB~~MSCMB staff, it is found electronically at http://cgar/Login.aspx.

**The event (rather than the patient) will be used as the Unit of Analysis for each performance measure unless otherwise specified.**

Formatted: Font: Bold

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618093

**Stage 5:** Write and Disseminate a Monitoring Report

This stage of the monitoring cycle is intended to create a record and inform the monitor, vendor, and outside parties of the monitoring results. As results are reached for each performance measure, preliminary results are shared with the contracted vendor and, upon request, the complex warden. The monthly CGAR report is used to document and communicate rates of compliance with the performance measures. When communicating results, it is important for the exchange to be consistent and independent. The contract vendor may request that findings with which it disagrees be reviewed by ~~HSCMB~~MSCMB prior to reporting the results in the CGAR report. Tracking results over several months also provides a road map showing levels of compliance and noncompliance with the Stipulation agreement.

**Stage 6:** Implement Corrective Action Plans

It is the responsibility of the contract vendor to create and implement corrective action designed to bring CGAR deficiencies into compliance with the requirements of the Stipulation agreement. All team members, including the vendor's management, health providers, ADC operations staff, and monitors, should be involved in the discussion about what changes need to be made at their facility and how those changes will be implemented.

**Stage 7**: Follow-Up and Re-Monitoring

In the event the findings are disputed, the contract vendor may provide a written rebuttal to findings after the CGAR report has been completed. Any questions, comments, additional information, and objections to any findings are to be submitted within the first ten (10) business days of the month after the CGAR results are entered into the CGAR report. After results are communicated and corrective action plans are implemented, it is important to follow-up to maintain accountability and ensure progress is being made with compliance and corrective action plans.

Re-monitoring is another portion of the monitoring cycle. This is carried out by monitoring the same performance measure from one month to another and reporting month-to-month results.

## Performance Measures

The Performance Measures are defined in the Stipulation included as Attachment A (See *Parsons v. Ryan, et al.*, CV 12-00601-PHX-DJH, Stipulation). The Performance Measures cover a variety of topics including: staffing, medical records, pharmacy, equipment, emergency response, quality improvement, intake facilities, intersystem transfers, access to care, diagnostic services, specialty care, chronic care, prenatal services, preventative services, infirmary care, medical diets, mental health, dental and maximum custody.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

## Methodology

The Stipulation agreement establishes a general protocol for determining compliance with the performance measures. These general protocols are part of the methodology used to measure compliance. These more specific methodologies have been and will continue to be subject to review and revision as new reporting capabilities are identified and court orders are issued. As the software used to store and organize patient health information is updated and revised, the information available in the EHR also changes. As a result, the specific methodology is subject to review and revision in order to increase efficiency, provide more consistent results on a statewide basis, and improve the quality of the data from which monitoring occurs.

Attachment C of the Stipulation contains a summary of the Methodology for each Performance Measure. The methodologies are continuously reviewed and revised as needed through this Monitor Guide to produce the highest quality report possible.

Pursuant to a Court Order (*Parsons* doc 1673, 09/16/2016)) 30 days and one month are synonymous for monitoring purposes. Similarly, 60 days is two months, 90 days is 3 months, and 180 days is 6 months. For example, if a patient is seen on March 15 and a 30-day follow-up is ordered, the patient must be seen on or before April 15.

**Formatted:** Font: Italic

If an action is required is required every X days, the clock starts on the day an action occurs and the clock runs for X days. For example, if a patient is seen on August 1, August 2 is one day; August 8 is 7 days, etc. However, September 1 is 30 days.

## Source of Records

The ability to obtain documentation from limited and clearly defined areas will provide solid, consistent, and objective results. The general source of records is identified in the Stipulation. More specific locations of these records are contained in this Monitor Guide.

The contract vendor currently uses eOMIS software for EHRs. When reviewing EHRs, it is important to remember that patient contacts, information relevant to a performance measure, and notes may be recorded in a variety of different electronic records or found using a variety of methods.

## Random Sampling

Random sampling is the process of selecting a subset of records (sample) from a larger universe (the sample set) to ensure that the sample is mathematically more likely to be representative of the characteristics of the sample set or universe from which it is drawn. Random sampling techniques ensure that no one file from the universe of files has any higher probability or likelihood of being included in the sample than any other.

## Addressing Deficiencies

Any deficiencies noted must be addressed in a progressive manner, depending on the severity and nature of the issue. If circumstances allow, the Contract Monitor should verbally address the issue with the Facility Health Administrator ("FHA") or other supervisory staff, as appropriate. This should precede the written documentation of the results, in case there is any dispute or misunderstanding regarding the findings. Clear communications between the monitoring staff, the vendor leadership, and the security/operations leadership is a key component to an open, honest, and successful business relationship.

Whenever a Monitor discovers a deficiency that requires immediate attention, such as a life safety issue or major violation of a performance measure or key contract provision, the Monitor should immediately address the issue with the FHA and Warden. The Monitor should not wait until the CGAR report is generated to address significant issues or concerns in the interest of patient care and safety. The monitor is to notify his/her supervisor of significant concerns regarding patient care and safety.

## Unavailable Inmates

If an inmate refuses a clinical contact or appointment, a refusal must be documented. When a refusal is appropriately documented, it is considered to be a contact or other applicable event for compliance purposes.

Whenever there is an unexplained gap in contacts with an inmate, it is recommended to review the inmate's external movement to determine whether the inmate was out of the facility (e.g., out to court, out to the hospital, interstate compact transfer, or released). External movement can be located in (1) the ACIS ~~/ AIMS~~ Movement Screen ~~(DI24, Shift +F5)~~; or (2) in eOMIS (Click on the "Other" tab at the top of the screen, and then click on the link to "External Movements."). If an inmate is not at the facility or at another appointment when a clinical contact or appointment comes due, that record will be excluded from the review.

Similarly, if a contact is cancelled or delayed due to a "lockdown" or an "ICS where no movement was allowed," those days should not be counted against the facility if it is documented.

## Cell Front Encounters

For all mental health measures in which an inmate is required to be "seen," any contact done cell front may only be counted as a contact if the patient refuses to be seen in a confidential setting or there is a lockdown.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618096

## Group Contacts

Any performance measure that requires being "seen" cannot be done in a group setting unless expressly stated in the performance measure.

## Charts Reviewed

The monitor will document all charts reviewed for a performance measure in the CGAR for that measure, even if the chart is found to be in compliance.

## Ethics for Excellence

Monitors must have a highly refined sense of duty. Adherence to the core values of the Department is demanded at all times.

**"PRICE"**

**P** = Professionalism: Modeling the ideal

**R** = Responsibility: Owning your actions

**I** = Integrity: Doing the right thing

**C** = Courage: Taking actions despite fear

**E** = Efficiency: Making every actions count

***You are entrusted with a very significant role.***

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618097

# Glossary

Below are abbreviations used throughout the Performance Measures:

| | |
|---|---|
| AED | Automated External Defibrillator |
| AIMS | Adult Information Management System (Replaced by ACIS) |
| ACIS | Arizona Correctional Information System (REPLACED AIMS DECEMBER 2019) |
| BLS | Basic Life Support |
| CAP | Corrective Action Plan |
| CC | Chronic Care |
| CDS | Correctional Dental Software |
| Contract Vendor | Contracted Health Services Vendor |
| EHR | Electronic Health Records |
| eOMIS | Electronic Offender Management Information System |
| FHA | Facility Health Administrator |
| FTE | Full-Time Equivalent |
| HC PM | Health Care Performance Measure (##1-103) |
| HSA | Health Services Administrator |
| ICS | Incident Command System |
| IPC | Inpatient Component (infirmary units) |
| IR | Information Report |
| LTBI | Latent Tuberculosis (TB) Infection |
| MAR | Medication Administration Record |
| MPL | Master Problem List |
| NAP | Nursing Assessment Protocol |
| NCCHC | National Commission on Correctional Health Care |
| NET | Nursing Encounter Tool |
| NFDR | Non-Formulary Drug Request |
| PPD | Purified Protein Derivative (skin test for tuberculosis) |
| PRN | Pro re nata (when necessary) |
| QHCP | Qualified Health Care Professional |
| SIR | Significant Incident Report |
| SOAPE | Subjective, Objective, Assessment, Plan, Education |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618098

# Performance Measure Monitoring Methodology

PM1 PM2 PM3 PM4 PM5 PM6 PM7 PM8 PM9 PM10 PM11 PM12

PM13 PM14 PM15 PM16 PM17 PM18 PM19 PM20 PM21 PM22 PM23

PM24 PM25 PM26 PM27 PM28 PM29 PM30 PM31 PM32 PM33

PM34 PM35 PM36 PM37 PM38 PM39 PM40 PM41 PM42 PM43

PM44 PM45 PM46 PM47 PM48 PM49 PM50 PM51 PM52 PM53

PM54 PM55 PM56 PM57 PM58 PM59 PM60 PM61 PM62 PM63

PM64 PM65 PM66 PM67 PM68 PM69 PM70 PM71 PM72 PM73

PM74 PM75 PM76 PM77 PM78 PM79 PM80 PM81 PM82 PM83

PM84 PM85 PM86 PM87 PM88 PM89 PM90 PM91 PM92 PM93

PM94 PM95 PM96 PM97 PM98 PM99 PM100 PM101 PM102 PM103

Press Control and left click on any performance measure above to go directly to that PM. Control and left click on the hyperlink on any performance measure to return to this page.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618099

**Health Care Performance Measure No. 1**
**Stipulation Category: Staffing (01)**

**CGAR Category: Staffing (C) 01**

**Performance Measure:**

Each ASPC will maintain, at a minimum, one RN onsite 24/7, 7 days/week.

**CGAR Question:**

Does each ASPC maintain, at a minimum, one RN onsite 24/7, 7 days/week?

**Source of Records/Review:**

Nursing staff schedules for the monitored month.

**Methodology:**

- Obtain reconciled nursing staff schedules reflecting the names and locations of staff who worked from the contract vendor.
- Review the reconciled nursing staff schedules for each complex for the monitored month for RN coverage on each shift.
- Each day is the event used as the unit of analysis for this performance measure.
- ~~If, on~~ Review each day of the monitored month~~,~~. If an RN was onsite for 24 hours, that days is compliant. ~~a score of 100% is given.~~ If~~, for one or more days of the monitored month,~~ an RN was not onsite for 24 hours (midnight to 2359), that day is not compliant. ~~a score of 0% is given.~~ Divide the number of compliant days by the number of days in the month to determine the compliance percentage.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618100

**Health Care Performance Measure No. 2**
**Stipulation Category: Staffing (02)**

**CGAR Category: Staffing (C) 02**

| **Performance Measure:**<br><br>Each ASPC will maintain, at a minimum, one Medical Provider (not to include a dentist) onsite during regular business hours and on-call at all other times. |
|---|
| **CGAR Question:**<br><br>Does each ASPC maintain, at a minimum, one Medical Provider (not to include a dentist) onsite during regular business hours and on-call at all other times? |
| **Source of Records/Review:**<br><br>Provider staff schedules for the monitored month; On-Call List. |
| **Methodology:**<br>• Obtain the reconciled provider staff schedules and on-call lists for each complex from the contract vendor.<br>• Review the reconciled Provider Staff Schedules for each complex for the monitored month to determine if there was onsite provider coverage during regular business hours.<br>• Review the On-Call List for the monitored month to determine if there was on-call provider coverage for all hours during which there was not an onsite provider after regular business hours. .<br>• ~~If, on~~Review each day of the monitored month~~,~~. If one Medical Provider was onsite during regular business hours and on-call at all other times, that day is compliant.~~a score of 100% is given.~~ If, for ~~one or more~~any day~~s~~ of the monitored month, one Medical Provider was not onsite during regular business hours and on-call at all other times, ~~a score of 0% is given~~that day is not compliant. Divide the number of compliant days by the number of days in the monitored month to determine the compliance percentage. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618101

**Health Care Performance Measure No. 3**
**Stipulation Category: Staffing (03)**

**CGAR Category: Staffing (C) 03**

| **Performance Measure:**<br><br>Dental staffing will be maintained at current levels – thirty (30) dentists. |
|---|
| **CGAR Question:**<br><br>Is statewide dental staffing maintained at current contract levels? |
| **Source of Records/Review:**<br><br>Monthly Staffing Rollup Report. |
| **Methodology:**<br><br>• Obtain the monthly dental staffing report from the contract vendor.<br>• Review the Monthly Staffing Rollup Report.<br>• Divide the total number of FTEs for dentists by thirty (30). |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618102

**Health Care Performance Measure No. 4**
**Stipulation Category: Staffing (04)**

**CGAR Category: Staffing (C) 04**

**Performance Measure:**

Infirmary staffing will be maintained with a minimum staffing level of two RNs on duty in the infirmary at all times at Tucson & Florence infirmaries and a minimum of one RN on duty in the infirmary at all times at Perryville and Lewis infirmaries.

**CGAR Question:**

Does the Infirmary maintain a minimum staffing level of two RNS on duty in the Infirmary at all times at Tucson and Florence and a minimum of one RN in the Infirmaries at Perryville and Lewis?

**Source of Records/Review:**

Contracted Vendor: Nursing staff schedules for the monitored month.

**Methodology:**

- Review the reconciled Nursing Staff Schedules obtained for PM #1 at each complex for the monitored month to determine RN coverage at the Tucson, Florence, Perryville, and Lewis infirmaries.
- ~~If, a~~At the Tucson & Florence infirmaries, if there were two RNs on duty at all times on ~~each~~ any day of the monitored month, ~~a score of 100% is given~~that day is compliant. If two RNs were not on duty in the infirmary at all times for ~~one or more~~any day~~s~~ of the monitored month, that day is not compliant~~a score of 0% is given~~. ~~If, a~~At the Perryville and Lewis infirmaries, if one RN was on duty in the infirmary at all times on ~~each~~ any day of the monitored month, ~~a score of 100% is given~~that day is compliant. If, there was not a minimum of one RN on duty in the infirmary at all times for any day during the monitored month, ~~a score of 0% is given~~that day is not compliant. Divide the number of compliant days by the number of days in the month to determine the compliance percentage.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618103

**Health Care Performance Measure No. 5**
**Stipulation Category: Medical Records (01)**

**CGAR Category: Medical Records (C) 01**

| **Performance Measure:**<br><br>Medical Records will be accurate, chronologically maintained, and scanned or filed in the patient's chart within two business days, with all documents filed in their designated location. |
|---|
| **CGAR Question:**<br><br>Are medical records accurate, chronologically maintained, and scanned or filed in the patient's chart within two business days, with all documents filed in their designated location? |
| **Source of Records/Review:**<br><br>Scanned Documents and Encounter Log |
| **Methodology:**<br><br>• Use the randomized Scanned Documents and Encounter Log for the monitored month.<br>• For each monitored unit, choose the first ten (10) documents and/or encounters from the randomized Scanned Documents and Encounter log.<br>• If the medical record entry is an encounter, treatment, chart review, lab, or another electronic entry into eOMIS, that record will be compliant with this performance measure.<br>• If the randomly selected document is an HNR, review the date triaged under Sections III and IV. If Section IV is not completed, then utilize the date (within two (2) business days) under Section III as the starting point/date. If Section IV is completed, then utilize the date under Section IV as the starting point/date.<br>• For all scanned documents that are part of the randomized sample for the monitored month, ensure documents are scanned in the patient's chart within two (2) **business days**. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618104

**Health Care Performance Measure No. 6**
**Stipulation Category: Medical Records (02)**

**CGAR Category: Medical Records (C) 02**

**Performance Measure:**

Provider orders will be noted daily with time, date, and name of person taking the orders off.
This performance measure is not subject to court reporting

**CGAR Question:**

Are provider orders being noted daily with time, date, and name of the person taking the orders off?

**Source of Records/Review:**

Provider Encounter Log

**Methodology:**

- Use the randomized Provider Encounter Log for the monitored month.
- Identify the encounter to be reviewed in eOMIS by the ADC number, encounter unit, date, and time on the randomized Provider Encounter Log
- For each monitored unit, select the first ten (10) encounters from the log containing orders. System-generated encounters, dental encounters and encounters with no orders (meds, labs, x-rays, etc.) are not used for this performance measure.
- To determine compliance, compare the date and time the order was written and the date and time the order was noted/reviewed. The date and time the order was written shall be determined by selecting the Status History button in the Encounter Header. The encounter end date and time is used as the time the order was written.
- Orders noted within 24 hours of the encounter end date and time are compliant. If the order was noted later than the end of the next calendar day (2359 hours) after it was written, the chart is noncompliant.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618105

**Health Care Performance Measure No. 7**
**Stipulation Category: Medical Records (03)**

CGAR Category: Medical Records (C) 03

| **Performance Measure:**<br><br>Medical record entries will be legible, and complete with time, name stamp and signature present.<br>This performance measure is not subject to court reporting |
|---|
| **CGAR Question:**<br><br>Are medical records legible, and complete with time, name stamp and signature present? |
| **Source of Records/Review:**<br><br>Scanned Documents and Encounter Log |
| **Methodology:**<br><br>• Use the randomized Scanned Documents and Encounter log for the monitored month.<br>• For each monitored unit, review the first ten (10) applicable documents and/or encounters from the randomized Scanned Documents and Encounter log to determine if the records are legible and complete with time, name stamp and signatures.<br>• Any documents that are included in the sample and are not legible and complete with time, name stamp, and signature will be considered out of compliance.<br>• A printed name and title is sufficient if a name stamp is not available. Electronic signatures are acceptable. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618106

**Health Care Performance Measure No. 8**
**Stipulation Category: Medical Records (04)**

**CGAR Category: Medical Records (C) 04**

| **Performance Measure:**<br><br>Nursing protocols/NETs will be utilized by nurses for sick call. |
|---|
| **CGAR Question:**<br><br>Are nursing protocols/NETs utilized by nurses for sick call? |
| **Source of Records/Review:**<br><br>Nursing Encounter Log |
| **Methodology:**<br><br>• Use the randomized Nursing Encounter Log for the monitored month.<br>• Review the first ten (10) sick call encounters for each monitored unit in which a Nursing Assessment Protocol (NAP) – previously referred to as a NET – should have been utilized. Do not use TB symptoms reviews, chart notes, or other H/S encounters that are not sick call encounters.<br>• If any NAP (NET) was utilized for the sick call encounter, the record is compliant with this performance measure. If a NET was not utilized for a sick call encounter, then the record is not in compliance. Only sick call encounters will be monitored for this performance measure. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618107

**Health Care Performance Measure No. 9**
**Stipulation Category: Medical Records (05)**

**CGAR Category: Medical Records (C) 05**

| **Performance Measure:**<br><br>SOAPE format will be utilized in the medical record for encounters.<br>**This performance measure is not subject to court monitoring.** |
|---|
| **CGAR Question:**<br><br>Is SOAPE format being utilized in the medical record for encounters? |
| **Source of Records/Review:**<br><br>Nursing Encounter Log and Provider Encounter Log |
| **Methodology:**<br><br>• Use the randomized Nursing Encounter Log ~~from HC PM #8~~ and randomized Provider Encounter Log ~~from HC PM #6~~.<br>• This performance measure was developed when paper charts were used. The SOAPE format is utilized in the EHR forms and is automatically compliant. Take the first five randomized records from both the Nursing Encounter Log and the Provider Encounter Log and review them for compliance.<br>• Charts related to chart reviews, medication renewals, and treatment calls will be excluded. |

Formatted: Font: Bold

Formatted: Font: Bold

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618108

**Health Care Performance Measure No. 10**
**Stipulation Category: Medical Records (06)**

**CGAR Category: Medical Records (C) 06**

**Performance Measure:**

Each patient's medical record will include an up-to-date Master Problem list.
**This performance measure is not subject to court monitoring.**

Formatted: Font: Bold

**CGAR Question:**

Does each patient's medical record include an up-to-date Master Problem list?

**Source of Records/Review:**

Provider Encounter Log

**Methodology:**

- Use the randomized Provider Encounter Log for the monitored month.
- For each monitored unit, select the first ten (10) encounters from the randomized Provider Encounter Log and determine if the Master Problem List (MPL) was updated.
- While not every reason for an encounter is necessary to include on the MPL, the problem list must contain all past and existing diagnoses, pathophysiological states, potentially significant abnormal physical signs and laboratory findings, disabilities, and unusual conditions.
- Look in the encounter to see what condition was identified and then look at Health Problems/Conditions to determine if the condition in the encounter is in the MPL. If the condition was added or previously listed, the chart is in compliance. If the condition is one that should be in the MPL as identified in the previous bullet, but is not, the chart is not in compliance.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618109

**Health Care Performance Measure No. 11**
**Stipulation Category: Pharmacy (01)**

**CGAR Category: Pharmacy (C) 01**

**Performance Measure:**

Newly prescribed provider-ordered formulary medications will be provided to the inmate within 2 business days after prescribed, or on the same day, if prescribed STAT.

**CGAR Question:**

Are newly prescribed provider-ordered formulary medications provided to the inmate within two (2) business days after prescribed, or on the same day, if prescribed STAT?

**Source of Records/Review:**

List of Formulary Medications ordered from the preceding thirty days; Inmate Profile Report; MARs; and eOMIS: scanned paper MARs, eOMIS Drug Prescription Orders, and Refusal to Submit to Treatment.

**Methodology:**

- Filter by location the randomized Inmate Profile Report for the monitored month. Select the first medication listed for each of the first ten (10) inmates per unit for monitoring.
- If the unit has fewer than ten (10) inmates with medications to be monitored under this performance measure, after the first medication is reviewed for each inmate, return to the first inmate on the randomized list and monitor the second medication for that inmate. Continue this process until ten (10) medications have been monitored.
- The following medications are excluded from review as not applicable to this question: NFDRs, release medication, recognized taper medications, medications involving a surface area, eye drops, ear drops, prn medications, or medications with a broad dosing interval.
- To determine compliance, compare the effective date and Medication Administration Record (MAR) to determine if the medication was administered within the specified timeframe. Refer to current or prior eOMIS drug prescription orders, as evidenced in the Medication Administration Record (MAR) ~~scanned paper MAR, or the patient-signed KOP delivery log if no electronic documentation exists~~. Two (2) business days means if the order was placed on Monday, the second business day is Wednesday. Similarly, if the order was Tuesday, the second business day is Thursday. To wit: Mon/Wed, Tues/Thurs, Wed/Fri, Thurs/Mon, Fri/Tues, Sat/Tues, Sun/Tues. Holidays recognized by the State of Arizona will not be included in counting business days.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618110

**Health Care Performance Measure No. 12**
**Stipulation Category: Pharmacy (02)**

**CGAR Category: Medical Records (C) 07**

**Performance Measure:**

Medical record will contain documentation of refusals or "no shows."
**This performance measure is not subject to court reporting.**

**CGAR Question:**

Does the medical record contain documentation of refusals or "no shows?"

**Source of Records/Review:**

Appointment No Show Log;

**Methodology:**

- For each monitored unit, use the first ten applicable records from the randomized Appointment No Show Log. If there are fewer than ten applicable records at any unit, use all applicable records for that unit.
- ~~When the Appointment No Show Log reports No Shows/Refusals/Cancellations, check Offender Appointments in eOMIS for a reason why the appointment was cancelled. If there is a reason for cancellation listed in Offender Appointment (other than a refusal – e.g. cancelled due to lock down, any other issue beyond the control of health staff), the chart is compliant. If it just shows cancelled without a reason, the chart is not compliant.~~
- If the Offender Appointment indicates that the inmate refused, check scanned documents (or Standard Forms for an electronic refusal) for the refusal for that appointment. If there is no refusal, the chart is out of compliance. If the refusal, with necessary signatures and identifying the service being refused is present, the chart is in compliance. Auto-generated cancellations as a result of inmate movement are not compliant unless the record shows that the appointment actually took place at a different location on the date the appointment was scheduled.
- If the information is auto generated due to the inmate being released, check eOMIS to verify the release date. If the inmate was released prior to appointment, the chart is excluded from review. If the inmate was released after the appointment date, the chart is not in compliance.
- If the appointment that was cancelled was a treatment call related to wound care and the wound is documented as healed prior to the appointment date, the chart is excluded from

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618111

review.

- Duplicate appointments are excluded from review if the cancelled appointment is the second (duplicate) appointment which is the one later in time. If the earlier (first) appointment is cancelled and marked as a duplicate, the record is not compliant.
- Appointments made in error and identified as such are excluded from review.
- Mental health group appointments do not require a refusal if replaced by a same day, one-on-one contact (segregation visit).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618112

**Health Care Performance Measure No. 13**
**Stipulation Category: Pharmacy (03)**

CGAR Category: Pharmacy (C) 02

| **Performance Measure:**<br><br>Chronic care and psychotropic medication renewals will be completed in a manner such that there is no interruption or lapse in medication. |
|---|
| **CGAR Question:**<br><br>Are chronic care and psychotropic medication renewals completed in a manner such that there is no interruption or lapse in medication? |
| **Source of Records/Review:**<br><br>Medication Expiration Report |
| **Methodology:**<br><br>• For each monitored unit, use the randomized Medication Expiration Report.<br>• Review the first ten (10) prescriptions listed for each health unit within the date range to determine whether there was an interruption or lapse in medication.<br>• If the renewal or discontinuation of the monitored prescription medication is prior to or on the listed stop date, the record is in compliance. If the renewal or discontinuation of the monitored medication is after the listed stop date, the record is not in compliance. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618113

**Health Care Performance Measure No. 14**
**Stipulation Category: Pharmacy (04)**

**CGAR Category: Pharmacy (C) 03**

**Performance Measure:**

Any refill for a chronic care or psychotropic medication that is requested by a prisoner between three and seven business days prior to the prescription running out will be completed in a manner such that there is no interruption or lapse in medication.

