Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendant(s)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                          Plaintiffs,<br><br>              v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                          Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TERMINATE CERTAIN HEALTHCARE PERFORMANCE MEASURES (DOCS. 3840, 3849)** |

Without actual evidence to dispute that 23 Healthcare Performance Measures ("HCPMs") across multiple prison complex locations (142 HCPMs in total) have met and exceeded the Stipulation's compliance thresholds for the applicable 24-month period, Plaintiffs resort to abstract complaints regarding previously undisputed CGAR data, monitoring methodologies, and pending motions. The Court should disregard these last-ditch efforts and terminate the 142 HCPMS as the Stipulation requires.  Termination of these compliant HCPMs allows Defendants and ADCRR's third party healthcare contractor, Centurion, to focus efforts on achieving compliance for the remaining HCPMs.

**I.      Defendants Carried Their Burden to Prove Stipulation Compliance.**

The 142 HCPMs at issue in Defendants' Motion met or exceeded the Stipulation's compliance thresholds for the October 2018 to September 2020 24-month period. (Doc. 1185 at 4-5, ¶¶ 10(b)(i)-(iii) & 10(c).)  Defendants have established both that the HCPMs were compliant for 18 out of the 24-month period *and* did not have a consecutive three-month period of noncompliance.  (Doc. 2644 at 2.)  While Plaintiffs claim that Defendants failed to carry their burden of proof, they do not successfully explain how or why.  Except for attempted challenges to compliance scores for HCPM 14 at ASPC-Eyman and HCPM 4 at Tucson (which Defendants dispute as argued below), Plaintiffs offer no actual evidence to dispute that the HCPMS have satisfied Stipulation compliance requirements.  Defendants have met their burden and Plaintiffs cannot establish otherwise.

Plaintiffs also complain that L. Gann's supporting Declaration only attests to overall compliance but fails to reference specific monthly CGAR scores. Because they do not claim that the compliance determinations specified in his Declaration are inaccurate but for the two challenges noted above, it is unclear what the significance of this argument is, or how or why it prevents the 142 HCPMS from being terminated.  (Docs. 3849 at 2; 3840-1.) Indeed, Gann's declaration attests to HCPM compliance by complex and cites the CGAR reports that are filed with the Court each month. (Doc. 3840-1.)  Additionally, Defendants' Motion contains docket citations for each CGAR provided to Plaintiffs and the Court. (Docs. 3849 and 3849-1.)  For additional ease of reference, Defendants attach as Exhibit 1, a chart that summarizes the relevant monthly compliance scores with references to the record. Because these scores are provided to Plaintiffs and the Court monthly, any argument that Plaintiffs were somehow unable to evaluate Defendants' compliance is without merit.

**II.      Plaintiffs' Specific HCPM Challenges Fail.**

Despite having access to every CGAR for October 2018 to September 2020, the identification of every inmate monitored for every HCPM, and unfettered access to eOMIS, Plaintiffs were only able to come up with three challenges to the total of 142 HCPMS at issue in Defendants' Motion.  The significance of this cannot be understated. This is because

Defendants were cautious and strategic about which HCPMs to move on, and only moved for termination on those measures that meet the Court's definition of substantial compliance without challenge.

### A.    HCPMs 11 and 14 at ASPC-Eyman[1]

Significantly, of the 142 HCPMs Defendants move to terminate, Plaintiffs only specifically challenge two at ASPC-Eyman—HCPMs 11 and 14.   (Doc. 3849 at 3.) Defendants agree that HCPM 11 at Eyman is not eligible for termination.  In footnote 1 of the Motion to Terminate, Defendants inadvertently listed HCPM 11 at Eyman as subject both to the Order to Show Cause and eligible for termination.  (Compare Doc. 3840 at 2 & 3; Doc. 3840-1 at ¶¶ 17-18.)  In the body of Defendants' Motion listing the HCPMs eligible for termination by complex, Eyman was not listed.   Nor does L. Gann attest in his declaration that  Eyman is eligible for termination. (Id.)

Next, while unclear, it appears Plaintiffs argue that HCPM 14 at Eyman is ineligible for termination because on seven occasions it scored below 85% during the relevant time period. Eyman scored  84.3% in February 2019 and 84.62% in March 2019. (Docs. 3225 at ADCM1570127; 3264 at  ADCM1572765.)   Plaintiffs  apparently  take  issue  with Defendants' position that the February 2019 84.62% score is considered compliant as it rounds up to 85% - the current compliance threshold.

