**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Antonio Parsons, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| David Shinn, | |
| Defendant. | |

Defendants request an extension of time to file their Supplemental Response regarding their failure to comply with the Court's January 31, 2020 Order to Show Cause. (Doc. 3864). Defendants will be granted an extension. Defendants' motion, however, raises concerns that they do not grasp the current posture of this litigation and the true nature of the task at hand.

According to Defendants, drafting their supplemental response to the January 31, 2020 Order to Show Cause is a "colossal task" that will require they explain "why more than 170 PMs were noncompliant between March and December 2020." (Doc. 6834 at 2). Defendants plan to "review each noncompliant PM" to ensure they can "accurately state the reason for noncompliance." They maintain this will require extensive work by defense counsel as well as obtaining declarations from Centurion's Regional Director of Compliance, Director Shinn, Assistant Director Gann, and Centurion's Vice President of Operations. Defendants say assembling this information will take a substantial amount of time and, given that more than $17 million in sanctions might be due, "it is imperative that

Defendants" have sufficient time to "adequately and fully respond." (Doc. 3864 at 2).

There is no doubt it will require a substantial amount of work for Defendants to review the 170 performance measures and then identify and explain why they were noncompliant. But Defendants agreed to the Stipulation and all its terms more than six years ago, giving them more than six years to make whatever adjustments or changes were necessary to bring each performance measure into compliance. And because compliance does not require 100% performance each month—Defendants are only required to reach 85% compliance on each performance measure—ample room exists for unforeseeable events in a particular month that might lead to isolated failures. Thus, given the margin for error built into the Stipulation, to which they fully agreed, and the six years Defendants have had to remedy their failures, the bar for Defendants to justify their noncompliance is exceptionally high. The Court will evaluate the response to the Order to Show Cause in this context.

So in order to avoid a finding of contempt, it will not be enough for Defendants to identify a particular issue that arose in a particular month that impeded compliance. Defendants must also show the particular issue was the result of conditions they did not or could not have anticipated during the previous six years and the issue was one that did not allow for earlier remedial steps. Moreover, for those performance measures that were noncompliant for more than one month between March and December 2020, in addition to showing they pursued "all reasonable steps" within their power to correct the issue that caused the prior failures, they must establish there were new and additional issues that arose that prevented compliance in subsequent months. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). With more than six years, expert assistance, and countless opportunities to implement sound healthcare delivery, Defendants shall take care that they, in fact, have a good faith basis to avoid sanctions regarding particular performance measures.

This discussion does not imply prejudgment of the issues at hand. Indeed, restrictions associated with COVID-19 may be a valid basis for some noncompliance,

particularly in the early months of 2020. But even COVID-19 cannot be used as a complete shield against noncompliance because (1) all healthcare could not cease during COVID-19 and (2) there were many noncompliant performance measures before COVID-19. Defendants should not expect invocation of COVID-19 to excuse noncompliance throughout 2020.

Defendants' request and stated plan to pursue the "colossal task" of attempting to justify their noncompliance also raises familiar concerns regarding their continued devotion of time and resources on making legal arguments instead of remaining singularly focused on complying with the contractual obligations they willingly accepted six years ago. Defendants have already been sanctioned $2.545 million dollars. (Doc. 3861 at 7). That figure does not include the $4.9 million Defendants paid in fees and costs at the time of settlement. (Doc. 1185). What is more it does not include the millions of dollars Defendants have paid to Plaintiffs' counsel in fees and costs since the settlement, nor does it include the unknown amount, undoubtedly in the millions of dollars, Defendants have paid to their own counsel. Despite the outlays in fines and attorneys' fees, Defendants' counsel continues to litigate each and every issue to the maximum extent possible, including frivolous ones. Counsel files repetitive motions, close-to-baseless appeals, and petitions for writs of certiorari. From the two published opinions by the Ninth Circuit addressing five appeals, Defendants have prevailed on only a few minor issues. *Parsons v. Ryan*, 912 F.3d 486 (9th Cir. 2018); *Parsons v. Ryan*, 949 F.3d 443 (9th Cir. 2020). And neither petition for writ of certiorari has been granted. It is unclear whether Arizona taxpayers are directly footing the bill for this conduct but it is time for those responsible for this litigation to reexamine whether the six years of litigation represents a wise use of resources going forward.

Defendants have been adamant that the Stipulation remains binding and cannot be altered in any meaningful way. If that remains Defendants' position, the Court's task is to ensure Defendants perform the obligations they undertook at the outset of the Stipulation. The time for Defendants to make changes in the Stipulation or clarify it was years ago.

The Court will fairly review Defendants' opposition applying the governing legal principles, but the central goal of this entire exercise is to convince Defendants that continued noncompliance is too costly. To avoid sanctions, Defendants must point to circumstances that were truly beyond their imagination or control. Defendants should not waste the State's resources, nor the Court's time, with anything resembling the excuses they have offered in the past.

Accordingly,

**IT IS ORDERED** the Motion for Extension (Doc. 3864) is **GRANTED**. Defendants shall file their supplemental response no later than **March 26, 2021**. Plaintiffs shall file their response no later than **April 16, 2021**. No reply is permitted.

Dated this 3rd day of March, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge