1  Jared G. Keenan (Bar No. 027068)
   Casey Arellano (Bar No. 031242)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone:  (602) 650-1854
4  Email:  jkeenan@acluaz.org
            carellano@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
   *Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
7  *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
   *behalf of themselves and all others similarly situated*
8  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE**
   **PAGE]**
9
   Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone:  (602) 274-6287
12 Email: adietrich@azdisabilitylaw.org
13 *Attorneys for Plaintiff Arizona Center for Disability Law*
   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE**
14 **PAGE]**
15              UNITED STATES DISTRICT COURT
16                  DISTRICT OF ARIZONA

17 | Victor Parsons; Shawn Jensen; Stephen Swartz; | No. CV 12-00601-PHX-ROS |
18 Dustin Brislan; Sonia Rodriguez; Christina
   Verduzco; Jackie Thomas; Jeremy Smith; Robert
   Gamez; Maryanne Chisholm; Desiree Licci; Joseph  **PLAINTIFFS' OBJECTIONS TO**
19 Hefner; Joshua Polson; and Charlotte Wells, on    **DEFENDANTS' COMPLIANCE**
   behalf of themselves and all others similarly     **PLAN REGARDING**
20 situated; and Arizona Center for Disability Law,  **PARAGRAPH 14 OF THE**
                                                     **STIPULATION**
21              Plaintiffs,
                                                     **[Dkt. 3880]**
22      v.

23 David Shinn, Director, Arizona Department of
   Corrections, Rehabilitation and Reentry; and Larry
24 Gann, Assistant Director, Medical Services Contract
   Monitoring Bureau, Arizona Department of
25 Corrections, Rehabilitation and Reentry, in their
   official capacities,
26
                Defendants.
27
28

On February 24, 2021, the Court granted Plaintiffs' Motion to Enforce Paragraph 14 of the Stipulation and ordered Defendants to formulate a plan that, "at a minimum, explains how class members who are not fluent in English will be identified, how class members will be informed of their entitlement to interpreter services, and how such services should be requested." [Doc. 3861 at 12] Defendants' plan, which was filed on March 26, (*see* Doc. 3880), is woefully inadequate and necessitates further judicial action.

## OBJECTIONS TO DEFENDANTS' PROPOSED PLAN

Most of the plan simply states that Defendants will continue to do what they have been doing all along—even though that is what led to widespread noncompliance with the Stipulation and the need for judicial intervention. In fact, eight of the twelve components of the plan simply restate the flawed and incomplete system that led to the Court's order.

- **Paragraph 1**: Defendants say that "[c]**onsistent with current processes**, inmates who are not fluent in English . . . are identified during the new admission intake process when interviewed by a nurse during the Intake Assessment." [Doc. 3880, Defendants' Plan at 2 (emphasis added)][1] But that is no different from before. [*See* Doc. 3673, Defendants' Response at 8-9 (discussing "Intake Processes")] And Defendants have failed to address the concerns previously identified by Plaintiffs regarding the adequacy of the intake process. [*See* Doc. 3714, Plaintiffs' Reply at 25 ("The intake form does not document an assessment of language needs, including whether someone communicates through sign language. And Defendants' system does not rely on any intake assessment in determining whether interpretation is needed in the future; instead, healthcare staff are expected to make a lay assessment anew before each encounter." (internal citations omitted))]

---

[1] Pincites to case filings correspond to the page number on the ECF stamp at the top of the page, and not any internal pagination.

