Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: jkeenan@acluaz.org
      carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER RE: DURATION OF MENTAL HEALTH ENCOUNTERS** <br><br> [Dkt. 3861] |

LEGAL23774493.1

On February 24, 2021, the Court ordered as follows regarding the duration of mental health encounters:

> To ensure that visits shorter than the minimum duration are appropriate, the Court will adopt the regime proposed by Plaintiffs. *That regime will require a psychiatrist make the determination whether a mental health encounter shorter than the required minimum duration was "meaningful and appropriate in the context of the patient's overall care."* The reviewing psychiatrist (i.e., the "evaluator") must
>
>> review in their entirety the eOMIS records for the patient's last five mental health encounters (not including the weekly rounds required by PM 93), as well as the eOMIS records for any ICS involving the patient in the previous six months. The evaluator shall also review the patient's currently operative mental health treatment plan. The evaluator shall then document in writing his or her reasons for determining that the encounter length was, or was not, meaningful and appropriate in the context of the patient's overall care.
>
> Defendants must report to Plaintiffs' counsel monthly the percentage of mental health encounters sampled that fell short of the minimum durations established by the Court, and of those encounters, the percentage that were nonetheless counted as compliant with the Stipulation.

Doc. 3861 at 13 (emphasis added).

> **IT IS FURTHER ORDERED** that Plaintiffs' Motion to Enforce the Court's Orders and for Further Relief (Doc. 3694) is **granted**.
>
> **IT IS FURTHER ORDERED** that a psychiatrist must make the determination whether a mental health encounter that is shorter than the required minimum duration is nonetheless "meaningful and appropriate in the context of the patient's overall care."
>
> **IT IS FURTHER ORDERED** that Defendants must provide to Plaintiffs' counsel the written instruction offered by Plaintiffs to the psychiatrists monitoring the mental health care performance measures.
>
> **IT IS FURTHER ORDERED** that Defendants must file monthly reports reflecting the percentage of mental health encounters sampled for the CGARS that fell short of the minimum durations established by the Court, and of those encounters, the percentage that were nonetheless counted as compliant with the Stipulation.

*Id.* at 15-16 (emphasis in original).

The Court's February 24, 2021 order was not the first time it has addressed Defendants' woefully inadequate mental health encounters that are nonetheless counted as compliant, artificially inflating compliance numbers. It was more than a year and a half ago that Dr. Stern raised the alarm about mental health encounters that "are too short to be

LEGAL23774493.1

1  clinically effective, and in the context of the cases, place patients at significant risk of
2  substantial harm." Doc. 3379 at 31 (October 4, 2019). The Court agreed with Dr. Stern,
3  concluding that "[t]he only rational reading of the Stipulation is that to be 'seen' requires
4  a meaningful interaction between the prisoner and the mental health professional," and
5  that "there is no plausible basis to conclude Plaintiffs and Defendants intended to allow
6  for mental health encounters lasting only 1-2 minutes." Doc. 3495 at 8, 9 (February 12,
7  2020).

8        On March 11, 2020, the Court established a presumptive minimum duration of 10
9  minutes (for PM 91, 94, and 95) and 30 minutes (for PM 73, 74, 76, 78, and 80-90), with
10 the proviso that a shorter visit could be counted as compliant if a reviewing clinician
11 concluded that its length was "meaningful and appropriate in the context of the patient's
12 overall care." Doc. 3518 at 2-5. On February 24, 2021, following Plaintiffs' submission
13 of evidence that virtually *all* short mental health encounters are rubber-stamped as
14 "meaningful and appropriate" and counted as compliant, the Court concluded that
15 Defendants had failed to comply with its previous order and imposed the additional
16 monitoring requirements set forth above. Doc. 3861 at 12-13, 15-16.

17       Defendants have failed to comply with the Court's order. Since the Court issued
18 its order on February 24, 2021, Defendants have compiled and reported three months of
19 CGAR scores while entirely failing to utilize the methodology ordered by the Court,
20 resulting in grossly inflated compliance scores. *See* Doc. 3865 (March 2, 2021) (sealed
21 lodged proposed Defendants' December 2020 CGAR reports); Doc. 3882 (March 31,
22 2021) (reporting that in January 2021, of the 4,203 mental health encounters that did not
23 comply with the minimum durations established by the Court, **97.4%** were counted as
24 compliant either because the patient refused or because "a *Mental Health Clinician*
25 determined the length of the encounter was meaningful and appropriate in the context of
26 the inmate's overall care") (emphasis added); Doc. 3898 (April 30, 2021) (reporting that
27 in February 2021, of the 4,102 mental health encounters that did not comply with the
28 minimum durations established by the Court, **98.4%** were counted as compliant either

1  because the patient refused or because "a *Mental Health Clinician* determined the length
2  of the encounter was meaningful and appropriate in the context of the inmate's overall
3  care") (emphasis added).[1]

4        In issuing its order, the Court emphasized that Defendants' drive-by mental health
5  encounters can result in enormous harm to class members:

> The risk associated with failure to provide meaningful mental health care cannot be overstated. Indeed, three class members committed suicide between August and September 2020 and for two of them, every mental health encounter since March 11 fell below the minimum durations set by the Court. (Doc. 3791 at 185-188). Dr. Stern already determined in his report that the short length of many of Defendants' mental health encounters—many that are one, two, or three minutes in length— "are too short to be clinically effective, and in the context of the cases, place patients at significant risk of substantial harm." (Doc. 3379 at 31).

