**Index of Exhibits to the Declaration of David C. Fathi**

| Exhibit # | Description |
| --- | --- |
| 1 | Letters Plaintiffs have recently sent to Defendants regarding three class members who died by suicide between January 5 and February 3, 2021 (Redacted) |
| 2 | Letters Plaintiffs have recently sent to Defendants regarding class members in need of mental health treatment (Redacted) |
| 3 | Defendants' mortality review regarding a class member who died by suicide in September 2020 (ADCRRM0005585 – 5588) (Filed Under Seal) |

# EXHIBIT 1

January 15, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com



**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

**National Prison Project**
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

**David C. Fathi**
*Director*
*Attorney at law\**

*\*Not admitted in DC;*
*practice limited to*
*federal courts*

> Re:   ***Parsons v. Shinn*** **– Notification of deficiencies in the care of** ███████████████, **prior to his death by suicide**

Dear Mr. Bojanowski:

Plaintiffs write to call your attention to the deficiencies in the mental health care provided to ██████████████████, in the weeks leading up to his suicide by hanging on ████████████.

████████ was placed onto suicide watch on December 14, 2020. He remained on watch until December 21, 2020. His mental health care consisted of eight daily mental health watch contacts while he remained on watch, two follow-up contacts, and an appointment with a Nurse Practitioner on December 31, 2020, because ████████ had been "referred for evaluation." (See 12/31/20 Psychiatric Progress Note) He hanged himself on ██████████. (See ██████ Nurse – ICS Response; ████████ Administrative – Health Records Lock)

Most of the mental health encounters ████████ had ████████ leading up to his suicide did not meet the minimum duration requirements of the Court's order in this matter. (See Doc. 3518)

Of the eight mental health watch contacts, five did not meet the definition of "seen", in that the time spent with ████████ was less than 10 minutes:

| MH – Individual Counseling, 12/14/20 (Suicide Watch Progress Note – Initial Visit) | 10 minutes including "staff consultation and record review"[1] |
|---|---|

---

[1] The Court's order requires that watch-related visits be a minimum of ten minutes in duration. Doc. 3518. There is no basis in the Court's order for Defendants to count other activities such as "staff consultation and record review" toward the ten-minute minimum.

Patient 1

| MH – 10 Minute Watch Contact, 12/17/20 | 2 minutes |
|---|---|
| MH – 10 Minute Watch Contact, 12/19/20 | 10 minutes including "staff consultation and record review" |
| MH – 30 Minute Watch Contact, 12/20/20 | 10 minutes including "staff consultation and record review" |
| MH – 30 Minute Watch Contact, 12/21/20 | 10 minutes including "staff consultation and record review" |



The only non-watch mental health encounter ▮▮▮▮ had ▮▮▮▮▮ leading up to his suicide was a scheduled appointment with a nurse practitioner for the purpose of evaluating him.  (*See* 12/31/20 Psychiatric Progress Note)  This evaluation lasted just 20 minutes.  (*Id.*; *cf.* Doc. 3518) (imposing a 30-minute minimum on non-watch-related encounters).  The nurse practitioner identified no risks and no diagnosis other than "H/o chronic heroin and meth use, last use a few weeks ago."  (*See* 12/31/20 Psychiatric Progress Note)  Although ▮▮▮▮▮ reported that his very recent use of methamphetamine had led to paranoia and hallucinations, no further follow-up was ordered and no risks were identified. (*Id.*)

▮▮▮▮'s suicide ▮▮▮▮▮▮▮▮ is a tragic demonstration of the inadequacy of mental health encounters that do not meet the minimum duration requirements established by the Court.

Sincerely,

Maria Morris

cc:     All counsel

Patient 1

February 2, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div align="center">

Re:   *Parsons v. Shinn* – **Notification of deficiencies in the care of** █████████████████████, **prior to his death by suicide**

</div>



**National Prison Project**
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

Dear Mr. Bojanowski:

Plaintiffs write to call your attention to the deficiencies in the mental health care provided to ████████████████████████, in the ████ ████ between his admission to ADC and his suicide by hanging in the early hours of ████████████.

████████████ saw mental health staff for just 5 minutes for his initial mental health assessment.  (*See* Ex. 1, Initial Mental Health Assessment, 1/14/21)  During that assessment, he informed the psychologist that he suffered from depression and anxiety, and had discontinued medications for depression and anxiety just two weeks earlier.  No subsequent appointments were scheduled.  (*See medical record generally*)  This brief encounter was clearly inadequate to determine ██████████'s mental health needs.

On January 25, 2021, ████████████ submitted a Health Needs Request, stating that he needed to see a mental health professional because he was hearing voices, and that the voices had returned since his medications were stopped.  (*See* Ex. 2, 2021_01_25 HNR Pt. req. to see Mental Health) He was scheduled to see a nurse on January 27, 2021, but he was not seen. (*See* Ex. 3, Nurse - Sick Call – Scheduled, 1/27/21)  The reason given in the medical record for why he was not seen was that he was "released".  However, ████████████ was still in custody on the morning of January 27, 2021.  Not receiving the mental health care he needed and requested, and not even being seen by a nurse in response to his request, he died by suicide ████████.  (*See* Ex. 4, Nurse - Man-Down Response, ██████).
The failure to see ████████████ on January 27 was a violation of PM 37.

████████████'s suicide reflects the inadequacy of mental health encounters that are so brief staff have little chance of identifying mental health needs. The gross inadequacy of the initial mental health assessment

was then exacerbated by the failure to comply with the requirement to timely respond to Health Needs Requests.

Sincerely,

Maria Morris

cc:     All counsel



February 24, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div style="margin-left:2em">

**Re:**   ***Parsons v. Shinn*** **– Notification of deficiencies in the care of** ████████████████, **prior to his death by suicide**

</div>

Dear Mr. Bojanowski:

Plaintiffs write to call your attention to the deficiencies in the mental health care provided to ██████████████, prior to his suicide by hanging on █████████████. Notably, ██████████'s suicide was the third in a single month in ADCRR, and the seventh of the current fiscal year.

According to his medical records, ████████ was diagnosed with PTSD, Schizoaffective Disorder, Psychotic Disorder and Episodic Mood Disorder. He was classified as SMI and had a mental health code of MH-4. He had been housed in the ███████████████████████ since March 2019.

The mental health care ██████████ received immediately prior to his suicide was deficient.

████████ was scheduled for 1:1 individual counseling on February 2, 2021. (*See* Appointments: MH – Individual Counseling, 2/2/2021; Mental Health Progress Note, 1/7/2021) That appointment was cancelled. (*See* Appointments: MH – Individual Counseling, 2/2/2021) The only reason given for the cancellation was that he had been "released". His "release" – namely, his death by suicide – occurred on █████████████ *after* the counselor failed to conduct the scheduled counseling. Because the counseling appointment did not happen as scheduled, the counselor did not have the opportunity to recognize that his mental state had deteriorated to the point that he would die by suicide ██████████.

Also on February 2, 2021, ██████████ was scheduled to see a Mid-level provider regarding his psychiatric medications. This appointment did occur, but was just 15-20 minutes long, in violation of the Court's order regarding the duration of mental health treatment encounters. (*See* Psychiatry Progress Note, 2/2/2021; Doc. 3518)



**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law*\*

\*Not admitted in DC;
practice limited to
federal courts

████████'s suicide is yet another tragic example of the harm flowing from the systemic inadequacy of mental health care in ADCRR.

