1  Jared G. Keenan (Bar No. 027068)
   Casey Arellano (Bar No. 031242)
2  **ACLU FOUNDATION OF ARIZONA**
   3707 North 7th Street, Suite 235
3  Phoenix, Arizona 85013
   Telephone: (602) 650-1854
4  Email: jkeenan@acluaz.org
          carellano@acluaz.org
5
   *Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
6  *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
   *Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
7  *Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf*
   *of themselves and all others similarly situated*
8  **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
9
   Asim Dietrich (Bar No. 027927)
10 **ARIZONA CENTER FOR DISABILITY LAW**
   5025 East Washington Street, Suite 202
11 Phoenix, Arizona 85034
   Telephone: (602) 274-6287
12 Email: adietrich@azdisabilitylaw.org

13 *Attorneys for Plaintiff Arizona Center for Disability Law*
   **[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**
14

15                          UNITED STATES DISTRICT COURT

16                                 DISTRICT OF ARIZONA

| | |
|---|---|
| 17  Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE THE COURT'S ORDER RE: DURATION OF MENTAL HEALTH ENCOUNTERS (DOC. 3901)** |

152674217.1

The essential facts are not in dispute. Defendants do not deny that, following the Court's February 24, 2021 order (Doc. 3861), they have compiled and reported three months of CGAR scores while entirely failing to utilize the methodology ordered by the Court. [*See* Doc. 3865 (**March 2, 2021**) (sealed lodged proposed Defendants' December 2020 CGAR reports); Doc. 3882 (**March 31, 2021**) (reporting that in January 2021, of the 4,203 mental health encounters that did not comply with the minimum durations established by the Court, **97.4%** were counted as compliant either because the patient refused or because "a *Mental Health Clinician* determined the length of the encounter was meaningful and appropriate in the context of the inmate's overall care") (emphasis added); Doc. 3898 (**April 30, 2021**) (reporting that in February 2021, of the 4,102 mental health encounters that did not comply with the minimum durations established by the Court, **98.4%** were counted as compliant either because the patient refused or because "a *Mental Health Clinician* determined the length of the encounter was meaningful and appropriate in the context of the inmate's overall care") (emphasis added)][1]

Because Defendants fail to offer any plausible excuse for their protracted noncompliance with the Court's order, Plaintiffs' motion to enforce the Court's order should be granted.[2]

---

[1] Defendants' claim that they began complying with the order on April 1, 2021 (Doc. 3907 at 9) cannot be reconciled with their April 30, 2021 filing of CGAR scores that were *not* calculated in compliance with the order. [*See* Doc. 3898]

[2] Defendants claim that the Stipulation required Plaintiffs to meet and confer before seeking to enforce the Court's order. [Doc. 3907 at 1 (citing Doc. 1185 ¶ 30)] Defendants are wrong. The cited provision requires Plaintiffs to meet and confer before *seeking a finding that Defendants are noncompliant with the Stipulation*. It has no application where, as here, the Court has already found noncompliance with the Stipulation and entered a remedial order, and Plaintiffs seek to enforce that order in the face of Defendants' failure to obey it. Defendants cite no legal authority contrary to the abundant case law—including in this case, *see Parsons v. Ryan*, 949 F.3d 443, 454-55 (9th Cir. 2020), *cert. denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021) ("*Parsons III*"), and *Parsons v. Ryan*, 912 F.3d 486, 497 (9th Cir. 2018), *cert. denied,* 140 S. Ct. 142 (2019) ("*Parsons II*")—that makes clear that the Court has the power to enforce its prior orders.

152674217.1

**ARGUMENT**

**A.  Defendants' CGAR scores for December 2020, January 2021, and February 2021 were calculated in violation of the Court's order.**

"We begin with the basic proposition that all orders and judgments of courts must be complied with *promptly*." *Maness v. Meyers*, 419 U.S. 449, 458–59 (1975) (emphasis added).  A party that fails to take "*all* reasonable steps to comply with the order" risks a finding of contempt. *Kelly v. Wengler*, 822 F.3d 1085, 1096 (9th Cir. 2016) (emphasis in original).  A party claiming that it is unable to comply with a court order must show "categorically and in detail" why it is unable to comply. *N.L.R.B. v. Trans Ocean Export Packing, Inc.*, 473 F.2d 612, 616 (9th Cir. 1973).

