Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226
Telephone: (480) 420-1600
Fax: (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' COMPLIANCE PLAN REGARDING PARAGRAPH 14 OF THE STIPULATION AND SUBMISSION OF REVISED COMPLIANCE PLAN (DKTS. 3880, 3899)** |

Defendants, through counsel, respond to Plaintiffs' Objections to Defendants' Compliance Plan Regarding Paragraph 14 of the Stipulation and provide a Revised Compliance Plan based upon meet and confer efforts of the parties and consideration of Plaintiffs' objections.[1] By submitting Defendants' Revised Compliance Plan, Defendants do not concede that their original plan (Dkt. 3880) was deficient; rather, in the spirit of

---

[1] Defendants' submittal of this Compliance Plan shall not be deemed a waiver of Defendants' right to appeal prior rulings and orders of this Court or appeal from a final subsequent Order setting forth any injunctive relief regarding healthcare issues. By submission of this Plan, Defendants also do not concede non-compliance regarding Stipulation Paragraph 14.

cooperation and good faith, Defendants chose to revise and expand upon their original Compliance Plan.

## STIPULATION PARAGRAPH 14

Paragraph 14 of the Stipulation provides:

> **For prisoners who are not fluent in English, language interpretation for healthcare encounters shall be provided by a qualified health care practitioner who is proficient in the prisoner's language, or by a language line interpretation.**

(Dkt. 1185 at 6.)

As illustrated below, Defendants' Revised Compliance Plan, like their original, meets the terms of the Court's Order to "at a minimum, explain how class members who are not fluent in English will be identified, how class members will be informed of their entitlement to interpreter services, and how such services should be requested." (Dkt. 3861 at 12.)

## REVISED COMPLIANCE PLAN

Enhancements to Defendants' original Compliance Plan are noted below in **bold** following the text of the original Compliance Plan provisions Nos. 1-12. (Dkt. 3880 at 1-5.)

1. Consistent with current processes, inmates who are not fluent in English (or require sign ASL language services) are identified during the new admission intake process when interviewed by a nurse during the Intake Assessment. During an inmate's first medical encounter at intake, the "hard stop" function in the electronic medical record ("eOMIS") identifies inmates who may require translation services. Deaf inmates are likewise identified and documented during the intake process in conjunction with their "Mobility Restrictions/Physical Disabilities and Impairments" assessment. *See* Paragraph 6 below for a discussion of the eOMIS "hard stop" functionality related to language interpretation protocols.

**Enhancement:**

**See description of additional eOMIS demographic fluency banner and enhanced training described below in No. 2.**

2. Centurion will explore the capability of eOMIS to determine whether a field can be added that will display designation of the language that the inmate is fluent in, if not English, such that during the nurse's Intake Assessment, the field would be completed with the language the inmate is fluent in and the field would auto-populate each time healthcare staff document a healthcare encounter so that healthcare staff is immediately advised of fluency concerns and likely need for language interpretation services. *See* Paragraph 6 below for a discussion of the eOMIS "hard stop" functionality related to language interpretation protocols. If this technology change is feasible, Defendants will advise Plaintiffs of the same as well as projected date for addition of the field.

**Enhancement:**

**Centurion is creating a demographic banner field that will display whether an inmate requires interpretation services. Further demographic information will advise of inmate's primary language if the inmate is not fluent in English. Input of a "yes" in the "Interpreter Needed" demographic banner field indicates the need for language interpretation services for healthcare encounters pursuant to Stipulation Paragraph 14. For deaf inmates, their "Primary Language" noted in the inmate's Demographic/Physical Profile field will be indicated as either "Deaf/Sign Language" or "Deaf/Written Notes". The use of these two designations for deaf inmates will enable healthcare providers to immediately determine whether a deaf inmate requires video translation services for sign language. Utilizing the general designation of "Deaf/Sign Language" covers use of ASL or any other sign language utilized by the inmate which can then be determined by the video translation service. The demographic banner field indicating "Interpreter Needed: Yes/No" will display prominently every time eOMIS is opened such that healthcare staff know immediately**

**whether an inmate will require interpretation services during the healthcare encounter.**

**Defendants agree to provide Plaintiffs with anticipated rollout dates for utilization of the demographic banner function. Because implementation of this functionality requires complicated changes to eOMIS software development that has resulted in newly discovered functionality/user challenges, the technology components are currently being reworked. Accordingly, as of the date of this filing, projected rollout dates could not be determined. Defendants will continue to meet and confer with Plaintiffs regarding the status of rollouts.**

