Victoria López (Bar No. 330042)
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
       jkeenan@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **JOINT STATEMENT RE: ORDER TO EXPEDITE DISCOVERY PROCESS AND TRIAL (Doc. 3931)** |

LEGAL23774493.1

The parties jointly submit their agreements and disputes pursuant to the Court's Order that the parties attempt to agree upon and propose "limits on discovery" and procedures "to expedite the completion of trial." Doc. 3931 at 1-2. The parties met and conferred on July 26 and August 6, 2021. The parties respectfully request that the Court expeditiously rule upon the outstanding disputes, given the narrow timeframe before the anticipated beginning of trial.

**Information Controlled By Defendants' Health Care Vendor Centurion**

As a threshold matter, the parties agreed that Defendants will produce any information maintained by, or witnesses employed by, their agent Centurion on the same expedited timeframes as the parties may agree to, or that the Court may order. To the extent any request made of Defendants requires obtaining documents, information, or witnesses from Centurion, Defendants will provide that information.

*Plaintiffs' Position*

Plaintiffs request that the Court memorialize this agreement by ordering Centurion and any other health care vendors contracted with Defendants to abide by all timeframes agreed to or that are set forth in its orders.

*Defendants' Position*

The parties did not discuss "other health care vendors contracted with Defendants" in their meet and confer, and Defendants are not certain what is intended by that phrase. Centurion has pledged its cooperation to assist Defendants in providing documents and witnesses on an expedited basis.

**Discovery Dispute Resolution Process**

The parties have agreed that any and all objections to discovery requests must be provided to the propounding party within seven days of the request.[1] The parties agree to meet-and-confer within two business days after objections are made.

//

---

[1] All references to "days" are to calendar days. Any references to business days are so specified.

LEGAL23774493.1

**Timeframes for Producing Information**

Plaintiffs proposed that all responses to discovery requests, including requests for production of documents, requests for admission, and interrogatories, other than documents requests for electronically stored information ("ESI") (for example email communications), be produced within 14 days of a request.

Defendants proposed that they would provide non-ESI documents controlled by ADC (versus their vendor Centurion) within 21 days only if there were fewer than 50 document requests and no ESI requests.

The parties are at an impasse.

*Plaintiffs' Position*

The Court has ordered that all Plaintiffs' expert reports be disclosed no later than October 9, 2021. Discovery responses, especially documents, must be provided promptly so that they can be reviewed and analyzed in a timely manner by experts to prepare their reports to the Court and for trial. Plaintiffs had agreed to Defendants' initial counterproposal of 21 days to produce documents, but then at a subsequent meet and confer, Defendants clarified that their original counterproposal was contingent upon a limit of 50 requests. It is only upon the drafting of this statement that Defendants have announced that their proposed limit of 50 requests includes subparts, without explaining how they define a subpart – for example, if a request is for monthly reports for all ten prisons, would Defendants consider each month and each institution to be a discrete subpart of a request?

*Defendants' Position*

Defendants' agreement to provide responses within 21 days is dependent on the number of Requests for Production not exceeding 50, including discreet subparts. Defendants utilize the same subpart definition utilized by courts in analyzing Rule 33's limit on interrogatories. "Probably the best test of whether subsequent questions, within a single interrogatory, are subsumed and related, is to examine whether the first question is primary and subsequent questions are secondary to the primary question. Or, can the

subsequent question stand alone? Is it independent of the first question?" *Reed v. Barcklay*, No. CV111339PHXJATBSB, 2013 WL 12177162, at *2 (D. Ariz. Apr. 30, 2013) (internal citations omitted). Because the parties are limiting the number of requests for production, excluding subparts makes sense for the same reason subparts are excluded in interrogatories propounded under Rule 33—because parties are limited in the number that can be propounded. Without limiting subparts, a cap on the number of requests for production is meaningless.

Plaintiffs have had access to eOMIS since September 19, 2016. *See* Dkt. 1667. In addition, Defendants have provided nearly 1.8 million pages of requested documents to Plaintiffs on a monthly basis. The most recent production relating to all ten facilities occurred in June 2021 and July 16, 2021, for the ASPC-Perryville facility.

