1 Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
2 **ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
3 Phoenix, Arizona 85013
Telephone: (602) 650-1854
4 Email: vlopez@acluaz.org
          jkeenan@acluaz.org
5
*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)
6
*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia*
7 *Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy*
*Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci,*
8 *Joseph Hefner, Joshua Polson, and Charlotte Wells, on*
*behalf of themselves and all others similarly situated*
9 **[ADDITIONAL COUNSEL LISTED ON SIGNATURE**
**PAGE]**
10
Asim Dietrich (Bar No. 027927)
11 **ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
12 Phoenix, Arizona 85034
Telephone: (602) 274-6287
13 Email: adietrich@azdisabilitylaw.org
14 *Attorneys for Plaintiff Arizona Center for Disability Law*
**[ADDITIONAL COUNSEL LISTED ON SIGNATURE**
15 **PAGE]**

16                 UNITED STATES DISTRICT COURT

17                       DISTRICT OF ARIZONA

18 Victor Parsons; Shawn Jensen; Stephen Swartz;    No. CV 12-00601-PHX-ROS
Dustin Brislan; Sonia Rodriguez; Christina
19 Verduzco; Jackie Thomas; Jeremy Smith; Robert
Gamez; Maryanne Chisholm; Desiree Licci; Joseph    **PLAINTIFFS' REPLY IN**
20 Hefner; Joshua Polson; and Charlotte Wells, on    **SUPPORT OF MOTION TO**
behalf of themselves and all others similarly      **PRESENT DIRECT EXPERT**
21 situated; and Arizona Center for Disability Law,   **TESTIMONY BY**
                                                    **DECLARATION**
22                 Plaintiffs,

23          v.

24 David Shinn, Director, Arizona Department of
Corrections, Rehabilitation and Reentry; and Larry
25 Gann, Assistant Director, Medical Services Contract
Monitoring Bureau, Arizona Department of
26 Corrections, Rehabilitation and Reentry, in their
official capacities,
27
                  Defendants.
28

153507403.5

As discussed in Plaintiffs' motion, the Ninth Circuit has long "accepted and encouraged" replacing live direct testimony with declarations as a "technique for shortening bench trials." *Phonetele, Inc. v. Am. Tel. & Tel. Co.*, 889 F.2d 224, 232 (9th Cir. 1989). The Ninth Circuit has held that this technique provides judges more than enough opportunity to "observe the declarants' demeanor and to gauge their credibility during oral cross-examination and redirect examination." *In re Adair*, 965 F.2d 777, 780 (9th Cir. 1992). In their response, Defendants disagree with the Ninth Circuit, misrepresent Plaintiffs' arguments, and contradict their own prior position in this case.

Defendants make two requests to which Plaintiffs do not object. Defendants wish to present their direct expert testimony live and have no time limit on cross-examination. Given the tight trial schedule, Plaintiffs assume that each party will be allotted a finite amount of time to present their case and rebut the opposing party's case. Based on that assumption, Plaintiffs do not object to Defendants using their allotted time as they wish. *If the total trial time for each side is capped*, then Plaintiffs withdraw their request for a 180-minute time limit on cross-examination and do not object to Defendants having the choice to present their direct expert testimony live or in writing.

Defendants are not prejudiced in any conceivable way by Plaintiffs presenting their experts' direct testimony by declaration. Neither their cross-examination nor the Court's ability to assess an expert's opinion or credibility will be impaired.

Plaintiffs' motion should be granted.

## ARGUMENT

### I.      The law-of-the-case doctrine is inapplicable.

"[T]he law of the case doctrine is wholly inapposite" here. *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). "[A]s long as a district court has jurisdiction over the case, . . . it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Id.* at 889 (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). Indeed, "[a]ll rulings of a trial court are subject to revision at any time before the

1  entry of judgment." *Id.* at 888 (quoting *United States v. Houser*, 804 F.2d 565, 568 (9th
2  Cir. 1986)) (emphasis omitted).

