Index of Exhibits to Joint Discovery Dispute Statement

| Exhibit | Description |
|---------|-------------|
| 1 | 8/18/2021 Email from David Fathi to Ashlee Hesman |
| 2 | 8/20/2021 Letter from Corene Kendrick to Ashlee Hesman |
| 3 | 9/3/2021 Email from Maria Morris to Rachel Love |

# EXHIBIT 1

| From: | David Fathi |
|---|---|
| To: | Elaine Percevecz; External - Delana Freouf; External - PLO AZ; Alison Hardy; Maria Morris; Eunice Cho; Jessica Carns; Samantha Weaver; External - Maya Abela; Jared Keenan; Gloria Torres; Corene Kendrick; Victoria Lopez; Daniel Barr |
| Cc: | Lucy Rand; Michael E. Gottfried; "mary.beke@azag.gov"; StruckLoveParsonsTeam |
| Subject: | Defendants" objections to Plaintiffs" Requests for Production |
| Date: | Wednesday, August 18, 2021 8:33:02 PM |

Counsel:

In response to a number of Plaintiffs' Request for Production of Documents, you object to requests pertaining to detention units.  For example, in response to Request No. 56, you state:

"Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as "detention units" exceeds the scope of Plaintiffs' Complaint because this request is not limited to maximum custody inmates or chemical agents or limited in time. The "duration of confinement" is not at issue in Plaintiffs' Complaint for detention units."

These statements are incorrect.  Plaintiffs' complaint (Doc. 1) clearly and repeatedly challenges "isolation," which is explicitly defined to include detention units:

### III. Defendants Subject Prisoners in Isolation to Unconstitutional Conditions

90. Plaintiffs Gamez, Swartz, Brislan, Rodriguez, Verduzco, Thomas, Smith, and Polson, Plaintiff Arizona Center for Disability Law, and the Isolation Subclass allege the following. Defendants have a policy and practice of confining thousands of prisoners in isolation (defined as confinement in a cell for 22 hours or more each day *or* confinement in Eyman – SMU 1, Eyman – Browning Unit, Florence – Central Unit, or Perryville – Lumley Unit Special Management Area (SMA)), in conditions of enforced idleness, social isolation, and sensory deprivation, and are deliberately indifferent to the resulting substantial risk of serious physical and psychiatric harm.

91. The large majority of prisoners in isolation are held in four facilities: two SMUs at the Eyman prison (SMU 1 and Browning Units); the Florence complex's Central Unit; and the Perryville complex's Lumley SMA for female prisoners. ***However, other prisoners are held in isolation in Complex Detention Units (CDUs) and other restricted housing units throughout ADC. ...***

94. Prisoners in isolation often go months or years without any meaningful human interaction. ...

### Isolation Subclass

133. Plaintiffs Gamez, Swartz, Brislan, Rodriguez, Verduzco, Thomas, Smith, and Polson bring this action on their own behalf and, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, against Defendants Ryan and Pratt on

behalf of a subclass of all prisoners (hereinafter "Isolation Subclass") who are now, or will in the future be, subject by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day *or* confinement in Eyman - SMU 1, Eyman - Browning Unit, Florence - Central Unit, or Perryville - Lumley Unit Special Management Area (SMA).

Doc. 1 at 51-52, 53, 66-67 (emphasis added).

We look forward to speaking with you tomorrow.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005
(202) 548-6603
dfathi@aclu.org
@DavidCFathi
Pronouns: he, him, his

*Not admitted in DC; practice limited to federal courts

# EXHIBIT 2

August 20, 2021

**VIA EMAIL ONLY**

Ms. Ashlee Hesman
Struck, Love, Bojanowski, & Acedo
3100 W. Ray Rd., Ste. 300
Chandler, AZ 85226
ahesman@strucklove.com

<span style="margin-left:2em"></span>RE:<span style="margin-left:1em"></span>*Parsons v. Shinn*
<span style="margin-left:4em"></span>8/19/21 Meet and Confer re: Defendants' Objections to
<span style="margin-left:4em"></span>Plaintiffs' First Set of Requests for Production of Documents



