**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, | No. CV-12-00601-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| David Shinn, | |
| Defendant. | |

In certifying what is known as the "Isolation Subclass," the Court defined that subclass as including all prisoners who were confined "in a cell for 22 hours or more each day" or were confined in particular housing units. (Doc. 372 at 22). The Court also set out a list of seven "alleged practices" the Isolation Subclass members were at risk of experiencing. One of the listed practices was "[u]se of chemical agents against inmates on psychotropic medications." (Doc. 372 at 23). The list of practices did not include other types of force that might be used, such as stun devices or TASERs. The parties now have two discovery disputes regarding which prisoners qualify as members of the Isolation Subclass and whether Defendants must produce information regarding non-chemical uses of force. (Doc. 3979).[1]

---

[1] The parties' present disputes center on the following Requests for Production by Plaintiffs:

**RFP No. 10**: All videos and documentation relating to the use of force on persons classified as SMI from ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from March 1, 2021, to the present.

**RFP No. 46**: All Incident Reports from ASPC-Eyman SMU-I, ASPC-Eyman

### I.     Mental Health Watch

The first dispute centers on identifying the prisoners on "mental health watch" who are a part of the Isolation Subclass.[2]  According to Plaintiffs, they are entitled to information regarding all prisoners on mental health watch because, in general, such prisoners are confined to their cells in excess of 22 hours per day.  Defendants agree that some prisoners on mental health watch qualify under the Isolation Subclass definition, but they claim not "**all** inmates" on mental health watch "automatically fall within" the Isolation Subclass because some prisoners on mental health watch are "offered more than 2 hours of out-of-cell time." (Doc. 3979 at 4).

Defendants' unsupported statement that some prisoners on mental health watch are offered sufficient out-of-cell time to preclude membership in the Isolation Subclass is not a justification to refuse to provide the requested discovery to Plaintiffs.  Defendants recognize determining if a prisoner qualifies as a member of the Isolation Subclass requires "an individualized determination of whether the individual inmate's daily confinement time falls within the Subclass definition of 22 hours or more in-cell per day."  That fact-intensive inquiry is not susceptible to simple application and creates an unnecessary risk of misidentifying particular prisoners as not members of the Isolation Subclass.  It is simpler and more appropriate for Plaintiffs to receive the requested information regarding all prisoners on mental health watch.  This will avoid misidentifications as well as any possible disputes on the proper classification of prisoners in the future.  Defendants will be required to assume all prisoners on a mental health watch qualify under the Isolation Subclass definition and, as explained below, Defendants must produce the information requested in Plaintiffs' RFP No. 47.

---

Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson reflecting the use of force from January 1, 2021, to the present.

**RFP No. 47**: All videos and documentation relating to the use of force on persons on MENTAL HEALTH WATCH from January 1, 2021, to the present.

**RFP No. 57:** All videos and DOCUMENTS relating to the uses of force on Rahim Muhammad, 215306, from August 1, 2020, to the present.

[2] A prisoner is placed on a "mental health watch" when he engages in behavior that indicates a potential risk of self-harm or mental health deterioration.

## II.  Non-Chemical Use of Force

The parties' second dispute involves Plaintiffs' request for videos and documents "relating to the use of force other than chemical agents on" Isolation Subclass members. (Doc. 3979). According to Plaintiffs, information regarding "[t]he use of force, whether chemical agents or other types of force" are, at the very least, "relevant to the claims at trial." (Doc. 3979 at 5). Defendants disagree and maintain "[a]t no time has this lawsuit pertained in any way to use of physical force" of any type. (Doc. 3979 at 6). Thus, Defendants argue the Court should "constrain Plaintiffs' discovery requests" to only "chemical use of force on Subclass inmates who are on psychotropic medications." (Doc. 3979 at 7). While Defendants correctly recount the definition of the Isolation Subclass, Plaintiffs are entitled to the information they seek.

Pursuant to Federal Rule of Civil Procedure 26(b)(1), discovery is permissible "regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to a variety of considerations such as "whether the burden or expense of the proposed discovery outweighs its likely benefit." Crucially, Rule 26 recognizes "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." In terms of the present dispute, that means the proper focus at present is not whether information regarding non-chemical uses of force will be admissible at trial. All that must be decided is whether such information could be "relevant" to Plaintiffs' claims and, if so, whether the various considerations establish the discovery should be allowed.

Based on the present record, non-chemical uses of force could be relevant to establishing the Isolation Subclass is being subjected to unconstitutional conditions of confinement. Plaintiffs must be permitted the opportunity to try to present a coherent overall picture of the conditions of confinement in isolation. The prevalence of non-chemical uses of force may be an important aspect of that picture.[3]

---

[3] There are obvious ways that non-chemical uses of force might be useful in presenting such a picture. For example, Plaintiffs might argue Isolation Subclass members are routinely subjected to non-chemical uses of force as a result of inappropriate behavior stemming from the lack of recreation and extreme social isolation. Alternatively, evidence regarding non-chemical uses of force might be offered to establish Defendants' intent or knowledge regarding the conditions of confinement. *See* Fed. R. Civ. P. 404(b).

1  Determining that the sought information is discoverable does not end the inquiry. The Court must determine whether the burden of the discovery outweighs its likely benefit. Defendants do not describe the amount of potentially responsive information or explain the burden they will face if required to produce the requested information. Nor is an undue burden immediately identifiable. Plaintiffs' requests are significantly focused and time-limited. That is, Plaintiffs seek information regarding use of force incidents at identified locations or on identifiable prisoners from January 1, 2021 to the present. Plaintiffs also seek information regarding an identified prisoner from August 1, 2020 to the present. Given the possible relevance, and the minimal burden on Defendants, the discovery is appropriate and must be produced as requested.

Accordingly,

**IT IS ORDERED** Defendants shall respond to Plaintiffs' **RFP No. 10, RFP No. 46, RFP No. 47, and RFP No. 57**.

Dated this 17th day of September, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge

---

Information regarding these uses of force are relevant to Plaintiffs' claims as "discovery" is defined under the Federal Rules of Civil Procedure.