**Index of Exhibits to Statement of Discovery Dispute -
Plaintiffs' Fact Witness Disclosures**

**Exhibit**      **Description**

1        [REDACTED] Defendants' Pretrial Disclosure Statement

2        [REDACTED] Plaintiffs' Initial Trial Disclosure Statement

3        September 13, 2021 Email from A. Hesman to Plaintiffs' counsel

4        [REDACTED] Plaintiffs' First Supplement to Their Initial Trial Disclosure

         Statement

5        [REDACTED] September 8, 2021 Email from A. Hesman to D. Fathi

6        September 22, 2021 Email from A. Orcutt to D. Barr/J. Gray

7        [REDACTED] Plaintiffs' Second Supplement to Their Initial Trial

         Disclosure Statement

8        September 24, 2021 Email from J. Gray to A. Orcutt

9        September 17, 2021 Email from S. Barnes to D. Fathi

**EXHIBIT 1**

**[REDACTED]**

**EXHIBIT 1**

**[REDACTED]**

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>                                        Plaintiffs,<br><br>          v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>                                        Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' PRETRIAL DISCLOSURE STATEMENT** |

Defendants, through counsel and pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's Orders (Doc. 3931, 3940), submit their Pretrial Disclosure Statement. Defendants will supplement and/or amend these disclosures as trial preparation progresses.[1]

---

[1] Defendants will provide 26(a)(2)(c) disclosures by the expert witness disclosure deadline.

**I.   NAMES, ADDRESSES AND TELEPHONE NUMBERS OF EACH INDIVIDUAL LIKELY TO HAVE DISCOVERABLE INFORMATION**

**A.   INDIVIDUALS WHO WILL BE CALLED TO TESTIFY**

1.   D. Shinn, Director, ADCRR, Defendant
     c/o Struck Love Bojanowski & Acedo, PLC[2]
     3100 W. Ray Rd., Suite 300
     Chandler, AZ 85226
     (480) 420-1600
           and
     Office of the Attorney General, State of Arizona
     1275 W. Washington St.
     Phoenix, AZ 85007
     (602) 542-1610

Director Shinn has served as the Director of the ADCRR since October 21, 2019, and has more than three decades of experience in the fields of corrections and law enforcement, including most recently as the Assistant Director for the Program Review Division in Washington, D.C., with the Federal Bureau of Prisons. Director Shinn served as a United States Marine and served more than 28 years with the Federal Bureau of Prisons, starting as a uniformed correctional officer.

Director Shinn is expected to testify regarding his training and experience in corrections which ranges from facility operations duty assignments to participating as a member of the FBOP's Executive Leadership, serving as the internal audit authority responsive for development of comprehensive audit guidelines and leadership of a division of professional auditors in the continuous assessment and evaluation of the agency's operations comprised of 17 specialized disciplines.

Director Shinn is expected to testify regarding ADCRR's strategic planning for, and delivery of dental, mental health, and health care to approximately 30,000 inmates housed in ADCRR's state-operated prison complexes. Director Shinn is expected to testify regarding ADCRR's on-going partnership with Centurion, including ADCRR and

---

[2] All parties listed as care of Struck Love Bojanowski & Acedo are also in care of the Arizona Attorney General's Office. Contact information for all ADCRR employees is the same as listed for Director Shinn.

Centurion's efforts and successes in leading the agency to near full compliance with overall Stipulation compliance, which includes addressing the important interplay between security operations and the provision of health care to identify challenges that may require redirection, improvement, or change in order to provide health care services that meet and exceed constitutional minimums, corrections industry standards, and community standards. Director Shinn is further expected to testify regarding ADCRR's contractual relationship with Centurion.

Moreover, Director Shinn is expected to testify regarding appointment of operations and Monitoring Bureau leadership and its corresponding effect on the delivery of health care and a progressive approach to management of maximum security and high risk/need inmate populations. Director Shinn is also expected to testify regarding his role in the continuation and development of pro-social opportunities afforded to maximum custody inmates, including implementation of a mental health-focused maximum custody unit at ASPC-Tucson-Rincon Unit that will be activated during the fall of 2021. Furthermore, Director Shinn may testify regarding ADCRR's technology advancements that are increasing operational efficiency in the provision of health care to the inmate population. Director Shinn may also testify regarding ADCRR's robust and continuing COVID-19 mitigation operations as well as technology advances simultaneously made to promote inmate socialization and pro-social behavior during the pandemic.  Director Shinn is also expected to testify regarding ADCRR's efforts at correctional personnel recruitment and retention against the backdrop of staffing challenges faced by law enforcement, corrections, and detention agencies across the United States.

Director Shinn will testify regarding his deposition if taken in this matter, Declarations submitted in the underlying litigation, and any Declarations he may prepare for trial.

2.     L. Gann, Jr., R.N., CCHP, Assistant Director, ADCRR Medical Services Contract Monitoring Bureau, Defendant
c/o Struck Love Bojanowski & Acedo, PLC

Larry Gann is Assistant Director of the Medical Services Contract Monitoring Bureau at ADCRR. Mr. Gann has had an extensive career in corrections healthcare, including his most recent role as Director of Nursing for Maricopa County Correctional Health Services. Mr. Gann's qualifications are set forth in his July 10, 2020 Declaration submitted in this matter. Mr. Gann will testify regarding ADCRR policies, practices, and procedures related to inmate medical, mental health, and dental care. Mr. Gann will testify concerning the operation of the Medical Services Contract Monitoring Bureau, the process for monitoring compliance with the contract, including the Performance Measures from the Stipulation that were incorporated into the contract, training and supervision of the monitors, the content of the CGARs and other reports provided by Centurion, the Monitoring Guide created and maintained by the Bureau, contract sanctions and offsets, and the adequacy of monitoring by the Bureau. Mr. Gann is also expected to testify regarding staffing as set forth in the current contract, a new $15M ADCRR initiative to increase healthcare staffing through sign-on bonuses, shift bonuses, shift differentials, , and partnerships ADCRR is cultivating with local colleges and nursing schools to recruit interns and recent graduates. He will also testify regarding compliance with contract requirements by Centurion, review and investigation of medical grievances and appeals, and statistics, reports, and historical data relating to medical, mental health, and dental care. Mr. Gann will testify regarding improvements made to the monitoring of the contract, including recent structural changes within the monitoring bureau, hiring of 10 medical liaisons with experience in correctional health to work with Centurion staff at the facilities to identify and break down barriers to contract compliance, development of a new real-time corrective action plan system, and the development of additional qualitative measures to evaluate and improve the quality of care to ADCRR inmates. Mr. Gann is expected to testify regarding improvements to compliance with the Healthcare Performance Measures and overall

compliance rates. Additionally, Mr. Gann will testify regarding ADCRR facilities' compliance with NCCHC and American Correctional Association standards, as well as the provision of adequate health care to ADC inmates in compliance with constitutional requirements. Mr. Gann will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). He will testify regarding his deposition if taken in this matter, his July 10, 2020 Declaration, and any Declarations he may prepare for trial.

    3.    F. Strada, Deputy Director, ADCRR
          c/o Struck Love Bojanowski & Acedo, PLC

          Deputy Director Strada is likely to testify regarding ADCRR policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what factors result in a maximum custody classification as well as what pro-social behavioral factors may earn a reduction in classification, the ongoing classification and Step Level review process employed by ADCRR, and validation of those processes by corrections experts. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ADCRR maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming,

access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Deputy Director Strada is also likely to testify regarding the statistics, reports, and historical data regarding the success of DO 812 and the resulting reduction in ADCRR's maximum custody population. Deputy Director Strada, based upon his extensive training and experience in corrections, will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities that meet and exceed corrections industry standards, against the backdrop of both staffing challenges and COVID-19 mitigation efforts faced by corrections and detention departments across the United States. Additionally, Deputy Director Strada will testify regarding the training that correctional staff receive to successfully carry out their job duties when assigned to maximum custody units and/or maximum custody units where SMI inmates may be clustered. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Deputy Director Strada will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Deputy Director Strada will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. He is

also expected to generally testify regarding monitoring and compliance for offered out-of-cell time and programming as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812. Deputy Director Strada will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

4.      G. Phillips, M.D., Medical Director, ADCRR
        c/o Struck Love Bojanowski & Acedo, PLC

Dr. Phillips is the Medical Director for the ADCRR. Prior to joining ADCRR, Dr. Phillips was a treating physician for Maricopa County Correctional Health Services, Abrazo Health, and the United States Air Force. Dr. Phillips will testify regarding ADCRR policies, practices, and procedures related to inmate medical care, review and investigation of medical grievances, inmate death investigations and mortality reviews, the electronic health records system in use at ADCRR facilities, telemedicine, language line services, and continuous improvements in the delivery of health care to the ADCRR inmate population. Dr. Phillips will also testify regarding his review of the medical records of the named Plaintiffs and his opinions regarding the treatment rendered to them. In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Phillips will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate, and in accordance with the standard of care up until the time of trial. Dr. Philipps is also expected to testify that the care provided to ADCRR inmates meets or exceeds community standards of care and is in compliance with constitutional standards. Dr. Phillips will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Phillips is expected to testify regarding his deposition if taken in this matter and any Declarations he prepares for trial.

5.      B. Pennington-Stallcup, Ph.D., Mental Health Program Director, Medical
        Services Contract Monitoring Bureau, ADCRR
        c/o Struck Love Bojanowski & Acedo, PLC

Dr. Stallcup is the Mental Health Program Director for the Medical Services Contract Monitoring Bureau at ADCRR. Dr. Stallcup was previously the Mental Health

7

Director for Maricopa County Correctional Health Services and has also been a treating clinician in both the Arizona and California prison systems. Dr. Stallcup will testify regarding ADCRR policies, practices, and procedures related to inmate mental health care and programming including the various ways in which mental health encounters are conducted, review and investigation of inmate grievances pertaining to mental health care and programming (including via telepsychiatry or telepsychology), inmate mental health classification (including admission to in-patient units), the process for evaluation and designation of inmates as SMI, the processes and procedures regarding mental health watch, administration of psychiatric medications, inmate death investigations and mortality reviews, Centurion's compliance with the contract with respect to delivery of mental health care and programming, and continuous improvements in the delivery of mental health care to the ADCRR inmate population. Dr. Stallcup will further testify regarding mental health staffing and how staffing rates have increased. She will also testify regarding suicide-prevention policies, procedures, and practices including suicides rates at ADCRR. Dr. Stallcup will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Stallcup will testify regarding her deposition if taken in this matter and any Declarations she prepares for trial.

