**Index of Exhibits to**
**Declaration of Daniel C. Barr**

**Exhibit**   **Description**

A   True and correct copies of emails and correspondence between Plaintiffs' and Defendants' counsel

B   True and correct copy of Defendants' Third Supplemental Pretrial Disclosure Statement

C   True and correct excerpts of the Deposition of Ashley Pelton, Ph.D., dated October 6, 2021

D   True and correct copy of Exhibit 3 to the Deposition of Ashley Pelton, Ph.D.

E   True and correct copy of Exhibit 4 to the Deposition of Ashley Pelton, Ph.D.

F   True and correct excerpts of the Deposition of Wendy Michelle Orm, M.D., dated October 13, 2021

G   True and correct excerpts of the Deposition of Grant C. Phillips, M.D., dated October 5, 2021

H   Expert Report of Grant C. Phillips, M.D. dated October 22, 2021 **(FILED UNDER SEAL)**

# EXHIBIT A

| | |
|---|---|
| **From:** | Freouf, Delana (Perkins Coie) <DFreouf@perkinscoie.com> |
| **Sent:** | Monday, September 27, 2021 12:10 PM |
| **To:** | StruckLoveParsonsTeam |
| **Cc:** | Parsons Trial Team (ParsonsTrial@aclu.org) |
| **Subject:** | Parsons v. Shinn |
| **Attachments:** | 2021.09.27 Letter to T. Bojanowski from D. Barr.pdf |

Counsel,

Please see attached correspondence from Dan Barr.

Thank you.

**Delana Freouf, Certified PLS** | **Perkins Coie LLP**
LEGAL SECRETARY TO:
**Jordan Green** | **Christopher Coleman**
**P. Derek Petersen** | **Stephen Brookman**
**Kristie Beaudoin** | **Barry Stratford**
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
D. +1.602.351.8394
F. +1.602.648.7000
E. DFreouf@perkinscoie.com



 **Please consider the environment before printing this email. Thank you.**

---

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# PERKINSCOIE

2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788

+1.602.351.8000
+1.602.648.7000
PerkinsCoie.com

September 27, 2021

Daniel C. Barr
DBarr@perkinscoie.com
D.  +1.602.351.8085
F.  +1.602.648.7085

**VIA EMAIL**

Timothy J. Bojanowski
Struck Love Bojanowski & Acedo, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

> Re:   *Parsons v. Shinn*
>        **Defendants' Expert Disclosure Obligations**

Counsel:

I write to address Defendants' expert disclosure obligations.

Pursuant to Judge Wake's 2014 Order, when expert witnesses gather and examine information in preparation for litigation or otherwise reach opinions for purposes of the litigation, they are properly Rule 26(a)(2)(B) witnesses and must provide written expert reports as laid out in Rule 26(a)(2)(B)(i)-(vi), even if they are employed by Defendants or their agents (Doc. 815 at 4). We have reviewed Defendants' Pretrial Disclosure Statement ("Disclosure"). Defendants have identified 15 witnesses they will call as expert witnesses under Rule 26(a)(2)(C) and 2 experts under Rule 26(a)(2)(B). Based on Defendants' disclosures to date, many, if not all, of the 15 purported Rule 26(a)(2)(C) expert witnesses appear likely to offer opinions that they developed for purposes of the litigation and thus must provide written reports.

For example, the Disclosure states that Drs. Pelton, Gray, Orm, and Phillips will testify regarding the care of Plaintiffs and other class members who testify, as well as other incarcerated persons identified by Plaintiffs' experts. Per the Disclosure, Drs. Gray, Orm, and Phillips are high-level employees who do not appear to be treating physicians, while Dr. Pelton appears to treat a limited number of patients. The Disclosure additionally states that Dr. Pelton will testify based on her "*review* and knowledge of inmate records." These doctors appear to be offering opinions beyond their personal treatment (if any) of class members. Additionally, it is unclear how Drs. Griffin, Bueno, May, Wilson, or Wu can properly testify as to medical care meeting "constitutional requirements" without learning this information in preparation for litigation or having regularly testified on these subjects. Either scenario would classify them as Rule 26(a)(2)(B) witnesses. Further, many of the listed Rule 26(a)(2)(C) witnesses will be testifying as to statistical and/or historical data. If this data was compiled and/or reviewed by these witnesses in preparation for litigation and is not a part of their normal duties, such witnesses should be reclassified as Rule 26(a)(2)(B) experts.

Timothy J. Bojanowski
September 27, 2021
Page 2

As you know, Judge Wake's 2014 order barred virtually all expert testimony by Defendants' purported Rule 26(a)(2)(C) experts (Doc. 815 at 4). We request that Defendants either withdraw their 15 Rule 26(a)(2)(C) experts or confirm that they will provide proper written expert reports pursuant to Rule 26(a)(2)(B) by the October 22, 2021 deadline.

In addition, Plaintiffs expect that Defendants will make any witnesses providing expert opinions available for a seven-hour deposition during the expert discovery period, regardless of whether Plaintiffs have already deposed the same witnesses in their capacity as ordinary fact witnesses or as Defendants' designee pursuant to one of Plaintiffs' Rule 30(b)(6) deposition notices. *See* Doc. 3940 at 3 ("Expert witness depositions may not exceed seven hours").

Please let us know your position by September 30.

Sincerely,

Daniel C. Barr

**From:** Elaine Percevecz <EPercevecz@strucklove.com>
**Sent:** Thursday, September 30, 2021 5:28 PM
**To:** Barr, Daniel (PHX); Parsons Trial; External - PLO AZ; Maya Abela; Freouf, Delana (PHX)
**Cc:** StruckLoveParsonsTeam
**Subject:** RE: Parsons v. Shinn - Defendants' Response to D. Barr 09-27-21 letter
**Attachments:** 20210930 - LF TJB to D. Barr irt 09-27-21 LT re DEFS expert disclosure obligations.pdf

Counsel,

Attached is a letter from Tim in response to Dan's of September 27.

Sincerely,

Elaine



Elaine Percevecz

Legal Assistant to Timothy J. Bojanowski & Kevin L. Nguyen

**STRUCK LOVE BOJANOWSKI & ACEDO, PLC**

3100 W. Ray Road | Suite 300 | Chandler AZ 85226

480.420.1619 | epercevecz@strucklove.com | STRUCKLOVE.com

---

**From:** Freouf, Delana (Perkins Coie) <DFreouf@perkinscoie.com>
**Sent:** Monday, September 27, 2021 12:10 PM
**To:** StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial Team (ParsonsTrial@aclu.org) <ParsonsTrial@aclu.org>
**Subject:** Parsons v. Shinn

Counsel,

Please see attached correspondence from Dan Barr.

Thank you.

**Delana Freouf, Certified PLS** | **Perkins Coie LLP**
LEGAL SECRETARY TO:
**Jordan Green** | **Christopher Coleman**
**P. Derek Petersen** | **Stephen Brookman**
**Kristie Beaudoin** | **Barry Stratford**
2901 North Central Avenue
Suite 2000
Phoenix, AZ 85012-2788
D. +1.602.351.8394
F. +1.602.648.7000
E. DFreouf@perkinscoie.com



 **Please consider the environment before printing this email. Thank you.**



NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.



STRUCK LOVE BOJANOWSKI & ACEDO, PLC

Timothy J. Bojanowski
480.420.1604
tbojanowski@strucklove.com

September 30, 2021

**_VIA EMAIL ONLY_**
Daniel C. Barr
Perkins Coie
2910 N. Central Ave., Ste. 2000
Phoenix, AZ  85012

    **Re:**    *Parsons v. Shinn*
          **Defendants' Expert Disclosure Obligations**

Dear Dan:

We are in receipt of your September 27, 2021 letter regarding Defendants' expert disclosures. We understand our obligations under Rule 26 and Judge Wake's prior orders in this case with respect to disclosure of expert opinions and fully intend to provide compliant disclosures for Defendants' retained and non-retained expert witnesses by the October 22, 2021 deadline for Defendants' expert disclosures.

Defendants will undertake all reasonable efforts to make their experts available for deposition regarding their expert opinions following disclosure of these opinions. Defendants acknowledge that the Court's scheduling order permits the parties *up to* seven hours for expert depositions. However, due to the truncated time period for completing expert depositions under the scheduling order, Defendants expect that Plaintiffs will be judicious and efficient in their questioning, recognizing that many of the experts' opinions are limited in scope and will not require a full seven hours of deposition time.

Regards,

Timothy J. Bojanowski

TJB/AMO/eap

cc:    Counsel of record

**From:**          Dan Struck <DStruck@strucklove.com>
**Sent:**          Monday, October 25, 2021 6:44 AM
**To:**            Corene Kendrick; StruckLoveParsonsTeam
**Cc:**            Parsons Trial; External - PLO AZ
**Subject:**       RE: Defendants' Planned Witness Testimony

Corene,

We are reserving the right to have Dr. Phillips and Dr. Mahn testify regarding facts related to individual inmates treatment.  Due to the short time frame between the submission of plaintiffs' expert reports and the deadline to provide defendants' reports, they simply were unable to review these records in time.  That, along with the fact we have not yet seen plaintiffs' expert declarations and obviously have not heard their testimony, requires us to have Dr. Phillips and Mahn available to provide some testimony as to facts related to treatment.  Moreover, we want to have witnesses available to answer any of Judge Silver's questions that she may have.

**From:** Corene Kendrick <ckendrick@aclu.org>
**Sent:** Sunday, October 24, 2021 6:25 PM
**To:** Dan Struck <DStruck@strucklove.com>; StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial <ParsonsTrial@aclu.org>; External - PLO AZ <PLO-AZ@prisonlaw.com>
**Subject:** RE: Defendants' Planned Witness Testimony

Hi Dan,

Given you recently emailed me and my colleague 50 minutes ago in connection with the *Fenty* matter, I do not take your silence to mean that you are unable to respond to the message below. Please provide us a response as to whether or not the persons listed below will testify about patients they have not treated by noon Monday; otherwise we will have to seek an order from Judge Silver barring their testimony on those matters.

Thank you,

Corene

Corene Kendrick
Deputy Director
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111
ckendrick@aclu.org

**From:** Corene Kendrick
**Sent:** Sunday, October 24, 2021 12:35 PM
**To:** Dan Struck <DStruck@strucklove.com>; StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial <ParsonsTrial@aclu.org>; External - PLO AZ <PLO-AZ@prisonlaw.com>
**Subject:** RE: Defendants' Planned Witness Testimony

Hi Dan,

That doesn't completely answer my question. To be clear, are you saying that none of the persons listed will testify

1

about patients that they have not treated, or about treatment rendered by other clinicians? Or that only Dr. Phillips and Dr. Mahn will testify about patients who they have not treated, or about treatment rendered by other clinicians?

Thanks,
Corene

Corene Kendrick
Deputy Director
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111
ckendrick@aclu.org

---

**From:** Dan Struck <DStruck@strucklove.com>
**Sent:** Sunday, October 24, 2021 12:31 PM
**To:** Corene Kendrick <ckendrick@aclu.org>; StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial <ParsonsTrial@aclu.org>; External - PLO AZ <PLO-AZ@prisonlaw.com>
**Subject:** RE: Defendants' Planned Witness Testimony

Corene,

Of those on your list, only Mahn and Phillips will be providing expert testimony and they will be testifying as set forth in their disclosures/reports.

Please let me know if you have any questions.

Dan

---

**From:** Corene Kendrick <ckendrick@aclu.org>
**Sent:** Saturday, October 23, 2021 2:02 PM
**To:** StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial <ParsonsTrial@aclu.org>; External - PLO AZ <PLO-AZ@prisonlaw.com>
**Subject:** Defendants' Planned Witness Testimony

Counsel,

We write to seek clarification on the scope of Defendants' planned witness testimony. It is unclear from Defendants' latest disclosure statement whether any witnesses who have not provided Rule 26(a)(2)(B) expert reports or Rule 26(a)(2)(C) expert disclosures will testify regarding health care provided to patients they did not personally treat or about health care provided by other clinicians, or whether they will otherwise offer expert testimony. In particular, the latest disclosure statement suggests that at least the following witnesses may testify regarding the treatment of patients whom the witnesses did not personally treat in the ordinary course of their work, and/or testify about the treatment provided to patients by other clinicians:

- Orm
- Pelton
- Carr
- Mahn
- Stewart
- Jordan
- Salazar
- Ibrahim

See also Pelton Dep. at 50:8-13 (Dr. Pelton plans to testify about the treatment of patients whom she has not personally treated); Phillips Dep. at 231:4-10; 233:17-234:1 (Dr. Phillips does not provide direct patient care but reviewed named plaintiff medical charts).

Relatedly, the disclosure statement says that at least the following witnesses will offer expert opinion or will rebut Plaintiffs' expert opinions:
- Orm
- Carr
- Pelton

Please confirm no later than **12 noon on Sunday, October 24** that none of these witnesses will testify about the treatment of patients the witness did not personally treat, or about treatment rendered by other clinicians.  Please also state whether they will otherwise offer expert opinion of any kind.

Thanks,
Corene

Corene Kendrick
Deputy Director
ACLU National Prison Project
39 Drumm St.
San Francisco, CA 94111
ckendrick@aclu.org

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

# EXHIBIT B

1  Daniel P. Struck, Bar No. 012377
   Rachel Love, Bar No. 019881
2  Timothy J. Bojanowski, Bar No. 022126
   Nicholas D. Acedo, Bar No. 021644
3  STRUCK LOVE BOJANOWSKI & ACEDO, PLC
   3100 West Ray Road, Suite 300
4  Chandler, Arizona  85226
   Telephone:  (480) 420-1600
5  Fax:  (480) 420-1695
   dstruck@strucklove.com
6  rlove@strucklove.com
   tbojanowski@strucklove.com
7  nacedo@strucklove.com

8  *Attorneys for Defendants*

9
                  **UNITED STATES DISTRICT COURT**
10
                      **DISTRICT OF ARIZONA**
11

12  Victor Parsons, *et al.*, on behalf of themselves     NO. 2:12-cv-00601-ROS
    and all others similarly situated; and Arizona
13  Center for Disability Law,
                                                         **DEFENDANTS' THIRD**
14                                     Plaintiffs,        **SUPPLEMENTAL PRETRIAL**
                                                         **DISCLOSURE STATEMENT**
                          v.
15
    David Shinn, Director, Arizona Department of
16  Corrections; and Richard Pratt, Interim
    Division Director, Division of Health Services,
17  Arizona Department of Corrections, in their
    official capacities,
18
                                     Defendants.

19        Defendants, through counsel and pursuant to Federal Rule of Civil Procedure

20  26(a)(1) and the Court's Orders (Doc. 3931, 3940), submit their **Third** Supplemental

21  Pretrial Disclosure Statement. This is a cumulative disclosure. Supplemental information

22  appears in bold typeface. Any information which is withdrawn is deleted. Defendants will

23  supplement and/or amend these disclosures as trial preparation progresses.

24

25

26

27

28

## I.   NAMES, ADDRESSES AND TELEPHONE NUMBERS OF EACH INDIVIDUAL LIKELY TO HAVE DISCOVERABLE INFORMATION

### A.   INDIVIDUALS WHO WILL BE CALLED TO TESTIFY

1.   D. Shinn, Director, ADCRR, Defendant
c/o Struck Love Bojanowski & Acedo, PLC[1]
3100 W. Ray Rd., Suite 300
Chandler, AZ 85226
(480) 420-1600
        and
Office of the Attorney General, State of Arizona
1275 W. Washington St.
Phoenix, AZ 85007
(602) 542-1610

Director Shinn has served as the Director of the ADCRR since October 21, 2019, and has more than three decades of experience in the fields of corrections and law enforcement, including most recently as the Assistant Director for the Program Review Division in Washington, D.C., with the Federal Bureau of Prisons. Director Shinn served as a United States Marine and served more than 28 years with the Federal Bureau of Prisons, starting as a uniformed correctional officer.

Director Shinn is expected to testify regarding his training and experience in corrections which ranges from facility operations duty assignments to participating as a member of the FBOP's Executive Leadership, serving as the internal audit authority responsive for development of comprehensive audit guidelines and leadership of a division of professional auditors in the continuous assessment and evaluation of the agency's operations comprised of 17 specialized disciplines.

Director Shinn is expected to testify regarding ADCRR's strategic planning for, and delivery of dental, mental health, and health care to approximately 30,000 inmates housed in ADCRR's state-operated prison complexes. Director Shinn is expected to testify

---

[1] All parties listed as care of Struck Love Bojanowski & Acedo are also in care of the Arizona Attorney General's Office. Contact information for all ADCRR employees is the same as listed for Director Shinn.

regarding ADCRR's on-going partnership with Centurion, including ADCRR and Centurion's efforts and successes in leading the agency to near full compliance with overall Stipulation compliance, which includes addressing the important interplay between security operations and the provision of health care to identify challenges that may require redirection, improvement, or change in order to provide health care services that meet and exceed constitutional minimums, corrections industry standards, and community standards. Director Shinn is further expected to testify regarding ADCRR's contractual relationship with Centurion.

Moreover, Director Shinn is expected to testify regarding appointment of operations and Monitoring Bureau leadership and its corresponding effect on the delivery of health care and a progressive approach to management of maximum security and high risk/need inmate populations. Director Shinn is also expected to testify regarding his role in the continuation and development of pro-social opportunities afforded to maximum custody inmates, including implementation of a mental health-focused maximum custody unit at ASPC-Tucson-Rincon Unit that will be activated during the fall of 2021. Furthermore, Director Shinn may testify regarding ADCRR's technology advancements that are increasing operational efficiency in the provision of health care to the inmate population. Director Shinn may also testify regarding ADCRR's robust and continuing COVID-19 mitigation operations as well as technology advances simultaneously made to promote inmate socialization and pro-social behavior during the pandemic. Director Shinn is also expected to testify regarding ADCRR's efforts at correctional personnel recruitment and retention against the backdrop of staffing challenges faced by law enforcement, corrections, and detention agencies across the United States.

Director Shinn will testify regarding his deposition if taken in this matter, Declarations submitted in the underlying litigation, and any Declarations he may prepare for trial.

3

2.   L. Gann, Jr., R.N., CCHP, Assistant Director, ADCRR Medical Services
     Contract Monitoring Bureau, Defendant
     c/o Struck Love Bojanowski & Acedo, PLC

Larry Gann is Assistant Director of the Medical Services Contract Monitoring Bureau at ADCRR. Mr. Gann has had an extensive career in corrections healthcare, including his most recent role as Director of Nursing for Maricopa County Correctional Health Services. Mr. Gann's qualifications are set forth in his July 10, 2020 Declaration submitted in this matter. Mr. Gann will testify regarding ADCRR policies, practices, and procedures related to inmate medical, mental health, and dental care. Mr. Gann will testify concerning the operation of the Medical Services Contract Monitoring Bureau, the process for monitoring compliance with the contract, including the Performance Measures from the Stipulation that were incorporated into the contract, training and supervision of the monitors, the content of the CGARs and other reports provided by Centurion, the Monitoring Guide created and maintained by the Bureau, contract sanctions and offsets, and the adequacy of monitoring by the Bureau. Mr. Gann is also expected to testify regarding staffing as set forth in the current contract, a new $15M ADCRR initiative to increase healthcare staffing through sign-on bonuses, shift bonuses, shift differentials, , and partnerships ADCRR is cultivating with local colleges and nursing schools to recruit interns and recent graduates. He will also testify regarding compliance with contract requirements by Centurion, review and investigation of medical grievances and appeals, and statistics, reports, and historical data relating to medical, mental health, and dental care. Mr. Gann will testify regarding improvements made to the monitoring of the contract, including recent structural changes within the monitoring bureau, hiring of 10 medical liaisons with experience in correctional health to work with Centurion staff at the facilities to identify and break down barriers to contract compliance, development of a new real-time corrective action plan system, and the development of additional qualitative measures to evaluate and improve the quality of care to ADCRR inmates. Mr. Gann is expected to testify regarding improvements to compliance with the Healthcare Performance Measures and overall

compliance rates. Additionally, Mr. Gann will testify regarding ADCRR facilities' compliance with NCCHC and American Correctional Association standards. He will testify regarding his deposition**s** taken in this matter, his July 10, 2020 **and March 26, 2021** Declaration**s**, and any Declarations he may prepare for trial.

3.   F. Strada, Deputy Director, ADCRR
      c/o Struck Love Bojanowski & Acedo, PLC

Deputy Director Strada is likely to testify regarding ADCRR policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what factors result in a maximum custody classification as well as what pro-social behavioral factors may earn a reduction in classification, the ongoing classification and Step Level review process employed by ADCRR, and validation of those processes by corrections experts. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ADCRR maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Deputy Director Strada is also likely to testify regarding the statistics, reports, and historical data regarding the success of DO 812 and the resulting reduction in ADCRR's maximum custody population. Deputy Director Strada, based upon his extensive training and experience in corrections, will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities that meet and exceed corrections industry standards, against the backdrop of both staffing challenges and COVID-19 mitigation efforts faced by corrections and detention departments across the United States. Additionally, Deputy Director Strada will testify regarding the training that correctional staff receive to successfully carry out their job duties when assigned to maximum custody units and/or maximum custody units where SMI inmates may be clustered. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Deputy Director Strada will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Deputy Director Strada will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. He is also expected to generally testify regarding monitoring and compliance for offered out-of-cell time and programming as governed by the Stipulation that previously applied to this

lawsuit as well as the corresponding mandates of DO 812.  Deputy Director Strada will also testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C). (***See* separate Fed.R.Civ.P. 26(a)(2)(C) Disclosure for Testimony of ADCRR Deputy Director Frank Stradra).**

4.       G. Phillips, M.D., Medical Director, ADCRR
c/o Struck Love Bojanowski & Acedo, PLC

Dr. Phillips is the Medical Director for the ADCRR. Prior to joining ADCRR, Dr. Phillips was a treating physician for Maricopa County Correctional Health Services, Abrazo Health, and the United States Air Force. Dr. Phillips will testify regarding ADCRR policies, practices, and procedures related to inmate medical care, review and investigation of medical grievances, inmate death investigations and mortality reviews, the electronic health records system in use at ADCRR facilities, telemedicine, language line services, and continuous improvements in the delivery of health care to the ADCRR inmate population. Dr. Phillips will also testify regarding his review of the medical records of the named Plaintiffs and his opinions regarding the treatment rendered to them. In addition to testifying regarding the medical treatment of the named Plaintiffs, Dr. Phillips will also testify regarding the health care provided to the individual inmates specifically referred to by Plaintiffs' experts and whether the care rendered was adequate, appropriate, and in accordance with the standard of care up until the time of trial. Dr. Philipps is also expected to testify that the care provided to ADCRR inmates meets or exceeds community standards of care and is in compliance with constitutional standards. Dr. Phillips will also testify pursuant to Federal Rule**s** of Civil Procedure **26(a)(2)(B) and** 26(a)(2)(C). Dr. Phillips is expected to testify regarding **the information and opinions in his expert report,** his deposition**s** taken in this matter and any Declarations he prepares for trial.

5.       B. Pennington-Stallcup, Ph.D., Mental Health Program Director, Medical Services Contract Monitoring Bureau, ADCRR
c/o Struck Love Bojanowski & Acedo, PLC

Dr. Stallcup is the Mental Health Program Director for the Medical Services Contract Monitoring Bureau at ADCRR. Dr. Stallcup was previously the Mental Health

Director for Maricopa County Correctional Health Services and has also been a treating clinician in both the Arizona and California prison systems. Dr. Stallcup will testify regarding ADCRR policies, practices, and procedures related to inmate mental health care and programming including the various ways in which mental health encounters are conducted, review and investigation of inmate grievances pertaining to mental health care and programming (including via telepsychiatry or telepsychology), inmate mental health classification (including admission to in-patient units), the process for evaluation and designation of inmates as SMI, the processes and procedures regarding mental health watch, administration of psychiatric medications, inmate death investigations and mortality reviews, Centurion's compliance with the contract with respect to delivery of mental health care and programming, and continuous improvements in the delivery of mental health care to the ADCRR inmate population.  Dr. Stallcup will further testify regarding mental health staffing and how staffing rates have increased.  She will also testify regarding suicide-prevention policies, procedures, and practices including suicides rates at ADCRR.  Dr. Stallcup will testify regarding her deposition taken in this matter and any Declarations she prepares for trial.

6.    T. Dolan, Vice President of Operations, Arizona
c/o Centurion[2]
Broening, Oberg, Woods & Wilson, PC
Sarah L. Barnes
2800 N. Central Ave., Suite 1600
Phoenix, AZ 85004
(602) 271-7793

Mr. Dolan is the Vice President for Arizona for Centurion. He previously was Vice President of Operations for Correctional Medical Group Companies in San Diego, California and held multiple regional leadership positions with Corizon Health in Idaho, Wyoming, and Alabama. He will testify regarding Centurion's policies and procedures for the provision of medical, mental health, and dental health care to ADCRR's inmate

---

[2] All individuals noted as in care of Centurion may be contacted through Centurion's Arizona counsel using the contact information listed for Mr. Dolan.

population. He will testify regarding Centurion's obligations under the Contract with ADCRR and the content and review of monthly and quarterly reports and statistics provided to ADCRR pursuant to the contract. Mr. Dolan will testify regarding the ongoing partnership between ADCRR and Centurion and continuous efforts to improve both inmate access to care and the quality of care provided. He will testify regarding the implementation of the Arizona Telehealth Program and Telehealth Registered Nurse Program, improvements made to ensure timely access to specialty care and follow-up of discharge/treatment recommendations, use of the CareClix virtual healthcare platform provide specialty telehealth services, a pilot program for the use of real-time documentation technology, and other improvements. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, increases and other changes Centurion has made to staffing during the contract, use of premium pay and agency staffing, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, training, retention, compensation, and incentive policies and practices.  He is also expected to testify regarding improvements made to compliance levels under the Stipulation since Centurion took over the contract. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population. Mr. Dolan is expected to testify regarding his deposition taken in this matter, his July 10, 2020 **and March 26, 2021** Declaration**s**, and any Declarations he may prepare for trial.

       7.     W. Orm, M.D., Regional Medical Director
              c/o Centurion

        Dr. Orm is the Regional Medical Director for Centurion in Arizona. Dr. Orm will testify based on her education, training, qualifications, and experience, as well as her ongoing tours of the ADCRR medical facilities and review and knowledge of inmate healthcare records, reports, and data during the course of her employment. Dr. Orm will testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to ADCRR inmates. Dr.

