Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
 jkeenan@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' TRIAL BRIEF** |

23774493.1

## I) Introduction

Seven years ago, the parties entered into a Stipulation designed to address serious deficiencies in Arizona's prison health care system and dangerous conditions in the prisons' isolation units. (Doc. 1185). That effort failed. The record is replete with proof of Defendants' unwillingness or inability to meet critical benchmarks from the Stipulation. This Court has appointed Rule 706 experts,[1] found Defendants in contempt,[2] levied fines of $2.5 million,[3] and issued numerous other enforcement orders.[4] None have been successful in motivating Defendants to comply with the Stipulation. Instead, Defendants have repeatedly challenged the Court's authority and its efforts to hold them to their promise to bring Arizona's prisons up to constitutional standards. Faced with Defendants' "erroneous and unreliable excuses" and "persistent lack of performance," the Court on July 16, 2021 rescinded approval of the Stipulation and set the case for trial on Plaintiffs' original Eighth Amendment claims. (Doc. 3921 at 1-2).

Defendants' failures have had devastating consequences for the Plaintiff class. Some have died as a result. Others have suffered prolonged pain and unreasonable delays in treatment due to serious, longstanding deficiencies in ADCRR's health care system. Thousands of people, including those with serious mental illnesses, continue to be subjected to cruel and damaging conditions in ADCRR's extreme isolation units. These system-wide deficiencies have existed for years, have persisted in the face of Defendants' promises of remediation, and will continue without this Court's intervention.

## II) Legal Standard

The Eighth Amendment proscribes conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society,' or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v.*

---

[1] Docs. 2483, 3089.
[2] Docs. 2898, 3861, 3862.
[3] Docs. 2898, 3861, 3862.
[4] *See, e.g.*, Docs. 1582, 1583, 1673, 1754, 1933, 2124, 2317, 2373, 2403, 2901, 3235, 3359, 3385, 3416, 3490, 3495.

-1-

23774493.1

*Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). An Eighth Amendment violation has both an objective and subjective prong. *See Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014). The objective prong is satisfied if the institution deprives a person of "basic human needs," *Helling v. McKinney*, 509 U.S. 25, 33 (1993), or a "minimal civilized measure of life's necessities," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citation omitted). The subjective prong is satisfied if the defendant acts with "deliberate indifference." *Grenning*, 739 F.3d at 1238 (citation omitted). "A showing of deliberate indifference . . . requires a showing that the defendant knew of an excessive risk to inmate health or safety that the defendant deliberately ignored." *Id.* at 1239.

In an injunctive case, a plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *see also Helling*, 509 U.S. at 33 ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition in their prison on the ground that nothing yet had happened to them."); *Brown v. Plata*, 563 U.S. 493, 531 (2011) ("Even prisoners with no present physical or mental illness may become afflicted, and all prisoners in California are at risk so long as the State continues to provide inadequate care."); *Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014) ("[W]e have repeatedly recognized that prison officials are constitutionally prohibited from being deliberately indifferent to policies and practices that expose inmates to a substantial risk of serious harm.").

Defendants are responsible for ensuring these constitutional standards are met, regardless of which private company they hire to provide health care services. The Supreme Court has squarely held that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody." *West v. Atkins*, 487 U.S. 42, 56 (1988); *see also Carl v. Muskegon Cty.*, 763 F.3d 592, 596 (6th Cir. 2014) ("A state may not escape § 1983 liability by contracting

23774493.1

out or delegating its obligation to provide medical care to inmates.").[5]

**III) Evidence at Trial**

   **A) Plaintiffs Will Show that Defendants are Deliberately Indifferent in Their Provision of Medical and Mental Health Care**

   **i) Serious, Longstanding Deficiencies in ADCRR's Health Care Systems Place Patients at Substantial Risk of Serious Harm**

The Eighth Amendment requires prison officials provide adequate health care to incarcerated persons. *Estelle*, 429 U.S. at 103-104 (medical); *Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) (mental health). The evidence will show that Defendants' statewide health care policies and practices have caused unnecessary suffering and death, and put those incarcerated in ADCRR at substantial risk of serious harm. Defendants have known about these risks for years and have not only refused to implement necessary changes, but have actively fought this Court's efforts to motivate them to do so.

