Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
         jkeenan@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons; Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY AND EVIDENCE** <br><br> **(EXPEDITED RULING REQUESTED)** |

Plaintiffs seek to exclude all evidence regarding topics identified in Plaintiffs' Notice of 30(b)(6) Deposition for which ADCRR's 30(b)(6) designee was unknowledgeable at his deposition, specifically Topics 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, and 15, and Topics 13 and 14 with respect to how posts are staffed at ASPC-Lewis Rast.

Defendants make three arguments in response: that 30(b)(6) designee Van Winkle's repeated limitation of his answers to his own knowledge did not render him an inadequate designee; that Defendants did not have timely notice of the inadequacy of Warden Van Winkle as a Rule 30(b)(6) designee; and that the remedy requested is wrong. None of Defendants' arguments have merit.

**I. WARDEN VAN WINKLE WAS AN INADEQUATE RULE 30(B)(6) DESIGNEE**

Defendants designated Warden Jeffrey Van Winkle as the sole designee for most of the topics in the 30(b)(6) deposition notice regarding isolation. As set forth in Plaintiffs' motion and the accompanying chart of Warden Van Winkle's responses, his ability to testify was limited to his ability to read a handful of policies, some of which he was familiar with, some of which he was not, and his personal knowledge of practices. Neither is adequate.

Topic 1, the topic on which the largest period of time was spent during the deposition, sought information about ADCRR policies and procedures relating to the placement in, retention in, and release from isolation. Warden Van Winkle was unable to give definitive answers to high level questions that are, essentially, questions contained in the wording of topic itself. For example, at the outset of the questioning on Topic 1, Warden Van Winkle testified as follows:

> Q. What are the policies that related to people being classified as max custody?
> A. I don't have specific policy numbers, but I can speak to the policies getting placement into or retention in detention.
> Q. I'm sorry. Did you just say you don't know the specific policy numbers?
> A. I'm not familiar with the exact policy numbers at this time. No, ma'am.

1  Doc. 4169-2, 14:2-10.[1]  Similarly, he did not know anything about whether there is
2  maximum custody for women in ADCRR custody. *Id*. 19:20-20:18.  He did not know basic
3  details about the classification process that results in people being placed into maximum
4  custody at the beginning of a sentence, such as the availability of overrides into maximum
5  custody.  *Id*. at 16:7-12; *cf*. Pls. Ex. 1310 at § 801.03 at 9 of 82 (discussion of non-
6  discretionary overrides) and 61 of 82 (Initial Custody Classification Scoresheet, identifying
7  reasons for overrides).  He did not know whether the hearing process set out in the
8  Department Order on Classification applied to the initial placement of people into
9  maximum custody, though he "believe[d]" it did not.  In fact, it does.  Doc. 4169-2 at 30:20-
10 31:10; *cf*. Pls. Ex. 1310 at § 801.11 at 48-52 of 82, Pls. Ex. 1189 at ADCRR00163358-
11 163359, Pls. Ex. 1192 at ADCRR00163184-163185.

12  Warden Van Winkle was also unable to testify definitively regarding more detailed
13 questions.  For example, he did not know how often people in maximum custody are
14 reviewed for removal from maximum custody.  Doc. 4169-3 at 40:16-41:13. He was
15 unfamiliar with the provision in Department Order 812 that a person who has been at Step
16 3 in maximum custody for 30 days without incident can be considered for removal from
17 maximum custody.  Doc. 4169-2 at 38:13-18; cf. Pls. Ex. 1318 at § 5.5 at 4.  Further
18 examples are set forth in the chart attached to Plaintiffs' Motion to Exclude. Doc. 4169-8.

19  Warden Van Winkle's inability to definitively answer foundational or detailed
20 questions renders him an inadequate 30(b)(6) witness. See *Moriarty v. American General*
21 *Life Insurance Co*., 17-CV-1709-BTM-WVG, 2019 WL 1559143,*3-7 (S.D. Cal Apr. 4,
22 2019).

23  The fact that many of his responses were not simply "I don't know," but rather that
24 he was unaware of whether there was additional information, does not solve the problem.

---

[1] Defendants assert that "ADCRR's classification process has never been an issue in this case." Doc. 4176 at 6.  They are wrong.  Plaintiffs have been clear that the overuse of isolation is a significant aspect of this case, and this Court has also recognized the relevance of stagnation in maximum custody as part of this case. *See, e.g*., 3613, 3635, 3652, 3671, 3686, 3691, 3728, 3734, 3861.

