Victoria López (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Shawn Jensen, *et al*., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,

Defendants.

No. CV 12-00601-PHX-ROS

**MOTION FOR SANCTIONS FOR SPOLIATION OF EVIDENCE AND VIOLATION OF COURT ORDER (DOC. 3940)**

**EXPEDITED CONSIDERATION REQUESTED**

**INTRODUCTION**

Plaintiffs respectfully request that the Court sanction Defendants for the willful destruction of evidence by their mental health expert, Dr. Joseph Penn, in violation of the parties' agreement and this Court's Order (Doc. 3940 at 3-4) that the parties' experts preserve all notes kept in relation to their work for purposes of the current trial. Specifically, at a deposition of Dr. Penn held the afternoon of Wednesday, November 17, 2021, pursuant to the Court's order after Defendants' belated production of his notes from prison tours and file reviews (*see* Doc. 4126, Doc. 4127 at 1 (11/1/21 minute entry granting additional time to depose Dr. Penn)), Dr. Penn testified that he had destroyed all copies of his "rough notes" taken while touring Defendants' prisons in September 2021. The willful destruction of his notes is especially egregious, as it was *his* previous destruction of evidence in 2014 that prompted Plaintiffs to seek this agreement from Defendants, and an order from the Court ratifying the agreement.

Plaintiffs seek an order sanctioning Defendants for their violations of their preservation obligations, and for flouting the Court's Order. First, Plaintiffs request that the Court exclude any testimony by Dr. Penn (either in his written declaration, Doc. 4172, or in his oral testimony) regarding any observations made, or the alleged content of any conversations he held with Defendants' or Centurion's employees, during his prison tours. Second, Plaintiffs ask that the Court draw an adverse inference that the destroyed documents would have been harmful to Defendants' litigation position. Third, Plaintiffs seek an award of their attorneys' fees incurred in the filing of this motion, and the denial of any reimbursement sought by Dr. Penn from Plaintiffs for his time testifying at his deposition. Finally, Plaintiffs seek any and all other further relief that this Court deems necessary and appropriate to ensure Defendants' compliance with its orders.

Plaintiffs seek an expedited ruling as Defendants plan to call Dr. Penn as an expert witness to testify at trial on Friday, November 19, 2021.

//

//

## BACKGROUND

In the Court's August 12, 2021 Order regarding discovery in the lead-up to this trial, the Court ordered that:

> **b. Contact with Represented Parties and Preservation of Expert's Notes**
> The parties agree Defendants' experts may not speak with class members outside of class counsel's presence. They further agree that all experts' notes will be preserved. The parties are ordered to comply with these agreements.

Doc. 3940 at 3-4 (ratifying the parties' agreement at Doc. 3936 at 13:10-13).

Plaintiffs had sought this agreement with Defendants and the Court's Order because in 2014, Defendants' mental health expert Dr. Penn testified that he was not instructed to preserve his notes, and he destroyed some of them. *See* Declaration of Corene T. Kendrick ("Kendrick Decl."), Ex. 1 at 3 (Aug. 5, 2021 email from C. Kendrick to D. Struck (citing Penn deposition, April 11, 2014, at 49:18-53:18); *see also* Kendrick Decl. Ex. 2 (April 11, 2014 Penn deposition at 49:18-53:18). Plaintiffs advised Defendants on August 5, 2021, that "[i]f Defendants' experts fail to preserve their notes, we will seek a spoliation order." *Id*. Ex. 1 at 3.

At his November 17, 2021 deposition, Dr. Penn explained that the tour notes that Defendants had belatedly produced in response to the subpoena duces tecum were his "final" notes created after he had sent his "rough notes" to a professional transcriptionist in Chicago named Ms. Kathleen El-Basit to "make [] nicer" the notes he had taken while touring prison facilities from September 20 to 24, 2021. Kendrick Decl. Ex. 3 at 292:9-294:18: He explained that he had taken "rough notes" but that the documents produced to Plaintiffs (Bates stamped ADCRR00232487-232528, attached as Exhibit 4 to the Kendrick Declaration) included only some of his rough notes as well "revised" notes from the transcriber, Ms. El-Basit. For example:

> Q. So you testified on October 26th that you had a laptop with you when you were touring the facilities; is that correct?
> A. Yes.
> Q. And that you took no handwritten notes, but all the notes that you made were in a document on your computer?

