Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
         jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Thomas, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen; Dustin Brislan; Sonia Rodriguez; Ronald Slavin; Christina Verduzco; Jackie Thomas; Jeremy Smith; Stephen Swartz; Robert Gamez; Maryanne Chisholm; Jonathan Gonzalez, Desiree Licci; Joseph Hefner; Jason Johnson; Kendall Johnson; Joshua Polson; Laura Redmond; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' MOTION TO STRIKE PORTIONS OF DR. OWEN MURRAY'S WRITTEN DIRECT TESTIMONY (Doc. 4201)** |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

The Court ordered the parties to "present direct testimony from their experts through written declaration" to facilitate presentation of information to the Court within the limited time allotted for trial in this "complex case of 'extraordinary' breadth." Doc. 3952 at 1, 4. That ruling did not sanction an end-run around the disclosure requirements set forth in the Federal Rules of Civil Procedure. Nonetheless, Defendants, through the recently-filed, written direct testimony of Dr. Owen Murray (Doc. 4201), insert without explanation undisclosed information and opinions, including opinions based on Dr. Murray's untimely chart review. That testimony must be excluded.

**ARGUMENT**

Federal Rule of Civil Procedure 26 requires that an expert provide a report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them," as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(ii). Defendants may not now, over a month into trial, attempt to "'strengthen' or 'deepen' opinions expressed in the original expert report" by including undisclosed information and opinions in Dr. Murray's written direct testimony. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (excluding supplemental expert report and noting that party may not "sandbag one's opponent with claims and issues which should have been included in the expert witness' report") (internal quotation marks and citations omitted); *see also Sandata Techs., Inc. v. Infocrossing, Inc.*, No. 05 CIV. 09546LMMTHK, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007) ("experts are not free to continually bolster, strengthen, or improve their reports by endlessly researching the issues they already opined upon, or to continually supplement their opinions").

The proper remedy here is to exclude the undisclosed testimony. "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Yeti by*

1    *Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule

2    37(c)(1) gives teeth to th[e] requirements [under Rule 26] by forbidding the use at trial of

3    any information required to be disclosed by Rule 26(a) that is not properly disclosed.").

4    The burden to prove substantial justification or harmlessness lies with the party facing

5    sanctions. *See Yeti by Molly*, 259 F.3d at 1107; *Wong v. Regents of the Univ. of Cal.*, 410

6    F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for

7    failure to comply strictly with scheduling and other orders"). Defendants cannot meet

8    their burden here.

9

10    **A.    The Court Should Strike Testimony Based on Untimely Medical Record Review (Paragraphs 206 and 1018).**

11        Defendants improperly attempt to expand Dr. Murray's direct testimony to include

12    information about his review of 80 patient charts, which he completed only ***after*** he

13    submitted his expert report and ***after*** he was deposed by Plaintiffs' counsel.[*] That is not a

14    minor alteration; 120 pages of Dr. Murray's 188-page written direct testimony consists of

15    review of the care provided to 80 patients by providers within the Arizona Department of

16    Corrections, Rehabilitation and Reentry. *See* Doc. 4201 at 33-153 ¶¶ 200-996. Dr. Murray

17    previously testified that he had not reviewed the underlying patient charts for that portion

18    of his testimony, but now seeks to improperly bolster those 120 pages with his after-the-

19    fact personal review of the underlying charts. As a result, the Court should strike

20    _____

21    [*] Defendants made no effort to supplement Dr. Murray's report with his belated medical record review before filing his written direct testimony. Nor could they have. It is

22    well established that "the duty to supplement a report does not facilitate an end-run around the initial duty of complete and timely disclosure" and "glaring omissions in an original

23    expert witness report cannot be cured by a supplement." *Tuk v. U.S. Xpress, Inc.*, No. 2:19-CV-134, 2021 WL 2433800, at *2 (S.D. Ga. June 15, 2021); *see also Great Lakes

24    *Ins. Se v. Rental Boat Corp.*, No. 20-60133-CIV, 2021 WL 1686926, at *2 (S.D. Fla. Mar. 1, 2021) ("Supplementation is not a device that allows experts to engage in additional

25    work, correct weaknesses in the initial report, or produce information in a belated fashion. Nor does it allow parties to cure a major omission in the report or remedy an expert's

26    inadequate or incomplete preparation. Supplementation is not proper if the new opinion is based on evidence that was available when the initial report was disclosed.") (internal

27    citations omitted). Otherwise, litigants would be allowed to "circumvent the full disclosure requirement implicit in Rule 26," which would "virtually require new rounds of

28    depositions" and "hinder rather than facilitate . . . the final disposition of the case." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701-02 (D.N.M. 2003).

1  paragraph 206 of Dr. Murray's written direct testimony in its entirety and the last sentence

2  of paragraph 1018, both of which discuss Dr. Murray's conclusions based on his untimely

3  chart review. Those paragraphs read as follows:

> 206. Since I submitted my expert report on October 22, 2021, I have been able to review the charts of all 80 inmates in the random sample, and nothing in that review changes my findings or opinions as stated in my report.

> . . . .

> 1018. My team's review of the direct chronic care found in the medical records of the 80 ADCRR inmates from our random sample of chronic care patients validates these HEDIS scores. As I conducted my own review of the 80 charts, I reviewed the blood pressure and A1C results for each applicable patient for consistency with the HEDIS results, and I found them to be consistent with the system-wide ADCRR scores.

12  Doc. 4201 at 35 ¶ 206 & 164 ¶ 1018.

13  As Dr. Murray concedes in paragraph 206, he had not reviewed the charts of all 80

14  patients when he submitted his expert report on October 22, 2021. In his expert report,

15  Dr. Murray stated only that "Dr. Leonardson and/or I personally reviewed the eOMIS

16  medical records for each ADCRR inmate discussed in this report." Declaration of Rita

17  Lomio ("Lomio Decl."), filed herewith, Ex. A at 1. At his deposition on October 26, 2021,

18  Dr. Murray acknowledged that he in fact had reviewed the medical records of only "four

19  or five" patients, and none "specifically related to the chart review piece":

> Q. And did you review any medical records?

> A. I reviewed several medical records that Dr. Leonardson pulled out, but I did not review any medical records specifically related to the chart review piece.

> Q. Okay. So all of the descriptions in that medical review section of your report were written by Dr. Leonardson or one of the other reviewers; is that right?

> A. Correct.

> Q. And did you do any spot-checking of their review? Did you look at the medical records yourself?

> A. I reviewed all of the reviews with Dr. Leonardson, and she reviewed all of the reviews with the other reviewers.

Q. My question is, did you go into the medical record itself to determine whether the summary of the review was accurate?

A. As I said, I went through a couple that Dr. Leonardson pulled out for me to look at several issues that she wanted to make sure I understood, but I did not go back and re-review the medical records they reviewed.

Q. Okay. So when you said 'several,' how many is 'several'?

A. Four or five.

. . . .

Q. So as I understand it, 80 charts were reviewed in this process, correct?

A. Correct.

Q. And the majority were reviewed by Dr. Leonardson, right?

A. Correct.

Q. And then you had a couple other people, Pulvino and Freeman. Do you know how many charts they reviewed, respectively?

A. Mr. Pulvino did ten, and I think Erin may have done ten and possibly a few more.

Q. And then did Dr. Leonardson review their findings or –

A. Correct.

Q. Do you know if she actually went into the record to check what they did or she just talked to them about what they found or reviewed their write-up?

A. She reviewed their write-up and was available to them if they had questions and had discussions with them early on before about the scale that they were going to use in reviewing the care.

Q. Okay. And if I understand you correctly, you didn't review any of the findings in this part of the report; is that correct?

A. That's correct.

Q. And except for a couple cases which you reviewed for other reasons, you didn't review the records yourself, correct?

A. That is correct.

Lomio Decl., Ex. B at 8:3-9:3, 92:8-93:11.

There simply is no excuse for Dr. Murray's failure to review the medical records before completing his expert report. The medical records were readily available to him, and the Court already has explained that the fact that an expert "did not have as much time as he wished to complete his report is not a sufficient excuse to allow him to testify regarding undisclosed matters." *See* Doc. 4107 at 2 (precluding Dr. Phillips from "offer[ing] non-disclosed expert testimony" where he had not reviewed patient medical records before submitting his report).

And Plaintiffs are prejudiced by this undisclosed testimony. Because Dr. Murray had not reviewed the patient medical records, he was unable to answer questions during his deposition about the new information in his written direct testimony. First, unlike in paragraph 206 of his written direct testimony, Dr. Murray repeatedly testified at his deposition that he could not form an opinion about the adequacy of care provided to patients discussed in his report because he had not reviewed their medical records. *See* Lomio Decl., Ex. B at 145:13-18 ("Q. So you don't have an opinion about the adequacy of care in this case because haven't reviewed the medical record; is that right? . . . THE WITNESS: That's correct, right."); *id.* at 147:8-14 ("Q. Do you agree that the hepatitis C should have been addressed between October 2019 and the present or the time that your reviewer reviewed the medical record? . . . THE WITNESS: As I said, without reviewing the record myself, I don't have an opinion on that."); *id.* at 149:22-150:4 ("Q. Do you even know, as far as the mammogram, whether she received – whether Arizona's policy was followed about when a mammogram should be conducted? . . . A. As I said, I don't have an opinion on that."); *id.* at 127:12-128:3 ("Q. . . . And you rated the care -- quality of chronic care as 'good,' even though they prescribed NSAIDs even when the patient had chronic kidney disease. Do you see that? A. Yes. Q. Do you agree with that review? . . . A. I didn't review this chart, so I don't have an opinion.").

1    Second, Dr. Murray at his deposition could not answer questions about the subject

2    of paragraph 1018 of his written direct testimony:

3              Q. . . . Okay. In how many cases of the 80 was the A1C
               consistent with the HEDIS figures? How many cases?
4
               A. I don't have that specific stat.
5
               Q. And you don't have it for blood pressure either, correct?
6
               A. I have the general ones that we got through the HEDIS
7              analysis.

8              Q. No. I'm talking about in your record review. How many
               of the 80 cases?
9
               A. We didn't do that review that way.
10

11   Lomio Decl., Ex. B at 155:9-19; *compare with* Doc. 4201 at 164 ¶ 1018 (written direct

12   testimony) ("As I conducted my own review of the 80 charts, I reviewed the blood

13   pressure and A1C results for each applicable patient for consistency with the HEDIS

14   results, and I found them to be consistent with the system-wide ADCRR scores.").

15        **B.    The Court Should Strike Undisclosed Opinion on Hepatitis C Testing
               and Treatment Protocol (Paragraph 1034).**

16        Next, Dr. Murray adds a new, sweeping opinion in his written direct testimony: "In

17   reviewing ADCRR and Centurion's Hepatitis C testing and treatment protocol, including

18   staging, it is my opinion that it reflects current best practices in a correctional setting and

19   is in line with what other state correctional systems are currently doing." Doc. 4201 at 171

20   ¶ 1034. That opinion was not disclosed in his expert report. *See* Lomio Decl., Ex. A.

21   Outside of the chart review of the randomly selected 80 patients, Dr. Murray's expert

22   report contained only two paragraphs (two sentences each) regarding hepatitis C, which

23   related to treatment outcomes and "conversations with Dr. Phillips and Dr. Orm" that led

24   Dr. Murray to believe "that ADCRR and Centurion have prioritized treatment of Hepatitis

25   C." Lomio Decl., Ex. A at 144-145. Those paragraphs are included almost verbatim

26   elsewhere in his written testimony. *See* Doc. 4201 at 170-71 ¶¶ 1032-33. They

27   certainly do not support the new opinion set forth in paragraph 1034 of his written direct

28   testimony. As a result, paragraph 1034 must be excluded in its entirety.

1

2

**C.    The Court Should Strike Undisclosed Opinion and Data on System-Wide Encounter Statistics (Paragraphs 1036-1038).**

3    Finally, Dr. Murray's written direct testimony contains a new section entitled

4    "System-Wide Encounter Statistics." Doc. 4201 at 172-73 ¶¶ 1036-38. The data in that

5    new section, and the opinions expressed therein, were not disclosed in his expert report.

6    *See* Lomio Decl., Ex. A. Therefore, paragraphs 1036-38 of Dr. Murray's written direct

7    testimony must be excluded in their entirety.

8                                    **CONCLUSION**

9    This Court should strike paragraphs 206, 1034, 1036, 1037, and 1038 of

10    Dr. Murray's written direct testimony (Doc. 4201) in their entirety, and should strike the

11    last sentence of paragraph 1018. In addition, the Court should prohibit oral direct

12    testimony from Dr. Murray on those same matters.

13

14    Dated:  December 6, 2021                **PRISON LAW OFFICE**

15

16                                    By:    s/ Rita K. Lomio
                                        Donald Specter (Cal. 83925)*

17                                       Alison Hardy (Cal. 135966)*
                                        Sara Norman (Cal. 189536)*

18                                       Rita K. Lomio (Cal. 254501)*
                                        Sophie Hart (Cal. 321663)*
                                        1917 Fifth Street

19                                       Berkeley, California 94710
                                        Telephone:  (510) 280-2621

20                                       Email:    dspecter@prisonlaw.com
                                                  ahardy@prisonlaw.com

21                                                 snorman@prisonlaw.com
                                                  rlomio@prisonlaw.com

22                                                 sophieh@prisonlaw.com

23                                       *Admitted *pro hac vice*

24

25

26

27

28

Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
             jhgray@perkinscoie.com
             ayost@perkinscoie.com
             kworsham@perkinscoie.com
             kboughton@perkinscoie.com
             mcolby@perkinscoie.com
             ksoldati@perkinscoie.com
             docketphx@perkinscoie.com

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON
PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone:  (202) 548-6603
Email:    dfathi@aclu.org
             mmorris@aclu.org
             echo@aclu.org

*Admitted *pro hac vice*; not admitted
  in DC; practice limited to federal
  courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON
PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone:  (202) 393-4930
Email:    ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen;
Stephen Swartz; Sonia Rodriguez; Christina
Verduzco; Jackie Thomas; Jeremy Smith;
Robert Gamez; Maryanne Chisholm;
Desiree Licci; Joseph Hefner; Joshua
Polson; and Charlotte Wells, on behalf of
themselves and all others similarly situated*

1

**ARIZONA CENTER FOR DISABILITY LAW**

2

3      By:   s/ Maya Abela

Asim Dietrich (Bar No. 027927)
4      5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
5      Telephone:  (602) 274-6287
Email:     adietrich@azdisabilitylaw.org
6

Rose A. Daly-Rooney (Bar No. 015690)
7      J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
8      **ARIZONA CENTER FOR
DISABILITY LAW**
9      177 North Church Avenue, Suite 800
Tucson, Arizona 85701
10     Telephone:  (520) 327-9547
Email:
11         rdalyrooney@azdisabilitylaw.org
jrico@azdisabilitylaw.org
12         mabela@azdisabilitylaw.org

13     *Attorneys for Arizona Center for Disability
Law*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

I hereby certify that on December 6, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
Eden G. Cohen
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com
ecohen@struclove.com

*Attorneys for Defendants*

s/ M. van Olffen

78204.0001\155006190.1

-10-