Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
       jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen; Dustin Brislan; Sonia Rodriguez; Ronald Slavin; Christina Verduzco; Jackie Thomas; Jeremy Smith; Stephen Swartz; Robert Gamez; Maryanne Chisholm; Jonathan Gonzalez, Desiree Licci; Joseph Hefner; Jason Johnson; Kendall Johnson; Joshua Polson; Laura Redmond; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br> Plaintiffs, <br><br> v. <br><br> David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities, <br><br> Defendants. | No. CV 12-00601-PHX-ROS <br><br> **PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO PRECLUDE PLAINTIFFS' REBUTTAL WITNESS** <br> **(Doc. 4205)** |

**INTRODUCTION**

Defendants' witnesses have testified that NCCHC accreditation is the "gold standard" (Declaration of Daniel C. Barr ("Barr Decl."), filed herewith, Ex. A at 10 (11/16/21 a.m. rough transcript) (Director Shinn)), and "the Rolls Royce accreditation" (Barr Decl., Ex. I at 9012 (11/19/21 a.m. final transcript)). Defendants now claim that NCCHC standards and accreditation is "a cornerstone of [their] presentation in this litigation," suggesting that such accreditation precludes a finding of an Eighth Amendment violation. *See* Doc. 4205 at 4. To rebut Defendants' misleading testimony regarding NCCHC accreditation and its relevance to this case, and to provide the Court with additional information about the NCCHC accreditation process, Plaintiffs offer as a rebuttal witness Catherine Knox. *See, e.g.*, *United States v. Mendoza-Prado*, 314 F.3d at 1099, 1105 (9th Cir. 2002) (holding that rebuttal evidence is admissible when opposing party "'opens the door' by introducing potentially misleading testimony") (quoting *United States v. Beltran-Rios*, 878 F.2d 1208, 1212 (9th Cir. 1989)).

Ms. Knox will explain the NCCHC survey process based on her personal experience as a trained surveyor for the NCCHC for 19 years from 1998 through 2017, as the Health Services Administrator for the Oregon Department of Corrections, and as a correctional health monitor in federal litigation involving correctional facilities that were NCCHC accredited. Ms. Knox will explain what NCCHC surveys do and do not examine, and that, in her experience, NCCHC accredited institutions nonetheless have been found in violation of the Eighth Amendment. Ms. Knox will testify as a lay witness, and therefore she does not need to prepare a written report under Federal Rule of Civil Procedure 26. And, for the reasons described below, Ms. Knox was timely disclosed.

**ARGUMENT**

**I.     Plaintiffs Timely Disclosed Ms. Knox as a Rebuttal Witness.**

This Court previously held that "[a]ny non-rebuttal fact witness not disclosed by September 10, 2021, will presumptively be precluded from testifying." Doc. 3940 at 3. The parties agreed, in the Proposed Final Pretrial Order filed October 29, 2021, that

rebuttal witnesses could be identified later. *See* Doc. 4116-1 at 24 (Plaintiffs' Statement) ("Any other witnesses as necessary for rebuttal"); *id.* at 41 (Defendants' Statement) ("Any other witnesses necessary for rebuttal and/or impeachment"). Now, however, Defendants contend that Plaintiffs should have disclosed their rebuttal witness earlier (Defendants do not say when, exactly) because Plaintiffs should have been on notice that NCCHC standards and accreditation were a "cornerstone" of their defense since 2012.[1] Doc. 4205 at 2, 4. That argument does not withstand scrutiny.

In particular, Defendants contend that "[t]estimony regarding the NCCHC accreditation process could have been reasonably anticipated based on Defendants' extensive disclosures dating back nine years in this case . . . ." Doc. 4205 at 6; *see also id.* at 2. In support, Defendants cite a supplemental disclosure statement from nine years ago, as well as expert reports and deposition testimony from 2013 and 2014. *Id.* at 2-3. But Plaintiffs certainly cannot be expected to identify witnesses for trial in 2021 based on

---

[1] Defendants' heavy reliance on NCCHC accreditation is a surprise. "Compliance with NCCHC standards is not equivalent to complying with constitutional standards. Nationally recognized best practices may exceed constitutional standards in some areas and fall short in others." *Graves v. Arpaio*, 48 F. Supp. 3d 1318, 1338 (D. Ariz. 2014) (finding constitutional violations at Maricopa County Jail, despite the Jail's accreditation by NCCHC), *amended*, No. CV-77-00479-PHX-NVW, 2014 WL 6983316 (D. Ariz. Dec. 10, 2014); *see also Ruiz v. Johnson*, 37 F. Supp. 2d 855, 901-02 (S.D. Tex. 1999), *reversed on other grounds and remanded sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001) ("Rather than analyze the actual quality of the medical care received by inmates, the NCCHC's evaluation focuses on the written standards, policies, protocols, bureaucracy, and infrastructure that makes up the medical care system."). Put differently, "it is absurd to suggest that the federal courts should subvert their judgment as to alleged Eighth Amendment violations to" standards promulgated by accrediting bodies. *Gates v. Cook*, 376 F.3d 323, 337 (5th Cir. 2004) (discussing American Correctional Association (ACA) standards); *see also* <u>Grenning v. Miller-Stout</u>, 739 F.3d 1235, 1241 (9th Cir. 2014) (ACA accreditation did not foreclose a finding of Eighth Amendment violation); *Hoptowit v. Ray*, 682 F.2d 1237, 1256-57 (9th Cir. 1982) ("it is error to constitutionalize the standards of particular groups" (referencing ACA standards)), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995); *cf. Rhodes v. Chapman*, 452 U.S. 337, 350 n.13 (1981) ("such opinions . . . simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question" (internal quotation marks and citations omitted)).

1   Defendants' disclosures in advance of a trial scheduled for 2014, which was never held.
2   *See* Doc. 3952 at 2 (explaining that there is a "vastly different evidentiary record and
3   posture" now as compared to 2014).
4         Defendants next contend that, in their September 10, 2021 pretrial disclosures, they
5   disclosed six lay "witnesses to testify regarding NCCHC standards." Doc. 4205 at 3-4.
6   But Defendants' overly broad disclosures cannot bar Plaintiffs from calling a rebuttal
7   witness now; four of the six were in the "may" testify section of the disclosures (Doc.
8   4011-1 at 16, 23-26), and only one of these six witnesses ultimately testified at trial about
9   NCCHC standards. *See* Doc. 4205 at 4. Defendants' pretrial disclosures listed 46
10  witnesses (Doc. 4011-1 at 4-44), for a trial in which they were allotted only 50 total hours.
11  *See* Doc. 3952 at 3. Plaintiffs certainly cannot be expected to identify witnesses to respond
12  to all subjects raised in Defendants' disclosures for all 46 witnesses. Indeed, before trial,
13  the Court directed Defendants to identify a realistic number of witnesses. *See* Doc. 4112 at
14  1 ("The Court notes Plaintiffs' schedule includes a realistic number of witnesses given
15  Plaintiffs' time allotment and burden of proof. Defendants, however, have not provided an
16  actual witness schedule. Instead, Defendants' list of approximately seventy individuals
17  must be potential witnesses. It is not remotely possible Defendants will be able to call all
18  these individuals in their allotted time."). Defendants delayed providing a revised
19  witness list until Plaintiffs' case-in-chief was nearing its end, denying Plaintiffs an
20  adequate opportunity shape their case to address the issues covered by the disclosures of
21  those witnesses who would actually testify.
22        In fact, Defendants withdrew four of the six witnesses whose disclosures
23  mentioned the NCCHC—Drs. Wu, May, Griffin, and Bueno. *See* Barr Decl., Ex. B
24  (Defendants' revised witness schedule, dated November 17, 2021).[2] That leaves just one
25  witness in Defendants' pretrial disclosures identified as testifying about NCCHC—Mr.

---

[2] And, toward the end of trial, Defendants stated that the fifth witness, Tom Dolan, "likely" would not testify about "NCCHC compliance." Barr Decl., Ex. K (email from Dan Struck, attorney for Defendants, dated December 1, 2021).

-3-

1  Gann. But Mr. Gann conceded at trial that although he had received NCCHC auditor
2  training, he "never actually audited a facility." Barr Decl., Ex. C at 23 (11/16/21 p.m.
3  rough transcript) (Mr. Gann). And he was unable to answer specific questions about the
4  NCCHC survey process. *See id.* at 139-140 (testifying that he is "not aware" of how many
5  patients are interviewed by NCCHC surveyors, or whether there is a specific requirement
6  related to such interviews).

7  There was significant additional testimony by other witnesses about NCCHC
8  standards and accreditation that had not previously been disclosed by Defendants.
9  Director David Shinn, for example, testified about NCCHC accreditation, even though
10 NCCHC was not mentioned in Defendants' pretrial disclosure statement for him. *See* Doc.
11 4011-1 at 4-5 (pretrial disclosure statement); Barr Decl., Ex. A at 10, 35-36 (11/16/21 a.m.
12 rough transcript). And Dr. Stallcup testified to her "understanding pursuant to NCCHC"
13 (Barr Decl., Ex. B at 40 (11/17/21 p.m. rough transcript)), even though NCCHC was not
14 mentioned in Defendants' pretrial disclosure statement for her. *See* Doc. 4011-1 at 9-10.
15 Dr. Phillips, too, discussed NCCHC accreditation requirements and process (Barr Decl.,
16 Ex. E at 77-78, 95-100, 103 (11/18/21 p.m. rough transcript) (Dr. Phillips), even though
17 NCCHC was not mentioned in Defendants' pretrial disclosure statement for him or his
18 expert report. *See* Doc. 4011-1 at 9; Barr Decl., Ex. F (expert report dated October 22,
19 2021).

20 Next, Defendants state that Plaintiffs should have been on notice because, on
21 October 1, 2021, "Defendants listed 43 trial exhibits involving NCCHC accreditation,
22 including certificates of accreditation, accreditation reports, and accreditation update
23 reports." Doc. 4205 at 4. It simply is unreasonable to expect that Plaintiffs plan for, in the
24 limited trial time allotted, every possible permutation of Defendants' ever-changing,
25 scattershot trial strategy, based on a preliminary and growing exhibit list, with no
26 indication of how the over 500 exhibits might be used, and without knowledge of whether
27
28

1  indeed they would be used at all.³ *See* Doc. 4205-1 at 92 (listing 541 possible exhibits as of October 1, 2021); Doc. 3952 at 1, 3 (noting that "trial time is not unlimited, even in a complex case of 'extraordinary' breadth," and stating that "each side will be allotted 50 hours"). For example, 28 of those 43 exhibits pre-dated July 1, 2019, when Centurion was responsible for healthcare in the Arizona state prisons. *See* Doc. 4205-1 at 88-90 (listing NCCHC reports from November 25, 2014, to May 23, 2019). But Defendants' position before and during trial was that only evidence after July 1, 2019, was relevant. *See* Barr Decl., Ex. G at 3 (11/3/21 a.m. rough transcript) ("MR. STRUCK: . . . So all of the care that was received I guess the plaintiffs expert are saying was improper with respect to these individuals who died occurred long before Centurion ever came on board and it's simply not relevant.") (objecting to admission of mortality reviews for patients who died before July 1, 2019). Similarly, Defendants included 117 letters from Plaintiffs' counsel raising concerns with healthcare received by class members. *See* Barr Decl., Ex. H at 80-88 (Defendants' Second Supplemental Pretrial Disclosure Statement, dated October 15, 2021). But during trial, Defendants contended that advocacy letters by Plaintiffs' counsel were not admissible. Doc. 4134. Given Defendants' inconsistent positions about their own exhibits, it is not reasonable for Plaintiffs to be required to divine the subjects on which Defendants would present evidence from the exhibit list.

Finally, Defendants contend that Plaintiffs should have been on notice of their intention to rely on NCCHC standards and accreditation because Dr. Penn's expert report, produced on October 22, 2021, ten days before trial, and his expert declaration filed on November 14, 2021, two weeks into trial, discussed NCCHC accreditation. Doc. 4205 at 4. That is absurd. Defendants' pretrial disclosure statement dated September 10, 2021, made no mention of any testimony by Dr. Penn regarding NCCHC.⁴ *See* Doc. 4011-1 at 16.

---

³ The Court properly sustained an objection to admission of one of the exhibits on hearsay grounds. Barr Decl., Ex. C at 27-30 (11/16/21 p.m. rough transcript) (discussing admissibility of Exhibit 3305, 2019 NCCHC Accreditation Report for ASPC-Douglas).
⁴ The disclosure statement did state that Dr. Penn "serves as the Chair of the Board

## II. Ms. Knox May Testify as a Lay Witness.

Ms. Knox will testify as a fact witness, not an expert witness. Therefore, Defendants' arguments that Ms. Knox should have provided an expert report under Federal Rule of Civil Procedure 26 and should have been disclosed by October 15, 2021, have no merit. *See* Doc. 4205 at 5-6.

Ms. Knox will testify about the NCCHC survey process based on her personal experience as a trained surveyor for the NCCHC from 1998 through 2017, as the Health Services Administrator for the Oregon Department of Corrections, and as a correctional health monitor in federal litigation involving correctional facilities that were NCCHC accredited. *See* Barr Decl., Ex. J (CV of Ms. Knox). During her decades of experience in correctional healthcare and involvement with the NCCHC, Ms. Knox worked to obtain NCCHC accreditation for the Oregon state prisons, ensuring that they had the necessary systems in place to meet NCCHC standards, and experiencing NCCHC accreditation from the perspective of a surveyee. Ms. Knox also worked as an NCCHC surveyor. She performed approximately 15 accreditation surveys of correctional facilities since 1998 and provided training to other NCCHC surveyors, in addition to training correctional health administrators on how to apply for NCCHC accreditation. In federal civil rights litigation, she has monitored prisons under consent decrees, including prisons that had achieved NCCHC accreditation. Her testimony regarding her experiences with NCCHC and the accreditation process in these different roles will clarify that process for the Court, to inform the Court's understanding of what a prison's accreditation establishes about that facility.

Plaintiffs are calling Ms. Knox solely to provide testimony on her personal experience with NCCHC's accreditation process. She is not providing the Court with an

---

of Representatives of the National Commission on Correctional Health Care (NCCHC)." Doc. 4011-1 at 16. But, as Dr. Penn conceded at trial, that simply was "a figurehead position." Barr Decl., Ex. I at 9134 (11/19/21 a.m. final transcript). And Defendants did not disclose any anticipated testimony by Dr. Penn related to NCCHC. *See* Doc. 4011-1 at 16.

-6-

opinion on ADCRR's specific accreditation or on the merits of NCCHC's process. Rather, she is providing insight into what this process consists of, much as Defendants' non-expert witness Larry Gann discussed what the accreditation process was like from his experience. *See* Barr Decl., Ex. C at 23-29, 32 (11/16/2021 p.m. rough transcript) (Mr. Gann); *see United States v. Mast*, 999 F.3d 1107, 1112 (8th Cir. 2021) (finding a technician's description of her personal experience mapping wetlands proper lay testimony even though she had professional training and experience to create the maps); *Donlin v. Philips Lighting North America Corp.*, 581 F. 3d 73, 81 (3rd Cir. 2009) ("When a lay witness has particularized knowledge by virtue of her experience, she may testify - even if the subject matter is specialized or technical - because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."). As such, she is not providing opinion testimony as would be covered under Rule 701 or 702. *See* Fed. R. Evid. 701, 702.

In *Oak v. Zimmer*, the Ninth Circuit found that the district court had abused its discretion when it limited the statements of two treating physicians because they had not provided expert reports. No. 05-35231, 2006 WL 3478313, at *580 (9th Circ. 2006). The court pointed to the Advisory Committee Notes to Fed. R. Civ. P. 26(b)(4), which states that an expert "whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit" is an ordinary witness. *Id.* Here, Ms. Knox is not testifying as an expert but testifying based on being an actor in the general NCCHC accreditation process, and she should be treated as an ordinary witness who is not giving opinion testimony.

Defendants' contention that Ms. Knox's testimony is irrelevant is nonsensical. Defendants have, in their own words made NCCHC accreditation "a cornerstone of [their] presentation in this litigation" (Doc. 4205 at 4), and a full understanding of this process is not only relevant, but imperative. While Ms. Knox has not conducted NCCHC surveys since 2017, Defendants do not support their contention that "any knowledge" she has on

the accreditation process "would be stale." [Doc. 4205, 5] It is doubtful that the entire accreditation process has been revamped since 2017, and nearly two decades of experience with the NCCHC accreditation process can certainly provide relevant details about how this process is conducted.

## CONCLUSION

For the foregoing reasons, Ms. Knox should be permitted to testify as a lay rebuttal witness.

Dated: December 6, 2021

**PERKINS COIE LLP**

By:  s/ Daniel C. Barr
Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
Alisha Tarin-Herman (Bar No. 037040)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
          jhgray@perkinscoie.com
          ayost@perkinscoie.com
          kworsham@perkinscoie.com
          kboughton@perkinscoie.com
          mcolby@perkinscoie.com
          ksoldati@perkinscoie.com
          atarinherman@perkinscoie.com
          docketphx@perkinscoie.com

Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    vlopez@acluaz.org
          jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email:   dspecter@prisonlaw.com
         ahardy@prisonlaw.com
         snorman@prisonlaw.com
         rlomio@prisonlaw.com
         sophieh@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:   dfathi@aclu.org
         mmorris@aclu.org
         echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email:   ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
J.J. Rico (Bar No. 021292)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
  rdalyrooney@azdisabilitylaw.org
  jrico@azdisabilitylaw.org
  mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**Certificate of Service**

I hereby certify that on December 6, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
Eden G. Cohen
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com
ecohen@struclove.com

*Attorneys for Defendants*

s/ Marie van Olffen

78204.0001\155014197.1