# Exhibit G

UNCERTIFIED ROUGH DRAFT ** UNCERTIFIED ROUGH DRAFT

–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–

**\*\* ROUGH DRAFT DISCLAIMER \*\* ROUGH DRAFT DISCLAIMER \*\***

**PLEASE NOTE:**

This is an UNCERTIFIED ROUGH DRAFT transcript.

IT IS NOT a certified transcript and CANNOT be quoted

from in a pleading or in any other document.  If you would

like to quote from or copy/paste text from this hearing,

please order a complete or partial certified transcript.  The

certified transcript can be quoted from in any pleading or

other document.

–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–=–

CV12-00601 Jensen v Shinn Day 3 AM session

08:45 08:45 08:45

THE COURT:  All right.  We've got an issue?

MS. KENDRICK:  Good morning Your Honor no we don't

have an issue we have a resolution.  Counsel have conferred

08:45:22    about multiple exhibits --

Mr. Struck and I have conferred about the many

mortality reviews and psychological autopsies that are on

plaintiffs exhibit list and the parties have agreed that any

person who died since July 1st, 2019 to the present, those

08:45:55    documents will be entered into evidence.  The parties are at a

** UNCERTIFIED ROUGH DRAFT ** UNCERTIFIED ROUGH DRAFT **

UNCERTIFIED ROUGH DRAFT ** UNCERTIFIED ROUGH DRAFT

08:47:36          MR. STRUCK:  Centurion took over in July of 2019.

Prior to that it was Corizon.

THE COURT:  Okay.

MR. STRUCK:  From I believe that was December of 2014

08:47:49   until July of 2019 and prior to that it was Wexford from

July 2012 until December 2014.  And before that, the

Department of Corrections were self operating in terms of

their health care services.

So all of the care that was received and I guess the

08:48:19   plaintiffs experts are saying was improper with respect to

these individuals who died occurred long before Centurion ever

came on board and it's simply not relevant.

THE COURT:  But it's Department of Corrections.

Doesn't make any difference who you were relying on.  So I'm

08:48:37   inclined to allow it but let me see the briefing.

MR. STRUCK:  Okay.

MS. KENDRICK:  When would Your Honor like us to

submit it?

THE COURT:  Well, it's up to you because as soon as

08:48:49   you want to get the evidence in.  I would say do it as

expeditiously as possible.  You're going to be offering it

very quickly right?

MS. KENDRICK:  Yeah.  There's a couple that will be

offered with Dr. Stewart on an individual basis.

08:49:04          THE COURT:  So you better do it expeditiously.  But I

** UNCERTIFIED ROUGH DRAFT ** UNCERTIFIED ROUGH DRAFT **

# Exhibit H

Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Parsons, *et al.*, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,<br><br>Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections; and Richard Pratt, Interim Division Director, Division of Health Services, Arizona Department of Corrections, in their official capacities,<br><br>Defendants. | NO. 2:12-cv-00601-ROS<br><br>**DEFENDANTS' SECOND SUPPLEMENTAL PRETRIAL DISCLOSURE STATEMENT** |

Defendants, through counsel and pursuant to Federal Rule of Civil Procedure 26(a)(1) and the Court's Orders (Doc. 3931, 3940), submit their **Second** Supplemental Pretrial Disclosure Statement. This is a cumulative disclosure. Supplemental information appears in bold typeface. Any information which is withdrawn is deleted. Defendants will supplement and/or amend these disclosures as trial preparation progresses.[1]

---

[1] Defendants will provide 26(a)(2)(c) disclosures by the expert witness disclosure deadline.

559. **Medical Services Contract Monitoring Bureau organizational chart (ADCRR00175196).**

560. **Extracted summary of outside consultations by Complex, for the period from July 2018 through August 2021 (ADCRR00175197).**

561. **Letters from Plaintiffs' counsel regarding Shawn Jensen, ADC 032465, Florence – East (ADCRR00175199-00175226).**

562. **July 6, 2021 letter from Tania Amarillas regarding Robert Gamez, ADC 131401, Lewis-Rast (ADCR00175227-00175230).**

563. **November 10, 2020 letter from David Fathi regarding Ronald Slavin, ADC No. 142019, ASPC-Eyman, Cook (ADCRR00175231-00175232).**

564. **Letters from David Fathi regarding Rahim Muhammad, ADC No. 215306, ASPC-Florence, Kasson (ADCRR00175233-00175244).**

565. **September 29, 2021 letter from Tania Amarillas regarding Jason Robinson, ADC 284001, Florence-South (ADCR00175245).**

566. **July 9, 2021 letter from Juliette Mueller and Alison Hardy regarding Tanika Gary, ADC 314819, Perryville-Lumley (ADCRR00175246-00175247).**

567. **January 3, 2019 letter from Tania Amarillas and Corene Kendrick regarding Pedro Rojas, ADC 103714, Florence – North (ADCRR00175248-00175249).**

568. **May 20, 2020 letter from Corene Kendrick regarding Management of Positive COVID-19 Patients at Tucson and Florence (ADCRR00175250-00175257).**

569. **Letters from Plaintiffs' counsel regarding Shaka, ADC 027156 (ADCRR00175258-00175268).**

570. **Letters from Plaintiffs' counsel regarding Thomas Vogt, ADC 029337 (ADCRR00175267-00175273).**

571. **Letters from Plaintiffs' counsel regarding Shawn Jensen, ADC 032465 (ADCRR00175274-00175317).**

572. **Letters from Plaintiffs' counsel regarding James Staples, ADC 032688 (ADCRR00175318-00175337).**

573. **Letters from Plaintiffs' counsel regarding March Meacham, ADC 033556 (ADCRR00175338-00175346).**

574. **June 17, 2021 letter from Gabriela Pelsinger and Alison Hardy regarding Inadequate Response to Class Member Suicide (PM25) relating to Michael Ring, ADC 039090 (ADCRR00175347-00175348).**

575. **Letters from Plaintiffs' counsel regarding Kenneth Ashelman, ADC 044500 (ADCRR00175349-00175356).**

576. **Letters from Plaintiffs' counsel regarding Edward Gum, ADC 045380 (ADCRR00175357-00175362).**

577. **Letters from Plaintiffs' counsel regarding Jerry Ramos, ADC 049155 (ADCRR00175363-00175366).**

578. **April 27, 2021 letter from Jordan Payne regarding John Wheeler, ADC 049345, Florence – East (ADCRR00175367-00175369).**

579. **Letters from Plaintiffs' counsel regarding Joe Thomas, ADC 051405 (ADCRR0175370-00175375).**

580. **Letters from Plaintiffs' counsel regarding Sittingdown, ADC 052179 (ADCRR00175376-00175386).**

581. **Letters from Plaintiffs' counsel regarding James Marino, ADC 052455, (ADCRR00175387-00175392).**

582. **Letters from Plaintiffs' counsel regarding Peter Ross, ADC 052663 (ADCRR00175393-00175398).**

583. **March 30, 2020 letter from Amber Norris and Corene Kendrick regarding Steve Jernigan, ADC 054777, Florence – North (ADCRR0175399-00175400).**

584. **December 18, 2015 letter from Corene Kendrick regarding ADC Prisoners in Need of Immediate Medical, Dental, and/or Mental Health Care, including Richard Romar, ADC 056355 (ADCRR00175401-00175412).**

585. **September 13, 2017 letter from Alison Hardy regarding Michael Marsh, ADC 058426, Tucson – Rincon (ADCRR00175413-00175414).**

586. **Letters from Plaintiffs' counsel regarding Frank Atwood, ADC 062887 (ADCRR00175415-00175428).**

587. **December 7, 2018 letter from Tania Amarillas and Rita Lomio regarding William Hall, ADC 065869, Florence – Central (ADCRR00175429-00175430).**

588. **Letters from Plaintiffs' counsel regarding John Jolicouer, ADC 067133 (ADCRR00175431-00175443).**

589. **April 7, 2020 letter from Corene Kendrick and Gabriela Pelsinger regarding Class Member with Differential Diagnosis of COVID-19 Prior to Death relating to Jerry Hubbard, ADC 068237 (ADCRR00175444-00175447).**

590. **September 13, 2019 letter from Amber Norris and Thomas Nosewicz regarding Michael Oliver, ADC 068972, Eyman – Cook (ADCRR00175448-00175449).**

591. **Letters from Plaintiffs' counsel regarding Gail Voigt, ADC 072598 (ADCRR00175450-00175455).**

592. **March 11, 2020 letter from Gabriela Pelsinger and Alison Hardy regarding Roberto Moreno, ADC 077538, Tucson – Manzanita (ADCRR00175456-00175459).**

593. **Letters from Plaintiffs' counsel regarding Arnulfo Hernandez, ADC 080201 (ADCRR00175157460-00175473).**

594. **October 1, 2019 letter from Ilian Meza-Pena and Corene Kendrick regarding Rich Heidelbach, ADC 080269, Lewis – Bachman (ADCRR00175474-00175476).**

595. **December 18, 2015 letter from Corene Kendrick regarding ADC Prisoners in Need of Immediate Medical, Dental, and/or Mental Health Care, relating to Kevin Smith, ADC 080294 (ADCRR00175477-00175488).**

596. **Letters from Plaintiffs' counsel regarding Russell Bailey, ADC 082591 (ADCRR00175489-00175490).**

597. **December 21, 2018 letter from Thomas Nosewicz regarding Terry Pitzer, ADC 091992, Eyman – Cook (ADCRR00175491-00175492).**

598. **Letters from Plaintiffs' counsel regarding Brady Brents, ADC 092862 (ADCRR00175493-00175501).**

599. **Letters from Plaintiffs' counsel regarding J.D. Merrick, ADC 099252 (ADCRR00175502-00175511).**

600. **Letters from Plaintiffs' counsel regarding Daniel Glover, ADC 101266 (ADCRR00175512-0017515).**

601. **Letters from Plaintiffs' counsel regarding Pedro Rojas, ADC 103714 (ADCRR00175516-00175520).**

602. **October 18, 2019 letter from Juliette Mueller and Corene Kendrick regarding Walter Nusz, ADC 103801, Lewis – Rast (ADCRR00175521-00175522).**

603. **December 5, 2017 letter from Corene Kendrick regarding George Wilson, ADC 104162, Tucson – Manzanita (ADCRR0175523-00175524).**

604. **December 5, 2017 letter from Corene Kendrick regarding Ricky Gillin, ADC 107255, Tucson – Rincon Health Unit (ADCRR00175525-00175527).**

605. **April 23, 2021 letter from Juliette Mueller and Alison Hardy regarding Barry Raff, ADC 107828 (ADCRR00175528-00175529).**

606. **March 30, 2020 letter from Amber Norris and Alison Hardy regarding John Estrada, ADC 108351, Florence – Central (ADCRR00175530-00175531).**

607. **March 27, 2020 letter from Amber Norris and Alison Hardy regarding Lester Nortonsen, ADC 110935, Florence – East (ADCRR00175532-00175535).**

608. **January 15, 2021 letter from David Fathi regarding Jason Dean, #112850 (ADCRR00175536-00175537).**

609. **Letters from Plaintiffs' counsel regarding Patrick Bradbury, ADC 114167 (ADCRR00175538 -00175580).**

610. **January 30, 2019 letter from Amber Norris and Thomas Nosewicz regarding Michael Brown, ADC 117743, Eyman – Meadows (ADCRR00175581-00175585).**

611. **Letters from Plaintiffs' counsel regarding Jeffrey Lutz, ADC 118302 (ADCRR00175586-00175596).**

612. **Letters from Plaintiffs' counsel regarding Richard Thompson, ADC 120349 (ADCRR00175597-00175602).**

613. **April 8, 2020 letter from Corene Kendrick and Gabriela Pelsinger regarding Joseph Assyd, ADC 120372 (ADCRR00175603-00175607).**

614. **Letters from Plaintiffs' counsel regarding William Upton, ADC 128149 (ADCRR00175608-00175643).**

615. **December 13, 2013 letter from Corene Kendrick regarding James Harrod, 136270, Eyman – Browning (ADCRR00175644-00175645).**

616. **March 27, 2020 letter from Amber Norris and Corene Kendrick regarding Jerry Hubbard, ADC 140843, Florence – East (ADCRR00175646-00175649).**

617. **Letters from Plaintiffs' counsel regarding Alphonso Martinez, ADC 143560 (ADCRR00175650-00175654).**

618. **Letters from Plaintiffs' counsel regarding Anthony Miller, ADC 145589 (ADCRR00175655-00175683).**

619. **October 5, 2020 letter from David Fathi regarding Tracie Otero, ADC No. 151002, ASPC-Perryville Santa Cruz (ADCRR00175684-00175688).**

620. **January 3, 2018 letter from Rita Lomio and Sarah Hopkins regarding Richard Vazquez, ADC 157401, Tucson – Rincon (ADCRR00175689-00175691).**

621. **January 2, 2018 letter from Corene Kendrick regarding Patrick McKnelly, ADC 158707, Tucson – Manzanita (ADCRR00175692-00175693).**

622. **April 9, 2021 letter from Gabriela Pelsinger regarding Michael Evilsizor, ADC 161614, Tucson – Whetstone (ADCRR00175691-00175696).**

623. **August 27, 2019 letter from Amber Norris and Thomas Nosewicz regarding Lawrence Cardwell, ADC 164175, Eyman – SMU I (ADCRR00175697-00175699).**

624. **Letters from Plaintiffs' counsel regarding Wayman Walker, ADC 168263 (ADCRR00175700-00175705).**

625. **Letters from Plaintiffs' counsel regarding John Allen, ADC 168873 (ADCRR00175706-00175710).**

626. **March 30, 2020 letter from Tania Amarillas and Rita Lomio regarding Pablo Celaya, ADC 170888, Florence – South (ADCRR00175711-00175712).**

627. **Letters from Plaintiffs' counsel regarding Michael Valasquez, ADC (ADCRR00175713-00175752).**

628. **July 20, 2020 letter from Amber Norris and Corene Kendrick regarding James Stites, ADC 176078, Eyman – Meadows (ADCRR00175753-00175755).**

629. **July 9, 2016 letter from Corene Kendrick regarding Brian Finkel, 182486, Florence – South (ADCRR00175756-00175769).**

630. **Letters from Plaintiffs' counsel regarding Charles Trask, ADC 188597 (ADCRR00175770-00175782).**

631. **April 5, 2019 letter from Thomas Nosewicz regarding Johnny Black, ADC 191874, Tucson – Rincon (ADCRR00175783-00175785).**

632. **October 8, 2019 letter from Gabriela Pelsinger and Corene Kendrick regarding Todd Young, ADC 193089, Tucson – Manzanita (ADCRR00175786-00175787).**

633. **April 1, 2021 letter from Ilian Meza-Pena and Rita Lomio regarding Kee Nelson Steah, ADC 200537, Lewis Bachman (ADCRR00175788-00175789).**

634. **Letters from Plaintiffs' counsel regarding Bradley Schwartz, ADC 207346 (ADCRR00175790-00175800).**

635. **September 25, 2020 letter from Juliette Mueller and Corene Kendrick regarding Sean Behan, ADC 209310, Lewis – Rast (ADCRR00175801-00175802).**

636. **March 14, 2019 letter from David Fathi regarding Peter Wludyka, ADC No. 225901, ASPC-Eyman, Meadows (ADCRR00175803-00175816).**

637. **December 11, 2015 letter from Alison Hardy regarding ADC Prisoners In Need of Immediate Care, relating to Adrian Zamora, ADC 226075 (ADCRR00175817-00175827).**

638. **July 21, 2017 letter from Corene Kendrick regarding Shad Knight, ADC 229034, Safford – Tonto (ADCRR00175828-00175829).**

639. **March 25, 2019 letter from Corene Kendrick regarding Keith Koskella, ADC 229196, Tucson – Rincon (ADCRR00175830-00175350).**

640. **June 2, 2020 letter from Amber Norris and Corene Kendrick regarding Krystal Davis, ADC 233531, Perryville – Santa Cruz (ADCRR00175851-00175852).**

641. **February 4, 2020 letter from Tania Amarillas and Rita Lomio regarding Stephen Karban, ADC 234332, Florence – South (ADCRR00175853-00175854).**

642. **Letters from Plaintiffs' counsel regarding Quadry Holland, ADC 243858 (ADCRR00175855-00175866).**

643. **Letters from Plaintiffs' counsel regarding Quadiem Cornish, ADC 245990 (ADCRR00175867-00175869).**

644. **Letters from Plaintiffs' counsel regarding Albert Dutton, ADC 250794 (ADCRR00175870-00175877).**

645. **January 29, 2019 letter from David Fathi regarding Patients in need of mental health/medical care relating to Rosalva Trevino, ADC 252096 (ADCRR00175878-00175879).**

646. **January 9, 2020 letter from Corene Kendrick regarding Gabriel Figueroa, ADC 258371, Tucson – Rincon (ADCRR00175880-00175886).**

647. **July 13, 2018 letter from Tania Amarillas and Corene Kendrick regarding Gregory Enkhaus, ADC 265067, Yuma – Dakota (ADCRR00175887).**

648. **September 17, 2020 letter from David Fathi regarding Rueben Neal, ADC No. 265762, ASPC-E SMU I CDU (ADCRR00175888-00175889).**

649. **February 14, 2020 letter from Amber Norris and Rita Lomio regarding Jose Munguia, ADC 266507, Eyman – Cook (ADCRR00175890-00175892).**

650. **July 8, 2019 letter from David Fathi regarding Sadie Johnson, ADC No. 273402, ASPC-Perryville (ADCRR00175893-00175896).**

651. **September 13, 2018 letter from Corene Kendrick regarding Edward Lucero, ADC 279621, Tucson – Rincon (ADCRR00175897-00175906).**

652. **December 20, 2018 letter from Tania Amarillas and Corene Kendrick regarding Carlos Hernandez, ADC 280770, Florence – South (ADCRR00175907-00175909).**

653. **Letters from Plaintiffs' counsel regarding Jason Robinson, ADC 284001 (ADCRR00175910-00175929).**

654. **April 26, 2019 letter from Amber Norris and Rita Lomio regarding Sean Adie, ADC 286463, Florence – Central (ADCRR00175930-00175931).**

655. **September 18, 2020 letter from David Fathi regarding Eric Haag, ADC No. 286490, ASPC-T Santa Rita (ADCRR00175932-00175933).**

656. **Letters from Plaintiffs' counsel regarding Mendoza Andrea, ADC 289872 (ADCRR00175934-00175943).**

657. **Letters from Plaintiffs' counsel regarding Antjuan Brisco, ADC 295826 (ADCRR001759447-00175955).**

658. **Letters from Plaintiffs' counsel regarding Christopher Brightly, ADC 296229 (ADCRR00175956-00175968).**

659. **Letters from Plaintiffs' counsel regarding Elson DeLong, ADC 298802 (ADCRR00175969-00175970).**

660. **Letters from Plaintiffs' counsel regarding Brandon Bolt, ADC 299035 (ADCRR00175971-00175982).**

661. **January 24, 2019 letter from Alison Hardy regarding Brian Garcia, ADC 302411, Eyman – Browning (ADCRR00175983-00175984).**

662. **Letters from Plaintiffs' counsel regarding Gregory Valenzuela, ADC 304312 (ADCRR00175985-00176000).**

663. **January 2, 2019 letter from Tania Amarillas and Rita Lomio regarding Joseph Shreve, ADC 309533, Florence – Central (ADCRR00176001-00176002).**

664. **August 19, 2019 letter from Amber Norris and Thomas Nosewicz regarding Lewis Elvira, ADC 310577, Eyman – Meadows (ADCRR00176003-00176005).**

665. **December 20, 2018 letter from Tania Amarillas and Rita Lomio regarding James King, ADC 312231, Florence – Central (ADCRR00176006-00176007).**

666. **April 1, 2020 letter from Ilian Meza-Pena and Alison Hardy regarding Virgil Fosjord, ADC 313627, Florence – Central (ADCRR00176008-00176012).**

667.	**July 29, 2019 letter from David Fathi regarding David Neville, ADC No. 313762, ASPC-Tucson (ADCRR00176013-00176034).**

668.	**Letters from Plaintiffs' counsel regarding Robert Kay, ADC 314530 (ADCRR00176035 -00176040).**

669.	**Letters from Plaintiffs' counsel regarding Reyes Colvin, ADC 316886 (ADCRR00176041-00176045).**

670.	**Letters from Plaintiffs' counsel regarding Franklin Macato, ADC 317331 (ADCRR00176046-00176050).**

671.	**Letters from Plaintiffs' counsel regarding Warren Scott, ADC 320114 (ADCRR00176051-00176054).**

672.	**April 29, 2021 letter from Juliette Mueller and Alison Hardy regarding Luis Grijalva, ADC 323344, Lewis – Stiner (ADCRR00176055-00176056).**

673.	**January 17, 2019 letter from Amber Norris and Corene Kendrick regarding Manual Sanchez-Garcia, ADC 326505, Tucson – Rincon (ADCRR00176057-00176058).**

674.	**May 17, 2019 letter from David Fathi relating to Michael Poirier, ADC No. 332320 (ADCRR00176059-00176073).**

675.	**Letters from Plaintiffs' counsel regarding David Konie, ADC 334539 (ADCRR00176074-00176079).**

676.	**September 16, 2020 letter from Gabriela Pelsinger and Corene Kendrick regarding Gray McAlister, ADC 342036, Tucson – Whetstone (ADCRR00176080-00176082).**

677.	**February 2, 2021 letter from David Fathi regarding Austin Georgatos, ADC No. 346726 (ADCRR00176083-00176099).**

678.	**ADCRR 3-day Mental Health Training materials (ADCRR00176100-00177005).**

679.	**Arizona Department of Health Services Licensing data relating to ASPC-Perryville (ADCRR00177006-00177009 and ADCRR00177013).**

680.	**Arizona Department of Health Services Licensing data relating to ASPC-Phoenix (ADCRR00177010-00177012 and ADCRR00177014).**

681.	**Count for Mental Health Units, October 5, 2021 (ADCRR00177015).**

# Exhibit I

1                    UNITED STATES DISTRICT COURT

2                     FOR THE DISTRICT OF ARIZONA

3                         _____

4    Shawn Jensen, et al., on behalf  )
     of themselves and all others     )
5    similarly situated; and Arizona  )
     Center for Disability Law,       )
6                                     )
                     Plaintiffs,      )     CV-12-0601-PHX-ROS
7                                     )
            vs.                       )     Phoenix, Arizona
8                                     )     November 19, 2021
     David Shinn, Director, Arizona   )     8:31 a.m.
9    Department of Corrections; and   )
     Richard Pratt, Interim Division  )
10   Director, Division of Health     )
     Services, Arizona Department of  )
11   Corrections, in their official   )
     capacities,                      )
12                                    )
                     Defendants.      )
13   _____)

14

15

16        BEFORE:   THE HONORABLE ROSLYN O. SILVER, JUDGE

17           REPORTER'S TRANSCRIPT OF PROCEEDINGS

18      BENCH TRIAL - DAY 13 - A.M. SESSION (pages 9000-9136)

19

20

21   Official Court Reporter:
     Patricia Lyons, RMR, CRR
22   Sandra Day O'Connor U.S. Courthouse, Suite 312
     401 West Washington Street, SPC. 41
23   Phoenix, Arizona   85003-2151
     (602) 322-7257
24
     Proceedings Reported by Stenographic Court Reporter
25   Transcript Prepared with Computer-Aided Transcription

DIRECT EXAMINATION – JOSEPH V. PENN

08:45:53  1   BY MS. HESMAN:

2   Q    And, Dr. Penn, if you could walk us through when they're

3   conducting the inspection, what they're looking at, who

4   they're speaking to, what they're reviewing.

08:46:02  5   A    Sure.  There's actually a lot more to the process that's

6   involved even before –– I mean, that's kind of like halfway

7   down the road.

8         When a facility wants to achieve NCCHC accreditation,

9   and it's very important, there is only 5 percent, 5 percent of

08:46:18  10   the facilities nationally are NCCHC accredited, so it's kind

11   of like the Rolls Royce accreditation, if you will.  It's not

12   that easy to achieve.

13        But a facility would have to –– and it's voluntary

14   unless a court orders it.  Then they say, hey, we want to try

08:46:33  15   to sit for and apply for NCCHC accreditation.  So there's a

16   lengthy process before where they have to fill out paperwork

17   and do their own kind of internal, like –– I'm trying to find

18   the right words.  Where they –– are they ready.  Like they

19   do –– like a readiness survey where the facility leadership,

08:46:55  20   medical staff, nursing staff, healthcare administrators kind

21   of gauge themselves, how are we doing against the standards.

22   If we're a jail, do we meet the jail standards.  If we're a

23   prison, do we meet the prison standards.  How do we score on

24   those.

08:47:11  25        Then they apply to the central office, which is in

CROSS-EXAMINATION – JOSEPH V. PENN

11:58:22  1   NCCHC.  So the board chair is really just more of a -- it's

2   like a figurehead position.  I don't think it has anything to

3   do with the fiscal or financial or tax workings of the central

4   office.  That would be the president and CEO.  And if you want

11:58:38  5   to call her to testify, I'm sure she could answer all of these

6   questions easily.

7   Q    If you don't know the answer, you can just say you don't

8   know the answer, that's fine.

9        And you testified that you've been trained to work as

11:58:50  10  an NCCHC surveyor; correct?

11  A    A physician surveyor; correct.

12  Q    And has every prison or jail that you have ever surveyed

13  get accredited by NCCHC?

14  A    Could you repeat that again.  I didn't follow your

11:59:11  15  question.  Sorry.

16  Q    Has every prison or jail that you've ever been part of

17  surveying get accredited by NCCHC?

18  A    No.

19  Q    Which ones did not?

11:59:24  20  A    So the last jail that I surveyed was the New Orleans

21  Parish, I think in Louisiana they don't call them counties,

22  they call them parishes.  So during that period of time, I

23  believe they went on probation and lost their accreditation.

24  That was right after Hurricane Harvey, as I recall.  Sorry.

11:59:46  25  Hurricane Katrina.  My apologies.  Hurricane Katrina.  And

# Exhibit J

# Catherine M. Knox MN, RN, CCHP-RN

2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

## Work History

**Consultant**                                                          **2001 to present**
Catherine M. Knox, LLC, Portland, Oregon

Consultation and advice regarding the delivery of health care, particularly in the correctional setting. Projects include start-up and operation of private health care contracts (KS, NM, PA, and Yuma County, AZ); evaluation of the delivery of services particularly organizational structure, operations and professional nursing practice with recommendations on governance, budget, staffing, scheduling and program development (AL, KS, NJ, PA, WI, and Pearce County, WA); expert judgment and advice involving delivery of health care and/or practice of nursing in correctional settings (AL, AZ, CA, CO, FL, IL, LA, MI, NM, OR, WA, WY) and for the Department of Homeland Security, Office of Civil Rights and Civil Liberties; survey facilities for NCCHC accreditation (AZ, CA, IN, NJ, SD,TX); assessment and evaluation of nursing competency (Multnomah County, OR) and provide technical assistance on behalf of NIC (MT,WI).

**Chief Nursing Executive, Long Term Care**              **2008 to 2010**
**Statewide Assistant Chief Nursing Executive**
California Prison Health Care Service

Recruited to assist in the design and startup of new facilities to provide services for up to 10,000 inmates in the California Department of Corrections and Rehabilitation who require long term health care or are mentally ill. Assisted the Statewide Chief Nurse Executive in the operation of nursing services. Participate in planning and renovation of existing health care programs, establish process and procedure for review of nursing practice, develop a team of nurses responsible for continuing education and professional development, and facilitate a collaborative working relationship with the mental health program. Member of the Pharmacy & Therapeutics Committee, Quality Management Council, Ethics Committee, Interdisciplinary Continuing Education and Professional Development Committee.

**Director of Nursing**                                                 **2004 to 2008**
Washington Department of Corrections, Health Services

Provide leadership, expert opinion and advice on issues related to the practice of nursing in correctional settings. Responsible for the development of workload measures for staffing, descriptions of work performed by nursing staff, establishing expectations for continued competency in practice, delivery of training and continuing education for nursing staff. Supervise nurse managers, reviews and resolve complaints about nursing practice as well as service delivery. Recruit nurses to work in correctional health care and create work environments to retain nurses. Also responsible for the supervision and leadership of health information personnel.

Coordinate communicable disease and infection control measures for the Department. Develop, review and revise Department Policy, Health Services Operational Procedure and Clinical Guidelines related to communicable and infectious disease. Chair the infection control committee, supervise infection control nurses at all facilities, and collaborate with infectious disease specialists, the state health department and community organizations to implement public health measures.

### Catherine M. Knox MN, RN, CCHP-RN
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Write and implement the continuous quality improvement program as well as the statewide plan for management of chronic disease. Award and manage statewide contracts for laboratory services, nurse staffing and risk reduction counseling. Standardize the Department's procedures and tools for emergency medical response; establish policy and train all providers on the medical and mental health response to victims of sexual misconduct (PREA).

Participate in the design of five health care facilities in Washington.  Based upon prior experience in Oregon, develop standards for the design of health care facilities in correctional settings, evaluate options to renovate existing space or build new and if so, evaluate possible building sites for five facilities. Standardize the space allocated to each function, the adjacencies, the numbers of personnel, flow and type of work performed in each space, and specify details about the type of ventilation, lighting, surface treatments, electrical load and special equipment that would be used in each area.

Chair the Department's Pandemic Influenza Planning Group, co-chair committee to improve re-entry for women offenders, serve on the Department's Training Advisory Board, and represent Health Services on the employer's collective bargaining team. Represent the Department of Corrections on the Interagency Provider Quality Task Force, Adverse Health Event Advisory Board, Pandemic Influenza Planning Task Force, and Tuberculosis Work Group.

**Health Services Administrator**                                        **1984 to 2001**
Department of Corrections, State of Oregon

Hired to improve services and reduce costs of health care in the state's correctional system. Recruited and supervised a staff of 300 medical, dental, nursing and other professionals who provide primary and preventive health care at 13 correctional institutions located throughout the state.  Conceptualized, funded and started a mental health program in corrections, which has also become nationally recognized.

Operated three licensed pharmacies, established a Pharmacy Therapeutics Committee to standardize and manage formulary; centralized medical supply and standardized inventory; created an automated appointment scheduling, chronic disease tracking and health classification program and established IT personnel to service Health Services; created a training unit from savings in operating costs. Recruited and negotiated health care networks in five different communities.  Responsible for a budget of $27 million for fiscal year 2000-2001 and delivered health care in correctional settings costing less than other publicly funded health care programs.

Participated in the design or refurbishment of space to provide health and mental health services for nine correctional facilities, eight of which are now built and operational. Involvement in facility design included conceptualizing operating principles, establishing space requirements for various health care activities, evaluating design proposals, determining mechanical requirements, selecting equipment, moving into the facility and operating programs.

**Director of Nursing Services**                                        **1978-1984**
Oregon State Hospital, Mental Health Division, State of Oregon

### Catherine M. Knox MN, RN, CCHP-RN
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Responsible for administering a nursing services department comprised of 350 employees for a 612 bed psychiatric facility. The hospital operated four statewide, specialized treatment programs (child/adolescent, geriatric, forensic, corrections) and one regional treatment program for civilly committed adults.   Major accomplishments include helping to change the hospital's mission from general psychiatry to specialized treatment and achieving JCAHO accreditation; establishing an accredited program to train nursing assistants, establishing the first advanced practice nursing positions and establishing standards of practice and criteria for review of clinical services.

**Program Co-Director**                                                   **1982-1984**
Geropsychiatric Treatment Program, Oregon State Hospital, Mental Health Division, State of Oregon

Established a 132-bed statewide program specializing in the treatment, case management and care of elderly psychiatric patients.  Responsibilities were shared with a peer and included developing and presenting the program proposal, planning the organizational structure, selecting the treatment model, recruiting and selecting staff, and admitting patients.   This program has been recognized for providing a level of service and consultation that exceeds the expertise of other mental health programs serving the elderly. Also completed and presented a study which distinguished the characteristics and treatment needs of elderly psychiatric patients from those of younger chronically mentally ill patients.

**Health Records Analyst,**                                             **1977-1978**
Program Evaluation Center, Oregon State Hospital, Mental Health Division, State of Oregon

Developed standards to measure the quality of inpatient psychiatric treatment, collected and analyzed data documenting the degree to which treatment met standards for patient care; evaluated program performance.

**Case Manager**                                                          **1973-1975**
Child Psychiatric Day Treatment Program, Oregon Health Sciences University

Provided day treatment for emotionally disturbed children, managed the return of children completing treatment to public schools, provided group therapy for parents and consulted with schools to keep children with behavioral problems in the classroom.

**Education:**

Master of Nursing, Psychiatric Mental Health Nursing, Oregon Health Sciences University, 1977
Thesis: *"Psychiatric Emergency Services in Five Oregon Counties"*

Bachelor of Science, Nursing, Oregon Health Sciences University, 1973

**Professional Certifications and Affiliations:**

California Registered Nurse License # 740095, 2008 to 2014

Washington Registered Nurse License # 00154439, RN, 2004 to Present

Oregon Registered Nurse License # 000031606RN, 1973 to Present

**Catherine M. Knox MN, RN, CCHP-RN**
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Clinical Instructor, Department of Biobehavioral Nursing and Health Systems, School of Nursing, University of Washington, 2005 to 2010; *Planning Committee, Forensic Nursing Conference 2005, 2006, 2007, 2008*

Certified Correctional Health Professional # F92151, 1992 to 2009; CCHP-RN #F92151 2009 to Present *CCHP Board of Trustees, 2001 to 2006; Task force on nursing certification, 2008 to 2013.*

Sigma Theta Tau, Inc., National Honor Society of Nursing, Beta Psi Chapter, 1977 to Present

American Nurses Association, Certified Nurse Administrator, Advanced # 024649, 1982 to 1986; Member 2011 to Present; *Corrections Scope and Standards Workgroup, 2011 to 2012, 2018-2019.*

American Corrections Association, 2005 to 2008; 2011 to 2014.

Academy of Correctional Health Professionals, 2012 to Present

American Correctional Health Services Association, 1984 to Present; *Vice-President, 1991 to 1993; Editor, CorHealth, 1995-1997, Program Chair 1995, Program Committee 2002, 2004*

National Commission on Correctional Health Care; *Prison Standards Task Force, 1996, 2007, 2013; Vice-Chair CCHP-RN subcommittee, 2011-2013; Accreditation Surveyor, 1998 to 2017*

National Institute of Corrections, Consultant, 1995 to 2001

**Awards**

Outstanding Women in Corrections, Washington Department of Corrections, 2007; Distinguished Service Award, American Correctional Health Services Association, 2005; Program of the Year, National Commission on Correctional Health Care, 2001, for hospice programming; Employee of the Year, Correctional Programs, Oregon Department of Corrections, 2000; Bernard Harrison Award of Merit, National Commission on Correctional Health Care, 1999 for outstanding leadership in correctional health care; Award of Merit, Oregon Department of Corrections, 1996, for program leadership; Facility of the Year, National Commission on Correctional Health Care, 1995 for Eastern Oregon Correctional Institution; Director's Award, Oregon Department of Corrections, 1994 for leadership in delivery of healthcare in the correctional setting.

**Publications and Abstracts**

Articles by C. M. Knox appearing in the *Correctional Health Care Report*, Civic Research Institute:

2020
Population Health and Implications for Nursing Practice (6)
Managing Stressors During COVID-19 (4)
Use and Misuse of Protocols (3)
Pitfalls with the Face-to-Face Encounter (2)

### Catherine M. Knox MN, RN, CCHP-RN
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

2019
Receiving and Responding to Requests for Care (1)
What Would You Do in this Situation? (6)
Sexual Harassment by Inmates Against Nurses (5)
Preventing Diversion of Prescription Drugs 20 (4)
Empathy: A Practice, Not an Emotion 20 (3)
Emergency Triage and the ESL 20 (2)

2018
Dealing with the Difficult Patient 20 (1)
Hospice and End of Life Care 19 (6)
Improving the Productivity of Sick Call 19 (5)
Medication Adherence 19 (4)
Medication Reconciliation 19 (3)
Medication Management in the Correctional Setting 19 (2)

2017
Hand Hygiene: A Simple Process Embedded in the Complex Process of Care. 19 (1).
Test Your Knowledge: Hypertension. 18 (6).
Intake Health Screening: Making the Most Out of This Brief Encounter. 18 (5).
Continuity of medication and solving problems unique to the correctional setting. 18 (4).

Other published works:

Knox, C. M. (2021) Principles of Nursing Care in the Correctional Setting in Greifinger, R. (ed) Public Health Behind Bars – From Prisons to Communities, 2nd Ed. New York, NY: Springer Publishing.

Knox, C.M. & Pinney B. (2017) How correctional agencies can support professional nursing practice. Correctional Health Care Report 18 (3).

Knox, C.M. & Pinney B. (2017) Work Environments that Support Professional Nursing Practice in Cohen, F. (ed.) *Correctional health care: Practice, administration, and law*. Civic Research Institute, Inc. Kingston: New Jersey.

Knox, C.M. & Burrow, G. (2016) *Quick start for correctional nurses: Medication management*. Enchanted Mountain Press.

Knox, C. M., (2015) Medication Administration and Management: Directly Observed Therapy in Trestman, R. et al. (ed.) *Oxford Textbook of Correctional Psychiatry*. New York: Oxford University Press.

Blair, P., Knox, C., Lee, J., Muse, M., Pinney, B., &Voermans, P. (2014) Nurses' scope of practice and delegation authority. National Commission on Correctional Health Care (NCCHC).
http://www.ncchc.org/filebin/Resources/Nurses-Scope-2014.pdf

Knox, C.M., Schoenly, L. (2014) Correctional nursing: A new scope and standards of practice. Correct

**Catherine M. Knox MN, RN, CCHP-RN**
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Care, 28 (1) 12-14.

Knox, C. M., Schoenly, L. (2013) Standards for correctional nursing practice. Correctional Health Care Report. July/August; 14 (5) Civic Research Institute.

Knox, C. M., Schoenly, L. (2013) Using reflection to improve clinical judgment: the power of one. CORHEALTH. April 2013. American Correctional Health Services Association Newsletter.
Schoenly, L. and Knox, C. (ed.) (2013). *Essentials of Correctional Nursing*. New York, NY: Springer Publishing.

Knox, C. (2012). Part 10: Health promotion and maintenance in correctional nursing practice: what you need to know. Correct Care, 26 (2) 18-19.

Knox, C. (2010). Part 4: Screening, sick call and triage in correctional nursing practice: what you need to know. Correct Care, 24 (4) 15-16.

Knox, C and Shelton, S. (2006) Sick call, in Puisis, M.(ed.) *Clinical Practice in Correctional Medicine*. Philadelphia, PA: Elsevier.

Burrow, G., Knox, C., Villanueva, H. (2006) The nurses' role in the primary care setting, in Puisis M. (ed.) *Clinical Practice in Correctional Medicine*. Philadelphia, PA: Elsevier.

Knox, C. (Summer 2002) NCCHC accreditation-a primer in three parts: part 3 survey day….and beyond. Correct Care, 16 (3):11.

Knox C.M. & Shelton S.S. (2002). Health care cost containment: what works? Correctional Health Care Report. 3(4).

Andrus J.K., Fleming D.W., Knox C., McAlister R.O., & Skeels M.R., Conrad R.E., Horan J.M., Foster L.R. (1989) HIV testing in prisoners: is mandatory testing mandatory? American Journal of Public Health (7):840-2.

Andrus J., Fleming D., Knox C., McAlister R., Horan J., & Foster L. (1989) The effect of mandatory AIDS education on voluntary HIV testing in prisons. Int. Conf. AIDS 1989 Jun 4-9; 5: 878 (abstract no. Th.E.P.32)

**Presentations**

"An Overview of Correctional Health Care"; Umatilla/Morrow County Medical Society, 1987; Oregon Legal Nurse Consultants, 1997, "The Health Needs of Incarcerated Individuals", Forensic Nursing 2005, University of Washington, 2005; "Correctional Health Care – A Primer for CRCL Staff: Medical and Nursing Care", Office of Civil Rights and Civil Liberties, Department of Homeland Security, 2013; "Diversity-Responding to Cultural Challenges in Correctional Nursing" Arizona Nurses Association, 2015; Plenary Panel-IGNITE Practice! Arizona Nurses Association, 2015.

"Learning From Our Mistakes: Problems in Nursing Practice", National Commission on Correctional Health Care (NCCHC), 2007, 2008 and 2010; "Nursing Administration: Ensuring Quality of Care", NCCHC, 2008; American

**Catherine M. Knox MN, RN, CCHP-RN**
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Nurses Association Scope and Standards of Practice for Nursing: Understanding the Responsibility of Practice, NCCHC, 2009, American Correctional Health Services Association (ACHSA) Nursing Forum, 2010; CCHP Nursing Certification Review Course, NCCHC, 2009, 2010, 2011; "Claim Scene Investigation: Corrections Medication Administration", Correctional Health Webinar, September 28, 2011, ACHSA Nursing Forum, 2012; "Correctional Nursing in Time and Space", ACHSA Nursing Forum, 2012; "Clinical Judgment in Nursing Practice", NCCHC 2012, " Using Reflection to Improve Nurse's Clinical Judgment", NCCHC 2012; "Correctional Nursing Practice: Applying the New Scope and Standards" NCCHC, 2013; American Corrections Association Annual Convention, 2013; Oregon Chapter of ACHSA, 2013; Custody & Caring International Conference on the Nurse's Role in the Criminal Justice System, 2013; "Essentials of Nursing Leadership: Work Environments that Support Nursing Practice" NCCHC, 2013 & 2014; "RN vs LPN Scope of Practice: Clarifying Roles" NCCHC, 2013; Six Challenges Managing Medications that make Correctional Nursing Unique, NCCHC 2015 & 2016

"Managing Health Care Provided in Correctional Facilities"; Oregon Sheriff's Association Conference, 1993; Tri State Superintendents Conference, 1994; "Organizational Models for Correctional Health Care", American Public Health Association Conference, 1998; "Managed Care: How Good Is It?" ACHSA Professional Development Conference, 2000; "Cost Containment Strategies: What Works?" NCCHC, 2002; "Cost Containment Strategies: What Works?" ACHSA Professional Development Conference, 2002; "Crafting the Future of Correctional Health Care", Oregon Chapter of ACHSA, 2007

"Evaluating Sick Call Utilization"; NCCHC 1996; Oregon Chapter of the ACHSA, 1997; "Managing the Aging and Terminally Ill Inmate", National Institute of Corrections, Training Teleconference, 2001; "Early Parole Release for Medical Reasons", NCCHC, 2002; "Patient Safety", NCCHC, 2011; "Evidence for Nursing Actions to Address Chronic Pain", NCCHC, 2012; "CSI: Claim Scene Investigation for Risk Reduction", NCCHC 2012; "The Power of One: Using Reflection to Improve Clinical Judgment" ACHSA Professional Development Conference 2013; Safe Intake Screening Practices in Correctional Settings, Omnisure Webinar, 2013; Swiss Cheese: How systems error and human factors contributed to a preventable death in only 16 days, NCCHC, 2014

"Workplace Relationships", Oregon Chapter of the American Correctional Health Services Association Conference, 1993; "Violations of Professional Boundaries in Correctional Health Care", NCCHC, 1993; "Managing Employee Offender Relations", Oregon Department of Corrections, Leadership Academy, 1997 to 2001

"An In-Depth Look at NCCHC's Standards for Health Services**",** NCCHC, 1998; "Ins and Outs of Accreditation", NCCHC, 1999; "Practical Preparations for Initial NCCHC Accreditation", NCCHC, 2000, 2001, 2002, 2003, 2004, 2005, 2008, 2009, 2010, 2012, 2013

**Expert Experience**

Stacey Webb v. Douglas County, et al., U.S. District Court Case No. 02-CV-6335-AA. Retained in 2004 by Jens Schmidt with Harrang, Long, Gary, Rudnick, P.C., 360 E. 10th Avenue, Suite 300, Eugene, OR, 97401-3248 (541 485 0220), Jens.Schmidt@harrang.com representing defendant, Douglas County. Reviewed files and provided written report in response to questions posed by Mr. Schmidt. Case settled before trial.

**Catherine M. Knox MN, RN, CCHP-RN**
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Elizabeth Morden v. Grand Traverse County, et al., Circuit Court for the County of Grand Traverse, File No. 04-24311-NM.  Reviewed files and provided informal advice in 2005 to Brad Wierda, with Cummings, McClorey, Davis, and Acho, P.L.C., representing defendant Grand Traverse County. In November 2009 I was notified that this case is being handled by Gregory R. Grant at ggrant@cmda-law.com 125 Park Street, Suite 415, Traverse City, MI, 49684, (231 922 1888). Case settled.

Moises Carranza-Reyes v. Park County, et al., U.S. District Court Case No. 05-CV-377-WDM-BNB. Retained in 2005 by William Trine with Trine & Metcalf, P.C., 1435 Arapahoe Avenue, Boulder, CO 80302-6390 (303 443 0173), firm@trine-metcalf.com, representing Mr. Carranza-Reyes. Reviewed files, submitted written report 6/2006, provided deposition 10/04/2006 and testified at Daubert hearing 7/18/2007. Case settled before trial.

Jackie Joe Ayala v. Ivor Garlick, M.D., et al., U.S. District Court Case No. 05-WM-427 (OES). Retained in 2007 by Greg Perczak with Socha, Perczak, Setter & Anderson, P.C., Denver Financial Center Tower 1, 1775 Sherman Street, Suite 1925, Denver, CO 80203 (303 832 7265) glperczak@spsalaw.com.  Reviewed materials provided by counsel for defendants Laura Scheufele, Ivor Garlick, M.D., and Prison Health Services, Inc. and provided a written opinion about whether the healthcare provided Mr. Jackie Joe Ayala while detained at the Adams County Detention Facility met reasonable standards of care. Case settled before trial.

Donald L. Woolridge v. Pima County, et al., Case No.: CIV 05-746-TUC-RCC. Retained in 2007 by Office of the Pima County Attorney, Civil Division, 32 N. Stone Avenue, Suite 2100, Tucson, Arizona 85701-1412.  Reviewed material and provided informal opinion to James Wilkes, Deputy County Attorney. Mr. Wilkes can be reached at jim.wilkes@pcao.pima.gov.

United States of America vs. Cook County, et al., Civil No. 10 C 2946.  Retained in 2010 by the Office of the State's Attorney, Civil Actions Bureau, 500 Richard J. Daley Center, Chicago, Illinois 60602 to serve as a member of the medical monitor's team to review compliance with an agreed order to improve conditions at the jail. Dr. Shansky was the first appointed medical monitor and can be reached at Rshansky@rshanskymd.com. Dr. Esmaeil Porsa became medical monitor in 2014 and can be reached at esmaeil.porsa@phhs.org. Compliance with this court order was achieved in 2018 and health care is no longer monitored.

Taylor v. Wexford Health Services, Inc., No. 1:11-cv-07386. Retained by Kirkland & Ellis LLP, 300 North LaSalle St., Chicago IL, 60654 on behalf of Mr. Taylor in 2013.  Review of material and preparation of expert nursing opinion.  Deposition provided 10/31/2014. The case settled in March 2016. Rebecca Fitzpatrick can be reached at rebecca.fitzpatrick@kirkland.com or 312.862.2690.

Lashonn White v. City of Tacoma, et al. No. 12-cv-05987. Retained in 2013 by James Richmond, Deputy Prosecuting Attorney for Pierce County, Civil Division, 955 Tacoma Ave. South, Suite 301,Tacoma, WA 98402-2160. Provide expert advice regarding nursing practice, review of information provided and preparation of a report; deposition 10/9/2013. Plaintiffs 42 USC 1983 and medical malpractice claims dismissed on summary judgment. Mr. Richmond has since retired.

Parish Golden v. Michael Baenen, Gary Hamblin, Jeanne Zwiers, C.O.II Brandenberg, and T. Huck. No. 12-CV-1270. Retained by Rachel A. Graham, Quarles & Brady LLP, 33 East Main Street, P.O. Box 2113 Madison, WI. 53701-2113 on behalf of plaintiff.  Review material and provide verbal expert opinion. Case settled

## Catherine M. Knox MN, RN, CCHP-RN

2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

July 2014. Ms. Graham can be reached at 608.283.2419 or Rachel.Graham@quarles.com.

United States of America v. Miami-Dade County, et al., No. 1:13-CV-21570-CIV. Retained by Miami-Dade County to assist the appointed Medical Monitor to review compliance with a consent agreement entered into 5/1/2013. Marc Stern was the medical monitor initially and was replaced by Robert Greifinger in 2017. Dr. Stern can be reached at marcstern@live.com or 360 701 6520. Dr. Greifinger can be reached at bob@rgreifinger.com or 646.559.5279.

Joshua Dunn, et al. v. Kim Thompson, et al. Case No.:2:14-cv-601. Retained by William Lunsford, Maynard Cooper & Gayle PC on behalf of the Alabama Department of Corrections as an expert nurse consultant in 2014. Case is in discovery and the class has yet to be certified. Mr. Lunsford can be reached at blunsford@maynardcooper.com or 256.512.5710.

Ronald Taylor v. ConMed Healthcare Management, Inc., et al. Case No. 6:14-cv-01621-AA. Retained by Benjamin Haile and John Devlin on behalf of Mr. Taylor in 2015. Review material and provide expert advice regarding delivery of health care to Mr. Taylor while detained at the Coos County Jail. Mr. Devlin can be reached at john@johndevlinlaw.com or 503.228.3015.

Linda Mae Paris et al. v. ConMed Healthcare Management, Inc., et al. Case No. 6:14-cv-01620-TC. Retained by Benjamin Haile and John Devlin on behalf of Donnie Ray Brown's estate in 2015. Review material and provide expert advice regarding delivery of health care to Mr. Brown while detained at the Coos County Jail. This case settled in 2018. Mr. Devlin can be reached at john@johndevlinlaw.com or 503.228.3015.

John E. Taylor, Jr. v. Wexford Health Sources, Inc. et al. Case No. 1:13-cv-07501. Retained by Rana Dawson, Kirkland & Ellis LLP on behalf of Mr. Taylor in 2015. Review of material and preparation of expert opinion. Deposition provided 1/11/2016. Case settled March 2016. Ms. Dawson can be reached at 312.862.7010 or at rbarakat@kirkland.com.

Lashawn Jones, et al. and The United States of America v. Marlin Gusman, Sherriff. Civil Action No. 2:12-cv-00859. Retained in 2017 by New Orleans Parish to assist Robert Greifinger, the appointed Medical Monitor to review compliance with a consent judgement entered into 6/6/2013. Dr. Greifinger can be reached at bob@rgreifinger.com or 646.559.5279.

Jimmy (Billy) McClendon, et al. v. City of Albuquerque, et.al. v. E.M, R.L., W.A., D.J., P.S., and N.W. on behalf of themselves and all others similarly situated. Case No. CV 95-24 JAP/KBM. Retained in 2017 by Bernalillo County to assist Robert Greifinger, the appointed Medical Monitor to review medical care at the Metropolitan Detention Center in accordance with an order set forth on 12/11/2011. Dr. Greifinger can be reached at bob@rgreifinger.com or 646.559.5279.

Edward Braggs, et al., v. Jefferson S. Dunn, Commissioner of the Alabama Department of Corrections. Civil Action No. 2:14cv601-MHT (WO). Retained in 2018 by William Lunsford, Maynard Cooper & Gayle PC on behalf of the Alabama Department of Corrections to develop and revise mental health staffing ratios as stipulated by the Phase 2A Understaffing Remedial Order. Mr. Lunsford can be reached at blunsford@maynardcooper.com or 256.512.5710.

**Catherine M. Knox MN, RN, CCHP-RN**
2430 NW Westover Road #300
Portland, OR 97210
503 449 0186
cmknoxllc@msn.com

Don Lippert, et al. v. John Baldwin, et al. No. 10-cv-4603. Retained in 2018 by the Illinois Department of Corrections and the ACLU of Illinois to assist Michael Puisis, the appointed medical expert to determine if the systemic deficiencies identified in 2014 by the first court appointed expert still exist, identify any other deficiencies and recommend solutions. The report was provided to the court in 2018 and the state agreed to a settlement and appointment of a medical monitor in 2019. Dr. Puisis can be reached at  mpuisis@ameritech.net or 847 921 1270.

Don Lippert, et al. v. John Baldwin, et al. No. 10-cv-4603. Retained in 2019 by the Illinois Department of Corrections as one of three expert consultants to Dr. John Raba, the court appointed Monitor, of a consent decree signed 12/13/2018 concerning medical care provided at all correctional facilities operated by the Illinois Department of Corrections. Dr. Raba can be reached at jraba@healthmanagement.com or 312 933 4003.

# Exhibit K

| | |
|---|---|
| **From:** | Dan Struck |
| **To:** | Alison Hardy; StruckLoveParsonsTeam |
| **Cc:** | Parsons Trial; Parsons Case |
| **Subject:** | RE: witnesses |
| **Date:** | Wednesday, December 01, 2021 11:12:27 AM |

Alison,

We would not be having him testify as to P&P and likely not NCCHC compliance, but his testimony could touch on the other areas mentioned below.

As for Ms. Knox, can you provide some substance as to what she is going to testify beyond "She will testify regarding the NCCHC survey and accreditation process"?

Dan

**From:** Alison Hardy <ahardy@prisonlaw.com>
**Sent:** Tuesday, November 30, 2021 3:05 PM
**To:** Dan Struck <DStruck@strucklove.com>; StruckLoveParsonsTeam <StruckLoveParsonsTeam@strucklove.com>
**Cc:** Parsons Trial <ParsonsTrial@aclu.org>; Parsons Case <PLO-AZ@prisonlaw.com>
**Subject:** witnesses

Hi Dan,
Regarding Mr. Dolan, defendants have disclosed that he will testify on a wide array of topics, including P&Ps for the provision of medical, mental health and dental care; Centurion's obligations under the contract with ADCRR and review of monthly and quarterly reports; implementation of telehealth programs; staffing levels, recruiting, hiring, retention and incentives; improvements to Stipulation compliance levels; and Centurion's compliance w/ NCCHC standards.  You have told us that you anticipate his testimony will be short, however, and will likely not include all of the subjects listed in the initial disclosure.  We ask that you provide us with an updated disclosure by this Thursday.  Thanks.
As discussed, I've attached Ms. Knox's CV.  Below is our witness disclosure:
Ms. Knox, MN, RN, CCHP-RN has been a consultant regarding delivery of health care in the correctional setting for 20 years.  During her extensive career as a correctional health care professional, Ms. Knox was the Health Services Administrator for the Oregon Department of Corrections from 1984-2001, and the Director for Nursing for the Washington Department of Corrections from 2004-2008.  Ms. Knox was a surveyor for the NCCHC from 1998-2017, during which time she surveyed approximately a dozen correctional facilities and trained others to become certified surveyors.  She also trained to be a lead surveyor.  She will testify regarding the NCCHC survey and accreditation process.
We anticipate her direct will take about one hour.
I will send you a list of exhibits we would like to move into evidence later today.  Do defendants have additional exhibits you hope to admit?  It would be very helpful if you could provide us with a list as well.
Alison

Alison Hardy
Sr. Staff Attorney
**Prison Law Office**
1917 Fifth Street
Berkeley, CA 94710
Office:  (510) 280-2621
Cell:  (510) 292-0549
Pronouns: She/her

This electronic mail transmission contains information from the law firm Struck Love Bojanowski & Acedo, PLC that may be confidential or privileged. Such information is solely for the intended recipient, and use by any other party is not authorized. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this message, its contents or any attachments is prohibited. Any wrongful interception of this message is punishable as a Federal Crime. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by the sender for any loss or damage arising in any way from its use. If you have received this message in error, please notify the sender immediately by telephone (480) 420-1600. Thank you.

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.