Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
       jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen; Dustin Brislan; Sonia Rodriguez; Ronald Slavin; Christina Verduzco; Jackie Thomas; Jeremy Smith; Stephen Swartz; Robert Gamez; Maryanne Chisholm; Jonathan Gonzalez, Desiree Licci; Joseph Hefner; Jason Johnson; Kendall Johnson; Joshua Polson; Laura Redmond; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, <br><br>Plaintiffs,<br>v.<br>David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,<br><br>Defendants. | No. CV 12-00601-PHX-ROS<br><br>**PLAINTIFFS' MOTION IN LIMINE** |

This Court encouraged the parties "to stipulate to the admissibility of evidence to expedite the completion of trial." Doc. 3931 at 2. Unfortunately, Defendants have declined to stipulate to the admission of a number of exhibits. *See* Declaration of Alison Hardy ("Hardy Decl."), ¶¶ 2, 4 & Exs. 1-2. Accordingly, Plaintiffs hereby seek an order admitting the exhibits described below.[1]

Before discussing each exhibit in turn, we note that Defendants object to all under Federal Rule of Evidence 403. But Defendants do not explain how they are unfairly prejudiced by admission of any of the exhibits. Nor can they; Rule 403 has very little application in a bench trial because this Court may ignore unfair inferences from the evidence and consider it only for its proper purpose. *See United States v. Caudle*, 48 F.3d 433, 435 (9th Cir. 1995) ("[I]t would be most surprising if . . . potential prejudice had any significance in a bench trial."). Therefore, Defendants' Rule 403 objection will not be discussed further in this motion.

### A. Defendants' Court Filings Are Admissible as Opposing Party's Statements.

| Exhibit | Doc. | Description | Defendants' Objections |
|---|---|---|---|
| 1946 | 3755 | Notice of Compliance with Court Order (Sept. 18, 2020) | 402, 403, 801, 802 |
| 1971 | 3916-1 | Exhibit A of Defendants' Notice of Filing Performance Measure Charts Regarding April 2021 Compliance Pursuant to Court Order (June 21, 2021) | 402, 403, 802 |
| 1972 | 3920 | Defendants' Response to Plaintiffs' Objections to Defendants' Compliance Plan Regarding Paragraph 14 of the Stipulation and Submission of Revised Compliance Plan (July 13, 2021) | 402, 403, 802 |
| 1973 | 3920-1 | Exhibit 1 (July 13, 2021) | 402, 403, 802, 805 |

First, Plaintiffs seek to admit certain of Defendants' own court filings. These exhibits are not hearsay; they are statements offered against a party (Defendants) that

---

[1] Plaintiffs have requested that Defendants stipulate to admission of an additional set of exhibits. Hardy Decl. ¶ 3. The parties have agreed to defer discussion of these exhibits until the end of trial. *Id.* If we are not able to reach an agreement, Plaintiffs may seek an additional order for the admission of those exhibits.

were "made by the party in an individual or representative capacity," are "one[s] the party manifested that it adopted or believed to be true," were "made by a person whom the party authorized to make a statement on the subject," and/or were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *See* Fed. R. Evid. 801(d)(2). In fact, each of the documents listed above were filed by Defendants through their attorneys, pursuant to Court order. *See* **Exhibit 1946:** Doc. 3734 at 4 (ordering Defendants to "provide a Notice to the Court reflecting compliance."); Doc. 3755 at 1 (stating that filing is "[i]n accordance with this Court's Order at Doc. 3734") (signed by Rachel Love, attorney for Defendants); **Exhibit 1971:** Doc. 2958 at 1 (ordering Defendants to "submit updated Performance Measure Charts" on recurring basis); Doc. 3916 at 1 ("Defendants give notice of and attach as Exhibit A Performance Measure Charts regarding April 2021 compliance pursuant to Court Order (Doc. 2958).") (signed by Timothy J. Bojanowski, counsel for Defendants); **Exhibits 1972 & 1973:** Doc. 3861 at 15 (ordering Defendants to "file the plan regarding implementation of its obligations under Paragraph 14 of the Stipulation); Doc. 3920 at 1 ("Defendants, through counsel, respond to Plaintiffs' Objections to Defendants' Compliance Plan Regarding Paragraph 14 of the Stipulation and provide a Revised Compliance Plan based upon meet and confer efforts of the parties and consideration of Plaintiffs' objections.") (signed by Rachel Love, counsel for Defendants).

And these exhibits certainly are relevant. They discuss Defendants' efforts – or lack thereof – to comply with the requirements of the Stipulation and Court orders in this case. *See* Doc. 3921 at 33 ("The pervasive theme of Defendants' conduct throughout the course of attempted enforcement of the Stipulation is indifference. Defendants have always deflected their failures and employed scorched-earth tactics to oppose every attempt to resolve outstanding noncompliance. Defendants' longstanding refusal to acknowledge their shortcomings and identify plausible paths to compliance evidences their pattern of conduct will not change."). The exhibits are relevant to show Defendants'

knowledge of particular risks, their responses to those risks, and whether those responses were reasonable.

For example, Exhibit 1946 reflects Defendants' decision that they did not need to determine whether or not they were meaningfully implementing the Stipulation with regard to the Maximum Custody Performance Measures. When ordered to produce documents showing how long people spent at each step in maximum custody, Defendants appeared to argue that the "Stipulation does not require inmates progress through the Step Matrix." *See* Doc. 3734 at 3. The Court rejected this argument, finding that it "conflicts with the obvious purpose and intent of the Stipulation." *Id*. As explained by the Court,

> [The Step Matrix] framework contemplates prisoners moving between steps. Defendants' position that they can, if they wish, keep prisoners at a particular step level in perpetuity would render the benefits of the Stipulation completely illusory. As it has done in the past, the Court again rejects Defendants' invitation to interpret the Stipulation such that their obligations are hollow.

*Id*. The Court again ordered Defendants to produce the documents showing the average length of stay at each step of maximum custody. *Id*. In response, Defendants filed a Notice of Compliance (Exhibit 1946) that discussed in detail Defendants' failure to maintain and inability to provide the responsive information.

Similarly, Defendants' revised compliance plan regarding provision of language interpretation (Exhibit 1972) describes their purported effort to address the Court's finding of noncompliance and also evidences their continued refusal to acknowledge their shortcomings and develop realistic compliance plans. *Compare* Doc. 3920 at 1 n.1 ("Defendants . . . do not concede non-compliance regarding Stipulation Paragraph 14."), *with* Doc. 3921 at 15 (finding Defendants' arguments in response to Plaintiffs' motion to enforce the language interpretation portion of the Stipulation "specious"); *id.* at 31 ("Plaintiffs were promised by agreement language interpretation services at every health care encounter; Defendants opted not to provide such services. . . . Defendants' past conduct shows they had no problem with depriving Plaintiffs of the benefits of the Stipulation and Defendants' behavior undoubtedly will not end.").

**B.    Court Filings Are Admissible to Show Notice of Unconstitutional Conditions.**

Defendants also object to a number of other exhibits on hearsay grounds. But under Federal Rule of Evidence 801(c), an out-of-court statement constitutes hearsay only if "a party offers [it] in evidence to prove the truth of the matter asserted." A statement is "*not* hearsay if offered for any purpose other than the truth of whatever the statement asserts." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). A paradigmatic example of this other-purpose category is a statement that is "introduced to prove that the person to whom the statement was communicated had notice of something." *United States v. Lane*, No. CR-12-01419-PHX-DGC, 2013 WL 3716601, at *2 (D. Ariz. July 13, 2013); *see, e.g.*, *United States v. Castro*, 887 F.2d 988, 1000 (9th Cir. 1989) (holding that documents introduced to show that a party had certain information, rather than for the truth of the information, are not hearsay); *United States v. Dupree*, 706 F.3d 131, 137 (2d Cir. 2013) ("We have repeatedly held that a statement is not hearsay where, as here, it is offered, not for its truth, but to show that a listener was put on notice."). As explained below, the exhibits offered by Plaintiffs fall into this other-purpose category.

1.    Report of Court Expert Dr. Marc Stern

| Exhibit | Doc. | Description | Defendants' Objections |
|---|---|---|---|
| 1860 | 3379 | Report to the Court in the Matter of *Parsons v. Ryan, et al.*, Marc F. Stern, MD, MPH, Federal Rule 706 Expert (Oct. 4, 2019) | 402, 403, 801, 802 |

This Court appointed Dr. Marc Stern as a Rule 706 expert in December 2018 to address two issues: "why there were irregularities and errors in the monitoring process required by the Stipulation[,]" and "why there was substantial noncompliance with critical aspects of health care delivery: Access to prescription medications, diagnostic testing, routine and specialty physician consultations, treatment for chronic health care problems, and emergency care." Doc. 3921 at 11 (citing Docs. 3089, 2900, 2905). Dr. Stern's subsequent report, filed with the Court on October 4, 2019, detailed a number of problems

-4-

with health care delivery in the Arizona state prison system and listed a series of recommendations, including regarding staffing levels, the electronic medical record, and qualitative monitoring. Doc. 3379 at 95-104, 113.

Defendants object to admission of Dr. Stern's report as hearsay. Doc. 4118 at 192. But it is admissible to show that Defendants have been on notice of deficiencies in health care delivery and monitoring in the Arizona state prison system and have failed to address those concerns. *Daniel v. Cook Cty.*, 833 F.3d 728, 743 (7th Cir. 2016) ("The 2010 Agreed Order and Shansky [federal court monitor] Report are inadmissible hearsay to the extent they are offered to prove the truth of the statements they contain, but they may be admissible to show that the defendants were on notice of their contents, or perhaps for other purposes.").[2] That is certainly relevant to the claim at issue here. An Eighth Amendment violation requires that Plaintiffs demonstrate that Defendants "acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

2.   Reports of Plaintiffs' Experts

| EXHIBIT | DOC. | DESCRIPTION | DEFENDANTS' OBJECTIONS |
|---|---|---|---|
| 1640 | 292 | Declaration of Pablo Stewart (Nov. 9, 2012) | 801, 802, 402, 403 |
| 1642 | 1104-8 and 1104-9 | Report of Craig Haney (Nov. 7, 2013) | 801, 802, 402, 403 |

---

[2] The Seventh Circuit recently addressed whether a report by a court-appointed expert witness was admissible in a separate, individual lawsuit involving a jury trial. *See Dean v. Wexford Health Sources, Inc.*, 2021 WL 5230855, at *5, --- F.4th ---- (7th Cir. Nov. 10, 2021). In a split decision, the majority did not reach the issue of whether the report was admissible because it found that the report "shows, at most, that Wexford knew an expert in another case had concluded that a materially different version of its collegial review policy had caused delays at some other IDOC facilities," and therefore could not establish *Monell* liability. *Id.* at *12, *17. That is very different from this case, where Dr. Stern's review was undertaken in this case, upon this Court's order, to evaluate the delivery and monitoring of health care system-wide. In addition, the Court ordered Defendants to adopt some of Dr. Stern's recommendations and to file a statement as to whether they will attempt to implement other recommendations. *See* Doc. 3495 at 2-21, 23.

| | | | |
|---|---|---|---|
| 1644 | 1104-2 | Report of Pablo Stewart (Nov. 8, 2013) | 801, 802, 402, 403 |
| 1645 | 1104-7, Ex. 14 | Report of Eldon Vail (Nov. 8, 2013) | 801, 802, 402, 403 |
| 1648 | 1104-6, Ex. 8 | Supplemental Report of Pablo Stewart (Dec. 9, 2013) | 801, 802, 402, 403 |
| 1652 | 1104-10 | Confidential Rebuttal Report of Craig Haney (Jan. 31, 2014) | 801, 802, 402, 403 |
| 1654 | 1104-6, Ex. 9 | Confidential Rebuttal Report of Pablo Stewart (Jan. 31, 2014) | 801, 802, 402, 403 |
| 1655 | 1104-7, Ex. 15 | Rebuttal Declaration of Eldon Vail (Jan. 31, 2014) | 801, 802, 402, 403 |
| 1660 | 1104-6, Ex. 10 | Second Supplemental Report of Pablo Stewart (Feb. 24, 2014) | 801, 802, 402, 403 |
| 1661 | 1104-7, Ex. 16 | Supplemental Report of Eldon Vail (Feb. 24, 2014) | 801, 802, 402, 403 |
| 1665 | 1538-1, Ex. 2 | Third Supplemental Report of Pablo Stewart (Aug. 29, 2014) | 801, 802, 402, 403 |
| 1666 | N/A | Supplemental Report of Craig Haney (Sept. 5, 2014) | 801, 802, 402, 403 |
| 1667 | N/A | Supplemental Report of Eldon Vail (Sept. 5, 2014) | 801, 802, 402, 403 |
| 1669 | N/A | Second Supplemental Report of Todd Randall Wilcox (Sept. 8, 2014) | 801, 802, 402, 403 |
| 1670 | 1538-1 | Expert Report of Pablo Stewart (Mar. 30, 2016) | 801, 802, 402, 403 |
| 1671 | 1558 | Declaration of Todd R. Wilcox (April 5, 2016) (filed under seal) | 801, 802, 402, 403 |
| 1842 | 946-1, Ex. 1 | Confidential Exhibits to Declaration of Todd Randall Wilcox (Nov. 8, 2013) (filed under seal) | 801, 802, 402, 403 |
| 1843 | 946-1 Ex. 3 | Confidential Supplemental Report of Todd Randall Wilcox (Apr. 2, 2014) | 801, 802, 402, 403 |
| 1854 | 1627 | Declaration of Pablo Stewart (July 12, 2016) | 402, 403, 801, 802 |
| 1855 | 1670 | Declaration of Todd Wilcox (Sept. 2, 2016) | 801, 802, 402, 403 |
| 1856 | 2091 | Declaration of Pablo Stewart (June 2, 2017) | 402, 403, 801, 802 |
| 1857 | 2103 | Declaration of Todd Wilcox (June 9, 2017) | 801, 802, 402, 403 |
| 1858 | 2496 | Declaration of Todd Wilcox (Dec. 18, 2017) | 801, 802, 402, 403 |
| 1867 | 3511 | Declaration of Pablo Stewart (Feb. 28, 2020) | 402, 403, 801, 802 |
| 1879 | 3626 | Expert Declaration of Pablo Stewart (June 12, 2020) | 801, 802, 402, 403 |
| 1928 | 3694-3 | Declaration of Pablo Stewart (Aug. 14, 2020) | 402, 403, 801, 802 |

| 1940 | 3718 | Rebuttal Declaration of Amy June Rowley (Aug. 24, 2020) | 801, 802, 402, 403 |
| 1951 | 3782 | Declaration of Pablo Stewart (Oct. 16, 2020) | 402, 403, 802, 805 |

Since 2013, Plaintiffs' experts have submitted to Defendants and filed with this Court multiple reports and declarations from experts who have evaluated Defendants' medical and mental health care delivery system and isolation conditions for incarcerated people. These reports and declarations are admissible for the non-hearsay purpose of demonstrating that Defendants have had ample notice of unconstitutional conditions in the state prisons.

Dr. Todd Wilcox, who testified at this trial, has for years identified serious deficiencies with Defendants' medical care in reports based upon site visits, patient interviews, document review and his review of hundreds of medical charts comprising thousands of records. He submitted reports at the outset of the litigation, one year after the parties entered the Stipulation, and in response to this Court's request for recommendations for reform. *See*, Ex. 1857 at 1 (6/9/17 Declaration filed at Doc. 2103), to supplement Ex. 1855 (9/2/16 Declaration filed at Doc. 1670, assessing Defendants' Remedial Plans). His reports repeatedly have alerted Defendants to preventable deaths, staffing deficiencies, barriers to health care, untimely care, poor pain management, and myriad other systemic failures that harm the Plaintiff class and place them at serious risk of harm. These are the very same issues that Dr. Wilcox identified in his recent testimony and are plainly relevant to this action.

Dr. Pablo Stewart, who testified at this trial, has identified serious deficiencies with Defendants' mental health care over the course of many years in reports based upon site visits, patient interviews, document review, and his review of hundreds of patients' medical charts comprising thousands of records. In total, he has provided this Court with at least 18 declarations or expert reports that pertain to the provision of mental health care. *See* Doc. 4109 at ¶ 7 (Written Testimony of Pablo Stewart, M.D., listing all submissions). His reports repeatedly have alerted Defendants to preventable self-mutilation and suicides,

staffing deficiencies, barriers to mental health care, untimely care, poor treatment planning and coordination, and myriad other systemic failures that harm the Plaintiff class and place them at serious risk of harm. These are the very same issues that Dr. Stewart identified in his recent testimony and are plainly relevant to this action.

Dr. Craig Haney, who testified at this trial, has repeatedly identified serious deficiencies with conditions of isolation in Defendants' prisons in reports based upon site visits, interviews with incarcerated people, and document review.  See Doc. 4120 at ¶ 9 (Written Testimony of Craig Haney, Ph.D., listing past submissions).  His reports repeatedly have alerted Defendants to the breadth and consistency of research demonstrating the harmful and sometimes lethal consequences of confinement in isolation; an explanation of how those harmful consequences can be exacerbated for incarcerated persons who are diagnosed with serious mental illnesses; and based upon his inspections and review, the extent to which persons incarcerated in ADCRR isolation units are placed at substantial risk of serious harm. These are the very same issues that Dr. Haney identified in his recent testimony and are plainly relevant to this action.

Eldon Vail, former Secretary of the Washington State Department of Corrections, submitted multiple reports earlier in the litigation and Martin Horn, former Commissioner of the Pennsylvania Department of Corrections, who testified at this trial, explicitly relied upon Mr. Vail's reports.  Mr. Vail's reports detailed the many ways in Defendants' isolation practices put people incarcerated in ADCRR at risk.  These are the same issues that Mr. Horn identified in his recent testimony and are plainly relevant to this action.

Dr. Pablo Stewart and Professor Amy Rowley also submitted expert reports regarding the critical importance of effective communication with patients in the health care setting, and for those patients who are not fluent in English, interpreters must be provided. Again, the relevance of these reports is beyond dispute.

1. Plaintiffs' Filings Regarding Language Interpretation and Supporting Documentation

| EXHIBIT(S) | DOC(S). | DESCRIPTION | DEFENDANTS' OBJECTIONS |
|---|---|---|---|
| 1878 | 3623 | Plaintiffs' Motion to Enforce Paragraph 14 of the Stipulation (June 12, 2020) | 402, 403, 801, 802 |
| 1899-1914 | 3629, 3630 | Declaration of Amber Norris and Exhibits (June 12, 2020) (under seal) | 402, 403, 801, 802 |
| 1939 | 3714 | Plaintiffs' Reply in Support of Motion to Enforce Paragraph 14 of the Stipulation (Aug. 24, 2020) | 402, 403, 801, 802 |
| 1968 | 3899 | Plaintiffs' Objections to Defendants' Compliance Plan Regarding Paragraph 14 of the Stipulation (May 5, 2021) | 402, 403, 802, 805 |

On June 12, 2020, Plaintiffs filed a motion to enforce Paragraph 14 of the Stipulation, which requires provision of language interpretation during health care encounters of patients not fluent in English. Doc. 3623. The motion identified specific deficiencies in Defendants' provision of language interpretation and was supported by, among other things, declarations from class members and their medical records. *See* Docs. 3629 & 3630. Plaintiffs filed a detailed reply on August 24, 2020. Doc. 3714. The Court granted Plaintiffs' motion on February 24, 2021. *See* Doc. 3861 at 11-12, 15. The Court ordered Defendants to "formulate and file a plan." *Id.* at 12. Defendants filed a plan, *see* Doc. 3880, and Plaintiffs filed objections thereto. *See* Doc. 3899.

Plaintiffs' motion (and supporting exhibits), reply, and objections are relevant to show Defendants' notice of their deficiencies in provision of language interpretation during health care encounters. Put simply, the very issues Plaintiffs repeatedly brought to Defendants' attention persist to this day. For example, Plaintiffs' briefing, supported by class member declarations and medical records, put Defendants on notice of failure to properly identify patients who require language interpretation and of the failure of the electronic medical record to support documentation of noncompliance. *See, e.g.*, Doc. 3623 at 10 ("The medical record sometimes states that no interpreter services are needed when the class member is not fluent in English and does in fact require such services.");

Doc. 3714 at 8 ("The 'hard-stop' feature allows healthcare staff to record only compliance (and not noncompliance). If staff document that interpreter services are needed, they are asked, 'If so, what type of interpreter services were used for the encounter?' and may select from only three options: 'Language Line,' 'Healthcare Staff Used for Interpreter Services,' or 'Inmate Refused Interpreter Services.'"). Defendants' revised compliance plan failed to meaningfully address those issues, and the same problems remain. *See* Expert Declaration of Dr. Todd Wilcox, Doc. 4138 at 181 ¶ 447 ("I found serious problems with the identification of patients who require interpreters."), 188-89 ¶¶ 465-67 (noting examples where "hard-stop" responses in medical record conflicted with encounter notes). In addition, class members under penalty of perjury reported that medical staff attempted to communicate with them in Spanish, but the staff person was not proficient in the language and the class member was not able to fully understand the encounter. *See* Doc. 3623 at 16-17. Nonetheless, Defendants have not put in place a process to evaluate the proficiency of medical staff in non-English languages. *See* Hardy Decl. ¶ 5 (Defendants' response to RFA).

2. Plaintiffs' Filings Regarding the Inadequate Mental Health Encounters

| Exhibit(s) | Doc(s). | Description | Defendants' Objections |
|---|---|---|---|
| 1925-1930 | 3694, 3694-1, 3694-2, 3694-3, 3694-4, 3694-5 | Plaintiffs' Motion to Enforce the Court's Orders and for Further Relief with exhibits (August 14, 2020) (under seal) | 402, 403, 801, 802 |
| 1954 | 3789 | Plaintiffs' Reply in Support of Motion to Enforce the Court's Orders and for Further Relief with exhibits (Oct. 19, 2020) (under seal) | 402, 403, 802, 805 |
| 1955 | 3790 | Declaration of Pablo Stewart (Oct. 14, 2020) (under seal) | 402, 403, 802, 805 |
| 1956 | 3791 | Declaration of David Fathi and Exhibits (Oct. 14, 2020) (under seal) | 402, 403, 802, 805 |
| 1957-1958 | 3792, 3792-1 | Declaration of Jessica Carns and Exhibits (Oct. 14, 2020) (under seal) | 402, 403, 802, 805 |

On August 14, 2020, Plaintiffs filed a motion to enforce the Court's orders regarding the minimum duration of mental health encounters. Doc. 3694. The Court had ordered that for performance measures requiring that a patient be seen by mental health staff at specified intervals, mental health watch-related encounters must last at least 10 minutes and other mental health encounters must last at least 30 minutes to count, unless a mental health clinician, in the exercise of clinical judgment, determined that a shorter encounter was meaningful and appropriate. Doc. 3518 at 4; *see also* 3495 at 7-9. Plaintiffs' motion demonstrated that the overwhelming majority of these encounters did not meet the duration requirements, and that virtually all of these noncompliant encounters were rubber-stamped as "meaningful and appropriate" by ADCRR staff. *See* Doc. 3694 at 4-13. Plaintiffs filed a detailed reply on October 19, 2020. Doc. 3789. The Court granted Plaintiffs' motion on February 24, 2021. *See* Doc. 3861 at 12-13, 15.

Plaintiffs' motion (and supporting exhibits), reply, and objections are relevant to show Defendants' notice of the inadequacy of the mental health encounters. Notably, the problems identified in the motion persist and place people incarcerated in ADCRR at risk. *See* Doc. 4111 at 26-32.

### 3. Plaintiffs' Filings Regarding Out-of-Cell Time and Other Conditions in Maximum Custody

| Exhibit(s) | Doc(s). | Description | Defendants' Objections |
|---|---|---|---|
| 1870 | 3599 | Plaintiffs' Motion to Enforce the Stipulation (Maximum Custody Performance Measures 1-3, 5-6, and 8) (May 20, 2020) | 402, 403, 801, 802 |
| 1871-1873 | 3600, 3600-1, 3600-2 | Declaration of Curtis Harris and Exhibits (May 20, 2020) | 402, 403, 801, 802 |
| 1874 | 3601, 3601-1 | Declaration of Jessica Carns and Publicly Filed Exhibits (May 20, 2020) | 402, 403, 801, 802 |
| 1875 | 3602 | Sealed Exhibits to Declaration of Jessica Carns (May 20, 2020) | 402, 403, 801, 802 |
| 1950 | 3775 | Plaintiffs' Reply Motion to Enforce the Stipulation (Oct.5, 2020) | 402, 403, 802 |
| 1948 | 3769, 3769-1 | Declaration of Maria Morris and Exhibits (Oct. 2, 2020) (under seal) | 106, 402, 403, 802, 805 |

| | | | |
|---|---|---|---|
| 1949 | 3770, 3770-1 | Declaration of Jessica Carns and Exhibits (Oct. 2, 2020) (under seal) | 106, 402, 403, 802, 805 |
| 1960 | 3833 | Supplemental Evidence in Support of Plaintiffs' Motion to Enforce the Stipulation (Dec. 21, 2020) | 402, 403, 802, 805 |
| 1961 | 3834, 3834-1 to 3834-20 | Supplemental Declaration of Maria Morris and Exhibits (Dec. 21, 2020) (under seal) | 402, 403, 802, 805 |
| 1962 | 3835 | Supplemental Declaration of Jessica Carns and Exhibits (Dec. 21, 2020) | 402, 403, 802, 805 |

On May 20, 2020, Plaintiffs filed a motion to enforce the maximum custody performance measures 1-3, 5-6, and 8. Doc. 3599. The motion and supporting documents identified specific conditions in Defendants' maximum custody units that placed people housed in them at risk of harm. *See* Docs. 3599-3602. In particular, Plaintiffs identified the cancellation of out-of-cell time due to chronic staffing shortages and the failure of Defendants to comply with their policies and the Stipulation with regard to the locations in which recreation was offered.  Doc. 3599 at 15-21. Plaintiffs filed a detailed reply on October 2, 2020, and supplemental evidence of the ongoing failures on December 21, 2020. Docs. 3769, 3769-1, 3770, 3770-1, 3775, 3833-3835. The Court granted Plaintiffs' motion on February 24, 2021. *See* Doc. 3861 at 7-11, 15. The Court ordered Defendants to "inform Plaintiffs' counsel … of the specific steps they are implementing to ensure compliance with the Stipulation and this Order regarding maximum custody inmates." *Id.* at 11. The parties were still discussing the necessary steps at the time the Court vacated the Settlement.

Plaintiffs' motion, reply, and supporting evidence are relevant to show Defendants' notice of their failure to provide adequate out-of-cell time to people in maximum custody, and of their staff's practice of falsely overstating the amount of out-of-cell time provided. As discussed at length during the trial, Defendants continue to cancel out-of-cell time due

to chronic staff shortages and to falsely count out-of-cell time that was cancelled as out-of-cell time that was provided.

C. **Defendants' documents showing prolonged stays on suicide watch are admissible.**

On November 14, 2021, Plaintiffs filed a statement of discovery dispute regarding Defendants' refusal to produce documents showing patients who had remained on suicide watch for longer than 14 days. Doc. 4171. On November 16, the Court ordered Defendants to produce these documents "immediately," noting that "[t]he documents are responsive to [Plaintiffs' request for production of documents, and] should have been produced earlier." Doc. 4178. On November 17, Defendants produced some responsive documents, Bates numbered ADCRR00236451-236485.[3]

These documents are clearly relevant to Plaintiffs' claims. *See* United States Department of Justice, Civil Rights Division, *Investigation of the Massachusetts Department of Correction*, November 17, 2020, at 18 (concluding that "MDOC's use of mental health watch for prolonged periods of time subjects those prisoners experiencing mental health crises to a substantial risk of serious harm" and "[b]ecause these prisoners are already experiencing a mental health crisis, 14 days in the restrictive conditions described above subjects them to a substantial risk of serious harm").[4] As documents generated by ADCRR's agent Centurion on a matter within the scope of the agency, they are non-hearsay admissions pursuant to Fed. R. Evid. 801(d)(2)(D), and are accordingly admissible.

D. **The Stipulation Is Admissible as Verbal Conduct.**

| Exhibit | Doc. | Description | Defendants' Objections |
|---|---|---|---|
| 1849 | 1185 | October 14, 2014 Doc. 1185 Stipulation | 402, 403, 801, 802 |
| 1850 | 1185-1 | October 14, 2014 Doc. 1185-1 Stipulation - Index of Exhibits to Stipulation | 402, 403, 801, 802 |

---

[3] These documents have not yet been assigned an exhibit number.
[4] Available at https://www.justice.gov/opa/press-release/file/1338071/download

The parties entered into a Stipulation to settle this action on October 14, 2014. Doc. 1185. The Stipulation included 103 performance measures that Defendants agreed to monitor at each of the ten state prisons on a monthly basis with the goal of reaching a certain level of compliance within a set period. This Court vacated the Stipulation because Defendants chronically failed to comply with critical provisions over six years.

Defendants object to admission of these documents under Federal Rules of Evidence 402, 403, 801, and 802. Doc. 4118 at 191. But the Stipulation is clearly not hearsay, because "out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay." *U.S. v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004); *Fogleman v. County of Los Angeles*, No. CV 10-6793 GAF (SHx), 2012 WL 13005832 at *5 (C.D. Cal. July 25, 2021) (Memorandum of Understanding regarding corrective action at county jail "which evidences the County's undertaking with regard to the jail, is verbal conduct and not hearsay"); *Rodriguez v. Westrock, Inc.*, No. SACV 18-02047 AG (ADSx), 2019 WL 7166973 at *2 (C.D. Cal. November 4, 2019) ("contracts are legally operative conduct and thus considered 'not hearsay'"). The Stipulation between the parties is a contract that establishes that Defendants agreed to undertake measures to improve health care and conditions of confinement for people incarcerated in their facilities, and it is admissible.

**Conclusion**

This Court should admit into evidence Exhibits 1640, 1642, 1644, 1645, 1648, 1652, 1654, 1655, 1660, 1661, 1665-1667, 1669-1671, 1842, 1843, 1849, 1850, 1854-1858, 1860, 1867, 1870-1875, 1878, 1879, 1899-1914, 1925-1930, 1928, 1939, 1940, 1946, 1948-1950, 1951, 1954-1958, 1960-1962, 1968, 1971-1973, and the as-yet unnumbered documents related to suicide watch, which are Bates numbered ADCRR00236451-236485.

Dated:  December 7, 2021      **PRISON LAW OFFICE**

By:   /s/ Alison Hardy

    Donald Specter (Cal. 83925)*
    Alison Hardy (Cal. 135966)*
    Sara Norman (Cal. 189536)*
    Rita K. Lomio (Cal. 254501)*
    Sophie Hart (Cal. 321663)*
    1917 Fifth Street
    Berkeley, California 94710
    Telephone:  (510) 280-2621
    Email:    dspecter@prisonlaw.com
             ahardy@prisonlaw.com
             snorman@prisonlaw.com
             rlomio@prisonlaw.com
             sophieh@prisonlaw.com

**PERKINS COIE LLC**
Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
Alisha Tarin-Herman (Bar No. 037040)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:  (602) 351-8000
Email:    dbarr@perkinscoie.com
         jhgray@perkinscoie.com
         ayost@perkinscoie.com
         kworsham@perkinscoie.com
         kboughton@perkinscoie.com
         mcolby@perkinscoie.com
         ksoldati@perkinscoie.com
         atarinherman@perkinscoie.com
         docketphx@perkinscoie.com

Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone:  (602) 650-1854
Email:    vlopez@acluaz.org
         jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)
*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email:  dfathi@aclu.org
    mmorris@aclu.org
    echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email:  ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: <u>  s/ Maya Abela                      </u>
    Asim Dietrich (Bar No. 027927)
    5025 East Washington Street, Suite 202
    Phoenix, Arizona 85034
    Telephone: (602) 274-6287
    Email:   adietrich@azdisabilitylaw.org

    Rose A. Daly-Rooney (Bar No. 015690)
    J.J. Rico (Bar No. 021292)
    Maya Abela (Bar No. 027232)
    **ARIZONA CENTER FOR DISABILITY LAW**
    177 North Church Avenue, Suite 800
    Tucson, Arizona 85701
    Telephone: (520) 327-9547
    Email:
      rdalyrooney@azdisabilitylaw.org
      jrico@azdisabilitylaw.org
      mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*


## Certificate of Service

I hereby certify that on December 7, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
Eden G. Cohen
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com
ecohen@struclove.com

*Attorneys for Defendants*

s/ Marie van Olffen

78204.0001\155017858.1