1 | Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
2 | **ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
3 | Phoenix, Arizona 85013
Telephone: (602) 650-1854
4 | Email: vlopez@acluaz.org
           jkeenan@acluaz.org
5 | *Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al.; and Arizona Center for Disability Law,<br><br>  Plaintiffs,<br><br>v.<br><br>David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,<br><br>  Defendants. | No. CV 12-00601-PHX-ROS<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS' EXPERTS' DECLARATIONS** |

## Introduction

Plaintiffs filed the last of their expert declarations on November 4, 2021. [*See* Doc. 4138 (Declaration of Dr. Todd R. Wilcox, M.D.)] But Defendants waited more than one month—until December 8, and after Plaintiffs had presented their entire case-in-chief at trial—to file their Motion to Strike Portions of Plaintiffs' Expert Declarations. [Doc. 4219] Defendants' decision to file this motion on the afternoon of the final day of trial was surely not a coincidence. Rather, it was presumably intended to deprive Plaintiffs of the opportunity to cure any purported evidentiary problems manufactured in Defendants' motion. This Court should not tolerate such gamesmanship. Defendants' motion is untimely, and should be denied on that ground alone.[1]

Even had Defendants timely challenged Plaintiffs' expert declarations, their objections would have still failed. Defendants contend that Plaintiffs' expert declarations improperly reference or contain various categories of information. But Federal Rule of Evidence 703 allows experts to base their opinions on "facts or data" that they were "made aware of or personally observed" and unequivocally establishes that those facts or data "need not be admissible" for the experts' opinions to be admitted. What is more, many of the records that Plaintiffs' experts supposedly improperly relied on were *actually admitted* into evidence during trial. As a result, Defendants' complaints fail on the merits.

In short, Defendants' motion is as untimely as it is baseless.

## Background

Nearly five months ago, this Court found that Defendants' material breaches of the Stipulation justified relief under Federal Rule of Civil Procedure 60(b)(6), rescinded its approval of the Stipulation, and set this case for trial on November 1. [Doc. 3921 at 37]

---

[1] By contrast, Plaintiffs moved to strike portions of the declaration of Defendants' expert Dr. Owen Murray on the second business day after that declaration was filed, and before Dr. Murray's live testimony, which allowed the parties and the Court to address it before Dr. Murray testified. [*See* Doc. 4203 (filed December 2, 2021), Doc. 4207 (filed December 6, 2021)]

Shortly after that, Plaintiffs moved for an order allowing the parties to present direct expert trial testimony by declaration with live cross-examination. [Doc. 3938] This Court granted the motion (Doc. 3952), over Defendants' objection (Doc. 3942), reasoning that "[b]oth parties knowing in advance the direct testimony has the advantage of clear notice, *i.e.*, knowing precisely what the direct testimony will be of the experts." [Doc. 3952 at 1] Presenting direct expert trial testimony by declaration would provide the parties with "significant time to prepare" in advance of the in-court expert testimony and prevent the parties from having to "be on their haunches, prepared to make objections" contemporaneous to testimony, because they would know the testimony in advance. [*Id.*] This Court thus ordered the parties to "present direct testimony from their experts through written declaration filed five days prior to the date that witness be called." [*Id.* at 4]

Consistent with the Court's ruling, Plaintiffs filed their expert declarations five days before the date that each expert was called to testify at trial. [*See* Doc. 4099 (October 27 Declaration of Robert Joy), Doc. 4109 (October 29 Declaration of Dr. Pablo Stewart), Doc. 4120 (October 30 Declaration of Dr. Craig Haney), Doc. 4130 (November 3 Declaration of Martin Horn), Doc. 4138 (November 4 Declaration of Dr. Todd Wilcox)] Despite having "the advantage of clear notice, *i.e.*, knowing precisely what the direct testimony will be of the experts," (Doc. 3952 at 1), Defendants did not move to exclude any portion of any of Plaintiffs' expert declarations before those experts testified. So too, during Plaintiffs' case-in-chief, Defendants did not move to exclude any portion of any of Plaintiffs' expert declarations.[2]

Trial was held over a 15-day period between November 1 and 19 and on December 7 and 8, 2021. [*See* Docs. 4127, 4135, 4137, 4144, 4152, 4153, 4154, 4156, 4177, 4184, 4191, 4192, 4193, 4218, 4220] Plaintiffs rested their case on November 15. Defendants waited

---

[2] In the Joint Proposed Pretrial Statement, Defendants "reserve[d] the right" to object to "any testimony from Plaintiffs' experts that exceeds the four corners of their expert reports" and "the admission of exhibits attached to the declarations of Plaintiffs' experts." [Doc. 4116-1 at 52] But the mere *reservation* of a right to object is not *an objection itself*.

until the very last day of trial—December 8—to file their motion to exclude portions of Plaintiffs' expert declarations. [Doc. 4219]

**Argument**

This Court should deny Defendants' motion for three key reasons—*first*, Defendants forfeited their objections to Plaintiffs' expert declarations; *second*, Defendants' motion fails to identify with reasonable specificity the relief sought; and *third*, even if the motion were timely and specific, Defendants' objections are meritless.[3]

**I.  Defendants' motion is untimely.**

Defendants' objections fail because they've forfeited them. Plaintiffs filed each of their expert declarations over *one month* before Defendants filed this motion. Defendants could have—but chose not to—file this motion, raising these same objections, at any time before the experts testified or at any time during Plaintiffs' case-in-chief. Defendants therefore forfeited the objections that they've raised now. *See, e.g.*, *In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1013 (9th Cir. 2008) ("It is a rare circumstance when the court may exclude evidence after the close of the parties' cases. . . . The reasons for such caution are clear. If the parties have already rested, they no longer have a chance to provide a curative response to the excluded evidence. . . . They also do not have a chance to present the testimony in another fashion, such as calling an additional witness.").[4]

---

[3] Defendants also argue (at 2) that this Court should strike Robert Joy's declaration because it supposedly did not "set forth any expert opinions." Wrong. Mr. Joy's declaration was submitted under oath and "[a]ttached as Exhibit A . . . a true and correct copy of [his] expert report and opinions." [Doc. 4099 at 2] And he "declare[d]" that he would "testify to the opinions laid out in the Exhibit A to this [d]eclaration under oath at trial." [*Id.*] His declaration, submitted under penalty of perjury, therefore did set out the expert opinions that he would testify to at trial—those opinions in his expert report attached as Exhibit A.

[4] Defendants also chose to not depose Plaintiffs' experts, canceling each expert's deposition the night before it was scheduled to occur—in the cases of Robert Joy and Dr. Wilcox, after Plaintiffs' counsel had already flown to Berkeley and Salt Lake City to defend those depositions. [*See* Declaration of Daniel C. Barr ("Barr Decl."), Exs. A–D (emails in which Defendants' counsel cancelled Plaintiffs' experts' depositions the day before each deposition was scheduled to occur); Barr Decl. ¶ 2 (declaring that Plaintiffs' counsel flew to Berkeley to prepare Mr. Joy for his deposition before Defendants cancelled it); 11/10/21 a.m. rough transcript at 40 (informing the Court that Plaintiffs' counsel flew to Salt Lake City to prepare Dr. Wilcox for his deposition before Defendants cancelled it)]

## II. Defendants' motion fails to specify the relief sought.

Defendants' motion also entirely fails to specify the relief that it seeks. The motion largely consists (at 3–6) of a host of string citations of paragraphs from Plaintiffs' expert declarations. Defendants apparently want the Court to strike some portion of each of these paragraphs—but the Court (and Plaintiffs) are left to guess which portion that is.

A motion must state with specificity the relief sought from the Court. *See, e.g.*, *Ariz. Recovery Hous. Ass'n v. Ariz. Dep't of Health Servs.*, 462 F. Supp. 3d 990, 996 (D. Ariz. 2020) (denying a motion without prejudice because a party "failed to adequately specify the relief it sought from the Court at that time"); *BBK Tobacco & Foods LLP v. Skunk Inc.*, No. CV-18-02332-PHX-JAT, 2020 WL 2395104, at *2 (D. Ariz. May 12, 2020) (emphasizing that a "motion must, with exacting specificity, state the relief sought"). Because Defendants' motion violates this elementary requirement, it should be denied.[5]

## III. Defendants' hearsay objections fail.

Even had Defendants timely and specifically raised these objections, they would have still failed. As explained below, experts are allowed to base their opinions on hearsay evidence under Federal Rule of Evidence 703, and in any event, many of Defendants' objections cite evidence that is not hearsay or has already been admitted.

### A. Defendants' objections fail under Federal Rule of Evidence 703.

Federal Rule of Evidence 703 allows experts to base their opinions on "facts or data" that they were "made aware of or personally observed" and states that those facts or data "need not be admissible" for the experts' opinions to be admitted. Here, Defendants primarily ask (at 2) this Court to strike portions of Plaintiffs' expert declarations that

---

[5] *See also Indep. Towers of Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)):

> When reading ITOW's brief, one wonders if ITOW, in its own version of the "spaghetti approach," has heaved the entire contents of a pot against the wall in hopes that something would stick. We decline, however, to sort through the noodles in search of ITOW's claim. As the Seventh Circuit observed in its now familiar maxim, "[j]udges are not like pigs, hunting for truffles buried in briefs."

-4-

allegedly "impermissibly incorporate inadmissible hearsay." But Federal Rule of Evidence 703 allows Plaintiffs' experts to base their opinions on precisely this type of evidence.[6]

Defendants argue (at 2–6) that references to five categories of supposed "hearsay within hearsay" must be stricken: (1) Dr. Stern's report; (2) depositions, court filings, photographs, and other documents; (3) class member statements; (4) attachments; and (5) prior reports and declarations. All of these arguments fail.

*First*, an expert can base an opinion on Dr. Stern's report because "courts recognize that 'an expert can appropriately rely on the opinions of others if other evidence supports [the expert's] opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence.'" *Mendoza v. Intuitive Surgical, Inc.*, No. 18-CV-06414-LHK, 2020 WL 1976472, at *7 (N.D. Cal. Apr. 24, 2020) (citation omitted).

*Second*, an expert can base an opinion on depositions, court filings, photographs, and other documents. *See, e.g.*, *Oester v. Wright Med. Tech., Inc.*, No. CV-19-04763-PHX-SPL, 2021 WL 3742439, at *3 (D. Ariz. Aug. 24, 2021) ("'Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.' . . . When an expert opinion is based on information such as medical records and the expert's knowledge, training, and education, it is sufficient under FRE 703.") (citation omitted); *Allfasteners USA, LLC v. Acme Operations Pty., Ltd.*, No. LA CV18-06929 JAK, 2021 WL 4027738, at *8 (C.D. Cal. May 25, 2021) ("An expert is permitted to rely on hearsay, including business records, so long as the evidence is 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'") (quoting Fed. R. Evid. 703); *Sherwood v. Neotti*, No. ED

---

[6] Defendants are well aware of this, having successfully argued for the admission of their hearsay exhibits under Federal Rule of Evidence 703 because their experts relied on those exhibits in formulating their opinions. [*See, e.g.*, 12/7/21 p.m. rough transcript at 42–44 (admitting standards of the National Commission on Correctional Health Care)]

-5-

1  CV 11-1728-CJC, 2019 WL 13033618, at *1 (C.D. Cal. Nov. 14, 2019) (finding that "the
2  transcript" of a party's interview was admissible under Federal Rule of Evidence 703).[7]

3      *Third*, an expert may base an opinion on out-of-court statements. *See, e.g.*, *United
4  States ex rel. Kiro v. Jiaherb, Inc.*, No. CV 14-2484-RSWL-PLA, 2019 WL 2424287, at *7
5  (C.D. Cal. June 10, 2019) (declining to strike an expert's declaration for lack of personal
6  knowledge when the declaration contained "hearsay statements" because Federal Rule of
7  Evidence 703 "permits hearsay, or other inadmissible evidence, upon which an expert
8  properly relies, to be admitted to explain the basis of the expert's opinion").

9      *Fourth*, the attachments to Plaintiffs' expert declarations—including their resumes,
10 lists of documents reviewed, summaries of various documents reviewed, and other
11 documents—are admissible under Federal Rule of Evidence 703. *See, e.g.*, *H.I.S.C., Inc. v.
12 Franmar Int'l Importers, Ltd.*, No. 3:16-CV-00480-BEN-WVG, 2018 WL 6696265, at *5
13 (S.D. Cal. Dec. 20, 2018) (declining to exclude an expert's report as "inadmissible hearsay"
14 when the plaintiffs intended to "introduce the appendices to [the expert's] report, which
15 include a list of documents she reviewed in preparing her report, screenshots of her survey
16 questionnaire, statistics related to participants' responses to the subject survey, the raw data
17 obtained, and a data glossary," because "an expert witness can testify as to the contents of
18 her report to the extent she relies on it in forming her ultimate opinion").

19     *Fifth*, an expert may rely on "previous expert reports" when an expert "supplements
20 the prior report with additional evidence and experience, and where the expert 'does not
21 rely exclusively' on the prior report." *Mendoza*, 2020 WL 1976472, at *7 (citation omitted).

---

[7] Defendants' objection to photographs of the prisons taken on Plaintiffs' experts' inspection tours is particularly absurd. Defendants certainly cannot object on authentication grounds, as it was Defendants themselves who took the photos, Bates-stamped them, and produced them to Plaintiffs. Defendants do not explain how a photo is "hearsay" when it is a visual representation of what the expert saw, and was taken contemporaneously by Defendants' employees at the expert's direction. Nor can Defendants argue that the photos are incomplete or cherry-picked, as Plaintiffs' experts' reports attach all of the photos that were taken on their tours at their direction. Finally, Defendants have successfully moved to admit photos taken on *their* experts' tours, (*see, e.g.*, 11/19/21 a.m. transcript at 9053:10–9055:20); they fail to explain why these photos are admissible but those taken on Plaintiffs' experts' tours are not.

All told, Defendants' objections to categories of alleged hearsay evidence all fail. And that's all the more true because Defendants had the "opportunity to inquire into the bases of [Plaintiffs' expert] opinions during cross examination" at trial. *United States v. Torres*, No. 2:19-CR-00490-CAS-1, 2021 WL 2017290, at *16 (C.D. Cal. May 20, 2021).

Beyond that, Federal Rule of Evidence 703 is mainly concerned with jury trials, not bench trials, and so Defendants' motion is even more irrelevant in this case. Federal Rule of Evidence 703's advisory committee notes confirm that the rule's focus is on "the disclosure *to the jury* of information that is reasonably relied on by an expert, when that information is not admissible for substantive purposes." Fed. R. Evid. 703, 2000 advisory committee notes (emphasis added). But even when, unlike here, there is a risk that information that is not admissible for substantive purposes may be disclosed to a jury, the advisory committee notes only reinforce that Federal Rule of Evidence 703 "is not intended to affect the admissibility of an expert's testimony" and does not prevent an expert from relying on information that is inadmissible for substantive purposes." *Id.* All of Defendants' complaints about alleged "hearsay within hearsay" are therefore meritless.

**B.   Defendants' objections fail because the objections aren't aimed at hearsay evidence.**

Even though Federal Rule of Evidence 703 allows experts to base their opinions on hearsay evidence, and for that reason alone Defendants' objections fail, Defendants' objections fail for an even more fundamental reason: much of what they're objecting to is not inadmissible hearsay evidence. For example, much of the evidence that Defendants are objecting to now is not only admissible, but was *actually admitted* during trial, like various institutional or other files, (*e.g.*, Plaintiffs' Exhibits 1189, 1190, 1192, 1195, 1196, 1201, 1204, 1220, 1221, 1223, 1292, 1293 1300, 1301, 1302, 1307, 1318, 1736, 1740, 1734, 1742), or detention records, (*e.g.*, Plaintiffs' Exhibits 1693–1701), or maximum custody

notebooks, (*e.g.*, Plaintiffs' Exhibits 2265–2364, 2370, 2371), that were referenced in Martin Horn's declaration.[8]

Moreover, much of the evidence that Defendants object to is not hearsay at all. Party admissions under Federal Rule of Evidence 801(d)(2) are "not hearsay." A party's own statement, or the statement of a party's agent or employee, is "not hearsay." Fed. R. Evid. 801(d)(2)(A), (D). So, all of Defendants' objections to deposition testimony by the named Defendants, Rule 30(b)(6) designees and ADCRR and Centurion employees testifying about matters within the scope of their employment, ADCRR's own records, and Centurion's records fail because the testimony and documents are not hearsay to begin with. Furthermore, Defendants' objections to evidence that is not being offered for its truth—but rather to establish notice or for any other purpose—also fail because Federal Rule of Evidence 801(c)(2) makes plain that such evidence is outside of the definition of "hearsay."

### IV. Defendants' legal conclusion objections fail.

Defendants also complain (at 6) that Plaintiffs' experts provide "impermissible legal conclusions." But Defendants fail to identify these allegedly improper conclusions. To the extent that Defendants contend that an expert may never express an opinion about prison officials' deliberate indifference, they are wrong. *See, e.g.*, *Heflin v. Stewart Cty., Tenn.*,

---

[8] So too, Defendants object to evidence relied on by Dr. Stewart in his written declaration that the Court admitted into evidence, including ADCRR's (or their contractor's) psychological autopsies and mortality reviews of class members who died by suicide; out-of-cell tracking documents; CQI meeting minutes; and photographs taken by Defendants' employees during the expert's tour. Defendants also object to Dr. Stewart's citation to the deposition transcript of Dr. Stefanie Platt, Centurion's former statewide mental health director, whom their counsel had the opportunity to cross-examine both at her deposition and at trial. They also object to Dr. Stewart's citation to their own court filings, including monthly Performance Measure charts and remedial plans, that were filed by Defendants' counsel. Consistently, Defendants object to evidence relied on by Dr. Wilcox that has already been admitted into evidence, including photographs and videos (*e.g.*, Plaintiffs' Exhibits 1227, 1233, and 1236).

In addition, Defendants inexplicably move to strike Dr. Craig Haney's declaration's reference to federal and state statutes. [*See* Doc. 4219 at 3 (moving to strike paragraph 20, note 6 (citing the Juvenile Justice and Delinquency Prevention Act of 1974, 34 U.S.C. § 11133(a)(11)(B)) and to strike paragraph 21, note 11 (citing Cal. Welf. & Inst. C. § 208.3))] They also move to strike Dr. Haney's citations to the depositions of ADCRR mental health director Dr. Bobbie Stallcup, and Deputy Wardens Coleman, Stickley, and Van Winkle—all of whom testified at trial.

958 F.2d 709, 715–16 (6th Cir.) (holding that an expert's written testimony could properly include an opinion as to corrections officials' deliberate indifference and reasoning that Federal Rule of Evidence 704 "abolishes a long recognized 'ultimate issue' objection to opinion testimony"), *on reconsideration*, 968 F.2d 1 (6th Cir. 1992).

## V.   Defendants' objections to "new opinions" fail.

Lastly, Defendants vaguely reserve the right to seek (at 6–7) to strike, at a later time, "[n]ew opinions included in Plaintiffs' experts' declarations." But Defendants cite no portion of any of Plaintiffs' expert declarations that they argue constitute a "new opinion." Plaintiffs thus lack any meaningful opportunity to respond to Defendants' argument about alleged "new opinions." Needless to say, Plaintiffs deny that any of their expert declarations include any "new opinions" and deny that Defendants can now—long after trial has ended—assert "specific objections" on this issue in response to Plaintiffs' proposed findings of fact and conclusions of law.

## Conclusion

For all of the reasons set forth above, this Court should deny Defendants' motion to exclude portions of Plaintiffs' expert declarations.

Dated:  December 15, 2021                **PERKINS COIE LLP**

By: s/ Daniel C. Barr
Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email:   dbarr@perkinscoie.com
jhgray@perkinscoie.com
ayost@perkinscoie.com
kworsham@perkinscoie.com
kboughton@perkinscoie.com
mcolby@perkinscoie.com
ksoldati@perkinscoie.com
docketphx@perkinscoie.com

Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
rlomio@prisonlaw.com
sophieh@prisonlaw.com

*Admitted *pro hac vice*

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

*Admitted *pro hac vice*; not admitted in D.C.; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice.*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**Certificate of Service**

I certify that, on December 15, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com

*Attorneys for Defendants*

s/ D. Freouf