Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881
Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300
Chandler, Arizona  85226
Telephone:  (480) 420-1600
Fax:  (480) 420-1695
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al., | NO. CV-12-00601-PHX-ROS |
| Plaintiffs, | |
| v. | **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE (Dkt. 4215)** |
| David Shinn, et al., | |
| Defendants. | |

On the second to last day of trial—well after Plaintiffs ended their case-in-chief—Plaintiffs filed a Motion in Limine to *admit* 77 Trial Exhibits.  The Motion should be denied for the following reasons.

I.     **Plaintiffs Failed to Secure a Ruling on the Admissibility of The Proposed Exhibits Before Trial.**

"The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to avoid delay and ensure an even-handed and expeditious trial."  *Hammonds v. Yeager*, 2017 WL 10560525, at *3 (C.D. Cal. Aug. 8, 2017) (citation omitted); *see also Field v. Mirikitani*, 2017 WL 9619271, at *2 (D. Haw. Mar. 21, 2017) ("The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.").  If Plaintiffs wanted these Exhibits in evidence, they should have moved in limine *before* trial

or, at a minimum, moved for their admission *during* their case-in-chief. If admitted, Defendants would have then had an opportunity to examine witnesses about the Exhibits. For example, Defendants would have been able to cross-examine Plaintiffs' experts regarding their prior declarations (*see* Dkt. 4215 at 6–8); or Defendants could have examined other witnesses about the contents of prior filings (e.g., Dkt. 1185, 3379, 3755, 3920, 3916-1, 3920) and disclosures (ADCRR00236451-236485). By seeking their admission now—after trial has concluded—Defendants are deprived of any opportunity to controvert the foundation, reliability, accuracy, and weight of the Exhibits. The Court also does not have any context or explanation as to their relevance. That is not "even-handed." *Hammonds*, 2017 WL 10560525, at *3. The Court should not admit any of these Exhibits now.

## II.     Untimeliness Aside, The Proposed Trial Exhibits Are Not Admissible.

### A.     Defendants' Court Filings.

Plaintiffs contend that Trial Exhibits 1946, 1971, 1972, and 1972 are party-opponent admissions and relevant because "[t]hey discuss Defendants' efforts – or lack thereof – to comply with the requirements of the Stipulation and Court orders in this case." (Dkt. 4215 at 2–4.) Initially, Exhibits 1971 and 1973 are not documents authored by Defendants or their counsel. Exhibit 1971 sets forth remedial action plans prepared by Centurion (Dkt. 3916-1), and Exhibit 1973 is a DHS document (Dkt. 3920-1). Plaintiffs have not established that either one falls under Rule of Evidence 801(d)(2).

In addition, none of these Exhibits are relevant. Fed. R. Evid. 401, 402. Defendants' efforts to comply with specific performance measures under the Stipulation are not relevant to the issues at trial, namely—whether Defendants have a systemwide policy or custom of providing unconstitutional medical or mental health care or unconstitutional conditions of confinement. There is no breach-of-contract claim, nor is Defendants' compliance with the Stipulation on trial.[1] The Court rescinded the Stipulation and ordered a trial "on

---

[1] The Exhibits do not even establish compliance or noncompliance with a performance measure. Exhibit 1946 (Dkt. 3755) is a notice stemming from a discovery

1   Plaintiffs' claims in the original complaint that the delivery of health care and housing in

2   isolation amount to constitutional deprivations in violation of the Eighth Amendment."

3   (Dkt. 3921 at 2.)  That is all that is at issue.  Everything else is a smoke screen.

4        Furthermore, admitting these filings is unfairly prejudicial and confuses the issues.

5   *See* Fed. R. Evid. 403.  As noted above, because trial is over, there is no witness testimony

6   to lay foundation or context to the filings.  Plaintiffs' counsel's interpretation of these filings

7   and argument about their weight demonstrates why admitting them—in a vacuum—is

8   patently unfair to Defendants.  Plucking two out of hundreds of Defendants' filings paints

9   an incomplete and misleading picture and will not meaningfully assist the Court in

10  determining the validity of Plaintiffs' class claims.

11        **B.    Other Court Filings.**

12        Plaintiffs argue that other filings—Dr. Stern's report, Plaintiffs' experts' past reports

13  and declarations, and various motions to enforce filed by Plaintiffs—are not hearsay

14  because they "show notice of unconstitutional conduct" and are not being admitted to prove

15  the truth of the matters asserted therein.  (Dkt. 4215 at 5.)  This "notice" argument has been

16  exhaustively argued and the Court rejected it (several times), ruling that merely having

17  "notice" is irrelevant unless the content of the notice (alleged deficiencies in healthcare or

18  conditions of confinement) is offered for its truth.  (*See* Rough Draft of 11/2/21 a.m.

19  Transcript at 9:49:59–9:53:09, 10:06:46–10:12:36, 11:38:01–11:57:37; Rough Draft of

20  11/3/21 p.m. Transcript at 112–123; Rough Draft of 11/4/21 a.m. Transcript at 1–2; Rough

21  Draft of 11/4/21 p.m. Transcript at 96–98; Dkt. 4128, 4134.)  Although it had been

22  addressed in the context of advocacy letters prepared by Plaintiffs' counsel and sent to

23  Defendants' counsel, the same logic applies to filings prepared by Plaintiffs' counsel or

24

25  request for documents and explaining the difficulties of complying with an order to track
length-of-stays in maximum custody a specific way. (*See* Dkt. 3734.) Exhibit 1972 (Dkt.
26  3920) stems from an order to develop a compliance plan for "future compliance" with
Paragraph 14, involving the provision of interpretive services. (*See* Dkt. 3861 at 11–12.)
27  Moreover, Defendants maintain that the provision of interpretive services was not an
allegation in the original complaint (Dkt. 1) and it was not an allegation supporting class
28  certification (Dkt. 372). Thus, it is not an issue in this trial. (Dkt. 3921 at 2.)

3

their experts, or Dr. Stern: "You can't establish from the fact that that was sent [filed]…
that there is any deliberate indifference unless it is clear what the statement is. … If all of
the statements that the prisoners [Plaintiffs' counsel, Plaintiffs' experts, or Dr. Stern] sent
[prepared] were false, then there is no deliberate indifference by DOC not doing anything."
(Rough Draft of 11/4/21 p.m. Transcript at 96–97; *see also* Dkt. 4215 at 6 [asserting that
Dr. Stern's report "is admissible to show that Defendants have been on notice of
deficiencies in health care delivery and monitoring"]; *id*. at 8 [asserting that Plaintiffs'
expert reports and declarations "demonstrat[e] that Defendants have had ample notice of
unconstitutional conditions in state prisons"]; *id*. at 10, 12–13 [asserting that Plaintiffs'
motions to enforce "show Defendants' notice of their deficiencies in provision of language
interpretation," "notice of the inadequacy of the mental health encounters," and "notice of
their failure to provide adequate out-of-cell time to people in maximum custody"].)

The time to move for reconsideration of that prior ruling has long expired and
Plaintiffs do not even address the reconsideration standard (and they are precluded from
doing so for the first time in their reply).[2] *Caparelli v. Alan H Zimmerman PC*, 2018 WL
6250480, at *3 (D. Ariz. Nov. 29, 2018).  The Court should swiftly reject this argument
once again and find that none of these Exhibits qualify as non-hearsay and are therefore
inadmissible.[3]  It should also preclude their admission for the following additional reasons.

### 1.    Dr. Stern's Report.

Dr. Stern's unsworn Report (Trial Exhibit 1860) is not relevant because it does not
address the constitutionality of the provision of healthcare at ADCRR or any deficiencies
on a systemic basis.  (Dkt. 3379 at 72.)  As Plaintiffs note, he was tasked with addressing
any irregularities in the monitoring process of the Stipulation and the bases for any
noncompliance with its performance measures.  (Dkt. 4215 at 5, quoting Dkt. 3921 at 11;

---

[2] Plaintiffs cite *Daniel v. Cook Cty*., 833 F.3d 728 (7th Cir. 2016), for the first time, but that case involved an evidentiary ruling on summary judgment, *id*. at 731, and, as the passage Plaintiffs quote makes clear, the court did not hold that the report was admissible, *id*. at 743.

[3] Plaintiffs also do not address the layers of hearsay within the documents.

*see also* Dkt. 3379 at 3–4.)  Indeed, Dr. Stern explicitly states:

> The issues I address in this part of the report are based on errors I encountered once, or more than once, during my review. I did not conduct a systematic evaluation of the adequacy of all health care delivered at ADC. It is important to note that as a result, *my inclusion of an issue here does not necessarily mean that there is a systemic problem with care at ADC relative to that issue*. It simply means that there is an aspect of care – as evidenced by one or more actual examples, not just that an error which theoretically might occur – for which the PMs by themselves do not accurately reflect the adequacy of care being provided.

(Dkt. 3379 at 113 (emphasis in original)).  Dr. Stern further explains:

> In Parts II and IV, I provide examples of how, in individual cases, health care which is currently measured or unmeasured, respectively, by the PMs in this case, pose a significant risk of serious harm. My presentation of these examples, however, should not be interpreted as an opinion on the overall safety of the systems of care at ADC. I was not charged by the court to evaluate, did not design my methodology to, and therefore with rare exception do not offer an opinion on, whether, overall, the systems of care in place to deliver health care at the ADC pose a significant risk of serious harm to its residents.

(Id. at 3-4.)

Thus, Dr. Stern's report is not relevant to "Plaintiffs' claims in the original complaint that the delivery of health care and housing in isolation amount to constitutional deprivations in violation of the Eighth Amendment."[4]  (Dkt. 3921 at 2.)  It only confuses the issues.  Plaintiffs also do not identify what portions of the Report are relevant, instead seeking its wholesale admission.  Admitting a 138-page document, with no foundation, context, or focus, is unfairly prejudicial to Defendants.  That prejudice (and confusion for the Court) is compounded by the fact that Dr. Stern was never examined about his report before trial.  Additionally, the Report constitutes hearsay, and Plaintiffs have not satisfied their burden in establishing its admissibility.

### 2.    Plaintiffs' Experts' Prior Reports and Declarations.

Plaintiffs seek to admit reports and declarations filed by their experts dating back to 2012.  (*See* Dkt. 4215 at 6–8.)  As a threshold matter, Plaintiffs did not designate these

---

[4] Had Plaintiffs believed it was relevant, they should have called Dr. Stern to testify.

reports/declarations as expert testimony by the expert deadline.  Moreover, they *never* designated Eldon Vail or Amy Rowley as experts.  (Trial Exhibits 1645, 1655, 1661, 1667, 1940.)  Plaintiffs' non-disclosure alone should preclude the admission of all expert reports and declarations.  *See* Fed. R. Civ. P. 37(c).

In addition, these reports and declarations are hearsay, and in some instances, hearsay upon hearsay, and they lack foundation.  Plaintiffs are trying to admit them for the truth of the matter asserted, and the Court should reject Plaintiffs' attempt to do an end run around the hearsay rules by claiming they are offered to prove notice.

Moreover, the Court has already ruled that prior expert reports and declarations are *not* admissible.   On November 10, 2021, the Court ruled: "[A]bsent additional developments previous reports and declarations will not be admitted into evidence during this trial, but counsel may still use those reports and declarations in presenting evidence." (Dkt. 4155.)  The deadline to move to reconsider that order has passed, and Plaintiffs do not address the reconsideration standard (and they are precluded from doing so for the first time in their reply).

Finally, Plaintiffs' Motion does not specifically identify the relevance in each report, instead generally summarizing the expert's views and seeking wholesale admission.[5] And because they failed to include portions that they believe are relevant in the filed testimonial declarations (which they should have done), Defendants did not have an opportunity to cross-examine those experts who did testify (Vail and Rowley did not) regarding their prior opinions.  It is unfair to both Defendants and the Court to backdoor written expert opinions without any opportunity to test the credibility of, or controvert, those opinions.  Plaintiffs have not satisfied their burden in establishing their admissibility.

---

[5] Twenty-three of the 28 reports/declarations were filed before 2018. Thus, any relevance is tenuous as the evidence is clearly stale.  Additionally, many of the prior reports/declarations dealt with Stipulation compliance (e.g., Trial Exhibits 1851-1858, 1867, 1879, 1928, etc.), and accordingly, are not evidence of notice of unconstitutional conditions or deliberate indifference.

1          **3.      Plaintiffs' Filings.**

Plaintiffs seek to admit motions, replies, objections, and declarations filed and executed by their counsel concerning three motions to enforce aspects of the Stipulation. (*See* Dkt. 4215 at 10–14.)  None of these are relevant, and Plaintiffs fail to specify the relevance in each of the 41 documents, instead simply summarizing the issues.  Each one pertains to compliance with the Stipulation: Trial Exhibits 1878 et al. pertain to an interpretation of Paragraph 14 (language interpretive services) (Dkt. 3623); Trial Exhibits 1925 et al. pertain to an interpretation of the word "seen" in several performance measures (Dkt. 3495 at 8–9; Dkt. 3694); and Trial Exhibits 1870 et al. pertain to compliance with several maximum custody performance measures (Dkt. 3599).  Thus, none are relevant to "Plaintiffs' claims in the original complaint that the delivery of health care and housing in isolation amount to constitutional deprivations in violation of the Eighth Amendment." (Dkt. 3921 at 2.)  They only confuse the issues.

Furthermore, this is simply an attempt by Plaintiffs to turn their counsel's *arguments* into evidence and fill in gaps they left at trial, while immunizing themselves from examination and their arguments from counterarguments.  (*See* Dkt. 4215 at 10 ["The motion identified specific deficiencies in Defendants' provision of language interpretation …."]; *id*. at 12 ["Plaintiffs' motion demonstrated that the overwhelming majority of these encounters did not meet the duration requirements …."]; *id*. at 13 ["The motion and supporting documents identified specific conditions in Defendants' maximum custody units that placed people housed in them at risk of harm."].)  Admitting their briefing now deprives Defendants the opportunity to contest them and it leaves the Court only one side of the issues.  Plaintiffs have not satisfied their burden in establishing their admissibility, and because they are being offered for the truth of the matter asserted, Plaintiffs' filings should also be rejected for the same reasons that the Court previously rejected their attempt to admit inmate advocacy letters.

**C.      Mental Health Watch Discovery.**

Plaintiffs seek to admit discovery that was produced on November 17, 2021.  (Dkt.

7

4215 at 14.)   As a threshold matter, Defendants did not even know that the produced documents existed until the Court ordered their production.  Thus, Plaintiffs cannot show that the documents are not hearsay, i.e., that they were "made by a person whom the party authorized to make a statement on the subject" or "made by the party's agent or employed on a matter within the scope of that relationship."[6]  *See* Fed. R. Evid. 801(d)(2).  Moreover, the documents are not reliable.  As Defendants explained to Plaintiffs when they produced them:

> Pursuant to the Court's November 16, 2021 Order (Dkt. 4178), Defendants obtained, and are producing, the following Centurion documents ADCRR00236451-236485. To the extent these documents contain dynamic formulas utilizing MS Excels =TODAY() function (e.g. ADCRR00236483), Defendants provide notice that the reported numbers may recalculate as of the day the file is opened, and provide an overstatement of the amount of time on watch, as identified inmates may have been removed from watch after the date the document was created.

(Exhibit 1, Defendants' Thirteenth Supplemental Responses to Plaintiffs' First Set of Requests for Production of Documents to Defendants.)   In other words, these are living documents that change based upon the date they were last opened and therefore do not contain any reliable, useful, or relevant information.   Perhaps Plaintiffs could have established foundation and reliability at trial had they diligently moved to admit the documents, but because they waited until after trial, they have not made that showing, Defendants have been deprived the opportunity to establish why they lack foundation and are unreliable, and the Court is left to wonder whether they have any probative value. Admitting them now is unfairly prejudicial to Defendants.

### D.   The Stipulation.

Plaintiffs last seek to admit the Stipulation (Trial Exhibit 1185, 1185-1), arguing that it is not hearsay but rather "evidence of legally operative verbal conduct."  (Dkt. 4215 at 14–15.)  But the Stipulation is no longer operative.  Moreover, it is not relevant to the issues

---

[6] Plaintiffs' argument here that Centurion's statements are not hearsay is inconsistent with their objections to the admission of other Centurion documents that Defendants seek to admit.

8

at trial.  The parties' agreement to terminate the lawsuit and Defendants' agreement to comply with specific performance measures are not relevant to whether Defendants currently have a systemwide policy or custom of providing unconstitutional medical or mental health care or unconstitutional conditions of confinement.  Notably, Plaintiffs do not even attempt to establish its relevance in their Motion.  (*See* Dkt. 4215 at 14–15.)  And without any foundation, context, explanation, or focus, admitting the Stipulation in evidence will only confuse the issues and unfairly prejudice Defendants.  Plaintiffs have not satisfied their burden in establishing its admissibility.

**III.    Conclusion.**

For these reasons, the Court should deny Plaintiffs' Motion and not admit any of the proffered Trial Exhibits.

DATED this 15th day of December, 2021.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Daniel P. Struck
       Daniel P. Struck
       Rachel Love
       Timothy J. Bojanowski
       Nicholas D. Acedo
       3100 West Ray Road, Suite 300
       Chandler, Arizona 85226

       *Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on December 15, 2021, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
Notice of Electronic Filing to the following CM/ECF registrants:

3

4    Alisha Tarin-Herman      atarinherman@perkinscoie.com

5    Alison Hardy            ahardy@prisonlaw.com

6    Asim Dietrich:          adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
                             phxadmin@azdisabilitylaw.org
7
     Austin C. Yost:         ayost@perkinscoie.com; docketPHX@perkinscoie.com
8
     Corene T. Kendrick:     ckendrick@aclu.org
9
     Daniel Clayton Barr:    DBarr@perkinscoie.com; docketphx@perkinscoie.com;
10                           sneilson@perkinscoie.com

11   David Cyrus Fathi:      dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

12   Donald Specter:         dspecter@prisonlaw.com

13   Eunice Cho              ECho@aclu.org

14   Jared G. Keenan         jkeenan@acluaz.org

15   John Howard Gray:       jhgray@perkinscoie.com; slawson@perkinscoie.com

16   Karl J. Worsham:        kworsham@perkinscoie.com; docketphx@perkinscoie.com

17   Kathryn E. Boughton:    kboughton@perkinscoie.com; docketphx@perkinscoie.com

18   Kelly Soldati           ksoldati@perkinscoie.com; docketphx@perkinscoie.com

19   Maria V. Morris         mmorris@aclu.org

20   Maya Abela              mabela@azdisabilitylaw.org

21   Mikaela N. Colby:       mcolby@perkinscoie.com; docketphx@perkinscoie.com

22   Rita K. Lomio:          rlomio@prisonlaw.com

23   Rose Daly-Rooney:       rdalyrooney@azdisabilitylaw.org

24   Sara Norman:            snorman@prisonlaw.com

25   Sophie Jedeikin Hart    sophieh@prisonlaw.com

26   Victoria Lopez:         vlopez@acluaz.org

27

28

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck