Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
　　　　jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al.; and Arizona Center for Disability Law,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,<br><br>　　　　　Defendants. | No. CV 12-00601-PHX-ROS<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE (Doc. 4215)** |

155321666.1

Defendants oppose the admission into evidence of documents showing their long history of noncompliance with the Stipulation, even though Defendants elicited testimony from their witnesses at trial about that exact topic. This *post hoc* attempt to recast the Stipulation as a simple contract unrelated to unconstitutional health care and conditions in solitary confinement is contrary to law and has been rejected twice by the Ninth Circuit. *See Parsons v. Ryan*, 949 F.3d 443, 454-55 (9th Cir. 2020) (hereinafter "*Parsons III*") (citing *Parsons v. Ryan*, 912 F.3d 486, 497 (9th Cir. 2018) (hereinafter "*Parsons II*")), *cert denied sub nom. Shinn v. Jensen*, 141 S. Ct. 1054 (2021).

Defendants also attempt to exclude all evidence that they have, for years, been on notice through this litigation of serious problems within their prison system, including the report and recommendation of the Court's Rule 706 expert, reports by Plaintiffs' experts, and Plaintiffs' successful litigation to enforce the Stipulation. This evidence, combined with evidence that already has been admitted and that establishes that these same problems persist and place class members at substantial risk of serious harm, is relevant to show Defendants' deliberate indifference. In short, Defendants' objections are meritless; the proffered exhibits should be admitted.

## ARGUMENT

**I.    Plaintiffs' Motion Is Timely.**

Defendants now contend that the Court cannot admit into evidence the proffered exhibits because Plaintiffs did not move for their admission before trial or "during their case-in-chief."[1] [Doc. 4228 at 1, 2] Defendants ignore the agreement made on the record that Plaintiffs could offer additional exhibits after resting their case in chief.

> MR. SPECTER: The second issue is after these two witnesses are done, plaintiffs are going to rest their case in chief. Mr. Struck and I have agreed that we will reserve the right to admit exhibits into evidence and get them all squared away until further down later in the trial.

---

[1] Defendants take a contrary position as to exhibits they want in evidence. After the trial concluded, Defendants filed a "Statement Regarding Disputed Admission of Exhibits and Request for Admission of Same" for over a dozen exhibits, and also stipulated to the admission of a number of exhibits. [Docs. 4224, 4234]

155321666.1

> THE COURT: So, in other words, you will – you may offer additional evidence during their case or you're going – you may offer additional exhibits?
>
> MR. SPECTER: Yeah. And some of the exhibits that we sent to them we haven't resolved all the objections yet, so we're going to –
>
> THE COURT: Okay. So you're – Is that correct, Mr. Struck? You're going to wait on the –
>
> MR. STRUCK: Yes, Your Honor, that is correct.

[Transcript (Nov. 15, 2021 p.m.) at 1993:12-1994:1]

Relying in good faith on the representations of Defendants' counsel, and consistent with this agreement, after the parties could not resolve objections to these exhibits and stipulate to their admission, Plaintiffs moved for their admission during trial. [Doc. 4215] The Court should not tolerate Defendants' attempt to renege upon their agreement.

## II. Defendants' Main Objections—That Each Exhibit Is Not Relevant and Is Unfairly Prejudicial—Are Unfounded.

Defendants raise the same or similar objections in their response to many of the proffered exhibits. In particular, Defendants claim that nearly every exhibit is not relevant and will create unfair prejudice or will confuse the issues. These objections are meritless. We address these overarching objections before addressing objections particular to individual exhibits or categories of exhibits.

### A. The Stipulation, Defendants' Noncompliance with the Stipulation, and Defendants' Corrective Action Plans Are Relevant Evidence.

The Stipulation itself, as well as evidence of Defendants' noncompliance with the Stipulation and efforts to comply with the Stipulation, are relevant to the issues presented at trial. *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[.]"); Wright & Miller, 22 Fed. Prac. & Proc. Evid. § 5162.2 (2d ed.) ("[A] court can exclude evidence as irrelevant only if it has no probative value."). The parties agreed to the Stipulation in 2014 to address Defendants' unconstitutional health care system and isolation conditions. *See*

155321666.1

1  Doc. 1458 at 2, 6 (finding that the Stipulation was "necessary to correct the violations of
2  the Federal right of the Plaintiffs"); *Parsons II*, 912 F.3d at 501.

3        Remarkably, Defendants now claim that anything related to the Stipulation is
4  irrelevant because "[t]here is no a [sic] breach-of-contract claim, nor is Defendants'
5  compliance with the Stipulation on trial." [Doc. 4228 at 2; *see, e.g.*, *id.* at 4-5 (contending
6  that the Court Expert's report is not relevant because it opines on compliance with the
7  Stipulation); *id.* at 6 n.5 (contending that Plaintiffs' experts' reports and declarations are
8  not relevant because they "dealt with Stipulation compliance"); *id.* at 7 (contending that
9  Plaintiffs' filings are not relevant because each one "pertains to compliance with the
10 Stipulation"); *id.* at 8-9 (contending that the Stipulation itself is not relevant)]

11       Defendants, then, remain "willfully blind to the Stipulation's raison d'etre—which
12 is to provide for prisoners' health care through diagnostic testing and treatment." [*See*
13 Doc. 3556 at 3 (Order dated April 2, 2020)] Indeed, this Court already has held that
14 "Defendants' noncompliance with the Stipulation results in class members still not
15 receiving adequate health care." [Doc. 3921 at 30; *see also id.* at 27 (reviewing CGAR
16 scores and concluding that "Defendants remain noncompliant with some of the most
17 fundamental and critical aspects of medical and mental health care delivery")] The
18 Stipulation was rescinded, and this case was set for trial, because "Defendants have
19 consistently failed to meet many of the Stipulation's critical benchmarks." [*Id.* at 1]

20       Moreover, Defendants' attempt to block admission of the Stipulation, evidence of
21 their chronic noncompliance with the Stipulation, and their own corrective action plans on
22 the basis of relevance is irreconcilable with the position they have taken with regard to
23 their own exhibits. Defendants successfully sought admission of the CGAR scores and
24 elicited testimony about noncompliance with the Stipulation and efforts to address it—the
25 exact subjects on which they now attempt to bar Plaintiffs' evidence. [*See, e.g.*, Transcript
26 (Nov. 16, 2021 p.m.) at 2340:6-2342:22 (Defendants' successfully seeking admission of
27 Exhibit 3051, CGAR data from August 2019-July 2021); Transcript (Nov. 16, 2021 a.m.)
28 at 2263:12-17, 2264:20-2266:15, 2266:24-2267:14 (Defendant Gann testifying on direct

155321666.1

examination that he was trying to "ensure success on various performance measures" in the Stipulation and regarding compliance efforts around Performance Measures 44, 50, and 51); Transcript (Nov. 16, 2021 p.m.) at 2342:24-2343:9 (Defendant Gann testifying on direct examination that he tracks "overall compliance" with the performance measures in the Stipulation); Transcript (Nov. 16, 2021 a.m.) at 2251:5-2252:2 (Defendant Shinn testifying in response to questioning from the Court that his goal is "100 percent across the board with all [performance] measures" and that he wants Centurion to "comply with the contract" for "the quality of care that's provided")]

In sum, Defendants' noncompliance with the Stipulation and Defendants' court-ordered corrective action plans are clearly relevant.

**B.     That Evidence May Be Unflattering to Defendants Does Not Make It Unfairly Prejudicial or Confusing.**

Defendants next object to a number of exhibits on the grounds that the exhibits are "unfairly prejudicial" and will "confuse[] the issues." [Doc. 4228 at 3; *see id.* at 5 (Court Expert's report); *id.* at 6 (Plaintiffs' experts' reports); *id.* at 8 (mental health watch discovery); *id.* at 9 ("admitting the Stipulation in evidence will only confuse the issues and unfairly prejudice Defendants")] But Defendants do not explain how the probative value of the proffered exhibits is "substantially outweighed" by the danger of unfair prejudice or confusing the issues for the Court. *See* Fed. R. Evid. 403. Nor could they. "[I]t would be most surprising if . . . potential prejudice had any significance in a bench trial." *United States v. Caudle*, 48 F.3d 433, 435 (9th Cir. 1995); *see also Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial. For a bench trial, . . . the [trial] court can hear relevant evidence, weigh its probative value and reject any improper inferences."). That the evidence may be unflattering to Defendants does not make it prejudicial or confusing. And the Court already has seen almost all of the evidence because it was filed on its docket—including Dr. Stern's report, Plaintiffs' experts' reports, and the parties' court filings.

155321666.1

### III. The Exhibits Offered by Plaintiffs Are Admissible.

#### A. Defendants' Court Filings Are Admissible as Statements of a Party Opponent Under Rule 801(d)(2).

Plaintiffs seek the admission of Defendants' own court filings related to compliance with the Stipulation, including corrective actions plans: Exhibits 1946, 1971, 1972, and 1973. [Doc. 4215 at 2-4] Defendants contend that all four exhibits are not relevant and that they are unfairly prejudicial and confusing under Rule 403. Those arguments were addressed above. The few remaining arguments are equally meritless.

First, in a footnote, Defendants state that Exhibit 1946 "is a notice stemming from a discovery request for documents and explaining the difficulties of complying with an order to track length-of-stays in maximum custody a specific way." [Doc. 4228 at 2-3 n.1] That characterization of the filing does not change the fact that it is an admission by Defendants to the Court that they are incapable of tracking length-of-stay in maximum custody without manually reviewing each prisoner's custody file. [*See* Doc. 4215 at 4]

Second, in the same footnote, Defendants state that Exhibit 1972 "stems from an order to develop a compliance plan for . . . the provision of interpretive services." [Doc. 4228 at 3 n.1] Defendants then assert that "provision of interpretive services . . . is not an issue in this trial." [Doc. 4228 at 2-3 n.1] That is false. Defendants previously raised the issue of "[w]hether Plaintiffs may present evidence regarding issues with language interpretation." [Doc. 4116-1 at 49 (Proposed Final Pretrial Order)] The Court heard argument on that issue, rejected Defendants' position, and allowed the parties to present evidence on language interpretation. [*See* Transcript (Nov. 2, 2021 a.m.) at 232:11-234:20] And, again, Defendants themselves elicited substantial testimony at trial about language interpretation. [*See, e.g.*, Doc. 4172 at 61-64, Expert Trial Declaration of Dr. Joseph V. Penn (section entitled "Access to Language Interpretation Services"); Transcript (Nov. 17, 2021 p.m.) at 2624:11-25 (Dr. Elijah Jordan, Site Medical Director at ASPC-Yuma, responding to defense counsel's question, "How do you deal with patients . . . where English is not their first language?")]

-5-

Third, in a three-sentence argument, Defendants contend that Exhibit 1971 was "not authored by Defendants or their counsel" and instead simply "sets forth remedial action plans prepared by Centurion (Dkt. 3916-1)." [Doc. 4228 at 2] Defendants then conclude without support that "Plaintiffs have not established . . . [admissibility] under Rule of Evidence 801(d)(2)." [Doc. 4228 at 2] But Plaintiffs already explained why this exhibit falls squarely within Rule 801(d)(2).[2] [*See* Doc. 4215 at 2-3]

Exhibit 1971 lists CGAR scores and corrective action plans for certain performance measures, and was filed by Defendants' counsel in response to a Court order. [*See* Doc. 3916 at 1 ("Defendants give notice of and attach as Exhibit A [Exhibit 1971] Performance Measure Charts regarding April 2021 compliance pursuant to Court Order (Doc. 2958).") (signed by Timothy J. Bojanowski, counsel for Defendants)] That Defendants' agent Centurion may have helped prepare the plans adopted by Defendants and filed with the Court does not change the analysis.[3] The filing (and statements

---

[2] Defendants make the same argument as to Exhibit 1973. [*See* Doc. 4228 at 2] That argument fails for the same reason. Exhibit 1973 is a language identification poster, which Defendants filed as an attachment to illustrate one part of their corrective action plan. [*See* Doc. 3920 at 1 ("Defendants will display conspicuous, color, 'I Speak . . . Language Identification Guide' posters [Exhibit 1973] utilized by the Department of Homeland Security ('DHS') in the detention setting to facilitate inmates seeing and pointing to the language that they speak to identify the need for translation services not only during the intake process but for healthcare encounters. (Exh. 1 – poster 18x24 in size.).")]

[3] The obligation to prepare and implement such plans, of course, remains with Defendants. *See generally* Doc. 1185 at 14 ¶ 36; *see* Transcript (Nov. 3, 2021 a.m.) at 439:25-440:2 (MR. STRUCK: "I'm not saying that the Department isn't responsible for healthcare, because it's a non-delegable duty and there's no disputing that."); *West v. Atkins*, 487 U.S. 42, 55-58 (1988) (holding that "[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody" and concluding that contractor's "delivery of medical treatment to [incarcerated person] was state action fairly attributable to the State"); *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) (holding that "[t]he County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services" because "the private company's policy becomes that of the County if the County delegates final decisionmaking authority to it"). Even if Defendants' court filing is considered a statement by Centurion and not Defendants (which it is not), subsection 801(d)(2)(D) allows admission of statements "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *See United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (noting that the "essential ingredient" under Rule 801(d)(2)(D) "is the extent of control exercised by the employer"); *Kumar v. Williams Portfolio 7, Inc.*, No. C14-657RAJ, 2015 WL 11714566, at *3 (W.D. Wash. Aug. 13, 2015) (admitting air

155321666.1

contained therein) were "made by the party in an individual or representative capacity" under Rule 801(d)(2)(A), and/or are "one[s] the party manifested that it adopted or believed to be true" under Rule 801(d)(2)(B). *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 973 (C.D. Cal. 2006) ("If content created by individuals other than the creator of an email is incorporated into the email, the incorporated content is also admissible non-hearsay under Rule 801(d)(2)(B)."). The exhibit also is non-hearsay under subsection 801(d)(2)(C), which applies to statements "made by a person whom the party authorized to make a statement on the subject." *See Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir. 1989) (noting that Rule "has been applied to allow in evidence statements made by attorneys in a representational capacity").

**B.     Dr. Stern's Report to the Court Is Admissible to Show Notice.**

Plaintiffs seek to introduce the report of Rule 706 expert Dr. Marc Stern (Exhibit 1860) as evidence that Defendants were on notice of serious problems in their health care delivery system but failed to take appropriate remedial action. [*See* Doc. 4215 at 5-6] Dr. Stern's report is not hearsay because Plaintiffs are not introducing it for the truth of the matter asserted. *See Daniel v. Cook County*, 833 F.3d 728, 739, 743 (7th Cir. 2016) (observing that report of a Rule 706 expert "may be admissible to show that the defendants were on notice of [its] contents" in a different case).

Defendants contend that the Court previously rejected this argument. [Doc. 4228 at 3-4] But that ruling was directed toward an advocacy letter written by Plaintiffs' counsel for an individual class member. [*See* Transcript (Nov. 4, 2021 p.m.) at 938:7-941:3] Dr. Stern's report is quite different. This Court ordered Dr. Stern's evaluation (*see* Doc. 2900; Doc. 3089; Doc. 3231), he worked closely with Defendants in conducting his review (*see* Doc. 3194-1 at 3; Doc. 3379 at 4-5), and his findings and recommendations formed the basis of subsequent Court orders (*see, e.g.*, Doc. 3495). Defendants were on notice that the court-appointed expert had identified serious deficiencies regarding the

---

quality reports by independent contractors under Rule 801(d)(2)(D) where "Plaintiffs commissioned these . . . contractors precisely for the statements contained in the reports").

-7-

155321666.1

1  delivery of health care in the Arizona prison system, and should have taken steps to
2  investigate and address them. This is relevant to show deliberate indifference because, as
3  demonstrated by other evidence admitted at trial, many of those same problems persist in
4  the Arizona prison system to this day and place class members at substantial risk of
5  serious harm.

      **C.**    **Plaintiffs' Experts' Reports, Declarations and Filings in Successful Enforcement Litigation Are Admissible to Show Notice.**

Plaintiffs seek to admit their previous filings in this case, including expert reports and declarations, to demonstrate that Defendants have been on notice of serious risks of harm within their correctional system and deficiencies of policies and procedures, and yet have failed to take reasonable steps to address those problems. Like Dr. Stern's report, these filings are being introduced only to show notice, not for the truth of the matter asserted. None of Defendants' objections to these exhibits have merit.

First, Defendants contend that "Plaintiffs did not designate these reports/declarations as expert testimony by the expert deadline." [Doc. 4228 at 5-6] But, again, Plaintiffs are not seeking admission of these reports for their truth. Instead, they are evidence that, for almost ten years, a number of Plaintiffs' experts have evaluated conditions within the Arizona prison system and reported in great detail, to the Court and to Defendants, significant problems with the delivery of health care and conditions in isolation units. These reports serve as a record demonstrating that Defendants were aware that others had identified significant deficiencies, and should have investigated and addressed them. Other evidence already admitted at trial shows that many of these same problems remain unaddressed.

Second, Defendants contend that the Court already has ruled that prior expert reports and declarations are not admissible. [*See* Doc. 4228 at 6 (citing Doc. 4155)] But that order stands for the unremarkable proposition that expert reports are inadmissible for their truth as "'classic' hearsay." [Doc. 4155 at 1 (quoting *Ariz., Dep't of L., C.R. Div. v. ASARCO, L.L.C.*, 844 F. Supp. 2d 957, 965 (D. Ariz. 2011))] Here, again, Plaintiffs offer

-8-

155321666.1

the previous expert reports and declarations not for their truth, but to show that Defendants were on notice that significant concerns had been raised regarding the adequacy of their health care system and use of solitary confinement. [*See* Doc. 4155 at 1]

Third, Defendants object to Plaintiffs' other filings in successful enforcement litigation. [*See* Doc. 4228 at 7; Doc. 3861] But, again, these filings are offered only to show that Defendants were placed on notice, in this very litigation, of specific failures with its delivery of health care and conditions in isolation units. These filings are very different from the letter the Court excluded. The Stipulation itself outlines the process by which Plaintiffs' counsel provides Defendants with a written "Notice of Substantial Non-Compliance." [Doc. 1185 at 13 ¶ 30] If the parties are unable to resolve the matter, they then proceed to mediation and, if necessary, litigation before this Court. [*Id.* at 13 ¶¶ 30-31] Concerns about the Court's ability to properly weigh this evidence are misplaced. *Cf. E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) ("[I]n a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial."); *United States v. One Parcel of Real Estate at 1012 Germantown Rd., Palm Beach County, Fla.*, 963 F.2d 1496, 1501 (11th Cir. 1992) (noting that it is "relatively easy for the judge as factfinder to sort out the hearsay evidence from the admissible evidence before making a factual determination").

### D. Defendants' Documents Showing Prolonged Stays on Mental Health Watch Are Admissible.

Plaintiffs offer documents created by Defendants' employees and agents that show extended stays by class members on suicide/mental health watch—sometimes exceeding 100 days. [*See* Declaration of David Fathi ("Fathi Decl."), filed herewith, Ex. 2] Defendants attempt to bootstrap their own misconduct into arguments against admission of these documents. The Court should reject that attempt.

155321666.1

1    Dr. Stefanie Platt, Centurion's former Regional Mental Health Director, testified
2 about these documents at trial on November 5. [*See* Doc. 4171 at 2][4] Plaintiffs promptly
3 requested these documents from Defendants as plainly responsive to a pre-trial discovery
4 document request; Defendants refused to produce them. [Doc. 4171-1 at 13-15] After
5 Defendants initially refused to participate in the Court's discovery dispute process (*see*
6 Fathi Decl. ¶ 2 & Ex. 1), the parties submitted a statement of discovery dispute on
7 November 14, 2021. [Doc. 4171] On November 16, the Court ordered Defendants to
8 produce these documents "immediately," noting that "[t]he documents are responsive to
9 [Plaintiffs' request for production of documents, and] should have been produced earlier."
10 [Doc. 4178] Defendants produced some responsive documents on November 17.

11   Defendants now complain that Plaintiffs failed to "establish[] foundation and
12 reliability at trial." [Doc. 4228 at 8] But Defendants ensured that Plaintiffs could not call a
13 witness to discuss these documents by wrongfully withholding them until *after* Plaintiffs
14 had concluded their case-in-chief. As the Court has recognized, Plaintiffs should not be
15 prejudiced by Defendants' failure to timely produce these documents. [*See* Transcript
16 (Nov. 17, 2021 p.m.) at 2561:16-21]

17   In any event, Defendants' objections to the admissibility of these documents are
18 meritless. They claim that the documents are hearsay, but Dr. Platt testified that they were
19 created by herself and by Dr. Bobbie Stallcup, ADCRR's statewide Mental Health
20 Director. [Doc. 4171-1 at 8-10] They are thus non-hearsay statements of a party and its
21 employee and agent pursuant to Rule 801(d)(2). See Part III(A), *supra*.[5]

---

[4] Thus, Defendants' claim that "Defendants did not even know that the produced documents existed until the Court ordered their production" (Doc. 4228 at 8) is manifestly false.

[5] Defendants claim that "Plaintiffs' argument here that Centurion's statements are not hearsay is inconsistent with their objections to the admission of other Centurion documents that Defendants seek to admit." [Doc. 4228 at 8 n.6] Defendants are wrong. Rule 801(d) provides that a statement is not hearsay if "[t]he statement is *offered against an opposing party* and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D) (emphasis added). Thus, Centurion documents that may be inadmissible hearsay if offered by Defendants are non-hearsay when offered by Plaintiffs.

-10-

1  Defendants next argue that the documents should not be admitted because they
2  chose to produce them in an "unreliable" format. [Doc. 4228 at 8]. Obviously, there was
3  nothing preventing Defendants from producing the documents in a format that provided
4  accurate length-of-stay data as of the date of production; Defendants should not profit
5  from their strategic decision not to do so. In any event, upon receiving the documents
6  from Defendants on November 17, 2021, Plaintiffs promptly opened the files and printed
7  them the same day, which fully addresses Defendants' alleged reliability concerns. [*See*
8  Fathi Decl. ¶¶ 3-4 & Ex. 2]

### E. The Stipulation Is Admissible.

Finally, Defendants make the bizarre argument that the Stipulation is not admissible as legally operative verbal conduct because it "is no longer operative." [Doc. 4228 at 8] Defendants cite no case law to support their argument. Defendants presumably are referring to the Court's rescission earlier this year of its approval of the Stipulation due to "Defendants' pervasive material breaches of the Stipulation." [Doc. 3921 at 37] There is no question, however, that the Stipulation remained fully enforceable until that time and was a "statement [that] itself affect[ed] the legal rights of the [parties] or [wa]s a circumstance bearing on conduct affecting their rights." *See Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1154 (9th Cir. 2000) (quoting Fed. R. Evid. 801(c) advisory committee's note to 1972 proposed rules). Moreover, evidence at trial certainly was not limited to the three-month window of July 16, 2021, through October 15, 2021 (the close of discovery). [*See* Transcript (Nov. 3, 2021 a.m.) at 437:4-440:16 (admitting, over Defendants' objection, mortality reviews for class members who died since January 1, 2019, noting that such evidence is relevant because it relates to "a potential systemic violation of constitutional rights")]

### CONCLUSION

The Court should grant Plaintiffs' motion (Doc. 4215).

. . .

. . .

155321666.1

| | | |
|---|---|---|
| 1 | Dated:  December 20, 2021 | **PRISON LAW OFFICE** |
| 2 | | |
| 3 | | By:   s/ Rita K. Lomio |
| | | Donald Specter (Cal. 83925)* |
| 4 | | Alison Hardy (Cal. 135966)* |
| | | Sara Norman (Cal. 189536)* |
| 5 | | Rita K. Lomio (Cal. 254501)* |
| | | Sophie Hart (Cal. 321663)* |
| 6 | | 1917 Fifth Street |
| | | Berkeley, California 94710 |
| 7 | | Telephone:  (510) 280-2621 |
| | | Email:     dspecter@prisonlaw.com |
| 8 | |              ahardy@prisonlaw.com |
| | |              snorman@prisonlaw.com |
| 9 | |              rlomio@prisonlaw.com |
| | |              sophieh@prisonlaw.com |
| 10 | | *Admitted *pro hac vice* |
| 11 | | Daniel C. Barr (Bar No. 010149) |
| | | John H. Gray (Bar No. 028107) |
| 12 | | Austin C. Yost (Bar No. 034602) |
| | | Karl J. Worsham (Bar No. 035713) |
| 13 | | Kathryn E. Boughton (Bar No. 036105) |
| | | Mikaela N. Colby (Bar No. 035667) |
| 14 | | Kelly Soldati (Bar No. 036727) |
| | | Alisha Tarin-Herman (Bar No. 037040) |
| 15 | | **PERKINS COIE LLP** |
| | | 2901 N. Central Avenue, Suite 2000 |
| 16 | | Phoenix, Arizona 85012 |
| | | Telephone:  (602) 351-8000 |
| 17 | | Email:     dbarr@perkinscoie.com |
| | |              jhgray@perkinscoie.com |
| 18 | |              ayost@perkinscoie.com |
| | |              kworsham@perkinscoie.com |
| 19 | |              kboughton@perkinscoie.com |
| | |              mcolby@perkinscoie.com |
| 20 | |              ksoldati@perkinscoie.com |
| | |              atarinherman@perkinscoie.com |
| 21 | |              docketphx@perkinscoie.com |
| 22 | | Victoria Lopez (Bar No. 330042)* |
| | | Jared G. Keenan (Bar No. 027068) |
| 23 | | **ACLU FOUNDATION OF ARIZONA** |
| | | 3707 North 7th Street, Suite 235 |
| 24 | | Phoenix, Arizona 85013 |
| | | Telephone:  (602) 650-1854 |
| 25 | | Email:     vlopez@acluaz.org |
| | |              jkeenan@acluaz.org |
| 26 | | |
| | | *Admitted under Ariz. Sup. Ct. R. 38(d) |
| 27 | | |
| 28 | | |

155321666.1

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
**ACLU NATIONAL PRISON PROJECT**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice*.

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

155321666.1

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela
Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
  rdalyrooney@azdisabilitylaw.org
  mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

155321666.1

**Certificate of Service**

I hereby certify that on December 20, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
Eden G. Cohen
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com
ecohen@struclove.com

*Attorneys for Defendants*

　　　　　　　　　　　　　　　　s/ D. Freouf

155321666.1