Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

*Attorneys for Plaintiffs Shawn Jensen, Stephen Swartz, Sonia Rodriguez, Christina Verduzco, Jackie Thomas, Jeremy Smith, Robert Gamez, Maryanne Chisholm, Desiree Licci, Joseph Hefner, Joshua Polson, and Charlotte Wells, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**ARIZONA CENTER FOR DISABILITY LAW**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

*Attorneys for Plaintiff Arizona Center for Disability Law*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Shawn Jensen; Stephen Swartz; Dustin Brislan; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law,

Plaintiffs,

v.

David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of Corrections, Rehabilitation and Reentry, in their official capacities,

Defendants.

No. CV 12-00601-PHX-ROS

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' REQUEST TO ADMIT EXHIBITS (Doc. 4236)**

Defendants have moved to admit a significant number of exhibits over Plaintiffs' objections and for which admission would not be proper at this juncture. (Doc. 4236) As discussed below, most of the exhibits Defendants seek to have admitted are objectionable for a wide array of reasons, including: hearsay, a general lack of reliability, lack of foundation, improper introduction of bad acts, and lack of relevance.

## I. Defendants' Exs. 3052, 3054, 3055, 3078, 3081, 3439

(Compilation of Special Accommodations, HNR, and Outside Consults Data, from Monthly Clinical Data Reports; Compilation of Monthly Emergency Transport Reports; Compilation of Quarterly Utilization Reports; & Report of Diagnoses and Treatment of IDDM, HIV & Cancer)

Defendants' Exhibits 3052, 3054, 3055, 3078, 3081, and 3439, described by Defendants as "summary data reflecting the overall delivery of system-wide health care for various aspects of the ADCRR system" (Doc 4234 at 2), are hearsay and should not be admitted. Defendants argue that these exhibits are admissible pursuant to Federal Rules of Evidence, Rules 703, 803(6), 803(8), and 807. They are wrong.

Although Defendants assert that the records are admissible under the business records and the public records exceptions to the hearsay bar (Fed. R. Evid. 803(6) and 803(8)), they failed to lay the necessary foundation to establish admissibility under either standard. To come in as a business record, Defendants would have to show "by the testimony of the custodian or another qualified witness" or by certification, that the record met certain criteria related to when and how the record was made. Fed. R. Evid. 803(6). They failed to do so, and their argument in this motion is not an adequate substitute. Defendants assert that these documents include statistics that "were also testified to (in part) by Dr. Grant Phillips at Trial Transcript p. 2893 ln. 15 to p. 2895 ln. 8." Doc. 4234 at 2:16-18. But Dr. Phillips does not reference any of these six documents in his trial testimony. Defendants offer no explanation as to why they failed to attempt to introduce these six exhibits at the time of their direct examination of Dr. Phillips (or another of their witnesses), to attempt to lay the foundation for their admission with their witness. Had they introduced the exhibits at that point, Plaintiffs would have had the opportunity to cross-examine or voir dire Dr. Phillips about the documents and the information contained therein. Allowing

Defendants to move these exhibits into evidence now would be inconsistent with the Federal Rules of Evidence, would reward Defendants' decision not move it into evidence during trial, and would prejudice Plaintiffs.

For a record to be admissible as a public record, it would have to set out "the office's activities" in a matter "observed while under a legal duty to report" or "in a civil case …, factual findings from a legally authorized investigation." Fed. R. Evid. 803(8). Defendants do not even attempt to demonstrate the relevance of this exception.

Defendants also argue that these documents are admissible pursuant to Rule 703, as these ostensibly were "source documents relied upon by Defendants' expert Dr. Murray and source documents that substantiate exhibits stipulated to by Plaintiffs." Doc. 4236 at 2:21-3:2) But again, Defendants offer no explanation as to why they failed to attempt to introduce any of these exhibits at the time of their direct examination of Dr. Murray or Dr. Penn, pursuant to Rule 703. Accordingly, their request is untimely and prejudicial. And, to the extent that any of these Exhibits were reviewed or relied upon by the experts, this would not overcome the timeliness or hearsay objections, but more critically, neither Dr. Murray nor Dr. Penn discussed any of the information or statistics in these exhibits in their written declarations or in their oral testimony. Therefore, the ostensible reliance on these exhibits by Dr. Penn or Dr. Murray, simply because they were listed as documents that were allegedly provided to them for their review, is insufficient for admission.

Moreover, with one exception, the Bates ranges of the exhibits do not match with the Bates range listed by their experts in their reports, as shown in the following chart.[1]

//

//

//

[1] Notably, Defendants assigned overlapping Bates ranges to different exhibits. See Doc. 4118-1, Ex. 2, at 2, 4, 12 (Exhibits 3052, 3054, 3055 with identical Bates ranges of 137854-175186; Exhibits 3078, 3081, and 3439 having Bates ranges within the ranges of Exhibits 3052, 3054, 3055). This again calls into question the reliability of the information in the exhibits, as well as the accuracy of whether these were the same documents provided to Defendants' experts.

| Ex. | Description in Defendants' Exhibit List (Doc. 4118-1, Ex. 2, at 2, 4, 12) | Bates Range in Defs' Exhibit List | Expert Report Citation (Doc. 4236 at 2-3) |
| --- | --- | --- | --- |
| 3052 | Chronological compilation of Special Accommodations worksheets from Centurion Monthly Clinical Data Report (July 2019 - August 2021) | 137854-175186 | Penn Dec, Doc. 4172-1 at 39 #124 (lists "Centurion Monthly Clinical Data Reports", Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186)<br><br>Murray Dec, Doc. 4206-2 at 25 #337 (lists "Centurion Monthly Clinical Data Reports," Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186) |
| 3054 | Chronological compilation of Health Needs Requests worksheets from Centurion Monthly Clinical Data Report (July 2019 – August 2021) | 137854-175186 | Penn Dec, Doc. 4172-1 at 39 #124 (lists "Centurion Monthly Clinical Data Reports", Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186)<br>Murray Dec, Doc. 4206-2 at 25 #337 (lists "Centurion Monthly Clinical Data Reports," Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186) |
| 3055 | Chronological compilation of Outside Consults worksheets from Centurion Monthly Clinical Data Report (July 2019 – August 2021) | 137854-175186 | Penn Dec, Doc. 4172-1 at 39 #124 (lists "Centurion Monthly Clinical Data Reports", Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186)<br><br>Murray Dec, Doc. 4206-2 at 25 #337 (lists "Centurion Monthly Clinical Data Reports," Bates ranges 56772-58260, 69938-69956, 137854-137859, 175186) |
| 3078 | Chronological compilation of Centurion monthly Emergency Transport Reports, (July 2019 to August 2021) | 137956-175191 | Murray Dec. Doc. 4206-2 at 25 Item #343 lists Bates 137956-137979, 175191 |
| 3081 | Chronological compilation of Centurion quarterly Utilization Review Reports (Q3-2019 to Q2-2021) | 138066-138065 | Murray Dec. Doc. 4206-2 at 26 Item #348 lists Bates 138061-67 |

| Ex. | Description in Defendants' Exhibit List (Doc. 4118-1, Ex. 2, at 2, 4, 12) | Bates Range in Defs' Exhibit List | Expert Report Citation (Doc. 4236 at 2-3) |
|---|---|---|---|
| 3439 | Report of diagnoses and treatment for HIV, IDDM, and Cancer for January-June 2021 | 175185-175185 | Murray Dec. Doc 4206-2 at 29 Item #407 lists Bates 175185 |

Defendants assert that these "are not summary exhibits within the scope of Fed. R. Evid. 1006, but rather are consolidations of complete MS Excel worksheets (formatted to print on a single page), from the native MS Excel files received by ADCRR, and produced to Plaintiffs." Doc. 4236 at 2 n.1. Yet they do not identify these native source files, such that Plaintiffs have no way to compare the sets of documents.

Defendants' motion to admit these exhibits should be denied.

## II. Defendants' Ex. 3303
(2014 NCCHC Prison Health Standards)

During trial, the 2018 NCCHC Standards, Defendants' Exhibit 3304, was discussed and ultimately admitted under Federal Rule of Evidence 703 after Defendants' expert Dr. Penn testified that he had relied on the 2018 NCCHC Standards. Trial Trans., Dec. 7, 2021, 3362:20-3363:2. During the course of the discussion, the Court recognized that the NCCHC Standards are hearsay that would have to be established as a business record to come in for the truth of the matter. *Id.* at 3364:9-14. Defendants have done nothing to establish that the 2014 NCCHC Standards meet the requirements for business records, or for any other hearsay exception. *See* Doc. 4236 at 3.

The 2018 NCCHC Standards were admitted, but only under Federal Rule of Evidence 703 on the grounds that they were relied on by Dr. Penn. Trial Trans., Dec. 7, 2021, 3362:20-3363:2. While discussing the 2018 NCCHC Standards, Dr. Penn testified that he relied on them. *Id.* In his declaration, he repeatedly and specifically referenced the 2018 NCCHC Standards. Doc. 4172 at ¶¶ 150, 172. Nowhere in his declaration or live testimony did he indicate that he relied on the 2014 NCCHC Standards. *See generally* Doc. 4172.

Because Defendants did not establish that the 2014 NCCHC Standards are a business record or that Dr. Penn relied upon them, Exhibit 3303 should not be admitted on the basis of relevance, lack of foundation, and hearsay.

## III. Defendants' Ex. 3352 ("Schedule of Current Mental Health Programing Offered at ADCRR Mental Health Units")

Defendants' Exhibit 3352 should not be admitted. Defendants argue that it should be admitted under Federal Rules of Evidence 703, 803(6), and 807. Doc. 4236 at 3-4. None of these rules provides a basis to admit the schedule of mental health programming. Rule 703 provides that an expert may rely on a record, regardless of whether it is admissible. However, the rule further states: "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Here, the document has no probative value. Defendants assert that this is a "Schedule of Current Mental Health Programing Offered" and that it provides information about the "mental healthcare *provided*," the "mental health groups *offered*," and the "*frequency of provision* of mental health programming." Doc. 4236 at 3-4 (emphasis added). There was overwhelming evidence admitted during trial that the schedule of mental health programming does not accurately reflect the programming that is offered because so much of the programming is cancelled. *See, e.g.*, Trial Trans. Nov. 18, 2021, 2687:2-6, 2831:21-2832, 2833:1-3; Pls. Exs. 1296-1303 (Information Reports regarding cancellations), Defs' Exs. 3602 (Maximum Custody Notebook, Eyman-Browning, August 2021, at ADCRR00214547, ADCRR00214566, ADCRR00214581, ADCRR002146595, ADCRR00214610, ADCRR00214627, ADCRR00214639, ADCRR00214654, ADCRR00214666, ADCRR00214681), 3604 (Maximum Custody Notebook, Eyman-SMU I, August 2021, at ADCRR00214757, ADCRR00214860, ADCRR00214875, ADCRR00214890, ADCRR00214903, ADCRR00214916, ADCRR00214931, ADCRR00214944, ADCRR00214959, ADCRR00214974, ADCRR00214987), 3606

(Maximum Custody Notebook, Florence-Kasson, August 2021, at ADCRR00215058, ADCRR00215078, ADCRR00215085, ADCRR00215099, ADCRR00215112, ADCRR00215131, ADCRR00215152, ADCRR00215166, ADCRR00215179, ADCRR00215192, ADCRR00215206, ADCRR00215220, ADCRR00215237, ADCRR00215250, ADCRR00215263, ADCRR00215276, ADCRR00215290, ADCRR00215306, ADCRR00215320, ADCRR00215333). The fact that many, if not most, of the scheduled mental health programs are cancelled not only eliminates the probative value of the schedule, but also makes it prejudicial by introducing confusion into what the programs are actually offered. The reliance on this document by Dr. Penn does not justify its admission.

The schedule is also hearsay to which no exception to the hearsay rule applies. Defendants state, without citing to any evidence, that it is a business record (Doc. 4236 at 3-4), but they have not laid the proper foundation. They have not provided any evidence or testimony about how, when, by whom, or how frequently the schedule is made. *See* Fed. R. Evid. 803(6)(A)-(D). And, as discussed above, Plaintiffs have shown that it lacks trustworthiness, as it is described as a schedule of programming offered, but many of the programs are not, in fact, offered. *See* Fed. R. Evid. 803(6)(D).

Finally, Defendants assert without explanation that it is admissible pursuant to the "Residual Exception" to the hearsay rule, Federal Rule of Evidence 807. As with the business records exception, they have not laid the foundation, nor could they. As discussed above, they have provided no indication of any of the circumstances under which the schedule was made. *See* Fed. R. Evid. 807(a)(1). Further, it does not have any guarantees of trustworthiness, as it has in fact already been proven to be highly inaccurate. *See supra*; *see* Fed. R. Evid. 807(a)(1). Finally, the evidence already admitted is more probative on the issue of what programming is in fact offered than is this schedule. *See* Fed. R. Evid. 807(a)(2). The residual exception to the hearsay rule does not apply here.

Finally, on Defendants' Exhibit List, they described Exhibit 3352 as a "Summary of Mental Health programming offered at Eyman, Phoenix, Perryville, Lewis, and Tucson."

Doc. 4118-1 at 10. If, as represented, this is a summary, it should not be admitted without some indication of what documents it purports to summarize and the opportunity to examine and introduce them. Fed. R. Evid. 1006. Had Defendants attempted to introduce this exhibit during trial, Plaintiffs would have had the opportunity to ask for the underlying documentation. Without this opportunity, it is impossible for the Plaintiffs or the Court to assess its reliability. Moreover, the fact that the description changed from "Summary of Mental Health programming offered at Eyman, Phoenix, Perryville, Lewis, and Tucson" in the Exhibit List (Doc. 4118-1 at 10) to "Schedule of Current Mental Health Programing Offered at ADCRR Mental Health Units" in their request to admit (Doc. 4236 at 3) suggests an awareness that if the document is the summary it was initially represented to be, it is not admissible without supporting evidence. This is particularly true given that, on its face, the document is simply not a schedule: It includes no times or days when the mental health programming is offered. *See* Ex. 3352. Exhibit 3352 should not be admitted.

## IV. Defendants' Ex. 3636
(Out-of-Cell-Time Tracking Forms for Named Plaintiff Gamez)

Defendants seek to have the 2020-2021 out-of-cell-time tracking forms for Named Plaintiff Gamez admitted. The only reason given is that they would like to challenge Mr. Gamez's account (during Defendants' deposition of him) of the amount of out-of-cell time offered from August 2020 through August 2021. Doc. 4236 at 4. This is improper impeachment and would be prejudicial to Plaintiffs.

First, this is untimely. If Defendants wanted to impeach Mr. Gamez's deposition testimony through the introduction of the out-of-cell-time tracking forms, they should have asked him about the forms during the deposition, called him as a witness at trial to attempt to impeach his prior testimony, or had some other witness, such as Deputy Warden Anthony Coleman or Deputy Warden Lori Stickley, testify about the forms.[2]

[2] The out-of-cell tracking forms Defendants seek to introduce are from ASPC-Lewis Rast and ASPC-Eyman SMU I, where Anthony Coleman and Lori Stickley are, respectively, the Deputy Wardens.

Notably, Deputy Wardens Coleman and Stickley testified at trial. Defendants acknowledge in their motion that multiple out-of-cell-time tracking forms were admitted into evidence through the testimony of deputy wardens. Doc. 4236 at 4. But they did not bother to introduce this exhibit when they had the opportunity to do so.

Second, the tardiness of the request to admit the out-of-cell-time tracking forms results in prejudice. Plaintiffs have submitted substantial evidence that the "refusals" reflected on the out-of-cell-time tracking forms are not reliable indicators that people were actually offered the time and refused it. *See, e.g.*, Doc. 4130 at ¶¶ 146-152; Trial Trans. 1287:17-1289:24 (Class member Jason Johnson testifying that his signature was not in the column for his signature for refusals on the out-of-cell-time tracking form and that he is not asked to sign it), 1415:13-1420:14 (Plaintiffs' Expert Martin Horn testifying about the dubious nature of the refusals documented in the out-of-cell-time tracking forms), 2105:12-2107:5 (Deputy Warden Coleman testifying that "refusals" on the out-of-cell-time tracking forms did not have the incarcerated person's signature in the column for their signature), 2113:24-2115:20 (same).

Had Defendants attempted to impeach Mr. Gamez's description of his out-of-cell time during the trial, Plaintiffs would have had the opportunity to respond and to call Mr. Gamez as a witness. Allowing Defendants to move the out-of-cell-time records into evidence now would reward Defendants' decision not move it into evidence during trial, and prejudice Plaintiffs by depriving them of the right to attempt to rehabilitate Mr. Gamez, even assuming that the forms contradict his deposition testimony.

Absent the purpose of impeachment, Mr. Gamez's out-of-cell-time tracking forms are just another example of Defendants' failure to bring people out of their cells. As such, it is cumulative and duplicative, and should, therefore, be excluded.

## V. Defendants' Ex. 3627
(Institutional File for Class Member Muhammad)

Defendants seek to have the institutional file of Rahim Muhammad admitted. They assert that Mr. Muhammad's "classification history [and] disciplinary history" and

documents relating to the uses of force against him are "relevant to Defendants' defense that the inmate's complicated incarceration history warranted his maximum custody and program placement and justified instances of use of force and should be admitted."

To the extent the file is offered as a means of admitting documents relating to the uses of force against Mr. Muhammad, such records have already been admitted and additional records would be cumulative and duplicative. *See* Exs. 1065, 4002, 4022, 4024, 4026, 4030, 4032, 4034, 4036, 4038, 4040, 4044, 4054.

To the extent the file is offered to because Defendants seek to place Mr. Muhammad's "complicated incarceration history" at issue, the file should not be permitted. The only evidence Plaintiffs introduced about the propriety of Mr. Muhammad's placement into and retention in maximum custody was his testimony that in 2018, his classification score placed him at close custody, but he was not removed from maximum custody due to an "OSB hold". Trial Trans. 894:5-896:14. The institutional file cannot be used to impeach this testimony, as it corroborates it.

Neither Mr. Muhammad nor anyone else testified about the reasons he was in maximum custody. No one testified about his disciplinaries. Admitting his institutional file to show his "complicated incarceration history" would be improper impeachment. Defendants' request is untimely – they could have cross-examined Mr. Muhammad using this document when he testified at trial. Further, admitting the file for the ostensible purpose of showing that his misconduct demonstrates that he is sufficiently dangerous such that he must be kept in maximum custody would run afoul of Federal Rule of Evidence 404(b).

Finally, all of the evidence that was admitted during trial about the uses of force on Mr. Muhammad indicated that the uses of force were to keep him from self-harming. *See, e.g.*, Exs. 1065, 4002; Doc. 4132 at ¶¶294-319; Trial Trans. 2846:22-2848:17, 2855:5-2862:10. Thus the assertion that his "complicated incarceration history … justified instances of the use of force" is a brand new argument about facts that were explored at length during the trial, with a number of witnesses testifying about this subject. Plaintiffs would be prejudiced if Defendants were allowed to introduce this after-the-fact evidence

and Plaintiffs were not provided with the opportunity to cross-examine anyone about it. Had Defendants made this argument or sought to have the evidence admitted while trial was ongoing, Plaintiffs would have had the opportunity challenge this new defense theory. For these reasons, Exhibit 3627 should be excluded.

## VI. Defendants' Exs. 3656, 3660, 3673, 3675, 3680
(Classification/Disciplinary Histories of Named Plaintiffs Brislan and Gamez, and Three Isolation Subclass Members)

These exhibits should not be admitted because they are cumulative and have no probative value on the issues before the Court. Further, with regard to Exhibits 3673, 3675, and 3680, the documents were requested in discovery and Defendants failed to produce them to Plaintiffs in response to the request.

### A. Defendants' Exhibits 3656 and 3660
(Named Plaintiffs Brislan and Gamez)

Defendants have moved to admit the classification and disciplinary histories of Named Plaintiffs Brislan and Gamez. The only justification for the request to admit these records is that "Plaintiffs generally challenge maximum custody classification and step level lengths of stay." Doc. 4236 at 5. But Plaintiffs have not argued that all persons in maximum custody are improperly classified, that all step level lengths of stay are too long, or that these two individuals are improperly classified or have overly long lengths of time at each step level.[3] *See generally* Doc. 4132 at ¶¶ 77-138; Doc. 4226-1 at 16-62; Trial Trans. 1292:15-1333:15, 1360:10-1415:5. Whether or not the classification and disciplinary histories of these two particular individuals demonstrates that they are appropriately classified as maximum custody and move through the steps appropriately does nothing to prove or disprove Plaintiffs' claims or Defendants' defenses. To attempt now to introduce evidence that the two should be in maximum custody is outside the scope of the direct

[3] Because Mr. Brislan is designated as SMI and Mr. Gamez was de-designated as SMI without explanation (*see* Doc. 4226-1 at 20-21), Plaintiffs challenge the propriety of placing them into maximum custody at all.

examination of Plaintiff Brislan at trial (and Defendants failed to introduce the evidence during their cross-examination), and is improper impeachment of both Plaintiffs.

To the extent these documents are submitted to show general practices rather than specifically to assert the propriety of the maximum custody placements of these two individuals, the documents are cumulative of the records that have already been admitted, as acknowledged by Defendants. Doc. 4236 at 5-6.

Finally, this appears to be an attempt to introduce evidence of bad acts to show that these two individuals are dangerous such that their placement in maximum custody is purportedly warranted – a violation of Federal Rule of Evidence 404(b)(1).

**B. Defendants Exhibits 3673, 3675, 3680**
(Three Isolation Subclass Members)

Exhibits 3673, 3675, 3680 should not be admitted. These documents are directly responsive to Request for Production of Documents ("RPD") 11, which sought the "complete disciplinary and classification files" for fourteen Isolation Subclass members, including the three people whose Classification and Disciplinary Histories are Exhibits 3673, 3675, 3680. Morris Decl., Ex. 1 at 2. The RPD was served on August 8, 2021. Morris Decl., Ex. 1 at 3. Under the discovery order in this case, responsive documents were to be produced by August 31, 2021. Doc. 3940 at 2. On August 31, 2021, Defendants produced what they represented to be the "complete disciplinary and classification files" for the fourteen Subclass members. Morris Decl., Ex. 2. The disciplinary and classification documents produced at that time were the documents that have been admitted as Exhibits 1188, 1191, and 1194. Morris Decl., ¶ 4. Because the production was clearly not the complete disciplinary and classification files for the fourteen Subclass members, Plaintiffs requested that Defendants supplement the production. Morris Decl., Ex. 3. Defendants finally did so October 12, 2021, producing the documents that have been admitted as Exhibits 1189, 1192, and 1195. Morris Decl., ¶ 4, Ex. 3. Prior to this production, Defendants stated in an email that the production was the complex institutional file and the Defendants were also checking the electronic database, ACIS, to "guard against

inadvertently missing information." *Id.* Plaintiffs' expert Martin Horn relied on the productions of August 31 and October 12, 2021 in his Supplemental Report, which was due and produced on October 15, 2021, and in his subsequent testimony. *See* Doc. 4132 at ¶¶ 82-110.[4]

Defendants last updated their responses to Plaintiffs' document requests on November 17, 2021, days after the close of Plaintiffs' case-in-chief. The discovery responses are cumulative, showing the complete listing of all documents produced in response to each request throughout the discovery period. Morris Decl., ¶ 5, Ex. 4. Despite being directly responsive to RFP 11, Defendants did not indicate that they had produced these documents they now seek to have admitted. Morris Decl., Ex. 4.

The purpose of discovery is to avoid surprises. *Ruiz v. Hamburg-Am. Line*, 478 F.2d 29, 32 (9th Cir. 1973); *Alves v. Riverside Cty.*, No. 519CV02083JGBSHK, ___ F.R.D. ___, 2021 WL 3601986, at *2 (C.D. Cal. Apr. 12, 2021) ("Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute.") (citations and quotations omitted) Plaintiffs relied in good faith on Defendants' representation that all responsive documents had been produced. But now Defendants want the Court to consider other documents that should have been produced in response to RFP 11, but were not. The Court should not permit such gamesmanship.

Additionally, these documents are cumulative and duplicative of Plaintiffs' Exhibits 1188, 1189, 1191, 1192, 1194, and 1195 (Institutional Files, and Classification Results and Rules Violation Summaries for the three Isolation Subclass Members).

//

//

//

---

[4] Defendants produced these documents to Plaintiffs on October 27, 2021 in conjunction with their Fourth Supplemental Pretrial Disclosure Statement. Morris Decl., Ex. 5.

## VII. Defendants' Exs. 3686, 3688, 3690, 3696, 3700
(ACIS/EIP Reports for Named Plaintiffs Brislan and Gamez, and Three Isolation Subclass Members)

The ACIS/EIP reports reflect the amount of time a person has been in maximum custody, their step progression and, in some cases, their disciplinary history. The reasons they should not be admitted are the same as the reasons the classification and discipline histories should not be admitted. *See* discussion of Defendants' Exs. 3656, 3660, 3673, 3675, 3680, *supra*.

### A. Defendants' Exhibits 3686 and 3690
(Named Plaintiffs Brislan and Gamez)

As discussed above, Plaintiffs have not introduced any evidence about the propriety of the length of time Named Plaintiffs Brislan and Gamez have been in maximum custody or at any particular step. The ACIS/EIP reports are, therefore, not relevant. Further, the ACIS/EIP reports would be outside the scope of Named Plaintiff Brislan's direct examination, and the reports could not be used as impeachment for either of the two Named Plaintiffs.

To the extent these documents are submitted to show general practices rather than specifically to assert the propriety of the maximum custody placements of these two individuals, the documents are cumulative of the records that have already been admitted, as acknowledged by Defendants. Doc. 4236 at 6.

Finally, this appears to be yet another attempt to introduce evidence of bad acts to show that these two individuals are dangerous, in violation of Federal Rule of Evidence 404(b)(1).

### B. Defendants' Exhibits 3688, 3696, and 3700
(Three Isolation Subclass Members)

For the same reasons stated above regarding Defendants' Exhibits 3673, 3675, 3680, these exhibits should not be admitted. The documents were requested in discovery and were not produced to Plaintiffs in response to the document requests.

**CONCLUSION**

For the foregoing reasons, this Court should not admit the following Exhibits Defendants seek to have admitted: 3052, 3054, 3055, 3078, 3081, 3439, 3303, 3352, 3636, 3627, 3656, 3660, 3673, 3675, 3680, 3686, 3688, 3690, 3696, 3700.

Dated: December 22, 2021

**ACLU NATIONAL PRISON PROJECT**

By: s/ Maria V. Morris

David C. Fathi (Wash. 24893)*
Maria V. Morris (D.C. 1697904)**
Eunice Hyunhye Cho (Wash. 53711)*
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 548-6603
Email: dfathi@aclu.org
mmorris@aclu.org
echo@aclu.org

*Admitted *pro hac vice*; not admitted in DC; practice limited to federal courts
**Admitted *pro hac vice*

Corene Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
39 Drumm Street
San Francisco, California 94111
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

*Admitted *pro hac vice*

Daniel C. Barr (Bar No. 010149)
John H. Gray (Bar No. 028107)
Austin C. Yost (Bar No. 034602)
Karl J. Worsham (Bar No. 035713)
Kathryn E. Boughton (Bar No. 036105)
Mikaela N. Colby (Bar No. 035667)
Kelly Soldati (Bar No. 036727)
Alisha Tarin-Herman (Bar No. 037040)
**PERKINS COIE LLP**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 351-8000
Email: dbarr@perkinscoie.com
jhgray@perkinscoie.com
ayost@perkinscoie.com
kworsham@perkinscoie.com
kboughton@perkinscoie.com
mcolby@perkinscoie.com
ksoldati@perkinscoie.com
atarinherman@perkinscoie.com
docketphx@perkinscoie.com

Victoria Lopez (Bar No. 330042)*
Jared G. Keenan (Bar No. 027068)
**ACLU FOUNDATION OF ARIZONA**
3707 North 7th Street, Suite 235
Phoenix, Arizona 85013
Telephone: (602) 650-1854
Email: vlopez@acluaz.org
jkeenan@acluaz.org

*Admitted under Ariz. Sup. Ct. R. 38(d)

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Sara Norman (Cal. 189536)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
ahardy@prisonlaw.com
snorman@prisonlaw.com
rlomio@prisonlaw.com
sophieh@prisonlaw.com

*Admitted *pro hac vice.*

*Attorneys for Plaintiffs Shawn Jensen; Stephen Swartz; Sonia Rodriguez; Christina Verduzco; Jackie Thomas; Jeremy Smith; Robert Gamez; Maryanne Chisholm; Desiree Licci; Joseph Hefner; Joshua Polson; and Charlotte Wells, on behalf of themselves and all others similarly situated*

**ARIZONA CENTER FOR DISABILITY LAW**

By: s/ Maya Abela

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@azdisabilitylaw.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**ARIZONA CENTER FOR DISABILITY LAW**
177 North Church Avenue, Suite 800
Tucson, Arizona 85701
Telephone: (520) 327-9547
Email:
rdalyrooney@azdisabilitylaw.org
mabela@azdisabilitylaw.org

*Attorneys for Arizona Center for Disability Law*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2021, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michael E. Gottfried
Lucy M. Rand
Assistant Arizona Attorneys General
Michael.Gottfried@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
Timothy M. Ray
Anne M. Orcutt
Eden G. Cohen
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com
tray@strucklove.com
aorcutt@strucklove.com
ecohen@struclove.com

*Attorneys for Defendants*

s/ Maria V. Morris