# EXHIBIT 1

FILED

FEB 1 4 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARCIANO PLATA, et al.,

   Plaintiffs,

  v.

ARNOLD SCHWARZENEGGER, et al.,

   Defendants.

NO. C01-1351 TEH

CLASS ACTION

ORDER APPOINTING RECEIVER

On October 3, 2005, this Court issued its written Findings of Fact and Conclusions of Law in support of its June 30, 2005 decision to establish a Receivership to take control of the delivery of medical services to California state prisoners confined by the California Department of Corrections and Rehabilitation ("CDCR").[1]  In its written ruling, the Court explained that it was undertaking a national search to find a Receiver with the leadership ability, experience, and vision to take on the monumental and critical task of bringing the

---

[1]  As the October 3, 2005 ruling notes, Pelican Bay State Prison is exempted from this action and instead falls under this Court's jurisdiction in the separate case of *Madrid v. Woodford*, C90-3094 TEH.

level of medical care provided to California's 166,000 inmates up to federal constitutional standards. Having undergone a thorough and successful search process, the Court HEREBY APPOINTS Mr. Robert Sillen to serve as the Receiver in this case, at the pleasure of the Court, effective Monday, April 17, 2006. A copy of the Receiver's curriculum vitae is attached to this Order.

In furtherance of the Receivership, the Court sets forth the Receiver's duties and powers as follows:

I. DUTIES OF THE RECEIVER

A. Executive Management

The Receiver shall provide leadership and executive management of the California prison medical health care delivery system with the goals of restructuring day-to-day operations and developing, implementing, and validating a new, sustainable system that provides constitutionally adequate medical care to all class members as soon as practicable. To this end, the Receiver shall have the duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR.

B. Plan of Action

The Receiver shall, within 180 - 210 calendar days of the effective date of appointment, develop a detailed Plan of Action designed to effectuate the restructuring and development of a constitutionally adequate medical health care delivery system. This Plan shall include recommendations to the Court of which provisions of the (1) June 13, 2002 Stipulation for Injunctive Relief, and (2) September 17, 2004 Stipulated Order re Quality of Patient Care and Staffing Order and Injunction (and/or policies or procedures required thereby), should be carried forward and which, if any, should be modified or discontinued due to changed circumstances. The Plan of Action shall also include a proposed time line for

2

1  all actions and a set of metrics by which to evaluate the Receiver's progress and success.

2  The Receiver shall update and/or modify this Plan as necessary throughout the Receivership.

3      Pending development of the Plan of Action, the Receiver shall undertake immediate

4  and/or short term measures designed to improve medical care and begin the process of

5  restructuring and development of a constitutionally adequate medical health care delivery

6  system.

7

8      C.  Budgeting and Accounting

9      The Receiver shall determine the annual CDCR medical health care budgets

10  consistent with his duties and implement an accounting system that meets professional

11  standards.  The Receiver shall develop a system for periodically reporting on the status of the

12  CDCR's medical health care budget and shall establish relations with the California Office of

13  Inspector General to ensure the transparency and accountability of budget operations.

14

15      D.  Reporting

16      The Receiver shall provide the Court with bimonthly progress reports.  These reports

17  shall address: (a) all tasks and metrics contained in the Plan and subsequent reports, with

18  degree of completion and date of anticipated completion for each task and metric,

19  (b) particular problems being faced by the Receiver, including any specific obstacles

20  presented by institutions or individuals, (c) particular successes achieved by the Receiver,

21  (d) an accounting of expenditures for the relevant period, and (e) all other matters deemed

22  appropriate for judicial review.

23      The Receiver shall meet with the Court on a bimonthly basis shortly following the

24  issuance of each report and shall remain in contact with the Court throughout the

25  Receivership on an informal, as needed, basis.

26

27

28

United States District Court
For the Northern District of California

1  II.  POWERS AND AUTHORITY OF THE RECEIVER

2        The Receiver shall have all powers necessary to fulfill the above duties under this

3  Order, including, but not limited to:

4        A.  General Powers

5        The Receiver shall exercise all powers vested by law in the Secretary of the CDCR as

6  they relate to the administration, control, management, operation, and financing of the

7  California prison medical health care system.  The Secretary's exercise of the above powers

8  is suspended for the duration of the Receivership; it is expected, however, that the Secretary

9  shall work closely with the Receiver to facilitate the accomplishment of his duties under this

10  Order.

11

12        B.  Personnel

13        The Receiver shall have the power to hire, fire, suspend, supervise, promote, transfer,

14  discipline, and take all other personnel actions regarding CDCR employees or contract

15  employees who perform services related to the delivery of medical health care to class

16  members.  The Receiver shall have the power to establish personnel policies and to create,

17  abolish, or transfer positions related to the delivery of medical health care to class members.

18  The Receiver also shall be empowered to negotiate new contracts and to renegotiate existing

19  contracts, including contracts with labor unions, in the event that such action is necessary for

20  the Receiver to fulfill his duties under this Order.

21

22        C.  Property

23        The Receiver shall have the power to acquire, dispose of, modernize, repair, and lease

24  property, equipment, and other tangible goods as necessary to carry out his duties under this

25  Order, including but not limited to information technology and tele-medicine technology.

26

27

28

D. <u>Governing State Laws, Regulations, and Contracts</u>

The Receiver shall make all reasonable efforts to exercise his powers, as described in this Order, in a manner consistent with California state laws, regulations, and contracts, including labor contracts.  In the event, however, that the Receiver finds that a state law, regulation, contract, or other state action or inaction is clearly preventing the Receiver from developing or implementing a constitutionally adequate medical health care system, or otherwise clearly preventing the Receiver from carrying out his duties as set forth in this Order, and that other alternatives are inadequate, the Receiver shall request the Court to waive the state or contractual requirement that is causing the impediment.  Upon receipt of any such request, the Court shall determine the appropriate procedures for addressing such request on a case-by-case basis.

E. <u>Access</u>

The Receiver shall have unlimited access to all records and files (paper or electronic) maintained by the CDCR, including but not limited to all institutional, personnel, financial, and prisoner records, as deemed necessary by the Receiver to carry out his duties under this Order.

The Receiver shall have unlimited access to all CDCR facilities, as deemed necessary by the Receiver, to carry out his duties under this Order.  Ordinarily, the Receiver shall attempt to provide reasonable notice when scheduling such visits, but this shall not preclude the Receiver from making unannounced visits to facilities or offices as the Receiver deems necessary to carry out his duties under this Order.

The Receiver shall have unlimited access to prisoners and to line and managerial staff, including the authority to conduct confidential interviews with staff and prisoners.

United States District Court
For the Northern District of California

F. <u>Immunity and Indemnification</u>

The Receiver and his staff shall have the status of officers and agents of this Court, and as such shall be vested with the same immunities as vest with this Court.

Additionally, Defendants shall indemnify the Receiver and members of his staff to the same extent as Defendants are obligated to indemnify the Secretary of the CDCR.

III. <u>OFFICE OF THE RECEIVER</u>

A. The Receiver shall be paid a reasonable compensation for his services in an amount to be approved by this Court.

B. The Receiver shall establish an Office of the Receiver in a location to be determined in consultation with the Court, with staffing necessary to fully carry out his duties as set forth in this Order. Upon approval from the Court, the Receiver shall set reasonable compensation and terms of service for each member of his staff, (including employees and/or consultants) and shall be authorized to enter into contracts with the employees or consultants of the Office.

C. Because time is of the essence, and in order to begin operations immediately, Defendants shall, within 30 days of the date of this Order, establish an initial operating fund with the Court in the amount of $750,000. The Receiver shall submit monthly requests for payment from this fund to the Court. Further funds for the Office of the Receiver shall be deposited to the Receiver's Office Fund Account set forth in paragraph F below.

D. Throughout the Receivership, the Receiver shall submit to the Court a monthly accounting of all receipts and expenditures of the Office of the Receiver and shall arrange for an independent financial audit of the Receiver's Office Fund Account on an annual basis.

E. Within 45 calendar days from the date of effective appointment, the Receiver shall establish an interest-bearing account, with respect to which he shall be the signatory and fiduciary. This account shall be designated as the Receiver's Office Fund Account and shall be maintained solely for the reasonable and necessary expenses associated with the operation

of the Office of the Receiver, including but not limited to salaries, consulting fees, and the costs of supplies, equipment, office space, transportation,[2] and the like.  The Receiver shall arrange with Defendants a system for regularly replenishing the Receiver's Office Fund Account.

F.  Within 75 calendar days of the date of effective appointment, the Receiver shall establish a budget for the Office of the Receiver's first year of operation.  The Receiver shall also establish a budget for the Office of Receiver for each subsequent year of operation, with each such budget due 90 days in advance of each budget year.

## IV.  COSTS

All costs incurred in the implementation of the policies, plans, and decisions of the Receiver relating to the fulfillment of his duties under this Order shall be borne by Defendants.  Defendants shall also bear all costs of establishing and maintaining the Office of Receiver, including the compensation of the Receiver and his staff.

## V.  LENGTH OF RECEIVERSHIP

The Receivership shall remain in place no longer than the conditions which justify it make necessary, and shall cease as soon as the Court is satisfied, and so finds in consultation with the Receiver, that Defendants have the will, capacity, and leadership to maintain a system of providing constitutionally adequate medical health care services to class members. The Court expects that as the Receivership progresses, the Receiver will attempt to engage Defendants in assuming responsibility over portions of the system that are within

---

[2]When engaged in travel, the Receiver and his staff shall use their best efforts to contain direct expenses in a cost-effective fashion. For example, when engaged in necessary travel, the Receiver and his staff shall, when possible, utilize advanced-purchase economy airfares and reasonably priced accommodations.

1  Defendants' demonstrated ability to perform, so that the ultimate transfer of power back to
2  the State will be transitional.

3  Prior to the cessation of the Receivership, the Receiver shall develop a Plan for Post-
4  Receivership Governance of the system, which shall include consideration of its structure,
5  funding, and governmental responsibility for its long-term operation.  The Receiver shall
6  present this plan to the Court for approval and adoption as an order.

7

8  VI.  COOPERATION

9  A.  All Defendants, and all agents, or persons within the employ, of any Defendant in
10  this action (including contract employees), and all persons in concert and participation with
11  them, and all counsel in this action, shall *fully* cooperate with the Receiver in the discharge of
12  his duties under this Order, and shall promptly respond to all inquiries and requests related to
13  compliance with the Court's orders in this case.  Any such person who interferes with the
14  Receiver's access, as set forth in section II.E., or otherwise thwarts or delays the Receiver's
15  performance of his duties under this Order, shall be subject to contempt proceedings before
16  this Court.

17  B.  Counsel for Defendants shall ensure that the following state agencies are given
18  prompt notice of the substance of this paragraph: the Department of Personnel
19  Administration, the Department of Finance, the Department of General Services, the State
20  Personnel Board, and any other state agencies that Defendants deem should be notified.
21  Defendants shall notify the Court in writing of their compliance with this paragraph within
22  30 days of the date of this Order.

23  C.  The Secretary of the CDCR shall ensure that all of the CDCR's employees and
24  agents (including contract employees) are given prompt notice of the substance of this
25  paragraph.  Defendants shall notify the Court in writing of their compliance with this
26  paragraph within 30 days of the date of this Order.

27

28

United States District Court
For the Northern District of California

VII.  ADVISORY BOARD

The Court, in consultation with the Receiver, shall appoint an Advisory Board of no more than five members to assist and advise the Court and the Receiver with respect to achieving the goals of the Receivership.

VIII.  MODIFICATION

Given that this Receivership is unprecedented in scope and dimension, this Court finds that flexibility will be an important element in ensuring its effectiveness.  Accordingly, this Order may be modified as necessary from time to time to assure the success of this Receivership and the eventual return of the operation of the CDCR's medical health care delivery system to the State of California.

**IT IS SO ORDERED.**

Dated: February 14, 2006

THELTON E. HENDERSON
UNITED STATES DISTRICT JUDGE

9

**ROBERT SILLEN**

---

## EDUCATIONAL BACKGROUND

1965   University of Denver, Denver, Colorado:  Bachelor of Arts Degree

1972   Graduate School, Yale University:  Masters of Public Health Degree

## CAREER EXPERIENCE

| | |
|---|---|
| 1993 - Present | Executive Director<br>Santa Clara Valley Health & Hospital System<br>San Jose, CA |
| 1979 - 1993 | Executive Director, Hospital & Clinics<br>Santa Clara Valley Medical Center<br>San Jose, CA |
| 1976 - 1979 | Associate Director, Hospital & Clinics<br>University Hospital<br>University of California Medical Center<br>San Diego, CA |
| 1972 - 1976 | Assistant Director<br>University Hospital<br>University of California Medical Center<br>San Diego, CA |
| 1968 - 1970 | Assistant Administrator<br>City Hospital Center at Elmhurst<br>Elmhurst, NY |
| 1967 - 1968 | Director of Community and Professional Relations<br>United States Public Health Service<br>New York, NY |
| 1965 - 1967 | Director of Clinics<br>United States Public Health Service<br>New York, NY |

## DETAILS OF CAREER EXPERIENCE

Executive Director, Santa Clara Valley Health & Hospital System (SCVHHS)

In June, 1993, the Board of Supervisors created a full service, integrated County health care system consisting of the Santa Clara Valley Medical Center, Department of Public Health, Department of Mental Health, Department of Custody Health Services and the Department of Alcohol & Drug Services. The Santa Clara Valley Health & Hospital System is responsible for a full continuum of preventive intervention and treatment services throughout the County, both directly under County auspices and through contracts with the private sector. The system is comprised of over 6,200 employees and has an annual operating budget of nearly $1.4 billion.

The Executive Director is responsible for all aspects of the system's operations, long range planning, private/public partnerships, community relations, capital development and information systems. The development of a cost effective, fully integrated system is essential for the successful conversion to a full-service managed care delivery system in a highly competitive environment. In addition, the Executive Director was responsible for designing and implementing a County-wide Medi-Cal Managed Care program (Local Initiative) in June, 1996 as well as the Children's Health Initiative and Healthy Kids program in January, 2000.

Executive Director, Santa Clara Valley Medical Center (SCVMC)

Directed, administered, and coordinated all activities of the hospital and its affiliated clinics; responsibilities included: planning and establishing major current and long range objectives, goals, and policies; maintaining good employee and medical staff relations; maintaining financial solvency of the institution; organizing the functions of the Medical Center and clinics through appropriate departmentalization and delegation of duties; exercising day-to-day responsibility for the internal operations of the hospital; and directly coordinating all external activities and relations affecting the hospital and clinics.

The Santa Clara Valley Medical Center is a 500-bed regional medical center with an operating budget of over $800 million and 4,500 full-time equivalent employees. Services range from community based primary care satellite clinics to tertiary regional services such as: Regional Burn, Spinal Cord Injury, and Head Trauma; Neonatal Intensive Care; Poison Control Center; Trauma Center; Life Flight Helicopter; and Custody (Jail) Health Services.

Associate Director, University Hospital, University of California Medical Center, San Diego

Administrative and budgetary responsibility for the following professional services: Anesthesia, Medicine, Neurology, Surgery. Responsibility included approval and control of operating and capital budgets, program planning and implementation and identification and solution of operational problems. Relate directly to Chairpersons and Division Chief of above indicated departments.

Responsible for operation of hospital planning office, including overall administrative responsibility for short- and long-range planning. Responsibilities included formulation of planning methodology, acquisition of capital resources, and coordination of all hospital construction, renovation, and space allocation.

Responsible for the activities of the Assistant Director, Hospital and Clinics, for a variety of professional services and non-professional departments including:   Cardiac Catheterization Laboratory, Gastroenterology, Material Handling, Medicine, Neurology, Pathology, Pharmacy, Physical and Occupational Therapy, Radiology, Respiratory Therapy, Surgery.

Assistant Administrator, City Hospital at Elmhurst

Assisted the Administrator of this 1,000-bed teaching hospital in the general administration of a variety of professional and non-professional services, including: Anesthesia, Hematology, Inhalation Therapy, Pathology, Radiology, Social Services, Medical Records, and Medical Library.  Directly responsible for administration of internship and residency training programs, and administration of Medicare compliance program.

## ACADEMIC APPOINTMENTS

Assistant Clinical Professor, Department of Community Medicine,
University of California, San Diego

Clinical Lecturer, Department of Community Medicine,
University of California, San Diego

## PROFESSIONAL ASSOCIATIONS AND MEMBERSHIPS

Children & Families First Commission of Santa Clara County, Commissioner:  2000 – Present
California Association of Public Hospitals & Health Systems, Board of Directors, Current Member;
      Current and Past Chairman:  2003, 1984, 1985, 1989
National Association of Public Hospitals & Health Systems, Current Member; Past Chairman: 1987
Emergency Housing Consortium, Board of Directors, Member: 1998-2001
American Cancer Society, Board of Directors, Member:  2000, 2001
California Association of Hospitals and Health Systems, Board of Trustees
California Association of Hospitals and Health Systems, Chairperson, CAHHS Committee on
      Finance, 1990
California Association of Hospitals and Health Systems, Marketplace Task Force, 1989; Blue
      Ribbon Committee, 1990
American Hospital Association
American Hospital Association, Governing Council, Section for Metropolitan Hospitals
Hospital Council of Northern California, Board of Directors
California Hospital Association County Hospital Committee
Hospital Conference of Santa Clara County:  President, 1986
Hospital Council of Northern California, Planning Committee
Hospital Council of Northern California, Finance Committee
National Association of Counties, Health and Education Steering Committee; Subcommittee, Health
      Care Cost Containment; Subcommittee, Long Term Care

## ROBERT SILLEN

---

### Major Accomplishments

#### Planned, financed and implemented major capital expansion of Medical Center:

- $50 million patient care tower, including new and expanded Comprehensive Emergency Room; Adult Medical, Surgical and Coronary Care Intensive Care Units, Regional Burn Center, post-partum maternity; clinical lab expansion; 40 bed telemetered Transitional Care Unit; Newborn Nursery; roof-top heliport.

- $12 million ambulatory care/physician office building (Valley Health Center). This practice facility provides a highly competitive practice site enabling our faculty to expand our base of privately insured patients. 42,000 square foot facility includes: decentralized registration/waiting, patient care modules including exam rooms, consult rooms and offices; pharmacy; laboratory; radiology services; medical records. This facility is the locus of our prepaid health plan (Valley Health Plan) for County and other public employees.

- $5 million physician/administrative complex that houses our faculty practice plan, physician offices and administrative support offices.

- Psychiatric Facility Expansion - As part of the same bond issue that financed the West Wing patient tower we have built a new 54 bed acute psychiatric facility ($8 million) and purchased a free-standing, distinct part psychiatric SNF ($4 million).

- Creation of a Magnetic Resonance Imaging Center through a joint venture.

- A Campus Development Plan has been funded and initiated which will culminate in the completion of the following projects during the next three years: Additional Patient Care Tower; 1,500 car parking structure(s); Ambulatory Care Facility; Alzheimers Treatment and Day Care Center; Long Term Care facility; new power plant and laundry; Administrative support and physician office building. The Campus Development effort will cost over $500 million.

- $250 million Patient Care Tower (completed in 1999).

- $250 million Specialty Inpatient Center (to be completed in 2008).

- Four Community Based Primary Care Centers ($200 million).

**Program Development:**

- Designation as Level I Trauma Center

- Occupational and Industrial Medicine Program. Developed a program for and consummated contracts with union health and welfare funds and corporate entities in Silicon Valley as well as governmental agencies and school districts.

- Valley Health Plan (VHP). Designed and implemented a prepaid health plan for County employees. This plan, licensed by the State Department of Corporations, is intended to compete with private HMO's, PPO's, IPA's and indemnity plans offered to over 13,000 County employees thus increasing our private insurance base and reducing County subsidy to the Medical Center. Since its inception, VHP has grown from 0 to 2,600 enrollees.

- Developed a Marketing and Public Relations Division that successfully maintained and enhanced our patient referral base, created community support and understanding and enhanced our image throughout the County and State.

- Created a free-standing 501(c)(3) fundraising foundation (SCVMC Foundation). The Foundation, the sole purpose of which is to raise funds and create community support for SCVMC was created in 1988. During its first year it raised over $1 million for the Medical Center. The Foundation Board is comprised of wealthy Silicon Valley corporate leaders and civic "movers and shakers." Major support has been garnered from wealthy individuals, other local foundations, corporations (IBM, Cypress Semiconductors, Applied Materials, Hewlett-Packard, Syntex to name a few). This is a unique effort for a county medical center and we are now providing consultative services to other public hospitals that want to emulate our success.

- Service Excellence. Successfully designed and implemented a Medical Center-wide program which has significantly enhanced intra-and-interdepartmental functioning and communications, increased employee morale, aided recruitment and retention, positively impacted operating efficiency, enhanced our patient and community relations and maintained and enhanced our patient base.

- Financial Performance. Despite the adverse sponsorship mix of SCVMC's patient population (60% Medi-Cal, 20% unsponsored, 5% private insurance, 15% Medicare) our financial performance has been exemplary. The County General Fund subsidy has never exceeded 10% of our total operating budget during my 16 year tenure at SCVMC. This is unique for a California county hospital, especially the third largest in the State. Our financial and clinical successes are closely related and have created an environment of full community and political support vital to our overall success.

- Operational Re-engineering. Implemented a full-scale work re-engineering project; the goal of which was to reduce operating expenses by $60 million over three years. This program is unique within County government in California and has the full support of the Board of Supervisors and County unions.

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

PLATA, et al,

        Plaintiff,

v.

SCHWARZENEGGER, et al,

        Defendant.

_____/

Case Number: CV01-01351 TEH

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 14, 2006, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Caroline N. Mitchell
JONES DAY
555 California St.
26th Floor
San Francisco, CA 94104

Donald Howard Specter
Prison Law Office
General Delivery
San Quentin, CA 94964

Jerrold C. Schaefer
Hanson Bridgett Marcus Vlahos & Rudy, LLP
425 Market Street, 26th Floor
San Francisco, CA 94105-2173

John Hagar
Judge's Reading Room
450 Golden Gate Ave
18th Floor
Law Library
San Francisco, CA 94102

Jonathan L. Wolff
Attorney General's Office
for the State of California
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

Paul B. Mello
Hanson Bridgett Marcus Vlahos & Rudy, LLP
425 Market Street, 26th Floor
San Francisco, CA 94105

Sara Linda Norman
Prison Law Office
General Delivery
San Quentin, CA 94964

Shawn Hanson
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104-1500

Steven Fama
Prison Law Office
General Delivery
San Quentin, CA 94964

Warren E. George
Bingham McCutchen LLP
Three Embarcadero Center
San Francisco, CA 94111-4066

Dated: February 14, 2006

                                 Richard W. Wieking, Clerk
                                 By: R.B. Espinosa, Deputy Clerk

# EXHIBIT 2

1   Daniel P. Struck, Bar No. 012377
    Rachel Love, Bar No. 019881
2   Timothy J. Bojanowski, Bar No. 022126
    Nicholas D. Acedo, Bar No. 021644
3   STRUCK LOVE BOJANOWSKI & ACEDO, PLC
    3100 West Ray Road, Suite 300
4   Chandler, Arizona  85226
    Telephone:  (480) 420-1600
5   Fax:  (480) 420-1695
    dstruck@strucklove.com
6   rlove@strucklove.com
    tbojanowski@strucklove.com
7   nacedo@strucklove.com

8   *Attorneys for Defendants*

9                    **UNITED STATES DISTRICT COURT**

10                        **DISTRICT OF ARIZONA**

11

12  Victor Parsons, *et al.*, on behalf of themselves     NO. 2:12-cv-00601-ROS
    and all others similarly situated; and Arizona
    Center for Disability Law,
13
                                                          **DEFENDANTS' TWELFTH**
                                              Plaintiffs,  **SUPPLEMENTAL RESPONSES TO**
14                                                         **PLAINTIFFS' FIRST SET OF**
            v.                                             **REQUESTS FOR PRODUCTION**
15                                                         **OF DOCUMENTS TO**
    David Shinn, Director, Arizona Department of          **DEFENDANTS**
16  Corrections; and Richard Pratt, Interim
    Division Director, Division of Health Services,
17  Arizona Department of Corrections, in their
    official capacities,
18
                                              Defendants.
19

20                       **GENERAL OBJECTIONS**

21          The Stipulation has been rescinded and the Court's approval of it vacated.  (Dkt.

22  3921 at 37.)  The case will proceed to trial on "Plaintiffs' claims in the original complaint

23  that the delivery of health care and housing in isolation amount to constitutional

24  deprivations in violation of the Eighth Amendment." (*Id*. at 2.)  Thus, while documentation

25  regarding compliance with the Stipulation may be discoverable, because the Stipulation's

26  Performance Measures exceed constitutional minimums, it is not the standard Defendants

27  will be held to at trial.  Instead, Plaintiffs must prove Defendants violated their Eighth

28  Amendment rights.

By not objecting to a particular request, Defendants do not concede that it exists. Rather, Defendants agree to produce responsive documents which are in their possession, custody, or control.  Fed.R.Civ.P. 34(a)(1).  Defendants do not agree to create documents for any of Plaintiffs' requests.  Indeed, Plaintiffs have access to all inmates' healthcare records through eOMIS.  Thus, to the extent Plaintiffs have specific inquiries regarding a particular inmate which is not answered by a document that is in Defendants' possession, custody, or control, Plaintiffs can review eOMIS to obtain that information.

Finally, Defendants object to Plaintiffs' term "sufficient to show" which Plaintiffs define as "demonstrating or evidencing complete information on the requested topic, without the need to produce every document regarding the topic."  Defendants seek clarification from Plaintiffs as to what universe of documents they seek when utilizing this term in the below requests.

**DOCUMENTS REQUESTED**

**REQUEST NUMBER 1:**  All mortality reviews, psychological autopsies, and incident reports related to all persons who have died since January 1, 2020, while in the custody of the ADCRR.[1]

OBJECTION:  Vague and ambiguous as to "incident report" as there are numerous reports that are generated after an "incident," none of which are titled "incident report." Because this term is not defined by Plaintiffs, it is unclear which reports they are requesting.

Without waiving objections, *see* Mortality Reviews previously produced at ADCRRM0000001-62, ADCRRM0004654-4677, ADCRRM0004693-4704, ADCRRM0005573-5592, ADCRRM0012707-12746, ADCRRM0019592-19689, ADCRRM0026142-26254;  and Psychological Autopsies previously produced at ADCRRM0000063-88.  *See also*, Mortality Reviews, Psychological Autopsies and Significant Incident Reports produced ~~herewith~~ at ADCRR00000001-486,

---

[1] *See* July 21, 2021 Monthly Document Request letter from Alison Hardy to Rachel Love listing all class members for whom Plaintiffs have not yet received mortality reviews and/or psychological autopsies.

2

ADCRR00000523-855,  and  ADCRR00056120-56227.   *See  also*,  Mortality  Reviews produced ~~herewith~~ at  ADCRR00088274-88545.  *See  also,*  Mortality  Reviews  and Psychological Autopsies produced ~~herewith~~ at ADCRR00137156-137342; and corrected Psychological Autopsy for Eric Haag (##286490) at ADCRR00137343-137357. ***See also, Mortality Review produced at ADCRR00210795-210802.***

**REQUEST NUMBER 2:**  All monthly Compliance Green-Amber-Red ("CGAR") reports created by ADCRR evaluating CENTURION's compliance with the Performance Measures in the parties' Stipulation and in the health care privatization contract, from April 2021 to the present.

OBJECTION:  None.  *See* Defendants' Response to Request Number 22 below.

**REQUEST NUMBER 3:**  All DOCUMENTS, including but not limited to meeting agenda, minutes, notes, and attachments, from Continuous Quality Improvement ("CQI") meetings held at each of the ten Arizona State Prison Complexes for the month of May 2021 to the present.

OBJECTION:  None.  *See* CQI Meeting Minutes for each of the ten Arizona State Prison Complexes for  May through July 2021 produced ~~herewith~~ at ADCRR00056228-56771 and ADCRR00061590-62630. *See also* CQI Meeting minutes for August 2021 produced ~~herewith~~ at ADCRR00136543-137139. ***See also,*** CQI Meeting Minutes (with attachments) produced at ADCRR00210803-211186.**

**REQUEST NUMBER 4:**  All monthly HEALTH CARE staffing contract variance reports provided by CENTURION for all HEALTH CARE STAFF positions at all ASPCs and the Arizona regional offices, including the contracted hours, worked hours, and hours variance; and hired, worked, and contract Full-Time Equivalent ("FTE") positions, and the FTE variance, for the month of May 2021 to the present.

OBJECTION:  None.  *See* Defendants' Response to Request Number 23 below. *See also,* Variance Report for August 2021 produced natively at ADCRR00211187.

**REQUEST  NUMBER  5:**   All  monthly  reports  showing  all  requests  for SPECIALTY CARE made at all ASPCs that month, and listing the name and ADC number

1   of the class member, the type of specialty requested, the request status (routine, urgent, or

2   emergent), the date of the request, and the status of the request, for the months of May 2021

3   to the present.

4       OBJECTION:  None.  *See* Pending Specialty Appointment logs for May through

5   July 2021 produced natively ~~herewith~~ at ADCRR00069740-69742. *See also*, Pending

6   Specialty Appointment and Utilization Management Review logs for August 2021

7   produced in native format ~~herewith~~ at ADCRR00137358 and ADCRR00137359.

8       **REQUEST NUMBER 6:**  All INCIDENT REPORTS related to emergency medical

9   responses that were reviewed by ADCRR monitors to evaluate CENTURION's compliance

10   with Performance Measure 25, for the months of March 2021 to the present.

11       OBJECTION:  Vague and ambiguous as to "incident report" and "related" as there

12   are numerous reports that are generated after an "incident," none of which are titled

13   "incident report."  Because this term is not defined by Plaintiffs, it is unclear which reports

14   they are requesting.  Additionally, it is unclear which reports Plaintiffs assume are "related"

15   to emergency medical responses as they do not define this term.

16       Without waiving objections, *see* Performance Measure 25 Incident Reports for

17   March through May 2021 produced ~~herewith~~ at ADCRR00062631-66086.  Defendants will

18   supplement with information from June 2021 forward.

19       **REQUEST NUMBER 7:**  For each ASPC, the heat intolerance reaction log and

20   DOCUMENTS SUFFICIENT TO SHOW all class members who potentially suffered a heat

21   intolerance reaction due to their psychotropic medications and/or who were moved to a new

22   housing location due to a heat intolerance reaction from March 1, 2021 to the present, in

23   compliance with Paragraph 15 of the Settlement Agreement.

24       OBJECTION:  Vague, ambiguous, and relevance as to "potentially suffered" as it is

25   unclear what is intended by the term and Plaintiffs do not define it.

26       Without waiving objections, *see* Heat Intolerance Log produced natively ~~herewith~~ at

27   ADCRR00069743.  *See also* Heat Intolerance Log for August 2021 produced ~~herewith~~ in

28

native format at ADCRR00098880. ***See also,* Heat Intolerance Log for September 2021 produced natively at ADCRR00211188.**

**REQUEST NUMBER 8:**  Temperature logs from June 1, 2021 to the present for all prison complexes. (The last temperature logs were provided for May 2021, *see* ADCRRM0025226-26141).

OBJECTION:  None.  *See* Temperature Logs for June and July 2021 for all ten prison complexes produced natively ~~herewith~~ at ADCRR00069743. *See also* Temperature Logs for August 2021 for all ten prison complexes produced natively ~~herewith~~ at ADCRR00111469-111478. ***See also,* Temperature Logs through August 2021 produced natively at ADCRR00211189-211254.**

**REQUEST NUMBER 9:**  Monthly maximum custody notebooks from March 2021 to the present.

OBJECTION:  None.  *See* maximum custody notebooks for March 2021, April 2021 and May 2021 produced ~~herewith~~ at ADCRR00066087-69736.  ~~Defendants will supplement with information from June 2021 forward~~. ***See also,* maximum custody notebooks for June 2021, July 2021 and August 2021 produced at ADCRR00211255-215730.**

**REQUEST NUMBER 10:**  All videos and documentation relating to the use of force on persons classified as SMI from ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, from March 1, 2021, to the present.

OBJECTION:  Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as this request exceeds the scope of Plaintiffs' Complaint because this request is not limited to maximum custody inmates or chemical agents.  Defendants do not object to this request as it relates to maximum custody inmates. *See* maximum custody notebooks for March 2021, April 2021 and May 2021 produced ~~herewith~~ at ADCRR00066087-69736. *See also* Use of Force Incident Reports from ASPC Florence-Kasson and Eyman-Browning produced ~~herewith~~ at ADCRR00148897-00150469. Defendants will supplement this Response as additional documents are received. All

documents responsive to this Request No. 10 are also responsive to Request No. 46 and are contained among the documents produced in response thereto. *See* Defendants' Response to Request No. 46 and documents produced at ADCRR00163735-170976 and ADCRR00172037-172088.  Each file name (and metadata) contains the ADCRR inmate number associated with the produced documentation and ADCRR inmate numbers for SMI inmates are noted by an "M" following the inmate number.  All use of force videos responsive to this Request No. 10 are also responsive to Request No. 47 and are contained among the video files produced in response thereto.  *See* Defendants' Response to Request No. 47 and videos produced at ADCRR00180135-00181267.

**REQUEST NUMBER 11:**  Out-of-cell maximum custody tracking forms for the past year, and complete disciplinary and classification files for the following subclass members:[2]



---

[2] *See* 7/21/21 Monthly Document Request letter.

OBJECTION:  Vague and ambiguous as to "for the past year" as it is unclear whether Plaintiffs seek information for the 2020 calendar year or for the 365 days prior to the date this request was received by Defendants.  Relevance, overbroad, unduly burdensome, and not proportional to the needs of the case as to Plaintiffs' request for complete disciplinary and classification files where the request is not limited in time.

Without waiving objections, *see* out-of-cell maximum custody tracking forms for the past 365 days, and complete disciplinary and classification files for the above subclass members produced ~~herewith~~ at ADCRR00050604-50713, ADCRR00050722-51822, ADCRR00051837-51884, ADCRR00051901-51950, ADCRR00051961-52018, ADCRR00052037-52056, ADCRR00052075-52182. *See* additional documents produced ~~herewith~~ at ADCRR00139377-00139470. *See* institutional records for the above-listed inmates produced at ADCRR00161613-162188 and ADCRR00162271-163734.

**REQUEST NUMBER 12:**  All weekly HEALTH CARE staffing schedules for all ASPCs and health care clinics, showing for each HEALTH CARE STAFF position the hours scheduled versus actually worked, from the first week of January 2021 to the present.

OBJECTION:  None. *See* Variance Report produced ~~herewith~~ at ADCRR00021949-21976.

**REQUEST NUMBER 13:**  For each ASPC, DOCUMENTS SUFFICIENT TO SHOW all class members for whom a SMI determination was held from January 1, 2020, to the present, including patient name, ADC number, and date of determination.

OBJECTION:  Vague and ambiguous as to "determination" and "was held" as it is unclear whether Plaintiffs seek information regarding inmates who have maintained this status from January 1, 2020 to the present or something different.  To the extent Plaintiffs are requesting a list of inmates who requested to be designated SMI, Defendants object that such request is overbroad and unduly burdensome as it would require an individual review of each HNR.  To illustrate, at just one facility in 2020, 52,839 HNRs were submitted.

Without waiving objections, *see* SMI determination logs for January 1, 2020 through present produced ~~herewith~~ at ADCRR00043612-43619 and ADCRR00069936.

**REQUEST NUMBER 14:**  For each ASPC, DOCUMENTS SUFFICIENT TO SHOW all class members for whom a PMRB hearing was held from January 1, 2020, to the present, including patient name, ADC number, date of hearing, and the outcome of the hearing.

OBJECTION:  None.  *See* PMRB hearing logs from January 1, 2020 to the present produced ~~herewith~~ at ADCRR00043620-43626 and ADCRR00069937.

**REQUEST NUMBER 15:**  DOCUMENTS SUFFICIENT TO SHOW for each ASPC, class members on the routine and urgent dental care wait lists, as of the date of the report.

OBJECTION:  None.  ~~To the extent responsive documents exist, Defendants will supplement~~.  *See* documents produced at ADCRR00172092-172352.

**REQUEST NUMBER 16:**  All Daily Information Reports written by custody staff assigned to work at all medical clinics at all ASPCs from January 1, 2021, to the present.

**OBJECTION:**  None.  ~~To the extent responsive documents exist, Defendants will supplement~~.  *See* Information Reports produced ~~herewith~~ at ADCRR00081310-88111; ADCRR00088546-96789.  *See also* Information Reports produced ~~herewith~~ at ADCRR00111479-114790.  *See also* Information Reports produced ~~herewith~~ at ADCRR00139471-00141295.

**REQUEST NUMBER 17:**  DOCUMENTS SUFFICIENT TO SHOW all class members who, at the time of the report, are identified as CHRONIC CARE patients at each ASPC, listing the patient's name, ADC number, ASPC and LOCATION UNIT, and their diagnosed CHRONIC CARE condition(s).

OBJECTION:  None.  *See* Chronic Care reports produced ~~herewith~~ at ADCRR00043627-46153 and ADCRR00058368-59615.  *See* also, Chronic Conditions list produced ~~herewith~~ in native format at ADCRR00098845. ***See also,* Chronic Conditions Report for September 2021 produced natively at ADCRR00215731.**

**REQUEST NUMBER 18:**  For each ASPC, the monthly report showing all off-site emergency department visits or hospitalization stays, from January 1, 2020 to the present.

OBJECTION:   None.   *See*  monthly  reports  showing  all  off-site  emergency department visits or hospitalizations from January 1, 2020 to the present produced ~~herewith~~ at      ADCRR00000352-355,      ADCRR00000487-522,      ADCRR00000639-640, ADCRR00000713-715,      ADCRR00000773-775,      ADCRR000910-21948, ADCRR00021977-42498 and ADCRR00056128-56129.

**REQUEST NUMBER 19:**  DOCUMENTS SUFFICIENT TO SHOW, for all class members  who  are  not  fluent  in  English,  each  class  member's  name  and  ADC  number, primary  language,  ASPC  and  LOCATION  UNIT,  and  whether  and  how  language interpretation was provided for all HEALTH CARE encounters from April 1, 2021, through the date of the report.

OBJECTION:   Overbroad and unduly burdensome as responding to this request would  require  an  individual  review  of  each  inmate's  file  who  requested  interpretation services for an over six-month period.

Without  waiving  objections,  *see*  Interpretative  Services  Utilization  Report  for January 2020 through August 2021 produced ~~herewith~~ at ADCRR00059616-60923.

**REQUEST NUMBER 20:**  MENTAL HEALTH WATCH logs for each ASPC's watch  unit(s)  and  any  other  housing  location  used  to  observe  patients  on  MENTAL HEALTH WATCH, from January 1, 2020, to the present.

OBJECTION:  None.  *See* Mental Health Watch logs for each ASPC watch unit and other housing locations from January 1, 2020 to the present produced ~~herewith~~ at ADCRR00060924-61538.

**REQUEST NUMBER 21:**  For each ASPC, DOCUMENTS SUFFICIENT TO SHOW, for the period from January 1, 2020, to the present, the number of people placed on MENTAL HEALTH WATCH, the total number of days for each person was placed on MENTAL HEALTH WATCH, and the mean, median and maximum duration length of stay on MENTAL HEALTH WATCHES.

OBJECTION:  This request is overbroad, unduly burdensome, and not proportional to the needs of the case as it would require an individual review of every inmate's file (many

1  of whom may have been on watch multiple times during a month) who was placed on watch

2  for a nearly two-year time period and would require Defendants to create a document which

3  Rule 34 does not require.  Without waiving these objections, *see* Defendants' Response to

4  Request for Production 21.

5       **REQUEST NUMBER 22:**  Monthly CGAR reports (*see* Request Number 2) in

6  Microsoft Excel format, from January 2020, to the present.

7       OBJECTION:  Defendants object to re-producing these documents in Microsoft

8  Excel as the documents are not natively maintained in that format.    Producing CGAR

9  reports in Microsoft Excel would unduly burden Defendants as they would have to manually

10  create a document for Plaintiffs, which Rule 34 does not require.  For these reasons, this

11  request is not proportional to the needs of the case. The request is further unduly

12  burdensome and not proportional because it is duplicative of Request No. 2.  Indeed, "a

13  party need not produce the same electronically stored information in more than one form."

14  Fed.R.Civ.P. 34(b)(2)(E)(iii).

15       Without waiving objections, *see* CGAR Reports for the period of January 2020 to

16  the present produced natively ~~herewith~~ at ADCRR00069766-69935. *See also* CGARs for

17  June 2021 produced in native format ~~herewith~~ at ADCRR00136030-136542.

18       **REQUEST NUMBER 23:** Monthly HEALTH CARE staffing variance reports (*see*

19  Request Number 4) in Microsoft Excel format, from January 1, 2020, to the present.

20       OBJECTION:   To the extent Plaintiffs request that Defendants produce this

21  document in a different format than Microsoft Excel in response to Request No. 4,

22  Defendants object as they are not required to produce the same electronic document in more

23  than one form.   Fed.R.Civ.P. 34(b)(2)(E)(iii).

24       Without waiving objections, *see* Variance Reports for May through July 2021

25  produced in native format ~~herewith~~ at ADCRR00069737-69739. *See also* Variance Report

26  for August 2021 produced in native format ~~herewith~~ at ADCRR00137140.

27

28

**REQUEST NUMBER 24:**  DOCUMENTS SUFFICIENT TO SHOW population and census projections for all ten ASPCs, that have been made from January 1, 2020, to the present.

OBJECTION:  Relevance.

Without waiving objections, *see* ADCRR Inmate Net Growth Projections produced ~~herewith~~ at ADCRR00061547-61552. *See also* ADCRR Inmate Net Grown Projections produced in native format ~~herewith~~ at ADCRR00137141.

**REQUEST NUMBER 25:**  DOCUMENTS SUFFICIENT TO SHOW annual work hours and days off that are available to HEALTH CARE employees based upon their classification level, and their years of employment with CENTURION.

OBJECTION:  Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as this request is not limited in time.

Without waiving objections, *see* relevant portions of 2020 Centurion Employee Handbook produced ~~herewith~~ at ADCRR00061539-61546.

**REQUEST NUMBER 26:**  DOCUMENTS SUFFICIENT TO SHOW for each ASPC and HOUSING UNIT, the number of Health Needs Requests (HNRs) submitted by class members, broken down by whether the request sought medical care, dental care, mental health care, pharmacy services, or any other categories.

OBJECTION:  Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as this request is not limited in time.

Without waiving objections, *see* Clinical Data Reports from January 2020 through August 2021 and Dental Statistics from February 2020 through August 2021 produced in native format ~~herewith~~ at ADCRR00069938-69974.

**REQUEST NUMBER 27:**  DOCUMENTS SUFFICIENT TO SHOW for every ASPC and each clinic within an ASPC, the monthly number on-site HEALTH CARE encounters from January 1, 2020, to the present:

    1.      Medical physician encounters (i.e. non-psychiatric Medical Doctor or Doctor of Osteopathy);

2.    Advanced practice provider encounters (i.e. non-psychiatric Nurse Practitioner or Physician Assistant)

3.    Registered Nurse encounters (excluding visits during which only medications are administered)

4.    Licensed Practical Nurse encounters (excluding visits during which only medications are administered)

5.    Certified Nursing Assistant encounters (excluding visits during which only medications are administered)

6.    Psychiatrist encounters (Medical Doctor or Doctor of Osteopathy)

7.    Mental health advanced practice provider encounters (i.e., psychiatric Nurse Practitioner or Physician Assistant)

8.    Psychologist encounters

9.    Psychology associate encounters

10.   Dentist encounters

11.   Dental hygienist visits

12.   Prescriptions

13.   Lab specimens processed

14.   Diagnostic images processed

15.   On-site specialty encounters, and type of on-site specialty

16.   Medication administration encounters (not otherwise included in other visit types above; one visit per interval regardless of medication doses administered)

17.   Medication doses administered (i.e., one administration per medication per dosing interval)

OBJECTION:  Vague and ambiguous as to "prescriptions" and "medication doses administered" as it is unclear what Plaintiffs are requesting since this Request is limited to "encounters."

1   Without waiving objections, ~~to the extent responsive documents exist, Defendants~~
2   ~~will supplement~~. *See* documents previously produced in response to Request No. 26 above
3   and documents produced in native format ~~herewith~~ at ADCRR00137153-137155.

4   **REQUEST NUMBER 28:**  DOCUMENTS SUFFICIENT TO SHOW for each
5   ASPC, from January 1, 2020, to the present, on a monthly basis, all intakes to the ASPC
6   from a non-ADCRR location, and all releases from custody (excluding temporary
7   departures for court appearances or off-site HEALTH CARE).

8   OBJECTION:  None.  *See* ADCRR's website where this data is available and
9   reported at the *Corrections at a Glance* (https://corrections.az.gov/reports-
10  documents/reports/corrections-glance).

11  **REQUEST NUMBER 29:**  DOCUMENTS SUFFICIENT TO SHOW for each
12  ASPC, from January 1, 2020, to the present, on a monthly basis, all transfers into the ASPC
13  from another ASPC (or private prison contracted with Defendants), and all transfers out of
14  the ASPC to another ASPC (or private prison contracted with Defendants).

15  OBJECTION:  None.  To the extent responsive document exist, Defendants will
16  supplement.

17  **REQUEST NUMBER 30:**  All Corrective Action Plans ("CAPs") created by
18  CENTURION to respond to noncompliant findings on monthly CGAR reports, from
19  January 2020, to the present.

20  OBJECTION:  None.  *See* Defendants' Responses to Request Numbers 2 and 22.
21  *See also* CGAR reports with CAPs produced ~~herewith~~ at ADCRR00114791-126199.

22  **REQUEST NUMBER 31:**  All internal quality assurance audits, studies, reports, or
23  analyses related to the provision of HEALTH CARE created by CENTURION or ADCRR
24  from January 1, 2020, to the present.

25  OBJECTION:  None.  *See* Defendants' Response to Request Number 3.  *See also*,
26  CQI Meeting Minutes produced ~~herewith~~ at ADCRR00098881-108086.  *See also* CQI
27  Meeting  Minutes  produced  ~~herewith~~  at  ADCRR00139237-00139376;  and
28  ADCRR00148470-00148896.

**REQUEST NUMBER 32:**  DOCUMENTS SUFFICIENT TO SHOW the current version of CENTURION's formulary of prescription medications.

OBJECTION:  None.  ~~To the extent responsive documents exist, Defendants will supplement.~~  *See* documents produced ~~herewith~~ at ADCRR00096790-96819.

**REQUEST NUMBER 33**:  DOCUMENTS SUFFICIENT TO SHOW all CENTURION and ADCRR policies and procedures that are or have been used related to the delivery of HEALTH CARE to class members from January 1, 2020 to the present, including but not limited to ensuring that class members of every security level, including persons housed in maximum custody, DETENTION UNITS, and MENTAL HEALTH WATCH have access to HEALTH CARE.

OBJECTION:  Vague, ambiguous, overbroad, and unduly burdensome as to "related to the delivery of health care" and "all . . . policies and procedures" as it is not tailored to the narrow claims in Plaintiffs' Complaint and as such encompasses irrelevant information. Due to the breadth of this request, it requests irrelevant information that is not proportional to the needs of the case.

Without waiving objections, *see* publicly available ADCRR Department Orders and Technical Manuals for Mental Health and Medical Services at ADCRR's website (https://corrections.az.gov/).  *See also* NCCHC standards, ACA standards.  For in-patient units, see licensing requirements of the Arizona Department of Health Services.

**REQUEST NUMBER 34**:  DOCUMENTS SUFFICIENT TO SHOW the chain of command for the Utilization Management process used by CENTURION to evaluate providers' requests for SPECIALTY CARE, and DOCUMENTS SUFFICIENT TO SHOW ADCRR's role in the review and approval of SPECIALTY CARE referrals or requests.

OBJECTION:  None. *See* documents previously produced at ADCRRM0019586-19587.  *See also* documents produced at ADCRR00172089-172091.

**REQUEST NUMBER 35:**  DOCUMENTS SUFFICIENT TO SHOW why CENTURION Utilization Management recommended an alternative treatment plan for all

14

1  SPECIALTY CARE referrals or requests made on or after January 1, 2021, that were
2  assigned an alternative treatment plan.

3      OBJECTION: Overbroad, unduly burdensome, and not proportional to the needs of
4  the case as responding to this request would require someone to review each individual
5  inmate chart who received an alternative treatment plan and create a document that
6  evidences why.  To illustrate the burden, as of January 1, 2021, there were 1800 alternative
7  treatment plans in effect.  Moreover, Rule 34 does not require Defendants to create
8  documents.  Without waiving these objections, no responsive documents exist.

9      **REQUEST NUMBER 36:**  DOCUMENTS SUFFICIENT TO SHOW all
10  specialists currently contracted with CENTURION and/or ADCRR to provide
11  SPECIALTY CARE to class members, the medical specialty provided, and which ASPCs
12  are served by that the specialist; and each contract or agreement that has been executed
13  between ADCRR or CENTURION and any agency, entity, or contracting individual to
14  provide SPECIALTY CARE to class members.

15      OBJECTION:  None.  *See* list of specialists currently contracted produced ~~herewith~~
16  at ADCRR00046154-46157.

17      **REQUEST NUMBER 37:**  DOCUMENTS SUFFICIENT TO SHOW how many
18  total off-site SPECIALTY CARE encounters were completed on a monthly basis for each
19  ASPC, from January 1, 2020, to the present.

20      OBJECTION:  None. *See* list of offsite specialty appointments produced ~~herewith~~ at
21  ADCRR00046158-56159.

22      **REQUEST NUMBER 38:**  All grievances submitted by class members at all
23  ASPCs from January 1, 2021, to the present regarding HEALTH CARE, and all responses
24  to the grievances.

25      OBJECTION:  None. *See* grievances submitted by class members at all ASPCs and
26  all responses to the grievances produced ~~herewith~~ at ADCRR00046160-50552.

27      **REQUEST NUMBER 39:**  For each ASPC, the monthly telepsychiatry log, and
28  DOCUMENTS SUFFICIENT TO SHOW all class members for whom a telepsychiatry

contact occurred from January 1, 2020, to the present, including patient name, ADC number, LOCATION UNIT, and date of the telepsychiatry contact.

OBJECTION:  None.  To the extent responsive documents exist, Defendants will supplement.  *For in-patient units, see licensing requirements of the Arizona Department of Health Services.*

**REQUEST NUMBER 40:**  For each ASPC, the monthly self-harm log, and DOCUMENTS SUFFICIENT TO SHOW all class members who engaged in self-harm during the month and whether it was classified a suicide attempt or self-injurious behavior, from January 1, 2020, to the present, including patient name, ADC number, LOCATION UNIT, and date of the act(s) of self-harm.

OBJECTION:  None.  Inmate assault, self-harm and mortality data is publicly available on ADCRR's website (https://corrections.az.gov/reports-documents/reports/inmate-assault-self-harm-mortality-data).  To the extent additional responsive documents exist, Defendants will supplement.

**REQUEST NUMBER 41:**  All CENTURION or ADCRR policies, procedures, and other DOCUMENTS pertaining to the mission, operation, and staffing of any and all specialized mental health housing units in each of the ten ASPCs.

OBJECTION:  Vague and ambiguous as to "mission, operation, and staffing" and "specialized mental health housing units."  Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as this request is not limited in time.

Without waiving objections, *see* Defendants' Response to Request 33.

**REQUEST NUMBER 42:**  All DOCUMENTS related to policies or directives regarding the duration of mental health encounters, and all DOCUMENTS SUFFICENT TO SHOW the actual duration of mental health encounters, from October 1, 2019, to the present.

OBJECTION:  Overbroad and unduly burdensome as responding to this request would require someone to review each mental health encounter for every inmate (some of which are seen multiple times a day) for an approximate three-year time period and calculate

a percentage.  Rule 34 does not require Defendants to undergo such calculations.  Without waiving these objections, to the extent responsive documents exist, Defendants will supplement.  Without waiving objections, *see* ADCRR00150470-00150472.  ***See also, Monitor Guide.*** ~~produced herewith~~.

**REQUEST NUMBER 43:**  DOCUMENTS SUFFICIENT TO SHOW all HEALTH CARE STAFF and CORRECTIONAL STAFF who are proficient in a non-English language, their classification, their regularly assigned location and hours, what language(s) they are proficient in, and when and how their proficiency in each language was last evaluated.

OBJECTION:  Overbroad, and unduly burdensome as this would require Defendants to interview every staff member and create a document which Rule 34 does not require.  Further, this request is not relevant to the claims in Plaintiffs' Complaint.  Without waiving these objections, no responsive documents exist.

**REQUEST NUMBER 44:**  All DOCUMENTS from January 1, 2020, to the present, regarding the provision of language interpretation for HEALTH CARE encounters, including the identification and documentation of class member English fluency and language needs, how class members are informed of their entitlement to interpreter services, staff training, evaluation and documentation of staff language proficiency, use of audio and video language lines, location of equipment necessary to access audio and video language lines, any HEALTH CARE encounters where interpretation services are not available (such as mental health groups, MENTAL HEALTH WATCH, and cell-side encounters), and any HEALTH CARE encounters that were cancelled or rescheduled due to the unavailability of language interpretation services.

OBJECTION:  Relevance and not proportional to the needs of the case as Plaintiffs' Complaint is devoid of any reference to language interpretation or allegations that Defendants' interpreter services are deficient.  Overbroad and unduly burdensome as responding to this request would require an individual review of each inmate's file or

1  individual interview with each inmate who requested interpretation services for nearly a
2  two-year time period.

3       Without waiving objections, *see* Defendants' Response to Request Number 19.

4       **REQUEST NUMBER 45:**   All Incident Reports from ASPC-Eyman SMU-I,
5  ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, regarding
6  the cancellation of out-of-cell time from January 1, 2020, to the present.

7       OBJECTION:  Vague and ambiguous as to "incident report" as there are numerous
8  reports that are generated after an "incident," none of which are titled "incident report."
9  Because this term is not defined by Plaintiffs, it is unclear which reports they are requesting.
10  Relevance as the request is not limited to maximum custody locations.

11      Without waiving objections, *see* curtailment reports for ASPC-Eyman and ASPC-
12  Florence-Kasson produced ~~herewith~~ at ADCRR00052183-55816.  *See also* curtailment
13  reports for ASPC-Lewis-Rast Max for the period January 1, 2020 through July 19, 2021
14  produced at ADCRR00158783-00158900.

15      **REQUEST NUMBER 46:**   All Incident Reports from ASPC-Eyman SMU-I,
16  ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson reflecting
17  the use of force from January 1, 2021, to the present.

18      OBJECTION:  Vague and ambiguous as to "incident report" as there are numerous
19  reports that are generated after an "incident," none of which are titled "incident report."
20  Because this term is not defined by Plaintiffs, it is unclear which reports they are requesting.
21  Relevance, not proportional to the needs of the case, overbroad, and unduly burdensome as
22  this request exceeds the scope of Plaintiffs' Complaint because this request is not limited to
23  maximum custody inmates or chemical agents.

24      Without waiving objections, *see* maximum custody notebooks previously produced
25  at ADCRRM0031202-32569, ADCRRM0032573-34074. *See also*, Defendants' Response
26  to Request Number 9 above.  *See also* Use of Force Incident Reports from ASPC Florence-
27  Kasson  and  Eyman-Browning  produced  ~~herewith~~  at  ADCRR00148897-00150469.
28  Defendants will supplement this Response as additional documents are received. *See also*

1   Use of Force Incident Packets for ASPC Eyman-Browning, ASPC Lewis-Rast, ASPC

2   Eyman-SMU I and ASPC Florence-Kasson produced at ADCRR00163735-170976 and

3   ADCRR00172037-172088.

4        **REQUEST NUMBER 47:**  All videos and documentation relating to the use of

5   force on persons on MENTAL HEALTH WATCH from January 1, 2021, to the present.

6        OBJECTION:  Vague and ambiguous as to "documentation relating" as the term is

7   not defined by Plaintiffs and it is unclear what Plaintiffs are requesting.  Relevance, not

8   proportional to the needs of the case, overbroad, and unduly burdensome as this request

9   exceeds the scope of Plaintiffs' Complaint because this request is not limited to maximum

10   custody inmates or chemical agents.   Without waiving objections, *see* use of force

11   documents produced for ASPC-Perryville and ASPC-Yuma at ADCRR00158956-

12   00159226.  *See also* use of force documents produced for ASPC-Phoenix and ASPC-

13   Tucson produced at ADCRR00170977-171899 and ADCRR00171991-172036. *See also*

14   responses to RFP 46 which encompass all uses of force for the time period and complexes

15   requested.  *See also* use of force videos for ASPC Eyman-Browning at ADCRR00180135-

16   00180247, ASPC Eyman-SMU I at ADCRR00280248-00180477, ASPC Florence-Kasson

17   at ADCRR00180478-00180646, ASPC Lewis-Rast at ADCRR00180647-00181009, ASPC

18   Perryville at ADCRR00 181010-00181061, ASPC Phoenix at ADCRR00181062-

19   00181161, ASPC Tucson ADCRR00181162-181258, and ASPC Yuma ADCRR00181259-

20   00181267. There were no uses of force involving persons on mental health watch at ASPC

21   Douglas, ASPC Safford or ASPC Winslow for the requested period.

22        **REQUEST NUMBER 48:**  Hiring reports for CORRECTIONAL STAFF at ASPC-

23   Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence

24   Kasson, from August 1, 2020, to the present.

25        OBJECTION:  Vague and ambiguous as to "hiring reports."  Relevance, not

26   proportional to the needs of the case, overbroad as to subject matter.

27        Without  waiving  objections,  *see*  hiring  reports  produced  ~~herewith~~  at

28   ADCRR00055817-56119.

**REQUEST NUMBER 49:**  DOCUMENTS SUFFICIENT TO SHOW determine the salary and benefits packages for all classifications of CORRECTIONAL STAFF.

OBJECTION:  Vague and confusing as to "determine."  Relevance, not proportional to the needs of the case, overbroad as to subject matter.  Without waiving these objections, ~~to the extent responsive documents exist, Defendants will supplement~~ *see* documents produced ~~herewith~~ at ADCRR00088112-88113.

**REQUEST NUMBER 50:**  The current Department Order "DO 804 – Inmate Behavior Control," including all restricted sections and attachments.

OBJECTION:  Relevance as this request exceeds the scope of Plaintiffs' Complaint because this request is not limited to maximum custody inmates or chemical agents. Defendants will produce DO 804 when received with redactions made for security-sensitive and confidential information, as well as information not relevant to the allegations in Plaintiffs' Complaint. Without waiving objections, *see* Department Order 804 – Inmate Behavior Control produced ~~herewith~~ FOR ATTORNEYS' EYES ONLY at ADCRR0009846-98879.

**REQUEST NUMBER 51:**  Daily Post sheets for ASPC-Eyman SMU-I, ASPC-Eyman Browning, ASPC-Lewis Rast Max, and ASPC-Florence Kasson, for the following weeks: Jan. 25-31, 2020; Apr. 18-24, 2020; July 18-24, 2020; Oct. 3-9, 2020; Jan. 9-15, 2021; and the weeks monitored in April, June and July 2021.

OBJECTION:  None.  ~~Defendants will supplement this Response to Plaintiffs' First Request for Production as documents are received.~~ *See* Daily Post Sheets produced ~~herewith~~ at ADCRR00096820-98820.  *See also* Daily Post Sheets produced ~~herewith~~ at ADCRR00141296-00147920.

**REQUEST NUMBER 52:**  Current Post Priority Charts for ASPC-Eyman, ASPC-Lewis, and ASPC-Florence.

OBJECTION:  None.  ~~Defendants will supplement this Response to Plaintiffs' First Request for Production as documents are received.~~ *See* Post Priority Charts produced ~~herewith~~ at ADCRR00098821-98844.

1       **REQUEST NUMBER 53:**  All Duty Post Logs for ASPC-Eyman SMU-I, ASPC-

2   Eyman Browning, ASPC-Lewis Rast Max, ASPC-Florence Kasson and all Detention Units

3   for the second full week of the following months:  July 2019, October 2019, February 2020,

4   July 2020, October 2020, February 2021 and July 2021.

5       OBJECTION:  Relevance, not proportional to the needs of the case, overbroad, and

6   unduly burdensome as the request exceeds the scope of Plaintiffs' Complaint.  ~~Defendants~~

7   ~~will supplement this Response to Plaintiffs' First Request for Production as documents are~~

8   ~~received~~.   Without waiving objections, *see* Duty Post Logs produced ~~herewith~~ at

9   ADCRR00126200-136029.   *See also* Duty Post Logs produced ~~herewith~~ at

10  ADCRR00147921-00148469.  *See also* Duty Post Logs produced for ASPC-Winslow  at

11  ADCRR00158901-00158955.

12      **REQUEST NUMBER 54:**  All policies, procedures, and other DOCUMENTS

13  governing conditions of confinement in ADCRR DETENTION UNITS, including but not

14  limited to out-of-cell time, allowable property, and any limit on the amount of time a person

15  may be continuously housed in a DETENTION UNIT.

16      OBJECTION:  Relevance, vague, ambiguous and overbroad as to "conditions of

17  confinement", not proportional to the needs of the case, and unduly burdensome as to

18  "detention units" and because it is not limited in time.

19      Without waiving objections, *see* Department Order ("DO") 803 – Inmate

20  Disciplinary Procedure, DO 804 – Inmate Behavioral Control (previously produced FOR

21  ATTORNEYS' EYES ONLY at ADCRR0009846-98879), DO 811 – Individual Inmate

22  Assessments and Reviews, DO 903 – Inmate Work Activities, DO 906 – Inmate

23  Recreation/Arts & Crafts, DO 909 – Inmate Property, DO 911 – Inmate Visitation, DO 915

24  -  Inmate Phone Calls, and DO 1101 – Inmate Access to Health Care publicly available at

25  https://corrections.az.gov/reports-documents/adcrr-policies/department-orders-index.

26      **REQUEST NUMBER 55:**  All policies, procedures, and other DOCUMENTS

27  governing MENTAL HEALTH WATCH, including but not limited to out-of-cell time,

28

1  allowable property, and any limit on the amount of time a person may be continuously

2  housed on MENTAL HEALTH WATCH.

3      OBJECTION:  None.  *See* publicly available ADCRR Department Orders and

4  Technical Manuals for Mental Health and Medical Services at ADCRR's website

5  (https://corrections.az.gov/).  *See also*, Department Orders governing mental health watch,

6  including DO 807 – Inmate Suicide Prevention, Mental Health Watches, and Progressive

7  Mental Health Restraints, DO 809 – Earned Inventive Program, DO 811 – Individual Inmate

8  Assessments and Reviews, DO 906 – Inmate Recreation/Arts & Crafts, DO 909 – Inmate

9  Property, DO 911 – Inmate Visitation, DO 915 – Inmate Phone Calls, and DO 1101 –

10  Inmate Access to Health Care publicly available at https://corrections.az.gov/reports-

11  documents/adcrr-policies/department-orders-index.  *See also NCCHC standards, ACA*

12  *standards.  For in-patient units, see licensing requirements of the Arizona Department of*

13  *Health Services.*

14      **REQUEST NUMBER 56:**  DOCUMENTS SUFFICIENT TO SHOW the mean,

15  median, and maximum duration of confinement in ADCRR DETENTION UNITS and

16  MENTAL HEALTH WATCH.

17      OBJECTION:  Relevance, not proportional to the needs of the case, overbroad,

18  unduly burdensome,  exceeds the scope of Plaintiffs' Complaint allegations and the certified

19  subclass.  The "duration of confinement" is not at issue in Plaintiffs' Complaint.  This

20  request is also overbroad, unduly burdensome, and not proportional to the needs of the case

21  as it would require review of  each inmate's individual institutional history and create a

22  document which Rule 34 does not require Defendants to do.  No documents exist that track

23  the mean, median, and maximum duration of confinement as requested.

24      **REQUEST NUMBER 57:**  All videos and DOCUMENTS relating to the uses of

25  force on Rahim Muhammad, 215306, from August 1, 2020, to the present.

26      OBJECTION:  Relevance, exceeds the scope of the Complaint where the request is

27  not limited to chemical-agent use of force.

28      Defendants will supplement this Response as documents are received regarding

whether chemical agent use of force was utilized on this inmate while designated as maximum custody classification. Without waiving objections, *see* documents and videos relating to the use of force on Rahim Muhammad produced at ADCRR00159227-00159982. *See also* additional use of force videos produced at ADCRR00172353-172369.

DATED this 22nd day of October, 2021.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Daniel P. Struck
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on October 22, 2021, I electronically transmitted the attached
document to the following attorneys of record:

3

4    Alison Hardy:              ahardy@prisonlaw.com

     Asim Dietrich:             adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org;
5                               phxadmin@azdisabilitylaw.org

6    Austin C. Yost:            ayost@perkinscoie.com; docketPHX@perkinscoie.com

7    Corene T. Kendrick:        ckendrick@aclu.org

8    Daniel Clayton Barr:       DBarr@perkinscoie.com; docketphx@perkinscoie.com;
                                sneilson@perkinscoie.com
9
     David Cyrus Fathi:         dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org
10
     Donald Specter:            dspecter@prisonlaw.com
11
     Eunice Cho                 ECho@aclu.org
12
     Jared G. Keenan            jkeenan@acluaz.org
13
     John Howard Gray:          jhgray@perkinscoie.com; slawson@perkinscoie.com
14
     Jose de Jesus Rico:        jrico@azdisabilitylaw.org
15
     Karl J. Worsham:           kworsham@perkinscoie.com; docketphx@perkinscoie.com
16
     Kathryn E. Boughton:       kboughton@perkinscoie.com; docketphx@perkinscoie.com
17
     Kelly Soldati              ksoldati@perkinscoie.com; docketphx@perkinscoie.com
18
     Maria V. Morris            mmorris@aclu.org
19
     Maya Abela                 mabela@azdisabilitylaw.org
20
     Mikaela N. Colby:          mcolby@perkinscoie.com; docketphx@perkinscoie.com
21
     Rita K. Lomio:             rlomio@prisonlaw.com
22
     Rose Daly-Rooney:          rdalyrooney@azdisabilitylaw.org
23
     Sara Norman:               snorman@prisonlaw.com
24
     Victoria Lopez:            vlopez@acluaz.org
25

26

27

28

24

1         I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following:

2

3      N/A

                             /s/ Daniel P. Struck