1  Daniel P. Struck, Bar No. 012377
   Rachel Love, Bar No. 019881
2  Timothy J. Bojanowski, Bar No. 022126
   Nicholas D. Acedo, Bar No. 021644
3  STRUCK LOVE BOJANOWSKI & ACEDO, PLC
   3100 West Ray Road, Suite 300
4  Chandler, Arizona  85226
   Telephone:  (480) 420-1600
5  Fax:  (480) 420-1695
   dstruck@strucklove.com
6  rlove@strucklove.com
   tbojanowski@strucklove.com
7  nacedo@strucklove.com

8  *Attorneys for Defendants*

9

                **UNITED STATES DISTRICT COURT**
10
                     **DISTRICT OF ARIZONA**
11

12  Shawn Jensen, et al.,                    NO. CV-12-00601-PHX-ROS

13                          Plaintiffs,

                v.
14                                           **DEFENDANTS' SUPPLEMENTAL**
    David Shinn, et al.,                     **STATEMENT REGARDING**
15                                           **PROPOSED EXPERTS**
                          Defendants.
16

17
         Defendants David Shinn and Larry Gann, through counsel, submit the following
18
    supplemental statement in response to the Court's July 18, 2022 Order (Dkt. 4340)
19
    requesting additional information from the parties.
20
    **I.    Anticipated Time for Review, Availability, and Compensation of Defendants'**
21  **        Proposed Experts**

22         The anticipated length of time required for crafting an injunction and monitoring

23  protocol, availability if appointed, and compensation are listed for each proposed expert

24  below.  However, Defendants and these experts believe that it is premature to estimate the

25  length of time needed for ongoing monitoring of compliance with the injunction.

26         **A.    Dr. David L. Thomas, MD, JD, EDD**

27         Defendants proposed Dr. Thomas to assist with crafting an injunction relating to the

28  following certified claims: (1) failure to provide timely access to health care; (2) failure to

provide timely emergency treatment; (3) failure to (timely) provide necessary medication; (4) insufficient health care staffing; (5) failure to provide care for chronic diseases; and (6) failure to provide timely access to medically necessary specialty care. (Dkt. 4335 at 180; Dkt. 4339 at 1-2.)

Dr. Thomas has no known conflicts that would preclude him from serving as a Court-appointed expert for both crafting and monitoring an injunction as to these areas.  Dr. Thomas's hourly rate is $500.  He estimates that it will take approximately 80 hours to craft the injunction and monitoring protocol.

### B.   Dr. Marc F. Stern, MD, MPH, FACP

Defendants proposed Dr. Stern to assist with crafting an injunction and corresponding monitoring protocol relating to the following certified claims: (1) failure to provide timely access to health care; (2) failure to provide timely emergency treatment; (3) failure to (timely) provide necessary medication; (4) insufficient health care staffing; (5) failure to provide care for chronic diseases; and (6) failure to provide timely access to medically necessary specialty care. (Dkt. 4335 at 180; Dkt. 4339 at 1, 3-4.)

Dr. Stern has no known conflicts that would preclude him from serving as the Court's appointed expert for the anticipated duration of time required to assist with crafting an injunction and monitoring protocol as to these areas or to participate in ongoing monitoring following the issuance of the injunction.  Dr. Stern's hourly rate is $500.  Dr. Stern anticipates that it will take approximately 40-80 hours to craft the injunction and monitoring protocol.

### C.   Dr. Joel A. Dvoskin, Ph.D., ABPP

Defendants proposed Dr. Dvoskin to assist with crafting an injunction relating to the following certified claims: (1) failure to provide mentally ill prisoners medically necessary mental health treatment (i.e., psychotropic medication, therapy, and inpatient treatment); (2) failure to provide suicidal and self-harming prisoners basic mental health care; and (3) inadequate psychiatric monitoring because of chronic understaffing. (Dkt. 4335 at 180; Dkt. 4339 at 4-6.)

2

Dr. Dvoskin has no known conflicts that would preclude him from serving as the Court's appointed expert for the anticipated duration of time required to assist with crafting an injunction and monitoring protocol as to these areas or to participate in ongoing monitoring following the issuance of the injunction.  Dr. Dvoskin's hourly rate is typically $600; however, he is willing to discount his rate to participate in this engagement.  Dr. Dvoskin anticipates working closely with the Court's appointed medical expert(s) to craft the injunction and monitoring protocol and believes that Dr. Stern's estimate of the time needed to do so is reasonable.

### D.    D. Scott Dodrill, MA, BA

Defendants proposed Mr. Dodrill to assist with crafting an injunction relating to the following certified claims: (1) lack of recreation; (2) extreme social isolation; and (3) insufficient nutrition. (Dkt. 4335 at 180; Dkt. 4339 at 6-7.)

But for a tentative out-of-country commitment of 1.5 weeks in the fall, Mr. Dodrill has no known conflicts that would preclude him from serving as the Court's appointed expert for the anticipated duration of time required to assist with crafting an injunction and monitoring protocol as to these areas or to participate in ongoing monitoring following the issuance of the injunction.  Mr. Dodrill's hourly rate is $300. Defendants, in consultation with Mr. Dodrill, anticipate that it will take approximately 80 hours[1] to craft the injunction and monitoring protocol.

## II.    Objections to Plaintiffs' Proposed Experts

Defendants' objections to the qualifications and potential conflicts of interest of Plaintiffs' proposed experts are set forth below. In addition to these objections, Defendants also note that Plaintiffs have not nominated any experts with training and experience in the provision of mental health care to assist the Court with crafting an injunction with respect

---

[1] Mr. Dodrill anticipates the 80 hours estimate to include time to travel to Arizona and tour select maximum custody and detention locations to understand the day-to-day operations associated with food service and facilitation of out-of-cell time, interviews of salient ADCRR officials regarding opportunities for improvement, and crafting injunction language.

1   to the three mental health areas in which the Court found in favor of Plaintiffs.

2        **A.**     **The Honorable Thelton E. Henderson**

3        Plaintiffs propose that the Court appoint Judge Henderson based on his experience

4   as a federal judge in the *Madrid* and *Plata* class action lawsuits involving California state

5   prisons and in *Allen v. City of Oakland*, which consolidated 119 individual lawsuits against

6   the City of Oakland for police misconduct.

7        Defendants assert that the appointment of a retired federal judge to oversee crafting

8   and monitoring an injunction in this case is unnecessary and would not be a judicious use

9   of resources when the Court is more than capable of managing and overseeing any

10  appointed experts.  Additionally, the Court has already developed extensive knowledge

11  regarding the Arizona State Prison system through years of overseeing the parties'

12  Stipulation followed by the recent bench trial.  By contrast, Judge Henderson would have

13  to expend substantial time learning the case history, claims, and evidence presented at trial,

14  as well as reviewing the policies, procedures, practices, and operations of ADCRR relating

15  to provision of medical and mental health care and management of maximum

16  custody/detention status inmates to be able to mediate any disputes between the parties

17  during the process of crafting the injunction and associated monitoring protocol.  Judge

18  Henderson does not possess any technical expertise in the provision of medical or mental

19  health care to inmates or in the administration of maximum custody/detention status out of

20  cell time that would enable him to contribute substantively to the crafting of an injunction

21  and/or monitoring protocol.

22       Finally, Plaintiffs seem to offer Judge Henderson to serve more in the capacity of a

23  receiver.  Defendants submit that such a role is not at issue at this juncture, when the Court

24  just issued its findings, and the Court and the parties have not even begun the process of

25  crafting the injunction and associated monitoring protocol to determine compliance with

26  the injunction.  The Prison Litigation Reform Act ("PLRA") requires that all prospective

27  injunctive relief must be accompanied by findings that the relief is "narrowly drawn,

28  extends no further than necessary to correct the violation of the Federal right, and is the

least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  As such, appointment of a receiver is not appropriate absent a showing that a governmental agency cannot or will not comply with the law, or that doing so is necessary to remedy otherwise uncorrectable violations of the Constitution or laws, none of which is present here.  Furthermore, despite Judge Henderson overseeing *Plata* for nearly two decades in California,[2] the institutional reforms needed to remedy the constitutional violations did not occur, and the State of California has been forced to bear staggering costs.[3]

Because he does not possess substantive expertise in any of the areas in which the Court has found constitutional violations, his contributions would be limited to performing a role that the Court is equally, if not better, situated to fulfill, and appointment of a receiver at this juncture would violate the PLRA, Defendants object to the appointment of Judge Henderson.

## B.    Homer D. Venters

Plaintiffs have proposed Homer Venters to assist the Court with developing an injunction to remedy the constitutional violations the Court found with respect to the provision of medical and mental health care.  Defendants oppose his appointment because Dr. Venters lacks the integrity, experience, and neutrality required to assist the Court as an expert in crafting and monitoring an injunction covering the medical and mental health care of all inmates housed in the ADCRR system.

---

[2] *Plata* was reassigned to Judge Henderson on May 15, 2001, and he oversaw the case until August 14, 2017.

[3] California's annual budget for the provision of health care to inmates is $3.7 billion, which equates to approximately $38,192 per inmate based on the current in-custody population for the California Department of Rehabilitation and Corrections ("CDCR"). (Dkt. 4257, R.T. 11/01/21 PM, 145:5-149:5; CDCR Weekly Report of Population, July 20, 2022, available at https://www.cdcr.ca.gov/research/wp-content/uploads/sites/174/2022/07/Tpop1d220720.pdf (last accessed July 27, 2022).)  If Arizona spent this much per inmate, it would translate to an over $900 million annual budget for health care for ADCRR inmates.

Most troubling, Dr. Venters has been censured by the government for scientific misconduct for intentionally falsifying data in his research.  In 2008, the Federal Register published Findings of Scientific Misconduct based upon an extensive analysis conducted by the Office of Research Integrity and the U.S. Public Health Service ("PHS") into scientific misconduct by Dr. Venters.  (Exh. 1, Federal Register, Vol. 73, No. 238). Specifically, PHS determined that Dr. Venters committed misconduct in science by intentionally and knowingly preparing and including duplicative image data from 1999–2003 in: (1) his fellowship application; (2) a manuscript he published and submitted; (3) the thesis proposal he provided to the dissertation committee; and (4) his dissertation.  (*Id*.) PHS determined that Dr. Venters intentionally falsified the data which constituted an act of scientific misconduct.  (*Id*.)

Additionally, Dr. Venters has proven willing to offer opinions regarding matters for which he has no expertise.  For example, in *Rivera Martinez v. Geo Grp.*, No. ED CV 18-1125-SP, 2020 WL 2496064, at *13 (C.D. Cal. Jan. 23, 2020), the court found "serious questions as to whether Dr. Venters has the expertise to testify regarding use of force, including whether the detainees posed a threat, whether the use of force was in compliance with policy, and what de-escalating actions should have been taken" and determined that a *Daubert* hearing would be necessary during trial on this issue.

Dr. Venters also lacks the experience necessary to serve as an expert in a system as large and complex as the Arizona State Prison system.  Dr. Venters is a physician and epidemiologist who completed a residency in Social Internal Medicine and a fellowship in Public Health Research.  The majority of Dr. Venters' work as an expert to date has been in COVID-19 cases, including several cases in which he has been retained by Plaintiffs' counsel from this case (e.g., *Fenty v. Penzone*, No. CV-20-01192-PHX-SPL (JZB); *Romero-Lorenzo v. Koehn*, No. CV-20-0901-PHX-DJH (DMH)).  According to Plaintiffs, Dr. Venters has served as a "court-appointed health care monitor in litigation regarding correctional facilities in Virginia, California, and the U.S. Virgin Islands."  However, these three engagements involve monitoring on only a very small scale.  In Virginia, Dr. Venters

is engaged as a monitor for the Fluvanna Women's Correctional Center, a facility housing approximately 1,200 female detainees and inmates. In California, Dr. Venters is involved in monitoring the Santa Barbara County Jail, which houses approximately 1,000 male and female detainees, and in the Virgin Islands, he is involved in monitoring two detention facilities with a combined population of around 300 detainees. These assignments are on a vastly different scale and scope than the work that will be involved in crafting an injunction and monitoring compliance with it for a prison system which comprises more than 25,000 inmates at the nine State-operated facilities.

Moreover, Dr. Venters is not a neutral expert. According to his CV, Dr. Venters has testified on behalf of the plaintiff in *all* of the cases in which he has been retained as an expert throughout his career. In the one case he lists on his CV as having served as an expert for the defendants, *Benjamin v. Horn*, 75-cv-00303-LAP, he actually did so as an employee of the defendant department of corrections, not as a retained expert, and submitted two declarations on the limited topic of treatment of heat-related illness in punitive segregation. Dr. Venters is also an advocate against incarceration and published a book entitled, *Life and Death in Rikers Island*, in which he argues that jails are designed and run to create new health risks for prisoners while forcing doctors and nurses into complicity or silence. Dr. Venters also makes a case for closing the Rikers Island Jails.

In short, Dr. Venters is not the sort of reliable, experienced, and unbiased expert that the Court should consider appointing to assist with crafting and monitoring an injunction of this scope and importance.

### C.    Michael Puisis

Dr. Puisis is an internal medicine physician who is no longer engaged in the clinical practice of medicine and appears to now be exclusively working as a hired consultant and advocate. Defendants oppose the appointment of Dr. Puisis because he is not a neutral expert, and based on his work as a monitor in other states, appears to focus more on criticizing prison and medical leadership for perceived shortcomings than on

collaboratively working with them to implement forward-looking strategies to improve the delivery of health care.

For example, Dr. Puisis is critical of the use of private contractors to provide medical care at prisons, stating that "it is almost like a game of attrition, where the companies will take bids for amounts that you just cannot do it.  They figure out how to make money after they get the contract."  *See* Paul von Zielbauer, "As Health Care in Jails Goes Private, 10 Days Can Be a Death Sentence," *New York Times*, Feb. 27, 2005.  Dr. Puisis is on record as opposing incarceration generally, stating at a luncheon co-sponsored by the ACLU, "I would prefer not to incarcerate at all."  *See* Sheila Burt, Are Illinois Inmates Receiving Proper Health Care?, gapersblock.com, Nov. 17, 2009 (last accessed July 26, 2022).  Dr. Puisis is also a donor to The Sentencing Project, which aims to end mass incarceration in the United States.

In Alabama, where he was appointed as a court monitor for the Tutwiler Prison for Women, Dr. Puisis called the prison "decrepit" and referred to the prison's segregation unit as a "dungeon."  *See* Casey Toner, "Sick for a decade: Alabama's prison health care continues to face scrutiny," available at https://www.al.com/news/2014/11/sick_for_a_decade_alabamas_inm.html (last accessed July 26, 2022.)  Not surprisingly given this combative approach, Dr. Puisis admits that at the end of his four-year tenure as monitor, "the quality of care was barely minimal."  *Id.*

In California, where Dr. Puisis was appointed by Judge Henderson to monitor the delivery of medical care in *Plata*, he billed $756,433.18 for his work, including one month in 2013 when he billed $57,621.18.[4]  *See Plata v. Newsom*, 4:01-CV-01351 at Dkt. 3706, 3209, 3206, 3174, 3167, 3159, 3154, 3153, 3149, 3144, 3128, 3120, 3113, 3101, 3091, 3088, 3082, 3077, 3067, 3037, 3026, 3022, 3016, 3009, 3004, 2994, 2970, 2958, 2954, 2947, 2939, 2932, 2915, 2908, 2906, 2904, 2899, 2771, 2753, 2748, 2740, 2728, 2709, 2700, 2668, 2613, 2568, 2545, 2516.  Yet despite 13 years of overseeing the medical care

---

[4] Dr. Puisis was appointed by Judge Henderson in June 2009 and stepped down in February 2022.  *See Plata v. Newsom*, 4:01-CV-01351 at Dkt. 2178, 3784.

system and billing the State of California more than three quarters of a million dollars, Dr. Puisis does not appear to have been effective in delivering systemic change needed to remedy the constitutional violations found by the three-judge panel.

Defendants assert that the Court, inmates in the ADCRR system, and State of Arizona would be better served by appointing an expert who will take a more constructive approach to effecting change within the system.

**D.    Eldon Vail**

Mr. Vail is not a neutral expert.  As Plaintiffs themselves highlight, Mr. Vail has previously served as Plaintiffs' conditions of confinement expert in this very litigation to challenge the conditions of confinement and the use of chemical agent use of force on the subclass.  (Dkts. 949-1, Ex. 1 (under seal); 1104-7, Ex. 14 (redacted); 949-1, Ex. 2 (under seal); 1104-7, Ex. 15 (redacted); 949-1, Ex. 3 (under seal); 1104-7, Ex. 16 (redacted).)  Thus, Mr. Vail is predisposed to bias and is not well situated to assist in crafting an injunction with a fresh and neutral look towards assisting ADCRR in ensuring and proving that maximum custody/detention status inmates are afforded delivery of meals and out of cell time as contemplated by existing ADCRR Department Orders.

Because of his already established negative opinions regarding ADCRR's treatment of the subclass, he also cannot serve as a neutral arbiter of ADCRR's compliance with the injunction that is ultimately crafted. This is especially so where it is well established per his CV that Mr. Vail is an opponent of use of restrictive housing for inmates in American, serves on the board of an inmate advocacy group,  and regularly serves as a plaintiff's expert in corrections litigation.[5]  (Dkt. 4338-1 at 29-38.)  Specifically, Mr. Vail currently serves on the Board of Advisors for Huy, which advocates for Native American inmates during incarceration.  (*Id.* at 29; *see also* https://www.huycares.org/about-us last visited 7/27/22.)  He also has long supported the ACLU in the mission to challenge the use of restrictive housing (or what he deems "solitary confinement" by prison systems. (*See, e.g.,*

---

[5]

9

https://www.aclumontana.org/sites/default/files/field_documents/fall2012final.pdf at 5, last visited 7/27/22; https://mtprnews.wordpress.com/2012/11/15/sally-mauk-talks-with-prison-expert-eldon-vail-about-the-consequences-of-solitary-confinement/ last visited 7/27/22.)

Additionally, since the pendency of this action, at least two courts have declined allow admission of Mr. Vail's expert opinions in conditions of confinement litigation. *See Cody v. City of St. Louis*, No. 4:17-CV-2707 AGF, 2022 WL 2315473, at *5-7 (E.D. Mo. June 28, 2022) (excluding Vail's opinions regarding conditions of confinement related to temperature where the temperature logs relied upon were not reliable indicators of ambient air temperature, and further finding that challenges to Vail's opinions regarding alleged reliance on a biased sample of use-of-force reports and that his opinions regarding access to recreation time failed to fairly represent the relevant records regarding the issue could be challenged on cross examination); *Morgal v. Williams*, No. CV 12-280-TUC- CKJ, 2016 WL 1295132, at *2 (D. Ariz. Apr. 4, 2016) (precluding Vail's opinion regarding correctional officer use of force where the facts were not complex and the jury could utilize common sense to reach a decision).

Defendants assert that the Court, inmates in the ADCRR system, and State of Arizona would be better served by appointing an expert (D. Scott Dodrill) who currently provides critical analysis of prison operations, is backed by decades of FBOP experience, and will take a more constructive and neutral approach to effecting change within the system.

### E.    Martin Horn

Martin Horn should not be appointed as an expert to assist the Court in crafting an injunction and thereafter monitoring for compliance for the same reasons, and more, that Eldon Vail should not be appointed. Like Vail, Mr. Horn has served as an expert witness for Plaintiffs in this litigation, specifically as Plaintiffs' trial expert regarding challenges to the subclass's conditions of confinement and the use of chemical agent use of force. (Dkts. 4130-9 at 42-49; 4130.) Mr. Horn is thus predisposed to bias in Plaintiffs' favor such that

1  any proposed injunction and monitoring of the same thereafter would be skewed in

2  Plaintiffs' favor.

3      Significant pre-existing bias is further demonstrated by Mr. Horn's use of social

4  media to criticize ADCRR before, during, and after trial in this matter - conduct for which

5  at trial, this Court ordered it to stop where the rule of exclusion of witnesses had been

6  invoked by the parties yet Horn was posting about trial testimony of ADCRR witnesses

7  before he took the stand to testify.  (Dkt. 4268, R.T. 11/09/21 at 1466-72; Ex.2, Horn social

8  media posts.) Since trial, his social media posts have continued regarding the trial outcome

9  and ADCRR's delivery of medical care.

10      Mr. Horn also cannot serve this Court as a neutral expert to either craft an injunction

11  or monitor it for compliance thereafter where also like Vail, Mr. Horn advocates for the

12  elimination of what he terms "punitive segregation" or solitary confinement in prisons.  (Ex.

13  3, Horn advocacy pieces.)  In his own words at trial, Mr. Horn advocated:  "I take a back

14  seat to no one in my opposition to use – to the use of solitary confinement.  I have written,

15  spoken and worked against it.  I have publicly stated that solitary confinement is never

16  justified in a correctional setting" – a position he has advocated since at least 2014. (Dkt.

17  4268, R.T. 11/09/21 a.m. at 1464-1465.)  Mr. Horn also has been a member of the board

18  for the Fortune Society – an organization with a mission to end what he terms "solitary

19  confinement" in the United States.  (Id. at 1479-1480.)

20      Additionally, at least two courts also excluded Mr. Horn's expert opinions provided

21  in conditions of confinement litigation. *See e.g., Bornstein v. Monmouth Cnty. Sheriff's Off.*,

22  658 F. App'x 663, 670 (3d Cir. 2016) (excluding Horn's offered expert opinion because he

23  does not have the necessary medical knowledge to testify on the standard of care); *Potts v.*

24  *Manos*, No. 11 C 3952, 2017 WL 4365948, at *2-6 (N.D. Ill. Sept. 29, 2017) (excluding

25  Horn's opinions, finding that his experience as an administrator will not assist the jury in

26  deciding whether correctional officers' actions were appropriate where a jury is required to

27  apply constitutional standards, not correctional institution administrator standards and

28

1  further noting that Horn's administration experience did not provide a basis for opining

2  whether correctional officers' actions were excessive).

3       For these reasons, Defendants assert that the Court, inmates in the ADCRR system,

4  and State of Arizona would be better served by appointing an expert (D. Scott Dodrill) who

5  currently provides critical analysis of prison operations, is backed by decades of FBOP

6  experience, and will take a more constructive and neutral approach to effecting change

7  within the system.

8       **F.**   **Dan Pacholke**

9       While Mr. Pacholke served extensively for the Washington State Department of

10 Correction, lacking from his CV is specialized or significant experience in managing

11 maximum custody or detention unit inmates in contemporary times. (Dkt. 4338-1 at 40-48.)

12 Thus, Mr. Pacholke lacks any highlighted experience that would serve this Court in crafting

13 an injunction that targets socialization of maximum custody inmates which is of primary

14 focus for the subclass.

15      Moreover, as demonstrated by his work with the Vera Institute of Justice and writing

16 on the challenge to the use of segregation in prisons, like Vail and Horn, Mr. Pacholke is

17 predisposed to bias in Plaintiffs' favor such that any proposed injunction and monitoring of

18 the same thereafter would be specifically skewed in Plaintiffs' favor. (*Id*. at 42.)  Indeed,

19 the Vera Institute of Justice advocates to end "mass incarceration" in the United States.

20 (*See* https://www.vera.org/who-we-are   and https://www.vera.org/our-strategic-priorities

21 last visited 7/27/22.)  Additionally, absent from Mr. Pacholke's CV submitted to the Court

22 by Plaintiffs is reference to his work as Co-Director of Segregation Solutions, as found in

23 his Linkedin profile, which worked to promote alternatives to segregation. (*See*

24 https://www.linkedin.com/in/dan-pacholke-3ba0a244 last visited 7/27/22.)  Segregation

25 Solutions has also teamed with the ACLU in an effort to combat the use of restrictive

26 housing (or "solitary confinement" as inaccurately termed by the ACLU). (See

27 https://www.alaskasnewssource.com/content/news/DOC-and-ACLU-working-to-reduce-

28 solitary-confinement-428538183.html last visited 7/27/22.)

Because Mr. Pacholke lacks demonstrated specialized experience directly managing maximum custody and detention units in contemporary times and advocates for the reduction or elimination of enhanced security housing programs, he is not appropriately suited to assist this Court in crafting an injunction regarding the subclass claims or monitoring compliance thereafter with a neutral aim in effecting change within the system.

**III.    Defendants' Position on Use of Contempt Fines**

Defendants agree with using the contempt fines currently on deposit with the Clerk of the Court to cover the fees of the appointed experts.

DATED this 27th day of July, 2022.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Rachel Love
Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
3100 West Ray Road, Suite 300
Chandler, Arizona 85226

*Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2
3

     I hereby certify that on July 27, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

4

Alisha Tarin-Herman    atarinherman@perkinscoie.com

5

Alison Hardy    ahardy@prisonlaw.com

6
7

Asim Dietrich:    adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

8

Austin C. Yost:    ayost@perkinscoie.com; docketPHX@perkinscoie.com

9

Corene T. Kendrick:    ckendrick@aclu.org

10

Daniel Clayton Barr:    DBarr@perkinscoie.com; docketphx@perkinscoie.com; sneilson@perkinscoie.com

11

David Cyrus Fathi:    dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

12

Donald Specter:    dspecter@prisonlaw.com

13

Eunice Cho    ECho@aclu.org

14

Jared G. Keenan    jkeenan@acluaz.org

15

John Howard Gray:    jhgray@perkinscoie.com; slawson@perkinscoie.com

16

Karl J. Worsham:    kworsham@perkinscoie.com; docketphx@perkinscoie.com

17

Kathryn E. Boughton:    kboughton@perkinscoie.com; docketphx@perkinscoie.com

18

Kelly Soldati    ksoldati@perkinscoie.com; docketphx@perkinscoie.com

19

Maria V. Morris    mmorris@aclu.org

20

Maya Abela    mabela@azdisabilitylaw.org

21

Rita K. Lomio:    rlomio@prisonlaw.com

22

Rose Daly-Rooney:    rdalyrooney@azdisabilitylaw.org

23

Sara Norman:    snorman@prisonlaw.com

24

Sophie Jedeikin Hart    sophieh@prisonlaw.com

25

Victoria Lopez:    vlopez@acluaz.org

26
27
28

1

        I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

2

3

        N/A

4

                                        /s/ Rachel Love                                       

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28