**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| Shawn Jensen, et al., on behalf of themselves and all others similarly situated; and Arizona Center for Disability Law, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12-cv-00601-ROS |
| vs. | ) ) ) | Phoenix, Arizona August 4, 2022 |
| David Shinn, Director, Arizona Department of Corrections, Rehabilitation and Reentry; and Larry Gann, Assistant Director, Medical Services Contract Monitoring Bureau, Arizona Department of corrections, Rehabilitation and Reentry, in their official capacities, | ) ) ) ) ) ) ) ) ) ) ) | 10:47 a.m. |
| Defendants. | ) ) | |

_____ )

**BEFORE:   THE HONORABLE ROSLYN O. SILVER, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**TELEPHONIC STATUS HEARING**

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                        **A P P E A R A N C E S**

2    For the Plaintiff:

3        PRISON LAW OFFICE
         By:  **Mr. Donald Specter, Esq.**
4             **Ms. Alison Hardy, Esq.**
              **Ms. Rita Lomio, Esq.**
5        1917 5th Street
         Berkeley, California 94710
6

7        ACLU NATIONAL PRISON PROJECT
         By:  **Ms. Corene T. Kendrick, Esq.**
8             **Ms. Maria V. Morris, Esq.**
         915 15th Street N.W., 7th Floor
9        Washington, D.C. 20005

10

11       ARIZONA CENTER FOR DISABILITY LAW
         By:  **Ms. Maya Abela, Esq.**
         177 North Church Avenue, Suite 800
12       Tucson, Arizona 85701

13

14   For the Defendant:

15       STRUCK LOVE BOJANOWSKI & ACEDO, PLC
         By:  **Mr. Daniel P. Struck, Esq.**
16            **Ms. Rachel Love, Esq.**
              **Mr. Timothy J. Bojanowski, Esq.**
17       3100 West Ray Road, Suite 300
         Chandler, Arizona 85226
18

19

20

21

22

23

24

25

                        UNITED STATES DISTRICT COURT

<u>**P R O C E E D I N G S**</u>

COURTROOM DEPUTY:  Court is now in session, the Honorable Roslyn O. Silver presiding.

This is CV 12-601, Jensen v Shinn, on for telephone conference.

Counsel, please announce your appearances.

THE COURT:  For the plaintiffs, who is on the line?

MR. SPECTER:  Thank you, Your Honor.  This is Donald Specter from the Prison Law Office for the plaintiffs, and with me from my office are Alison Hardy and Rita Lomio.

MS. KENDRICK:  Good morning, Your Honor.  This is Corene Kendrick from the ACLU National Prison Project, with me is Maria Morris.

THE COURT:  Thank you.

MS. ABELA:  Good morning, Your Honor.  Maya Abela for the Arizona Center for Disability Law.

THE COURT:  Thank you.  Is that it for plaintiff?

(No response.)

THE COURT:  All right.  And who is on the phone for the defendants?

MR. STRUCK:  Your Honor, this is Dan Struck, and Rachel Love and Tim Bojanowski are also on the phone.

THE COURT:  Okay.  And that's it, correct?

MR. STRUCK:  Yes, Your Honor.

THE COURT:  I'm sorry.  Who else?

1              A VOICE:  Dr. Stern is here too.

2              THE COURT:  Yes, I was about to ask.

3              And, Dr. Stern, you're on the line?

4              DR. STERN:  I am, Your Honor.  Good morning.

5              THE COURT:  All right.  Thank you for setting aside

6    your time to speak with us today.

7              Now, we have a number of issues to undertake, and

8    that's why I have ordered a status conference here.

9              The first is, I believe, and let me make this clear,

10   that no one has an objection to using the $2 million which is

11   now in the treasury that was -- that are the fines, or

12   represent the fines that were ordered to be paid by the

13   defendants.

14              Is that correct, defendants?

15              MR. STRUCK:  That's correct, Your Honor.

16              THE COURT:  Okay.  Plaintiffs?

17              MR. SPECTER:  No objection, Your Honor.  Although we

18   don't believe that that has to be the solo amount that's due to

19   -- for these expenses if the $2 million doesn't cover those

20   expenses.

21              THE COURT:  I agree.  All right.

22              The second issue is I am not prepared to consider, at

23   this time, a receivership.  That doesn't mean it's off the

24   table forever in this case, but not now.

25              All right.  And one issue, and we're going to

1   undertake this with Dr. Stern, is whether or not the expert who

2   is appointed is to only craft or help me craft the order for

3   remediation of my final order in this case, or whether or not,

4   in addition, the expert is to assist the Court in monitoring.

5          All right.  I'm not sure we can answer that at this

6   time, but I will say that my understanding of reading the Plata

7   opinion and the Rasho opinion from the Seventh Circuit is that

8   the individual who acted as an expert did both.

9          All right.  So, now, Dr. Stern is here.  And I

10  understand that there is a tentative agreement between the

11  plaintiffs and the defendants to use Dr. Stern as the expert to

12  at least remediate, or to craft a remediation order.

13         Am I correct?  Let me ask the plaintiffs.

14         MR. SPECTER:  Yes, Your Honor.

15         THE COURT:  And the defendants?

16         MR. STRUCK:  Yes, Your Honor.

17         THE COURT:  Okay.  And, Dr. Stern, are you able to do

18  so?  I understand what your fee would be as a matter of the

19  hourly fee, but are you able to do this project?

20         DR. STERN:  I believe so, Your Honor.  I think there

21  is a little bit of uncertainty in my own mind as to what this

22  entails, but it sounds like it's -- I mean, it ends with your

23  writing an injunctive order, and that sounds like it's pretty

24  circumscribed, so the answer is yes.

25         THE COURT:  Okay.  So, with respect to the monitoring,

1    we'll take that up.

2         Let me ask you.  Once we -- I'm able to issue the

3    order in conjunction with my decision, would you be able to

4    assist the Court and counsel in monitoring?

5         DR. STERN:  I'll give you two answers.  The first

6    answer, just as far as my time goes, is probably not -- and

7    also we're talking about the medical part as opposed to the

8    other two parts, medical and mental health, because I just

9    think that's going to take a lot of time and I don't think I

10   have that on my -- on my schedule.

11        But I think the second thing to keep in mind is that

12   there may -- the people that you -- who do the monitoring may

13   very well be different, a different level of people who help

14   write it.  In other words, I'll use mental health for an

15   example.  You don't necessarily need a psychiatrist to help

16   craft the injunctive order.  It could be a psychologist, for

17   example, because they don't have to be well versed in actual

18   medication prescription.  However, when you get into the

19   monitoring phase, there are going to be certain parts of the

20   monitoring that definitely require somebody with prescriptive

21   ability, like a psychiatrist.

22        With regard to the medical monitoring, there are a lot

23   of measures or monitoring that can be done by even a nurse or

24   maybe even a nonprofessional person, but though there will

25   always be some components that will require professional

1    judgment.  On the other hand, again, writing an injunctive

2    order will require a higher level.

3            So those are the two parts of the answer as far as I

4    go and as far as generically as the person who -- the people

5    who do both.

6            Is that helpful?

7            THE COURT:  It is, yes, but I still have questions.

8            It seems that you have mentioned, appropriately, that

9    there are -- may well be a group of people that would be better

10   able to monitor.  But are you saying that you couldn't review

11   what they've done to monitor and then provide something to

12   counsel and the Court?

13           Do you not have the time for that?

14           DR. STERN:  Probably not, Your Honor.  I believe,

15   leave the door open for the possibility depending on -- because

16   it may be awhile before we get there.  But let's say the most

17   conservative answer would be probably not.

18           THE COURT:  Okay.  Then that's something that may well

19   be significant.  I'm going to assume that the defendants -- so

20   far their response to my order by, at least I can't tell who,

21   but from the state, appears that they wish to cooperate and

22   that they are going to act in good faith.  But, if they do not,

23   then the question is the consequences.

24           But we are not going to engage in another seven-year

25   discovery of whether or not there is compliance.  And I am sure

1    the defendants do not want that either.  Defense counsel

2    definitely doesn't want to do that.  So I'm just leaving you

3    with that thought.

4         Now, let me go back to Dr. Stern.  I understand that

5    you are comfortable with determining, or helping me and helping

6    counsel, draft the order, the injunction for medical, but maybe

7    not for the other two, which is maximum custody and mental

8    health.

9         Am I correct?

10        DR. STERN:  Yes.  Especially if you were entertaining

11   the possibility of a receivership, that would be a pretty

12   short -- a pretty short order and I don't know that a whole lot

13   of expertise in the other two domains would be necessary,

14   though it might be.  But if we're getting a little bit --

15        If you're not doing a receivership, then I'm going to

16   assume that the order is going to require more detail.  And I

17   think it would be advisable to at least have the experts of the

18   two other domains of the case available.  I mean, I think --

19   I'm happy to participate in all three domains, but I think it

20   would be wise to have expertise for the other two.

21        THE COURT:  Okay.  As I mentioned, I'm not prepared to

22   consider a receivership at this time.  So I need somebody to do

23   an in-depth study, and you have already done so, which makes

24   you an attractive expert, and I need it for all three.  As you

25   know, I spent a lot of time in my order on all three not just

1    the medical.

2         Do you have somebody in mind that you could rely on

3    for the other two?

4         DR. STERN:  I -- short answer, yes.  I've looked over

5    the CVs of the experts recommended by plaintiffs and defendants

6    for mental health and custody.  I think there are a couple

7    within there that would work.  The ones that I would gravitate

8    towards are ones who are recommended by the plaintiffs, and I

9    expect that the defendants are going to object to them.  So

10   I've looked beyond people who are recommended by the defendants

11   and plaintiffs, and I believe I can -- I can find some in

12   there.

13        I've spoken to two already with regard to mental

14   health who would be interested and willing.  One we're not --

15   for one of them, we're not sure how much time she would have.

16   It would depend on what we're -- what the Court is envisioning

17   for the order itself, but the other one is available.

18        Actually, I'll just mention, the other one is the

19   psychologist who helped me with my first report, and I believe

20   you actually appointed officially.  And then there are a couple

21   of folks in the custody realm who I have not reached out to but

22   I would anticipate that I would find somebody acceptable.

23        THE COURT:  Okay.  So, if I understand what you're

24   saying, is that you are going to suggest somebody for mental

25   health that may not have been on either of the parties' lists,

1    correct?

2           DR. STERN:  Well, for both of them, Your Honor, both

3    for mental health -- let me say, for mental health and custody,

4    for example, let's just use names, I thought that Dr. Stewart

5    for mental health and Mr. Horn for custody would make sense to

6    use.  The Court thought that their testimony was credible and

7    they already know the case pretty well.  But I also expect that

8    the defendants would object, which is why I can also look

9    outside of the list that the two parties recommended.

10          THE COURT:  Okay.  Do you have somebody in mind now

11   that you can -- this will expedite this whole process, as I

12   would like to make an appointment as soon as possible.  Can you

13   give us the names for the other individuals that you have in

14   mind?

15          DR. STERN:  So, yes, for mental health, I can offer

16   Dr. Abplanalp.  It's always hard to pronounce his name.  Let me

17   -- give me one second to find the spelling, but he's also known

18   to the Court.  Hang on.

19          So the first name is Bart, and his last name is

20   Abplanalp.

21          THE COURT:  Can you spell his last name, please?

22          DR. STERN:  A-P-B -- I'm sorry.  Start again.

23   A-B-P-L-A-N-A-L-P.

24          THE COURT:  Okay.  And what's his background?

25          DR. STERN:  He is a psychologist.  He direct -- he's a

1   regional director for psychology in the Washington State

2   Department of Corrections, and he served as my assistant as a

3   706 expert before this Court.

4           THE COURT:  All right.  So that's somebody that we all

5   should be familiar with.  Did you mention --

6           DR. STERN:  Correct.

7           THE COURT:  -- him in your report, or did you -- when

8   you were doing your evaluation at the Department, did you bring

9   him there so that everybody was aware that you were using him?

10          DR. STERN:  I did mention him in my report.  I

11  believe, and somebody correct me if I'm wrong, that you

12  actually appoint -- that you cited him and appointed him as my

13  assistant.  I do not believe he was ever on site.  I could be

14  wrong.

15          THE COURT:  Okay.  And that's for mental health,

16  correct?

17          DR. STERN:  Correct.  That's correct.

18          THE COURT:  And do you have somebody in mind for

19  maximum custody?

20          DR. STERN:  Within the list of the parties or outside

21  of the list?

22          THE COURT:  Outside.

23          DR. STERN:  Yes, I have two folks in mind, but I have

24  not spoken with them so I wouldn't give -- I don't think it

25  makes sense to give you their names until I have.

1          THE COURT:  Okay.  And can you at least tell us what

2    their backgrounds are, without the names?

3          DR. STERN:  Sure.  One of them is an assistant

4    administrator, like a deputy secretary for department of

5    corrections, and the other is an experienced jail administrator

6    and oversees a number of jails now.

7          THE COURT:  Okay.

8          DR. STERN:  And I guess I would just -- just in case

9    you're wondering, and this is something certainly we can

10   discuss, but I think the issues that come up in the custody

11   part of this case are certainly seen within -- in a prison

12   system, but they're very parallel to the issues that come up in

13   a jail, so I don't think that that's an issue.  The parties

14   might disagree.

15         THE COURT:  Okay.  All right.  Well, on that subject,

16   then I'm going to ask you -- I'm not sure I have the authority

17   to order you -- to contact these individuals.  And I guess you

18   said you already talked to the mental health expert.

19         DR. STERN:  Correct.

20         THE COURT:  And he is willing to assist you?

21         DR. STERN:  Correct.

22         THE COURT:  All right.  So, if you can -- today is

23   Thursday -- by Monday confirm that and provide his resumé,

24   curriculum vitae, to the Court, or submit it to the Court, and

25   I will provide it then to both counsel.

1          Can you do that by Monday?

2          DR. STERN:  Yes, I can.

3          THE COURT:  And then with respect to the maximum

4     custody issue, would you -- can you contact the individual you

5     have in mind, or the two, and find out if they are available?

6          DR. STERN:  I will do that too.  And I should be able

7     to accomplish that by Monday, but there is a chance, if they're

8     on vacation, that may take a little bit longer, but I will

9     endeavor to get it done by Monday.

10          THE COURT:  Okay.  And, of those two individuals,

11     select -- if they both can do it, select only one and submit

12     that name and the background.

13          DR. STERN:  Okay.

14          THE COURT:  Okay.  And, as you have considered this,

15     and I'm quite aware that you have read the order, how much time

16     do you think this would take, Dr. Stern?

17          DR. STERN:  I'm uncertain, Your Honor, because I think

18     it's going to require a little bit more discussion with you to

19     see what, among other things, what's possible, and what an

20     order like this would look like, and how it differs from just

21     generating another set of performance measures.  Because I'm

22     assuming that that's not something that -- or maybe not -- that

23     you would want to do, that it's something -- that you're going

24     to order something more prescriptive.  And I -- I need to have

25     a better idea of that, and I think that's going to take some

1    discussions to understand that.

2          But the short answer to your question is I believe it

3    can be done within the time frame, but if there is an

4    uncertainty, it depends on what the order is going to look like

5    and how detailed, how in the -- I don't want to say in the

6    weeds -- but how detailed it's going to be.  In other words, is

7    it going to get down to the level of performance measures, in

8    that case, I think it will take longer, or is it going to be a

9    higher level order and the performance measures come at a later

10   stage.

11         THE COURT:  I'm not sure about that at this time.  I

12   would have to confer with you quite a bit about that.

13         The idea is to get the order out, to make it as clear

14   as possible.  And then the issue of monitoring, I'll have to

15   undertake at another time, how we're going to do that, with the

16   assistance of both counsel.

17         The performance measures, the problem with performance

18   measures is clear to everybody from the last seven years.  It's

19   very hard to draft them, but it is better to be more detailed

20   than to be vague or -- not vague, but general, because that's

21   going to give whoever is the monitor an idea about whether or

22   not there is compliance.

23         So, as I mentioned, there are these two cases that

24   have, in fact, used a monitor.  And I am not -- I'm going to

25   have to do some research.  I don't know if talking to the

UNITED STATES DISTRICT COURT

judges or reading a little bit more as to what they crafted for

monitoring will assist me.  But the first thing we need to do

is to issue the order to make it clear precisely what the

Department is to do in the future.  And, of course, everybody

agrees with that.  So --

DR. STERN:  I'm sorry.  Go ahead.

THE COURT:  No.  Go ahead.

DR. STERN:  So it sounds like you're envisioning --

and maybe one of the ways of thinking about this is, I know it

sounds silly, but the number of pages that the order will

occupy.  You know, if this is an order that's 5 to 10 pages

long, that tells me something about what the content is; if

it's, you know, a 50-page order that has that level of detail,

that obviously takes a ton amount of time.

It sounds like you're more towards the former than the

latter in the way you're thinking what the order is going to

look like.

THE COURT:  Well, the problem here -- or the issue

that we confront in this case, in contrast to the other two I

mentioned, at least I think, is this covers the ground of three

different areas, so it's going to be a lengthy order.  It's

going to take more time to craft that order to ensure that the

defendant -- that the Department understands what is to be

accomplished, so it's quite an undertaking and that's an issue.

Let me summarize for counsel and then I will hear your

1    feedback.  So we resolved I'm issuing an order that the

2    $2 million can be used, if necessary, we'll find another source

3    of money -- of funds in order to pay for the expert.

4          And I'm going to appoint Dr. Stern.  And he is going

5    to submit to all of us the names of individuals who are not on

6    the list of either party.  He will give us their backgrounds,

7    and counsel for both sides will have an opportunity to respond

8    as to whether or not they think the two individuals are

9    appropriate for this purpose.  And that will be -- the response

10   will be required on an expedited basis.

11         My sense is that, first, I have to have this order

12   issued.  And then on monitoring, once the order is issued, both

13   the plaintiffs and the defendants know -- will know what is to

14   be done.  And if there is some ambiguity in the order, I'm sure

15   you'll bring it to my attention.

16         The monitoring is something that I will have to

17   undertake.  But most important is the defendants will know and

18   have an opportunity to respond, if there is lack of clarity in

19   that order, as to what the Department is to do.

20         I am not -- and I have said this a number of times, I

21   don't know how many -- but the Court is not in a position, and

22   never should be in a position of running the prison.  That's

23   not my job.  I, obviously, will enforce an order, and that's

24   what I'm doing now, but monitoring this is not up to me.  I

25   need the assistance.  And the assistance comes from an

1   independent individual who will work with the Department and

2   with plaintiffs' counsel to ensure that compliance has been

3   met.

4           So, with all of that in mind, let me ask plaintiffs'

5   counsel, do you have any questions?

6           MR. SPECTER:  Thank you, Your Honor.  This is Don

7   Specter, and after I get done, I'll turn it over to Corene and

8   Maria from the National Prison Project because they are

9   involved in the other -- in the mental health and the solitary

10  confinement issue.

11          I think, from what I understand Dr. Stern saying, is

12  that there is a tension between issuing an order that is

13  detailed, which takes longer amount of time, and one which is

14  more general.  I think, in our experience, there is room for

15  both of those -- both of those things to be accomplished

16  depending upon the subject matter.  And I will give you

17  examples, but I think Dr. Stern probably is aware of those

18  issues, and we can work with him to try and construct an order

19  which -- in which both are true.

20          For some things I think it's absolutely necessary to

21  have a fair degree of specificity in order for it to be

22  monitored properly.  In other things there may be a place for

23  more general language.  And it's really hard to do -- to speak

24  about this in the abstract, because it really depends on the

25  content that we're talking about.  And I think if the Court is

1   -- believes this idea is correct, I think the appropriate thing

2   to do is to work with Dr. Stern and craft an injunction along

3   those lines.

4           THE COURT:  Okay.  Mr. Struck.

5           MR. STRUCK:  Yes, Your Honor.  The --

6           THE COURT:  Wait.  I'm sorry.  I need to go back.

7           Did you -- who else did you say was going to speak

8   about this issue, Mr. Specter?

9           MR. SPECTER:  Ms. Kendrick and/or Ms. Morris.

10          THE COURT:  Okay.  Ms. Kendrick.

11          MS. KENDRICK:  Yes, Your Honor.  I don't have anything

12  to add to what Mr. Specter said other than we would just want

13  to note for the record that as you are working with Dr. Stern

14  to craft this order, plaintiffs do not object to the two of you

15  having ex parte meetings, phone calls, or the like.  Just --

16  just wanted to make sure we got that on the record about our

17  position on that, that we support the two of you doing that and

18  do not need to be present for when you're conferring on it.

19          THE COURT:  Okay.  Let me -- yes, that was an issue

20  previously, or at least generally.  There was -- by the way,

21  there is two responses on that issue.

22          First of all, as I reread the report of Dr. Stern,

23  what he did, which was valuable to me, and I expect to both

24  counsel because you have an agreement -- agreed concerning

25  Dr. Stern, is that he engaged in dialogue with individuals at

1   the Department.  So it seems to me that he has to be able to do

2   that and take notes, copious notes, or that both counsel have

3   to be present, or someone has to be present in order to make

4   sure that he's able to do that.  Now, maybe that's not

5   necessary to have anyone present, I think he did it without

6   having both counsel present, but that's going to be very

7   important.  Otherwise it's just not going to make any sense,

8   it's going to take too much time if somehow everything that he

9   does requires counsel to be present.  A meaningful dialogue by

10  Dr. Stern is essential.

11        Now, in terms of -- I was going to raise this issue of

12  my speaking to Dr. Stern privately.  I don't see how I can

13  possibly craft this order without conversations with Dr. Stern.

14  And I will keep a record of that.  If necessary, I will have a

15  court reporter about our conversations if that is something

16  that each of you, or anyone is going to require.

17        So, with that in mind, let me ask, Mr. Struck,

18  comments.

19        MR. STRUCK:  Yes, Your Honor.  Yes.  We, as last time

20  when Dr. Stern was appointed as a 706 expert, we don't have

21  objection to him speaking with the folks with the Department so

22  he can get a better idea as to what has changed, perhaps, since

23  the last time he reviewed the medical healthcare delivery

24  system.  We don't have a problem with that.

25        We don't have a -- we also don't have a problem with

1    him having discussions with the Court without counsel present.

2    I think it's -- it would be -- it would take too much time to

3    get everybody together and have counsel present during these

4    discussions.  I just don't think it's necessary.

5            Our concern just is, with respect to this entire

6    process, is to make sure that whatever we end up with is

7    narrowly drawn and no further necessary than to correct the

8    violation of the constitution in the least intrusive means

9    necessary.  That is very important to us, as the Department

10   does not want to end up with an injunction that outlives all of

11   us, as has happened in California.  So that's -- that's the

12   most important thing for us.

13           We certainly are willing and able to cooperate with

14   Dr. Stern and the Court, but we don't want to end up with

15   something that is impossible for the Department to comply with,

16   or becomes a moving target that makes it impossible for the

17   Department to get out from underneath the injunction.  That's

18   the main concern.

19           THE COURT:  And that is a concern for everyone, not

20   just you, Mr. Struck.  But I appreciate, first of all, no

21   objection to having Dr. Stern have a dialogue, or speak with,

22   people at the Department, and no objection to my having ex

23   parte communications with Dr. Stern.  And, of course, as you

24   know, I will keep a record of that.

25           I'm not quite sure what you're saying with respect to

1    the nature of the order.  The order has to be specific.  It

2    can't be general.  I can write a general order right now, the

3    problem is, is that, from your client's perspective, seems to

4    me, your client needs to understand precisely where and what

5    needs to be accomplished in order to comply with the Court's

6    order.

7            And Dr. Stern has worked with both the plaintiffs'

8    counsel and defense counsel, and I also have confidence that he

9    will -- if he has -- and he's done this before, not just for

10   me, not just for this case -- but I have confidence that he

11   will, if he has any questions, he will contact counsel, and

12   hopefully both counsel, if necessary, to ensure that the

13   specificity which is set forth in this order is clear.

14           So let me go back to the plaintiffs.  With what I have

15   said, and that is the issue of -- I think, in particular, I'm

16   not sure, Mr. Specter and Ms. Kendrick, if you addressed the

17   issue about contacting or -- communications with the Department

18   in order to craft this order.

19           MR. SPECTER:  Your Honor, we -- I think we -- well, we

20   agree that Dr. Stern should be able to have ex parte

21   conversations with the Department and defendants' counsel and

22   plaintiffs' counsel, as he deems necessary -- and the Court, as

23   he deems necessary.

24           THE COURT:  Okay.  All right.  You agree,

25   Ms. Kendrick?

1           I think you said yes, so --

2           MS. MORRIS:  Your Honor, this is Maria Morris.

3           Ms. Kendrick had to drop off, but I'm with NPP, and,

4   yes, we agree with that.

5           THE COURT:  All right.  So this is what I intend to do

6   is I will issue an order, first of all.  I'm repeating myself.

7   The $2 million can be used, no objection.  And I don't find a

8   legal objection, by the way, which of course is always of some

9   concern in whether or not this is a fund that can be used for

10  this purpose.

11          If additional funds are necessary, then we'll have to

12  go -- come back and -- or I'll have to find additional funds

13  somewhere.  I don't think I'll have to talk to counsel about

14  that, but I may have to issue an order that additional funds

15  are necessary.

16          Dr. Stern's fee of $500 an hour is reasonable.  I

17  presume, counsel don't have an objection to that.

18          Let me ask, plaintiffs, any objection?

19          MR. SPECTER:  No, Your Honor.

20          THE COURT:  And, Mr. Struck, any objection?

21          MR. STRUCK:  No, Your Honor.

22          THE COURT:  All right.  Then I will not, at this

23  time -- because Dr. Stern has basically said he's not available

24  to monitor -- and that I will have to undertake at another

25  time.  As I mentioned, I may do my own research to determine

1  how those other cases, those two I mentioned, and maybe others,

2  were monitored, so that's not resolved today.

3          But Dr. Stern has said that he is going to consult

4  with two individuals for the other two categories, other than

5  medical, and that's mental health and also maximum custody.  He

6  will provide, hopefully, both those names and their backgrounds

7  on Monday.  Let us know, first of all, whether they can do

8  this, and then, secondly, what their backgrounds are.

9          And in terms of how much time it's going to take, I

10 don't know.  I'm going to spend as much time with Dr. Stern as

11 necessary, and he will spend an appropriate time assisting in

12 crafting this order, but first he has to do, I think, a rather

13 substantial amount of research.

14         He has as, certainly, as a starting point, the order

15 that I issued, which should help.  And this -- you know, my

16 order is based upon the evidence that was presented in October

17 and November -- or November and December.  It may be that there

18 are changes, hopefully positive changes.

19         But that's the starting point, Dr. Stern, and so it's

20 obviously different, but it's -- it is similar to what you did

21 previously in your report.

22         And, Dr. Stern, you and I will -- now that I'm going

23 to appoint you, and I am in this order -- you and I will have

24 an initial, and hopefully your conversation with me and with

25 the two other individuals for the other components of this

1    matter, will have a conversation about what needs to be done.

2    Obviously, you're going to consider it.  You've considered the

3    order already, my order.  And then the other two will need to

4    familiarize themselves with my order, then we will have an

5    initial conversation, probably a lengthy one, as to where you

6    need to go.

7            And you will -- the three of you will tell me what you

8    think you need to do in order to come up with a plan.  And that

9    plan should be as specific as possible so that this case

10   doesn't come back to haunt both parties, that is the

11   plaintiffs, the defendants, and, of course, the Court.

12           Let's see, what else?

13           DR. STERN:  Your Honor, may I?

14           THE COURT:  Yes.

15           DR. STERN:  So there was one thing that you brought up

16   earlier that I want to be sure that you can be specific about.

17   You had raised the issue if we are -- and we are going to have

18   ex parte communication, you and I -- about how formal or how

19   recorded those need to be.

20           I'd like to propose, because I think this is a very

21   complex process that requires candidness and easy

22   communication, and so as we saw as an example today, if we

23   have -- the more formal it is and recorded, the more difficult

24   it's going to be.  And I would like to propose hopefully that

25   -- certainly, that you record the fact that we met, but that we

1   not have to go through the, I'm going to call it, rigmarole of

2   actually recording the words themselves.

3          THE COURT:  No, that's right.  I said I would, you

4   know, I would consider that, if that was -- if that was a

5   problem with counsel.  Appears to be that they don't have a

6   problem.

7          Of course, you and I will both keep records as what

8   our conversation is, and it will -- if anybody wants to know

9   what was said and by whom, then -- at a later date, then we

10  will have that information available.  But there is no reason

11  to file that.  If I think it's necessary for me to let counsel

12  know, we'll probably have a hearing such as this, and I will

13  disclose to both counsel what our conversations are.  And that

14  will likely be in a synoptic form.

15         Does that answer your question, Dr. Stern?

16         DR. STERN:  I think so.  It means that we're not --

17  when you and I talk, we're not going to have a court reporter

18  in the room?

19         THE COURT:  No, we won't.

20         DR. STERN:  Great.  That's what I was hoping.  Thank

21  you.

22         THE COURT:  Yes.  Okay.  All right.

23         MR. SPECTER:  Your Honor, one other thing, unless you

24  had something you weren't finished with?

25         THE COURT:  Is this Mr. Specter?

1         MR. SPECTER:  Yes, ma'am.

2         THE COURT:  And what else do you have to bring up?

3         MR. SPECTER:  I just think it's important in these

4   situations to have time lines, so even if they can -- need to

5   be extended.  So we would hope that in your order you will set

6   some time -- time limits for some of these things to be done so

7   we can keep this case moving as fast as possible.

8         THE COURT:  And I agree with you.  At this point, I

9   can't tell you how much time it's going to take, but I'm here

10  and I'm -- this is a priority for me, and I want it resolved as

11  quickly as possible.  And I am sure that defendants want it

12  resolved as quickly as possible, so we will do that.  But I

13  can't tell you anything about how long it's going to take until

14  I have the three expert witnesses -- or experts before me and

15  I've had a chance to confer with them.

16        MR. SPECTER:  That makes sense.  Thank you.

17        THE COURT:  And anything else?

18        DR. STERN:  Yes, Your Honor.  The other question, Your

19  Honor, is, I assume this is the case, but if there are any

20  expenses that I incur, or the other experts incur, I assume

21  it's also -- reasonable expenses -- or just like the last time,

22  would be reimbursed through this process?

23        THE COURT:  Yes, of course.  So that's a good point.

24  You need to tell me how much -- what the hourly rate for these

25  two other experts are, and hopefully it's not going to be

1    excessive.

2         DR. STERN:  For sure, I will do that.  And I also

3    don't expect the expenses to be very much.  I don't think that

4    there is going to -- other than if you and I decide that it

5    would make sense to -- for us to talk in person, which would be

6    fine, but I don't expect a lot of visits to facilities like I

7    had to do the last time.  I think this is a very different

8    process.

9         THE COURT:  Yeah, and there is, as I mentioned -- and

10   it's in my order, to some extent, although not in abundant

11   detail -- there are a number of exhibits that were admitted in

12   court, and that should help you update your report.

13        Some of the issues you raised are the same issues that

14   I identified in my order.  So there is no question that you're

15   needed -- fortunately, you don't need, like somebody who is

16   brand new, you won't need to do a rather in-depth analysis and

17   visiting of the Department, all the areas, because there is a

18   lot of -- there is a lot of evidence that should bring your

19   last report up to date.  So I'm not speculating on that, but

20   that's my sense.

21        So once we have you on board -- and there will be an

22   order issued today -- and your two experts, then you'll get to

23   work.  You'll tell me what you need, in addition to the order

24   itself, your previous report, and any, let's say, exhibits that

25   were filed.  And there are numerous exhibits that were filed.

1    I think counsel all remember that there were boxes in the

2    courtroom that -- so much so that I could hardly see counsel,

3    so there is a lot there.

4            Is that clear, Dr. Stern?

5            DR. STERN:  Yes, it is.  It sounds -- sounds like what

6    I had in mind also.

7            THE COURT:  Okay.  All right.  Let me start over

8    again.

9            Plaintiffs' counsel, anything else?

10           MR. SPECTER:  No.

11           THE COURT:  Defense counsel, anything else, defense

12   counsel?

13           MR. STRUCK:  No, Your Honor.

14           THE COURT:  All right.  We are adjourned and I will

15   issue an order promptly which reflects what I have decided here

16   today.

17           We are adjourned.

18           (Proceedings concluded at 11:33 a.m.)

19                         *          *          *

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3        I, CHRISTINE M. COALY, do hereby certify that I am

4   duly appointed and qualified to act as Official Court Reporter

5   for the United States District Court for the District of

6   Arizona.

7        I FURTHER CERTIFY that the foregoing pages constitute

8   a full, true, and accurate transcript of all of that portion of

9   the proceedings contained herein, had in the above-entitled

10  cause on the date specified therein, and that said transcript

11  was prepared under my direction and control.

12        DATED at Phoenix, Arizona, this 24th day of August,

13  2022.

14

15

16

17              /s/ Christine M. Coaly_____
                Christine M. Coaly, RMR, CRR

18

19

20

21

22

23

24

25