Michael Aguilar
Pro Se
IG20 #22050002
P.O. Box 951
Tucson, AZ 85702

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| Shawn Jensen, et al., Plaintiffs, | No. CV 12-00601-PHX-ROS |
|---|---|
| v. | Subclass Member Motion for Ancillary Jurisdictional Relief |
| Ryan Thornell, et al., Defendants. | |

As authorized pursuant to Title 18 Section 3626(a)(1)(B)(ii), Subclass Member Michael Edward Aguilar ("Aguilar"), Arizona Department of Corrections Rehabilitation and Reentry ("ADCRR") No. 038199, requests for the Court to exercise ancillary jurisdiction for relief that is necessary to correct the violation of a federal right. As set forth in the following Memorandum of Points and Authorities, the relief now available to all prisoners through the Court's consent decree extends outside of the jurisdiction of the ADCRR.

MEMORANDUM OF POINTS AND AUTHORITIES

I. Relevant Facts

A. Aguilar v. ADCRR

On October 31, 2013, Aguilar was found guilty on two counts of attempted armed robbery by a jury after a three-day trial. Aguilar v. Shinn, CV 19-00359-TUC-NGZ, Doc. 1. On February 10, 2014, he was sentenced to concurrent terms of 11.25 years in prison. Id. at 2. At trial, because the police sergeant who had allegedly discovered a BB gun that Aguilar was accused of brandishing failed to file a report, was never interviewed, and did not testify at trial, the BB gun was admitted into evidence through hearsay testimony. See id. at 6. Subsequently, the State called a crime scene specialist to the stand to inform that neither Aguilar's prints nor DNA tested positive as on the gun. Id. At closing rebuttal, the State argued it did not matter whether Aguilar did or did not brandish the BB gun to convict. Id.

Only one of two alleged victims were delivered to trial to testify. See id. at 17. Near the end of his testimony the alleged

2

victim denied knowing Aguilar in answer to a question from a juror. Id. In reaction to the answer Aguilar wrote on a legal pad in front of counsel "We can prove he's lying his #'s in my phone he called me in the past". Id. Counsel ignored Aguilar and the note; and rather than returning Aguilar's phone to police evidence - where counsel had obtained it through trial court order - counsel destroyed the phone after trial. Id. She also gave perjured testimony at a subsequent state court collateral proceeding. Id. In her dismissal of Aguilar's federal habeas petition, District Court Judge Jennifer G. Zipps wrote:

> Aguilar argues that his counsel should have used evidence of communications in his cell phone to impeach S.B.'s testimony that S.B. did not know Aguilar. The Magistrate Judge concluded that the PCR state court's decision was not unreasonable when it found (1) counsel's performance was not deficient and (2) Aguilar did not suffer prejudice.

Aguilar v. Shinn, CV 19-00359-TUC-JGZ, Doc. 91 at 8. The case is now in the Ninth Circuit.

3

B. NEW CHARGES

On November 24, 2021, Aguilar was released from prison on community supervision, with a sentence expiration date of June 25, 2023.

On May 5, 2022, Aguilar was arrested, booked into the Pima County Adult Detention Complex ("PCADC"), and subsequently indicted for first-degree murder, kidnapping, and theft of means of transportation. See id., Doc. 84-1 at 4. Withheld from the grand jury was (1) the deceased was an Amazon supervisor turned prostitute, (2) Department of Homeland Security agent Bill Carlberg had intended to give the deceased $20,000 until Aguilar advised against it, (3) the daughter of the deceased told police her mother had tried to have Aguilar killed, (4) the deceased had 14,000 ng/mL units of methamphetamine in her system according to the autopsy toxicology report, and (5) police found the deceased with a loaded recently-obtained illegal Spanish Star 9MM handgun. Trial begins on September 19, 2023.

Because the deceased, Cristy Kaplowitch, was the ex-wife and mother of the son of former ADCRR officer Ross Kaplowitch, the narrative in the media has thus far been false.

4 4

C. THE TORTURE OF AGUILAR

At about midnight on June 2, 2022, Aguilar was taken to the PCADC medical unit, and with the assistance of Sergeant T. Frazier, Officer D. Hoises and Nurse Thomas, Sergeant S. Perko tortured Aguilar as a "Jane Roe" nurse watched in horror. See id. at Docs. 83, 85. Falsified reports were filed alleging Aguilar had threatened Nurse Thomas. It should be mentioned that Perko has recently been fired for unrelated criminal activity.

After two weeks of disciplinary detention, Aguilar was returned to PCADC Pod 16 administrative segregation ("Ad Seg"). It is there he is currently housed, receiving no more than 90 minutes of out-of-cell time per week. It is in retaliation for Aguilar's charges, to prevent him from assisting fellow prisoners with qualified legal claims, and for $50,000 Aguilar received in an excessive use of force settlement, where a named defendant, David Coronado, is now Aguilar's case specialist. See Aguilar v. LaWall, CV 12-00679-TUC-JAS. And because Aguilar will identify members of law-enforcement whom are involved in Tucson's sex industry when he testifies at trial, on September 3, 2022, Detention Officer Haganelli assured Aguilar if

5

he did not plead guilty he would be killed before trial. Detention Officer Rodriguez will avow to Maganelli's assurance.

D. Federal Court Foreclosure

District Court Judge Zipps has presided over all seven actions Aguilar has filed in the District Court in Tucson. Two are habeas proceedings, and in three of the remaining five 42 U.S.C. §1983 prisoner complaints, Judge Zipps held Aguilar failed to state a claim. The most recent, a prisoner First Amendment retaliation claim for assisting a fellow prisoner initiate the exhaustion of administrative remedies, Aguilar currently awaits a decision concerning the need for Ninth Circuit en banc uniformity correction. Aguilar v. Coca, 21-16789, Dkt Entry: 27, 30, 2023 U.S. App. LEXIS 4290 (9th Cir. Feb. 23, 2023); Aguilar v. Coca, CV 21-00009-TUC-JGZ, Doc. 24, 2021 U.S. Dist. LEXIS 199817 (D. Ariz. Oct. 15, 2021).

Because Judge Zipps determined that Aguilar failed to state a claim, it amounted to "strike" three under 28 U.S.C. §1915(g). Aguilar must now present all his constitutional infringements under state law.

I. THE CLAIM

On September 18, 2020, the dorm neighbor of Aguilar was sexually assaulted in a shower stall as an ADCRR officer essentially watched. See Aguilar v. Coca, 21-16789, Dkt Entry: 13 at 11. "Subsequently, as the result of a criminal unit investigation, [the officer] was fired and the [sexual deviant] was criminally charged." Id. On September 30, 2020, Aguilar had the neighbor-fellow prisoner-victim demand that "monetary compensation for damages material to [his] being assaulted enter into settlement negotiations sooner than later." Id. at 12. On the day a response to the informal complaint came due, the grievance coordinator ordered officials to take all of Aguilar's appliances and commissary, and to withhold from him the source of the order. Id. The coordinator falsified a disciplinary charge as a pretext for the order. Id. at 13. It was through witness statements Aguilar proved the coordinator had lied. Id. at 14. As the result, a "hooch" pretext was concocted. Id., 14-15.

What makes the courts' dismissal of the claim so egregious is the fact Aguilar presented a pattern of retaliation by the coordinator. Id., 16-17.

## 2. The Need for Uniformity

In 2005, the Ninth Circuit established a five-element prisoner First Amendment retaliation objective standard. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68. <u>Rhodes</u> stands firm as binding authority. <u>Crago v. Pitz</u>, CV 19-04532-PHX-ROS (ESW), 2021 U.S. Dist. LEXIS 212424 *65-66 (D. Ariz. Dec. 14, 2021).

In 2009, writing for the Ninth Circuit, a district court judge conflated a subjective standard with <u>Rhodes'</u> causation standard in <u>Brodheim v. Cry</u>. 874 F.3d 1262, 1271 ("To prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct." (cleaned up) (quoting <u>Soranno's Gasco, Inc. v. Morgan</u>, 874 F.2d 1310, 1314 (9th Cir. 1989)). "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint,"[1] rogue district court judges throughout the Ninth Circuit are applying <u>Soranno's</u> as grounds to dismiss. See,

---

[1] <u>Watison v. Carter</u>, 668 F.3d 1108, 1115 (9th Cir. 2012) (citing <u>Pratt v. Rowland</u>, 65 F.3d 802, 808 (9th Cir. 1995) ("Timing can properly be considered as circumstantial evidence of retaliatory intent.")).

E.G.:

    THE PLAINTIFF HAS THE BURDEN OF DEMONSTRATING THAT HIS EXERCISE OF HIS FIRST AMENDMENT RIGHTS WAS A SUBSTANTIAL OR MOTIVATING FACTOR BEHIND THE DEFENDANTS' CONDUCT.

Aguilar v. Coca, CV 21-00009-TUC-JGZ, 2021 U.S. Dist. LEXIS 199817 *12 (D. Ariz. Oct. 15, 2021) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Soranno's, supra) (underlines added). Cf.:

    THE PLAINTIFF HAS THE BURDEN TO PROVE THE ABSENCE OF A LEGITIMATE PENOLOGICAL PURPOSE.

Lebowitz v. Kenyon, CV 11-0309-TUC-JGZ, 2012 U.S. Dist. LEXIS 193135 *32 (D. Ariz. Dec. 14, 2012) (citing Rhodes, supra) (underlines added).

A breakdown of the courts within the Ninth Circuit applying Mt. Healthy and Soranno's with Rhodes as of May 11, 2023 is as follows:

ARIZONA DISTRICT COURT     149
CALIFORNIA EASTERN DISTRICT COURT     69

| Court | Count |
|---|---|
| California Central District Court | 57 |
| California Southern District Court | 30 |
| California Northern District Court | 10 |
| Washington Western District Court | 8 |
| Nevada District Court | 7 |
| Montana District Court | 5 |
| Hawaii District Court | 2 |
| Oregon District Court | 2 |
| Alaska District Court | 1 |
| Washington Eastern District Court | 1 |
| Ninth Circuit Court of Appeals | 0 |

Aguilar submits there exists a direct correlation between the Arizona District Court's violation of the Law of Circuit Doctrine and "the substantial dysfunction in Defendants' operations… regarding medical care, mental health care, and conditions imposed on the subclass…." Jensen v. Thornell, 2023 U.S. Dist. LEXIS 61747 (D. Ariz. Apr. 7, 2023). For it is retaliation and the threat thereof which corrupts society, the judicial process, and a government most. Taylor v. County of Pima, 2022 U.S. Dist. LEXIS 130272 (D. Ariz. July 29, 2022) ("Plaintiff requested leave to file a witness declaration under seal and argued that publicly revealing the identity of the declarant would subject the declarant to serious harm or death."). Pima County is as corrupt as they come.

10

II. ARGUMENT

A. THE VIOLATION

Aguilar has been housed under maximum custody, isolated confinement conditions since May 6, 2022. In July 2022, he was not given out-of-cell time for nine consecutive days. On average, the prisoners housed in the single-man cells where Aguilar is kept are provided no more than one hour of yard-pen time and one hour of day room per week. However, because of understaffing, maintenance repairs, new construction, and dereliction of duty the average given above is overstated.

According to jail policy, each month the prisoner housed in isolated confinement, a hearing must be conducted "to keep [him] aware of the justification for keeping [him] on [his] Administration Segregation Status" PCADC Presentence Handbook at 18. This practice was terminated after November 2022. Aguilar is no longer involved in any review process and receives no information regarding what he should do in the future to merit a lower classification.

"We now know that isolated confinement is painful. People who are exposed to it suffer when they experience it." Jensen v. Shinn, 609 F.Supp.3d 789, 901 (D. Ariz. Jun. 30, 2022)

(quoting expert witness) "And while some people experience harm that appears 'to be reversible,' others experience 'very severe' harm that 'can be life threatening.'" Id.

Aguilar urges the Court to conduct the necessary research to learn the exorbitant number of deaths that have occurred at the PCADC over the past year alone." It is abiding truth that "nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." Cooper v. Pima County Sheriff Dupnik, 963 F.2d 1220, 1223 (9th Cir. 1992) (en banc) (quoting Oregon v. Hass, 420 U.S. 714, 724 (1975) (Brennan, J., dissenting) (quoting Harris v. New York, 401 U.S. 222, 232 (1971) (Brennan, J., dissenting))).

B. Supplemental Jurisdiction

A requirement for relief provides that "[t]he court shall not order any prospective relief that requires or permits a government official to exceed his or her authority under state or local law or otherwise violates state or local law, unless the relief is necessary to correct the violation of a federal right." 18 U.S.C. § 3626(a)(1)(B)(ii). "[I]n any civil action of which the district courts have original jurisdiction, the

district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "This standard permits supplemental jurisdiction over claims if those claims share 'a common nucleus of operative fact' with the claim providing for federal jurisdiction." Tomar Elecs., Inc. v. Watkins, 2010 U.S. Dist. LEXIS 146872 *9 (D. Ariz. Sep. 1, 2010) (quoting City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997). "The federal claim must have substance sufficient to confer subject matter jurisdiction on the court." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

District courts' supplemental jurisdiction extend to state law claims forming part of same Article III case or controversy as prisoners' operative federal claims, even if those state law claims were brought against defendants not previously named. Thomas v. Varano, 532 Fed. Appx. 142 (3d Cir. 2013).

"The supplemental jurisdiction statute provides that district courts may decline jurisdiction over claims that 'raise a novel or complex issue of state law.'" Women Prisoners of

The D.C. Dep't of Corrections v. District of Columbia, 93 F.3d 910, 921 (D.C. Cir. 1996), cert. denied, 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997) (quoting 28 U.S.C. § 1367(c)(1)).

"The Constitution does delegate to the federal courts judicial power over 'cases... arising under... the laws of the United States.'" Hillery v. Rushen, 720 F.2d 1132, 1140 (9th Cir. 1983) (quoting U.S. Const. art. III, § 2, cl. 1). "The power includes judicial power judicial power over state-law issues in such cases." Id. (quoting Gibbs, supra). The D.C. Circuit "stated that section 1367(c) 'essentially codifies Gibbs.'" District of Columbia, supra (quoting Edmondson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1266 (D.C. Cir. 1995)). "The judicial power over the state law issues is properly exercised even if resolution of the state-law issues obviates the need to address the federal issues." Hillery, supra (citing Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 191 (1909)).

C. Ancillary Jurisdiction

"Federal district courts have ancillary jurisdiction over certain matters 'otherwise beyond their competence' that are 'incidental to other matters properly before them.'" Kelley v. Wengler, 822 F.3d 1085, 1094 (9th Cir. 2016) (quoting Kokkonen

v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994)). "A federal court has jurisdiction to 'manage its proceedings, vindicate its authority, and effectuate its decrees.'" Id. (quoting Kokkonen, at 380).

"According to the Ninth Circuit, 'supplemental jurisdiction under § 1367 is distinct from the equitable doctrine of ancillary jurisdiction.'" Tohar Elecs., Inc., supra (quoting United States v. Alpine Land & Reservoir Co., 174 F.3d 1007, 1012 n.5 (9th Cir. 1999)). "[T]he Supreme Court has 'approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in protection and enforcement of federal judgment....'" Id. (quoting Peacock v. Thomas, 516 U.S. 349, 356 (1991) (citing Dewey v. West Fairmont Gas Coal Co., 123 U.S. 329 (1887)). "Exercise of ancillary jurisdiction in this context is meant 'to guarantee eventual executability of ... a federal judgment.'" Tohar Elecs., Inc., supra (quoting Peacock, at 357).

D. Extending the Subclass

The Jensen Permanent Injunction ("JPI") contains a footnote that "[i]f Defendants transfer members of the subclass to private prisons, the members of the subclass shall not be treated inconsistently with this order." Jensen v. Thornell,

2023 U.S. Dist. LEXIS 61747 *84 n. 8. Aguilar submits the subclass transferred to county jails to face new charges, to receive a subsequent trial, to appear at a hearing, or for the purpose of providing testimony should also "not be treated inconsistently with [the] order."

Inversely, "[a]ll prisoners who are now, or will in the future be, subjected by the ADC to isolation" includes all housed in county jails throughout Arizona. See Jensen v. Shinn, 609 F. Supp. 3d 789 at 875. Pursuant to 18 U.S.C. § 3626(g)(3), "the term 'prisoner' means any person subject to incarceration, detention, or admission to any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release or diversionary program." Where the constitutional violations are as "callous and inhumane" as proven at trial, relief narrowly drawn inherently applies to a broad subclass. The Ninth Circuit agrees:

> The touchstone for inclusion in the subclass is... the amount of isolation experienced by the inmates.

Parsons v. Ryan, 912 F.3d 486, 503 (9th Cir. 2018). "Thus, the crucial aspect is 'the amount of time

an inmate is confined in a cell each day', not where the prisoner is housed." Jensen v. Shinn, 609 F. Supp. 3d 789 at 876 (cleaned up)(quoting Parsons, 912 F.3d at 503). "Those prisoners who are 'confined in a cell for 22 hours or more each day (i.e., inmates who receive less than 14 hours of out-of-cell time each week)' are members of the subclass." Id.

Conclusion

The Federal courts are the appropriate vehicle to oversee prison reform. No other branch of government is so constituted as to generate and maintain the requisite interest and sustained momentum needed to assure minimal constitutional guarantees for prisoners. It is in such instances when the legislature and the executive are unable or unwilling to ensure minimal constitutional rights that judicial intervention has been and should continue to be a viable solution. "The Federal Judiciary was... designed by the Framers to stand independent of the Executive and Legislature — to maintain the checks and balances of the constitutional structure, and also to guarantee that the process of adjudication itself remained impartial." Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 58 (1982).

DATED: MAY 11, 2023.

RESPECTFULLY SUBMITTED,

BY [signature]

MICHAEL AGUILAR
SUBCLASS MEMBER