1
2
3
4
5
6            **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

8

9   Shawn Jensen,                          No. CV-12-00601-PHX-ROS

10              Plaintiff,                   **ORDER**

11   v.

12   Ryan Thornell,

13              Defendant.

14

15          After the Court issued its draft Permanent Injunction on January 9, 2023 (Doc.

16   4380), all the parties agreed to a final Permanent Injunction, which was entered on April

17   7, 2023.  (Doc. 4410).  The Permanent Injunction expressly requires Defendants make

18   significant modifications to the delivery of medical and mental health care as well as

19   significant modifications to the conditions of confinement for subclass members.  A

20   fundamental component of both the draft Permanent Injunction as well as the Permanent

21   Injunction was a requirement that Defendants increase health care and custody staffing.

22   Thus, Defendants have been fully aware since at least January 9, 2023, they needed to

23   begin hiring additional staff.[1]

24          Recognizing time would be needed to hire additional staff, the Permanent Injunction

25   required Defendants to fill all positions no later than July 7, 2023.  (Doc. 4410 at 13).  As

26   explained in a letter Dr. Stern sent to all counsel on July 14, 2023, staffing as of July 7 was

27   ───────────────────
28   [1] There have been changes in leadership at the Arizona Department of Corrections,
     Rehabilitation, and Reentry during this litigation.  However, Defendant Larry Gann has
     been involved in this case for years and he was aware chronic understaffing was at the heart
     of the Court's June 30, 2022, decision. (Doc. 4335).

"markedly inadequate to meet the immediate requirements of the Order."  Dr. Stern also requested Defendants provide monthly staffing reports beginning on August 1, 2023. While staffing reports make sense and are necessary to ensure compliance with the Permanent Injunction, the Court needs additional information regarding the parties' planned progression of this case.

Over the years this case has been pending, including the time the Stipulation was in place, there were times the parties either did not seem to want to perform their obligations or did not press their position with the appropriate sense of urgency.  Dr. Stern's letter raises concerns the parties still see no urgent need for action.  The Court has an obligation to ensure the Permanent Injunction does not remain in place any longer than necessary. The Court's role is to require immediate and full compliance such that federal involvement in Arizona's prison system can come to an expeditious end.  In addition, as history has shown, allowing Defendants' past practices to continue will result in suffering and death; it is not a matter of whether some prisoners will suffer and die, it is only a matter of which and how many.  For these reasons, the Court must take a proactive approach to ensure the parties focus their efforts on the tasks that must be performed.[2]

The Court will set a hearing to discuss with the parties their positions on what actions should be urgently taken.  Prior to that hearing, the parties will be required to confer and file separate status reports addressing numerous topics.  In general, the Court is interested in establishing a clear timeline for Defendants to come into compliance with the Permanent Injunction as well as clear sanctions should Defendants fail to do so.  The status reports should address:

1. The specific actions Defendants took after issuance of the draft Permanent Injunction and after issuance of the Permanent Injunction to obtain additional medical and custody staffing;

---

[2] The Permanent Injunction was exceptionally clear in explaining Defendants needed "immediately hire" a specific number of staff.  (Doc. 4410 at 3).  Other aspects of the Permanent Injunction left no question hiring additional staff was mandatory.  (Doc. 4410 at 13) ("Defendants shall fill all positions required by the current contract . . . .").  Based on the information presently available, Defendants have not hired anywhere close to the required number of staff.

2.  The date by which Defendants expect to have hired all the staff required by the Permanent Injunction in §§ 1.15, 1.16, 6.1, and 13.1;

3.  The specific actions Defendants took after issuance of the draft Permanent Injunction and after issuance of the Permanent Injunction to modify the delivery of medical and mental healthcare as required by the Permanent Injunction.

4.  Any modifications to the Permanent Injunction the parties believe would be appropriate and the basis for those modifications;

5.  What additional Orders from the Court would be helpful to ensure Defendants comply with the Permanent Injunction;

6.  What sanctions would spur compliance with the Permanent Injunction;

7.  If monetary sanctions are appropriate, the amount of such sanctions;

8.  Whether Plaintiffs' counsel believe Defendants have taken all reasonable steps to comply with the Permanent Injunction;

9.  Any other matters the parties believe should be brought to the Court's attention.

Accordingly,

**IT IS ORDERED** the Clerk of Court must docket the attached July 14, 2023, letter from Dr. Stern.

**IT IS FURTHER ORDERED** no later than **August 14, 2023**, the parties shall confer and file separate status reports setting forth their positions on the topics listed above.

**IT IS FURTHER ORDERED** a hearing is set for **August 17, 2023**, at **2:00 p.m**.

**IT IS FURTHER ORDERED** the Motion to Enforce Judgment (Doc. 4444) is **DENIED**.  The Clerk of Court shall open Doc. 4444 as a separate civil action, directly assigned to the undersigned.

Dated this 19th day of July, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge