**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, | No. CV-12-00601-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Ryan Thornell, | |
| Defendant. | |

On July 24, 2023, the Court received a document titled "Eyewitness Account from Subclass." That document was filed by nineteen prisoners who describe themselves as "a group of ADCRR prisoners housed at A.S.P.C. Kingman-Huachuca Unit." (Doc. 4448 at 1). The prisoners describe the location where they are housed as "an ADCRR owned facility" with "daily operations . . . sub-contracted to a private, for profit, corporation known as The Geo Group, Inc." (Doc. 4448 at 1-2). The prisoners explain they wish to provide an "eyewitness account of the Defendants' actions or lack thereof, in complying with the April 7th [Permanent Injunction]." (Doc. 4448 at 1).

According to the prisoners, the health care available to them, and the conditions of their confinement, fall below the standards required by the Permanent Injunction. For example, the prisoners state all medical records at the Kingman facility are "handwritten paper documents," instead of the electronic health records now required at ADCRR-run facilities. The prisoners also state "Defendants have sent over 50 prisoners from other units with special needs and severe mental health issues, we believe to circumvent some

compliance issues" with the Permanent Injunction. (Doc. 4448 at 2). Beyond health care issues, the prisoners also allege the physical facilities at Kingman are insufficient. For example, the sinks and toilets are often inoperable and there are insect infestations.[1]

The prisoners explain they are filing their statement based on a specific provision in the Permanent Injunction. To understand the provision the prisoners are referencing, some history is needed. The Court's Draft Injunction contained language indicating the Court was skeptical it had the ability to control the provision of healthcare or the conditions of confinement at private facilities:

> The expert recommended the Court prohibit Defendants from transferring subclass members to private prisons. This prohibition would prevent Defendants from avoiding the requirements of this Order by transferring subclass members to locations where they might still be subject to unconstitutional conditions of confinement. At present, the Court does not have the authority to prohibit such prison transfers. However, at some point, the private prisons may be considered under the control of Defendants such that Defendants could be required to ensure prisoners who are transferred are held in conditions that do not violate this Order.

(Doc. 4380 at 51 n.9). The parties received this proposed language and rejected it in favor of agreeing to language explicitly extending the Permanent Injunction, at least in part, to conditions at privately-run facilities.

The parties' proposed language, that the Court adopted in the Permanent Injunction, states:

> If Defendants transfer members of the subclass to private prisons, the members of the subclass shall not be treated inconsistently with this order. At present, Defendants house prisoners in seven private facilities (Central Arizona Correctional Facility, Florence West, Kingman, La Palma, Marana, Phoenix West, and Red Rock Correctional Center).

(Doc. 4410 at 53 n.8). The prisoners at Kingman cite this provision as the basis for the Court to require Defendants ensure the healthcare and conditions of confinement in privately-run facilities comply with the Permanent Injunction.

---

[1] The non-health care requirements of the Permanent Injunction apply only to subclass members. It is not clear whether the prisoners at Kingman who filed the statement, or any other prisoners being held at Kingman, qualify as subclass members.

The Court will not take any direct action based on the prisoners' filing.  As the Court has stated many times in the past, individual prisoners seeking to obtain relief regarding their health care or conditions of confinement must file separate suits.  But while direct action is not appropriate, the Court will require the parties brief various issues raised by the filing.

At trial, the parties did not present any evidence regarding the health care or conditions of confinement at the private facilities in Arizona that house ADCRR prisoners.  Nor did the parties present evidence regarding how often ADCRR prisoners are transferred between ADCRR-run facilities and privately-run facilities.  Thus, the Court had no basis to address the operations of privately-run facilities or transfer procedures.  However, Defendants' litigation strategy and approach to this matter in its decade-plus history put the Court on notice Defendants might transfer prisoners to private facilities to avoid the requirements imposed by the Court, thereby necessitating the language in the Draft Injunction that, depending on subsequent developments, "private prisons may be considered under the control of Defendants."  That language was in the section dealing with the subclass members, but the Court was also aware Defendants may transfer certain prisoners to avoid compliance with the medical care aspects of the Permanent Injunction.

If the allegations in the Kingman prisoners' filing are accurate, Defendants may be taking actions to avoid compliance with the Permanent Injunction.  To establish clear procedures and avoid future disputes regarding prisoners held at privately-run facilities, the parties will be required to address the following:

1. Do the entities operating the private facilities, as well as those entities' employees, qualify as Defendants' "agents, servants, employees," or as "other persons who are in active concert or participation" with Defendants or Defendants' "agents, servants, [or] employees" for purposes of the Permanent Injunction?  Fed. R. Civ. P. 65(d).  If the private entities and their employees are not covered by the language of Rule 65(d), why not?[2]

---

[2] In a separate lawsuit challenging the constitutionality of the use of private prisons, the former director of ADCRR cited to provisions in each private facility contract as stating

2. How and by whom are transfer decisions either to or from privately-run facilities currently made?

3. In the parties' views, do the conditions in the privately-run facilities meet the health care and subclass requirements outlined in the Permanent Injunction?

4. When Defendants transfer prisoners from ADCRR-run facilities to privately-run facilities, should the transferred prisoners be viewed as class members while in the private facilities? That is, should the health care requirements set out in the Permanent Injunction apply to the health care provided to ADCRR prisoners housed at private facilities?

5. Is Defendants' discretion in classification and housing prisoners impacted by the Permanent Injunction? Are Defendants permitted to transfer high acuity prisoners to privately-run facilities?

6. Are there subclass members currently housed at privately-run facilities?

7. If there are subclass members at privately-run facilities, how did the parties believe the footnote extending the Permanent Injunction to those subclass members would be monitored and enforced? Did the parties anticipate the Court and its monitors would assess the conditions at those facilities and, if necessary, order improvements?

Finally, counsel must attend in-person the hearing on August 17, 2023. The Court will not formally require Defendant Thornell appear at that hearing, but the Court would greatly appreciate his in-person attendance to offer his views on the actions taken after the Permanent Injunction and the appropriate path forward. Because information from ADCRR will be solicited at the hearing, if Defendant Thornell is unavailable, another representative with specific knowledge and authority regarding compliance should attend.

Accordingly,

**IT IS ORDERED** the parties shall address the questions outlined above in the

---

every "contractor must comply with all ADCRR orders, written instructions, and manuals, and with all court orders and state and federal laws." (Doc. 7 at 5:11-13, *Nielsen v. Shinn*, 2:2020-CV-01182-PHX-DLR-JZB).

statements due on **August 14, 2023**.

**IT IS FURTHER ORDERED** counsel shall appear in-person at the **August 17, 2023**, hearing.

**IT IS FURTHER ORDERED** the Clerk of Court must mail a copy of this Order to Jeffrey L. Graybill, ADC #267381, A.S.P.C. Kingman—Huachuca Unit, P.O. Box 6639, Kingman, Arizona, 86402.

Dated this 31st day of July, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge