# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen,<br><br>        Plaintiff,<br><br>v.<br><br>Ryan Thornell,<br><br>        Defendant. | No. CV-12-00601-PHX-ROS<br><br>**ORDER** |

The Court has reviewed the parties' Status Reports in anticipation of the hearing scheduled for Thursday, August 17, 2023, at 2:00 p.m. To focus the discussion at the hearing, the parties should be prepared to address the following issues and, if necessary, submit additional briefing after the hearing.

**Applicability of the Permanent Injunctions to Private Prisons**

The parties were asked to address whether prisoners housed in private facilities were class members. (Doc. 4449). The parties were also asked address whether the entities operating the private facilities, and the entities' employees, qualify as Defendants' "agents, servants, employees" such that the Permanent Injunction would reach the entities and entities' employees. (Doc. 4449 at 3). The parties' responses indicate they believe prisoners in private facilities are not class members, but they disagree on the question of agency.

The certified class was defined, in relevant part, as "All prisoners who are now, or will in the future be, subjected to the medical, mental health, and dental care policies and

1  practices of the ADC." (Doc. 372 at 22). The subclass was defined, in relevant part, as
2  "All prisoners who are now, or will in the future be, subjected by the ADC to isolation,
3  defined as confinement in a cell for 22 hours or more each day." (Doc. 372 at 22). By
4  their terms, these definitions might include prisoners housed at private facilities. And
5  correspondence from prisoners housed at private facilities indicates those prisoners
6  believed they were class and possibly subclass members. However, the parties contend the
7  class and subclass definitions were intended to exclude prisoners housed at private
8  facilities.

9  The parties' positions regarding the applicability of the injunction to prisoners
10 housed in private facilities are difficult to follow. For example, the Permanent Injunction
11 expressly requires its requirements be applied to subclass members transferred to a private
12 facility. (Doc. 4410 at 53 n.8). Plaintiffs also believe private prison officials are
13 Defendants' "agents, servants, or employees" based on the degree of control Defendants
14 exercise over private prison entities. (Doc. 4458 at 7). In contrast, while Defendants'
15 contracts with private prison facilities require private prisons to abide by all ADCRR
16 policies (Doc. 4458 at 7), Defendants do not believe private prison officials are its "agents,
17 servants, or employees." (Doc. 4459 at 2).

18 According to Defendants, the entities operating the private facilities are not their
19 agents for purposes of the Permanent Injunction because this case, since its inception, has
20 only involved prisoners housed at ADCRR-operated facilities. (Doc. 4459 at 2). But that
21 conclusion does not follow. The entities operating the private facilities may qualify as
22 Defendants' agents even if the evidence in this case focused on state-run facilities.

23 Based on the foregoing, if the Court agrees with the parties on the reach of the class
24 definitions, the terms of the Permanent Injunction will not apply to prisoners in private
25 prisons despite the medical care and other conditions of confinement provided to those
26 prisoners being entirely under Defendants' control. The only exception being that subclass
27 members held in private facilities, if there are any, must be treated consistently with the
28 provisions of the Permanent Injunction relevant to the subclass. (Doc. 4410 at 53 n.8).

The parties must be prepared to explain their positions.

**Correctional Officer Staffing and the Use of Overtime**

After reviewing Defendants' most recent Quarterly Staff Report, Defendants relied on over 500,000 hours of overtime between April and June 2023 (Doc. 4451-1 at 5). It is unclear whether overtime hours are being credited toward the number of correctional staff assigned to each complex (Doc. 4451-1 at 2). Defendants should be prepared to address this issue.

**Progress on Healthcare Staffing**

Defendants' Status Report reflects 68% of the 22 additional positions required by the Permanent Injunction have been hired. Defendants do not provide any information, however, about the base contract hiring status and how many positions remain unfilled. That is, Defendants did not set forth how many of the 1187.9 positions required by the contract remain vacant. Defendants must be prepared to address the current staffing levels at the hearing for all healthcare positions.

In addition, the parties believe a modification to the Permanent Injunction would be appropriate to allow Defendants to utilize a higher percentage of temporary staff for a short period of time to increase staffing. The parties should be prepared to explain their positions on this point. In particular, Defendants should be prepared to set forth the actions they will take in the near future, that they have not taken in the past, such that a higher percentage of temporary staff will only be a temporary remedy and more permanent staff will be in place in the near future. The parties must also be prepared to propose a time limit for this modification if the Court decides to accept it.

**NaphCare Issues**

Defendants indicate ADCRR is in the process of negotiating a contract modification with NaphCare to address salary increases for health care providers. Defendants should be prepared to explain the amount of salary increases they anticipate allowing as well as whether there are other components to the renegotiation. In addition, Defendants should be prepared to explain why the renegotiation was not completed earlier and why it cannot

be completed before September 2023.

Additionally, Defendants should address whether NaphCare's performance is inhibiting compliance with the Permanent Injunction and, if so, what actions ADCRR is taking to spur NaphCare's performance.

**Request for Accounting**

Defendants request the Court provide an accounting of the contempt fines previously deposited. The Court has distributed only those funds set forth in Orders provided to counsel. Thus, the remaining balance is simply the total deposited minus the amounts distributed as set forth in publicly filed Orders, plus earned interest. At present, the total remaining on deposit is $2,384,321. To the extent Defendants have some other form of accounting in mind, they should be prepared to discuss this issue.

**Subclass Compliance**

Defendants' status reports indicate there have been improvements in the physical facilities housing subclass members. However, Defendants did not provide an update on the amount of recreation time and other out-of-cell time subclass members are now receiving. Defendants should be prepared to address this issue.

The status report also reflects that the subclass has been reduced and former subclass members are now classified as "close custody." Defendants should be prepared to confirm that prisoners in close custody receive more out of cell time than subclass members.

**Status Conferences**

Plaintiffs request the Court require monthly status reports and hold status conferences every two months. Plaintiffs are entitled to information necessary to determine compliance with the Permanent Injunction. However, there does not appear to be a compelling basis to require status reports and hold status hearings on a regular basis. Rather, it may be better to require reports and hold hearings on an as-needed basis. Dr. Stern will provide his input on what information will be most useful to include in periodic status reports. Plaintiffs should also be prepared to explain why reports and hearings would be appropriate.

**Staffing Analysis**

Plaintiffs request the Court require Dr. Stern begin immediate work on the medical staffing analysis. Dr. Stern will be able to explain his position on why he believes it would be better to wait until Defendants have hired more staff such that the number of staff is not grossly deficient. Plaintiffs should be prepared to explain why they believe a staffing analysis conducted when hundreds of positions remain vacant would be a wise use of resources.

Accordingly,

**IT IS ORDERED** the parties must be prepared to discuss the matters outlined above at the August 17, 2023, hearing.

Dated this 17th day of August, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge