**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, | No. CV-12-00601-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Ryan Thornell, | |
| Defendant. | |

Based on the discussion at the status hearing on August 17, 2023, the Court shall clarify what was resolved at the hearing and the additional information Defendants will be required to produce.[1]

Based on the evidence submitted prior to the hearing, as well as the information provided by Defendants at the hearing, it is undisputed Defendants have not complied with the Permanent Injunction. The hearing began with the Court noting "there must be complete compliance with the [Permanent Injunction] to get the federal court out of this case." (Doc. 4469). When asked for their position on compliance and the need for sanctions, Plaintiffs' counsel responded Defendants are "making sincere, good faith attempts to comply with the [Permanent Injunction]." (Doc. 4469 at 5). Plaintiffs' counsel continued "there is not yet complete compliance," but Plaintiffs were not waiving the

---

[1] In a status report filed before the hearing, Plaintiffs asked that should Defendants not come into compliance with the Permanent Injunction, Plaintiffs wished to "reiterate their request" that the Court consider "rescinding or overriding" the Arizona statute privatizing prisoner healthcare or appointing a receiver to manage all prisoner healthcare. (Doc. 4458 at 4). No motion has been filed seeking such relief. Thus, the Court will not address the issue.

failure to comply. According to Plaintiffs' counsel, "[w]e are certainly not waiving anything, but we do believe, in light of the Department's significant efforts, and we believe good faith efforts, that sanctions would be inappropriate at this point." (Doc. 4469 at 5).

Plaintiffs' decision not to seek sanctions must not be read as an indication the Court necessarily agrees Defendants have made all reasonable efforts to comply with the Permanent Injunction. That may be accurate, but the Court has not been presented with sufficient information to make such a finding at this time. In addition, the decision not to seek sanctions must not be read as an indication the Court agrees that only additional time will enable Defendants to fully comply with the Permanent Injunction. Indeed, the Court-appointed experts and the parties worked together to propose the deadlines in the Permanent Injunction. The deadlines and other requirements of the Permanent Injunction are not aspirational. The Court will take all actions necessary to ensure improvements continue at a more accelerated rate than improvements since issuance of the Permanent Injunction. Only complete compliance with the Permanent Injunction will ensure constitutional conditions for the class and subclass. And only complete compliance will allow federal court involvement to cease.

The hearing also included a discussion regarding private prisons. The parties agreed prisoners currently held in private prisons do not qualify as class members. The Permanent Injunction contains one provision indicating prisoners held in private prisons must not be treated inconsistently with the requirements applicable to the subclass. However, Plaintiffs' counsel stated the application of the subclass requirements was an "academic question" because no prisoners are held at private prisons who would qualify to be members of the subclass. (Doc. 4469 at 10). Based on the limited information available, while the private prisons do not have maximum custody units, they do have detention units and provide for mental health watches. Thus, the parties' position that no subclass members are found at private prisons is interpreted to mean prisoners held in detention units or on mental health watch at private prisons continue to receive sufficient out-of-cell time such that those prisoners do not qualify as members of the subclass. Pursuant to the

parties' shared position, and the discussion at the hearing, the Permanent Injunction applies only to prisoners held in state-operated facilities.[2]

The medical staffing numbers provided by Defendants at the hearing indicated there is still significant understaffing at numerous prison complexes. Because of the understaffing, Defendants requested they be allowed to exceed the Permanent Injunction's limit on the number of temporary staff that can be used. Defense counsel explained while some positions are being filled by "temporary" staff, those staff may remain in that position for an extended period. (Doc. 4469 at 22). Thus, Defendants believe looking to the staff formally identified as "temporary" may be misleading and does not further the limit's goal of retaining staff members. Plaintiffs, as well as the Court-appointed monitors, indicated they have not yet been provided sufficient reliable information to assess whether a temporary increase in temporary staff should be allowed.

To ensure Plaintiffs and the monitors have sufficient information regarding the need for temporary staff, and to determine Defendants' compliance with the medical staffing provisions of the Permanent Injunction, the Court will require Defendants produce the information set forth below. This information builds on some of the information requested by Dr. Stern in his letter of July 20, 2023. Perhaps at some point the information Defendants must produce will be set forth in the Monitoring Guide. Thus, if some of the information requested here is no longer relevant or if different types of information are needed, those changes may be reflected in the Monitoring Guide. For present purposes, however, Defendants must produce the following:

1. Defendants' request to hire more temporary staff suggests they believe they can attract temporary staff but are unable to attract permanent staff. Defendants must identify the specific barriers, problems, or issues preventing Defendants from presently hiring permanent staff, the actions taken to remove those issues, the dates the actions were taken, and the results of those actions;

---

[2] Defendants represented they have not, and will not in the future, transfer prisoners to private prisons to avoid compliance with any aspect of the Permanent Injunction. At present there is no reason to question that representation. Should such transfers occur, however, the Court may need to revisit this issue.

2. In one of their status reports, Defendants stated NaphCare expects "to fill all positions required under Sec. 1.16, 6.1, and 13.1 of the Permanent Injunction by December 1, 2023." (Doc. 4460 at 9). Defendants shall clarify whether they believe NaphCare will fill **all** 1187.9 positions by December 1, 2023, or if Defendants were referencing only those additional positions (*i.e.*, 22 positions) required by the Permanent Injunction. If Defendants were referencing only the 22 positions, Defendants must provide the date by which they plan to have filled all 1187.9 positions;

3. The Permanent Injunction was issued on April 7, 2023, but Defendants did not complete a contract with NaphCare for the 22 additional positions until June 8, 2023. Defendants must set forth what caused the delay in completing the contract;

4. To determine the trajectory of staffing under NaphCare, Defendants must provide the following information as of October 1, 2022 (date NaphCare took over), January 9, 2023 (date Court issued Proposed Injunction); April 7, 2023 (date Court issued Permanent Injunction); July 7, 2023 (90 days after issuance of Permanent Injunction); and August 17, 2023 (date of status conference). For each of the following items, Defendants shall set forth the data by position category (*e.g.*, physician, facility medical director) and by complex.[3] Defendants should also provide a state-wide summary.

   a. the number of FTEs filled by full-time or part-time permanent employees (*i.e.*, individuals currently being paid, with assigned schedules to work at least 0.5 FTE per week);

   b. the number of FTE positions filled or partially filled by any other type of staff (*e.g.*, registry, PRN, locum tenens), to be calculated by dividing the total number of hours worked during the month in the positions needing to be filled, by 160;

   c. the number of FTEs of unfilled (*i.e.*, vacant) positions;

---

[3] Defendants should not provide the information for the approximately fifty FTEs in the regional office.

- 4 -

      d. the range and median of the *permanent* salary;

      e. if any employees were receiving supplemental or temporary compensation (*e.g.*, time-limited salary bump, signing bonus), for each employee (or were treated identically), the total amount of the compensation and the timeframe over which it was provided or promised;

      f. the publicly advertised salary range that was/is provided in recruitment materials and if this varied by complex, so indicate;

      g. the number of FTEs filled by full-time or part-time permanent employees that were fired or resigned since the previous date on the report; and

      h. the number of FTE filled by full-time or part-time permanent employees who were hired and began work since the previous date on the report.

Defendants must provide this initial information within ten days of this order and then updated information by the first of each following month.[4]  For the first and second reports, the 22 additional positions should be separate from the other positions in their respective categories.  As of November 1, 2023, the 22 positions should be aggregated with their respective categories.  Finally, based on Defendants' position that "temporary staff" may work extended periods of time in the same position, each report may include specific information identifying the number and position of "temporary staff" who are currently working at a complex at the 0.5 FTE level or greater and have been doing so for longer than six months.

      Accordingly,

      **IT IS ORDERED** a status hearing is set for **December 1, 2023**, at **2:00 p.m.**  No later than **November 17, 2023**, the parties shall file a joint status report providing the latest staffing figures for medical and custody staff.  The parties should also identify issues they

---

[4] At present, Defendants file on the docket a "Correctional Staffing Report" on a quarterly basis as required by Section 20.3.1 of the Permanent Injunction.  (Doc. 4410 at 54).  It is possible more frequent productions of that information will be necessary to evaluate Defendants' compliance with the Permanent Injunction.  But until ordered otherwise, Defendants should continue to file the Correctional Staffing Report on a quarterly basis.

- 5 -

wish to discuss.

**IT IS FURTHER ORDERED** within ten days of this Order Defendants shall produce to Plaintiffs and the Court Monitors the information set forth above. Defendants shall then produce updated reports by the first business day of each following month, beginning on October 2, 2023. Defendants are not required to file this information on the docket.

Dated this 31st day of August, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge