1
2
3
4
5

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen,<br><br>        Plaintiff,<br><br>v.<br><br>Ryan Thornell,<br><br>        Defendant. | No. CV-12-00601-PHX-ROS<br><br>**ORDER** |

This Order addresses two separate issues: use of the remaining contempt sanctions and a NaphCare policy that Dr. Stern believes prohibits communication between prisoners and outside specialist providers.

**Uses for Contempt Sanctions**

The parties were directed to submit a joint notice outlining their positions on ten proposed uses for the approximately $2.4 million in contempt sanctions being held in the Court's registry. The parties filed their joint report addressing those ten proposed uses and Defendants further proposed three alternative uses. (Doc. 4480).

The Court has reviewed the parties' positions and will solicit further briefing and information about four proposed uses: (1) GYN Exam table; (2) suntan lotion accessible in recreational areas; (3) over-the-counter items available from the commissary at no cost to prisoners; and (4) an outpatient specialty services suite. The parties will be directed to confer and determine the cost and logistics of each of the four options listed above. The parties will then be required to file a joint statement setting forth information regarding

each proposed use. The parties must contact the Court's Monitor, Dr. Stern, for guidance on the specific information they are to provide in the joint statement.

The joint statement should also address whether the contempt monies should remain in the Court's registry or whether the monies should be transferred to another entity for disbursement.

**NaphCare Policy Regarding Prisoner/Specialist Communications**

Based on the attached letter from Dr. Stern, as recently as March 2023, NaphCare had a policy prohibiting communication between specialists and prisoners. The reach of this policy is not entirely clear as it purports to prohibit prisoners from "overhear[ing]" certain discussions. However, Dr. Stern noted "any reasonable physician would interpret this instruction to include an admonishment not to discuss the matter with the patient." Other than precise future appointment dates, there is no reason to believe overhearing information conveyed to others is of special concern because the patient is a prisoner. And there is no obvious explanation why it would be inappropriate for a prisoner to "overhear" a doctor discussing the prisoner's condition with another individual, such as a nurse. There is not a prohibition on non-prisoners "overhearing" such discussions regarding their care. Thus, regardless of NaphCare's precise intent, it is clear NaphCare wished to have the specialist act differently when treating prisoners than how the specialist acts when treating non-prisoner patients. There is no basis for this dangerous policy.

Defendants must immediately investigate whether this policy remains in place and, if so, demand NaphCare rescind the policy. Simply rescinding the policy, however, is not enough because some specialists previously informed of the policy may be unaware it is no longer in place. Therefore, Defendants must ensure NaphCare takes corrective action by informing all specialists who may see prisoners in the future that the policy is rescinded. Defendants must also ensure the written information provided to specialists in the future includes a clear statement that NaphCare's prior policy limiting communications is no longer in place and the specialist is free to discuss all aspects of the prisoner's care with the prisoner. The only exception to this is that specialists may be asked not to inform the

prisoner of the exact dates of future visits.

Accordingly,

**IT IS ORDERED** the parties must file a joint notice regarding the contempt monies as directed herein no later than **October 31, 2023**.

**IT IS FURTHER ORDERED** no later than **October 31, 2023**, Defendants shall file a statement averring they have: 1) determined whether the previous policy regarding communication between specialists and prisoners remains in place; 2) informed NaphCare the previous policy regarding communication between specialists and prisoners must be rescinded; 3) demanded NaphCare take corrective action; and 4) required NaphCare provide written information to all specialists who see prisoners in the future that the prior policy has been rescinded.

**IT IS FURTHER ORDERED** Defendants' statement should be accompanied by a copy of the written statement NaphCare will now provide to specialists regarding communications.

Dated this 18th day of October, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge

- 3 -

**Marc F. Stern, MD, MPH**
**Court-Appointed Monitor,** *Jensen v. Thornell et al*

October 17, 2023

The Honorable Rosyln O. Silver
Senior United States District Judge
U.S. District Court for the District of Arizona
401 West Washington Street
Phoenix, Arizona 85003-2118

<u>via electronic mail only</u>

Dear Judge Silver:

The Court has asked me to opine on Exhibit 1.

To provide context, the Court understands that medical staff may be giving the form shown in Exhibit 1 to community-based specialists and health care providers ("practitioners") when ADCRR sends patients to them for evaluation. The part of the message in the Exhibit upon which I focus is the instruction to practitioners: "DO NOT allow the inmate to overhear[1] any discussion about recommended treatments, medications or follow-up appointments."

Significance:
Such an instruction is not consistent with community standard of care. The instruction poses a significant risk to the health of incarcerated patients for two reasons. First, it prevents the practitioner – who may be the only person who has sufficient expertise about the care plan – from having necessary conversations with the patient to discuss the pros and cons of the care plan and determine the best plan of care, and thus prevents patients from being able to provide informed consent. Second, it prevents the patient from acting as an effective advocate for themself. In any health care system, the patient plays a key role in ensuring that the plan of care is carried out. If the patient knows that a certain intervention is supposed to take place (because they were informed of the intervention by their care provider), they can bring it to the attention of the health care system if, by error, the intervention does not occur. This risk exists in all health care systems, but, based on the findings of this Court, the risk is particularly significant at ADCRR. Finally, this instruction serves no need that is particular to the practice of medicine in a penological institution.

---

[1] Though, the message instructs the specialist not to allow the patient to *overhear* any discussion, any reasonable physician would interpret this instruction to include an admonishment not to discuss the matter with the patient.

Remediation:

If the Court determines that the instruction contained in Exhibit 1 is currently being given to any community-based specialists or health care providers caring for ADCRR patients, two actions should be taken. First, ADCRR or its agent should mail a letter to every community-based specialist or health care provider who has provided care to an ADCRR patient from the time the instruction was first sent with patients. The letter should indicate that ADCRR or its agent has been informed by this Court that the instruction was provided in error and in the future, when caring for any ADCRR patient, the practitioner should conduct the same conversation with its patients that he/she would conduct with any non-correctional patient. The only exception is that neither the practitioner nor their staff should share with the patient the *exact date* of any future visit outside of the prison. This is a common and acceptable security practice to help prevent planned escapes. However, the practitioner *should* share with the patient the *approximate date* of the visit. For example, informing the patient that they should expect to have an MRI within two to three weeks is appropriate and desirable for patient safety. In addition to the letter, beginning immediately, the instruction that accompanies a patient to a visit with a practitioner should be modified to convey the information above. The instruction should indicate in very large font at the top of the page that the page contains new instructions that differ from previous instructions, effective the date the process begins; the large-font verbiage may be deleted from the page one (1) year after its first use.

If the Court determines that the instruction contained in Exhibit 1 is no longer being used and has been replaced by the correct instruction, I would still recommend that the letter described above be mailed to every practitioner who has provided care to an ADCRR patient from the time the instruction was first sent with patients.

Respectfully,

Marc F. Stern, MD, MPH

# EXHIBIT 1



## INSTRUCTIONS TO PRACTITIONER

THIS PATIENT IS AN INMATE WITH THE ARIZONA DEPARTMENT OF CORRECTIONS
– EYMAN COMPLEX, FOR SECURITY REASONS:

DO NOT allow the inmate to overhear any discussion about recommended
treatments, medications or follow-up appointments. DO NOT give inmate
medication samples!

*Notate recommended medications on the attached Consultation Report Form*

The Naphcare provider will review the recommendation and obtain a patient
specific prescription from our pharmacy.

Upon completion of todays appointment, please seal the complete Consultation
report and all associated paperwork in the manila envelope.

Please give the envelope directly to the Corrections Officer.

Within **5** business days, please EMAIL or FAX the dictated notes to any one of the
contacts below.

Terri Espinoza, Clinical Coordinator
Phone: 520-868-0201 ext. 83737
Terri.espinoza@naphcare.com

Artie Cordova, Clinical Coordinator
Phone: 520-868-4011 ext. 25789
artemisa.cordova@naphcare.com

Kim Ward, Scheduler
Phone: 520-868-0201 ext. 83743
Kimberly.ward@naphcare.com

Mary Edmons, Sheduler
Phone: 520-868-0201 ext. 86823
mary.edmons@naphcare.com

Morgan Walker, Clinical Coordinator
Phone: 520-868-4011 ext. 25788
Morgan.walker@naphcare.com

**FAX:**
**520-868-8530**