Scott Frakes; Response to Plaintiff's Objections

Cause No. 2:12-cv-00601-ROS
Jensen et al v. Thornell et al

After review of the objections to my staffing recommendations (Dkt. 4489) filed by the Defendants on October 16, 2023 (Dkt. 4492) I submit the following the responses:

1. One of the challenges in completing the staffing analysis and plans was identifying the correct number of staff to ensure section 22.1 of the Order was carried out as intended. Is the intent of the word "immediate" to be interpreted as instantaneous, or to convey urgency?  I'm aware of just one situation in standard correctional practices where instantaneous access to staff is provided, and that's people under direct observation or "continuous watch" in ADCRR terminology.  Even technological solutions (call buttons/lights) do not ensure instantaneous access to staff, and technological solutions will not address situations where a person is unwilling or unable to access the technology.  The best practice is a combination of technology and frequent staff presence.  At this point in time ADCRR has installed a technology solution in one small detention unit at the Winslow Complex, using materials repurposed from other areas in the facility.  Until the right technological solutions are identified, funded, and installed, ADCRR must rely on staff presence to comply with section 22.1 of the order.

   So, what is the correct number of staff needed to ensure compliance?  The Plaintiffs appear to believe that in maximum custody units there must be a staff member posted in each pod, ready to respond to any subclass member requesting access to staff.  In the Defendant's objections to my recommendations, they do not want to establish any Floor Rover posts in maximum custody, proposing to rely on the other assigned staff to comply with section 22.1 of the Order.

   There are 192 pods between the three maximum custody units, although many of the galleries are not being used at this time.  My staffing plans allocate a total of thirty-two Floor Rovers per shift between the three maximum custody locations, one Floor Rover per cluster of pods (typically six pods per cluster).  Thirty-two Floor Rover posts staffed 24/7 requires 161.28 fte's.  Placing a Floor Rover in each pod, on each shift, would add another 806.4 fte's to my original recommendations.

   The Plaintiffs' explanation of the general duties of the staff assigned to the maximum custody units is accurate.  What is not as well explained is how much of the work occurs in the pods, and how frequently staff are moving in and out of the pods.  I do agree that it could take up to 20 minutes for the assigned Floor Rover to access and walk through each of the pods, <u>cell-to-cell</u>, if all of the pods contain members of the subclass.

   The requirement established in section 22.1 of the Order is for members of the subclass to be able to effectively contact a staff member immediately.  Absent a technological solution, just the presence of staff in the pod can achieve the desired outcome.  The noise of the pod entry door opening will alert subclass members to the presence of staff, and getting the attention of staff is simply a matter speaking out, rapping on the window, or hand gestures.  Taking into consideration the total number of staff moving in and out of each of the pods during each shift, as they carry out their assigned duties, the subclass members will have excellent access to staff.  I made one additional recommendation in my staffing analysis/plans that will help achieve compliance with section 22.1; the direct supervisor (sergeant) post, 24/7.  This post will ensure all custody staff are doing their assigned duties, as well providing a resource with the authority to respond to many of the questions raised by members of the subclass.

In my staffing analysis report submitted to the Court on October 6, 2023 I stated "The installation of intercoms or listening devices in the day rooms of each pod housing subclass members would enhance access to staff, and could be accomplished much sooner than the work required to retrofit every cell.  The best long-term solution will be a combination of technology (call buttons, intercoms, indicator lights) and staffing."  I recommend encouraging the Defendants to install intercoms or listening devices in the dayrooms of every maximum custody pod as soon as possible, while they work on the longer-term solution of providing access at each cell.

2. I created the documents showing staffing for a wing, and a single cluster at Browning and SMU1 at the request of the Defendants.  In their objections they indicate they are no longer interested in these proposed plans.  My recommendation to the court is to remove Documents 11, 12, and 13 from my original submittal to the Court.  This should address the concerns raised by the Plaintiffs and the Defendants.

I appreciate the thorough and thoughtful feedback provided by the Plaintiffs during my efforts to complete the staffing analysis and plans, and the opportunities provided to resolve conflict prior to submitting my final report.