Scott Frakes; Response to Defendant's Objections

Cause No. 2:12-cv-00601-ROS
Jensen et al v. Thornell et al

After review of the objections to my staffing recommendations (Dkt. 4489) filed by the Defendants on October 16, 2023 (Dkt. 4493) I submit the following the responses:

1. As noted, I shared draft documents with the Defendants going back to mid-June. Our interactions and the information provided by the Defendants helped shape my recommendations. Attached are copies of three e-mails that partially demonstrate my efforts to engage the Defendants in August and September as I worked to complete the final recommendations. I was not provided feedback on the draft documents sent to the Defendants on August 18, September 16, and September 20, 2023. I believe my written communication with the Defendants both encouraged their review and input and reinforced the deadline established in the Order.

2. Detention units are, by nature, intended as a short-term housing location. The daily census can fluctuate by up to 50% or greater depending on the transfer of people in and out of a detention unit. My recommendations reflect the staffing resources needed to ensure the proper conditions of confinement are provided if the unit is completely filled, and every member of the subclass is requesting all the services and activities specified in the order. I agree with the Defendants' statement that delivery of services typically occurs during the hours of 6:00 am to 6:00 pm at locations utilizing 12-hour shifts. Based on observations and conversations with staff working in, and managing detention units, it is not possible to accomplish all of the daily tasks in a single 12-hour shift if the unit is filled to capacity and every subclass member wants access to recreation, showers, and other activities requiring interaction with staff. I recognize that the situation I describe is the exception, rather than the rule. But the Order calls for the "minimum number of staff to safely operate the locations" where members of the subclass are housed. Allowing the staffing levels to fluctuate based on the daily census will prevent compliance with the Order, as well as making it very difficult to measure compliance with the Order. Reducing the use of small or partial filled detention units is the correct answer to avoiding the "over-staffing" cited by the Defendants.

3. As described in my response to number 2, the staffing recommendations address the resources required to meet maximum demand for activities and services. I visited the Rast Maximum Custody unit and several detention units during the week of October 9-13, 2023, and noted compliance similar to that reported by ADCRR. What I also noted was that none of the locations were filled to capacity and include numerous instances where subclass members refused recreation and/or a shower when offered. While current staffing may achieve compliance when there is reduced demand, my staffing recommendations ensure compliance during periods of full demand.

4. I requested and was provided the calculations for determining the relief factor for 8-hour shifts. During conversations early in the process I was given the impression that a similar document did not exist for 12-hour shifts. The Defendants' 8-hour shift relief factor requires 1.80 fte's to staff a post 7-days a week, 8-hours a day (8/7). It therefore takes 5.4 fte's to staff a post 7-days a week, 24 hours a day (24/7). If a post must be filled 24/7,

1

the use of 8-hour shifts (3 x 1.80) or 12-hour shifts (2 x 2.70) leads to the same outcome of 5.4 fte's.

Having reviewed the calculations used by the Defendants to determine the relief factor for 12-hour shifts and 8-hour shifts, the only thing that is not addressed in the 12-hour shift relief factor is the overtime paid to staff during the 4-day/48 -hour work week.  The Defendants appear to have chosen to address that overtime cost outside of the relief factor.  There is not a national standard for relief factors.  The Defendants' 1.80 factor for 8-hour shifts and the 2.52 factor for 12-hour shifts fall within the range of relief factors used by other correctional systems.  The Defendants' 2.52 relief factor for locations utilizing 12-hour shifts ensures the staffing allocation needed to cover all posts identified in the recommended staffing plans, and I accept the recommendation.  Two examples of revised staffing plans utilizing the 2.52 relief factor are attached.  Once a final decision is reached on this issue, I will provide updated plans as/if needed.

5. I will speak to each document addressed by the Defendants.  Documents 11, 12, and 13 were produced at the request of the Defendants.  Since they are a point of contention for the Defendants and Plaintiffs, I recommend they be removed from my original submittal and discarded.  Documents 9, 14, and 16 were provided to illustrate staffing requirements for 8-hour shifts at those locations.  The Defendants appear to not have a use for those documents at this time.  I recommend they be removed from my original submittal and discarded.

   Document 1:   The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit.  I do not support this recommendation.  There is a need for 24/7 on-site supervision to ensure full compliance with the requirements of the Order.  The Defendants recommend reducing the number of Floor Staff posts from 4 to 2.  The Floor Staff conduct a number of essential functions, some of which must be conducted as a team of two people (movement in and out of cells, some escorts).  During times of peak demand, two Floor Officer posts is inadequate to accomplish all required duties.  These posts also contribute to the overall staffing numbers that will ensure compliance with section 22.1 of the Order.  The overall fte requirements would change if the relief factor is revised.  A draft of Document 1 with the revised relief factor is attached.

   Document 2:   The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit.  I do not support this recommendation.  There is a need for 24/7 on-site supervision to ensure full compliance with the requirements of the Order.  The Defendants recommend reducing the number of Floor Staff posts from 4 to 2.  I do not support this recommendation.  The Floor Staff conduct a number of essential functions, some of which must be conducted as a team of two people (movement in and out of cells, some escorts).  During times of peak demand, two Floor Officer posts is inadequate to accomplish all required duties.  These posts also contribute to the overall staffing numbers that will ensure compliance with section 22.1 of the Order.  The Defendants recommend not staffing the Floor Rover post on 3rd shift ("night shift").  The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order.  It must be staffed 24/7 until technological solutions can be installed and

shown to meet compliance with section 22.1 of the Order. I recommend no changes to Document 2.

Document 3: The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit. I do not support this recommendation. Based on the small size of these units one 12/7 supervisor post is adequate if the shift hours vary to ensure supervisory oversite on the AM and PM shifts. On-site custody supervision greater than 8-hours a day is needed to ensure full compliance with the requirements of the Order. The Defendants recommend not staffing the Floor Rover post on the PM shift. The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order. It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order. I recommend no changes to the number of posts identified in my original Document 3. The overall fte requirements would change if the relief factor is revised.

Document 4: The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit. I do not support this recommendation. Based on the small size of these units my recommendation for two 8/5 custody supervisor posts on opposing shifts/days off with varying shift hours will ensure supervisory oversite across the three shifts. On-site custody supervision greater than 8-hours a day is needed to ensure full compliance with the requirements of the Order. The Defendants recommend not staffing the Floor Rover post on 3rd shift ("night shift"). The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order. It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order. I recommend no changes to Document 4.

Document 5: The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit. I do not support this recommendation. There is a need for 24/7 on-site supervision to ensure full compliance with the requirements of the Order. The Defendants recommend reducing the number of Floor Staff posts from 4 to 2. The Floor Staff conduct a number of essential functions, some of which must be conducted as a team of two people (movement in and out of cells, some escorts). During times of peak demand, two Floor Officer posts is inadequate to accomplish all required duties. These posts also contribute to the overall staffing numbers that will ensure compliance with section 22.1 of the Order. The overall fte requirements would change if the relief factor is revised.

Document 6: The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit. I do not support this recommendation. There is a need for 24/7 on-site supervision to ensure full compliance with the requirements of the Order. The Defendants recommend reducing the number of Floor Staff posts from 4 to 2. I do not support this recommendation. The Floor Staff conduct a number of essential functions, some of which must be conducted as a team of two people (movement in and out of cells, some escorts). During times of peak demand, two Floor Officer posts is inadequate to accomplish all required duties. These posts also contribute to the overall staffing numbers that will ensure compliance with section 22.1 of the Order. The Defendants recommend not staffing the Floor Rover post on 3rd shift

("night shift").  The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order.  It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order.  I recommend no changes to Document 6.

Document 7:   The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit.  I do not support this recommendation.  Based on the small size of these units one 12/7 supervisor post is adequate if the shift hours vary to ensure supervisory oversite on the AM and PM shifts.  On-site custody supervision greater than 8-hours a day is needed to ensure full compliance with the requirements of the Order.  The Defendants recommend not staffing the Floor Rover post on the PM shift.  The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order.  It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order.  I recommend no changes to the number of posts identified in my original Document 7.  The overall fte requirements would change if the relief factor is revised.

Document 8:   The Defendants recommend establishing one 8.7 sergeant post for custody supervision of the unit.  I do not support this recommendation. Based on the small size of these units my recommendation for two 8/5 custody supervisor posts on opposing shifts/days off with varying shift hours will ensure supervisory oversite across the three shifts.  On-site custody supervision greater than 8-hours a day is needed to ensure full compliance with the requirements of the Order.  The Defendants recommend not staffing the Floor Rover post on 3rd shift ("night shift").  The Floor Rover post was established by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order.  It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order.  I recommend no changes to Document 8.

Document 10:   The Defendants recommend providing no relief factor for the 24/7 Lieutenant post.  This post is identified as <u>Mandatory</u>, and must be filled at all times.  Failing to provide a relief factor will require the Defendants to find or fund coverage when the position is vacant, from some other source.  I recommend maintaining a relief factor for this post.  The Defendants recommend establishing two additional lieutenant posts to perform administrative duties.  I acknowledge that the Defendants can add additional staff where they see the need, but I won't include these two posts in my recommendations.

The Defendants have different ideas about how they allocate sergeants (custody supervisors) within a maximum custody unit, and in this case recommended more fte's than I recommended.  I can support the Defendants' recommendations for sergeant staffing, but those posts identified as <u>Mandatory</u> must include a relief factor of 2.7 or 2.52.  This would add an additional 4.16 fte's to the Defendants' recommendations for sergeant staffing.  I recommend the Defendants accept my proposal for sergeant staffing, and then allocate additional resources to address other needs they identify.

4

The Defendants recommend twenty-four 24/7 posts for the Housing Unit Floor positions, as opposed to my recommendation of thirty-six 12/7 posts on the AM shift and twenty-four 12/7 posts on the PM shift.  The AM shift is where most of the daily activity occurs, therefore the work demand for the Housing Unit Floor Officers would be significantly greater on the AM shift than it is on the PM shift.  The Defendants identified 10.08 fte's for the BMU Floor posts that were not in my recommendations. Further conversation with the Defendants is needed to clarify the purpose of these posts.

The Defendants recommend doubling the number of External Escort posts on the AM shift, and eliminating the Recreation posts on both the AM and PM shifts.  This is an overall reduction of approximately 20 fte's from what I recommended, and removes the dedicated resource established to address section 27.3.3 of the Order.  I do not support this recommendation.

The Defendants recommend eliminating the Floor Rover posts, stating "This is not currently an ADCRR post. This function is carried out by the assigned housing unit officers".  During my visit to Rast Maximum custody on October 9, 2023 a staff member was identified as the "Rover", performing the duties that assist with complying with section 22.1 of the order. The Floor Rover post was established at various locations by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order.  It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order.  I do not support this recommendation.

The final section of Document 10 identifies the posts that I would describe as "support functions".  The Defendants state "NOT DIRECTLY RELATED TO SUBCLASS HOUSING", but do not recommend removing the posts.  In maximum custody housing these posts are important or essential to ensuring the safe operation of the locations housing subclass members, and should be addressed as part of the staffing plan.  The Defendants do not provide a relief factor for these posts, and I can support that decision.  The Defendants identified two additional support posts, "Mail and Property" that are not in my recommendations.  I would revise my recommendations to include these two posts, and mirror the Defendant's recommendations.

Document 15:    The Defendants recommend providing no relief factor for the 24/7 Lieutenant post.  This post is identified as <u>Mandatory</u>, and must be filled at all times. Failing to provide a relief factor will require the Defendants to find or fund coverage when the position is vacant, from some other source.  I recommend maintaining a relief factor for this post.   The Defendants recommend establishing three additional lieutenant posts to perform administrative duties.  I acknowledge that the Defendants can add additional staff where they see the need, but I won't include these three posts in my recommendations.

The Defendants have different ideas about how they allocate sergeants (custody supervisors) within a maximum custody unit, and in this case recommended more fte's than I recommended.  I can support the Defendants' recommendations for sergeant staffing, but the "Wing 1" posts would be designated <u>Mandatory</u> and must include a relief factor of 2.7 or 2.52.  This would add an additional 3.64 fte's to the Defendants'

5

recommendations for sergeant staffing. I recommend the Defendants accept my proposal for sergeant staffing, and then allocate additional resources to address other needs they identify.

The Defendants recommend seventeen 12/7 Housing Unit Floor posts on the AM shift, while I recommended eighteen 12/7 posts. Staff working in Housing Unit Floor posts perform a number of their duties working in teams of two. I will maintain my original recommendation of eighteen 12/7 Housing Unit Floor posts on the AM shift.

I accept the Defendants' recommendation for additional Yard posts.

I accept the Defendant's recommendation for additional Medical Security posts.

The Defendants recommended changing the staffing for Recreation (observation) to six 8/5 posts. That staffing level is not adequate to provide the required observation during periods of peak demand. These are mandatory posts and must include a relief factor.

The Defendants recommend eliminating the Floor Rover posts, stating "This is not currently an ADCRR post. This function is carried out by the assigned housing unit officers". During my visit to Rast Maximum custody on October 9, 2023 a staff member was identified as the "Rover", performing the duties that assist with complying with section 22.1 of the order. The Floor Rover post was established at various locations by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order. It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order. I do not support this recommendation.

The final section of Document 15 identifies the posts that I would describe as "support functions". The Defendants state "NOT DIRECTLY RELATED TO SUBCLASS HOUSING", but do not recommend removing the posts. In maximum custody housing these posts are important or essential to ensuring the safe operation of the locations housing subclass members, and should be addressed as part of the staffing plan. The Defendants do not provide a relief factor for these posts, and I can support that decision. The Defendants identified ten additional support posts that are not in my recommendations. I would revise my recommendations to include these ten posts, and mirror the Defendant's recommendations.

Document 17: The Defendants recommend providing no relief factor for the 24/7 Lieutenant post. This post is identified as <u>Mandatory</u>, and must be filled at all times. Failing to provide a relief factor will require the Defendants to find or fund coverage when the position is vacant, from some other source. I recommend maintaining a relief factor for this post. The Defendants recommend establishing two additional lieutenant posts to perform administrative duties. I acknowledge that the Defendants can add additional staff where they see the need, but I won't include these two posts in my recommendations.

The Defendants have different ideas about how they allocate sergeants (custody supervisors) within a maximum custody unit, and in this case recommended more fte's than I recommended. I can support the Defendants' recommendations for sergeant

staffing, but the posts are <u>Mandatory</u> and must include a relief factor of 2.7 or 2.52. This would add an additional 3.12 fte's to the Defendants' recommendations for sergeant staffing. I recommend the Defendants accept my proposal for sergeant staffing, and then allocate additional resources to address other needs they identify.

The Defendants recommend thirty-two 12/7 Housing Unit Floor posts on the AM shift, while I recommended forty-eight 12/7 posts. The AM shift is where most of the daily activity occurs, therefore the work demand for the Housing Unit Floor Officers would be significantly greater on the AM shift than it is on the PM shift. I will stay with my recommendation for thirty-two 12/7 Housing Unit Floor posts on the AM shift.

The Defendants recommend doubling the number of External Escort posts on the AM shift, and eliminating the Recreation posts on both the AM and PM shifts. This is an overall reduction of approximately 36 fte's from what I recommended, and removes the dedicated resource established to address section 27.3.3 of the Order. I do not support this recommendation.

The Defendants recommend eliminating the Floor Rover posts, stating "This is not currently an ADCRR post. This function is carried out by the assigned housing unit officers". During my visit to Rast Maximum custody on October 9, 2023 a staff member was identified as the "Rover", performing the duties that assist with complying with section 22.1 of the order. The Floor Rover post was established at various locations by the Defendants to help ensure compliance (with assistance from all of the other staff assigned to the unit) with 22.1 of the Order. It must be staffed 24/7 until technological solutions can be installed and shown to meet compliance with section 22.1 of the Order. I do not support this recommendation.

The final section of Document 17 identifies the posts that I would describe as "support functions". The Defendants state "NOT DIRECTLY RELATED TO SUBCLASS HOUSING", but do not recommend removing the posts. In maximum custody housing these posts are important or essential to ensuring the safe operation of the locations housing subclass members, and should be addressed as part of the staffing plan. The Defendants do not provide a relief factor for these posts, and I can support that decision. The Defendants identified four additional support posts that are not in my recommendations. I would revise my recommendations to include these four posts, and mirror the Defendant's recommendations.

Document 18:   The Defendants recommend six additional fte's over my recommendations and provide the resources needed to carry out the Order. I accept the Defendant's recommendations.

Document 19:   The Defendants recommended using one 8/7 sergeant post to provide direct supervision of staff. I will accept this change with the agreement that the post will be designated <u>Mandatory</u>, rather than <u>Essential</u>.

Document 20:   The Defendants recommended using one 12/7 sergeant post to provide direct supervision of staff. Based on the size and complexity of the unit I believe it is necessary to provide one 24/7 sergeant post, ensuring direct supervision of the staff within the unit during both shifts. I do not support the Defendants' recommendation.

The Defendants recommended reducing the Floor Staff from four posts to two posts on the AM and PM shifts. The operational security requirements for people housed Mental Health Watch beds are different than detention and maximum custody, and rarely require two Officers for escorts or use of restraints. I accept the Defendants' recommendation.

The Defendants recommended reducing the number of Mental Health Watch posts from six 24/7 posts to two 24/7 posts. They propose to staff additional continuous watches by assigning staff from other locations. Based on information shared with me during visits to Rincon, the number of continuous watches varies greatly but rarely drops below 4-5. I believe establishing six 24/7 Mental Health Watch posts will ensure adequate staffing day to day and avoid putting additional staffing stress on other areas of the facility. I do not support the Defendant's recommendation.

Document 21:   The Defendant's do not support establishing one 8/5 sergeant post to provide direct supervision of the staff assigned to carry out the mental health watch duties. After further consideration of the small number beds (16) and other resources existing within the Yuma Complex, I will accept this recommendation.

The Defendants recommended reducing the number of Mental Health Watch posts from three to two on 1st and 3rd shifts. Based on information shared with me, the number of continuous mental health watches rarely dips below three, and is frequently greater. I was told on September 26th that average number of watch cells in use was ten over the previous sixty days (information did not indicate the type of watch). I do not support the Defendant's recommendation.

There are a number of areas where I support the Defendants' recommendations and, in most cases, this would lower the overall number of fte's recommended in my final report. The Plaintiffs may have objections to the changes identified in this document. The attached examples of staffing plans utilizing the Defendant's 2.52 relief factor for 12-hour shifts do not include other proposed changes discussed in this document. The examples are provided to demonstrate how the change in the relief factor impacts the overall fte count.

At the point agreement is reached or a decision issued, I will produce revised versions of any staffing plans that have been modified.

## Custody staffing analysis/plans - DRAFT

From:  Scott Frakes (srfrakes@yahoo.com)

To:    dwalker1@azadc.gov; elao@azadc.gov

Cc:    smalone@azadc.gov

Date:  Friday, August 18, 2023 at 03:23 PM PDT


Attached are the most current versions of the detention documents, and SMU 1. I produced versions of SMU 1 for staffing a wing, and 1 gallery. After thinking about it, I'm going to try and redo the single gallery document so it can be used as a subtraction tool: if you close a gallery, you can operate with xx less staff; close two galleries and it's xx less staff (and so on).

I still need to do plans for Browning, Rast, Rincon (MHW), Yuma (MHW + detention), and Phoenix (MHW)

I have shared all of this with the plaintiffs and the other monitors. Feel free to share it with anyone else on your team. I'm determined to complete this before my 10/7/23 deadline.

Send me back input/questions. If you want to schedule a video call to discuss, we can do that also. Thanks!

📁 Detention with control booths.zip
   51.8kB

📁 Detention no control booths.zip
   51.4kB

📁 Detention - no control booths.zip
   51.3kB

📄 Staffing analysis draft 8-18-23.docx
   27.1kB

📁 SMU1.zip
   59.4kB


[Document 1](#)

## Staffing analysis

From:   Scott Frakes (srfrakes@yahoo.com)
To:     dwalker1@azadc.gov; elao@azadc.gov
Date:   Saturday, September 16, 2023 at 04:11 PM PDT

Please review this (final) draft of the staffing analysis document. I'll share all the individual plans in a separate e-mail - probably be about a week.

I need confirmation on the number of detention units and MH watch units (confirm that the numbers I used are correct).

I know SMU1 is almost empty of MAX guys, but I'm going with the presumption that there will still be subclass members housed there for a while longer.

I'm open to any other input - and your input does not preclude the agency from challenging the final plan as submitted to the court (before 10/7/23). My goal is to avoid confusion, and be in as much agreement as possible.

Please turn this around as quick as you can. It will look somewaht different from what I sent you on 8/18, but it's just been reorganized and clarified. I didn't change any of my methodology, or the staffing recommendations.

Thanks!!!


Staffing analysis draft 9-18-23.docx
28.4kB

[Document 2](#)

Staffing plans

From: Scott Frakes (srfrakes@yahoo.com)
To: dwalker1@azadc.gov; elao@azadc.gov
Date: Monday, September 18, 2023 at 08:41 AM PDT

Here's most of the MAX staffing plans. I still need to finish the plans for Rast, but they will be conceptually like Browning/SMU1. Please give them a look over and send me your questions/suggestions/concerns. We are getting close.

I've also included the Detention plans, but those haven't changed since we met and discussed back in early August.

The MHWatch plans are the last piece, and I'll have them done by 9/27/23 (or sooner).

Thank you again for all of your help with this project. As they say, the Devil is in the details!

Staffing plans pdf.zip
369.9kB

Document 3

*Post Staffing Analysis, 12 hour shifts - Maximum Custody Housing Unit (facility), Rast*

| Post Location | Necessity | Post Position Title | Duties & Responsibilities | Type 5 day | Type 7 day | # of Posts by Shift Day | # of Posts by Shift 1st | # of Posts by Shift 2nd | Relief Factor | Total FTE Req. |
|---|---|---|---|---|---|---|---|---|---|---|
| Shift Office | **Mandatory** | Lieutenant | Shift Supervisor | | x | | 1 | 1 | 2.52 | 5.04 |
| **SUBTOTAL** | | **Lieutenants** | | | | **0** | **1** | **1** | | **5.04** |
| Shift Office | **Mandatory** | Sergeant | Asst Shift Supv | | x | | 1 | 1 | 2.52 | 5.04 |
| Yard | **Mandatory** | Sergeant | Supervise Yard Staff | | x | | 1 | | 2.52 | 2.52 |
| Wing 1 | **Essential** | Sergeant | Supervison (4 clusters) | | x | | 1 | | 2.52 | 2.52 |
| Administrative | **Important** | Sergeant | Visiting, property, tools, etc | x | | 2 | | | 1.25 | 2.50 |
| **SUBTOTAL** | | **Sergeants** | | | | **2** | **3** | **1** | | **12.58** |
| Main Control | **Mandatory** | Officer/Cprl | Control Unit access | | x | | 1 | 1 | 2.52 | 5.04 |
| Housing Unit Control | **Mandatory** | Officer/Cprl | Control cluster, pod and cell access | | x | | 3 | 3 | 2.52 | 15.12 |
| Wing Control | **Mandatory** | Officer/Cprl | Control - Wing access | | x | | 1 | 1 | 2.52 | 5.04 |
| Housing Unit Floor | **Mandatory** | Officer/Cprl | Count, escorts, feeding | | x | | 18 | 14 | 2.52 | 80.64 |
| Yard Officer/Cprl | **Mandatory** | Officer/Cprl | Movement control | | x | | 2 | 1 | 2.52 | 7.56 |
| External Escort | **Essential** | Officer/Cprl | Movement off of the housing unit | | x | | 4 | 2 | 2.52 | 15.12 |
| Medical Security | **Essential** | Officer/Cprl | Security in the medical unit | | x | | 1 | 1 | 2.52 | 5.04 |
| Watch | **Essential** | Officer/Cprl | Direct/indirect observation | | x | | 2 | 2 | 2.52 | 10.08 |
| Recreation | **Mandatory** | Officer/Cprl | Direct observation of recreation | | x | | 3 | 1 | 2.52 | 10.08 |
| Floor Rover | **Mandatory** | Officer/Cprl | Direct access to staff (#22) | | x | | 4 | 4 | 2.52 | 20.16 |
| Kitchen | **Mandatory** | Officer/Cprl | Food prep security | | x | | 2 | 2 | 2.52 | 10.08 |
| SSU | **Important** | Officer/Cprl | Intelligence/Investigations | x | | 1 | | | 1.00 | 1.00 |
| Tool Control | **Important** | Officer/Cprl | Tool security | x | | 1 | | | 1.00 | 1.00 |
| Accountablity | **Important** | Officer/Cprl | ?? | x | | 1 | | | 1.00 | 1.00 |
| Sallyport | **Mandatory** | Officer/Cprl | access security | x | | 1 | | | 1.00 | 1.00 |
| Work Coordinator | **Essential** | Officer/Cprl | Work crews | x | | 2 | | | 1.00 | 2.00 |
| Key Control | **Essential** | Officer/Cprl | Key Control | x | | 1 | | | 1.00 | 1.00 |
| Visitation | **Essential** | Officer/Cprl | Visiting security/management | x | | 4 | | | 1.25 | 5.00 |
| **SUBTOTAL** | | **Officer/Cprl** | | | | **11** | **41** | **32** | | **195.96** |
| **Total fte's** | | | | | | | | | | **213.58** |
| 2.52 relief factor DRAFT | | | | | | | | | | |

Draft revisions to Document 15 using 2.52 relief factor.

Document 4

| Post Staffing Analysis - 50-100 bed detention unit with functioning control booth - 12 hour shifts ||||||||||
|---|---|---|---|---|---|---|---|---|---|
| Post Location | Necessity | Post Position Title | Duties & Responsibilities | Type || # of Posts by Shift ||| Relief | Total |
| | | | | 5 day | 7 day | Day | 1st | 2nd | Factor | FTE Req. |
| Direct Supervisor | **Essential** | Sergeant | Shift Supervision | | x | | 1 | 1 | 2.52 | 5.04 |
| **SUBTOTAL** | | **Sergeants** | | | | **0** | **1** | **1** | | **5.04** |
| Control booth | **Mandatory** | Officer/Cprl | Pod observation, cell access | | x | | 1 | 1 | 2.52 | 5.04 |
| Floor Staff | **Mandatory** | Officer/Cprl | Count, feeding, observation, escorts | | x | | 4 | 4 | 2.52 | 20.16 |
| Floor Rover | **Mandatory** | Officer/Cprl | Access to staff #22 | | x | | 1 | 1 | 2.52 | 5.04 |
| Recreation | **Mandatory** | Officer/Cprl | Direct observation of recreation | | x | | 1 | 0 | 2.52 | 2.52 |
| **SUBTOTAL** | | **Officer/Cprl** | | | | **0** | **7** | **6** | | **32.76** |
| **Total fte's** | | | | | | | | | | **37.80** |

Staffing levels are not tied to the number of people housed in the detention unit, and must be followed if just one member of the subclass in housed in the

In detention units utilizing 1-2 "short-term" watch beds, those beds will be staffed as temporary posts, filled only as needed. Any staffing for temporary posts is in addition to the staffing required to operate the detention unit, per the staffing plan.

Draft revisions to Document 1 using 2.52 relief factor.

Document 5