1 | KRISTIN K. MAYES
ATTORNEY GENERAL

2

3 | Gregory Honig, Bar No. 018804
Lucy M. Rand, Bar No. 026919
Assistant Attorneys General

4 | 2005 North Central Avenue
Phoenix, AZ  85004-1592

5 | Telephone: (602) 542-1645
Fax: (602) 542-7670

6 | Gregory.Honig@azag.gov
Lucy.Rand@azag.gov

7

8 | Daniel P. Struck, Bar No. 012377
Rachel Love, Bar No. 019881

9 | Timothy J. Bojanowski, Bar No. 022126
Nicholas D. Acedo, Bar No. 021644

10 | STRUCK LOVE BOJANOWSKI & ACEDO, PLC
3100 West Ray Road, Suite 300

11 | Chandler, Arizona  85226
Telephone:  (480) 420-1600

12 | Fax:  (480) 420-1695
dstruck@strucklove.com

13 | rlove@strucklove.com
tbojanowski@strucklove.com

14 | nacedo@strucklove.com

15 | *Attorneys for Defendants*

16

17 | **UNITED STATES DISTRICT COURT**

18 | **DISTRICT OF ARIZONA**

19 | Shawn Jensen, et al.,                                NO. CV-12-00601-PHX-ROS

20 |        Plaintiffs,

   v.                                      **DEFENDANTS' REPORT**
**REGARDING SUBCLASS ISSUES**

21 | Ryan Thornell, et al.,

22 |        Defendants.

23

24 |   Defendants, through counsel, submit this Report Regarding Subclass Issues to the

25 | Court, the Court Monitors, and Plaintiffs to clarify, explain, and correct some of the issues

26 | and concerns raised in Plaintiffs' Response to Defendants' Objections to the Proposed

27 | Correctional Staffing Analysis and Plan.  (Dkt. 4497.)

28

## Staffing in Detention Units

In their Response to Defendants' Objections, Plaintiffs raise concerns with Defendants' staffing proposal. Specifically, they assert that when an emergency occurs within a detention unit at a time when a single pair of Floor Officers are escorting a prisoner outside of their cell, a single Floor Rover would be unable to open the cell door or take the person to medical as the only person on the unit. Dkt. 4497 at p. 5. During an emergency, however, an ICS is initiated to allow for additional resources to help manage the emergency. During an ICS, there does not have to be two staff at a door to access a cell. Staff would remain in the detention unit while another staff member escorted the prisoner to medical. *See* DO 706.

Plaintiffs also assert that Defendants have not explained how a single pair of Floor Officers could do all the tasks that they are required to do in a detention unit. *Id.* Defendants submit that two floor officers could attend to all their duties, as the Floor Rover would be responsible for the safety and security checks in the housing unit, allowing the floor officers to perform the other duties required of that post.

## Douglas Mohave Detention Unit

Plaintiffs also point out that Defendants did not produce any information regarding the detention unit at Douglas. *Id.* This is because Douglas was not part of the sample chosen for this period of time. Specifically, there were only 18 subclass members housed in Douglas Mohave during the audit period. The prisoners, who were picked as part of the randomization process approved by the Monitor, were not present during the week chosen. Defendants have been and continue to utilize samples in the way the Court Monitor has directed. (See Declaration of Erica Altigieri, attached as Exhibit 1, paragraph 12. See also Exhibit 3, Memorandum from Sean Malone to the Facility Wardens dated November 6, 2023.)

Plaintiffs were also concerned that a few files chosen to show out-of-cell ("OOC") time for subclass members include information showing less than a week. Dkt. 4497, p. 5. But that is because the OOC sheets are chosen randomly, and many of the files chosen

include prisoners who have not been housed in a detention unit for an entire week. (Exhibit 1, Paragraph 13.)

**Tracking Forms at Lewis Bachman**

Plaintiffs note that tracking forms from Lewis Bachman reflect lunch being offered separately from breakfast on certain days, indicating that they are not accurately reflecting what is happening in the housing unit. Dkt. 4497 at p. 6. In this instance, though, the Sergeant who had reviewed the OOC sheets during a document review had improperly annotated these meals. An IR was written on this incident and the Sergeant has been directed as to the appropriate way to review the OOC sheets. (Exhibit 1, Paragraph 14.)

Plaintiffs also have concerns about the tracking of the time meals are served. Dkt. 4497 at p. 7. Plaintiffs are correct that the time being annotated is the time that meals are being served on the unit instead of by prisoner. The fact that all prisoners on the unit received a meal, however, is easy to track, as the number of meals served and the total number of prisoners in the unit are annotated and compared.

**Recreation Offerings**

Plaintiffs are concerned that recreation is being offered in a "manner intended to discourage people from going to recreation". Dkt. 4497 at p. 9. In the situations noted, the refusal videos have been pulled, showing that the prisoners are declining on camera. Moreover, recreation was offered for later in the day, not at 5 a.m. This practice, though, has been amended to ensure that real-time offerings are taking place. (Exhibit 1 at. Paragraph 17.)

Plaintiffs are also concerned that at Eyman there are no logs reflecting that officers are conducting checks on prisoners when they are out to recreation. Dkt. 4497 at p. 10. This is because this recreation was occurring in the pod.  The officer can see the prisoner while he is recreating, which is an appropriate check.  (Exhibit 1 at paragraph 18.)

**Being Left in Showers for an Unreasonable Amount of Time**

Plaintiffs also noted a legitimate concern that paperwork is showing that prisoners are locked in the shower for excessive amounts of time. Dkt. 4497 at p. 11. Upon review

and investigation of these individual situations, this did not occur and was simply an issue with inadequate recordkeeping. (See Exhibit 1, Attachments 2-6, Inmate letters and IRs relating to shower issue.)

## ADCRR Shift Relief Factor Explained

Both Plaintiffs and Mr. Frakes expressed confusion over ADCRR's shift relief factor. The shift relief factor is the identification of the number of staff working full time that need to be allocated to ensure that a post is covered for the operational period on a continuous basis. The purpose of calculating the relief factor is to identify the required staff that need to be allocated to each post to allow continuous coverage. Calculation of the relief factor takes into consideration the number of days in a year and divides the number of workdays staff is available to work that year. (See generally, Exhibit 2, Declaration of Ed Lao.)

There are four variables that are taken into consideration when calculating the relief factor and are as follows:

1) Post operational period – how often the post should be filled and for how many hours;

2) Post operational schedule – the number of days per week the post is required to operate;

3) Post relief requirement – if the post coverage needs to be relieved during the operational period; and

4) Employee leave – typical employee leave usage.

The calculation of the relief factor identifies the total number of workdays the staff are available per year. To calculate this the following variables are cumulatively added.

- Employee days off
- Average paid leave usage (Annual Leave/Compensatory Leave/ Holiday Leave)
- Sick Leave Usage
- Training
- Unpaid Leave
- Other (i.e. civic duty / temporary work assignment)

The sum of all these variables gives the total the number of workdays that an employee is unavailable for work in a year.

4

For example, the ADCRR 12-Hour Staffing model calculates the number of days an employee is unavailable based on the following:

- 182 - Staff  days off (3 days on long work week x 26 weeks and 4 days on short work week x 26 weeks)
- 15 – (Annual/Compensatory/Holiday leave taken)
- 7 – Paid Sick Leave taken
- 5 - In service training
- 1 – Military Leave
- 3 – LWOP (unpaid leave)
- 1 – Other (civic duty / temporary work assignment)
- 6 – Pre Service Training

Summing up all these, anticipated leave usage equals **220 days.**

The next step is to calculate the number of available days an employee is available to work per year. To obtain this, the number of days in a year must be subtracted from the employee anticipated leave usage.

**365 days** per year **minus 220 days (anticipated leave usage) equals 145 total work days** the employee is available to work per year.

The ADCRR Relief factor is calculated based on the following:

- Days per Year – 365
- Staff workdays available per year – 145

**365 days** per year **divided (/)** by **145 days** staff available to work per year **equals (=) 2.517 Relief Factor**.

The ADCRR 12-hour staffing model utilizes this relief factor. In this 12-hour model the 7-day continuous coverage is accomplished by offsetting the employee days off, so they do not overlap. This allows the coverage of a post in a 7-day period. Employee Roster Day Offs ("RDOs") are static (fixed) unlike other 12-hour shift platforms. This requires a lower relief factor compared to other 12-hour platforms with rotating days off. It also allows a more stable workforce to provide consistent delivery of services to the inmate population.

The following table illustrates the ADCRR 12-hour platform and coverage for units. ADCRR's model utilizes four quadrants for security posts that require 24-hour coverage / 7 days per week. Quadrants are essentially the set or block of RDOs. Each shift requires two blocks with opposing days off for this model to function.

5

**Week 1**

|          | Sat | Sun | Mon | Tue | Wed | Thu | Fri |
|----------|-----|-----|-----|-----|-----|-----|-----|
| AM Front |     | RDO | RDO | RDO | RDO |     |     |
| AM Back  | RDO |     |     |     |     | RDO | RDO |

**Week 2**

|          | Sat | Sun | Mon | Tue | Wed | Thu | Fri |
|----------|-----|-----|-----|-----|-----|-----|-----|
| AM Front |     | RDO | RDO | RDO |     |     |     |
| AM Back  | RDO |     |     |     | RDO | RDO | RDO |

**Week 3**

|          | Sat | Sun | Mon | Tue | Wed | Thu | Fri |
|----------|-----|-----|-----|-----|-----|-----|-----|
| PM Front |     | RDO | RDO | RDO | RDO |     |     |
| AM Back  | RDO |     |     |     |     | RDO | RDO |

**Week 4**

|          | Sat | Sun | Mon | Tue | Wed | Thu | Fri |
|----------|-----|-----|-----|-----|-----|-----|-----|
| PM Front |     | RDO | RDO | RDO |     |     |     |
| PM Back  | RDO |     |     |     | RDO | RDO | RDO |

### Defendants Proposed Changes to Mr. Frakes's Staffing Analysis

ADCRR does not utilize a complex formula to calculate its 12-hour shift relief factor. The calculation of the relief factor takes into consideration the following:

    a)    The estimated or anticipated number of leave an employee will utilize in a year, and

    b)    The staff total amount of workdays per year.

The ADCRR 12-hour staffing model has 145 workdays per year compared to 182 for other 12-hour platforms. It is also static (non-rotating days off). This allows the RDOs to mesh to provide 7-day coverage. Because of this configuration, it is necessary to have staff assigned in two different but opposing blocks of RDO sets in the AM or PM Shifts to provide the 7-day coverage. These blocks of RDO sets are what ADCRR refers to as

quadrants. The two sets of RDO blocks are operationally necessary with this staffing model.

Defendants reiterate that the rover position proposed by Mr. Frakes should not be applied in a "cookie cutter" approach. The variation in physical plant layouts, sightlines, and proximity to staff should be taken into consideration.

DATED this 6th day of November, 2023.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By /s/ Daniel P. Struck
    Daniel P. Struck
    Rachel Love
    Timothy J. Bojanowski
    Nicholas D. Acedo
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226

    KRISTIN K. MAYES
    ATTORNEY GENERAL

    Gregory Honig
    Lucy M. Rand
    Assistant Attorneys General
    2005 North Central Avenue
    Phoenix, AZ  85004-1592

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alison Hardy:               ahardy@prisonlaw.com

Asim Dietrich:              adietrich@azdisabilitylaw.org; emyers@azdisabilitylaw.org; phxadmin@azdisabilitylaw.org

Corene T. Kendrick:         ckendrick@aclu.org

David Cyrus Fathi:          dfathi@npp-aclu.org; astamm@aclu.org;hkrase@npp-aclu.org

Donald Specter:             dspecter@prisonlaw.com

Eunice Cho                  ECho@aclu.org

Jared G. Keenan             jkeenan@acluaz.org

Maria V. Morris             mmorris@aclu.org

Maya Abela                  mabela@azdisabilitylaw.org

Rita K. Lomio:              rlomio@prisonlaw.com

Rose Daly-Rooney:           rdalyrooney@azdisabilitylaw.org

Sara Norman:                snorman@prisonlaw.com

Sophie Jedeikin Hart        sophieh@prisonlaw.com

Gregory Honig               Gregory.Honig@azag.gov

Lucy Rand                   Lucy.Rand@azag.gov

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is not a registered participant of the CM/ECF System:

N/A

/s/ Daniel P. Struck