**EXHIBIT 2**

**EXHIBIT 2**




# Arizona Department of Corrections
# Rehabilitation & Reentry

701 E. Jefferson St.
PHOENIX, ARIZONA 85034
(602) 542-5497
corrections.az.gov

**KATIE HOBBS**
GOVERNOR

**RYAN THORNELL**
DIRECTOR

March 8, 2024

**VIA EMAIL ONLY**
Bradford McLane, CEO
NaphCare
2090 Columbiana Rd., Ste. 4000
Birmingham, AL  35216
brad.mclane@naphcare.com

RE:    NaphCare's Rate of Hiring/Staffing Progress

Mr. McLane:

As you are aware, we have serious concerns about NaphCare's lack of progress in filling the contractually required staffing positions. We wrote to you on November 29, 2023, demanding that NaphCare take immediate steps to significantly increase compensation in order to avoid a contempt finding. And we have reiterated the significant concerns regarding staffing in every conversation since. We also advised you that privatized healthcare was being viewed by the Court and the Plaintiffs as the reason why the healthcare provisions in the Injunction were not being met. After reviewing the latest staffing report, it does not appear that sufficient efforts have been made in recruiting healthcare staff in the past three months. Specifically, as of the February 2024 monthly staffing report, of the 1431.3 positions required by the contract at that time, NaphCare had filled only 935.70 positions. This is 65% of the current contractual requirement.

Frankly, it is unacceptable that 11 months into the Injunction and 17 months into the Contract, NaphCare has made so little progress in hiring. At this point, we expect that NaphCare would have 85% of the FTE positions filled, at least.

In November 2023, ADCRR and NaphCare entered into Amendment 12 to Inmate Correctional Healthcare Contract CTR060508 ("the Contract"). The Amendment was negotiated and agreed upon with the understanding of both parties that it was necessary in order to comply with the Permanent Injunction (the "Injunction") in *Jensen v. Thornell*, No. CV-12-00601-PHX-ROS. As set forth in Amendment 12, it is NaphCare's responsibility "to comply with all the provisions of the Injunction related to the delivery of healthcare to incarcerated individuals in the state prison complexes."

One of the key provisions is outlined in **Section 1.17.1** (per Amendment 12):

> The Contractor shall employ sufficient staffing and utilize appropriate resources to achieve contractual compliance, including those staffing requirements identified in the Order and Permanent Injunction in *Jensen v. Thornell*, No. CV-12-00601-PHX-

> ROS. The Contractor's resources shall be adequate to achieve outcomes in all functional areas within the organization. Adequacy shall be evaluated based on outcomes and compliance with contractual and Department policy requirements. If the Contractor does not achieve the desired outcomes or maintain compliance with contractual obligations, additional monitoring and regulatory action may be employed by the Department, up to and including monetary sanctions.

NaphCare has failed to achieve the desired outcomes and/or maintain compliance with its contractual obligations as to staffing. The complete lack of progress in hiring for ASPC-Tucson, despite plenty of advanced notice, planning, and discussion regarding the opening of Catalina, highlights this failure. **This letter is ADCRR's notice that NaphCare is out of compliance with Section 1.17.1.**

Furthermore, as part of ADCRR's additional monitoring and regulatory action in accordance with Section 1.17.1, ADCRR once again demands that NaphCare raise its wages—immediately—in order to increase staffing levels to the levels required by the Injunction. Failure to comply with this demand will result in monetary sanctions under Section 1.17.1.

As you are aware, ADCRR is currently paying for wages over the average wages provided for in the contract to get staffing levels to the appropriate level. It is clear, however, that NaphCare is not passing this on in the form of increased salaries to its staff. For example, the contract provides that the five (5) MAT program mid-level providers should be paid approximately $106.33 per hour. NaphCare, however, is paying those five (5) providers between $80.00 and $95.51, including employee related expenses ("ERE"). The average hourly difference between contracted rates and what NaphCare is paying is approximately $25. This is just one example of many – some of which are even more egregious. This is unacceptable and will not be tolerated.

To reiterate, the Court and the Plaintiffs believe that privatized healthcare is the reason why the healthcare provisions in the Injunction are not being met. NaphCare's propensity to keep, as profit, the extra money that ADCRR is paying to ensure that staffing levels are met rather than pass this money along as adequate wages not only supports this notion, but it is a clear violation of the Contract and has directly led to non-compliance with certain provisions of the Injunction.

We look forward to receiving your commitment to raising rates and filling FTEs. But, if NaphCare continues with the current trajectory caused by an inadequate hiring plan and low salaries, NaphCare will remain out of compliance with the Contract. This puts both ADCRR and NaphCare at risk of sanctions. Moreover, in the event that the Court orders sanctions against ADCRR, with respect to the healthcare provisions of the Injunction, ADCRR will demand indemnification from NaphCare.

Ryan Thornell, Ph.D.
Director