Jared G. Keenan (Bar No. 027068)
Lauren K. Beall (Bar No. 035147)
**ACLU FOUNDATION OF ARIZONA**
2712 North 7th St.
Phoenix, AZ 85006
Telephone: (602) 650-1854
Email: jkeenan@acluaz.org
          lbeall@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Dustin
Brislan, Robert Gamez, Jonathan Gonzalez,
Jason Johnson, Kendall Johnson, Joshua
Polson, Laura Redmond, Sonia Rodriguez,
Ronald Slavin, Jeremy Smith, and Christina
Verduzco, on behalf of themselves and all
others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**DISABILITY RIGHTS ARIZONA**
5025 East Washington St., Ste. 202
Phoenix, AZ 85034
Telephone: (602) 274-6287
Email: adietrich@disabilityrightsaz.org

*Attorneys for Plaintiff Disability Rights Arizona*

**[ADDITIONAL COUNSEL LISTED ON
SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, *et al.*, on behalf of themselves and all others similarly situated; and Disability Rights Arizona, | No. CV 12-00601-PHX-ROS |
| Plaintiffs, | **PLAINTIFFS' MOTION TO ENFORCE §§ 20.2.1 AND 20.2.3 OF THE INJUNCTION** |
| v. | |
| Ryan Thornell, *et al.*, in their official capacities, | |
| Defendants. | |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................... 1

II. PROCEDURAL BACKGROUND ........................................................ 1

III. STATEMENT OF FACTS ................................................................... 4

    A. Defendants Have Not Staffed the Isolation Subclass Housing Units as Required by the Custody Staffing Plan During Even One Shift of the First Two Months the Plan Was in Effect ........................................................ 4

    B. Defendants Failed to Notify the Court Within Seven Days of Each Failure to Meet the Required Staffing Levels ............................................................ 6

    C. Defendants Failed to Accurately Identify All the Deviations from the Custody Staffing Plan in Their Deviation Reports ......................................... 7

    D. Defendants' Stated Reasons for Staff Shortfalls Are Not Reasonable and Adequate Justifications for the Deviations ................................................... 9

    1 "Staffing shortage" does not justify short staffing ..................................... 9

    2. Defendants' other reasons are also inadequate to justify their failure to satisfy the Custody Staffing Plan ............................................................... 11

IV. ARGUMENT ...................................................................................... 13

V. RELIEF REQUESTED ....................................................................... 14

VI. CONCLUSION ................................................................................... 15

1    **I.    INTRODUCTION**

2          The Court Expert's staffing analysis and plan for custody positions at each subclass

3    location ("Custody Staffing Plan" or "Plan") came into effect at the end of October 2024.

4    Doc. 4693.  Defendants had a year and a half from the time the Injunction issued in April

5    2023 to build their staff to meet the requirements of the Plan.  For a year, they knew the

6    rough contours of the Plan.  *See* Doc. 4503.  When the final Custody Staffing Plan was filed

7    in September 2024, Defendants had the opportunity to object to it, but did not do so.  Doc.

8    4693.  On October 28, 2024, the Court ordered the Custody Staffing Plan to be implemented

9    ("Implementation Order").  *Id*.

10          The Custody Staffing Plan sets out the staffing levels required "to ensure the safety,

11    security, and well-being of the incarcerated person, staff and the public."  Doc. 4682 at 3.

12    Defendants have failed to staff according to the Custody Staffing Plan and failed to comply

13    with the reporting requirements triggered by their staffing shortfalls.

14          Defendants have consistently failed to fully staff the Mandatory Posts – posts which

15    are required to be staffed "at all times" at multiple facilities.  *See* Doc. 4410 at § 20.2.1.

16    They report that *they did not fully staff the Mandatory Posts during even one shift during*

17    *the months of November and December 2024*.  Docs. 4728, 4757.  They have also regularly

18    failed to staff Essential Posts at the required level and, on occasion, have failed to staff

19    Important Posts at the required level.  *Id*.

20          Moreover, they have violated the requirement that they inform the Court within

21    seven days when they fall below the staffing levels required by the Custody Staffing Plan.

22    *See* Doc. 4410 at § 20.2.1.  Defendants were required to notify the Court of their staffing

23    short-falls in November and December every day from November 8, 2024 through January

24    7, 2025 – but they did not once fulfill this requirement.  Nor have Defendants adequately

25    identified and justified their staffing shortfalls in their monthly "Deviation from Staffing

26    Plan Report" ("Deviation Report"), which is required pursuant to §20.2.3 of the Injunction.

27    **II.    PROCEDURAL BACKGROUND**

28          The Injunction originally required the Court's correctional expert, Scott Frakes, to

submit the Custody Staffing Plan by October 2023. Doc. 4410 at § 20.1. The initial analysis and plan was filed on October 6, 2023, and both parties objected to it. *See* Docs. 4489, 4492, 4493. The parties and Mr. Frakes negotiated and, given the nature of the disagreements and related changes that were occurring in the Arizona Department of Corrections, Rehabilitation & Reentry ("ADCRR") at the same time, requested an extension of the date for finalizing the plan. The date was extended multiple times, with the Custody Staffing Plan being submitted in its final form on September 26, 2024. Doc. 4682. No party objected to the Custody Staffing Plan and the Court ordered its implementation on October 28, 2024, and compliance with the reporting requirements of §§ 20.2.1. and 20.2.3. of the Injunction. Doc. 4693; *see also* Doc. 4410 at §§ 20.2.1. and 20.2.3.

The Injunction and the Custody Staffing Plan both distinguish between Mandatory, Essential and Important Posts. Mandatory Posts must be 100% staffed; Essential and Important Posts must be staffed at 75% and 50% respectively, calculated on a weekly basis. Doc. 4410 at § 20.2.1.; Doc. 4682 at 3.

Pursuant to the Implementation Order and the Injunction, once the Custody Staffing Plan was in effect, Defendants were to staff isolation subclass areas consistent with the plan, and were required to "inform the Court within seven days" whenever ADCRR did not meet the staffing requirements of the Custody Staffing Plan. Doc. 4693; Doc. 4410 at § 20.2.1. Additionally, "[w]henever Defendants fail to comply with the staffing levels, [they must] file with the Court a 'Deviation from Staffing Plan Report' by the tenth day of the following month." Doc. 4693; Doc. 4410 at § 20.2.3. In that report, Defendants are required to "specifically identify the deviation(s) that occurred and provide reasonable and adequate justifications for the deviation(s)." *Id.*

On December 12, 2024, Defendants filed their first Deviation from Custody Staffing Plan Report ("November Deviation Report"). Doc. 4728.[1] In it, they revealed that they had

---

[1] Defendants' Deviation Reports have been filed under seal. Docs. 4728, 4757. Plaintiffs do not believe the information contained in the reports implicates security to a degree that warrants keeping it from the public. Plaintiffs will in the near future be seeking to have these reports unsealed.

1   not met all the staffing requirements of the Custody Staffing Plan for even a single shift

2   during November 2024.  *Id.*  They had not previously informed the Court of the deviations

3   from the Custody Staffing Plan, let alone done so within seven days of their occurrence, as

4   required by § 20.2.1 of the Injunction and the Implementation Order.  Docs. 4410 and 4693.

5   Additionally, the report contained inaccuracies and did not provide reasonable and adequate

6   justifications for the deviations.  Doc. 4728.

7       On December 18, 2024, Plaintiffs contacted Defendants to ask that the November

8   Deviation Report be refiled with reasonable and adequate justifications included.

9   Declaration of Maria V. Morris ("Morris Decl."), Ex. 1. Defendants did not respond or

10  refile.  Morris Decl. at ¶ 2.

11      On January 6, 2025, having had the opportunity to analyze the November Deviation

12  Report more thoroughly, Plaintiffs contacted Defendants again.  *Id.*, Ex. 2.  Plaintiffs noted

13  that Defendants had not provided timely notifications to the Court of the deviations, as

14  required by § 20.2.1., and asked that Defendants immediately notify the Court of any

15  deviations that had occurred more than seven days earlier and begin timely filing required

16  notifications.  *Id.*  Plaintiffs also explained the inaccuracies in the November Deviation

17  Report and asked Defendants to correct the November Deviation Report.  *Id.* at 2-3.

18  Plaintiffs reiterated the inadequacy of the justifications and asked Defendants to ensure that

19  the justifications satisfied the requirements of the Injunction in future deviation reports.  *Id.*

20  at 3-4.  Defendants did not respond, provide any notifications to the Court, or correct the

21  November Deviation Report.  Morris Decl. at ¶ 3.

22      On January 10, 2025, Defendants filed their second Deviation from Custody Staffing

23  Plan Report ("December Deviation Report").  Doc. 4757.  Like the prior month's report, it

24  showed that they had not met all the staffing requirements of the Custody Staffing Plan on

25  any shift throughout December 2024.  *Id.* Further, the December Deviation Report

26  continued the same inaccuracies and inadequate justifications that were present in the

27  November Deviation Report and to which Plaintiffs had already alerted Defendants.  *Id.*

28

III.    **STATEMENT OF FACTS**

Defendants have consistently failed to staff isolation subclass housing units as required by the Custody Staffing Plan.  Further, they have failed to meet the reporting requirements of the Injunction triggered by their failure to comply with the Custody Staffing Plan.

A.    **Defendants Have Not Staffed the Isolation Subclass Housing Units as Required by the Custody Staffing Plan During Even One Shift of the First Two Months the Plan Was in Effect**

As stated above, Mandatory Posts must be staffed at 100%, so a failure to comply with the Custody Staffing Plan occurs on the day a Mandatory Post is not staffed. Compliance with the Essential and Important Posts is determined on a weekly basis, so a failure to comply with the Custody Staffing Plan for those posts occurs at the end of a week when the 75% or 50% threshold for a post is not met. Doc. 4693; *see also* Doc. 4410 at § 20.2.1;.

In November 2024, Defendants failed to meet the staffing levels set out in the Custody Staffing Plan every single shift, every single day.   According to the Deviation Report for November, Defendants failed to staff Mandatory Posts on the following days:

| | |
|---|---|
| Eyman Browning - AM | November 1-30 |
| Eyman Browning - PM | November 1-30 |
| Lewis Bachman | November 18, 23-25, 29, 30 |
| Perryville CWA | November 1-6, 9, 10, 12-15, 27, 29 |
| Tucson Complex CDU | November 1-3, 9, 17, 23-24, 26-30 |
| Tucson Manzanita Detention | November 1-2, 7-11, 16-17, 22, 24-25, 28, 30 |
| Tucson Winchester Detention | November 1-3, 6, 9-10, 14, 27-28, 30 |
| Tucson Rincon MHW | November 1-19, 21-30 |
| Winslow Kaibab MHW | November 1-3, 5 |

Doc. 4728.   At Eyman Browning alone, there were between five and twenty unfilled Mandatory Posts per shift, every single day. *Id*. at 2-51.

In December 2024, Defendants again failed to meet the staffing levels set out in the Custody Staffing Plan every single shift, every single day.   According to the Deviation Report for December, Defendants failed to staff Mandatory Posts on the following days:

| | |
|---|---|
| Eyman Browning - AM | December 1-31 |
| Eyman Browning - PM | December 1-31 |
| Lewis Bachman | December 2, 7, 8, 10, 14, 15, 17, 18, 20, 22, 23, 24, 25, 26, 28, 29 |
| Perryville CWA | December 12, 13, 16, 23 |
| Tucson Complex CDU | December 1, 4, 7, 15, 30 |
| Tucson Manzanita Detention | December 1-3, 5-8, 14, 24-26, 29-31 |
| Tucson Winchester Detention | December 1, 15, 25, 27, 28 |
| Tucson Rincon MHW | December 1-31 |

Doc. 4757.  At Eyman Browning, there were between six and twenty unfilled Mandatory Posts per shift, every single day. *Id.* at 2-54.

Defendants also failed to comply with the Custody Staffing Plan requirements for Essential and Important Posts.[2]  According to the November Deviation Report, Essential Posts that were not staffed 75% of the time over a week were staffed as follows:

| | 11/1-11/7 | 11/8-11/14 | 11/15-11/21 | 11/22-11/28 |
|---|---|---|---|---|
| Eyman Browning | | 71% | 71% | |
| Tucson Complex CDU | 57% | 71% | | 71% |
| Tucson Manzanita Detention | 0% | 0% | 14% | 0% |
| Tucson Winchester Detention | 0% | 0% | 14% | 0% |
| Tucson Rincon MHW | | | | 57% |
| Safford Detention | 57% | | | |

Doc. 4728; Morris Decl., ¶¶ 5-6.  Staffing of Essential and Important Posts was worse in

---

[2] All Essential Posts in the Custody Staffing Plan are Sergeants responsible for supervising the subclass units.  The Custody Staffing Plan provides for a single Sergeant, seven days a week, during the day shift, in each unit.  Doc. 4682.

1    December:

2

3

|  | 11/29-12/5 | 12/6-12/12 | 12/13-12/19 | 12/20-12/26 |
|---|---|---|---|---|
| Eyman Browning – Essential | 14% | 71% | 43% | 71% |
| Eyman Browning – Important | 47% |  | 43% | 40% |
| Tucson Complex CDU – Essential | 71% | 71% | 71% | 71% |
| Tucson Manzanita Detention – Essential | 0% | 0% | 0% | 0% |
| Tucson Winchester Detention – Essential | 71% | 71% | 71% | 71% |
| Tucson Rincon MHW – Essential | 0% | 0% | 0% | 0% |

Doc. 4757; Morris Decl., ¶¶ 5-7.

**B.    Defendants Failed to Notify the Court Within Seven Days of Each Failure to Meet the Required Staffing Levels**

The Injunction and the Implementation Order require that Defendants inform the Court within seven days whenever staffing falls below what is required by the Custody Staffing Plan.  Doc. 4410 at § 20.2.1; Doc. 4693.  Defendants did not notify the Court of any failures to comply with the Custody Staffing Plan until they filed their Deviation Report for November on December 12, 2024.  *See* Doc. 4728.

As discussed above, during every shift in November and December 2024, Defendants failed to staff 100% of Mandatory Posts.  Thus, based solely on the Mandatory Posts, Defendants should have informed the Court of their failure to meet the requirements of the Custody Staffing Plan every day from November 8, 2024 through January 7, 2025, seven days after each shift when Mandatory Posts went unfilled.[3]  Doc. 4410 at § 20.2.1.; Doc. 4693.

---

[3] Plaintiffs do not know whether the staffing shortfalls have continued in January 2025.  However, based on the consistency and magnitude of the shortfalls in November and December 2024, it is likely that there have been shortfalls in January that should also have been reported to the Court within seven days.

The notifications to the Court should also have included deviations from the Custody Staffing Plan requirements for Essential and Important Posts. These notifications were due no later than seven days after each week during which any Essential Post was not staffed 75% of the time or an Important Post was not staffed 50% of the time. As discussed above, Defendants failed to adequately staff Essential and Important Posts every week in November and December 2024. Doc. 4410 at § 20.2.1; Doc. 4693. These failures were not reported to the Court until the Deviation Reports for the respective months were filed, long after the seven-day deadlines.

Despite their unremitting failure to comply with the Custody Staffing Plan, Defendants did not even once notify the Court as required by § 20.2.1 of the Injunction.

### C.    Defendants Failed to Accurately Identify All the Deviations from the Custody Staffing Plan in Their Deviation Reports

Defendants are required to identify all deviations from the Custody Staffing Plan in a Deviation Report, filed by the tenth of the following month. Doc. 4410 at §20.2.3.; Doc. 4693. Defendants filed a Deviation Report on December 12, 2024, purporting to identify all deviations from the Custody Staffing Plan in November 2024, and another one on January 10, 2025, purporting to identify all deviations in December 2024. Docs. 4728, 4757.

The Deviation Reports include most but not all of the deviations from the Custody Staffing Plan. The most significant omission is that Essential and Important Posts are to be calculated on a weekly basis, as acknowledged in the reports, but Defendants calculated them on a monthly basis. Doc. 4682 at 3; Doc. 4728 at 1-2; Doc. 4757 at 1-2. Thus, when an Essential Post was not filled 75% of the time one week, but was filled more than 75% of the time over the course of the month, Defendants improperly failed to report this as a failure to comply with the Custody Staffing Plan. This occurred at the Safford Detention Unit in November. According to Defendants, Safford had 90% of Essential Posts filled during the month. Doc. 4728 at 56. The only Essential Post at Safford is a Sergeant position that is

scheduled seven days a week during the day shift.  Doc. 4682 at 17.  This position was unfilled November 1-3.  Doc. 4728 at 56.  This means that during the first week of November, the position was filled 4 of 7 days, or 57% of the time.  This is a clear deviation from the requirements of the Custody Staffing Plan, but Defendants masked it by calculating staffing only on a monthly basis.  *Id.*

Other deviations are reported inaccurately.  At Tucson, as is true throughout the ADCRR, the only Essential Posts are Sergeants: one Sergeant every day shift at the Complex Detention, Manzanita Detention, Cimarron Detention, Winchester Detention, and Rincon Mental Health Watch units.  Doc. 4682 at 13, 14, 22, 26, 28.  Several day-shift Sergeant positions went unfilled frequently in November and December, resulting in deviations from the Custody Staffing Plan. *See above at 5-6.*   Defendants did not report a deviation from the Custody Staffing Plan for Essential Posts during the day shift in either November or December, although Defendants' staffing of the day shift Essential Posts deviated from the Custody Staffing Plan as follows:

- Tucson Complex CDU – 7 of 8 weeks
- Tucson Manzanita Detention – 8 of 8 weeks
- Tucson Winchester Detention – 8 of 8 weeks
- Tucson Rincon Mental Health Watch – 5 of 8 weeks

Docs. 4728 at 56-74; 4757 at 59-74. Defendants did report deviations from the Custody Staffing Plan on Essential Posts during the "Graves/PM shift" at Tucson in both the November and December Deviation Reports.  Doc. 4728 at 56-57; Doc. 4757 at 59. However, the Custody Staffing Plan includes no Essential Posts on the Graves/PM shift at Tucson.  Doc. 4682 at 13, 14, 22, 26, 28.

Finally, at Perryville, there is a single Mandatory Post every day shift assigned to the Recreation area.  On twelve days in November and one day in December, Defendants reported this post being 75% filled.  Doc. 4728 at 52-56; Doc. 4757 at 58. The Custody Staffing Plan provides that if a Mandatory Post is vacant for more than one hour, it must be counted as vacant.  Doc. 4682 at 4.  The Recreation post is either filled or not each day. The

claim of the post being 75% filled fails to inform the Court or Plaintiffs as to whether this post was in fact filled.

In addition to failing to timely notify the Court of their failures to meet the staffing requirements of the Custody Staffing Plan, Defendants have not accurately and completely reported their deviations from the Custody Staffing Plan in their Deviation Reports.

### D.    Defendants' Stated Reasons for Staff Shortfalls Are Not Reasonable and Adequate Justifications for the Deviations

The Injunction requires that, in the Deviation Reports, Defendants provide "reasonable and adequate justifications" for the deviations. Doc. 4410 at § 20.2.3.; Doc. 4693. They have not done so.

A justification is "an acceptable reason for doing something: something that justifies an act or way of behaving." Merriam–Webster.com, https://perma.cc/L9SE-PZG6. Defendants' statements of their reasons for failing to comply with the staffing levels set forth in the Custody Staffing Plan are, for the most part, not justifications, let alone reasonable and adequate justifications.[4]

### 1.    "Staffing shortage" does not justify short staffing

Many of the reasons given for the deviations are simply some version of "staffing shortage" or "supervisory staffing shortage." Docs. 4728 and 4757. "Staffing shortage" is not a justification; it is a tautology. Defendants are effectively saying "we did not have enough staff because we did not have enough staff." This cannot reasonably be considered to satisfy the requirement that Defendants justify their short staffing.[5]

This is particularly true given how long Defendants have known that they have a

---

[4] At Perryville, Tucson Winchester, and Winslow, several posts were not filled at the beginning of November 2024 because they were in the process of being added to the roster. Doc. 4728 at 52-54, 58-59, 74-75. Plaintiffs recognize that this was the first month the Custody Staffing Plan was implemented and do not contest the adequacy of the justification for the vacancy of these posts at the beginning of November 2024.

[5] In an earlier phase of this litigation, Defendants invoked their chronic staffing shortages as justification for cancellation of out-of-cell time. Doc. 4335 at 152. The Court did not allow Defendants to rely on their longstanding staff shortages then, and it should not do so now. *Id.*; *see also* Doc. 3861 at 9-10.

severe staffing shortage and how long they have failed to meaningfully address it. *See, e.g.*, Doc. 3590 at 20-21; Jimmy Jenkins, *Internal Report Shows Arizona Prison Is Critically Understaffed*, KJZZ (April 29, 2020), https://perma.cc/LDE8-W3JF. During the November 2021 trial, "Defendants' own deputy wardens acknowledged they lack sufficient staff to have officers posted at all 'critical' locations and rely on existing staff who agree to volunteer to work overtime shifts even to meet the present staffing levels." Doc. 4335 at 162. In its June 2022 liability decision, this Court found that ADCRR was staffing subclass locations at levels "far below what prison officials acknowledge as necessary to operate the units safely." *Id.* at 147-48. Housing units went effectively unsupervised due to lack of staffing. *Id.* at 148-49. Out-of-cell time was cancelled "due to staff shortage." *Id.* at 151. Indeed, the Court noted that in June 2021, Defendants were "still invoking longstanding staff shortages" for their failure to comply with the stipulated settlement. *Id.* at 152.

Defendants have reported on correctional staffing every quarter since the Injunction was entered in April 2023. Total correctional staffing increased by about 5% during the first 9 months of the Injunction. *Compare* Doc. 4424-1 at 2, *with* Doc. 4528-1 at 2. However, in 2024, total correctional staffing levels actually *fell*. *Compare* Doc. 4528-1 at 2, *with* Doc. 4748-1 at 2.[6] Moreover, Defendants have consistently reported staffing shortages of more than 20% at ASPC Eyman, and close to that level at ASPC Tucson, the two facilities where Defendants failed most consistently to comply with the Custody Staffing Plan. *See* Docs. 4424-1 at 6, 4451-1 at 6, 4487-1 at 6, 4528-1 at 6, 4485-1 at 6, 4563-1 at 6, 4684-1 at 6, and 4748-1 at 6. Chronic staffing shortages that do not improve over time cannot be considered a "reasonable and adequate justification" for the failure to staff the positions required to comply with the Custody Staffing Plan.

---

[6] Defendants are required to file a Correctional Staffing Report every quarter on the last day of the quarter. Doc. 4410 at §20.3.1. Defendants have generally fulfilled this requirement. However, on December 31, 2024, Defendants filed the Correctional Staffing Report with only October and November included. Doc. 4748-1. Plaintiffs have twice asked Defendants to refile with all three months of the quarter included, but Defendants have not done so. Morris Decl., Ex. 3. Therefore, Plaintiffs' knowledge of overall staffing ends at November 30, 2024.

1
2
### 2. Defendants' other reasons are also inadequate to justify their failure to satisfy the Custody Staffing Plan

3
4
5
6
In addition to the general statements of short staffing, in some instances, Defendants provide a slightly more specific explanation in addition to the staffing shortages. These reasons, while slightly more informative than the bald assertion of staff shortages, fall far short of being reasonable and adequate justifications.

7
8
9
10
11
12
13
14
15
16
17
18
19
Defendants often state that they are short-staffed due to a number of incarcerated people being at the hospital or the need for emergency transports. Docs. 4728 and 4757. People going to the hospital is a regular occurrence. While there is some variation from day to day, and it is unknown in advance exactly who will need to go to the hospital, a prison needs to plan that some people will have to go to the hospital and staff accordingly. For example, for the last four months of 2024, someone had to go to the emergency room from ASPC Tucson every day. Morris Decl. ¶ 9. The same is true for ASPC Lewis. *Id*. From ASPC Perryville, during the same four-month period, people went to the emergency room all but thirteen days. *Id*. The occurrence of a regularly occurring event is not a reasonable and adequate justification for failing to staff as required by the Custody Staffing Plan. Yet all three facilities assert that having people in the hospital is the reason they were unable to comply with the Custody Staffing Plan. Doc. 4728 at 51-74; Doc. 4757 at 54-74.[7]

20
21
Another reason given for short staffing is that people are moved in and out of

22
23
24
25
26
27
28
---

[7] It is unclear from Defendants' Deviation Reports whether the staffing shortages at Tucson and Lewis that are blamed on people being in the hospital refer to people who are admitted to the hospital, taken to the ER, or both. There is no straightforward way to determine how many people are admitted to the hospital from a prison. While the numbers may vary, the point remains the same: some people in prisons will have to go to the hospital and the prisons must be staffed in such a way that they can accommodate that necessity without resulting in a critical staffing shortage.

For Perryville, the Deviation Reports blame short-staffing on "transports" or "emergency transports." Doc. 4728 at 54-56; Doc. 4757 at 57-58. The days for which this was given as a reason had between zero and two ER referrals from Perryville. Morris Decl. ¶ 10. For Perryville, these were days with a relatively low number of ER referrals. *Id*. ¶ 9.

1    detention. Doc. 4728 at 52; Doc. 4757 at 55-57. Again, this is a standard and foreseeable

2    part of running a prison and staffing should be planned accordingly.

3        The reason given for the five to twenty unstaffed Mandatory Posts each shift at

4    Eyman Browning is that, in addition to an ongoing staff shortage, staff are assigned to

5    observe people on mental health watch. Doc. 4728 at 2-51; Doc. 4757 at 2-54. There are

6    two reasons why this is not a reasonable and adequate justification.

7        First, the Custody Staffing Plan specifically provides: "Temporary posts must be

8    established and staffed when watch requirements exceed the dedicated positions identified

9    in the Staffing Plan. All staffing for temporary posts is in addition to the staffing required

10   to operate the MHW [Mental Health Watch] unit, per the Staffing Plan." Doc. 4682 at 3-4.

11   Thus, the need for staff to monitor people on watch is explicitly barred as a justification for

12   failing to staff other required posts.

13       Second, like the need to take people to the hospital, the need for mental health

14   watches, while not perfectly constant, is fairly regular. Since June 2024, the number of

15   person/days on watch[8] at Eyman Browning was as follows:

16       • December 2024: 401

17       • November 2024: 331

18       • October 2024: 411

19       • September 2024: 454

20       • August 2024: (no information provided)

21       • July 2024: 607

22       • June 2024: 738

23   Morris Decl. ¶ 11. Notably, November and December had fewer person/days on watch at

24   Eyman Browning than any of the recent preceding months for which information has been

25   provided, suggesting that there would be less need than usual to staff people to monitor the

26

27       _____

         [8] This number is calculated by adding up the days on watch during the month for

28   each person on watch. This number determines how many staff are needed to observe the
     people on watch during the month.

1   watch area.[9]

2       Finally, Defendants attribute some of the failures to meet the staffing requirements

3   of the Custody Staffing Plan to staff being sick or on leave.  Doc. 4757 at 2-54, 58. These

4   "reasons" for understaffing are just another way of saying the prisons are understaffed.

5   Defendants requested a particular shift relief factor that explicitly includes consideration of

6   sick days and leave.  *See* Doc. 4493 at 4-5.  This shift relief factor was incorporated into the

7   Custody Staffing Plan.  *See, e.g.*, Doc. 4682 at 9.  The Custody Staffing Plan thus requires

8   staffing at a level that will allow for the necessary staffing, even when people are sick or on

9   leave. *Id.*

10      Defendants' proffered reasons for failing to staff at the levels required by the

11  Custody Staffing Plan are inadequate and do not justify their ongoing failure to staff the

12  isolation subclass units safely.

13  **IV.   ARGUMENT**

14      Given the overwhelming evidence set forth above, this Court should find that

15  Defendants are non-compliant with §§ 20.2.1 and 20.2.3 of the Injunction.

16      The Court has the inherent authority to enforce its orders, including through a finding

17  of contempt.  *Degen v. United States*, 517 U.S. 820, 827 (1996); *Shillitani v. United States*,

18  384 U.S. 364, 370 (1966).  "The standard for finding a party in civil contempt is well settled:

19  The moving party has the burden of showing by clear and convincing evidence that the

20  contemnors violated a specific and definite order of the court. The burden then shifts to the

21  contemnors to demonstrate why they were unable to comply."  *FTC v. Affordable Media

22  LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (internal quotation marks and citations

23  omitted).   A party's actions "'need not be willful' and there is no good faith exception to

24  the requirement of obedience to a court order." *Go–Video, Inc. v. Motion Picture Ass'n of*

---

[9] It is also worth noting that Defendants are required to place patients on suicide watch in the same room with other suicide watch patients when clinically appropriate. Doc. 4410 at § 16.8.3.  They are often failing to do so, which, in addition to violating the Injunction and placing incarcerated people at higher risk, "compounds ADCRR's inability to comply with the staffing requirements provided in paragraph 20.2.1." Doc. 4755 at 24.

1 | *America,* 10 F.3d 693, 695 (9th Cir.1993) (quoting *In re Crystal Palace Gambling Hall,*
2 | *Inc.*, 817 F.2d 1361, 1365 (9th Cir.1987)).

3 | However, the Court's inherent powers should "be exercised with restraint and
4 | discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). "Consequently, [a] 'less
5 | severe sanction'. . . is undoubtedly within a court's inherent power as well." *Id.* at 45
6 | (citation omitted). A court's inherent powers include the power to order a non-compliant
7 | party to develop remedial plans to achieve compliance and to direct the party to include
8 | certain tasks and deadlines in the plan, because the court "retains the authority, and the
9 | responsibility, to make further amendments to the existing order or any modified decree it
10 | may enter as warranted by the exercise of its sound discretion." *Brown v. Plata*, 563 U.S.
11 | 493, 542 (2011).

12 | Although Defendants' staffing and reporting failures violate a specific and definite
13 | order of the Court, Plaintiffs do not at this time seek an order to show cause why Defendants
14 | should not be held in contempt. November 2024 was the first full month that the Custody
15 | Staffing Plan was in effect. At this time Plaintiffs seek only an order enforcing the two
16 | Injunction provisions and requiring Defendants to develop a remedial plan to promptly
17 | come into compliance with the custody staffing and reporting requirements.

18 | In issuing such an enforcement order, "the court is entitled to give some guidance …
19 | and set some deadlines for compliance." *Armstrong v. Davis*, 275 F.3d 849, 873 (9th Cir.
20 | 2001). With the inclusion of instructions as to what elements need to be in a remedial plan
21 | the "district judge [does] not attempt to 'micro manage' the [party's] activities, but rather
22 | to set clear objectives for it to attempt to attain, and, in most circumstances, general methods
23 | whereby it would attain them." *Id.*

24 | **V.    RELIEF REQUESTED**
25 | Plaintiffs request that the Court issue an order:
26 | 1. Finding Defendants non-compliant with the Implementation Order (Doc. 4693) and
27 | §§ 20.2.1 and 20.2.3 of the Injunction (Doc. 4410);
28 | 2. Requiring Defendants to immediately file a notice informing the Court of all

-14-

deviations from the Custody Staffing Plan that have occurred since January 1, 2025;

3. Requiring Defendants to file a notice informing the Court of all future deviations from the Custody Staffing Plan within seven days of their occurrence. For Mandatory Posts, the notice shall be filed within seven days of each day a Mandatory Post went unfilled. For Essential and Important Posts, the notice shall be filed within seven days of the last day of any week during which any Essential Post was not filled 75% of the time or any Important Post was not filled 50% of the time;

4. Requiring Defendants to file within seven days of its Order a detailed remedial plan setting forth how they will ensure that future reports of deviations are accurate and meet all requirements of § 20.2.3 of the Injunction; and

5. Requiring Defendants to file within twenty-one days of its Order a remedial plan setting forth in detail what steps they have taken to comply with the Custody Staffing Plan and what they will do going forward to meet the staffing requirements of the Custody Staffing Plan.

## VI.    CONCLUSION

Defendants have failed to comply with the staffing and reporting requirements set forth in the Implementation Order (Doc. 4693) and §§ 20.2.1 and 20.2.3 of the Injunction (Doc. 4410). They have not staffed the isolation subclass housing units as required by the Custody Staffing Plan. They have not made the initial, ongoing notifications to the Court of their failures to staff according to the Custody Staffing Plan. They have not provided accurate data or reasonable and adequate justifications for their deviations from the Custody Staffing Plan in their monthly reports. Plaintiffs request that the Court order immediate notifications and a remedial plan to ensure that Defendants staff the housing units as required and that all future monthly reports of deviations will be accurate, complete, timely, and meaningful. Establishing adequate staffing and compelling prompt reporting to the Court and Plaintiffs of any shortfalls are necessary to ensure the safe and constitutional functioning of the isolation subclass housing units.

1

2

Dated:  January 24, 2025

**ACLU NATIONAL PRISON PROJECT**

3

By:  s/ Maria V. Morris

4

Maria V. Morris (D.C. 1697904)*
David C. Fathi (Wash. 24893)**

5

Eunice Hyunhye Cho (D.C. 1708073)*

6

**ACLU NATIONAL PRISON
PROJECT**

7

915 15th Street N.W., 7th Floor
Washington, DC 20005

8

Telephone: (202) 393-4930
Email:    dfathi@aclu.org

9

mmorris@aclu.org

10

echo@aclu.org

11

Corene T. Kendrick (Cal. 226642)*
425 California St., Ste. 700

12

San Francisco, CA 94104
Telephone: (202)393-4930

13

Email:    ckendrick@aclu.org

14

15

*Admitted *pro hac vice*

16

**Admitted *pro hac vice*. Not admitted in
DC; practice limited to federal courts.

17

18

Jared G. Keenan (Bar No. 027068)
Lauren K. Beall (Bar No. 035147)

19

**ACLU FOUNDATION OF ARIZONA**

20

2712 North 7th St.
Phoenix, AZ 85006

21

Telephone: (602) 650-1854
Email:    jkeenan@acluaz.org

22

lbeall@aclu.org

23

24

25

26

27

28

1

2

3

Donald Specter (Cal. 83925)*
Alison Hardy (Cal. 135966)*
Rita K. Lomio (Cal. 254501)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth St.
Berkeley, CA 94710
Telephone: (510) 280-2621
Email:    dspecter@prisonlaw.com
                ahardy@prisonlaw.com
                rlomio@prisonlaw.com
                sophieh@prisonlaw.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs Shawn Jensen, Dustin Brislan, Robert Gamez, Jonathan Gonzalez, Jason Johnson, Kendall Johnson, Joshua Polson, Laura Redmond, Sonia Rodriguez, Ronald Slavin, Jeremy Smith, and Christina Verduzco, on behalf of themselves and all others similarly situated*

**DISABILITY RIGHTS ARIZONA**

By:  s/ Maya Abela
        Asim Dietrich (Bar No. 027927)
        5025 East Washington St., Ste. 202
        Phoenix, AZ 85034
        Telephone: (602) 274-6287
        Email:    adietrich@disabilityrightsaz.org

        Rose A. Daly-Rooney (Bar No. 015690)
        Maya Abela (Bar No. 027232)
        **DISABILITY RIGHTS ARIZONA**
        4539 E. Fort Lowell Rd.
        Tucson, AZ 85712
        Telephone:  (520) 327-9547
        Email:
            rdalyrooney@disabilityrightsaz.org
            mabela@disabilityrightsaz.org.org

*Attorneys for Disability Rights Arizona*

## **CERTIFICATE OF SERVICE**

I hereby certify that on DATE, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory Honig
Joshua Bendor
Luci Davis
Lucy M. Rand
Assistant Arizona Attorneys General
Gregory.Honig@azag.gov
Joshua.Bendor@azag.gov
Luci.Davis@azag.gov
Lucy.Rand@azag.gov

Daniel P. Struck
Rachel Love
Timothy J. Bojanowski
Nicholas D. Acedo
Ashlee B. Hesman
Jacob B. Lee
STRUCK LOVE BOJANOWSKI & ACEDO, PLC
dstruck@strucklove.com
rlove@strucklove.com
tbojanowski@strucklove.com
nacedo@strucklove.com
ahesman@strucklove.com
jlee@strucklove.com

*Attorneys for Defendants*

*s/ Maria V. Morris*

-18-