# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Shawn Jensen,

    Plaintiff,

v.

Ryan Thornell,

    Defendant.

No. CV-12-00601-PHX-ROS

**ORDER**

This Order addresses Plaintiffs' Motion to Enforce Sections 20.2.1 and 20.2.3 of the Injunction (Doc. 4764) and Plaintiffs' Motion to Unseal Defendants' Monthly Staffing Custody Staffing Deviation Reports. (Doc. 4880). Defendants responded to both motions (Docs. 4788; 4891) and Plaintiffs replied (Docs. 4804; 4902).

**A. Background**

On September 25, 2024, Monitor Scott R. Frakes issued the Subclass Staffing Analysis and Plan pursuant to Section 20.1 of the Permanent Injunction. (Doc. 4679). On October 28, 2024, the Court ordered implementation of the Subclass Staffing Analysis and Plan in compliance with §§ 20.2.1. and 20.2.3. of the Permanent Injunction. (Docs. 4693; 4410 at §§ 20.2.1. and 20.2.3.).

The Injunction and the Custody Staffing Plan both distinguish between Mandatory, Essential, and Important Posts. Mandatory Posts must be 100% staffed; Essential and Important Posts must be staffed at 75% and 50% respectively, calculated on a weekly basis. (Docs. 4410 at § 20.2.1.; 4682 at 3).

The Injunction requires Defendants to both "inform the Court within seven days" of every instance in which ADCRR falls below the levels required by the Custody Staffing Plan ("Seven-Day Deviation Reports") and "[w]henever Defendants fail to comply with staffing levels, [they must] file with the Court a 'Deviation from Staffing Plan Report' by the tenth day of the following month." ("Monthly Deviation Reports") (Docs. 4410 at §§ 20.2.1 and 20.2.3; 4693). In the Monthly Deviation Reports, Defendants are required to "specifically identify the deviation(s) that occurred and provide reasonable and adequate justifications for the deviation(s)." (*Id.*).

On January 24, 2025, Plaintiffs filed a Motion to Enforce Sections 20.2.1 and 20.2.3 of the Injunction. (Doc. 4764). In the motion, Plaintiffs contend Defendants have failed to staff according to the Custody Staffing Plan and have failed to comply with the reporting requirements triggered by staffing shortfalls. Plaintiffs request the Court issue an order (1) finding Defendants non-compliant with the Implementation Order (Doc. 4693) and §§20.2.1 and 20.2.3 of the Injunction (Doc. 4410), (2) requiring Defendants to immediately file a notice informing the Court of all deviations from the Custody Staffing Plan that have occurred since January 1, 2025, (3) requiring Defendants to file a notice informing the Court of all future deviations from the Custody Staffing Plan within seven days of their occurrence, (4) requiring Defendants to file within seven days of its Order a detailed remedial plan setting forth how they will ensure future reports of deviations are accurate and meet all requirements of § 20.2.3 of the Injunction; and (5) requiring Defendants to file within twenty-one days of the Order a remedial plan setting forth in detail what steps they have taken to comply with the Custody Staffing Plan and what they will do going forward to meet the staffing requirements of the Custody Staffing Plan. (Doc. 4764 at 14-15).

Defendants responded on February 7, 2025 (Doc. 4788) and Plaintiffs replied on February 13, 2025 (Doc. 4804). Defendants have also provided part of Plaintiffs' requested relief. While Defendants did not file the Seven-Day Deviations for the first three months following the implementation of the staffing analysis and plan, Defendants have

consistently filed these reports since February 2025. (Docs. 4794; 4809; 4813; 4817; 4822; 4831; 4841; 4851; 4862; 4866; 4875; 4883; 4888; 4897; 4905; 4909; 4910; 4912; 4920; 4925; 4927; 4933; 4939; 4945; 4948; 4949). And on February 6, 2025, Defendants filed a notice containing all missing deviations from January 1, 2025 through February 2, 2025. (Doc. 4784).

Defendants have also filed or lodged seven Monthly Deviation Reports since the implementation of the Custody Staffing Plan. (Docs. 4728; 4781; 4800; 4847; 4864; 4915; 4937). With each Monthly Deviation Report, Defendants have also filed a Motion to Seal (Docs. 4723; 4756; 4789; 4823; 4863; 4895; 4914; 4936). On December 13, 2024, before Plaintiffs had an opportunity to respond, the Court granted Defendants' first Motion to Seal for "good cause" (Doc. 4727) and granted several subsequent Motions to Seal for "good cause" after Plaintiffs did not respond (Docs. 4780; 4799; 4845). In their Motion to Enforce Sections 20.2.1 and 20.2.3 of the Injunction, Plaintiffs indicated their intent to file a motion to unseal Defendants' Monthly Deviation Reports. (Doc. 4765 at fn. 1). On April 24, 2025, Plaintiffs filed a Motion to Unseal Defendants' Monthly Deviation Reports. (Doc. 4880). Defendants responded (Doc. 4891) and Plaintiffs replied (Doc. 4902). Four of Defendants' Motions to Seal remain pending. (Docs. 4863; 4895; 4914; 4936).

**I.  Motion to Enforce Sections 20.2.1 and 20.2.3 of the Injunction**

**A. Analysis**

Plaintiffs seek an order enforcing §§ 20.2.1. and 20.2.3. of the Permanent Injunction and requiring Defendants to develop a remedial plan to promptly come into compliance with the Custody Staffing Plan and reporting requirements.

The Court is allowed to order a non-compliant party to develop remedial plans to achieve compliance and to direct the party to include certain tasks and deadlines in the plan, because the court "retains the authority, and the responsibility, to make further amendments to the existing order or any modified decree it may enter as warranted by the exercise of its sound discretion." *Brown v. Plata*, 563 U.S. 493, 542 (2011). The Ninth Circuit has noted remedial plans giving defendants discretion to develop policies and

procedures to meet requirements "is precisely the type of process that the Supreme Court has indicated is appropriate for devising a suitable remedial plan in a prison litigation case." *Armstrong v. Schwarzenegger*, 622 F.3d 1048, 1071 (9th Cir. 2012) (citations omitted). The Court has previously ordered Defendants to file remedial plans in response to non-compliance with the Stipulation. (*See* Doc. 2810; 3020; 3574).

In their February response to Plaintiffs' motion, Defendants stated they would comply with reporting requirements under 20.2.1 and 20.2.3 of the Injunction and argued Plaintiffs' motion to enforce was moot. Since then, Defendants have complied with the Injunction's reporting requirements and the Court finds there is no basis to order a remedial plan for reporting at this juncture.

Plaintiffs also argue Defendants have not staffed in compliance with the Custody Staffing Plan. According to the November Deviation Report, Defendants failed to staff Mandatory Posts, which must be staffed at 100%, on the following days:

| Eyman Browning – AM | November 1-30 |
| Eyman Browning – PM | November 1-30 |
| Lewis Bachman | November 18, 23-25, 29, 30 |
| Perryville CWA | November 1-6, 9, 10, 12-15, 27, 29 |
| Tucson Complex CDU | November 1-3, 9, 17, 23-24, 26-30 |
| Tucson Manzanita Detention | November 1-2, 7-11, 16-17, 22, 24-25, 28, 30 |
| Tucson Winchester Detention | November 1-3, 6, 9-10, 14, 27-28, 30 |
| Tucson Rincon MHW | November 1-19, 21-30 |
| Winslow Kaibab MHW | November 1-3, 5 |

(Doc. 4728). And according to the December Deviation Report, Defendants failed to staff Mandatory Posts on the following days:

| Eyman Browning – AM | December 1-31 |
| Eyman Browning – PM | December 1-31 |
| Lewis Bachman | December 2, 7, 8, 10, 14, 15, 17, 18, 20, 22, |

|  | 23, 24, 25, 26, 28, 29 |
| --- | --- |
| Perryville CWA | December 12, 13, 16, 23 |
| Tucson Complex CDU | December 1, 4, 7, 15, 30 |
| Tucson Manzanita Detention | December 1-3, 5-8, 14, 24-26, 29-31 |
| Tucson Winchester Detention | December 1, 15, 25, 27, 28 |
| Tucson Rincon MHW | December 1-31 |

(Doc. 4757). Across November and December 2024, Eyman Browning had between six and twenty unfilled Mandatory Posts per shift, every single day. (Doc. 4728 at 2-51; Doc. 4757 at 2-54). And in January 2025, Defendants again failed to staff Mandatory Posts at 100% for even a single shift. (Doc. 4790 at 2).

Plaintiffs also argue Defendants have significant noncompliance with Essential Posts, which must be staffed 75% of the time. In January 2025, ASPC-Tucson filled only 37.1% of Essential Posts across the month and every subclass housing unit at ASPC-Tucson failed to meet the 75% staffing requirement. (Doc. 4800 at 36-51; Doc. 4784 at 2-3).

Defendants cannot and do not dispute they are not in compliance with the staffing requirements. Instead, Defendants argue Plaintiffs' motion is premature, largely pertained only to ASPC-Eyman and ASPC-Tucson, and Defendants "recognize[d] the seriousness of these shortages in staffing for the subclass, and [was] continu[ing] to work to address these issues." (Doc. 4788 at 2).

But, Defendants have continually failed to adequately staff Mandatory and Essential Posts at ASPC-Eyman and ASPC-Tucson and failed to provide "reasonable and adequate justifications" for staffing deviations as required under the Injunction. (Docs. 4410 at § 20.2.3.; 4693).

Indeed, Defendants have staffed Mandatory Posts at ASPC-Eyman above 60% for only one month since the implementation of the Custody Staffing Plan. (See Docs. 4728; 4781; 4800; 4847; 4864; 4915; 4937). In the most recent June Deviation Report, ASPC-Eyman filled only 62.63% of Mandatory Posts for the month, and reported a Mandatory

Post was non-compliant with staffing for every day in the month of June. (Doc. 4937 at 3-32). While compliance percentages are higher at ASPC-Tucson, Defendants similarly reported a Mandatory Post was non-compliant with staffing for every single day in the month of June and filled only 46.67% of Essential Posts across the month. (*Id.* at 33-54).

Defendants have also not provided "reasonable and adequate justifications" for these staffing deviations nor plans to address these longstanding deficiencies. In their Monthly Custody Reports, Defendants continue to state Mandatory Posts are not being filled because of (1) insufficient staff or supervisors on site, (2) weekly vacancy rates, (3) officers on leave, and (4) special assignments for mental health watch and emergency transports. In February, Defendants argued Plaintiffs were engaging in "inappropriate second-guessing" by contending Defendants should have anticipated these issues. (Doc. 4788 at 8). Several months later, Defendants continue with staffing shortages of Mandatory and Essential Posts for the same reasons. Regularly occurring events are not "reasonable or adequate" justifications for failing to staff positions as required by the Custody Staffing Plan.

Accordingly, the Court finds Defendants in violation of provisions §§ 20.2.1 and 20.2.3 of the Permanent Injunction requiring Mandatory Posts must be 100% staffed, Essential Posts be staffed at 75% and that Defendants "provide reasonable and adequate justifications for the deviation(s)." The Court will order Defendants to file a remedial plan to promptly come into compliance with the Custody Staffing Plan at ASPC-Eyman and ASPC-Tucson.

**II.     Motion to Unseal Defendants' Monthly Custody Staffing Deviation Reports**

Plaintiffs have filed a motion to unseal Defendants' Monthly Deviation Reports arguing similar information can be found in Defendants' Correctional Staffing Reports and Seven-Day Deviation Reports and no compelling reason justify keeping this information sealed. Defendants dispute the applicable legal standard and argue legitimate security concerns warrant keeping the Monthly Custody Reports sealed. Alternatively, Defendants

request to redact the individual post-level data and justifications for deviations. The Court will order Defendants to file public versions of the Monthly Deviation Reports, but will allow Defendants to provide specific reasons why each post must be kept confidential and in particular the reasons for the deviations should be redacted from public reports.

### A. Legal Standard

The public enjoys a common law right to "inspect and copy public records and documents, including judicial records and documents." *United States v. Carpenter*, 923 F.3d 1172, 1178 (9th Cir. 2019); *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (explaining that the right of access "is justified by the interest of citizens in keep[ing] a watchful eye on the workings of public agencies") (alteration in the original). As a result, there is "a strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)).

In particular, if a record is attached to a dispositive motion, a party seeking to seal a judicial record bears the burden of overcoming this presumption by either meeting the "compelling reasons" standard. *Kamakana*, 447 F.3d at 1179. But the Ninth Circuit has held documents may be sealed for "good cause" if the documents are traditionally kept secret or "a sealed discovery document attached to a non-dispositive motion, such that the usual presumption of the public's right of access is rebutted." *Id.* (cleaned up). And because discovery may involve documents that are "unrelated, or only tangentially related to the underlying cause of action …[a]pplying the good cause standard from Rule 26(c) as an exception for discovery-related motions makes sense, as the private interests of litigants are the 'only weights on the scale.'" *Cntr. For Auto Safety*, 809 F.3d at 1097 (citing *Kamakana*, 447 F.3d at 1178-1180).

### B. Discussion

The parties dispute which standard applies, and which party bears the burden of proof. Defendants maintain because the staffing reports are not attached to dispositive motions, the discovery good cause standard applies. They further maintain because these

documents were designated confidential during discovery, Plaintiffs bear the burden of establishing why they should be unsealed.

Competing sealing standards regarding dispositive and non-dispositive motions do not neatly fit into the complicated procedural posture of this case. Defendants are correct the staffing reports are not dispositive and were not attached to a dispositive motion. As such they resemble discovery documents. But the Monthly Deviation Reports are neither traditionally kept secret nor "tangentially related to the merits of the case." *Kamakana*, 447 F.3d at 1172, 1178-80. The Monthly Deviation Reports are required by the Permanent Injunction and stem from the order finding Defendants in violation of the Constitution. Because Defendants were found to have violated the constitutional rights of the Isolation Subclass, Defendants agreed to and were ordered to adequately staff prison areas containing Isolation Subclass members pursuant to a Staffing Analysis and Plan (Doc. 4410 at § 20), to provide reports to the Court detailing every failure to meet the staffing requirements, and provide an adequate and reasonable justification for the failures. Thus, because the Monthly Deviation Reports are integral to relief in this case, there is a strong presumption in favor of public access to judicial records. The "good cause" standard of Rule 26(c) does not apply here.

Defendants also argue because the Monthly Deviation Reports were already designated as confidential in a pre-trial discovery order (*See* Doc. 454), the Court should apply the "good cause" standard of Rule 26(c) rather than the "compelling reasons" standard. As such, Defendants claim, "the party seeking disclosure must present sufficiently compelling reasons why the sealed discovery document should be released." *Phillips ex rel. Ests. Of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). Ordinarily, however, a party's designation of a document as confidential is not per se good cause. *See San Jose Mercury News, Inc. v. U.S. Dist. Court—N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). It is a common misperception when documents are designated as confidential during discovery, it automatically follows they should forever be sealed on the docket.

Lastly, Defendants argue relying on *Phillips ex rel. Ests. Of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) that Plaintiffs bear the burden to show previously sealed Monthly Deviation Reports should be unsealed. However, *Philips* dealt with a motion for discovery sanction and has been specifically distinguished by Ninth Circuit law. *See Ctr. For Auto Safety*, 809 F.3d at 1098 ("The nondispositive motion in *Philips* was unlikely to be related to the merits, while the motions for summary judgment in *Foltz* and *Kamakana* obviously were."). The *Philips* court found the burden shifts from Defendant to Plaintiffs on an unsealing motion only when a party seeks disclosure of a sealed discovery document that is attached to a nondispositive motion. *Philips*, 307 F.3d at 1213. And if no applicable exception to the "compelling reasons" standard is found, courts have found the burden does not shift to the proponent of unsealing merely because a document has already been filed under seal. *See Kamakana* at 447 F.3d at 1181-82 ("[t]he judge need not document compelling reasons to unseal; rather the proponent of sealing bears the burden with respect to sealing. A failure to meet that burden means the default posture of public access prevails."). Thus, Defendants have the burden of showing compelling reasons why the Monthly Deviation Reports should remain sealed.[1]

Defendants have not now shown compelling reasons why the Monthly Deviation Reports should remain sealed in their entirety. Defendants argue the public disclosure of all individual post-level data and justifications for staffing deviations could be used to identify staffing patterns and potential vulnerabilities in prison operations. (Doc. 4891-1; Declaration of Edwin Lao). Defendants add that courts have frequently recognized institutional security concerns justify restricting the disclosure of prisons' operational information. *See Banez v. Miller*, 2009 WL 3481679 (E.D. Cal. Oct. 22, 2009); *Torbert v. Gore*, 2016 WL 1394268 (S.D. Cal. Apr. 8, 2016). Plaintiffs respond the staffing shortages are already self-evident to incarcerated people, and Defendants' claims that the Monthly Custody Reports might reveal vulnerabilities in prison operations is too broad and thus conjecture.

---

[1] It is noted that the Court first sealed one of Defendants' Monthly Deviation Reports on December 13, 2024 (Doc. 4727) before a response was filed by Plaintiffs.

The Court finds legitimate security concerns may be posed by full disclosure of the Monthly Custody Reports, but Defendants' objections to sealing all individual post-level data and justifications are too broad to meet the compelling reasons standard. Accordingly, "conscientiously balance[ing] the competing interests of the public and the party who seeks to keep certain judicial records secret," the Court will order Defendants to file public versions of previously filed and future Monthly Custody Reports. *Ctr. for Auto Safety*, 809 F.3d at 1097. However, Defendants will be allowed to redact individual post-level data and justifications for staffing deviations from the public reports on a piecemeal basis after the Court considers Defendants' alleged justifications for omitting them from the public report. Plaintiffs will be afforded an opportunity to respond to Defendants' alleged justifications for sealing.

**IT IS ORDERED** Plaintiffs' Motion to Enforce § § 20.2.1 and 20.2.3 of the Injunction is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

**IT IS FURTHER ORDERED** Defendants are not in compliance with the Implementation Order (Doc. 4693) and § § 20.2.1 and 20.2.3 of the Injunction (Doc. 4410).

**IT IS FURTHER ORDERED** within fourteen days of the entry of this Order, Defendants shall submit a remedial plan for the posts at ASPC-Eyman and ASPC-Tucson describing in detail what they will do going forward to fill the positions listed as noncompliant in the June Deviation Report (Doc. 4937).

**IT IS FURTHER ORDERED** Plaintiffs' Motion to Unseal (Doc. 4880) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** Defendants shall file public versions of the previously filed Monthly Custody Staffing Reports (Docs. 4728; 4781; 4800; 4847; 4937). Defendants shall file piecemeal reasons for each position and justification that should be omitted for the public report in 14 days, then Plaintiffs will respond in 7 days.

…

…

…

**IT IS FURTHER ORDERED** Defendants shall file public versions of future Monthly Custody Staffing Reports.

Dated this 6th day of August, 2025.

_____
Honorable Roslyn O. Silver
Senior United States District Judge