1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9    Shawn Jensen,                          No. CV-12-00601-PHX-ROS

10                    Plaintiff,             **ORDER**

11   v.

12   Ryan Thornell,

13                    Defendant.

14

15        The Court would appreciate counsel addressing what follows in your oral

16   arguments:

17   **A. Plaintiffs**

18   1.    Assuming the Court grants the motion and orders a receiver be appointed and

19         the decision is appealed to the Supreme Court, how do you propose to argue

20         *Plata v. Brown*, 563 U.S. 493 (2011) should not be reversed? Recall Justice

21         Scalia in dissent argued the decision exceeded the federal court's institutional

22         capacity and was the most radical in the nation's history. And Justice Alito in

23         dissent joined by Chief Justice Roberts argued the decision was an overbroad

24         response to the specific violations.

25   2.    You admit you have not asked for and the Court has not yet appointed a special

26         master. Why couldn't a special master accomplish exactly what a receiver would

27         do, and wouldn't it be less expensive?

28   3.    You state, "THIS COURT SHOULD SET FORTH CLEAR POWERS,

DUTIES, AND RESPONSIBLITIES OF THE RECEIVER." What do you contend must be included and be specific?

4.      What do you anticipate today would be the cost to Arizona of a receiver?

5.      You request suspension of state laws if a receiver is appointed. In *Hinds County*, the Fifth Circuit found allowing the receiver to control the budget was not within the scope of the PLRA. Would suspending state laws be in compliance with the PLRA? And if suspension of the state laws is not allowed, would a receiver still be required and effective?

**B.  Defendants**

1.      You argue increased expenditures have improved care, what are the specific outcomes of the expenditures?

2.      You state "new leadership" is interested in complying with the injunction, but that leadership has existed since the injunction was issued and the order required immediate compliance? Why should the Court accept this promise now?

3.      In mid-2024, Plaintiffs requested the Court order Defendants to hire an individual or individuals with significant health care management experience to assist Defendants in reforming the current system, but Defendants claimed such an order would be "duplicative and unnecessary" because Defendants "already engaged . . . a nationwide correctional consulting and management firm" and anticipated the firm's recommendations for "system-wide improvement," including the injunction "will be made final by mid-2024." The Court is unaware of such recommendations. What proposals were made, and have they been implemented?

4.  What specific actions (other than remedial meetings, conversations, and written reprimands) has ADCRR and the State of Arizona taken to enforce NaphCare compliance with the contract? In particular, what specific breaches have been declared by ADCRR? What financial sanctions have been imposed and particularly those listed on EXHIBIT 11 of the contract? And if sanctions were imposed did NaphCare pay them and how did NaphCare pay them e.g. directly to the State Treasurer?

Solicitation Amendment No. 18
BPM003905

EXHIBIT 11

| Monetary Sanctions | |
|---|---|
| **Non-Compliance**<br>Refer to RFP Scope of Work for details and other contract requirements | Cure Notice Monetary Sanctions assessed for each day the Contractor has not complied with the cure notice requirements<br>$1,000 per day |
| **Non-Compliance**<br>Refer to RFP Scope of Work for details | **Immediate Monetary Sanctions** |
| An act of deliberate indifference that disregards a known and excessive risk to an inmate's health or safety or violates an inmate's civil rights. | $100,000 per occurrence. |
| A court finding of an act of deliberate indifference towards an inmate. | Amount of Judgment levied against the State of Arizona. |
| Failure to provide comprehensive healthcare services coverage twenty-four (24) hours per day, seven days per week at each Arizona State Prison Complex, excluding a declared state of emergency recognized by the Department. | $100,000 per occurrence. |
| Non-compliance identified or discovered, during an audit or any other monitoring activity, whose gravity or severity cannot be mitigated by the Contractor's ability to bring its performance back into compliance at a future date. | $10,000 per occurrence, not to exceed $250,000 finding of non-compliance. |
| Misrepresentation or falsification of information provided to the Department or NCCHC. | $10,000 per occurrence, not to exceed $250,000 finding of non-compliance. |
| Failure to comply with any other contract requirements or NCCHC standards not identified elsewhere in this exhibit. | $10,000 per occurrence, not to exceed $250,000 per finding of non-compliance. |

5.  Plaintiffs claim, "[t]he issue of space to accommodate new clinical staff and their patients was raised at the very first pilot meeting on July 8," and in September, "HSD reported space modifications had been approved, budgeted, and would be complete within 90 days." Defendants responded to a draft of the report

disavowing knowledge of the comments and said, "[t]he pilot never contemplated building additional space and should not be contingent on building additional space." However, the injunction requires Defendants "provide sufficient space." What happened to the promise that space modifications were approved, budgeted, and would be completed in 90 days.

**IT IS SO ORDERED.**

Dated this 10th day of September, 2025.

Honorable Roslyn O. Silver
Senior United States District Judge