Mary R. O'Grady, 011434
Andrew G. Pappas, 034432
John S. Bullock, 034950
Molly S. Walker, 038099
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
mogrady@omlaw.com
apappas@omlaw.com
jbullock@omlaw.com
mwalker@omlaw.com

Attorneys for Defendants

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Shawn Jensen, et al., | No. CV-12-00601-PHX-ROS |
|---|---|
| Plaintiffs, | **DEFENDANTS' SUPPLEMENTAL EVIDENCE REGARDING ISSUES IN SEPTEMBER 10, 2025 COURT ORDER** |
| v. | |
| Ryan Thornell, et al., | |
| Defendants. | |

Pursuant to this Court's September 12, 2025 order (Doc. 4989), Defendants provide supplemental evidence in response to issues raised in this Court's September 10, 2025 Order (Doc. 4984).

Below are responses to issues the Court identified for Defendants to address:

**1. You argue increased expenditures have improved care, what are the specific outcomes of the expenditures?**

The spreadsheet attached to the Declaration of Richard Evitch (Doc. 4973-3 at 4) describes expenditures related to inmate health from FY 2022–FY 2025 (as of July 15, 2025), as well as the expenditures authorized in the FY 2026. The outcomes of the additional related increase in healthcare expenditures by ADCRR include:

- **Increased healthcare personnel to provide care to patients in ADCRR custody** – Inmate contracted services increased from $194,546,527 in FY 2022 to $380,978,900 in the FY 2026 budget. These funds pay for healthcare

providers at state-run facilities and other costs associated with providing healthcare services in the prisons through the statewide contract with NaphCare. The need for more line healthcare workers was a major point of the Court's 2022 Order. (Doc. 4335 at 21, 107.) As described in the Declaration of Joe Tapia, the Staffing Compliance Coordinator for ADCRR's Healthcare Services Division ("HSD"), the July 2025 staffing report reflected 1,332.1 healthcare FTEs at ADCRR's state-run facilities. (Doc. 4973-2 ¶ 5.) In August 2025, the total was 1335.2. (Decl. of Ashley Oddo ¶ 59, attached as **Exhibit 2**.) In contrast, at the time of the Court's 2022 order, there were a total of only 841.94 contracted FTEs for "medical, dental, and mental health staff, as well as administrative staff." (Doc. 4973-2 ¶ 10.) There have been increases in doctors, nurse practitioners, midlevel providers, mental health staff and nearly all other categories of healthcare workers, filling major deficiencies identified in this Court's previous order. (*Id.* ¶¶ 6–12.)

- **Increased funding for Hepatitis C Treatment** – There has been significant improvement in the access to and quality of treatment for Hepatitis C. Funding for Hepatitis C Treatment has been allocated in FY 2024 through the current fiscal year. (Doc. 4973-3 at 4.) The improved outcomes resulting from these expenditures are described in the Declaration of Amy Rust (Doc. 4973-7 at 2–3). In July 2023, only 44 new patients were treated monthly, and now, 200–400 patients initiate treatment monthly, with an additional 450–750 patients in active treatment at any given time. (*Id.*)

- **Increased funding for Substantive Use Disorder Treatment** – There has also been increased funding for ADCRR's substance use disorder treatment. (Doc. 4793-3 at 4.) The increased funding for this program has also contributed to its growth and effectiveness in treating substance use disorder among the ADCRR patients. (Doc. 4818-1 ¶ 5a.)

- **Emergency call buttons** – Additional expenditures went toward installing medical call button systems across eight facilities statewide. (Doc. 4793-5 at 4.) These provide immediate communication capabilities between inmates and staff. (*Id.*; *see also* Decl. of Ashley Oddo ¶ 40.)
- **Additional technology improvements** – There have been other technological improvements to facilitate compliance with the injunction including, for example, the purchase of tablets to improve communications with patients and healthcare providers.
- **Facility additions and improvements –** As detailed in the Declaration of Scott Mundell, there have been a number of improvements at different complexes to address the medical needs of patients. (Doc. 4973-5 at 2–5.) Some of the modifications have resulted in additional Skilled Nursing Unit ("SNU") or Inpatient Care ("IPC") beds, some have added or improved clinical space or relocated storage to improve security and inventory management. (*Id.*) All of these expenditures provide necessary infrastructure to provide patient care throughout the prison system and to meet inmates' varied healthcare needs.

**2. You state "new leadership" is interested in complying with the injunction, but that leadership has existed since the injunction was issued and the order required immediate compliance? Why should the Court accept this promise now?**

The work to comply with this Court's Injunction and remedy the constitutional problems identified in this Court's Order began immediately under Director Thornell. Although the work began immediately, the Order itself required work that would take time. It required new policies and practices, new spaces for providing medical care, additional healthcare staff, technology upgrades, training and systems for monitoring, and a comprehensive monitoring and compliance system, among other initiatives. The compliance work began immediately and continues.

The Court's Order also required a new system for providing healthcare, the Patient Centered Care Model ("PCCM"), through primary-care physicians and, in mental health,

through the use of primary therapists. The implementation of the PCCM is central to the overall change in delivering healthcare and has been a focus of the work in 2025. This required a pilot and resulted in a staffing plan approved in June 2025. The work implementing the PCCM greatly expanded in 2025. A NaphCare and ADCRR team continues to roll out the PCCM to different units across the State. Ten units have now implemented the PCCM. In addition to the nine units previously identified (Doc. 4973-4 ¶ 11), the PCCM was rolled out at ASPC-Douglas, Gila Unit beginning August 28, 2025. (Decl. of Ashley Oddo ¶¶ 54–58.) The implementation process includes:

- Empaneling patients to appropriate primary care providers and a care team based on patient complexity scores;
- Ensuring the site has appropriate space, equipment and staff to serve patients appropriately;
- Providing patient education that explains the PCCM;
- Training providers and staff at facilities regarding the PCCM;
- Implementing morning huddles to assist in planning and coordination of care among the team;
- Consolidating appointments with Primary Care Providers when possible;
- Scheduling chronic care follow-up appointments;
- Weekly meetings to discuss issues that have arisen and strategies for improvement.

**3. In mid-2024, Plaintiffs requested the Court order Defendants to hire an individual or individuals with significant health care management experience to assist Defendants in reforming the current system, but Defendants claimed such an order would be "duplicative and unnecessary" because Defendants "already engaged . . . a nationwide correctional consulting and management firm" and anticipated the firm's recommendations for "system-wide improvement," including the injunction "will be made final by mid-2024." The Court is unaware of such recommendations. What proposals were made, and have they been implemented?**

A redacted copy of the report from the national correctional consulting and management firm, Falcon Correctional and Community Services, Inc, which was

completed in April 2024, is attached as Exhibit 1. The actions taken to implement the recommendations are described in the September 22, 2025 Declarations of Director Ryan Thornell and Deputy Director Ashley Oddo, attached as Exhibits 3 and 2, respectively.

4. **What specific actions (other than remedial meetings, conversations, and written reprimands) has ADCRR and the State of Arizona taken to enforce NaphCare compliance with the contract? In particular, what specific breaches have been declared by ADCRR? What financial sanctions have been imposed and particularly those listed on EXHIBIT 11 of the contract? And if sanctions were imposed did NaphCare pay them and how did NaphCare pay them e.g. directly to the State Treasurer?**

The Declaration of Jason Reese, ADCRR's Contract Compliance Director, attached as Exhibit 4, describes the Vendor Performance Reports ("VPRs") that ADCRR has issued to NaphCare because of deficiencies in contract performance issues. His declaration supplements the information on VPRs in Deputy Director Oddo's March 4, 2025 declaration on this issue. (Doc. 4818-1 ¶ 12.) To date, ADCRR has issued 33 different VPRs for performance issues. (Decl. of Jason Reese, Attachment A.) Most were related to staffing deficiencies, while some were related to deficiencies identified concerning medication, specific disruptions in care, and issues identified after internal reviews. (*Id.*) These sanctions through VPRs have totaled $1,424,900 to date. (*Id.*) To collect these sanctions, ADCRR withholds the amounts owed as a result of these sanctions from its payments to NaphCare. (*Id.* ¶ 5.)

In addition to the VPRs, NaphCare is held accountable through contractual indemnification requirements. (Decl. of Jason Reese ¶ 3.) This Court previously circulated a list of cases for review that assert issues related to medical care in Arizona's prisons. (Doc. 4971.) Those cases largely occurred before the injunction, but, in any case, the State tenders the defense of cases alleging harm resulting from medical care while in the state prison to the appropriate healthcare contractor, and the contracts' indemnification requirements would apply.

5. **Plaintiffs claim, "[t]he issue of space to accommodate new clinical staff and their patients was raised at the very first pilot meeting on July 8," and in September, "HSD reported space modifications had been approved,**

**budgeted, and would be complete within 90 days." Defendants responded to a draft of the report disavowing knowledge of the comments and said, "[t]he pilot never contemplated building additional space and should not be contingent on building additional space." However, the injunction requires Defendants "provide sufficient space." What happened to the promise that space modifications were approved, budgeted, and would be completed in 90 days.**

Defendants acknowledge that the information provided in September 2024 regarding the work to modify the space to accommodate new clinical staff at a PCCM pilot site was inaccurate. The changes to the ASPC-Perryville, San Carlos Unit were not completed in time for the pilot, and, as noted in previous reports, the pilot was not completed at that location. (E.g., Doc. 4814 at 6.) Defendants have acknowledged the importance of space to the PCCM as this was a key takeaway from the pilot. (Doc. 4869-1 at 7.) And Defendants continue to make good-faith efforts and significant progress toward creating space modification.

DATED this 22nd day of September, 2025.

OSBORN MALEDON, P.A.

By s/Mary R. O'Grady
    Mary R. O'Grady
    Andrew G. Pappas
    John S. Bullock
    Molly S. Walker
    2929 North Central Avenue, Suite 2000
    Phoenix, Arizona 85012

KRISTIN K. MAYES
ATTORNEY GENERAL
Joshua D. Bendor, 031908
Gregory Honig, 018804
Lucy M. Rand, 026919
Luci D. Davis, 035347
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
joshua.bendor@azag.gov
gregory.honig@azag.gov
lucy.rand@azag.gov
luci.davis@azag.gov
ACL@azag.gov

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

I hereby certify that on September 23, 2025, I served the attached document by first-class mail on the Honorable Roslyn O. Silver, United States District Court, Sandra Day O'Connor U.S. Courthouse, Suite 624, 401 West Washington Street, SPC 59, Phoenix, Arizona 85003-2158.

                                            s/Karen McClain

12059215