**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Ryan Thornell, et al., | |
| Defendants. | |

## I.    Appointment of the Receiver

On February 19, 2026, this Court granted Plaintiffs' Motion for a Receiver finding the appointment of a Receiver to assume control of the delivery of health care services to the class of prisoners in the custody of the Arizona Department of Corrections, Rehabilitation, and Reentry (ADCRR) was required to conclusively eliminate the constitutional violations within ADCRR of health care pertaining to the class members.[1] (Doc. 5123.)

Both parties proposed the appointment of Ms. Annette Chambers-Smith. The Court conducted an interview and requested the Parties and the Monitors to conduct due diligence regarding the appointment. The interview and due diligence are complete. (*See* Docs. 5218; 5256, 5260.) Accordingly, the Court will appoint Ms. Annette Chambers-Smith as the Receiver.

Defendants have represented they intend to appeal the appointment of the Receiver.

---

[1] References to health care include only medical and mental health care.

*See Jensen v. Thornell*, CV 26-1746, Dkt 9.1 (9th Cir. May 21, 2026) ("Defendants-Appellants . . . anticipate appealing from a[n] . . . order . . . appointing a receiver and defining the receiver's powers and duties."). It appears Defendants also intend to seek a stay of the appointment pending appeal. The Court will delay the effective date of the Receiver's appointment pending resolution of a motion to stay if filed. If Defendants opt not to seek a stay, Defendants shall file that notice within five days of the date of this Order.

The Court ordered the parties to address "the proposed duties, powers, and authorities of the Receiver, [including] how each proposal will extend as far as[,] but no further than[,] necessary to correct Defendants' constitutional violations." (Doc. 5123 at 83.) The Court has evaluated the recommendations of the parties, and resolved what authorities, responsibilities, and duties are essential for the Receiver to accomplish the objectives of this Receivership. They are narrowly drawn and extend no further than necessary to remedy the ongoing constitutional violations and are the least intrusive means to correct the ongoing constitutional violations. *See* 18 U.S.C. § 3626(a)(1)(A).

## II. Authority, Duties, and Responsibilities of the Receiver

During this multi-year, interminable litigation, the Court has identified entrenched systemic failures in Defendants' administration of health care to the Plaintiff class, "including (1) chronic understaffing and failure to enforce contractual provisions with the third-party vendor, (2) the persistence of nurse driven care and inappropriate assignment of complex patients to advanced practice practitioners instead of physicians, (3) failures in the referrals process, (4) data collection and reporting failures, and (5) inadequate resources, including funding and facilities." (Doc. 5218 at 2-3.) Accordingly, the Court found that only a Receiver with the powers and authority necessary to address each of the systemic failures would adequately remedy the failure of health care. (*Id.*)

The Receiver's authority, duties, and responsibilities to administer and manage ADCRR's health care system to ensure constitutional health care for the class members are what follows.

### a. Leadership and Management

The Receiver shall provide leadership and management of the health care system including overseeing, supervising, and directing all ADCRR employees and contract personnel who perform administrative, financial, accounting, contractual, legal, and other operational functions required to ensure constitutional health care is provided to class members. In exercising these responsibilities, the Receiver may consult with the Director of ADCRR, and all relevant and knowledgeable ADCRR employees and contract personnel.

**b.  Development and Implementation of Operational Plan**

1. Within 180 days of the effective date of the Receiver's appointment, the Receiver shall prepare and file the "Receiver's Operational Plan" (the "Plan") designed to remediate ADCRR's unconstitutional health care identified in all of the Court's Orders, and address the constitutional violations identified in the June 30, 2022 Order and Findings of Fact and Conclusions of Law (Doc. 4435). The Plan shall consider the compliance criteria set forth in the April 7, 2023 Order and Permanent Injunction (Doc. 4410), the March 31, 2025 ADCRR Health Care Staffing Analysis and Plan (Doc. 4963), the February 19, 2026 Order granting this Receivership (Doc. 5123), and the May 15, 2026 SNU and IPC Health Care Staffing Analysis and Plan (Doc. 5230).

2. The Plan shall address the findings of the Court Monitors and include a proposed schedule for completion and resolution of all identified solutions and remedies with measurements and gauges by which to periodically evaluate ADCRR's progress and success. Throughout the Receivership, the Receiver shall report ADCRR's benchmarks and milestones and modify the Plan as deemed essential and required by the Receiver and the Court to achieve the objectives.

3. Pending the final draft and implementation of the Plan, the Receiver shall initially implement short-term measures essential for immediately improving critical health care issues and begin the process of restructuring, developing, and implementing the constitutionally adequate health care system.

**c.  Budgeting and Accounting**

On an annual basis, the Receiver shall establish the budget required for all ADCRR health care for the class members. The Receiver shall engage in essential efforts to secure adequate funding in consultation with Plaintiffs and Defendants, the Governor, and the Legislature, including their designated representatives. Consistent with the reporting requirements of II.d.ii below, the Receiver shall establish a calendar for periodically reporting to the Court the status of the ADCRR health care budget, including recommendations, and shall take all necessary steps to ensure transparency and accountability of budget information.

### d.  Reporting

#### i.  Permanent Injunction Audits

Monthly audits of all Permanent Injunction requirements are not required of the Receiver. Rather, the frequency of such audits shall be determined by the Receiver with Court approval and based upon an assessment of (1) the significance of each requirement, (2) the time, resource, and costs of monitoring each requirement, and (3) the history of performance or failure of performance for each requirement. While no single factor dominates, the third factor is paramount.

#### ii.  Reports to the Court

The Receiver shall file annual reports with a detailed analysis of the progress of ADCRR in resolving the unconstitutional health care of the class and achieving the requirements of the Plan. And as deemed necessary by the Receiver or the Court, the Receiver shall file additional reports with the Court. These reports shall include (a) the successes and failures achieved in implementing the Plan, including anticipated dates for completion of each requirement of the Plan, (b) the obstacles or impediments to implementing the Plan, and identifying any issue that has interfered with compliance, including but not limited to pinpointing individuals, agencies, or entities responsible for impeding compliance, (c) identification of the required expenditures, with detailed explanations, and (d) all other issues required to allow the Court's analysis, review and approval of the progress made regarding the Plan. The Receiver shall meet with the Court

following the issuance of each report and shall maintain direct communication with the Court throughout the Receivership.

**III.    Powers and Authorities of the Receiver**

    **a.  General Powers**

1. All duties and authorities vested by law in the Director of ADCRR relating to the health care of the class members as set forth in A.R.S. § 41-1604 and A.R.S. § 31-201.01 and other governing laws and regulations shall be vested in the Receiver. The Receiver's authority, actions, and decisions shall be subject to review of the Court.

2. All duties and authorities of the Director of ADCRR relating to the health care of the class members are enjoined for the duration of the Receivership. Upon termination of the Receivership, those duties and authorities shall be restored to the State and the Director. However, the Director is authorized to confer with the Receiver where the Receiver determines assistance would be advantageous to fulfilling her responsibilities.

    **b.  Dental Care**

The Receivership applies to medical and mental health care. However, a clear boundary distinguishing dental care from health care is often not possible in the prison context, particularly regarding contracts outsourcing health care. When this occurs, the Receiver and Director of ADCRR shall engage in efforts to collaborate to resolve the ambiguous dental issues that constitute health care. If the Receiver and the Director are unable to resolve such issues, they shall jointly advise the Court in writing with notice to Plaintiffs and Defendants, and the Court will determine the appropriate and best resolution.

    **c.  Specific Authorities**

Without diminishing the Receiver's broad authority set forth in paragraph III.a above, the Receiver shall have the specific authority to exercise the functions that follow, as deemed necessary to fulfill the Receiver's responsibilities and objectives under the Plan.

      **i.  Personnel**

1. The Receiver shall have the authority to hire, fire, suspend, supervise, promote, transfer, discipline, and establish compensation for all ADCRR employees and

contract staff who perform services related to the health care of class members. This includes implementing additional personnel policies and creating, abolishing, or transferring positions related to the health care of class members. *See* A.R.S. § 41-1604(A)(2),(B)(2)(a-d).

2. The authority includes utilizing all employees presently working within, or assigned to, ADCRR Health Services Division, and these employees shall remain in their positions within the Health Services Division as the Receiver determines they are essential for ensuring the constitutional health care of the class. This includes data collection, contract oversight, and coordination of health care to class members.

3. The Receiver shall have the authority to issue instructions to ADCRR employees and contract staff who perform services relevant to the delivery of health care to class members. Custody employees and staff are excluded from the Receiver's authority unless determined essential to the provision of adequate health care and administration of the Plan. The Receiver shall consult with the Director of ADCRR before finding custody employees and contract staff are within the Receiver's authority over health care for the class and the Plan. If the Receiver and the Director disagree, the Receiver shall seek resolution by the Court.[2] In resolving the issue, the Court will consider input from both Plaintiffs and Defendants and will determine the least intrusive and least disruptive means of providing adequate constitutional health care.

### ii. Policies and Procedures

1. The Receiver shall formulate additional essential ADCRR policies and Department Orders, procedures, protocols, systems, and practices in accordance with the Plan as relevant to the health care of class members and necessary to establish and ensure adequate constitutional health care. *See* A.R.S. § 41-1604. As mandated by law, the Receiver shall "be responsible for the overall operations and policies of the department"

---

[2] It is contemplated the Receiver may supervise custody staff if, for example, the staff provide on-site escort and off-site transportation to and from health care activities. Past barriers to provision of health care regarding on-site escort and off-site transportation by custody staff have been identified by the Monitors and the Court. (Doc. 4968 at 27.)

- 6 -

related to the health care of class members, A.R.S. § 41-1604(A)(1), and "responsible for the development of policies and programs that shall be recommended to the Governor and the Legislature." A.R.S. § 41-1604(A)(5). The Receiver may "adopt rules to implement the purposes of the department and the duties and powers" of the Receiver. A.R.S. § 41-1604(B)(1).

2. The Receiver shall not be responsible for maintaining security at ADCRR. However, the Receiver shall formulate and implement procedures to provide the necessary and adequate security and control of prisoners that pertains to implementation of the Plan and that are required to maintain the health and safety of the class members.

### iii. Budgeting

The Receiver shall be responsible for formulating and establishing the annual ADCRR health care budget that ensures the provision of constitutional health care to class members and shall have all authority vested by law in the Director of ADCRR relating to the financing of the prison health care system.

### iv. Contracts

1. The Receiver shall have the authority as vested in the Director of ADCRR of all ADCRR's health care vendors. This includes the authority to negotiate, enforce, terminate, or renegotiate contracts related to the health care of class members in accordance with law and as necessary to achieve the objectives and requirements of the Plan, the provisions of the Permanent Injunction, and all other relevant Orders. *See* A.R.S. § 31-201.01(D) (The Director "shall provide medical and health services for the prisoners" and "may contract for professional services to assist the Director in carrying out this responsibility.").

2. The Receiver shall provide the Director of ADCRR and the Department of Administration with 30 days' notice before the Receiver implements an amendment to an existing contract or approves a new contract that may impact indemnification or insurance requirements. In an emergency, the Receiver shall provide the Director and the Department of Administration reasonable notice of not less than five days, before

implementing such action regarding contracts.

### v. Property, Equipment, and Tangible Goods

The Receiver shall have the authority to manage, acquire, dispose of, increase, modernize, repair, and lease property, equipment, and other tangible goods relevant to the delivery of health care to class members. Upon request of the Receiver, ADCRR is required to assist in rectifying all issues relevant to property management, including installation and operation of such property. The Receiver shall work with ADCRR to ensure the allocation of sufficient space for class members to receive clinically appropriate health care and for health care staff to perform services related to the health care of class members. *See* A.R.S. § 41-1604(A)(2).

## IV. Office of the Receiver

### a. Compensation

The Receiver shall be compensated a salary of $500,000 annually.[3] The Receiver may seek the reasonable cost of living adjustments each year, and if the Receiver is granted increases, the Court will apply the Administrative Office of the United States Court's policy and Cost of Living Adjustments as the reference to determine the reasonableness of a request. If the Receiver is removed or resigns during the year, the amount of the salary will be prorated to the portion of the year completed prior to the end of the Receiver's contract for that year. If the Receiver does not reside in or near the Receiver's Office, she

---

[3] "It is settled . . . that a federal court appointing a receiver 'has full power to fix the compensation of such receiver.'" *Coleman v. Newsom*, 2:90-CV-0520 KJM SCR P, 2025 WL 1163350, at *3 (E.D. Cal. Apr. 22, 2025) (quoting *Drilling Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934)); "A receiver's compensation must be 'reasonable.'" *Id.* "The court considers several factors in determining the receiver's compensation, including the benefits obtained by the receiver's work, the time and skills needed for 'proper performance' of the duties imposed 'and their fair value, measured by the common business standards; and the degree of activity, integrity, and dispatch with which the work of the receivership is conducted.'" *Id.* (quoting *Walton N. Moore Dry Goods Co. v. Lieurance*, 38 F.2d 186, 192 (9th Cir. 1930)). The Court has considered the salaries in other cases, the "great, if not incalculable" benefits to be derived from the Receiver's work, that the Receiver will not receive benefits, and the complexity of the task required of the Receiver. Thus, the Court finds the salary to be reasonable.

will be personally responsible for the costs of lodging in or near the Receiver's Office as well as travel to and from her permanent residence.

**b. Office and Staffing**

1. The Receiver shall establish the Office of the Receiver and shall have the authority to hire staff and consultants for discharging the duties and mandates of the Plan and this Order. The Receiver shall establish, with approval of the Court, reasonable compensation and terms of service for each member of the Receiver's staff. And the Receiver is authorized to enter into contracts with staff and consultants.

2. In order to facilitate the Receiver's duties and authorities, ADCRR and the Department of Administration shall work with the Receiver to obtain sufficient office space within ADCRR's operations center/headquarters, technological infrastructure, and Information Technology programming and software support. Sufficiency and suitability will be determined by square footage, location, and unity, *i.e.* space is deemed sufficiently suitable if the square footage, proximity to key ADCRR operations, and ability to maintain a physically unified operative space, ensure adequate performance of the Receiver's responsibilities pursuant to the Plan.

**c. Financial Operations and Reporting**

1. Within 30 days of appointment, the Receiver shall create an interest-bearing account, with the Receiver as the signatory and fiduciary. The Receiver may appoint a qualified person to perform this function when necessary. This account shall be designated the "Receiver's Office Fund Account" and shall be maintained solely for the reasonable and necessary expenses incurred and related to the functions and responsibilities of the Office of the Receiver, including, but not limited to, salaries, consulting fees, supplies, equipment, office space, transportation, and travel. The Receiver shall, jointly with Defendants, create a system for regular replenishment of the Receiver's Office Fund Account.

2. Within 60 days of appointment, the Receiver shall establish a budget for the Office of the Receiver for the first year of operation and shall propose a budget for each

subsequent year of operation, which will be due 90 days prior to the budget year. Throughout the Receivership, the Receiver shall include in each report required by this Order an accounting of all receipts and expenditures including the Receiver's Office Fund Account, and shall initiate an independent financial audit of the Receiver's Office Fund Account on an annual basis.

## V.    Additional Terms of the Receivership

### a.  Costs

All costs incurred during the Receivership shall be borne by Defendants, including all the costs for establishing and maintaining the Office of the Receiver.

#### i.  Initial Costs

Because time is of the essence for implementation of the Plan, the Receiver shall, within 30 days of the effective date of appointment, submit a proposed order to the Court authorizing payment to the Receiver of the funds essential for establishing the initial operating fund for the Office of the Receiver. After the Court's approval, those funds shall be deposited in the Receiver's Office Fund Account established by Section IV(c) above.

#### ii.  Use of Contempt Funds

Pursuant to agreement of Plaintiffs and Defendants, the funds assessed as a consequence of the findings of contempt during this litigation, and currently held by the Court, may be used as additional funding to support the Receiver in the execution of her duties. As of the date of this Order the available funds are estimated as approximately $2.2 million. The Receiver shall seek a Court Order for the release of funds as required to supplement the operation of the Plan.

### b.  Access

1. The Receiver and the authorized staff of the Receiver shall have unrestricted access   as necessary for the Receiver to conduct a fiscal analysis and the Receiver shall have access to relevant records outside the ADCRR to accomplish this function.

2. The Receiver and the authorized staff of the Receiver shall have unrestricted access to all ADCRR facilities, with or without notice, as deemed necessary by the

Receiver to accomplish the Receiver's responsibilities pursuant to the Plan and this Order.

3. The Receiver shall have access to governmental records, *e.g.* records maintained by AHCCCS and all others as necessary for the Receiver to conduct a fiscal analysis and the Receiver shall have access to relevant records outside the ADCRR to accomplish this function.

#### c. Ex Parte Communication

The Receiver and the Receiver's authorized staff shall have authority, equal to that of the Monitors, to communicate ex parte and confidentially (without the presence of counsel) with all parties and each party's legal representatives, and with the Court and the Monitors.

#### d. Subclass

The Receiver shall not be responsible for monitoring Defendants' compliance with the provisions of the Injunction addressing relief for prisoners in isolation (paragraphs 19 through 31 of the Injunction) nor shall the Receiver exercise authority over ADCRR's custody operations related to the Subclass. Monitor Scott Frakes will continue his responsibilities regarding the Subclass and continue reporting to the Court.

#### e. Governing State Laws, Regulations, and Contracts

The Receiver shall endeavor to perform all responsibilities and duties in accordance with Arizona state laws, regulations, and contracts. If the Receiver determines compliance with state laws, regulations, or contracts will interfere with, or preclude, the Receiver from ensuring the provision of constitutional health care to class members or will otherwise inhibit the Receiver's fulfillment of the requirements of the Plan and this Order, the Receiver shall request the Court waive compliance with those laws, regulations, and contracts.[4] Upon receipt of any such request, the Court shall solicit input from Defendants

---

[4] This Court's expert in 2019, and again in 2025, identified two state laws as persistent barriers to provision of constitutional health care in the Arizona state prison system: (1) The law requiring the privatization of correctional health care, and (2) the law capping specialist compensation. *See* H.B. 2010, 49th Leg., 3d Spec. Sess. (Az. 2009); Ariz. Rev. Stat. § 41- 1608; Doc. 4755 at 22, 26-27 (Dr. Stern's 2025 report); Doc. 3379 at 102, 104-08 (Dr. Stern's 2019 report).

and Plaintiffs before rendering a decision.

### f. Immunity and Indemnification

Defendants shall unconditionally defend and indemnify the Receiver and the Receiver's personnel, including but not limited to all personnel involved in the operation of the Office of the Receiver, in any litigation, causes of action, claims, liabilities, damages, losses, costs and expenses (including reasonable attorneys' fees and expenses), brought against the Receiver and/or the Receiver's personnel regarding activities arising out of, or conducted in the course of the Receiver's official duties and the operation of the Office of the Receiver. *See* A.R.S. § 31-201.01(F).

### g. Monitoring

Upon appointment, the Receiver shall assume and undertake all authorities, duties, and responsibilities of ADCRR to provide health care to the class members and ensure compliance with the Permanent Injunction, including those duties of the Monitors, except as noted in paragraph V(d) above. The Receiver shall engage the assistance of the Monitors for a period of 6 months from the effective date of the Receiver's appointment. This period may be extended as the Receiver determines will be useful and is warranted.

### h. Length of Receivership

1. The Receivership shall extend for five years. Due to the protracted history of this litigation and the substantial findings of the unconstitutional health care, this estimate may be too generous, and it shall be extended as necessary.

2. Any party is authorized to request the Court replace the Receiver for cause. The Court shall afford both parties the opportunity to be heard, and if the Court determines a change in the Receiver is warranted, the parties shall be authorized to recommend replacement candidates.

3. The Receivership was ordered by the Court as a last resort, and the Court in this Order has established the authorities of the Receiver with the utmost caution. The Court is in full alignment with the legal principle that a Receivership will not extend beyond what is essential to accomplish constitutionally adequate health care for the class. *See* 18 U.S.C.

§ 3626 ("Prospective relief shall not terminate if . . . that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation"); *see also WB Music Corp. v. Royce International broadcasting Corporation*, 47 F.4th 944, 953 (9th Cir. 2022) ("The decision on whether to terminate a receivership turns on the facts and circumstances of each case, including any relevant equitable considerations") (quoting 65 Am. Jur. 2d Receivers § 94 (2022)). Prior to a proposed order terminating the Receivership, the Receiver shall prepare a recommendation, supported by facts and data, in favor of or against termination and provide it to the Court.

4. The Court genuinely welcomes the eventual return to the State of Arizona of the operational control of the health care relating to the class members, upon a finding that the unconstitutional violations have been remedied and the unconstitutional health care existing in the State of Arizona prison system has ceased. The Receiver shall work closely with Defendants and the Director of ADCRR to develop effective leadership that generates and supports a seamless transition of health care operations back to ADCRR that will sustain permanent constitutional health care to all class members.

### i. Modification and Review

This Order shall be modified upon request of the Receiver, or made to the Receiver, as required for the Receiver to accomplish the responsibilities and to effectuate the eventual return to ADCRR and the State of Arizona of the health care provided to the class members. The Receiver shall have the authority to recommend modification of the Receiver's Plan and the 2023 Permanent Injunction.

## VI.    Cooperation

### a. General Requirements

All Defendants and their employees, agents, and all persons acting under the direction Defendants, and their counsel, shall fully cooperate with the Receiver and the Receiver's staff, including promptly responding to all Receiver inquiries and requests and

Court orders. The Director of ADCRR shall cooperate and collaborate with the Receiver on all matters essential to the success of the Receivership, including securing funding, clinical and administrative space, adequate training of staff and contract workers, support of the custody staff necessary for providing constitutionally adequate health care, and ensuring, upon the termination of the Receivership, that ADCRR leadership is prepared and capable of adequately assuming control of all functions required to ensure adequate health care for the class members. Any person or entity interfering with the responsibilities and authority of the Receiver or who otherwise attempts to thwart the performance of the Receiver, pursuant to the Receiver's Plan and Orders of the Court, will be subject to a finding of contempt.

### b. Resolution of Budget Disputes

Any time the Receiver determines the available funds in the fiscal year's ADCRR budget are inadequate to accomplish the Receiver's authorities and duties, the Receiver shall first consult the Director of ADCRR before notifying the Legislature and the Governor's Office of such deficiency. If the issue is not resolved, the Receiver or the Plaintiffs or Defendants may request resolution by the Court, which may prompt the Court to order the waiver of Arizona State laws, regulations, and contracts that interfere with the requirements and desired outcome of the Receivership.

### c. Notice

Counsel for Defendants shall ensure Arizona state agencies are given prompt notice of this Order including the Governor's Office, the Joint Legislative Budget Committee, the Department of Administration, the State Personnel Board, and any other state agencies Defendants deem should be notified. Further, Defendants shall ensure all contractors, employees, and agents (including contract employees and staff) are given prompt notice of this Order. Defendants shall file documentation of their compliance with these notice requirements within 30 days of the date of this Order.

**IT IS ORDERED** Ms. Annette Chambers-Smith is appointed the Receiver in this case, effective 21 days following the resolution of any Motion to Stay.

- 14 -

**IT IS FURTHER ORDERED** the Receiver is authorized to and shall exercise and carry out the duties and authorities described herein.

**IT IS FURTHER ORDERED** if Defendants do not intend to seek a stay, they shall file such Notice within 5 days of the date of this Order.

Dated this 17th day of July, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge