**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Ryan Thornell, et al., | |
| Defendants. | |

On October 14, 2025, Plaintiffs filed a Motion to Enforce §§ 19.3, 29.2, 29.3, and 30 of the Injunction. (Doc. 5032). The Motion is fully briefed, (Docs. 5049, 5062). Monitor Scott Frakes also submitted his Report offering his opinion on the relief sought, *see* Doc. 5203; both Plaintiffs and Defendants responded to his Report. (Docs. 5225, 5227). For the reasons below, the Motion will be granted.

## I.      Background

The 2023 Permanent Injunction includes provisions regarding both medical and mental health care and the conditions of confinement for "[a]ll prisoners who are now, or will in the future be, subjected . . . to isolation, defined as confinement in a cell for 22 hours or more each day." (Doc. 4335 at 123). The motion alleges Defendants are noncompliant with certain provisions regarding the conditions of confinement for the subclass. (Doc. 5032). Specifically, Plaintiffs identify violations of §§ 19.3, 29.2, 29.3, and 30 of the Permanent Injunction. Section 19.3 of the April 7, 2023 Permanent Injunction provides, "No prisoner shall be confined in a cell for 22 hours or more each day for more than two

months unless there are extraordinary documented legitimate penological interests. Defendants shall implement a system to facilitate the return to lower levels of custody for those prisoners who have been in the subclass for longer than two months, and document their efforts." (Doc. 4410 at 52-53). Section 29.2 requires the creation of "individualized case plan[s]" for members of the sub-class, "that describes the actions needed, as well as associated timeframes, to progress in their steps in maximum custody and generally to gain more privileges and lower classification levels (less restrictive housing)." Defendants are then required to conduct evaluations and reviews of each prisoner's progress according to their case plan at regular intervals. (*Id.* at 64-66). Finally, §§ 29.3 and 30 require prisoners be re-housed within 10 days of achieving a higher or lower classification level. (*Id.* at 66).

The essence of Plaintiffs' claim is that Defendants do not have an effective and functioning system to facilitate prisoners' return to lower levels of custody as required by the Permanent Injunction. (Doc. 5032 at 4). Defendants' system involves individualized case plans, monthly case plan meetings, 60-day reviews, and semi-annual (180 day) reviews for those in isolation 180 days or more. However, Plaintiffs allege that none of these steps adequately facilitate movement of prisoners to less restrictive housing as (1) case plans do not describe the actions needed to progress to less restrictive housing; (2) Defendants do not measure behavior against the case plans at monthly case plan meetings; (3) the 60-day review process does not effectively facilitate movement; (4) there is no system at all to facilitate movement of people who have been in isolation between 2 and 6 months; and (5) the semi-annual classifications—ultimately determined by the Central Office—are frequently untimely and fail to consider progress under the case plans. Additionally, some prisoners may be kept in isolation conditions with no path to lower levels of custody at all. In Response, Defendants argue they "have overhauled subclass conditions and established systems to monitor and maintain constitutional standards," rendering each of Plaintiffs' allegations moot or incorrect, and Defendants are compliant with the Permanent Injunction's requirements. (Doc. 5049 at 1-3).

II.     **Discussion**

- 2 -

Monitor Scott Frakes conducted a thorough analysis of subclass members' housing placement and case plans and concluded Defendants are in violation of the listed sections of the Permanent Injunction. He found (1) the case plan tools currently in place are not being properly used; (2) final decisions about maximum custody assignments and removals at 180 day classification reviews are made by Central Office; (3) prisoners are confined in subclass conditions for longer than 10 days after being approved to move to a lower level of custody; and (4) some prisoners are kept in maximum custody solely due to "lack of housing options at a lower custody level." (Doc. 5203 at 3.)

Although, in theory, the case plan tools currently in use could meet the requirements of the Injunction, they are not being used properly to do so. Mr. Frakes notes "[t]he quality of the information documented by the defendants continues to be inadequate to provide prisoners with clear guidance on their pathway out of the Subclass." (Doc. 5203 at 2). Plaintiffs and Mr. Frakes identified the role of Central Office as a final decision-maker in 180-day classification reviews, and that these decisions are often based on the reasons for initial classification rather than evidence of ongoing conduct or evaluation of the prisoner's case plan progress. (Docs. 5203 at 2 and 5032 at 23). This is inconsistent with the Permanent Injunction, which requires that such decisions be made by the classification committee based upon consideration of the prisoner's progress toward compliance with the individual case plan and other circumstances. Prisoners regularly remain in subclass conditions for longer than 10 days after being approved to move to a lower custody level. (*See* Doc. 5203 at 4 (analysis of 15 random 180-classifications showed 6 prisoners were not moved within 10 days of approval)). Finally, prisoners are often confined in subclass conditions due solely to "lack of housing options at a lower custody level." For prisoners who need a safe housing location but do not need ongoing confinement in subclass conditions, this does not satisfy the Permanent Injunction's "legitimate penological interest" requirement.

Mr. Frakes noted, and the Court notes as well, Defendants have "developed the tools and framework for a classification system specific to the subclass" (Doc. 5203 at 3), and

"have made significant progress in many areas of the Injunction related to the subclass." (Id. at 4) Nevertheless, Defendants have not achieved substantial compliance with the provisions of §§ 19.3, 29.2, 29.3, and 30. Accordingly, Defendants will be ordered to develop a remedial plan detailing how they will come into compliance with §§ 19.3, 29.2, 29.3, and 30 of the Permanent Injunction.

**IT IS ORDERED** Defendants shall develop and submit a proposed remedial plan within 30 days of this Order detailing how they will come into and remain in compliance with §§ 19.3, 29.2, 29.3, and 30 of the Permanent Injunction, including an anticipated timeline for compliance, intermediate benchmarks, and detailing how data on such progress and compliance will be accurately documented.

**IT IS FURTHER ORDERED** Plaintiffs and the Court Monitors shall respond to the proposed plan no later than 30 days after its submission.

**IT IS FURTHER ORDERED** after final approval of the remedial plan, Defendants shall report monthly to the Court, the Monitors and Plaintiffs on their progress toward intermediate benchmarks and full compliance.

Dated this 24th day of July, 2026.

Honorable Roslyn O. Silver
Senior United States District Judge