Mary R. O'Grady, 011434
Andrew G. Pappas, 034432
John S. Bullock, 034950
Kimberly Friday, 035369
Molly S. Walker, 038099
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
mogrady@omlaw.com
apappas@omlaw.com
jbullock@omlaw.com
kfriday@omlaw.com
mwalker@omlaw.com

Attorneys for Defendants

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Jensen, et al., | No. CV-12-00601-PHX-ROS |
| Plaintiffs, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO MODIFY INJUNCTION TO PERMIT QUARTERLY COMPLIANCE MONITORING AND REPORTING** |
| Ryan Thornell, et al., | |
| Defendants. | |

The Motion explained that three years of operating the Injunction's (Doc. 4410) monthly monitoring and reporting cycle have shown that monitoring and reporting Quality Indicator compliance on a quarterly basis can serve the Injunction's remedial purpose at least as well as a monthly cadence does, while freeing meaningfully more staff time to act on what the data shows before the next cycle. The Motion's proposal is the type of adjustment the Injunction's own text anticipates. Doc. 4410 at 9.

That assessment is not only Defendants'. Defendants presented the components of the proposed change to Court Monitor Dr. Stern—who the Court appointed, along with the Injunction's other monitors, "to assist the court in monitoring Defendants' compliance with this Order," *Id*. at 6—before this Motion was filed. Dr. Stern supports the proposed

change and advised that it would not meaningfully affect the Monitors' ability to monitor Defendants' compliance. Doc. 5297 at 2.

Plaintiffs' Response (Doc. 5329) does not dispute that Defendants' substantive obligations to comply with Injunction requirements would continue unchanged. Instead, much of the Response catalogues alleged instances of noncompliance with the current monthly schedule. *See* Doc. 5329 at 12–15. Nowhere does Plaintiffs' Response explain why the current monthly frequency of reporting, as opposed to Defendants' compliance with whatever frequency the Court sets, is what the Injunction's remedial purpose requires.

The Court should grant Defendants' motion.

## I.     The proposed modification satisfies Rule 60(b)(5).

Modification of an injunction of this kind is warranted where a "better appreciation of the facts in light of experience indicates that the decree is not properly adapted to accomplishing its purposes." *King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 418 F. 2d 31, 35 (2d Cir. 1969). Defendants apply that framework directly here, consistent with this Court's own recent application of it in Doc. 5305 at 2. Under *Rufo v. Inmates of Suffolk County Jail*, that inquiry proceeds in two steps: whether the movant has shown "a significant change either in factual conditions or in law," and, if so, whether "the proposed modification is suitably tailored to the changed circumstance." 502 U.S. 367, 383-84, 391 (1992). Defendants satisfy both steps.

### A.     Three years of experience under the monthly monitoring and reporting cycle establish the required change in circumstances.

Plaintiffs argue that Defendants "could not plausibly" show changed circumstances because they "knew at the time of the Injunction's entry exactly what measures they would have to monitor and how frequently." Doc. 5329 at 6. That argument mistakes the nature of Defendants' showing. Defendants do not rely on the existence of the monthly requirement itself, which was of course known in 2023. Defendants also do not rely on the generic proposition that compiling data is burdensome,

2

which is equally foreseeable.  Defendants rely on facts learned through participating in the monthly cycle for an extended period: the monthly reporting cycle leaves compliance staff with little practical opportunity to act on what a given month's monitoring reveals before the next reporting cycle begins.  *See* Doc. 5297-1 ¶ 9 (Altigieri Decl.); Doc. 5297-2 ¶¶ 4, 6 (Tang Decl.).  That is precisely the kind of "better appreciation of the facts in light of experience" that *King-Seeley* recognizes as a basis for modification.  418 F. 2d at 35.

Defendants' own compliance staff describe the same problem in their declarations: the current cycle leaves too little time for anything beyond compiling and reporting the required measurements.  *See* Doc. 5297-1 ¶¶ 5, 9 (Altigieri Decl.); Doc. 5297-2 ¶¶ 4, 6 (Tang Decl.).  In short, the compliance function is consumed by the mechanics of measurement, with too little time left over for the remediation that is the Injunction's primary purpose.  This showing satisfies the additional showing *Asarco* requires when a movant relies on changed circumstances—that the changed circumstances makes continued compliance more onerous or unworkable.  *See United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005).  It is not simply that measurement is burdensome in the abstract—foreseeable in 2023 and insufficient on its own—but that, after three years of operation, the monthly cycle measurably crowds out the follow-up work the Injunction exists to produce.

Plaintiffs repeatedly argue that Doc. 4410 at 7's requirement that Defendants "employ sufficient staff with appropriate levels of professional credentials and experience to conduct the monitoring described in this Order" forecloses any burden-based argument for changed circumstances.  Doc. 5329 at 4, 5, 6, 9 n.6.  But Defendants do not contend they lack sufficient staff, and do not seek relief from the staffing required by the Injunction. Doc. 4410 at 7.  Instead, Defendants ask only for a cadence that redirects that same staff's time toward the remedial work described above.  What matters is what three years of operating this specific mechanism have shown about how it functions—a fact

learned only through experience, independent of whether overall compliance has improved. That lesson has been learned.

### B.       The proposed modification is appropriately tailored.

*Rufo*'s second requirement asks "whether the proposed modification is tailored to resolve the problems created by the change in circumstances." 502 U.S. at 391–92. Here, the proposed modification shifts monitoring to a three-month period, a change that is directly crafted to alleviate the intensive effort required by monthly monitoring. The monitoring requirements remain the same—quality indicators that require 50-patient samples will still be calculated using 50-patient samples—but the indicators will be reported quarterly based on samples drawn from the quarter.

The proposed modification leaves every substantive requirement of the Injunction untouched. A change from monthly to quarterly monitoring and reporting does not affect the separate monthly requirements of § 2.4.1 or the monthly custody staffing reports required by § 20.2.3, Doc. 4410; it does not alter Defendants' obligation to monitor the performance of their healthcare vendor, *id.* at 7; and it does not diminish the substantive standards Defendants must meet. Plaintiffs suggest that adjusting the reporting frequency "relegate[s] [Defendants'] monitoring and reporting obligations to second-class status." Doc. 5329 at 7 n.5. It does the opposite: the point of the proposal is to devote more, not less, staff time to the monitoring function's actual purpose—identifying and correcting problems—rather than to the administrative work of compiling the same measurements twelve times a year instead of four. *See* Doc. 5297-1 ¶¶ 5, 9; Doc. 5297-2 ¶¶ 4, 6.

Plaintiffs object that the proposal is overbroad because it does not require Defendants to continue reviewing the same total number of patient files. Doc. 5329 at 9 n.7. But doing so would defeat the purpose of the modification. For example, if Defendants are currently reviewing 50 samples per month for a quality indicator, a shift to reviewing 150 samples every three months (in essence, tripling the sample size of the QI) would not reduce the time or effort devoted to monitoring activities. Defendants' proposal does not change the sample size requirements in the QI. The change is in the

frequency of the review—once every three months instead of once per month. Measuring compliance through a single sample drawn across the full quarter, rather than three separate monthly samples, will not change how the data is assessed. It will not change its reliability. And if Defendants want to undertake additional monitoring activities geared towards specific issues, they are not precluded from doing so.

## II. Plaintiffs' reliance on alleged noncompliance does not show why monthly reporting, specifically, is required.

Much of Plaintiffs' Response catalogues instances where Defendants allegedly have not complied with the current monthly schedule, or in which Defendants' reporting has been inaccurate. *See, e.g.*, Doc. 5329 at 12–15 (custody QI reporting for the isolation subclass); *id.* at 13 (§ 19.5 out-of-cell time reporting); *id.* at 14 (§ 29.3 data accuracy). But whether Defendants have complied with the current schedule and whether particular reports have been accurate are questions for enforcement mechanisms that already exist to address them: motions to enforce specific provisions, and the remedial plans the Court has already ordered for the classification and serious mental illness populations. *See* Doc. 5319 (classification, §§ 19.3, 29.2, 29.3, 30); Doc. 5327 (serious mental illness population, § 19.5). They are not a basis for concluding that the schedule itself must remain monthly instead of quarterly. Plaintiffs do not explain anywhere in their Response why the specific frequency of reporting, as opposed to Defendants' compliance with whatever frequency is set, is what the Injunction's remedial purposes require.

Nor do Plaintiffs identify any reason the cadence itself matters. Their sole stated justification is that "[m]onthly QI reviews, as required by the Injunction, give the parties and the Court better insight into where Defendants are not in compliance and, if acting in good faith, allow Defendants to make timely efforts to remediate their violations of the Injunction." Doc. 5329 at 13. That generality is all Plaintiffs offer. It is undisputed that under the current schedule, QI results are reported more frequently than would be the case post-modification. But Plaintiffs fail to establish why that frequency is necessary to the Injunction's remedial purpose. Plaintiffs do not identify a single Quality Indicator that

5

will be ineffective and fail to serve the Injunction's remedial purpose if monitored quarterly instead of monthly. The absence of any such example, after this much experience operating the current schedule, confirms that the specific frequency Plaintiffs insist on is not doing the remedial work they claim.

If anything, the example Plaintiffs offer cuts the other way. Plaintiffs point to inaccuracies in a November 2025 § 29.3 report, including a miscount of duplicate entries and insufficient context distinguishing why individuals were moved out of maximum custody. Plaintiffs argue that quarterly aggregation "will shift the burden to Plaintiffs to analyze data that will be even more difficult to assess and parse." Doc. 5329 at 14–15. That assumes, without support, that less frequent reporting produces less accurate reporting. The more plausible inference is the opposite, consistent with the Declarations' own account that compliance staff have insufficient time for anything beyond measurement and analysis. *See* Doc. 5297-1 ¶ 9 (Altigieri Decl.); Doc. 5297-2 ¶¶ 4, 6 (Tang Decl.). More time available for each reporting cycle should produce more carefully compiled and better-contextualized reports, not less accurate ones. Moreover, Plaintiffs' analysis relating to § 29.3 demonstrates they are receiving timely, granular data even if Defendants are not conducting the statistical analysis required to produce the QI report on time. For example, Plaintiffs' May 2026 analysis of § 29.3 relied in part on March 2026 data that Defendants produced to Plaintiffs. Doc. 5255 at 6.

Plaintiffs separately suggest that quarterly reporting would let Defendants and their healthcare vendor "conceal discrete periods of noncompliance." Doc. 5329 at 9. That is an accusation about motive, offered with no evidentiary support. It also overstates the change proposed by this Motion. Even under a new reporting cadence, much of the existing monitoring scheme remains, including grievances; incident and mortality reviews; the confidential reporting mechanism available to prisoners, staff, and the public; and the Monitors' site visits. Doc. 4410 at 7–9. None of those channels depend on the frequency of QI compilation, and all of those channels will continue exactly as they do today.

Plaintiffs describe the proposed reduction as "drastic" and a "[s]lashing" of "agreed-upon monitoring and reporting obligations," Doc. 5329 at 9, but that overstates the Motion's scope even on its own terms. The proposal leaves the separate monthly requirements of § 2.4.1 and § 20.2.3 untouched, along with the entire non-QI monitoring apparatus described above. Plaintiffs' "two-thirds" figure describes only the change in QI reporting frequency; it does not describe, and should not be mistaken for, a proportional reduction in Defendants' overall monitoring and reporting obligations, most of which remain entirely unchanged.

## III.    The proposed modification is consistent with the PLRA.

This Motion's proposal falls well within what the PLRA permits.  In 2023, this Court found, and Defendants stipulated, that the Injunction's monitoring and reporting provisions satisfy § 3626(a)(1)(A)'s requirement that prospective relief be narrowly drawn, extend no further than necessary, and be the least intrusive means necessary.  Doc. 4410 at 67.  This Motion seeks to narrow an existing mechanism by adjusting the frequency of Quality Indicator monitoring and reporting while leaving every substantive standard the Injunction imposes in full force.  Doing so easily satisfies the need-narrowness-intrusiveness requirement in the PLRA.

Plaintiffs argue that Defendants are estopped from revisiting the 2023 finding that the Injunction as written satisfied § 3626(a)(1)(A).  Doc. 5329 at 10 (citing Doc. 4402; Doc. 4410 at 67; *Plata v. Schwarzenegger*, 603 F.3d 1088, 1097 (9th Cir. 2010)).  Defendants do not ask the Court to revisit that finding; they ask whether continuing to require the specific monthly frequency remains necessary in light of three years of experience—a question Rule 60(b)(5) exists to answer on an ongoing basis, independent of § 3626(a)(1)(A).  *Plata*'s estoppel concern, which addressed relitigating an earlier, unappealed finding on the same facts, does not reach that question.  603 F.3d at 1097.

Second, Plaintiffs argue Defendants improperly ask the Court to consider whether the monthly requirement, viewed alone, could have been defeated in 2023, alleging *Rufo* and *Swift* forbid such an inquiry.  Doc. 5329 at 8–9 (*quoting Rufo*, 502 U.S. at 391–92;

7

*United States v. Swift & Co.*, 286 U.S. 106, 116–17 (1932)).  Defendants do not make that argument.  *Swift*'s admonition against relitigating provisions of a negotiated decree concerns substantive relief bargained for as part of a package, not the administrative mechanism by which compliance with undisturbed relief is measured.  An additional distinction here is that the Injunction's own text already contemplates adjustments of exactly this kind:  "If unforeseen changes in conditions or operations render any of the requirements in this Order obsolete, unnecessary, or impractical, the monitors will recommend to the Court appropriate alterations to the injunction.  The parties may also petition the Court to modify or annul requirements."  Doc. 4410 at 9.

Third, Plaintiffs argue, quoting *Coleman v. Brown*, that granting relief here would "reward intransigence" because "defendants are not in compliance."  Doc. 5329 at 14 (*quoting Coleman v. Brown*, 922 F. Supp. 2d 1004, 1025 n.23 (E.D. Cal. 2013)).  Coleman addressed a hypothetical termination motion under § 3626(b), a provision Defendants do not invoke, and the noncompliance there was defendants' refusal to perform the substantive remedy itself, a court-ordered population reduction.  *Coleman,* 922 F. Supp. 2d. at 1025.  The reporting delays Plaintiffs identify here are not a refusal to perform any substantive obligation the Injunction imposes; *Coleman*'s concern about rewarding a refusal to comply with the remedy itself has no application to recalibrating how compliance with an undisturbed remedy is measured and reported.

## IV.    The pending appeal of the Receivership Order does not preclude a decision on this Motion.

Plaintiffs ask the Court, at a minimum, to defer ruling on the healthcare portion of this Motion until the newly appointed Receiver has had an opportunity to weigh in on monitoring frequency.  Doc. 5329 at 11–12 (citing Doc. 5307 at 4).  Under the Receivership Order, the Receiver's authority would eventually extend to that question.  *See* Doc. 5307 at 4.  It provides that "[m]onthly audits of all Permanent Injunction requirements are not required of the Receiver[; r]ather, the frequency of such audits shall be determined by the Receiver with Court approval" based on the significance, cost, and

compliance history of each requirement. *Id.* But the Receiver's appointment is stayed, Doc. 5330 at 4, and it is not yet determined whether or when a Receiver will exercise that authority as to Defendants' own QI reporting. Given that uncertainty, there is substantial value in addressing this Motion rather than leaving the current cadence in place for an indefinite period. An order on the Motion would not foreclose the ability of a Receiver to revisit the issue at a later time.

Plaintiffs and Defendants agree the isolation-subclass provisions are not implicated by the receivership at all. *See* Doc. 5329 at 14–15; Doc. 5307 (Receivership Order) at 11 (explaining Receiver will not be responsible for monitoring compliance with custody-related provisions). Defendants' request for modification as to the custody and isolation provisions should be decided even if the Court defers a ruling on the healthcare provisions.

### Conclusion

For the reasons stated above and as set forth in Defendants' Motion, the Court should grant Defendants' Motion to Modify Injunction to Permit Quarterly Compliance Monitoring and Reporting and enter the Proposed Order filed concurrently with the Motion.

DATED this 11th day of August, 2026.

OSBORN MALEDON, P.A.


By  s/Molly S. Walker
      Mary R. O'Grady
      Andrew G. Pappas
      John S. Bullock
      Kimberly Friday
      Molly S. Walker
      2929 North Central Avenue, Suite 2000
      Phoenix, Arizona 85012

      KRISTIN K. MAYES
      ATTORNEY GENERAL
      Joshua D. Bendor, 031908
      Gregory Honig, 018804
      Lucy M. Rand, 026919
      Luci D. Davis, 035347
      Assistant Attorneys General

2005 North Central Avenue
Phoenix, Arizona 85004-1592
joshua.bendor@azag.gov
gregory.honig@azag.gov
lucy.rand@azag.gov
luci.davis@azag.gov
ACL@azag.gov

Attorneys for Defendants

12538591