Tara R. DeGeorge (Bar No. 031580)
**ACLU FOUNDATION OF ARIZONA**
2712 North 7th Street
Phoenix, Arizona 85006
Telephone: (602) 650-1854
Email: tdegeorge@acluaz.org

*Attorneys for Plaintiffs Shawn Jensen, Dustin Brislan, Robert Gamez, Jonathan Gonzalez, Jason Johnson, Kendall Johnson, Joshua Polson, Laura Redmond, Sonia Rodriguez, Ronald Slavin, Jeremy Smith, and Christina Verduzco, on behalf of themselves and all others similarly situated*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

Asim Dietrich (Bar No. 027927)
**DISABILITY RIGHTS ARIZONA**
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@disabilityrightsaz.org

*Attorneys for Plaintiff Disability Rights Arizona*

**[ADDITIONAL COUNSEL LISTED ON SIGNATURE PAGE]**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

Shawn Jensen, *et al.*, on behalf of themselves and all others similarly situated; and Disability Rights Arizona,

Plaintiffs,

v.

Ryan Thornell, *et al.*, in their official capacities,

Defendants.

No. CV 12-00601-PHX-ROS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO MODIFY § 29.2.2 OF THE INJUNCTION (Docs. 5382, 5384)**

The Court found that Defendants were violating the rights of people in the isolation subclass by keeping them in extreme isolation for "for an indeterminate amount of time, up to years and decades," and issued an Injunction to remedy the violations. Docs. 4335 at 173-76, 4410. Defendants agreed to the terms of that Injunction, and did not appeal it. Recently, the Court found that Defendants were violating several provisions of the Injunction, including § 29.2.2, which sets out the process for semi-annual classification reviews of people in isolation. Doc. 5319. Instead of changing their practices to conform to the Injunction, Defendants would like the Court to change the terms of the Injunction to conform to their practices – the same practices that contributed to the violations the Court found years ago. Doc. 5384.

Defendants identify no change of circumstance that warrants modification of the agreed Injunction. Nonetheless, Defendants proffer a smorgasbord of reasons for changing the terms of the Injunction. None of the reasons given justify the change they are seeking.

**BACKGROUND AND FRAMEWORK OF § 29**

The Court found that Defendants were subjecting people in the isolation subclass "to unconstitutional amounts of social isolation." Doc. 4335 at 173-76. This finding took into consideration both the limits on human interaction and the amount of time people were subjected to such limits. *Id.* To address this and the other violations of the constitutional rights of the people in the isolation subclass, the Injunction provides a presumptive limit on the amount of time people should spend in isolation, and a system for reviewing people's conduct while in isolation and releasing them when there is no longer a legitimate penological interest served by keeping them in isolation. Doc. 4410 at §§ 19.3, 29, 29.1, 29.2, 29.2.1, 29.2.2, 29.2.3, and 30.[1]

The essential structure of this system is that Defendants inform people of what they need to do to get out of isolation, measure their behavior against what Defendants told them to do, and presumptively release them from isolation if they do the things they have been

[1] Defendants were recently found to be violating several of these sections of the Injunction. Doc. 5319.

told to do:

1. Through the use of individualized case plans, people in detention or Maximum Custody are informed of what they need to do to move to lower levels of restrictions (§ 29.2);
2. They have monthly meetings at which their progress under the case plan is evaluated and staff consider whether the person's "behavior, measured against the plan, reasonably justifies the need to maintain, increase, or decrease the level of controls and restrictions in place at the time of evaluation" (§ 29.2.1);
3. As long as they remain in detention or Maximum Custody, people have "a full reclassification review" "at intervals not to exceed six months." This review is conducted by the "classification committee." The reviewers determine "whether the prisoner's progress toward compliance with the individual case plan or other circumstances warrant a reduction of restrictions, increased programming, or a move to a lower level of custody." If the person "has met the terms of the individual case plan, there should be a presumption in favor of releasing the prisoner from maximum custody." (§ 29.2.2); and
4. The warden or deputy warden review any decisions by the classification committee to retain a person in maximum custody and, if the warden or deputy warden disagrees with the classification committee's decision to retain the person in maximum custody, the matter is passed on to the Classification Administrator[2] to decide (*id*.).[3]

Every part of this review process emphasizes the importance of informing people held in

---

[2] Defendants assert that the "Classification Administrator is the same Central Office official the Injunction refers to as the Regional Operations Director." Doc. 5384 at 3. Throughout this brief, Plaintiffs refer to this official as the Classification Administrator.

[3] Defendants also created a 60-day review at which a COIII meets with the person in Maximum Custody or detention to discuss "the reason for placement in Maximum Custody or detention, the individualized Corrections Plan programming requirements, [ ] behavior expectations. . . [and] the inmate's progress towards the individualized plan to include programming." Doc. 5011-2 at 64-65 §§ 11.1.1, 11.1.1.1. The "primary focus" of this review is "[r]eturning [the person] to a lower custody level, or less restrictive environment." *Id*. at 65 § 11.1.1.

isolation of what they need to do to get out of isolation, and then assessing whether they are doing the required actions and behaviors.

This structure – negotiated and agreed to by Defendants, and ordered by the Court – situates the decision to release a person from isolation or retain them there with the classification committee, the staff who are most familiar with the person's conduct in isolation. Instead of complying with § 29.2.2, Defendants continued to have the Classification Administrator serve as the final decisionmaker in all semi-annual classification decisions. Doc. 5384 at 3; *see also* Declaration of Maria V. Morris ("Morris Decl.") ¶ 2; Ex. 1.

The Court recently found that the Classification Administrator's role as final decisionmaker in all semi-annual classification reviews is inconsistent with § 29.2.2. Doc. 5319 at 3. Moving pursuant to Federal Rule of Civil Procedure 60(b)(5), Defendants now seek to modify the Injunction "to align with [Defendants'] current practice." Doc. 5384 at 10; *see also id*. at 1.

## LEGAL STANDARD

A court may relieve a party from its obligations under an injunction when "applying [the injunction] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). "Rule 60(b)(5) may not be used to challenge the legal conclusions on which a prior judgment or order rests, but the Rule provides a means by which a party can ask a court to modify … a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992)).

Where the party asserts a change in factual conditions, it must show that the change makes compliance "substantially more onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384. Changes of law that justify modification are changes that make the required action unlawful or "make legal what the [injunction] was designed to prevent." *Id*. at 388.

When a party seeks modification, it "should not strive to rewrite a consent decree so that it conforms to the constitutional floor." *Id.* at 391. If changed circumstances make prospective application of an injunction inequitable, "the focus should be on whether the proposed modification is tailored to resolve the problems created by the change in circumstances." *Id.* "A court should do no more" than that. *Id.*

As the party seeking to modify the Injunction, Defendants bear the burden to "establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Id.* at 393; Doc. 5384 at 4-5.[4]

## ARGUMENT

### I. THE INJUNCTION REQUIRES SEMI-ANNUAL CLASSIFICATION DECISIONS TO BE MADE BY THE CLASSIFICATION COMMITTEE

As set forth above, the agreed Injunction requires the classification committee to make the semi-annual classification decisions. Doc. 4410 § 29.2.2. In the Injunction, there is no role for the Classification Administrator when the classification committee decides that the individual can be released from isolation. *Id.* The Injunction provides a role for the Classification Administrator only when two criteria are met: (1) the classification committee decides to keep an individual in isolation; *and* (2) the facility warden or deputy warden disagrees with the classification committee. *Id.* Court Monitor Scott Frakes confirms that Defendants' practice of having the Classification Administrator make every semi-annual classification decision is not consistent with the Injunction. Doc. 5203 at 3. This Court similarly held that Defendants' practice is inconsistent with the Injunction and ordered Defendants to develop a plan to come into compliance with this and several other provisions. Doc. 5319 at 3.

Defendants repeatedly assert that it is the order enforcing the Injunction, rather than

[4] Although they acknowledge that the burden is theirs (Doc. 5384 at 4-5), Defendants nonetheless seek to shift the burden onto Plaintiffs by arguing that Plaintiffs' justifications for not modifying the Injunction "do not withstand scrutiny." Doc. 5384 at 12-13. There is no basis for this burden shifting.

the Injunction itself, that creates the requirement that the classification committee make the classification decisions. Doc. 5384 at 1-2, 5-6, 10. They are wrong. Section 29.2.2 requires that the classification committee, not the Classification Administrator, makes the classification decision. Doc. 4410 at § 29.2.2.

## II. DEFENDANTS ADMIT TO VIOLATING § 29.2.2 FOR "MORE THAN THREE YEARS"

Defendants admit that the Classification Administer has conducted the "final review" of classification decisions "for every person in the subclass for more than three years." [5] Doc. 5384 at 2, 3. Defendants specifically note that the Classification Administrator conducts a "final review[] before an individual is moved to a lower level of custody," whereas the Injunction provides for review by the warden and potentially the Classification Administrator only when the classification committee's decision is to keep the person in isolation. *Id.*; Doc. 4410 § 29.2.2.

Defendants are violating § 29.2.2 of the Injunction and admit that they have been for the last three years. They provide no basis for rewarding their longstanding noncompliance with a modification of the Injunction to allow them to continue doing what they have been doing in violation of the Injunction.

## III. DEFENDANTS MISCHARACTERIZE THE CONSTITUTIONAL VIOLATIONS FOUND BY THE COURT AND THE WAYS IN WHICH THE INJUNCTION ADDRESSES THEM

The Court found that Defendants were subjecting people in the isolation subclass to unconstitutional social isolation for "an indeterminate amount of time, up to years and decades." Doc. 4335 at 176. To remedy this constitutional violation, the Injunction establishes a structure to review whether people should remain in isolation. *See* Doc. 4410 §§ 29, 29.2, 29.2.1, 29.2.2.

Defendants assert that the unconstitutional conditions are limited to "mainly,

---

[5] In fact, long before Defendants were found to be violating the Constitution, the Classification Administrator made the final decisions as to whether a person would remain in Maximum Custody. Morris Decl. Ex. 1.

inadequate nutrition and insufficient out-of-cell time." Doc. 5384 at 11. They further assert that the unconstitutional extreme isolation found by the Court no longer exists because they are offering at least two hours of out-of-cell time to most people in most isolation housing units. *Id*. Defendants are incorrect on several counts.

First, the Court found that Defendants were subjecting people in the subclass to "unconstitutional amounts of social isolation," not "insufficient out-of-cell time." *Compare* Doc. 4335 at 173-76 *with* Doc. 5384 at 11. The Court specifically noted that the problem is the "profound deprivations of social interaction." Doc. 4335 at 175. Out-of-cell time that does not allow for social interaction does not remediate the constitutional violation, and there is nothing in the record to demonstrate that Defendants are providing adequate opportunities for social interaction.

Second, Defendants ignore the Court's finding that Defendants' practice of depriving people of social contact "for an indeterminate amount of time, up to years and decades" violates the Constitution. Doc. 4335 at 176. The duration of isolation is central to the question before the Court, as the motion to modify seeks to change the process by which people can leave isolation. Yet, Defendants do not acknowledge that the length of time people spend in isolation is relevant to the continuing constitutional violation. *See generally* Doc. 5384.[6]

Finally, Defendants assert that people in detention and Maximum Custody are not in isolation if they receive at least two hours of out-of-cell time daily. Doc. 5384 at 11. But

---

[6] Despite their lack of recognition of the importance of the duration of isolation, in their argument that their proposed modification would increase safety (*see infra* § V.B), Defendants assert that having the Classification Administrator make the final classification decisions "often results in placement in lower levels of custody." Doc. 5384 at 6. But Defendants admit that this is the case in only one-third of the instances where the Classification Administrator disagrees with facility staff. *Id*. Thus, in two-thirds of the cases where there is disagreement, the decision of the Classification Administrator results in the person remaining in isolation, despite the contrary recommendation of facility staff.

Moreover, if Defendants were following the terms of the Injunction, it would still be possible for the Classification Administrator to release a person from isolation if the classification committee decided that they should be kept in isolation. Under the Injunction, the only role for the Classification Administrator is to make the final decision when the classification committee decides to keep the person in isolation and the warden or deputy warden disagrees with that decision. Doc. 4410 § 29.2.2.

the Injunction recognizes what was shown at trial: People in Maximum Custody and detention live in isolation. Doc. 4410 at 51. The definition of isolation in the Injunction also includes people in other housing units who are restricted to their cells more than 22 hours a day. *Id*. The provision on hours restricted to the cells adds to the subclass; it does not in any way suggest that if people in detention and Maximum Custody receive more than two hours of out-of-cell time daily they are no longer in isolation. *Id*.

Defendants rely on their mischaracterization of the constitutional violations found by the Court to minimize the importance of the review process. This effort to recast the Court's findings should be rejected.

## IV. MODIFICATION OF § 29.2.2 IS NOT APPROPRIATE UNDER RULE 60(B)(5) BECAUSE THERE IS NO CHANGE IN CIRCUMSTANCES

Defendants move to modify the Injunction pursuant to Federal Rule of Civil Procedure 60(b)(5). Doc. 5384 at 1. Although they do not state this directly (*see* Doc. 5384 at 1-2), it appears that Defendants seek modification on the grounds that there has been "significant change in circumstances." Doc. 5384 at 4 (*citing Rufo*, 502 U.S. at 383, 391).

The only change of circumstance that Defendants have identified is that the Court found them to be violating the provision of the Injunction that they now seek to modify, § 29.2.2. Doc. 5384 at 10. They do not indicate whether they consider this a change in factual conditions or a change in law. *Id*. Under either framework, this "change" does not warrant modification.

Defendants cannot show that the Court enforcing the Injunction as written is a change in factual circumstances. To show a change in factual circumstances, they must show a change that makes compliance "substantially more onerous," "unworkable because of unforeseen obstacles," or "detrimental to the public interest." *Rufo*, 502 U.S. at 384. "Ordinarily, … modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id.* at 385. Defendants cannot show a change in factual circumstances, let alone an unforeseen one, because they have not attempted to implement the requirement that the classification committee make the

decisions on releasing people from isolation or retaining them there. Instead, Defendants have given final authority over such decisions to the Classification Administrator since at least 2019. Morris Decl. Ex. 1. They did not change this policy or this practice after the entry of the Injunction, despite the Injunction's requirements. *Id*. Thus Defendants simply do not know – and cannot establish – that complying with the requirements of § 29.2.2 would be more onerous than expected, unworkable because of unforeseen obstacles, or detrimental to the public interest. Where, as here, "Defendants have not made any reasonable efforts to comply with the decree … they should not be relieved under Rule 60(b)(5) of their obligations." *United States v. Asarco Inc*., 430 F.3d 972, 984 (9th Cir. 2005).

Nor can Defendants reasonably argue that they had a different interpretation of the Injunction, and that, therefore, the Court's enforcement of the Injunction "as written" is a change in law. *See* Doc. 5384 at 3. As relevant to the modification analysis, a change in law is one that makes the required action unlawful or "make[s] legal what the [injunction] was designed to prevent." *Rufo*, 502 U.S. at 388. The most Defendants even attempt to show as a change is the assertion that the enforcement order is a "clarification" of the Injunction. *Id*. at 10. They do not in any was suggest that the "clarification" of the Injunction changes the lawfulness of the review structure set out in § 29.2.2 of the Injunction. *See generally* Doc. 5384.

Moreover, Defendants' assertion that the enforcement order clarified the Injunction is not credible. Following the liability decision, ADCRR negotiated the terms of the Injunction, including § 29.2.2. *See* Doc. 4380 at 1-2, 63-64. The Court provided Defendants with a proposed injunction that included precisely the same language as was ultimately included in § 29.2.2, and gave them the opportunity to object to it. *Id*. Defendants requested additional time to respond to the proposed injunction, noting that it was important that "the language within the injunction is clear, unambiguous, and sufficient to avoid having to request modifications after implementation." Doc. 4398 at 1. The Court granted this motion. Doc. 4399 at 1. Defendants did not seek to change the language in § 29.2.2 of the proposed

injunction. Docs. 4402, 4402-1 at 64-65.

The injunction is clear. It requires that the classification committee makes the decision at the classification review. Doc. 4410 § 29.2.2. It then provides a safeguard to prevent keeping people in isolation unnecessarily: If the classification committee decides to keep a person in isolation, the warden or deputy warden reviews the decision. *Id*. In the event that the warden or deputy warden disagrees with the classification committee, the Classification Administrator makes the decision. *Id*. The language of the Injunction is clear, and there is no ambiguity in the process laid out in § 29.2.2.

The Court's decision to enforce the Injunction as written is not a "significant change of circumstances warrant[ing] revision" of the Injunction. *Rufo*, 502 U.S. at 383. Where, as here, Defendants have not established reasons to modify an injunction, the injunction "should be enforced according to its terms." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004).

## V. NONE OF THE MYRIAD REASONS DEFENDANTS GIVE FOR MODIFYING THE INJUNCTION JUSTIFY THE CHANGE THEY PROPOSE

Although they do not identify any alleged changes in circumstances beyond being ordered to implement § 29.2.2 as written, Defendants put forward numerous reasons for the Court to modify the Injunction "to align with [their] current practice." Doc. 5384 at 10. None is persuasive.

### A. Section 29.2.2 as written is part of the structure necessary to remedy the Constitutional violations found by the Court and addressed by the Injunction

Defendants argue that what matters is the decision at the semi-annual classification review, not who makes it. Doc. 5384 at 11. But this is belied by the structure of the review process set forth in the Injunction.

Everything in the review structure – from the case plan, to the monthly meetings discussing the progress under the case plans to the semi-annual reviews where there is to be a presumption of release from isolation if the person is complying with the case plan – relies on people in isolation knowing what they need to do to get out of isolation so that they can

act accordingly and actually be released from isolation.[7] *See* Doc. 4410 § 29.

Defendants argue that the Classification Administrator does not need to have first-hand information about the person's conduct in isolation and progress under the case plan to make the classification decision. Doc. 5384 at 13. According to Defendants, this is because the classification committee has already considered such information and the Classification Administrator's role is to "weigh [the record of the person's behavior in isolation] against information no meeting could add: the inmate's history at other facilities, any Security Threat Group validation, and other statewide security information." *Id*. This argument both misses the point of the review structure in the Injunction and shows why the proposed change is not consistent with that structure.

The Injunction requires a determination by the classification committee at the semi-annual classification of "whether the prisoner's progress toward compliance with the individual case plan or other circumstances warrant a reduction of restrictions, increased programming, or a move to a lower level of custody." Doc. 4410 § 29.2.2. It further provides that "[i]f a prisoner has met the terms of the individual case plan, there should be a presumption in favor of releasing the prisoner from maximum custody or close management[,]" and that the basis for the decisions shall be documented. *Id*. The person's conduct in isolation is thus central to the decision as to whether the individual should be released from isolation.

The Classification Administrators' decisions, in addition to being contrary to the explicit requirement of the Injunction, rarely if ever reflect any consideration of the person's conduct in isolation and progress under their case plan. *See, e.g.*, Doc. 5012-9 at 67, 72, 77, 82, 84-85; Doc. 5012-10 at 2-3, 10, 30, 36, 38, 43-45, 52-53; Doc. 5012-11 at 2-3, 7-8, 12,

---

[7] Defendants insist that the presumption in favor of release does not mean release (Doc. 5384 at 12) and that the duration of Maximum Custody and detention is not part of the constitutional violations found by the Court (*id*. at 11). This position is consistent with the bad faith arguments they previously made that the stipulated settlement did not require them to implement the Step Program Matrix in Maximum Custody such that people who complied with the rules did, in fact, progress through the steps and out of Maximum Custody. *See* Doc. 3861 at 1-2.

15, 17-18, 22, 24, 27-28; Doc. 5012-12 at 2-3, 7, 20, 25-26, 30; Doc. 5012-13 at 5-6, 10, 29. Further, Defendants' description of the Classification Administrator's role as "weigh[ing]" security information against the person's conduct in isolation suggests a decision-making process that does not include the presumption in favor of releasing the person from isolation if the terms of the case plan have been met. The classification documents cited in this paragraph show that the presumption in favor of release is indeed missing from the Classification Administrators' decision making.

Additionally, the classification committee – the decisionmaker required by § 29.2.2 – usually provides some narrative about why they are making the recommendations for removal from or continued placement in isolation: the reason for placement, additional disciplinaries, participation in the case plan process, demeanor and conduct in the isolation unit. *See, e.g.*, Doc. 5012-9 at 64-65, 69-70, 74, 79-80, 85; Doc. 5012-10 at 3, 7-8, 28-29, 33-34, 39, 45, 53; Doc. 5012-11 at 3, 8, 15, 18, 24, 28; Doc. 5012-12 at 3, 9, 16, 20, 26, 30; Doc. 5012-13 at 6, 11, 26-28. But, as discussed above, the Classification Administrators do not include such information in documentation of their decisions. Although the classification committee's plans and reasoning have been found to be inadequate to comply with the Injunction (Doc. 5319), they provide far more information to the person in isolation about what he or she must do to get out of isolation than do the cursory comments of the Classification Administrator.

Finally, Defendants seek to minimize how much changing one part of the review structure would affect the remediation of the unconstitutional extreme isolation of the subclass. Doc. 5384 at 10-12. However, when a party seeks to modify an injunction, a court should not "inquire whether some of the provisions of the decree upon separate as distinguished from joint action could have been opposed with success if the defendants had offered opposition." *Rufo*, 502 U.S. at 391-92 (citation modified). Even if there were a change in circumstances here, which there is not, Defendants should not be permitted to whittle away at the relief provided to the isolation subclass by looking at only discrete portions of the relief without considering the way the remedial structure works as a whole.

**B. Defendants have not shown that their proposed change to the Injunction would keep people safe**

Defendants argue that implementing the Injunction as written would "eliminate a reasonable safety practice." *Id*. at 5-9. This argument is without merit.

First, state officials are "presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities." *Frew*, 540 U.S. at 442. Defendant Dr. Ryan Thornell was the Director of ADCRR during the final stages of the negotiations over the Injunction, including the period when Defendants reviewed and agreed to the language of § 29.2.2. Morris Decl. ¶ 3. Defendants provide no explanation why they believed in 2023 that the structure set forth in § 29.2.2 was the best way to discharge their responsibilities to keep people in their custody safe, but no longer believe so.

Second, the only explanation of how the requested change to the terms of § 29.2.2 would serve as a "safety component" is that the Classification Administrator has information that the personnel at the facility do not have. Doc. 5384 at 6, 12-13. There is nothing in the Injunction preventing the Classification Administrator from providing such information to the classification committee so that the classification committee has the relevant information when making the decision.[8] *See* Doc. 4410 § 29. Moreover, to the extent that Defendants do not believe the information can be shared with the classification committee because it might be shared with the person whose retention in isolation is under review, this highlights precisely the way the proposed change undermines the review structure set forth in the Injunction. The structure is designed to give people in isolation the information they need to be able to conform their behavior to what is expected and thus to be able to get out of isolation. If the subclass member is not told what requirements and expectations they must meet to exit isolation, and this information is withheld, the system cannot work as envisioned in the Injunction.

---

[8] Indeed, there is nothing in the Injunction to prevent Defendants from including the Classification Administrator in the classification committee. *See* Doc. 4410 § 29.

Third, Defendants fail to present evidence that having the Classification Administrator make the final decision keeps the prisons and the people therein safer. Defendants reference two examples of individuals where the purportedly greater information available to the Classification Administrator resulted in Defendants keeping people in isolation and, according to Defendants, ensuring that people are as safe as they can be. *See* Doc. 5384 at 6. In one of the two cases, the conduct cited by the Classification Administrator as the reason for keeping the person in isolation occurred *after* the facility-level review; this was not a discrepancy in the amount of information or the decision-making process, it was a change in circumstances between the time of the warden's review and that of the Classification Administrator's review. Morris Decl. Ex. 2. For the second person, the classification committee and Deputy Warden appear to have overlooked two very recent disciplinaries. Doc. 5384 at 20-21. The two disciplinaries are listed in the person's Maximum Custody Placement Packet, but were not mentioned in the narrative about the person's conduct. *Id*. This appears to be a training issue for the facility staff, not a lack of information available at the facility level.

Even if Defendants' new explanation of why they should not have agreed to the review structure in § 29.2.2 satisfied the requirements of Rule 60(b)(5), which it does not, Defendants have not established that the proposed modification will keep people in the prisons safer.

### C. The practices of other states are irrelevant to the request to modify the Injunction

Much of Defendants' argument is essentially that six other states have a system for reviewing solitary confinement retention and release that is similar to the one Defendants have long used in violation of the Injunction and are currently seeking to be allowed to continue to use. *See* Doc. 5384 at 7-8. Defendants provide no information as to why the six other states use the process that they do, nor do they provide any information about what the other 43 states do. *Id*. Further, none of the six states cited by Defendants have been found by a federal court to systemically violate the constitutional rights of people in solitary

confinement. Nor have the six states agreed that retention and release decisions will be made using the process laid out in § 29.2.2. And those six states have not been ordered to comply with the process laid out in § 29.2.2. of the Injunction.

Defendants provide no basis for substituting the practices of a few cherry-picked states for the processes they negotiated, agreed to, and were ordered to implement to address constitutional violations in ADCRR prisons.

**D. The Prison Litigation Reform Act provisions on granting prospective relief do not support modifying the Injunction**

Defendants argue that the Court should modify the Injunction to conform to Defendants' practices because, they assert, the modification they seek satisfies the Prison Litigation Reform Act ("PLRA") requirement that prospective relief be narrowly drawn, extend no further than necessary, and be the least intrusive means of correcting the violation found." Doc. 5384 at 10-12. This argument turns the PLRA analysis on its head.

The PLRA requires a court to make the needs-narrowness-intrusiveness findings when it enters an order granting or approving prospective relief. 18 U.S.C. § 3626(a)(1)(A). When the Court issued the Injunction, it made the necessary PLRA findings, with Defendants' agreement. Doc. 4410 at 4-5 and § 32.

Here, there is already an order for prospective relief: the Permanent Injunction. Defendants seek a new and different order. Doc. 5384. The PLRA needs-narrowness-intrusiveness requirement applies when a court enters prospective relief. 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2). It is not a free-standing reason to order new prospective relief.[9]

**E. Negotiations over Defendants' classification policy do not justify modifying the injunction**

Long before the Court found that Defendants were holding people in extreme

---

[9] If the requested modification were otherwise legally permissible, the PLRA does not prevent Defendants from seeking a modification. 18 U.S.C. §3626(b)(4). However, as discussed above, modification is not proper under Rule 60(b)(5) (*see supra* § III), and that is the basis under which Defendants seek modification. Doc. 5384 at 1. The PLRA does not provide an independent basis for modification. *See* 18 U.S.C. §3626.

isolation in violation of the Constitution, Defendants' policy provided that the Classification Administrator was the final decisionmaker for placing a person into and removing them from Maximum Custody. Morris Decl. Ex. 1. After the negotiation and entry of the Injunction, Defendants revised their Inmate Classification policy. Morris Decl. ¶ 5. In so doing, they maintained the role of the Classification Administrator as the final decisionmaker in all such decisions. ADCRR D.O. 801, Inmate Classification, §§ 10.4, 12.2, https://corrections.az.gov/sites/default/files/documents/policies/800/DO%20801%20-%20Eff.%2012-1-23.pdf. At the same time, Defendants proposed significant changes to many policies relating to the isolation subclass. Morris Decl. ¶ 5. Plaintiffs objected to many of the proposed changes in the Inmate Classification policy and other policies, but did not specifically object to this particular provision. *Id*.

Defendants assert that this "history is relevant to whether the modification Defendants now seek reflects a settled, previously reviewed practice rather than a new or unexpected one." Doc. 5384 at 9-10. However, Defendants do not even attempt to explain why the fact that they continued with a practice that contributed to unconstitutional conditions for people in isolation in violation of the Injunction should be considered differently, let alone more favorably, than a "new or unexpected" practice in the consideration of a modification motion. *Id*.

Further, although the Injunction sets out a process for objecting to new or changed policies, there is nothing in the Injunction that suggests this process affects what is required by the Injunction. *See* Doc. 4410 at 9-10.

The fact that Defendants changed many policies without changing the role of the Classification Administrator, and that Plaintiffs did not specifically object to this aspect of the classification policy, does not change what the Injunction requires or justify modification.

**CONCLUSION**

There is no change of circumstances warranting revision of the Injunction. On that

basis alone, the Court should deny Defendants' motion to modify § 29.2.2. Further, none of the many reasons Defendants give for modifying the Injunction have merit. Defendants have not carried their burden of establishing that the Injunction should be modified. The Court should deny Defendants' motion.

Dated: October 26, 2026

**ACLU NATIONAL PRISON PROJECT**

By: s/ Maria V. Morris

Maria V. Morris (D.C. 1697904)*
David C. Fathi (Wash. 24893)**
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
Telephone: (202) 393-4930
Email: mmorris@aclu.org
dfathi@aclu.org

Corene T. Kendrick (Cal. 226642)*
**ACLU NATIONAL PRISON PROJECT**
425 California Street, Suite 700
San Francisco, California 94104
Telephone: (202) 393-4930
Email: ckendrick@aclu.org

Tara R. DeGeorge (Bar No. 031580)
**ACLU FOUNDATION OF ARIZONA**
2712 North 7th Street
Phoenix, Arizona 85006
Telephone: (602) 650-1854
Email: tdegeorge@aclu.org

Donald Specter (Cal. 83925)*
Sophie Hart (Cal. 321663)*
**PRISON LAW OFFICE**
1917 Fifth Street
Berkeley, California 94710
Telephone: (510) 280-2621
Email: dspecter@prisonlaw.com
sophieh@prisonlaw.com

*Admitted *pro hac vice*
**Admitted *pro hac vice*. Not admitted in DC; practice limited to federal courts.

*Attorneys for Plaintiffs Shawn Jensen, Dustin Brislan, Robert Gamez, Jonathan Gonzalez, Jason Johnson, Kendall Johnson, Joshua Polson, Laura Redmond, Sonia Rodriguez, Ronald Slavin, Jeremy Smith, and Christina Verduzco, on behalf of themselves and all others similarly situated*

**DISABILITY RIGHTS ARIZONA**

By: s/ Maya Abela

Asim Dietrich (Bar No. 027927)
5025 East Washington Street, Suite 202
Phoenix, Arizona 85034
Telephone: (602) 274-6287
Email: adietrich@disabilityrightsaz.org

Rose A. Daly-Rooney (Bar No. 015690)
Maya Abela (Bar No. 027232)
**DISABILITY RIGHTS ARIZONA**
4539 East Fort Lowell Road
Tucson, Arizona 85712
Telephone: (520) 327-9547
Email:
rdalyrooney@disabilityrightsaz.org
mabela@disabilityrightsaz.org.org

*Attorneys for Disability Rights Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, I electronically transmitted the above document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory Honig
Joshua Bendor
Luci Davis
Lucy M. Rand
Assistant Arizona Attorneys General
gregory.honig@azag.gov
joshua.bendor@azag.gov
luci.davis@azag.gov
lucy.rand@azag.gov

Mary R. O'Grady
Andrew G. Pappas
John S. Bullock
Molly S. Walker
Kimberly Friday
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, Arizona 85012
mogrady@omlaw.com
apappas@omlaw.com
jbullock@omlaw.com
mwalker@omlaw.com
kfriday@omlaw.com

*Attorneys for Defendants*

s/ J. Carns