**CGAR Question:**

Are refills for chronic care or psychotropic medications that is requested by a prisoner between three and seven business days prior to the prescription running out completed in a timely manner such that there is no interruption or lapse in medication?

**Source of Records/Review:**

Pharmacy HNR Logs

**Methodology:**

- Use the randomized Pharmacy HNR Logs.
- Identify the first ten (10) medications per health unit that were requested between 3-7 business days prior to the prescription running out and were not subject to the exclusion criteria. The following medications will be excluded from review as not applicable to this question: release medications, recognized taper medications (may use current dose if inmate incorrectly identified the dose), creams and lotions involving a surface area, ear or eye drops, nasal spray, Clinic stock medications, medications with a broad dosing interval, as needed medications, medications requested beyond the stop date, medications for which a lapse or interruption cannot be clearly determined, and medications with all available refills previously received by the inmate.
- If a sample of ten (10) medications is not available, use all applicable records.
- Locate the medication being monitored in the eOMIS Medications tab. If the medication was requested between three (3) to seven (7) business days prior to the prescription running out, compare the two (2) most recent dates the medication was received at the complex to determine if a lapse or interruption occurred.
- Medications shall be considered to have refills available if at the time of HNR submission (the date written by the inmate) there was a minimum of five (5) business days remaining on the prescription.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

- If a medication has a minimum of five (5) business days remaining, yet the pharmacy was unable to refill the medication due to pharmacy regulation or policy, this item would be excluded from the review.
- Renewed medications that had refills remaining at the time of the HNR request may be monitored, if recognized.
- If a lapse or interruption occurred, the chart is noncompliant.
- If no lapse of interruption occurred, the chart is compliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618115

**Health Care Performance Measure No. 15**
**Stipulation Category: Pharmacy (05)**

**CGAR Category: Medical Records (C) 09**

| **Performance Measure:**<br><br>Inmates who refuse prescribed medication (or no show) will be counseled by a qualified health care provider (QHCP) after three consecutive refusals. |
|---|
| **CGAR Question:**<br><br>Are inmates who refuse prescribed medication (or no show) being counseled by a QHCP after three consecutive refusals? |
| **Source of Records/Review:**<br><br>Medication Refusal Log. |
| **Methodology:**<br><br>• Use the first ten (10) appropriate charts from the randomized Medication Refusal Log. Anytime there are fewer than ten (10) charts to monitor, all the charts will be included in the review.<br><br>• Look in eOMIS Scanned Documents for the refusal related to the specific date that the Medication Refusal Log presents as a refused dose. Because the logs don't always show consecutive missed doses, utilize the first date in the monitored month listed on the log and look for the first three (3) consecutive missed doses on the MAR in eOMIS~~refusals~~. If the third consecutive missed dose is on the first or second day of the monitored month, the monitor may use the first and second of the three consecutive doses, even if they occurred in the preceding month. If the first and/or second of three consecutive refused doses occurred in the monitored month, but the third consecutive refusal occurred in the subsequent month, that record will not be used (it will be subject to monitoring in the next month).<br><br>• If the MAR does not contain an entry for a scheduled dose (a blank day for a QD dose or a blank dose [AM/PM] for a BID medication), the blank is considered a no show for monitoring purposes.<br><br>• A QHCP must counsel the inmate. A CNA is not a QHCP and may not provide the counseling. Any counseling within 30 days after the date of the 3rd refusal is compliant with this performance measure. That includes an encounter with the patient in which a |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618116

QCHP documents a discussion related to medication compliance, a refusal signed by the inmate and a QHCP, or a refusal signed by a QHCP and a witness indicating that the inmate refused to sign the refusal and an encounter stating counseling was provided at the time of the refusal.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618117

**Health Care Performance Measure No. 16**
**Stipulation Category: Pharmacy (06)**

CGAR Category: Pharmacy (C) 04

| **Performance Measure:**<br><br>Perpetual inventory medication logs will be maintained on each yard.<br>**This performance measure is not subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are perpetual inventory medication logs being maintained on each yard? |
| **Source of Records/Review:**<br><br>Patient Specific Controlled Substances log; Stock Utilization log; Clinic Stock Book and Controlled Substance Clinic Inventory Log |
| **Methodology:**<br><br>• Review a minimum of ten (10) Perpetual Inventory medications at each unit. From the Stock Utilization Log, review the first 5 stock medications used during the review period (both controlled substance and non-narcotic medications). From the Patient Specific Controlled Substances log, review the first 5 controlled substance patient-specific perpetual inventory medications. If there are fewer than either 5 patient specific controlled substances or 5 stock medications during the review period, supplement with the other category to achieve 10 medications for review. Do not use provider stock medications as part of the review. If 10 unique medications are not available, use additional administrations of the available medications until 10 records (or all available administrations, if fewer than 10) have been reviewed.<br><br>• Each log must contain the following:<br><br>1) Medication name and strength<br><br>2) Chronological date order<br><br>3) ~~At least one p~~Patient identifiers must include the patient's last name and ADC number ~~(name/number)~~ for each dose administered<br><br>4) Data for any entry that identifies at least one addition, subtraction, dose given, wasted, or transferred, and an ending balance for each entry. Each number added, given, |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618118

subtracted, transferred, or wasted must result in a mathematically correct ending balance.

5) A nurse's signature or initials.

6) Any discrepancy identified on the log(s) requires completion of an Information Report (IR) with an accompanying report number. The IR number must be listed on the Perpetual Inventory log next to any entry that indicates the medication was not administered to an inmate, including but not limited to, corrected count, wasted medication, and count discrepancy.

6) A physical count of the medication will be performed at the time of audit. This count will compare the total quantity of the medication in question to the quantity shown on the perpetual inventory.

7) Corrections to an entry must be executed by striking out the line in question, writing error then dated and initialed by the person who created said error. The correct information must then be re-entered on the next line by the same individual. Write overs" and "cross outs" are not an acceptable method of correction.

8) Any discrepancy identified on the log requires the completion of an Information Report (IR) with an accompanying report number. An (IR) will be completed for each individual medication on the date the incidence occurred/discovered. The (IR) number must be listed on Perpetual Inventory log next to any entry that indicates the medication was not administered to an inmate including, but not limited to, corrected count, wasted medication, inappropriate documentation on the MAR and count correction.

9) Review medications for the appropriate source of medication administered, (i.e. clinic stock or patient-specific controlled substance), as evidenced in the Medication Administration Record (MAR). If "clinic stock" or "patient specific" is not correctly shown as administered in eOMIS, the finding for that particular administration will be deemed non-compliant. The quantity of medication removed from the inventory for administration must equal the quantity shown as administered. Explanations as to a discrepancy (e.g. Total dose necessary) can be identified in the "Comments/Addendums" section of the Medication Administration Record.

- Partial dosage units (unless otherwise stated by the manufacturer) cannot be used and must show as "wasted" and count adjusted to appropriately in the inventory.
- An Information Report (IR) **will not** alter a non-compliant finding but must be completed and documented on the inventory as evidence for review. The (IR) will not, in effect, "re-set" the inventory and the IR should document the efforts made to identify and/or correct the discrepancy or discrepancies.
- Each log will be scored based upon the potential maximum of nine points above. Discrepancies will be noted as a percentage of the 9 possible points. For instance, if one

Formatted: Bulleted + Level: 1 + Aligned at: 0.25" + Indent at: 0.5"

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

of the six possible points is out of compliance, the score for that record would be 8/9 (89%).

- If every requirement listed above is met, the record is compliant. If ANY of the six required items is missing from the log, the entire log will be considered noncompliant.

**FOR ADC INTERNAL USE ONLY:**

- In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:
  - Each log will be scored based upon the potential maximum of six points above. Discrepancies will be noted as a percentage of the 6 possible points. For instance, if one of the six possible points is out of compliance, the score for that record would be 5/6.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618120

**Health Care Performance Measure No. 17**
**Stipulation Category: Pharmacy (07)**

**CGAR Category: Chronic Care (C) 05**

**Performance Measure:**

The Medication Administration Record (MAR) will reflect dose, frequency, start date and nurse's signature.
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold

**CGAR Question:**

Does the Medication Administration Record (MAR) reflect the dose, frequency, start date, and nurse's signature?

**Source of Records/Review:**

DOT Report.

**Methodology:**

- Use the randomized DOT Report.
- From the randomized DOT Report, select the first ten (10) inmates per unit.
- If there are ten (10) or fewer inmates that qualify to be monitored under this performance measure, monitor all qualified inmates. Exclusion criteria include medications without a dose ordered to be administered during the review period, including "as needed" (prn) medications.
- Compliance is based on the documentation found in eOMIS under Medications tab, MAR history report, or a paper MAR.
- To be compliant, the document must be within the review period, contain a dose, frequency, and start date for each medication, and have at least one nurse's signature, stamped or printed name, or initial on the MAR.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618121

**Health Care Performance Measure No. 18**
**Stipulation Category: Pharmacy (08)**

**CGAR Category: Pharmacy (C) 05**

| **Performance Measure:**<br><br>Daily delivery manifests will be kept in binders located in medication rooms on each yard/complex and will be reviewed and initialed daily by an LPN or RN. |
|---|
| **CGAR Question:**<br><br>Is a daily delivery manifest kept in binders located in medications rooms on each yard/complex and are they reviewed and initialed daily by an LPN or RN? |
| **Source of Records/Review:**<br><br>Manifest Report<br>**This performance measure is not sunject to court reporting.** |
| **Methodology:**<br><br>• From the randomized Manifest Report, use the first ten (10) dates per unit, selecting five (5) daily manifests and five (5) controlled substance manifests. Compare the "shipped date" and location on the Manifest Report to the shipped date and location on the manifest to determine which manifest to use.<br>• If five (5) controlled manifests are not available for a unit, use additional daily manifests until a total of ten (10) ~~total~~ is reached.<br>• The cover page of the manifest must be initialed or signed by an LPN or RN. |

Formatted: Font color: Red

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618122

**Health Care Performance Measure No. 19**
**Stipulation Category: Pharmacy (09)**

**CGAR Category: Pharmacy (C) 06**

| **Performance Measure:**<br><br>Perpetual inventory medications will be signed off on the Inmate's individual MAR.<br>**This performance measure is no longer subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are perpetual inventory medications signed off on the Inmate's individual MAR? |
| **Source of Records/Review:**<br><br>Patient Specific Controlled Substances log; Stock Utilization log |
| **Methodology:**<br><br>• For each unit, use the first ten (10) medications active during the monitored period. If ten (10) different medications are not listed, the same medications may be used multiple times in the manner described below.<br><br>• Medications are reviewed for perpetual inventory administration for the first administered dose that occurred during the review period. If ten medications with active administration for the review period are not identified, review the first administration for each available medication and then proceed to the second administration for each available medication. As necessary, continue this process with subsequent medication administrations until 10 medications have been reviewed for each unit.<br><br>• Review the identified medication entry for corresponding documentation of administration in the eOMIS Medication Orders and/or MAR Summary. For the date being reviewed, documentation must identify the correct medication name (generic or name brand) and documentation that the inmate received the total dosage ordered for that administration. If the randomized sample includes an additional administration of the same medication for the same inmate on the same date, a separate administration entry must be identified to be compliant. An entry that indicates the inmate received the ordered dose and correctly identifies the source of medication in the Medication Administration Report (MAR) as "clinic stock" or "patient specific" is compliant. If there is no entry in the record, or if the entry does not indicate the dose was received, the record is noncompliant. |

Formatted: Font: Bold, Font color: Red

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618123

**Health Care Performance Measure No. 20**
**Stipulation Category: Pharmacy (10)**

**CGAR Category: Medical Records (C) 08**

| **Performance Measure:** |
| --- |
| Medical AIMsAIMS / ACISACIS / AIMS entries are accurately completed within 3 business days from the entry in the medical record. **This performance measure is not subject to court reporting.** |
| **CGAR Question:** Are medical AIMSAIMS / ACISACIS / AIMS entries accurately completed within three (3) business days from the entry in the medical record? |
| **Source of Records/Review:** AIMSAIMS / ACISACIS / AIMS DI35 Batch Reports. |

**Methodology:**

- For each unit, use the first ten (10) charts on the AIMsAIMS / ACISACIS / AIMS DI35 Batch Report provided by HSCMBMSCMB Central Office.
- Medical AIMSAIMS / ACISACIS / AIMS entries consist of Special Needs Orders (SNOs) (including, but not limited to restrictions on activities, durable medical equipment, medical supplies (ace wraps, medical ice, etc.), housing restrictions (lower bunk, lay-in, meals in housing, etc.) and medical diets (religious diets such as kosher or vegan diets are excluded).
- SNOs and medical diets in eOMIS may be electronic (SNOs under the "Special Needs" tab), and Diets (under the "Other" tab), or scanned (under Scanned Documents), and need to be only one or the other to comply with this performance measure.
- For each unit within the complex, identify the ADC inmate number and type of medical AIMSAIMS / ACISACIS / AIMS entry in the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report.
- In the appropriate section, look for the SNO or diet identified in the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report.
- If the information in eOMIS matches the information in AIMSAIMS / ACISACIS / AIMS as to the type of SNO or diet and the start and end dates, and the date entered into AIMSAIMS / ACISACIS / AIMS is within three (3) business days of the date it was

Formatted: Indent: Left: 0.07", Right: 0.04", Space Before: 0 pt

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

entered into eOMIS, the record is compliant.

- ONLY if there is information in the AIMSAIMS / ACISACIS / AIMS report that is not included in the electronic SNO or diet, look under Scanned Documents for a SNO or diet that contains the information in the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report. Compare the scanned SNO or diet with the information on the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report.
- If each of the special needs contained in the scanned SNO is in the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report and it was entered within three (3) business days of the date it was entered into eOMIS, the chart is compliant.
- If there is information on the scanned SNO or diet that is not included in the AIMSAIMS / ACISACIS / AIMS DI35 Batch Report and was not in the electronic SNO or diet, the chart is not compliant.
- If there is information in the AIMSAIMS / ACISACIS / AIMS report that is not included in the electronic SNO, the chart is not in compliance.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 21**
**Stipulation Category: Pharmacy (11)**

**CGAR Category: Medical Records (C) 11**

**Performance Measure:**

Inmates who are paroled or released from ASPCs will receive a thirty (30)-day supply of all medications currently prescribed by the ADC contracted vendor.

**CGAR Question:**

Are inmates who are paroled or released from ASPCs receiving a thirty (30)-day supply of all medications currently prescribed by the ADC contracted vendor?

**Source of Records/Review:**

Release Log

**Methodology:**

- For each unit, use the first ten (10) charts on the randomized Release Log. If there are ten (10) or fewer inmates on the Release Log, all inmates will be monitored.
- Inmates on the Release Log are reviewed in eOMIS to determine if they were on prescribed medications at the time of their release. Medications currently prescribed are found in eOMIS. If the inmate was not on prescribed medication at the time of his or her release, or was not in the custody of ADC at the time of release, such as "out to court", he or she will be excluded from the review and a new record will be selected.
- Injectable medications except for insulin are not provided on release and are excluded from review.
- The Patient Release/Transfer Form should include the name, dosage, and quantity of each medication.
  - If a medication label is affixed to the Patient Release/Transfer Form the name, dosage and quantity is part of the label.
  - If the dosage or quantity is not visible on the Patient Release/Transfer Form, review eOMIS and identify the release medications received to identify the dosage and quantity. This doesn't indicate the patient received the correct drug, dosage or quantity. The document needs to be labeled correctly and all components must be legible.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618126



- The quantity must be a thirty (30) day supply unless a complete treatment is for a period less than thirty days (e.g. 10-day antibiotic treatment)
- The Patient Release/Transfer Form must identify the names of the medications

- If the Monitor finds a Patient Release/Transfer Form scanned into eOMIS that is signed by the patient, containing the names of all medications currently prescribed by the ADC contract vendor (except for injectables other than insulin), and the dosage and quantity can be identified from the form or the drug prescription order, the chart is compliant.
- If the Monitor does not find a Patient Release/Transfer Form in eOMIS, signed by the inmate with the name of all medications currently prescribed by the ADC contract vendor, or if the quantity is not for 30 days (or a compete treatment, whichever is fewer), the chart is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618127

**Health Care Performance Measure No. 22**
**Stipulation Category: Pharmacy (12)**

CGAR Category: Pharmacy (C) 07

**Performance Measure:**

Non-formulary requests are reviewed and approved, disapproved, or designated for an alternate treatment plan (ATP) within two (2) business days of the prescriber's order.

**CGAR Question:**

Are non-formulary requests reviewed and approved, disapproved, or designated for an alternate treatment plan (ATP) within two (2) business days of the prescriber's order?

**Source of Records/Review:**

NFDR report for the monitoring month

**Methodology:**

- For each unit, use the first ten (10) medications listed on the NFDR report.
- Obtain an extract from the Medications tab in eOMIS. Review non-formulary requests and determine whether they are approved, disapproved, or designated for an ATP within two (2) business days of the prescription order.
- If the NFDR was approved, disapproved, or designated for an ATP within two (2) business days of the prescription order, the record is compliant.
- If the NFDR was not approved, disapproved, or designated for an ATP within two (2) business days of the prescription order, the record is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618128

**Health Care Performance Measure No. 23**
**Stipulation Category: Equipment (01)**

**CGAR Category: Equipment (C) 01**

| **Performance Measure:**<br><br>Automated External Defibrillators (AEDs) will be maintained and readily accessible to Health Care Staff. |
|---|
| **CGAR Question:**<br><br>Are Automated External Defibrillators (AEDs) maintained and readily accessible to Health Care Staff? |
| **Source of Records/Review:**<br><br>AED checklist |
| **Methodology:**<br><br>• Review the AED checklist provided by the contract vendor. Each day constitutes an event that is the unit of analysis for this performance measure.<br>• The AED is considered to be maintained and readily accessible to Health Care Staff on any date that the checklist indicates that the AED was checked.<br>• For each day that If the checklist for a unit indicates that the AED was checked, that day each day of the monitored month, that unit is compliant.<br>• If For each day that the checklist for a unit indicates that the AED was not checked each day of the monitored month, that dayunit is noncompliant.<br>• Divide the number of days the AED was checked by the number of days in the monitored month. If the AED was checked on 85% of the days in the monitored month, the performance measure is compliant. |
| **FOR ADC INTERNAL USE ONLY:**<br>• In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:<br>  o Divide the number of days the AED was checked by the number of days in the monitored month. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 24**
**Stipulation Category: Equipment (02)**

**CGAR Category: Equipment (C) 02**

**Performance Measure:**

Emergency medical response bags are checked daily, inventoried monthly, and contain all required essential items.

**CGAR Question:**

Are emergency medical response bags checked daily, inventoried monthly, and contain all required essential items?

**Source of Records/Review:**

Emergency Response Bag checklists and Inventory checklists.

**Methodology:**

- For each unit, use the Emergency Response Bag Checklist and Inventory Checklist to determine whether (a) the Emergency Response Bag Checklist has been completed daily; (b) the Inventory Checklist has been completed monthly; and (c) the bag contains all required essential items as per the Essential Items Checklist.
- First, check if the bag has been inventoried for the monitored month and contains all essential items. Next, check whether the Emergency Response Bag Checklist was completed each day of the monitored month. Divide the number of days on which the Emergency Response Bag Checklist was completed by the total number of days in the monitored month.
- If the Emergency Response Bag Checklist indicates that the bag was checked ~~each~~ on at least 85% of the days during the monitored month AND the bag was inventoried and contains all the essential items, the unit is compliant.
- If a monthly Inventory Checklist is not completed ~~or shows that the bag was not checked every day during the monitored month~~, the unit is noncompliant.
- If any essential item is missing from the bag, the unit is noncompliant.

~~**FOR ADC INTERNAL USE ONLY:**~~

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618130

- ~~In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:~~
  - ~~Divide the number of days on which the Emergency Response Bag Checklist was completed by the total number of days in the monitored month.~~
  - 

Formatted: List Paragraph, Justified, Right: 0.04", Space After: 6 pt, Bulleted + Level: 2 + Aligned at: 0.75" + Indent at: 1", Widow/Orphan control

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 25**
**Stipulation Category: Emergency Response (01)**

**CGAR Category: Emergency Response (C) 01**

| **Performance Measure:**<br><br>A first responder trained in Basic Life Support responds and adequately provides care within three minutes of an emergency. |
|---|
| **CGAR Question:**<br><br>Are first responders trained in Basic Life Support responding and adequately providing care within three (3) minutes of an emergency? |
| **Source of Records/Review:**<br><br>Appropriate and pertinent Significant Incident Reports (SIRs), Incident Reports (IRs), Field Briefing Reports, and Inpatient Hospital Report. |
| **Methodology:**<br><br>• This performance measure evaluates two components of an emergency response: (1) the timeliness, and (2) the adequacy of the response. If either component is noncompliant, the record is noncompliant.<br><br>• For the purpose of this performance measure, the term "emergency" includes every Incident Command System (ICS) alert where medical attention was provided or should have been provided.<br><br>• "Adequately provides care" requires a qualitative analysis of the actions taken by the responding staff.<br><br>• Each incident selected for monitoring must be reviewed by a Qualified Health Care Professional (QHCP) as defined in the Stipulation who was not involved in the original response. The QHCP must evaluate the actions taken by the responding staff and determine whether those actions were medically appropriate.<br><br>• If there are more than ten (10) inmates per unit from the SIRs and IRs from the monitored month that required basic life support, the monitor will randomly select a sample of ten inmates for review. If there are fewer than ten BLS responses, the monitor will review all pertinent records for that unit. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618132

- ~~Basic Life Support ("BLS") is defined as emergency care performed to sustain life that includes CPR, automated external defibrillation, control of bleeding, and stabilization of injuries and wounds.~~
- A first responder is a medical or corrections staff member trained in BLS.
- To measure the timeliness of the response, the Monitor will compare the time interval starting at the activation of an ICS and/or placement of the first call for an emergency response, whichever is earliest, and ending with the arrival of a first responder and the performance of BLS.
- To measure the adequacy of the response, the monitor will evaluate whether the response was appropriate for the type of emergency situation presented. If the first responder was a medical staff member, review the applicable nursing protocols in Appendix E to the Health Services Technical Manual in making this determination. ~~If the monitor does not have clinical training and is unable to determine whether the medical staff member followed the nursing protocols, the monitor will consult with another monitor who has clinical training~~.
- This PM refers to FIRST RESPONDERS only and not secondary responders.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618133

**Health Care Performance Measure No. 26**
**Stipulation Category: Quality Improvement (01)**

**CGAR Category: Quality Improvement (C) 01**

**Performance Measure:**

Responses to health care grievances will be completed within 15 working days of receipt (by health care staff) of the grievance.

**CGAR Question:**

Are responses to health care grievances completed within 15 working days of receipt (by health care staff) of the grievance?

**Source of Records/Review:**

ADC and Contract Vendor grievance logs.

**Methodology:**

- Obtain grievance logs from the calendar month prior to the monitored month from each ADC grievance coordinator.
- Sort and separate the ADC grievance logs by unit.
- Review all health care grievances per unit by comparing documentation with the date the grievance was received by the health care staff to the date a completed response was returned and received by the grievance coordinator.
- A grievance response returned to and received by the ADC grievance coordinator within 15 working days of receipt by health care staff is compliant.
- A grievance response not returned to and received by the ADC grievance coordinator within 15 working days of receipt by health care staff is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618134

**Health Care Performance Measure No. 27**
**Stipulation Category: Quality Improvement (02)**

**CGAR Category: Quality Improvement (C) 02**

**Performance Measure:**

Each ASPC facility will conduct monthly CQI meetings, in accordance with NCCHC Standard P-A-06

**CGAR Question:**

Is each ASPC facility conducting monthly CQI meetings, in accordance with NCCHC Standard P-A-06?

**Source of Records/Review:**

Monthly CQI meeting minutes.

**Methodology:**

- Review the monthly CQI Meeting minutes for the monitored month and compare them to NCCHC Standard P-A-06.
- If the CQI meeting conforms to the compliance indicators in NCCHC Standard P-A-06 as reflected in the monthly CQI meeting minutes, it is compliant.
- If the CQI meeting minutes do not reflect that the CQI meeting met the requirements of NCCHC Standard P-A-06, the meeting is noncompliant.
- CQI meetings must be held monthly. NCCHC Standard P-A-06 requires meetings as necessary but at least quarterly. For the purposes of this performance measure, "as necessary" means monthly.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618135

**Health Care Performance Measure No. 28**
**Stipulation Category: Quality Improvement (03)**

**CGAR Category: Quality Improvement (C) 03**

**Performance Measure:**

Every medical provider will undergo peer reviews annually with reviews and recommended actions documented.
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold

**CGAR Question:**

Is every medical provider undergoing peer reviews annually with reviews and recommended actions documented?

**Source of Records/Review:**

Monthly vendor-supplied roster of medical providers listing hire date and peer review completion date.

**Methodology:**

- Sort and separate the report by Complex.
- Sort each Complex by medical provider hire date. Providers employed less than one (1) year are exempt from review. Locum Tenens and prn providers are included in the review process, but are exempt from review if employed less than one (1) year.
- Review each provider listed on the roster for documentation of an annual peer review.
- If any medical provider at a complex who has been employed longer than one year has not received a peer review within one year of his or her hire date or last peer review, that Provider's review is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618136

**Health Care Performance Measure No. 29**
**Stipulation Category: Quality Improvement (04)**

**CGAR Category: Quality Improvement (C) 04**

**Performance Measure:**

Each ASPC facility Director of Nursing or designee will conduct and document annual clinical performance reviews of nursing staff as recommended by NCCHC standard P-C-02.
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold

**CGAR Question:**

Has each ASPC facility Director of Nursing or designee conducted and documented annual clinical performance reviews of nursing staff as recommended by NCCHC Standard P-C-02?

**Source of Records/Review:**

Monthly vendor-supplied roster of nursing staff listing hire date and clinical performance review completion date.

**Methodology:**

- Sort and separate the report by Complex.
- Sort each Complex by hire date. Nurses employed for less than one (1) year are exempt from review. Agency and prn nurses are included in the review process, but are exempt from review if employed for less than one (1) year.
- Review each nurse listed on the roster for documentation of an annual performance review.
- If any nurse at a complex who has been employed longer than one year has not received a clinical performance review within one year of his or her hire date or last clinical performance review, that nurse's review is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618137

**Health Care Performance Measure No. 30**
**Stipulation Category: Quality Improvement (05)**

**CGAR Category: Medical Records CO (C) 01**

| **Performance Measure:**<br><br>The initial mortality review of an inmate's death will be completed within 10 working days of death. |
|---|
| **CGAR Question:**<br><br>Is the initial mortality review of an inmate's death completed within ten (10) working days of death? |
| **Source of Records/Review:**<br><br>Mortality reviews for inmate deaths in the monitored month. |
| **Methodology:**<br><br>• At each facility, all deaths that occurred in the monitored month are reviewed for compliance. There is no sampling for this measure.<br>• The Monitor reviews the Initial/First Mortality Review to determine whether the first review occurred within ten (10) business days after the inmate's death.<br>• An Initial/First Mortality Review that occurs fewer than ten (10) business days after the inmate's death is compliant.<br>• An Initial/First Mortality Review that occurs more than ten (10) business days after the inmate's death is noncompliant. Initial mortality reviews are not a requirement if the inmate is not in the custody of ADC at the time of death and will be excluded from the review. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618138

**Health Care Performance Measure No. 31**
**Stipulation Category: Quality Improvement (06)**

**CGAR Category: Medical Records CO (C) 02**

| **Performance Measure:**<br><br>Mortality reviews will identify and refer deficiencies to appropriate managers and supervisors, including CQI committee, and corrective action will be taken. |
|---|
| **CGAR Question:**<br><br>Does the mortality review identify and refer deficiencies to appropriate managers and supervisors, including CQI committee, and corrective action plan to be taken? |
| **Source of Records/Review:**<br><br>Monthly CQI meeting minutes. |
| **Methodology:**<br><br>• Review CQI meeting minutes for mortality reviews completed in the monitored month.<br>• The Monitor will categorize mortality reviews as 1) reviewed without deficiencies; 2) pending final review and recommendations; 3) final reviewed with recommendations that were discussed; or 4) final reviewed with recommendations that were not discussed.<br>• Final Mortality Reviews with recommendations that were discussed during a CQI meeting and contain a CAP for noted deficiencies are compliant.<br>• Final Mortality Reviews with recommendations that were not discussed during a CQI meeting are noncompliant.<br>• Final Mortality Reviews that do not include a CAP for noted deficiencies will result in a finding of noncompliance for the performance measure. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618139

**Health Care Performance Measure No. 32**
**Stipulation Category: Quality Improvement (07)**

**CGAR Category: Medical Records CO C03 and Quality Improvement 06**

**Performance Measure:**

A final independent clinical mortality review will be completed by the Health Services Contract Monitoring Bureau for all mortalities within 10 business days of receipt of the medical examiner's findings.

**CGAR Question:**

Is the final independent clinical mortality review completed by the Health Services Contract Monitoring Bureau for all mortalities within ten (10) business days of the receipt of the medical examiner's findings?

**Source of Records/Review:**

~~HSCMB~~MSCMB signed and dated Mortality Review.

**Methodology:**

- Review all final Mortality Reviews submitted during the monitored month for completion within ten (10) days of receipt of the medical examiner's findings.
- Final Mortality Reviews submitted during the monitored month that are completed within ten (10) days of receipt of the medical examiner's findings are compliant.
- Final Mortality Reviews submitted during the monitored month that are not completed within ten (10) days of receipt of the medical examiner's findings are noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618140

**Health Care Performance Measure No. 33**
**Stipulation Category: Intake Facility (01)**

**CGAR Category: Intake (C) 01**

| **Performance Measure:**<br><br>All inmates will receive a health screening by an LPN or RN within one day of arrival at the intake facility. |
|---|
| **CGAR Question:**<br><br>Has the inmate received a health screening by an LPN or RN within one day of arrival at the intake facility? |
| **Source of Records/Review:**<br><br>~~Intakes~~ Arrival Log |
| **Methodology:**<br><br>• From the randomized Arrival Log for the monitored month, use the first ten (10) inmate charts. This review includes parole violators, returns to custody, and new commitments.<br>• Review eOMIS for the Intake and Receiving Screening forms to confirm that an actual health screening was completed by an RN or LPN within one day of arrival at the intake facility (Phoenix, Perryville, Tucson Minors, and condemned-row).<br>• Health screenings completed by an RN or LPN within one day of arrival at the intake facility are compliant.<br>• Health screenings not completed by an RN or LPN within one day of arrival at the intake facility are noncompliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618141

**Health Care Performance Measure No. 34**
**Stipulation Category: Intake Facility (02)**

**CGAR Category: Intake (C) 02**

**Performance Measure:**

A physical examination including a history will be completed by a Medical Provider (not a dentist) by the end of the second full day of an intake inmate's arrival at the intake facility.

**CGAR Question:**

Has a physical examination including history been completed by a Medical Provider (not a dentist) by the end of the second full day of an inmate's intake arrival at the intake facility?

**Source of Records/Review:**

~~Intakes~~ Arrival Log

**Methodology:**

- From the randomized Arrival Log for the monitored month, use the first ten (10) charts. This review includes parole violators, returns to custody, and new commitments.
- If there are ten (10) or fewer inmate intakes for the monitored month for an intake facility, review all inmate intake charts for that facility.
- Review eOMIS to ensure a physical examination, including a history, was completed by a Medical Provider (not a dentist) by the end of the second full day of an inmate's intake arrival at the intake facility (Phoenix, Perryville, Tucson Minors, and condemned-row).
- Physical examinations, including a history, completed by a Medical Provider by the end of the second full day of an inmate's intake arrival at the intake facility are compliant.
- Physical examinations, including a history, not completed by a Medical Provider by the end of the second full day of an inmate's intake arrival at the intake facility are noncompliant.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618142

**Health Care Performance Measure No. 35**
**Stipulation Category: Intersystem Transfers (01)**

**CGAR Category: Access to Care (C) 10**

| **Performance Measure:**<br><br>All inmate medications (KOP and DOT) will be transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption. |
|---|
| **CGAR Question:**<br><br>For intersystem transfers, are all inmate medications (KOP and DOT) transferred with and provided to the inmate or otherwise provided at the receiving prison without interruption? |
| **Source of Records/Review:**<br><br>35 Intersystem Transfer Log. |
| **Methodology:**<br><br>• Monitors will advised each month as to whether the sending complex or receiving complex will be subject to the review, based on random selection.<br>• For each unit, use the first ten (10) entries from the randomized Intersystem Transfer Log.<br>• If the chart is not applicable to this performance measure, go to the next appropriate record. If there are ten (10) or fewer applicable records for a unit, use all available records.<br>• Medication administration must be documented on a Medication Administration Record (MAR).<br>• If the receiving complex is being reviewed, Rreview the transfer screening form, KOP Roll-up Form (see DI 361DO 705), notes and MARs in eOMIS to determine as to whether or not the inmate received/arrived with his/her medications, as ordered. If the documentation supports that the inmate arrived/received his/her medication at the receiving facility, the chart is in compliance.<br>• Nursing may indicate in their documentation that prn medications are available if the inmate arrived without prn medications. If a prescribed prn medication is requested by the inmate and available in clinic stock or obtained from a back-up pharmacy, the record |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618143

is compliant.

- If the next scheduled dose of a DOT medication is refused at the receiving site and the refusal form is signed by the inmate and scanned into the record, the record is compliant.
- If an inmate arrives without KOP medication that is not available and the inmate signs a refusal for the next scheduled dose, the record is compliant.
- For a medication with a daily dosing interval, (e.g. QD, QAM, QPM, etc.) if documentation shows that an inmate did not receive the next scheduled dose of his/her medications on the date of transfer, the record is noncompliant. For medications not on a daily dosing interval, documentation is reviewed for the first required administration of the medication following the transfer.
- If the next scheduled dose of a DOT medication is not administered or refused, the record is noncompliant.
- If the sending complex is being reviewed, review the transfer screening form, KOP Roll-up Form (see DO 705), notes and MARs in eOMIS to determine as to whether or not the inmate received/departed with his/her medications, as ordered. If the documentation supports that the inmate departed/received his/her medication at the receiving facility, the chart is in compliance.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618144

**Health Care Performance Measure No. 36**
**Stipulation Category: Access to Care (01)**

**CGAR Category: Access to Care (C) 01**

| **Performance Measure:**<br><br>A LPN or RN will screen HNRs within 24 hours of receipt. |
|---|
| **CGAR Question:**<br><br>Does an LPN or RN screen HNRs within 24 hours of receipt? |
| **Source of Records/Review:**<br><br>HNR HSR/Nursing Encouner Log |
| **Methodology:**<br><br>• Use the first ten (10) applicable records from the randomized HNR Log.<br>• Review the HNR date written by the inmatestamp to determine the date of constructive receipt by medical. This is located in the upper right hand corner of the HNR. In the absence of a date stamp, use the date the inmate wrote on the HNR, use the receipt date. If there is no receipt date stamp and no inmate date, the record is noncompliant.<br>• Review the triage date documented in Section 3 of the HNR. If the triage date is two days or less later than the date written by the patientwithin 24 hours of the date stamp received date (or if there is no date stamp in the upper right hand corner, the inmate date in Section I), the record is compliant. If the triage date is more than two days later than the date written by the patient24 hours after the date received, the chart is noncompliant.<br>• If the HNR does not contain the date written by the inmate and the receipt date/time stamp is used, the HNR must be triaged within 24 hours of the date/time stamp receipt date. Handwritten receipt dates will not be used to measure compliance.<br>• If the HNR HSR/Nursing Encounter log contains an entry for an HNR that is not scanned into the electronic medical record, the record is not compliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618145

**Health Care Performance Measure No. 37**
**Stipulation Category: Access to Care (02)**

**CGAR Category: Access to Care (C) 02**

**Performance Measure:**

Sick call inmates will be seen by an RN within 24 hours after an HNR is received (or immediately if identified with an emergent need, or on the same day if identified as having an urgent need).

**CGAR Question:**

Is the inmate being seen on sick call by an RN within 24 hours after the HNR is received (or immediately if identified with an emergent need, or the same day if identified as having an urgent need)?

**Source of Records/Review:**

~~HNR~~ HSR/Nursing Encounter Log

**Methodology:**

- From the randomized ~~HNR~~ HSR/Nursing Encounter Log, use the first ten (10) charts per unit. Review the nurse sick call encounter identified in the ~~HNR~~ HSR/Nursing Encounter Log to determine if the patient was seen by an RN or staff with a higher level licensure within two days or less later than the date written by the patient or (ONLY if there is no date written by the inmate) 24 hours after the HNR was received (or immediately if identified with an emergent need, or the same day if identified as having an urgent need).
- Review the HNR for the written by the inmate ~~receipt date and time in the upper right hand corner of~~ on the HNR and compare that date ~~and time~~ with the date the inmate was seen on Nurse Line as evidenced by the date ~~and start time~~ in the encounter header in eOMIS.
- If the inmate was seen by an RN or staff with a higher level licensure within two days or less from the date written by the patient the record is compliant. If there is no date written by the inmate on the HNR, and the patient was seen within 24 hours after the HNR was received (or immediately if identified with an emergent need, or the same day if identified as having an urgent need) the record is compliant.~~,~~ ~~or~~If there is a properly documented refusal of the encounter in the record, the chart is compliant.
- If the patient was not seen within two days or less later than the date written by the patient or within 24 hours of the receipt date and time on the HNR if there is no date written by the inmate on the HNR, and there is no refusal of the encounter in the record,

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618146

or if the patient was seen by an LPN, the chart is noncompliant. ~~If there is no date and time of receipt on the HNR, the record is noncompliant unless the date written by the inmate is the same as the date the inmate was seen by an RN.~~

- If the ~~HNR~~ HSR/Nursing Encounter Log contains an HNR not scanned into the electronic health record, the record is not compliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618147

**Health Care Performance Measure No. 38**
**Stipulation Category: Access to Care (03)**

**CGAR Category: Access to Care (C) 03**

**Performance Measure:**

Vital signs, to include weight, will be checked and documented in the medical record each time an inmate is seen during sick call.

**CGAR Question:**

Are vital signs, including weight checked and documented in the medical record each time an inmate is seen during sick call?

**Source of Records/Review:**

Nursing Encounter Log
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold, Font color: Red

**Methodology:**

- Use the first ten (10) charts per unit from the randomized Nursing Encounter Log and review the nurse sick call encounter for the chart chosen to monitor to see whether vital signs were completed
- If the vital signs (including temperature, pulse, respirations, height, weight, and blood pressure) were checked and documented in the medical record for the particular sick call encounter, the chart is compliant.
- If the medical record does not include the vital signs, the chart is noncompliant. Vital signs not found directly under the encounter may also be found in the Vital Signs History section of eOMIS to see if they were taken on the same day of the encounter and can be associated with the encounter.
- If any vital sign could not be obtained due to a medical condition or security issue that is documented in the medical record, the chart is in compliance.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618148

**Health Care Performance Measure No. 39**
**Stipulation Category: Access to care (04)**

**CGAR Category: Access to Care (C) 04**

| **Performance Measure:**<br><br>Routine provider referrals will be addressed by a Medical Provider and referrals requiring a scheduled provider appointment will be seen within fourteen calendar days of the referral. |
|---|
| **CGAR Question:**<br><br>Are routine provider referrals being addressed by a Medical Provider and referrals requiring a scheduled provider appointment being seen within fourteen calendar days of the referral? |
| **Source of Records/Review:**<br>HSR/Nurscing Encounter Line Log |
| **Methodology:**<br><br>• From the randomized HSR/Nursing e EncounterLine Log and use the first ten (10) applicable charts for each unit. Encounters are to be used even if the inmate has subsequently moved to a different Arizona State Prison Complex. If the inmate was transferred to a private prison within fourteen (14) calendar days from the referral, the record is not used. If the transfer was after fourteen (14) calendar days from the referral, the record is used.<br><br>• Review the Encounters tab in eOMIS to locate the encounter listed on the Nurse LineHSR/Nursing Encounter Log. Review the nurse line encounter to determine if the patient was referred to a medical provider to address the issue(s) or see the patient.<br><br>• If the patient was referred to the provider line, review the Encounters tab in eOMIS to identify the next subsequent medical provider encounter. If the medical provider saw the patient within fourteen (14) days of the nurse line referral, the record is compliant. If the patient was not seen by the medical provider within fourteen (14) days of the nurse's referral, the record is noncompliant.<br><br>• If the nurse line encounter contains documentation that the medical provider was consulted and the patient's issue was addressed by the medical provider (e.g. ordering medication or labs), the record is compliant.<br><br>• If there is no referral to a medical provider from the nurse line, the record is excluded from the review and replaced with the next applicable record from the randomized HSR/Nursinge EncounterLine Log. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618149

**Health Care Performance Measure No. 40**
**Stipulation Category: Access to Care (05)**

**CGAR Category: Access to Care (C) 05**

| **Performance Measure:**<br><br>Urgent provider referrals are seen by a Medical Provider within 24 hours of the referral. |
|---|
| **CGAR Question:**<br><br>Are urgent provider referrals being seen by a Medical Provider within 24 hours of the referral? |
| **Source of Records/Review:**<br><br>Nursing Encounter e Line Log |
| **Methodology:**<br><br>• Use the first ten (10) applicable records from the randomized Nurse Line Log. Use the Find function in the spreadsheet to identify urgent referrals in the Disposition column.<br><br>• Review the Encounters tab in eOMIS to locate the encounter listed on the Nurse Line Log. Review the nurse line encounter to determine if there was an urgent referral to the provider. A referral is considered urgent if:<br>o The "Urgent Referral" radio button in the Plan section of the encounter is selected;<br>o The "No Referral to Provider Necessary" radio button in the Plan section of the encounter is selected AND free text refers the patient to the provider "tomorrow," "later today," "next day," "following day" or similar language;<br>o The "No Referral to Provider Necessary" radio button in the Plan section of the encounter is selected AND free text refers the patient urgently to the provider;<br>o No radio button is selected (i.e. left blank) AND free text refers the patient urgently to the provider;<br>o No radio button is selected (i.e. left blank) AND free text refers the patient to the provider "tomorrow," "later today," "next day," "following day," or similar language.<br><br>• If there is an urgent referral, look for a Medical Provider encounter that occurred within twenty-four (24) hours of the referral. If there is no urgent referral, the record is not used for this performance measure. |

Formatted

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618150

- If ten (10) applicable records are not found in the Nurse Line Log, use the Provider Encounter Log. Identify Provider - Sick Call – Unscheduled encounters. Review previous nursing encounter to determine if the patient was referred urgently to the medical provider, and if so, if the patient was seen within 24 hours of the referral.
- If the patient was referred urgently to the provider and was seen within 24 hours, the record is compliant. If he was not seen by a provider or was seen by a provider after 24 hours had elapsed, the record is not compliant.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618151

**Health Care Performance Measure No. 41**
**Stipulation Category: Access to Care (06)**

**CGAR Category: Access to Care (C) 06**

| **Performance Measure:**<br><br>Emergent provider referrals are seen immediately by a Medical Provider. |
|---|
| **CGAR Question:**<br><br>Are emergent referrals being seen immediately by a Medical Provider? |
| **Source of Records/Review:**<br><br>Nursc~~ing Encounter~~ Line Log; ER/Inpatient Hospital Report |
| **Methodology:**<br><br>• Use the first ten (10) records from the randomized ER/Inpatient Hospital Report~~Nursing Encounter Log~~. ~~Use the Find function in the spreadsheet or filter the Disposition column to identify emergent referrals.~~<br><br>• Review the Encounters tab in eOMIS to locate the encounter listed on the ~~Nursing Encounter Log~~ER/Inpatient Hospital Report. Review the Nurse Line encounter to determine if there was an emergent referral to the provider. If there is an emergent referral, look for the Medical Provider encounter that occurred immediately after the referral. If there is no emergent referral, the record is not used for this performance measure.<br><br>• Emergent referrals include 911 calls. Patients sent to the emergency department via Department of Corrections transport are not emergent referrals. Patients sent to the hospital for pre-scheduled procedures are not emergent referrals.<br><br>• If ten (10) applicable records are not found in the ER/Inpatient Hospital Report, use the Nurse Line ~~Nursing Encounter~~ Log~~., use the Hospital Report.~~<br><br>• If the inmate was transferred to the ER and seen by a Medical Provider and can be verified in eOMIS by an ER or Inpatient Report (under Scanned Documents), the chart is in compliance.<br><br>• If a referral was made and the inmate was transferred to the ER with no verification as to the inmate being seen, the chart is noncompliant. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618152

**Health Care Performance Measure No. 42**
**Stipulation Category: Access to Care (07)**

**CGAR Category: Access to Care (C) 07**

**Performance Measure:**

A follow-up sick call encounter will occur within the time frame specified by the Medical or Mental Health Provider.

**CGAR Question:**

Are follow-up sick call encounters occurring within the time frame specified by the Medical or Mental Health Provider?

**Source of Records/Review:**

Provider Encounter Log

**Methodology:**

- For the purposes of this PM, a "follow up sick call encounter" is any follow up ordered by a Provider to be seen by a QHCP with the following caveat: treatments, such as blood pressure checks, blood sugar checks, TENS unit treatments, breathing treatments, EKGs, lab tech appointments, etc. are not sick call encounters.
- Use the first ten (10) applicable records from the randomized Provider Encounter Log.
- The applicable provider encounters will contain either of two applicable dates to review: the date of the follow-up order and the date of the follow-up encounter. If the provider encounter on the randomized list contains the follow-up order, look forward see if the follow-up appointment took place **in the monitored month**.
    - EXAMPLE 1: On the 15th day of the monitored month, the provider orders a follow-up in 14 days. If the follow-up took place on or before the 29th of the month, the record is compliant. If the follow-up did not take place on or before the 29th, the record is not compliant.
    - EXAMPLE 2: On the 20th day of the monitored month, the provider orders a follow-up appointment in 14 days. The 14th day is not in the monitored month, but the follow-up took place on the 31st day of the monitored month. The record is compliant.
    - EXAMPLE 3: On the 20th day of the monitored month, the provider orders a

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618153

follow-up appointment in 14 days. The follow-up takes place on the 3rd day of the next month. The record is excluded from review because the follow-up appointment did not take place in the monitored month. The follow-up appointment will be on the next month's provider encounter log.

- EXAMPLE 4: On the 20th day of the monitored month, the provider orders a follow-up appointment in 14 days. On the 10th day of the following month the follow-up has not taken place. The record is excluded from review, because the time frame for compliance extended beyond the monitored month.
- EXAMPLE 5: On the 1st day of the monitored month the provider orders a follow-up on the provider line. The follow-up takes place on the 20th day of the monitored month. The record is excluded from review because the order contained no specific time frame.

- If the applicable encounter on the randomized source document contains the follow-up appointment, look to previous provider encounters to determine if a specific time frame was ordered and if the follow-up took place within that timeframe.
  - EXAMPLE 6: The follow-up appointment took place on July 4th. On May 4th the provider ordered a 60-day follow-up. The record is compliant (even though May has 31 days and June has 30 days).
  - EXAMPLE 7: The follow-up appointment occurred on the 5th of the monitored month. The order on the 20th of the preceding month was for a 14-day follow-up. The record is not compliant.
  - EXAMPLE 8: The follow-up provider line appointment took place on the 1st day of the monitored month. The provider order on the 20th of the preceding month was to "follow-up on the provider line." The record is excluded from review because a specified time frame was not ordered.
- Medical chronic care appointments are reviewed under performance measure #54 and are excluded from review under this performance measure.
- If the inmate was seen prior to or within the specified time frame, the chart is compliant.
- If the inmate was not seen or was seen any time after the specified time frame, the chart is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618154

**Health Care Performance Measure No. 43**
**Stipulation Category: Access to Care (08)**

**CGAR Category: Access to Care (C) 08**

| **Performance Measure:**<br><br>Inmates returning from an inpatient hospital stay or ER transport will be returned to the medical unit and be assessed by a RN or LPN on duty there. |
|---|
| **CGAR Question:**<br><br>Are inmates that are returning from an inpatient hospital stay or ER transport being returned to the medical unit and assessed by an RN or LPN on duty there? |
| **Source of Records/Review:**<br><br>Hospital Report. |
| **Methodology:**<br><br>• Use the first ten (10) records for each monitored unit from the randomized Hospital Report.<br>• Review Health Services Encounters in eOMIS to determine whether the inmate was assessed by an LPN, RN or medical professional of higher licensure upon return from an ER transport or inpatient stay.<br>• If the inmate returned to the medical unit and was assessed by an RN or medical professional of higher licensure or evaluated by an LPN upon return from inpatient hospital stay or ER transport, the chart is compliant. If vital signs (temperature, pulse, respirations, weight, blood pressure, O2 sats) are not completed, ~~but an assessment is completed,~~ the chart is ~~found~~ not compliant.<br>• If the inmate was not assessed by an RN or evaluated by an LPN upon return from the inpatient hospital stay or ER transport, the chart is noncompliant. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618155

**Health Care Performance Measure No. 44**
**Stipulation Category: Access to Care (09)**

**CGAR Category: Access to Care (C) 09**

**Performance Measure:**

Inmates returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital shall have the hospital's treatment recommendations reviewed and acted upon by a medical provider within 24 hours.

**CGAR Question:**

Are inmates who are returning from an inpatient hospital stay or ER transport with discharge recommendations from the hospital having the hospital's treatment recommendations reviewed and acted upon by a Medical Provider within 24 hours?

**Source of Records/Review:**

ER/Inpatient Hospital Report

**Methodology:**

- Use the first ten (10) records for each monitored unit from the Hospital Report.
- Review the nursing notes or provider notes in eOMIS for any language noting that treatment recommendations were reviewed and acted upon by the Provider within 24 hours. Documentation must indicate that discharge instructions were reviewed. Discharge instructions include, but are not limited to medications, wound care, follow up, etc.
- The Provider may also review the discharge documentation and acknowledge receiving the discharge paperwork by initialing/signing and dating the information and scanning it into eOMIS
- When examining each case, the (nurse) monitor should address:
- 1. Did the patient return from the hospital with at least one discharge recommendation? If not, the case should be skipped and replaced by the next randomized case.
- 2. Was each discharge recommendation ordered by the facility provider within 24 hours?
- 3. If not, is there "a documented reason explaining why the prescribed treatment was rejected."
- 4. Did the patient "receive the prescribed treatment"? For the purposes of this step, the Court's order should be interpreted as follows: First, "prescribed treatment" should include treatments as well as tests, consultations, or any other executable provider order.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618156

Second, the monitor should consider the response to the recommendation Compliant if there was a provider order, and the order was scheduled, but was not consummated because it was scheduled to take place at a date after the date of the audit.

- In the case of newly prescribed medication (new drug or different dosage), receiving the prescribed treatment means receiving each administration during the monitored month as prescribed.
- If the Provider chooses in his/her clinical discretion not to act upon the treatment recommendations, that decision must be documented in eOMIS along with the reason(s) for it.
- Discharge instructions returned with the patient must be scanned into eOMIS to establish compliance

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618157

**Health Care Performance Measure No. 45**
**Stipulation Category: Diagnostic Services (01)**

**CGAR Category: Specialty Care (C) 06**

| **Performance Measure:**<br><br>On-site diagnostic services will be provided the same day if ordered STAT or urgent, or within 14 calendar days if routine |
|---|
| **CGAR Question:**<br><br>Are on-site diagnostic services provided the same day if ordered STAT or urgent, or within 14 calendar days if routine? |
| **Source of Records/Review:**<br><br>Labs & X-Rays Ordered Report. |
| **Methodology:**<br><br>• Use the randomized Labs & X-rays Ordered Report.<br>• For each unit monitored, review the first ten (10) applicable diagnostic services ordered routine, urgent, or stat (emergent).<br>• If, at any monitored unit, a sample of ten (10) applicable diagnostic services is not available, use all available applicable records.<br>• Compare the ordered date with the collected or taken date. When a discrepancy exists between the lab tech-entered specimen collection date and the lab-provided collection date or the x-ray tech-entered x-ray taken date and the eOMIS image recorded by technologist date, the Monitor shall retain discretion is identifying the most appropriate date to use for monitoring purposes. With the exception of appropriate exclusion criteria, as outlined in the methodology, if a diagnostic service is ordered routine it must be completed within 14 calendar days and an urgent or stat order must be completed the same day to be compliant. If not completed within 14 calendar days for routine or the same day for urgent or stat, that service is noncompliant.<br>• If the sub-contracted lab interface reports unsolicited results, the Monitor shall use his or her professional judgment to identify the order to which those results correspond. Unsolicited lab results that create a new order may be included on two (2) consecutive months' source documents may remain subject to monitor for those consecutive months.<br>• If the appropriate eOMIS functional area tab does not provide the necessary information to determine the diagnostic service date, the Monitor may use alternative methods of |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618158



identifying the diagnostic service date.

- If an order is entered and then identified as "cancelled," "entered in error," or similar terminology and a substantiating reason is provided, the Monitor may exclude those orders from review.
- If an inmate is released or transfers to a facility that is not subject to the Stipulation agreement prior to the performance measure timeframe being exceeded, that diagnostic service shall be excluded from review.
- Exclude ordered diagnostic services that are ordered to intentionally exceed the Stipulation agreement timeframes (e.g., a provider who wants a lab drawn in one year) as providers order labs for a variety of timeframes to ensure quality and continuity of care.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 46**
**Stipulation Category: Diagnostic Services (02)**

**CGAR Category: Specialty Care (C) 07**

**Performance Measure:**

A Medical Provider will review the diagnostic report, including pathology reports, and act upon reports with abnormal values within five (5) calendar days of receiving the report at the prison.

**CGAR Question:**

Are Medical Providers reviewing the diagnostic report, including pathology reports, and acting upon the reports with abnormal values within five (5) calendar days of receiving the report at the prison?

**Source of Records/Review:**

Labs & X-Rays Received Report.

**Methodology:**

- Use the randomized Labs & X-Rays Ordered Report.
- For each monitored unit, the first diagnostic report for each patient within a month's CGAR sample should be retained. Any additional reports for the same patient should be discarded and replaced with the next report for the next unique patient on the original randomized Source Document for that CGAR, until the quota of 10 samples is reached. In the unlikely event that there are an insufficient number of unique patients with to fill the quota of 10 samples, the auditor will draw the second diagnostic report (if there is one) from each patient already sampled (and then, if necessary, the third diagnostic report, and so on) until the sample size is 10.~~review the first ten (10) diagnostic services with results available. If ten (10) reports are not available, use all applicable records for the unit.~~
- If the diagnostic service was an x-ray, compare the x-ray results process date with the results comments Time Stamp date or other available review documentation that identifies when the results were reviewed and acted upon.
- If the diagnostic service was a lab, compare the lab results received date with the Review Notes Time Stamp date, or other available review documentation that identifies when the results were reviewed and acted upon.
- If the Medical Provider reviews results within five (5) calendar days, and documents the action taken regarding any abnormal value(s) within that time, the record is compliant. If

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618160

the Medical Provider documents that the abnormal value is within normal limits for that patient and that no further action is necessary, the record is compliant.

- If the Medical Provider reviewed the report more than five (5) calendar days after it was received, or there is no appropriate documentation that action was taken regarding abnormal value(s), as the record is noncompliant.
- If the action taken is to follow-up with the patient on the provider line, the order is the action if it contains a measurable timeframe. In those cases, the measure is compliant even if the appointment was not yet scheduled or held. If an appointment is scheduled within five (5) days of receiving the report, the record is compliant. If the action is to follow-up at the patient's next chronic care visit and it is documented within five (5) calendar days, the record is compliant, even if the chronic care appointment is not yet scheduled. However, if the patient does not have a chronic condition and the order is to follow up at the next chronic care appointment, that is not an action.
- If an inmate is released or transferred to a facility that is not subject to the Stipulation agreement prior to the performance measure timeframe being exceeded, that diagnostic service shall be excluded from the review.
- If the medical record is unclear as to which diagnostic study the results refer or the date on which the results were received, the Monitor may use alternative methods of identifying diagnostic service dates.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618161

**Health Care Performance Measure No. 47**
**Stipulation Category: Diagnostic Services (03)**

**CGAR Category: Specialty Care (C) 08**

| **Performance Measure:**<br><br>A Medical Provider will communicate the results of the diagnostic study to the inmate upon request and within seven calendar days of the date of the request. |
|---|
| **CGAR Question:**<br><br>Are Medical Providers communicating the results of the diagnostic studies to the inmate upon request and within seven (7) calendar days of the date of the request? |
| **Source of Records/Review:**<br><br>HNR Log |
| **Methodology:**<br><br>• Use the randomized HNR Log.<br>• Review the first ten (10) requests for diagnostic service results per unit. If ten (10) requests are not available, use all applicable records for the unit.<br>• Compare the ~~"date received" from upper right hand corner of~~date written by the inmate on the HNR, to the date the inmate was notified of the results. Results communicated within seven (7) calendar days are compliant; results not communicated within seven (7) calendar days are noncompliant.<br>• If there is no legible ~~date/time stamp in the data received box~~, the date written by the inmate will be used. If there is ~~also~~ no legible date provided by the inmate, use the date/time stamp in the date received box. If there is no legible date provided by the inmate and no date/time stamp in the date received box, the record is considered noncompliant.<br>• Use the date on the communiqué to determine compliance. If the communiqué does not have a date, use the scanned document date to determine compliance.<br>• If the results being requested cannot be identified based on details included on the HNR, the HNR shall be excluded. If an inmate is determined to be requesting results for tests that were never ordered, the HNR shall be excluded.<br>• Exclude HNRs requesting results for program inclusion or movement that may be |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618162



dependent upon diagnostic results if the inmate has received communication regarding program inclusion or movement has occurred, or the movement/inclusion itself has occurred.

- HNRs requesting multiple results are medical records requests and are excluded from review.
- An HNR requesting results for which there are no results available, shall be excluded from review, when recognized.
- The request from an inmate transferred to a to a facility that is not subject to the Stipulation agreement or released within seven (7) calendar days shall be excluded from the review.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618163

**Health Care Performance Measure No. 48**
**Stipulation Category: Specialty Care (01)**

**CGAR Category: Specialty Care (C) 01**

**Performance Measure:**

Documentation, including the reason(s) for the denial, of Utilization Management denials of requests for specialty services will be sent to the requesting Provider in writing within fourteen (14) calendar days, and placed in the patient's medical record.

**CGAR Question:**

Are denials from Utilization Management (including reason(s) for the denial) for specialty care sent to the requesting provider in writing within fourteen (14) calendar days, and placed in the patient's medical record?

**Source of Records/Review:**

Consult ATP Report

**Methodology:**

- Use the randomized Consult ATP Report, consisting of a list of all Urgent specialty requests *that were requested* in the month under review and a list of all Routine specialty requests *that were requested* in the month under review. Review the first ten (10) denied or ATP'd consultation requests at each unit
- The Consult Written Date on the Consult ATP report shall be used to determine the consults to monitor, but for monitoring purposes, that date will be reconciled with the eOMIS Request Date. If the record from the Consult ATP Report contains multiple consults for the same specialty with similar dates, the Monitor will determine which consult to monitor. This is generally done by:
  - matching a consult on the source document to a consult in eOMIS, thus using each individual consult no more than one time
  - assigning a number to each similar consult on the source document, printing each similar consult from eOMIS, and
  - writing the same number on the printed copy.
- Consults with an ATP shall be monitored for written communication of the ATP to the

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618164



provider within fourteen (14) calendar days of the decision to ATP the request. To be compliant, the written communication must occur within fourteen (14) calendar days of the decision to ATP the request and be documented in the patient's medical record. If a consult is denied, it must include a reason for the denial. If a consult results in an ATP it is recognized that it inherently offers a revised and justified plan (based on UM criteria, experience, and education) for the provision of care. An ATP by UM that is not accepted by the provider and results in approval, scheduling, or completion of the consult shall be excluded from the review, as it will be monitored under PM #50 or PM #51.

- For any consult with more than one ATP, the first (earliest) ATP on the source document must be used. A subsequent ATP does not "re-start" the clock.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618165

**Health Care Performance Measure No. 49**
**Stipulation Category: Specialty Care (02)**

**CGAR Category: Specialty Care (C) 02**

**Performance Measure:**

Patients for whom a provider's request for specialty services is denied are told of the denial by a Medical Provider at the patient's next scheduled appointment, no more than thirty (30) days after the denial, and the Provider documents in the patient's medical record the Provider's follow-up to the denial.

**CGAR Question:**

Are patients for whom a provider's request for specialty services is denied told of the denial by a Medical Provider at the patient's next scheduled appointment, within thirty (30) days of the denial?

**Source of Records/Review:**

Consult ATP Report

**Methodology:**

- Use the randomized Consult ATP Report.
- Review the first ten (10) denied or ATP'd consultation requests at each unit.
- Compare the UM ATP Date with the next subsequent provider encounter. If that encounter occurred within thirty (30) days of the ATP date, that consult is compliant.
- If the record from the Consult ATP Report contains multiple consults for the same specialty with similar dates, the Monitor will determine which consult to monitor. This is generally done by:
  - matching a consult on the source document to a consult in eOMIS, thus using each individual consult no more than one time
  - assigning a number to each similar consult on the source document, printing each similar consult from eOMIS, and writing the same number on the printed copy
  - writing the same number on the printed copy.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618166

**Health Care Performance Measure No. 50**
**Stipulation Category: Specialty Care (03)**

**CGAR Category: Specialty Care (C) 03**

**Performance Measure:**

Urgent specialty consultations and urgent specialty diagnostic services will be scheduled and completed within thirty (30) calendar days of the consultation being requested by the provider.

**CGAR Question:**

Are urgent consultations and urgent specialty diagnostic services being scheduled and completed within thirty (30) calendar days of the consultation being requested by the provider?

**Source of Records/Review:**

Outpatient Appointment Log - Urgent

**Methodology:**

- Use the randomized Outpatient Appointment Log - Urgent .
- At each monitored unit, review the first ten (10) urgent specialty consultations requests from the randomized Outpatient Appointment Log - Urgent.
- If a consult request resulting in an alternate treatment plan (ATP) was accepted by the provider, the consult is excluded from review.
- If the ATP is ordered more than 30 days after the date of the urgent consult request, the record is not compliant.
- If, at any unit, ten (10) urgent consultation requests are not available, review all available urgent consultation requests for said unit.
- If the Inmate Consult Request contains notes, reports, or results indicating the appointment occurred within thirty (30) calendar days or there is documentation in a Return from Offsite encounter that the specific consultation occurred within thirty (30) days, the consult is compliant. Thirty (30) days is measured from the day of the month the consult is requested to the corresponding day in the monitored month (e.g. the 15th to the 15th
- A consult request included on the Outpatient Appointment Log - Urgent shall be excluded from review if the request resulted in a documented ATP as this is reviewed

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618167



under performance measure 48.

- A consult that is scheduled to occur within thirty (30) calendar days of the consultation being requested by the provider but is cancelled by the consultant's office shall be excluded from the review.
- A consult that is scheduled to occur within thirty (30) calendar days of the consultation being requested by the provider but is rescheduled by the consultant's office shall be excluded from the review, if the appointment has been rescheduled.
- A consult that must be rescheduled due to complex operational issues such as lockdowns, shall be excluded from the review, if the appointment has been rescheduled.
- Specialty consults that involve a series of visits shall have compliance determined based on the date of the initial visit. When an inmate is approved for a series of consultation appointments, all appointments in the series are approved at the time the first appointment is approved. Therefore, because each appointment subsequent to the first appointment does not require another approval, the appointments subsequent to the first appointment are not measured under this performance measure.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618168

**Health Care Performance Measure No. 51**
**Stipulation Category: Specialty Care (04)**

**CGAR Category: Specialty Care (C) 04**

**Performance Measure:**

Routine specialty consultations will be scheduled and completed within sixty (60) calendar days of the consultation being requested by the provider.

**CGAR Question:**

Are routine consultations being scheduled and completed within sixty (60) calendar days of the consultation being requested by the provider?

**Source of Records/Review:**

Outpatient Appointment Log - Routine

**Methodology:**

- Use the Outpatient Appointment Log - Routine.
- At each monitored unit, review the first ten (10) routine specialty consultation requests from the randomized Outpatient Appointment Log - Routine.
- If a consult request resulting in an alternate treatment plan (ATP) was accepted by the provider, the consult is excluded from review.
- If the ATP is ordered more than 60 days after the date of the routine consult request, the record is not compliant.
- If, at any monitored unit, ten (10) routine consultation requests are not available, review all available routine consultation requests for that unit.
- A consult request included on the Outpatient Appointment Log - Routine shall be excluded from review if the request resulted in a documented ATP, as this is reviewed under performance measure 48.
- A consult that is scheduled to occur within sixty (60) calendar days of the consultation being requested by the provider but is cancelled or rescheduled by the consultant's office shall be excluded from the review.
- A consult that must be rescheduled due to complex operational issues such as lockdowns, shall be excluded from the review, if the appointment has been rescheduled.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618169

- Specialty consults that involve a series of visits shall have compliance determined based on the date of the initial visit. When an inmate is approved for a series of consultation appointments, all appointments in the series are approved at the time the first appointment is approved. Therefore, because each appointment subsequent to the first appointment does not require another approval, the appointments subsequent to the first appointment are not measured under this performance measure.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618170

**Health Care Performance Measure No. 52**
**Stipulation Category: Specialty Care (05)**

CGAR Category: Specialty Care (C) 05

| **Performance Measure:**<br><br>Specialty consultation reports will be reviewed and acted on by a Provider within seven calendar days of receiving the report. |
|---|
| **CGAR Question:**<br><br>Are specialty consultation reports being reviewed and acted on by a provider within seven (7) calendar days of receiving the report? |
| **Source of Records/Review:**<br><br>Consult Results Received Log |
| **Methodology:**<br><br>• Use the randomized Consult Results Received Log.<br>• At each monitored unit, review the first ten (10) specialty consultation reports. Exclusion criteria include optometry exam results.<br>• If, at any unit, ten (10) reports are not available, review all available specialty consultation reports.<br>• Compare the off-site specialist's report received date with the date of the on-site practitioner's review.<br>  o If the review occurred and the chart indicates that action was taken within seven calendar days of receipt, the report shall be identified as compliant.<br>  o If the review for that consult report(s) occurred within seven calendar days of receipt and no action is required as evidenced by no specific recommendation identified on the date of monitor review, the report is compliant.<br>  o If the review did not occur within seven calendar days of receipt, or if the review occurred within seven calendar days but no action was taken by the provider (exclusive of consult reports for which no action is required), the report is noncompliant.<br>• If the source document references a handwritten preliminary report from the offsite |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618171



provider, the date of that preliminary report is used as the start date to determine compliance.

- If the Vendor provider notes on the preliminary report that (s)he is awaiting the dictated report AND the dictated report is in the medical record, the dictated report date is used as the start date. The date stamp on the report is used as the receipt date.
- If there is no date stamp, the fax date is used. If the report has neither a date stamp nor a fax date, the date of the corresponding return from offsite encounter is used.
- If none of those dates are identified in the record, the date of the procedure is used.

- A specialty consultation report is a report from the outside provider. It does not include NPO Notices, pre-op instructions, pre-printed discharge instructions, pre-printed care information, or nursing notes.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618172

## The following stipulated chronic conditions and guidelines apply to the Chronic Care performance measures (#53 - #56):

**Cancer –** seen in the last month for active process

**Cardiac/Heart Disease –** seen in the last 6 months

**Diabetes –** seen in the last 3 months, A1C in last 3 months, retinal exam annually

**Hypertension –** seen in last 6 months

**LTBI –** seen by provider for annual chronic care visit OR seen by RN for annual completion of TB Symptomatology checklist

**Respiratory Disorders** – seen in last 6 months

**Seizure disorders** – seen in last 3 months, labs for med levels in last 6 months

**Coccidioidomycosis** – seen in last 3 months for active disease

**Chrohn's Disease** – seen in last 3 months, labs in last 3 months

**End Stage Liver Disease** – seen in last month, labs in last 3 months

**Renal Diseases** – seen in last 3 months, labs in last 3 months

**Sickle Cell Anemia** – seen in last 3 months, labs in last 3 months

**HIV/AIDS** – seen in last 3 months, labs in last 3 months

**Blood Disorders** – CBC drawn in last 6 months

**Hepatitis C** – seen in last 6 months, labs in last 6 months

**Hyperthyroidism** – seen in last 6 months, labs in last 6 months

**Neurological Disorders** – seen in last 6 months

**Rheumatological Diseases –** seen in last 6 months, labs in last 6 months

**Hyperlipidemia** – seen in last 6 months, labs annually

At the provider's discretion, deviation to the above clinical guidelines may be ordered. The modification and reason for the modification must be clearly documented under "Plan Notes" in the "Provider – Chronic Care" encounter. Labs will be obtained and reported in the medical record prior to the patient seeing the provider. Clinical guidelines or documented modifications with a reason will be maintained for infirmary patients on the "Provider – Chronic Care" encounter as outlined above.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618173

**Health Care Performance Measure No. 53**
**Stipulation Category: Chronic Care (01)**

**CGAR Category: Chronic Care (C) 01**

| **Performance Measure:**<br><br>Treatment plans will be developed and documented in the medical record by a provider within thirty (30) calendar days of identification that the inmate has a chronic disease. |
|---|
| **CGAR Question:**<br>Are treatment plans developed and documented in the medical record by a provider within thirty (30) calendar days of identification that the inmate has a chronic disease? |
| **Source of Records/Review:**<br>Chronic Care Report |
| **Methodology:**<br><br>• Use the randomized Chronic ~~Conditions~~ Care Report.<br>• Monitor the first ten (10) newly diagnosed chronic conditions per unit.<br>• If, at any unit, ten (10) new diagnoses are not available, review all available treatment plans from the audited month.<br>• Review provider encounters in eOMIS for a treatment plan that was developed and documented within thirty (30) calendar days of the Provider's diagnosis.<br>• Compliance is determined based on the presence of a measurable timeframe for the chronic care appointment.<br>• Exclusion criteria includes non-Stipulation agreement chronic care conditions, ~~LTBI,~~ conditions with paper treatment plans from a private prison (if identified), and previously recognized chronic conditions that are updates to coding.<br>• ~~LTBI requires an annual provider chronic care visit **or** completion of TB signs and symptoms, preferably completed on Nurse- TB Follow Up.~~<br>• If no timeframe is ordered: 1) an intake must have an initial CC visit within thirty days; 2) an inmate with a documented refusal for a CC visit that has no timeframe ordered shall, at a minimum, have the next visit within 180 days or as ordered by the provider; 3) an existing inmate with a newly identified chronic condition and no other chronic conditions shall have the initial CC visit within thirty days or as ordered by the provider; 4) an inmate with multiple CC conditions who receives an additional CC diagnosis shall be seen as ordered by the provider based on the other CC conditions or as ordered with the newly diagnosed condition, not to exceed the most stringent frequency recommendation; 5) a transfer from a private prison must have a CC visit within thirty (30) days or as ordered by the provider. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618174

**Health Care Performance Measure No. 54**
**Stipulation Category: Chronic Care (02)**

**CGAR Category: Chronic Care (C) 02**

| **Performance Measure:**<br><br>Chronic disease inmates will be seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place. **This performance measure ~~is not subject to court reporting~~was rolled into PM #55 and is no longer monitored.,** |
|---|
| **CGAR Question:**<br><br>Are inmates with chronic disease being seen by the provider as specified in the inmate's treatment plan, no less than every 180 days unless the provider documents a reason why a longer time frame can be in place? |
| **Source of Records/Review:**<br><br>Chronic Care Report |
| **Methodology:**<br><br>• Use the randomized Chronic ~~Conditions~~ Care Report.<br>• Monitor the first ten (10) chronic conditions per health unit. Chronic conditions not identified in the Stipulation agreement are excluded from review.<br>• If, at any unit, ten (10) chronic conditions are not available, review all available chronic care conditions within the audited month.<br>• Monitor the first ten (10) chronic conditions per health unit to determine if the inmate is currently compliant with the provider's order. If the condition subject to review has not exceeded the timeframe ordered by the provider, the record is in current compliance. LTBI requires an annual provider chronic care visit or completion of TB signs and symptoms, preferably completed on Nurse- TB Follow Up.<br>• If a timeframe is ordered that exceeds 180 days, the provider must document a reason to be considered compliant.<br>• Inmates with a newly diagnosed condition that have not been seen for other chronic conditions will be considered compliant if seen within thirty days, or as ordered by the provider.<br>• If no timeframe is ordered: 1) an intake must have an initial CC visit within thirty days; 2) |

Formatted: Font: Bold, Font color: Red

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618175



an inmate with a documented refusal for a CC visit that has no timeframe ordered shall, at a minimum, have the next visit within 180 days or as ordered by the provider; 3) an existing inmate with a newly identified chronic condition and no other chronic conditions shall have the initial CC visit within thirty days or as ordered by the provider; 4) an inmate with multiple CC conditions who receives an additional CC diagnosis shall be seen as ordered by the provider based on the other CC conditions or as ordered with the newly diagnosed condition, not to exceed the most stringent frequency recommendation; 5) a transfer from a private prison must have a CC visit within thirty (30) days or as ordered by the provider.

- If the patient with a chronic condition refuses his or her chronic care encounter, he must be scheduled in accordance with the chronic care guidelines for his next chronic care appointment.
- If the patient refuses a lab test associated with his chronic condition, he must still be seen for his chronic care appointment or refuse the appointment separately on the day of the appointment.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618176

**Health Care Performance Measure No. 55**
**Stipulation Category: Chronic Care (03)**

**CGAR Category: Chronic Care (C) 03**

**Performance Measure:**

Disease management guidelines will be implemented for chronic diseases.

**CGAR Question:**

Are disease management guidelines implemented for chronic diseases?

**Source of Records/Review:**

Chronic Care Report

**Methodology:**

- For each Complex unit, use the first ten (10) applicable randomized chronic conditions in the Chronic Care Report. Chronic conditions not identified in the Stipulation agreement are excluded from review. If a patient appears on the list more than once, the first instance should be reviewed; subsequent appearances should be skipped. In the unlikely event that there are an insufficient number of unique patients with to fill the quota of 10 samples, the auditor will draw the second chronic disease (if there is one) from each patient already sampled (and then, if necessary, the third chronic disease, and so on) until the sample size is 10.
- If, at any unit, ten (10) ~~chronic conditions~~unique ADC inmate numbers are not available, use all available chronic conditions. 100% examination shall occur.
- A case is noncompliant if any of the following are found (and there is no evidence of an adequate patient refusal to explain the missing clinic visit):

a. There are no previous chronic care clinic visits for the chronic disease recorded in eOMIS, and more than one month has transpired since the patient was admitted to ADC. (This latter specification recognizes that newly admitted patients will not have a previous chronic care clinic visit, but should have been seen for their chronic disease by the end of their first month of residency.)

b. The most recent chronic care clinic visit did not occur within the time frame ordered by the provider at the previous visit; if no time frame was ordered, it occurred more than six months after the previous visit.

c. A follow-up chronic care clinic visit is not scheduled in the future (i.e., beyond

Formatted: Indent: Left: 0.25", No bullets or numbering

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

the end of the audit month)

d. A follow-up chronic care visit is scheduled in the future (i.e. beyond the end of the audit month) but the date of that future appointment is not consistent with the provider's order at the most recent chronic care clinic visit; if no time frame was ordered, it is scheduled more than six months after the most recent visit.

Formatted: No bullets or numbering

- For each applicable record, determine if the chronic condition is currently compliant with the provider's order(s). If the condition subject to review has not exceeded the timeframe ordered by the provider and the next chronic care appointment is scheduled within the timeframe ordered by the provider, identify that chart as compliant. ~~If the condition is not in current compliance, identify that condition as noncompliant.~~
- The Monitor must determine which clinical guideline to use if EMR mapping is not clear (e.g., active cancer or ESLD) or if the presence of a chronic condition is indeterminable.
- Inmates with a newly diagnosed condition who have not been seen for other chronic conditions will be considered compliant if seen within thirty days, or as ordered by the provider.
- If the patient with a chronic condition refuses his or her chronic care encounter, he must be scheduled in accordance with the chronic care guidelines for his next chronic care appointment.
- If the patient refuses a lab test associated with his chronic condition, he must still be seen for his chronic care appointment or refuse the appointment separately on the day of the appointment.
- If no timeframe is ordered, visits must occur as outlined in the clinical guidelines using thirty day months or as listed in the bullet below. LTBI requires an annual provider chronic care visit or completion of TB signs and symptoms, preferably completed on Nurse- TB Follow Up.
- Additional considerations if no timeframe is ordered include: 1) an intake must have an initial CC visit within thirty days; 2) an inmate with a documented refusal for a CC visit that has no timeframe ordered shall, at a minimum, have the next visit as recommended in the clinical guidelines or as ordered by the provider; 3) an existing inmate with a identified chronic condition and no other chronic conditions shall have the initial CC visit within thirty days or as ordered by the provider; 4) an inmate with multiple CC conditions who receives an additional CC diagnosis shall be seen as ordered by the provider based on the other CC conditions or as ordered with the newly diagnosed condition, not to exceed the most stringent frequency recommendation; 5) a transfer from a private prison must have a CC visit within thirty (30) days or as ordered by the provider.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618178

**Health Care Performance Measure No. 56**
**Stipulation Category: Chronic Care (04)**

**CGAR Category: Chronic Care (C) 04**

| **Performance Measure:**<br><br>Inmates with a chronic disease will be provided education about their condition/disease which will be documented in the medical record. **This performance measure is not subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are inmates with a chronic disease being provided education about their condition/disease and is it documented in the medical record? |
| **Source of Records/Review:**<br><br>Chronic Care Report |
| **Methodology:**<br><br>• Use the randomized Chronic Care Report<br>• Monitor the first ten (10) chronic conditions at each Complex health unit. If, at any unit, ten (10) chronic conditions are not available, use all applicable records at the unit.<br>• The condition shall be considered compliant if there is documented education for the condition, disease, or disease prevention. If no education is documented, identify the performance measure as noncompliant. |

Formatted: Font color: Red

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618179

**Health Care Performance Measure No. 57**
**Stipulation Category: Prenatal Services (01)**

**CGAR Category: Female Care – Prenatal Preventative (C) 02**

| **Performance Measure:**<br><br>A Medical Provider will order prenatal vitamins and diet for a pregnant inmate at the inmate's initial intake physical examination. |
|---|
| **CGAR Question:**<br><br>Are medical providers ordering prenatal vitamins and diet for pregnant inmates at the inmate's initial intake physical examination? |
| **Source of Records/Review:**<br><br>Pregnant Inmate List |
| **Methodology:**<br><br>• Monitor all inmates from the Pregnant Inmate List for the review period (Perryville only).<br>• If the provider ordered prenatal vitamins and a pregnancy diet at the inmate's initial intake physical examination, the chart is compliant.<br>• If either the prenatal vitamins or the pregnancy diet is not ordered at the intake physical examination, the chart is not compliant.<br>• The provider orders are generally found under the Special Needs tab in eOMIS and the provider intake physical examination encounter.<br>• In order to determine whether the diet order has been completed, the Diet order and diet issuance sticker must be scanned to the Food Service Liaison on the day of the intake examination or the next calendar day.<br>• An email with the diet order from the contract vendor to the ADC food service liaison must be sent to the ~~HSCMB~~MSCMB monitor to validate the date that the diet order was consummated. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618180

**Health Care Performance Measure No. 58**
**Stipulation Category: Prenatal Services (02)**

**CGAR Category: Female Care – Prenatal Preventative (C) 03**

| **Performance Measure:**<br><br>Results of an inmate's prenatal screening tests will be documented in the medical record. |
|---|
| **CGAR Question:**<br><br>Are results of an inmate's prenatal screening tests documented in the medical record? |
| **Source of Records/Review:**<br><br>Pregnant Inmate List |
| **Methodology:**<br><br>• Monitor all inmates from the Pregnant Inmate List for the review period (Perryville only).<br>• Review each applicable medical record to determine whether the results of prenatal screening tests were documented in the medical record. Labs available for viewing shall be identified as compliant.<br>• Prenatal screening tests include gestational age/pregnancy test, RPR, HIV, HBV, HCV, CBC, CMP, Urine, Rubella, ABO RH and antibody. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618181

**Health Care Performance Measure No. 59**
**Stipulation Category: Preventative Services (01)**

**CGAR Category: Medical Records (C) 10**

| **Performance Measure:** |
|---|
| Inmates will be screened for TB on an annual basis. |
| **CGAR Question:** |
| Are inmates being screened for TB on an annual basis? |
| **Source of Records/Review:** |
| Master Inmate log (DA04 Report generated from AIMSAIMS / ACISACIS / AIMS ). |
| **Methodology:** |
| • Use the randomized Master Inmate log (AIMSAIMS / ACISACIS / AIMS DA04 reportDA04 report) for the monitored month. • Review the PPD administration date for the first ten (10) inmates at each unit, found in eOMIS in the header of the Home Screen. • If a Positive PPD occurred more than one year from the monitored month, determine if the inmate received a chest x-ray or signs and symptoms were documented within one year from the last day of the monitored month. • If the PPD, chest x-ray, or TB symptomology result occurred within one year from the last day of the monitored month, the record is compliant. • If a Negative TB screening result occurred more than one year from the last day of the monitored month, the record is noncompliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618182

**Health Care Performance Measure No. 60**
**Stipulation Category: Preventative Services (02)**

**CGAR Category: Intake (C) 03**

| **Performance Measure:**<br><br>All female inmates ages 21 to 65 will be offered a Pap smear at the inmate's initial intake physical examination, and every 36 months thereafter unless more frequent screening is clinically recommended. |
|---|
| **CGAR Question:**<br><br>Are all female inmates ages 21 to 65 offered a pap smear at the inmate's initial intake physical examination, and every 36 months thereafter unless more frequent screening is clinically recommended? |
| **Source of Records/Review:**<br><br>Intakes Log |
| **Methodology:**<br><br>• ASPC-PERRYVILLE ONLY. For each unit, select the first ten (10) applicable records from the Arrival Log for the monitored month.<br>• Review the Provider Intake Physical Examination for documentation that the inmate was offered a Pap smear. If a Pap smear was performed or if there is documentation that a pap smear was offered, the record is compliant.<br>• The remainder of this performance measure is addressed in performance measure 61, which contains identical language. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618183

**Health Care Performance Measure No. 61**
**Stipulation Category: Preventative Services (03)**

**CGAR Category: Female Care – Prenatal Preventative (C) 01**

| **Performance Measure:**<br><br>All female inmates ages 21 to 65 will be offered a Pap smear every 36 months after initial intake, unless more frequent screening is clinically recommended.<br>**This performance measure is not subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are all female inmates ages 21 to 65 being offered a pap smear every 36 months after initial intake, unless more frequent screening is clinically recommended? |
| **Source of Records/Review:**<br><br>~~AIMSAIMS / ACIS~~ACIS / AIMS report of all female inmates ages 21-65 whose arrival date is at least three years prior to the monitored month |
| **Methodology:**<br><br>• FEMALE INMATES 21-65 YEARS OLD ONLY. Select the first ten (10) applicable records per unit with an inmate arrival date at least three years prior to the monitored month.<br>• All inmates in this category were offered this service on or about February 15, 2017. Notifications are now posted at all housing and medical units for this purpose going forward. Adequate posters at appropriate locations provide notice to each inmate of her right to a pap smear every 3 years and will constitute compliance with this performance measure.<br>• For inmates whose most recent incarceration at ASPC-Perryville was prior to March 1, 2017, check eOMIS Scanned Documents, for a memorandum personally advising the inmate that she may receive a Pap smear every three years, if medically appropriate. For inmates whose most recent incarceration began on or after March 1, 2017, review the Provider – Physical – Intake encounter to determine if the inmate was advised that they can receive a Pap test every 3 years. The record is compliant if there is evidence in the medical record from a memorandum or intake encounter advising the inmate that she may receive a Pap smear every three years. |

**Formatted:** Font: Bold

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618184

**Health Care Performance Measure No. 62**
**Stipulation Category: Preventative Services (04)**

**CGAR Category: Intake (C) 04**

**Performance Measure:**

All prisoners are screened for tuberculosis upon intake.

**CGAR Question:**

Are prisoners screened for tuberculosis upon intake?

**Source of Records/Review:**

~~Intakes~~ Arrival Log

**Methodology:**

- The Monitor will review the first 10 applicable records from the randomized Arrival Log. Then, in eOMIS, under the Home Screen, top right of the screen, look for the PPD administration date to determine compliance.
- If the PPD Date/Result is prior to the end of the second full day of an inmate's intake arrival at the intake facility (ASPC-Phoenix, ASPC- Perryville, condemned-row, and ASPC-Tucson/Minors), the chart is compliant. If the PPD Date/Result is subsequent to the end of the second full day of an inmate's intake arrival, the chart is noncompliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618185

**Health Care Performance Measure No. 63**
**Stipulation Category: Infirmary Care (01)**

**CGAR Category: Infirmary Care (C) 01**

| **Performance Measure:**<br><br>In an IPC, an initial health assessment will be completed by a Registered Nurse on the date of admission. |
|---|
| **CGAR Question:**<br><br>Are initial health assessments of IPC inmates being completed by a Registered Nurse on the date of admission? |
| **Source of Records/Review:**<br><br>IPC Movement Log |
| **Methodology:**<br><br>• Use the randomized IPC Movement Log.<br>• Monitor the first admission for the first ten (10) inmates who were admitted to an IPC during the monitored month.<br>• If ten (10) admissions are not available, review all IPC admissions during the monitored month.<br>• Inmates who are housed in the IPC, but not admitted are excluded from review.<br>• If a Registered Nurse documented an initial health assessment on the date of admission, that record is compliant. The preferred documentation location is Nurse- Infirmary Admission. A documented refusal that indicates the inmate refused the assessment within the required timeframe is compliant. Inmates who are admitted to the IPC after 2100 hours are compliant with this performance measure if the RN documents the initial assessment before the completion of his/her shift, even if that documentation is after midnight.<br>• Inmates housed in the IPC for 23-hour observations are excluded from review. Inmates who are held in an IPC for fewer than 4 hours pending transfer to an off-Complex hospital are excluded from review.<br>• NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate without a skilled nursing need in |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618186

an infirmary and identifies that inmate as a sheltered housing inmate, that inmate is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate shall become subject to review.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618187

**Health Care Performance Measure No. 64**
**Stipulation Category: Infirmary Care (02)**

**CGAR Category: Infirmary Care (C) 02**

| **Performance Measure:**<br><br>In an IPC, a Medical Provider evaluation and plan will occur within the next business day after admission. |
|---|
| **CGAR Question:**<br><br>Is an evaluation and treatment plan completed by a Medical Provider within the next business day after an inmate's admission to an IPC? |
| **Source of Records/Review:**<br><br>IPC Movement Log |

**Methodology:**

- Obtain the randomized IPC Movement Log.
- Monitor the first ten (10) IPC admissions during the monitored month.
- If ten (10) admissions are not available, review all the IPC admissions in the monitored month.
- Inmates who are housed in the IPC but not admitted, are excluded from review.
- If a Provider documents the inmate's evaluation and treatment plan within the next business day after admission, the record is compliant. The preferred documentation location is Provider- Infirmary Admission. An evaluation and treatment plan created in a discharge note is compliant if it occurred within the next business day.
- Inmates housed in the IPC for 23-hour observation are excluded from review.
- NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies him or her as a sheltered housing inmate, that record is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that record shall become subject to review.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 65**
**Stipulation Category: Infirmary Care (03)**

**CGAR Category: Infirmary Care (C) 03**

**Performance Measure:**

In an IPC, a written history and physical examination will be completed by a medical provider within 72 hours of admission.

**CGAR Question:**

Is a written history and physical examination being completed by a medical provider of IPC inmates within 72 hours of admission?

**Source of Records/Review:**
IPC Movement Log and eOMIS Medical Record

**Methodology:**

- Use the randomized IPC Movement Log.
- Monitor the first ten (10) IPC admissions during the monitored month.
- If ten (10) admissions are not available, review all the IPC admissions in the monitored month.
- Inmates who are housed in the IPC but not admitted are excluded from review.
- If a Provider completes a history and physical examination within seventy-two (72) hours of admission, that record is compliant. The preferred documentation location is Provider- Infirmary Admission. A history and physical created in a discharge note may be considered compliant if it occurred within seventy-two (72) hours of admission.
- Inmates housed in the IPC for 23-hour observation are excluded from review.
- NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies that inmate as a sheltered housing inmate, that record is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate's record shall become subject to review.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618189

**Health Care Performance Measure No. 66**
**Stipulation Category: Infirmary Care (04)**

**CGAR Category: Infirmary Care (C) 04**

| **Performance Measure:**<br><br>In an IPC, a Medical Provider encounter will occur at a minimum every 72 hours. |
|---|
| **CGAR Question:**<br><br>Are medical provider encounters occurring at a minimum of every 72 hours for IPC inmates? |
| **Source of Records/Review:**<br><br>IPC Census |
| **Methodology:**<br>• Use the randomized IPC Census.<br>• Monitor the first IPC admission in the monitored month for each of the first ten (10) applicable records.<br>• If ten (10) IPC admissions are not available, review all the IPC admissions in the monitored month.<br>• If ANY one of the required provider encounters is missing, that entire record is marked as noncompliant.<br>• If the inmate is not in the IPC (i.e. off-site, dental, etc.) during the time the medical provider conducted any of the required rounds during the monitored month and that absence is documented by the provider in the medical record, that ~~record~~ day is excluded from the review. The provider then has 72 hours from that round to see the patient next.<br>• For each monitored IPC stay, identify the number of provider encounters that occurred at least every 72 hours and the number of provider encounters that should have occurred at least every 72 hours. Divide the number of provider encounters that occurred by the number of provider encounters that should have occurred.<br>• Inmates who are housed in the IPC for 23-hour observation but are not admitted are excluded from review.<br>• Once a discharge order is received, the inmate is no longer subject to this performance measure. |

Formatted: Font:

Formatted: Normal, Left, Right: 0", Space After: 0 pt

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618190

- NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies that inmate as a sheltered housing inmate, that inmate's record is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate's record shall become subject to review.

~~**FOR ADC INTERNAL USE ONLY:**~~

- ~~In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:~~
  - ~~For each monitored IPC stay, identify the number of provider encounters that occurred at least every 72 hours and the number of provider encounters that should have occurred at least every 72 hours. Divide the number of provider encounters that occurred by the number of provider encounters that should have occurred.~~

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618191

**Health Care Performance Measure No. 67**
**Stipulation Category: Infirmary Care (05)**

**CGAR Category: Infirmary Care (C) 05**

| **Performance Measure:**<br><br>In an IPC, Registered nurses will conduct and document an assessment at least once every shift. Graveyard shift assessments can be welfare checks. |
|---|
| **CGAR Question:**<br><br>Is an RN conducting and documenting an assessment at least once every shift in the IPC? Graveyard shift assessments may be completed and documented as welfare checks. |
| **Source of Records/Review:**<br><br>IPC Census |
| **Methodology:**<br><br>• Use the randomized IPC Census.<br>• Monitor the first IPC stay in the monitored month for each of the first ten (10) applicable records.<br>• If ten (10) applicable records are not available, review all the records with IPC stays in the monitored month.<br>• RNs conduct an assessment at a frequency in accordance with the nursing care plan established by the RN at admission. If the assessment is conducted by an LPN, it is Noncompliant.<br>• If the frequency is not specified in the nursing care plan, it is at least twice daily.<br>• The patient must be assessed by an RN at the set frequency (or more often) for each visit until the patient is discharged or the end of the audit month, whichever is sooner, for the case to be Compliant – there is no partial credit.<br>• (The spacing of the assessments are reasonable as determined by the monitor (an RN or higher). For example, if the assessments are supposed to be done every 12-hour shift, the monitor would likely determine that an assessment done 10 minutes before one shift ends and 10 minutes after the next shift begins is Noncompliant. Conversely, if the assessments are supposed to done every four hours, the monitor would likely determine that an assessment done at 4 hours and 10 minutes after the previous assessment is |

Formatted: Font: (Default) Garamond, 12 pt

Formatted: Bulleted + Level: 1 + Aligned at: 0.25" + Indent at: 0.5"

Formatted: Font: 12 pt

Formatted: Font: (Default) Garamond, 12 pt

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618192

Compliant.)

- If ANY one of the required assessments or welfare checks is missing, that entire record is marked as noncompliant.
- Inmates who are housed in the IPC for 23-hour observation are excluded from review. Also, requirements for checks on inmates who are absent from the IPC during a nurse's shift are excluded from this PM.
- Once a discharge order is received, the inmate is no longer subject to this performance measure.
- If the inmate is not in the IPC during the RN's shift (e.g. offsite consult, hospital, dental), that shift is skipped and the record is reviewed for the remainder of shifts during the monitored month.

For each audited IPC stay, identify the number of nursing assessments and graveyard welfare checks that occurred at least every shift and the number of nursing assessments and graveyard welfare checks that should have occurred at least every shift. Divide the number of nursing assessments and graveyard welfare checks that occurred by the number of nursing assessments and graveyard welfare checks that should have occurred.

- NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies that inmate as a sheltered housing inmate, that inmate's record is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate's record shall become subject to review.

**FOR ADC INTERNAL USE ONLY:**

- In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:
    - For each audited IPC stay, identify the number of nursing assessments and graveyard welfare checks that occurred at least every shift and the number of nursing assessments and graveyard welfare checks that should have occurred at least every shift. Divide the number of nursing assessments and graveyard welfare checks that occurred by the number of nursing assessments and graveyard welfare checks that should have occurred.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618193

PERFORMANCE MEASURES

109

Draft Revised: 06/01/2020

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618194

**Health Care Performance Measure No. 68**
**Stipulation Category: Infirmary Care (06)**

**CGAR Category: Infirmary Care (C) 06**

| **Performance Measure:**<br><br>In an IPC, Inmate health records will include admission orders and documentation of care and treatment given. |
|---|
| **CGAR Question:**<br><br>Are IPC, inmate health records inclusive of admission orders and documentation of care and treatment given? |
| **Source of Records/Review:**<br><br>IPC Movement log |
| **Methodology:**<br><br>• Use the randomized IPC Movement log.<br>• Monitor the first ten (10) records with IPC admissions during the monitored month.<br>• If ten (10) records with IPC admissions are not available, review all records with IPC admissions in the monitored month.<br>• Inmates who are housed in the IPC but not admitted are excluded from the review.<br>• If a Provider documents that care and treatment were administered, the record is compliant.<br>• Inmates housed in the IPC for 23-hour observation are excluded from the review.<br>• NCCHC standard (P-G-03) allows for both infirmary admissions, which require skilled nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies that inmate as a sheltered housing inmate, that inmate shall be exempted from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate's record shall become subject to review. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 69**
**Stipulation Category: Infirmary Care (07)**

**CGAR Category: Infirmary Care (C) 07**

| **Performance Measure:**<br><br>In an IPC, nursing care plans will be reviewed weekly documented with a date and signature. |
|---|
| **CGAR Question:**<br><br>Are nursing care plans of IPC inmates being reviewed and documented weekly with a date and signature? |
| **Source of Records/Review:**<br><br>IPC Census |
| **Methodology:**<br><br>• Use the randomized IPC Census.<br>• Monitor the first ten (10) records with IPC stays during the monitored month.<br>• If ten (10) records with IPC stays are not available, review all records with IPC stays in the monitored month.<br>• A care plan is compliant if nursing care plan documentation occurs each week with a date and signature (hardcopy or electronic signature). A scanned paper care plan or an Offender Standard Form – Nursing Plan of Care form with subsequent weekly documentation within a Health Services Encounter that identifies the nursing care plan as being revised or requiring no revision is compliant.<br>• If ANY one of the required nursing care plan reviews is missing, that entire record is marked as noncompliant.<br>• Inmates housed in the IPC for 23-hour observation are excluded from the review.<br>• Once a discharge order is received, the inmate is no longer subject to this performance measure.<br>• NCCHC standard (P-F-02) allows for both infirmary admissions, which require skilled |

DRAFT

nursing care, and sheltered housing inmates, not requiring skilled nursing care, to be housed in the infirmary. If a provider places an inmate in an infirmary without a skilled nursing need and identifies that inmate as a sheltered housing inmate, that inmate is exempt from review for the time during which the inmate remains in sheltered housing status. If the inmate's acuity increases and that inmate is subsequently admitted to the infirmary, that inmate's record shall become subject to review.

**FOR ADC INTERNAL USE ONLY:**

- In addition to the above method of scoring, the monitor will also calculate and record the following, which will be reported in the CGAR in a separate section denoted by a separate numbering system:
  - For each monitored IPC stay, identify the number of nursing care plan reviews that occurred at least weekly and the number of nursing care plan reviews that should have occurred at least weekly. Divide the number of nursing care plan weekly reviews that occurred by the number of nursing care plan weekly reviews that should have occurred.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618197

**Health Care Performance Measure No. 70**
**Stipulation Category: Infirmary Care (08)**

CGAR Category: Infirmary Care (C) 08

| **Performance Measure:**<br><br>All IPC patients have properly working call buttons, and if not, health care staff perform and document thirty (30)-minute patient welfare checks. |
|---|
| **CGAR Question:**<br><br>Do all IPC patients have properly working call buttons, and if not, are health care staff performing and documenting thirty (30)-minute patient welfare checks? |
| **Source of Records/Review:**<br><br>IPC census the day of review |
| **Methodology:**<br>• Each IPC patient will have his or her call light tested on the day of review. Any non-working call light shall result in the performance measure being noncompliant unless a welfare check is documented for the most recent thirty (30)-minute period.<br>• If a call light is identified as working or an inmate with a non-working call light has 30-minute welfare checks documented, for the most recent thirty (30)-minute check, the record is compliant. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618198

**Health Care Performance Measure No. 71**
**Stipulation Category: Medical Diets (01)**

**CGAR Category: Medical Diets (C) 01**

**Performance Measure:**

Inmates with diagnosed and documented diseases or conditions that necessitate a special diet will be provided the diet, if clinically indicated. When prescribing the special diet, the provider will include the type of diet, duration for which it is to be provided, and any special instructions.

**CGAR Question:**

When prescribing the special diet, did the provider include the type of diet, duration for which it is to be provided and any special instructions?

**Source of Records/Review:**

ADC Diet Roster, ~~AIMS~~AIMS / ACISACIS / AIMS Batch report.
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold, Font color: Red

**Methodology:**

- Use the first ten (10) applicable charts from the ADC Diet Roster or Batch Report in ~~AIMS~~AIMS / ACISACIS / AIMS.
- Review the diet order in eOMIS Other Actions/Procedures to determine if the Provider order included the type of diet, duration for which it is to be provided and any special instructions.
- If there is no Special Diet entry in Other Actions/Procedures, look under Scanned Documents to see if a handwritten diet order has been scanned and contains the type of diet, duration for which it is to be provided and any special instructions.
- If any of the information is missing, the chart is noncompliant. If all the information is included, the chart is compliant.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618199

**Health Care Performance Measure No. 72**
**Stipulation Category: Medical Diets (02)**

**CGAR Category: Medical Diets (C) 02**

| **Performance Measure:**<br><br>Inmates who refuse prescribed diets for more than 3 consecutive days will receive follow-up nutritional counseling by a QHCP. |
|---|
| **CGAR Question:**<br><br>Are inmates who refuse prescribed diets for more than 3 consecutive days receiving follow up nutritional counseling by a QHCP? |
| **Source of Records/Review:**<br><br>ADC dietary liaison records; IRs showing noncompliance with Diet, and Signed Diet Roster. |
| **Methodology:**<br><br>• Contact the Food Service Liaison to obtain a record of inmates who refuse their prescribed diets for more than three (3) consecutive days. The refusals must be for all meals for 3 consecutive days (7, 8, or 9 consecutive meals).<br>• Review only those patients on a medical diet for a metabolic disease (e.g. diabetes, heart disease). In general, these are diets that are low in saturated fats, trans fat, cholesterol, and salt -- and high in fruits, vegetables, lean protein, beans, low fat dairy, and whole grains. ~~These diets include Renal Dialysis Diet, Controlled Protein Diet, Chemotherapy Diet, and Protocols for Diabetes, Hypertension, and Cardiac diseases.~~The Allergy Diet and Pregnancy Diet are excluded from review. All other diets are included.<br>• Review the diet signature sheets from the Food Service Liaison or IRs showing noncompliance with diets.<br>• Utilize the first ten (10) inmate charts at each Unit from the Food Service Liaison's records and review eOMIS Health Service Encounters for a nutritional counseling note or Scanned Documents for a refusal form completed by a QHCP indicating that counseling was refused.<br>• If the record has documentation of receiving or refusing counseling within ~~30 days~~one year prior to the first of three consecutive days of diet refusals OR within 14 days after the third day of diet refusals, the record is compliant. If there is no documentation that the inmate received or refused counseling during the year prior to the first of three consecutive days of |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618200

diet refusals OR ~~after more than~~within 14 days after three consecutive days of refusing a medical diet, the record is noncompliant.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 73**
**Stipulation Category: Mental Health (01)**

**CGAR Category: Mental Health (C) 01**

| **Performance Measure:**<br><br>All MH-3 minor prisoners shall be seen by a licensed mental health clinician a minimum of every thirty (30) days.* |
|---|
| **CGAR Question:**<br><br>Are all MH-3 minor prisoners being ***seen*** by a licensed mental health clinician a minimum of every thirty (30) days? |
| **Source of Records/Review:**<br><br>~~AIMS~~AIMS ~~/ ACIS~~ACIS ~~/ AIMS~~ DA14 Batch Report (randomized). |
| **Methodology:**<br><br>• Ten (10) records (if available) will be selected from the randomized report for MH 3 minor inmates at Tucson and Perryville. If the prisoner has been in ADC custody, or has been classified MH-3, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review eOMIS, in the Mental Health tab, for the most recent contact by a licensed clinician. A monthly list of licensed mental health clinicians is obtained from the health services contract vendor.<br>• The last two contacts by a licensed clinician will be reviewed to determine whether the contacts were no more than 30 days apart. If the contacts were 30 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 30 days apart, then it will be coded as noncompliant. If there are no contacts by a licensed clinician, the record will be coded as noncompliant. If there is only one contact by a licensed clinician, the record will be coded as noncompliant, unless that contact is no more than 30 days from both (1) the date the prisoner was admitted to ADC or classified MH-3, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant. |

Formatted: Font: Bold, Italic, Underline

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618202

- A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the date the inmate arrived back at the facility.)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618203

**Health Care Performance Measure No. 74**
**Stipulation Category: Mental Health (02)**

**CGAR Category: Mental Health (C) 02**

| **Performance Measure:**<br><br>All female inmates shall be seen by a licensed mental health clinician within five (5) working days of return from a hospital post-partum. |
|---|
| **CGAR Question:**<br><br>Are all female prisoners being ***seen*** by a licensed mental health clinician within five (5) working days of return from a hospital post-partum? |
| **Source of Records/Review:**<br><br>Inpatient Hospital Report. |
| **Methodology:**<br><br>• If there are more than ten (10) post-partum women during the monitored month, then the inpatient hospital report will be randomized, and up to ten (10) post-partum women will be reviewed. Otherwise, all post-partum women will be reviewed for compliance.<br>• Determine the date the inmate arrived back at the facility by either (1) reviewing the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5), (2) in eOMIS, from the Prison Other tab, clicking on the shortcuts "Population Tracking", and clicking on the link "External Movements, or (3) checking "Return from Offsite" note in eOMIS under Nursing Encounters.<br>• Then review eOMIS, in the Mental Health tab, to determine if the inmate was seen within five (5) business days of arriving back from the hospital.<br>• A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care. |

Formatted: Font: Bold, Italic, Underline

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618204

- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- Then ensure that the contact was completed by a licensed mental health clinician. A monthly list of licensed mental health clinicians is obtained from the health services contract vendor.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618205

**Health Care Performance Measure No. 75**
**Stipulation Category: Mental Health (03)**

**CGAR Category: Mental Health (C) 03**

**Performance Measure:**

A mental health assessment of a prisoner during initial intake shall be completed by mental health staff by the end of the second full day after the prisoner's arrival into ADC.

**CGAR Question:**

Is a mental health assessment of a prisoner during initial intake being completed by a mental health staff by the end of the second full day after the prisoner's arrival into ADC?

**Source of Records/Review:**

Intake Log from Phoenix, Perryville, Tucson-Minors, and Eyman-Condemned Row (randomized).

**Methodology:**

- Ten (10) records (if available) at each of the required reception areas will be reviewed. This review includes parole violators.
- Review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine the date the inmate arrived in ADC custody. (Or inIn eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the date the inmate arrived back at the facility.)
- Then review eOMIS, in the Mental Health tab, to determine if they were seen by a mental health staff member by the end of their second full day. Generally, the contact will be categorized as an "Intake."
- A contact may also be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- Also, record whether the contact was completed by a licensed clinician or by another mental health staff member. A monthly list of licensed mental health clinicians is obtained from the health services contract vendor..

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618206

**Health Care Performance Measure No. 76**
**Stipulation Category: Mental Health (04)**

**CGAR Category: Mental Health (C) 04**

| **Performance Measure:**<br><br>If the initial mental health assessment of a prisoner during initial intake is not performed by licensed mental health staff, the prisoner shall be ***seen*** by a mental health clinician within 14 days of his or her arrival into ADC. |
|---|
| **CGAR Question:**<br><br>If the initial mental health assessment of a prisoner during initial intake is not performed by a licensed mental health staff, are the prisoners being seen by a mental health clinician within 14 days of his or her arrival into ADC? |
| **Source of Records/Review:**<br><br>Review any of the inmates from HC PM #75, including any parole violators, who were seen by the end of the second full day but were not seen by a licensed clinician. |
| **Methodology:**<br><br>• Of the records reviewed in HC PM #75, if any of the initial mental health evaluations were not completed by a licensed mental health clinician, then the record will be re-reviewed in 20 days for compliance with this performance measure. If the initial 14 days for PM #76 extends into the following month, it will be coded as a "0" and automatically placed on the review for the next calendar month.<br>• Review the Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine the date the inmate arrived in ADC custody. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the date the inmate arrived back at the facility.)<br>• Review eOMIS, in the Mental Health tab, to determine if the inmate had an additional contact by a mental health clinician within 14 days of their arrival. A monthly list of mental health clinicians is obtained from the health services contract vendor.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the |

Formatted: Font: Bold, Italic, Underline

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618207

patient's overall care.

- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618208

**Health Care Performance Measure No. 77**
**Stipulation Category: Mental Health (05)**

**CGAR Category: Mental Health (C) 05**

**Performance Measure:**

Mental health treatment plans shall be updated a minimum of every 90 days for MH-3A, MH-4, and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners.

**CGAR Question:**

Are mental health treatment plans being updated a minimum of every 90 days for MH-3A, MH-4 and MH-5 prisoners, and a minimum of every 12 months for all other MH-3 prisoners?

**Source of Records/Review:**

An AIMSAIMS / ACISACIS / AIMS report will be run for all MH-3 and above prisoners at each Complex. 10 records will be reviewed per yard for compliance with the treatment plan time frames.

**Methodology:**

- An AIMSAIMS / ACISACIS / AIMS report will be run for all MH-3 and above prisoners at each Complex. 10 records will be reviewed per yard for compliance with the treatment plan time frames. In the case of a prisoner classified MH-3A, MH-4, or MH-5, if the prisoner has been in ADC custody, or has been classified MH-3A, MH-4, or MH-5, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. In the case of all other MH-3 prisoners, if the prisoner has been in ADC custody, or has been classified MH-3, for less than 12 months, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated their current mental health score and subcategory so that a start date for review can be established.
- Review eOMIS, in the Mental Health tab, for the two most recent treatment plans. Determine whether the two treatment plans were 90 days (or 12 months if applicable) or less apart. If they were more than 90 days (or 12 months if applicable) apart, then the record will be coded as noncompliant. If there are no treatment plans, the record will be coded as noncompliant. **MH-3A, MH-4, and MH-5:** If there is only one treatment plan, the record will be coded as noncompliant, unless that treatment plan is dated no more than 90 days from both (1) the date the prisoner was admitted to ADC or classified MH-3A, MH-4, or MH-5, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant. **All other MH-3:** If there is only one treatment plan, the



record will be coded as noncompliant, unless that treatment plan is dated no more than 12 months from both (1) the date the prisoner was admitted to ADC or classified MH-3, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- For treatment plans required to be updated every 12 months, to be marked compliant, the treatment plan must be updated no later than the same date the following year. For example, a treatment plan updated on December 1 must be updated no later than December 1 the following year in order to be compliant.
- If there is a gap in the treatment plans, review the external Movement Screen in ~~AIMS~~AIMS ~~/ ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618210

**Health Care Performance Measure No. 78**
**Stipulation Category: Mental Health (06)**

**CGAR Category: Mental Health (C) 06**

| **Performance Measure:**<br><br>All mental health treatment plan updates shall be done after a face-to-face clinical encounter between the prisoner and the mental health provider or mental health clinician. |
|---|
| **CGAR Question:**<br><br>Are mental health treatment plans updates being completed after a face-to-face clinical encounter between the prisoner and the mental health provider or mental health clinician? |
| **Source of Records/Review:**<br><br>All records reviewed for ~~HC~~ PM #77 will be reviewed. |
| **Methodology:**<br><br>• All records reviewed for ~~HC~~ PM #77 will be reviewed for this measure to determine if a face-to-face note by a mental health provider or mental health clinician was completed the same date the most recent treatment plan was updated.<br>• A face-to-face contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), individual note, treatment plan, scheduled sick call, unscheduled sick call, scheduled psychiatry, unscheduled psychiatry, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• Review eOMIS, in the Mental Health tab, to see if there is both a treatment plan and contact completed on the same day. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618211

**Health Care Performance Measure No. 79**
**Stipulation Category: Mental Health (07)**

CGAR Category: Mental Health (C) 07

| **Performance Measure:**<br><br>If a prisoner's mental health treatment plan includes psychotropic medication, the mental health provider shall indicate in each progress note that he or she has reviewed the treatment plan.<br>This performance measure is not subject to court reporting. |
|---|
| **CGAR Question:**<br><br>If a prisoner's mental health treatment plan includes psychotropic medication, is the mental health provider indicating in each progress note that he or she has reviewed the treatment plan? |
| **Source of Records/Review:**<br><br>All records reviewed for ~~HC~~ PM #81, 83, 84, 88, and 90. |
| **Methodology:**<br><br>• All records reviewed for ~~HC~~ PM # 81, 83, 84, 88, and 90 will be reviewed for the provider indicating that they reviewed the treatment plan.<br>• Review eOMIS, in the Mental Health tab, to determine if the psychiatric provider indicated that the treatment plan was reviewed during their most recent contact.<br>• A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.<br>• If there is no treatment plan for them to review, this performance measure will be recorded as not applicable "N/A" and coded with a 0.<br>• If the Provider documents that the treatment plan has been reviewed, and no treatment plan is available in the EHR, the measure will be coded as noncompliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618212

**Health Care Performance Measure No. 80**
**Stipulation Category: Mental Health (08)**

**CGAR Category: Mental Health (C) 08**

| **Performance Measure:** MH-3A prisoners shall be seen a minimum of every 30 days by a mental health clinician. |
|---|
| **CGAR Question:** Are MH-3A prisoners seen a minimum of every 30 days by a mental health clinician? |
| **Source of Records/Review:** AIMSAIMS / ACISACIS / AIMS DA14 Batch Report (randomized). |

**Methodology:**

- Ten (10) records (if available) will be selected for review at each yard. If the prisoner has been in ADC custody, or has been classified MH-3A, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 3A so that a start date for review can be established.
- Review eOMIS, in the Mental Health tab, for the most recent contact by a clinician. A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- The last two contacts by a clinician will be reviewed to determine whether the contacts were no more than 30 days apart. If the contacts were 30 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 30 days apart, then it will be coded as noncompliant. If there are no contacts by a clinician, the record will be coded as noncompliant. If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 30 days from both (1) the date the prisoner was admitted to ADC or classified MH-3A, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.
- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum

Formatted: Font:

Formatted: Font:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618213

length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.

- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618214

Formatted: Left

**Health Care Performance Measure No. 81**
**Stipulation Category: Mental Health (09)**

**CGAR Category: Mental Health (C) 09**

| **Performance Measure:**<br><br>MH3-A prisoners who are prescribed psychotropic medications shall be seen a minimum of every 90 days by a mental health provider. |
|---|
| **CGAR Question:**<br><br>Are MH-3A prisoners who are prescribed psychotropic medications seen a minimum of every 90 days by a mental health provider? |
| **Source of Records/Review:**<br><br>Review the records for the same inmates reviewed for HC PM #80 if they are currently on psychotropic medications. |
| **Methodology:**<br><br>• The records reviewed for HC PM #80 will also be reviewed for compliance if they are on medications. If the prisoner has been in ADC custody, or has been classified MH-3A, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 3A so that a start date for review can be established.<br>• Review eOMIS, in the Mental Health tab, for the most recent psychiatry contact. A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• The last two psychiatry contacts will be reviewed to determine whether the contacts were no |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

more than 90 days apart. If the contacts were 90 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 90 days apart, then it will be coded as noncompliant. If there are no contacts by a provider, the record will be coded as noncompliant. If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or classified MH-3A, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).
- If the inmate is not currently on medication, then "N/A" is recorded and compliance is coded with a 0.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 82**
**Stipulation Category: Mental Health (10)**

**CGAR Category: Mental Health (C) 10**

| **Performance Measure:**<br><br>MH-3B prisoners shall be seen a minimum of every 90 days by a mental health clinician. |
|---|
| **CGAR Question:**<br><br>Are MH-3B prisoners being seen a minimum of every 90 days by a mental health clinician? |
| **Source of Records/Review:**<br><br>~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS DA14 Batch~~ Report (randomized). |
| **Methodology:**<br>• Ten (10) records (if available) will be selected for review at each yard. If the prisoner has been in ADC custody, or has been classified MH-3B, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 3B so that a start date can be established.<br>• Review eOMIS, in the Mental Health tab, for the most recent contact by a clinician. A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• The last two contacts by a clinician will be reviewed to determine whether the contacts were no more than 90 days apart. If the contacts were 90 days or less apart, then the date of both |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618217

contacts will be recorded, and it will be coded as compliant. If they are more than 90 days apart, then it will be coded as noncompliant. If there are no contacts by a clinician, the record will be coded as noncompliant. If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or classified MH-3B, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618218

**Health Care Performance Measure No. 83**
**Stipulation Category: Mental Health (11)**

**CGAR Category: Mental Health (C) 11**

**Performance Measure:**

MH-3B prisoners who are prescribed psychotropic medications shall be seen a minimum of every 180 days by a mental health provider. MH-3B prisoners who are prescribed psychotropic medications for psychotic disorders, bipolar disorder, or major depression shall be seen by a mental health provider a minimum of every 90 days.

**CGAR Question:**

Are MH-3B prisoners who are prescribed psychotropic medications seen a minimum of every 180 days by a mental health provider? Are MH-3B prisoners who are prescribed psychotropic medications for psychotic disorders, bipolar disorder, or major depression seen a minimum of every 90 days?

**Source of Records/Review:**

The same inmates reviewed for ~~HC~~ PM #82, if they are currently on psychotropic medications.

**Methodology:**

- The records reviewed for HC PM #82 will also be reviewed for compliance if they are on medications. If the prisoner has been in ADC custody, or has been classified MH-3B, for less than 180 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review ~~AIMS~~AIMS ~~/ ACIS~~ACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 3B so that a start date for review can be established.
- A mental health provider[1] contact may be documented under a variety of mental health encounter types, including, for example, to the following: "MH – Initial Psychiatric Evaluation", "MH – Nurse Practitioner – Scheduled", "MH – Nurse Practitioner – Unscheduled", "MH – Psychiatrist – Scheduled", "MH – Psychiatrist – Unscheduled".

[1] Psychiatrist or Psychiatry Nurse Practitioner. (Dkt. 1185-1 at 4.)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- Determining the Prevailing Diagnosis: First look at the most recent psychiatry contact that did not occur in the monitored month. Check the SOAPE note for a diagnosis. If there is not one, then look in the Treatment Plan that was in place at the time of the most recent psychiatry contact. If there is not one, then look in the problem list and find the mental health diagnosis that was identified just before the most recent psychiatry contact that did not occur in the monitored month. If there is no diagnosis, then the default is 90 days.
- Recording the Prevailing Diagnosis: If there is more than one diagnosis listed in the document used for the prevailing diagnosis, then all diagnoses from that specific date are reviewed. First record an "N" if the diagnoses is not one of those listed in the PM or a "Y" if it is listed. Then record the ICD 10 code of the diagnosis. Finally, record the date associated with the prevailing diagnosis.
- The last two contacts by a mental health provider will be reviewed to determine whether the contacts were no more than 90 days (or 180 days if applicable) apart. If the contacts were 90 days or less (or 180 days if applicable) apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 90 days (or 180 days if applicable) apart, then it will be coded as noncompliant. If there are no contacts by a provider, the record will be coded as noncompliant. **MH-3B prisoners prescribed medications for the enumerated conditions:** If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or classified MH-3B, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant. **All other MH-3B prisoners prescribed medications:** If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 180 days from both (1) the date the prisoner was admitted to ADC or classified MH-3B, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618220

**Health Care Performance Measure No. 84**
**Stipulation Category: Mental Health (12)**

**CGAR Category: Mental Health (C) 12**

| **Performance Measure:**<br><br>MH-3C prisoners shall be seen a minimum of every 180 days by a mental health provider. |
|---|
| **CGAR Question:**<br><br>Are MH-3C prisoners seen a minimum of every 180 days by a mental health provider? |
| **Source of Records/Review:**<br><br>~~AIMS~~AIMS / ~~ACIS~~ACIS / ~~AIMS DA14 Batch~~ Report (randomized). |
| **Methodology:**<br><br>• Ten (10) records (if available) will be selected for review at each yard. If the prisoner has been in ADC custody, or has been classified MH-3C, for less than 180 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review ~~AIMS~~AIMS / ~~ACIS~~ACIS / ~~AIMS (DI85 screen)~~ to determine when the inmate was designated MH 3C so that a start date for review can be established.<br>• Review eOMIS, in the Mental Health tab, for the two most recent contact by a psychiatric provider. A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• The last two contacts by a mental health provider will be reviewed to determine whether the contacts were no more than 180 days apart. If the contacts were 180 days or less apart, then |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618221

the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 180 days apart, then it will be coded as noncompliant. If there are no contacts by a provider, the record will be coded as noncompliant. If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 180 days from both (1) the date the prisoner was admitted to ADC or classified MH-3C, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Other~~Prison~~ tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).







CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618222

**Health Care Performance Measure No. 85**
**Stipulation Category: Mental Health (13)**

**CGAR Category: Mental Health (C) 13**

| **Performance Measure:**<br><br>MH-3D prisoners shall be seen by a mental health provider within 30 days of discontinuing medications. |
|---|
| **CGAR Question:**<br><br>Are MH-3D prisoners seen by a mental health provider within 30 days of discontinuing medications? |
| **Source of Records/Review:**<br><br>MH 3D Log (Randomized) |
| **Methodology:**<br><br>• A random sample of 10 records is drawn from all MH-3D inmates at each yard. If any of the inmates discontinued medications less than 30 days previously, that record is excluded and another record is randomly drawn. This process is repeated until a total of ten records (if available) have been drawn.<br>• Review ~~AIMS~~AIMS ~~/ ACIS~~ACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 3D.<br>• Review eOMIS, in the Mental Health tab, for the contact by the psychiatric provider that officially discontinued the medications. A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc. Also look under Drug Prescription Orders to confirm the date that the medications were officially discontinued. This date is recorded on the spreadsheet.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618223

appropriate in the context of the patient's overall care.

- Review the medication discontinuation date and the subsequent follow-up date to ensure that the two contacts were no more than 30 days apart. If they were 30 days or less apart, then it is coded as compliant. If they were more than 30 days apart, then it is coded as noncompliant.
- If no follow-up contact occurred but should have, then it is coded as noncompliant.
- If the medications were discontinued after February 2015, and the subsequent contact still has not occurred, then it is coded as noncompliant.
- If the inmate has not been on medications during this incarceration, then this record will not be used, as this is an incorrect sub-code. If this occurs, another record will be randomly drawn to replace the excluded record.
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS / AIMS ~~(DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618224

**Health Care Performance Measure No. 86**
**Stipulation Category: Mental Health (14)**

**CGAR Category: Mental Health (C) 14**

**Performance Measure:**

MH-3D prisoners shall be seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication.

**CGAR Question:**

Are MH-3D prisoners seen a minimum of every 90 days by a mental health clinician for a minimum of six months after discontinuing medication?

**Source of Records/Review:**

All patients who were listed as being MH-3D ("have been recently taken off of psychotropic medications and require follow up to ensure stability over time.") during the monitored month. ~~Review the records for the same inmates reviewed for HC PM #85, and review additional records from the MH 3D Log (randomized) if there were not ten (10) records to review from HC PM #85.~~

**Methodology:**

- Exclude all patients **except** those whose date of stoppage or date of a previous visit with a mental health clinician was during the third month prior to the monitored month. For example, if July is the monitored month, use a date of stoppage or previous visit that occurred in April.
- If the provider instructed the patient to taper the medication rather than stop it abruptly, the date of stoppage is the last date the patient took the medication. If the patient stopped the medication some time earlier on his/her own, the date of stoppage is the date of the visit with the provider when the provider acknowledges and agrees with the stoppage.
- Select the first 15 patients in each yard. ~~All of the records from HC PM #85 will be reviewed for this PM. If ten (10) records were not located for PM #85, then the required number of records will be reviewed from the MH 3D Log for this PM.~~
- If the patient moved from one yard or facility to another during the month, the case should be audited under the yard where the patient resides at the end of July, the day the Source

Formatted: Font: Bold





DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618225

Document is produced.

- Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 3D.
- Review eOMIS to determine the medication discontinuation date.
- The monitor should test: Was the patient currently safe during the entirety of this month? If so, the case is Compliant. In other words, phrased in the negative: Was there any day during the month when the patient was still within six months of discontinuation of a psychotropic medication but had gone more than 90 days without seeing a mental health clinician?
- From the medication discontinuation date, look to see if there was a contact by a clinician within 90 days of that first date. If this first contact was completed in 90 days or less from the medication discontinuation date, then it is coded as compliant. If this contact was more than 90 days after the medication discontinuation date, then it is coded as noncompliant.
- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- If the first follow-up contact was not yet due in the monitored month, then "N/A" is recorded and it is coded with a 0.
- If a second follow-up contact is due during or before the monitored month, then the record is also reviewed to determine if this contact was completed within 90 days or less from the first follow-up contact. If it was completed within 90 days or less, then the record is coded as compliant. If it was completed more than 90 days from the first follow-up contact date, then the record is coded as noncompliant.
- A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618226

**Health Care Performance Measure No. 87**
**Stipulation Category: Mental Health (15)**

**CGAR Category: Mental Health (C) 15**

**Performance Measure:**

MH-4 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every 30 days.

**CGAR Question:**

Are MH-4 prisoners seen by a mental health clinician for a 1:1 session a minimum of every 30 days?

**Source of Records/Review:**

AIMSAIMS / ACISACIS / AIMS DA14 Batch Report (randomized).

**Methodology:**

- Ten (10) records (if available) per yard will be selected for review at each residential program for complexes that have more than one applicable yard. For complexes that have only one applicable yard, twenty records (if available) will be selected for review. If the prisoner has been in ADC custody, or has been classified MH-4, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 4 so that a start date for review can be established.
- Review eOMIS, in the Mental Health tab, for the most recent contact by a clinician. A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618227



context of the patient's overall care.

- The last two contacts by a clinician will be reviewed to determine whether the contacts were no more than 30 days apart. If the contacts were 30 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 30 days apart, then it will be coded as noncompliant. If there are no contacts by a clinician, the record will be coded as noncompliant. If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 30 days from both (1) the date the prisoner was admitted to ADC or classified MH-4, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618228

**Health Care Performance Measure No. 88**
**Stipulation Category: Mental Health (16)**

**CGAR Category: Mental Health (C) 16**

| **Performance Measure:**<br><br>MH-4 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 90 days. |
|---|
| **CGAR Question:**<br><br>Are MH-4 prisoners who are prescribed psychotropic medications being seen by a mental health provider a minimum of every 90 days? |
| **Source of Records/Review:**<br><br>The same inmates reviewed for HC PM #87 and are currently on psychotropic medications. |
| **Methodology:**<br><br>• The same records from HC PM #87 will be reviewed for this PM. If the prisoner has been in ADC custody, or has been classified MH-4, for less than 90 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 4 so that a start date for review can be established..<br>• Review eOMIS, in the Mental Health tab, for the most recent psychiatry contact. A psychiatric contact may be documented in multiple electronic entries, including, but not limited to: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• The last two contacts by a mental health provider will be reviewed to determine whether the contacts were no more than 90 days apart. If the contacts were 90 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618229



more than 90 days apart, then it will be coded as noncompliant. If there are no contacts by a provider, the record will be coded as noncompliant. If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 90 days from both (1) the date the prisoner was admitted to ADC or classified MH-4, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If the inmate is not on medications, then "N/A" is recorded and it is coded with a 0.
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

**Health Care Performance Measure No. 89**
**Stipulation Category: Mental Health (17)**

**CGAR Category: Mental Health (C) 17**

**Performance Measure:**

MH-5 prisoners shall be seen by a mental health clinician for a 1:1 session a minimum of every seven (7) days.

**CGAR Question:**

Are MH-5 prisoners seen by a mental health clinician for a 1:1 session a minimum of every seven (7) days?

**Source of Records/Review:**

~~AIMS~~AIMS / ACISACIS ~~/ AIMS DA14 Batch~~ Report (randomized).

**Methodology:**

- Ten (10) records (if available) will be selected for review at each unit with an inpatient program. If the prisoner has been in ADC custody, or has been classified MH-5, for less than seven days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review ~~AIMS~~AIMS / ACISACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 5 so that a start date for review can be established.
- Review eOMIS, in the Mental Health tab, for the contacts by a clinician. A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- To be coded as compliant, there needs to be a 1:1 clinical contact for every week (Sunday through Saturday), with none of them being more than seven (7) days later than the one

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618231

before.

- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4). If any of the required contacts are more than seven days apart, then the record will be coded as noncompliant. If there are no contacts, the record will be coded as noncompliant.
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618232

**Health Care Performance Measure No. 90**
**Stipulation Category: Mental Health (18)**

**CGAR Category: Mental Health (C) 18**

| **Performance Measure:**<br><br>MH-5 prisoners who are prescribed psychotropic medications shall be seen by a mental health provider a minimum of every 30 days. |
| --- |
| **CGAR Question:**<br><br>Are MH-5 prisoners who are prescribed psychotropic medications seen by a mental health provider a minimum of every 30 days? |
| **Source of Records/Review:**<br><br>The same inmates reviewed for HC PM #89 who are currently taking psychotropic medications. |
| **Methodology:**<br><br>• The records reviewed for HC PM #89 will be reviewed for this PM. If the prisoner has been in ADC custody, or has been classified MH-5, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.<br>• Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 5 so that a start date for review can be established.<br>• Review eOMIS, in the Mental Health tab, for the most recent psychiatry contact. A psychiatric contact may be documented in various locations in eOMIS including, but not limited to, the following: scheduled psychiatry, unscheduled psychiatry, initial psychiatric evaluation, etc.<br>• For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.<br>• The last two contacts by a mental health provider will be reviewed to determine whether the contacts were no more than 30 days apart. If the contacts were 30 days or less apart, then |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618233

the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 30 days apart, then it will be coded as noncompliant. If there are no contacts by a provider, the record will be coded as noncompliant. If there is only one contact by a provider, the record will be coded as noncompliant, unless that contact is no more than 30 days from both (1) the date the prisoner was admitted to ADC or classified MH-5, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If the inmate is not currently on medications, then "N/A" is recorded and it is coded with a 0.
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618234

**Health Care Performance Measure No. 91**
**Stipulation Category: Mental Health (19)**

**CGAR Category: Mental Health (C) 19**

| **Performance Measure:**<br><br>MH-5 prisoners who are actively psychotic or actively suicidal shall be seen by a mental health clinician or mental health provider daily. |
|---|
| **CGAR Question:**<br><br>Are MH-5 prisoners who are actively psychotic or actively suicidal seen by a mental health clinician or mental health provider daily? |
| **Source of Records/Review:**<br><br>All MH-5 inmates who were on a continuous watch during the monitored month. |
| **Methodology:**<br><br>• Review all MH-5 inmates who were on a continuous watch during the monitored month.<br>• Review ~~AIMS~~AIMS ~~/ ACIS~~ACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 5.<br>• Review eOMIS, in the Mental Health tab, and determine whether there is a clinical note by a clinician or provider for every day that the inmate was determined to be actively psychotic or suicidal on a continuous watch.<br>• A contact may be documented in various locations in eOMIS, including the following locations: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, scheduled psychiatry, unscheduled psychiatry, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.<br>• For the purpose of this performance measure a contact must be a minimum of ten (10) minutes in length, UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br>• Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618235



appropriate in the context of the patient's overall care.

- If the inmate is not on a continuous watch any day during the month, then "N/A" will be recorded and it will be coded with a 0.
- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4). If any of the required contacts for each record are not in compliance, then the record will be coded as noncompliant.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618236

**Health Care Performance Measure No. 92**
**Stipulation Category: Mental Health (20)**

**CGAR Category: Mental Health (C) 20**

**Performance Measure:**

MH-3 and above prisoners who are housed in maximum custody shall be seen by a mental health clinician for a 1:1 or group session a minimum of every 30 days.

**CGAR Question:**

Are MH-3 and above prisoners who are housed in a maximum custody seen by a mental health clinician for a 1:1 or group session a minimum of every 30 days?

**Source of Records/Review:**

~~AIMS~~AIMS / ACISACIS ~~/ AIMS DA14 Batch~~ Report (randomized).

**Methodology:**

- The first ten (10) records (if available) will be selected for review at each maximum custody unit at complexes that have more than one applicable yard. For complexes that have only one applicable yard, twenty records (if available) will be selected for review. If the prisoner has been housed in maximum custody, or has been classified MH-3 or above, for less than 30 days, that record is excluded from the sample and another record is randomly drawn. This process is repeated until a total of ten records have been drawn.
- Review ~~AIMS~~AIMS / ACISACIS ~~/ AIMS (DI85 screen)~~ to determine when the inmate was designated MH 3 or higher so that a start date for review can be established. Additionally, the external Movement Screen in ~~AIMS~~AIMS / ACISACIS ~~/ AIMS~~ will be reviewed to determine the date the inmate arrived to the maximum custody unit.
- Review eOMIS, in the Mental Health tab, for the most recent contact by a clinician. A contact may be documented in multiple electronic entries, including, but not limited to: individual contact, segregation visit (refusal or lockdown), group note, treatment plan, scheduled sick call, unscheduled sick call, suicide watch (refusal, lockdown, or conducted in confidential setting), etc.
- The last two contacts by a clinician will be reviewed to determine whether the contacts were no more than 30 days apart. If the contacts were 30 days or less apart, then the date of both contacts will be recorded, and it will be coded as compliant. If they are more than 30 days apart, then it will be coded as noncompliant. If there are no contacts by a clinician, the record will be coded as noncompliant. If there is only one contact by a clinician, the record will be coded as noncompliant, unless that contact is no more than 30 days from

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618237



both (1) the date the prisoner was moved to maximum custody or classified MH-3 or above, whichever is later, and (2) the last day of the monitored month. If both of these conditions are met, the record will be coded as "0" and not counted as either compliant or noncompliant.

- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS ~~/ AIMS (DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement.)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618238

**Health Care Performance Measure No. 93**
**Stipulation Category: Mental Health (21)**

**CGAR Category: Mental Health (C) 21**

**Performance Measure:**

Mental health staff (not to include LPNs) shall make weekly rounds on all MH-3 and above prisoners who are housed in maximum custody.

**CGAR Question:**

Are mental health staff (not to include LPNs) making weekly rounds of all MH-3 and above prisoners who are housed in maximum custody?

**Source of Records/Review:**

The records for the same inmates reviewed for HC PM #92.

**Methodology:**

- Review the same records from HC PM #92 for compliance with this PM.
- Review ~~AIMS~~~~AIMS / ACIS~~ACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 3 or higher so that a start date for review can be established. Additionally, the external Movement Screen in ~~AIMS~~~~AIMS / ACIS~~ACIS ~~/ AIMS~~ will be reviewed to determine the date the inmate arrived to the maximum custody unit.
- Review eOMIS, in the Mental Health tab, for all of the rounds completed by the appropriate mental health staff, not to include LPNs.
- In order to be compliant, there needs to be one contact for each calendar week (Sunday-Saturday) for every full week that the inmate was in maximum custody. A contact may be documented in various locations in eOMIS, including the following locations: segregation visit or health and welfare visit.
- Record the total number of rounds that are in compliance and the total number of rounds that should have occurred (e.g., 2 out of 3, 4 out of 4). If any of the required rounds for each record are not in compliance, then the record will be coded as noncompliant.
- If there is a gap in rounds, review the external Movement Screen in ~~AIMS~~~~AIMS / ACIS~~ACIS ~~/ AIMS~~ ~~(DI24, Shift + F5)~~ to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the ~~Prison~~ Other tab, ~~click on the shortcuts "Population Tracking", and~~ click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

**Health Care Performance Measure No. 94**
**Stipulation Category: Mental Health (22)**

**CGAR Category: Mental Health (C) 22**

**Performance Measure:**

All prisoners on a suicide or mental health watch shall be seen daily by a licensed mental health clinician or, on weekends or holidays, by a registered nurse.

**CGAR Question:**

Are all prisoners who are on a suicide watch or mental health watch seen daily by a licensed mental health clinician or, on weekends or holidays by a registered nurse?

**Source of Records/Review:**

Suicide Watch Log (randomized).

**Methodology:**

- The monitors will review the following number of individual inmate charts (if available): 35 at Eyman, 25 each at Tucson and Lewis, 15 each at Florence, Yuma, Phoenix, and Perryville, and 10 each at Douglas, Safford, and Winslow. If the watch population changes significantly at a complex, the number of charts monitored for that complex for this measure may be changed with 30 days' notice to Plaintiffs, accompanied by an explanation of the reason for the change.
- Review eOMIS under the Nursing Favorites tab for the required clinical note(s) documenting interaction by a licensed clinician (or RN on a weekend or holiday) for every day that an inmate was on watch during the monitored month. A contact note may be found in various locations in eOMIS, including, but not limited to, the following locations: individual contact, segregation visit (refusal or lockdown), treatment plan (with a clinical contact), scheduled sick call, unscheduled sick call, and suicide watch (refusal, lockdown, or conducted in confidential setting).
- For the purpose of this performance measure, a contact must be a minimum of tem (10) minutes in length, -UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care.
- Also, verify that the contacts completed during normal business days were completed by a licensed clinician. A monthly list of licensed mental health clinicians will be provided

DRAFT

by the contract vendor.

- The date the inmate was placed on watch will be recorded. The date the inmate was discontinued from watch will be recorded (or "N/A" if the inmate is on watch beyond the last day of the monitored month).
- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4). If any of the required contacts for each record are not in compliance, then the record will be coded as noncompliant.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618241

**Health Care Performance Measure No. 95**
**Stipulation Category: Mental Health (23)**

**CGAR Category: Mental Health (C) 23**

| **Performance Measure:**<br><br>Only licensed mental health staff may remove a prisoner from a suicide or mental health watch. Any prisoner discontinued from a suicide or mental health watch shall be seen by a mental health provider, mental health clinician, or psychiatric registered nurse between 24 and 72 hours after discontinuation, between seven (7) and ten (10) days after discontinuation, and between 21 and 24 days after discontinuation of the watch. |
|---|
| **CGAR Question:**<br><br>Are inmates that are removed from a suicide or mental health watch being removed by a licensed mental health staff? Are any prisoners that were discontinued from a suicide or mental health watch seen by a mental health provider, mental health clinician, or a psychiatric registered nurse between 24 and 72 hours after discontinuation, and between seven (7) and ten (10) days, and between 21 and 24 days after discontinuation of the watch? |
| **Source of Records/Review:**<br><br>Suicide Watch Log (randomized). |
| **Methodology:**<br><br>• Review a minimum of 20 individual inmate records (if available) per complex.<br>• Review eOMIS under the Mental Health tab for the required watch follow-up note(s). A watch follow-up note may be found in a variety of locations in eOMIS, including, but not limited to, the following locations: individual contact, segregation visit (refusal or lockdown), treatment plan, scheduled sick call, unscheduled sick call, scheduled psychiatry, unscheduled psychiatry, and initial psychiatric evaluation.<br>• Record the date the watch was discontinued. Determine whether the watch follow-up note(s) occurred during the required time frame for any inmate who should have had a watch follow-up contact during the monitored month.<br>• Verify that the clinician, who discontinued the watch (during the monitored month), was a licensed clinician. A monthly list of licensed mental health clinicians will be provided by the contract vendor. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618242

- Verify that each watch follow up contact was completed by a mental health provider, mental health clinician, or psychiatric registered nurse. A monthly list of all mental health staff will be provided by the Contacted Vendor.
- For the purpose of this performance measure, a contact must be a minimum of ten (10) minutes in length, UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.
- Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care..
- Record the dates of the watch follow-up contacts. If the follow up was not due during the monitored month, then "N/A" will be recorded.
- If the inmate was not at the monitored complex when he/she was removed from watch and when all three of the post-watch follow-up contacts were due, the record will be excluded, and another record will be randomly drawn. If an inmate goes back on watch any time prior to the expiration of the third post-watch follow-up (due between 21 and 24 days after removal from watch), the record will be excluded, and another record will be drawn.
- Record the total number of contacts that are in compliance and the total number of contacts that should have occurred (e.g., 2 out of 3, 4 out of 4). If any of the required contacts for each record are not in compliance, then the record will be coded as noncompliant.
- If there is a gap in contacts, review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618243

**Health Care Performance Measure No. 96**
**Stipulation Category: Mental Health (24)**

**CGAR Category: Mental Health (C) 24**

| **Performance Measure:**<br><br>A reentry/discharge plan shall be established no later than 30 days prior to release from ADC for all prisoners who are MH-3 or above.<br>**This performance measure is not subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are reentry/discharge plans established no later than 30 days prior to release from ADC for all prisoners who are MH-3 or above? |
| **Source of Records/Review:**<br><br>DA04 AIMSAIMS / ACISACIS / AIMS Batch Report at each Complex. |
| **Methodology:**<br>• Ten (10) records (if available) per yard of prisoners releasing in the next 30 days will be reviewed.<br>• Review AIMSAIMS / ACISACIS / AIMS (DI85 screen) to determine when the inmate was designated MH 3 or higher so that a start date for review can be established.<br>• Review eOMIS, in the Mental Health tab, for prior release plans. The release plan will be coded compliant if it was done 30 days or more before the inmate's release date. If there is no release plan or if the release plan is dated less than 30 days before the inmate's release date, then it will be coded as noncompliant. The date the release plan was completed and the date of the inmate's release will both be recorded.<br>• Review the external Movement Screen in AIMSAIMS / ACISACIS / AIMS (DI24, Shift + F5) to determine whether the inmate was a new intake, out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison Other tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).<br>• If the inmate was incarcerated for less than 30 days or on the mental health caseload for less than 30 days from the anticipated release date, then "N/A" will be recorded and it will be coded with a 0. |

Formatted: Font: Bold

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618244

**Health Care Performance Measure No. 97**
**Stipulation Category: Mental Health (25)**

**CGAR Category: Mental Health (C) 25**

| **Performance Measure:**<br><br>A mental health provider treating a prisoner via telepsychiatry shall be provided, in advance of the telepsychiatry session, the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider. |
|---|
| **CGAR Question:**<br><br>Are mental health providers treating a prisoner via telepsychiatry, provided (in advance of the telepsychiatry session), the prisoner's intake assessment, most recent mental health treatment plan, laboratory reports (if applicable), physician orders, problem list, and progress notes from the prisoner's two most recent contacts with a mental health provider? |
| **Source of Records/Review:**<br>Telepsychiatry Logs (randomized). |
| **Methodology:**<br><br>• Ten (10) individual inmate records (if available) from each yard utilizing telepsychiatry will be reviewed for compliance with this performance measure.<br>• Review eOMIS, in the Mental Health tab, for any non-clinical contact note which contains the required documents needing to be scanned in and indicates where the rest of the documents can be located.<br>• Then, verify that each required document was either already in eOMIS or was scanned in for the provider to review prior to the appointment with the provider. The initial psychiatric evaluation can be reviewed instead of a MH Intake if one is available prior to the date of the telepsychiatry appointment.<br>• The paper file will also be reviewed (if necessary) for any missing required documentation to ascertain whether the document exists or not.<br>• If the required document does not exist (psychiatry notes, labs, etc.), then that document is marked as "N/A". This performance measure is determined to be compliant if available Medical Records were made available to the Psychiatric Provider. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618245

**Health Care Performance Measure No. 98**
**Stipulation Category: Mental Health (26)**

**CGAR Category: Mental Health (C) 26**

| **Performance Measure:**<br><br>Mental health HNRs shall be responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0. |
|---|
| **CGAR Question:**<br><br>Are mental health HNRs being responded to within the timeframes set forth in the Mental Health Technical Manual (MHTM) (rev. 4/18/14), Chapter 2, Section 5.0? |
| **Source of Records/Review:**<br><br>~~HNR~~ HSR/MH Encounter Log (randomized). |
| **Methodology:**<br><br>• Review ten (10) records (if available) from each yard for compliance with this performance measure.<br>• If the HNR is determined to be an emergent mental health issue, then review Health Service encounters in the Nursing tab, to determine if the inmate was seen immediately by nursing staff or a mental health clinician/provider upon receipt of the HNR.<br>• If the HNR is determined to be an urgent medication issue, then review Health Service encounters in the Nursing tab, to determine if the inmate was seen by nursing staff or a mental health clinician/provider within 24 hours after the triage of the HNR.<br>• If the HNR is determined to be an urgent non-medication issue describing serious mental health symptoms, then review Heath Service encounters under the Nursing tab, to determine if the inmate was seen by either nursing or mental health staff within 24 hours after the receipt of the HNR.<br>• If the HNR is related to routine non-medication issues, then determine if the inmate was seen or responded to by appropriate mental health staff with a specific plan within five (5) business days of the date nursing triaged the HNR. Review any response notes on the Mental Health HNRs in Scanned Documents. If there are no response on the HNR, then review Health Service encounters in the Nursing tab, to determine if the inmate was seen within five (5) business days of the HNR triage date. These encounters may be |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

found in a variety of locations in eOMIS, including, but not limited to: individual contact, segregation visit (refusal or lockdown), treatment plan, scheduled sick call, unscheduled sick call, or suicide watch (refusal, lockdown, or conducted in confidential setting).

- Inmates with routine medication issues will be referred to a psychiatric provider, and seen within 14 days. To determine whether or not there is a medication issue, the inmate may need to be seen by nursing or mental health staff. This contact must occur within five (5) business days. Review any written response in section IV on the HNR to determine if there was a direct referral to a Psychiatric provider. If the inmate was seen by nursing or mental health staff, then review the encounter documentation to determine whether the inmate was referred to a psychiatric provider.
- For inmates who are referred to a psychiatric provider for routine medication issues, then determine whether the inmate was seen by a psychiatric provider within 14 calendar days from the date of the referral.
- The following will be recorded (when applicable): type of HNR (E/U/R), type of issue (Medication/Non-medication), date of receipt, date of triage, date of response, date of required contact(s), and referral/no referral. For HNRs determined to be an emergency mental health issue or an urgent non-medication issue, also record the time of receipt and the time of any required contact(s). For HNRs determined to be an urgent medication issue, also record the time of triage and the time of any required contact(s).
- If there is a gap in contacts, review the external Movement Screen in ~~AIMS~~AIMS / ~~ACIS~~ACIS / AIMS ~~(DI24, Shift + F5)~~ to determine whether the inmate was out to court, out to hospital, or otherwise out of the facility. (Or in eOMIS, from the Prison tab, click on the shortcuts "Population Tracking", and click on the link "External Movements" to view the inmate's movement).

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618247

**Health Care Performance Measure No. 99**
**Stipulation Category: Mental Health (27)**

**CGAR Category: Mental Health (C) 27**

**Performance Measure:**

Peer reviews shall be conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0.
**This performance measure is not subject to court reporting.**

Formatted: Font: Bold

**CGAR Question:**

Are peer reviews being conducted as set forth in the MHTM (rev. 4/18/14), Chapter 1, Section 3.0?

**Source of Records/Review:**

Peer Review Report.

**Methodology:**

- Sort and separate the report by Complex.
- Sort each Complex by hire date. Providers/clinicians employed less than one year are exempt from review.
- For peer reviews completed in the monitored month, review each provider's/clinician's hire date compared to their completed annual peer review date to ensure that no more than one year has elapsed. If the peer review was completed more than one year after the previous review, then this provider/clinician will be coded as noncompliant.
- For all peer reviews completed in any month other than the audit month, the review needs to have been completed no more than 12 months from the last day of the monitored month.
- The review includes prn and locum tenens providers/clinicians, who are eligible for review if employed for at least one year.

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618248

**Health Care Performance Measure No. 100**
**Stipulation Category: Dental (01)**

**CGAR Category: Dental (C) 01**

**Performance Measure:**

Prisoners on the routine dental care list will not be removed from the list if they are seen for urgent care or pain appointments that do not resolve their routine care issues or needs.

**CGAR Question:**

Are prisoners who are on the routine dental care list not being removed (staying on the list) if they are seen for urgent care or pain appointments that do not resolve their routine care issues or needs?

**Source of Records/Review:**

- Urgent and Routine-~~Alpa~~Alpha Logs

**Methodology:**

- From the randomized Urgent Care Log identify patients at each unit who have been seen for a dental urgent care or pain appointment during the audited month.
- From the Routine Alpha Log, look for the name and ADC number of ~~those~~ patients who ~~were identified as having~~had a routine care appointment scheduled ~~in the~~within 90 days prior to the first day of the monitored month and were seen for a dental urgent care or pain appointment during the audited month.
- Identify the first ten (10) records of inmates who were BOTH seen for a dental urgent care or pain appointment during the audited month AND submitted an HNR to be seen for a routine dental care appointment in the 90 days prior to the urgent care appointment.
- For each patient who appears on Routine Alpha Log and was seen for an urgent care or pain dental appointment, look under the "Appointments" tab in eOMIS to determine if the patient was seen for the routine care appointment or remains on the routine care list.
- If there is a routine care dental appointment with a status of "completed," review the "Encounters" tab to determine if the routine care appointment was documented. If the routine care appointment is documented in an encounter dated after the urgent care

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618249

appointment, the record is compliant.

- If the routine care appointment has a status of completed and there is no encounter, open the "Other…" tab and under "Scanned Electronic Document Index" click on the "Refusals/Consents" link and determine if the patient refused his or her routine care appointment. If the routine care appointment was scheduled for a date after the urgent care appointment and refused, the record is compliant.
- If the routine care appointment has a status of "Scheduled" the record is compliant.
- If there is no routine care appointment in the "Appointment" tab, but there is a routine dental care encounter that took place after the urgent care or pain appointment, the record is compliant.
- If the routine care issue was addressed/resolved at the urgent care appointment, the record is compliant.
- If the routine care appointment has a status of "cancelled" and there is no patient refusal, the record is noncompliant.
- If there is no routine care appointment and the patient has not been seen for his routine care issue after the date of the urgent care appointment, the record is noncompliant.
- If the routine care appointment was completed or cancelled before the urgent care or pain appointment was REQUESTED, the record is excluded from the review.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618250

**Health Care Performance Measure No. 101**
**Stipulation Category: Dental (02)**

**CGAR Category: Dental (C) 02**

| **Performance Measure:**<br><br>Dental assistants will take inmate histories and vital signs and dental radiographs (as ordered) by the Dentist.<br>**This performance measure is not subject to court reporting.** |
|---|
| **CGAR Question:**<br><br>Are dental assistants taking inmate histories and vital signs and dental radiographs (as ordered) by the Dentist? |
| **Source of Records/Review:**<br><br>100-101 Dental Encounter Log |
| **Methodology:**<br><br>• Review the randomized dental encounter log for the monitored month and select the first ten (10) inmate names/numbers at each unit.<br>• Determine ~~if the~~if the record contains a history, vital signs, and, if ordered by a dentist, dental radiographs.<br>• If there was an order for dental radiographs, the Monitor will review the entry in eOMIS pertaining to that specific visit and see if the radiographs were completed as ordered. |

Formatted: Font: Bold

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618251

**Health Care Performance Measure No. 102**
**Stipulation Category: Dental (03)**

**CGAR Category: Dental (C) 03**

| **Performance Measure:**<br><br>Routine dental care wait times will be no more than 90 days from the date the HNR was received. |
|---|
| **CGAR Question:**<br><br>Are routine dental care wait times no more than 90 days from the date the HNR was received? |
| **Source of Records/Review:**<br><br>Routine - Random Log |
| **Methodology:**<br><br>• The Monitor will select the first ten (10) records on the randomized Routine - Random Log with a routine care appointment request.<br>• If the patient was seen for his or her routine care issue within 90 days from the date the HNR was received by medical staff, the record is compliant.<br>• If the patient was seen for his or her routine care issue more than 90 days after the HNR was received by medical staff, the record is not compliant.<br>• If the patient was not seen and the HNR was received by medical staff more than 90 days prior to the last day of the monitored month, the record is not compliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618252

**Health Care Performance Measure No. 103**
**Stipulation Category: Dental (04)**

CGAR Category: Dental(C) 04

| **Performance Measure:**<br><br>Urgent care wait times, as determined by the contracted vendor, shall be no more than 72 hours from the date the HNR was received. |
|---|
| **CGAR Question:**<br><br>Are urgent dental care wait times, as determined by the contracted vendor, no more than 72 hours from the date the HNR was received by dental? |
| **Source of Records/Review:**<br><br>Urgent Care Log |
| **Methodology:**<br><br>• Select the first ten (10) records on the randomized Urgent Care Log with an urgent care or pain evaluation request<br>• If the patient was seen for his or her urgent care issue within 72 hours of the date and time the HNR was received by dental staff, the record is compliant.<br>• If the patient was not seen or was seen after 72 hours had elapsed from the date and time the HNR was received by dental staff, the record is not compliant. |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618253

## Appendix A: Definitions

| TERM | DEFINITION |
|---|---|
| Active labor & delivery | Contractions lasting 45-60 seconds and being 3 to 4 minutes apart |
| ASPC | Arizona State Prison Complex. ASPC- Safford includes Ft. Grant. ASPC-Florence includes Globe. ASPC-Winslow includes Apache. |
| ATP | Alternate Treatment Plan |
| Basic Life Support | Emergency care performed to sustain life that includes CPR, automated defibrillation, control of bleeding, and stabilization of injuries and wounds. For the purpose of performance measure 25, the term "emergency" includes every Incident Command System (ICS) alert where medical attention was provided or should have been provided. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618254

| TERM | DEFINITION |
|---|---|
| Chronic Disease | Chronic diseases include the following:<br>• diabetes<br>• HIV/AIDs<br>• cancer<br>• hypertension<br>• Respiratory disease (for example, COPD / asthma / cystic fibrosis)<br>• Seizure Disorder<br>• heart disease<br>• sickle cell disease<br>• Hepatitis C<br>• Tuberculosis<br>• Neurological disorders (Parkinson's, multiple sclerosis, myasthenia gravis, etc.)<br>• Cocci (Valley Fever)<br>• End-Stage Liver Disease<br>• Hyperlipidemia<br>• Renal Diseases<br>• Blood Diseases (including those on anticoagulants (or long term >six months))<br>• Rheumatological Diseases (including lupus, rheumatoid arthritis)<br>• Hyperthyroidism<br>• Crohn's Disease |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618255

| TERM | DEFINITION |
|---|---|
| Contract Vendor | For purposes of this agreement, contract vendor refers directly to Corizon Health and its subcontractors, or any successor contractor/subcontractor. Beginning July 1, 2019, Centurion of Arizona, LLC is the successor contractor. |
| CQI | Continuous Quality Improvement |
| Diagnostic Service | Lab draws and specimen collections, X-rays, vision testing, and hearing testing |
| DOT | Direct-observation therapy (watch-swallow) (medications) |
| Effective date of the Stipulation | The date on which the Court grants final approval to the Stipulation. |
| Emergency | Includes any medical, mental health, or dental condition for which evaluation and treatment are necessary to prevent death, severe or permanent disability, or to alleviate disabling pain. A medical emergency exists when there is a sudden marked change in a patient-inmate's condition so that action is immediately necessary for the preservation of life or the prevention of serious bodily harm to the patient-inmate.( |
| Encounter | Interaction between a patient and a qualified healthcare provider that involves a treatment and/or exchange of confidential information. |
| First Responder | The first medical or corrections staff member trained in Basic Life Support on the scene of a medical emergency. |
| First Responder Response Time | The time interval starting at the activation of an ICS and/or placement of the first call for an emergency medical response, whichever is earliest, and ending with the arrival of medical or corrections staff trained in Basic Life Support at the scene of the incident. |
| Healthcare staff | Includes QHCPs as well as administrative and support staff (e.g. health record administrators, lab techs, nursing and medical assistants and clerical workers). |
| HNR | Health Needs Request |
| ~~HSCMB~~MSCMB | ADC's ~~Health~~ Medical Services Compliance Monitoring Bureau |
| IPC | Inpatient Component / Infirmary beds |
| IR | Information Report |
| KOP | Keep-on-person (medications) |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618256

| TERM | DEFINITION |
|---|---|
| Licensed | Healthcare staff that hold an active and unrestricted license in the State of Arizona in the relevant professional discipline. |
| MAR | Medication Administration Record |
| Medical Provider | Physician, Dentist, Nurse Practitioner, Physician's Assistant-C. Any health care practitioner who has been duly empowered by the State of Arizona to write prescriptions. |
| Mental Health Clinician | Psychologist, Psychology Associate |
| Mental Health Provider | Psychiatrist, Psychiatry Nurse Practitioner |
| Mental Health Staff | Includes QHCP's who have received instruction and supervision in identifying and interacting with individuals in need of mental health services. |
| MH-1 (Mental Health 1) | Inmates who have no history of mental health issue or treatment. |
| MH-2 (Mental Health 2) | Inmates who do not currently have mental health needs and are not currently in treatment but have had treatment in the past. |
| MH-3 (Mental Health 3) | Inmates with Mental Health needs, who require current outpatient treatment. Inmates meeting this criterion will be divided into four (4) categories. These categories may change during each interaction with the inmate as their condition warrants. |
| MH-3A (Mental Health 3A) | Inmates in acute distress who may require substantial intervention in order to remain stable. Inmates classified as SMI in ADC and/or the community will remain a Category MH-3A (or MH-4 or MH-5 if in specialized mental health program). |
| MH-3B (Mental Health 3B) | Inmates who may need regular intervention but are generally stable and participate with psychiatric and psychological interventions. |
| MH-3C (Mental Health 3C) | Inmates who need infrequent intervention and have adequate coping skills to manage their mental illness effectively and independently. These inmates participate in psychiatric interventions only. |
| MH-3D (Mental Health 3D) | Inmates who have been recently taken off of psychotropic medications and require follow up to ensure stability over time. |
| MH-4 (Mental Health 4) | Inmates who are admitted to a specialized mental health program as identified in the Mental Health Technical Manual outside of inpatient treatment areas. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618257

| TERM | DEFINITION |
|---|---|
| MH-5 (Mental Health 5) | Inmates with mental health needs who are admitted to an inpatient psychiatric treatment program (Baker Ward and Flamenco). |
| Prenatal screening tests | GA/Preg, RPR, HIV, HEP, B & C, CBC, CMP (standardized lab panel), Urine, Rubella, ABO RH & Antibody |
| Psychology Associate | A mental health clinician who has a master's or doctoral-level degree in a mental health discipline, but is not a licensed psychologist. |
| Qualified Health Care Professional (QHCP) | Physicians, Physician Assistants, Dentists, nurses, nurse practitioners, dentists, mental health professionals, and others, who by virtue of their education, credentials/license, and experience are permitted by law to evaluate and care for patients. |
| Regular Business Hours | Monday through Friday, 0800 am -1600 pm or similar 8-hour time frame; excluding weekends and holidays. |
| "Seeing a provider"/ seen/ "seen by" | Interaction between a patient and a Medical Provider, Mental Health Provider or Mental Health Clinician that involves a treatment and/or exchange of information in a confidential setting. With respect to Mental Health staff, means an encounter that takes place in a confidential setting outside the prisoner's cell, unless the prisoner refuses to exit his or her cell for the encounter. Pursuant to Court Order (Doc #2518), mental health watch encounters must be at least 10 minutes in duration and non-watch encounters must be at least 30 minutes in duration unless a mental health clinician determines that a shorter durations is meaningful and appropriate in the context of the patient's overall care. |
| SMI | According to a licensed mental health clinician or provider, possessing a qualifying mental health diagnosis as indicated on the SMI Determination Form (#1103.13) as well as a severe functional impairment directly relating to the mental illness. All inmates determined to be SMI in the community shall also be designated as SMI in ADC. All inmates designated SMI (as defined in MHTM Chapter 2, Section 2.0) will be designated a MH-3A, MH-4, or MH-5 based on their current program placement. |
| SNO | Special Needs Order |
| Specialized Medical Housing | Infirmary beds (IPC) |

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618258

| TERM | DEFINITION |
|---|---|
| Unit | A "unit" is the appropriate location code or codes to be used to meet the monitoring requirements of each specific performance measure. |

DRAFT

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER
PARSONS v. RYAN, USDC CV 12-00601

ADCM1618259

# Exhibit 2

PM Monitoring Changes

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
| --- | --- |
| **Recommendation 2 (pg. 12)**<br>Going forward, ADC should use (or continue to use) the event as the UoA for PMs (unless otherwise specified). The Court's previous order directing ADC to use patient as the UoA (Doc. 2185 at 2) should be reversed with regard to PMs 94, 95, and 97. | Unchanged with regard to PM 94, 95, and 97.<br><br>"The event (rather than the patient) will be used as the Unit of Analysis for each performance measure unless otherwise specified." (8)<br><br>PM 94: "The monitors will review the following number of individual inmate charts (if available): 35 at Eyman, 25 each at Tucson and Lewis, 15 each at Florence, Yuma, Phoenix, and Perryville, and 10 each at Douglas, Safford, and Winslow. If the watch population changes significantly at a complex, the number of charts monitored for that complex for this measure may be changed with 30 days' notice to Plaintiffs, accompanied by an explanation of the reason for the change." (155)<br><br>PM 95: "Review a minimum of 20 individual inmate records (if available) per complex." (157)<br><br>PM 97: "Ten (10) individual inmate records (if available) from each yard utilizing telepsychiatry will be reviewed for compliance with this performance measure." (160) |
| **Recommendation 4 (pg. 13)**<br>Monitors should be assigned to PMs not complexes, except for PMS that require on-site observations. | Not specified in monitoring guide. |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendations 5, 6, and 7 (pg. 16-18)**<br>In measuring compliance with some of these PMs, in particular PM 48, PM 50, and PM 51, Defendants were using a Source Document taken from a list of specialty requests that were already completed or resolved. This method excluded the possibility of choosing requests that were cancelled early in the process. PM 48, PM 50, and PM 51 must be re-audited using new protocols if Defendants wish to rely on those past results. | PM 48: "Use the randomized Consult ATP Report, consisting of a list of all Urgent specialty requests that were requested in the month under review and a list of all Routine specialty requests that were requested in the month under review. Review the first ten (10) denied or ATP'd consultation requests at each unit." (pg. 79)<br><br>PM 50: No changes made (pg. 82-83)<br><br>PM 51: No changes made (pg. 84-85) |
| **Recommendations 8, 9, and 10 (pg. 21)**<br>Defendants' compliance levels must be measured using the dates written on the HNRs by the prisoners. Because this is a change from how Defendants previously calculated compliance, they must re-audit previous results if they wish to rely on previous results when seeking termination. | PM 14: "Medications shall be considered to have refills available if at the time of HNR submission (the date written by the inmate) there was a minimum of five (5) business days remaining on the prescription." (pg. 29)<br><br>PM 36: "Review the HNR date written by the inmate to determine the date of constructive receipt by medical. This is located in the upper right hand corner of the HNR. In the absence of a date stamp, use the date the inmate wrote on the HNR, use the receipt date. If there is no receipt date stamp and no inmate date, the record is noncompliant." (pg. 60)<br><br>Same for PM 37 (pg. 61), 47 (pg. 77)<br><br>PM 98: unchanged (pg. 161-162) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendation 11, 12, 13, 14, and 15 (pg. 26)**<br><br>To measure compliance with PM 36 and PM 37, Defendants were using a document known as the "Nursing HNR Log." To measure compliance with PM 39, PM 40, and PM 41, Defendants were using a document known as the "Nursing Line Log." And to measure compliance with PM 98, Defendants were using a document known as the "Mental Health HNR Log." All three of these documents are "manual logs" requiring staff to manually enter data into them. They are also all "free-standing," meaning they are maintained separately from the underlying medical records. Dr. Stern determined these three documents were not complete and, because these documents were being used to measure compliance, the incompleteness resulted in inaccurate compliance numbers.<br><br>Defendants must re-audit any past results they plan on relying on to justify termination and, going forward should utilize this methodology to calculate compliance with PM 39, PM 40, PM 41, and PM 98. | PM 36: "Source of Records/Review: HSR/Nursing Encounter Log" (pg. 60)<br><br>Same for PM 37 (pg. 61)<br><br>PM 39: "HSR/Nursing Line Log" (pg. 64)<br><br>Same for PM 40 (pg. 65), 41 (pg. 67)<br><br>PM 98: "HSR/MH Encounter Log" (pg. 161) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendation 16 and 17 (pg. 33-36)** For purposes of re-auditing past results, the parties should comply with Dr. Stern's recommended protocol, using a 10- or 30-minute minimum as appropriate. Retrospectively, visits where no length was recorded may be counted as compliant with the appropriate minimum. In the future, however, visits without a length recorded should be deemed non-compliant with the minimum length requirement and proceed to the clinical evaluation step. | PM 73: "For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br><br>Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care." (pg. 117-118)<br><br>Same for PM 74 (pg. 119-120), PM 76 (pg. 122-123), PM 78 (pg. 126), and PM 80-91, (128-149)<br><br>PM 94: "For the purpose of this performance measure, a contact must be a minimum of tem (10) minutes in length, .UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br><br>Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care." (pg. 155)<br><br>Same for PM 95 (pg. 158) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendation 18 and 19 (pg. 36-38)** For purposes of PM 25, the term "emergency" includes every Incident Command System alert where medical attention was provided or should have been provided. And "adequately provides care" requires a qualitative analysis of the actions taken by the responding staff. Each incident selected for monitoring must be reviewed by a "Qualified Health Care Professional" ("QHCP") as defined in the Stipulation who was not involved in the initial response. The QHCP must evaluate the actions taken by the responding staff and determine whether those actions were medically appropriate. | PM 25: "For the purpose of this performance measure, the term 'emergency' includes every Incident Command System (ICS) alert where medical attention was provided or should have been provided.<br><br>'Adequately provides care' requires a qualitative analysis of the actions taken by the responding staff.<br><br>Each incident selected for monitoring must be reviewed by a Qualified Health Care Professional (QHCP) as defined in the Stipulation who was not involved in the original response. The QHCP must evaluate the actions taken by the responding staff and determine whether those actions were medically appropriate." (pg. 47-48) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
| --- | --- |
| **Recommendations 20 and 21 (pg. 39-41)** PM 44 be retrospectively re-audited for complexes/months reported as Compliant upon which ADC intends to rely for termination of the PM. When examining each case, the (nurse) monitor should address:<br>1. Did the patient return from the hospital with at least one discharge recommendation? If not, the case should be skipped and replaced by the next randomized case.<br>2. Was each discharge recommendation ordered by the facility provider within 24 hours?<br>3. If not, is there "a documented reason explaining why the prescribed treatment was rejected."<br>4. Did the patient "receive[ ] the prescribed treatment"? (Doc. 1831 at 2) For the purposes of this step, the Court's order should be interpreted as follows: First, "prescribed treatment" should include treatments as well as tests, consultations, or any other executable provider order. Second, the monitor should consider the response to the recommendation Compliant if there was a provider order, and the order was scheduled, but was not consummated because it was scheduled to take place at a date after the date of the audit. | PM 44: "When examining each case, the (nurse) monitor should address:<br>1. Did the patient return from the hospital with at least one discharge recommendation?<br>If not, the case should be skipped and replaced by the next randomized case.<br>2. Was each discharge recommendation ordered by the facility provider within 24 hours?<br>3. If not, is there "a documented reason explaining why the prescribed treatment was rejected."<br>4. Did the patient "receive the prescribed treatment"? For the purposes of this step, the Court's order should be interpreted as follows: First, "prescribed treatment" should include treatments as well as tests, consultations, or any other executable provider order there was a provider order, and the order was scheduled, but was not consummated because it was scheduled to take place at a date after the date of the audit.<br>In the case of newly prescribed medication (new drug or different dosage), receiving the prescribed treatment means receiving each administration during the monitored month as prescribed." (pg. 71-72) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendations 22, 23, and 24 (pg. 42)**<br>Monitoring PM 46 requires ten diagnostic tests from ten different prisoners | PM 46: "For each monitored unit, the first diagnostic report for each patient within a month's CGAR sample should be retained. Any additional reports for the same patient should be discarded and replaced with the next report for the next unique patient on the original randomized Source Document for that CGAR, until the quota of 10 samples is reached.<br>In the unlikely event that there are an insufficient number of unique patients with to fill the quota of 10 samples, the auditor will draw the second diagnostic report (if there is one) from each patient already sampled (and then, if necessary, the third diagnostic report, and so on) until the sample size is 10." (pg. 75) |
| **Recommendations 25 and 26 (pg. 44-45)**<br>PM 54 be terminated and PM 55 be monitored according to a new protocol that encompasses the objective of PM 54. Part of that new protocol will require a determination whether a future visit was scheduled. If no future visit was scheduled, Dr. Stern recommends the case be found noncompliant. | PM 54: "This performance measure was rolled into PM #55 and is no longer monitored." (pg. 90)<br><br>PM 55: extensive editing consistent with Dr. Stern's recommendations (pg. 92-93) |
| **Recommendations 27, 28, and 29 (pg. 47-48)**<br>Dr. Stern proposes a new protocol for monitoring PM 85 which requires certain prisoners "be seen by a mental health provider within 30 days of discontinuing medications." | PM 85: "For the purpose of this performance measure a contact is one of thirty minutes or more UNLESS a mental health clinician other than the one who conducted the visit determines that the length of a shorter visit was meaningful and appropriate in the context of the patient's overall care.<br><br>Contacts without a recorded length of time are deemed noncompliant with the minimum length requirement and must be evaluated as to whether the visit was meaningful and appropriate in the context of the patient's overall care." (pg. 138-139) |

| **Recommendations 30, 31, and 32 (pg. 49-51)**<br>Retrospective re-audit protocol:<br>ADC should retrospectively re-audit PM 86 according to the protocol below, for the 24-month period it plans to use for evidence of Compliance. As a first pass, the re-audit should be limited to every third month39. (If that third month was previously found Noncompliant, the next closest Compliant month should be chosen. However, ADC may, at its discretion, re-audit the skipped – or any other – Noncompliant month.) If, however, this re-audit results in any single month moving from Compliant to Noncompliant, all relevant months should be re-audited for that complex. If the third month is already Noncompliant, pick the next closest compliant month.<br><br>Prospective Audit Protocol:<br>1. The Source Document is all patients who were listed as being MH-3D ("have been recently taken off of psychotropic medications and require follow up to ensure stability over time.") during the month of July.<br>2. Randomize the list.<br>(Randomization may be done at any point before selection of cases; I have arbitrarily placed it as step 2.)<br>3. Exclude all patients except those whose date of stoppage or date of a previous visit with a mental health clinician was in April.<br>(Excluding cases may be done at any point; I have arbitrarily placed it as step 3.)<br>(If the provider instructed the patient to taper the medication rather than stop it abruptly, the date of stoppage is the last date the patient took the medication. If the patient stopped the medication some time earlier on his/her own, the date of stoppage is the date of the visit with the | PM 86: "Source of Records/Review: All patients who were listed as being MH-3D ('have been recently taken off of psychotropic medications and require follow up to ensure stability over time.') during the monitored month.<br><br>Extensive editing consistent with Dr. Stern's recommendations (pg. 141-142) |
|---|---|

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| provider when the provider acknowledges and agrees with the stoppage.)<br>4. Select the first 15 patients in each yard. (If the patient moved from one yard or facility to another during the month, the case should be audited under the yard where the patient resides at the end of July, the day the Source Document is produced.)<br>5. The monitor should test: Was the patient currently safe during the entirety of this month? If so, the case is Compliant. In other words, phrased in the negative: Was there any day during the month when the patient was still within six months of discontinuation of a psychotropic medication but had gone more than 90 days without seeing a mental health clinician? This methodology differs from the "X" day methodology ordered by the Court in its previous order (Doc. 2225) and thus requires vacating of that order.<br>(The fact that not all months have 30 days means that some cases may not get selected for audit and some cases may be selected for, arguably, the wrong month. These events should be rare. Neither "error" is material nor would reasonably be expected to lead to biased results. Therefore, in the interest of simplicity, this 3-month rule should serve well.) | |
| **Recommendation 40 (pg. 58-59)**<br>The monitoring of this PM be modified so that "the sample for PM 35 for a given month at all complexes should either be drawn from patients transferring into each complex with the resultant score attributed to the receiving complex (i.e. as is currently being done) or drawn from patients transferring from each complex, with the resultant score attributed to the sending complex." | PM 35: "Monitors will advised each month as to whether the sending complex or receiving complex will be subject to the review, based on random selection." (pg. 58-59) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendation 44 (pg. 61)**<br>Going forward, PM 67 should require that:<br>1. RNs conduct an assessment at a frequency in accordance with the nursing care plan established by the RN at admission. If the assessment is conducted by an LPN, it is Noncompliant.<br>2. If the frequency is not specified in the nursing care plan, it is at least twice daily.<br>3. The patient must be assessed by an RN at the set frequency (or more often) for each visit until the patient is discharged or the end of the audit month, whichever is sooner, for the case to be Compliant – there is no partial credit.<br>(The spacing of the assessments are reasonable as determined by the monitor (an RN or higher). For example, if the assessments are supposed to be done every 12-hour shift, the monitor would likely determine that an assessment done 10 minutes before one shift ends and 10 minutes after the next shift begins is Noncompliant. Conversely, if the assessments are supposed to done every four hours, the monitor would likely determine that an assessment done at 4 hours and 10 minutes after the previous assessment is Compliant.) | PM 67: Extensive editing consistent with Dr. Stern's recommendations (pg. 107-108) |

| **Dr. Stern's Recommendation (Doc. 3379)** | **Change in Monitoring Guide, rev. 6/1/20 (ADCM1618083-ADCM1618259)** |
|---|---|
| **Recommendation 45 (pg. 62)**<br>The sample for PM 72 should be drawn from only those prisoners who received a medical diet for a metabolic disease (e.g. heart disease or diabetes). He further suggests that a prisoner who has been counseled within the past year for the same diet should be considered compliant. Finally, he recommends that the PM specify that the counseling occur within two weeks of the third consecutive denial of refused meals. | PM 72: Review only those patients on a medical diet for a metabolic disease (e.g. diabetes, heart disease). In general, these are diets that are low in saturated fats, trans fat, cholesterol, and salt -- and high in fruits, vegetables, lean protein, beans, low fat dairy, and whole grains. The Allergy Diet and Pregnancy Diet are excluded from review. All other diets are included.<br><br>If the record has documentation of receiving or refusing counseling within one year prior to the first of three consecutive days of diet refusals OR within 14 days after the third day of diet refusals, the record is compliant. If there is no documentation that the inmate received or refused counseling during the year prior to the first of three consecutive days of diet refusals OR within 14 days after three consecutive days of refusing a medical diet, the record is noncompliant." (pg. 115-116) |