HCPM 14 is monitored by using the Pharmacy HNR Logs at each unit for  a particular prison complex to select ten medications requested by Pharmacy (unless ten medications  are  not  available  and,  if  not,  then  all  applicable  records  are  use  (specific medication exclusions apply)).  (Doc. 3849-1 at 40-41.)  Considering the selection process, 32 medication requests were monitored for compliance in February 2019, resulting in a score of 84.3% and 39 requests were monitored for compliance in March 2019 resulting in

---

[1] Plaintiffs' reference to "false" compliance scores regarding the maximum custody performance measures ("MCPMs") should not be considered.  (Doc. 3849 at 4.)  The Court has never found that Defendants falsely reported MCPMs.  Whether addressing HCPMs or MCPMs, disagreement as to scoring or methodology does not equate to "false" reporting as Plaintiffs claim.

3

1   a score of 84.62%. (Docs. 3225 at ADCM1570127; 3264 at ADCM1572765.) This

2   monitoring methodology does not guarantee whole number compliance percentages as

3   compliance is calculated on a per unit, per complex, per eligible monitored request basis.

4   Common sense statistical analysis dictates that when calculating a percentage which results

5   in a sum other than a whole number, numbers of .5 and higher are rounded up and numbers

6   of .4 and lower are rounded down.  Indeed, in February 2019, Defendants rounded their

7   84.3% compliance score down to 84%.

8        Defendants have calculated scores this way for nearly six years when whole numbers

9   do not result based upon the applicable selection process/monitoring methodology.

10  Plaintiffs were obviously aware of this but have never objected. Indeed, Dr. Stern's Report

11  did not criticize this methodology or require Defendants to calculate a different way.  (Doc.

12  3379.)  Plaintiffs' objection should fail.  Nevertheless, even if the Court rejects termination

13  for HCPM 14 at Eyman, Defendants' Motion should still be granted for the Florence, Lewis,

14  Perryville, Safford, Tucson, and Yuma prison complexes as Plaintiffs do not challenge those

15  scores.

16       **B.    HCPM 4 at ASPC-Tucson**

17       In October 2019, Dr. Stern recommended that going forward, ADCRR "should use

18  (or continue to use) the event [as the unit of analysis] for PMs (unless otherwise specified)."

19  (Docs. 3379 at 12; 3495 at 2; 2185.)  After the parties agreed to this change as related to

20  HCPMs for which a selected inmate patient is not the unit of analysis (but an event is – like

21  for HCPMs 94, 95, 97), the Court adopted it. (Id.; Doc. 3379 at 11-12.)  In accordance with

22  Dr. Stern's recommendations in this regard as to measurement of events versus inmate

23  patients where a specified patient event is not monitored, Defendants reasonably amended

24  the methodology for PMs 1, 2, & 4 to require that the event (i.e., day of the month) be

25  utilized to monitor compliance.  Defendants <u>first provided</u> Plaintiffs with the revised

26  language on March 3, 2020.  (Exh. 2, Corresp. from T. Bojanowski to Counsel dated

27  3/3/2020 and relevant attached excerpts of the Monitor Guide in tracked changes form.)

28  Defendants invited objections – none were received.  (Id.)  Defendants sent a revised

tracked changes Monitor Guide to Plaintiffs <u>again</u> on March 13, 2020, inviting objections – none were received.  This, despite Plaintiffs' Counsel's day-prior email stating they would "provide our comments and any objections" after receipt.  (Exh. 3, Corresp. from T. Bojanowski to D. Fathi dated 3/25/2020, Corresp. from D. Fathi to T. Bojanowski dated 3/12/2020, and relevant attached excerpts of the Monitor Guide in tracked changes form.) On June 19, 2020, <u>again</u>, Defendants provided Plaintiffs with further updates to the Monitor Guide in tracked changes form, which for the <u>third time</u> included the previously revised monitor language for HCPMs 1, 2, & 4.   (Exh. 4, 6/19/2020 email transmittal from Defendants of June 2020 revised Monitor Guide in tracked changes form; Doc. 3849-1 at 2, ¶¶ 2-4 and attached June 2020 revised Monitor Guide.)  Again, no objections were received. Indeed, it was not until Defendants received Plaintiffs' Response to this Motion— filed nearly 10 ½ months after the revised language was first sent to them in March 2020— that Plaintiffs objected.[2]  The Court should not entertain such "gotcha" gamesmanship.[3] Plaintiffs were well aware of the revisions.

---

[2] Because Plaintiffs acknowledge receipt of the June 2020 tracked changes version of the Monitor Guide and refer to it in their Response (and attach it), it is not reattached here.  (Doc. 3849-1 at 2, ¶¶ 2-4.)  Additionally, Exh. 2 to T. Diaz's Declaration which is submitted with Plaintiffs' Response at Doc. 3849-1 is a table that summarizes/compares Dr. Stern's recommendations with Defendants' June 2020 tracked changes Monitor Guide. Except for HCPMs 14 and 35, the other HCPMs referenced in the table are not HCPMs that Defendants are moving for termination on and thus the summaries are irrelevant.  (Compare Doc. 3849-1 at 186-196 with Doc. 3840 at 3-4.)  As to HCPM 14, Plaintiffs' Response challenges scoring but does not challenge methodology.  Thus, Plaintiffs' comparison table is irrelevant as to HCPM 14 (Compare Doc. 3849 at 3 and 3849-1 at 187).   Likewise, Plaintiffs' comparison table refers to HCPM 35, but Plaintiffs' Response does not specifically challenge termination for HCPM 35 and moreover, Defendants have prospectively monitored HCPM 35 in compliance with Dr. Stern's recommendations and the Court's Order regarding the same.   The comparison chart is thus irrelevant to termination of HCPM 35.  (Compare Doc. 3849-1 at 194 with Doc. 3840 at 2.)

[3] At footnote 4 of Plaintiffs' Response, Plaintiffs try to backpedal their previous stipulation to terminate HCPMs 1 and 2.  (Doc. 3849 at 5; Doc. 3824 at 2.)  For the reasons argued herein as to HCPM 4, Plaintiffs' unilateral revocation of their stipulation should not be accepted, especially where the stipulation to terminate HCPMs 1 and 2 was based on historical compliance over the years and thus any post-March 2020 methodology changes based upon Dr. Stern's Report (to which Plaintiffs never objected until now) does not change pre-Dr. Stern Report compliance.  (Doc. 3824 at 2.)

**III.     Pending Motions on Extraneous Issues are Irrelevant to Termination.**

Plaintiffs argue that the pending Order to Show Cause, Plaintiffs' Motion requesting that Dr. Stern re-do his analysis, and Plaintiffs' Motion to Enforce regarding Paragraph 14 of the Stipulation should prevent termination of the 142 HCPMs at issue.  These arguments fail. (Doc. 3849 at 3 at fn. 1, 5.)   First, the pending OSC does not prevent Defendants from moving to terminate HCPMs that otherwise meet the definition of substantial noncompliance. As detailed above, all the HCPMs that Defendants move to terminate meet this definition.

Second, Plaintiffs' Motion requesting that Dr. Stern re-do his analysis due to the impact of COVID-19 on the delivery of healthcare is limited to HCPMs 50, 51, 100, 102, & 103.  (Docs. 3849 at 4; 3805 at 405, 7-8, 11.)  Except for HCPM 103, Defendants are not moving to terminate the same measures.  (Doc. 3840 at 3-4.)  Thus, it is unclear how the motion prevents termination of other HCPMs. Plaintiffs to offer actual  explanation.  As to HCPM 103, neither Plaintiff's pending motion nor their Response to the Motion to Terminate explain or prove how Defendants are allegedly noncompliant with HCPM 103 for the relevant time period.  Accordingly, Plaintiffs' toothless challenge fails.

Third, Plaintiffs' pending Motion to Enforce regarding Paragraph 14 of the Stipulation (affording for language interpretation for inmates not fluent in English) does not preclude termination of the 142  specified HCPMs.  (Doc. 1185 at 6.)  While Plaintiffs argue that Paragraph 14 "implicates all PMS that involve patient/staff interactions," Plaintiffs go on to admit by process of elimination that HCPMs 4, 11, 13, 22, 23, 24, 27, 35, 52, 53, and 70 are not implicated by Paragraph 14.  (Doc. 3849 at 6, fn. 6.)  As to HCPMs 14, 21, 33, 34, 42, 43, 47, 49, 63, 64, 93, 103 for which Plaintiffs specifically cite applicability, their challenge still fails where they do not identify any deaf inmates who were actually monitored in relation to these twelve HCPMs such that compliance *might* be at issue at particular complex locations, for particular months - which even if true – does not

1    necessarily render Defendants noncompliant considering the 24-month time period.[4]

2    Because Plaintiffs cannot prove that the 24-month compliance period would even be

3    compromised if indeed Defendants were found noncompliant to begin with for a particulate

4    inmate/event (and for a particular month), Plaintiffs' argument fails.

5         Finally, Plaintiffs' pending Motion to Enforce the Court's order regarding mental

6    health encounters does not preclude termination of the 142. (Doc. 3849 at 4, fn. 3.) This is

7    because Plaintiffs' motion only addresses HCPMs 73, 74, 76, 78, 80, 81, 85, 90, 91, 94, and

8    95. (Doc. 3694 at 3-4, 7-8, 11-12). Defendants are not moving to terminate <u>any</u> of these

9    mental health HCPMs. Accordingly, Plaintiffs' pending motion in no way compromises

10   Defendants' eligibility for termination of the 142 HCPMs at issue.

11   **IV.    Conclusion.**

12        For these reasons, Defendants' Motion should be granted and the requested 142

13   HCPMs should be terminated. Termination of these HCPMs will enable Defendants and

14   their third-party healthcare contractor, Centurion, to concentrate efforts on bringing the

15   remaining HCPMs into Stipulation compliance.

16        DATED this 10th day of February 2021.

17                                            STRUCK LOVE BOJANOWSKI & ACEDO, PLC

18

19                                            By /s/Rachel Love
                                                 Daniel P. Struck
20                                               Rachel Love
                                                 Timothy J. Bojanowski
21                                               Nicholas D. Acedo
                                                 3100 West Ray Road, Suite 300
22                                               Chandler, Arizona 85226

23                                            *Attorneys for Defendant(s)*

24

25

26   _____

     [4] Deaf inmates are identified during the intake process and medical records reflect
27   the same. Thus, Plaintiffs had the ability to identify whether the allegedly affected HCPMs
     pertained to any monitored deaf inmates as well as the ability to challenge a compliance
28   score for a monitored inmate – if a deaf inmate were actually monitored and the compliance
     score was challenged. (Doc. 3675 at 7 & fn. 2, 8-9.)

**CERTIFICATE OF SERVICE**

1

2    I hereby certify that on February 10, 2021, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
3    Notice of Electronic Filing to the following CM/ECF registrants:

4    Alison Hardy:            ahardy@prisonlaw.com

5    Amelia M. Gerlicher:     agerlicher@perkinscoie.com;docketPHX@perkinscoie.com,
                              kleach@perkinscoie.com
6
     Asim Dietrich:           adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
7                             phxadmin@azdisabilitylaw.org

8    Corene T. Kendrick:      ckendrick@aclu.org

9    Daniel Clayton Barr:     DBarr@perkinscoie.com; docketphx@perkinscoie.com;
                              sneilson@perkinscoie.com
10
     David Cyrus Fathi:       dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org
11
     Donald Specter:          dspecter@prisonlaw.com
12
     John Howard Gray:        jhgray@perkinscoie.com; slawson@perkinscoie.com
13
     Jose de Jesus Rico:      jrico@azdisabilitylaw.org
14
     Maya Abela               mabela@azdisabilitylaw.org
15
     Rose Daly-Rooney:        rdalyrooney@azdisabilitylaw.org
16
     Sara Norman:             snorman@prisonlaw.com
17
     Rita K. Lomio:           rlomio@prisonlaw.com
18
     Eunice Cho               ECho@aclu.org
19
     Jared G. Keenan          jkeenan@acluaz.org
20
     Casey Arellano           carellano@acluaz.org
21
     Maria V. Morris          mmorris@aclu.org
22

23    I hereby certify that on this same date, I served the attached document by U.S. Mail,
postage prepaid, on the following, who is not a registered participant of the CM/ECF
24    System:

25        N/A

26                                    /s/Rachel Love

27

28

8