152406390.1

- **Paragraphs 3 and 11**: Defendants say that "[p]osters **will continue to be displayed** in prominent areas (in English and Spanish) in the medical units," and that MSCMB monitors will verify such placement. [*See* Doc. 3880, Defendants' Plan at 2, 4 (emphasis added)] Again, that is no different from before. [*See* Doc. 3673, Defendants' Response at 3 (stating that Defendants "display posters in the clinics and medical services area")] Such posters are located in restricted and easy-to-miss medical locations and require English or Spanish literacy. [*See also* Doc. 3714, Plaintiffs' Reply at 24 n.20 ("it took Centurion over four months to provide sign language interpretation, and the only outreach reported are postings in the clinics written in English and Spanish (and thus largely inaccessible to [Deaf] class members)")]

- **Paragraph 4**: Defendants say that "[i]f an inmate requires translation services during a healthcare encounter, healthcare staff will either locate a staff member who is proficient in the patient's language or utilize the LanguageLine . . . ." [Doc. 3880, Defendants' Plan at 3] But that sentence is lifted, almost verbatim, from Defendants' unsuccessful briefing. [*See* Doc. 3673, Defendants' Response at 4] Defendants have failed to explain what new systems will be put in place to ensure that healthcare staff in fact do so going forward to prevent the problems that led to the Court's order.

- **Paragraph 6**: Defendants say that the "eOMIS 'hard stop' function," which was the centerpiece of their flawed system, "**will continue to be employed**." [*See* Doc. 3880, Defendants' Plan at 3-4 (emphasis added); *see also* Doc. 3673, Defendants' Response at 7-9 ("Hard-Stop Function in EOMIS"); Doc. 3714, Plaintiffs' Reply at 7-9 (detailing inherent flaws of hard-stop function)] Remarkably, Defendants have not modified the hard-stop function in any way, notwithstanding the fact that, as Plaintiffs previously explained, the drop-down choices are incomplete and fail to document non-compliance. [*Compare* Doc. 3880, Defendants' Plan at 4

("The choices are 'LanguageLine,' 'Healthcare Staff Used for Interpreter Services,' or 'Inmate Refused Interpreter Services.'"), *with* Doc. 3714, Plaintiffs' Reply at 8 (noting that "[t]he 'hard-stop' feature allows healthcare staff to record only compliance (and not noncompliance)," and does not allow staff to document when an interpreter was not available: "If staff document that interpreter services are needed, they are asked, 'If so, what type of interpreter services were used for the encounter?' and may select from only three options: 'Language Line,' 'Healthcare Staff Used for Interpreter Services,' or 'Inmate Refused Interpreter Services.'")]

- **Paragraph 7**: Defendants say that they "**will continue to use** LanguageLine Solutions for audio interpretation." [Doc. 3880, Defendants' Plan at 4 (emphasis added)] But that is no different than before. [*See* Doc. 3673, Defendants' Response at 4-7] The reason for the enforcement litigation and order was that LanguageLine was not in fact being used for all class members not fluent in English. [*See, e.g.*, Doc. 3714, Plaintiffs' Reply at 19]

- **Paragraph 8**: Defendants say that they "**will continue to use** [the] AmWell platform for video interpretation services . . . ." [Doc. 3880, Defendants' Plan at 4 (emphasis added)] Again, that is no different than before. [*See* Doc. 3673, Defendants' Response at 5 (discussing "Centurion's AmWell platform")] The concern, again, was that the platform was not in fact being used for all class members not fluent in English. [*See, e.g.*, Doc. 3714, Plaintiffs' Reply at 19]

- **Paragraph 9**: Defendants say that "Centurion **will continue to train** its healthcare staff on the availability and use of language interpretive services during Centurion New Employee Orientation." [Doc. 3880, Defendants' Plan at 4 (emphasis added)] But that training—which was in place before and during this litigation (*see* Doc. 3673, Defendants' Response at 7)—has not proven successful. Enhanced training on a reliable system to provide

152406390.1

1    interpretation services and a meaningful monitoring and oversight system is

2    needed. [*See* Doc. 3623, Plaintiffs' Motion at 19]

3        The only new provision—besides a cursory and undefined reference to

4    "Compliance Plan enhancement measures" that is too vague to evaluate (Paragraph 10)—

5    is a not-yet-created "advisement/election guide" (Paragraphs 5 and 12). [*See* Doc. 3880,

6    Defendants' Plan at 3, 5] Plaintiffs have serious questions about and concerns with this

7    proposal. Class members not fluent in English should not have to request, in writing (in

8    any language), an interpreter before each healthcare encounter. The Court's order made

9    clear that, consistent with the plain language of the Stipulation, "Defendants must provide,

10   for *every* healthcare encounter with a prisoner not fluent in English, either 1) 'a qualified

11   health care practitioner who is proficient in the prisoner's language'; or 2) 'language line

12   interpretation service.'" [Doc. 3861 at 11 (emphasis in original)] Put differently, if a class

13   member is not fluent in English, healthcare staff must either be or find a qualified health

14   care practitioner who is proficient in the class member's language or use the language line

15   interpretation service. [*See id.* at 12 ("If a prisoner is not fluent in English, the fact that the

16   medical encounter continued without interpretive services is definitive proof of

17   Defendants' noncompliance with Paragraph 14.")] Defendants may not force class

18   members to complete paperwork **prior to every single health care encounter** to request

19   such services.[2] That will only further restrict access to interpretation services.

20       The last part of the plan is Defendants' representation that they will "explore the

21   capability of eOMIS to determine whether a field can be added that will display

22   designation of the language the inmate is fluent in, if not English, such that during the

23

---

24   [2] As noted in prior briefing, and supported by the expert declaration of Dr. Rowley
     and the declarations of D/deaf class members, people whose primary language and means
25   of communication is sign language in particular often are not proficient or literate in
     written English. [*See, e.g.*, Doc. 3623, Plaintiffs' Motion at 9 & n.6 ("[M]any D/deaf
26   people are not fluent in English—verbal or written" (summarizing class member
     declarations and secondary sources regarding English literacy of D/deaf people));
27   Doc. 3718, Rebuttal Declaration of Amy June Rowley, Ph.D. at 7-8 ¶¶ 17-19 ("One study
     of Deaf prisoners showed that none of them were able to read over 4th grade reading level
28   and more than half were considered to be functionally illiterate—below 2.9th grade
     level.")]

nurse's Intake Assessment, the field would be completed with the language the inmate is fluent in and the field would auto-populate each time healthcare staff document a healthcare encounter so that healthcare staff is immediately advised of fluency concerns and likely need for language interpretation services." [Doc. 3880, Defendants' Plan at 2 (Paragraph 2)] That is a welcome development and something Plaintiffs previously have requested. [*See* Doc. 3623, Plaintiffs' Motion at 19 ("Whether a class member is not fluent in English, and their primary language, should be fully documented and made readily available to healthcare staff through eOMIS.")] But Defendants provide no details as to whether or when this will be completed, let alone what "explore the capability of eOMIS" entails. Such a change must be implemented immediately. The new field should be able to be updated if someone is identified after intake as not fluent in English, which is important to ensure, among other things, that the Court's order also applies to class members who already are incarcerated. [*See* Doc. 3623, Plaintiffs' Motion at 19 ("There also should be a mechanism to identify at a later time class members who are not fluent in English, including if they state that they are not able to fully understand what is being said, or are not able to fully respond in English, during a healthcare encounter."); Doc. 3623-1, Proposed Order at 1]

Finally, Defendants' plan fails entirely to address other critical components of a corrective action plan, which Plaintiffs' outlined previously, including a reliable system to identify and document which qualified health care practitioners are proficient in other languages and to monitor compliance with Paragraph 14. [*See* Doc. 3623, Plaintiffs' Motion at 17-20; Doc. 3714, Plaintiffs' Reply at 9-11, 27, 31-33; *see also* Doc. 1673, Order at 2, 8 ("Plaintiffs are entitled to timely data demonstrating Defendants' compliance" with Paragraph 14)] And the plan does not correct Defendants' prior and unreasonable interpretation of Paragraph 14 to not apply to various healthcare encounters, including group psychotherapy and encounters while someone is on suicide watch. [*See* Doc. 3673, Defendants' Response at 9, 18 n.8 ("the standard of care does not require the use of certified interpreters for all healthcare encounters, nor are they required for group

-5-

152406390.1

1    psychotherapy")] As Plaintiffs previously explained, that conflicts with the plain language

2    of the Stipulation. [*See* Doc. 3714, Plaintiffs' Reply at 13-15]

3                                    **RELIEF REQUESTED**

4           In light of the inadequacy of Defendants' plan, and to avoid further delays in

5    ensuring compliance with Paragraph 14 of the Stipulation, Plaintiffs request that the Court

6    issue more specific relief. *See* Doc. 1185 at 14-15 ¶ 36 ("In the event the Court

7    subsequently determines that the Defendants' plan did not remedy the deficiencies, the

8    Court shall retain the power to enforce this Stipulation through all remedies provided by

9    law"); *Brown v. Plata*, 563 U.S. 493, 542-43 (2011) (noting that a court "retains the

10   authority, and the responsibility, to make further amendments to the existing order or any

11   modified decree it may enter as warranted by the exercise of its sound discretion");

12   *Armstrong v. Brown*, 768 F.3d 975, 986 (9th Cir. 2014) ("relief prescribing more specific

13   mechanisms of compliance is appropriate" where Court's previous attempts to "correct

14   the deficiencies in . . . compliance . . . through less intrusive means . . . have failed").

15          A proposed order is lodged herewith.

16                                            Respectfully submitted,

17   Dated:  May 5, 2021              **PRISON LAW OFFICE**

18
                                     By:   s/ Rita K. Lomio
19                                        Donald Specter (Cal. 83925)*
                                          Alison Hardy (Cal. 135966)*
20                                        Sara Norman (Cal. 189536)*
                                          Rita K. Lomio (Cal. 254501)*
21                                        1917 Fifth Street
                                          Berkeley, California 94710
22                                        Telephone:  (510) 280-2621
                                          Email:    dspecter@prisonlaw.com
23                                                  ahardy@prisonlaw.com
                                                    snorman@prisonlaw.com
24                                                  rlomio@prisonlaw.com

25                                        *Admitted *pro hac vice*

26

27

28

152406390.1

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:    dfathi@aclu.org
          mmorris@aclu.org
          echo@aclu.org

*Admitted *pro hac vice*. Not admitted in
  DC; practice limited to federal courts.

**Admitted *pro hac vice*

Corene T. Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON
PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email:    ckendrick@aclu.org

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:    dbarr@perkinscoie.com
          agerlicher@perkinscoie.com
          jhgray@perkinscoie.com

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:    jkeenan@acluaz.org
          carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm; Desiree
Licci; Joseph Hefner; Joshua Polson; and
Charlotte Wells, on behalf of themselves and
all others similarly situated*

-7-

152406390.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
　　　Asim Dietrich (Bar No. 027927)
　　　5025 East Washington Street, Suite 202
　　　Phoenix, Arizona 85034
　　　Telephone:  (602) 274-6287
　　　Email:   adietrich@azdisabilitylaw.org

　　　Rose A. Daly-Rooney (Bar No. 015690)
　　　J.J. Rico (Bar No. 021292)
　　　Maya Abela (Bar No. 027232)
　　　**ARIZONA CENTER FOR DISABILITY LAW**
　　　177 North Church Avenue, Suite 800
　　　Tucson, Arizona 85701
　　　Telephone:  (520) 327-9547
　　　Email:
　　　　rdalyrooney@azdisabilitylaw.org
　　　　　　jrico@azdisabilitylaw.org
　　　　　　mabela@azdisabilitylaw.org

　　　*Attorneys for Arizona Center for Disability Law*

-8-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<ins>CERTIFICATE OF SERVICE</ins>**

I hereby certify that on May 5, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf

-9-