11  Doc. 3861 at 13 n. 11.[2]

12        The tragic deaths that occurred in 2020 were not aberrations, and the disturbing
13  pattern has continued into 2021: patients die by suicide after having contacts with mental
14  health staff that fall below the minimum durations required by the Court's order of March
15  11, 2020 (Doc. 3518). In the four-week period between January 5 and February 3, 2021,
16  three class members died by suicide; in their final weeks, all three had received mental
17  health encounters that fell below these minimum durations. *See, e.g.,* Declaration of
18  David C. Fathi, filed herewith, Exh. 1, Patient 1 (the majority of mental health encounters
19  in the weeks before his suicide fell short of minimum durations, including one that was
20  two minutes long and another, five days before he hanged himself, that identified no risks
21  and ordered no further follow-up); Patient 2 (patient received a five-minute mental health
22  assessment upon his intake to prison; no follow-up appointments were scheduled, and he

---

[1] As noted above, the Court ordered Defendants to use a psychiatrist to review the adequacy of these encounters. Doc. 3861 at 15-16. Yet Defendants continue to have mental health clinicians conduct this analysis, in defiance of the Court's order. The Stipulation's definition of "mental health clinician" makes clear that this person is not a psychiatrist. *See* Doc. 1185-1 at 4 (defining "mental health clinician" as a psychologist or psychology associate).

[2] Defendants' mortality review of one of these suicides identified "failure to communicate effectively with patient" as a contributing cause and concluded that the suicide was "possibly avoidable." *See* Fathi Decl., ¶ 4, Exh. 3.

hanged himself 14 days later); Patient 3 (patient received a short mental health encounter the day before he hanged himself).

Moreover, two of the short encounters received by Patient 1 were included in the sample for Defendants' CGAR reports. In both cases, Defendants counted them as compliant, despite the fact that they fell short of the minimum durations established by the Court. Declaration of Jessica Carns, filed herewith, ¶ 3.

Similarly, other patients with severe and persistent mental illness continue to receive mental health encounters that fall below – often far below – the minimum durations established by the Court. *See* Fathi Dec., Exh. 2 at 29-31 (patient experiencing delusions who has been on suicide watch for 142 out of the past 242 days, has engaged in two hunger strikes and lost 23 pounds, has engaged in self-harm 26 times in a four-month period, and has been pepper-sprayed 22 times in the same period, receives a one-minute mental health encounter).[3]  *See also id*. at 11 (patient receives multiple five-minute encounters while on suicide watch; he hangs himself while on suicide watch and is hospitalized); *id.* at 4 (patient has been on suicide watch for 78 of the past 85 days; he repeatedly stabs himself in the stomach and inserts objects into the wound); *id.* at 13 (patient on suicide watch for 41 consecutive days); *id.* at 16 (patient with psychosis on suicide watch for 83 consecutive days; while on watch, he twice engages in self-harm requiring hospitalization); *id.* at 21-22 (while on suicide watch, patient cuts into the muscles of his arm and swallows razor blades, requiring hospitalization). *See also id*. at 2, 18, 19 (two-minute encounters); *id*. at 19 (one-minute encounter).

## ARGUMENT

Defendants' obligation to comply promptly with the Court's February 24, 2021 order is beyond question.

> We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an

---

[3] Page numbers in Exhibit 2 refer to the numbers at the bottom of the page. The three letters set forth at Fathi Decl. Exh. 2 at 6-7, 24-27, and 28-32 all pertain to this patient.

>  order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.

*Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) (citations, internal quotation marks omitted).

In addition to twice holding Defendants in contempt, this Court has repeatedly rebuked Defendants for their failure to comply promptly with its orders. *See, e.g.*, Doc. 3691 at 1-2 ("Despite the Court's order for Defendants to produce the documents within seven days, Defendants did not do so. Even now, nearly two months later, Defendants' production remains incomplete"); Doc. 3734 at 4 ("Defendants did not seek more time to comply with the Court's June 19, 2020 Order when it became—according to them—unduly burdensome to do so. Instead, Defendants produced incomplete and inconsistent data without alerting Plaintiffs or the Court. It is *that* conduct that warrants the award of attorneys' fees in bringing the motion to enforce the June 19, 2020 Order") (emphasis in original); Doc. 3495 at 22 ("To the extent Defendants believed it would be unduly burdensome to comply with Magistrate Judge Duncan's order, they were required to seek relief from the Court. Defendants certainly were not free simply to ignore the Order."); Doc. 2583 at 2 ("Defendants have been on notice for nearly four months that they would have to comply with the OSC Order. They requested, and received, an extension to compile the OSC Report. Since then, Defendants have not informed the Court about any problems with compiling the OSC Report… Defendants did not address their failure to comply until the Court sought an explanation after the deadline had passed and had no ready answer about when compliance would be achieved.").

It appears that the message has not been received. Because Defendants have repeatedly shown themselves to be either unable or unwilling to comply with the Court's orders, the Court should appoint a receiver to manage Defendants' provision of health

1  care services to class members. *See, e.g., Plata v. Schwarzenegger*, No. C01-1351-TEH, 2005 WL2932253 at *1, *19 (N.D. Cal. Oct. 3, 2005) ("the Court imposes the drastic but necessary remedy of a Receivership in anticipation that a Receiver can reverse the entrenched paralysis and dysfunction and bring the delivery of health care in California prisons up to constitutional standards. … The Court has attempted to move defendants toward meeting constitutional standards by issuing a series of court orders with detailed objectives and measures. Unfortunately, defendants have repeatedly delayed their progress and ultimately failed to achieve even a semblance of compliance."); *see also Inmates of D.C. Jail v. Jackson*, 158 F.3d 1357, 1359 (D.C. Cir. 1998) ("After years of attempting to get D.C. to voluntarily comply, and appointing a Special Master to coordinate with D.C. in an attempt to alleviate conditions, the district court ordered that the jail's medical and mental health services be placed in receivership in 1995"); *see also* Doc. 3887 at 26-27 (seeking appointment of a receiver).

## CONCLUSION

The Court should order Defendants to comply with its February 24, 2021 order regarding the duration of mental health encounters (Doc. 3861) without further delay. In addition, the Court should enter an injunctive order pursuant to Fed. R. Civ. P. 66, appointing a receiver to manage Defendants' provision of health care services to class members.

A proposed order is filed herewith.

Respectfully submitted,

LEGAL23774493.1                                -6-

| | | |
|---|---|---|
| 1 | Dated: May 10, 2021 | **ACLU NATIONAL PRISON PROJECT** |
| 2 | | |
| | | By:  s/ David C. Fathi |
| 3 | |     David C. Fathi (Wash. 24893)** |
| | |     Maria V. Morris (D.C. 1697904)* |
| 4 | |     Eunice Hyunhye Cho (Wash. 53711)** |
| | |     915 15th Street N.W., 7th Floor |
| 5 | |     Washington, D.C. 20005 |
| | |     Telephone:  (202) 548-6603 |
| 6 | |     Email:    dfathi@aclu.org |
| | |                   mmorris@aclu.org |
| 7 | |                   echo@aclu.org |
| 8 | | *Admitted *pro hac vice* |
| | | **Admitted *pro hac vice*. Not admitted in |
| 9 | |   DC; practice limited to federal courts. |
| 10 | | Corene Kendrick (Cal. 226642)* |
| | | **ACLU NATIONAL PRISON PROJECT** |
| 11 | | 39 Drumm Street |
| 12 | | San Francisco, California 94111 |
| | | Telephone:  (202) 393-4930 |
| 13 | | Email:    ckendrick@aclu.org |
| 14 | | *Admitted *pro hac vice* |
| 15 | | Donald Specter (Cal. 83925)* |
| | | Alison Hardy (Cal. 135966)* |
| 16 | | Sara Norman (Cal. 189536)* |
| | | Rita K. Lomio (Cal. 254501)* |
| 17 | | **PRISON LAW OFFICE** |
| | | 1917 Fifth Street |
| 18 | | Berkeley, California 94710 |
| | | Telephone:  (510) 280-2621 |
| 19 | | Email:    dspecter@prisonlaw.com |
| | |                   ahardy@prisonlaw.com |
| 20 | |                   snorman@prisonlaw.com |
| | |                   rlomio@prisonlaw.com |
| 21 | | |
| | | *Admitted *pro hac vice* |
| 22 | | |
| | | Daniel C. Barr (Bar No. 010149) |
| 23 | | Amelia M. Gerlicher (Bar No. 023966) |
| | | John H. Gray (Bar No. 028107) |
| 24 | | **PERKINS COIE LLP** |
| | | 2901 N. Central Avenue, Suite 2000 |
| 25 | | Phoenix, Arizona 85012 |
| | | Telephone:  (602) 351-8000 |
| 26 | | Email:    dbarr@perkinscoie.com |
| | |                   agerlicher@perkinscoie.com |
| 27 | |                   jhgray@perkinscoie.com |
| 28 | | |

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: jkeenan@acluaz.org
carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

# CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ Jessica Carns