Sincerely,

Maria Morris

cc:      All counsel



# EXHIBIT 2

LEGAL DEPARTMENT
NATIONAL PRISON
PROJECT



September 24, 2020

**BY ELECTRONIC MAIL ONLY**

Timothy Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

> Re:   *Parsons v. Shinn* – **patient in need of mental health treatment**
>       ████████, ADC No. ████, ASPC-F Kasson MHU

Dear Tim:

AMERICAN
CIVIL
LIBERTIES UNION
FOUNDATION

PLEASE RESPOND TO
NATIONAL PRISON PROJECT
915 15TH STREET, NW
7TH FLOOR
WASHINGTON, DC 20005-2112
T/202.393.4930
F/202.393.4931
WWW.ACLU.ORG

DAVID C. FATHI
DIRECTOR
ATTORNEY AT LAW*

*NOT ADMITTED IN DC:
PRACTICE LIMITED TO
FEDERAL COURTS

Plaintiffs write with concern regarding ████████, ADC No. ████, a class member in urgent need of adequate mental health care who is currently housed at ASPC-F Kasson MHU. Mr. ████ is classified as SMI and carries a mental health score of 4-Admitted Outpatient Specialized MH Program.

Mr. ████ is diagnosed with unspecified anxiety disorder and schizophrenia (unspecified), and regularly experiences severe anxiety, depression, and command auditory hallucinations. Since January 2020, Mr. ████ has been placed on mental health watch eight times, with seven of those placements due to acts of self-harm, threatened self-harm, and expressions of suicidal ideation. On 9/15/2020, the date of Mr. ████'s most recent placement on mental health watch, Mr. ████ reported experiencing command auditory hallucinations telling him to "bow to evil," and stated that his "mind was racing with thoughts of hurting himself to get away from the evil in his pod." *See*, 9/15/2020 Sick Call – Unscheduled eOMIS note. The psych associate for that mental health encounter later wrote that Mr. ████ was "incoherent, confused, disoriented, and scared." *Id.* On 9/17/2020, Mr. ████ reported that he "hear[s] voices, but they are real, they are there." *See*, 9/17/2020 10 Minute Watch Contact eOMIS note. The psych associate for that encounter noted that Mr. ████ presented as "unstable" and "mentally decompensated," and that while Mr. ████ was educated on coping skills to address his auditory hallucinations, "he was not receptive believing that his AH [auditory hallucinations] is real." *Id.* On 9/18/2020, Mr. ████ reported that "he does have AH all the time." *See*, 9/18/2020 10 Minute Watch Contact eOMIS note.

Further aggravating Mr. ████'s severe symptoms is his consistent medication non-compliance. Mr. ████ has been prescribed Olanzepine, to be taken every evening, for his schizophrenia diagnosis since 3/17/2020 and Clonidine, to be taken every evening as needed, for his unspecified anxiety disorder diagnosis since 8/3/2020. *See*, eOMIS Drug Prescription Orders. Since 3/17/2020, Mr. ████ has refused his Olanzepine medication 61 times, with 9/20/2020 being the date of his most recent refusal. *See*, Olanzapine Tab (Zyprexa) eOMIS Medication Administration Record. Since 8/3/2020, Mr. ████ has refused his Clonidine

medication 6 times, with 9/12/2020 being the date of his most recent refusal. *See*, Clonidine Hcl Tab (Catapres) eOMIS Medication Administration Record.

As well, the counseling Mr. ▮▮▮▮ has received has been so minimal that it violates the Stipulation. In order to be "seen" for a mental health encounter within the meaning of the Stipulation, the non-watch counseling sessions must be at least 30 minutes long, and watch encounters must be at least 10 minutes long. *See*, Doc. 3518 at 3-5. The following mental health encounters for Mr. ▮▮▮▮ since the Court's March 11, 2020 order fell short of these minimum durations:

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

| Date | Nature of Encounter | Duration |
|------|---------------------|----------|
| 3/17/2020 | Individual Counseling | 7 minutes |
| 3/17/2020 | Mid-Level - Unscheduled | not recorded |
| 3/19/2020 | 10 minute Watch Contact | 7 minutes |
| 3/20/2020 | 10 minute Watch Contact | 7 minutes |
| 3/21/2020 | 30 minute Watch Contact | not recorded |
| 3/22/2020 | 30 minute Watch Contact | not recorded |
| 3/23/2020 | Mid-level - Scheduled | not recorded |
| 3/23/2020 | 30 minute Watch Contact | not recorded |
| 3/24/2020 | Segregation Visit | not recorded |
| 3/26/2020 | Sick Call - Unscheduled | 12 minutes |
| 3/30/2020 | Individual Counseling | not recorded |
| 4/8/2020 | Sick Call - Unscheduled | 6 minutes |
| 4/14/2020 | Individual Counseling | 5 minutes |
| 4/25/2020 | Psychiatric Nurse - Scheduled | 4 minutes |
| 4/26/2020 | Constant Watch Contact | 3 minutes |
| 4/29/2020 | 10 minute Watch Contact | 8 minutes |
| 4/30/2020 | 30 minute Watch Contact | 8 minutes |
| 5/2/2020 | 30 minute Watch Contact | 2 minutes |
| 5/3/2020 | 30 minute Watch Contact | 6 minutes |
| 5/5/2020 | Individual Counseling | 10 minutes |
| 5/15/2020 | Individual Counseling | 10 minutes |
| 5/19/2020 | Segregation Visit | 20 minutes |
| 5/20/2020 | Individual Counseling | 5 minutes |
| 6/2/2020 | Segregation Visit | 5 minutes |
| 6/5/2020 | Sick Call - Unscheduled | 5 minutes |
| 6/7/2020 | 10 minute Watch Contact | 4 minutes |
| 6/8/2020 | 10 minute Watch Contact | 5 minutes |
| 6/10/2020 | Individual Counseling | 10 minutes |
| 6/14/2020 | Constant Watch Contact | 5 minutes |
| 6/15/2020 | Constant Watch Contact | 8 minutes |
| 6/16/2020 | 10 minute Watch Contact | 6 minutes |
| 6/17/2020 | 10 minute Watch Contact | 8 minutes |
| 6/19/2020 | Individual Counseling | 4 minutes |
| 6/25/2020 | Individual Counseling | 25 minutes |
| 6/29/2020 | Psychiatric Nurse - Scheduled | 5 minutes |

| 7/10/2020 | Psychiatric Nurse - Scheduled | 6 minutes |
|-----------|-------------------------------|-----------|
| 7/13/2020 | Segregation Visit | 10 minutes |
| 7/31/2020 | Segregation Visit | 20 minutes |
| 8/25/2020 | Individual Counseling | 10 minutes |
| 8/26/2020 | Sick Call - Unscheduled | 17 minutes |
| 8/27/2020 | 10 minute Watch Contact | 5 minutes |
| 8/29/2020 | 30 minute Watch Contact | 8 minutes |
| 8/30/2020 | 30 minute Watch Contact | 5 minutes |
| 9/1/2020 | Psychiatric Nurse - Scheduled | 5 minutes |
| 9/8/2020 | Psychiatric Nurse - Scheduled | 6 minutes |
| 9/15/2020 | Sick Call - Unscheduled | 20 minutes |
| 9/16/2020 | 10 minute Watch Contact | 5 minutes |
| 9/22/2020 | Psychiatric Nurse - Scheduled | 8 minutes |

We ask that Mr. ███ be transferred on an urgent basis to ASPC-Phoenix to address his severe and dangerous psychotic symptoms and his ongoing medication noncompliance.  If a determination is made that it is not safe to transfer Mr. ███ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or doctoral-level psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred.  The transfer to ASPC-Phoenix should be effected as soon as possible.

Very truly yours,

Curtis Harris
Litigation Fellow

cc:      All counsel

AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION

3

October 23, 2020

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com



National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

Re:   ***Parsons v. Shinn*** **– patient in urgent need of mental health treatment**
█████████, **ADC No.** █████, **ASPC-Florence IPC**

Dear Mr. Bojanowski:

Plaintiffs write regarding █████████, ADC No. █████, a class member in urgent need of adequate mental health care who is currently housed in the infirmary at ASPC-Florence.

Mr. █████ is classified as SMI, carries a mental health score of MH-3A, and is diagnosed with borderline personality disorder and chronic post-traumatic stress disorder.   He is currently prescribed Zyprexa and Cymbalta.

Mr. █████ was previously housed in various mental health units at ASPC-Phoenix from late July 2019 until his transfer to the Florence infirmary in mid-September 2020.  It appears from his medical records that Mr. █████ has been continuously on watch since July 30, 2020, except August 12-18, 2020.  He has engaged in serious self-harm, repeatedly opening a wound in his stomach, stabbing himself in his stomach, and inserting objects into the wound in his stomach.  (*See* Provider – Review, 8/18/20; Nurse – Infirmary Assessment, 9/21/20; Nurse – ICS Response, 10/18/20).  Each of these incidents was sufficiently serious that Mr. █████ had to be taken to the hospital.  According to eOMIS, he remained in the hospital from the October 18, 2020 incident until yesterday.

We also note that several of Mr. █████'s recent mental health encounters have been very short, in violation of the Court's order in this matter (*see* Doc. 3518), and despite Mr. █████'s obvious need for care.  (*See, e.g.,* Psychiatry Progress Note & AIMS Review, 9/16/20 (10 minutes); Mental Health Progress Note & Mental Health Treatment Plan Review, 9/15/20 (10 minutes); Psychiatry Progress Note, 8/28/20 (10 minutes)).

Mr. ▮▮▮▮▮ appears to need more intensive mental health care than ADC is able to provide.  We ask that Mr. ▮▮▮▮▮ be transferred to an outside psychiatric hospital on an urgent basis.  If a determination is made that it is not safe to transfer Mr. ▮▮▮▮▮ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or doctoral-level psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred (*see* Doc. 3518).  The transfer to should be effected as soon as possible.

Sincerely,

Maria Morris

cc:     All counsel

October 23, 2020

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com



**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law**

*Not admitted in DC;
practice limited to
federal courts

Re:   *Parsons v. Shinn* – patient in urgent need of mental health treatment
▇▇▇▇▇▇▇▇▇▇, ADC No. ▇▇▇▇, ASPC-Eyman, Browning

Dear Mr. Bojanowski:

Plaintiffs write regarding ▇▇▇▇▇▇▇▇, ADC No. ▇▇▇, a class member in urgent need of adequate mental health care who is currently housed at ASPC-Florence, Kasson.

Mr. ▇▇▇▇▇ is diagnosed with schizoaffective disorder and chronic post-traumatic stress disorder, but is not classified as SMI.  He carries a mental health score of MH-3B.   He is currently prescribed Zoloft and Seroquel.

Mr. ▇▇▇▇▇ was continuously on watch from August 4, 2020 through September 17, 2020.

Mr. ▇▇▇▇▇ was recently recognized by mental health staff as suffering from delusions, paranoia, auditory hallucinations telling him to harm himself or others, violent thoughts and agitation.  (*See* Psychiatry Progress Note, 10/22/20; Psychiatry Progress Note, 10/1/20; *see also* Suicide Watch Progress Note - Follow Up, 10/8/20).

We also note that one of Mr. ▇▇▇▇▇▇'s recent mental health encounters was, in violation of the Court's order in this matter (*see* Doc. 3518), and despite Mr. ▇▇▇▇▇'s obvious need for care.  (Psychiatry Progress Note, 10/1/20 ("7 to 15 minutes" for appointment and preparation);

We ask that Mr. ▇▇▇▇▇ be transferred to ASPC-Phoenix on an urgent basis.  If a determination is made that it is not safe to transfer Mr. ▇▇▇▇▇ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or doctoral-level psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with

6

Court-ordered minimum durations until he is transferred (see Doc. 3518).  The transfer to ASPC-Phoenix should be effected as soon as possible.

Sincerely,

Maria Morris

cc:      All counsel



November 10, 2020

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com



ACLU
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

      Re:    *Parsons v. Shinn* – **patient in urgent need of mental health treatment**
                                      **▇▇▇▇▇▇, ADC No. ▇▇▇, ASPC-Eyman, Cook**

Dear Mr. Bojanowski:

Plaintiffs write regarding ▇▇▇▇▇▇, ADC No. ▇▇▇, a class member in urgent need of adequate mental health care who is currently housed at ASPC-Eyman, Cook.

Mr. ▇▇▇ is diagnosed with bipolar disorder, schizophrenia, major depression, and anxiety.  He is classified as SMI.  He carries a mental health score of MH-3A.  He is currently prescribed Wellbutrin.

Mr. ▇▇▇ reports having auditory hallucinations.  He has been recognized by staff as seeming depressed and anxious.  (*See* Individual Counseling note, 10/15/20)  The psychologist who has seen him most recently found that he "appears to need more mental health resources than are available at this location" and that he is "a good candidate for referral to the MTU." (*Id.*)

Despite the serious nature of Mr. ▇▇▇'s diagnoses, his ongoing symptoms, and the recognition by mental health staff that he needs more treatment than he is receiving, he mental health care since the beginning of August has consisted of just two individual counseling sessions and an encounter with the psychiatrist.  (*See* Individual Counseling note, 10/15/20; Individual Counseling note, 8/27/20; Psychiatry Progress Note, 8/27/20)  None of Mr. ▇▇▇'s recent mental health encounters have satisfied the Court's order in this matter (*see* Doc. 3518):

| Individual Counseling note, 10/15/20 | 25 minutes |
| --- | --- |
| Individual Counseling note and Treatment Plan Review, 8/27/20 | 10 minutes |
| Psychiatry Progress Note, 8/27/20 | 10-20 minutes for "face to face appointment and Clinical preparation" |

8

Additionally, there are two notes in Mr. ██████'s record that he was to be seen for mental health care on October 5 and October 29, but that on these two dates, he was not seen because "he [was] under COVID-19 quarantine lockdown." (*See* Non-Clinical Contact Note, 10/5/20; Non-Clinical Contact Note, 10/29/20)  During the same time period, there is nothing in Mr. █████'s notes indicating that he was sick with COVID-19, and he was seen by medical staff on several occasions.  (*See, e.g.,* Medical Provider Follow Up Care, 10/29/20; Medical Provider Follow Up Care, 10/6/20) His scheduled mental health care should have occurred.

We ask that Mr. ██████ be transferred to a location where he can access the mental health treatment he needs on an urgent basis.  If a determination is made that it is not safe to transfer Mr. ██████ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or doctoral-level psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred (see Doc. 3518).  The transfer should be effected as soon as possible.



Sincerely,

Maria Morris

cc:    All counsel

December 3, 2020

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com



**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

\*Not admitted in DC;
practice limited to
federal courts

       **Re:**    *Parsons v. Shinn* – **patient in urgent need of mental health treatment**
             █████████, **ADC No.** █████, **ASPC-Eyman, SMU I**

Dear Mr. Bojanowski:

Plaintiffs write regarding ████████, ADC No. █████, a class member in urgent need of adequate mental health care who is currently housed at ASPC-Eyman SMU I.

Mr. █████ is diagnosed with Narcissistic Personality Disorder.  He is classified as SMI.  He carries a mental health score of MH-3A.  He is not currently prescribed any psychiatric medications.

Mr. █████ has been on mental health watch, continuously or nearly so, since November 11, 2020, after having come off watch on November 4. He has been on mental health watch five times since the beginning of July. Prior to July, he had not been on a watch since August 2019.  On November 11, it was noted that he was "unstable, mentally decompensated from baseline."  (*See* MH – Sick Call – Unscheduled, 11/11/20)  On November 16, 2020, mental health staff noted that "[patient] has been to multiple programs and is not able to return. [Patient] is unable to go to a MH program at this time."  (*See* MH – Non-Clinical Contact Note, 11/16/20).

Despite recognition of the deterioration of his mental health, his recent mental health care has been minimal.  In the last three months, only one of Mr. █████'s recent non-watch mental health encounters have satisfied the Court's order in this matter (*see* Doc. 3518):

| Psychiatry Progress Note, 11/23/20 | 20 minutes |
| MH – Sick Call – Unscheduled, 11/11/20 | 18 minutes |
| MH – Individual Counseling, 11/5/20 | 18 minutes |
| MH – Sick Call – Unscheduled, 10/21/20 | 15 minutes |

| MH – Sick Call – Unscheduled, 10/20/20 | 7 minutes |
|---|---|
| MH – Individual Counseling and Treatment Plan Review, 10/8/20 | 35 minutes |
| Psychiatry Progress Note, 9/17/20 | 20 minutes |
| MH – Psychiatric Nurse – Scheduled, 9/14/20 | No time listed |
| Psychiatry Progress Note, 9/8/20 | 5 minutes |

Additionally, several of Mr. ███'s watch related encounters have failed to meet the requirements set forth by the Court.  During the month of November, the following watch-related encounters lasted less than ten minutes or did not indicate the duration:



| MH – 30 Minute Watch Contact, 11/27/20 | 5 minutes |
|---|---|
| MH – 30 Minute Watch Contact, 11/26/20 | no time listed |
| MH – 30 Minute Watch Contact, 11/25/20 | 5 minutes |
| MH – Constant Watch Contact, 11/23/20 | 5 minutes |
| MH – 10 Minute Watch Contact, 11/16/20 | Unknown duration because time listed includes "face to face, chart review, and team staffing" |

During this watch, Mr. ███ hanged himself and had to be taken to a hospital.  (*See* Suicide Watch Progress Note-Initial Visit, 11/20/20)

We ask that Mr. ███ be transferred to a location where he can access the mental health treatment he needs on an urgent basis.  The fact that he has been to multiple mental health programs should not prevent him from receiving the care he needs.

If a determination is made that it is not safe to transfer Mr. ███ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or doctoral-level psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is

transferred (see Doc. 3518).  The transfer should be effected as soon as possible.

Sincerely,

Maria Morris

cc:      All counsel



January 25, 2021

**BY ELECTRONIC MAIL ONLY**


Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div style="text-align:center">

Re:   *Parsons v. Shinn* – **patient in urgent need of mental
health treatment**

████████████, **ADC #** █████   **ASPC-Yuma CDU**

</div>



Dear Mr. Bojanowski:

Plaintiffs write regarding ████████████, ADC # █████, a class
member in urgent need of adequate mental health care who is currently
housed at ASPC-Yuma CDU.

Mr. ████ is diagnosed with schizoaffective disorder.  He is classified as
SMI.  He carries a mental health score of MH-3A.   He is currently
prescribed Olanzapine and Buspar.

Mr. ████ was in the Flamenco mental health unit at ASPC-Phoenix from
August 2018 through March 17, 2020.  At that point, he had no signs of
psychosis, and had not been on mental health watch since he was moved
to Flamenco.  (*See* Mental Health Progress Note, 3/16/20, *and generally*
mental health records)  Since he was discharged from Flamenco, he has
been on suicide watch 3 times, April 24-27, June 9-July 20, and August 7-
10, 2020.  (*See* generally mental health records) His mental health has
deteriorated significantly since his discharge from Flamenco, especially in
recent weeks.   He reports paranoia, demeaning hallucinations, racing
thoughts, and anxiety.  (MH-Individual Counseling, 1/20/21; Psychiatry
Progress Note, 1/6/21)

Moreover, with regard to the 41-day stint on suicide watch last summer,
such an extended period on watch creates a substantial risk of serious harm.[1]
Further, the Constitution requires treatment of individuals with suicidal

---

[1] *See* United States Department of Justice, Civil Rights Division, November 17, 2020
Report on Investigation of the Massachusetts Department of Corrections, available at
https://www.justice.gov/opa/press-release/file/1338071/download (last visited January
25, 2021), at 17-18 (citing *Rasho v. Walker*, 376 F. Supp. 3d 888, 910-11 (C.D. Ill. 2019)
("Because these prisoners are already experiencing a mental health crisis, 14 days in the
restrictive conditions described above subjects them to a substantial risk of serious harm.)

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

tendencies, and treatment is "more than segregation and close supervision of the inmate patients."[2]  Brief encounters of 5-10 minutes for the purpose of determining suicidality are not treatment.[3]  Treatment includes interventions such as "counseling, group therapy, individual psychotherapy, or … therapeutic activities."[4]  Mr. ██████ did not receive such interventions while on watch.

In recent months, several of Mr. ██████'s non-watch mental health encounters have not satisfied the Court's order in this matter regarding minimum duration (*see* Doc. 3518):

| | |
|---|---|
| MH – Mid-Level – Scheduled, 1/6/21 | 20 minutes |
| MH – Individual Counseling & Treatment Plan, 12/7/20 | 20 minutes |
| MH – Mid-Level – Scheduled, 12/4/20 | 18 minutes |
| MH – Individual Counseling, 11/10/20 | 18 minutes |
| MH – Individual Counseling, 10/14/20 | 20 minutes |

The risk from limiting mental health encounters can be seen from Mr. ██████'s records.  He was seen by a psychiatrist for 12 minutes on June 9, 2020.  (*See* Psychiatry Progress Note, 6/9/20)  In this brief encounter, the psychiatrist did not recognize that Mr. ██████ was in crisis, although he was aware that Mr. ██████ was experiencing auditory hallucinations. (*Id.*)  Later the same day, Mr. ██████ was moved to suicide watch after reporting "suicidal and homicidal thoughts" and that "voices tell me I will die anyway." (*See* Cell-Front Visit Checklist, 6/9/20)

//

//

//

//

---

[2] *Id.* at 12 (citing *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980*), rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982); *Braggs v. Dunn*, 257 F. Supp. 3d, 1171, 1206 n.34 (M.D. Ala. 2017); *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995); *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984).
[3] *Id.* at 12-13.
[4] *Id.*

ACLU
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

In light of Mr. ▮▮▮▮'s decompensation, we ask that he be transferred to ASPC-Phoenix on an urgent basis.  If a determination is made that it is not safe to transfer Mr. ▮▮▮ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred (*see* Doc. 3518).  The transfer should be effected as soon as possible.

Sincerely,

Maria Morris

cc:      All counsel

15

January 25, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div align="right">

Re:    *Parsons v. Shinn* – **patient in urgent need of mental
health treatment**

**, ADC No.         ASPC-
Florence, Kasson**

</div>

Dear Mr. Bojanowski:

Plaintiffs write regarding ███████████, ADC No. ██████, a class
member in urgent need of adequate mental health care who is currently
housed at ASPC-Florence Kasson.  He was moved from ASPC-Lewis Rast
on January 13, 2021.

Mr. ████████ is diagnosed with an unspecified mood disorder and an
unspecified depressive disorder.  He is not classified as SMI.  He carries a
mental health score of MH-3B.   He is currently prescribed Risperdal and
Remeron.

Mr. ████████ has been on mental health watch continuously for 83 days,
since November 4, 2020.  While on watch, he engaged in a sufficiently
serious suicide attempt on December 4 that he required overnight
hospitalization.   (*See* MH - Sick Call – Unscheduled, 12/4/20; MH - Non-
Clinical Contact Note, 12/5/20) While still on watch on December 16, he
engaged in further self harm and reported auditory hallucinations.  (*See* MH
– Segregation Visit, 12/16/20)  He again engaged in self harm and had to
go out to the emergency room on December 18.  (*See* MH - Constant Watch
Contact, 12/18/20)  He was been on constant watch from his return to
ASPC-Lewis from the hospital on December 6, 2020 through January 15,
2021.  From August through October 2020, Mr. ████████ was on watch
three times:  8/7/20-9/1/20, 9/19/20-9/28/20, and 10/12-21.  The longest he
has been off watch since the start of August 2020 is 18 days.

As the U.S. Department of Justice ("DOJ") recently explained, the use of
mental health watch for prolonged periods of time subjects incarcerated
people experiencing mental health crises, such as Mr. ████████, to a

<div style="float: left;">

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

</div>

16

substantial risk of serious harm.[1]  Notably, Mr. ███████ has been on a mental health watch for longer than all but one of the DOJ's examples of prolonged watches that put incarcerated individuals at risk.[2]

Mr. ███████ is recognized as having delusional beliefs and engaging in self harm.  (*See* Treatment Plan Review, 1/5/2021)  When he was placed on watch on November 4, it was noted that psychosis was evident.  (*See* Suicide Watch Progress Note – Initial Visit, 11/4/20)  Despite the severity of his mental health needs, his recent mental health care has been minimal.  The Constitution requires treatment of individuals with suicidal tendencies, and treatment is "more than segregation and close supervision of the inmate patients."[3]  Brief encounters of 5-10 minutes for the purpose of determining suicidality are not treatment.[4]  Treatment includes interventions such as "counseling, group therapy, individual psychotherapy, or … therapeutic activities."[5]  Mr. ███████ has not received such interventions.

Since November, none of Mr. ███████'s non-watch mental health encounters have satisfied the Court's order in this matter regarding minimum durations (*see* Doc. 3518):

| | |
|---|---|
| MH - Mid-Level – Scheduled, 1/8/21 | 10 minutes |
| Treatment Plan Review, 1/5/21 (conducted during "segregation visit" on same day; only visit listed on 1/5/21 is Constant Watch Contact) | 9 minutes |
| MH - Mid-Level – Scheduled (includes AIMS Review), 12/11/20 | 10 minutes |
| MH - Treatment Plan Review (conducted during MH - Constant Watch Contact), 12/8/20 | 11 minutes |
| MH - Mid-Level – Scheduled, 12/1/20 | 15 minutes |

---

[1] *See* United States Department of Justice, Civil Rights Division, November 17, 2020 Report on Investigation of the Massachusetts Department of Corrections, available at https://www.justice.gov/opa/press-release/file/1338071/download (last visited January 25, 2021), at 17-18 (citing *Rasho v. Walker*, 376 F. Supp. 888, 910-11 (C.D. Ill. 2019) ("Because these prisoners are already experiencing a mental health crisis, 14 days in the restrictive conditions described above subjects them to a substantial risk of serious harm.)
[2] *Id*. at 18-19.
[3] *Id*. at 12 (citing *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980)*, rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982); *Braggs v. Dunn*, 257 F. Supp. 3d, 1171, 1206 n.34 (M.D. Ala. 2017); *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995); *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984).
[4] *Id*. at 12-13.
[5] *Id*.

17

| MH – Sick Call – Unscheduled, 11/11/20 | 18 minutes |
| MH – Individual Counseling, 11/5/20 | 18 minutes |

Additionally, many of Mr. █████████'s watch related encounters have failed to meet the requirements set forth by the Court.   During the current 83-day stint on watch, the following watch-related encounters lasted less than ten minutes or did not indicate the duration:



| MH – Constant Watch Contact, 1/10/2021 | 6 minutes |
| MH – Constant Watch Contact, 1/8/2021 | 2 minutes |
| MH – Constant Watch Contact, 1/7/2021 | 4 minutes |
| MH – Constant Watch Contact, 1/6/2021 | 5 minutes |
| MH - Constant Watch Contact, 1/5/2021 | 9 minutes |
| MH - Constant Watch Contact, 1/4/21 | 5 minutes |
| MH - Constant Watch Contact, 1/3/21 | 6 minutes |
| MH - Constant Watch Contact, 1/1/21 | 6 minutes |
| MH - Constant Watch Contact, 12/28/20 | 10 minutes including staff consultation and record review |
| MH - Constant Watch Contact, 12/25/20 | 5 minutes |
| MH - Constant Watch Contact, 12/24/20 | 4 minutes |
| MH - Constant Watch Contact, 12/23/20 | 9 minutes |



| MH - Constant Watch Contact, 12/22/20 | 2 minutes |
|---|---|
| MH - Constant Watch Contact, 12/20/20 | 9 minutes |
| MH - Constant Watch Contact, 12/17/20 | 5 minutes |
| MH - Constant Watch Contact, 12/16/20 | 5 minutes |
| MH - Constant Watch Contact, 12/15/20 | 7 minutes |
| MH - Constant Watch Contact, 12/14/20 | 6 minutes |
| MH - Constant Watch Contact, 12/13/20 | 10 minutes including staff consultation and record review |
| MH - Constant Watch Contact, 12/10/20 | 7 minutes |
| MH - Constant Watch Contact, 12/9/20 | 9 minutes |
| Suicide Watch Progress Note-Initial Visit, 12/7/20 | 7 minutes |
| MH - 10 Minute Watch Contact, 12/1/20 | 7 minutes |
| MH – 30 Minute Watch Contact, 11/29/20 | No time listed |
| MH – 30 Minute Watch Contact, 11/27/20 | 1 minute |
| MH – 30 Minute Watch Contact, 11/26/20 | no time listed |
| MH – 30 Minute Watch Contact, 11/25/20 | 5 minutes |
| MH – Constant Watch Contact, 11/23/20 | 5 minutes |

19

| MH – 10 Minute Watch Contact, 11/16/20 | Unknown duration because time listed includes "face to face, chart review, and team staffing" |
|---|---|

We ask that Mr. ███████ be transferred to ASPC-Phoenix on an urgent basis. If a determination is made that it is not safe to transfer Mr. ███████ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred (*see* Doc. 3518). The transfer should be effected as soon as possible.

Sincerely,

Maria Morris

cc:     All counsel

20

February 2, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div align="center">

Re:   *Parsons v. Shinn* – **patient in urgent need of mental health treatment**
      ████████████, **ADC No.** ████, **ASPC-Tucson, Rincon**

</div>



Dear Mr. Bojanowski:

Plaintiffs write regarding ████████████, ADC No. ████, a class member in urgent need of adequate mental health care who is currently housed at ASPC-Tucson, Rincon.

Mr. ████████ is diagnosed with Bipolar Disorder, Borderline Personality Disorder, Antisocial Personality Disorder and Schizoaffective Disorder. He is not classified as SMI. He carries a mental health score of MH-4. He is currently prescribed Sertraline and Risperidone.

Mr. ████████ was placed on constant watch at ASPC-Tucson, Rincon on December 8, 2020, after making a statement about hanging himself. (Suicide Watch Progress Note – Initial Visit, 12/8/20) Two hours later, while purportedly on constant watch, Mr. ████████ engaged in serious self-injurious behavior, cutting himself so deeply that he cut into the muscles of his arm. (Nurse – ICS Response, 12/8/20). He reported that he had cut himself 10-20 minutes earlier, and the nurse noted that he was "covered in dried blood." (Id.) Mr. ████████ reported that he had also swallowed razor blades, which was confirmed at the hospital. (*Id.*; Nurse - Return from Offsite, 12/9/20) On December 10, 2020, Mr. ████████ rated his current symptoms as "his depression at a 9 out of 10 (10 being the worst) and anxiety at a 7 out of 10 (10 being the worst)", but received no care other than a 19 minute "Constant Watch Contact". (MH - Constant Watch Contact, 12/10/20) Twice that day, Mr. ████████ attempted to reopen his wounds. (See Nurse – ICS Response, 12/10/20, 9:59; Nurse – ICS Response, 12/10/20, 16:01) On December 11, 2020, he removed most of the stitches in his arm. (Nurse – ICS Response, 12/11/20, 12:30) The same day

**ACLU**

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC; practice limited to federal courts*

he reported that he had again swallowed several razor blades. (Nurse – ICS Response, 12/11/20, 19:21)   There is no indication that he was taken to the hospital.  He again removed all his stitches on December 12, 2020.  (Nurse – ICS Response, 12/12/20)   Mr. ███████ remained on watch until December 21, 2020.  (MH – 30 Minute Watch Contact, 12/21/20).

Despite the severity of his mental health needs, his recent mental health care has been minimal.  The Constitution requires treatment of individuals with suicidal tendencies, and treatment is "more than segregation and close supervision of the inmate patients."[1]   While most of the watch-related encounters met the durational requirements of the Court's order in this matter, they were brief, mostly cell-front, and focused on determining suicidality.   Such encounters are not treatment.[2] Treatment includes interventions such as "counseling, group therapy, individual psychotherapy, or … therapeutic activities."[3]   Mr. ███████ did not receive such interventions.

The following mental health encounters with Mr. ███████ did not satisfy the Court's order in this matter regarding minimum durations (*see* Doc. 3518):

| MH - Mid-Level – Scheduled, 1/28/2021 | 15-20 minutes |
| MH - Mid-Level – Scheduled 1/14/2020 | 20-25 minutes |
| MH – Sick Call – Scheduled[4] (includes Treatment Plan Update), 1/14/2020 | 5 minutes |

We ask that Mr. ███████ be provided the mental health care he needs, whether at ASPC-Tucson, Rincon or through a transfer to ASPC-Phoenix.  He should be closely followed by a psychiatrist or psychologist, and receive

---

[1] *See* United States Department of Justice, Civil Rights Division, November 17, 2020 Report on Investigation of the Massachusetts Department of Corrections, available at https://www.justice.gov/opa/press-release/file/1338071/download (last visited January 25, 2021), at 12 (citing *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980)*, rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982); *Braggs v. Dunn*, 257 F. Supp. 3d, 1171, 1206 n.34 (M.D. Ala. 2017); *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995); *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984).

[2] *Id*. at 12-13.

[3] *Id*.

[4] This encounter was both a watch and non-watch encounter.  This was the 21-24 day post-watch follow-up as well as the treatment plan update.  At five minutes, it did not satisfy the durational requirement of either type of encounter.  *See* Doc. 3518.

regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations (*see* Doc. 3518).

Sincerely,

Maria Morris

cc:      All counsel



March 1, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

<div align="right">

Re:   *Parsons v. Shinn* – **patient in urgent need of mental health treatment**



**████████████, ADC No. ████, ASPC-Florence, Kasson**

</div>



Dear Mr. Bojanowski:

Plaintiffs write regarding ████████████, ADC No. ████, a class member in urgent need of adequate mental health care who is currently housed at ASPC-Florence Kasson.  I wrote to you about Mr. ██████ on October 23, 2020.  He was transferred to ASPC-Florence Kasson on December 30, 2020, but he remains in need of significantly enhanced care.

Mr. ██████ is diagnosed with schizoaffective disorder and chronic post-traumatic stress disorder.  Despite his diagnosis and the extraordinary level of functional impairment set forth in his recent mental health records, he is not classified as SMI.  He carries a mental health score of MH-4. He is currently prescribed Clonidine.

When I previously contacted you about Mr. ██████, he had been continuously on watch from August 4, 2020 through September 17, 2020. Since I wrote, he has been on watch as follows:

- October 22-27, 2020
- November 10-21, 2020
- December 5, 2020-January 7, 2021
- January 20-February 8, 2021
- February 10-15, 2021.

(*See generally* Mental Health Encounter records)  Mr. ██████ has, thus, been on watch for 118 of the last 210 days.  The two weeks he has been off watch since February 15, 2021 is the longest he's been off watch since October.

Throughout this period, mental health staff seeing Mr. ██████ repeatedly acknowledged that he was delusional. (*See, e.g.*, MH - Psychiatric Nurse – Unscheduled, 12/5/2020; MH – Constant Watch

24

Contact, 12/15/2020;   MH – Sick Call – Unscheduled, 12/23/2020; MH – Mid-Level – Scheduled, Psychiatry Progress Note, 12/23/2020; MH – Constant Watch Contact, 1/4/2021; MH – Constant Watch Contact, 1/21/2021; MH – 10 Minute Watch Contact, 1/28/2021; MH – Sick Call – Unscheduled, 2/24/2021; Nurse – Sick Call Scheduled, 3/1/2021) On several occasions, mental health staff noted that Mr. ███████ reported command hallucinations instructing him to hurt himself or others.  (*See, e.g*., MH - Psychiatric Nurse – Unscheduled, 12/5/2020; MH – Constant Watch Contact, 12/15/2020; MH – Sick Call – Unscheduled, 12/23/2020; MH – Constant Watch Contact, 12/24/2020; MH – Constant Watch Contact, 1/5/2021; MH – 10 Minute Watch Contact, 1/30/2021)

While he was on watch from December 5, 2020 through January 11, 2021, he was repeatedly placed in restraints.  (*See* Nurse – Restraint Checks, 12/24/2020, 12/25/2020, 12/29/2020, 12/30/2020)

He has also been pepper sprayed repeatedly while on watch in response to self-harm.  (*See* Nurse – ICS Response, 12/10/2020; Nurse – ICS Response, 12/11/2020; Nurse – ICS Response, 12/12/2020; Nurse – ICS Response, 12/13/2020; Nurse – ICS Response, 12/15/2020; Nurse – ICS Response, 12/16/2020; Nurse – ICS Response, 12/17/2020; Nurse – ICS Response, 12/21/2020; Nurse – ICS Response, 12/22/2020; Nurse – ICS Response, 12/23/2020 (10:15); Nurse – ICS Response, 12/23/2020 (11:00); Nurse – ICS Response, 12/24/2020 (10:50); Nurse – ICS Response, 12/25/2020 (10:15); Nurse – ICS Response, 12/25/2020 (11:52); Nurse – ICS Response, 12/29/2020; Nurse – ICS Response, 1/19/2021; Nurse – ICS Response, 1/20/2021)

As the U.S. Department of Justice ("DOJ") recently explained, the use of mental health watch for prolonged periods of time subjects incarcerated people experiencing mental health crises, such as Mr. ███████, to a substantial risk of serious harm.[1]

Further, the Constitution requires treatment of individuals with suicidal tendencies, and treatment is "more than segregation and close supervision of the inmate patients."[2]  Brief encounters of 5-10 minutes for the purpose of determining suicidality are not treatment.[3]  Treatment includes



---

[1] *See* United States Department of Justice, Civil Rights Division, November 17, 2020 *Report on Investigation of the Massachusetts Department of Corrections*, available at https://www.justice.gov/opa/press-release/file/1338071/download (last visited January 25, 2021), at 17-18 (citing *Rasho v. Walker*, 376 F. Supp. 3d 888, 910-11 (C.D. Ill. 2019) ("Because these prisoners are already experiencing a mental health crisis, 14 days in the restrictive conditions described above subjects them to a substantial risk of serious harm.)
[2] *Id*. at 12 (citing *Ruiz v. Estelle*, 503 F. Supp. 1265, 1339 (S.D. Tex. 1980)*, rev'd in part on other grounds*, 679 F.2d 1115 (5th Cir. 1982); *Braggs v. Dunn*, 257 F. Supp. 3d, 1171, 1206 n.34 (M.D. Ala. 2017); *Coleman v. Wilson*, 912 F. Supp. 1282, 1298 n.10 (E.D. Cal. 1995); *Balla v. Idaho State Bd. of Corr.*, 595 F. Supp. 1558, 1577 (D. Idaho 1984)).
[3] *Id*. at 12-13.

interventions such as "counseling, group therapy, individual psychotherapy, or … therapeutic activities."[4]

Since the beginning of November, 2020, as he has cycled in and out of watch, engaged in repeated instances of self-harm, and been pepper sprayed at least 17 times, Mr. ███████ has received minimal mental health interventions beyond the determinations of suicidality and evaluations in connection with his self-harm and the use of force on him.  Over the course of these almost four months, while he was clearly in crisis, Mr. ███████ had watch-related contacts, sick calls related to an ICS due to self-harm, and occasional sick calls requested by staff due to Mr. ███████'s conduct.  Besides watch-related contacts and sick calls, Mr. ███████ saw a counselor for individual counseling just one time[5], on February 24, 2021 for one minute.  (*See* MH – Individual Counseling, Mental Health Progress Note, 2/24/2021).   He was also seen three times by mid-level providers regarding his medications.  (See MH – Mid-Level – Scheduled, Psychiatry Progress Note, 2/10/2021; MH – Mid-Level – Scheduled, Psychiatry Progress Note, 1/11/2021; MH – Mid-Level – Scheduled, Psychiatry Progress Note, 11/4/2020).  The encounter on November 4, 2020 lasted just 15 minutes, in violation of the Court's order regarding the duration of mental health encounters.   (Doc. 3518).   The one-minute encounter on February 24 is similarly in violation of the Court's order.

During the short time that he has been at Kasson and not on watch, he has not been able to attend groups because they have been cancelled.  (*See* MH - Health and Welfare Rounds, 2/22/2021; MH - Health and Welfare Rounds, 2/9/2021; MH - Health and Welfare Rounds, 1/15/2021).[6]

Although Mr. ███████ is off watch right now, it appears he remains in urgent need of increased mental health care.  On February 22, 2021, he was seen by mental health staff because correctional staff noted that he was "upset and withdrawn."   (*See* MH – Sick Call – Unscheduled, Mental Health Progress Note, 2/22/2021)  On February 24, just two days later, he had to be seen again because correctional staff noted he was "getting increasingly upset and aggressive."  (*See* MH – Sick Call – Unscheduled, Mental Health Progress Note, 2/24/2021).

---

[4] *Id.*

[5] Additionally, Mr. ███████ was seen by a counselor on January 21, 2021 to assess his competency to make medical decisions for himself, as he was on a hunger strike.  (*See* MH – Psychological Evaluation, 1/21/21)

[6] The reason given for the cancellation of these groups is COVID-19.  The Court has ordered that "Defendants shall make every effort to provide the out-of-cell time required by the Stipulation, consistent with safe operations in light of COVID-19.  Any cancellations because of COVID-19 shall be supported by clear documentation explaining why that cancellation was necessary and what alternatives were provided." Doc. 3861 at 10.

We ask again that Mr. ███████ be transferred to ASPC-Phoenix on an urgent basis.  If a determination is made that it is not safe to transfer Mr. ███████ immediately because of concerns relating to COVID-19, he should be closely followed by a psychiatrist or psychologist, and receive regular, confidential, and out-of-cell meetings with mental health staff that comply with Court-ordered minimum durations until he is transferred (*see* Doc. 3518).  The transfer should be effected as soon as possible.


Sincerely,

Maria Morris

cc:      All counsel

**ACLU**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

April 1, 2021

**BY ELECTRONIC MAIL ONLY**

Tim Bojanowski
Struck, Love, Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, AZ 85226
tbojanowski@strucklove.com

Re:    ***Parsons v. Shinn*** – **patient in urgent need of mental health treatment**
             ███████████, ADC No. ████, ASPC-Florence, Kasson

Dear Mr. Bojanowski:

Plaintiffs write for the ***third time since October 2020*** regarding ███████████, ADC No. ████, a class member who remains in urgent need of adequate mental health care.

I previously wrote to you about Mr. ██████ on October 23, 2020 and again on March 1, 2021. He was transferred to ASPC-Florence Kasson on December 30, 2020, but he remains in need of significantly enhanced care. On March 17, you wrote back to me, stating that Centurion had determined that Mr. ██████'s condition did not warrant an urgent transfer to ASPC-Phoenix.

In your letter, you noted that Mr. ██████ had been seen for 45 minutes of counseling on February 22, 2021, 30 minutes of counseling on February 23, 2021, and that he refused to meet with the psychiatric provider on March 3, 2021. The encounters you reference do not demonstrate that Mr. ██████ is receiving adequate mental health care.

Mr. ██████ saw an unlicensed Psych Associate on February 22 as the result of a sick call request, and when he met with the Psych Associate, he was delusional and paranoid. (MH – Sick Call – Unscheduled, 2/22/2021) On February 23, 2021, he was seen by the same unlicensed Psych Associate for just 10 minutes for a joint watch follow-up and "individual session". (MH – Individual Counseling, 2/23/2021) On February 24, he was seen by the same unlicensed Psych Associate for 30 minutes, this time as a result of the custody staff noting that he was "increasingly upset and aggressive". (MH – Sick Call – Unscheduled, 2/24/2021) Again, the Psych Associate found that he was "experiencing the symptoms" of schizophrenia, and that he was delusional, noting that in his journal he reported believing he was Moses and that his father was Malcolm X. Nonetheless, the Psych Associate found that there was no evidence of psychosis.

On March 1, 2021, Mr. ██████ stated to a mental health RN that "I've taken cyanide before and died. God asked me if I wanted to come back to life. I said yes, so

**ACLU**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director*
*Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

he resurrected me. God allowed me to come back because I'm Mosses. Thank you."
He further stated that he was experiencing auditory hallucinations. (Nurse - Sick Call
– Scheduled, 3/1/2021)  No one from mental health attempted to see him for two days
after that.  On March 3, 2021, Mr. ████████ refused to see mental health staff: he
was on his bed, with his blanket over his head.  (*See* MH - Mid-Level – Scheduled,
3/3/2021; MH - Mid-Level – Scheduled, 3/3/2021)

By March 7, 2021, Mr. ████████ was again self-harming and was placed back on
watch.  (Nurse – Sick Call – Unscheduled, 3/7/2021) As of the date of your letter, he
had been on constant watch for 10 days; he would remain on constant watch another
two days, and then on lower levels of watch for four days after that, for a total of 16
days. (*See generally* Mental Health Encounter records for March 7-23, 2021)  He also
began a 14-day hunger strike on March 7, 2021, because he believed someone was
putting cyanide in his food.  (Nurse – Sick Call – Unscheduled, 3/7/2021)



You also noted that Mr. ████████ "is routinely provided in-cell programming."  As
an initial matter, "in-cell programming," also referred to as "homework," is not mental
health care that satisfies any of the requirements of the Stipulation.  Further, Mr.
████████ has infrequently been provided even the homework to complete in cell,
apparently because he has been on watch so much of the time.  Since he moved to
Kasson on  December 30, 2020, there are just two entries stating Mr. ████████ was
"provided with in-cell programming material" and "was instructed to complete
homework in cell." (MH – Health and Welfare Rounds, 1/15/21, 2/22/2021)

The severity of symptoms experienced by Mr. ████████ since last August clearly
indicate he needs better mental health care than he is receiving.

Since the beginning of August 2020, Mr. ████████ has spent of 142 of 242 days
on watch, including all but 11 of the 30 days since I last wrote to you about him.  His
watches have been as follows:

- March 27-30, 2021
- March 7-23, 2021
- February 9-15, 2021
- January 19-February 8, 2021
- December 5, 2020-January 7, 2021
- November 10-21, 2020
- October 22-27, 2020
- August 4, 2020-September 17, 2020

(*See generally* Mental Health Encounter records).

Over the last four months, Mr. ████████ has engaged in at least 26 separate
instances of self-harm, generally banging his head on a wall:

- 3/12/2021 (Nurse – ICS Response)
- 3/7/2021 (Nurse – Sick Call – Unscheduled)

- 1/20/2021 (Nurse – ICS Response)
- 1/19/2021 (Nurse – ICS Response)
- 1/4/2021 (MH – Constant Watch Contact)
- 12/29/2020 (Nurse – ICS Response)
- 12/26/2020 (MH – Constant Watch Contact)
- 12/25/2020 (Nurse – ICS Response, 11:52)
- 12/25/2020 (Nurse – ICS Response, 10:15)
- 12/24/2020 (Nurse – ICS Response, 11:47)
- 12/24/2020 (Nurse – ICS Response, 10:50)
- 12/23/2020 (Nurse – ICS Response, 11:00)
- 12/23/2020 (Nurse – ICS Response, 10:15)
- 12/22/2020 (Nurse – ICS Response)
- 12/21/2020 (Nurse – ICS Response)
- 12/18/2020 (MH – Constant Watch Contact, 2x)
- 12/17/2020 (Nurse – ICS Response)
- 12/16/2020 (Nurse – ICS Response)
- 12/15/2020 (Nurse – ICS Response)
- 12/14/2020 (MH - Individual Counseling)
- 12/13/2020 (Nurse – ICS Response)
- 12/12/2020 (Nurse – ICS Response, 12:59)
- 12/12/2020 (Nurse – ICS Response, 11:33)
- 12/11/2020 (Nurse – ICS Response)
- 12/10/2020 (Nurse – ICS Response)



Mr. ███████ reports that he self-harms in response to his auditory hallucinations. (*See, e.g.*, Nurse – Sick Call – Unscheduled, 3/7/2021; MH – 10 Minute Watch Contact, 1/30/2021; MH – Constant Watch Contact, 1/5/2021; MH – Constant Watch Contact, 12/17/2020; Nurse – ICS Response, 12/13/2020; MH - Psychiatric Nurse – Unscheduled, 12/5/2020).

Throughout this period, mental health staff seeing Mr. ███████ repeatedly acknowledged that he was delusional. (*See, e.g.*, MH - Constant Watch Contact, 3/8/2021; Nurse – Sick Call Scheduled, 3/1/2021; MH – Sick Call – Unscheduled, 2/24/2021; MH – 10 Minute Watch Contact, 1/28/2021; MH – Constant Watch Contact, 1/21/2021; MH – Constant Watch Contact, 1/4/2021; MH – Sick Call – Unscheduled, 12/23/2020; MH – Mid-Level – Scheduled, Psychiatry Progress Note, 12/23/2020MH - Psychiatric Nurse – Unscheduled, 12/5/2020; MH – Constant Watch Contact, 12/15/2020)

During these four months, Mr. ███████ has been subjected to pepper spray in response to self-harm on no fewer than 22 occasions:

- 3/12/2021 (Nurse – ICS Response)
- 1/20/2021 (Nurse – ICS Response)
- 1/19/2021 (Nurse – ICS Response)

- 1/4/2021 (MH – Constant Watch Contact)
- 12/29/2020 (Nurse – ICS Response)
- 12/25/2020 (Nurse – ICS Response, 11:52)
- 12/25/2020 (Nurse – ICS Response, 10:15)
- 12/24/2020 (Nurse – ICS Response, 10:50)
- 12/23/2020 (Nurse – ICS Response, 11:00)
- 12/23/2020 (Nurse – ICS Response, 10:15)
- 12/22/2020 (Nurse – ICS Response)
- 12/21/2020 (Nurse – ICS Response)
- 12/18/2020 (MH – Constant Watch Contact, 2x)
- 12/17/2020 (Nurse – ICS Response)
- 12/16/2020 (Nurse – ICS Response)
- 12/15/2020 (Nurse – ICS Response)
- 12/13/2020 (Nurse – ICS Response)
- 12/12/2020 (Nurse – ICS Response, 12:59)
- 12/12/2020 (Nurse – ICS Response, 11:33)
- 12/11/2020 (Nurse – ICS Response)
- 12/10/2020 (Nurse – ICS Response)



Since January, after his transfer to Kasson, Mr. ███████ has engaged in two separate hunger strikes. The first was from January 18 to January 21.   (*See* MH – Psychological Evaluations, 1/21/21; MH – Non-Clinical Contact Note, 1/21/21)   He told staff it was "against his religion to tell them" the problem with his diet that resulted in the hunger strike.  The second hunger strike lasted from March 7 through March 21 and he lost 23 pounds. (*See* Nurse – Sick Call – Unscheduled, 3/7/2021; Nurse – Chart Note, 3/21/2021; Nurse – Chart Review, 3/3/2021; Nurse – Treatment Call, 3/20/2021) He conducted that hunger strike because he believed people were putting cyanide in his food.  (*Id.*)  With regard to the hunger strikes, please let us know what has been done to manage the risk of refeeding syndrome when he has started eating.

Finally, please note that there have been several recent violations of the Stipulations with regard to Mr. ███████'s care:

- 3/28/2021 – Mr. ███████ was on a 10-minute watch, but was not seen by a clinician or registered nurse
- 3/24/2021 – Mr. ███████ had a scheduled appointment with a Mid-Level provider that lasted just 20 minutes (MH – Mid-Level – Scheduled, 3/24/2021)
- 3/20/2021 – Mr. ███████ was on a 10-minute watch and was seen for 1 minute (MH – 10 Minute Watch Contact, 3/20/2021)
- 3/17/2021 – Mr. ███████ was on Constant Watch and was seen for 6 minutes (MH – Constant Watch Contact, 3/17/2021)
- 3/14/2021 – Mr. ███████ was on Constant Watch and was seen for 7 minutes (MH – Constant Watch Contact, 3/14/2021)

4

We ask again that Mr. ████████ be transferred to ASPC-Phoenix on an urgent basis.

Sincerely,

Maria Morris

cc:      All counsel



5

32

**FILED UNDER SEAL**

# EXHIBIT 3