Defendants have entirely failed to show that they were unable to comply with the Court's order with respect to the December, January, and February CGAR scores. Defendants say only that "data for December 2020 and January 2021 *began* being audited on January 1, 2021 and February 1, 2021, respectively," and then conclude that "Defendants could not have implemented the new methodology to calculate scores for these months." [Doc. 3907 at 8 (emphasis added)]  But that is a non-sequitur.  The Court's February 24, 2021 order does not affect how samples are drawn or files are selected for review; it affects only the final step of the process:  which files can be counted as compliant. Defendants fail to explain why the methodology the Court ordered on February 24 could not be applied to the December and January scores, which were not reported until March 2 and March 31, 2021, respectively.  That Defendants may have begun the process of compiling those scores prior to the Court's order does not excuse them from complying promptly with that order once it was issued.  Defendants cite no statute or regulation that requires the CGAR scores to be reported within a certain timeframe, or any other reason why the December and

-2-

1  January scores could not have been calculated in accordance with the Court's order once it
2  was received.³

3  Defendants' argument with respect to the February 2021 scores is even weaker. As
4  they concede, the process of compiling CGAR scores for a given month does not begin until
5  after the end of that month. [*See* Doc. 3907 at 7 ("Following the end of a monitored month,
6  Centurion has five days to provide ADCRR with the data generated from that month")]
7  Defendants do not explain why it was impossible for them to analyze the February data –
8  which they received on or about March 5, according to their representations – in compliance
9  with the Court's February 24 order. If psychiatrists were unavailable, they could have done
10 what they now claim to have done with the March data – count all encounters that fall short
11 of the Court-ordered minimum durations as noncompliant.

12 In short, Defendants have failed even to allege – let alone demonstrate with evidence
13 – that prompt compliance with the Court's order was impossible. Rather, Defendants'
14 argument boils down to a claim that compliance would have been inconvenient or
15 burdensome. But this Court has repeatedly admonished Defendants that their unilateral
16 determination that compliance may be burdensome does not entitle them to disobey a court
17 order. [*See* Doc. 3901 at 6 (collecting past admonitions); *see also* Doc. 3495 at 7
18 ("Defendants effectively concede their past compliance levels were inaccurate but argue it
19 would be too burdensome to generate accurate numbers. Defendants' position is borderline
20 frivolous.")] Defendants have entirely failed to justify their noncompliance with the Court's
21 February 24, 2021 order.⁴

---

³ Indeed, Defendants concede that the January scores were compiled *after* the Court's order. [*See* Doc. 3907-1 at 5 ¶ 24 ("Since the Order, the [Monitoring Bureau] has compiled two sets of CGAR data: January and February 2021")]

⁴ Defendants indulge in baseless speculation about class counsel's motivation and state of mind when they filed this motion and their previous motion to enforce the Court's order (Doc. 3694). [*See* Doc. 3907 at 6 ("Plaintiffs knew by convincing the Court to require psychiatrists to conduct the review, it would be too expensive for Defendants to conduct, which would get Plaintiffs what they originally requested – minimum durations"); *id.* ("Plaintiffs Knew Defendants Were Complying With the Court's Order")] The Court has previously warned Defendants' counsel that "[t]hese sorts of ad hominem attacks are beneath the dignity of counsel and the Court." [Doc. 2902 at 7 n.5] Moreover, even

**B.   Drive-by mental health encounters are endemic in ADCRR, and pose a substantial risk of serious injury and death to patients.**

Drive-by mental health encounters are endemic in ADCRR. This is dramatically illustrated by Defendants' scores on the mental health Performance Measures in March 2021, when encounters shorter than the Court-established minimum durations were, for the first time, no longer counted as compliant:





---

accepting at face value Defendants' unsupported estimate of the cost to hire psychiatrists, it is not at all clear why $1.2 million annually is "too expensive" for an agency with an annual budget of more than $1.3 *billion.* *See* Ariz. Leg. Jt. Leg. Budget Cmte., FY2022 Budget Bills at 12 at https://www.azleg.gov/jlbc/HSplanasintroduced052421.pdf (May 24, 2021) (showing FY2022 general fund allocation of $1,309,695,700 for ADCRR) (last visited May 29, 2021).

-4-

152674217.1





Plaintiffs' motion cited three patients who died by suicide in a four-week period in January and February 2021 after receiving mental health encounters that fell short of the minimum durations established by the Court. [*See* Docs. 3901 at 4-5, 3901-3 at 3-8] The motion also cited numerous other patients with serious mental illness who received drive-

152674217.1

by mental health encounters as brief as one minute – several of whom engaged in suicide attempts or serious self-injury. [*See* Docs. 3901 at 5, 3901-3 at 10-41][5]

Defendants do not dispute any of this, except to claim with respect to Patient 1, who died by suicide, that two of his encounters actually satisfied the Court-established minimum duration. But the only source for this claim is the declaration of Bobbie Pennington-Stallcup, Defendants' Mental Health Program Director who, despite her claim of "personal knowledge," was not present for these encounters. [*See* Doc. 3907-1 ¶¶ 1, 26 ("During both encounters, which occurred on December 14 and 21, 2020, Patient 1 was seen for ten minutes")][6]

This is not the first time Defendants have submitted an affidavit purporting to recount the circumstances of a mental health encounter at which the affiant was not present. When Defendants last attempted this tactic, using an affidavit from Dr. Pennington-Stallcup's predecessor, the Court concluded as follows:

> In support of their position that the relevant consultation occurred in a confidential setting, Defendants submitted an affidavit from Dr. Nicole Taylor. That affidavit attempts to recount the circumstances of the encounter, but it is undisputed Dr. Taylor was not present during that encounter. … This flimsy affidavit does not comport with Federal Rule of Evidence 602 and the Court cannot credit it.

[Doc. 3674 at 7] The Court should reach the same conclusion here. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 223 (9th Cir. 2013) (district court's consideration of

---

[5] [*See also* Doc. 3782 at 5-8 (Plaintiffs' expert psychiatrist, Dr. Pablo Stewart, concludes that brief and superficial mental health encounters were contributing factors in three class member suicides that occurred between August 27 and September 22, 2020)]

[6] The December 14 and 21, 2020 encounters were not conducted by Dr. Pennington-Stallcup, and there is no indication in the patient's record that she was present for these encounters, or for the December 17 encounter she purports to describe in her declaration. [*See* Declaration of David C. Fathi ("Fathi Decl."), filed herewith, ¶ 3]

The notes for the December 14 and 21 encounters, as well as those for encounters with Patient 1 on December 19 and 20, use identical language: "This writer met with Pt for a total of 10 minutes with staff consultation and record review." [*See* Fathi Decl. ¶ 4] The minimum durations established by the Court obviously pertain to face-to-face time the clinician spends *with the patient*. Allowing Defendants to count extraneous activities like "staff consultation and record review" toward the 10-minute minimum would give them *carte blanche* to continue their practice of drive-by encounters lasting one or two minutes.

-6-

hearsay declaration was error); *Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (same).

Of course Defendants could easily have submitted an affidavit from the clinician who conducted the December 14 and 21 encounters and accordingly had personal, non-hearsay knowledge of the facts. That they chose not to do so creates a presumption that the clinician's testimony would have been unhelpful to them. *See United States v. Noah*, 475 F.2d 688, 691 (9th Cir. 1973) ("The failure of a party to produce a material witness who could elucidate matters under investigation gives rise to a presumption that the testimony of that witness would be unfavorable to that party if the witness is peculiarly within the party's control").

### C. The Court Should Appoint a Receiver.

Defendants assert that "a receiver is only appropriate to remedy an established constitutional violation." [Doc. 3907 at 10]  As a threshold matter, none of the cases mis-cited by Defendants actually say that. *See Plata v. Schwarzenegger*, 603 F.3d 1088, 1093-94 (9th Cir. 2010) ("[R]eceiverships are recognized equitable tools available to the courts to remedy otherwise uncorrectable violations of the Constitution *or laws*") (emphasis added); *Plata v. Schwarzenegger*, No. C01-1351-TEH, 2005 WL 2932253, at *1-2 (N.D. Cal. Oct. 3, 2005) (appointing receiver in a case that had been settled).

More fundamentally, Defendants' claim that there has been no finding of a constitutional violation in this case has been rejected by the Ninth Circuit:

> Defendants are incorrect.  In approving the Stipulation, the district court held "[b]ased upon the entire record in this case and the parties' Stipulation" that the Stipulation was "necessary to correct the violations of the Federal right of the Plaintiffs."  This conclusion necessarily required a finding of a constitutional violation—that is, if there were no violation of a federal right, there would be nothing for the Stipulation to "correct."  Therefore, the district court found the requisite constitutional violation in granting the initial prospective relief in this case.

-7-

*Parsons II,* 912 F.3d at 501.[7]

While Defendants strenuously resist a receiver, they fail to suggest how else the Court should bring about their compliance with the promises they made nearly seven years ago. [*See* Doc. 1185 at 16 (Stipulation signed by Defendant Ryan on October 9, 2014)] Indeed, most – if not all – of the factors identified by the *Plata* court militate in favor a receiver in this case:

> (1) Whether there is a grave and immediate threat or actuality of harm to plaintiffs;
> (2) Whether the use of less extreme measures of remediation have been exhausted or prove futile;
> (3) Whether continued insistence that compliance with the Court's orders would lead only to confrontation and delay;
> (4) Whether there is a lack of leadership to turn the tide within a reasonable period of time;
> (5) Whether there is bad faith;
> (6) Whether resources are being wasted; and
> (7) Whether a receiver is likely to provide a relatively quick and efficient remedy.

*Plata*, 2005 WL 2932253, at *23.

Plaintiffs have waited long enough to receive the benefit of their bargain. The Court should appoint a receiver.

### D. Even if the Court finds that defendants are currently in compliance with its February 24 order, an enforcement order remains necessary.

Even if the Court concludes that Defendants are now, at long last, complying with its February 24 order, an enforcement order remains necessary to ensure continued compliance, in light of Defendants' past noncompliance with this order and many others. "A good or lucky day is not a state of compliance. Nor is the dubious state in which a past … problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay*

---

[7] Defendants also assert that "[t]he extraordinary nature of a receiver demands significant procedural protections, for example, an order to show cause why a receiver should not be appointed and an evidentiary hearing." [Doc. 3907 at 10] Once again, the case cited by Defendants simply doesn't say that. *See Plata*, 2005 WL 2932253, at *1-2.

-8-

152674217.1

*Found., Inc.*, 484 U.S. 49, 69 (1987) (Scalia, J., concurring in part and concurring in the judgment).

A party's delayed compliance with an order may require further relief, even if the party is in compliance by the time the court rules. *See Toussaint v. McCarthy*, 597 F. Supp. 1427, 1430-31 (N.D. Cal. 1984) (holding prison officials in contempt for eight-month delay in complying with order). In deciding whether to grant further relief, the Court should consider Defendants' "history of noncompliance." *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 857 (9th Cir. 1992). *Cf. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways") (internal citation, quotation marks, ellipsis omitted); *id.* at 190 ("a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur").

## CONCLUSION

Plaintiffs' motion should be granted.

Respectfully submitted,

Dated: June 1, 2021

**ACLU NATIONAL PRISON PROJECT**

By:   s/ David C. Fathi
David C. Fathi (Wash. 24893)\*\*
Maria V. Morris (D.C. 1697904)\*
Eunice Hyunhye Cho (Wash. 53711)\*\*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@aclu.org
          mmorris@aclu.org
          echo@aclu.org

\*Admitted *pro hac vice*
\*\*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.

152674217.1

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email:   ckendrick@aclu.org

*Admitted *pro hac vice*

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         rlomio@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
Amelia M. Gerlicher (Bar No. 023966)
John H. Gray (Bar No. 028107)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
         agerlicher@perkinscoie.com
         jhgray@perkinscoie.com

Jared G. Keenan (Bar No. 027068)
Casey Arellano (Bar No. 031242)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email:   jkeenan@acluaz.org
         carellano@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

152674217.1

**ARIZONA CENTER FOR DISABILITY LAW**

By:   s/ Maya Abela
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
      rdalyrooney@azdisabilitylaw.org
      jrico@azdisabilitylaw.org
      mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

152674217.1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf

152674217.1