**Phase 1 rollout will apply to all medical intake locations and will require healthcare staff training regarding the new functionality before rollout. Phase 2 rollout will allow population of the banner field for the existing inmate population (versus new intakes) as healthcare encounters occur and in conjunction with the existing eOMIS "hard stop" functionality described in Paragraph 6, below. Phase 2 rollout will also require training of healthcare staff at non-intake locations. Defendants will apprise Plaintiffs of the projected rollouts as new information becomes available considering new discovery of the likely need for software adjustments to the proposed demographic banner function. Defendants will also provide Plaintiffs with screenshots and descriptions of the demographic banner functionality/process once revisions are finalized, and functionality capability confirmed.**

**Defendants agree to provide Plaintiffs with Centurion training materials/modules regarding the enhanced demographic fluency banner eOMIS function. Training will be implemented for existing healthcare staff[2] as well as Centurion new hires, and will also be added to annual healthcare staff training requirements. The training will cover not only the enhanced eOMIS functionality**

---

[2] This includes medical, mental health, and dental healthcare staff.

**described herein, but also training regarding the requirements of Stipulation Paragraph 14 and use of the audio and video language interpretation services. To that end, Centurion has also obtained additional staff training materials from LanguageLine Solutions for incorporation into enhanced modules for Centurion healthcare staff.**

**While Paragraph 14 permits interpretation services to be provided by a qualified health care practitioner who is proficient in the prisoner's language, training will direct that primary emphasis shall be placed on use of LanguageLine Solutions (audio and video interpretation services) and AmWell platform (telehealth video platform) video interpretation services. LanguageLine Solutions services provides audio interpreters through any telephone, 24 hours a day, 7 days a week, for over 240 languages. (Dkt. 3673 at 4-5.) Video interpreters are available 24 hours a day, 7 days a week, in American Sign Language ("ASL"), Spanish, Arabic, Cantonese, Mandarin, Polish, and Russian. (Id. at 5.) Video interpreters are available Monday through Friday in Albanian, Amharic, Armenian, Bengali, Bosnian, British Sign Language, Burmese, Farsi, French, German, Greek, Haitian Creole, Hebrew, Hindi, Hmong, Italian, Japanese, Karen, Khmer, Korean, Laotian, Lithuanian, Malay, Nepali, Portuguese, Punjabi, Romanian, Somali, Swahili, Tagalog, Thai, Tigrigna, Turkish and Vietnamese (with extended weekend hours for Korean, Portuguese, Somali, and Vietnamese). (Id.)**

**Because access to Centurion's audio and video translation services vendor is robust and is available but for an unusual circumstance in which phone lines and internet connectivity are both down at a particular location, it is a rare occurrence that translation services are completely unavailable during a healthcare encounter.[3] Training will also be provided directing that should audio, video, and staff translation services be unavailable to a particular inmate during a healthcare encounter, the**

---

[3] Inmates may, however, refuse interpretation services, and such refusal is noted per the eOMIS hard stop function described in Paragraph 6.

**healthcare encounter will be discontinued and rescheduled, documenting the same in the medical record. Training will also be provided directing that should a healthcare encounter initially appear not to require translation services, but the need for translation services arises during the encounter, the healthcare encounter will be restarted with interpretation services and this change in circumstance documented in the description of the encounter.**

3. Posters will continue to be displayed in prominent areas (in English and Spanish) in the medical units, including waiting areas and treatment rooms, advising inmates of the availability of language interpretation services.

**Enhancement:**

**Defendants will display conspicuous, color, "I Speak . . . Language Identification Guide" posters utilized by the Department of Homeland Security ("DHS") in the detention setting to facilitate inmates seeing and pointing to the language that they speak to identify the need for translation services not only during the intake process but for healthcare encounters. (Exh. 1 – poster 18x24 in size.)[4] The DHS "I Speak" poster will be topped with a written statement in English and Spanish advising: "Medical Translation Services Available – Notify Medical Staff If Needed."**

**The DHS poster identifies 64 languages, including ASL. Per the request of Plaintiffs, Defendants agree to add the Navajo language to the poster. Alternatively, Centurion has also purchased "I Speak" materials from its translation services vendor and will analyze the same upon receipt to determine whether the vendor materials are more robust and user friendly as compared to the DHS poster such that vendor materials may be substituted for the DHS poster. Defendants agree to provide the vendor "I Speak" materials to Plaintiffs for review and consideration after receipt and internal review to determine whether the vendor's "I Speak" materials should replace the DHS poster (with Navajo language added).**

---

[4] https://www.dhs.gov/sites/default/files/publications/blue-campaign/materials/posters/bc-poster-18x24-ispeak.pdf (last visited 7/12/21)

**Defendants agree to display "I Speak" posters in a conspicuous location upon entry into medical clinics (and IPCs); in waiting/holding areas; and in exam rooms (medical and dental) at eye level, opposite of the location where an inmate is examined. Defendants agree to provide Plaintiffs with photos of the postings to document that the same has been implemented. During healthcare encounters, medical staff will interact with the inmate utilizing the "I Speak" posters to indicate the availability of interpretation services and attempt to determine the language spoken by the inmate. If the inmate is unable to indicate his/her language using the "I Speak" poster, medical staff will proceed with using the audio or video language line to obtain interpretation services. The use of the "I Speak" posters and corresponding utilization of the available audio/video translation services will be part of the Centurion training described in Enhancement to No. 2, above.**

**Additional inmate education regarding the availability of healthcare translation services will be provided to the inmate population on the inmate tablet system via forced messaging/acknowledgment and email acknowledgment functionalities. Defendants agree to confer with Plaintiffs to provide agreed upon text for messaging and inmate acknowledgement.**

4. If an inmate requires translation services during a healthcare encounter, healthcare staff will either locate a staff member who is proficient in the patient's language or utilize LanguageLine Solutions services to provide communication assistance.

**Enhancement:**

**See description of additional eOMIS demographic fluency banner and enhanced training described above in No. 2 wherein training will be provided that the primary method for provision of translation services will be through Centurion's vendor audio and video translation services.**

5. In order to enhance advisement to the inmate as to entitlement for language interpretation services, and to aid in healthcare staff being able identify the language the inmate is fluent in, healthcare staff will ask the inmate if he/she speaks/understands English.

Upon verbal or non-verbal indication that the inmate is not fluent in English (or requires ASL services), the inmate will be provided a written advisement/election guide that states that the inmate is entitled to language interpretation services either by a qualified healthcare practitioner who is proficient in the prisoner's language, or by a LanguageLine interpretation service. The advisement/election guide will be written in numerous languages and will be formatted in table form, identifying the specified language on the left, the advisement in the specified language in the middle, and election boxes for "yes" or "no" on the right (written in the specified language). The election box will allow the inmate to point to whether he/she elects interpretation services in order to advise the healthcare staff of the acceptance or refusal of offered language interpretation services. The language designation box on the right will allow the healthcare staff to determine which language the inmate is fluent in as he/she points to the chosen election box. This way, healthcare staff does not have to guess as to what language the inmate is fluent in. Defendants will confer with Plaintiffs regarding the design and messaging provided in the advisement/election guide. The basic setup for the guide would follow this format:

| Language Identifier | Advisement in specified language. | | (Yes) I require interpretation services. | (No) I refuse interpretations services. |
|---|---|---|---|---|

**Enhancement:**

**See Enhancement to No. 3, above describing use of "I Speak" posters and inmate education regarding the same.**

6. Per the "hard stop" function existing in eOMIS, healthcare staff is required to determine whether an inmate requires translation services before proceeding with documenting a healthcare encounter (nurse, provider, chronic care, mental health, and dental encounters). The creation of a SOAPE note requires the healthcare staff to answer the question, "Are interpreter services needed for this inmate?" This question acts as a hard stop, which means it must be answered before the staff member can continue. If the answer is "No," then the staff member may continue to the next section. If the answer is "Yes,"

then an additional dropdown menu appears and asks, "What type of interpreter services were used for the encounter?" The choices are "LanguageLine," "Healthcare Staff Used for Interpreter Services," or "Inmate Refused Interpreter Services." This acts as a second hard stop and must be answered before continuing. The interpreter service "hard stop" is required for over 70 types of provider, nursing, mental health, and dental encounters. This eOMIS "hard stop" function will continue to be employed.

**Enhancement:**

**Training provided to Centurion healthcare staff, described in Enhancement to No. 2 above, will include training that in the event all translation services needed to facilitate a healthcare encounter with an inmate are unavailable, the healthcare encounter will be cancelled/rescheduled (unless it is an emergency) and the cancellation/rescheduling will be documented through the Chart Review or Chart Note eOMIS function (or through written documentation to be scanned into eOMIS if eOMIS is also down due to internet connectivity issues, power outages, natural disasters, etc.). Where the encounter will not proceed due to unavailability of translation services because of lack of both audio/video translation services and/or available staff translation resources, the creation of a SOAPE note described above will not occur – because the encounter will not proceed. As a result, additional dropdown menu options requested by Plaintiffs such as "Interpretation Services Unavailable/Non-Compliant" are unnecessary. The unavailability of audio/video language translation capability should be rare and should only occur during unique circumstances where both phone lines and interconnectivity to the internet are temporarily down.**

7. Centurion will continue to use LanguageLine Solutions for audio interpretation. LanguageLine Solutions interpretation services provides audio interpreters through any telephone, 24 hours a day, 7 days a week, for over 240 languages.

**Enhancement:**

**See Enhancements to Nos. 2 and 3, above.**

8. Centurion will continue to use its AmWell platform for video interpretation services which is available 24 hours a day, 7 days a week, in ASL, Spanish, Arabic, Cantonese, Mandarin, Polish, and Russian. Video interpreters are available Monday through Friday in Albanian, Amharic, Armenian, Bengali, Bosnian, British Sign Language, Burmese, Farsi, French, German, Greek, Haitian Creole, Hebrew, Hindi, Hmong, Italian, Japanese, Karen, Khmer, Korean, Laotian, Lithuanian, Malay, Nepali, Portuguese, Punjabi, Romanian, Somali, Swahili, Tagalog, Thai, Tigrigna, Turkish, and Vietnamese (with extended weekend hours for Korean, Portuguese, Somali, and Vietnamese).

**Enhancement:**

**See Enhancements to Nos. 2 and 3, above.**

9. Centurion will continue to train its healthcare staff on the availability and use of language interpretive services during Centurion New Employee Orientation.

**Enhancement:**

**See Enhancement to No. 2, above.**

10. Compliance Plan enhancement measures will also be included in Centurion New Employee training, and existing Centurion employees will be likewise trained.

**Enhancement:**

**See Enhancement to No. 2, above.**

11. ADCRR's MSCMB monitors will verify that posters are prominently displayed in the medical units, including waiting areas and treatment rooms, advising inmates of the availability of language interpretation services.

**Enhancement:**

**On a monthly basis, Defendants will produce to Plaintiffs, Centurion billing records for vendor interpretation services (financial information redacted), which documents the number of instances of use of the audio/video interpretation services and which provider requested the same. (See, e.g., Dkt. 3673-4 at 21-130.) This addresses Plaintiffs' overarching argument and allegation (challenged by Defendants) that the audio/video interpretation services were not being used for class members not**

**fluent in English. (Dkt. 3899 at 4:13-15 arguing: "The reason for the enforcement litigation and order was that the LanguageLine was not in fact being used for all class members not fluent in English."; Id. at 4:20-22: "The concern, again was that the platform was not in fact being used for all class members not fluent in English." )**

**While Defendants maintain that Paragraph 14 permits translation services by the healthcare provider's translation services vendor or proficient healthcare staff, as set forth in Enhancement No. 2, above, training will direct that primary emphasis shall be given to providing translation services through Centurion's translation vendor. Billing records documenting the use of the same will provide evidence as to the frequency of the use of the vendor translation services.**

12. ADCRR's MSCMB monitors will verify that treatment rooms are equipped with the multi-language written advisement/election guide detailed in Paragraph 5, above.

**Enhancement:**

**See Enhancement to No. 11, above.**

## RESPONSE TO PLAINTIFFS' CHALLENGES TO DEFENDANTS' ORIGINAL COMPLIANCE PLAN

Defendants' Revised Compliance Plan, like their original, meets the terms of the Court's Order to "at a minimum, explain how class members who are not fluent in English will be identified, how class members will be informed of their entitlement to interpreter services, and how such services should be requested." (Dkt. 3861 at 12.)

First, Defendants' Revised Compliance Plan amplifies that Defendants will identify class members who are not fluent in English during the medical intake process and their need for translation services for healthcare encounters will be coded in the demographic banner section of eOMIS, a new functionality currently in production. The new eOMIS functionality will be rolled out first to medical intake locations and then implemented for the existing population as healthcare encounters occur. Enhanced education to the inmate population regarding the availability of translation services will happen as the medical intake process occurs for new admission inmates through use of "I Speak" posters and

translation serviced during intake, through postings of the "I Speak" posters throughout the medical facilities, and through inmate education provided on the inmate tablet system. Translation services may be requested by inmates through each healthcare encounter, by medical staff simply identifying the need through the new eOMIS demographic banner functionality, through medical staff identifying that the inmate does not speak English during the encounter, and by use of the "I Speak" posters located throughout the medical facilities and in all examination rooms. Inmates do not have to formally request translation services and certainly do not have to make any requests in writing. Enhanced training on these processes will be implemented with training information provided to Plaintiffs regarding the same. Plaintiffs' objections that Defendants' original Compliance Plan did not provide enough enhanced processes for identification of the need for translation services or inmate education regarding the same are thus addressed by Defendants' Revised Plan. (Dkt. 3899 at 2-3.)

Second, Defendants' Revised Compliance Plan addresses Plaintiffs' objections that the original plan did not do enough to actually provide translation services to the inmates during healthcare encounters. (Id. at 3-5.) New and enhanced training will be provided to Centurion medical staff directing that the primary/preferred method of providing translation services will be the audio/video translation services provided by Centurion's vendor rather than reliance on staff interpretation. Defendants will also provide Plaintiffs with monthly production of Centurion's bills documenting detailed manifests of use of the vendor translation services. Through this production, Plaintiffs can monitor evidence of the volume and frequency of use of the audio/video translation services. Training will also be provided to Centurion medical staff that in the event all translation services needed to facilitate a healthcare encounter with an inmate are unavailable, the healthcare encounter will be cancelled/rescheduled (unless it is an emergency) and the cancellation/rescheduling documented through the Chart Review or Chart Note eOMIS function (or through written documentation to be scanned into eOMIS if eOMIS is also down due to internet connectivity issues, power outages, natural disasters, etc.). This direction addresses

Plaintiffs' concern that the existing eOMIS SOAPE hard stop function requiring dropdown selection indicating the type of translation services used (staff or LanguageLine or inmate refusal) can be manipulated and does not account for the unusual circumstance where translation services are not available for a healthcare encounter. If translation services are not available, the healthcare encounter will not proceed and the SOAPE hard stop function will not be at play.

Third, Plaintiffs appear to demand implementation of monitoring of every single healthcare encounter that occurs where translation services are needed through monthly eOMIS reports regarding the entirety of the population. (Id. at 6-7 and undersigned counsel's understanding of meet and confer discussions.) The Stipulation does not require monitoring and reporting on Paragraph 14 and thus any demand to create a monitoring/reporting component akin to creation of a HCPM that has never before existed – and that serves to monitor every healthcare encounter where healthcare staff choose that translation services are needed through SOAPE note hard stop function selections - impermissibly exceeds the scope of the Stipulation and attempts to completely rewrite the Stipulation. Defendants agree to provide monthly production of Centurion translation vendor services bills to evidence the voluminous use of the LanguageLine and this satisfies Plaintiffs challenge that Defendants are not using audio/video translation services as they should. Plaintiffs also have full access to eOMIS and thus are able to self-monitor whether their clients who require translation services are provided the same during healthcare encounters. Defendants' production agreement therefore provides an appropriate mechanism for establishing that audio/video translation is the primary translation service offered to the inmates.

Finally, Plaintiffs' challenge that Defendants do not provide translation services for inmates on suicide watch is in error where, but for emergency circumstances, inmates are taken out of cell for healthcare encounters and conducted in locations with access to LanguageLine services where an inmate requires the same. Thus, inmates are not denied translation services in this setting. Defendants also maintain that the intent of Paragraph 14

applies to healthcare encounters involving the individual inmate and healthcare staff and thus undefined "group therapy" sessions do not require translation services – nor could translation services be reasonably provided in that type of group setting.

Based upon the foregoing, Defendants request this Court accept Defendants' enhanced Revised Compliance Plan. Defendants have requested Plaintiffs continue to meet and confer with Defendants if they find certain aspects of the Revised Compliance Plan to be objectionable, but subject to possible agreed revision.

DATED this 13th day of July, 2021.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/Rachel Love
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Alison Hardy: | ahardy@prisonlaw.com |
| Amelia M. Gerlicher: | agerlicher@perkinscoie.com;docketPHX@perkinscoie.com, kleach@perkinscoie.com |
| Asim Dietrich: | adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org |
| Corene T. Kendrick: | ckendrick@aclu.org |
| Daniel Clayton Barr: | DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com |
| David Cyrus Fathi: | dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org |
| Donald Specter: | dspecter@prisonlaw.com |
| John Howard Gray: | jhgray@perkinscoie.com; slawson@perkinscoie.com |
| Jose de Jesus Rico: | jrico@azdisabilitylaw.org |
| Maya Abela | mabela@azdisabilitylaw.org |
| Rose Daly-Rooney: | rdalyrooney@azdisabilitylaw.org |
| Sara Norman: | snorman@prisonlaw.com |
| Rita K. Lomio: | rlomio@prisonlaw.com |
| Eunice Cho | ECho@aclu.org |
| Jared G. Keenan | jkeenan@acluaz.org |
| Casey Arellano | carellano@acluaz.org |
| Maria V. Morris | mmorris@aclu.org |

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/Rachel Love

15