**Numerical Limits on Requests for Production of Documents (RFPDs)**

*Plaintiffs' Position*

The Federal Rules of Civil Procedure place no limit on the number of RFPDs by each party or by each side of a case.

Defendants proposed a limit of 50 RFPDs by Plaintiffs. [Doc. 3926 at 5]

Plaintiffs proposed a limit of no more than 125 non-ESI document requests per side (with leave to seek more from the Court with good cause shown).

Plaintiffs note that a significant number of their document requests would be of documents and reports that Defendants previously provided on a monthly basis over a period of years, and/or have routinely provided prior to monitoring tours of prisons. Plaintiffs also proposed a limit of no more than two ESI-related / communications requests to ADC and no more than two ESI-related / communications requests to Centurion, with timeframes of the request, key search words, and custodians to be negotiated, along with the timeframe for production.

Defendants point to the monthly monitoring documents that they have provided, arguing that these are sufficient to allow Plaintiffs to prepare for trial. However, the information needed to monitor Defendants' compliance with the specific provisions of the

1   Stipulation and the individual Performance Measures are not the same as that required to
2   establish a constitutional violation.

3   Defendants indicated that they would only provide responses to 50 document
4   requests for non-Centurion and non-ESI/communication documents.  Defendants refuse to
5   stipulate to provide any ESI/communications.  Defendants provide Plaintiffs with remote
6   read-only access to the electronic health records system (eOMIS) pursuant to the Court's
7   past orders that they do so, and providing this remote read-only access is not burdensome
8   to them.

9   Finally, to the extent Defendants assert that their Counsel will be "overwhelmed"
10  and not able to provide responsive discovery given the accelerated timeframe before trial,
11  Plaintiffs note that the Arizona Attorney General's Office is also counsel of record to
12  Defendants in this matter, and describes itself as "the largest law office in the State." See
13  https://www.azag.gov/about (last checked Aug. 9, 2021).

14  *Defendants' Position*

15  Defendants are concerned about not being able to meet the shortened timeframe
16  obligations if Plaintiffs are allowed to ask for more than 50 RFPDs.  Defendants did offer
17  to extend the RFP requests to 75 if the response time was increased to 28 days from the
18  agreed upon 21 days for 50 RFPDs.  Moreover, given that Plaintiffs have been receiving
19  documentation on a monthly basis (most recently in June 2021 for all facilities, and July
20  2021 for Perryville), it is unclear why Plaintiffs need such an excessive amount of
21  discovery.  Defendants are concerned that they will be so overwhelmed with responding
22  to discovery requests, preparing witnesses for depositions, and attending depositions of
23  ADCRR and Centurion employees, that they will not have sufficient time to prepare a
24  defense for trial.  Indeed, Plaintiffs have stated that they will likely provide most of the
25  testimony for their case through expert testimony.  It is unclear, therefore, why this
26  additional discovery is even needed, particularly in light of the fact that Plaintiffs' experts
27  have had unfettered access to eOMIS for much of the monitoring period.  Plaintiffs make
28

1  no attempt to explain the need, and instead argue Defendants should assume the burden
2  because they can utilize the Attorney General's Office.

3  With respect to Electronically Stored Information (ESI), Defendants unilaterally
4  agreed to continue to provide access to eOMIS for Plaintiffs' counsel and their experts.
5  Defendants cannot agree to the additional ESI requests because Plaintiffs have not
6  identified what they are seeking, how many custodians they want, or defined search terms.
7  Based upon past experience in dealing with ESI issues in this case, even four ESI requests
8  will be so large and labor intensive, it is unlikely that the ESI could even be produced
9  prior to trial. Without more information from Plaintiffs, Defendants simply cannot agree
10 to provide any additional ESI in a timely manner.

11 **Limits on Interrogatories**

12 *Plaintiffs' Position*

13 The Federal Rules of Civil Procedure limit the number of interrogatories to 25 per
14 party. Plaintiffs proposed a limit of twenty (20) interrogatories per side, *except for any*
15 *interrogatories directed solely to the authenticity or admissibility of documents*, with the
16 timeframes noted above for written objections (7 days), meet-and-confers (3 days), and
17 production of the responsive information (14 days).

18 Defendants' counterproposal was no more than 20 interrogatories per side, with no
19 additional discovery allowed to authenticate documents.

20 During the 2017-18 hearings regarding the veracity and accuracy of monitoring by
21 Defendants of their various health care vendors' compliance with the Stipulation,
22 Defendants' counsel repeatedly called into question the authenticity or admissibility of
23 documents, including emails, that whistleblowers brought forth to the Court. Accordingly,
24 while Plaintiffs can agree to a limit lower than that envisioned by the Federal Rules,
25 Plaintiffs are concerned that unless authenticity and admissibility is established prior to
26 trial, that hours of trial time will be consumed by Defendants' counsel questioning the
27 authenticity or admissibility of documents that Plaintiffs plan to use as exhibits.

28 //

*Defendants' Position*

Defendants' position is that with respect to the vast majority of ADCRR documents, Defendants will stipulate to authenticity. At past hearings, Plaintiffs produced documents at the last minute, purporting to be emails or documents from former Corizon employees, necessitating an inquiry into the authenticity of those documents. Not once in past hearings did Defendants require Plaintiffs to call a custodian of records, and the Defendants stipulated to the authenticity of nearly every document admitted. Admissibility is an entirely different inquiry, and should be dealt with in the Joint Pretrial Statement, not in allowing for interrogatories going well beyond the limits set by the FRCP. To be sure, Defendants have no interest in wasting the Court's time in arguing about authenticity of a document, unless there really is a potential issue.

**Requests for Admission (RFAs)**

*Plaintiffs' Position*

The Federal Rules of Civil Procedure place no limits on the number of RFAs. Plaintiffs proposed a limit of twenty (20) RFAs per side, *except for any requests for admission directed solely to the authenticity or admissibility of documents*, with the timeframes noted above for written objections, meet-and-confers, and responses.

Defendants' counterproposal was no more than ten (10) RFAs per side, with no additional discovery allowed to authenticate documents.

For the reasons stated above with regard to interrogatories, Plaintiffs note that they need a means to authenticate documents, especially as Defendants have previously refused to stipulate to their authenticity or admissibility.

*Defendants' Position*

Without waiving any other objections, Defendants will stipulate to the authenticity of ADCRR and Centurion documents that Defendants produce. But without seeing the exhibits that Plaintiffs plan to introduce, and without knowing where the documents originated from, Defendants cannot blindly stipulate to the authenticity of ALL of Plaintiffs' exhibits. As stated above, Defendants will not waste trial time contesting the

1  authenticity of a document, unless there really is a question as to where the document
2  originated. Ten RFAs per side should be adequate for both sides in this shortened period
3  of discovery.

4  **Depositions**

5  The parties agreed that depositions would be conducted virtually / via video to the
6  extent possible. Doc. 3926 ¶ 4.c.

7  *Deposition Time Limits*

8  *Plaintiffs' Position*

9  Rule 30 of the Federal Rules of Civil Procedure authorize up to ten witnesses per
10 party for up to seven hours each, with leave of Court to seek more depositions and time.
11 Defendants proposed that Plaintiffs have a limit of 15 fact and 30(b)(6) witnesses, for no
12 more than four hours for fact witnesses. Doc. 3926 at 5.

13 Plaintiffs proposed that every deposition – either fact witness or 30(b)(6) -- be
14 limited to seven hours per witness, as authorized by Rule 30.

15 Plaintiffs proposed a limit of 70 hours of fact witness depositions per side.

16 Plaintiffs proposed a limit of ten 30(b)(6) depositions, with the understanding that
17 if Defendants designate multiple witnesses for one deposition topic, this still counts as one
18 deposition, because Plaintiffs have no control over how many people Defendants choose
19 to designate pursuant to Rule 30(b)(6).

20 *Defendants' Position*

21 Defendants proposed that each side be limited to no more than 15 non-26(a)(2)(B)
22 expert depositions, and that fact depositions be limited to no more than four hours. It is
23 Defendants' position that most depositions, particularly of fact witnesses, can be
24 completed easily within four hours. As for 30(b)(6) depositions, Defendants propose that
25 a 30(b)(6) deposition last no more than seven hours, even if multiple deponents are
26 required. Based on Defendants' experience leading up to the first trial setting, Plaintiffs
27 may submit extensive topic areas in their 30(b)(6) notices. Putting a cap of seven hours

28

1  total for a 30(b)(6) notice ensures that the Plaintiffs will appropriately tailor the notices to
2  what they really will need for trial.

3  ***Fact Witnesses***

4  The parties agreed that they will make initial disclosures of fact witnesses by
5  September 10, as the Court ordered.  Doc. 3931 at 2.

6  *Plaintiffs' Position*

7  Plaintiffs proposed that on September 10, Defendants specifically identify their
8  anticipated non-rebuttal trial witnesses, so that Plaintiffs have sufficient time to depose
9  these witnesses.  Plaintiffs proposed that they provide Defendants with the names of any
10 incarcerated class member non-rebuttal trial witnesses no later than September 17, to the
11 extent that identifying and preparing class members to be deposed or testify can take more
12 time.  Defendants only agreed to "make our best efforts" to provide names of witnesses by
13 September 10, 2021.

14 Plaintiffs proposed that fact witness deponents be made available within seven (7)
15 days of request.

16 Defendants countered with a 14-day response time to provide witnesses, except for
17 when there needs to be "consideration for a longer period of time based upon witness
18 schedules."

19 Plaintiffs are concerned that this exception swallows the rule, and propose that all
20 witnesses must be made available within 14 days, unless the witness is unavailable due to
21 documented personal/family illness and/or a previously booked vacation.

22 *Defendants' Position*

23 Defendants informed Plaintiffs that they will make all reasonable efforts to make a
24 witness available for deposition within 14 days.  In light of the fact that there may be
25 legitimate reasons that a witness cannot appear for a deposition within 14 days, other than
26 an illness or previously booked vacation, and that many of these witnesses will likely be
27 employed by Centurion and be providing health care to the Plaintiffs, it may be that a few
28 might need to go beyond the 14 days.

1    Defendants agree that the parties should make initial disclosures of fact witnesses
2    by September 10. Defendants, as Plaintiffs have requested, cannot commit to providing
3    all anticipated "non-rebuttal" trial witnesses by that date, however. Defendants will
4    provide the September 10 disclosure as ordered by the Court, but as it will be very early in
5    the discovery process, it would be prejudicial to Defendants to have to provide all trial
6    witness, other than rebuttal, by that date, particularly since Plaintiffs have the burden of
7    proof.

### *30(b)(6) Witnesses*

*Plaintiffs' Position*

Plaintiffs proposed that all 30(b)(6) witnesses be made available within 14 days of the request. Defendants countered with a 14-day response to provide ADC witnesses, except for when there needs to be "consideration for a longer period of time based upon witness schedules." Plaintiffs are concerned that some 30(b)(6) witnesses would be Centurion employees, and that this exception swallows the rule, and propose that all witnesses must be made available within 14 days, unless the witness is unavailable due to documented personal/family illness and/or a previously booked vacation. Additionally, Plaintiffs proposed that if a 30(b)(6) designee is unavailable for a significant period of time prior to trial (due to extended Family Medical Leave Act, sick leave, parental leave, or for any other reason), Defendants identify and prepare a different person to testify on the topic. Counsel for Defendants said they were unsure if Centurion could abide by the time frames, and their counterproposal was "reasonable periods of time" and that people like Director Shinn are "very busy."

*Defendants' Position*

Defendants agreed to make ADCRR 30(b)(6) witnesses available within 14 days unless there were circumstances as noted above, which would require going slightly farther out than 14 days. Defendants could not make the same commitment for Centurion 30(b)(6) witnesses, but informed Plaintiffs that we would make all reasonable efforts to get the depositions scheduled in a timely manner. Contrary to the statement in Plaintiffs'

position on this issue, defense counsel never said, "people like Director Shinn are very busy", which is clearly an attempt to make Director Shinn look bad before the Court. Indeed, defense counsel never mentioned Director Shinn's name in either one of the meet and confer conference calls between the parties.

*Expert Witnesses*

The parties previously stipulated to the timeframes for experts' depositions (*see* Doc. 3926 at 2), and that they may be done virtually. *Id*. at 4. The parties agree that experts' depositions can be up to seven hours long.

**Experts**

The parties agreed that they will exchange the identities of their experts and their affiliations no later than September 17, 2021.

*Disclosure of File Reviews*

The parties previously agreed that they would provide seven days' notice of expert tours, and that they would provide one another with the names and ADC numbers of class members whose medical records are reviewed for expert reports on a rolling basis, to begin as soon as file reviews begin. Doc. 3926 ¶¶ 4.a., 4.b.

*Plaintiffs' Position*

Plaintiffs proposed that the names be provided beginning August 11, 2021, and every two weeks thereafter until the court-ordered expert deadlines are issued. (In other words, August 11, August 25, September 8, September 22, October 6, and October 20). Plaintiffs' experts' reports are due on October 9, Defendants' experts' reports are due on October 22. [*See* Doc. 3931 at 2]. Defendants want weekly notifications of the files that the experts review. Plaintiffs' position is that biweekly disclosure is more than enough and beyond anything required by the Federal Rules of Civil Procedure, and will still provide Defendants' counsel and their experts ample time to review those records.

Plaintiffs' experts have not had any sort of "head start" on preparing for trial compared to Defendants, as all parties received notice of trial at the exact same time. Defendants' assertion that "Plaintiffs' experts have been reviewing records of the

1 Plaintiffs for several months" is therefore nonsensical. Defendants' reference to their
2 experts having "full-time jobs" is an inexplicable *non sequitur*; Plaintiffs' experts are also
3 employed in other matters. Finally, as noted above, the evidence needed to prove
4 constitutional violations is different than that for monitoring compliance with the
5 Stipulation and the individual Performance Measures.

6 Plaintiffs also note that any disclosure of file reviews must be reciprocal;
7 accordingly, to the extent that Defendants' experts review any medical or other central
8 files, this must be disclosed to Plaintiffs on a reciprocal basis.

*Defendants' Position*

10 Defendants believe that each side should disclose the patient files reviewed on a
11 weekly basis. This will allow the Defendants' experts, who have full-time jobs providing
12 health care outside of any consulting work, an opportunity to review the files when they
13 have the time to dedicate to do so, whether it be at night or on the weekends. It is not a
14 burden for either side to do so on a weekly basis. Moreover, Plaintiffs' experts have been
15 reviewing records of the Plaintiffs for several months, so it is unclear as to the volume of
16 records they will be including in their reports. To illustrate, Plaintiffs' counsel and their
17 experts have enjoyed long-standing eOMIS access and received nearly 1.8 million pages
18 of documents from Defendants. In light of the short period of time in which Defendants'
19 experts must prepare their reports, following the production of the Plaintiffs' expert
20 reports, weekly reporting of this information is necessary.

**Contact With Represented Parties and Preservation of Experts' Notes**

22 With regard to any tours or visits to Arizona prison facilities by Defendants'
23 retained experts, Plaintiffs object to Defendants' experts speaking to any class members
24 outside of the presence of class counsel. *See Coleman v. Brown*, 938 F.Supp.2d 955, 962-
25 63 968-69, n. 20 (E.D. Cal. 2013) (sanctioning counsel and striking defendants' expert
26 reports after defendants' counsel and experts improperly communicated with represented
27 incarcerated class members outside the presence and without the consent of class counsel,
28 and ordering that "it may be that the possible ethics violations here are best left to be dealt

with by the California Bar. In addition, the Clerk is directed to deliver a copy of this order to the State Attorney General, to ensure that she is made aware of the conduct." (citation omitted)).

Defendants' counsel represented during the meet and confer that if any of their experts anticipated or wanted to speak to class members, that Plaintiffs' counsel would be notified in advance to allow sufficient time for Plaintiffs' counsel to object or to attend the tour. To the extent any class members approached Defendants' experts as they visited a prison, Defendants' counsel would indicate that the expert could not speak with the class members.

Plaintiffs similarly requested that Defendants' counsel instruct their experts to preserve any and all notes they take in the course of their inspection tours or other work on this case, and Plaintiffs will do the same. Defendants' counsel indicated that they would so instruct their experts, if Plaintiffs did the same.

**Admissibility of Voluminous Records (Medical Records, Solitary Records)**

The parties may seek the Court's assistance (or the assistance of the Court's Judicial Assistant or Clerk) with regard to the practical management of the admissibility of the underlying medical records (or maximum custody logs and central files or any other voluminous documents) referenced in expert reports. Since these reports often cover hundreds of class members, and the medical records are kept in the unwieldy electronic health record system that requires printing every entry and subentry separately, producing the class members' records to the Court electronically or in paper format would be incredibly burdensome if not impossible for both parties. It is impossible to have a single medical record in one place – each entry in the electronic health record system requires printing out, saving, Bates stamping, and producing a separate document. The Court previously indicated its reluctance to handle dozens of boxes of documents, for example in relation to the 2020 litigation regarding the termination of maximum custody Stipulation requirements. [*See*, *e.g*., Doc. 3705] Counsel for Defendants are speaking with Centurion representatives about various options to present this evidence. The parties will


provide the Court an update and may seek assistance or guidance from the Court via its clerks or judicial assistants.

Respectfully submitted,

Dated: August 9, 2021

| **STRUCK, LOVE, BOJANOWSKI, & ACEDO** | **ACLU NATIONAL PRISON PROJECT** |
|---|---|
| By:  s/ Daniel Struck (*with permission*)<br>    Daniel P. Struck<br>    Rachel Love<br>    Timothy J. Bojanowski<br>    Nicholas D. Acedo<br>    Ashlee B. Hesman<br>    Jacob B. Lee<br>    Timothy M. Ray<br>    3100 West Ray Rd., Ste. 300<br>    Chandler, AZ 85266<br>    Telephone: (480) 420-1601<br>    Email:   dstruck@strucklove.com<br>              rlove@strucklove.com<br>          tbojanowski@strucklove.com<br>              nacedo@strucklove.com<br>              ahesman@strucklove.com<br>              jlee@strucklove.com<br>              tray@strucklove.com | By:  s/ Corene T. Kendrick<br>    David C. Fathi (Wash. 24893)\*\*<br>    Maria V. Morris (D.C. 1697904)\*<br>    Eunice Hyunhye Cho (Wash. 53711)\*\*<br>    915 15th Street N.W., 7th Floor<br>    Washington, D.C. 20005<br>    Telephone: (202) 548-6603<br>    Email:   dfathi@aclu.org<br>              mmorris@aclu.org<br>              echo@aclu.org<br><br>Corene Kendrick (Cal. 226642)\*<br>39 Drumm Street<br>San Francisco, California 94111<br>Telephone: (202) 393-4930<br>Email:   ckendrick@aclu.org<br><br>\*Admitted *pro hac vice*<br>\*\*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.<br><br>Donald Specter (Cal. 83925)\*<br>Alison Hardy (Cal. 135966)\*<br>Sara Norman (Cal. 189536)\*<br>Rita K. Lomio (Cal. 254501)\*<br>**PRISON LAW OFFICE**<br>1917 Fifth Street<br>Berkeley, California 94710<br>Telephone: (510) 280-2621<br>Email:   dspecter@prisonlaw.com<br>              ahardy@prisonlaw.com<br>              snorman@prisonlaw.com<br>              rlomio@prisonlaw.com<br><br>\*Admitted *pro hac vice* |

| | |
|---|---|
| 1 | Victoria López (Bar No. 330042) |
| 2 | Jared G. Keenan (Bar No. 027068) |
|   | **ACLU FOUNDATION OF ARIZONA** |
| 3 | 3707 North 7th Street, Suite 235 |
|   | Phoenix, Arizona 85013 |
| 4 | Telephone: (602) 650-1854 |
|   | Email: vlopez@acluaz.org |
| 5 |        jkeenan@acluaz.org |

Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:  dbarr@perkinscoie.com
        jhgray@perkinscoie.com
        ayost@perkinscoie.com
        kworsham@perkinscoie.com
        kboughton@perkinscoie.com
        mcolby@perkinscoie.com
        ksoldati@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email: adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
      rdalyrooney@azdisabilitylaw.org
      jrico@azdisabilitylaw.org
      mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ C. Kendrick