3       Defendants know this. They made this very argument in this case in 2017. [*See*
4  Doc. 2074 at 3–4] And the Court agreed. [Doc. 2118 at 2]

5       But the law of the case doctrine is also inapplicable for another reason. As
6  defendants note, the law of the case doctrine applies "when a court decides upon a rule of
7  law." [Doc. 3942 at 2 (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))] But
8  Judge Humetewa did not deny Plaintiffs' previous motion based "upon a rule of law." She
9  made a discretionary judgment call, as defendants acknowledge. [*See* Doc. 3942 at 5
10  ("The Decision Whether to Order Expert Testimony by Declaration is Highly
11  Discretionary.")] Because of this discretion, the law did not compel a particular result in
12  2014 and it does not do so now.

13  **II.   Rule 59(e) does not apply because no judgment has been entered.**

14       Defendants argue that Plaintiffs' motion is an untimely motion to reconsider and
15  note that "Plaintiffs' Motion does not even attempt to establish Rule 59(e)'s
16  requirements." [Doc. 3942 at 3] For good reason. Federal Rule of Civil Procedure 59(e)
17  applies to "judgment[s]." A judgment is a "court's *final* determination of the rights and
18  obligations of the parties in a case." JUDGMENT, Black's Law Dictionary (11th ed.
19  2019) (emphasis added); *see also* Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules
20  includes a decree and any order from which an appeal lies."); 28 U.S.C. § 1291
21  (authorizing appeals from final judgments). The text of Rule 59(e) makes clear that is
22  referencing final determinations. It states that a "motion to alter or amend a judgment
23  must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).
24  The "entry of judgment" is itself defined as "[t]he ministerial recording of a court's *final*
25  decision." ENTRY OF JUDGMENT, Black's Law Dictionary (11th ed. 2019) (emphasis
26  added). Judge Humetewa's decision was not a final, or otherwise appealable, order.

27       Judge Humetewa's order was an interlocutory order. And "when a district court
28  issues 'an interlocutory order, the district court has plenary power over it and this power

153507403.5

to reconsider, revise, alter or amend the interlocutory order is not subject to the limitations of Rule 59.'" *Santa Monica Baykeeper*, 254 F.3d at 885 (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). Accordingly, the general rule applies: "All rulings of a trial court are subject to revision at any time before the entry of judgment." *Id.* at 888 (quoting *Houser*, 804 F.2d at 568) (emphasis omitted).

## III. Defendants' fail to distinguish the caselaw Plaintiffs rely on.

Defendants ask this court to "disregard the cited cases" in Plaintiffs' motion because they do not "purport to resolve claims against an entire-statewide prison system involving 10 facilities and over 33,000 inmates," did not order direct written testimony over a party's objection, do not come from the District of Arizona, and involved "long-standing, pre-existing courtroom procedures or pretrial orders, which permitted the use of written testimony." [Doc. 3942 at 5–7] These arguments are not persuasive (and not just because Defendants only deem a case analogous when it fits an oddly specific fact pattern).

Defendants are wrong that none of the cases cited in Plaintiffs' motion imposed written direct testimony over a party's objection. The court in *Madrigal v. United States*, No. CV 19-5041-RSWL-PLAx, 2021 WL 1627485, at *5 (C.D. Cal. Apr. 27, 2021) granted the government's motion for written direct testimony over the plaintiff's objection. And in *Sanders v. Ayers*, No. 1:92-CV-05471-LJO, 2008 WL 4224554, at *2 (E.D. Cal. Sept. 12, 2008), the court ordered written direct testimony over a warden's objection.

Defendants make much of the fact that none of the cases cited by Plaintiffs come from the District of Arizona. [Doc. 3942 at 5 & n.2] But this is hardly surprising as this issue is rarely litigated anywhere and is almost never appealed. But even if that fact were relevant, Defendants fail to distinguish Ninth Circuit caselaw that not only approves but *encourages* written direct testimony and applies equally to every district court within the circuit. *Phonetele*, 889 F.2d at 232; *Adair*, 965 F.2d at 779.

153507403.5

Defendants' attempt to distinguish unfavorable cases based on "long-standing, pre-existing courtroom procedures" likewise fails. [Doc. 3942 at 5–6] *Sanders* does not give any indication that such a long-standing rule existed in the Eastern District of California when it ordered direct testimony over the warden's objection. *See* 2008 WL 4224554, at *1–2. Moreover, as Defendants acknowledge, such long-standing procedural rules do not require written direct testimony, they merely permit it. *See Madrigal*, 2021 WL 1627485, at *5 (explaining that the local rule "allows" for written direct testimony); Doc. 3942 at 5 (noting that these "long-standing pre-existing" rules merely "permit[s] the use of written testimony"). That same permissive, "long-standing, pre-existing courtroom procedure[]" exists everywhere in the Ninth Circuit. *See Phonetele*, 889 F.2d at 232 (1989); *Adair*, 965 F.2d at 779.

Instead of grappling with cases in the Ninth Circuit, Defendants rely on two out of circuit cases: *United States v. Am. Tel. & Tel. Co.*, 83 F.R.D. 323 (D.D.C. 1979), and *Walton v. United Consumers Club, Inc.*, 786 F.2d 303 (7th Cir. 1986). [Doc. 3942 at 5] It is true that written direct testimony was not permitted in either case, but their reasoning is foreclosed by Ninth Circuit precedent. Both cases were decided before *Phonetele* and *Adair*, and both relied on Federal Rule of Civil Procedure 43(a) to conclude that live testimony was required. However, unlike the D.C. district court and the Seventh Circuit, the Ninth Circuit balances Rule 43(a)'s requirements against the discretion granted by Federal Rule of Evidence 611(a) to permit written direct testimony. [Doc. 3938 at 5] Neither out-of-circuit case is applicable here.

Contrary to Defendants' contention, there are no grounds to "disregard the cited cases" in Plaintiffs' motion.

## IV.   The importance and breadth of this case favors granting Plaintiffs' motion.

Defendants argue that this case is too big and too complex for written direct expert testimony, (Doc. 3942 at 6), but that is precisely why such testimony would be valuable. As noted in Plaintiffs' motion, written direct expert testimony "will be particularly valuable here, where the 'evidence is complicated.'" [Doc. 3938 at 4 (quoting Manual for

-4-

1    Complex Litigation § 12.51 (4th ed. 2021))] But it is also necessary to comply with the

2    Court's strict trial schedule.

3            Defendants go to great lengths to demonstrate the enormous scope of this case:

4                    The breadth of this class-action lawsuit, which brings
5                    constitutional claims affecting a state-wide prison system
                     involving 10 facilities and over 33,000 inmates, is
6                    extraordinary. It is a challenge to both the provision of
                     healthcare and to the conditions of confinement within
7                    ADCRR. The Court certified 10 alleged health care practices,
8                    which encompass medical care, dental care, and mental health
                     care, and seven alleged conditions of confinement, which
9                    Plaintiffs contend violate their Eighth Amendment rights.[1]

10   [Doc. 3942 at 6] It is unclear how the Defendants envision the parties trying a case with

11   such "extraordinary" breadth in as few as 12 days following a traditional, live-testimony

12   approach. Oddly, Defendants' proposed solution is not more efficiency, but less.[2] [*See*

13   Doc. 3942 at 11 (stating that Defendants "wish to present their expert witnesses in

14   person")]

15           Defendants also contend, taking a page from this Court's 2014 order, that written

16   direct expert testimony will harm the public interest because court records "are not as

17   accessible to the public as live testimony." [Doc. 3942 at 2] If anything, written testimony

18   gives the public greater access because they need not see the testimony at the time it is

19   being offered or pay for a transcript later. The direct testimony will be available any time.

20

21

22

23          [1] In this same section, Defendants also assert that Plaintiffs "seek to implement
     unreasonable and unrealistic procedures and benchmarks that exceed constitutional
24   minimums and go beyond community standards." [Doc. 3942 at 6] To this point in the
     litigation, Plaintiffs have sought nothing more than that Defendants meet the benchmarks
25   to which they voluntarily agreed nearly seven years ago. [*See* Docs. 1185, 1185-1]

26          [2] Defendants assert that written direct testimony will "prolong trial." [Doc. 3942 at
     9] Not surprisingly, they do not cite a single case to support that counterintuitive position.
27   Indeed, their assertion is in direct opposition to the Ninth Circuit characterization of
     written direct testimony. *Phonetele*, 889 F.2d at 232 (calling written direct testimony a
28   "technique for shortening bench trials"). Plaintiffs' motion cited additional caselaw
     consistent with the Ninth Circuit's position. [*See* Doc. 3938 at 3–4]

1
2

**V.     The Ninth Circuit has held that live cross and redirect examination are more than enough to assess a witness's credibility.**

3       Defendants argue that written direct testimony deprives this Court of the
4  opportunity and ability to assess credibility. [Doc. 3942 at 7] But that argument is
5  squarely foreclosed by Ninth Circuit precedent. That court has long held that written
6  direct testimony provides judges more than enough opportunity to "observe the
7  declarants' demeanor and to gauge their credibility during oral cross-examination and
8  redirect examination." *Adair*, 965 F.2d at 780. Defendants are, of course, free to disagree
9  with the Ninth Circuit, but simply asserting that cross and redirect examination are
10 insufficient does not make it so.

11      Defendants attempt to sidestep the Ninth Circuit by mischaracterizing Plaintiffs'
12 motion and preemptively attacking the credibility of Plaintiffs' experts. Neither approach
13 is persuasive.

14      According to Defendants, "Plaintiffs concede[d] that the *entirety* of their lawsuit
15 relies upon the presentation of expert testimony" and that Plaintiffs will present their
16 "entire case-in-chief" through written testimony. [Doc. 3942 at 5, 8 (emphasis in
17 original)] Plaintiffs have never said any such thing. Plaintiffs intend to call other,
18 non-expert witnesses and Plaintiffs' motion explicitly asks for 90 minutes of live direct
19 testimony per expert. But even if Plaintiffs were going to rely exclusively on written
20 expert testimony, this Court would still have adequate opportunity to assess the witnesses'
21 credibility on cross, redirect, and in response to any questions the Court may ask. *See*
22 *Adair*, 965 F.2d at 780. Defendant have not cited any case within the Ninth Circuit to the
23 contrary.

24      Defendants' next tactic is to call into question the credibility of Plaintiffs' experts.
25 [Doc. 3942 at 8] They argue that they have found inconsistencies between the expert
26 reports and the experts' deposition testimony. [*Id.* at 8–9 n.5] But the very fact that
27 Defendants believe they were able to impeach these experts based on their written reports

28

153507403.5

only demonstrates that Defendants can effectively cross-examine and even impeach an expert based on their written testimony.[3]

**VI.   Defendants have not demonstrated prejudice.**

Defendants provide a laundry list of putative prejudices that they will suffer if Plaintiffs' motion is granted. But none of them can credibly be called prejudicial. Every single provision of the order Plaintiffs seek would apply equally to Plaintiffs and Defendants, leaving the playing field even. If anything, these supposed prejudicial circumstances fall disproportionately on Plaintiffs because they have the burden of proof. Further, because Plaintiffs do not object to Defendants presenting their direct expert testimony live, any imagined imbalance would result solely from Defendants' choice.

Even if Defendants chose to present their experts' testimony live, their arguments about prejudice make little sense. For example, Plaintiffs' motion suggested that the direct testimony would be "exchanged no later than close-of-business four court days before the witness's scheduled appearance." [Doc 3938 at 2] Although the Ninth Circuit calls this an "undisputed benefit" of written direct testimony, *Phonetele*, 889 F.2d at 232, Defendants claim it prejudices them. [Doc. 3942 at 10] Perplexingly, Defendants argue that these additional four days give them *too little* time to object to the declaration, but then suggest

---

[3] Defendants refer—without evidentiary support—to "Plaintiffs' attorney-prepared expert declarations" and make much of Plaintiffs' experts' deposition testimony regarding Plaintiffs' counsel's role in their expert review. [Doc. 3942 at 8–9 & n.5] Defendants neglect to inform the Court that they instructed their own experts not to answer questions about defense counsel's role in drafting, editing, or modifying their reports:

Q. BY MR. FATHI: Did any of the lawyers on this case edit or modify your initial draft and send it back to you?

MS. WIENEKE: I'm not going to allow him to answer that. Instruct him not to answer.

Q. BY MR. FATHI: Did any of the lawyers in this case have any role at all in the drafting or editing of your report?

MS. WIENEKE: I'm going to instruct him not to answer.

[Doc. 1480-1 at 35 (deposition of Joseph Penn, M.D., April 11, 2014, 127:23-128:7)]

their objections "can and should be resolved in real time, during the course of the trial." [Doc. 3942 at 10]

Defendants also claim that written direct testimony—with its advanced notice and all—somehow "shifts the orderly presentation of proof" and "deprives defendants of the opportunity to engage in traditional methods of cross-examination." [Doc. 3942 at 10] But the Ninth Circuit has concluded that written direct testimony "mak[es] it easier for [parties] to cross-examine [opposing] witnesses." *Phonetele*, 889 F.2d at 232. And granting Plaintiffs' motion will not change the order in which proof is presented. The written direct expert testimonies will be exchanged four court days in advance, then the experts will be directly examined for up to an additional 90 minutes in open court, followed by full cross and redirect examination. The only change will be the advance notice to help "the judge and opposing counsel . . . better . . . understand and evaluate the witness[es'] testimony." Manual for Complex Litigation § 12.51. But even if the order of proof were shifted, such a shift is within this Court's discretion. Fed. R. Evid. 611(a) (granting courts "control over the mode and order of examining witnesses and presenting evidence").

Defendants also assert that granting Plaintiffs' motion prejudices them because they "have prepared for trial in reliance on [this Court's previous] Order." [Doc. 3942 at 12] Whatever reliance interests have accumulated in the 33 days since this Court vacated its approval of the Stipulation and ordered the parties to prepare for trial, they cannot be substantial. [*See* Doc. 3921, issued July 16, 2021]

Finally, the only prejudice asserted by Defendants that would not fall with equal force on Plaintiffs is Defendants' "wish to present their expert witnesses in person to allow the Court to assess the credibility of their experts." [Doc. 3942 at 11] Defendants fail to explain how not getting their wish would prejudice them because live cross and redirect examination are sufficient for this Court to assess their witnesses' credibility. *Adair*, 965 F.2d at 780. But so long as each side is held to its allotted time, Plaintiffs do not object to Defendants presenting their expert direct testimony in the manner they wish.

-8-

If Defendants take advantage of this concession, they will have an advantage on cross-examination. They will receive Plaintiffs' experts written testimony four court days in advance, giving them time to prepare their cross-examination. Plaintiffs on the other hand will have no such forewarning and will have to prepare their cross-examination on the spot. It is difficult to imagine a good faith claim of prejudice that Defendants could make to such an arrangement.

## VII. Defendants' "alternatives" are insufficient to replace written direct expert testimony.

In a single paragraph, Defendants propose various additional means of expediting trial. Plaintiffs welcome Defendant's renewed commitment to compromise and do not object to any of these approaches. But none of them are adequate alternatives to written direct testimony. They do nothing to alleviate the most time consuming aspect of expert testimony in this case: describing in detail the facts of each of the many cases of inadequate care, the reasons why the expert believes the care was inadequate, and how that supports their opinion that the policy (or, if there is no policy, the pattern or practice) is inadequate to provide adequate care or treatment.

These additional means of expediting the trial should not be accepted as a replacement for written expert testimony.

## VIII. Plaintiffs agree that each side should be given unlimited time for cross-examination.

Defendants claim that they cannot "possibly mount an effective cross-examination in t[hree] hours with only days' advance notice" and that such an arrangement "would be fundamentally unfair." [Doc. 3942 at 11–12] Although the unfairness is far from apparent, Plaintiffs agree with Defendants that the Court should not put a specific time limit on cross examination. Instead, each side should be given an allotted time to make their case and rebut the opposing side's case. So long as any cross-examination counts against that allotted time, Plaintiffs see no reason to limit the time for cross-examination.

1

**CONCLUSION**

2          For the reasons stated here and in Plaintiffs' motion, the Court should permit the

3    parties to choose whether to present their direct expert testimony live or via declaration.

4    Dated:  August 18, 2021                    **PERKINS COIE LLP**

5

6                                              By:  *s/ Daniel C. Barr*
                                                    Daniel C. Barr (Bar No. 010149)
7                                                   John H. Gray (Bar No. 028107)
                                                    Austin C. Yost (Bar No. 034602)
8                                                   Karl J. Worsham (Bar No. 035713)
                                                    Kathryn E. Boughton (Bar No. 036105)
9                                                   Mikaela N. Colby (Bar No. 035667)
                                                    Kelly Soldati (Bar No. 036727)
10                                                  2901 N. Central Avenue, Suite 2000
                                                    Phoenix, Arizona 85012
11                                                  Telephone: (602) 351-8000
                                                    Email:   dbarr@perkinscoie.com
12                                                          jhgray@perkinscoie.com
                                                           ayost@perkinscoie.com
13                                                         kworsham@perkinscoie.com
                                                           kboughton@perkinscoie.com
14                                                         mcolby@perkinscoie.com
                                                           ksoldati@perkinscoie.com
15                                                         docketphx@perkinscoie.com

16                                                  Victoria Lopez (Bar No. 330042)*
                                                    Jared G. Keenan (Bar No. 027068)
17                                                  **ACLU FOUNDATION OF ARIZONA**
                                                    3707 North 7th Street, Suite 235
18                                                  Phoenix, Arizona 85013
                                                    Telephone: (602) 650-1854
19                                                  Email:    vlopez@acluaz.org
                                                           jkeenan@acluaz.org
20
                                                    *Admitted pursuant to Ariz. Sup. Ct.
21                                                  R. 38(d)

22

23

24

25

26

27

28

-10-

153507403.5

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone:  (510) 280-2621
Email:    dspecter@prisonlaw.com
          ahardy@prisonlaw.com
          snorman@prisonlaw.com
          rlomio@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
          mmorris@aclu.org
          echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC;
practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone:  (202) 393-4930
Email:    ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen; Stephen
Swartz; Sonia Rodriguez; Christina Verduzco;
Jackie Thomas; Jeremy Smith; Robert Gamez;
Maryanne Chisholm; Desiree Licci; Joseph
Hefner; Joshua Polson; and Charlotte Wells, on
behalf of themselves and all others similarly
situated*

-11-

**ARIZONA CENTER FOR DISABILITY LAW**

By:   *s/ Maya Abela*

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone:  (602) 274-6287
Email:    adietrich@azdisabilitylaw.org
Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone:  (520) 327-9547
Email:    rdalyrooney@azdisabilitylaw.org
      jrico@azdisabilitylaw.org
      mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

153507403.5

1    **CERTIFICATE OF SERVICE**

2         I hereby certify that on August 18, 2021, I electronically transmitted the above

3    document to the Clerk's Office using the CM/ECF System for filing and transmittal of a

4    Notice of Electronic Filing to the following CM/ECF registrants:

5
                            Michael E. Gottfried
6                              Lucy M. Rand
                    Assistant Arizona Attorneys General
7                       Michael.Gottfried@azag.gov
                          Lucy.Rand@azag.gov
8
                            Daniel P. Struck
9                             Rachel Love
                         Timothy J. Bojanowski
10                          Nicholas D. Acedo
                           Ashlee B. Hesman
11                            Jacob B. Lee
                            Timothy M. Ray
12          STRUCK LOVE BOJANOWSKI & ACEDO, PLC
                          dstruck@strucklove.com
13                         rlove@strucklove.com
                       tbojanowski@strucklove.com
14                        nacedo@strucklove.com
                          ahesman@strucklove.com
15                          jlee@strucklove.com
                           tray@strucklove.com
16
                         *Attorneys for Defendants*
17

18                                       s/ D. Freouf

19

20

21

22

23

24

25

26

27

28

-13-