**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION**

National Prison Project
915 15th Street, NW
7th floor
Washington, DC 20005
(202) 393-4930
aclu.org

David C. Fathi
*Director
Attorney at law\**

*\*Not admitted in DC;
practice limited to
federal courts*

Corene Kendrick
*Deputy Director
Attorney at law*
National Prison Project
39 Drumm St.
San Francisco, CA 94111

Dear Ashlee:

Thank you for a productive meet and confer on Thursday.  Below is a summary from my notes of our discussion of Defendants' Objections. If any of this does not comport with your notes, please let me know.

This is organized by document request, as we discussed during the call.

**REQUEST NUMBER 1**:  *All mortality reviews, psychological autopsies, and incident reports related to all persons who have died since January 1, 2020, while in the custody of the ADCRR.*

<span style="margin-left:2em"></span>Defendants objected on the basis that the term "incident report" was not defined. (Objections at p. 2). Defendants made similar objections to Requests 6, 45, and 46.  You explained that there is no such document called an "Incident Report," but rather ADC has multiple types of reports called "Significant Incident Report," "Information Report," and "Incident Command Report."

<span style="margin-left:2em"></span>We clarified that we would like the standard reports that are written after the death of any incarcerated person.  Based upon a review of Department Orders 105 and 711, that would be the **Significant Incident Report**.

**REQUEST NUMBER 6:** *All INCIDENT REPORTS related to emergency medical responses that were reviewed by ADCRR monitors to evaluate CENTURION's compliance with Performance Measure 25, for the months of March 2021 to the present.*

1

Ms. Ashlee Hesman
August 20, 2021
Re: Parsons – First RFPD

Defendants again objected because "INCIDENT REPORTS" was not defined. We noted that these reports have been produced by Defendants for several years pursuant to Monthly Document Request 83. Based upon a review of the last production we received, this refers to **Significant Incident Reports**.

**REQUEST NUMBER 7:** *For each ASPC, the heat intolerance reaction log and DOCUMENTS SUFFICIENT TO SHOW all class members who potentially suffered a heat intolerance reaction due to their psychotropic medications and/or who were moved to a new housing location due to a heat intolerance reaction from March 1, 2021 to the present, in compliance with Paragraph 15 of the Settlement Agreement.*



Defendants objected generally to the meaning of "DOCUMENTS SUFFICIENT TO SHOW" and also the meaning of the words "potentially suffered." We noted that this could include memos or incident reports related to persons having a heat intolerance reaction. You objected based on burden.

We agreed that Defendants will produce the heat intolerance logs, as you have in the past, and Plaintiffs will review and see if the log is adequate to fulfill this request.

**REQUEST NUMBER 10:** *All videos and documentation relating to the use of force on persons classified as SMI from ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from March 1, 2021, to the present.*

Defendants objected based on relevance, and overly broad as it is not limited to maximum custody inmates or chemical agents. This objection is made to numerous other requests.

As noted in David Fathi's August 18, 2021 email, Plaintiffs' Complaint clearly and repeated challenges isolation conditions, as defined as "confinement in a cell for 22 hours or more each day." Doc. 1 at ¶ 90; *see also* ¶¶ 91, 94, 133. Additionally, these use of force videos and documentation are a standing, ongoing production and we are simply asking that Defendants provide the more current videos/documents related to this request.

Ms. Ashlee Hesman
August 20, 2021
Re: Parsons – First RFPD

**REQUEST NUMBER 11:** *Out-of-cell maximum custody tracking forms for the past year, and complete disciplinary and classification files for the following subclass members…*

Defendants objected as to what "the past year" meant.  I clarified that this meant for the previous 365 days to the date the request was received.



**REQUEST NUMBER 13:** *For each ASPC, DOCUMENTS SUFFICIENT TO SHOW all class members for whom a SMI determination was held from January 1, 2020, to the present, including patient name, ADC number, and date of determination.*

You indicated that you did not know what this referred to.  I clarified that prior to many of our monitoring visits, Centurion was able to generate a list of the persons for whom the mental health treatment team had held a meeting to evaluate whether the patient should be designated SMI, for a particular time period.  You indicated that you would confer with your client if such a report was available.  (Your August 20, 2021 email confirmed that it is possible).

**REQUEST NUMBER 19:** *DOCUMENTS SUFFICIENT TO SHOW, for all class members who are not fluent in English, each class member's name and ADC number, primary language, ASPC and LOCATION UNIT, and whether and how language interpretation was provided for all HEALTH CARE encounters from April 1, 2021, through the date of the report.*

Defendants' objection was that this request was burdensome and overly broad because it would require reviewing every class member's medical records.  You indicated that the only responsive document you could provide would be a list of everyone who requested an interpreter in the time period, but it would not have the level of showing primary language.

**REQUEST NUMBER 21:** *For each ASPC, DOCUMENTS SUFFICIENT TO SHOW, for the period from January 1, 2020, to the present, the number of people placed on MENTAL HEALTH WATCH, the total number of days for each person was placed on MENTAL HEALTH WATCH, and the mean,*

*median and maximum duration length of stay on MENTAL HEALTH WATCHES.*

Defendants objected to this request as burdensome because it would require review of each person's individual file.  You stated that this information is not tracked, and that the list that can be provided in response to Request Number 20 is the only responsive document.

**REQUEST NUMBER 22:**  *Monthly CGAR reports (see Request Number 2) in Microsoft Excel format, from January 2020, to the present.*



Your August 20, 2021 email indicated that the CGAR reports could be provided in their native format of Microsoft Word.

**REQUEST NUMBER 23:**  *Monthly HEALTH CARE staffing variance reports (see Request Number 4) in Microsoft Excel format, from January 1, 2020, to the present.*

Defendants objected to having to provide these reports in more than one format. We agreed that we would like the reports in their native format, which should be Excel.

**REQUEST NUMBER 24:**  *DOCUMENTS SUFFICIENT TO SHOW population and census projections for all ten ASPCs, that have been made from January 1, 2020, to the present.*

Defendants objected to this request on the basis of relevance. We explained that these projections are relevant to health care and correctional officer staffing levels.  We also explained that while the ADCRR website has this information for the entire Department systemwide, we are asking for the projections broken down by ASPC.  You stated that you would see if the projections are available by prison complex and update us accordingly.

**REQUEST NUMBER 25:** *DOCUMENTS SUFFICIENT TO SHOW annual work hours and days off that are available to HEALTH CARE employees based upon their classification level, and their years of employment with CENTURION.*

Ms. Ashlee Hesman
August 20, 2021
Re: Parsons – First RFPD

**REQUEST NUMBER 26:** *DOCUMENTS SUFFICIENT TO SHOW for each ASPC and HOUSING UNIT, the number of Health Needs Requests (HNRs) submitted by class members, broken down by whether the request sought medical care, dental care, mental health care, pharmacy services, or any other categories.*

We clarified that both of these requests were limited to the date period of January 1, 2020 to the present.



**REQUEST NUMBER 27:** *DOCUMENTS SUFFICIENT TO SHOW for every ASPC and each clinic within an ASPC, the monthly number on-site HEALTH CARE encounters from January 1, 2020, to the present:*

1. *Medical physician encounters (i.e. non-psychiatric Medical Doctor or Doctor of Osteopathy);*
2. *Advanced practice provider encounters (i.e. non-psychiatric Nurse Practitioner or Physician Assistant)*
3. *Registered Nurse encounters (excluding visits during which only medications are administered)*
4. *Licensed Practical Nurse encounters (excluding visits during which only medications are administered)*
5. *Certified Nursing Assistant encounters (excluding visits during which only medications are administered)*
6. *Psychiatrist encounters (Medical Doctor or Doctor of Osteopathy)*
7. *Mental health advanced practice provider encounters (i.e., psychiatric Nurse Practitioner or Physician Assistant)*
8. *Psychologist encounters*
9. *Psychology associate encounters*
10. *Dentist encounters*
11. *Dental hygienist visits*
12. *Prescriptions*
13. *Lab specimens processed*
14. *Diagnostic images processed*
15. *On-site specialty encounters, and type of on-site specialty*
16. *Medication administration encounters (not otherwise included in other visit types above; one visit per interval regardless of medication doses administered)*
17. *Medication doses administered (i.e., one administration per medication per dosing interval)*

Defendants objected to this request as vague and ambiguous.  You indicated that the degree of detail we requested is not available; for example, #1 and #2 would be combined, as would #3-5.  I clarified that "medication administration encounter" meant, the number of patients provided prescriptions, for example during pill call, whereas "medication doses administered" refers to the number of prescriptions provided to each person during the pill call encounters, for example, a patient provided three different medications.



**REQUEST NUMBER 33:**  *DOCUMENTS SUFFICIENT TO SHOW all CENTURION and ADCRR policies and procedures that are or have been used related to the delivery of HEALTH CARE to class members from January 1, 2020 to the present, including but not limited to ensuring that class members of every security level, including persons housed in maximum custody, DETENTION UNITS, and MENTAL HEALTH WATCH have access to HEALTH CARE.*

Defendants objected to this request as vague, ambiguous, overbroad, and burdensome.  You asked us what documents this would include besides the Health Services Technical Manual, and we explained this would include documents such as nursing protocols, nursing encounter tools, or post orders, among other documents.

**REQUEST NUMBER 35:**  *DOCUMENTS SUFFICIENT TO SHOW why CENTURION Utilization Management recommended an alternative treatment plan for all SPECIALTY CARE referrals or requests made on or after January 1, 2021, that were assigned an alternative treatment plan.*

Defendants objected to this request because it would require going through each patient's medical record. You indicated that no such document exists and there is no way to provide this information in a report.

**REQUEST NUMBER 41:**  *All CENTURION or ADCRR policies, procedures, and other DOCUMENTS pertaining to the mission, operation, and staffing of any and all specialized mental health housing units in each of the ten ASPCs.*

Defendants objected to this request as vague. We explained that a "specialized mental health housing unit" refers to any unit designated by

Ms. Ashlee Hesman
August 20, 2021
Re: Parsons – First RFPD

ADCRR or the complex to house people with mental health issues, or where the person's mental health status determines their placement in it. You stated that you will provide us any responsive documents to this request.

**REQUEST NUMBER 42:**  *All DOCUMENTS related to policies or directives regarding the duration of mental health encounters, and all DOCUMENTS SUFFICENT TO SHOW the actual duration of mental health encounters, from October 1, 2019, to the present.*



Defendants objected to this request as burdensome because it would require going into individual patients' records.  We indicated that Defendants have had to create documents since the Court's March 2020 order (Doc. 3518) to track this information, and we are requesting any documents related to that order or created in response to that order, other than the documents filed on the court docket.

**REQUEST NUMBER 43:**  *DOCUMENTS SUFFICIENT TO SHOW all HEALTH CARE STAFF and CORRECTIONAL STAFF who are proficient in a non-English language, their classification, their regularly assigned location and hours, what language(s) they are proficient in, and when and how their proficiency in each language was last evaluated.*

**REQUEST NUMBER 44:**  *All DOCUMENTS from January 1, 2020, to the present, regarding the provision of language interpretation for HEALTH CARE encounters, including the identification and documentation of class member English fluency and language needs, how class members are informed of their entitlement to interpreter services, staff training, evaluation and documentation of staff language proficiency, use of audio and video language lines, location of equipment necessary to access audio and video language lines, any HEALTH CARE encounters where interpretation services are not available (such as mental health groups, MENTAL HEALTH WATCH, and cell-side encounters), and any HEALTH CARE encounters that were cancelled or rescheduled due to the unavailability of language interpretation services.*

Defendants objected to these requests as overly broad.  With regard to Request Number 43, you stated that there are no responsive documents and this information is not tracked in any manner.  With regard to Request

Number 44, you stated that other than the report you described with regard to Request 19, that there are no responsive documents.

## REQUESTS NUMBERS 45, 46, 47, 50, 53, 57

With regard to Defendants' objections that these requests must be limited to class members classified as maximum custody, or that detention units and mental health watch units are outside the scope of the case, we direct you to Mr. Fathi's August 18 email and the definition of "isolation" as used in the complaint and the class certification order.



Further, our position is that the use of force requests can go beyond only the use of chemical agents, as unreasonable uses of force on people in isolation units may violate their rights and are relevant to the claims at trial. Our discovery requests do not have to be limited solely to the words in the complaint, as "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, *other incidents of the same type*…" Fed. R. Civ. Proc. 26(b)(1), Advisory Committee Note, 192 F.R.D. 389 (2000).

**REQUEST NUMBER 45:** *All Incident Reports from ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, regarding the cancellation of out-of-cell time from January 1, 2020, to the present.*

**REQUEST NUMBER 46:** *All Incident Reports from ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson reflecting the use of force from January 1, 2021, to the present.*

Defendants also raised the same objections to the meaning of the word "Incident Report" as you did with Requests Number 1 and 6. Defendants also objected that these requests could include people not classified as maximum custody who are incarcerated in these units, and that uses of force should be limited to chemical agents.

I confirmed with Maria Morris that Defendants have previously provided responsive documents to these requests. The title of the reports provided that relate to the **cancellation of out-of-cell time** have either been **Information Reports** or **Significant Incident Reports**.

Ms. Ashlee Hesman
August 20, 2021
Re: Parsons – First RFPD

The title of the reports that relate to the **use of force** are titled "**Use Of Force / Incident Command Report**."

**REQUEST NUMBER 48:**  *Hiring reports for CORRECTIONAL STAFF at ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from August 1, 2020, to the present.*

Defendants objected to "hiring reports" as vague and ambiguous. You asked us to clarify what these documents are.  Again, these are documents that Defendants have previously provided to us.  *See* ADCM1628152-54 ("Florence – A. CO Hiring Report 7-27-20.pdf"). Maria Morris has indicated that we can limit this request to just the report for the last week of each month.

**REQUEST NUMBER 49:** *DOCUMENTS SUFFICIENT TO SHOW determine the salary and benefits packages for all classifications of CORRECTIONAL STAFF.*

Defendants objected on the basis of relevancy. We explained the relevancy of the request, and that Defendant Shinn has repeatedly told the Legislature and Governor that the salary and benefits for all correctional staff needed to be increased.  You indicated that you would find out what information is available.

* * * *

Thank you for your cooperation on this matter.  Please advise us as soon as possible as to whether Defendants will agree to produce all available documents, or if we are at an impasse with regard to the scope of the isolation and use of force documents.

Sincerely yours,

*Cl Kendrick*

Corene Kendrick
Deputy Director
ACLU National Prison Project



9

# EXHIBIT 3

| From: | Maria Morris |
|---|---|
| To: | Rachel Love; David Fathi; Elaine Percevecz; External - Delana Freouf; External - PLO AZ; Alison Hardy; Eunice Cho; Jessica Carns; Samantha Weaver; External - Maya Abela; Jared Keenan; Gloria Torres; Corene Kendrick; Victoria Lopez; Daniel Barr |
| Cc: | StruckLoveParsonsTeam |
| Subject: | RE: Defendants" objections to Plaintiffs" Requests for Production |
| Date: | Friday, September 3, 2021 12:43:56 PM |
| Attachments: | image003.png |

Rachel,

This email responds your email of August 26th regarding Defendants' objections to Plaintiffs' RFPs regarding discovery on isolation claims. The paragraphs in black are your paragraphs, the paragraphs in blue are our response.

Regarding the isolation subclass, we preserve our objections to producing detention unit information in conjunction with RFP No. 54 as well as detention unit and mental health unit information regarding RFP No. 56 where the fast track discovery track pending the November trial was predicated on the fact that Defendants have produced documents evidencing Stipulation compliance for nearly 6.5 years, but no such document production was ever related to detention or mental health units regarding conditions of confinement.  That said, we will produce available responsive documents requested in RFPs 54 and 56 regarding detention units at this time, but in doing so, we do not waive objections to additional requested discovery in this regard.

It appears the parties are at an impasse with regard to requests related to mental health watch units.  In addition, while you state that you "will produce available responsive documents ... regarding detention units," your recent production included no such documents.  Please clarify your position, including whether you are withholding responsive documents regarding detention units based upon your objection.

Next, as to RFP Nos. 10, 46, 47, we continue our objections to producing documents, reports, and videos for use of force incidents where the requests are not limited to either SMI inmates or chemical agent use of force.  The subclass claims on use of force are limited to "[u]se of chemical agents against inmates on psychotropic medications."  Thus, all types of uses of force, on any inmate in the designated locations, are not at issue in the lawsuit and Defendants maintain their objections. Moreover, to the extent these requests seek production related to inmates at Eyman-SMU I generally, the request is still irrelevant and overbroad as to chemical agent uses of force on non-max custody inmates where SMU-I houses custody classifications other than max custody.  Next, with respect to RFP 47, we maintain that inmates on temporary mental health watch are not part of the subclass.  Finally, as to Plaintiffs' position that the information requested is part of "standing, ongoing production and we are simply asking that Defendants provide the more current videos/documents related to this request", we note that production for the last 6.5 years with the monthly max custody notebooks has been limited to chemical agent use of force on SMI max custody inmates only.  We have not produced use of force documentation/videos beyond the above.

The parties are at an impasse regarding mental health watch units, uses of force on people on psychotropic medications who are not SMI, and uses of force beyond chemical agents.

As to RFP No. 45 that requests reports regarding cancellation of out-of-cell time at specified locations for January 1, 2020 to the present, we request a compromise in production similar to RFP No. 53 where the document requests were tailored down to selected months, and then a specified week in that month.  If we can compromise in this fashion, this would address our unduly burdensome and proportionality objections.

In the production of August 31, 2021, Defendants produced reports regarding cancellation of out-of-cell time for the following locations and date ranges:

- Eyman-Browning: Jan. 2020- August 10, 2021
- Eyman-SMU I: Jan. 2020 – August 15, 2021
- Florence-Kasson: March 16, 2020-July 26, 2021

Please confirm that these are all the reports regarding cancellation of out-of-cell time for Eyman-Browning, Eyman-SMU I, Florence-Kasson and Lewis-Rast from January 1, 2020 to the present.

Given this production, it appears you are not continuing to stand on the burden and proportionality objections to RFP No. 45.  Please confirm that.

Finally, RFP No. 50 requests DO 804 and all restricted sections and attachments.  Defendants maintain their objections to providing restricted sections and attachments that do not pertain to chemical agent use of force on SMI inmates that meet the subclass definition where as explained above, the subclass claims regarding use of force are specifically limited to chemical agent use of force on inmates on psychotropic medications.  Accordingly, Restricted Sections 6.0, 7.0, and 8.0 are not relevant to the subclass claims.  We will produce sections of Restricted Sections 4.0, 5.0, 9.0, and 10.0 that pertain to chemical use of force on SMI inmates that meet the isolation subclass definition.

The parties are at an impasse regarding uses of force on people on psychotropic medications who are not SMI, and uses of force beyond chemical agents.

Thank you,
Maria


**Maria V. Morris**
Pronouns: she, hers

Senior Staff Attorney
ACLU National Prison Project
915 15th St. NW, Washington, DC 20005
202.548.6607 | mmorris@aclu.org
aclu.org



*This message may contain information that is confidential or legally privileged. If you are not the intended recipient, please*

*immediately advise the sender by reply email that this message has been inadvertently transmitted to you and delete this email from your system.*

---

**From:** Rachel Love <RLove@strucklove.com>
**Sent:** Thursday, August 26, 2021 8:37 PM
**To:** David Fathi <dfathi@aclu.org>; Elaine Percevecz <EPercevecz@strucklove.com>; External - Delana Freouf <dfreouf@perkinscoie.com>; External - PLO AZ <PLO-AZ@prisonlaw.com>; Alison Hardy <ahardy@prisonlaw.com>; Maria Morris <MMorris@aclu.org>; Eunice Cho <echo@aclu.org>; Jessica Carns <JCarns@aclu.org>; Samantha Weaver <SWeaver@aclu.org>; External - Maya Abela <mabela@azdisabilitylaw.org>; Jared Keenan <jkeenan@acluaz.org>; Gloria Torres <GTorres@acluaz.org>; Corene Kendrick <ckendrick@aclu.org>; Victoria Lopez <vlopez@acluaz.org>; Daniel Barr <DBarr@perkinscoie.com>
**Cc:** StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>; Rachel Love <RLove@strucklove.com>
**Subject:** RE: Defendants' objections to Plaintiffs' Requests for Production

David and Corene,

This email responds to David's August 18th email and Corene's August 20th letter regarding the meet and confer efforts concerning Defendants' objections to Plaintiffs' RFPs regarding discovery on isolation claims.

Regarding the isolation subclass, we preserve our objections to producing detention unit information in conjunction with RFP No. 54 as well as detention unit and mental health unit information regarding RFP No. 56 where the fast track discovery track pending the November trial was predicated on the fact that Defendants have produced documents evidencing Stipulation compliance for nearly 6.5 years, but no such document production was ever related to detention or mental health units regarding conditions of confinement. That said, we will produce available responsive documents requested in RFPs 54 and 56 regarding detention units at this time, but in doing so, we do not waive objections to additional requested discovery in this regard.

Next, as to RFP Nos. 10, 46, 47, we continue our objections to producing documents, reports, and videos for use of force incidents where the requests are not limited to either SMI inmates or chemical agent use of force. The subclass claims on use of force are limited to "[u]se of chemical agents against inmates on psychotropic medications." Thus, all types of uses of force, on any inmate in the designated locations, are not at issue in the lawsuit and Defendants maintain their objections. Moreover, to the extent these requests seek production related to inmates at Eyman-SMU I generally, the request is still irrelevant and overbroad as to chemical agent uses of force on non-max custody inmates where SMU-I houses custody classifications other than max custody. Next, with respect to RFP 47, we maintain that inmates on temporary mental health watch are not part of the subclass. Finally, as to Plaintiffs' position that the information requested is part of "standing, ongoing production and we are simply asking that Defendants provide the more current

videos/documents related to this request", we note that production for the last 6.5 years with the monthly max custody notebooks has been limited to chemical agent use of force on SMI max custody inmates only.  We have not produced use of force documentation/videos beyond the above.

As to RFP No. 45 that requests reports regarding cancellation of out-of-cell time at specified locations for January 1, 2020 to the present, we request a compromise in production similar to RFP No. 53 where the document requests were tailored down to selected months, and then a specified week in that month.  If we can compromise in this fashion, this would address our unduly burdensome and proportionality objections.

Finally, RFP No. 50 requests DO 804 and all restricted sections and attachments.  Defendants maintain their objections to providing restricted sections and attachments that do not pertain to chemical agent use of force on SMI inmates that meet the subclass definition where as explained above, the subclass claims regarding use of force are specifically limited to chemical agent use of force on inmates on psychotropic medications.  Accordingly, Restricted Sections 6.0, 7.0, and 8.0 are not relevant to the subclass claims.  We will produce sections of Restricted Sections 4.0, 5.0, 9.0, and 10.0 that pertain to chemical use of force on SMI inmates that meet the isolation subclass definition.

Please let me know if Defendants' further explanations results in any agreements.

- Rachel

---

**From:** David Fathi <dfathi@aclu.org>
**Sent:** Wednesday, August 18, 2021 5:33 PM
**To:** Elaine Percevecz <EPercevecz@strucklove.com>; Freouf, Delana (PHX) <dfreouf@perkinscoie.com>; External - PLO AZ <PLO-AZ@prisonlaw.com>; Alison Hardy <ahardy@prisonlaw.com>; Maria Morris <MMorris@aclu.org>; Eunice Cho <echo@aclu.org>; Jessica Carns <jcarns@aclu.org>; Samantha Weaver <sweaver@aclu.org>; Maya Abela <mabela@azdisabilitylaw.org>; Jared Keenan <jkeenan@acluaz.org>; Gloria Torres <GTorres@acluaz.org>; Corene Kendrick <ckendrick@aclu.org>; Victoria Lopez <vlopez@acluaz.org>; Daniel Barr <DBarr@perkinscoie.com>
**Cc:** Lucy Rand <Lucy.Rand@azag.gov>; Michael E. Gottfried <Michael.Gottfried@azag.gov>; 'mary.beke@azag.gov' <mary.beke@azag.gov>; StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Subject:** Defendants' objections to Plaintiffs' Requests for Production

Counsel:

In response to a number of Plaintiffs' Request for Production of Documents, you object to requests pertaining to detention units.  For example, in response to Request No. 56, you state:

"Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as "detention units" exceeds the scope of Plaintiffs' Complaint because this request is not limited

to maximum custody inmates or chemical agents or limited in time. The "duration of confinement" is not at issue in Plaintiffs' Complaint for detention units."

These statements are incorrect.  Plaintiffs' complaint (Doc. 1) clearly and repeatedly challenges "isolation," which is explicitly defined to include detention units:

## III. Defendants Subject Prisoners in Isolation to Unconstitutional Conditions

90. Plaintiffs Gamez, Swartz, Brislan, Rodriguez, Verduzco, Thomas, Smith, and Polson, Plaintiff Arizona Center for Disability Law, and the Isolation Subclass allege the following. Defendants have a policy and practice of confining thousands of prisoners in isolation (defined as confinement in a cell for 22 hours or more each day *or* confinement in Eyman – SMU 1, Eyman – Browning Unit, Florence – Central Unit, or Perryville – Lumley Unit Special Management Area (SMA)), in conditions of enforced idleness, social isolation, and sensory deprivation, and are deliberately indifferent to the resulting substantial risk of serious physical and psychiatric harm.

91. The large majority of prisoners in isolation are held in four facilities: two SMUs at the Eyman prison (SMU 1 and Browning Units); the Florence complex's Central Unit; and the Perryville complex's Lumley SMA for female prisoners. ***However, other prisoners are held in isolation in Complex Detention Units (CDUs) and other restricted housing units throughout ADC. ...***

94. Prisoners in isolation often go months or years without any meaningful human interaction. ...

## Isolation Subclass

133. Plaintiffs Gamez, Swartz, Brislan, Rodriguez, Verduzco, Thomas, Smith, and Polson bring this action on their own behalf and, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, against Defendants Ryan and Pratt on behalf of a subclass of all prisoners (hereinafter "Isolation Subclass") who are now, or will in the future be, subject by the ADC to isolation, defined as confinement in a cell for 22 hours or more each day *or* confinement in Eyman - SMU 1, Eyman - Browning Unit, Florence - Central Unit, or Perryville - Lumley Unit Special Management Area (SMA).

Doc. 1 at 51-52, 53, 66-67 (emphasis added).

We look forward to speaking with you tomorrow.

David C. Fathi*
Director, ACLU National Prison Project
915 15th St. N.W., 7th Floor
Washington, DC  20005

(202) 548-6603
dfathi@aclu.org
@DavidCFathi
Pronouns: he, him, his

*Not admitted in DC; practice limited to federal courts

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.