6.      T. Dolan, Vice President of Operations, Arizona
c/o Centurion[3]
Broening, Oberg, Woods & Wilson, PC
Sarah L. Barnes
2800 N. Central Ave., Suite 1600
Phoenix, AZ 85004
(602) 271-7793

Mr. Dolan is the Vice President for Arizona for Centurion. He previously was Vice President of Operations for Correctional Medical Group Companies in San Diego, California and held multiple regional leadership positions with Corizon Health in Idaho, Wyoming, and Alabama. He will testify regarding Centurion's policies and procedures for

---

[3] All individuals noted as in care of Centurion may be contacted through Centurion's Arizona counsel using the contact information listed for Mr. Dolan.

the provision of medical, mental health, and dental health care to ADCRR's inmate population. He will testify regarding Centurion's obligations under the Contract with ADCRR and the content and review of monthly and quarterly reports and statistics provided to ADCRR pursuant to the contract. Mr. Dolan will testify regarding the ongoing partnership between ADCRR and Centurion and continuous efforts to improve both inmate access to care and the quality of care provided. He will testify regarding the implementation of the Arizona Telehealth Program and Telehealth Registered Nurse Program, improvements made to ensure timely access to specialty care and follow-up of discharge/treatment recommendations, use of the CareClix virtual healthcare platform provide specialty telehealth services, a pilot program for the use of real-time documentation technology, and other improvements. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, increases and other changes Centurion has made to staffing during the contract, use of premium pay and agency staffing, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, training, retention, compensation, and incentive policies and practices. He is also expected to testify regarding improvements made to compliance levels under the Stipulation since Centurion took over the contract. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population. Mr. Dolan will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Mr. Dolan is expected to testify regarding his deposition if taken in this matter, his July 10, 2020 Declaration, and any Declarations he may prepare for trial.

      7.    W. Orm, M.D., Regional Medical Director
              c/o Centurion

      Dr. Orm is the Regional Medical Director for Centurion in Arizona. Dr. Orm will testify based on her education, training, qualifications, and experience, as well as her ongoing tours of the ADCRR medical facilities and review and knowledge of inmate healthcare records, reports, and data during the course of her employment. Dr. Orm will

testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to ADCRR inmates. Dr. Orm is also expected to testify regarding quality assurance reviews and activities, review and investigation of inmate grievances pertaining to medical care and medications, contract monitoring and compliance, supervision and peer reviews of medical providers, and statistical data relating to the provision of medical care to ADCRR inmates. She is expected to testify regarding Centurion's staffing, recruiting, hiring, training, and retention policies and practices for medical staff. Dr. Orm will also testify regarding continuous improvements in the delivery of medical care to the ADCRR inmate population, including a leading-edge program she has implemented statewide for treating/curing Hepatitis C patients with advanced liver disease. Dr. Orm will also testify regarding ADCRR's response to COVID-19 and her involvement in securing multi-agency assistance with the administration of inmate and staff vaccinations. Dr. Orm will testify regarding the individualized medical care and medications of the named Plaintiffs, along with any other inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports, Declarations prepared for trial, and/or live testimony. Dr. Orm will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Orm is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

8.    A. L. Carr, M.D., Regional Psychiatric Director
      c/o Centurion

Dr. Carr is the Regional Psychiatric Director for Centurion in Arizona and oversees the psychiatrists and mid-level psychiatric providers statewide. Dr. Carr will testify based on his education, training, qualifications, and experience, as well as his ongoing tours of the ADCRR medical and mental health facilities and review and knowledge of inmate healthcare records, reports, and data during the course of his employment. Dr. Carr will testify regarding his knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of psychiatric care to ADCRR inmates. He will testify regarding the psychiatric services provided to the inmate

population, including outpatient, inpatient, and telepsychiatry care, and the administration and monitoring of psychotropic medications. He is expected to testify regarding Centurion's staffing, recruiting, hiring, training, and retention policies and practices for psychiatric staff. Dr. Carr is also expected to testify regarding quality assurance reviews and activities, inmate death investigations and mortality reviews, review and investigation of inmate grievances pertaining to psychiatric treatment and medications, contract monitoring and compliance, supervision and peer reviews of psychiatric staff, review and approval of formulary and non-formulary medication requests, PRMB committee activities, procedures for suicide and mental health watches, CQI reviews and actions, and statistical data relating to the provision of psychiatric care and psychotropic medications to ADCRR inmates. Dr. Carr will also testify regarding continuous improvements in the delivery of psychiatric care and medications to the ADCRR inmate population. Dr. Carr will testify regarding the individualized psychiatric care and medication management of the named Plaintiffs, along with any other inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports, Declarations prepared for trial, and/or live testimony. Dr. Carr will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Carr is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

> 9.    A. Pelton, Ph.D., Regional Mental Health Director
>        c/o Centurion

Dr. Pelton is the Regional Mental Health Director for Centurion in Arizona and oversees all of the psychologists and psychology associates statewide. Prior to her current role, Dr. Pelton was the Clinical Director at ASPC-Phoenix and continues to treat patients at Phoenix. Dr. Pelton will testify based on her education, training, qualifications, and experience, as well as her ongoing tours of ADCRR facilities and review and knowledge of inmate records, reports, and data during the course of her employment. Dr. Pelton will testify regarding ADCRR and Centurion policies, procedures, and practices relating to the delivery of mental health care to ADCRR's inmate population. Dr. Pelton is also expected

to testify regarding quality assurance reviews and activities, inmate death investigations and mortality reviews, review and investigation of inmate grievances pertaining to mental health care and programming, contract monitoring and compliance, supervision and peer reviews of mental health staff, procedures for suicide and mental health watches, CQI reviews and actions, and statistical data relating to the provision of mental health care to ADCRR inmates. She is expected to testify regarding Centurion's staffing, recruiting, hiring, training, and retention policies and practices for mental health staff. She is also expected to testify regarding the mental health programming offered to ADCRR inmates statewide, as well as the specialized mental health care provided at ASPC-Phoenix. She will testify regarding policies and procedures pertaining to evaluation and transfer of inmates at non-corridor facilities who need mental health care. Dr. Pelton will also testify regarding continuous improvements in the delivery of mental health care and programming to the ADCRR inmate population. Dr. Pelton will testify regarding the individualized mental health care of the named Plaintiffs, along with any other inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports, Declarations prepared for trial, and/or live testimony. Dr. Pelton will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Pelton is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

      10.    K. Gray, D.D.S, Regional Dental Director
              c/o Centurion

          Dr. Gray is the Regional Dental Director for Centurion in Arizona. Dr. Gray has been a correctional dentist since 2012 and also maintains a private dental practice. Dr. Gray will testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of dental care and dental devices to ADCRR's inmate population, including the scope of diagnostic and treatment services provided, the dental intake process, triage of dental HNRs, wait times for routine, urgent, and emergent dental care, the review and resolution of inmate grievances related to dental care, training provided to dental providers and dental assistants, electronic health records pertaining to dental care, and the

overall delivery of dental care to ADCRR inmates. Dr. Gray will also testify regarding continuous improvements in the delivery of dental care to the ADCRR inmate population. Dr. Gray will also testify regarding his review of the dental records of the named Plaintiffs, and any other inmates referenced by Plaintiffs' experts in their expert reports and/or any Declarations prepared for trial, and his opinions regarding the adequacy of their dental treatment. Dr. Gray is expected to testify regarding the adequacy of dental care provided to ADCRR inmates, including compliance with community standards of care and constitutional requirements. Dr. Gray will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Gray is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

11. O. Murray, D.O., MBA
c/o Struck Love Bojanowski & Acedo

Dr. Murray has been retained as an expert witness by Defendants Shinn and Gann. Dr. Murray is the Executive Director of Clinical Services and Chief Physician Executive for The University of Texas Medical Branch Correctional Managed Care program (UTMB-CMC). Dr. Murray previously worked in the Cook County Jail and the Illinois Department of Corrections. He completed a Family Practice residency at Michigan State University.

Dr. Murray will testify regarding the information and opinions set forth in his expert report and any rebuttal reports prepared for trial in this matter, which will be timely disclosed in accordance with the Court's Scheduling Order (Doc. 3931), along with the other items required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii)-(vi). Dr. Murray will also testify regarding any written Declarations submitted for trial in accordance with the Court's September 2, 2021 Order (Doc. 3952).

12. J. Penn, M.D., CCHP, F.A.P.A.
c/o Struck Love Bojanowski & Acedo

Dr. Penn has been retained as an expert witness by Defendants Shinn and Gann. He is certified by the American Board of Psychiatry and Neurology in psychiatry and

holds a subspecialty certification in forensic psychiatry. Dr. Penn is a Certified Correctional Health Care Professional (CCHP), a Clinical Associate Professor of Psychiatry in the Department of Psychiatry and Behavioral Services at the University of Texas Medical Branch, Medical School, and is the Director of Mental Health Services, University of Texas Medical Branch Correctional Managed Care. Dr. Penn additionally serves as the Chair of the Board of Representatives of the National Commission on Correctional Health Care (NCCHC).

Dr. Penn will testify regarding the information and opinions set forth in his expert report and any rebuttal reports prepared for trial in this matter, which will be timely disclosed in accordance with the Court's Scheduling Order (Doc. 3931), along with the other items required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii)-(vi). Dr. Penn will also testify regarding any written Declarations submitted for trial in accordance with the Court's September 2, 2021 Order (Doc. 3952) and with prior expert reports and Declarations he has prepared in this matter.

**B.      INDIVIDUALS WHO MAY BE CALLED TO TESTIFY**

1.      J. Kimble, Warden, ASPC-Eyman
         c/o Struck Love Bojanowski & Acedo, PLC

Warden Kimble is currently Warden of ASPC-Eyman. Previously, he was Warden of ASPC-Lewis. Warden Kimble is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of

the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Warden Kimble will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Warden Kimble will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Warden Kimble will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at ASPC-Eyman or Lewis, to include conditions of confinement for the specified inmates as well their

institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. Warden Kimble is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure as Warden of ASPC-Eyman and previously, ASPC-Lewis, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

2.     J. Van Winkle, Warden, ASPC-Florence
              c/o Struck Love Bojanowski & Acedo, PLC

Warden Van Winkle is currently Warden of ASPC-Florence. Warden Van Winkle is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Warden Van Winkle will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Warden Van Winkle will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Warden Van Winkle will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at ASPC-Florence, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. Warden Van Winkle is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure as Warden (and prior Deputy Warden of Operations) of ASPC-Florence, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

3. A. Coleman, Deputy Warden, ASPC-Lewis, Rast Max
c/o Struck Love Bojanowski & Acedo, PLC

Deputy Warden Coleman is currently Deputy Warden of ASPC-Lewis – Rast Unit. DW Coleman is expected to testify policies and procedures that govern conditions of

confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

DW Coleman will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. DW Coleman will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past

incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

DW Coleman will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at the Rast Max Unit, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. DW Coleman is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure as DW of ASPC-Lewis-Rast Max, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

4.   K. Schwestak, Associate Deputy Warden, ASPC-Tucson, Rincon Max
c/o Struck Love Bojanowski & Acedo, PLC

Associate Deputy Warden Schwestak is currently ADW of ASPC-Tucson-Rincon Unit. ADW Schwestak is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates previously housed at ASPC-Florence-Kasson Unit, that by the time of trial, will be housed at the Rincon Unit to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). She is likely to testify regarding management of mental health inmates in maximum custody or detention units at the Rincon Unit, which each require special considerations in how ADCRR addresses their housing, movement, and programming. She is likely to testify regarding housing, security, and operation of ASPC-Tucson-Rincon maximum custody unit; a physical description of the maximum custody housing location, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work

1  programs offered to maximum custody inmates and the procedures for offering the same;

2  and all matters raised in the Court's certification of subclass as it relates to conditions of

3  confinement and use of chemical agent use of force on maximum custody inmates and

4  subclass members designated as SMI (seriously mentally ill). These conditions of

5  confinement may include cell conditions, food service, recreational activities, leisure

6  activities, social programming, educational programming, mental health programming,

7  access to visitation, access to mail, access to telephone calls, access to commissary, and

8  access to property.

9          ADW Schwestak will also likely testify regarding the unique challenges at

10 play in managing maximum security inmates, and how ADCRR continues to offer ample

11 out-of-cell time, socialization opportunities, and programming opportunities, against the

12 backdrop of both staffing challenges and COVID-19 mitigation efforts. She will likely

13 testify regarding the frequency with which inmates have contact with other inmates,

14 correctional staff, programming staff, medical staff, and mental health staff. ADW

15 Schwestak will likely testify regarding security protocols that govern Rincon Unit

16 maximum inmates to include health and welfare checks, counts, and safety equipment used

17 by staff working in maximum custody and detention units which are a direct result of and

18 necessitated by past incidents of extreme violent acts committed by such inmates. As to use

19 of chemical agent use of force on subclass members, she will also testify regarding

20 ADCRR's training and emphasis on the use of de-escalation techniques and cool down

21 periods, barring emergency situations that require immediate response to include

22 circumstances of inmate self-harm.

23         ADW Schwestak will also likely testify regarding the conditions of

24 confinement allegations made by party-representative subclass Plaintiffs and any subclass

25 Plaintiffs identified or examined at trial by Plaintiffs that are housed at the Rincon Unit, to

26 include conditions of confinement for the specified inmates as well as their institutional

27 history to include criminal, disciplinary, classification, behavioral, STG, programming, and

28 grievance histories. She is also expected to testify regarding monitoring and compliance for

offered out-of-cell time and programming afforded to maximum custody inmates to be housed at the Rincon Unit, and modification/additions made to the Rincon Unit to house maximum custody inmates.

5.   J. Wu, M.D., FACP, FACCP, CCHP-P, EVP and Chief Clinical Officer, Centurion
c/o Centurion

Dr. Wu is the Chief Clinical Officer at Centurion and has extensive experience in the field of correctional medicine, including as a practicing correctional physician. Dr. Wu serves on the Board of Directors for the American College of Correctional Physicians and previously served on the Board of Directors for the NCCHC. Dr. Wu is expected to testify regarding Centurion's policies and procedures for the provision of health care to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population at ADCRR. Dr. Wu is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Wu is expected to testify regarding his opinion that the care delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements. Dr. Wu will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Wu is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

6.   J. S. Wilson, Ph.D., CCHP-MH, CCHP, Vice President, Behavioral Health Services, MHM/Centurion
c/o Centurion

Dr. Wilson is the Vice President for Behavioral Health Services at MHM/Centurion. Dr. Wilson is expected to testify regarding Centurion's policies and

procedures for the provision of mental health care to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices for mental health staff. Dr. Wilson is also expected to testify regarding contract monitoring and compliance activities, supervision and peer reviews of mental health staff, and statistical data relating to the provision of mental health care to ADCRR inmates. Dr. Wilson will also testify regarding continuous improvements in the delivery of mental health care and programming to the ADCRR inmate population. Dr. Wilson is expected to testify regarding his opinion that the mental health care and programming delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements.  Dr. Wilson will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Wilson is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

> 7.    J. May, M.D., FACP, Chief Medical Officer, Centurion
>        c/o Centurion

Dr. May is the Chief Medical Officer for Centurion. He has been practicing correctional medicine for more than 25 years. Dr. May is board certified in Internal Medicine and credentialed by the American Academy of HIV Medicine. He has provided care in multiple jail and prison settings, public and private, is licensed in more than twenty states, and held various administrative roles including Senior Staff Physician, Regional Medical Director, and Chief Medical Officer. He is also president and co-founder of Health through Walls, a nongovernmental agency providing support to prison health programs in low-income countries. He is a Board Member of the International Corrections and Prison Association, North America and head of the Health Care Network Group (www.icpa.ca). He is Chair of the International Relations Committee of the American Correctional

Association. Dr. May is expected to testify regarding Centurion's policies and procedures for the provision of medical care to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population at ADCRR. Dr. May is expected to testify regarding his opinion that the medical care delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements. Dr. May is expected to testify regarding continuous improvements made to the delivery of medical care to ADCRR inmates. Dr. May will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. May is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

8.   D. Griffin, M.D., Chief Psychiatric Officer, MHM/Centurion
c/o Centurion

Dr. Griffin is the Chief Psychiatric Officer for MHM/Centurion. Dr. Griffin is board certified in General Psychiatry and Child and Adolescent Psychiatry. Dr. Griffin is expected to testify regarding Centurion's policies and procedures for the provision of psychiatric care and psychotropic medications to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of psychiatric care to the inmate population at ADCRR. Dr. Griffin is expected to testify

23

regarding his opinion that the psychiatric care delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements. Dr. Griffin is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medication management for ADCRR inmates. Dr. Griffin will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Griffin is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

9.    J. Bueno, Pharm.D., Regional Director of Pharmacy
      c/o Centurion

Dr. Bueno is the Regional Director of Pharmacy for Centurion in Arizona. Dr. Bueno is expected to testify regarding Centurion policies, procedures, and practices relating to the prescription, delivery, and monitoring of medications for ADCRR inmates. Dr. Bueno will also testify regarding formulary and non-formulary medications, including the process for review and approval of non-formulary medications. Dr. Bueno is expected to testify regarding his opinion that the delivery and monitoring of medications for ADCRR inmates meets or exceeds NCCHC standards and constitutional requirements. Dr. Bueno is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medication management for ADCRR inmates. Dr. Bueno will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). Dr. Bueno is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

10.    J. Corliss, Director of Operations, Centurion of Arizona Regional Office
       c/o Centurion

Jamie Corliss is the Regional Director of Operations for Centurion in Arizona. Ms. Corliss is expected to testify regarding Centurion's policies and procedures for the provision of medical, mental health, and dental health care to ADCRR's inmate population. She will testify regarding Centurion's obligations under the Contract with ADCRR and the content and review of monthly and quarterly reports and statistics provided to ADCRR pursuant to the contract. She is expected to testify regarding Centurion's recruiting, hiring, training, retention, compensation, and incentive policies and practices. She will testify

24

regarding the ongoing partnership between ADCRR and Centurion and continuous efforts to improve both inmate access to care and the quality of care provided. Ms. Corliss is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

11.     J. Todd, Regional Director of Nursing
         c/o Centurion

Jessica Todd is the Regional Director of Nursing for Centurion in Arizona. Ms. Todd is expected to testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to ADCRR inmates. Ms. Todd is also expected to testify regarding her oversight of the nursing staff at ADCRR facilities, quality assurance reviews and activities, review and investigation of inmate grievances, contract monitoring and compliance activities, and statistical data relating to the provision of medical care to ADCRR inmates. She is expected to testify regarding Centurion's staffing, recruiting, hiring, credentialing, training, and retention policies and practices for nursing staff. Ms. Todd will also testify regarding continuous improvements in the delivery of nursing care to the ADCRR inmate population. Ms. Todd is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

12.     M. Young, M.D., Regional Associate Medical Director
         c/o Centurion

Dr. Young is the Regional Associate Medical Director for Centurion in Arizona. Dr. Young is expected to testify regarding his knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to ADCRR inmates. Dr. Young is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

13.    K. DeBartolo, R.N., Lead Utilization Manager
       c/o Centurion

Karen DeBartolo is the Lead Utilization Manager for Centurion in Arizona. Ms. DeBartolo is expected to testify regarding ADCRR and Centurion policies and procedures relating to review and approval of outside consults and specialty services and provision of alternative treatment plans. She is also expected to testify regarding timelines for the approval of consults and other specialty care requests, the process and criteria for making decisions regarding such requests, and communications regarding the decisions to a provider. She is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

14.    J. Gahris, Regional Director of Compliance, Centurion
       c/o Centurion

Jennine Gahris is the Regional Director of Compliance for Centurion in Arizona. Ms. Gahris previously worked as a clinical coordinator and in various compliance roles for the prior two vendors who provided health care to ADCRR inmates. Ms. Gahris will testify that she manages a team of Healthcare Delivery Facilitators who review underperforming Performance Measures ("PMs") at their assigned facility, run reports and trackers to assist in achieving compliance with those PMs, and follow up with medical staff to ensure inmates are receiving the care or information required by the PMs. She will testify that she also manages Business Data Analysts who provide the source documents which are utilized to monitor compliance with the PMs and run various reports to track items such as productivity and compliance obligations. Ms. Gahris is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Gahris will testify regarding her July 8, 2020 Declaration submitted in this matter regarding efforts made to ensure compliance with the Stipulation performance measures. She will also testify regarding her knowledge of Centurion's contractual obligations and efforts made to ensure compliance. Ms. Gahris will testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

15.   J. Mahn, D.O., Site Medical Director, ASPC-Florence
      c/o Centurion

Dr. Mahn is the Site Medical Director for ASPC-Florence and is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Florence, inmate access to care, and the overall delivery of healthcare to the inmates at Florence, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Mahn is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Mahn is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Mahn is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

16.   R. Stewart, M.D., Site Medical Director, ASPC-Eyman
      c/o Centurion

Dr. Stewart is the Site Medical Director at ASPC-Eyman. Dr. Stewart is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Eyman, inmate access to care, and the overall delivery of healthcare to the inmates at Eyman, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Stewart is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Stewart is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Stewart is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

27

17.   E. Jordan, M.D., Site Medical Director, ASPC-Yuma
      c/o Centurion

Dr. Jordan is the Site Medical Director at ASPC-Yuma. Dr. Jordan is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Yuma, inmate access to care, and the overall delivery of healthcare to the inmates at Yuma, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Jordan is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Jordan is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Jordan is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

18.   A. S., M.D., Site Medical Director, ASPC-Tucson
      c/o Centurion

Dr. Salazar is the Site Medical Director at ASPC-Tucson. Dr. Salazar is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Tucson, inmate access to care, and the overall delivery of healthcare to the inmates at Tucson, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Salazar is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Salazar is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Salazar is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

19.   S. Ibrahim, DO, Physician, ASPC-Perryville
c/o Centurion

Dr. Ibrahim is a treating physician at ASPC-Perryville and was previously the Site Medical Director. Dr. Ibrahim is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADC's inmate population, the day-to-day operation of health services at Perryville, inmate access to care, intake screenings for female inmates at Perryville, and the overall delivery of healthcare to the inmates at Perryville, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Ibrahim is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Ibrahim is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Ibrahim is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

20.   A. Cerillo, Facility Health Administrator, ASPC-Perryville
c/o Centurion

Adalia Cerillo is the Facility Health Administrator for ASPC-Perryville and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Perryville, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, intake screenings for female inmates at Perryville, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Perryville. Ms. Cerillo is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Cerillo is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

21.     B. Hofer, Facility Health Administrator, ASPC-Yuma
        c/o Centurion

Brin Hofer is the Facility Health Administrator for ASPC-Yuma and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Yuma, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Yuma. Ms. Hofer is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Hofer is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

22.     M. Smith, Facility Health Administrator, ASPC-Eyman
        c/o Centurion

Matilde Smith is the Facility Health Administrator for ASPC-Eyman and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Eyman, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Eyman. Ms. Smith is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Smith is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

23.     M. Diaz, Assistant Director of Nursing, ASPC-Florence
        c/o Centurion

Michelle Diaz is the Assistant Director of Nursing for ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and

procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Florence, including in the IPC. Ms. Diaz is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Diaz is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

24.   A. Phillips, Mid-Level Practitioner (PA/NP), ASPC-Phoenix
c/o Centurion

Amy Phillips is a mid-level provider who treats patients at ASPC-Phoenix. Ms. Phillips is expected to testify regarding her knowledge of ADCRR's and Centurion's policies, procedures, and practices for delivery of medical care to ADCRR's inmate population. Ms. Phillips is also expected to testify regarding her knowledge of the day-to-day provision of medical treatment at Phoenix, including intakes for male inmates, diagnostic services, chronic care, on-site and off-site specialty care. Ms. Phillips is also expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates, including her involvement in a leading-edge program for treatment of Hepatitis C patients with advanced liver disease. Ms. Phillips may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Phillips is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

25.   R. Moore, Director of Nursing, ASPC-Perryville
c/o Centurion

Rachell Moore is the Director of Nursing for ASPC-Perryville and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care,

on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Perryville. Ms. Moore is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. Ms. Moore is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Moore is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

26.     C. Kabongo, Assistant Director of Nursing, ASPC-Florence
        c/o Centurion

Claudine Kabongo is the Assistant Director of Nursing for ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Florence. Ms. Kabungo is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Kabongo is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

27.     R. Merrill, IPC RN, ASPC-Florence
        c/o Centurion

Rachael Merrill is a nurse assigned to the IPC at ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, emergency response procedures, delivery of medications and medical devices, and the delivery of healthcare to the inmates in the IPC at Florence. Ms. Merrill may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Merrill is expected to testify regarding continuous

improvements made to the delivery of healthcare to ADCRR inmates. Ms. Merrill is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

28.  N. Williams, Chronic Care Nurse, ASPC-Florence
       c/o Centurion

Nancy Williams is a chronic care nurse at ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, scheduling of chronic care appointments, and monitoring and treatment of chronic care conditions. Ms. Williams may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Williams is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Williams is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

29.  J. Horn, Chronic Care Nurse, ASPC-Lewis
       c/o Centurion

January Horn is a chronic care nurse at ASPC-Lewis and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, scheduling of chronic care appointments, and monitoring and treatment of chronic care conditions. Ms. Horn may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Horn is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Horn is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

1

2          30.    K. Branum, IPC Nurse, ASPC-Lewis
3                 c/o Centurion

4          Kim Branum is a nurse assigned to the IPC at ASPC-Lewis and is expected

5   to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures

6   for delivery of medical care to ADCRR's inmate population, inmate access to care, triage

7   of HNRs, emergency response procedures, delivery of medications and medical devices,

8   and the delivery of healthcare to the inmates in the IPC at Lewis. Ms. Branum may testify

9   regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates

10  who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care

11  she provided. Ms. Branum is expected to testify regarding continuous improvements made

12  to the delivery of healthcare to ADCRR inmates. Ms. Branum is expected to testify

13  regarding her deposition if taken in this matter and any Declarations she may prepare for

14  trial.

15         31.    O. Coronado, NP, Mid-Level Provider, ASPC-Lewis
16                c/o Centurion

17         Oyuki Coronado is a mid-level provider who treats patients at ASPC-Lewis.

18  Ms. Coronado is expected to testify regarding her knowledge of ADCRR's and Centurion's

19  policies, procedures, and practices for delivery of medical care to ADCRR's inmate

20  population. Ms. Coronado is also expected to testify regarding her knowledge of the day-

21  to-day provision of medical treatment at Lewis, including diagnostic services, chronic care,

22  medication management, and on-site and off-site specialty care. Ms. Coronado may testify

23  regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates

24  who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care

25  she provided. Ms. Coronado is expected to testify regarding continuous improvements made

26  to the delivery of healthcare to ADCRR inmates. Ms. Coronado is expected to testify

27  regarding her deposition if taken in this matter and any Declarations she may prepare for

28  trial.

32.    V. Renna, Director of Nursing, ASPC-Eyman
       c/o Centurion

Veronica Renna is the Director of Nursing for ASPC-Eyman and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care, on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Eyman. Ms. Renna is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. She is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Renna is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

33.    P. Olmstead, NP, Mid-Level Provider, ASPC-Eyman
       c/o Centurion

Pamela Olmstead is a mid-level provider who treats patients at ASPC-Eyman. Ms. Olmstead is expected to testify regarding her knowledge of ADCRR's and Centurion's policies, procedures, and practices for delivery of medical care to ADCRR's inmate population. Ms. Olmstead is also expected to testify regarding her knowledge of the day-to-day provision of medical treatment at Eyman, including diagnostic services, chronic care, medication management, and on-site and off-site specialty care. Ms. Olmstead may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. She is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Olmstead is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

34.    S. Fife, Nurse Educator, ASPC-Eyman
       c/o Centurion

Stacey Fife is a Nurse Educator at ASPC-Eyman. Ms. Fife is expected to testify regarding ADCRR and Centurion policies and procedures pertaining to the delivery of healthcare to ADCRR inmates, and the training provided to Centurion nursing staff and providers. Ms. Fife is expected to testify regarding continuous improvements made to the training provided to Centurion employees and others who treat ADCRR inmates. Ms. Fife is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

35.    C. Myers, Director of Nursing, ASPC-Yuma
       c/o Centurion

Carli Myers is the Director of Nursing at ASPC-Yuma and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care, on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Yuma. Ms. Moore is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. Ms. Moore is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Myers is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

36.    J. Sharr, Ph.D., Lead Psychologist, ASPC-Tucson
       c/o Centurion

Dr. Sharr is the mental health lead at ASPC-Tucson.  She also treats patients at that complex. Dr. Sharr will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up,

mental health services and programming provided to the inmates at Tucson and other complexes where she has treated patients, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Dr. Sharr is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Dr. Sharr may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Dr. Sharr is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

37.   K. Masters, Lead Psychology Associate, ASPC-Phoenix
      c/o Centurion

Katie Masters is the mental health lead at ASPC-Phoenix, has served as the mental health lead at ASPC-Eyman, and has treated patients at both complexes. Ms. Masters will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Phoenix and Eyman, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Ms. Masters is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Ms. Masters may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Masters is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

1

2

38.   J. Bucio, Lead Psychology Associate, ASPC-Yuma
      c/o Centurion

Jose Bucio is the mental health lead at ASPC-Yuma and also treats patients at that complex. Mr. Bucio will testify regarding his knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Yuma, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Mr. Bucio is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Mr. Bucio may testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Mr. Bucio is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

39.   R. Cardogan, Lead Psychology Associate, ASPC-Perryville
      c/o Centurion

Richard Cardogan is the mental health lead at ASPC-Perryville and also treats patients at that complex. Mr. Cardogan will testify regarding his knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Perryville, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Mr. Cardogan is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Mr. Cardogan may testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the

adequacy of the care he provided. Mr. Cardogan is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

40.     **B. Mocha, Lead Psychology Associate, ASPC-Florence**
         **c/o Centurion**

Bianca Mocha is the mental health lead at ASPC-Florence and also treats patients at that complex. Ms. Mocha will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Florence, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Ms. Mocha is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Ms. Mocha may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Mocha is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

41.     **P. Kelly, Psychiatrist, ASPC-Yuma**
         **c/o Centurion**

Dr. Kelly is a treating psychiatrist at ASPC-Yuma. Dr. Kelly will testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the delivery of psychiatric care to ADCRR inmates. She will testify regarding the psychiatric services provided to the inmate population at Yuma and the administration and monitoring of psychotropic medications. Dr. Kelly may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. She is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medications to ADCRR inmates. Dr. Kelly is expected to testify regarding her

deposition if taken in this matter and any Declarations she may prepare for trial.

42.    S. Leonard, Psy.D., Psychologist, ASPC-Perryville
       c/o Centurion

Dr. Leonard is a clinical psychologist at ASPC-Perryville and works in the Women's Treatment Unit. She will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Perryville, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Dr. Leonard is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Dr. Leonard may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Dr. Leonard is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

43.    J. Miller, Release / Discharge Planner
       c/o Centurion

Jackie Miller is a Release and Discharge Planner. Ms. Miller is responsible for ensuring that SMI inmates have release plans in place prior to their release dates and will testify regarding policies, procedures, and practices relating to release planning. She is expected to testify regarding continuous improvements made to ensure continuity of care to ADCRR inmates. Ms. Miller is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

44.    M. Haldane, Program Evaluation Administrator, Medical Services Contract
       Monitoring Bureau
       c/o Struck Love Bojanowski & Acedo

Mark Haldane is a Contract Compliance Program Evaluation Administrator for ADCRR. Mr. Haldane will testify regarding ADCRR policies and procedures for the

provision of health care to the inmate population, contract monitoring and compliance policies and procedures, performance measures, reports, and other data and information used to determine compliance with the contract, compilation and analysis of statistical data, and his knowledge of Centurion's performance under the contract with ADCRR. Mr. Haldane may also testify regarding his historical knowledge of contract monitoring and compliance procedures and practices. Mr. Haldane is expected to testify regarding continuous improvements made to ensure compliance with the contract and improve the delivery of healthcare to ADCRR inmates. Mr. Haldane is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

    45.    L. Donnelly, Trinity Services Group
                c/o TKC Holdings
                Alex Chosid or Justin Moore
                1260 Andres Blvd.
                St. Louis, MO 63132
                (314) 214-2794

Ms. Donnelly Ms. Donnelly is a Regional Dietician (and licensed dietitian) for Trinity Services Group, Inc., the third-party vendor that supplies food services to ADCRR. Ms. Donnelly is expected to testify regarding the nutritional adequacy and caloric requirements and provisions for inmates in maximum custody and detention units. Ms. Donnelly will further testify about the collaborative relationship between ADCRR and Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum custody and detention units up until the time of trial. Ms. Donnelly is expected to testify that the meals provided to ADCRR inmates, specifically to include maximum custody and detention unit inmates, meets and/or exceeds the standard of care in the corrections industry and complies with nutritional standards set by the National Academies of Sciences. Ms. Donnelly will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).

46. R. Towles
c/o Struck Love Bojanowski & Acedo

Mr. Towles is a Deputy Security Operations Administrator for ADCRR. He is expected to testify regarding oversight of ADCRR's food services contract with Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum custody and detention units. Mr. Towles will additionally testify generally as to delivery of food services as it relates to provision of meals to maximum custody and detention unit inmates. Mr. Towles is expected to testify that the meals provided to ADCRR inmates, specifically to include maximum custody and detention unit inmates, meet and/or exceed the standard of care in the corrections industry and comply with nutritional standards set by the National Academies of Sciences.

47. All non-objectionable witnesses listed by Plaintiffs, even if later withdrawn.

48. Without waiving objections, all witnesses identified in responses to interrogatories, requests for production or other discovery in this action.

49. All non-objectionable persons who are deposed in this action.

50. Defendants reserve the right to supplement this list of potential witnesses as needed to respond to or rebut information or opinions contained in Plaintiffs' expert reports and/or their Declarations prepared for trial. Defendants further reserve the right to supplement this list of potential witnesses if needed to respond to changing conditions at the time of trial.

51. Defendants reserve the right to call any physician, mid-level provider, nurse, or other medical or mental health practitioner to whom log-in credentials to eOMIS have been provided at Plaintiffs' request to assist Dr. Wilcox (or any other retained expert), including but not limited to, Rutlandra Hodges, Fred Kleinsinger, Chris Sohl, Gerry Bourne, Jill Legg, and Tom Cuff.

## II.  DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT MAY BE USED AT TRIAL

1. Centurion CQI Meeting Minutes for meetings held in July 2019 at all ten ADCRR complexes at issue (ADCM1580583-1580644).

2. Centurion CQI Meeting Minutes for meetings held in August 2019 at all ten ADCRR complexes at issue (ADCM1584160-1584227 and ADCM1585554-1585566).

3. Centurion CQI Meeting Minutes for meetings held in September 2019 at all ten ADCRR complexes at issue (ADCM1589601-1589676).

4. Centurion CQI Meeting Minutes for meetings held in October 2019 at all ten ADCRR complexes at issue (ADCM1589677-1589749).

5. Centurion CQI Meeting Minutes for meetings held in November 2019 at all ten ADCRR complexes at issue (ADCM1595858-1595932).

6. Centurion CQI Meeting Minutes for meetings held in December 2019 at all ten ADCRR complexes at issue (ADCM1597300-1597379).

7. Centurion CQI Meeting Minutes for meetings held in January 2020 at all ten ADCRR complexes at issue (ADCM1603718-1603803).

8. Centurion CQI Meeting Minutes for meetings held in February 2020 at all ten ADCRR complexes at issue (ADCM1603804-1603876).

9. Centurion CQI Meeting Minutes for meetings held in March 2020 at all ten ADCRR complexes at issue (ADCM1608328-1608399).

10. Centurion CQI Meeting Minutes for meetings held in April 2020 at all ten ADCRR complexes at issue (ADCM1610440-1610510).

11. Centurion CQI Meeting Minutes for meetings held in May 2020 at all ten ADCRR complexes at issue (ADCM1618005-1618082).

12. Centurion CQI Meeting Minutes for meetings held in June 2020 at all ten ADCRR complexes at issue (ADCM1623103-1623179).

13. Centurion CQI Meeting Minutes for meetings held in July 2020 at all ten ADCRR complexes at issue (ADCM1662175-1642251).

14. Centurion CQI Meeting Minutes for meetings held in August 2020 at all ten ADCRR complexes at issue (ADCM1644166-1644236).

15. Centurion CQI Meeting Minutes for meetings held in September 2020 at all ten ADCRR complexes at issue (ADCM1656911-1656985).

16. Centurion CQI Meeting Minutes for meetings held in October 2020 at all ten ADCRR complexes at issue (ADCM1658032-1658113).

17. Centurion CQI Meeting Minutes for meetings held in November 2020 at all ten ADCRR complexes at issue (ADCM16699715-1669794).

18. Centurion CQI Meeting Minutes for meetings held in December2020 at all ten ADCRR complexes at issue (ADCRRM0001668-0001745).

19. Centurion CQI Meeting Minutes for meetings held in January 2021 at all ten ADCRR complexes at issue (ADCRRM0013328-0013421).

20. Centurion CQI Meeting Minutes for meetings held in February 2021 at all ten ADCRR complexes at issue (ADCRRM0018501-0018595).

21. Centurion CQI Meeting Minutes for meetings held in March 2021 at all ten ADCRR complexes at issue (ADCRRM0019418-0019513).

22. Centurion CQI Meeting Minutes for meetings held in April 2021 at all ten ADCRR complexes at issue (ADCRRM0024115-0024208).

23. Centurion CQI Meeting Minutes for meetings held in May 2021 at all ten ADCRR complexes at issue (ADCRRM0025060-0025163).

24. Centurion CQI Meeting Minutes for meetings held in June 2021 at all ten ADCRR complexes at issue (ADCRR00061590-00062151).

25. Heat Intolerance Log for the period from September 2019 to October 2019 (ADCM1591243-1591244).

26. Heat Intolerance Log for the period from October 2019 to June 2020 (ADCM1623101-1623102).

27. Heat Intolerance Log for the period from October 2019 to July 2020 (ADCM1630341-1630343).

28. Heat Intolerance Log for the period from October 2019 to August 2020 (ADCM1643300-1643304).

29. Heat Intolerance Log for the period from October 2019 to September 2020 (ADCM1655845-1655849).

30. Heat Intolerance Log for the period from November 2019 to October 2020 (ADCM1657160-1657164).

31. Heat Intolerance Log for November 2020 (ADCM1669310).

32. Heat Intolerance Log for the period from December 2020 to May 2021 (ADCRRM0025164).

44

33. Centurion Mental Health Staff Roster with Licensure, generated February 2020 (ADCM1601364-1601368).

34. Centurion Mental Health Staff Roster with Licensure, through December 2020 (ADCRRM0005523-0005526).

35. Centurion Mental Health Staff Roster with Licensure, generated March 2021 (ADCRRM0013422-0013425).

36. Centurion Mental Health Staff Roster with Licensure, generated April 2021 (ADCRRM0019588-0019591).

37. ADC MH Levels Statistical Summary as of October 17, 2019 (ADCM1588561-1688566).

38. Report of Inmates on Psychotropic Meds, generated May 25, 2020 (ADCM1617737-1617935).

39. Redacted ADC MH Levels Statistical Summary as of May 25, 2020 (ADCM1617936-1617947).

40. Redacted ADC MH Levels Statistical Summary as of June 29, 2020 (ADCM1623181-1623193).

41. ADCRR Mental Health Statistical Summary as of July 15, 2020 (ADCM1625078-1625079).

42. ADCRR Mental Health Statistical Summary as of August 31, 2020 (ADCM1644932-1644933).

43. ADCRR Mental Health Statistical Summary as of September 30, 2020 (ADCM1657675-1657676).

44. October 2020 ADCRR Mental Health Statistical Summary (ADCM1658116-1658117).

45. November 2020 ADCRR Mental Health Statistical Summary (ADCM1669368-1669369).

46. December 2020 ADCRR Mental Health Statistical Summary (ADCRRM0001746-0001747).

47. January 2021 ADCRR Mental Health Statistical Summary (ADCRRM0013426-0013427).

48. February 2021 ADCRR Mental Health Statistical Summary (ADCRRM0013429-0013430).

49.     March 2021 ADCRR Mental Health Statistical Summary
        (ADCRRM0018603-0018604).

50.     April 2021 ADCRR Mental Health Statistical Summary
        (ADCRRM0023392-0023393).

51.     May 2021 ADCRR Mental Health Statistical Summary
        (ADCRRM0024284-0024285).

52.     Medical Examiner's Autopsy Report regarding in-custody death of ███
        ███, #███ (ADCM1582448-1584236).

53.     ADCRR Mortality Review, Psychological Autopsy, and Medical
        Examiner's Autopsy Report regarding in-custody death of ███
        #███ (ADCM1585574-1585603).

54.     ADCRR Mortality Review, Psychological Autopsy, and Medical
        Examiner's Autopsy Report regarding in-custody death of ███,
        #███ (ADCM1588568-1588594).

55.     ADCRR Mortality Review and Psychological Autopsy regarding in-custody
        death of ███, #███ (ADCM1610511-1610518 and
        ADCRRM0000063-0000068).

56.     ADCRR Mortality Review and Psychological Autopsy regarding in-custody
        death of ███, #███ (ADCM1618291-1618295 and
        ADCM1618561-1618579).

57.     ADCRR Mortality Review and Psychological Autopsy regarding in-custody
        death of ███, #███ (ADCM1623198-1623202 and
        ADCM1624350-1624363).

58.     ADCRR Mortality Review and Psychological Autopsy regarding in-custody
        death of ███, #███ (ADCM1669325-1669328 and
        ADCRRM0000078-0000088).

59.     ADCRR Mortality Review and Psychological Autopsy regarding in-
        custody death of ███, #███ (ADCM1669339-1669342 and
        ADCRRM0000069-0000077).

60.     ADCRR Mortality Review regarding in-custody death of ███,
        #███ (ADCRRM0005585-0005588).

61.     ADCRR Mortality Review regarding in-custody death of ███,
        #███ (ADCRRM0012739-0012742).

62.  ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of ███████, # ██████ (ADCRRM0026154-0026181).

63.  ADCRR Mortality Review regarding in-custody death of ██████, # █████ (ADCRRM0026199-0026202).

64.  ADCRR Mortality Review regarding in-custody death of ████████, # █████ (ADCRRM0026203-0026206).

65.  ADCRR Mortality Review regarding in-custody death of ██████, # █████ (ADCRRM0026215-0026218).

66.  ADCRR Mortality Review regarding in-custody death of ████████, # █████ (ADCRR00000041-00000044).

67.  ADCRR Mortality Review regarding in-custody death of █████ ███████, # █████ (ADCRR00000106-00000109).

68.  May 26, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Update: Suicide Prevention Strategy (ADCM1572574-1572575).

69.  July 7, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Detention Reviews (ADCM1572576).

70.  October 21, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Mental Health Protocols (ADCM1572577-1572581).

71.  April 1, 2018 Updated Corizona Memorandum from Lynn Calcote, Ph.D. regarding Mental Health Protocols (ADCM1572569-1572573).

72.  ADCRR Duty Specific Post Order 36 for Watch Security Officer, effective at ASPC-Yuma on October 15, 2019 (ADCM1620598-1620610).

73.  ADCRR Duty Specific Post Order 36 for Watch Security Officer, effective at ASPC-Yuma on March 19, 2020 (ADCM1620585-1620597).

74.  Summary Report of Prescribed Psychotropic Mediations, during the period from May 26, 2020 through July 8, 2020 (ADCM1622922).

75.  Summary Report of Prescribed Psychotropic Medications, updated July 9, 2020 (ADCM1623180).

76.  Summary Report of Prescribed Psychotropic Medications, during the period from July 10, 2020 through August 31, 2020 (ADCM1643305).

77.  Summary Report of Prescribed Psychotropic Medications, during September 2020 (ADCM1655850).

78. Summary Report of Prescribed Psychotropic Medications, during October 2020 (ADCM1658115).

79. Summary Report of Prescribed Psychotropic Medications, during November 2020 (ADCM1669388).

80. Summary Report of Prescribed Psychotropic Medications, during December 2020 (ADCRRM0001748).

81. Summary Report of Prescribed Psychotropic Medications, during January 2021 (ADCRRM0013428).

82. Summary Report of Prescribed Psychotropic Medications, during February 2021 (ADCRRM0013431).

83. Summary Report of Prescribed Psychotropic Medications, during March 2021 (ADCRRM0019578).

84. Summary Report of Prescribed Psychotropic Medications, during April 2021 (ADCRRM0024276).

85. Summary Report of Prescribed Psychotropic Medications, during May 2021 (ADCRRM0025225).

86. Centurion Statewide Staffing Report, as of November 15, 2019 (ADCM1589750-1589769).

87. Centurion Staffing Variance Report, through July 26, 2019 (ADCM1582320-1582331).

88. Centurion Staffing Variance Report, dated August 9, 2019 (ADCM1584871-1584882).

89. Centurion Staffing Variance Report, dated August 23, 2019 (ADCM1584883-1584894).

90. Centurion Staffing Variance Report, dated September 9, 2019 (ADCM1584895-1584906).

91. Centurion Staffing Variance Report, dated September 25, 2019 (ADCM1584907-1584918).

92. Centurion Staffing Variance Report, dated October 7, 2019 (ADCM1595647-1595658).

93. Centurion Staffing Variance Report, dated October 21, 2019 (ADCM1595659-1595669).

94.  Centurion Staffing Variance Report, dated October 31, 2019 (ADCM1595670-1595681).

95.  Centurion Staffing Variance Report, dated November 26, 2019 (ADCM1595682-1595688).

96.  Centurion Staffing Variance Report, dated December 12, 2019 (ADCM1600201-1600212).

97.  Centurion Staffing Variance Report, dated January 2, 2020 (ADCM1600190-1600200).

98.  Centurion Staffing Variance Report, dated January 23, 2020 (ADCM1607084-1607094).

99.  Centurion Staffing Variance Report, dated February 3, 2020 (ADCM1607095-1607125).

100. Centurion Staffing Variance Report, dated March 2, 2020 (ADCM1611148-1611158).

101. Centurion Staffing Variance Report, dated April 1, 2020 (ADCM1609358-1609368).

102. Centurion Staffing Variance Report, dated April 14, 2020 (ADCM1609369-1609379).

103. Centurion Staffing Variance Report, for the period from March 29, 2020 to April 25, 2020 (ADCM1625045-1625055).

104. Centurion Staffing Variance Report, for the period from April 26, 2020 to May 23, 2020 (ADCM1625056-1625066).

105. Centurion Staffing Variance Report, for the period from May 10, 2020 to June 6, 2020 (ADCM1625067-1625077).

106. Centurion Actual v Contract Variance Report, June 2020 (ADCM162750-162760).

107. Centurion Actual v Contract Variance Report, July 2020 (ADCM1642168-1642174).

108. Centurion Actual v Contract Variance Report, August 2020 (ADCM1652222-1652228).

109. Centurion Actual v Contract Variance Report, September 2020 (ADCM1658025-1658031).

110. Centurion Actual v Contract Variance Report, October 2020 (ADCM1669298-1669309).

111. Centurion Actual v Contract Variance Report, November 2020 (ADCRRM0001654-0001660).

112. Centurion Actual v Contract Variance Report, December 2020 (ADCRRM0001661-0001667).

113. Centurion Actual v Contract Variance Report, January 2021 (ADCRRM0013321-0013327).

114. Centurion Actual v Contract Variance Report, February 2021 (ADCRRM0018596-0018602).

115. Centurion Actual v Contract Variance Report, March 2021 (ADCRRM0019579-0019585).

116. Centurion Actual v Contract Variance Report, April 2021 (ADCRRM0024277-0024283).

117. ADCRR Mortality Review regarding in-custody death of ███████, ██████ (ADCM1580653-1588600).

118. ADCRR Mortality Review regarding in-custody death of ███████, #█████(ADCM1580657-1580660).

119. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1584237-15847241).

120. ADCRR Mortality Review regarding in-custody death of █████████ #█████ (ADCM158242-1584245).

121. ADCRR Mortality Review regarding in-custody death of ████████ #█████ (ADCM1584246-4584249).

122. ADCRR Mortality Review regarding in-custody death of ███████ #█████ (ADCM1584290-1584293).

123. ADCRR Mortality Review regarding in-custody death of ███████ █████ (ADCM1584294-1584299).

124. ADCRR Mortality Review regarding in-custody death of ███████, #█████(ADCM1584300-1584303).

125. ADCRR Mortality Review regarding in-custody death of ███████, #█████ (ADCM1584304-1584309).

126. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1585570-1585573).

127. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCM1588595-1588600).

128. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCM1589770-1589775).

129. ADCRR Mortality Review regarding in-custody death of ██████████, ████████ (ADCM1589776-1589779).

130. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCM1589780-1589784).

131. ADCRR Mortality Review regarding in-custody death of ████████ ██████████, #██████ (ADCM1589785-1589788).

132. ADCRR Mortality Review regarding in-custody death of ████████ ████████ ██████ (ADCM1589789-1589793).

133. ADCRR Mortality Review regarding in-custody death of ██████████ ██████ (ADCM1589797-1589798).

134. ADCRR Mortality Review regarding in-custody death of ████████ #████ (ADCM1589799-1589802).

135. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1589803-1589808).

136. ADCRR Mortality Review regarding in-custody death of ██████████ ██████ (ADCM1589809-1589812).

137. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCM1589813-1589820).

138. ADCRR Mortality Review regarding in-custody death of ████████, #██████ (ADCM1589821-1589824).

139. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1591245-1591250).

140. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCM1595933-1595936).

141. ADCRR Mortality Review regarding in-custody death of ██████████, #████████ (ADCM1595937-1595941).

142. ADCRR Mortality Review regarding in-custody death of ███████████████, #██████ (ADCM1595942-1595946).

143. ADCRR Mortality Review regarding in-custody death of ██████████████, #██████ (ADCM1595947-1595954).

144. ADCRR Mortality Review regarding in-custody death of ███████████████, #██████ (ADCM1595955-1595959).

145. ADCRR Mortality Review regarding in-custody death of ████████████, #████████ (ADCM1598069-1598073).

146. ADCRR Mortality Review regarding in-custody death of ██████████████, ████████ (ADCM1598074-1598078).

147. ADCRR Mortality Review regarding in-custody death of █████████████ #██████ (ADCM1598079-1598082).

148. ADCRR Mortality Review regarding in-custody death of ████████████, #██████ (ADCM1598083-1598086).

149. ADCRR Mortality Review regarding in-custody death of ██████████████ #██████ (ADCM1598087-1598094).

150. ADCRR Mortality Review regarding in-custody death of █████████████ #████████ (ADCM1598094-1598101).

151. ADCRR Mortality Review regarding in-custody death of ███████████████, ████████ (ADCM1603877-1603880).

152. ADCRR Mortality Review regarding in-custody death of █████████████ #██████ (ADCM1603881-1603884).

153. ADCRR Mortality Review regarding in-custody death of ██████████████, ████████ (ADCM1603885-1603893).

154. ADCRR Mortality Review regarding in-custody death of ███████████, ████████ (ADCM1603894-1603899).

155. ADCRR Mortality Review regarding in-custody death of ██████████████, #██████ (ADCM1603900-1603903).

156. ADCRR Mortality Review regarding in-custody death of ███████████, ████████ (ADCM1603904-1603907).

157. ADCRR Mortality Review regarding in-custody death of ██████████████, #██████ (ADCM1603908-1603913).

158. ADCRR Mortality Review regarding in-custody death of ████████, #██████ (ADCM1603914-1603918).

159. ADCRR Mortality Review regarding in-custody death of ██████, ████████ (ADCM1603919-1603924).

160. ADCRR Mortality Review regarding in-custody death of ████████, #████ (ADCM1603925-1603928).

161. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603929-1603932).

162. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603933-1603936).

163. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603937-1603940).

164. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603941-1603944).

165. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603945-1603948).

166. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1603949-1603955).

167. ADCRR Mortality Review regarding in-custody death of ████████ ██████ (ADCM1608400-1608406).

168. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1608407-1608410).

169. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1608411-1608420).

170. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1608421-1608427).

171. ADCRR Mortality Review regarding in-custody death of ████████, #████ (ADCM1608428-1608431).

172. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1608432-1608440).

173. ADCRR Mortality Review regarding in-custody death of ██████, #████ (ADCM1608441-1608444).

53

174. ADCRR Mortality Review regarding in-custody death of ███████, #█████ (ADCM1608445-1608448).

175. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1608449-1608456).

176. ADCRR Mortality Review regarding in-custody death of ██████, ██████ (ADCM1608457-1608460).

177. ADCRR Mortality Review regarding in-custody death of ███████ █████ (ADCM1608461-1608465).

178. ADCRR Mortality Review regarding in-custody death of ████████ #█████ (ADCM1608466-1608470).

179. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1610519-1610524).

180. ADCRR Mortality Review regarding in-custody death of ████████ █████ (ADCM1610525-1610529).

181. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1610530-1610534).

182. ADCRR Mortality Review regarding in-custody death of ███████ #████ (ADCM1610535-1610538).

183. ADCRR Mortality Review regarding in-custody death of ██████, #█████ (ADCM1610539-1610545).

184. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1613843-1613848).

185. ADCRR Mortality Review regarding in-custody death of █████████, #████ (ADCM1613849-1613852).

186. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1613853-1613856).

187. ADCRR Mortality Review regarding in-custody death of ███████, #████ (ADCM1615615-1615618).

188. ADCRR Mortality Review regarding in-custody death of ██████ #████ (ADCM1615619-1615623).

189. ADCRR Mortality Review regarding in-custody death of ██████ █████ (ADCM1615624-1615627).

54

190. ADCRR Mortality Review regarding in-custody death of ███████, #█████ (ADCM1615628-1615631).

191. ADCRR Mortality Review regarding in-custody death of ██████████, █████ (ADCM1615638-1615641).

192. ADCRR Mortality Review regarding in-custody death of ██████████, █████ (ADCM1615642-1615645).

193. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1615646-1615649).

194. ADCRR Mortality Review regarding in-custody death of ██████████, █████ (ADCM1617730-1617735).

195. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1618260-1618264).

196. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1618265-1618268).

197. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1618269-1618272).

198. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1618273-1618278).

199. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1618279-1618283).

200. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1618284-1618290).

201. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1623194-1623197).

202. ADCRR Mortality Review regarding in-custody death of ██████████, █████ (ADCM1623203-1623209).

203. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1623210-1623213).

204. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCM1623214-1623217).

205. ADCRR Mortality Review regarding in-custody death of █████████, █████ (ADCM1623218-1623223).

206.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1629761-1629766).

207.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643914-1643917).

208.  ADCRR Mortality Review regarding in-custody death of ███████ #███████ (ADCM1643918-1643922).

209.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643923-1643926).

210.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643927-1643932).

211.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643933-1643936).

212.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643937-1643940).

213.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643941-1643944).

214.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643945-1643948).

215.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643949-1643953).

216.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643954-1643957).

217.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643958-1643963).

218.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643964-1643970).

219.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643971-1643974).

220.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643975-1643980).

221.  ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCM1643981-1643984).

222. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1643984-1643988).

223. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1643989-1643994).

224. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1643995-1643998).

225. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1643999-1644002).

226. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1644003-1644006).

227. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCM1644007-1644010).

228. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1644011-1644014).

229. ADCRR Mortality Review regarding in-custody death of ████████, #██████ (ADCM1651459-1651462).

230. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651463-1651466).

231. ADCRR Mortality Review regarding in-custody death of ████████ ██████████ #██████ (ADCM1651467-1651470).

232. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651471-1651474).

233. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651475-1651478).

234. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651479-1651482).

235. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651483-1651487).

236. ADCRR Mortality Review regarding in-custody death of ██████████, #██████ (ADCM1651488-1651493).

237. ADCRR Mortality Review regarding in-custody death of ████████ ██████████ #██████ (ADCM1651494-1651497).

238. ADCRR Mortality Review regarding in-custody death of ███████████, # ███████ (ADCM1651498-1651502).

239. ADCRR Mortality Review regarding in-custody death of ██████████, # ███████ (ADCM 1651503-1651506).

240. ADCRR Mortality Review regarding in-custody death of █████████████, # ████ (ADCM1652229-1652234).

241. ADCRR Mortality Review regarding in-custody death of █████████, # ██████(ADCM1655855-1655858).

242. ADCRR Mortality Review regarding in-custody death of ████████ # ██████ (ADCM1655859-1655863).

243. ADCRR Mortality Review regarding in-custody death of █████████, # █████ (ADCM1655864-1655868).

244. ADCRR Mortality Review regarding in-custody death of ██████████, # ██████ (ADCM1669312-1669315).

245. ADCRR Mortality Review regarding in-custody death of ██████████, # ██████ (ADCM1669316-1669319).

246. ADCRR Mortality Review regarding in-custody death of █████████, # █████ (ADCM1669320-1669324).

247. ADCRR Mortality Review regarding in-custody death of █████████, # █████ (ADCM1669329-1669334).

248. ADCRR Mortality Review regarding in-custody death of ██████ # █████ (ADCM1669335-1669338).

249. ADCRR Mortality Review regarding in-custody death of ██████████, # ██████ (ADCM1669343-1669346).

250. ADCRR Mortality Review regarding in-custody death of █████████████, # ████████ (ADCM1669347-1669351).

251. ADCRR Mortality Review regarding in-custody death of █████████, # ██████ (ADCRRM0004654-0004657).

252. ADCRR Mortality Review regarding in-custody death of █████████, # ██████ (ADCRRM0004658-0004661).

253. ADCRR Mortality Review regarding in-custody death of █████████, # ███████(ADCRRM0004662-0004665).

58

254. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004666-0004669).

255. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004670-0004673).

256. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004674-0004677).

257. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004693-0004696).

258. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004697-0004700).

259. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0004701-0004704).

260. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0005573-0005576).

261. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0005577-0005580).

262. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0005581-0005584).

263. ADCRR Mortality Review regarding in-custody death of ███████ #███████ (ADCRRM0005589-0005592).

264. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012707-0012710).

265. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012711-0012714).

266. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012715-0012718).

267. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012719-0012722).

268. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012723-0012726).

269. ADCRR Mortality Review regarding in-custody death of ███████, #███████ (ADCRRM0012727-0012730).

270. ADCRR Mortality Review regarding in-custody death of ███████████, #████ (ADCRRM0012731-0012734).

271. ADCRR Mortality Review regarding in-custody death of ███████████, ████ (ADCRRM0012735-0012738).

272. ADCRR Mortality Review regarding in-custody death of ██████████ #████ (ADCRRM0012743-0012746).

273. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCRRM0019592-0019596).

274. ADCRR Mortality Review regarding in-custody death of ███████████, #████ (ADCRRM0019597-0019600).

275. ADCRR Mortality Review regarding in-custody death of ████████████, #████ (ADCRRM0019601-0019604).

276. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCRRM0019605-0019608).

277. ADCRR Mortality Review regarding in-custody death of ██████████ #████ (ADCRRM0019609-0019612)

278. ADCRR Mortality Review regarding in-custody death of ███████, #█████ (ADCRRM0019613-0019616).

279. ADCRR Mortality Review regarding in-custody death of ███████████, #████ (ADCRRM0019617-0019620); █████████████ replacement page 1 (ADCRRM0026194).

280. ADCRR Mortality Review regarding in-custody death of ███████████, #████ (ADCRRM0019621-0019624).

281. ADCRR Mortality Review regarding in-custody death of █████████████ #████ (ADCRRM0019625-0019628).

282. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCRRM0019629-0019632).

283. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCRRM0019633-0019636).

284. ADCRR Mortality Review regarding in-custody death of ██████████, #████ (ADCRRM0019637-0019640).

285. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019641-0019644).

286. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019645-0019648).

287. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019649-0019652).

288. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019653-0019656).

289. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019657-0019660).

290. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019661-0019664).

291. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019665-0019668).

292. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019669-0019672).

293. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019673-0019676).

294. ADCRR Mortality Review regarding in-custody death of ███████, ██████ (ADCRRM0019677-0019681).

295. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019682-0019685).

296. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0019686-0019689).

297. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0026142-0026145).

298. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRRM0026146-0026149).

299. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0026150-0026153).

300. ADCRR Mortality Review regarding in-custody death of ███████, #██████ (ADCRRM0026182-0026185).

301. ADCRR Mortality Review regarding in-custody death of ███████████, #█████ (ADCRRM0026186-0026189).

302. ADCRR Mortality Review regarding in-custody death of ███████████, #█████(ADCRRM0026190-0026193).

303. ADCRR Mortality Review regarding in-custody death of ██████████, #█████ (ADCRRM0026195-0026198).

304. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCRRM0026199-0026202).

305. ADCRR Mortality Review regarding in-custody death of ████████, #██████ (ADCRRM0026207-0026210).

306. ADCRR Mortality Review regarding in-custody death of ███████████, #█████ (ADCRRM0026211-0026214).

307. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCRRM0026215-0026218).

308. ADCRR Mortality Review regarding in-custody death of ██████████, #█████ (ADCRRM0026219-0026222).

309. ADCRR Mortality Review regarding in-custody death of ██████████, #█████ (ADCRRM0026223-0026226).

310. ADCRR Mortality Review regarding in-custody death of ██████████, #█████(ADCRRM0026227-0026230).

311. ADCRR Mortality Review regarding in-custody death of █████████, #█████(ADCRRM0026231-0026234).

312. ADCRR Mortality Review regarding in-custody death of ██████████, #█████ (ADCRRM0026235-0026238).

313. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCRRM0026239-0026242).

314. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCRRM0026243-0026246).

315. ADCRR Mortality Review regarding in-custody death of █████████, #█████ (ADCRRM0026247-0026250).

316. ADCRR Mortality Review regarding in-custody death of ████████, #███████(ADCRRM0026251-0026254).

317. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000001-00000004).

318. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000005-00000008).

319. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000009-00000012).

320. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000013-00000016).

321. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000017-00000020).

322. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000021-00000024).

323. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000025-00000028).

324. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000029-00000032).

325. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000033-00000036).

326. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000037-00000040).

327. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000041-00000044).

328. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000045-00000048).

329. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000053-00000056).

330. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000057-00000060).

331. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000061-00000064).

332. ADCRR Mortality Review regarding in-custody death of ██████████ #██████ (ADCRR00000065-00000068).

333. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRR00000069-00000072).

334. ADCRR Mortality Review regarding in-custody death of ███████ #██████(ADCRR00000073-00000076).

335. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCRR0000077-00000080).

336. ADCRR Mortality Review regarding in-custody death of ███████ ██████ #██████(ADCRR00000081-00000084).

337. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCRR00000085-00000088).

338. ADCRR Mortality Review regarding in-custody death of ████████ #██████(ADCRR00000089-00000092).

339. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRR00000093-00000097).

340. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRR00000098-00000102).

341. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRR00000102-00000105).

342. ADCRR Mortality Review regarding in-custody death of ██████ ██████ #██████ (ADCRR00000110-00000113).

343. ADCRR Mortality Review regarding in-custody death of ███████ #██████ (ADCRR00000114-00000117).

344. ADCRR Mortality Review regarding in-custody death of ████████ #██████ (ADCRR00000118-00000121).

345. ADCRR Significant Incident Report regarding in-custody death of ████████████ #██████ (ADCRR00000566-00000567).

346. ADCRR Significant Incident Report regarding in-custody death of ███████ ██████ #██████ (ADCRR00000626-00000628).

347. Centurion Quarterly Chronic Conditions Reports for the period from Q3-2019 through Q2-2021 at all ten ADCRR complexes at issue (ADCRR00043627-00044905).

348.   ADCRR Maximum Custody Monitoring Guide (July 2017) (ADCM1036847-1036870).

349.   ADCRR Inmate Net Growth Data/Analysis (data as of 6/30/2021), (ADCRR00061547-00061552).

350.   ADCRR Maximum Custody Notebooks and use of force videos for July 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1540951-1542359 and ADCM1542360-1542365).

351.   ADCRR Maximum Custody Notebooks and use of force videos for August 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1548917-1549936 and ADCM1551271-1551565).

352.   ADCRR Maximum Custody Notebooks and use of force videos for September 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1551619-1552923).

353.   ADCRR Maximum Custody Notebooks and use of force videos for October 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1553420-1554841; ADCM1554379-1554408; and ADCM1554409-1554893).

354.   ADCRR Maximum Custody Notebooks for November 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1562004-1563637 and ADCM1563638-1563677).

355.   ADCRR Maximum Custody Notebooks and use of force videos for December 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1565312-1566317; ADCM1566318-1566334; ADCM1566335-1566684; and ADCM1566685-1566701).

356.   ADCRR Maximum Custody Notebooks and use of force videos for January 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1568916-1570069).

357.   ADCRR Maximum Custody Notebooks and use of force videos for February 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1573974-1575228).

358.   ADCRR Maximum Custody Notebooks and use of force videos for March 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1575975-1577112).

359.   ADCRR Maximum Custody Notebooks and use of force videos for April 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1578402-1579438).

360.   ADCRR Maximum Custody Notebooks and use of force videos for May 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1582332-1583611).

361.   ADCRR Maximum Custody Notebooks and use of force videos for June 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1585901-1587152).

362.   ADCRR Maximum Custody Notebooks and use of force videos for July 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1592061-1593453).

363.   ADCRR Maximum Custody Notebooks and use of force videos for August 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1600213-1608307).

364.   ADCRR Maximum Custody Notebooks and use of force videos for September 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1611159-1612429).

365.   ADCRR Maximum Custody Notebooks and use of force videos for October 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1612443-1613817).

366.   ADCRR Maximum Custody Notebooks and use of force videos for November 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1616184-1617729).

367.   ADCRR Maximum Custody Notebooks and use of force videos for December 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1619366-1638624 and ADCM1620570-1620584).

368.   ADCRR Maximum Custody Notebooks and use of force videos for January 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1636983-1653145).

369.   ADCRR Maximum Custody Notebooks and use of force videos for February 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1653146-1670965).

370. ADCRR Maximum Custody Notebooks and use of force videos for March 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1654420-1655844 and ADCM1660106-1670966).

371. ADCRR Maximum Custody Notebooks and use of force videos for April 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1660168-1670979).

372. ADCRR Maximum Custody Notebooks and use of force videos for May 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1661815-1670996).

373. ADCRR Maximum Custody Notebooks and use of force videos for June 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1663538-1665112 and ADCRRM0021648-21808).

374. ADCRR Maximum Custody Notebooks and use of force videos for July 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1665113-166699 and ADCM1670997-1671009).

375. ADCRR Maximum Custody Notebooks and use of force videos for August 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1666700-1668141; ADCRRM0003335-0003363; and ADCRRM0021809-0021988).

376. ADCRR Maximum Custody Notebooks and use of force videos for September 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0003365-0004647 and ADCRRM0021989-0022483).

377. ADCRR Maximum Custody Notebooks and use of force videos for October 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0028193-0029711).

378. ADCRR Maximum Custody Notebooks and use of force videos for November 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0007914-0009409).

379. ADCRR Maximum Custody Notebooks and use of force videos for December 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0029712-0031201).

380. ADCRR Maximum Custody Notebooks and use of force videos for January 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0031202-0032572).

381. ADCRR Maximum Custody Notebooks and use of force videos for February 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0032573-0034086).

382. ADCRR Maximum Custody Notebooks and use of force videos for March 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis and Phoenix (ADCRR00066087-00067454).

383. ADCRR Maximum Custody Notebooks and use of force videos for April 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis and Phoenix (ADCRR00067455-00068505).

384. ADCRR Maximum Custody Notebooks and use of force videos for May 2021 for ASPC-Eyman-Browning, Eyman-SMU and Florence (ADCRR00068506-00069736).

385. ADCRR – Department Order 812, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

386. ADCRR – Department Order 704, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

387. ADCRR – Department Order 720, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

388. ADCRR – Department Order 801, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

389. ADCRR – Department Order 803, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

390. ADCRR – Department Order 807, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

391. ADCRR – Department Order 809, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

392. ADCRR – Department Order 903, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

393. ADCRR – Department Order 906, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

394. ADCRR – Department Order 909, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

395. ADCRR – Department Order 910, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

396. ADCRR – Department Order 1103, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

397. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ███████████ #██████ (ADCRR00050604-0050613 and ADCRRM00052083-00052085).

398. Maximum Custody Out of Cell Tracking Forms for ████████████, #███████ (ADCRR00050614-0050713).

399. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ███████████, #██████ (ADCRR00050772-0050859).

400. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ████████████, #██████ (ADCRR0050860-0050949 and ADCRR00052090-00052098).

401. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ███████████, #██████ (ADCRR0050950-0051041 and ADCRR00052128-00052132).

402. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████, (ADCRR0051042-0051147 and ADCRR00052086-00052089).

403. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ███████████, #██████ (ADCRR0051148-0051225 and ADCRR0052106-00052113).

404. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ████████, #███████ (ADCRR0051256-0051360 and ADCRR00052099-00052105).

405. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for █████████████ #██████, (ADCRR0050860-0050949 and ADCRR00052123-00052127).

406. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████ (ADCRR0051469-0051576 and ADCRR00052133-00052149).

407. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████ (ADCRR0051627-0051632 and ADCRR00052083-00052085).

408. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████ (ADCRR0051633-0051722 and ADCRR00052150-00052182).

409. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████(ADCRR0051733-0051748 and ADCRR00052080-00052082).

410. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for ██████████, #██████ (ADCRR0051749-0051764 and ADCRRM00052075-00052079).

411. Maximum Custody Out-of-Cell Tracking Forms for representative Plaintiff, ██████████, ██████ (ADCRR00050556-50603, ADCRR00051823-51836, ADCRR00051885-5190051951-51960).

412. Maximum Custody Disciplinary and Classification files for representative Plaintiff, ██████████, ██████ (ADCRR00052065-52074, ADCRR0052057-52064).

413. Maximum Custody Out-of-Cell Tracking Forms for representative Plaintiff, ██████████, ██████ (ADCRR00050714-50771).

414. Maximum Custody Disciplinary and Classification files for representative Plaintiff, ██████████, ██████, to be produced.

415. Maximum Custody curtailment reports for ASPC-Eyman, ASPC-Lewis-Rast Max and ASPC-Florence-Kasson for January 1, 2020 to August 10, 2021 (ADCRR00052183-55816).

416. Hiring reports for Correctional Staff at ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from August 1, 2020, to August 23, 2021 (ADCRR00055817-56119).

417. ADCRR's Corrections at a Glance reports, available at https://corrections.az.gov/reports-documents/reports/corrections-glance.

418. ADCRR's inmate assault, self-harm and mortality data reports, available at https://corrections.az.gov/reports-documents/reports/inmate-assault-self-harm-mortality-data.

419. ADCRR documents relating to conditions of confinement in maximum custody units, as defined by the Class Certification Order, during the period from July 1, 2018 until the time of trial.

420. ADCRR and Centurion documents relating to the provision of medical, mental health, and dental care to inmates detained at the ten Arizona State Prison Complexes identified in the Class Certification Order, during the period from January 1, 2019 until the time of trial.

421. eOMIS medical records for any and all inmates identified on the lists exchanges by the parties of records viewed by experts through the time of trial.

422. Any and all information posted on social media accounts (including but not limited to Facebook, Instagram, Twitter, LinkedIn, TikTok, YouTube, SnapChat, Pinterest, Reddit, OnlyFans, etc.) created, used, and/or maintained by any current or former inmate, Corizon employee, or ADCRR employee, who may be called during Plaintiffs' case-in-chief.

423. Documentation relied upon and/or produced by any expert retained to offer testimony at trial.

424. All deposition transcripts and exhibits from testimony provided in this matter unless otherwise objected to.

425. Any reports prepared by an expert in this case.

426. Curricula vitae of all Defendants' expert witnesses.

427. Demonstrative exhibits for use at trial.

428. Without waiving any objections, any and all exhibits identified by any other parties, even if later withdrawn.

429. Without waiving any objections, any and all documents listed or identified by any party in response to interrogatories, requests for production, or requests for admissions, including but not limited to those documents produced by Defendants in response to Plaintiffs' First and Second Requests for Production, and any supplemental productions thereto.

430.   All discovery responses by Plaintiffs and responses to the same in interrogatories, requests for production, or requests for admissions submitted by any party, including supplemental responses.

431.   Any and all documents disclosed by Plaintiffs.

By disclosing the above documents, Defendants do not stipulate to the ultimate admissibility of these documents at trial and hereby preserves all available objections to admissibility provided by the Federal Rules of Evidence, Federal Rules of Civil Procedure, and orders issued by the Court in this matter.   Defendants anticipates that additional documents/tangible evidence will be identified as discovery continues and will supplement at that time.

DATED this 10th day of September, 2021.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Rachel Love
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

1

2      I hereby certify that on September 10, 2021, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
3      Notice of Electronic Filing to the following CM/ECF registrants:

4      Alison Hardy:              ahardy@prisonlaw.com

5      Asim Dietrich:             adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
                                  phxadmin@azdisabilitylaw.org
6
       Austin C. Yost:            ayost@perkinscoie.com; docketPHX@perkinscoie.com
7
       Corene T. Kendrick:        ckendrick@aclu.org
8
       Daniel Clayton Barr:       DBarr@perkinscoie.com; docketphx@perkinscoie.com;
9                                 sneilson@perkinscoie.com

10     David Cyrus Fathi:         dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

11     Donald Specter:            dspecter@prisonlaw.com

12     Eunice Cho                 ECho@aclu.org

13     Jared G. Keenan            jkeenan@acluaz.org

14     John Howard Gray:          jhgray@perkinscoie.com; slawson@perkinscoie.com

15     Jose de Jesus Rico:        jrico@azdisabilitylaw.org

16     Karl J. Worsham:           kworsham@perkinscoie.com; docketphx@perkinscoie.com

17     Kathryn E. Boughton:       kboughton@perkinscoie.com; docketphx@perkinscoie.com

18     Kelly Soldati              ksoldati@perkinscoie.com; docketphx@perkinscoie.com

19     Maria V. Morris            mmorris@aclu.org

20     Maya Abela                 mabela@azdisabilitylaw.org

21     Mikaela N. Colby:          mcolby@perkinscoie.com; docketphx@perkinscoie.com

22     Rita K. Lomio:             rlomio@prisonlaw.com

23     Rose Daly-Rooney:          rdalyrooney@azdisabilitylaw.org

24     Sara Norman:               snorman@prisonlaw.com

25     Victoria Lopez:            vlopez@acluaz.org

26

27

28

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Rachel Love