9

1   Orm is also expected to testify regarding quality assurance reviews and activities, review

2   and investigation of inmate grievances pertaining to medical care and medications, contract

3   monitoring and compliance, supervision and peer reviews of medical providers, and

4   statistical data relating to the provision of medical care to ADCRR inmates. She is expected

5   to testify regarding Centurion's staffing, recruiting, hiring, training, and retention policies

6   and practices for medical staff. Dr. Orm will also testify regarding continuous

7   improvements in the delivery of medical care to the ADCRR inmate population, including

8   a leading-edge program she has implemented statewide for treating/curing Hepatitis C

9   patients with advanced liver disease. Dr. Orm will also testify regarding ADCRR's response

10  to COVID-19 and her involvement in securing multi-agency assistance with the

11  administration of inmate and staff vaccinations. Dr. Orm will testify regarding the

12  individualized medical care and medications of the named Plaintiffs, along with any other

13  inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports,

14  Declarations prepared for trial, and/or live testimony. Dr. Orm is expected to testify

15  regarding her deposition taken in this matter and any Declarations she may prepare for trial.

16          8.      A. L. Carr, M.D., Regional Psychiatric Director
                    c/o Centurion
17

18          Dr. Carr is the Regional Psychiatric Director for Centurion in Arizona and

19  oversees the psychiatrists and mid-level psychiatric providers statewide. Dr. Carr will

20  testify based on his education, training, qualifications, and experience, as well as his

21  ongoing tours of the ADCRR medical and mental health facilities and review and

22  knowledge of inmate healthcare records, reports, and data during the course of his

23  employment. Dr. Carr will testify regarding his knowledge of ADCRR and Centurion

24  policies, procedures, and practices regarding the provision of psychiatric care to ADCRR

25  inmates. He will testify regarding the psychiatric services provided to the inmate

26  population, including outpatient, inpatient, and telepsychiatry care, and the administration

27  and monitoring of psychotropic medications. He is expected to testify regarding Centurion's

28  staffing, recruiting, hiring, training, and retention policies and practices for psychiatric staff.

Dr. Carr is also expected to testify regarding quality assurance reviews and activities, inmate death investigations and mortality reviews, review and investigation of inmate grievances pertaining to psychiatric treatment and medications, contract monitoring and compliance, supervision and peer reviews of psychiatric staff, review and approval of formulary and non-formulary medication requests, PRMB committee activities, procedures for suicide and mental health watches, CQI reviews and actions, and statistical data relating to the provision of psychiatric care and psychotropic medications to ADCRR inmates. Dr. Carr will also testify regarding continuous improvements in the delivery of psychiatric care and medications to the ADCRR inmate population. Dr. Carr will testify regarding the individualized psychiatric care and medication management of the named Plaintiffs, along with any other inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports, Declarations prepared for trial, and/or live testimony. Dr. Carr is expected to testify regarding his deposition taken in this matter and any Declarations he may prepare for trial.

9.   A. Pelton, Ph.D., Regional Mental Health Director
c/o Centurion

Dr. Pelton is the Regional Mental Health Director for Centurion in Arizona and oversees all of the psychologists and psychology associates statewide. Prior to her current role, Dr. Pelton was the Clinical Director at ASPC-Phoenix and continues to treat patients at Phoenix. Dr. Pelton will testify based on her education, training, qualifications, and experience, as well as her ongoing tours of ADCRR facilities and review and knowledge of inmate records, reports, and data during the course of her employment. Dr. Pelton will testify regarding ADCRR and Centurion policies, procedures, and practices relating to the delivery of mental health care to ADCRR's inmate population. Dr. Pelton is also expected to testify regarding quality assurance reviews and activities, inmate death investigations and mortality reviews, review and investigation of inmate grievances pertaining to mental health care and programming, contract monitoring and compliance, supervision and peer reviews of mental health staff, procedures for suicide and mental health watches, CQI reviews and

actions, and statistical data relating to the provision of mental health care to ADCRR inmates. She is expected to testify regarding Centurion's staffing, recruiting, hiring, training, and retention policies and practices for mental health staff. She is also expected to testify regarding the mental health programming offered to ADCRR inmates statewide, as well as the specialized mental health care provided at ASPC-Phoenix. She will testify regarding policies and procedures pertaining to evaluation and transfer of inmates at non-corridor facilities who need mental health care. Dr. Pelton will also testify regarding continuous improvements in the delivery of mental health care and programming to the ADCRR inmate population. Dr. Pelton will testify regarding the individualized mental health care of the named Plaintiffs, along with any other inmates who testify at trial or who are referred to by Plaintiffs' experts in their reports, Declarations prepared for trial, and/or live testimony. Dr. Pelton is expected to testify regarding her deposition taken in this matter and any Declarations she may prepare for trial.

10.     K. Gray, D.D.S, Regional Dental Director
        c/o Centurion

Dr. Gray is the Regional Dental Director for Centurion in Arizona. Dr. Gray has been a correctional dentist since 2012 and also maintains a private dental practice. Dr. Gray will testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of dental care and dental devices to ADCRR's inmate population, including the scope of diagnostic and treatment services provided, the dental intake process, triage of dental HNRs, wait times for routine, urgent, and emergent dental care, the review and resolution of inmate grievances related to dental care, training provided to dental providers and dental assistants, electronic health records pertaining to dental care, and the overall delivery of dental care to ADCRR inmates. Dr. Gray will also testify regarding continuous improvements in the delivery of dental care to the ADCRR inmate population. Dr. Gray will also testify regarding his review of the dental records of the named Plaintiffs, and any other inmates referenced by Plaintiffs' experts in their expert reports and/or any Declarations prepared for trial, and his opinions regarding the adequacy of their dental

treatment. Dr. Gray is expected to testify regarding the adequacy of dental care provided to ADCRR inmates, including compliance with community standards of care and constitutional requirements. Dr. Gray will also testify pursuant to Federal Rule**s** of Civil Procedure **26(a)(2)(B) and** 26(a)(2)(C). Dr. Gray is expected to testify regarding **the information and opinions in his expert report and** his deposition if taken in this matter and any Declarations he may prepare for trial.

11.     O. Murray, D.O., MBA
c/o Struck Love Bojanowski & Acedo

Dr. Murray has been retained as an expert witness by Defendants Shinn and Gann. Dr. Murray is the Executive Director of Clinical Services and Chief Physician Executive for The University of Texas Medical Branch Correctional Managed Care program (UTMB-CMC). Dr. Murray previously worked in the Cook County Jail and the Illinois Department of Corrections. He completed a Family Practice residency at Michigan State University.

Dr. Murray will testify regarding the information and opinions set forth in his expert report and any rebuttal reports prepared for trial in this matter, which will be timely disclosed in accordance with the Court's Scheduling Order (Doc. 3931), along with the other items required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii)-(vi). Dr. Murray will also testify regarding any written Declarations submitted for trial in accordance with the Court's September 2, 2021 Order (Doc. 3952)**, and his deposition if taken in this matter.**

12.     J. Penn, M.D., CCHP, F.A.P.A.
c/o Struck Love Bojanowski & Acedo

Dr. Penn has been retained as an expert witness by Defendants Shinn and Gann. He is certified by the American Board of Psychiatry and Neurology in psychiatry and holds a subspecialty certification in forensic psychiatry. Dr. Penn is a Certified Correctional Health Care Professional (CCHP), a Clinical Associate Professor of Psychiatry in the Department of Psychiatry and Behavioral Services at the University of Texas Medical

13

Branch, Medical School, and is the Director of Mental Health Services, University of Texas Medical Branch Correctional Managed Care. Dr. Penn additionally serves as the Chair of the Board of Representatives of the National Commission on Correctional Health Care (NCCHC).

Dr. Penn will testify regarding the information and opinions set forth in his expert report and any rebuttal reports prepared for trial in this matter, which will be timely disclosed in accordance with the Court's Scheduling Order (Doc. 3931), along with the other items required by Federal Rule of Civil Procedure 26(a)(2)(B)(ii)-(vi). Dr. Penn will also testify regarding any written Declarations submitted for trial in accordance with the Court's September 2, 2021 Order (Doc. 3952) and with prior expert reports and Declarations he has prepared, **and his deposition if taken,** in this matter.

## B.      <u>INDIVIDUALS WHO MAY BE CALLED TO TESTIFY</u>

1.      J. Kimble, Warden, ASPC-Eyman
c/o Struck Love Bojanowski & Acedo, PLC

Warden Kimble is currently Warden of ASPC-Eyman. Previously, he was Warden of ASPC-Lewis. Warden Kimble is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious,

and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Warden Kimble will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Warden Kimble will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Warden Kimble will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at ASPC-Eyman or Lewis, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. Warden Kimble is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure

as Warden of ASPC-Eyman and previously, ASPC-Lewis, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

### 2.   J. Van Winkle, Warden, ASPC-Florence
c/o Struck Love Bojanowski & Acedo, PLC

Warden Van Winkle is currently Warden of ASPC-Florence. Warden Van Winkle is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

Warden Van Winkle will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the

backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. Warden Van Winkle will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

Warden Van Winkle will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at ASPC-Florence, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. Warden Van Winkle is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure as Warden (and prior Deputy Warden of Operations) of ASPC-Florence, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

3. A. Coleman, Deputy Warden, ASPC-Lewis, Rast Max
c/o Struck Love Bojanowski & Acedo, PLC

Deputy Warden Coleman is currently Deputy Warden of ASPC-Lewis – Rast Unit. DW Coleman is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). He is likely to testify regarding what pro-social behavioral factors

may earn a reduction in classification or Step Level, and the ongoing classification and Step Level review process employed by ADCRR. He is likely to testify regarding management of mental health inmates in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming. He is likely to testify regarding housing, security, and operation of ASPC-Eyman and Lewis maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

DW Coleman will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. He will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. DW Coleman will likely testify regarding security protocols that govern maximum security housing locations to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency

situations that require immediate response to include circumstances of inmate self-harm.

DW Coleman will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are/were housed at the Rast Max Unit, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. DW Coleman is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming during his tenure as DW of ASPC-Lewis-Rast Max, as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812.

4. K. Schwestak, Associate Deputy Warden, ASPC-Tucson, Rincon Max
c/o Struck Love Bojanowski & Acedo, PLC

Associate Deputy Warden Schwestak is currently ADW of ASPC-Tucson-Rincon Unit. ADW Schwestak is expected to testify policies and procedures that govern conditions of confinement for maximum custody inmates previously housed at ASPC-Florence-Kasson Unit, that by the time of trial, will be housed at the Rincon Unit to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3). She is likely to testify regarding management of mental health inmates in maximum custody or detention units at the Rincon Unit, which each require special considerations in how ADCRR addresses their housing, movement, and programming. She is likely to testify regarding housing, security, and operation of ASPC-Tucson-Rincon maximum custody unit; a physical description of the maximum custody housing location, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same; and all matters raised in the Court's certification of subclass as it relates to conditions of confinement and use of chemical agent use of force on maximum custody inmates and

subclass members designated as SMI (seriously mentally ill). These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, social programming, educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property.

ADW Schwestak will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample out-of-cell time, socialization opportunities, and programming opportunities, against the backdrop of both staffing challenges and COVID-19 mitigation efforts. She will likely testify regarding the frequency with which inmates have contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff. ADW Schwestak will likely testify regarding security protocols that govern Rincon Unit maximum inmates to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units which are a direct result of and necessitated by past incidents of extreme violent acts committed by such inmates. As to use of chemical agent use of force on subclass members, she will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm.

ADW Schwestak will also likely testify regarding the conditions of confinement allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs that are housed at the Rincon Unit, to include conditions of confinement for the specified inmates as well as their institutional history to include criminal, disciplinary, classification, behavioral, STG, programming, and grievance histories. She is also expected to testify regarding monitoring and compliance for offered out-of-cell time and programming afforded to maximum custody inmates to be housed at the Rincon Unit, and modification/additions made to the Rincon Unit to house maximum custody inmates.

5.      J. Wu, M.D., FACP, FACCP, CCHP-P, EVP and Chief Clinical Officer,
        Centurion
        c/o Centurion

Dr. Wu is the Chief Clinical Officer at Centurion and has extensive experience in the field of correctional medicine, including as a practicing correctional physician. Dr. Wu serves on the Board of Directors for the American College of Correctional Physicians and previously served on the Board of Directors for the NCCHC. Dr. Wu is expected to testify regarding Centurion's policies and procedures for the provision of health care to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population at ADCRR. Dr. Wu is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Wu is expected to testify regarding his opinion that the care delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements. Dr. Wu will also testify pursuant to Federal Rule**s** of Civil Procedure **26(a)(2)(B) and** 26(a)(2)(C). Dr. Wu is expected to testify regarding **the information and opinions in his expert report and** his deposition if taken in this matter and any Declarations he may prepare for trial.

6.      J. S. Wilson, Ph.D., CCHP-MH, CCHP, Vice President, Behavioral Health
        Services, MHM/Centurion
        c/o Centurion

Dr. Wilson is the Vice President for Behavioral Health Services at MHM/Centurion. Dr. Wilson is expected to testify regarding Centurion's policies and procedures for the provision of mental health care to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract,

changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices for mental health staff. Dr. Wilson is also expected to testify regarding contract monitoring and compliance activities, supervision and peer reviews of mental health staff, and statistical data relating to the provision of mental health care to ADCRR inmates. Dr. Wilson will also testify regarding continuous improvements in the delivery of mental health care and programming to the ADCRR inmate population. Dr. Wilson is expected to testify regarding his opinion that the mental health care and programming delivered to ADCRR inmates meets or exceeds community standards of care and constitutional requirements.  Dr. Wilson will also testify pursuant to Federal Rule**s** of Civil Procedure **26(a)(2)(B) and** 26(a)(2)(C). Dr. Wilson is expected to testify regarding **the information and knowledge in his expert report and** his deposition if taken in this matter and any Declarations he may prepare for trial.

7.     J. May, M.D., FACP, Chief Medical Officer, Centurion
       c/o Centurion

Dr. May is the Chief Medical Officer for Centurion. He has been practicing correctional medicine for more than 25 years. Dr. May is board certified in Internal Medicine and credentialed by the American Academy of HIV Medicine. He has provided care in multiple jail and prison settings, public and private, is licensed in more than twenty states, and held various administrative roles including Senior Staff Physician, Regional Medical Director, and Chief Medical Officer. He is also president and co-founder of Health through Walls, a nongovernmental agency providing support to prison health programs in low-income countries. He is a Board Member of the International Corrections and Prison Association, North America and head of the Health Care Network Group (www.icpa.ca). He is Chair of the International Relations Committee of the American Correctional Association. Dr. May is expected to testify regarding Centurion's policies and procedures for the provision of medical care to inmates. He is expected to testify regarding how

Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of health care to the inmate population at ADCRR. Dr. May is expected to testify regarding continuous improvements made to the delivery of medical care to ADCRR inmates. Dr. May is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

8.     D. Griffin, M.D., Chief Psychiatric Officer, MHM/Centurion
       c/o Centurion

Dr. Griffin is the Chief Psychiatric Officer for MHM/Centurion. Dr. Griffin is board certified in General Psychiatry and Child and Adolescent Psychiatry. Dr. Griffin is expected to testify regarding Centurion's policies and procedures for the provision of psychiatric care and psychotropic medications to inmates. He is expected to testify regarding how Centurion determined the staffing levels needed for the ADCRR contract, changes Centurion has made to staffing during the contract, and a comparison of Centurion's staffing levels in Arizona versus staffing levels in other states. He is further expected to testify regarding Centurion's recruiting, hiring, credentialling, training, retention, and compensation policies and practices. He is expected to testify concerning Centurion's compliance with NCCHC standards regarding staffing and provision of psychiatric care to the inmate population at ADCRR. Dr. Griffin is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medication management for ADCRR inmates. Dr. Griffin is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

9.    J. Bueno, Pharm.D., Regional Director of Pharmacy
      c/o Centurion

Dr. Bueno is the Regional Director of Pharmacy for Centurion in Arizona. Dr. Bueno is expected to testify regarding Centurion policies, procedures, and practices relating to the prescription, delivery, and monitoring of medications for ADCRR inmates. Dr. Bueno will also testify regarding formulary and non-formulary medications, including the process for review and approval of non-formulary medications. Dr. Bueno is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medication management for ADCRR inmates. Dr. Bueno is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

10.   J. Corliss, Director of Operations, Centurion of Arizona Regional Office
      c/o Centurion

Jamie Corliss is the Regional Director of Operations for Centurion in Arizona. Ms. Corliss is expected to testify regarding Centurion's policies and procedures for the provision of medical, mental health, and dental health care to ADCRR's inmate population. She will testify regarding Centurion's obligations under the Contract with ADCRR and the content and review of monthly and quarterly reports and statistics provided to ADCRR pursuant to the contract. She is expected to testify regarding Centurion's recruiting, hiring, training, retention, compensation, and incentive policies and practices. She will testify regarding the ongoing partnership between ADCRR and Centurion and continuous efforts to improve both inmate access to care and the quality of care provided. Ms. Corliss is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

11.   J. Todd, Regional Director of Nursing
      c/o Centurion

Jessica Todd is the Regional Director of Nursing for Centurion in Arizona. Ms. Todd is expected to testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to

ADCRR inmates. Ms. Todd is also expected to testify regarding her oversight of the nursing staff at ADCRR facilities, quality assurance reviews and activities, review and investigation of inmate grievances, contract monitoring and compliance activities, and statistical data relating to the provision of medical care to ADCRR inmates. She is expected to testify regarding Centurion's staffing, recruiting, hiring, credentialing, training, and retention policies and practices for nursing staff. Ms. Todd will also testify regarding continuous improvements in the delivery of nursing care to the ADCRR inmate population. Ms. Todd is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

>    12.    M. Young, M.D., Regional Associate Medical Director
>           c/o Centurion

Dr. Young is the Regional Associate Medical Director for Centurion in Arizona. Dr. Young is expected to testify regarding his knowledge of ADCRR and Centurion policies, procedures, and practices regarding the provision of medical care and medications to ADCRR inmates. Dr. Young is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

>    13.    K. DeBartolo, R.N., Lead Utilization Manager
>           c/o Centurion

Karen DeBartolo is the Lead Utilization Manager for Centurion in Arizona. Ms. DeBartolo is expected to testify regarding ADCRR and Centurion policies and procedures relating to review and approval of outside consults and specialty services and provision of alternative treatment plans. She is also expected to testify regarding timelines for the approval of consults and other specialty care requests, the process and criteria for making decisions regarding such requests, and communications regarding the decisions to a provider. She is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

14.    J. Gahris, Regional Director of Compliance, Centurion
       c/o Centurion

Jennine Gahris is the Regional Director of Compliance for Centurion in Arizona. Ms. Gahris previously worked as a clinical coordinator and in various compliance roles for the prior two vendors who provided health care to ADCRR inmates. Ms. Gahris will testify that she manages a team of Healthcare Delivery Facilitators who review underperforming Performance Measures ("PMs") at their assigned facility, run reports and trackers to assist in achieving compliance with those PMs, and follow up with medical staff to ensure inmates are receiving the care or information required by the PMs. She will testify that she also manages Business Data Analysts who provide the source documents which are utilized to monitor compliance with the PMs and run various reports to track items such as productivity and compliance obligations. Ms. Gahris is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Gahris will testify regarding her July 8, 2020 **and March 26, 2021** Declaration**s** submitted in this matter regarding efforts made to ensure compliance with the Stipulation performance measures. She will also testify regarding her knowledge of Centurion's contractual obligations and efforts made to ensure compliance. Ms. Gahris will testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

15.    J. Mahn, D.O., Site Medical Director, ASPC-Florence
       c/o Centurion

Dr. Mahn is the Site Medical Director for ASPC-Florence and is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Florence, inmate access to care, and the overall delivery of healthcare to the inmates at Florence, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Mahn is also expected to testify regarding treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs'

experts, and the adequacy of the care he provided. **Dr. Mahn is expected to testify regarding his review of the treatment provided to Inmate Jason Robinson (284001) and his opinion that the treatment met or exceeded the standard of care. He is expected to testify that Robinson's healthcare care records reveal that he did not have objective symptoms of a urinary tract infection and that the presence of bacteria in Robinson's urine sample is not indicative of an infection nor determinate of treatment. He is expected to testify that, under the totality of his presentation and the application of evidence-based medicine, it is unreasonable to conclude that Robinson had an ongoing urinary tract infection. He is expected to testify that the antibiotics that were given to Robinson were not necessary under the circumstances, but likely provided by the offsite provider out of an abundance of caution based on the available information, and that no further antibiotics were necessary. Dr. Mahn will testify pursuant to Federal Rule of Civil Procedure 26(a)(2)(C).** Dr. Mahn is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Mahn is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

16.     R. Stewart, M.D., Site Medical Director, ASPC-Eyman
        c/o Centurion

Dr. Stewart is the Site Medical Director at ASPC-Eyman. Dr. Stewart is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Eyman, inmate access to care, and the overall delivery of healthcare to the inmates at Eyman, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Stewart is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Stewart is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR

27

inmates. Dr. Stewart is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

17.    E. Jordan, M.D., Site Medical Director, ASPC-Yuma
       c/o Centurion

Dr. Jordan is the Site Medical Director at ASPC-Yuma. Dr. Jordan is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Yuma, inmate access to care, and the overall delivery of healthcare to the inmates at Yuma, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Jordan is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Jordan is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Jordan is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

18.    A. Salazar, M.D., Site Medical Director, ASPC-Tucson
       c/o Centurion

Dr. Salazar is the Site Medical Director at ASPC-Tucson. Dr. Salazar is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, the day-to-day operation of health services at Tucson, inmate access to care, and the overall delivery of healthcare to the inmates at Tucson, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Salazar is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Salazar is expected to testify regarding continuous improvements made to the delivery of healthcare

to ADCRR inmates. Dr. Salazar is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

19.    S. Ibrahim, DO, Physician, ASPC-Perryville
c/o Centurion

Dr. Ibrahim is a treating physician at ASPC-Perryville and was previously the Site Medical Director. Dr. Ibrahim is expected to testify regarding his knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADC's inmate population, the day-to-day operation of health services at Perryville, inmate access to care, intake screenings for female inmates at Perryville, and the overall delivery of healthcare to the inmates at Perryville, including medications, medical devices, routine, urgent, and emergency care, diagnostic services, chronic care, and on-site and off-site specialty care. Dr. Ibrahim is also expected to testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Dr. Ibrahim is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Dr. Ibrahim is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

20.    A. Cerillo, Facility Health Administrator, ASPC-Perryville
c/o Centurion

Adalia Cerillo is the Facility Health Administrator for ASPC-Perryville and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Perryville, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, intake screenings for female inmates at Perryville, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Perryville. Ms. Cerillo is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR

inmates. Ms. Cerillo is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

21.     B. Hofer, Facility Health Administrator, ASPC-Yuma
        c/o Centurion

Brin Hofer is the Facility Health Administrator for ASPC-Yuma and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Yuma, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Yuma. Ms. Hofer is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Hofer is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

22.     M. Smith, Facility Health Administrator, ASPC-Eyman
        c/o Centurion

Matilde Smith is the Facility Health Administrator for ASPC-Eyman and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical, mental health, and dental care to ADCRR's inmate population, the day-to-day operation of health services at Eyman, inmate access to care, the inmate grievance process, review and investigation of inmate grievances pertaining to health care, delivery of medications and medical devices, language line services, COVID-19 response and vaccination efforts, and the overall delivery of healthcare to the inmates at Eyman. Ms. Smith is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Smith is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

23.     M. Diaz, Assistant Director of Nursing, ASPC-Florence
        c/o Centurion

Michelle Diaz is the Assistant Director of Nursing for ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Florence, including in the IPC. Ms. Diaz is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Diaz is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

24.     A. Phillips, Mid-Level Practitioner (PA/NP), ASPC-Phoenix
        c/o Centurion

Amy Phillips is a mid-level provider who treats patients at ASPC-Phoenix. Ms. Phillips is expected to testify regarding her knowledge of ADCRR's and Centurion's policies, procedures, and practices for delivery of medical care to ADCRR's inmate population. Ms. Phillips is also expected to testify regarding her knowledge of the day-to-day provision of medical treatment at Phoenix, including intakes for male inmates, diagnostic services, chronic care, on-site and off-site specialty care. Ms. Phillips is also expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates, including her involvement in a leading-edge program for treatment of Hepatitis C patients with advanced liver disease. Ms. Phillips may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Phillips is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

25.   R. Moore, Director of Nursing, ASPC-Perryville
      c/o Centurion

Rachell Moore is the Director of Nursing for ASPC-Perryville and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care, on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Perryville. Ms. Moore is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. Ms. Moore is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Moore is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

26.   C. Kabongo, Assistant Director of Nursing, ASPC-Florence
      c/o Centurion

Claudine Kabongo is the Assistant Director of Nursing for ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Florence. Ms. Kabongo is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Kabongo is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

27.   R. Merrill, IPC RN, ASPC-Florence
      c/o Centurion

Rachael Merrill is a nurse assigned to the IPC at ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and

procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, emergency response procedures, delivery of medications and medical devices, and the delivery of healthcare to the inmates in the IPC at Florence. Ms. Merrill may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Merrill is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Merrill is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

28.    N. Williams, Chronic Care Nurse, ASPC-Florence
        c/o Centurion

Nancy Williams is a chronic care nurse at ASPC-Florence and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, scheduling of chronic care appointments, and monitoring and treatment of chronic care conditions. Ms. Williams may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Williams is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Williams is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

29.    J. Horn, Chronic Care Nurse, ASPC-Lewis
        c/o Centurion

January Horn is a chronic care nurse at ASPC-Lewis and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, scheduling of chronic care appointments, and monitoring and treatment of chronic care conditions. Ms. Horn may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who

testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Horn is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Horn is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

30.    **K. Branum, IPC Nurse, ASPC-Lewis**
       c/o Centurion

Kim Branum is a nurse assigned to the IPC at ASPC-Lewis and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of medical care to ADCRR's inmate population, inmate access to care, triage of HNRs, emergency response procedures, delivery of medications and medical devices, and the delivery of healthcare to the inmates in the IPC at Lewis. Ms. Branum may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Branum is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Branum is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

31.    **O. Coronado, NP, Mid-Level Provider, ASPC-Lewis**
       c/o Centurion

Oyuki Coronado is a mid-level provider who treats patients at ASPC-Lewis. Ms. Coronado is expected to testify regarding her knowledge of ADCRR's and Centurion's policies, procedures, and practices for delivery of medical care to ADCRR's inmate population. Ms. Coronado is also expected to testify regarding her knowledge of the day-to-day provision of medical treatment at Lewis, including diagnostic services, chronic care, medication management, and on-site and off-site specialty care. Ms. Coronado may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Coronado is expected to testify regarding continuous improvements made

to the delivery of healthcare to ADCRR inmates. Ms. Coronado is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

32.    V. Renna, Director of Nursing, ASPC-Eyman
       c/o Centurion

Veronica Renna is the Director of Nursing for ASPC-Eyman and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care, on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Eyman. Ms. Renna is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. She is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Renna is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

33.    P. Olmstead, NP, Mid-Level Provider, ASPC-Eyman
       c/o Centurion

Pamela Olmstead is a mid-level provider who treats patients at ASPC-Eyman. Ms. Olmstead is expected to testify regarding her knowledge of ADCRR's and Centurion's policies, procedures, and practices for delivery of medical care to ADCRR's inmate population. Ms. Olmstead is also expected to testify regarding her knowledge of the day-to-day provision of medical treatment at Eyman, including diagnostic services, chronic care, medication management, and on-site and off-site specialty care. Ms. Olmstead may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. She is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Olmstead is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

34.    S. Fife, Nurse Educator, ASPC-Eyman
       c/o Centurion

Stacey Fife is a Nurse Educator at ASPC-Eyman. Ms. Fife is expected to testify regarding ADCRR and Centurion policies and procedures pertaining to the delivery of healthcare to ADCRR inmates, and the training provided to Centurion nursing staff and providers. Ms. Fife is expected to testify regarding continuous improvements made to the training provided to Centurion employees and others who treat ADCRR inmates. Ms. Fife is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

35.    C. Myers, Director of Nursing, ASPC-Yuma
       c/o Centurion

Carli Myers is the Director of Nursing at ASPC-Yuma and is expected to testify regarding her knowledge of ADCRR's and Centurion's policies and procedures for delivery of health care to ADCRR's inmate population, inmate access to care, triage of HNRs, sick call procedures, scheduling of inmate health care appointments, chronic care, on-site and off-site specialty care, emergency response procedures, delivery of medications and medical devices, and the overall delivery of healthcare to the inmates at Yuma. Ms. Moore is also expected to testify regarding staffing levels, scheduling of staff, recruiting, hiring, and training. Ms. Moore is expected to testify regarding continuous improvements made to the delivery of healthcare to ADCRR inmates. Ms. Myers is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

36.    J. Sharr, Ph.D., Lead Psychologist, ASPC-Tucson
       c/o Centurion

Dr. Sharr is the mental health lead at ASPC-Tucson.  She also treats patients at that complex. Dr. Sharr will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up,

mental health services and programming provided to the inmates at Tucson and other complexes where she has treated patients, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Dr. Sharr is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Dr. Sharr may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Dr. Sharr is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

37.   K. Masters, Lead Psychology Associate, ASPC-Phoenix
c/o Centurion

Katie Masters is the mental health lead at ASPC-Phoenix, has served as the mental health lead at ASPC-Eyman, and has treated patients at both complexes. Ms. Masters will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Phoenix and Eyman, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Ms. Masters is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Ms. Masters may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Masters is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

38. J. Bucio, Lead Psychology Associate, ASPC-Yuma
c/o Centurion

Jose Bucio is the mental health lead at ASPC-Yuma and also treats patients at that complex. Mr. Bucio will testify regarding his knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Yuma, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Mr. Bucio is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Mr. Bucio may testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care he provided. Mr. Bucio is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

39. R. Cardogan, Lead Psychology Associate, ASPC-Perryville
c/o Centurion

Richard Cardogan is the mental health lead at ASPC-Perryville and also treats patients at that complex. Mr. Cardogan will testify regarding his knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Perryville, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Mr. Cardogan is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Mr. Cardogan may testify regarding any treatment he provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the

adequacy of the care he provided. Mr. Cardogan is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

40.   B. Mocha, Lead Psychology Associate, ASPC-Florence
      c/o Centurion

Bianca Mocha is the mental health lead at ASPC-Florence and also treats patients at that complex. Ms. Mocha will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Florence, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Ms. Mocha is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Ms. Mocha may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Ms. Mocha is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

41.   P. Kelly, Psychiatrist, ASPC-Yuma
      c/o Centurion

Dr. Kelly is a treating psychiatrist at ASPC-Yuma. Dr. Kelly will testify regarding her knowledge of ADCRR and Centurion policies, procedures, and practices regarding the delivery of psychiatric care to ADCRR inmates. She will testify regarding the psychiatric services provided to the inmate population at Yuma and the administration and monitoring of psychotropic medications. Dr. Kelly may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. She is expected to testify regarding continuous improvements made to the delivery of psychiatric care and medications to ADCRR inmates. Dr. Kelly is expected to testify regarding her

deposition if taken in this matter and any Declarations she may prepare for trial.

42.    S. Leonard, Psy.D., Psychologist, ASPC-Perryville
        c/o Centurion

Dr. Leonard is a clinical psychologist at ASPC-Perryville and works in the Women's Treatment Unit. She will testify regarding her knowledge of ADCRR and Centurion policies and procedures relating to delivery of mental health care and programming to ADCRR's inmate population, mental health treatment plan implementation and follow-up, mental health services and programming provided to the inmates at Perryville, the process for evaluation and designation of inmates as SMI, and policies and procedures for placement and removal of inmates on mental health and/or suicide watch. Dr. Leonard is also expected to testify regarding continuous improvements made to the delivery of mental health services and programming to ADCRR inmates. Dr. Leonard may testify regarding any treatment she provided to the named Plaintiffs, as well as to any other inmates who testify at trial or who are referenced by Plaintiffs' experts, and the adequacy of the care she provided. Dr. Leonard is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

43.    J. Miller, Release / Discharge Planner
        c/o Centurion

Jackie Miller is a Release and Discharge Planner. Ms. Miller is responsible for ensuring that SMI inmates have release plans in place prior to their release dates and will testify regarding policies, procedures, and practices relating to release planning. She is expected to testify regarding continuous improvements made to ensure continuity of care to ADCRR inmates. Ms. Miller is expected to testify regarding her deposition if taken in this matter and any Declarations she may prepare for trial.

44.    M. Haldane, Program Evaluation Administrator, Medical Services Contract
        Monitoring Bureau
        c/o Struck Love Bojanowski & Acedo

Mark Haldane is a Contract Compliance Program Evaluation Administrator for ADCRR. Mr. Haldane will testify regarding ADCRR policies and procedures for the

provision of health care to the inmate population, contract monitoring and compliance policies and procedures, performance measures, reports, and other data and information used to determine compliance with the contract, compilation and analysis of statistical data, and his knowledge of Centurion's performance under the contract with ADCRR. Mr. Haldane may also testify regarding his historical knowledge of contract monitoring and compliance procedures and practices. Mr. Haldane is expected to testify regarding continuous improvements made to ensure compliance with the contract and improve the delivery of healthcare to ADCRR inmates. Mr. Haldane is expected to testify regarding his deposition if taken in this matter and any Declarations he may prepare for trial.

45.    L. Donnelly, Trinity Services Group
c/o TKC Holdings
Alex Chosid or Justin Moore
1260 Andres Blvd.
St. Louis, MO 63132
(314) 214-2794

Ms. Donnelly is a Regional Dietician (and licensed dietitian) for Trinity Services Group, Inc., the third-party vendor that supplies food services to ADCRR. Ms. Donnelly is expected to testify regarding the nutritional adequacy and caloric requirements and provisions for inmates in maximum custody and detention units. Ms. Donnelly will further testify about the collaborative relationship between ADCRR and Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum custody and detention units up until the time of trial. Ms. Donnelly is expected to testify, **based upon her prior nutritional analysis and Certifications of Nutritional Adequacy submitted to ADCRR,** that the meals provided to ADCRR inmates, specifically to include maximum custody and detention unit inmates, comply with nutritional standards set by the National Academies of Sciences.

46. R. Towles
c/o Struck Love Bojanowski & Acedo

Mr. Towles is a Deputy Security Operations Administrator for ADCRR. He is expected to testify regarding oversight of ADCRR's food services contract with Trinity Food Services as it relates to the planning and provision of meals to inmates in maximum custody and detention units. Mr. Towles will additionally testify generally as to delivery of food services as it relates to provision of meals to maximum custody and detention unit inmates.

47. All non-objectionable witnesses listed by Plaintiffs, even if later withdrawn.

48. Without waiving objections, all witnesses identified in responses to interrogatories, requests for production or other discovery in this action.

49. All non-objectionable persons who are deposed in this action.

50. Defendants reserve the right to supplement this list of potential witnesses as needed to respond to or rebut information or opinions contained in Plaintiffs' expert reports and/or their Declarations prepared for trial. Defendants further reserve the right to supplement this list of potential witnesses if needed to respond to changing conditions at the time of trial.

51. Defendants reserve the right to call any physician, mid-level provider, nurse, or other medical or mental health practitioner to whom log-in credentials to eOMIS have been provided at Plaintiffs' request to assist Dr. Wilcox (or any other retained expert), including but not limited to, Rutlandra Hodges, Fred Kleinsinger, Chris Sohl, Gerry Bourne, Jill Legg, and Tom Cuff.

## II. DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS THAT MAY BE USED AT TRIAL

1. Centurion CQI Meeting Minutes for meetings held in July 2019 at all ten ADCRR complexes at issue (ADCM1580583-1580644).

2. Centurion CQI Meeting Minutes for meetings held in August 2019 at all ten ADCRR complexes at issue (ADCM1584160-1584227 and ADCM1585554-1585566).

3. Centurion CQI Meeting Minutes for meetings held in September 2019 at all ten ADCRR complexes at issue (ADCM1589601-1589676).

4. Centurion CQI Meeting Minutes for meetings held in October 2019 at all ten ADCRR complexes at issue (ADCM1589677-1589749).

5.   Centurion CQI Meeting Minutes for meetings held in November 2019 at all ten ADCRR complexes at issue (ADCM1595858-1595932).

6.   Centurion CQI Meeting Minutes for meetings held in December 2019 at all ten ADCRR complexes at issue (ADCM1597300-1597379).

7.   Centurion CQI Meeting Minutes for meetings held in January 2020 at all ten ADCRR complexes at issue (ADCM1603718-1603803).

8.   Centurion CQI Meeting Minutes for meetings held in February 2020 at all ten ADCRR complexes at issue (ADCM1603804-1603876).

9.   Centurion CQI Meeting Minutes for meetings held in March 2020 at all ten ADCRR complexes at issue (ADCM1608328-1608399).

10.   Centurion CQI Meeting Minutes for meetings held in April 2020 at all ten ADCRR complexes at issue (ADCM1610440-1610510).

11.   Centurion CQI Meeting Minutes for meetings held in May 2020 at all ten ADCRR complexes at issue (ADCM1618005-1618082).

12.   Centurion CQI Meeting Minutes for meetings held in June 2020 at all ten ADCRR complexes at issue (ADCM1623103-1623179).

13.   Centurion CQI Meeting Minutes for meetings held in July 2020 at all ten ADCRR complexes at issue (ADCM1662175-1642251).

14.   Centurion CQI Meeting Minutes for meetings held in August 2020 at all ten ADCRR complexes at issue (ADCM1644166-1644236).

15.   Centurion CQI Meeting Minutes for meetings held in September 2020 at all ten ADCRR complexes at issue (ADCM1656911-1656985).

16.   Centurion CQI Meeting Minutes for meetings held in October 2020 at all ten ADCRR complexes at issue (ADCM1658032-1658113).

17.   Centurion CQI Meeting Minutes for meetings held in November 2020 at all ten ADCRR complexes at issue (ADCM16699715-1669794).

18.   Centurion CQI Meeting Minutes for meetings held in December 2020 at all ten ADCRR complexes at issue (ADCRRM0001668-0001745).

19.   Centurion CQI Meeting Minutes for meetings held in January 2021 at all ten ADCRR complexes at issue (ADCRRM0013328-0013421).

20.   Centurion CQI Meeting Minutes for meetings held in February 2021 at all ten ADCRR complexes at issue (ADCRRM0018501-0018595).

21. Centurion CQI Meeting Minutes for meetings held in March 2021 at all ten ADCRR complexes at issue (ADCRRM0019418-0019513).

22. Centurion CQI Meeting Minutes for meetings held in April 2021 at all ten ADCRR complexes at issue (ADCRRM0024115-0024208).

23. Centurion CQI Meeting Minutes for meetings held in May 2021 at all ten ADCRR complexes at issue (ADCRRM0025060-0025163).

24. Centurion CQI Meeting Minutes for meetings held in June 2021 at all ten ADCRR complexes at issue (ADCRR00061590-00062151).

25. Heat Intolerance Log for the period from September 2019 to October 2019 (ADCM1591243-1591244).

26. Heat Intolerance Log for the period from October 2019 to June 2020 (ADCM1623101-1623102).

27. Heat Intolerance Log for the period from October 2019 to July 2020 (ADCM1630341-1630343).

28. Heat Intolerance Log for the period from October 2019 to August 2020 (ADCM1643300-1643304).

29. Heat Intolerance Log for the period from October 2019 to September 2020 (ADCM1655845-1655849).

30. Heat Intolerance Log for the period from November 2019 to October 2020 (ADCM1657160-1657164).

31. Heat Intolerance Log for November 2020 (ADCM1669310).

32. Heat Intolerance Log for the period from December 2020 to May 2021 (ADCRRM0025164).

33. Centurion Mental Health Staff Roster with Licensure, generated February 2020 (ADCM1601364-1601368).

34. Centurion Mental Health Staff Roster with Licensure, through December 2020 (ADCRRM0005523-0005526).

35. Centurion Mental Health Staff Roster with Licensure, generated March 2021 (ADCRRM0013422-0013425).

36. Centurion Mental Health Staff Roster with Licensure, generated April 2021 (ADCRRM0019588-0019591).

37. ADC MH Levels Statistical Summary as of October 17, 2019 (ADCM1588561-1688566).

38. Report of Inmates on Psychotropic Meds, generated May 25, 2020 (ADCM1617737-1617935).

39. Redacted ADC MH Levels Statistical Summary as of May 25, 2020 (ADCM1617936-1617947).

40. Redacted ADC MH Levels Statistical Summary as of June 29, 2020 (ADCM1623181-1623193).

41. ADCRR Mental Health Statistical Summary as of July 15, 2020 (ADCM1625078-1625079).

42. ADCRR Mental Health Statistical Summary as of August 31, 2020 (ADCM1644932-1644933).

43. ADCRR Mental Health Statistical Summary as of September 30, 2020 (ADCM1657675-1657676).

44. October 2020 ADCRR Mental Health Statistical Summary (ADCM1658116-1658117).

45. November 2020 ADCRR Mental Health Statistical Summary (ADCM1669368-1669369).

46. December 2020 ADCRR Mental Health Statistical Summary (ADCRRM0001746-0001747).

47. January 2021 ADCRR Mental Health Statistical Summary (ADCRRM0013426-0013427).

48. February 2021 ADCRR Mental Health Statistical Summary (ADCRRM0013429-0013430).

49. March 2021 ADCRR Mental Health Statistical Summary (ADCRRM0018603-0018604).

50. April 2021 ADCRR Mental Health Statistical Summary (ADCRRM0023392-0023393).

51. May 2021 ADCRR Mental Health Statistical Summary (ADCRRM0024284-0024285).

52. Medical Examiner's Autopsy Report regarding in-custody death of Michael Poirier, #332320 (ADCM1582448-1584236).

53.   ADCRR Mortality Review, Psychological Autopsy, and Medical Examiner's Autopsy Report regarding in-custody death of David Neville #313762 (ADCM1585574-1585603).

54.   ADCRR Mortality Review, Psychological Autopsy, and Medical Examiner's Autopsy Report regarding in-custody death of Sadie Johnson, #273402 (ADCM1588568-1588594).

55.   ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Gene Beck, #173474 (ADCM1610511-1610518 and ADCRRM0000063-0000068).

56.   ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Samuel Rotondo, #102015 (ADCM1618291-1618295 and ADCM1618561-1618579).

57.   ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Ashley Carr, #341959 (ADCM1623198-1623202 and ADCM1624350-1624363).

58.   ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Eric Haag, #286490 (ADCM1669325-1669328, ADCRRM0000078-0000088, and ADCRR00137343-00137357).

59.    ADCRR Mortality Review, Medical Examiner's Report and Psychological Autopsy regarding in-custody death of Patrick Pruitt, #308796 (ADCM1669339-1669342, ADCRRM0000069-0000077, ADCRR00137249 -00137294).

60.   ADCRR Mortality Review regarding in-custody death of Tracie Otero, #151002 (ADCRRM0005585-0005588).

61.   ADCRR Mortality Review regarding in-custody death of Rueben Neal, #265762 (ADCRRM0012739-0012742).

62.   ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Brandy Brents, #092862 (ADCRRM0026154-0026181).

63.   ADCRR Mortality Review regarding in-custody death of Jason Dean, #112850 (ADCRRM0026199-0026202).

64.   ADCRR Mortality Review regarding in-custody death of Austin Georgatos, #346726 (ADCRRM0026203-0026206).

65.   ADCRR Mortality Review regarding in-custody death of Juan Ortega, #203057 (ADCRRM0026215-0026218).

66. ADCRR Mortality Review regarding in-custody death of David Crawford, #193652 (ADCRR00000041-00000044).

67. ADCRR Mortality Review regarding in-custody death of Jason Rothlisberger, #321298 (ADCRR00000106-00000109).

68. Psychological Autopsy regarding in-custody death of Vincent Ersery, #056041 (ADCRR00137186-00137194).

69. ADCRR Mortality Review and Psychological Autopsy regarding in-custody death of Michael Ring, #039090 (ADCRR00137295-00137318).

70. May 26, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Update: Suicide Prevention Strategy (ADCM1572574-1572575).

71. July 7, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Detention Reviews (ADCM1572576).

72. October 21, 2017 Corizon Memorandum from Lynn Calcote, Ph.D. regarding Mental Health Protocols (ADCM1572577-1572581).

73.  April 1, 2018 Updated Corizon Memorandum from Lynn Calcote, Ph.D. regarding Mental Health Protocols (ADCM1572569-1572573).

74. ADCRR Duty Specific Post Order 36 for Watch Security Officer, effective at ASPC-Yuma on October 15, 2019 (ADCM1620598-1620610).

75. ADCRR Duty Specific Post Order 36 for Watch Security Officer, effective at ASPC-Yuma on March 19, 2020 (ADCM1620585-1620597).

76. Summary Report of Prescribed Psychotropic Mediations, during the period from May 26, 2020 through July 8, 2020 (ADCM1622922).

77. Summary Report of Prescribed Psychotropic Medications, updated July 9, 2020 (ADCM1623180).

78. Summary Report of Prescribed Psychotropic Medications, during the period from July 10, 2020 through August 31, 2020 (ADCM1643305).

79. Summary Report of Prescribed Psychotropic Medications, during September 2020 (ADCM1655850).

80. Summary Report of Prescribed Psychotropic Medications, during October 2020 (ADCM1658115).

81. Summary Report of Prescribed Psychotropic Medications, during November 2020 (ADCM1669388).

82. Summary Report of Prescribed Psychotropic Medications, during December 2020 (ADCRRM0001748).

83. Summary Report of Prescribed Psychotropic Medications, during January 2021 (ADCRRM0013428).

84. Summary Report of Prescribed Psychotropic Medications, during February 2021 (ADCRRM0013431).

85. Summary Report of Prescribed Psychotropic Medications, during March 2021 (ADCRRM0019578).

86. Summary Report of Prescribed Psychotropic Medications, during April 2021 (ADCRRM0024276).

87. Summary Report of Prescribed Psychotropic Medications, during May 2021 (ADCRRM0025225).

88. Centurion Statewide Staffing Report, as of November 15, 2019 (ADCM1589750-1589769).

89. Centurion Staffing Variance Report, through July 26, 2019 (ADCM1582320-1582331).

90. Centurion Staffing Variance Report, dated August 9, 2019 (ADCM1584871-1584882).

91. Centurion Staffing Variance Report, dated August 23, 2019 (ADCM1584883-1584894).

92. Centurion Staffing Variance Report, dated September 9, 2019 (ADCM1584895-1584906).

93. Centurion Staffing Variance Report, dated September 25, 2019 (ADCM1584907-1584918).

94. Centurion Staffing Variance Report, dated October 7, 2019 (ADCM1595647-1595658).

95. Centurion Staffing Variance Report, dated October 21, 2019 (ADCM1595659-1595669).

96. Centurion Staffing Variance Report, dated October 31, 2019 (ADCM1595670-1595681).

97. Centurion Staffing Variance Report, dated November 26, 2019 (ADCM1595682-1595688).

98.     Centurion Staffing Variance Report, dated December 12, 2019
        (ADCM1600201-1600212).

99.     Centurion Staffing Variance Report, dated January 2, 2020
        (ADCM1600190-1600200).

100.    Centurion Staffing Variance Report, dated January 23, 2020
        (ADCM1607084-1607094).

101.    Centurion Staffing Variance Report, dated February 3, 2020
        (ADCM1607095-1607125).

102.    Centurion Staffing Variance Report, dated March 2, 2020 (ADCM1611148-
        1611158).

103.    Centurion Staffing Variance Report, dated April 1, 2020 (ADCM1609358-
        1609368).

104.    Centurion Staffing Variance Report, dated April 14, 2020 (ADCM1609369-
        1609379).

105.    Centurion Staffing Variance Report, for the period from March 29, 2020 to
        April 25, 2020 (ADCM1625045-1625055).

106.    Centurion Staffing Variance Report, for the period from April 26, 2020 to
        May 23, 2020 (ADCM1625056-1625066).

107.    Centurion Staffing Variance Report, for the period from May 10, 2020 to June
        6, 2020 (ADCM1625067-1625077).

108.    Centurion Actual v Contract Variance Report, June 2020 (ADCM162750-
        162760).

109.    Centurion Actual v Contract Variance Report, July 2020 (ADCM1642168-
        1642174).

110.    Centurion Actual v Contract Variance Report, August 2020
        (ADCM1652222-1652228).

111.    Centurion Actual v Contract Variance Report, September 2020
        (ADCM1658025-1658031).

112.    Centurion Actual v Contract Variance Report, October 2020
        (ADCM1669298-1669309).

113.    Centurion Actual v Contract Variance Report, November 2020
        (ADCRRM0001654-0001660).

114. Centurion Actual v Contract Variance Report, December 2020 (ADCRRM0001661-0001667).

115. Centurion Actual v Contract Variance Report, January 2021 (ADCRRM0013321-0013327).

116. Centurion Actual v Contract Variance Report, February 2021 (ADCRRM0018596-0018602).

117. Centurion Actual v Contract Variance Report, March 2021 (ADCRRM0019579-0019585).

118. Centurion Actual v Contract Variance Report, April 2021 (ADCRRM0024277-0024283).

119. Centurion Variance Report by Facility, May 2021 (ADCRR-00069737).

120. Centurion Variance Report by Facility, June 2021 (ADCRR-00069738).

121. Centurion Actual v Contract Variance Report, June 2021 (ADCRR00021976).

122. Centurion Variance Report by Facility, July 2021 (ADCRR-00069739).

123. Centurion Variance Report by Facility, August 2021 (ADCRR00175195 and ADCRR00175198).

124. ADCRR Mortality Review regarding in-custody death of Rocky Edwards, #120150 (ADCM1580653-1588600).

125. ADCRR Mortality Review regarding in-custody death of Rudy Helenick, #39768 (ADCM1580657-1580660).

126. ADCRR Mortality Review regarding in-custody death of Armando Dominguez, #267981 (ADCM1584237-15847241).

127. ADCRR Mortality Review regarding in-custody death of Robert Gaines, #82914 (ADCM158242-1584245).

128. ADCRR Mortality Review regarding in-custody death of Jose Miranda, #69566 (ADCM1584246-4584249).

129. ADCRR Mortality Review regarding in-custody death of Philip Cloud, #272655 (ADCM1584290-1584293).

130. ADCRR Mortality Review regarding in-custody death of Daniel Cook, #320399 (ADCM1584294-1584299).

131.   ADCRR Mortality Review regarding in-custody death of Anthony Heil, #252652 (ADCM1584300-1584303).

132.   ADCRR Mortality Review regarding in-custody death of Terry Warner, #256215 (ADCM1584304-1584309).

133.   ADCRR Mortality Review regarding in-custody death of Arvine Hardwick, #104698 (ADCM1585570-1585573).

134.   ADCRR Mortality Review regarding in-custody death of James Rios, #143856 (ADCM1588595-1588600).

135.   ADCRR Mortality Review regarding in-custody death of Mark Andrews, #40810 (ADCM1589770-1589775).

136.   ADCRR Mortality Review regarding in-custody death of Luis Caballero, #89383 (ADCM1589776-1589779).

137.   ADCRR Mortality Review regarding in-custody death of Richard Curley, #56332 (ADCM1589780-1589784).

138.   ADCRR Mortality Review regarding in-custody death of Francisco Dominguez, #152633 (ADCM1589785-1589788).

139.   ADCRR Mortality Review regarding in-custody death of Augustine Escobar, #94197 (ADCM1589789-1589793).

140.   ADCRR Mortality Review regarding in-custody death of Terry Garrison, #207531 (ADCM1589797-1589798).

141.   ADCRR Mortality Review regarding in-custody death of Aaron Pike, #273766 (ADCM1589799-1589802).

142.   ADCRR Mortality Review regarding in-custody death of Pedro Rojas, #103714 (ADCM1589803-1589808).

143.   ADCRR Mortality Review regarding in-custody death of Noe Santillana, #216586 (ADCM1589809-1589812).

144.   ADCRR Mortality Review regarding in-custody death of Kamaka Solo, #265437 (ADCM1589813-1589820).

145.   ADCRR Mortality Review regarding in-custody death of Alan Wilson, #160624 (ADCM1589821-1589824).

146.   ADCRR Mortality Review regarding in-custody death of Kenneth Barker, #331006 (ADCM1591245-1591250).

147.   ADCRR Mortality Review regarding in-custody death of Richard King, #39036 (ADCM1595933-1595936).

148.   ADCRR Mortality Review regarding in-custody death of Robert Moody, #120103 (ADCM1595937-1595941).

149.   ADCRR Mortality Review regarding in-custody death of Daniel Rodriguez, #92410 (ADCM1595942-1595946).

150.   ADCRR Mortality Review regarding in-custody death of Efren Romero, #314345 (ADCM1595947-1595954).

151.   ADCRR Mortality Review regarding in-custody death of Michael Thomas, #265890 (ADCM1595955-1595959).

152.   ADCRR Mortality Review regarding in-custody death of Dan Lee Frederick, #322870 (ADCM1598069-1598073).

153.   ADCRR Mortality Review regarding in-custody death of Timothy Kelly, #117044 (ADCM1598074-1598078).

154.   ADCRR Mortality Review regarding in-custody death of Darrell Lewis, #110548 (ADCM1598079-1598082).

155.   ADCRR Mortality Review regarding in-custody death of Joseph Osti, #270423 (ADCM1598083-1598086).

156.   ADCRR Mortality Review regarding in-custody death of Michael Voden, #303291 (ADCM1598087-1598094).

157.   ADCRR Mortality Review regarding in-custody death of Donald Winters, #152220 (ADCM1598094-1598101).

158.   ADCRR Mortality Review regarding in-custody death of Michael Alvarez, #110260 (ADCM1603877-1603880).

159.   ADCRR Mortality Review regarding in-custody death of Joseph Carbajal, #51836 (ADCM1603881-1603884).

160.   ADCRR Mortality Review regarding in-custody death of James Edwards, #312218 (ADCM1603885-1603893).

161.   ADCRR Mortality Review regarding in-custody death of Kara Finn, #228030 (ADCM1603894-1603899).

162.   ADCRR Mortality Review regarding in-custody death of Craig Flewellen, #39694 (ADCM1603900-1603903).

163. ADCRR Mortality Review regarding in-custody death of Tyler Gold, #258485 (ADCM1603904-1603907).

164. ADCRR Mortality Review regarding in-custody death of Marvin Johnson, #157126 (ADCM1603908-1603913).

165. ADCRR Mortality Review regarding in-custody death of James King, #312231 (ADCM1603914-1603918).

166. ADCRR Mortality Review regarding in-custody death of Jon King, #336503 (ADCM1603919-1603924).

167. ADCRR Mortality Review regarding in-custody death of Kenneth Lunsford, #139183 (ADCM1603925-1603928).

168. ADCRR Mortality Review regarding in-custody death of Bruce Manthey, #205135 (ADCM1603929-1603932).

169. ADCRR Mortality Review regarding in-custody death of Michael Marsh, #58426 (ADCM1603933-1603936).

170. ADCRR Mortality Review regarding in-custody death of Clayton Peachay, #139016 (ADCM1603937-1603940).

171. ADCRR Mortality Review regarding in-custody death of Richard Ray, #50898 (ADCM1603941-1603944).

172. ADCRR Mortality Review regarding in-custody death of Roger Smith, #44755 (ADCM1603945-1603948).

173. ADCRR Mortality Review regarding in-custody death of Arlie Tubbs, #36465 (ADCM1603949-1603955).

174. ADCRR Mortality Review regarding in-custody death of Sergio Almanza, #197025 (ADCM1608400-1608406).

175. ADCRR Mortality Review regarding in-custody death of Kenneth Black, #223685 (ADCM1608407-1608410).

176. ADCRR Mortality Review regarding in-custody death of Jesse Boldrey, #76547 (ADCM1608411-1608420).

177. ADCRR Mortality Review regarding in-custody death of James Brister, #52267 (ADCM1608421-1608427).

178. ADCRR Mortality Review regarding in-custody death of Eugene Cardenas, #294313 (ADCM1608428-1608431).

179.   ADCRR Mortality Review regarding in-custody death of James Edwards, #312218 (ADCM1608432-1608440).

180.   ADCRR Mortality Review regarding in-custody death of Ricky Gillin, #107255 (ADCM1608441-1608444).

181.   ADCRR Mortality Review regarding in-custody death of Juan Laclair, #301472 (ADCM1608445-1608448).

182.   ADCRR Mortality Review regarding in-custody death of Michael Oliver, #68972 (ADCM1608449-1608456).

183.   ADCRR Mortality Review regarding in-custody death of Kenneth Ruskowsky, #107275 (ADCM1608457-1608460).

184.   ADCRR Mortality Review regarding in-custody death of Joe Stuard, #125108 (ADCM1608461-1608465).

185.   ADCRR Mortality Review regarding in-custody death of Peter Wludyka, #225901 (ADCM1608466-1608470).

186.   ADCRR Mortality Review regarding in-custody death of Lanny Gunter, #216459 (ADCM1610519-1610524).

187.   ADCRR Mortality Review regarding in-custody death of Harvey James, #68237 (ADCM1610525-1610529).

188.   ADCRR Mortality Review regarding in-custody death of Jeffrey LeClair, #73337 (ADCM1610530-1610534).

189.   ADCRR Mortality Review regarding in-custody death of Jose Munguia #266507 (ADCM1610535-1610538).

190.   ADCRR Mortality Review regarding in-custody death of Demitris Williams, #300282 (ADCM1610539-1610545).

191.   ADCRR Mortality Review regarding in-custody death of Alan McBride, #298741 (ADCM1613843-1613848).

192.   ADCRR Mortality Review regarding in-custody death of Francisco Rosario, #184091 (ADCM1613849-1613852).

193.   ADCRR Mortality Review regarding in-custody death of Richard Sheff, #276388 (ADCM1613853-1613856).

194.   ADCRR Mortality Review regarding in-custody death of Ruben Alvarez, #133808 (ADCM1615615-1615618).

195.   ADCRR Mortality Review regarding in-custody death of Luis Chavez, #246643 (ADCM1615619-1615623).

196.   ADCRR Mortality Review regarding in-custody death of Marc Clark, #106077 (ADCM1615624-1615627).

197.   ADCRR Mortality Review regarding in-custody death of Dennis Gambardella, #85624 (ADCM1615628-1615631).

198.   ADCRR Mortality Review regarding in-custody death of Debra Rautenberg, #91702 (ADCM1615638-1615641).

199.   ADCRR Mortality Review regarding in-custody death of William Stragey, #197012 (ADCM1615642-1615645).

200.   ADCRR Mortality Review regarding in-custody death of Danny Wise, #286665 (ADCM1615646-1615649).

201.   ADCRR Mortality Review regarding in-custody death of Gilbert Hostler, #30476 (ADCM1617730-1617735).

202.   ADCRR Mortality Review regarding in-custody death of Kevin Blaise, #143400 (ADCM1618260-1618264).

203.   ADCRR Mortality Review regarding in-custody death of Charles Bush, #40758 (ADCM1618265-1618268).

204.   ADCRR Mortality Review regarding in-custody death of Stephen Cofield, #56955 (ADCM1618269-1618272).

205.   ADCRR Mortality Review regarding in-custody death of Jerry Hubbard, #140843 (ADCM1618273-1618278).

206.   ADCRR Mortality Review regarding in-custody death of Terry Pitzer, #91992 (ADCM1618279-1618283).

207.   ADCRR Mortality Review regarding in-custody death of Robert Reed, #247269 (ADCM1618284-1618290).

208.   ADCRR Mortality Review regarding in-custody death of Jerry Allgood, #76672 (ADCM1623194-1623197).

209.   ADCRR Mortality Review regarding in-custody death of Rich Heidelbach, #80269 (ADCM1623203-1623209).

210.   ADCRR Mortality Review regarding in-custody death of Fred Metzner, #94152 (ADCM1623210-1623213).

211.   ADCRR Mortality Review regarding in-custody death of Michael Ochoa, #109017 (ADCM1623214-1623217).

212.   ADCRR Mortality Review regarding in-custody death of Kevin Smith, #80294 (ADCM1623218-1623223).

213.   ADCRR Mortality Review regarding in-custody death of Tony Wilson, #311480 (ADCM1629761-1629766).

214.   ADCRR Mortality Review regarding in-custody death of Christopher Albaugh, #319432 (ADCM1643914-1643917).

215.   ADCRR Mortality Review regarding in-custody death of Roy Allen, Jr., #251888 (ADCM1643918-1643922).

216.   ADCRR Mortality Review regarding in-custody death of Pedro Avila, #47094 (ADCM1643923-1643926).

217.   ADCRR Mortality Review regarding in-custody death of Pedro Bella, #279045 (ADCM1643927-1643932).

218.   ADCRR Mortality Review regarding in-custody death of Larry Brown, #284416 (ADCM1643933-1643936).

219.   ADCRR Mortality Review regarding in-custody death of Angelino Bucceri-Bianc, #19002 (ADCM1643937-1643940).

220.   ADCRR Mortality Review regarding in-custody death of Charles Coffelt, #86850 (ADCM1643941-1643944).

221.   ADCRR Mortality Review regarding in-custody death of Rick Foley, #72158 (ADCM1643945-1643948).

222.   ADCRR Mortality Review regarding in-custody death of Erick Hollstein, #284770 (ADCM1643949-1643953).

223.   ADCRR Mortality Review regarding in-custody death of Delbert Kroger, #219928 (ADCM1643954-1643957).

224.   ADCRR Mortality Review regarding in-custody death of Erika Kurtenbach, #218110 (ADCM1643958-1643963).

225.   ADCRR Mortality Review regarding in-custody death of James McInroe, #286368 (ADCM1643964-1643970).

226.   ADCRR Mortality Review regarding in-custody death of Ronald Polaski, #314917 (ADCM1643971-1643974).

227.   ADCRR Mortality Review regarding in-custody death of Cyrus Pool, #339924 (ADCM1643975-1643980).

228.   ADCRR Mortality Review regarding in-custody death of Alfonso Salazar, #66369 (ADCM1643981-1643984).

229.   ADCRR Mortality Review regarding in-custody death of Rodney Schaffer, #93359 (ADCM1643984-1643988).

230.   ADCRR Mortality Review regarding in-custody death of Horace Sublett, #157946 (ADCM1643989-1643994).

231.   ADCRR Mortality Review regarding in-custody death of Joseph Thomas, #323425 (ADCM1643995-1643998).

232.   ADCRR Mortality Review regarding in-custody death of Juan Vasquez, #239226 (ADCM1643999-1644002).

233.   ADCRR Mortality Review regarding in-custody death of Thomas Vogt, #29337 (ADCM1644003-1644006).

234.   ADCRR Mortality Review regarding in-custody death of Edward West, #64428 (ADCM1644007-1644010).

235.   ADCRR Mortality Review regarding in-custody death of James Wilcox, #320434 (ADCM1644011-1644014).

236.   ADCRR Mortality Review regarding in-custody death of Sean Adie, #286463 (ADCM1651459-1651462).

237.   ADCRR Mortality Review regarding in-custody death of William Bole, #92243 (ADCM1651463-1651466).

238.   ADCRR Mortality Review regarding in-custody death of Christopher Christean, #340772 (ADCM1651467-1651470).

239.   ADCRR Mortality Review regarding in-custody death of James Honeycutt, #44758 (ADCM1651471-1651474).

240.   ADCRR Mortality Review regarding in-custody death of Steven Jernigan, #54777 (ADCM1651475-1651478).

241.   ADCRR Mortality Review regarding in-custody death of Larry Kearney, #168173 (ADCM1651479-1651482).

242.   ADCRR Mortality Review regarding in-custody death of David Konie, #334539 (ADCM1651483-1651487).

243. ADCRR Mortality Review regarding in-custody death of Franklin Macato, #317331 (ADCM1651488-1651493).

244. ADCRR Mortality Review regarding in-custody death of Bruce McCullough, #313823 (ADCM1651494-1651497).

245. ADCRR Mortality Review regarding in-custody death of William Qualls, #181381 (ADCM1651498-1651502).

246. ADCRR Mortality Review regarding in-custody death of Dennis Rizzo, #331306 (ADCM 1651503-1651506).

247. ADCRR Mortality Review regarding in-custody death of Miguel Bencome, #270089 (ADCM1652229-1652234).

248. ADCRR Mortality Review regarding in-custody death of Robert Boyd, #151564 (ADCM1655855-1655858).

249. ADCRR Mortality Review regarding in-custody death of Vester Fry, #295402 (ADCM1655859-1655863).

250. ADCRR Mortality Review regarding in-custody death of George Gill, #62474 (ADCM1655864-1655868).

251. ADCRR Mortality Review regarding in-custody death of Larry Apodaca, #331490 (ADCM1669312-1669315).

252. ADCRR Mortality Review regarding in-custody death of Vincent Ersey, #56041 (ADCM1669316-1669319).

253. ADCRR Mortality Review regarding in-custody death of Edward Gum, #45380 (ADCM1669320-1669324).

254. ADCRR Mortality Review regarding in-custody death of Arthur Juarez, #300508 (ADCM1669329-1669334).

255. ADCRR Mortality Review regarding in-custody death of Ta Ni, #191345 (ADCM1669335-1669338).

256. ADCRR Mortality Review regarding in-custody death of Augustine Reyes, #236135 (ADCM1669343-1669346).

257. ADCRR Mortality Review regarding in-custody death of Manuel Sanchez-Garcia, #326505 (ADCM1669347-1669351).

258. ADCRR Mortality Review regarding in-custody death of Andy Ambler, #150172 (ADCRRM0004654-0004657).

259. ADCRR Mortality Review regarding in-custody death of Janice Braren, #053799 (ADCRRM0004658-0004661).

260. ADCRR Mortality Review regarding in-custody death of Travis Horner, #275629 (ADCRRM0004662-0004665).

261. ADCRR Mortality Review regarding in-custody death of Michael Matthews, #025788 (ADCRRM0004666-0004669).

262. ADCRR Mortality Review regarding in-custody death of Christopher Pace, #119360 (ADCRRM0004670-0004673).

263. ADCRR Mortality Review regarding in-custody death of Leon Scheall, #139903 (ADCRRM0004674-0004677).

264. ADCRR Mortality Review regarding in-custody death of Michael Bloom, #204041 (ADCRRM0004693-0004696).

265. ADCRR Mortality Review regarding in-custody death of Eldon Delong, #298802 (ADCRRM0004697-0004700).

266. ADCRR Mortality Review regarding in-custody death of Timothy Smith, #341364 (ADCRRM0004701-0004704).

267. ADCRR Mortality Review regarding in-custody death of Gregory Cordell, #283540 (ADCRRM0005573-0005576).

268. ADCRR Mortality Review regarding in-custody death of Larry Crews, #324461 (ADCRRM0005577-0005580).

269. ADCRR Mortality Review regarding in-custody death of George Hayes, #162202 (ADCRRM0005581-0005584).

270. ADCRR Mortality Review regarding in-custody death of Geronimo Villalobos, #094151 (ADCRRM0005589-0005592).

271. ADCRR Mortality Review regarding in-custody death of Andrew Barnhart, #330350 (ADCRRM0012707-0012710).

272. ADCRR Mortality Review regarding in-custody death of William Beltran, #319997 (ADCRRM0012711-0012714).

273. ADCRR Mortality Review regarding in-custody death of James Champlin, #141824 (ADCRRM0012715-0012718).

274. ADCRR Mortality Review regarding in-custody death of Louis Elvira, #310577 (ADCRRM0012719-0012722).

275. ADCRR Mortality Review regarding in-custody death of John Estrada, #108351 (ADCRRM0012723-0012726).

276. ADCRR Mortality Review regarding in-custody death of Gabriel Figueroa, #258371 (ADCRRM0012727-0012730).

277. ADCRR Mortality Review regarding in-custody death of Patrick FOOSE, #033655 (ADCRRM0012731-0012734).

278. ADCRR Mortality Review regarding in-custody death of Larry Klevenow, 245601 (ADCRRM0012735-0012738).

279. ADCRR Mortality Review regarding in-custody death of Richard Resa, #105054 (ADCRRM0012743-0012746).

280. ADCRR Mortality Review regarding in-custody death of John Allen, #168873 (ADCRRM0019592-0019596).

281. ADCRR Mortality Review regarding in-custody death of Joseph Assyd, #120372 (ADCRRM0019597-0019600).

282. ADCRR Mortality Review regarding in-custody death of Johnny Black III, #191874 (ADCRRM0019601-0019604).

283. ADCRR Mortality Review regarding in-custody death of Wally Boro, #328287 (ADCRRM0019605-0019608).

284. ADCRR Mortality Review regarding in-custody death of Martin Canez, #057400 (ADCRRM0019609-0019612)

285. ADCRR Mortality Review regarding in-custody death of Lawrence Cardwell, #164175 (ADCRRM0019613-0019616).

286. ADCRR Mortality Review regarding in-custody death of Everett Coulter, #340616 (ADCRRM0019617-0019620); Everett Coulter replacement page 1 (ADCRRM0026194).

287. ADCRR Mortality Review regarding in-custody death of Robert Cronan, #204577 (ADCRRM0019621-0019624).

288. ADCRR Mortality Review regarding in-custody death of Enriquez, Danny #057956 (ADCRRM0019625-0019628).

289. ADCRR Mortality Review regarding in-custody death of Virgil Forsjord, #313627 (ADCRRM0019629-0019632).

290.  ADCRR Mortality Review regarding in-custody death of Everett Hurst, #030105 (ADCRRM0019633-0019636).

291.  ADCRR Mortality Review regarding in-custody death of Grady Jones, #066682 (ADCRRM0019637-0019640).

292.  ADCRR Mortality Review regarding in-custody death of Keith Lewis, #087820 (ADCRRM0019641-0019644).

293.  ADCRR Mortality Review regarding in-custody death of Thomas Michaels, #0811191 (ADCRRM0019645-0019648).

294.  ADCRR Mortality Review regarding in-custody death of Steven Moore, #318489 (ADCRRM0019649-0019652).

295.  ADCRR Mortality Review regarding in-custody death of James Morris, #340017 (ADCRRM0019653-0019656).

296.  ADCRR Mortality Review regarding in-custody death of Gregory Murphy, #344716 (ADCRRM0019657-0019660).

297.  ADCRR Mortality Review regarding in-custody death of Olmeda, Francisco #309892 (ADCRRM0019661-0019664).

298.  ADCRR Mortality Review regarding in-custody death of Duane Principale, #340542 (ADCRRM0019665-0019668).

299.  ADCRR Mortality Review regarding in-custody death of Ylario Raizola, #231912 (ADCRRM0019669-0019672).

300.  ADCRR Mortality Review regarding in-custody death of Jose Robles, #030270 (ADCRRM0019673-0019676).

301.  ADCRR Mortality Review regarding in-custody death of Robert Satala, 032274 (ADCRRM0019677-0019681).

302.  ADCRR Mortality Review regarding in-custody death of James Stites, #176078 (ADCRRM0019682-0019685).

303.  ADCRR Mortality Review regarding in-custody death of Jose Torres, #289267 (ADCRRM0019686-0019689).

304.  ADCRR Mortality Review regarding in-custody death of Melvin Aston, #058641 (ADCRRM0026142-0026145).

305.  ADCRR Mortality Review regarding in-custody death of Christopher Benedetto, #199162 (ADCRRM0026146-0026149).

306. ADCRR Mortality Review regarding in-custody death of Perry Brenkman, #040909 (ADCRRM0026150-0026153).

307. ADCRR Mortality Review regarding in-custody death of Tamera Brown, #183905 (ADCRRM0026182-0026185).

308. ADCRR Mortality Review regarding in-custody death of Robert Carnochan, #322451 (ADCRRM0026186-0026189).

309. ADCRR Mortality Review regarding in-custody death of Armando Corona, #320705 (ADCRRM0026190-0026193).

310. ADCRR Mortality Review regarding in-custody death of Ronald Cousin, #100032 (ADCRRM0026195-0026198).

311. ADCRR Mortality Review regarding in-custody death of Jason Dean, #112850 (ADCRRM0026199-0026202).

312. ADCRR Mortality Review regarding in-custody death of Alphonso Martinez, #143560 (ADCRRM0026207-0026210).

313. ADCRR Mortality Review regarding in-custody death of Michael Martinez, #309613 (ADCRRM0026211-0026214).

314. ADCRR Mortality Review regarding in-custody death of Juan Ortega, #203057 (ADCRRM0026215-0026218).

315. ADCRR Mortality Review regarding in-custody death of Lyman Prescott, #201123 (ADCRRM0026219-0026222).

316. ADCRR Mortality Review regarding in-custody death of Richard Robles, #330041 (ADCRRM0026223-0026226).

317. ADCRR Mortality Review regarding in-custody death of Charles Roscoe, #140590 (ADCRRM0026227-0026230).

318. ADCRR Mortality Review regarding in-custody death of Michael Ross, #055098 (ADCRRM0026231-0026234).

319. ADCRR Mortality Review regarding in-custody death of Rubio Seferino, #238957 (ADCRRM0026235-0026238).

320. ADCRR Mortality Review regarding in-custody death of John Santori, #311768 (ADCRRM0026239-0026242).

321. ADCRR Mortality Review regarding in-custody death of Shari Tobyne, #281121 (ADCRRM0026243-0026246).

322.   ADCRR Mortality Review regarding in-custody death of Gary Ware, #207216 (ADCRRM0026247-0026250).

323.   ADCRR Mortality Review regarding in-custody death of Christopher Yeager, #182011 (ADCRRM0026251-0026254).

324.   ADCRR Mortality Review regarding in-custody death of Jose Arrieta #143577 (ADCRR00000001-00000004).

325.   ADCRR Mortality Review regarding in-custody death of Timothy Ashing #285611 (ADCRR00000005-00000008).

326.   ADCRR Mortality Review regarding in-custody death of Jermi Atherton #188916 (ADCRR00000009-00000012).

327.   ADCRR Mortality Review regarding in-custody death of Georsha Boston #346890 (ADCRR00000013-00000016).

328.   ADCRR Mortality Review regarding in-custody death of Carl B. Branson #143921 (ADCRR00000017-00000020).

329.   ADCRR Mortality Review regarding in-custody death of Stewart Braswell #292189 (ADCRR00000021-00000024).

330.   ADCRR Mortality Review regarding in-custody death of Michael Brooks #036259 (ADCRR00000025-00000028).

331.   ADCRR Mortality Review regarding in-custody death of Johnny Calvin #121504 (ADCRR00000029-00000032).

332.   ADCRR Mortality Review regarding in-custody death of Cardinel Barnes #169588 (ADCRR00000033-00000036).

333.   ADCRR Mortality Review regarding in-custody death of Norma Coverdale #340560 (ADCRR00000037-00000040).

334.   ADCRR Mortality Review regarding in-custody death of David Crawford #193652 (ADCRR00000041-00000044).

335.   ADCRR Mortality Review regarding in-custody death of Angelo Dunlap #257732 (ADCRR00000045-00000048).

336.   ADCRR Mortality Review regarding in-custody death of Valentino Gonzales, #297488 (ADCRR00000049-00000052).

337.   ADCRR Mortality Review regarding in-custody death of Germaine King #093004 (ADCRR00000053-00000056).

338.   ADCRR Mortality Review regarding in-custody death of Michael Knesel #322319 (ADCRR00000057-00000060).

339.   ADCRR Mortality Review regarding in-custody death of Michael Lawson #250436 (ADCRR00000061-00000064).

340.   ADCRR Mortality Review regarding in-custody death of Miguel Leal #241025 (ADCRR00000065-00000068).

341.   ADCRR Mortality Review regarding in-custody death of Ricky Lyon #058339 (ADCRR00000069-00000072).

342.   ADCRR Mortality Review regarding in-custody death of Jack Malone #095919 (ADCRR00000073-00000076).

343.   ADCRR Mortality Review regarding in-custody death of Christopher Mata #233470 (ADCRR0000077-00000080).

344.   ADCRR Mortality Review regarding in-custody death of Jose Mendez-Lovio #337807 (ADCRR00000081-00000084).

345.   ADCRR Mortality Review regarding in-custody death of Joseph M. Meza #173826 (ADCRR00000085-00000088).

346.   ADCRR Mortality Review regarding in-custody death of Joseph Miranda #286226 (ADCRR00000089-00000092).

347.   ADCRR Mortality Review regarding in-custody death of Gilbert Molina #242463 (ADCRR00000093-00000097).

348.   ADCRR Mortality Review regarding in-custody death of Walter Nusz #103801 (ADCRR00000098-00000102).

349.   ADCRR Mortality Review regarding in-custody death of Adrian Perez #322757 (ADCRR00000102-00000105).

350.   ADCRR Mortality Review regarding in-custody death of Thomas R. Sweeny #183582 (ADCRR00000110-00000113).

351.   ADCRR Mortality Review regarding in-custody death of Melvin Teter #274376 (ADCRR00000114-00000117).

352.   ADCRR Mortality Review regarding in-custody death of Charles A. Trask #188597 (ADCRR00000118-00000121).

353.   ADCRR Significant Incident Report regarding in-custody death of Benjamin Madrigal #346934 (ADCRR00000566-00000567).

354. ADCRR Mortality Review and Medical Examiner's Autopsy Report regarding in-custody death of Benjamin Madrigal #346934 (ADCRR00088421-000088436).

355. ADCRR Significant Incident Report regarding in-custody death of Richard Misquez #204086 (ADCRR00000626-00000628).

356. ADCRR Mortality Review regarding in-custody death of Richard Misquez, #204086 (ADCRR00088329-00088332).

357. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Aaron Berry, #28832 (ADCRR00137156-00137168).

358. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Kenneth Burns, #074533 (ADCRR00137169-00137177).

359. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Kelly Curry, #340806 (ADCRR00137178-00137185).

360. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Edmond Gonzalez, Jr., #151417 (ADCRR00137195-00137203).

361. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Jesus Jurado, Jr. #343570 (ADCRR00137204-00137217).

362. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Charles Lake, #091038 (ADCRR00137218-00137232).

363. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Samuel Martinez, #079764 (ADCRR00137233-00137240).

364. ADCRR Mortality Review regarding death of Jorge Montes-Beltran, #323912, while in U.S. Marshals Service Custody (ADCRR00137241-00137244).

365. ADCRR Mortality Review regarding in-custody death of Robert Oldfield, #188129 (ADCRR00137245-00137248).

366. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Warren Summerlin, #045315 (ADCRR00137319-00137326).

367. ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Donald Thomlinson, #229631 (ADCRR00137327-00137334).

368.  ADCRR Mortality Review and Medical Examiner's Report regarding in-custody death of Melvin Yarbor, #042063 (ADCRR00137335-00137342).

369.  Centurion Quarterly Chronic Conditions Reports for the period from Q3-2019 through Q2-2021 at all ten ADCRR complexes at issue (ADCRR00043627-00044905).

370.  Centurion Chronic Conditions Report, August 2021 (ADCRR00098845).

371.  ADCRR Maximum Custody Monitoring Guide (July 2017) (ADCM1036847-1036870).

372.  ADCRR Inmate Net Growth Data/Analysis (data as of 6/30/2021), (ADCRR00061547-00061552).

373.  ADCRR Maximum Custody Notebooks and use of force videos for July 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1540951-1542359 and ADCM1542360-1542365).

374.  ADCRR Maximum Custody Notebooks and use of force videos for August 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1548917-1549936 and ADCM1551271-1551565).

375.  ADCRR Maximum Custody Notebooks and use of force videos for September 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1551619-1552923).

376.  ADCRR Maximum Custody Notebooks and use of force videos for October 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1553420-1554841; ADCM1554379-1554408; and ADCM1554409-1554893).

377.  ADCRR Maximum Custody Notebooks for November 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1562004-1563637 and ADCM1563638-1563677).

378.  ADCRR Maximum Custody Notebooks and use of force videos for December 2018 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1565312-1566317; ADCM1566318-1566334; ADCM1566335-1566684; and ADCM1566685-1566701).

379.  ADCRR Maximum Custody Notebooks and use of force videos for January 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1568916-1570069).

380. ADCRR Maximum Custody Notebooks and use of force videos for February 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1573974-1575228).

381. ADCRR Maximum Custody Notebooks and use of force videos for March 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1575975-1577112).

382. ADCRR Maximum Custody Notebooks and use of force videos for April 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1578402-1579438).

383. ADCRR Maximum Custody Notebooks and use of force videos for May 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1582332-1583611).

384. ADCRR Maximum Custody Notebooks and use of force videos for June 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1585901-1587152).

385. ADCRR Maximum Custody Notebooks and use of force videos for July 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1592061-1593453).

386. ADCRR Maximum Custody Notebooks and use of force videos for August 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1600213-1608307).

387. ADCRR Maximum Custody Notebooks and use of force videos for September 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1611159-1612429).

388. ADCRR Maximum Custody Notebooks and use of force videos for October 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1612443-1613817).

389. ADCRR Maximum Custody Notebooks and use of force videos for November 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1616184-1617729).

390. ADCRR Maximum Custody Notebooks and use of force videos for December 2019 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1619366-1638624 and ADCM1620570-1620584).

391.  ADCRR Maximum Custody Notebooks and use of force videos for January 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1636983-1653145).

392.  ADCRR Maximum Custody Notebooks and use of force videos for February 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1653146-1670965).

393.  ADCRR Maximum Custody Notebooks and use of force videos for March 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1654420-1655844 and ADCM1660106-1670966).

394.  ADCRR Maximum Custody Notebooks and use of force videos for April 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1660168-1670979).

395.  ADCRR Maximum Custody Notebooks and use of force videos for May 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1661815-1670996).

396.  ADCRR Maximum Custody Notebooks and use of force videos for June 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1663538-1665112 and ADCRRM0021648-21808).

397.  ADCRR Maximum Custody Notebooks and use of force videos for July 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1665113-166699 and ADCM1670997-1671009).

398.  ADCRR Maximum Custody Notebooks and use of force videos for August 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCM1666700-1668141; ADCRRM0003335-0003363; and ADCRRM0021809-0021988).

399.  ADCRR Maximum Custody Notebooks and use of force videos for September 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0003365-0004647 and ADCRRM0021989-0022483).

400.  ADCRR Maximum Custody Notebooks and use of force videos for October 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0028193-0029711).

401.  ADCRR Maximum Custody Notebooks and use of force videos for November 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0007914-0009409).

402. ADCRR Maximum Custody Notebooks and use of force videos for December 2020 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0029712-0031201).

403. ADCRR Maximum Custody Notebooks and use of force videos for January 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0031202-0032572).

404. ADCRR Maximum Custody Notebooks and use of force videos for February 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis, Perryville and Phoenix (ADCRRM0032573-0034086).

405. ADCRR Maximum Custody Notebooks and use of force videos for March 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis and Phoenix (ADCRR00066087-00067454).

406. ADCRR Maximum Custody Notebooks and use of force videos for April 2021 for ASPC-Eyman-Browning, Eyman-SMU, Florence, Lewis and Phoenix (ADCRR00067455-00068505).

407. ADCRR Maximum Custody Notebooks and use of force videos for May 2021 for ASPC-Eyman-Browning, Eyman-SMU and Florence (ADCRR00068506-00069736).

408. ADCRR – Department Order 812, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

409. ADCRR – Department Order 704, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

410. ADCRR – Department Order 720, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

411. ADCRR – Department Order 801, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

412. ADCRR – Department Order 803, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

413. ADCRR – Department Order 807, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

414. ADCRR – Department Order 809, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

415. ADCRR – Department Order 903, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

416. ADCRR – Department Order 906, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

417. ADCRR – Department Order 909, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

418. ADCRR – Department Order 910, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

419. ADCRR – Department Order 1103, https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index

420. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Steven Mora, #336469 (ADCRR00050604-0050613 and ADCRRM00052083-00052085).

421. Maximum Custody Out of Cell Tracking Forms for Tyson Anderson, #221513 (ADCRR00050614-0050713).

422. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Mulugeta Micael, #192669 (ADCRR00050772-0050859).

423. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Eric Caicedo-Caneloz, #228215 (ADCRR0050860-0050949 and ADCRR00052090-00052098).

424. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Mykel Cooper, #314524 (ADCRR0050950-0051041 and ADCRR00052128-00052132).

425. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Storm Collins, #334615, (ADCRR0051042-0051147 and ADCRR00052086-00052089).

426. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Jesus Jimenez, #066145 (ADCRR0051148-0051225 and ADCRR0052106-00052113).

427. Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Eric Jones, #142262 (ADCRR0051256-0051360 and ADCRR00052099-00052105).

428.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Brandon Moschel #249078, (ADCRR0050860-0050949 and ADCRR00052123-00052127).

429.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Douglas Ross, #264301 (ADCRR0051469-0051576 and ADCRR00052133-00052149).

430.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Steven Mora, #336469 (ADCRR0051627-0051632 and ADCRR00052083-00052085).

431.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Damien Young, #312740 (ADCRR0051633-0051722 and ADCRR00052150-00052182).

432.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Brice Lupe, #318001 (ADCRR0051733-0051748 and ADCRR00052080-00052082).

433.  Maximum Custody Out of Cell Tracking Forms, Disciplinary and Classification Files for Victor Semaan, #162908 (ADCRR0051749-0051764 and ADCRRM00052075-00052079).

434.  Maximum Custody Out-of-Cell Tracking Forms for representative Plaintiff, Robert Gamez, 131401 (ADCRR00050556-50603, ADCRR00051823-51836, ADCRR00051885-00051951-51960, ADCRR00052019-00052036).

435.  Maximum Custody Disciplinary and Classification files for representative Plaintiff, Robert Gamez, 131401 (ADCRR00052065-00052074, ADCRR00052057-00052064).

436.  Maximum Custody Out-of-Cell Tracking Forms for representative Plaintiff, Dustin Brislan, 164993 (ADCRR00050714-00050771).

437.  Maximum Custody Disciplinary and Classification files for representative Plaintiff, Dustin Brislan, 164993 (ADCRR00172374-00172380).

438.  Maximum Custody curtailment reports for ASPC-Eyman, ASPC-Lewis-Rast Max and ASPC-Florence-Kasson for January 1, 2020 to August 10, 2021 (ADCRR00052183-00055816).

439.  Hiring reports for Correctional Staff at ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from August 1, 2020, to August 23, 2021 (ADCRR00055817-00056119).

71

440. ADCRR's Corrections at a Glance reports, available at
https://corrections.az.gov/reports-documents/reports/corrections-glance.

441. ADCRR's inmate assault, self-harm and mortality data reports, available at
https://corrections.az.gov/reports-documents/reports/inmate-assault-self-harm-mortality-data.

442. June 2021 ADCRR Medical Services Contract Monitoring Bureau presentation made by Grant Phillips, M.D. on Chronic Care Visits and Referrals (ADCRR00137360-00137380).

443. June 3, 2021 ADCRR Medical Services technical Manual (ADCRR00137381-00137853).

444. Centurion Monthly Clinical Data Reports, for July 2019 through August 2021 (ADCRR00056772-00058260; ADCRR-00069938-00069956, ADCRR00137854-00137859; and, ADCRR00175186).

445. Centurion Monthly Dental Utilization Reports, for July 2019 through August 2021 (ADCRR00137860-00137883 and ADCRR00175187).

446. Corizon Monthly Hepatitis C Reports, for January 2019 through February 2019 (ADCRR00137884-00137885).

447. Centurion Monthly Hepatitis C Reports, for January 2019 through August 2021 (ADCRR00137886-00137907 and ADCRR00175188).

448. Centurion Monthly Hospitalization Reports, for July 2019 through August 2021 (ADCRR00137909-00137931 and ADCRR00175189).

449. Centurion Monthly Intake Reports, for July 2019 through August 2021 (ADCRR00137932-00137955 and ADCRR00175190).

450. Centurion Monthly Emergency Medical Transports Reports, for July 2019 through August 2021 (ADCRR00137956-00137979 and ADCRR00175191).

451. Centurion Monthly Outpatient Medical Transports Reports, for July 2019 through August 2021 (ADCRR00137980-00138003 and ADCRR00175192).

452. Centurion Monthly New Hire Reports, for July 2019 through August 2021 (ADCRR00138004-00138027 and ADCRR00175193).

453. Centurion Monthly Termination Reports, for July 2019 through June 2021 (ADCRR00138028-00138051 and ADCRR00175194).

454. Centurion Quarterly Chronic Conditions Reports, for Q3 2019 to Q2, 2021 (ADCRR00138052-00138059).

455.   Centurion Quarterly Utilization Review Reports, for Q3 2019 to Q2 2021 (ADCRR00138061-00138067).

456.   August 19, 2021 azfamily.com article, "Travel nurses help with Arizona's nurse shortage, but only in the short term" (ADCRR00138068-00138070).

457.   September 10, 2021 azfamily.com article "Valleywise shortages so dire mass emails going out to recruit nurses, staff" (ADCRR00138071-00138072).

458.   Centurion Employee Roster, as of November 5, 2019 (ADCRR00138073).

459.   Historical CGAR Results Summary, as of December 2, 2019 with preliminary data for October 2019 (ADCRR00138074).

460.   COVID-19 Vaccination Reports, for the period from April 13, 2021 through **October 15**, 2021 (ADCRR00138075-00138095**; ADCRR00174690-00174691; and, ADCRR00210332-00210335**).

461.   Inmate Population Data from ADCRR FY 2022 Operating Budget Request (ADCRR00138096-00138102).

462.   Master Scorecard Performance Data from ADCRR FY 2022 Operating Budget Request (ADCRR00138103-00138104).

463.   Centurion Report of Pending Specialty Appointments, July 2021 (ADCRR00138105).

464.   Centurion Report of Pending Utilization Review Requests, July 2021 (ADCRR00138106).

465.   ADCRR Institutional Count Sheet, August 2, 2021 (ADCRR00138107-00138109).

466.   ADC Mental Health Technical Manual, revised December 24, 2019 (ADCRR00138110-00138203).

467.   ADCRR Inmate Assault, Self-Harm, & Mortality Data, as of June 30, 2021 (ADCRR00138204-00138207).

468.   Bureau of Justice Statistics, Mortality in State and Federal prisons, 2001-2018 – Statistical Tables (ADCRR00138208-00138241).

469.   July 11, 2019 letter from Ryan Kendall regarding Michael Adams, ADC No. 331037, ASPC-Yuma (Released July 2, 2019).

470.   July 24, 2019 letter from Corene Kendrick regarding Joseph Anderson, 181700, Lewis – Stiner (ADCRR00138274-00138285).

73

471. October 23, 2020 letter from Maria Morris regarding Joseph Anderson, ADC No. 181700, ASPC-Florence IPC (ADCR00138286-00138287).

472. November 17, 2020 letter to Maria Morris regarding Joseph Anderson (181700), ASPC-Florence IPC (ADCRR00138288).

473. July 8, 2019 letter from David Fathi regarding Suicide by handing of Sadie M. Johnson, ADC No. 273402 ASPC-Perryville, July 2, 2019 (ADCRR00138289-00138292).

474. July 26, 2019 letter to David Fathi regarding Suicide – Sadie M. Johnson (273402) ASPC-Perryville, July 2, 2019 (ADCRR00138293).

475. September 19, 2019 letter from Curtis Harris regarding Rueben Neal, ADC No. 265762, ASPC-E SMU I CDU (ADCRR00138294-00138295).

476. September 25, 2020 letter to Curtis Harris regarding Rueben Neal (265762), ASPC-E/SUM-I CDU (ADCRR00138296).

477. July 29, 2019 letter from David Fathi regarding Suicide of David Neville, ADC No. 313792, ASPC-Tucson (ADCRR00138297-00138318).

478. August 9, 2019 letter to David Fathi regarding Suicide of David Neville (313752) – ASPC-Tucson (ADCRR00138319).

479. June 19, 2021 letter from Allison Hardy regarding Inadequate Emergency Response to Class Member Suicide (PM 25) (ADCRR00138320-00138321).

480. July 1, 2021 letter to Allison Hardy regarding Inadequate response to Class Member suicide (PM 25) (ADCRR00138322).

481. May 17, 2019 letter from David Fathi regarding Class Member Suicide (ADCRR00138323-00138337).

482. May 28, 2019 letter to David Fathi regarding Class Member Suicide, Michael Poirier, ADC 332320 (ADCRR00138228-00138340).

483. Centurion Mental Health Roster, with licensure types, June 2021 (ADCRR00138341-00138344).

484. ADCRR NCCHC Accreditation Listing and certificates of accreditation, as of August 2, 2021 (ADCRR00138345-00138357).

485. ADCRR NCCHC Accreditation Listing, updated August 18, 2021 (ADCRR00138358).

486. Exhibit 14, to Solicitation No. ADOC18-0008264, NCCHC Information (ADCRR00138359).

487. February 8, 2019 NCCHC Accreditation Report for ASPC-Douglas (ADCRR00138360-00138417).

488. October 2016 NCCHC Certificate of Accreditation for ASPC-Eyman (ADCRR00138418).

489. October 23, 2016 NCCHC Accreditation Report for ASPC-Eyman (ADCRR00138419-00138440).

490. July 18, 2017 NCCHC Accreditation Update Report for ASPC-Eyman (ADCRR00138441-00138451).

491. October 20, 2017 NCCHC Accreditation Update Report for ASPC-Eyman (ADCRR00138452-00138458).

492. May 29, 2020 NCCHC Accreditation Report for ASPC-Eyman (ADCRR00138459-00138522).

493. November 9, 2020 NCCHC Accreditation Update Report for ASPC-Eyman (ADCRR00138523-00138543).

494. January 15, 2021 NCCHC Accreditation Update Report for ASPC-Eyman (ADCRR00138544-00138549).

495. June 2017 NCCHC Certificate of Accreditation for ASPC-Florence (ADCRR00138550).

496. June 30, 2017 NCCHC Accreditation Report for ASPC-Florence (ADCRR00138551-00138572).

497. January 16, 2018 NCCHC Accreditation Update Report for ASPC-Florence (ADCRR00138551-00138588).

498. March 29, 2018 NCCHC Update Accreditation Report for ASPC-Florence (ADCRR00138589-00138593).

499. April 30, 2021 NCCHC Accreditation Report for ASPC-Florence (ADCRR00138594-00183652).

500. **August 9, 2021 correspondence from NCCHC regarding Accreditation of ASPC-Florence (ADCRR00210540-00210542).**

501. **September 9, 2021 NCCHC Accreditation Update Report for ASPC-Florence (ADCRR00210534-00210550).**

502. January 16, 2016 NCCHC Focused Survey Report for ASPC-Lewis (ADCRR00138653-00138661).

503. June 22, 2018 NCCHC Accreditation Report for ASPC-Lewis (ADCRR00138662-00138686).

504. February 8, 2019 NCCHC Accreditation Update Report for ASPC-Lewis (ADCRR00138687-00138703).

505. July 19, 2019 NCCHC Accreditation Update Report for ASPC-Lewis (ADCRR00138704-00138714).

506. November 2, 2016 NCCHC Accreditation Update Report for ASPC-Perryville (ADCRR00138715-00138721).

507. February 8, 2019 NCCHC Accreditation Report for ASPC-Perryville (ADCRR00138722-00138777).

508. July 25, 2019 NCCHC Accreditation Update Report for ASPC-Perryville (ADCRR00138778-00138784).

509. December 4, 2019 NCCHC Accreditation Update Report for ASPC-Perryville (ADCRR00138785).

510. December 15, 2016 NCCHC Accreditation Update Report for ASPC-Phoenix (ADCRR00138786-00138793).

511. November 16, 2018 NCCHC Accreditation Report for ASPC-Phoenix (ADCRR00138794-00138811).

512. May 23, 2019 NCCHC Accreditation Update Report for ASPC-Phoenix (ADCRR00138812-00138816).

513. October 15, 2019 NCCHC Accreditation Update Report for ASPC-Phoenix (ADCRR00138817-00138818).

514. August 18, 2016 NCCHC Accreditation Update Report for ASPC-Safford – Fort Grant Unit (ADCRR00138819-00138823).

515. February 8, 2019 NCCHC Accreditation Report for ASPC-Safford – Fort Grant Unit (ADCRR00138824-00138877).

516. February 8, 2019 NCCHC Accreditation Report for ASPC-Safford (ADCRR00138878-00138931).

517. February 24, 2017 NCCHC Accreditation Update Report for ASPC-Tucson (ADCRR00138932-00138945).

518. August 29, 2017 NCCHC Accreditation Update Report for ASPC-Tucson (ADCRR00138946-00138950).

519. July 19, 2019 NCCHC Accreditation Report for ASPC-Tucson (ADCRR00138951-00139011).

520. December 17, 2019 NCCHC Accreditation Update Report for ASPC-Tucson (ADCRR0139012-00139024).

521. May 11, 2017 NCCHC Accreditation Update Report for ASPC-Winslow (ADCRR00139024-00139034).

522. July 18, 2017 NCCHC Accreditation Update Report for ASPC-Winslow (ADCRR00139035-00139050).

523. May 3, 2019 NCCHC Accreditation Report for ASPC-Winslow – Apache Unit (ADCRR00139051-00139099).

524. May 3, 2019 NCCHC Accreditation Report for ASPC-Winslow (ADCRR00139100-00139149).

525. October 24, 2019 NCCHC Accreditation Update Report for ASPC-Winslow – Apache Unit (ADCRR00139150-00139156).

526. October 24, 2019 NCCHC Accreditation Update Report for ASPC-Winslow (ADCRR00139157-00139162 **and ADCRR00210552-00210556**).

527. **February 20, 2020 NCCHC Accreditation Award for ASPC-Winslow (ADCRR00210551).**

528. November 25, 2014 NCCHC Accreditation Update Report for ASPC-Yuma (ADCRR00139163-00139167).

529. March 1, 2018 NCCHC Accreditation Update Report for ASPC-Yuma (ADCRR00139168-00139172).

530. August 5, 2021 NCCHC Accreditation Report for ASPC-Yuma (ADCRR00139173-00139232).

531. ADCRR summaries comparing mental health staffing by complex in 2012 and 2021 (ADCRR00139233-00139234).

532. Distribution of ADCRR population by Mental Health Score, for the week beginning September 15, 2021 (ADCRR00139235-00139236).

533. Photograph of LanguageLine Solutions Interpretation Service Available, posted in ADCRR health services areas (ADCRR00172373).

534. Programming history report for Storm Collins, #334615 (ADC**RR**00172381).

535. Programming history report for Jesus Jimenez, #066145 (ADCRR00172382-00172384).

536. Programming history report for Brandon Moschel, #249078 (ADCRR00172385-00172386).

537. Programming history report for Eric Jones, #142262 (ADCRR00172387-00172388).

538. Programming history report for Steven Mora, #336469 (ADCRR00172389).

539. Programming history report for Brice Lupe, #318001 (ADCRR00172390).

540. Programming history report for Victor Semaan, #162908 (ADCRR00172391-00172392).

541. Programming history report for Mykel Cooper, #314524 (ADCRR00172393-00172394).

542. Programming history report for Eric Caicedo-Caneloz, #228215 (ADCRR00172395-00172396).

543. Programming history report for Eric Jones, #299556 (ADCRR00172397).

544. Programming history report for Damien Young, #312740 (ADCRR00172398).

545. Programming history report for Tyson Anderson, #221513 (ADCRR00172399).

546. Programming history report for Mulugeta Michael, #192669 (ADCRR00172400).

547. Programming history report for Dustin Brislan, #164993 (ADCRR00172401).

548. Programming history report for Robert Gamez, #172402 (ADCRR00172402).

549. Arizona Department of Corrections Health Services Bureau Approved Medical and Dental Abbreviation List, May 1, 2007 (ADCRR00172403-00172439).

550. Institutional File for Shawn Jensen, #032465 (ADCRR00172440-00173538).

551.  Institutional File for Aaron Dias, #130917 (ADCRR00173539-00173702).

552.  Institutional File for Jason Robinson, #284001 (ADCRR00173703-00173796).

553.  Institutional File for Tanika Gary, #314819 (ADCRR00173797-00173902).

554.  Institutional File for Valeria Manar-Zapata, #128811 (ADCRR00173903-00174126).

555.  Institutional File for Joshua Polson, #187716 (ADCRR00174127-00174487).

556.  Institutional File for Laura Redmond, #166456 (ADCRR00174488-00174523).

557.  Institutional File for Jeremy Smith, #129438 (ADCRR00174524-00175632).

558.  Traffic History Reports for Joshua Polson, #187716 (ADCRR00174633-00174657).

559.  Traffic History Reports for Jeremy Smith, #129438 (ADCRR00174658-00174689).

560.  ADCRR Medical Services Technical Manual, updated October 4, 2021 (ADCRR00174692-00175184).

561.  Extracted summary of inmates diagnosed and receiving treatment for HIV, IDDM, and Cancer for the period from January-June 2021 (ADCRR00175185).

562.  Medical Services Contract Monitoring Bureau organizational chart (ADCRR00175196).

563.  Extracted summary of outside consultations by Complex, for the period from July 2018 through August 2021 (ADCRR00175197).

564.  Letters from Plaintiffs' counsel regarding Shawn Jensen, ADC 032465, Florence – East (ADCRR00175199-00175226).

565.  July 6, 2021 letter from Tania Amarillas regarding Robert Gamez, ADC 131401, Lewis-Rast (ADCR00175227-00175230).

566.  November 10, 2020 letter from David Fathi regarding Ronald Slavin, ADC No. 142019, ASPC-Eyman, Cook (ADCRR00175231-00175232).

567.  Letters from David Fathi regarding Rahim Muhammad, ADC No. 215306, ASPC-Florence, Kasson (ADCRR00175233-00175244).

568.   September 29, 2021 letter from Tania Amarillas regarding Jason Robinson, ADC 284001, Florence-South (ADCR00175245).

569.   July 9, 2021 letter from Juliette Mueller and Alison Hardy regarding Tanika Gary, ADC 314819, Perryville-Lumley (ADCRR00175246-00175247).

570.   January 3, 2019 letter from Tania Amarillas and Corene Kendrick regarding Pedro Rojas, ADC 103714, Florence – North (ADCRR00175248-00175249).

571.   May 20, 2020 letter from Corene Kendrick regarding Management of Positive COVID-19 Patients at Tucson and Florence (ADCRR00175250-00175257).

572.   Letters from Plaintiffs' counsel regarding Shaka, ADC 027156 (ADCRR00175258-00175268).

573.   Letters from Plaintiffs' counsel regarding Thomas Vogt, ADC 029337 (ADCRR00175267-00175273).

574.   Letters from Plaintiffs' counsel regarding Shawn Jensen, ADC 032465 (ADCRR00175274-00175317).

575.   Letters from Plaintiffs' counsel regarding James Staples, ADC 032688 (ADCRR00175318-00175337).

576.   Letters from Plaintiffs' counsel regarding March Meacham, ADC 033556 (ADCRR00175338-00175346).

577.   June 17, 2021 letter from Gabriela Pelsinger and Alison Hardy regarding Inadequate Response to Class Member Suicide (PM25) relating to Michael Ring, ADC 039090 (ADCRR00175347-00175348).

578.   Letters from Plaintiffs' counsel regarding Kenneth Ashelman, ADC 044500 (ADCRR00175349-00175356).

579.   Letters from Plaintiffs' counsel regarding Edward Gum, ADC 045380 (ADCRR00175357-00175362).

580.   Letters from Plaintiffs' counsel regarding Jerry Ramos, ADC 049155 (ADCRR00175363-00175366).

581.   April 27, 2021 letter from Jordan Payne regarding John Wheeler, ADC 049345, Florence – East (ADCRR00175367-00175369).

582.   Letters from Plaintiffs' counsel regarding Joe Thomas, ADC 051405 (ADCRR0175370-00175375).

583. Letters from Plaintiffs' counsel regarding Sittingdown, ADC 052179 (ADCRR00175376-00175386).

584. Letters from Plaintiffs' counsel regarding James Marino, ADC 052455, (ADCRR00175387-00175392).

585. Letters from Plaintiffs' counsel regarding Peter Ross, ADC 052663 (ADCRR00175393-00175398).

586. March 30, 2020 letter from Amber Norris and Corene Kendrick regarding Steve Jernigan, ADC 054777, Florence – North (ADCRR0175399-00175400).

587. December 18, 2015 letter from Corene Kendrick regarding ADC Prisoners in Need of Immediate Medical, Dental, and/or Mental Health Care, including Richard Romar, ADC 056355 (ADCRR00175401-00175412).

588. September 13, 2017 letter from Alison Hardy regarding Michael Marsh, ADC 058426, Tucson – Rincon (ADCRR00175413-00175414).

589. Letters from Plaintiffs' counsel regarding Frank Atwood, ADC 062887 (ADCRR00175415-00175428).

590. December 7, 2018 letter from Tania Amarillas and Rita Lomio regarding William Hall, ADC 065869, Florence – Central (ADCRR00175429-00175430).

591. Letters from Plaintiffs' counsel regarding John Jolicouer, ADC 067133 (ADCRR00175431-00175443).

592. April 7, 2020 letter from Corene Kendrick and Gabriela Pelsinger regarding Class Member with Differential Diagnosis of COVID-19 Prior to Death relating to Jerry Hubbard, ADC 068237 (ADCRR00175444-00175447).

593. September 13, 2019 letter from Amber Norris and Thomas Nosewicz regarding Michael Oliver, ADC 068972, Eyman – Cook (ADCRR00175448-00175449).

594. Letters from Plaintiffs' counsel regarding Gail Voigt, ADC 072598 (ADCRR00175450-00175455).

595. March 11, 2020 letter from Gabriela Pelsinger and Alison Hardy regarding Roberto Moreno, ADC 077538, Tucson – Manzanita (ADCRR00175456-00175459).

81

596. Letters from Plaintiffs' counsel regarding Arnulfo Hernandez, ADC 080201 (ADCRR00175157460-00175473).

597. October 1, 2019 letter from Ilian Meza-Pena and Corene Kendrick regarding Rich Heidelbach, ADC 080269, Lewis – Bachman (ADCRR00175474-00175476).

598. December 18, 2015 letter from Corene Kendrick regarding ADC Prisoners in Need of Immediate Medical, Dental, and/or Mental Health Care, relating to Kevin Smith, ADC 080294 (ADCRR00175477-00175488).

599. Letters from Plaintiffs' counsel regarding Russell Bailey, ADC 082591 (ADCRR00175489-00175490).

600. December 21, 2018 letter from Thomas Nosewicz regarding Terry Pitzer, ADC 091992, Eyman – Cook (ADCRR00175491-00175492).

601. Letters from Plaintiffs' counsel regarding Brady Brents, ADC 092862 (ADCRR00175493-00175501).

602. Letters from Plaintiffs' counsel regarding J.D. Merrick, ADC 099252 (ADCRR00175502-00175511).

603. Letters from Plaintiffs' counsel regarding Daniel Glover, ADC 101266 (ADCRR00175512-0017515).

604. Letters from Plaintiffs' counsel regarding Pedro Rojas, ADC 103714 (ADCRR00175516-00175520).

605. October 18, 2019 letter from Juliette Mueller and Corene Kendrick regarding Walter Nusz, ADC 103801, Lewis – Rast (ADCRR00175521-00175522).

606. December 5, 2017 letter from Corene Kendrick regarding George Wilson, ADC 104162, Tucson – Manzanita (ADCRR0175523-00175524).

607. December 5, 2017 letter from Corene Kendrick regarding Ricky Gillin, ADC 107255, Tucson – Rincon Health Unit (ADCRR00175525-00175527).

608. April 23, 2021 letter from Juliette Mueller and Alison Hardy regarding Barry Raff, ADC 107828 (ADCRR00175528-00175529).

609. March 30, 2020 letter from Amber Norris and Alison Hardy regarding John Estrada, ADC 108351, Florence – Central (ADCRR00175530-00175531).

610. March 27, 2020 letter from Amber Norris and Alison Hardy regarding Lester Nortonsen, ADC 110935, Florence – East (ADCRR00175532-00175535).

611. January 15, 2021 letter from David Fathi regarding Jason Dean, #112850 (ADCRR00175536-00175537).

612. Letters from Plaintiffs' counsel regarding Patrick Bradbury, ADC 114167 (ADCRR00175538 -00175580).

613. January 30, 2019 letter from Amber Norris and Thomas Nosewicz regarding Michael Brown, ADC 117743, Eyman – Meadows (ADCRR00175581-00175585).

614. Letters from Plaintiffs' counsel regarding Jeffrey Lutz, ADC 118302 (ADCRR00175586-00175596).

615. Letters from Plaintiffs' counsel regarding Richard Thompson, ADC 120349 (ADCRR00175597-00175602).

616. April 8, 2020 letter from Corene Kendrick and Gabriela Pelsinger regarding Joseph Assyd, ADC 120372 (ADCRR00175603-00175607).

617. Letters from Plaintiffs' counsel regarding William Upton, ADC 128149 (ADCRR00175608-00175643).

618. December 13, 2013 letter from Corene Kendrick regarding James Harrod, 136270, Eyman – Browning (ADCRR00175644-00175645).

619. March 27, 2020 letter from Amber Norris and Corene Kendrick regarding Jerry Hubbard, ADC 140843, Florence – East (ADCRR00175646-00175649).

620. Letters from Plaintiffs' counsel regarding Alphonso Martinez, ADC 143560 (ADCRR00175650-00175654).

621. Letters from Plaintiffs' counsel regarding Anthony Miller, ADC 145589 (ADCRR00175655-00175683).

622. October 5, 2020 letter from David Fathi regarding Tracie Otero, ADC No. 151002, ASPC-Perryville Santa Cruz (ADCRR00175684-00175688).

623. January 3, 2018 letter from Rita Lomio and Sarah Hopkins regarding Richard Vazquez, ADC 157401, Tucson – Rincon (ADCRR00175689-00175691).

624. January 2, 2018 letter from Corene Kendrick regarding Patrick McKnelly, ADC 158707, Tucson – Manzanita (ADCRR00175692-00175693).

625. April 9, 2021 letter from Gabriela Pelsinger regarding Michael Evilsizor, ADC 161614, Tucson – Whetstone (ADCRR00175691-00175696).

626. August 27, 2019 letter from Amber Norris and Thomas Nosewicz regarding Lawrence Cardwell, ADC 164175, Eyman – SMU I (ADCRR00175697-00175699).

627. Letters from Plaintiffs' counsel regarding Wayman Walker, ADC 168263 (ADCRR00175700-00175705).

628. Letters from Plaintiffs' counsel regarding John Allen, ADC 168873 (ADCRR00175706-00175710).

629. March 30, 2020 letter from Tania Amarillas and Rita Lomio regarding Pablo Celaya, ADC 170888, Florence – South (ADCRR00175711-00175712).

630. Letters from Plaintiffs' counsel regarding Michael Valasquez, ADC (ADCRR00175713-00175752).

631. July 20, 2020 letter from Amber Norris and Corene Kendrick regarding James Stites, ADC 176078, Eyman – Meadows (ADCRR00175753-00175755).

632. July 9, 2016 letter from Corene Kendrick regarding Brian Finkel, 182486, Florence – South (ADCRR00175756-00175769).

633. Letters from Plaintiffs' counsel regarding Charles Trask, ADC 188597 (ADCRR00175770-00175782).

634. April 5, 2019 letter from Thomas Nosewicz regarding Johnny Black, ADC 191874, Tucson – Rincon (ADCRR00175783-00175785).

635. October 8, 2019 letter from Gabriela Pelsinger and Corene Kendrick regarding Todd Young, ADC 193089, Tucson – Manzanita (ADCRR00175786-00175787).

636. April 1, 2021 letter from Ilian Meza-Pena and Rita Lomio regarding Kee Nelson Steah, ADC 200537, Lewis Bachman (ADCRR00175788-00175789).

637. Letters from Plaintiffs' counsel regarding Bradley Schwartz, ADC 207346 (ADCRR00175790-00175800).

638. September 25, 2020 letter from Juliette Mueller and Corene Kendrick regarding Sean Behan, ADC 209310, Lewis – Rast (ADCRR00175801-00175802).

639. March 14, 2019 letter from David Fathi regarding Peter Wludyka, ADC No. 225901, ASPC-Eyman, Meadows (ADCRR00175803-00175816).

640. December 11, 2015 letter from Alison Hardy regarding ADC Prisoners In Need of Immediate Care, relating to Adrian Zamora, ADC 226075 (ADCRR00175817-00175827).

641. July 21, 2017 letter from Corene Kendrick regarding Shad Knight, ADC 229034, Safford – Tonto (ADCRR00175828-00175829).

642. March 25, 2019 letter from Corene Kendrick regarding Keith Koskella, ADC 229196, Tucson – Rincon (ADCRR00175830-00175350).

643. June 2, 2020 letter from Amber Norris and Corene Kendrick regarding Krystal Davis, ADC 233531, Perryville – Santa Cruz (ADCRR00175851-00175852).

644. February 4, 2020 letter from Tania Amarillas and Rita Lomio regarding Stephen Karban, ADC 234332, Florence – South (ADCRR00175853-00175854).

645. Letters from Plaintiffs' counsel regarding Quadry Holland, ADC 243858 (ADCRR00175855-00175866).

646. Letters from Plaintiffs' counsel regarding Quadiem Cornish, ADC 245990 (ADCRR00175867-00175869).

647. Letters from Plaintiffs' counsel regarding Albert Dutton, ADC 250794 (ADCRR00175870-00175877).

648. January 29, 2019 letter from David Fathi regarding Patients in need of mental health/medical care relating to Rosalva Trevino, ADC 252096 (ADCRR00175878-00175879).

649. January 9, 2020 letter from Corene Kendrick regarding Gabriel Figueroa, ADC 258371, Tucson – Rincon (ADCRR00175880-00175886).

650. July 13, 2018 letter from Tania Amarillas and Corene Kendrick regarding Gregory Enkhaus, ADC 265067, Yuma – Dakota (ADCRR00175887).

651. September 17, 2020 letter from David Fathi regarding Rueben Neal, ADC No. 265762, ASPC-E SMU I CDU (ADCRR00175888-00175889).

652. February 14, 2020 letter from Amber Norris and Rita Lomio regarding Jose Munguia, ADC 266507, Eyman – Cook (ADCRR00175890-00175892).

653. July 8, 2019 letter from David Fathi regarding Sadie Johnson, ADC No. 273402, ASPC-Perryville (ADCRR00175893-00175896).

654. September 13, 2018 letter from Corene Kendrick regarding Edward Lucero, ADC 279621, Tucson – Rincon (ADCRR00175897-00175906).

655. December 20, 2018 letter from Tania Amarillas and Corene Kendrick regarding Carlos Hernandez, ADC 280770, Florence – South (ADCRR00175907-00175909).

656. Letters from Plaintiffs' counsel regarding Jason Robinson, ADC 284001 (ADCRR00175910-00175929).

657. April 26, 2019 letter from Amber Norris and Rita Lomio regarding Sean Adie, ADC 286463, Florence – Central (ADCRR00175930-00175931).

658. September 18, 2020 letter from David Fathi regarding Eric Haag, ADC No. 286490, ASPC-T Santa Rita (ADCRR00175932-00175933).

659. Letters from Plaintiffs' counsel regarding Mendoza Andrea, ADC 289872 (ADCRR00175934-00175943).

660. Letters from Plaintiffs' counsel regarding Antjuan Brisco, ADC 295826 (ADCRR001759447-00175955).

661. Letters from Plaintiffs' counsel regarding Christopher Brightly, ADC 296229 (ADCRR00175956-00175968).

662. Letters from Plaintiffs' counsel regarding Elson DeLong, ADC 298802 (ADCRR00175969-00175970).

663. Letters from Plaintiffs' counsel regarding Brandon Bolt, ADC 299035 (ADCRR00175971-00175982).

664. January 24, 2019 letter from Alison Hardy regarding Brian Garcia, ADC 302411, Eyman – Browning (ADCRR00175983-00175984).

665. Letters from Plaintiffs' counsel regarding Gregory Valenzuela, ADC 304312 (ADCRR00175985-00176000).

666. January 2, 2019 letter from Tania Amarillas and Rita Lomio regarding Joseph Shreve, ADC 309533, Florence – Central (ADCRR00176001-00176002).

667. August 19, 2019 letter from Amber Norris and Thomas Nosewicz regarding Lewis Elvira, ADC 310577, Eyman – Meadows (ADCRR00176003-00176005).

668. December 20, 2018 letter from Tania Amarillas and Rita Lomio regarding James King, ADC 312231, Florence – Central (ADCRR00176006-00176007).

669. April 1, 2020 letter from Ilian Meza-Pena and Alison Hardy regarding Virgil Fosjord, ADC 313627, Florence – Central (ADCRR00176008-00176012).

670. July 29, 2019 letter from David Fathi regarding David Neville, ADC No. 313762, ASPC-Tucson (ADCRR00176013-00176034).

671. Letters from Plaintiffs' counsel regarding Robert Kay, ADC 314530 (ADCRR00176035 -00176040).

672. Letters from Plaintiffs' counsel regarding Reyes Colvin, ADC 316886 (ADCRR00176041-00176045).

673. Letters from Plaintiffs' counsel regarding Franklin Macato, ADC 317331 (ADCRR00176046-00176050).

674. Letters from Plaintiffs' counsel regarding Warren Scott, ADC 320114 (ADCRR00176051-00176054).

675. April 29, 2021 letter from Juliette Mueller and Alison Hardy regarding Luis Grijalva, ADC 323344, Lewis – Stiner (ADCRR00176055-00176056).

676. January 17, 2019 letter from Amber Norris and Corene Kendrick regarding Manual Sanchez-Garcia, ADC 326505, Tucson – Rincon (ADCRR00176057-00176058).

677. May 17, 2019 letter from David Fathi relating to Michael Poirier, ADC No. 332320 (ADCRR00176059-00176073).

678. Letters from Plaintiffs' counsel regarding David Konie, ADC 334539 (ADCRR00176074-00176079).

679. September 16, 2020 letter from Gabriela Pelsinger and Corene Kendrick regarding Gray McAlister, ADC 342036, Tucson – Whetstone (ADCRR00176080-00176082).

680. February 2, 2021 letter from David Fathi regarding Austin Georgatos, ADC No. 346726 (ADCRR00176083-00176099).

681. ADCRR 3-day Mental Health Training materials (ADCRR00176100-00177005).

682. Arizona Department of Health Services Licensing data relating to ASPC-Perryville (ADCRR00177006-00177009 and ADCRR00177013).

683. Arizona Department of Health Services Licensing data relating to ASPC-Phoenix (ADCRR00177010-00177012 and ADCRR00177014).

684. Count for Mental Health Units, October 5, 2021 (ADCRR00177015).

685. Report detailing housing location and MH-Score, for all ADCRR inmates with a Mental Health Score of MH-3 or above, housed in corridor complexes as of October 3, 2021 (ADCRR00177016).

686. Summary of Mental Health programming offered at Eyman, Phoenix, Perryville, Lewis, and Tucson (ADCRR00177017-00177021).

687. Diamond Pharmacy report of mental health medications in August 2021 (ADCRR00177022-00177023).

688. Mental Health Activity Summary reports, by Unit, for the period from July 2019 to June 2020 (ADCRR00177024-00177903).

689. Mental Health Activity Summary reports, by Unit, for the period from July 2018 to June 2019 (ADCRR00177904-00178883).

690. Comparisons of Centurion Mental Health Staffing, during the period from 2019 to 2021 (ADCRR00178884-00178885).

691. Comparison of Corizon Mental Health Staffing, during the period from 2013 to 2018 (ADCRR00178886).

692. Distribution of ADCRR population by Mental Health Score, for the week beginning September 20, 2021 (ADCRR00178887-00139236).

693. Comparison of Mental Health Staffing Levels by Complex, from 2012 and 2021 (ADCRR00178888).

694. ADCRR monthly data relating to incidents of self-injurious behavior, during the period from January 2020 to August 2021 (ADCRR00178889).

695. Report of in-custody suicides from 2016 through September 2021 (ADCRR00178890).

696. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Douglas (ADCRR00178891-00178911).

697. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Eyman (**ADCM1600252-1600262; ADCM1600540-1600543, ADCM1666753-1666762; ADCM1667055-1667059;** ADCRR00178912-00178977**; and, ADCRR00210142-00210151**).

698. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Florence (**ADCM1600748; ADCM1667374;** ADCRR00178978-00178996**; and, ADCRR00210152**).

88

699. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Lewis (**ADCM1608040-1608042; ADCM1667820-1667822,** ADCRR001789997-00179050**; and, ADCRR00210153-00210155**).

700. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Perryville (ADCRR00179051-00179090).

701. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Phoenix (ADCRR00179091-00179120).

702. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Safford (ADCRR00179121-00179150).

703. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Winslow (ADCRR00179151-00179186).

704. Exemplar 2019, 2020, and 2021 Unit Clocks from ASPC-Yuma (ADCRR00179187-00179208).

705. Institutional File for Robert Gamez, #131401 (ADCRR00179209-00180134).

706. **ADCRR Departmental Order 804 – Inmate Behavior Control (ADCRR00098846-00098879).**

707. **March 23, 2021 Memorandum from Kevin Curran and Juli Roberts to ADCRR Wardens regarding Standardized Temperature Checks (ADCRR00172370-00172372).**

708. **ADCRR Departmental Order 803 – Inmate Disciplinary Procedure (ADCRR00210096-00210130).**

709. **ADCRR Institutional Capacity Committed Population, July 1, 2019 (ADCRR00210131-00210133).**

710. **ADCRR Institutional Capacity Committed Population, October 18, 2021 (ADCRR00210134-00210136).**

711. **ADC Monthly Staffing data, for the period from July 2009 to June 2012 (ADCRR00210137).**

712. **ADCRR Inmate – Policy Notification No. 21-09, issued March 15, 2021 (ADCRR00210138-00210141).**

713. **Excerpted medical records for James Robinson, #284001 (ADCRR00210156-00210331).**

714. **Excerpted section 1.23 from Request for Proposal, Socilitation No. BMP003905, Inmate Correctional Healthcare (ADCRR00210336-00210342).**

715. **August 2021 Report of Chronic Care Patients (ADCRR00210343).**

716. **Summary of ADCRR Current Population (ADCRR00210344).**

717. **HEDIS Data Collection Methods (ADCRR00210345-00210346).**

718. **HEDIS Average of Most Recent A1C for Diabetic Patients (ADCRR00210347-00210350).**

719. **HEDIS Average of Most Recent Blood Pressure Data for Cardiovascular/Hypertension Patients (ADCRR00210351).**

720. **HEDIS Average of Most Recent Blood Pressure Data for Diabetic Patients (ADCRR00210352).**

721. **Centurion HCV Treatment Up-Date, August 31, 2021 (ADCRR00210353-00210359).**

722. **NCCHC Standards for Health Services in Prisons, 2014.**

723. **NCCHC Standards for Health Services in Prisons, 2018 (ADCRR00210360-00210539).**

724. **1989 APA Guidelines regarding Mental Health Staffing (ADCRR00210557).**

725. **Treating Biopolar Disorder:  A Quick Reference Guide (ADCRR00210558-00210581).**

726. **October 2021 BJS Report, *Suicide in Local Jails and Stated and Federal Prisons, 2000-2019 – Statistical Tables* (ADCRR00210582-00210617).**

727. **Compilations of Monthly Mental Health Data from monthly Clinical Data Reports (ADCRR00210618 and ADCRR00210705).**

728. **2018 AAPL Practice Resource for Prescribing in Corrections (ADCRR00210619-00210668).**

729. **2013 Journal of Correctional Health Care article, Bupropion Diversion and Misused in the Correctional Facility (ADCRR00210669-00210676).**

730. **Treating Major Depressive Disorder:  A Quick Reference Guide (ADCRR00210677-00210704).**

90

731. **2013 JAAPL article, A Longitudinal Study of Administrative Segregation (ADCRR00210706-00210717).**

732. **2017 NIJ Journal article, Reflections on Colorado's Administrative Segregation Study (ADCRR00210717-00210725).**

733. **Trileptal (Oxcarbazepine) product monograph, revised June 4, 2021 (ADCRR00210726-00210794).**

734. ADCRR documents relating to conditions of confinement in maximum custody units, as defined by the Class Certification Order, during the period from July 1, 2018 until the time of trial.

735. ADCRR and Centurion documents relating to the provision of medical, mental health, and dental care to inmates detained at the ten Arizona State Prison Complexes identified in the Class Certification Order, during the period from January 1, 2019 until the time of trial.

736. eOMIS medical records for any and all inmates identified on the lists exchanges by the parties of records viewed by experts through the time of trial.

737. Any and all information posted on social media accounts (including but not limited to Facebook, Instagram, Twitter, LinkedIn, TikTok, YouTube, SnapChat, Pinterest, Reddit, OnlyFans, etc.) created, used, and/or maintained by any current or former inmate, Corizon employee, or ADCRR employee, who may be called during Plaintiffs' case-in-chief.

738. Documentation relied upon and/or produced by any expert retained to offer testimony at trial.

739. All deposition transcripts and exhibits from testimony provided in this matter unless otherwise objected to.

740. Any reports prepared by an expert in this case.

741. Curricula vitae of all Defendants' expert witnesses.

742. Demonstrative exhibits for use at trial.

743. Without waiving any objections, any and all exhibits identified by any other parties, even if later withdrawn.

744. Without waiving any objections, any and all documents listed or identified by any party in response to interrogatories, requests for production, or requests for admissions, including but not limited to those documents produced by

Defendants in response to Plaintiffs' First and Second Requests for Production, and any supplemental productions thereto.

745. All discovery responses by Plaintiffs and responses to the same in interrogatories, requests for production, or requests for admissions submitted by any party, including supplemental responses.

746. Any and all documents disclosed by Plaintiffs.

By disclosing the above documents, Defendants do not stipulate to the ultimate admissibility of these documents at trial and hereby preserves all available objections to admissibility provided by the Federal Rules of Evidence, Federal Rules of Civil Procedure, and orders issued by the Court in this matter.   Defendants anticipate that additional documents/tangible evidence will be identified as discovery continues and will supplement at that time.

DATED this 22nd day of October, 2021.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Daniel P. Struck
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

92

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on October 22, 2021, I electronically transmitted the attached document to the following attorneys of record:

3

4

Alison Hardy:               ahardy@prisonlaw.com

Asim Dietrich:              adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;

5                                    phxadmin@azdisabilitylaw.org

6

Austin C. Yost:             ayost@perkinscoie.com; docketPHX@perkinscoie.com

7

Corene T. Kendrick:         ckendrick@aclu.org

8

Daniel Clayton Barr:        DBarr@perkinscoie.com; docketphx@perkinscoie.com;

9                                    sneilson@perkinscoie.com

David Cyrus Fathi:          dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

10

Donald Specter:             dspecter@prisonlaw.com

11

Eunice Cho                  ECho@aclu.org

12

Jared G. Keenan             jkeenan@acluaz.org

13

John Howard Gray:           jhgray@perkinscoie.com; slawson@perkinscoie.com

14

Jose de Jesus Rico:         jrico@azdisabilitylaw.org

15

Karl J. Worsham:            kworsham@perkinscoie.com; docketphx@perkinscoie.com

16

Kathryn E. Boughton:        kboughton@perkinscoie.com; docketphx@perkinscoie.com

17

Kelly Soldati              ksoldati@perkinscoie.com; docketphx@perkinscoie.com

18

Maria V. Morris             mmorris@aclu.org

19

Maya Abela                  mabela@azdisabilitylaw.org

20

Mikaela N. Colby:           mcolby@perkinscoie.com; docketphx@perkinscoie.com

21

Rita K. Lomio:              rlomio@prisonlaw.com

22

Rose Daly-Rooney:           rdalyrooney@azdisabilitylaw.org

23

Sara Norman:                snorman@prisonlaw.com

24

Sophie Jedeikin Hart        sophieh@prisonlaw.com

25

Victoria Lopez:             vlopez@acluaz.org

26

27

28

93

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following:

N/A

/s/ Daniel P. Struck

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

VICTOR PARSONS; SHAWN JENSEN;          )
STEPHEN SWARTZ;DUSTIN BRISLAN;         )
SONIA RODRIGUEZ; CHRISTINA             )
VERDUZCO; JACKIE THOMAS; JEREMY        )
SMITH; ROBERT GAMEZ; MARYANNE          )
CHISHOLM; DESIREE LICCI; JOSEPH        )
HEFNER; JOSHUA POLSON; and             )
CHARLOTTE WELLS, on behalf of          )
themselves and all others             )
similarly situated; and ARIZONA        )
CENTER FOR DISABILITY LAW,             )
                                       )
                Plaintiffs,            )
                                       )Case No.
v.                                     )CV 12-00601-PHX-ROS
                                       )
DAVID SHINN, DIRECTOR, ARIZONA         )
DEPARTMENT OF CORRECTIONS,             )
REHABILITATION AND REENTRY; and        )
LARRY GANN, ASSISTANT DIRECTOR,        )
MEDICAL SERVICES CONTRACT              )
MONITORING BUREAU, ARIZONA             )
DEPARTMENT OF CORRECTIONS,             )
REHABILITATION AND REENTRY, in         )
their official capacities,             )
                                       )
                Defendants.            )

DEPOSITION OF ASHLEY PELTON, Ph.D.

Via Zoom Videoconference
October 6, 2021
9:00 a.m.
Phoenix, Arizona

Glennie Reporting Services, LLC
1555 East Orangewood Avenue
Phoenix, Arizona 85020          Prepared by:
602.266.6535                    Robin L. B. Osterode
www.glennie-reporting.com       CSR, RPR
                                CA CSR No. 7750
                                AZ CR No. 50695

2

1                                I N D E X

2    WITNESS                                                    PAGE

3    ASHLEY PELTON, Ph.D.

4            Examination by Mr. Fathi                            6

5

6

7

8                          INDEX TO EXHIBITS

9    Description                                                Page

10   Exhibit 1   Curriculum vitae of Ashley Pelton,            14
                 M.A.; 4 pages
11
     Exhibit 2   Defendants' First Supplemental               29
12               Pretrial Disclosure Statement;
                 12 pages
13
     Exhibit 3   Document entitled "Parsons Named             42
14               Plaintiffs"; 1 page

15   Exhibit 4   Document entitled "Suicides in ADC           53
                 Custody, January 1, 2019 - present";
16               1 page

17   Exhibit 5   Document entitled "Files Reviewed            62
                 by Pablo Stewart"; 4 pages
18
     Exhibit 6   Bates stamped documents                     158
19               ADCRRM0000069 - ADCRRM0000077

20   Exhibit 7   Bates stamped documents                     161
                 ADCRRM0000122 - ADCRRM0000132
21
     Exhibit 8   Bates stamped documents                     168
22               ADCRRM0000170 - ADCRRM0000183

23   Exhibit 9   Bates stamped documents                      84
                 ADCRRM0019588 - ADCRRM0019591
24
     Exhibit 10 (Not marked in this deposition.)              --
25

3

1   INDEX (Continued):

2                       INDEX TO EXHIBITS
   Description                                      Page

3
   Exhibit 11 Document entitled "Continuous          180
4              Quality Improvement (CQI) CQI
               Meeting Attendance Sheet," dated
5              December 10, 2020; 8 pages

6   Exhibit 12 Bates stamped documents              185
               ADCRRM0018560 - ADCRRM0018568
7
   Exhibit 13 (Not marked in this deposition.)       --
8
   Exhibit 14 Bates stamped documents              187
9              ADCRRM00056541 - ADCRRM00056587

10  Exhibit 15 Document entitled "ADC               223
               Institutional Capacity Committed
11             Population"; 3 pages

12

13

14
                    INSTRUCTION NOT TO ANSWER
15
                        Page     Line
16
                         30       16
17                       31        3
                         31       12
18                       48        3

19

20

21

22

23

24

25

4

1              DEPOSITION OF ASHLEY PELTON, Ph.D.

2              The deposition of ASHLEY PELTON, Ph.D., via

3    Zoom Videoconference, was taken on October 6, 2021,

4    commencing at 9:00 a.m., at Phoenix, Arizona, before

5    ROBIN L. B. OSTERODE, RPR, CSR, California Shorthand

6    Reporter No. 7750 and Arizona Certified Reporter

7    No. 50695.

8

9    APPEARANCES:

10   For Plaintiffs:

11           ACLU NATIONAL PRISON PROJECT
             By: David C. Fathi
12           915 15th Street N.W., 7th Floor
             Washington, D.C. 20005
13           (202) 548-6603
             dfathi@aclu.org
14           (Videoconference appearance.)

15           ACLU NATIONAL PRISON PROJECT
             By: Corene Kendrick
16           39 Drumm Street
             San Francisco, California 94111
17           (202) 393-4930
             ckendrick@aclu.org
18           (Videoconference appearance.)

19   For Defendants:

20           STRUCK LOVE BOJANOWSKI & ACEDO, PLC
             By: Anne M. Orcutt
21           3100 West Ray Road, Suite 300
             Chandler, Arizona 85226
22           (480) 420-1616
             aorcutt@strucklove.com
23           (Videoconference appearance.)

24

25

5

1    APPEARANCES (Continued):

2    For Nonparty Centurion, LLC and Deponent:

3            BROENING OBERG WOODS & WILSON, P.C.
             By: Sarah L. Barnes
4            2800 North Central Avenue, Suite 1600
             Phoenix, Arizona 85004
5            (602) 271-7793
             slb@bowwlaw.com
6            (Videoconference appearance.)

7    Also Present:

8            Jessica Carns
             (Videoconference appearance.)
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Ashley Pelton, Ph.D. - 10/06/2021

26

1      Q.    And what does that entail?

2      A.    I am new to the role, so I'm still figuring out

3   everything, but it entails supervising the mental health

4   leads across the state, and ensuring quality treatment

5   for the incarcerated population.

6      Q.    As regional mental health director, do you

7   provide any direct patient care?

8      A.    Minimally, no.  No, I do not.

9      Q.    What was your position before regional mental

10  health director?

11     A.    I was the clinical director, and oversaw

12  Perryville and Phoenix Complexes' mental health programs.

13     Q.    And what dates did you have that position?

14     A.    That was approximately July of 2020.

15     Q.    Until August of 2021?

16     A.    Correct.

17     Q.    And what were your job duties in that position?

18     A.    I oversaw the inpatient and residential

19  programs, and assisted with adequate treatment to our

20  incarcerated population.

21     Q.    And your duties were limited to the Perryville

22  and Phoenix Complex?

23     A.    Correct.

24     Q.    Did you, as part of your job duties, provide

25  any direct patient care?

1  expert?

2      A.    No.

3      Q.    Do you know which expert it was?

4      A.    I do not.

5            MR. FATHI:  All right.  Let's go back to

6  Exhibit 2, please.  Okay.  Page 12, please.  And scroll a

7  little bit down, please.  Thank you.

8      Q.    So, Dr. Pelton, about five or six lines from

9  the bottom of the paragraph pertaining to you, it says,

10  "Dr. Pelton will testify regarding the individualized

11  mental healthcare of the named plaintiffs, along with any

12  other inmates who testify at trial or who are referred to

13  by plaintiffs' experts in their reports, declarations

14  prepared for trial, and/or live testimony."

15            Do you see that quote, Dr. Pelton?

16      A.    I do.

17      Q.    Is that a correct statement of the testimony

18  you're going to give in this case?

19            MS. ORCUTT:  Form.

20            THE WITNESS:  To the best of my ability, yes.

21            MR. FATHI:  Okay.  Could we have Exhibit 3,

22  please?

23            (Marked for identification Exhibit 3.)

24  BY MR. FATHI:

25      Q.    Dr. Pelton, I'm showing you Exhibit 3, which is

43

1  a list of the named plaintiffs in this case.  The first

2  group are people who are currently named plaintiffs, the

3  second group is people who we have moved the Court to add

4  as named plaintiffs, that motion is still pending, and

5  the third group is people who have been released.  So I'm

6  not concerned about the third group, the release group.

7            So looking at the first two groups, have you

8  directly treated any of these patients?

9            MS. ORCUTT:  Form.

10            THE WITNESS:  I believe I have directly treated

11  some of them, yes.

12  BY MR. FATHI:

13      Q.    Which ones?

14      A.    Christina Verduzco, Jonathan Gonzalez.  I

15  believe those are the only two that I directly provide

16  treatment for.

17      Q.    When was the last time you provided treatment

18  to Ms. Verduzco?

19      A.    Direct care probably would have been three to

20  four years ago.

21      Q.    And when was the last time you provided

22  treatment to Mr. Gonzalez?

23            MS. ORCUTT:  Form.

24            THE WITNESS:  It would be approximately one to

25  two years ago, I believe.

 1  specifically.

 2  BY MR. FATHI:

 3      Q.    And that is the testimony that you are planning

 4  to give at trial?

 5            MS. ORCUTT:  Form.

 6            THE WITNESS:  I'm planning to provide general

 7  statements surrounding her treatment.

 8  BY MR. FATHI:

 9      Q.    Including treatment provided by other people

10  besides yourself?

11      A.    I'm not able to speak to their direct

12  specific -- the specificities of it, but, yes, I can

13  speak in terms of generality.

14      Q.    I'm sorry.  I'm trying to ask a simple

15  question.  Are you going to testify about treatment that

16  Ms. Verduzco has received in the Arizona Department of

17  Corrections other than the treatment that you, yourself,

18  have provided her?

19            MS. ORCUTT:  Form.

20            THE WITNESS:  Yes.

21  BY MR. FATHI:

22      Q.    Okay.  Same question with Mr. Gonzalez.  Are

23  you planning to testify at trial about his mental health

24  treatment?

25      A.    Yes.

Ashley Pelton, Ph.D. - 10/06/2021

46

1      Q.    And will you be testifying only about the

2    treatment that you personally have rendered to

3    Mr. Gonzalez or will you also testify about the treatment

4    that others have rendered to him in the Arizona

5    Department of Corrections?

6              MS. ORCUTT:  Form.

7              THE WITNESS:  I can speak to the other.

8    BY MR. FATHI:

9      Q.    I'm sorry.  I didn't hear your answer.

10     A.    Can you ask the question again, please?

11     Q.    Will you be testifying about the treatment that

12   other clinicians and providers, other than yourself, have

13   rendered to Mr. Gonzalez in the Arizona Corrections?

14             MS. ORCUTT:  Form.

15             THE WITNESS:  Yes.

16   BY MR. FATHI:

17     Q.    Okay.  Now, going back to Exhibit 3, and again,

18   not looking at the third category that's labeled

19   "Released," have you reviewed the medical records of any

20   of these patients?

21             MS. ORCUTT:  Form.

22             THE WITNESS:  No -- or I have for one other.

23   BY MR. FATHI:

24     Q.    And who is that?

25     A.    Dustin Brislan.

1      Q.    And when did you review Mr. Brislan's record?

2      A.    I don't know the specific dates, but

3  periodically I -- due to Mr. Brislan being in mental

4  health programming, I have reviewed his case.

5      Q.    When was the last time you reviewed his medical

6  record?

7            MS. ORCUTT:   Form.

8            THE WITNESS:   I don't -- I don't know the

9  specifics, but probably within the last few weeks.

10  BY MR. FATHI:

11     Q.    And what was the purpose of reviewing

12  Mr. Brislan's medical record?

13     A.    I had looked at it in terms of knowing he was a

14  potential plaintiff, and then I've looked at his in terms

15  of being in the mental health program as well in the

16  past.

17     Q.    Did you review Mr. Brislan's record because

18  you're planning to testify in this case about the care

19  that he has received?

20            MS. ORCUTT:   Form.

21            THE WITNESS:   I've briefly looked at his record

22  in the last few weeks with regards to this case, yes, but

23  I did not look at the entirety.

24  BY MR. FATHI:

25     Q.    Who asked you to review Mr. Brislan's record?

Ashley Pelton, Ph.D. - 10/06/2021

50

1          THE WITNESS:  I haven't decided.  I don't --
2    BY MR. FATHI:
3       Q.    And how are you going to make that decision?
4          MS. ORCUTT:  Form.
5          THE WITNESS:  I haven't decided how I'll make
6    that decision at this time.
7    BY MR. FATHI:
8       Q.    Dr. Pelton, other than Ms. Verduzco and
9    Mr. Gonzalez, who we've already discussed, are you
10   planning to testify about the mental health treatment
11   received by any of the people on this list?
12         MS. ORCUTT:  Form.
13         THE WITNESS:  Yes.
14         Can I take a break?
15         MS. BARNES:  Can we take a short break, please?
16   We've been going a little over an hour.  Just take a
17   five-minute break.
18         MR. FATHI:  Sure.
19         MS. BARNES:  Thank you.
20         (Recessed from 10:04 a.m. until 10:14 a.m.)
21   BY MR. FATHI:
22      Q.    Dr. Pelton, during the break, did you
23   communicate with anyone in any way, other than your
24   counsel, e-mail, text, telephone?
25      A.    No.

55

1      Q.    Yes.  This is a list of everyone in the Arizona

2   Department of Corrections who died by suicide between

3   January 1, 2019 and the present, and the question is,

4   have you directly treated any of these patients?

5      A.    Yes.

6      Q.    Which ones?

7      A.    Feleke.

8      Q.    Could you spell that for the court reporter,

9   please?

10      A.    F-e-l-e-k-e.

11      Q.    Who else?

12      A.    I believe the only other person I personally

13   treated was Anthony Rinaldi.

14      Q.    Okay.  First, with Mr. Feleke, when was the

15   last time you directly treated him?

16          MS. ORCUTT:  Form.

17          THE WITNESS:  It would have been in 2019.

18   BY MR. FATHI:

19      Q.    So it would have been between January 1st,

20   2019, and his death on March 3rd, 2019?

21      A.    That would be correct.

22      Q.    And what treatment did you provide to him?

23          MS. ORCUTT:  Form.

24          THE WITNESS:  I believe it was individual

25   therapy.

Ashley Pelton, Ph.D. - 10/06/2021

56

1   BY MR. FATHI:

2       Q.    And how many times?

3       A.    I would have to review my records.

4       Q.    So you don't know?

5             MS. ORCUTT:  Object to the form.

6             THE WITNESS:  No, not off the top of my head.

7   BY MR. FATHI:

8       Q.    Mr. Rinaldi, when was the last time you treated

9   him?

10            MS. ORCUTT:  Form.

11            THE WITNESS:  It would have been either in 2019

12  or 2020, I believe.

13  BY MR. FATHI:

14      Q.    And what was the treatment you provided?

15            MS. ORCUTT:  Form.

16            THE WITNESS:  I'd have to review my records for

17  the specifics.

18  BY MR. FATHI:

19      Q.    And how many times did you provide treatment to

20  him?

21      A.    I'm not sure of the exact number.

22      Q.    Are you planning to testify at trial about the

23  mental health treatment received by Mr. Feleke?

24            MS. ORCUTT:  Form.

25            THE WITNESS:  I'm not sure.

1   for purposes of your trial -- your testimony at the trial
2   of this matter?
3            MS. ORCUTT:  Form.  Asked and answered.
4            THE WITNESS:  I've not decided yet.
5   BY MR. FATHI:
6       Q.    And I assume same answer, you don't know how
7   you're going to decide?
8       A.    That is correct.
9            MS. ORCUTT:  Form.
10  BY MR. FATHI:
11      Q.    When are you going to decide?
12           MS. ORCUTT:  Form.
13           THE WITNESS:  I've not decided yet.
14  BY MR. FATHI:
15      Q.    When are you going to decide?
16           MS. ORCUTT:  Form.
17           THE WITNESS:  I don't know.
18           MR. FATHI:  All right.  Let's have Exhibit 5,
19  please.
20           (Marked for identification Exhibit 5.)
21  BY MR. FATHI:
22      Q.    All right.  Dr. Pelton, Exhibit 5 is a list
23  that we have disclosed to the defendants in this case of
24  the records that have been reviewed by our psychiatric
25  expert, Dr. Pablo Stewart.  Now, there's some names on

63

1  this list that also appeared on previous lists, so if

2  there's someone we've already discussed, you don't need

3  to mention them or discuss them again.  This list is four

4  pages long, so I would like to ask you to review each --

5  review it page by page and tell me which of these

6  patients you have directly treated?

7         MS. ORCUTT:  Form.

8         THE WITNESS:  I'm not sure that I can

9  accurately answer that without reviewing the health

10 records.

11 BY MR. FATHI:

12    Q.   Well, I'm asking you to do the best you can.

13 Let me know if you recognize any of these people that you

14 have directly treated.

15        MS. ORCUTT:  Form.

16        THE WITNESS:  Mr. Atkins.

17 BY MR. FATHI:

18    Q.   Terry Atkins?

19    A.   Correct.

20    Q.   Who else?

21    A.   Mr. Robert Bond.  I'm not sure which Crawfords

22 those are.  I'd have to review their records.

23    Q.   Well, David Crawford was one of the people who

24 died by suicide, and we've discussed him, so you don't

25 need to discuss him again.

Ashley Pelton, Ph.D. - 10/06/2021

64

```
 1              Did you also treat Michael Crawford?
 2              MS. ORCUTT:  Form.
 3              THE WITNESS:  I would have to review -- I would
 4      have to review the report to see whether or not it's the
 5      same Mr. Crawford that I'm thinking of in my mind.
 6      BY MR. FATHI:
 7         Q.    Okay.  Who else?
 8         A.    I believe I've seen Mr. Roger Elliott.
 9         Q.    And when you say "seen" -- I'm asking
10      specifically about people you provided direct treatment
11      to.  Is that what you're referring to as "seen"?
12         A.    Yes.
13              MS. ORCUTT:  Form.
14              THE WITNESS:  Correct.
15      BY MR. FATHI:
16         Q.    Okay.  And let us know when you're done with
17      this page.
18         A.    I believe I'm done with this page, but I may
19      have missed some people.
20              MS. ORCUTT:  David, can you confirm that the
21      page cuts off with Andrew Fancey?  That's what I see on
22      my screen.
23              MR. FATHI:  (No audible response.)
24              MS. ORCUTT:  Okay.
25      BY MR. FATHI:
```

1      Q.    Okay.  Next page.  And, again, please let us
2  know when you're ready to -- are -- I guess we need to
3  scroll down a little bit at some point.
4      A.    I don't believe I've provided any direct care
5  for any of these individuals.
6      Q.    Okay.  Thank you.  Let's scroll down so we get
7  the last few names on page 2.
8      A.    I may have met with Mr. Murrieta for individual
9  therapy.
10     Q.    Okay.  And let us know when you're ready for
11  page 3.
12     A.    I'm ready for page 3.  I provided care for
13  Rahmatulla.  I believe I've provided care for Mr. Michael
14  Robinson.  I've provided care for Mr. Samocki.  I may
15  have provided care for a Mr. Snead in treatment.  I may
16  be missing some, just given that I know some of these
17  individuals and don't necessarily provide direct
18  treatment.
19          Can you scroll down, please.
20          I believe I provided treatment for Mr. Wick.
21     Q.    All right.  Are you ready for the final page?
22     A.    Yes.  I don't believe I've provided any
23  treatment for any of these individuals.
24     Q.    Okay.  Other than the names that you just
25  listed and other than people we've already discussed

1   today, to the best of your knowledge, you haven't

2   provided treatment to anybody else on this list; is that

3   correct?

4            MS. ORCUTT:  Form.

5            THE WITNESS:  To the best of my knowledge, that

6   is correct.  Without reviewing the record, I'm unable to

7   fully answer the question.

8   BY MR. FATHI:

9       Q.   And it seems like all of these patients are or

10  were at the time either at Phoenix or Florence; is that

11  correct?

12           MS. ORCUTT:  Form.

13           THE WITNESS:  That would not be correct, as

14  some of these individuals -- well, would have been

15  at -- or would have been at Perryville, unless they were

16  at Phoenix when Phoenix still had the women's prison --

17  or had the women inpatient --

18  BY MR. FATHI:

19      Q.   I'm sorry, I believe everyone you listed is

20  male.  Correct?

21           MS. BARNES:  David, can you repeat that

22  question?

23  BY MR. FATHI:

24      Q.   Everyone you listed, the names you just listed,

25  Atkins, Bond, Elliott, Murrieta, Rahmatulla, Robinson,

Ashley Pelton, Ph.D. - 10/06/2021

1             THE WITNESS:  I can't recall the day I went to

2    Lewis, but I believe it was approximately two to three

3    years ago.

4    BY MR. FATHI:

5        Q.   And Lewis was just one day.  Correct?

6             MS. ORCUTT:  Form.

7             THE WITNESS:  To the best of my memory, I

8    believe it was only one day.

9    BY MR. FATHI:

10       Q.   Okay.  Let's go back to the -- to Exhibit 5 and

11   the people that you said you provided treatment to.

12            Mr. Atkins, when did you last provide treatment

13   to Mr. Atkins?

14            MS. ORCUTT:  Form.

15            THE WITNESS:  I believe it was approximately

16   two years ago.

17   BY MR. FATHI:

18       Q.   When did you last provide treatment to

19   Mr. Bond?

20            MS. ORCUTT:  Form.

21            THE WITNESS:  Approximately two to three years

22   ago.

23   BY MR. FATHI:

24       Q.   When did you last provide treatment to Mr. --

25            THE REPORTER:  Mister who?

```
 1              MR. FATHI:  Elliott, E-l-l-i-o-t-t.

 2              MS. ORCUTT:  Form.

 3              THE WITNESS:  Approximately two to four years

 4  ago.

 5  BY MR. FATHI:

 6      Q.   When did you last provide treatment to

 7  Mr. Murrieta, M-u-r-r-i-e-t-a?

 8              MS. ORCUTT:  Form.

 9              THE WITNESS:  It would have been approximately

10  two to three years ago.

11  BY MR. FATHI:

12      Q.   When did you last provide treatment to

13  Mr. Rahmatulla, R-a-h-m-a-t-u-l-l-a?

14              MS. ORCUTT:  Form.

15              THE WITNESS:  I believe the last time I

16  provided treatment was one to three years ago.

17  BY MR. FATHI:

18      Q.   When was the last time you treated

19  Mr. Robinson?

20      A.   I'm not sure without reviewing the record.  It

21  could have been within the last year.

22      Q.   Are you sure it was within the last year?

23      A.   No, I'm not.

24              MS. ORCUTT:  Form.

25  BY MR. FATHI:
```

Ashley Pelton, Ph.D. - 10/06/2021

72

1      Q.    When was the last time you treated Mr. Samocki,
2   S-a-m-o-c-k-i?
3            MS. ORCUTT:  Form.
4            THE WITNESS:  I don't know.
5            MS. BARNES:  David, quick question for you.
6   Can you tell me Mr. Robinson's first name?  I didn't
7   catch that.
8            MR. FATHI:  Michael.
9            MS. BARNES:  Thank you.
10  BY MR. FATHI:
11     Q.    I'm sorry, Doctor, you said you don't know when
12  the last time you treated Mr. Samocki was?
13           MS. ORCUTT:  Form.
14           THE WITNESS:  I don't recall the last date.  It
15  could have been anywhere from within the last year to
16  last three years?
17  BY MR. FATHI:
18     Q.    Are you sure it was within the last year?
19     A.    No, I'm not sure, unless I look at the record.
20     Q.    When was the last time you treated Mr. Snead,
21  S-n-e-a-d?
22           MS. ORCUTT:  Form.
23           THE WITNESS:  It would have likely been two to
24  three years ago.
25  BY MR. FATHI:

Ashley Pelton, Ph.D. - 10/06/2021

73

1      Q.    And when was the last time you treated
2   Mr. Wick?
3           MS. ORCUTT:  Form.
4           THE WITNESS:  I'm not sure of the last date,
5   but it could have been within the last year or it could
6   have been longer ago.
7   BY MR. FATHI:
8      Q.    Are you confident that it was within the last
9   year?
10          MS. ORCUTT:  Form.
11          THE WITNESS:  No, not without looking at the
12   record.
13   BY MR. FATHI:
14      Q.    All right.  So for these nine people we've
15   discussed: Mr. Atkins, Mr. Bond, Mr. Elliott,
16   Mr. Murrieta, Mr. Rahmatulla, Mr. Robinson, Mr. Samocki,
17   Mr. Snead, and Mr. Wick, are you planning to testify at
18   trial about the mental health treatment of any of these
19   patients?
20          MS. ORCUTT:  Form.
21          THE WITNESS:  I'm not sure.
22   BY MR. FATHI:
23      Q.    Why are you not sure?
24          MS. ORCUTT:  Form.
25          THE WITNESS:  I have not decided.

Ashley Pelton, Ph.D. - 10/06/2021

74

1  BY MR. FATHI:

2     Q.   And when are you going to make that decision?

3        MS. ORCUTT:  Form.

4        THE WITNESS:  I don't know.

5  BY MR. FATHI:

6     Q.   And how are you going to make that decision?

7        MS. ORCUTT:  Form.

8        THE WITNESS:  I don't know.

9  BY MR. FATHI:

10     Q.   What considerations will factor into your

11  decision?

12        MS. ORCUTT:  Form.

13        THE WITNESS:  I'm not sure yet.

14  BY MR. FATHI:

15     Q.   When are you going to make that decision?

16        MS. ORCUTT:  Form.  Asked and answered.

17        THE WITNESS:  I don't know.

18  BY MR. FATHI:

19     Q.   If you testify about the mental health

20  treatment received by any of these nine people, will you

21  be testifying only about the treatment that you,

22  yourself, have rendered or will you also be testifying

23  about the treatment rendered by other clinicians and

24  providers?

25        MS. ORCUTT:  Form.

Ashley Pelton, Ph.D. - 10/06/2021

75

```
 1              THE WITNESS:  I don't know.
 2   BY MR. FATHI:
 3      Q.    Why don't you know?
 4              MS. ORCUTT:  Form.
 5              THE WITNESS:  I don't know.
 6   BY MR. FATHI:
 7      Q.    No, my question is, why don't you know?
 8      A.    Yes.  I'm not sure why I don't know.
 9      Q.    All right.  Let's go back to Exhibit 5.  Other
10   than the people we've already discussed, are you planning
11   to testify at trial about the mental health treatment
12   received by any of these patients?
13              MS. ORCUTT:  Form.
14              THE WITNESS:  I don't know.
15   BY MR. FATHI:
16      Q.    And why don't you know the answer to that
17   question?
18              MS. ORCUTT:  Form.
19              THE WITNESS:  I don't know.
20   BY MR. FATHI:
21      Q.    When are you going to decide whether or not you
22   are going to testify at trial about the mental healthcare
23   received by any of these patients?
24              MS. ORCUTT:  Form.
25              THE WITNESS:  I've not decided.
```

Ashley Pelton, Ph.D. - 10/06/2021

76

1  BY MR. FATHI:

2      Q.    No, I said when are you going to decide whether

3  you are going to testify about the mental healthcare

4  received by any of these patients?

5              MS. ORCUTT:  Form.

6              THE WITNESS:  I don't know when I'm going to

7  decide.

8              Sorry.  Sorry, Anne.

9              MR. FATHI:  Yes, please don't talk over the

10  witness.

11     Q.    Will you give your answer again, Doctor?

12     A.    I don't know when I'm going to decide.

13     Q.    And what considerations will factor into your

14  decision whether or not you're going to testify about the

15  mental health treatment received by any of these

16  patients?

17             MS. ORCUTT:  Form.

18             THE WITNESS:  I don't know when I'm going

19  to -- or how I'm going to decide.

20  BY MR. FATHI:

21     Q.    Are you planning to review the records of any

22  of these patients on Exhibit 5 between now and the trial

23  of this matter?

24             MS. ORCUTT:  Form.

25             THE WITNESS:  I have not decided to.  A lot of

77

1    times I review records on an ongoing basis, so I don't

2    know the answer to that question.

3    BY MR. FATHI:

4        Q.    Are you going to review the records of anyone

5    listed on Exhibit 5 in preparation for your trial

6    testimony in this case?

7              MS. ORCUTT:  Form.

8              THE WITNESS:  I've not decided.

9    BY MR. FATHI:

10       Q.    When are you going to make that decision?

11             MS. ORCUTT:  Form.

12             THE WITNESS:  I don't know when I'm going to

13   make the decision.

14   BY MR. FATHI:

15       Q.    Are you going to make it in the next week?

16             MS. ORCUTT:  Form.

17             THE WITNESS:  I don't know.

18   BY MR. FATHI:

19       Q.    Are you going to make it in the next two weeks?

20             MS. ORCUTT:  Form.

21             THE WITNESS:  I don't -- I don't know.

22   BY MR. FATHI:

23       Q.    Are you going to make it in the next three

24   weeks?

25             MS. ORCUTT:  Form.

78

1              THE WITNESS:  I don't know.

2   BY MR. FATHI:

3      Q.    Who are you going to consult in making that

4   decision?

5              MS. ORCUTT:  Form.

6              THE WITNESS:  I've not decided.

7   BY MR. FATHI:

8      Q.    When are you going to decide who you're going

9   to consult in making that decision?

10             MS. ORCUTT:  Form.

11             THE WITNESS:  I don't know.

12  BY MR. FATHI:

13     Q.    What factors will be taken into consideration

14  in making that decision?

15             MS. ORCUTT:  Form.

16             THE WITNESS:  I don't know yet.

17  BY MR. FATHI:

18     Q.    Doctor, are you writing any kind of report that

19  is summarizing the testimony you're going to give in this

20  case?

21             MS. ORCUTT:  Form.

22             THE WITNESS:  I'm sorry, what's the question?

23  BY MR. FATHI:

24     Q.    Are you writing any kind of report or other

25  document that will summarize the testimony that you're

1   going to give in this case?

2           MS. ORCUTT:  Form.

3           THE WITNESS:  I have not written anything, no.

4   BY MR. FATHI:

5       Q.    Are you planning to write any report or other

6   document that will summarize the testimony you're giving

7   in this case?

8           MS. ORCUTT:  Form.

9           THE WITNESS:  I've not decided to write

10  anything.

11  BY MR. FATHI:

12      Q.    And when will you make that decision, Doctor?

13          MS. ORCUTT:  Form.

14          THE WITNESS:  It will be on an ongoing basis.

15  I don't know.

16  BY MR. FATHI:

17      Q.    And what considerations will be taken into

18  account in your decision whether or not to write a report

19  in this case?

20          MS. ORCUTT:  Form.

21          THE WITNESS:  I don't know.

22  BY MR. FATHI:

23      Q.    Other than the patients that we've already

24  discussed, those that are listed in Exhibits 3, 4, and 5,

25  are you planning to review the records of any other

1   patients in preparation for your testimony at the trial

2   of this case?

3              MS. ORCUTT:  Form.

4              THE WITNESS:  I'm not sure.

5   BY MR. FATHI:

6       Q.   Why are you not sure?

7              MS. ORCUTT:  Form.

8              THE WITNESS:  I've not decided if I'm going to

9   review records.

10  BY MR. FATHI:

11      Q.   And when will you make that decision?

12             MS. ORCUTT:  Form.

13             THE WITNESS:  I don't know.

14  BY MR. FATHI:

15      Q.   Why do you not know when you're going to make

16  that decision?

17             MS. ORCUTT:  Form.

18             THE WITNESS:  Because I don't know yet.

19  BY MR. FATHI:

20      Q.   No, I understand that.  My question is, why do

21  you not know when you're going to make that decision?

22             MS. ORCUTT:  Form.  Asked and answered.

23             MS. BARNES:  David, you've asked -- you've

24  asked this question repeatedly.  She's answered it

25  repeatedly that she does not know what she's going to

83

```
 1    Internet, on your phone, from a book, from notes, any

 2    form of information at all?

 3        A.    No.

 4              MR. FATHI:  Can we go back to Exhibit 2,

 5    please.  And page 12, please.

 6        Q.    Dr. Pelton, looking at Exhibit 2, page 12, the

 7    second -- the third-to-last line of the paragraph

 8    pertaining to you says, "Dr. Pelton will also testify

 9    pursuant to Federal Rule of Civil Procedure 26(a)(2)(c)."

10    Do you see that language?

11        A.    I do.

12        Q.    What does that mean?

13              MS. ORCUTT:  Form, foundation.

14              THE WITNESS:  I don't know.

15    BY MR. FATHI:

16        Q.    Dr. Pelton, will you be offering at the trial

17    of this case testimony about the adequacy of mental

18    healthcare in the Arizona Department of Corrections?

19              MS. ORCUTT:  Form.

20              THE WITNESS:  I don't know.

21    BY MR. FATHI:

22        Q.    If you offer that testimony, will your

23    testimony be limited to the treatment received by

24    patients that you have treated personally or will your

25    testimony go beyond people you have treated personally?
```

84

```
 1            MS. ORCUTT:  Form.

 2            THE WITNESS:  I don't know.

 3   BY MR. FATHI:

 4      Q.    And why do you not know the answer to those

 5   questions?

 6            MS. ORCUTT:  Form.

 7            THE WITNESS:  I'm not prepared for trial yet.

 8   BY MR. FATHI:

 9      Q.    When are you going to prepare for trial?

10            MS. ORCUTT:  Form.

11            THE WITNESS:  I'm not sure.

12   BY MR. FATHI:

13      Q.    What -- do you know what the trial date is in

14   this case?

15            MS. ORCUTT:  Form.

16            THE WITNESS:  I do not know the exact date.

17            MR. FATHI:  All right.  Let's go to Exhibit 9,

18   please.

19            (Marked for identification Exhibit 9.)

20   BY MR. FATHI:

21      Q.    Dr. Pelton, I'm showing you Exhibit 9, a

22   four-page document produced by the defendants in this

23   case.  The date is not on the document itself, but the

24   file name, as produced by the defendants, is "MS Roster,

25   4/27/21."
```

231

```
1   STATE OF ARIZONA      )
    COUNTY OF MARICOPA    )
2
           BE IT KNOWN that the foregoing proceedings
3   were taken before me; that the witness before testifying
    was duly sworn by me to testify to the whole truth; that
4   the foregoing pages are a full, true, and accurate record
    of the proceedings all done to the best of my skill and
5   ability; that the proceedings were taken down by me in
    shorthand and thereafter reduced to print under my
6   direction.

7          [X] Review and signature was requested.

8          [ ] Review and signature was waived.

9          [ ] Review and signature not required.

10          I FURTHER CERTIFY that I have complied with
    the ethical obligations set forth in the ACJA 7-206(F)(3)
11  and ACJA 7-206(J)(1)(g)(1) and (2).  Dated at Phoenix,
    Arizona, this 17th day of October, 2021.

12

13

14

15  _____
            ROBIN L. B. OSTERODE, RPR
16          CA CSR No. 7750
            AZ CR No. 50695
17
                *   *   *   *   *
18          I CERTIFY that Glennie Reporting Services,
    LLC, has complied with the ethical obligations set forth
19  in ACJA 7-206(J)(1)(g)(1) through (6).

20

21

22

23

24  _____
    GLENNIE REPORTING SERVICES, LLC
    Registered Reporting Firm
25  Arizona RRF No. R1035
```

# EXHIBIT D



**Parsons Named Plaintiffs**

- Robert Gamez, 131401, Eyman, SMU I South
- Shawn Jensen, 032465, Florence, East
- Joshua Polson, 187716, Lewis, Buckley
- Sonia Rodriguez, 103830, Perryville, San Pedro
- Jeremy Smith, 129438, Lewis, Rast Max
- Christina Verduzco, 205576, Perryville, Lumley MH Unit

Doc. 4006, Motion to Add Additional Named Plaintiffs and Amend Caption, 9/29/2021
- Dustin Brislan, 164993, Tucson, Rincon MH Program
- Jonathan Gonzalez, 247947, Eyman, Browning BMU
- Jason Johnson, 161509, Eyman, SMU I East
- Kendall Johnson, 189644, Perryville, Lumley SNU
- Laura Redmond, 166546, Perryville, San Carlos
- Ronald Slavin, 142019, Eyman, Cook

Released:
- Maryanne Chisholm, 200825
- Joseph Hefner, 203653
- Desiree Licci, 150051
- Victor Parsons, 123589 (deceased)
- Stephen Swartz, 102486
- Jackie Thomas, 211267
- Charlotte Wells, 247188

# EXHIBIT E

**EXHIBIT**

4 - A. Pelton - 10/06/21

exhibitsticker.com

## Suicides in ADC Custody, January 1, 2019 – present

|    | Last Name     | First Name | ADC No. | Date of Death | Location of Death         |
|----|---------------|------------|---------|---------------|---------------------------|
| 1  | Feleke        | Abebaw     | 132272  | 3/3/2019      | Phoenix, Flamenco MH      |
| 2  | Pantastico    | Kurt       | 295169  | 3/10/2019     | Eyman, Browning           |
| 3  | Poirier       | Michael    | 332320  | 5/16/2019     | Eyman, SMU I CDU          |
| 4  | Vandeveer     | Dirk       | 312224  | 5/17/2019     | Tucson, Whetstone         |
| 5  | Johnson       | Sadie      | 273402  | 7/2/2019      | Perryville, Santa Cruz II |
| 6  | Neville       | David      | 313762  | 7/22/2019     | Tucson, Winchester GP     |
| 7  | Ersery        | Vincent    | 56041   | 8/30/2019     | Lewis, Morey CDU          |
| 8  | Beck          | Gene       | 173474  | 2/21/2020     | Eyman, Cook               |
| 9  | Carr          | Ashley     | 341959  | 3/7/2020      | Perryville, Reception     |
| 10 | Rotondo       | Samuel     | 102015  | 3/21/2020     | Eyman, SMU I CDU          |
| 11 | Pruitt        | Patrick    | 308796  | 8/5/2020      | Winslow, Kaibab I         |
| 12 | Neal          | Rueben     | 265762  | 8/26/2020     | Eyman, SMU CDU            |
| 13 | Haag          | Eric       | 286490  | 9/13/2020     | Tucson, Santa Rita        |
| 14 | Otero         | Tracie     | 151002  | 9/22/2020     | Perryville, Santa Cruz I  |
| 15 | Dean          | Jason      | 112850  | 1/6/2021      | Lewis, Buckley I          |
| 16 | Georgatos     | Austin     | 346726  | 1/28/2021     | Lewis, Morey              |
| 17 | Brents        | Brandy     | 92862   | 2/3/2021      | Tucson, Rincon MHU        |
| 18 | Rothlisberger | Jason      | 321298  | 4/15/2021     | Eyman, SMU I CDU          |
| 19 | Crawford      | David      | 193652  | 5/31/2021     | Yuma, La Paz              |
| 20 | Ring          | Michael    | 39090   | 6/9/2021      | Tucson, Santa Rita        |
| 21 | DeLuna        | Mario      | 144268  | 8/28/2021     | Eyman, Browning           |
| 22 | Rinaldi       | Anthony    | 286650  | 9/8/2021      | Lewis, Buckley I          |

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; | ) |
| Stephen Swartz; Dustin Brislan; | ) No. |
| Sonia Rodriguez; Christina | ) CV 12-00601-PHX-ROS |
| Verduzco; Jackie Thomas; Jeremy | ) |
| Smith; Robert Gamez; Maryanne | ) |
| Chisholm; Desiree Licci; Joseph | ) |
| Hefner; Joshua Polson; and | ) |
| Charlotte Wells, on behalf of | ) |
| themselves and all others similarly | ) |
| situated; and Arizona Center for | ) |
| Disability Law, | ) |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) |
| David Shinn, Director, Arizona | ) |
| Department of Corrections, | ) |
| Rehabilitation and Reentry; and | ) |
| Larry Gann, Assistant Director, | ) |
| Medical Services Contract | ) |
| Monitoring Bureau, Arizona | ) |
| Department of Corrections, | ) |
| Rehabilitation and Reentry, in | ) |
| their official capacities, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

DEPOSITION OF WENDY MICHELLE ORM, M.D.
(via videoconference)

October 13, 2021
9:01 a.m.
Phoenix, Arizona

Glennie Reporting Services, LLC
1555 East Orangewood Avenue
Phoenix, Arizona 85020-5130

Prepared by:
602.266.6535                          Jennifer Honn, RPR
www.glennie-reporting.com             Arizona CR No. 50885

2

1                          I N D E X

2    WITNESS                                              PAGE

3    WENDY MICHELLE ORM, M.D.

4         Examination by Ms. Hardy                          7

5

6

7

8                      INDEX TO EXHIBITS

9    Description                                          Page

10   Exhibit 1     Curriculum Vitae                        13
                   Wendy M. Orm, M.D.
11
     Exhibit 2     Arizona Department of Corrections       19
12                 Rehabilitation & Reentry
                   Medical Services Technical Manual
13                 Appendix E, Sec. 2.0 Nursing
                   Encounter Tools (NETs) Symptom and
14                 Intervention Guide
                   (4 pages)
15
     Exhibit 3     Performance Measure 44 chart            39
16                 January 2021-July 2021

17   Exhibit 4     Arizona Department of Corrections       49
                   Rehabilitation & Reentry
18                 Medical Services Technical Manual
                   Appendix C, Sec. 2.0 Clinical Practice
19                 Guidelines for Evaluation and
                   Treatment for Viral Hepatitis C
20                 (9 pages)

21   Exhibit 5     Arizona Department of Corrections       72
                   Rehabilitation & Reentry
22                 Medical Services Technical Manual
                   Chapter 7, Sec. 2.0 Outside
23                 (Specialty) Care and Clinics
                   (3 pages)
24
     Exhibit 6     Performance Measure 50 chart            76
25                 January 2021-July 2021

3

1                    INDEX TO EXHIBITS (continued)

2    Description                                                Page

3    Exhibit 7    Condensed Health Services Encounter         84
                  (Confidential Information - Pursuant to
4                 Protective Order.)
                  (2 pages)
5
     Exhibit 8    Arizona Department of Corrections           87
6                 Rehabilitation & Reentry
                  Medical Services Technical Manual
7                 Chapter 7, Sec. 9.0
                  Medical Classification Scores
8                 (1 page)

9    Exhibit 9    Arizona Department of Corrections          113
                  Rehabilitation & Reentry
10                Medical Services Technical Manual
                  Chapter 1, Sec. 5.0 Quality
11                Improvement of Health Services
                  (3 pages)
12
     Exhibit 10   Rehabilitation & Reentry                   117
13                Medical Services Technical Manual
                  Chapter 1, Sec. 5.1 Peer Review
14                of Professional Activities
                  (2 pages)
15
     Exhibit 11   Mortality Review Committee Final Report    134
16                ADCM1651463 -1651466
                  (Confidential Information - Pursuant to
17                Protective Order.)

18   Exhibit 12   Mortality Review Committee Final Report    145
                  ADCM1608411 -1608420
19                (Confidential Information - Pursuant to
                  Protective Order.)
20
     Exhibit 13   Mortality Review Committee Final Report    168
21                ADCRR00000098 -00000101
                  (Confidential Information - Pursuant to
22                Protective Order.)

23   Exhibit 14   Mortality Review Committee Final Report    178
                  ADCRR00088329 -00088332
24                (Confidential Information - Pursuant to
                  Protective Order.)
25

4

1          PORTIONS OF TRANSCRIPT MARKED CONFIDENTIAL

2                        Pages 84-86
                         Pages 95-99
3                        Pages 134-163
                         Pages 167-183
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1           DEPOSITION OF WENDY MICHELLE ORM, M.D.
                 (via videoconference)

2

3        The deposition of WENDY MICHELLE ORM, M.D., was

4  taken on October 13, 2021, commencing at 9:01 a.m., via

5  videoconference, the witness appearing in at the law

6  offices of BROENING OBERG WOODS & WILSON, 2800 North

7  Central Avenue, Suite 1600, Phoenix, Arizona, before

8  JENNIFER HONN, a Certified Reporter, Certificate No.

9  50885, for the State of Arizona.

10

11  APPEARANCES:

12  For Deponent:

13      BROENING OBERG WOODS & WILSON
       Sarah L. Barnes, Esq.
14      2800 North Central Avenue
       Suite 1600
15      Phoenix, Arizona 85004
       Slb@bowwlaw.com
16
    For Plaintiffs:
17
      PRISON LAW OFFICE
18      Alison Hardy, Esq.
       Sara Norman, Esq.
19      Rita K. Lomio, Esq.
       Donald Specter, Esq.
20      1917 Fifth Street
       Berkeley, California 94710
21      ahardy@prisonlaw.com
       snorman@prisonlaw.com
22      rlomio@prisonlaw.com
       Dspecter@prisonlaw.com
23

24

25

6

1   APPEARANCES: (continued)

2        PERKINS COIE LLP
         Kathryn E. Boughton, Esq.
3        2901 North Central Avenue
         Suite 2000
4        Phoenix, Arizona 85012
         Kboughton@perkinscoie.com
5
    For Defendant:
6
         STRUCK LOVE BOJANOWSKI & ACEDO, PLC
7        Anne M. Orcutt, Esq.
         3100 West Ray Road
8        Suite 300
         Chandler, Arizona 85226
9        aorcutt@strucklove.com

10                        * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    Centurion in May of 2019; is that correct?

2        A.    Yes.

3        Q.    And as part of your duties, do you review

4    medical charts?

5        A.    Yes.

6        Q.    And under what circumstances do you do that?

7        A.    For patient care questions from all of my

8    providers.   To help manage those cases and help guide my

9    medical providers and nurses across the state.

10       Q.    Do you provide direct patient care?

11       A.    No.

12       Q.    And you also review medical records for

13   mortality reviews; is that correct?

14       A.    Mortality -- mortality reviews and for

15   inquiries, any kind of inquiry.

16       Q.    Who reports to you, Dr. Orm?

17       A.    I have a quality assurance person and a pharmacy

18   team and all of my medical providers and therapists.

19       Q.    Who is the quality assurance director?

20       A.    Wendy Larson.

21       Q.    And when you say all of your medical providers,

22   do all of the medical providers in the state report

23   directly to you?

24       A.    No.   They have a site medical director.

25       Q.    And do the site medical directors report

Wendy Michelle Orm, M.D. - 10/13/2021

131

```
 1   before?

 2              MS. HARDY:  No, that was just the mortality

 3   review exhibit from MSTM.  I don't need to enter it.  We

 4   went over the elements of the mortality review policy and

 5   procedure.

 6              MS. BARNES:  Okay.  I understand that, but

 7   mortality reviews was going to be 12, and you couldn't

 8   get it to open.  But before that, you had said that you

 9   were marking as Exhibit 11, which is where you would be

10   anyway.

11              MS. HARDY:  Yeah.  I'm giving up on that

12   one.  I don't think that I'm going to be able to use the

13   Excel spreadsheet anyway.

14              MS. BARNES:  So what you do now will be

15   Exhibit 11, then.

16              MS. HARDY:  Okay.  What we're on to now is

17   Exhibit 11.  Thank you.

18        Q.   (By Ms. Hardy) Appreciate that.  So before we

19   get to that I just want to nail down for the record, you

20   did not review any medical charts about named plaintiffs

21   in this case in preparation for this deposition; is that

22   right?

23              MS. ORCUTT:  Form.

24              THE WITNESS:  No, I did not.

25              MS. HARDY:  Okay.  Thank you.
```

186

```
 1   STATE OF ARIZONA    )
                         )
 2   COUNTY OF MARICOPA  )

 3              BE IT KNOWN that I took the foregoing
     deposition pursuant to Notice; that the witness was duly
 4   sworn by me; and that said transcript is a full, true,
     and accurate record of the proceedings; that the
 5   proceedings were taken down by me in shorthand and
     thereafter reduced to print under my direction; that I
 6   have acted in compliance with ACJA 7-206.

 7              I CERTIFY that I am in no way related to
     any of the parties hereto nor am I in any way interested
 8   in the outcome hereof.

 9              Pursuant to request, notification was
     provided that the deposition is available for review and
10   signature.

11              Dated this 18th day of October, 2021.

12

13                      _____

14                      Jennifer Honn
                        Certified Reporter
15                      Arizona CR No. 50885

16

17              I CERTIFY that GLENNIE REPORTING SERVICES,
     LLC, has complied with the ethical obligations set forth
18   in ACJA 7-206.

19

20

21

22

23   _____

24   GLENNIE REPORTING SERVICES, LLC
     Registered Reporting Firm
25   Arizona RRF No. R1035
```

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

VICTOR PARSONS; SHAWN JENSEN;          )
STEPHEN SWARTZ;DUSTIN BRISLAN;         )
SONIA RODRIGUEZ; CHRISTINA             )
VERDUZCO; JACKIE THOMAS; JEREMY        )
SMITH; ROBERT GAMEZ; MARYANNE          )
CHISHOLM; DESIREE LICCI; JOSEPH        )
HEFNER; JOSHUA POLSON; and             )
CHARLOTTE WELLS, on behalf of          )
themselves and all others             )
similarly situated; and ARIZONA       )
CENTER FOR DISABILITY LAW,             )
                                       )
                Plaintiffs,            )
                                       )Case No.
v.                                     )CV 12-00601-PHX-ROS
                                       )
DAVID SHINN, DIRECTOR, ARIZONA         )
DEPARTMENT OF CORRECTIONS,             )
REHABILITATION AND REENTRY; and        )
LARRY GANN, ASSISTANT DIRECTOR,        )
MEDICAL SERVICES CONTRACT              )
MONITORING BUREAU, ARIZONA             )
DEPARTMENT OF CORRECTIONS,             )
REHABILITATION AND REENTRY, in         )
their official capacities,             )
                                       )
                Defendants.            )
     30(b)(6) DEPOSITION OF THE ARIZONA DEPARTMENT OF
          CORRECTIONS, REHABILITATION, AND REENTRY
                   (GRANT PHILLIPS, M.D.)
              (Volume 2 - pages 210 - 246)
                Via Zoom Videoconference
                    October 5, 2021
                      9:00 a.m.
                  Chandler, Arizona


Glennie Reporting Services, LLC
1555 East Orangewood Avenue
Phoenix, Arizona 85020
602.266.6535                    Prepared by:
www.glennie-reporting.com       Robin L. B. Osterode
                                CSR, RPR
                                CA CSR No. 7750
                                AZ CR No. 50695

211

```
1                        I N D E X

2    WITNESS                                    PAGE

3    GRANT PHILLIPS, M.D.

4            Examination by Ms. Hart           214

5

6

7                 INDEX TO EXHIBITS

8    Description                                Page

9    Exhibit 24 Bates stamped documents        214
                ADCRR00000098 - ADCRR00000101
10              (Confidential Information -
                Pursuant to Protective Order.)
11
     Exhibit 25 Bates stamped documents        225
12              ADCM1669335 - ADCM1669338
                (Confidential Information -
13              Pursuant to Protective Order.)

14   Exhibit 26 Defendants' Pretrial Disclosure 230
                Statement; 74 pages
15
     Exhibit 27 Notes of Dr. Phillips regarding 244
16              Plaintiff Chart Reviews; 3 pages
                (Confidential Information -
17              Pursuant to Protective Order.)

18

19        PORTION OF TRANSCRIPT MARKED CONFIDENTIAL

20                   Pages 214-229

21

22

23

24

25
```

**Glennie Reporting Services, LLC**
**602.266.6535  www.glennie-reporting.com**

212

1        30(b)(6) DEPOSITION OF THE ARIZONA DEPARTMENT OF
               CORRECTIONS, REHABILITATION, AND REENTRY
2                    (GRANT PHILLIPS, M.D.)

3              The 30(b)(6) Deposition of The Arizona

4    Department of Corrections, Rehabilitation, and Reentry,

5    GRANT PHILLIPS, M.D., Volume 2, via Zoom Videoconference,

6    was taken on October 5, 2021, commencing at 9:00 a.m., at

7    Chandler, Arizona, before ROBIN L. B. OSTERODE, RPR, CSR,

8    California Shorthand Reporter No. 7750 and Arizona

9    Certified Reporter No. 50695.

10

11   APPEARANCES:

12   For Plaintiffs:

13           PRISON LAW OFFICE
             By: Sophie Hart
14           By: Donald Specter
             1917 Fifth Street
15           Berkeley, California 94710
             (510) 280-2621
16           sophieh@prisonlaw.com
             dspecter@prisonlaw.com
17           (Videoconference appearance.)

18   For Defendants:

19           STRUCK LOVE BOJANOWSKI & ACEDO, PLC
             By: Timothy J. Bojanowski
20           3100 West Ray Road, Suite 300
             Chandler, Arizona 85226
21           (480) 420-1616
             tbojanowski@strucklove.com
22           EPercevecz@strucklove.com>
             (Videoconference appearance.)
23

24

25

**30(b)(6) Deposition of ADCRR (Dr. Grant Phillips), Volume I - 10/05/2021**

231

```
 1        Q.    Have you provided direct medical care to Dustin
 2   Brislan?
 3        A.    No.
 4        Q.    Have you provided direct medical care to any
 5   patient in the ADCRR?
 6        A.    No.
 7        Q.    Okay.  So providing direct medical care to
 8   incarcerated patients isn't part of your job duties.
 9   Correct?
10        A.    Correct.
11        Q.    When was the last time you provided direct
12   medical care to an incarcerated patient?
13        A.    October 2020.
14        Q.    And what treatment did you provide?
15        A.    I don't remember specifically.
16        Q.    And was that in your capacity as the medical
17   director of ADCRR?
18        A.    No.
19        Q.    Was that in your capacity working for the
20   Maricopa County jails?
21        A.    Yes.
22        Q.    So you haven't provided direct medical care to
23   ADCRR patients?
24        A.    Correct.
25        Q.    Have you reviewed Shawn Jensen's medical
```

246

```
 1   STATE OF ARIZONA     )
     COUNTY OF MARICOPA    )
 2
             BE IT KNOWN that the foregoing proceedings
 3   were taken before me; that the witness before testifying
     was duly sworn by me to testify to the whole truth; that
 4   the foregoing pages are a full, true, and accurate record
     of the proceedings all done to the best of my skill and
 5   ability; that the proceedings were taken down by me in
     shorthand and thereafter reduced to print under my
 6   direction.

 7          [X] Review and signature was requested.

 8          [ ] Review and signature was waived.

 9          [ ] Review and signature not required.

10          I FURTHER CERTIFY that I have complied with
     the ethical obligations set forth in the ACJA 7-206(F)(3)
11   and ACJA 7-206(J)(1)(g)(1) and (2).  Dated at Phoenix,
     Arizona, this 8th day of October, 2021.
12

13

14

15          _____
                 ROBIN L. B. OSTERODE, RPR
16               CA CSR No. 7750
                 AZ CR No. 50695
17
                 *   *   *   *   *
18          I CERTIFY that Glennie Reporting Services,
     LLC, has complied with the ethical obligations set forth
19   in ACJA 7-206(J)(1)(g)(1) through (6).

20

21

22

23   _____
24   GLENNIE REPORTING SERVICES, LLC
     Registered Reporting Firm
25   Arizona RRF No. R1035
```

# EXHIBIT H

# FILED UNDER SEAL