**(1) Staffing and Access to Care**

To provide constitutionally adequate health care, prisons must have "sufficient, qualified" staff who are "properly trained and supervised." *Madrid v. Gomez*, 889 F. Supp. 1146, 1201 (N.D. Cal. 1995) (medical); *see also Coleman v. Wilson*, 912 F. Supp. 1282, 1298 & n.10 (E.D. Cal. 1995) (mental health). Prisons must not only have sufficient numbers of staff, *see Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1335 (D. Ariz. 2014), *amended*, No. CV-77-00479-PHX-NVW, 2014 WL 6983316 (D. Ariz. Dec. 10, 2014) ("A policy of medical understaffing may show deliberate indifference."), but such staff must be "competent to examine prisoners and diagnose illnesses," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). "Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems." *Id*.

The evidence will show that ADCRR falls dangerously below these standards. As this Court has recently observed, "staffing shortages" in ADCRR have "been the Achilles'

---

[5] It is also well established that a "[l]ack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations." *Peralta v. Dillard*, 744 F.3d 1076, 1083 (9th Cir. 2014) (en banc) (citations omitted).

23774493.1

heel of the entire duration of the Stipulation." (Doc. 3921 at 23.) Indeed, this Court's Rule 706 Expert, Dr. Marc Stern, concluded in 2019 that "the severe level of underfunding of health care services at the ADC is the single most significant barrier to compliance." (Doc. 3379 at 94.) His primary recommendations were to increase staffing, change the staffing ratios (of physicians-to-mid-level providers), and increase salaries. (*Id.* at 95.)

The evidence at trial will show that staffing levels in ADCRR's health care system remain dangerously below community standards. Nurses are understaffed and poorly supervised, and regularly fail to complete adequate assessments, recognize dangerous symptoms, and elevate serious concerns to providers. Even when patients are referred to providers, it is almost always to mid-level practitioners (nurse practitioners or physician assistants), because ADCRR has too few physicians. As a result, patients are regularly denied access to competent providers, and suffer unreasonable delays in diagnosis and treatment. ADCRR's mental health care delivery system likewise suffers from a chronic shortage of qualified mental health staff. Many mental health positions remain vacant, causing frequent cancellation of necessary services. And even if all positions were filled, mental health staffing would remain inadequate, because Defendants inappropriately rely on mid-level practitioners to provide the vast majority of psychiatric services, and rely on psychological associates (some of whom are not licensed), behavioral health technicians, or even correctional officers to provide day-to-day mental health care.

The evidence will show that Defendants' overreliance on poorly supervised, under-qualified health care staff is dramatically out of step with community standards of care, and places patients at substantial risk of serious harm. Unless the Court addresses this severe staffing crisis, those incarcerated in ADCRR will continue to face serious harm.

**(2) Delivery of Necessary Medication**

Another fundamental function of an adequate health care system is to provide patients with necessary medications. *See Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) (failure to provide medications ordered by physician violates Eighth Amendment). The evidence, including Defendants' own monitoring data, will show that ADCRR lacks a

-4-

23774493.1

reliable system to ensure medications are provided to patients as prescribed. Timed medications (including psychotropic medications) are often given at inappropriate intervals, and chronic medications are often not renewed or refilled timely.

ADCRR also routinely denies patients access to many necessary medications. ADCRR fails to provide adequate pain management to patients, including those with end-stage cancer, causing unnecessary, intractable pain. ADCRR's medical formulary also does not include several standard mental health medications, and instead calls for the use of outdated medications that carry unnecessary heat-related risks. *See Porretti v. Dzurenda*, 11 F.4th 1037, 1052 (9th Cir. 2021) (affirming preliminary injunction requiring defendants provide incarcerated plaintiff Wellbutrin and Seroquel); *Graves v. Arpaio*, No. CV-77-0479-PHX-NVW, 2008 WL 4699770, at *19 (D. Ariz. Oct. 22, 2008), *aff'd* 623 F.3d 1043 (9th Cir. 2010) (holding that exposure of incarcerated patients who are taking psychotropic medications to temperatures exceeding 85 degrees Fahrenheit violates the Eighth Amendment). Similarly, ADCRR has for years failed to follow community standards for treating Hepatitis C, and even under its new plan, will delay treatment for thousands of patients for many years. Finally, ADCRR refuses to provide patients with Medication Assisted Therapy (MAT), the community standard of care for patients with substance use disorders. *See Pesce v. Coppinger*, 355 F. Supp. 3d 35, 48 (D. Mass. 2018) (finding likelihood of success on Eighth Amendment claim where officials ignored doctor's recommendation to prescribe methadone for opioid use disorder).

**(3) Language Interpretation**

Another essential requirement of a constitutionally adequate health care system is patients' ability to fully and accurately communicate with health care providers. "An impenetrable language barrier between doctor and patient can readily lead to misdiagnoses and therefore unnecessary pain and suffering." *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983), *cert. denied*, 468 U.S. 1217 (1984). Prison officials thus must provide qualified interpreters during health care encounters to patients who are not fluent in English. *See id.*; *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1317 (9th Cir.), *opinion*

*amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995). The evidence will show, despite this Court's recent intervention, Defendants regularly fail to provide language interpretation during health care encounters, placing patients at risk of misdiagnosis and unnecessary suffering.

**(4) Medical Records**

"Accurate and complete medical records are essential to adequate medical care." *Madrid*, 889 F. Supp. at 1203; *see also Coleman*, 912 F. Supp. at 1314 (mental health). Medical records that are "inadequate, inaccurate and unprofessionally maintained" create "a grave risk of unnecessary pain and suffering" in violation of the Eighth Amendment. *Cody v. Hillard*, 599 F. Supp. 1025, 1057 (D.S.D. 1984) (citations omitted). The evidence will show that Defendants utterly fail to maintain complete, accurate, and accessible medical records.

**(5) Specialty Care**

If prison medical staff cannot treat certain medical conditions, they must "refer prisoners to others who can" and such referrals must be "reasonably speedy." *Casey v. Lewis*, 834 F. Supp. 1477, 1544, 1546 (D. Ariz. 1993) (quoting *Hoptowit*, 682 F.2d at 1253). The evidence will show that people incarcerated in ADCRR cannot reliably access specialists when medically necessary. Often, providers (usually mid-level practitioners) fail to recognize when patients require referral to a specialist. And Defendants' own data will show that even when specialty consults are requested and authorized, patients often suffer from unreasonable delays in being sent to specialists.

**(6) Mental Health Care**

Prison officials violate the Eighth Amendment if their "mental health care delivery system" lacks the following "six basic, essentially common sense, components:"

> (1) a systematic program for screening and evaluating inmates to identify those in need of mental health care; (2) a treatment program that involves more than segregation and close supervision of mentally ill inmates; (3) employment of a sufficient number of trained mental health professionals; (4) maintenance of accurate, complete and confidential mental health treatment records; (5) administration of psychotropic medication only with

23774493.1

appropriate supervision and periodic evaluation; and (6) a basic program to identify, treat, and supervise inmates at risk for suicide.

*Coleman*, 912 F. Supp. at 1298 & n.10.

The evidence at trial will show that ADCRR has failed to meet these minimum standards of care. In addition to the significant deficiencies discussed above, common to ADCRR's health care system, the evidence at trial will show patients suffer from wholly inadequate access to inpatient intensive mental health care. Many mental health contacts are too short to be clinically effective, and are provided in non-confidential, cell-front encounters, in part due to onerous and unnecessary security measures imposed by ADCRR for out-of-cell encounters. Custody staff also routinely use chemical agents such as pepper spray on mentally ill class members for trivial reasons. This reckless practice inflicts gratuitous suffering and risks aggravating patients' mental illnesses. *See Thomas v. Bryant*, 614 F.3d 1288, 1310-11 (11th Cir. 2010) (finding use of chemical agents on incarcerated plaintiff with mental illness "constituted an extreme deprivation sufficient to satisfy the objective prong" of the Eighth Amendment). People with serious mental illness in ADCRR have already experienced, and will continue to experience, a serious risk of injury if these significant problems are not addressed.

**B) Conditions of Confinement in ADCRR's Isolation Units Deprive Plaintiffs of Basic Human Needs**

The evidence at trial will demonstrate that people incarcerated in ADCRR's isolation units are at substantial risk of serious harm due to the exceedingly harsh and deprived conditions in those units. ADCRR subjects those in isolation to extreme social isolation; insufficient out-of-cell time; constant artificial illumination; insufficient nutrition; unsanitary conditions; lack of meaningful mental health care; use of chemical agents, even against those on psychotropic medication; and exposure to extreme levels of heat, regardless of the types of medications they take. These conditions, alone and in combination, deprive Plaintiffs of their basic human need for social interaction and environmental stimulation, in violation of the Eighth Amendment. *See Ruiz v. Johnson*, 37

23774493.1

F. Supp. 2d 855, 914-15 (S.D. Tex. 1999) (finding prison officials "deliberately indifferent to a systemic pattern of extreme social isolation and reduced environmental stimulation" in segregation units), *rev'd on other grounds*, 243 F.3d 941 (5th Cir. 2001), *adhered to on remand*, 154 F. Supp. 2d 975 (S.D. Tex. 2001). As the Supreme Court has observed, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson*, 501 U.S. at 304 (internal quotation marks and emphasis omitted); *see also Scarver v. Litscher*, 371 F. Supp. 2d 986, 1001 (W.D. Wis. 2005) (conditions including 24-hour illumination, near-constant cell confinement, and infrequent human interaction "could have a mutually enforcing effect causing the deprivation of a prisoner's basic human need for social interaction and sensory stimulation").

Indeed, courts have acknowledged the damaging effects of confinement in ADCRR's own isolation units. *See, e.g.*, *Miller ex rel. Jones v. Stewart*, 231 F.3d 1248, 1252 (9th Cir. 2000) ("it is well accepted that conditions such as those present in [ADC's Browning Unit] . . . can cause psychological decompensation to the point that individuals may become incompetent"); *Comer v. Stewart*, 215 F.3d 910, 916 (9th Cir. 2000) ("we and other courts have recognized that prison conditions remarkably similar to [Browning Unit] can adversely affect a person's mental health"); *Koch v. Lewis*, 216 F. Supp. 2d 994, 1002 n.12 (D. Ariz. 2001) ("Detention in [Browning Unit] for five and one-half years borders on cruel and unusual punishment."). The evidence at trial will show that those in isolation will continue to suffer serious harm if these conditions are not addressed.

**C) Defendants Have Persisted in Deliberate Indifference to These Risks for Years**

These problems were identified in this action more than seven years ago.[6] They have since been repeatedly identified during monitoring of the Stipulation, including through expert reports,[7] enforcement actions,[8] and, in many instances, by Defendants'

---

[6] *See* Docs. 1 (filed Mar. 22, 2012), 1185 (filed Oct. 14, 2014).
[7] *See, e.g.*, Docs. 1538, 1539, 1627, 1670, 1947, 2103, 2496, 3379, 3626.

-8-

23774493.1

own compliance data.[9] Nevertheless, Defendants have repeatedly refused to implement necessary changes to improve conditions. In this Court's order rescinding the Stipulation and setting the case for trial, this Court found that "Defendants have in the past six years proffered erroneous and unreliable excuses for non-performance, asserted baseless legal arguments, and in essence resisted complying with the obligations they contractually knowingly and voluntarily assumed." (Doc. 3921 at 1; *see also id.* at 24 (noting the noncompliant performance measures "involve some of the most fundamental and critical aspects of health care that formed the basis of this lawsuit in 2012, of which Defendants are very aware")). This is textbook deliberate indifference. *See Farmer*, 511 U.S. at 832.

**IV) Remedies**

Relief is governed by the PLRA, which provides that prospective relief must be "narrowly drawn, extend[] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). At the same time, federal courts "must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners." *Plata*, 563 U.S. at 511. Nor may courts "allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Id.* Finally, "[a] defendant's history of noncompliance with prior court orders is a relevant factor in determining the necessary scope of an effective remedy." *Toussaint v. McCarthy*, 801 F.2d 1080, 1087 (9th Cir. 1986).[10]

Plaintiffs will ask the Court to order Defendants to promptly hire sufficient,

---

[8] *See* nn. 2-4, *supra*.
[9] *See, e.g.*, Docs. 3192, 3225, 3264, 3294, 3331, 3346, 3375, 3397, 3443, 3459, 3473, 3503, 3546, 3582, 3606, 3645, 3680, 3732, 3762, 3800, 3823, 3848, 3856, 3865, 3883, 3900, 3915.
[10] Generally, the least intrusive means to compel prison administrators to remedy constitutional deficiencies is to first allow administrators to draft a proposed plan. *See Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010). Such deference is not appropriate here, where Defendants have had years to remedy these deficiencies but have repeatedly refused to do so.

23774493.1

1 qualified staff to provide constitutionally adequate health care to those in its custody.
2 Plaintiffs will also ask the Court to enter an injunctive order (1) requiring Defendants to
3 provide constitutionally adequate health care through improved policies and procedures,
4 with qualitative monitoring, and (2) appointing a Receiver pursuant to Rule 66 of the
5 Federal Rules of Civil Procedure to manage ADCRR's delivery of health care services.
6 *See, e.g.*, *See Plata v. Schwarzenegger*, 603 F.3d 1088, 1097 (9th Cir. 2010) (finding
7 district court appropriately appointed Receiver to oversee medical care in California state
8 prisons because "[a]fter attempting less drastic remedies, and after long periods of
9 working closely with State authorities to try to bring them into compliance with the orders
10 to which they had stipulated, the district court justifiably concluded that the State's
11 personnel simply could not or would not bring the State into constitutional compliance in
12 the foreseeable future"). That Defendants have refused to provide constitutionally
13 adequate care, while under close Court supervision, demonstrates that the state is
14 incapable of providing the resources and expertise needed to remedy the persistent
15 constitutional violations. (*See* Doc. 3921 at 31 ("It has now been six years and it is
16 obvious Defendants will not take the steps necessary to ensure compliance.")).

Plaintiffs will also ask the Court to enter an injunction requiring Defendants to significantly reduce the use of isolation through improved policies and procedures for placement into and removal from isolation, limits on the amount of time a person can be kept in isolation, and a prohibition on the isolation of minors and persons with serious mental illness. Plaintiffs will further ask the Court to enter an injunction requiring Defendants to provide constitutional conditions in isolation, including adequate out-of-cell time, light (including natural light), ventilation, nutrition, and sanitation. Finally, Plaintiffs will ask the Court, if it declines to categorically prohibit the placement of persons with serious mental illness into isolation, to enter an injunction requiring additional training and improved policies regarding the use of force against persons with serious mental illness in isolation.

-10-

23774493.1

Dated: October 28, 2021

**PRISON LAW OFFICE**

By: _s/ Sophie Hart_
Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
rlomio@prisonlaw.com
sophieh@prisonlaw.com

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
jhgray@perkinscoie.com
ayost@perkinscoie.com
kworsham@perkinscoie.com
kboughton@perkinscoie.com
mcolby@perkinscoie.com
ksoldati@perkinscoie.com
docketphx@perkinscoie.com

Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)

23774493.1

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

-12-

23774493.1

| | |
|---|---|
| 1 | **ARIZONA CENTER FOR DISABILITY LAW** |
| 2 | |
| 3 | By: *s/ Maya Abela* |
| 4 | Asim Dietrich (Bar No. 027927)<br>5025 East Washington Street, Suite 202 |
| 5 | Phoenix, Arizona 85034<br>Telephone: (602) 274-6287 |
| 6 | Email: adietrich@azdisabilitylaw.org |
| 7 | Rose A. Daly-Rooney (Bar No. 015690)<br>J.J. Rico (Bar No. 021292) |
| 8 | Maya Abela (Bar No. 027232)<br>**ARIZONA CENTER FOR DISABILITY LAW** |
| 9 | 177 North Church Avenue, Suite 800<br>Tucson, Arizona 85701 |
| 10 | Telephone: (520) 327-9547<br>Email: |
| 11 | rdalyrooney@azdisabilitylaw.org<br>jrico@azdisabilitylaw.org |
| 12 | mabela@azdisabilitylaw.org |
| 13 | *Attorneys for Arizona Center for Disability Law* |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com

*Attorneys for Defendants*

Asim Dietrich
Rose A. Daly-Rooney
J.J. Rico
Maya Abela
ARIZONA CENTER FOR DISABILITY LAW
adietrich@azdisabilitylaw.org
rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

       *s/ Sophie Hart*

23774493.1