1  As discussed with defense counsel prior to the 30(b)(6) deposition, the purpose of a 30(b)(6)
2  deposition is not merely to provide testimony about policies that Plaintiffs identify, but also
3  to "determine which policies and procedures Defendants consider to be relevant to the
4  topics." Defendants indicated that they understood this. Reply Declaration of Maria V.
5  Morris ("Morris Reply Decl."), Ex. 1. But, repeatedly, Warden Van Winkle was unable to
6  testify as to whether or not there was any ADCRR policy beyond the policies identified by
7  Plaintiffs before and during the deposition. *See generally*, Doc. 4169-8.
8        In all, Warden Van Winkle testified that he was not aware of something, was not
9  sure, or did not know in response to 58 different questions in Topic 1 and 29 questions in
10 Topic 2.  With regard to Topic 3 and 8, which respectively sought information about
11 programming available to people in isolation and policies relating to suicide prevention,
12 Warden Van Winkle testified regarding three policies that related to programming and
13 suicide prevention, all of which are already in evidence. Doc. 4169-6 at 191:4-7, 192:13-
14 18; Doc. 4169-7 at 201:11-25; Pls. Ex. 1315, 1318, 1319. He stated that he was unaware
15 of any other programming and that he was unaware of whether there were other policies
16 relating to suicide prevention. Doc. 4169-6 at 192:13-18; Doc. 4169-7 at 201:11-25. For
17 Topic 4, Warden Van Winkle responded to 37 questions by stating that he did not have the
18 information or was unaware. Doc. 4169-6 at 193:7-199:25; Doc. 4169-7 at 200:1-17. He
19 provided information in response to just one question about Topic 4, and that response was
20 limited to his personal knowledge. Doc. 4169-6 at 193:16-23. He was unaware of whether
21 there were any ADCRR policies regarding the monitoring of mental and physical health of
22 people in isolation. Doc. 4169-7 at 200:21-24. With regard to Topics 11 and 12, which
23 sought information about training for people who work in isolation units, Warden Van
24 Winkle provided some general information about training, but could not state how much if
25 any of the training related to isolation. *Id*. at 203:21-204:5. With regard to Topic 15, which
26 sought information about policies regarding the use of force or restraints on persons with
27 mental health needs in isolation Warden Van Winkle testified that there had been a broad
28 change to the policy, making it more protective of people in isolation – but he was not aware

of whether the policy had been reduced to writing. *Id*. at 230:3-231:10. He further testified that he was unaware of whether there were policies in response to ten questions that were drawn directly from the wording of Topic 15. *Id*. at 233:19-235:11.

Finally, Warden Van Winkle testified that when he said he was unaware of something, it meant that he did not know or was not sure. Doc. 4169-6 at 164:1-10; 196:14-22.

Because Warden Van Winkle was unable to provide definitive responses to many critical questions – both foundational and more detailed questions – Plaintiffs were deprived of the ability to determine what, in fact, are the policies, procedures, and practices in the ADCRR regarding isolation. As a result, Plaintiffs would be prejudiced if Defendants were permitted to introduce evidence at trial that was requested but not disclosed at the Rule 30(b)(6) deposition. *See Moriarty*, 2019 WL 1559143,*3-7; *see also Ruiz v. Hamburg-Am. Line*, 478 F.2d 29, 33 (9th Cir. 1973) (granting a new trial because of one ambiguous discovery response and the surprise it caused at trial).

## II. DEFENDANTS WERE ON NOTICE OF THE INADEQUACY OF WARDEN VAN WINKLE AND THE MOTION WAS TIMELY

Defendants have been on notice since the deposition of Warden Van Winkle that he was not an adequate Rule 30(b)(6) designee. Defense counsel was present at the deposition and heard the continual refrain that Warden Van Winkle did not know, was not sure, was unaware, or could testify based only on his personal experience. Defendants had an affirmative obligation to put forward an additional knowledgeable deponent. *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 540 (D. Nev. 2008) ("If an organization designates a witness it believes in good faith would be able to provide knowledgeable responsive testimony and it becomes apparent during the deposition that the designee produced is unable to respond to relevant areas of inquiry, the responding party has a duty to designate an additional knowledgeable deponent."); *see also Moriarty*, 2019 WL 1559143 at *3. Further, at the deposition, Plaintiffs specifically raised the concern about the adequacy of the deponent. Doc. 4169-5 at 127:25-128:9.

Finally, Plaintiffs acted in good faith, relying on Defendants' disclosure of Deputy Director Frank Strada for resolution of the lack of information in the Rule 30(b)(6). Defendants disclosed on September 10, 2021 that Deputy Director Strada would testify as an expert pursuant to Rule 26(a)(2)(C) on many of the topics listed in the Rule 30(b)(6) deposition notice regarding isolation. Morris Reply Decl., Ex. 2. The detailed disclosure of Deputy Director Strada was provided on October 22, 2021. *Id*., Ex. 3. As detailed below, the disclosure indicated that Deputy Director Strada would provide much of the information that Warden Van Winkle had failed to provide:

| Isolation 30(b)(6) Topics | Defendants' Disclosure Statement re: Strada (2021.10.27 Pretrial Disclosure Statement) (emphases added) |
|---|---|
| 1. POLICIES AND PROCEDURES for placement in, retention in, and release from ISOLATION. | "He is likely to testify regarding what factors **result in a maximum custody classification** as well as what pro-social behavioral factors may **earn a reduction in classification**, the **ongoing classification and Step Level review process** employed by ADCRR, and **validation of those processes** by corrections experts." (5:10-14) |
| 2. CONDITIONS OF CONFINEMENT in ISOLATION. | "Deputy Director Strada is likely to testify regarding ADCRR policies and procedures that govern **conditions of confinement** for maximum custody inmates to include weekly time out of cell, programming, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3)." (5:7-10)<br><br>"Deputy Director Strada will also likely testify regarding the **conditions of confinement** allegations made by party-representative subclass Plaintiffs and any subclass Plaintiffs identified or examined at trial by Plaintiffs, to include conditions of confinement for the specified inmates" (6:22-25)<br><br>"He is likely to testify regarding housing, security, and operation of ADCRR maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, programming facilities, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; programming, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same....These **conditions of confinement** may include cell conditions, food service, recreational activities, leisure activities, social programming, |

| | | |
|---|---|---|
| | | educational programming, mental health programming, access to visitation, access to mail, access to telephone calls, access to commissary, and access to property. " (5:16-22, 24-28)<br><br>"Deputy Director Strada will likely testify regarding **security protocols that govern maximum security housing locations** to include health and welfare checks, counts, and safety equipment used by staff working in maximum custody and detention units…" (6:14-16) |
| | 3. Programming available in ISOLATION, including but not limited to employment, education, drug treatment, and rehabilitative services. | "Deputy Director Strada is likely to testify regarding ADCRR policies and procedures that govern conditions of confinement for maximum custody inmates to include weekly time out of cell, **programming**, and privileges afforded to maximum custody inmates commiserate with Step Level (Step Level 1, 2, 3)." (5:7-10)<br><br>"He is likely to testify regarding housing, security, and operation of ADCRR maximum custody units; a physical description of the maximum custody housing locations, including pod and cell set up, recreation enclosures, **programming facilities**, on-site medical facilities, and shower facilities; sanitation and maintenance protocols; **programming**, recreational, educational, religious, and work programs offered to maximum custody inmates and the procedures for offering the same....These conditions of confinement may include cell conditions, food service, recreational activities, leisure activities, **social programming, educational programming, mental health programming,** access to visitation, access to mail, access to telephone calls, access to commissary, and access to property. " (5:16-22, 24-28)<br><br>"He is also expected to generally testify regarding monitoring and compliance for offered out-of-cell time and **programming** as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812." (6:26-7:1) |
| | 4. Lengths of stay in ISOLATION, including mean, median, and maximum lengths of confinement in each ISOLATION unit. | "Deputy Director Strada is also likely to testify regarding the **statistics, reports, and historical data** regarding the success of DO 812 and the resulting **reduction in ADCRR's maximum custody population.**" (6:1-3) |
| | 6. POLICIES AND PROCEDURES REGARDING any out-of-cell time for INCARCERATED PERSONS in ISOLATION, including but not limited to, any congregate activities allowed with other | "Deputy Director Strada, based upon his extensive training and experience in corrections, will also likely testify regarding the unique challenges at play in managing maximum security inmates, and how ADCRR continues to offer ample **out-of-cell time, socialization opportunities, and programming opportunities** that meet and exceed corrections |

-6-

| | | |
|---|---|---|
| | INCARCERATED PERSONS. | industry standards, against the backdrop of both staffing challenges and COVID-19 mitigation efforts faced by corrections and detention departments across the United States." (6:3-9)<br><br>"He will likely testify regarding the frequency with which inmates have **contact with other inmates, correctional staff, programming staff, medical staff, and mental health staff**." (6:12-14)<br><br>"He is also expected to generally testify regarding monitoring and compliance for **offered out-of-cell time** and programming as governed by the Stipulation that previously applied to this lawsuit as well as the corresponding mandates of DO 812." (6:26-7:1) |
| | 8. POLICIES AND PROCEDURES for suicide and self-harm prevention for INCARCERATED PERSONS in ISOLATION. | "He is likely to testify regarding **management of mental health inmates** in maximum custody or detention units, which each require special considerations in how ADCRR addresses their housing, movement, and programming." (5:14-16) |
| | 12. Training provided to CORRECTIONAL STAFF who are regularly assigned to work in ISOLATION units. | "Additionally, Deputy Director Strada will testify regarding the **training that correctional staff receive** to successfully carry out their job duties when assigned to maximum custody units and/or maximum custody units where SMI inmates may be clustered." (6:9-12)<br><br>"As to use of chemical agent use of force on subclass members, he will also testify regarding **ADCRR's training** and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm." (6:18-21) |
| | 15. POLICIES AND PROCEDURES REGARDING the use of force or restraints by ADCRR staff on INCARCERATED PERSONS on MENTAL HEALTH WATCH, or on INCARCERATED PERSONS classified as SMI, MH-3 through MH-5, or any other mental health classification employed by the ADC or CENTURION while housed in ISOLATION. | "He is likely to testify regarding…all matters raised in the Court's certification of subclass as it relates to conditions of confinement and **use of chemical agent use of force** on maximum custody inmates and subclass members designated as SMI (seriously mentally ill)." (5:16-24)<br><br>"As to **use of chemical agent use of force** on subclass members, he will also testify regarding ADCRR's training and emphasis on the use of de-escalation techniques and cool down periods, barring emergency situations that require immediate response to include circumstances of inmate self-harm." (6:18-21) |

Had Deputy Director Strada been able to testify fully and completely on the subjects in the disclosure statement regarding his anticipated testimony, there would have been no need for the instant motion. His testimony would have eliminated the prejudice to Plaintiffs,

-7-

because Plaintiffs would have had the information needed to prepare for trial.

Deputy Director Strada was deposed on October 26, 2021. Morris Reply Decl., ¶ 5. Unfortunately, Deputy Director Strada lacked the appropriate knowledge to testify as an expert pursuant to 26(a)(2)(C).[2]

It was only upon learning that neither the 30(b)(6) deponent nor the purported expert could actually provide the information about policies and practices relating to isolation in ADCRR that it became necessary for Plaintiffs to bring the instant motion.

### III. Defendants' failure to provide the information requested in the Rule 30(b)(6) Deposition Notice merits an award of sanctions.

Defendants argue that there are no grounds for sanctions of any kind, and that, if sanctions were imposed, exclusion of evidence on the topics in the 30(b)(6) deposition notice would be too severe.

For their argument that sanctions are not available, Defendants rely on *Watkins v. Infosys*, 724 F. App'x 520, 523–24 (9th Cir. 2017). *Watkins* does not support Defendants' position. *Watkins* does not discuss in any way the extent of the failings of the 30(b)(6) deponent, and merely states that "[a] circumstance in which a witness appears at a deposition but fails or refuses to answer questions *likely* does not constitute a failure to appear for the purposes of Rule 37(d)." *Id*. at 523-24 (internal quotations and citations omitted) (emphasis added). It is certainly true that when a 30(b)(6) designee appears and answers questions, it is likely that the testimony would be sufficient to constitute an appearance. That does not answer the question before the Court. Here, the deponent was inadequately knowledgeable to answer large swaths of areas covered by the topics in the deposition notice, with the lack of knowledge ranging from basic questions to details about noticed topics. The lack of knowledge demonstrated by Warden Van Winkle is sufficiently

---

[2] Plaintiffs initially planned to move to exclude Deputy Director Strada's testimony due to his lack of knowledge, as well as to exclude the evidence about which Warden Van Winkle was inadequately prepared. In the course of the meet and confer over this motion, Plaintiffs provided a draft of the motion with both arguments. Defendants then informed Plaintiffs that they were withdrawing Deputy Director Strada from their witness list. Morris Reply Decl., Ex. 4.

1  broad that his appearance should be considered a failure to appear.

2  Defendants also argue, relying on *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 560 (D. Mont. 2009), that exclusion of evidence would be too severe. Doc. 4176 at 6. In *Pioneer Drive*, the court declined to exclude evidence because there was no history in the case of the party providing the inadequately prepared 30(b)(6) deponent having "flout[ed] a court order nor been sanctioned." *Pioneer Drive, LLC*, 262 F.R.D. at 560-61. Such is not the situation here. Defendants have been repeatedly found to have flouted Court orders and have repeatedly been sanctioned. *See, e.g.*, Docs. 3861 (finding Defendants in contempt), 2898 (same), 3734 (granting a motion to enforce), 3574 (same), 3020 (same), 2810 (same). Indeed, one of the orders Defendants flouted, and were sanctioned for, required Defendants to provided some of the very same data that Defendants' designee failed to provide. *See* Doc. 3734.

Defendants should not be permitted to submit evidence regarding areas about which Deputy Warden Van Winkle was not adequately prepared. If the Court considers exclusion too severe a sanction, or is otherwise inclined to allow any evidence on the subject areas about which Warden Van Winkle was an inadequate 30(b)(6) witness, Defendants should be required to promptly produce an adequately prepared witness (or witnesses) for deposition. The costs relating to any additional deposition and to the bringing of this motion should be borne by Defendants. *See Pioneer Drive, LLC*, 262 F.R.D. at 560-61.

## Conclusion

For the reasons stated herein and in Plaintiffs' Motion to Exclude, this Court should exclude all evidence that Defendants were obligated to disclose under Rule 30(b)(6) on the ground Defendants failed to provide the information during the deposition, and that the eleventh-hour attempt to supplement is prohibited by Rule 30(b)(6) or, in the alternative, as a sanction under Rule 37(d)(1).

| | |
|---|---|
| Dated: November 16, 2021 | **ACLU NATIONAL PRISON PROJECT**<br><br>By:  s/ Maria V. Morris<br>David C. Fathi (Wash. 24893)\*\*<br>Maria V. Morris (D.C. 1697904)\*<br>Eunice Hyunhye Cho (Wash. 53711)\*\*<br>915 15th Street N.W., 7th Floor<br>Washington, D.C. 20005<br>Telephone:  (202) 548-6603<br>Email:     dfathi@aclu.org<br>              mmorris@aclu.org<br>              echo@aclu.org<br><br>Corene T. Kendrick (Cal. 226642)\*<br>39 Drumm Street<br>San Francisco, California 94111<br>Telephone:  (202) 393-4930<br>Email:     ckendrick@aclu.org<br><br>\*Admitted *pro hac vice*<br>\*\*Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.<br><br>Donald Specter (Cal. 83925)\*<br>Alison Hardy (Cal. 135966)\*<br>Sara Norman (Cal. 189536)\*<br>Rita K. Lomio (Cal. 254501)\*<br>Sophie Hart (Cal. 321663)\*<br>**PRISON LAW OFFICE**<br>1917 Fifth Street<br>Berkeley, California 94710<br>Telephone:  (510) 280-2621<br>Email:     dspecter@prisonlaw.com<br>              ahardy@prisonlaw.com<br>              snorman@prisonlaw.com<br>              rlomio@prisonlaw.com<br>              sophieh@prisonlaw.com<br><br>\*Admitted *pro hac vice*<br><br>Victoria López (Bar No. 330042)\*<br>Jared G. Keenan (Bar No. 027068)<br>**ACLU FOUNDATION OF ARIZONA**<br>3707 North 7th Street, Suite 235<br>Phoenix, Arizona 85013<br>Telephone:  (602) 650-1854<br>Email:     vlopez@acluaz.org<br>              jkeenan@acluaz.org<br><br>\*Admitted pursuant to Ariz. Sup. Ct. R. 38(d) |

|  |  |
|---|---|
| 1 | Daniel C. Barr (Bar No. 010149) |
|  | John H. Gray (Bar No. 028107) |
| 2 | Austin C. Yost (Bar No. 034602) |
|  | Karl J. Worsham (Bar No. 035713) |
| 3 | Kathryn E. Boughton (Bar No. 036105) |
|  | Mikaela N. Colby (Bar No. 035667) |
| 4 | Kelly Soldati (Bar No. 036727) |
|  | Alisha Tarin-Herman (Bar No. 037040) |

**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
jhgray@perkinscoie.com
ayost@perkinscoie.com
kworsham@perkinscoie.com
kboughton@perkinscoie.com
mcolby@perkinscoie.com
ksoldati@perkinscoie.com
atarinherman@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ Jessica Carns