> A. That's correct.
> Q. All right. As you can see, the first two paragraphs are in black font and then the rest of the page, I believe, if we can scroll down just a little, about two-thirds of the way down is in red font. And then it goes back to black font. What do the colors of the fonts mean?
> A. Yes, so I utilized a transcriptionist. I have a professional transcriptionist to help me with notes. And so the reason why it's in red is because the transcriptionist, I don't -- I think she struggled to understand what I was writing because she's not a corrections or healthcare professional. So she put it in red for me to then go back and address those.
> Q. So you dictated your notes while you were walking or while you were --
> A. No. No.
> Q. What was the transcriptionist transcribing from?
> A. So when I -- when I went on the tours, I wrote some rough notes. And then I e-mailed them to my transcriptionist for her to make them nicer to where they would read as sentences, as opposed to just kind of random, you know, observations or things to follow up on. So I asked her to help with the grammatical errors and spelling and punctuations, and that sort of thing, because that's what she does for me. So that's how I employed -- and then she sent me back the revised, you know, with edits. And then I reviewed it again. And then that's what I turned over and submitted as my notes.

Ex. 3 at 293:7-294:18; see also 304:22-305:5 (describing notes between him and the transcriptionist).[1]

Although Dr. Penn referred to this transcriptionist as "my transcriptionist" and stated "I have a professional transcriptionist to help me with notes," (Ex. 3 at 293:21-22, 294:9-10), he subsequently stated that he had never used this transcriptionist prior to this time:

> Q. And is this transcriptionist somebody who works for you in -- normally in the course of your work and your business?

---

[1] Despite Dr. Penn's original testimony that the verbiage in his notes written in red were from Ms. El-Basit, he subsequently testified that he wrote some of the notes in red font, but that the transcriptionist "wanted [him] to explain" certain abbreviations and was "giving [him] a heads up of maybe you need to do a little bit more on that." Ex. 3 at 315:1-13. He next testified that a question in his notes in red font reading "You interviewed two monitoring bureau north and south regions, one (male) is an attorney, by training. The other (female) is a nurse by training," was authored by him, and that he "sometimes" addresses himself in the second person. *Id.* at 329:19-330:5 (citing to ADCRR00232493).

A. If you could clarify when you say my work and my business, I don't know what you mean by that.
Q. Well, I believe you said you often use a transcriptionist, and so I was just inquiring if this is the person that you normally use for transcribing notes for you?
MS. ORCUTT: Form.
THE WITNESS: When you say "notes," I'm not sure what you're referring to. If you could clarify, like, what you're referring to, I can try to answer your question.
BY MS. KENDRICK: Q. Sure. What's the name of this transcriptionist?
A. Sure. Her name is Kathleen, K-a-t-h-l-e-e-n, El, E-l, dash, B, like boy, a-s-i-t.
Q. Oh. Her last name is El-Basit?
A. Yes.
Q. And is Ms. El-Basit somebody that you have used before to transcribe notes?
A. No, this is the first time I've employed her to do this.
Q. And where does Ms. El-Basit work?
A. I don't know exactly where she works. When you say "where," do you mean the city or the state or do you mean the entity? Or -- I'm not understanding.
Q. The entity and the -- the entity and the city and state, yes.
A. So I don't know what her -- I think she's a school teacher by day job, but I believe she's in the Chicago area. Somewhere in the Chicago, Illinois area.
Q. Okay. And she was not with you when you visited these prisons. Correct?
A. That's correct.

*Id*. at 294:19-296:5.

The undersigned Plaintiffs' counsel immediately requested that Defendants produce all of the rough notes that Dr. Penn had testified he originally took during his walking tour, and had sent to the transcriber. *Id*. at 296:6-10. In response, counsel for Defendants indicated that she would "confer about that on the next break and we'll let you know." *Id*. at 296:11-12.

At the end of the deposition, Plaintiffs' counsel reiterated the request for the immediate production of all notes from Dr. Penn's tours that he provided to the transcriptionist. *Id*. at 334:20-22. Defendants' counsel stated "We talked about that over

the break and he does not have the raw notes. All he has is what he provided to us." *Id*. at 334:23-25. Dr. Penn subsequently testified under oath as follows:

> BY MS. KENDRICK: Q. Did you e-mail those raw notes to the transcriptionist, Dr. Penn?
> A. When you say "raw notes," I guess I'm not sure what you mean by "raw notes."
> Q. You previously said that you wrote rough notes and sent them to a transcriptionist, Ms. El-Basit, in Chicago. And then she sent you back your notes typed up. And so that's what I'm referring to is what you sent to Ms. El-Basit.
> A. Yes, that's correct.
> Q. And did you send those notes to her via e-mail?
> A. Yes.
> Q. And did you save the e-mail?
> A. No.
> Q. The e-mail has been deleted?
> A. Yes.

*Id*. 335:1-17.

## ARGUMENT

### I. Sanctions Are Warranted Due to Defendants' Willful Destruction of Evidence

The Court has the power to impose sanctions for destruction of evidence and documents. *Medical Laboratory Mgt. Consultants v. Amer. Broadcasting Cos., Inc*., 306 F.3d 806, 824 (9th Cir. 2002); *Glover v. BIC Corp*., 6 F.3d 1318, 1329 (9th Cir. 1993); *Beecher Carlson Insurances Services, LLC v. Dotson*, Case No. CV-11-02255-PHX-ROS, 2013 WL 12250135, at * 7 (D. Ariz. Sept. 26, 2013). Appropriate sanctions include any or all of the following: (1) dismissing claims; (2) drawing adverse inferences about the contents of the documents destroyed; (3) excluding testimony and evidence; and/or (4) awarding fees and costs. *Leon v. IDX Sys. Corp*., 464 F.3d 951, 958 (9th Cir. 2006); *Glover*, 6 F.3d at 1329; *In re Napster, Inc. Copyright Lit*., 462 F. Supp. 2d 1060, 1070-78 (N.D. Cal. 2006). A party seeking sanctions based on the spoliation of evidence must demonstrate the presence of three elements:

> (1) [T]hat the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Napster*, 462 F. Supp. 2d at 1078 (internal quotation marks omitted).

The Court also has the clear authority to enforce its prior orders, and sanction a party for its willful noncompliance with prior orders. *See Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35 (1984) (courts may enter further orders by exercising "the equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices") (quoting *Int'l Prods. Corp. v. Koons,* 325 F.2d 403, 407-08 (2d Cir. 1963)); *Armstrong v. Brown*, 768 F.3d 975, 986 (9th Cir. 2014) ("The ongoing, intractable nature of this litigation affords the district court considerable discretion in fashioning relief."); *see also Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (holding that "[t]he inherent powers of federal courts are those which 'are necessary to the exercise of all others.'") (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also United States v. N.Y. Tel. Co*., 434 U.S. 159, 172 (1977) ("This Court has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained . . . ."); *Nat'l Org. for the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 544 (9th Cir. 1987) ("One of the recognized applications of the All Writs Act is the issuance of orders necessary to ensure the integrity of orders previously issued.").

**A. Defendants Had a Clear Duty to Preserve All of Their Experts' Notes**

A litigant is always under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *Dotson*, 2013 WL 12250135, at *8 (citing *Glover*, 6 F.3d at 1329). In addition to this threshold obligation as a litigant, Defendants here had a clear duty to specifically preserve their experts' notes, pursuant to the explicit language of

the parties' agreement and the Court's order. By no stretch of the imagination can Defendants argue that they or their counsel were not on notice of the Court's order or their counsel's agreement to ensure that their experts preserved all of their notes.

**B. Defendants Had a Culpable State of Mind in Failing to Preserve All of Their Experts' Notes**

As this Court noted in *Dotson*,

> Courts have not been uniform in defining the level of culpability that is required before sanctions are appropriate for evidence destruction. *Reinsdorf v. Skechers U.S.A., Inc.*, 2013 WL 3878685, *20 (C.D. Cal. 2013). In the Ninth Circuit, it appears that a finding of "bad faith" is not a prerequisite to an award of sanctions; "a finding of bad faith will suffice, but so will simple notice of 'potential relevance to the litigation.'" *Glover*, 6 F.3d at 1329 (citing *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991)). Nevertheless, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *Napster*, 462 F.Supp.2d at 1066–67.

2013 WL 12250135, at *8.

Here, Dr. Penn admitted that he had "rough notes" that he had taken during the five days of tours. Kendrick Decl. Ex. 3 at 294:8-9. Defendants' counsel clearly stated that Dr. Penn no longer has them, and Dr. Penn testified under oath that he had taken the extraordinary step of deleting his outgoing email sending the notes to the transcriber he used. *Id*. at 334:23-335:17.

The Court's August 2021 order clearly put Defendants on notice that experts' notes were relevant to the litigation and must be preserved, and accordingly meets the Ninth Circuit's requirements under *Glover*.

**C. The Missing Information is Relevant to Plaintiffs' Claims**

The missing "rough notes" from Dr. Penn's visits to the prisons in mid-September 2021 are highly relevant to Plaintiffs' claims. These documents reflecting Dr. Penn's contemporaneous observations during tours and conversations with ADCRR and Centurion staff are important to understand his expert declaration and testimony as well as potentially valuable impeachment evidence, as the Court recognized in granting Plaintiffs additional time to depose him on those notes that were belatedly produced. *See* Doc. 4127 at 1.

### II. The Relief Sought is Proportionate to the Violation

Defendants' violation of the Court's explicit order easily would justify complete exclusion of Dr. Penn's written and oral testimony. And unlike the cases where courts concluded that the exclusion of evidence would be too severe, *see, e.g.*, *Great Am. Ins. Co. of New York v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 543 (D. Nev. 2008), *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552, 560 (D. Mont. 2009), the evidence Plaintiffs seek to exclude is proportionate to "deter [Defendants'] conduct, and remedy any prejudice it caused [Plaintiffs]." *Pioneer Drive, LLC*, 262 F.R.D. at 560. In contrast to the defendant in *Pioneer Drive*, who "ha[d] yet to flout a court order nor been sanctioned," *id.*, this Court is all too familiar with Defendants' history of violating its orders and being repeatedly sanctioned over the course of this litigation. [*See, e.g*., Doc. 3691 at 1-2 ("Despite the Court's order for Defendants to produce the documents within seven days, Defendants did not do so. Even now, nearly two months later, Defendants' production remains incomplete. […] The fact of nondisclosure after 54 days is concerning. Compounding that failure is that the records Defendants have produced have been obviously unreliable. That raises concerns how Defendants collect data, keep records, and justify their representations to Plaintiffs and the Court."); *see also* Doc. 3734 at 4 (sanctioning Defendants with an award of attorneys' fees to Plaintiffs in bringing a motion to enforce a prior order)]

Moreover, the Ninth Circuit has recognized that "[t]he effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government" because "[g]overnmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365, 1370 (9th Cir. 1980) (internal quotation marks omitted). In balancing "litigation's goal of resolving disputes on the merits[,]" *Pioneer Drive, LLC*, 262 F.R.D. at 560, with Rule 37's deterrence objectives, especially when the government is the disobedient party, sanctioning Defendants by excluding their evidence is proportionate and justified for the purpose of advancing these interests.

Accordingly, Plaintiffs seek an order that:

(1) excludes any testimony by Dr. Penn (either in his written declaration, Doc. 4172, or in his oral testimony) regarding any he observations made, or the alleged content of any conversations he held with Defendants' or Centurion's employees, during his prison tours in preparation for this trial;

(2) draws an adverse inference that the destroyed documents would have been harmful to Defendants' litigation position;

(3) awards Plaintiffs their attorneys' fees and costs incurred in the filing of this motion, and denies any reimbursement sought by Dr. Penn from Plaintiffs for his time testifying at his deposition;

(4) provides any and all other further relief that this Court deems necessary and appropriate to ensure Defendants' adherence to its orders

Respectfully submitted,

Dated: November 18, 2021

**ACLU NATIONAL PRISON PROJECT**

By: s/ Corene T. Kendrick
David C. Fathi (Wash. 24893)**
Maria V. Morris (D.C. 1697904)*
Eunice Hyunhye Cho (Wash. 53711)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

Corene T. Kendrick (Cal. 226642)*
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice*
**Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
rlomio@prisonlaw.com
sophieh@prisonlaw.com

*Admitted *pro hac vice*

Victoria López (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted pursuant to Ariz. Sup. Ct. R. 38(d)

Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
Alisha Tarin-Herman (Bar No. 037040)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
jhgray@perkinscoie.com
ayost@perkinscoie.com
kworsham@perkinscoie.com
kboughton@perkinscoie.com
mcolby@perkinscoie.com
ksoldati@perkinscoie.com
atarinherman@perkinscoie.com

*Attorneys for Plaintiffs Shawn Jensen, et al., on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email: rdalyrooney@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*


**CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf